# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a<br>Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR<br>INTERNATIONAL, INC., a Delaware<br>corporation, and FAIRCHILD<br>SEMICONDUCTOR CORPORATION,  a<br>Delaware corporation,<br><br>Defendants. | C.A. No. 04-1371-JJF |

**PLAINTIFF POWER INTEGRATIONS, INC.'S RESPONSES TO
DEFENDANTS' FIRST SET OF INTERROGATORIES NOS. 1-28**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure,. Plaintiff Power

Integrations, Inc. ("Power Integrations") hereby responds and objects to Defendants

Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation

(collectively "Fairchild") First Set of Interrogatories (Nos. 1-28) served as follows.  The

responses and objections are made according to the Federal Rules of Civil Procedure and

the Local Rules of the United States District Court for the District of Delaware and are

based upon information presently available to Plaintiffs.  These responses and objections

are without prejudice to Plaintiffs' right to use or rely on subsequently discovered

information.

### GENERAL OBJECTIONS

1.      Power Integrations objects to the Interrogatories to the extent that they

seek information or documents protected by attorney-client privilege and/or the work

product doctrine, information or documents prepared in anticipation of litigation or for

trial, not relevant to the subject matter of this investigation, or not reasonably calculated to lead to the discovery of admissible evidence.

2.    Power Integrations objects to the Interrogatories to the extent each interrogatory includes subparts that should be propounded, numbered or counted as another interrogatory in accordance with Rule 33.

3.    Power Integrations objects to the Interrogatories to the extent that they use terms or phrases that are not defined or understood; Power Integrations will not speculate as to the meaning ascribed to these terms or phrases.

4.    Power Integrations objects to these Interrogatories to the extent that they are premature since Fairchild has not yet provided complete discovery in response to Power Integration's first set of discovery requests.  Power Integration's investigation is ongoing and it reserves the right to amend and supplement its responses to these Interrogatories as appropriate.

5.    Power Integrations objects to the Interrogatories to the extent they call for a legal opinion or conclusion.

6.    Power Integrations objects to the Definitions, Instructions, and Interrogatories to the extent they seek information or the identification of documents not within Power Integration's possession, custody or control, or refer to persons, entities, or events not known to Power Integrations, on the grounds that such Definitions, Instructions, and Interrogatories: (1) seek to require more of Power Integrations than any obligation imposed by law; (2) subject Power Integrations to unreasonable and undue burden and expense, and; (3) seek to impose upon Power Integrations an obligation to investigate or discover information or materials from third parties or sources which are equally accessible to Fairchild.

7.    Power Integrations objects to the Interrogatories to the extent that they seek identification of "all" information that refer or relate to a particular subject on the grounds of over breadth, undue burden and expense.  Power Integrations made a

2

reasonable search for information relevant to the subject matter of the Interrogatories. If any additional, non-privileged, non-immune, relevant information is discovered in the course of any further or continuing searches, it will be identified and/or produced in accordance with Rule 26(e).

8.     Power Integrations objects to the Interrogatories to the extent that they are premature and request that Power Integrations set forth its contention discovery and expert opinions. Power Integration's investigation is ongoing and it will provide such discovery in accordance with the procedural schedule the Court sets forth in this case.

9.     Power Integrations objects to each and every Interrogatory to the extent that it: (i) is framed in terms that Fairchild has not specifically defined; or (ii) fails to identify with reasonable particularity the information requested. Power Integrations objects to such Interrogatories on the grounds that they are vague, ambiguous and unduly broad.

10.     Power Integrations objects to the various definitions of "identify" and to the requirements for identification of information withheld on the basis of privilege on the basis that these are vague, ambiguous, overbroad, and unduly burdensome. They are unreasonable and would require Power Integrations to exceed the requirements under the Federal Rules of Civil Procedure and the local Rules.

11.     Power Integrations reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to the Interrogatories but discovered subsequent to the date of its response, including, but not limited to, any such information or documents obtained in discovery herein.

12.     Power Integrations incorporates by reference the general objections set forth above into the specific objections and responses set forth below. Power Integrations may repeat a general objection for emphasis or some other reason. The failure to repeat any general objection does not waive any general objection to the interrogatory. Moreover, Power Integrations does not waive its right to amend its objections.

3

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:

For each asserted claim of the Power Integrations Patents, identify the accused Fairchild product or products and state, on an element by element basis, how each accused product or products allegedly meets each element of each asserted claim.

RESPONSE TO INTERROGATORY NO. 1:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integration's investigation in this matter is ongoing and its response is based on its current knowledge.

Subject to and without waiving the foregoing and general objections, which are incorporated by reference, Power Integrations identifies the accused Fairchild products as follows:  At least the following Fairchild products infringe one or more claims of the '851 patent:  FSD200; FSD200B; FSD201; FSD210; FSD210B; FSD211; FSDL0165RN; FSDH0265RN; FSDH0265RNB; FSDH321; FSDL312; FSDL0365RN; FSDL0365RNB; FSDM0365RNB; FSCM0565R; and FSCM0765R.  At least the following Fairchild products infringe one or more claims of the '876 patent: FSD200; FSD200B; FSD201; FSD210; FSD210B; FSD211; FSDL0165RN; FSDH0265RN; FSDH0265RNB; FSDH321; FSDL312; FSDL0365RN; FSDL0365RNB; FSDM0365RNB; FSCM0565R and FSCM0765R.  At least the following Fairchild products infringe one or more claims of the '366 patent: FSD200; FSD200B; FSD201; FSD210; FSD210B; FSD211; FSDL0165RN; FSDH0265RN; FSDH0265RNB; FSDH321; FSDL312; FSDL0365RN; FSDL0365RNB; FSDM0365RNB; FSDM0565RB; FSDM07652RB; FSDM311; FSD1000; FSCM0565R; FSCM0765R; FSCQ0765RT; FSCQ1265RT; FSCQ1565RP and FSCQ1565RT.  At least the following Fairchild products infringe one or more claims of the '075 patent: FSD200; FSD200B; FSD210; FSD210B; FSDM311; FSDH565; FSDH0165; FSDH0165D; FSDH0165RN; FSDH321; FSDL321; FSDL312;

4

FSDL0165R; FSDM0265R; FSDH0265R; FSDL0365; FSDM0365; FSDM065RNB; FSD1000 and FSD1000. Power Integrations has further identified, for representative Fairchild products, how they meet the limitations of representative claims of the patents-in-suit in the claim charts attached as Exhibit A. Power Integrations current response is based on publicly available information and it expects to supplement this response once it has received discovery of information solely in Fairchild's possession concerning Fairchild's PWM integrated circuit devices.

INTERROGATORY NO. 2:

For each asserted claim of the Power Integrations Patents that Power Integrations contends Fairchild induced or contributed to the infringement of others, identify the specific direct infringer or infringers and, for each, state on an element by element basis how that direct infringer allegedly practices every element of each asserted claim.

RESPONSE TO INTERROGATORY NO. 2:

Power Integrations objects to this interrogatory as overly broad and unduly burdensome. Power Integrations further objects to this interrogatory because it prematurely seeks contention discovery and expert opinion. Power Integrations will abide by the procedural schedule the Court sets forth in this litigation. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

Subject to and without waiving the foregoing and general objections, Power Integrations responds as follows: Fairchild has induced infringement of the patents-in-suit by encouraging and instructing others to perform activities that infringe the patents-in-suit, including using the accused Fairchild devices and incorporating them into other

products imported, used, offered for sale and sold in the U.S. and Fairchild has so

encouraged and instructed with the intent to cause others to perform those acts. For

example, Power Integrations is presently aware that Fairchild has sold accused products

to Dong Yang, Echostar, American Power Conversion (APC), LG, and Liteon knowing

that they would be incorporated into other devices which have been imported, used,

offered for sale and sold in the U.S. Furthermore, Fairchild personnel know additional

information regarding the accused products, such as the sales and marketing of the

accused products, to others and the uses for which the accused products are to be put

including their intended geographical market. As to an element-by-element analysis,

Power Integrations incorporates its response to Interrogatory No. 1. Lastly, Power

Integrations' investigation is ongoing and it reserves the right to amend and supplement

its response to this interrogatory as appropriate based on further discovery and analysis.


INTERROGATORY NO. 3:

For each asserted claim of the Power Integrations Patents that Power Integrations

contends Fairchild induced or contributed to the infringement of others, identify with

particularity the specific acts by which Fairchild allegedly induced or contributed to the

infringement of others.

RESPONSE TO INTERROGATORY NO. 3:

Power Integrations objects to this interrogatory as overly broad and unduly

burdensome. Power Integrations further objects to this interrogatory because it

prematurely seeks contention discovery and expert opinion. Power Integrations will

abide by the procedural schedule the Court sets forth in this litigation. Moreover, Power

Integrations' investigation is ongoing and it reserves the right to supplement its response

6

to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

Subject to and without waiving the foregoing and general objections, Power Integrations responds as follows: Fairchild contributorily infringes the patents-in-suit by making, using, selling, marketing, offering for sale, and/or importing devices that are not capable of substantial non-infringing uses, with knowledge of the patents-in-suit and knowledge of the uses of the devices and further activities of its customers which constitute infringement. Fairchild induces infringement by encouraging and instructing its customers to incorporate Fairchild's infringing integrated circuit devices in power supply applications for use in and with other electronic devices which are thereafter imported, used, offered for sale and sold in the U.S. Furthermore, Fairchild personnel know additional information regarding the accused products, such as the sales and marketing of the accused products to others and the uses for which the accused products are to be put including their intended geographical market. Lastly, Power Integrations' investigation is ongoing and it reserves the right to amend and supplement its response to this interrogatory as appropriate based on further discovery and analysis.


INTERROGATORY NO. 4:

Describe on a limitation-by-limitation basis (as in a claim chart) how you contend each term and limitation of each asserted claim of each of the Power Integrations Patents should be construed including, but not limited to, the following terms or phrases: "soft start circuit", "drive circuit", "monolithic", "additional oscillator", "frequency variation oscillation signal", "frequency variation circuit", "frequency variation signal", "frequency range", "varies according to a magnitude of

7

said frequency variation signal", "drive signal", "oscillation signal having a frequency range", "variable threshold level", "switch", "coupled", "primary voltage", "secondary voltage", "binary-weighted", "means coupled to the control input for varying the switching frequency", "differential switch", "means coupled to the capacitor for alternatingly charging and discharging the capacitor", "primary current source", "less than approximately 0.1 of I", "less than about 0.1 of I", "high voltage MOS transistor", "substrate", "extending laterally each way", "between the drain contact pocket and the surface-adjoining positions", "subject to application of a reverse-bias voltage", "a pair of laterally spaced pockets of semiconductor material of a second conductivity type within the substrate",

## RESPONSE TO INTERROGATORY NO. 4:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions.  Power Integrations further objects to this request to the extent it seeks constructions of terms and/or phrases that do not appear in asserted claims identified in response to Interrogatory No. 1.  Power Integration's investigation in this matter is ongoing and its response is based on its current knowledge.

Subject to and without waiving the foregoing and general objections, which are incorporated by reference, Power Integrations states that each of the claim terms of the asserted claims should be construed consistent with the ordinary meaning of the claim language and the established rules of claim construction.  Power Integrations further incorporates its response to Interrogatory No. 1 and specifically the claim chart attached as Exhibit A which addresses issues of claim construction.  To the extent a

term recited in this request is present in an asserted claim and not explicitly addressed in the attached chart, Power Integrations believes that the proper interpretation of the term is obvious and needs no additional construction by the Court.

INTERROGATORY NO. 5:

Identify all intrinsic evidence, extrinsic evidence or other evidence supporting your proposed construction of each term and limitation of each asserted claim of the Power Integrations Patents, including, but not limited to, identifying each person you may call as a witness at a claim construction hearing in this matter on whose testimony you may rely to support your claim construction.

RESPONSE TO INTERROGATORY NO. 5:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integration's investigation in this matter is ongoing and its response is based on its current knowledge.

Subject to and without waiving the foregoing and general objections, which are incorporated by reference, Power Integrations incorporates its response to Interrogatory No. 4.

INTERROGATORY NO. 6:

For each element of each asserted claim of the Power Integrations Patents that Power Integrations contends is written in means-plus-function or step-plus-function form, identify by column and line number the corresponding structure in the Patent's specification and identify the scope of equivalents thereof.

RESPONSE TO INTERROGATORY NO. 6:

Power Integrations' objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations' investigation in this matter is ongoing and its response is based on its current knowledge. Power integration

9

further objects to this request to the extent that it calls for a legal conclusion with regard to which claim elements are governed by 35 U.S.C. §112(6).

Subject to and without waiving the foregoing and general objections, which are incorporated by reference, Power Integrations incorporates its response to Interrogatory No. 4.


INTERROGATORY NO. 7:

For each asserted claim of the Power Integrations Patents, identify the priority date to which the claim is entitled, and set forth all facts, if any, upon which Power Integrations bases its contention.

RESPONSE TO INTERROGATORY NO. 7:

Power Integrations' objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations' investigation in this matter is ongoing and its response is based on its current knowledge. Power integration further objects to this request to the extent that it calls for a legal conclusion with regard to what is a "priority date to which a claim is entitled".

Subject to and without waiving these objections and the General Objections herein, Power Integrations responds as follows:

The subject matter of the '075 patent was conceived by the inventor, Klas H. Eklund, at least as early as October, 1985. The subject matter of the '851 patent was conceived by the inventors, Balu Balakrishnan, Alex Djenguirian, and Leif Lund, no later than August 26, 1997. The subject matter of the '876 patent was conceived by the inventors, Balu Balakrishnan, Alex Djenguirian, and Leif Lund, no later than June 5, 1998. The subject matter of the '366 patent was conceived by the inventors, Balu Balakrishnan, Alex Djenguirian, and Leif Lund, no later than August 26, 1997. Further facts responsive to this request are contained in the design and development documents that will be produced to Fairchild and Power Integrations incorporates information

10

contained in these documents pursuant to Fed. R. Civ. P. 33(d). Power Integrations also incorporates its response to Interrogatory No. 8.


## INTERROGATORY NO. 8:

For each asserted claim of the Power Integrations Patents, describe the circumstances surrounding the invention of the claim, including, but not limited to, the precise date of conception, the persons involved, the date of actual reduction to practice whether before or after any filing date, the identity of any corroborating witness, the steps constituting diligence from conception to actual or constructive reduction to practice, and identify any resulting devices.

## RESPONSE TO INTERROGATORY NO. 8:

Power Integrations' objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Power Integrations also objects that the interrogatory improperly contains multiple sub-parts and therefore counts as two separate interrogatories. Power Integrations further objects to this request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, or any other applicable privilege.

Subject to its general and specific objections, Power Integrations responds as follows:

The subject matter of the '075 patent was conceived by the inventor, Klas H. Eklund, at least as early as October, 1985. Mr. Eklund thereafter constructed various circuits using the inventions, which confirmed that the circuits operated for their intended purpose. A patent application was thereafter filed on April 24, 1987. Documents relating to the conception and reduction to practice of the invention of the '075 patent will be produced to Fairchild and Power Integrations incorporates information contained in those documents pursuant to Fed. R. Civ. P. 33(d).

11

The subject matter of the '851 patent was conceived by the inventors, Balu Balakrishnan, Alex Djenguirian, and Leif Lund, on or about August 26, 1997. The inventors thereafter constructed various circuits using the inventions, which confirmed that the circuits operated for their intended purpose. The inventions of the '851 patent were first used by Power Integrations in the TOP232, TOP233, and TOP234 products, which are members of Power Integrations' TOPSwitch-FX product family. A patent application was thereafter filed on May 18, 1998. Documents relating to the conception and reduction to practice of the invention of the '851 patent will be produced to Fairchild and Power Integrations incorporates information contained in those documents pursuant to Fed. R. Civ. P. 33(d).

The subject matter of the '876 patent was conceived by the inventors, Balu Balakrishnan, Alex Djenguirian, and Leif Lund, in or about June 5, 1998. The inventors thereafter constructed various circuits using the inventions, which confirmed that the circuits operated for their intended purpose. The inventions of the '876 patent were first used by Power Integrations in the TINY256 product, which is a member of Power Integrations' TinySwitch product family. A patent application was filed on November 16, 1998. Documents relating to the conception and reduction to practice of the invention of the '876 patent will be produced to Fairchild and Power Integrations incorporates information contained in those documents pursuant to Fed. R. Civ. P. 33(d).

The subject matter of the '366 patent was conceived by the inventors, Balu Balakrishnan, Alex Djenguirian, and Leif Lund, in or about August 26, 1997. The inventors thereafter constructed various circuits using the inventions, which confirmed that the circuits operated for their intended purpose. The inventions of the '366 patent were first used by Power Integrations in the TOP232, TOP233, and TOP234 products, which are members of Power Integrations' TOPSwitch-FX product family. A patent application was filed on May 16, 2000. Documents relating to the conception and reduction to practice of the invention of the '366 patent will be produced to Fairchild and

Power Integrations incorporates information contained in those documents pursuant to Fed. R. Civ. P. 33(d).

INTERROGATORY NO. 9:

State with particularity all facts and circumstances relating to when Power Integrations first learned of, or became aware of, the accused Fairchild products, including, but not limited to, the date and person who made Power Integrations aware of the accused Fairchild products.

RESPONSE TO INTERROGATORY NO. 9:

Power Integrations objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Power Integrations further objects to this request to the extent it seeks information that is not relevant.

Subject to and not waiving these objections and the general objections herein, Power Integrations responds as follows:

Power Integrations first became aware of the FSDH565, and FSDH0165, families of products on or about March 22, 2001, through a Fairchild press release. Power Integrations first became aware of the FSD200, FSD201, FSD210, and FSD211 on or about July 1, 2002, through a contact overseas. Power Integrations first became aware of the FSDM311 family of products on or about March 16, 2003 through a contact overseas. Power Integrations first became aware of the FSDH321, FSDL321, FSDL312, FSDL0165R, FSDM0265R, FSDL0365R, FSDM0365R, and FSDM065RNB families of products on or about September 7, 2003 through a contact overseas. Power Integrations first became aware of the FSD1000 family of products on or about November 21, 2003 through a contact overseas. Power Integrations first became aware of the FSDM0565R and FSDM07652R families of products on or about January 24, 2003 through a contact overseas. Power Integrations first became aware of the FSCM0565R, and FSCM07652R

13

families of products on or about November 3, 2004 through a contact overseas. Power Integrations will produce pursuant to Rule 33(d) documents in its possession regarding its knowledge of accused Fairchild products after a reasonable search. Power Integrations' investigation is continuing and it will supplement this response as additional information is confirmed.

INTERROGATORY NO. 10:

For each claim of the Power Integrations Patents, identify every instance where any third party has been accused of infringing the claim, including, but not limited to, the name and address of each third party, the circumstances surrounding the accusation, and their response, if any.

RESPONSE TO INTERROGATORY NO. 10:

Power Integrations objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Power Integrations also objects to this request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, or any other applicable privilege.

Subject to and not waiving these objections and the General Objections herein, Power Integrations responds that no person, other than Fairchild, has been told by Power Integrations that products manufactured or sold by such person, or the use of those products, are within the scope of the '075 patent, the '876 patent, the '851 patent, and/or the '366 patent or which involve technology covered by the '075 patent, the '876 patent, the '851 patent, and/or the '366 patent.

INTERROGATORY NO. 11:

Identify all articles, references, products, whether on-sale or in public use, or other evidence that Power Integrations is aware of or that any person or entity has

14

contended or asserted is prior art or otherwise relevant to the validity or invalidity of any claim of the Power Integrations Patents.

RESPONSE TO INTERROGATORY NO. 11:

Power Integrations objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Power Integrations further objects to the interrogatory as improperly containing subparts. Power Integrations also objects to this request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, or any other applicable privilege. Lastly, Power Integrations objects to this interrogatory to the extent it prematurely seeks a legal conclusion and/or expert opinion.

Subject to and without waiving these objections and the General Objections herein, pursuant to Rule 33(d), Power Integrations identifies the file history of the '876 patent, the '851 patent, the '36 patent, and the '075 patent and materials identified therein. Power Integrations will produce pursuant to Rule 33(d) other documents in its possession that it locates after a reasonable search that could arguably be responsive to this request. Power Integrations does not admit or concede that any of these identified documents is prior art or is relevant to this litigation by our identification of it. Power Integrations is unaware of any products responsive to this request. Power Integrations' investigation is ongoing and it reserves the right to amend and supplement its responses to this interrogatory as appropriate based on further discovery.


INTERROGATORY NO. 12:

For each asserted claim of the Power Integrations Patents, identify any fact that Power Integrations contends provides evidence that the claim was non-obvious including, but not limited to, any secondary considerations of non-obviousness including

15

commercial success, any long felt but unsolved need, failure of others, copying, praise, unexpected results, industry acceptance, skepticism or disbelief before the invention.

RESPONSE TO INTERROGATORY NO. 12:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations will abide by the procedural schedule the Court sets forth in this litigation. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests. Power Integrations also objects to this request to the extent that it seeks to shift Fairchild's burden of establishing a prima facie case of non-obviousness.

Subject to and without waiving these objections and the General Objections herein, Power Integrations will produce pursuant to Rule 33(d) documents in its possession regarding commercial success and copying that it locates after a reasonable search that could arguably be responsive to this request.


INTERROGATORY NO. 13:

For each asserted claim of the Power Integrations Patents, identify any Power Integrations products Power Integrations contends practice or embody that claim.

RESPONSE TO INTERROGATORY NO. 13:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations will abide by the procedural schedule the Court sets forth in this litigation. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

16

Subject to and without waiving these objections and the General Objections herein, Power Integrations responds as follows:

The inventions of the '075 patent are practiced by the Power Integrations products in the INT, SMP, TinySwitch+, TinySwitch-I, TOPSwitch-FX, TOPSwitch-I, and TOPSwitch-II families of products. The inventions of the '851 patent and the '366 patent are practiced by the Power Integrations TOP232-234, TOP242-250, and DPA423-426 products. The inventions of the '876 patent are practiced by the Power Integrations TNY256, TNY263-268, LNK302, LNK304-306, and LNK353-354 products.

## INTERROGATORY NO. 14:

For each product identified in response to Interrogatory No. 13, identify the total sales to date of the product, the quarter of such sales, all promotion or advertising of the product, the customers who purchased the product, and the invoices or other documents reflecting the sales of the product.

## RESPONSE TO INTERROGATORY NO. 14:

Power Integrations objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Power Integrations further objects to the interrogatory as improperly containing subparts. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate.

Subject to and without waiving these objections and the General Objections herein, Power Integrations will produce pursuant to Rule 33(d) documents in its possession sufficient to derive the sales of the products, customer information, and representative documents regarding the promotion, advertising, and invoices of the

products that it locates after a reasonable search that could arguably be responsive to this request.

INTERROGATORY NO. 15:

For each product identified in response to Interrogatory No. 13, identify any nexus between any commercial success of that product and the invention of the asserted claim.

RESPONSE TO INTERROGATORY NO. 15:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations further objects to this request to the extent that it calls for a legal conclusion. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate.

Subject to and without waiving these objections and the General Objections herein, Power Integrations responds as follows:

The p-top structure was a fundamental advance in science and technology of lateral power devices. This structure allowed high-voltage Field Effect Transistors (HVFETs) to smaller and more economical to manufacture. The p-top structure contributed to Power Integrations' industry leading success in monolithic devices of this type. Power Integrations will produce pursuant to Rule 33(d) documents in its possession reflecting advantages of the p-top structure to the extent that these documents still exist in Power Integrations' possession.

The soft-start feature is highly effective in reducing current and voltage stresses on the components of the power supply including the pulse width modulated switch, the transformer, and the secondary side components. The soft-start feature contributed to Power Integrations' industry leading success in monolithic devices of this type. The soft-

18

start feature increases the life of the power supply and decreases the cost of the power supply because the power supply components are subjected to reduced current and voltage stresses. Power Integrations will produce pursuant to Rule 33(d) documents in its possession showing the advantages of the soft-start feature and its impact on customer demand for Power Integrations' products.

The frequency jitter feature is highly effective in reducing Electromagnetic Interference (EMI) of the power supply. The frequency jitter feature contributed to Power Integrations' industry leading success in monolithic devices of this type. The frequency jitter feature decreases the cost of the power supply because smaller, lower cost components can be used for the EMI filter of the power supply. Power Integrations will produce pursuant to Rule 33(d) documents in its possession showing the advantages of the frequency jitter feature and its impact on customer demand for Power Integrations' products.

INTERROGATORY NO. 16:

State any basis by which Power Integrations contends it is entitled to damages, increased damages, or attorneys' fees.

RESPONSE TO INTERROGATORY NO. 16:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

Subject to and without waiving these objections and the General Objections herein, Power Integrations responds as follows:

Power Integrations is entitled to damages based on lost profits from sales, lost profits from price erosion, and reasonable royalty. Power Integrations is entitled to enhanced damages and attorneys fees based on Fairchild's willful infringement of the Power Integrations' patents.

INTERROGATORY NO. 17:

For October 20, 1998 to October 20, 2004, state the annual sales by country for each Power Integrations PWM product including, but not limited to, each product in the TinySwitch I, TinySwitch II, TOPSwitch, TOPSwitch II, TOPSwitch FX, TOPSwitch GX, LinkSwitch, and DPA-Switch families of products.

RESPONSE TO INTERROGATORY NO. 17:

Power Integrations objects to this request as overly broad, and unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. Power Integrations further objects to this request to the extent that it seeks the discovery of evidence that is not relevant to this litigation. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

Subject to and without waiving these objections and the General Objections herein, Power Integrations will produce pursuant to Rule 33(d) documents in its possession reflecting the sales of the products that it locates after a reasonable search that could arguably be responsive to this request.

20

INTERROGATORY NO. 18:

Identify any product marked with any of the Power Integrations Patents' numbers and, for each such product, state the manner and location of such marking and when the product was first so marked and sold.

RESPONSE TO INTERROGATORY NO. 18:

Power Integrations objects to this request as overly broad, and unduly burdensome, and not reasonably calculated to the discovery of admissible evidence. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

Subject to its general and specific objections, Power Integrations answers as follows:

Power Integrations marks its products by placing a patent notice on data sheets and catalogs and available on its web site.  Because Power Integrations is often receiving new patents on its devices, the notice directs readers to Power Integrations' web site where an up to date list of Power Integrations' U.S. patents and copies of those patents may be easily obtained.  Power Integrations started including this notice on or about July 3, 2002.


INTERROGATORY NO. 19:

State whether each product in the TinySwitch I, TinySwitch II, TOPSwitch, TOPSwitch II, TOPSwitch FX, TOPSwitch GX, LinkSwitch, and DPA-Switch families of products was marked pursuant to 35 U.S.C. § 287 prior to October 20, 2004, the manner of any such marking, and when each such product was first offered for sale.

RESPONSE TO INTERROGATORY NO. 19:

Power Integrations objects to this request as unduly burdensome, and not reasonably calculated to the discovery of admissible evidence.  Power Integrations further

21

objects to this request to the extent that it seeks the discovery of evidence that is not relevant to this litigation. Moreover, Power Integrations' investigation is ongoing and it reserves the right to supplement its response to this interrogatory as appropriate, and when Fairchild has fully responded to Power Integrations' outstanding discovery requests.

Subject to its general and specific objections, Power Integrations will produce pursuant to Rule 33(d) documents in its possession regarding commercial success and copying that it locates after a reasonable search that could arguably be responsive to this request. As to the marking of the products Power Integration incorporates its response to Interrogatory No. 18.

INTERROGATORY NO. 20:

For each defendant named in the Complaint, state and identify all efforts, actions, correspondence, letters, or communications made prior to October 20, 2004 to place such defendant on actual notice of its alleged infringement of any of the Power Integrations Patents.

RESPONSE TO INTERROGATORY NO. 20:

Power Integrations objects to this request to the extent that it calls for a legal conclusion with regard to what is "actual notice."

Subject to its general and specific objections, Power Integrations answers that Power Integrations did not send any letters, correspondence or provide any communications to Fairchild prior to October 20, 2004.

INTERROGATORY NO. 21:

For each asserted claim of the Power Integrations Patents, identify all Power Integrations products for which Power Integrations contends to have lost profit or suffered price erosion due to Fairchild's alleged infringement, describe with specificity

22

the circumstances of such lost profit or price erosion, including, but not limited to, identifying when the lost profit or price erosion occurred and specifically whether such lost profit or price erosion occurred after October 20, 2004, and state, on a quarterly and annual basis, the total amount of lost profits or price erosions caused by each Fairchild product Power Integrations accused of infringing the Power Integrations Patents.

RESPONSE TO INTERROGATORY NO. 21:

Power Integrations objects to this request on the grounds that it prematurely seeks Power Integrations' legal contentions. Power Integrations objects to this response to the extent it requests information that will be subject to expert testimony. Power Integrations will abide by the procedural schedule the Court sets forth in this litigation. Power Integrations answers that its investigation is ongoing and it reserves the right to produce documents and supplement its response to this interrogatory as appropriate. Subject to its general and specific objections, Power Integrations will produce pursuant to Rule 33(d) documents in it possession regarding lost profits and price erosion that it locates after a reasonable search that could arguably be responsive to this request.


INTERROGATORY NO. 22:

State whether a pulse width modulation product market exists in the United States and, if so, for each Power Integrations product identified in response to Interrogatory No. 22, state its actual share of that market for each year from 1998 to the present.

RESPONSE TO INTERROGATORY NO. 22:

Power Integrations objects to this request on the grounds that it is circular and it does not identify any Power Integrations products.

Subject to its general and specific objections Power Integrations answers that a market does exist in the United States for its pulse width modulation products. Power Integrations will produce pursuant to Rule 33(d) documents in it possession regarding the

market for Power Integrations' pulse width modulation products that it locates after a reasonable search that could arguably be responsive to this request.

INTERROGATORY NO. 23:

For each Power Integrations product identified in response to Interrogatory No. 22, state the products' annual sales by country from October 20, 1998 to the present.

RESPONSE TO INTERROGATORY NO. 23:

Power Integrations objects to this request on the grounds that Interrogatory No. 22 is circular and it does not identify any Power Integrations products. Power Integrations objects to this request to the extent that it seeks to discover evidence that is not relevant. Power Integrations further objects to this request to the extent that it is redundant. Subject to its general and specific objections and subject to the extent Power Integrations can interpret this request, Power Integrations incorporates its answers to Interrogatory No. 17.

INTERROGATORY NO. 24:

For each Power Integrations product identified in response to Interrogatory No. 22, state the products' market share by country from October 20, 1998 to the present.

RESPONSE TO INTERROGATORY NO. 24:

Power Integrations objects to this request on the grounds that Interrogatory No. 22 is circular and it does not identify any Power Integrations products. Power Integrations objects to this request on the grounds that the market share of Power Integrations' products by country is not relevant. Subject to its general and specific objections and subject to the extent Power Integrations can interpret this request, Power Integrations will produce pursuant to Rule 33(d) documents in it possession regarding the market share for Power Integrations' pulse width modulation products that it locates after a reasonable search that could arguably be responsive to this request.

24

INTERROGATORY NO. 25:

Identify all non-infringing switches that could be used as alternatives to the devices claimed by the Power Integrations patents including, but not limited to, traditional linear transformers, discrete switcher power supplies, discrete components such as high-voltage Bipolar and MOSFET transistors, PWM controller ICs, passive components, hybrid and single high-voltage ICs.

RESPONSE TO INTERROGATORY NO. 25:

Power Integrations objects to this request to the extent that it seeks to discover evidence that is not relevant. Subject to its general and specific objections Power Integrations answers that many devices exist that may be used to construct power conversion devices such as those recited in request. Power Integrations contends that there are no acceptable non-infringing substitutes for the devices claimed by the Power Integrations' patents.

INTERROGATORY NO. 26:

Identify each license, covenant not to sue, release, or right to practice the asserted claims of the Power Integrations Patents that Power Integrations has provided and, for each, state its terms including, but not limited to, identifying the party receiving the rights, the duration of the license, the scope of the license, any limitations on the license, and any royalty or other consideration received or paid.

RESPONSE TO INTERROGATORY NO. 26:

Subject to its general objections Power Integrations answers that it has licensed the inventions of the Power Integrations' patents to Matsushita Electronic Corporation and OKI Semiconductor Corporation. Power Integrations will produce pursuant to Rule 33(d) documents in it possession that it locates after a reasonable search that could arguably be responsive to this request.

25

INTERROGATORY NO. 27:

Identify any evidence of an established or reasonable royalty rate for each of the Power Integrations Patents including, but not limited to, (i) the royalties actually received by Power Integrations for the licensing of the Power Integrations Patents, (ii) any rates paid by the Power Integrations for the use of other patents comparable to the Power Integrations Patents, (iii) the nature and scope of any licenses in (i) or (ii), as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold, (iv) Power Integrations' policy or marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under conditions designed to preserve that monopoly or by freely licensing others, (v) the effect of selling Power Integrations products covered by the Power Integrations Patents in promoting sales of other products of Power Integrations; the existing value of the products covered by the Power Integrations Patents as a generator of sales of its non-patented items; and the extent of any derivative or convoyed sales as a result of sales of any Power Integrations products covered by the Power Integrations Patents, (vi) the established profitability of the products made under the Power Integrations Patents; their commercial success; and their current popularity, (vii) the utility and advantages of the Power Integrations products covered by the Power Integrations Patents over the prior art, if any, (viii) the extent to which Power Integrations has made use of the invention covered by the asserted claims of the Power Integrations Patents; and any evidence probative of the value of that use, (ix) the portion of the profit or of the selling price that may be customary in Power Integrations' business or in comparable businesses to allow for the use of the invention covered by the asserted claims of the Power Integrations Patents or analogous inventions, (x) the portion of the realizable profit that should be credited to the invention covered by the asserted claims of the Power Integrations Patents as distinguished from non-patented elements, the

26

manufacturing process, business risks, or significant features or improvements added by Fairchild, and (xi) any evidence or factor of what would be considered relevant by Power Integrations to the hypothetical negotiation of a license to the asserted claims of the Power Integrations Patents.

RESPONSE TO INTERROGATORY NO. 27:

Power Integrations objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Power Integrations further objects to this request to the extent that it prematurely seeks information that will be the subject of expert testimony. Subject to its general and specific objections, Power Integrations will produce pursuant to Rule 33(d) documents in it possession that it locates after a reasonable search that could arguably be responsive to this request.

INTERROGATORY NO. 28:

Separately for each interrogatory to which Power Integrations has responded in whole or in part, identify the source of such response including, but not limited to, each person who provided or helped provide the answer or any information concerning the answer to that interrogatory including, but not limited to, providing the home and work address for each such person, their official job title, and their responsibilities and any documents relied upon.

RESPONSE TO INTERROGATORY NO. 28:

Power Integrations objects to this request to the extent it seeks information that is protected by the attorney client privilege, the work product doctrine, or another applicable privilege. Subject to its general and specific objections Power Integrations answers that the information was obtained from individuals identified in its Rule 26 statement and the documents identified and to be produced in accordance with the Federal Rules of Civil Procedure.

27