# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

August 18, 2005

The Honorable Joseph J. Farnan, Jr.      VIA ELECTRONIC FILING
U.S. District Court
District of Delaware
844 King Street
Wilmington, DE  19801

>   Re:   *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc., et al.*,
>   C.A. No. 04-1371-JJF

Dear Judge Farnan:

     On behalf of the Fairchild defendants, we write in response to Power Integrations' motion to amend the complaint. Power Integrations' motion is now moot. Fairchild has informed Power Integrations that seven of the nine Korean witnesses that Power Integrations seeks to compel are no longer employed by Fairchild Korea. With respect to the two remaining witnesses, one is a manager with no involvement with the design of the accused devices. The other is an application engineer and, in light of the Court's recent Order and in an effort to resolve this dispute, Fairchild offered to produce him for deposition in Korea. Power Integrations rejected this compromise and refused to withdraw its Motion, forcing Fairchild to file this Answering Brief.

     Power Integrations' conduct demonstrates that Power Integrations is more concerned with harassing Fairchild than in seeking legitimate discovery. When informed that the witnesses that it had moved to compel were no longer employed by Fairchild Korea, Power Integrations simply identified four new Korean witnesses *for the very first time on August 17, 2005*. Clearly, Power Integrations felt it unnecessary to depose these witnesses until it learned that it could not otherwise force Fairchild to go to the expense and inconvenience of preparing and defending multiple depositions in Korea of witnesses that are not fluent in English.

     The Fairchild defendants have always agreed to produce witnesses prepared to testify in response to Power Integrations' draft deposition topics. While Fairchild could have complied with Rule 30(b)(6) simply by producing a U.S. witness, Fairchild agreed to produce Korean individuals knowledgeable about the design and manufacture of the accused products. Messrs. Jang and Han designed the frequency variation and soft start circuits at issue. Mr. Joen is a lead process engineer who was directly involved in developing the processes used to fabricate the accused products.[1] This requires travel to Korea, translation services, and the added difficulties

---

[1] In addition, following the Court's Order of August 9, 2005, Fairchild has agreed to produce Mr. Lee to testify in response to the 30(b)(6) topics relating to the foreign marketing and sale of the accused products.

The Honorable Joseph L. Farnan, Jr.
August 17, 2005
Page 2

posed by deposing foreign, non-party witnesses. For Power Integrations to argue that Fairchild's willingness to cooperate and provide knowledgeable witnesses somehow gives Power Integrations license to depose an unlimited number of additional Korean witnesses is nonsensical.

The Court should likewise deny Power Integrations' untimely motion to amend its complaint to add Fairchild Korea as a party. Power Integrations admits that its only reason to seek this amendment is for the improper purpose of forcing burdensome and redundant depositions of Fairchild Korea employees. Motion, p. 2. Since eight of the nine witnesses Power Integrations seeks to depose are either not employed by Fairchild Korea or have not been involved with the design of the accused devices, Power Integrations' Motion to Amend should also be denied.

I.     **Background.**

While the parties agreed – and the Court ordered – that the last day to add a party was April 15, 2005, Power Integrations delayed almost four months and before filing its Motion on August 8, 2005. In an effort to justify its untimely motion, Power Integrations engages in a one-sided recitation of select facts to accuse Fairchild of playing discovery games. This is simply not true.

From the start of this case, Fairchild has repeatedly told Power Integrations that the named defendants have little or nothing to do with the accused devices, which were designed, manufactured and sold abroad. In its December 9, 2004 Answer, Fairchild denied designing or manufacturing any of the devices and admitted only that "it imports a *de minimis* amount of PWM integrated circuit devices into the United States and that it sells and offers to sell a *de minimis* amount of PWM integrated circuit devices in the United States." Answer, ¶ 7. As early as January and February, 2005, Fairchild informed Power Integrations by both letter and telephone that all of the relevant technical discovery was located in Korea. Power Integrations understood this – they provided a list of terms *in Korean* for Fairchild to use in its search for responsive documents. Moreover, Fairchild unambiguously stated that it would not produce employees of non-party Fairchild Korea for individual depositions over a month before Power Integrations filed its motion. Exh. A.

Despite knowing from the start of the case that the witnesses seeks to compel have never been employed by either named defendant, Power Integrations admits that deliberately chose not to add Fairchild Korea as a party. ("The propriety of asserting jurisdiction over (and taking discovery from) Fairchild Korea is so obvious that Power Integrations did not believe it needed to name the wholly-owned subsidiary as a defendant...." Motion, p. 9). Having made this calculated decision over eight months ago, presumably to avoid the cost and inconvenience of

The Honorable Joseph L. Farnan, Jr.
August 17, 2005
Page 3

serving Fairchild Korea abroad, it is disingenuous of Power Integrations now to claim that Fairchild "suddenly" changed position.

Far from "playing games," Fairchild has bent over backwards to provide Power Integrations with the discovery it has demanded. At considerable expense, Fairchild sent a team of three attorneys, two paralegals, and a consultant to Fairchild Korea for almost two weeks in order to gather potentially responsive documents and meet with Korean individuals. Fairchild has produced over a million pages of such documents without once quibbling over whether it was obligated to produce documents controlled by its subsidiary. For Power Integrations to seek to use this cooperation as a basis to compel additional discovery is cynical at best.

In contrast, Power Integrations' entire course of conduct in this litigation has been one of delay. Power Integrations delayed serving discovery requests on Fairchild, delayed responding to Fairchild's discovery, delayed providing witnesses for deposition, and did not even serve Fairchild with the notices of deposition for which Power Integrations now seeks to compel witnesses prior to August 17, 2005. Late that afternoon, Power Integrations noticed 23 depositions, several for witnesses Power Integrations never even suggested it would seek to depose. This is in addition to seven third-party subpoenas Power Integrations served on August 10, 2005 (again, without even notifying Fairchild that it would seek this discovery).[2] In contrast, Fairchild began to notice depositions in July and requested witnesses for that month. Power Integrations, however, refused to produce them. Further, the sole inventor of one of Power Integrations' asserted patents apparently resides in Sweden. *While Power Integrations' attorneys claim to represent him, they will not accept a subpoena on his behalf and, instead, insist that Fairchild must effect service through the Hague Convention – precisely the conduct that Power Integrations now complains is improper.*

II.   **Power Integrations' Motion To Compel Should Be Denied.**

   A.   **Power Integrations Has Not Met Its Burden of Proof.**

To compel discovery, Power Integrations must, at the very least, identify some reason to believe that the discovery may be relevant to this case. Fed. R. Civ. P. 26(b)(1). Power Integrations has failed to do so. In fact, Power Integrations has failed even to identify the

---

[2] Eleven of these depositions are noticed to begin on September 1, 2005 and another seventeen depositions are noticed to begin on September 12, 2005. The remaining two depositions are noticed for September 5 and 7, 2005. Since Power Integrations delayed seeking any depositions in July or August knowing that fact discovery closes on September 30, 2005, Power Integrations appears determined to delay the case by demanding an impossible schedule shortly before the close of fact discovery. In light of the extreme number of late noticed depositions and Power Integrations' apparent intention to seek additional depositions of undisclosed witnesses, Fairchild requests a protective order to prevent Power Integrations from harassing Fairchild with unreasonable discovery demands. *See* Fed. R. Civ. P. 26(b)(2).

The Honorable Joseph L. Farnan, Jr.
August 17, 2005
Page 4

particular depositions it seeks to compel. While Fairchild initially assumed this omission was inadvertent, Power Integrations has now made clear that it seeks nothing less than to depose an unlimited number of foreign witnesses who are not familiar with the accused devices, not fluent in English, not familiar with U.S. litigation, and not a party to this action.

On June 1, 2005, Power Integrations identified four Korean witnesses it would like to depose: E.S. Kim, K.W. Jang, Y.C. Ryu, and C.S. Lim. Exh. B. After Fairchild once again explained that it would not produce non-party witnesses for individual depositions, Power Integrations sent another letter on July 15, 2005 identifying an additional five Korean witnesses (for a total of nine Korean deponents). Fairchild again explained that it would not produce these witnesses for individual depositions but would make three properly prepared and knowledgeable witnesses available as 30(b)(6) deponents.[3] Power Integrations responded on July 29, 2005 with a third letter dropping its request for one of the Korean witnesses but identifying a new Korean witnesses. Exh. C. Thus, Power Integrations sought to depose *nine* non-party Korean witnesses in addition to the four witnesses Fairchild had agreed to produce.

Power Integrations has failed to state any reason for the nine additional depositions it demanded. Power Integrations merely speculates that Fairchild's 30(b)(6) witnesses may not be fully prepared. While Power Integrations has yet to serve a 30(b)(6) deposition notice, Fairchild has assured Power Integrations that it will comply with its discovery obligations and produce witnesses to testify in response to Power Integrations' draft notice. Power Integrations will have ample opportunity to obtain the discovery sought through these witnesses. Fed. R. Civ. P. 26(b)(2)(ii). Additional witnesses on these topics are unreasonably cumulative and unnecessary. *See* Fed. R. Civ. P. 26(b)(2)(i). Accordingly, the burden and expense of preparing and deposing these witnesses – all of whom would need to be prepared and deposed through translators – outweighs any minimal benefit afforded by their depositions. Fed. R. Civ. P. 26(b)(2)(iii).

Since Power Integrations failed to explain why it believed it necessary to depose nine additional Korean witnesses, Fairchild's attorneys requested more information from Fairchild Korea about these individuals. Around 7:30 p.m. on August 16, 2005, Fairchild's attorneys learned for the first time that seven of these nine individuals have recently left Fairchild Korea or have tendered their resignations. Exh. G, Declaration of Sang-Eui. Han. The next morning,

---

[3] Power Integrations paraphrased the decision in *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.* to argue that a party must produce specific deponents employed by its subsidiary for individual depositions. Motion, p. 5. What the case actually held, however, was that "the scope of the [parent] entities' obligation in responding to a *30(b)(6) notice* is identical to its scope in responding to interrogatories served pursuant to Rule 33 or a document request served pursuant to Rule 34, namely, it must produce a witness prepared to testify with the knowledge of the subsidiaries and affiliates if the subsidiaries and affiliates are within its control." 2002 U.S. Dist. LEXIS 14682 at *5-6, (S.D. NY, 2002) (emphasis added) (for the convenience of the Court, a copy of this decision is attached as Exhibit H). Fairchild has, at all times, agreed to produce 30(b)(6) deponents prepared to testify with the knowledge of Fairchild Korea.

The Honorable Joseph L. Farnan, Jr.
August 17, 2005
Page 5

Fairchild informed Power Integrations of the situation and volunteered to provide contact information for these individuals to the extent Fairchild Korea had such information. Exh. D. While Power Integrations' attorneys initially agreed that the only Korean depositions they sought were the nine previously identified individuals, Power Integrations quickly called back with a new list of four previously undisclosed deponents: S.T. Im, Dr. Huh, Atman Chou, and Jin-Ho Choi. Exh. E.

Power Integrations' sole purpose in seeking the deposition of additional Korean witnesses is to harass Fairchild. Power Integrations has failed to explain why any of the additional depositions it seeks are necessary, let alone why it suddenly needs to depose Messrs. Im, Huh, Chou, and Choi. Clearly, Power Integrations does not care which witnesses it deposes, it simply insists that Fairchild, Fairchild Korea, and some unspecified Korean witnesses be put through the burden and expense of preparing for deposition and being deposed. This is not an appropriate reason to compel burdensome and unnecessary depositions of foreign individuals.

### B. The Requested Discovery Is Cumulative and Unduly Burdensome.

The reason Power Integrations is unable to articulate a need for additional depositions of Korean citizens is that any limited information they may provide is cumulative and unnecessary. While Power Integrations has never served Fairchild with a 30(b)(6) deposition notice, it has provided various drafts of 30(b)(6) topics. Fairchild has agreed to produce knowledgeable witnesses and assured Power Integrations that these witnesses will be prepared to testify in response to the draft deposition topics. There are no issues for which Fairchild has refused to produce a witness.

In contrast, the burden on Fairchild, Fairchild Korea, and the various Korean citizens Power Integrations seeks to compel is extreme. None of these witnesses are fluent in English. Thus, Fairchild will have to fly translators as well as attorneys to Korea to prepare these witnesses for deposition. They would then be forced to interrupt their work to be questioned by U.S. lawyers, an intimidating prospect for a group of people unfamiliar with either the U.S. legal system or this case.

Further, Power Integrations has typically sought two days of deposition testimony from each Korean witness (purportedly because of the need for translators) and Fairchild has already agreed to produce four witnesses in Korea for seven days of deposition. Assuming each witnesses needs one and half days of preparation (again, made more difficult because of the need for everything to be translated), Fairchild attorneys already expect to be in Korea for 13 days. Late in the afternoon of August 17, 2005, Power Integrations noticed the depositions of 13 Korean witnesses (the four witnesses Fairchild already agreed to produce and nine additional witnesses, four of whom had never previously been identified by Power Integrations as potential deponents) and stated that it will "likely identify further witnesses for depositions in the future."

The Honorable Joseph L. Farnan, Jr.
August 17, 2005
Page 6

Exh. F. Assuming that each of these nine additional deponents may be deposed for two days and require one and half day of preparation, Power Integrations is seeking to force Fairchild's attorneys to spend over 44 business days (more than six weeks) in depositions in Korea based on Power Integrations' unsupported speculation that one of these witnesses may have some unspecified information relevant to this case.[4] The extraordinary burden on Fairchild, Fairchild Korea, and the Korean witnesses clearly outweighs any need Power Integrations believes it has for this discovery.[5]

### C. Fairchild Cannot Produce Witnesses Not Employed by Fairchild Korea.

While it should go without saying, Fairchild cannot be compelled to produce or accept service on behalf of witnesses that are not employed by either Fairchild or Fairchild Korea. Fairchild has no control over these Korean citizens. Despite this, Power Integrations served Fairchild with notices for the deposition of the employees who have departed Fairchild Korea. Power Integrations' Motion to compel should be denied with respect to individuals not employed by Fairchild Korea.

### III. Power Integrations' Motion To Amend Should Also Be Denied

### A. Power Integrations' Desire For Cumulative and Unduly Burdensome Discovery Does Not Provide A Valid Basis For Amending Its Complaint.

Power Integrations has not pointed to any activity by Fairchild Korea in the United States that would subject it to liability for infringing U.S. patents. Instead, Power Integrations' express and sole reason to add Fairchild Korea to this action is to compel burdensome and cumulative depositions of Korean employees. Motion, p. 2. This does not provide a good faith basis for Power Integrations' Amended Complaint and Power Integrations' Motion should be denied. *See* Fed. R. Civ. P. 11.

Moreover, for the reasons set forth above, the additional depositions Power Integrations seeks to compel by amending its complaint are unnecessary and unduly burdensome. Power Integrations will receive all of the discovery to which it is entitled without this amendment. Since Power Integrations should not be permitted to compel additional Korean depositions even were Fairchild Korea added as a party, Power Integrations' Motion should be denied. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[4] Even were Power Integrations only seeking to depose the six individuals employed by Fairchild Korea, this would require Fairchild's attorneys to spend 34 business days (almost five weeks) in Korea.

[5] Should the Court grant Power Integrations' Motion, Fairchild requests that Power Integrations identify the specific additional witnesses it seeks to depose so that Fairchild can seek a protective order, if appropriate.

### B. Power Integrations' Amendment Is Untimely.

From the start of this case, Fairchild repeatedly informed Power Integrations that all of the accused devices were designed and manufactured in Korea. Indeed, Power Integrations admits that it knew that the witnesses it now seeks to depose were not employed by either Fairchild defendant. Despite this, Power Integrations decided not to seek to add Fairchild Korea to this action before the April 15, 2005 deadline. Instead, Power Integrations delayed until August 8, 2005 – almost four months later – before bringing this Motion. Power Integrations' Motion is untimely, prejudices Fairchild, and is likely to delay resolution of this action. For each of these reasons, it should be denied.

Power Integrations' Motion should be seen for what it is – an untimely attempt to harass Fairchild by demanding incredibly costly, inconvenient, and unnecessary depositions of foreign non-parties shortly before the close of fact discovery. Power Integrations Motion should be denied.

Respectfully,

*/s/ John G. Day*

John G. Day

JGD/dmf

Attachments
cc: William J. Marsden, Jr., Esquire (by hand)
    Frank E. Scherkenbach (via electronic mail and Federal Express)
    Michael Kane, Esquire (via electronic mail and Federal Express)
    Howard G. Pollack, Esquire (via electronic mail and Federal Express)
    G. Hopkins Guy, III, Esquire (via electronic mail and Federal Express)