**Exhibit H**

*Goh v. Baldor Electric Co.*, No. 3:98-MC-064-T, 1999 WL 20943 (N.D. Tex. Jan. 13, 1999)

Case 1:04-cv-01371-JJF    Document 132-9    Filed 11/11/2005    Page 1 of 5



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1999 WL 20943 (N.D.Tex.)  
(Cite as: 1999 WL 20943 (N.D.Tex.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.
Steven GOH and Elizabeth Goh, Plaintiffs,
v.
BALDOR ELECTRIC COMPANY, a Missouri Corporation, Defendant.
No. 3:98-MC-064-T.

Jan. 13, 1999.

*MEMORANDUM OPINION AND ORDER*

STICKNEY, Magistrate J.

*1 Pursuant to the provisions of Title 28, United States Code, Section 636(b) and an Order of the Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge. Before this Court is Plaintiffs' Motion to Compel Directed to Ernst & Young, LLP, filed September 29, 1998. Ernst & Young LLP filed a response to Plaintiffs' Motion to Compel on November 10, 1998. Plaintiffs' filed a reply to Ernst & Young, LLP's Response to Plaintiffs' Motion to Compel on November 25, 1998. A hearing was held on the Motion on November 30, 1998 at 10:00 a.m. Based upon arguments in the Motion and at the hearing, this Court finds as follows.

I. Background

Plaintiffs Steven and Elizabeth Goh (the "Gohs"), citizens of the Republic of Singapore, filed suit in the United States District Court for the Eastern District of Missouri against Baldor Electric Company. [FN1] Plaintiff Steven Goh entered into an arrangement with Defendant Baldor, a multinational company that manufactures, distributes, and sells electrical devices, whereby Steven Goh would participate in the development of markets for Baldor products in Singapore and the Far East. In 1983, Baldor Electric Pte. Ltd. in the Far East ("Baldor Singapore") was formed as an affiliate company to Baldor Electric to which Plaintiffs owned 40% of its stock. In 1991 two new corporations were formed as wholly owned subsidiaries of Baldor Far East, namely Baldor Electric Ltd. in Thailand ("Baldor Thailand") and Baldor Industrial Automation Pte. Ltd. ("Baldor Automation"). The underlying dispute of the case is financial in nature and therefore, Ernst & Young Singapore and Ernst & Young Thailand, as auditors of each of the three Baldor companies since their respective formations, was brought into the instant discovery dispute. Ernst & Young LLP's involvement however stems solely from a valuation opinion of Mr. Goh's 40% interest in Baldor Singapore executed by the Dallas office of Ernst & Young LLP.

FN1. Plaintiffs' Motion to Compel is before this Court as a miscellaneous matter.

Plaintiffs served Ernst and Young LLP with a subpoena duces tecum on February 4, 1998 which requests that Ernst & Young LLP produce all work papers associated with the audits of Baldor Singapore, Baldor Thailand, and Baldor Automation from 1983-1987 and documents associated with the valuation of Plaintiffs 40% interest in Baldor Singapore. Ernst & Young LLP filed no objections to the subpoena duces tecum. Although many documents were produced, Ernst & Young LLP has not produced all requested documents claiming that such documents were prepared by and are in the possession of Ernst & Young Singapore and Ernst & Young Thailand. Plaintiffs therefore seek to compel Ernst & Young LLP to produce all documents responsive to the Goh's subpoena duces tecum irrespective of the location of the documents. Both sides request attorneys fees incurred in conjunction with this Motion.

II. Analysis

The central question at issue here is whether Ernst & Young LLP, a nonparty limited liability partnership can be compelled to produce documents allegedly possessed by Ernst & Young Singapore and Ernst & Young Thailand, also both nonparties. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a court can command production of documents in a party's "possession, custody, and control." Here, Ernst & Young LLP undisputably does not have possession or custody of the documents at issue. Thus, this Court must decide if Ernst & Young LLP has control over documents allegedly located at Ernst & Young Singapore and Ernst & Young Thailand.

*2 Neither the Federal Rules of Civil Procedure nor

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 1999 WL 20943 (N.D.Tex.)
(Cite as: 1999 WL 20943 (N.D.Tex.))

the Fifth Circuit offer clear, definitive guidance as to the appropriate definition of control. Nevertheless, Ernst & Young LLP states that control is "almost uniformly defined as the legal right to obtain the documents requested upon demand." *Ernst & Young LLP's Response To Plaintiffs' Motion to Compel,* Page 6. [FN2] Plaintiff however urges that federal courts "uniformly hold that ... control is not narrowly limited to instances where the party from whom documents are requested has a 'legal right' to obtain the documents, but rather, includes circumstances where the party has the authority or ability to obtain such documents." *Plaintiffs' Motion to Compel Directed to Ernst & Young,* Page 8. [FN3] For the reasons that follow, this Court refrains from adopting a particular definition of control because Ernst & Young LLP does not manifest the legal right, authority, or ability to obtain the documents irrespective of the definition applied.

> FN2. Ernst & Young LLP cites the following authority, primarily from Circuit Courts. See *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995), *cert. dismissed,* 517 U.S. 1205, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996); *Int'l Union of Petroleum & Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1452 (9th Cir.1989); *Gerling Int'l Ins. Co. v. Commissioner,* 839 F.2d 131, 140 (3d Cir.1988); *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984); *Estate of Young v. Holmes,* 134 F.R.D. 291, 294 (D.Nev.1991).

> FN3. Plaintiffs rely on the following district court authority to support their position. See *Addamax Corp. v. Open Software Found., Inc.,* 148 F.R.D. 462, 467-68 (D.Mass.1993); *Cambden Iron & Metal, Inc. v. Marubeni Am. Corp.,* 138 F.R.D. 438, 441 (D.N.J.1991).

When determining the sufficiency of control of material for purposes of Rule 34 of the Federal Rules of Civil Procedure, the nature of the relationship between the party and nonparty corporation is the key. See *Afros S.P.A. v. Krauss-Maffei Corp.,* 113 F.R.D. 127, 129-30 (D.Del.1986). The relationship is determined on facts, therefore, this Court "must examine the facts of the case before it in order to determine if the relationship is such that [discovery] is to be compelled." *Addamax Corp. v. Open Software Found., Inc.,* 148 F.R.D. 462, 469 (D.Mass.1993). Plaintiffs bear the burden of proving that Ernst & Young LLP's relationship with both Ernst & Young Singapore and Ernst & Young Thailand indicates its control over the documents. See, e.g., *U.S. v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1452 (9th Cir.1989); *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.,* 138 F.R.D. 438, 441 (D.N.J.1991). For support of their argument that Ernst & Young LLP has control over documents at Ernst & Young Singapore and Ernst & Young Thailand, Plaintiffs rely on *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.,* 176 F.R.D. 75 (W.D.N.Y.1996), and *Cooper Indus., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918 (S.D.N.Y.1984).

This Court disagrees with Plaintiffs claim that *Alcan Int'l* is directly on point. In *Alcan Int'l*, the defendant moved to compel plaintiff to produce documents allegedly in control of plaintiff's German "foreign corporate affiliate." See *Alcan Int'l,* 176 F.R.D. at 75. Utilizing a transactional relationship test, the *Alcan Int'l* court noted that plaintiff and its German affiliate were (1) corporate members of a unified worldwide business "under common control"; (2) the unified worldwide business issues a consolidated financial statement; (3) the same corporate logo was used in their promotional materials; and (4) testimony supported the existence of "regular contact" among the affiliates regarding product sales and marketing. See *id.* at 78-79. Plaintiff analogizes the instant case to *Alcan Int'l* in claiming that Ernst & Young LLP, Ernst and Young Singapore, and Ernst & Young Thailand are members of a unified corporate network, use the same corporate logo, and have regular contact with each other. Ernst & Young LLP, Ernst & Young Singapore, and Ernst & Young Thailand are indeed all members of a unified worldwide business entity, namely Ernst & Young International, Ltd., a Cayman Islands Limited Liability Company. See *Exhibit B to Ernst & Young's Response, Affidavit of Kathryn Oberly* (Oberly Affidavit), Page 2. However, Plaintiffs have not demonstrated that Ernst & Young International, Ltd. is under "common ownership" or that it issues a consolidated financial statement. In fact evidence indicates that Ernst & Young LLP, Ernst & Young Singapore, and Ernst & Young Thailand maintain separate revenues and have separate profit pools. See *Oberly Affidavit,* Page 2. Next, the correspondence in evidence between Ernst & Young LLP, Ernst & Young Singapore, and Ernst & Young Thailand exemplifies that the identical Ernst & Young logo [FN4] is used on stationary and facsimile covers. However, the correspondence sent from Ernst & Young Singapore and Ernst & Young Thailand uses the logo and the name Ernst & Young whereas the correspondence from Ernst & Young LLP to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3
Not Reported in F.Supp.2d, 1999 WL 20943 (N.D.Tex.)
**(Cite as: 1999 WL 20943 (N.D.Tex.))**

foreign entities uses the logo and the name Ernst & Young LLP. Moreover, it has not been shown that the same logo is used in promotional materials, as was the case in *Alcan Int'l*. Finally, this Court does not find that contact between the entities concerning this subpoena rises to the level of "regular contact" found in *Alcan Int'l*. In *Alcan Int'l*, the company compelled to produce documents in possession of the related foreign entity was the foreign country's exclusive United States distributor and manufacturer. *See id.* at 79. Thus, testimony in *Alcan Int'l* revealed regular contact among the entities regarding product sales and marketing. *See id.* at 79. The type of regular contact found in *Alcan Int'l* is simply non existent in the instant case. Plaintiffs assert that miscellaneous correspondence between Ernst & Young LLP, Ernst & Young Singapore and Ernst & Young Thailand reflects regular contact. Upon review of said correspondence, this Court disagrees because the correspondence concerns Ernst & Young LLP's attempt to obtain the information requested for this case.

> FN4. The Ernst & Young logo to which this Court refers consists of the "EY" symbol before the words Ernst & Young and including the words Ernst & Young.

*3 Additionally, Plaintiffs rely on *Cooper Indus., 102 F.R.D. at 918*, another distinguishable case. In *Cooper Indus.*, the court determined that documents in actual possession of a non-party foreign parent were within the litigating subsidiary's custody and control where: (1) the subsidiary sold and serviced airplanes to which the documents related; (2) the British parent was the manufacturer of those airplanes; (3) the subsidiary was wholly owned by the British parent; (4) the subsidiary was essentially the distributor and servicer of the British airplanes in the United States; (5) in response to an earlier document request, counsel for the subsidiary instructed plaintiff to make all inquiries through him because he represented the British parent; (6) in the contract of sale for the airplane in question, the subsidiary described itself as an "affiliated company" of the British parent; and (7) the documents plaintiff sought related to the airplanes that the subsidiary "work[ed] with everyday." *Id.* at 919. Here, the instant discovery dispute does not deal with a parent corporation/ wholly owned subsidiary situation. Moreover, none of the circumstances in *Cooper Indus.* are apparent in the instant case.

The evidence presented falls short of proving that Ernst & Young LLP has control over the disputed documents. Ernst & Young LLP was able to obtain some documents initially from the overseas entities through an honored request. However, Ernst & Young Singapore and Ernst & Young Thailand could have honored similar requests from another individual or entity if such requests were made. Other than shared membership in the common association of Ernst & Young International, Ernst & Young LLP, Ernst & Young Singapore, and Ernst & Young Thailand are separate entities. *See Oberly Affidavit*, Page 1-2. Ernst & Young LLP is a United States limited liability partnership organized under laws of the State of Delaware. *See id.* Ernst & Young Singapore and Ernst & Young Thailand are separate general partnerships organized under the laws of Singapore and Thailand, respectively. *See id.* Each entity controls its own resources, maintains separate profit pools, and holds different partners, members, and management. *See id.*

Finally, Plaintiffs repeatedly assert that Ernst & Young LLP should not be permitted to shield crucial documents by maintaining them with its foreign entities and that it is inconceivable that Ernst & Young LLP's Dallas office does not have access to all documents purportedly prepared by and in the custody of such foreign entities. *See, e.g., Alcan Int'l, 176 F.R.D. at 79; Cooper Indus., 102 F.R.D. at 920.* Plaintiffs have failed to prove this assertion. Ernst & Young Singapore and Ernst & Young Thailand have refused to turn over documents to Ernst & Young LLP in Dallas because it has a policy against voluntarily providing documents to be used in litigation. *See, e.g., Ernst & Young LLP's Response to Plaintiff's Motion to Compel, Exhibits H & I, Letter of Roy Britain, Head of Audit for Ernst & Young Singapore* ("In circumstances where our working papers are likely to be used in litigation, we will generally not permit outsiders to review our working papers. These circumstances appear to apply in this case ... therefore ... we will not produce documents...."). In the instant situation where Ernst & Young's foreign entities have refused to voluntarily provide the documents in question, it necessarily follows that Ernst & Young LLP in Dallas does not have control over the documents. It is therefore

*4 ORDERED that Plaintiffs' Motion to Compel Directed to Ernst & Young LLP is hereby DENIED. It is

FURTHER ORDERED that neither Plaintiffs nor Ernst & Young LLP are entitled to attorneys fees incurred in conjunction with the Motion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 1999 WL 20943 (N.D.Tex.)
**(Cite as: 1999 WL 20943 (N.D.Tex.))**

Not Reported in F.Supp.2d, 1999 WL 20943 (N.D.Tex.)

**Motions, Pleadings and Filings (Back to top)**

• 3:98mc00064 (Docket) (Sep. 29, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.