**Exhbit I**

*Hunter Douglas Inc. v. Comfortex Corp.*, No. M8-85, 1999 U.S. Dist. Lexis 101 (S.D.N.Y. Jan. 11. 1999)

LEXSEE 1999 U.S. DIST. LEXIS 101

HUNTER DOUGLAS, INC., Plaintiff,-against-COMFORTEX CORPORATION, Defendant.

Civil Action No. M8-85 (WHP), [98 CV 0479 (LEK) (DNH), N.D.N.Y.]

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1999 U.S. Dist. LEXIS 101

January 11, 1999, Decided
January 11, 1999, Filed

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] WILLIAM H. PAULEY III, U.S.D.J.

**OPINIONBY:** WILLIAM H. PAULEY III

**OPINION:**

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Hunter Douglas, Inc. ("Hunter") commenced this miscellaneous proceeding by order to show cause seeking to compel a nonparty to comply with a subpoena duces tecum and ad testificandum issued from this district on December 15, 1998. Blinds to Go. Inc. ("Blinds to Go"), n1 the nonparty, is represented by the same attorneys representing the defendant, Comfortex Corp. ("Comfortex"), in the underlying patent infringement action pending in the Northern District of New York. Blinds to Go is a customer of Comfortex and has purchased for resale the allegedly infringing product. The alignment of the litigants and their respective counsel in this proceeding is noteworthy because they are all involved in the underlying action pending in the Northern District.

> n1 According to Comfortex's counsel, Blinds to Go is a corporation of New Brunswick, Canada, with its corporate headquarters in Montreal. Its United States subsidiary. Blinds to Go (US) Inc., is a Delaware corporation with an office in Lyndhurst, New Jersey.

[*2]

Hunter filed its order to show cause to compel Blinds to Go to comply with a subpoena served on December 15, 1998. The December 15, 1998 subpoena that Hunter seeks to enforce on an expedited basis bears a striking resemblance to an earlier subpoena it served on Blinds to Go on October 7, 1998. In fact, all counsel acknowledged during oral argument that the only differences between the two subpoenas are that the December 15, 1998 subpoena seeks testimony from a witness and adds two additional categories of documents to the fourteen categories enumerated in the first subpoena.

The October 7 subpoena precipitated a flurry of communications with the Northern District of New York. n2 First, by letter dated October 20, 1998 Comfortex's counsel, Robert Neuner, Esq., advised District Judge Lawrence E. Kahn that the Blinds to Go subpoena and other third party subpoenas "will be an issue before Magistrate Judge Hurd." His words were prophetic. A day later, Mr. Neuner, now representing Blinds to Go, interposed objections to the subpoena. n3 Those objections raised a host of issues, including the need for authorization from the appropriate judicial authorities in Canada, and other more pedestrian [*3] objections such as confidential business information, attorney client privilege, overbreadth and relevance.

> n2 In contrast, the October 7 subpoena, while issued from the Southern District of New York, created nary a ripple in this district. No orders to show cause or objections were filed here.

> n3 At oral argument on January 5, 1999, Mr. Neuner acknowledged that the objections to the October 7, 1998 subpoena duces tecum were properly captioned as "Objections of Blinds to Go, Inc. Pursuant to *FED. R. CIV. P. 45 (c)(2)(B)*" but inadvertently signed by Mr. Neuner, on behalf of his law firm Baker & Botts, LLP, as "Attorneys For Defendant Comfortex Corporation." See transcript at 5:7-17. Any confusion about the professional capacity in which Mr. Neuner was acting was dispelled during oral argument on the present applica-

Case 1:04-cv-01371-JJF    Document 132-10    Filed 11/11/2005    Page 3 of 5

Page 2
1999 U.S. Dist. LEXIS 101, *3

tion in this district.

On October 28, 1998, Magistrate Judge David N. Hurd entertained extensive argument on the October 7, 1998 subpoena and many other discovery issues. Unfortunately, no transcript [*4] of the proceedings was made and the attorneys have fallen back on their recollections of what was said and done. Not surprisingly, they agree on very little.

On its face, Magistrate Judge Hurd's order is clear and categorical. That order dated December 4, 1998 states:

> Defendant's objections to document subpoenas served on Blinds to Go, Newell Furnishings, Inc. and Mohawk Fabric Company are OVERRULED."

See Movant's Exhibit 8. While Magistrate Judge Hurd's words could not have been plainer, the litigants' counsel interpret them differently. In a logomochical exercise, Comfortex and Blinds to Go assert that Magistrate Judge Hurd's ruling is only binding on Comfortex and not the subpoenaed party, Blinds to Go, because of the Court's reference to the "Defendant's objections." Hunter insists that the opposite is true. Neither Comfortex nor Blinds to Go appealed or sought leave to reargue. Nor did Hunter, the prevailing party in that discovery dispute, seek to compel compliance or move for contempt in the Northern District of New York. Instead, the parties embarked on round two in this district and expect this Court to sort the matter out. n4

> n4 Any ambiguity in Magistrate Judge Hurd's order may be traced to the fact that Mr. Neuner was serving two different clients in the same proceeding and inadvertently executed a document on behalf of Comfortex when he was actually representing Blinds to Go.

[*5]

Having reviewed all of the motion papers and supplemental letter submissions and having heard oral argument, this Court grants that branch of Hunter's motion to compel production of documents and overrules Blinds to Go's objections to document request numbers 1 through 14 in the December 15, 1998 subpoena because they are clones of request numbers 1 through 14 in the October 7, 1998 subpoena. This Court declines to revisit matters which have already been ruled on in the Northern District of New York or to second guess the magistrate judge who has supervised discovery in the main action. n5

> n5 It should be noted, however, that the fact that defendant Comfortex has waived its objection of attorney-client privilege as a result of asserting certain affirmative defenses does not mean that Blinds to Go, a nonparty, has also waived that objection. If they so chose, counsel should bring this to the attention of Magistrate Judge Hurd at their next conference scheduled for January 14, 1999.

Document request numbers 15 [*6] and 16 in the December 15, 1998 subpoena are new and were not addressed by the magistrate judge in the Northern District of New York. Request number 15 seeks:

> Each document that refers to or relates to Comfortex's business dealings with Blinds to Go concerning Serenity or "Shangri-La"-type window coverings or fabric suitable for use in Serenity or "Shangri-La"-type window coverings, including without limitation each document that constitutes, refers to, or relates to (a) any rejection by Blinds to Go of any Serenity or "Shangri-La"-type fabric supplied by Comfortex; (b) any meetings between Comfortex representatives and Blinds to Go representatives concerning Serenity or "Shangri-La"-type window coverings or fabric; (c) any development or testing of any version of Serenity or "Shangri-La"-type product incorporating a single type of translucent fabric in both the front and rear facings of the product; (d) any agreement by Comfortex to take back Serenity or "Shangri-La"-type product rejected by Blinds to Go; and (e) Comfortex's disposition of any fabric rejected by Blinds to Go.

Request number 16 seeks:

> Each document that refers to or relates to any change by [*7] Comfortex in the fabrics incorporated in the facings of Serenity or "Shangri-La" window coverings, including without limitation each document that constitutes, refers to, or relates to (a) any survey of consumers performed in any Comfortex factory outlet store concerning any re-designed Serenity or "Shangri-La" product exhibiting an appearance of moire images; (b) any presentation by Comfortex to Comfortex dealers (including any presentation in New Jersey in July 1998) of any re-designed Serenity or "Shangri-La" product utilizing a single type

of translucent fabric in the product's front and back facings; (c) any records of consumer or retailer reaction to Serenity or "Shangri-La" window coverings incorporating a single type of translucent fabric in the product's front and back facings; (d) any records of orders placed on the basis of the original Serenity or "Shangri-La" product design which were filled with modified Serenity or "Shangri-La" product incorporating a single type of translucent fabric in the product's front and back facings; (e) any distribution by Comfortex of any revised advertising or marketing materials to be used in connection with any modified Serenity or "Shangri-La" [*8] product incorporating a single type of translucent fabric in the product's front and back facings; (f) any analysis of whether Comfortex should replace or recall any advertising and marketing materials for Serenity or "Shangri-La" distributed prior to Comfortex's initiation of sales of modified Serenity or "Shangri-La" product incorporating a single type of translucent fabric in the product's front and back facings.

This Court will consider these document requests de novo. Both appear relevant on their face and do not appear to be unduly burdensome. Moreover, no valid objections were raised by Blinds to Go during oral argument.

Defendant asserts that because the requested documents and the proffered deponent are located in Canada, this Court lacks jurisdiction to compel compliance. The fact that Blinds to Go (US), Inc., Blinds to Go's corporate subsidiary, has an office located within the reach of a subpoena issued from this district suggests otherwise. See *FED R. CIV. P. 45*.

In determining whether a corporation within the United States can be compelled to produce documents held by a foreign affiliate, this Court must first consider the nature of the relationship between [*9] the corporation and its affiliate. See *Addamax Corp. v. Open Software Found.,Inc.*, 148 F.R.D. 462, 467 (D.Mass.1993); *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 78 (W.D.N.Y.1996). If the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes. The critical inquiry is whether the affiliate can exercise custody and control over the documents.

The test to determine whether a corporation has custody and control over documents located with an overseas affiliate is not limited to whether the corporation has a legal right to those documents. See *Cooper Indus.,Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y.1984). Rather, the test focuses on whether the corporation has "access to the documents" and "ability to obtain the documents." *Addamax Corp. v. Open Software Found.,Inc.*, 148 F.R.D. 462, 467 (D.Mass.1993).

The nature of the relationship between Blinds to Go (US), Inc. and Blinds to Go is such that documents ordinarily flow freely between them. During oral argument, Blinds to Go's counsel acknowledged [*10] that if Blinds to Go was the subject of a government investigation in the United States and documents were sought here, Blinds to Go (US), Inc. could cause its corporate parent in Canada to comply with a lawful subpoena and produce documents in this district. See transcript at 27:10-16. In addition, it appears that much of the plaintiff's underlying cause of action stem from revenues derived from Blinds to Go's business dealings in the United States. n6 Finally, the mere fact that the subpoenaed documents are in Canada does not exempt them from discovery. See *Cooper Indus.,Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y.1984) ("The fact that the documents are situated in a foreign country does not bar their discovery."). n7 Therefore, Blinds to Go is ordered to comply with document request numbers 15 and 16 of the December 15, 1998 subpoena to the extent that Blinds to Go (US), Inc. can exercise custody and control over the relevant documents.

> n6 The documents that a corporation utilizes in the normal course of its business are presumed to be in its control unless proven otherwise. See *Cooper Indus.,Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n.1 (S.D.N.Y.1984)

[*11]

> n7 If a defendant could evade discovery in this manner, many domestic corporations would have a foreign affiliate for storing sensitive documents.

Finally, the December 15, 1998 subpoena differs from the October 7, 1998 subpoena in one other respect. It seeks to depose "the person(s) having most knowledge of the matters referred to in [requests numbers 1 through 16]." Blinds to Go's counsel objects and asserts that the only individual with the requisite knowledge is a Canadian national who resides in Montreal. While that information may be helpful to the parties, it is of little utility to a court presented with a motion to compel a "person with knowledge" from a corporation.

On the present record, this Court lacks the authority to direct the appearance of a Canadian national in this district. See e.g., *Price Waterhouse LLP v. First American Corp., et. al, 182 F.R.D. 56, 1998 U.S. Dist. LEXIS 12435, 1998 WL 474196,* at *8 (S.D.N.Y. 1998). The proper procedures for conducting such a deposition are set forth in *FED R. CIV. P. 28(b), 28 U.S.C. § 1781* and the Hague Convention on Taking Evidence Abroad in Civil or Commercial [*12] Matters. The parties acknowledge that these procedures have not been utilized and judicial economy suggests that any such application should be directed to the Northern District, where the underlying patent infringement action is pending.

Nevertheless, Blinds to Go should produce an officer or employee of Blinds to Go (US), Inc. with knowledge of the matters sought in the subpoena for deposition, who resides, is employed or regularly transacts business within 100 miles of this Court. See *FED R. CIV. P. 45(c)(3)(A)(ii).* That deposition can be excused if there is no officer or employee of the subsidiary in the United States that has knowledge of the matters about which Hunter seeks to inquire. In that event, Blinds to Go may offer an affidavit by its president or CEO that there is no person in the employ of the subsidiary in the United States with knowledge of the matters at issue here.

A final observation is warranted. This Court has devoted substantial time to oral argument and a review of this complicated and heavily litigated dispute. The parties and their counsel appear to be unreasonably multiplying the proceedings, a matter of concern under *28 U.S.C. § 1927.* By the litigants' [*13] own admission, Magistrate Judge Hurd has already devoted considerable time and energy to resolving discovery disputes in the underlying action, including the October 15, 1998 subpoena. However, this Court will leave such issues to my learned colleagues in the Northern District who are thoroughly familiar with all of the nuances of the parties' litigation activities in the underlying action.

Conclusion

For these reasons, it is ORDERED that:

(1) Blinds to Go shall comply with document request numbers 1 through 14 of the December 15, 1998 subpoena because those requests are identical to requests made in a prior subpoena that was the subject of a ruling of Magistrate Judge Hurd's order dated December 4, 1998;

(2) Blinds to Go shall comply with document request numbers 15 and 16 to the extent that Blinds to Go (US), Inc. can exercise custody and control over the relevant documents because the documents requested are relevant to the claims and not unduly burdensome;

(3) Blinds to Go shall produce an officer or employee of its United States subsidiary with knowledge of the matters sought in the December 15, 1998 subpoena or, alternatively, furnish an affidavit by the [*14] president or CEO of Blinds to Go stating that there are no such persons in the employ of Blinds to Go (US), Inc.; and

(4) the parties and Blinds to Go are directed to bring any additional matters relating to the production of documents or witnesses by Blinds to Go or Blinds to Go (US), Inc. before the magistrate judge assigned to supervise discovery in the underlying patent infringement action in the Northern District of New York.

Dated: New York, New York

January 11, 1999

SO ORDERED:

WILLIAM H. PAULEY III

U.S.D.J.