**Exhibit J**

*PCI Parfums et Cosmetiques International v. Perfumania*, 93 Civ. 9009, 1998 WL 646635
(S.D.N.Y. Sept. 21, 1998)

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 646635 (S.D.N.Y.)
(Cite as: 1998 WL 646635 (S.D.N.Y.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
PCI PARFUMS ET COSMETIQUES INT'L, et al.,
Plaintiffs,
v.
PERFUMANIA, INC., Defendant.
No. 93 Civ. 9009 (KMWRLE).

Sept. 21, 1998.

MEMORANDUM OPINION AND ORDER

ELLIS, Magistrate J.

*1 This action was referred ro me by the Honorable Kimba M. Wood, United States District Judge, for discovery motions on September 27, 1996. Before the court is defendant Perfumania's request for an order compelling a nonparty witness, Desgrippes Gobe, Inc. d/b/a Desgrippes Gobé & Associates ("DGI"), to respond to Perfumania's discovery requests pursuant to Rule 34(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") by producing documents in the possession of a nonparty French corporation named Desgrippes & Associes. Perfumania alleges that DGI and Desgrippes & Associes are interlocking companies for the purposes of Fed.R.Civ.P. 34(c). Desgrippes & Gobe disputes that they are interlocking companies and maintains that they only share a marketing relationship. For the reasons discussed below, defendant's motion is DENIED.

I. FACTUAL BACKGROUND

Plaintiff PCI Parfums alleges patent infringement against Perfumania stemming from the sale of Boucheron fragrance products. PCI Parfums alleges that it is the manufacturer of Boucheron fragrance products. Plaintiff Campbell & Thiselton alleges that it is the exclusive distributor of PCI Parfums' fragrance products and the exclusive licensee of PCI Parfums' United States design patents. PCI Parfums and Campbell & Thiselton claim that Boucheron fragrance products were imported into the United States without the consent or authorization of either PCI Parfums or plaintiff Campbell & Thiselton.

Perfumania seeks testimony and documents from DGI that purport to show that Desgrippes Gobe is the actual designer of the bottles encompassed by the patents that are the subject of this action. Perfumania asserts that the sought testimony and documents would dispute PCI Parfums' claims that their predecessor, Alain Boucheron, designed the bottles as claimed in the patents.

Perfumania points to a number of documents which it says are evidence that DGI and Desgrippes & Associes are the same company. Perfumania cites language in the DGI marketing brochure (attached hereto as Exhibit A) and the DGI web page on the internet (a copy of the internet page is attached hereto as Exhibit B). The brochure states, in pertinent part, that "Desgrippes Gobe was founded in Paris in 1971 by Joel Desgrippes under the name of Desgrippes & Associes." In reference to the opening of offices in different cities around the world, the brochure states that "[w]ith offices in Europe, North America and Asia, the firm is now definitely global ." The brochure further states that:

> In 1995 all the offices changed their name to Desgrippes Gobe & Associates. This transition formalized the long-standing relationship between the various offices and ensures a strong unified presence as the group moves ahead in a rapidly changing marketplace.

The web page refers to New York and Paris offices of DGI as "our company."

In October, 1997, pursuant to a Subpoena Duces Tecum, Perfumania deposed Carolyn Berke. Carolyn Berke is the Vice President of Finance and Administration of DGI. Berke Aff. at p. 1. [FN1] Berke stated in her deposition [FN2] that DGI and Desgrippes & Associes share only a "marketing relationship" and "while Joel Desgrippes owns a minority interest in DGI and is an outside director of DGI, he is neither an officer nor an employee of DGI." Berke Aff. at p. 2. Berke further stated that Joel Desgrippes currently owns 19.7% of DGI stock but "does not participate in the day-to-day running of DGI. Berke Supp. Aff at p. 2. [FN3] Berke states that while she cannot provide the court with a detailed financial history of Desgrippes & Associes, she has been informed that Joel Desgrippes owns 75% of the stock of that company. *Id.* at p3.

FN1. "Berke Aff. at ___" refers to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 1998 WL 646635 (S.D.N.Y.)
(Cite as: 1998 WL 646635 (S.D.N.Y.))

Affidavit of Carolyn Berke, July 27, 1998, in opposition to defendant's application to compel the production of documents.

FN2. The court and counsel for DGI have yet to receive a copy of that deposition

FN3. "Berke Supp. Aff. at ___" refers to Supplemental Affidavit of Carolyn Berke, September 10, 1998, in opposition to defendant's application to compel the production of documents.

*2 Marc Gobe is the President and Chairman of the Board of Directors of DGI owning 80.3% of the stock. *Id.* at 2. Gobe also owns 18% of the stock in Desgrippes & Associes. *Id.* at 3. However, "[w]hile Marc Gobe is an outside director of Desgrippes & Associes, he is not an officer of ... and does not participate in the day-to-day affairs of Desgrippes & Associes." *Id.*

II. DISCUSSION

The main question presented here is whether DGI, a nonparty New York corporation can be compelled to respond to discovery demands relative to documents allegedly possessed by Desgrippes & Associes, a nonparty corporation based in Paris, France. When determining the sufficiency of "custody and control" of material for purposes of Fed.R.Civ.P. 34, the nature of the relationship between the party and nonparty corporations is the key. *Afros S.P.A v. Krauss-Maffei Corporation,* 113 F.R.D. 127, 129-30 (D.Del., 1986).

The courts have held that documents in the possession of a nonparty parent corporation were subject to production by a litigating corporate subsidiary under Fed.R.Civ.P. 34 where the corporations share an exclusive principal-agent relationship. *Cooper Industries, Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918 (S.D.N.Y.1984). In *Cooper Industries,* the court found that documents in actual possession of non-party foreign parent were within the litigating subsidiary's custody or control where: (1) the subsidiary sold and serviced airplanes to which the documents mostly service manuals and blueprints, related; (2) the British parent was the manufacturer of those airplanes; (3) the subsidiary was wholly owned by the British parent; (4) the subsidiary was essentially the distributor and servicer of the British airplanes in the United States; (5) in response to an earlier document request, counsel for the subsidiary instructed plaintiff to make all inquires through him because he represented the British parent; (6) in the contract of sale for the airplane in question, subsidiary described itself as an "affiliated company" of the British parent; and (7) the documents plaintiff sought related to the airplanes that the subsidiary "work[ed] with everyday." *Id.* at 919.

In cases involving sister corporations under common control, the requisite "possession or control" has been found only where the sister corporation was found to be the alter ego of the litigating entity, *see, e.g., Perini American Inc. v. Paper Converting Machine Co.,* 559 F.Supp. 552 (E.D.Wis.1983) (where defendant owned 100% of one corporation and 99.5% of the other), or where the litigating corporation has acted with its sister in effecting the transaction giving rise to the lawsuit and is litigating on its sister's behalf. *See, e.g., Alimenta (U.S.A.) v. Anheuser-Busch Companies,* 99 F.R.D. 309 (N.D.Ga.1983).

In *Gerling Intern. Ins. Co. v. C.I.R.,* 839 F.2d 131 (3d Cir.1988), the court held that, in sanctioning the defendant Delaware corporation for failing to produce documents in possession of a foreign corporation, the Tax Court regarded the two entities as sister corporations under common control, but did so without sufficient evidence. In *Gerling* the procedural rule governing the production of documents is Tax Court Rule 72(a)(1), which was modeled after Fed.R.Civ.P. 34(a). Moreover, the court continued, even if these corporations had properly been presumed to be under common control, there was no record to support any finding that their corporate entities had been disregarded by themselves or the stockholder in the course of their businesses or that the domestic corporation had acted for the benefit of the foreign corporation either in the transactions giving rise to the cause of action or in conducting the litigation. 839 F.2d at 141.

*3 Here, none of the factors articulated in *Cooper Industries, Perini* or *Alimenta* are met. Other than the brochure and web pages references, Perfumania has shown no proof of a sufficiently close business relationship between DGI and Desgrippes & Associes. The court is mindful that occasionally DGI and Desgrippes & Associes work together on a common project where "they negotiate an *ad hoc* arrangement and separately account for their services." [FN4] It must be noted, however, that Berke has apparently testified in her deposition that DGI did not work on the Boucheron account, the subject matter of this litigation, and has no records or information in connection therewith. DGI concedes

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1998 WL 646635 (S.D.N.Y.)  
(Cite as: 1998 WL 646635 (S.D.N.Y.))

Page 3

that it lists Boucheron as a client as part of its cross-marketing materials with Desgrippes & Associes. The documentation before this court shows that Joel Desgrippes is a 75% stockholder in the foreign company, but is only a 19.7% stockholder in DGI. Similarly Marc Gobe is 80.3% stockholder in DGI but only an 18% stockholder in Desgrippes & Associes. Accordingly, there is no foundation for the court to conclude that DGI has sufficient control over Desgrippes & Associes to require the production of the latter company's officers and records in the United States. Additionally, the record before this court does not demonstrate that the two companies had identical boards of directors, or that their respective business operations were so intertwined as to render meaningless their corporate identities. *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257 (D.Del.1979).

> FN4. Counsel for DGI's Letter to the Court, dated September 16, 1998, at p1.

Not Reported in F.Supp.2d, 1998 WL 646635 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:93cv09009 (Docket) (Dec. 30, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.