# EXHIBIT A

1

LEXSEE

DEL DIETRICH, individually and on behalf of all others similarly situated, Plaintiff, - against - RICHARD BAUER; GROUPE SCORPION, B.V.; GREEN-COHN GROUP; MORTON COHN; VAN D. GREENFIELD; CS FIRST BOSTON; SMITH, BENTON & HUGHES, INC.; MICHAEL ZAMAN; CLAUDIA ZAMAN; EMMET A. LARKIN & COMPANY; EDWARD FISCH; BARRY WITZ; MARIO V. ANDRADE; WESTFIELD FINANCIAL CORPORATION; IDATA, INC.; ROBERT BOGUTSKI; and KATHLEEN BOGUTSKI, Defendants.

95 Civ. 7051 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2000 U.S. Dist. LEXIS 11729*

**August 9, 2000, Decided**
**August 16, 2000, Filed**

**DISPOSITION:** [*1] Dietrich's motion to compel granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Plaintiff: REBECCA M. KATZ, ESQ., Of Counsel, LIEFF, CABRASER, HEIMANN & BERNSTEIN, JAMES W. JOHNSON, ESQ., Of Counsel, GOODKIND LABATON RUDOFF & SUCHAROW, ZACHARY ALAN STARR, ESQ., Of Counsel, STARR & HOLMAN, New York, NY.

For Plaintiff: RICHARD HEIMANN, ESQ., Of Counsel, LIEFF, CABRASER, HEIMANN & BERNSTEIN, San Francisco, CA.

For Allied Irish Bank, Non-Party: ALFRED FERRER III, ESQ., Of Counsel, EATON & VAN WINKLE, New York, NY.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINIONBY:** ROBERT W. SWEET

**OPINION:** Sweet, D.J.,

Individual and representative plaintiff Del Dietrich ("Dietrich") moves for an order to compel non-party Allied Irish Bank ("AIB") to produce documents pursuant to the subpoena duces tecum served upon it by Dietrich pursuant to *Rule 45 of the Federal Rules of Civil Procedure*. AIB opposes the motion. For the reasons set forth below, the motion will be granted.

**Parties, Facts and Prior Proceedings**

The facts, parties, and prior proceedings in this action are set forth in the prior opinions of this Court and of the Honorable Lawrence M. McKenna, familiarity with which is assumed. See *Dietrich v. Bauer, 192 F.R.D. 119 (S.D.N.Y. 2000)*; [*2] *Dietrich v. Bauer, 76 F. Supp. 2d 312 (S.D.N.Y. 1999)*; *Dietrich v. Bauer, 1996 U.S. Dist. LEXIS 18258, No. 95 Civ. 7051, 1996 WL 709572 (S.D.N.Y. Dec. 10, 1996)*. The facts and proceedings pertaining specifically to the instant motion are set forth herein.

AIB is a bank holding company incorporated in Ireland which through its subsidiaries performs commercial banking operations, international banking services, leasing services, insurance services, mortgage banking services, investment advisory services, investment banking services, and other related financial activities. AIB has four major operating divisions: AIB Bank, USA, Capital Markets, and Poland. The AIB Bank division is comprised of AIB's retail and commercial banking operations in Ireland, Northern Ireland, Britain, Channel Islands and the Isle of Man.

The AIB Bank division includes AIB Group (UK) p.l.c. ("AIB Group (UK)"), which conducts business in Great Britain as Allied Irish Bank (GB) ("AIB (GB)"). AIB Group (UK) is a wholly-owned subsidiary of AIB. AIB Group (UK) has a branch located in Uxbridge, Middlesex, Great Britain.

Case 1:04-cv-01371-JJF    Document 133-2    Filed 11/18/2005    Page 4 of 12

Page 2
2000 U.S. Dist. LEXIS 11729, *

The USA division is comprised of AIB's banking operations in the United States, including [*3] subsidiary entities as well as an AIB branch located in New York, New York (the "New York Branch"). The New York Branch is not operated by a subsidiary of AIB but, rather, is a full-service branch of AIB itself.

On January 19, 2000, Dietrich caused a subpoena duces tecum to be issued to "Allied Irish Bank". On January 20, 2000, Dietrich caused the subpoena to be personally served upon Caroline Sullivan, Chief Financial Officer of AIB, at the New York Branch. The subpoena seeks the bank records of Scorpion Technologies, Inc. ("Scorpion") and related foreign entities which Dietrich alleges engaged in a scheme to sell unregistered securities. Dietrich seeks these records because it obtained information during discovery that led it to believe that certain of the defendants in this action maintained accounts with AIB (GB). Dietrich contends that these accounts were used to launder funds obtained from the sale of Scorpion Regulation stock sold through defendant Green-Cohn, Inc., to United States investors, and to conceal the identities of the recipients of the proceeds. The subpoena identifies the accounts for which records are sought as "including, but not limited to, AIB's branch located [*4] in Uxbridge, Middlesex, Great Britain."

On February 2, 2000, counsel for AIB served counsel for Dietrich with objections to the subpoena. Essentially, AIB objected that this Court does not have jurisdiction over any entity, office, or branch other than the New York Branch. AIB also objected that the subpoena seeks documents not in the possession, custody, or control of the New York Branch. n1 In addition, by letter of February 2, 2000, counsel for AIB notified Dietrich that AIB had searched the records located at the New York Branch and that there are no current accounts for any of the names or account numbers listed in the subpoena at that branch.

---

n1 As explained below, the argument that AIB does not have control over these documents was not advanced by AIB in response to the instant motion. It is nonetheless addressed herein.

---

Prior to issuing the subpoena to AIB, Dietrich had retained local counsel in England and the Channel Islands and prepared letters rogatory to obtain production of the documents sought [*5] in the instant subpoena. Dietrich later abandoned this effort. According to Dietrich, it would have been prohibitively expensive and so time-consuming that Dietrich would not have been able to meet the December 1999 discovery deadline in this case. Dietrich also attempted to obtain documents relating to accounts at AIB (GB) through service of a subpoena on Jack Dawson ("Dawson"), a defendant in United States v. Marsh, CR 96-251 SI (N.D. Cal. filed Aug. 5, 1996), which alleges federal securities law violations by Scorpion and involves facts and individuals similar to those in the instant case. Dawson through his counsel refused to provide the documents on the ground that discovery in that action is subject to a protective order.

The instant motion was filed on March 29, 2000. Written submissions were received, and oral argument was heard on April 26, 2000, at which time the matter was deemed fully submitted.

## Discussion

### I. The Standard Under The Rules of Discovery

#### A. Discovery From Foreign Entities

"[A] district court has the power to impose discovery under the Federal Rules of Civil procedure when it has personal jurisdiction over the foreign party. [*6] " See *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 520 (S.D.N.Y. 1987) (quoting *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 526 n.4, 96 L. Ed. 2d 461, 107 S. Ct. 2542 (1987). In order to resolve the instant motion it must be determined whether this Court has personal jurisdiction over the relevant entity and, if so, whether the discovery sought is proper the Federal Rules of Civil Procedure.

#### B. The Standard Under Rule 45

Pursuant to Federal Rule of Procedure 45, a nonparty may be required to produce materials in its "possession, custody, or control." *Fed. R. Civ. P. 45(a)(1)(C)*. Thus, it is not necessary that the materials sought be in the physical possession of the non-party from whom discovery is sought. See id.; see also, e.g., *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). n2 It is also immaterial that the documents sought may be located abroad, as "the test for production of documents is control, not location." See *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983) (citations omitted).

---

n2 Searock and certain other cases cited herein concern the term "control" in the context of Rule 34, which governs discovery from parties to the litigation, rather than Rule 45, which governs discovery from non-parties. See *Searock*, 736 F.2d at 653; *Fed. R. Civ. P. 34*; *Fed. R. Civ. P. 45*. However, the scope of discovery, and the meaning of "control," under the two rules is coextensive at least with respect to documentary dis-

Case 1:04-cv-01371-JJF   Document 133-2   Filed 11/18/2005   Page 5 of 12

Page 3
2000 U.S. Dist. LEXIS 11729, *

covery. See *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998); see also, e.g., *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993) (determination of whether "control" exists does not turn on whether entity from which discovery is sought is party or non-party).

[*7]

"Control" has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand. See *Asset Value Fund, Ltd. v. The Care Group, Inc.*, 1997 U.S. Dist. LEXIS 17968, No. 97 Civ. 1487, 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997); *Florentia Contracting Corp. v. Resolution Trust Corp.*, 1993 U.S. Dist. LEXIS 5275, No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. April 22, 1993); see also *Searock*, 736 F.2d at 653. This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation. See generally *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 140-141 (3d Cir. 1988) (discussing "control" by corporations over documents in possession of parent, subsidiary, or sister corporate entity).

In the context of a parent-subsidiary relationship, it has been observed that the factors which the court should consider include:

> the degree of ownership and control exercised by the parent over its subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course [*8] of business, and an agency relationship.
>
> *Desmeth v. Samsung America, Inc.*, 1998 U.S. Dist. LEXIS 1907, *28, No. 92 Civ. 3710, 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998) (citing *Camden Iron & Metal v. Marubeni America Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991) (citations omitted). n3

---

n3 It has recently been observed by this Court that the specific form of the corporate relationship does not determine whether or not "control" exists. See *Securities and Exch. Comm'n v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 2000 U.S. Dist. LEXIS 10564 (2000) (citing *Afros S/P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986) and *Gerling*, 839 F.2d at 140). The majority of the case law, however, concerns corporations that are related as parent and subsidiary. See *Gerling*, 839 F.2d at 141 (noting relatively few cases involving sister corporations).

---

Numerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned [*9] subsidiary that it must be deemed to have control over documents located with that subsidiary. See *United States v. International Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls."); *Alden v. Time Warner, Inc.*, 1995 U.S. Dist. LEXIS 17038, No. 94 Civ. 6109, 1995 WL 679238, at *2 (S.D.N.Y. Nov. 14, 1995) (corporate parent required to produce documents held by its subsidiary); *Camden Iron*, 138 F.R.D. at 441 (parent corporation has control over documents in physical control of wholly-owned or controlled subsidiary); *In re Uranium Trust Litigation*, 480 F. Supp. 1138, 1152 (N.D. Ill. 1979) (corporate parent must produce documents of wholly-owned subsidiary but not documents of 43.8%-owned subsidiary which conducted its corporate affairs separately); *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978) (parent corporation must produce documents held by wholly-owned subsidiaries and fact that subsidiaries were separate corporate entities was irrelevant). This principle applies [*10] where the subsidiary is not owned directly but, rather, is owned by an intermediate corporation that is itself a wholly-owned corporation of the parent corporation. See *Lethbridge v. British Aerospace PLC*, 1990 U.S. Dist. LEXIS 16086, No. 89 Civ. 1407, 1990 WL 194915, at *1 (S.D.N.Y. Nov. 28, 1990).

Finally, the burden is on the party seeking discovery to make a showing that the other party has control over the materials sought. See *Petroleum and Indus. Workers*, 870 F.2d at 1452 (citation omitted); *Desmeth*, 1998 WL 74297, at *9; *Addamax*, 148 F.R.D. at 465 and n.3.

## II. The Motion To Compel Will Be Granted

AIB's primary argument against the instant motion is its contention that this Court does not have personal jurisdiction over the corporate entity which has actual possession of the documents sought, namely, AIB Group (UK). Resolution of the instant motion does not turn, however, on whether this Court has personal jurisdiction over AIB Group (UK). Rather, if this Court has personal jurisdiction over AIB, and if AIB has control of the materials sought, then this Court can order AIB to comply with the subpoena. See *Afros*, 113 F.R.D. at 129 [*11]

Case 1:04-cv-01371-JJF    Document 133-2    Filed 11/18/2005    Page 6 of 12

Page 4
2000 U.S. Dist. LEXIS 11729, *

(observing that personal jurisdiction and "control" of documents are distinct issues in that court can compel discovery of documents in "control" of a party although in "possession" of person over whom there is no personal jurisdiction) (citations omitted).

### A. This Court Has Personal Jurisdiction Over AIB

AIB concedes that it conducts business in New York through its New York Branch; which is a branch of AIB itself rather than being operated or owned through another, subsidiary entity. This Court has jurisdiction over a foreign corporation doing business in New York. See *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (stating rule) (citations omitted); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (same); cf. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (fact that subsidiary corporation does business in New York does not automatically confer personal jurisdiction over parent corporation). This rule applies to a bank that maintains and operates a branch here. See *Bank of Montreal v. Mitsui Mfrs. Bank*, 1990 U.S. Dist. LEXIS 11907, *20, No. 85 Civ. 1519, 1990 WL 134899, [*12] at *7 (S.D.N.Y. Sept. 11, 1990) (foreign bank subject to personal jurisdiction because it "unquestionably does business [in New York] through its New York branch"). n4 Therefore, this Court has personal jurisdiction over AIB.

> n4 At times AIB also appears to contend that this Court does not have jurisdiction over AIB but, rather, only has jurisdiction over its New York Branch. This argument is manifestly incorrect since a foreign bank with a branch in New York is "doing business" in New York for purposes of personal jurisdiction. See *Bank of Montreal*, 1990 WL 134899, at *7.

### B. AIB Has Control Over Materials In The Possession Of Its Wholly-Owned Subsidiary, AIB Group (UK)

Dietrich contends that this Court may enforce its subpoena against AIB because AIB has the authority to direct AIB Group (UK), a wholly-owned subsidiary of AIB, to produce the subpoenaed documents. This contention is correct.

As explained earlier, a number of courts have concluded that a parent corporation has a [*13] sufficient degree of ownership and control over a wholly-owned subsidiary so as to have control over documents held by the subsidiary. See *Petroleum and Indus. Workers*, 870 F.2d at 1452; *Alden*, 1995 WL 679238, at *2; *Lethbridge*, 1990 WL 194915, at *1; *Camden Iron*, 138 F.R.D. at 441; *Uranium Trust*, 480 F. Supp. at 1152; *Hubbard*, 78 F.R.D. at 637. Dietrich and AIB concur that the documents sought by Dietrich are in the possession of the branch of AIB Group (UK), conducting business as AIB (GB), located in Uxbridge. AIB Group (UK) is a wholly-owned subsidiary of AIB. Moreover, the record reveals that AIB exercises operational control and oversight over the activities of its Bank division, which includes AIB Group (UK), that AIB establishes company-wide policies applicable to this division, and that there is an overlap between the managing executives for AIB and the division. See AIB Annual Report & Accounts, for the year ended December 31, 1999, at 7, 9, 10-14, 22-25, 46, 50, 94. Therefore, AIB is deemed to have the ability to obtain documents in the possession of AIB Group (UK) and, [*14] thus, "control" over these documents within the meaning of Rule 45. n5

> n5 AIB insists that AIB Group (UK) is a separate corporate and legal entity from AIB. This Court does not conclude otherwise. The analysis, however, does not end there. Rather, the critical issue is whether AIB has control over documents located with AIB Group (UK).

Finally, it is noted that AIB's opposition to the instant motion does not turn on a claim that it is unable to direct AIB Group (UK) to provide it with the sought-after documents. Instead, AIB reiterates its argument that this Court does not have personal jurisdiction over AIB Group (UK), and insists that it has satisfied its obligations vis-a-vis the subpoena by searching the New York Branch for the materials sought. As previously explained, however, this argument is misplaced.

### C. Dietrich Is Not Required To Seek The Instant Discovery Through The Hague Convention

AIB avers that Dietrich should have continued to pursue discovery pursuant to the Hague Convention on Evidence [*15] (the "Hague Convention") or other international discovery procedures, and that Dietrich must justify its failure to do so. The discovery procedures provided by the Hague Convention, however, are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure. See *First American*, 154 F.3d at 21. Whether a party seeking discovery should be required to utilize those procedures depends on considerations of comity. See *id.* at 21-22; *Minpeco, S.A. v. Conticommodity Svcs., Inc.*, 116 F.R.D. 517, 522-23 (S.D.N.Y. 1987) (discussing factors in comity analysis). AIB fails to address -- or even identify -- these considerations, instead simply asserting in a conclusory fashion that international discovery procedures are "appropriate"

in this case. There is no basis for concluding that Dietrich is required to pursue those avenues before resorting to the Federal Rules.

**Conclusion**

For the reasons set forth above, Dietrich's motion to compel is granted. AIB is hereby ordered to produce the documents sought herein within ten (10) days of **[*16]** the date of this opinion.

It is so ordered.

**New York, NY**
**August 9, 2000**

**ROBERT W. SWEET**

**U.S.D.J.**

2

LEXSEE 1999 U.S. DIST. LEXIS 101

**HUNTER DOUGLAS, INC., Plaintiff, -against- COMFORTEX CORPORATION, Defendant.**

Civil Action No. M8-85 (WHP), [98 CV 0479 (LEK) (DNH), N.D.N.Y.]

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1999 U.S. Dist. LEXIS 101*

**January 11, 1999, Decided**
**January 11, 1999, Filed**

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] WILLIAM H. PAULEY III, U.S.D.J.

**OPINIONBY:** WILLIAM H. PAULEY III

**OPINION:**

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Hunter Douglas, Inc. ("Hunter") commenced this miscellaneous proceeding by order to show cause seeking to compel a nonparty to comply with a subpoena duces tecum and ad testificandum issued from this district on December 15, 1998. Blinds to Go, Inc. ("Blinds to Go"), n1 the nonparty, is represented by the same attorneys representing the defendant, Comfortex Corp. ("Comfortex"), in the underlying patent infringement action pending in the Northern District of New York. Blinds to Go is a customer of Comfortex and has purchased for resale the allegedly infringing product. The alignment of the litigants and their respective counsel in this proceeding is noteworthy because they are all involved in the underlying action pending in the Northern District.

---

n1 According to Comfortex's counsel, Blinds to Go is a corporation of New Brunswick, Canada, with its corporate headquarters in Montreal. Its United States subsidiary, Blinds to Go (US) Inc., is a Delaware corporation with an office in Lyndhurst, New Jersey.

[*2]

---

Hunter filed its order to show cause to compel Blinds to Go to comply with a subpoena served on December 15, 1998. The December 15, 1998 subpoena that Hunter seeks to enforce on an expedited basis bears a striking resemblance to an earlier subpoena it served on Blinds to Go on October 7, 1998. In fact, all counsel acknowledged during oral argument that the only differences between the two subpoenas are that the December 15, 1998 subpoena seeks testimony from a witness and adds two additional categories of documents to the fourteen categories enumerated in the first subpoena.

The October 7 subpoena precipitated a flurry of communications with the Northern District of New York. n2 First, by letter dated October 20, 1998 Comfortex's counsel, Robert Neuner, Esq., advised District Judge Lawrence E. Kahn that the Blinds to Go subpoena and other third party subpoenas "will be an issue before Magistrate Judge Hurd." His words were prophetic. A day later, Mr. Neuner, now representing Blinds to Go, interposed objections to the subpoena. n3 Those objections raised a host of issues, including the need for authorization from the appropriate judicial authorities in Canada, and other more pedestrian [*3] objections such as confidential business information, attorney client privilege, overbreadth and relevance.

---

n2 In contrast, the October 7 subpoena, while issued from the Southern District of New York, created nary a ripple in this district. No orders to show cause or objections were filed here.

n3 At oral argument on January 5, 1999, Mr. Neuner acknowledged that the objections to the October 7, 1998 subpoena duces tecum were properly captioned as "Objections of Blinds to Go, Inc. Pursuant to *FED. R. CIV. P. 45*

*(c)(2)(B)*" but inadvertently signed by Mr. Neuner, on behalf of his law firm Baker & Botts, LLP, as "Attorneys For Defendant Comfortex Corporation." See transcript at 5:7-17. Any confusion about the professional capacity in which Mr. Neuner was acting was dispelled during oral argument on the present application in this district.

On October 28, 1998, Magistrate Judge David N. Hurd entertained extensive argument on the October 7, 1998 subpoena and many other discovery issues. Unfortunately, no transcript [*4] of the proceedings was made and the attorneys have fallen back on their recollections of what was said and done. Not surprisingly, they agree on very little.

On its face, Magistrate Judge Hurd's order is clear and categorical. That order dated December 4, 1998 states:

> Defendant's objections to document subpoenas served on Blinds to Go, Newell Furnishings, Inc. and Mohawk Fabric Company are OVERRULED."

See Movant's Exhibit 8. While Magistrate Judge Hurd's words could not have been plainer, the litigants' counsel interpret them differently. In a logomochical exercise, Comfortex and Blinds to Go assert that Magistrate Judge Hurd's ruling is only binding on Comfortex and not the subpoenaed party, Blinds to Go, because of the Court's reference to the "Defendant's objections." Hunter insists that the opposite is true. Neither Comfortex nor Blinds to Go appealed or sought leave to reargue. Nor did Hunter, the prevailing party in that discovery dispute, seek to compel compliance or move for contempt in the Northern District of New York. Instead, the parties embarked on round two in this district and expect this Court to sort the matter out. n4

> n4 Any ambiguity in Magistrate Judge Hurd's order may be traced to the fact that Mr. Neuner was serving two different clients in the same proceeding and inadvertently executed a document on behalf of Comfortex when he was actually representing Blinds to Go.

[*5]

Having reviewed all of the motion papers and supplemental letter submissions and having heard oral argument, this Court grants that branch of Hunter's motion to compel production of documents and overrules Blinds to Go's objections to document request numbers 1 through 14 in the December 15, 1998 subpoena because they are clones of request numbers 1 through 14 in the October 7, 1998 subpoena. This Court declines to revisit matters which have already been ruled on in the Northern District of New York or to second guess the magistrate judge who has supervised discovery in the main action. n5

> n5 It should be noted, however, that the fact that defendant Comfortex has waived its objection of attorney-client privilege as a result of asserting certain affirmative defenses does not mean that Blinds to Go, a nonparty, has also waived that objection. If they so chose, counsel should bring this to the attention of Magistrate Judge Hurd at their next conference scheduled for January 14, 1999.

Document request numbers 15 [*6] and 16 in the December 15, 1998 subpoena are new and were not addressed by the magistrate judge in the Northern District of New York. Request number 15 seeks:

> Each document that refers to or relates to Comfortex's business dealings with Blinds to Go concerning Serenity or "Shangri-La"-type window coverings or fabric suitable for use in Serenity or "Shangri-La"-type window coverings, including without limitation each document that constitutes, refers to, or relates to (a) any rejection by Blinds to Go of any Serenity or "Shangri-La"-type fabric supplied by Comfortex; (b) any meetings between Comfortex representatives and Blinds to Go representatives concerning Serenity or "Shangri-La"-type window coverings or fabric; (c) any development or testing of any version of Serenity or "Shangri-La"-type product incorporating a single type of translucent fabric in both the front and rear facings of the product; (d) any agreement by Comfortex to take back Serenity or "Shangri-La"-type product rejected by Blinds to Go; and (e) Comfortex's disposition of any fabric rejected by Blinds to Go.

Request number 16 seeks:

Case 1:04-cv-01371-JJF    Document 133-2    Filed 11/18/2005    Page 11 of 12

Page 3
1999 U.S. Dist. LEXIS 101, *

Each document that refers to or relates to any change by [*7] Comfortex in the fabrics incorporated in the facings of Serenity or "Shangri-La" window coverings, including without limitation each document that constitutes, refers to, or relates to (a) any survey of consumers performed in any Comfortex factory outlet store concerning any re-designed Serenity or "Shangri-La" product exhibiting an appearance of moire images; (b) any presentation by Comfortex to Comfortex dealers (including any presentation in New Jersey in July 1998) of any re-designed Serenity or "Shangri-La" product utilizing a single type of translucent fabric in the product's front and back facings; (c) any records of consumer or retailer reaction to Serenity or "Shangri-La" window coverings incorporating a single type of translucent fabric in the product's front and back facings; (d) any records of orders placed on the basis of the original Serenity or "Shangri-La" product design which were filled with modified Serenity or "Shangri-La" product incorporating a single type of translucent fabric in the product's front and back facings; (e) any distribution by Comfortex of any revised advertising or marketing materials to be used in connection with any modified Serenity or "Shangri-La" [*8] product incorporating a single type of translucent fabric in the product's front and back facings; (f) any analysis of whether Comfortex should replace or recall any advertising and marketing materials for Serenity or "Shangri-La" distributed prior to Comfortex's initiation of sales of modified Serenity or "Shangri-La" product incorporating a single type of translucent fabric in the product's front and back facings.

This Court will consider these document requests de novo. Both appear relevant on their face and do not appear to be unduly burdensome. Moreover, no valid objections were raised by Blinds to Go during oral argument.

Defendant asserts that because the requested documents and the proffered deponent are located in Canada, this Court lacks jurisdiction to compel compliance. The fact that Blinds to Go (US), Inc., Blinds to Go's corporate subsidiary, has an office located within the reach of a subpoena issued from this district suggests otherwise. See *FED R. CIV. P. 45*.

In determining whether a corporation within the United States can be compelled to produce documents held by a foreign affiliate, this Court must first consider the nature of the relationship between [*9] the corporation and its affiliate. See *Addamax Corp. v. Open Software Found.,Inc., 148 F.R.D. 462, 467 (D.Mass.1993); Alcan Int'l Ltd. v. S.A. Day Mfg. Co., 176 F.R.D. 75, 78 (W.D.N.Y.1996)*. If the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes. The critical inquiry is whether the affiliate can exercise custody and control over the documents.

The test to determine whether a corporation has custody and control over documents located with an overseas affiliate is not limited to whether the corporation has a legal right to those documents. See *Cooper Indus.,Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 920 (S.D.N.Y.1984)*. Rather, the test focuses on whether the corporation has "access to the documents" and "ability to obtain the documents." *Addamax Corp. v. Open Software Found.,Inc., 148 F.R.D. 462, 467 (D.Mass.1993)*.

The nature of the relationship between Blinds to Go (US), Inc. and Blinds to Go is such that documents ordinarily flow freely between them. During oral argument, Blinds to Go's counsel acknowledged [*10] that if Blinds to Go was the subject of a government investigation in the United States and documents were sought here, Blinds to Go (US), Inc. could cause its corporate parent in Canada to comply with a lawful subpoena and produce documents in this district. See transcript at 27:10-16. In addition, it appears that much of the plaintiff's underlying cause of action stem from revenues derived from Blinds to Go's business dealings in the United States. n6 Finally, the mere fact that the subpoenaed documents are in Canada does not exempt them from discovery. See *Cooper Indus.,Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 920 (S.D.N.Y.1984)* ("The fact that the documents are situated in a foreign country does not bar their discovery."). n7 Therefore, Blinds to Go is ordered to comply with document request numbers 15 and 16 of the December 15, 1998 subpoena to the extent that Blinds to Go (US), Inc. can exercise custody and control over the relevant documents.

[*11]

n6 The documents that a corporation utilizes in the normal course of its business are presumed to be in its control unless proven otherwise. See *Cooper Indus.,Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 920 n.1 (S.D.N.Y.1984)*

n7 If a defendant could evade discovery in this manner, many domestic corporations would have a foreign affiliate for storing sensitive documents.

Finally, the December 15, 1998 subpoena differs from the October 7, 1998 subpoena in one other respect. It seeks to depose "the person(s) having most knowledge of the matters referred to in [requests numbers 1 through 16]." Blinds to Go's counsel objects and asserts that the only individual with the requisite knowledge is a Canadian national who resides in Montreal. While that information may be helpful to the parties, it is of little utility to a court presented with a motion to compel a "person with knowledge" from a corporation.

On the present record, this Court lacks the authority to direct the appearance of a Canadian national in this district. See e.g., *Price Waterhouse LLP v. First American Corp., et. al, 182 F.R.D. 56, 1998 U.S. Dist. LEXIS 12435, 1998 WL 474196,* at *8 (S.D.N.Y. 1998). The proper procedures for conducting such a deposition are set forth in *FED R. CIV. P. 28(b), 28 U.S.C. § 1781* and the Hague Convention on Taking Evidence Abroad in Civil or Commercial [*12] Matters. The parties acknowledge that these procedures have not been utilized and judicial economy suggests that any such application should be directed to the Northern District, where the underlying patent infringement action is pending.

Nevertheless, Blinds to Go should produce an officer or employee of Blinds to Go (US), Inc. with knowledge of the matters sought in the subpoena for deposition, who resides, is employed or regularly transacts business within 100 miles of this Court. See *FED R. CIV. P. 45(c)(3)(A)(ii)*. That deposition can be excused if there is no officer or employee of the subsidiary in the United States that has knowledge of the matters about which Hunter seeks to inquire. In that event, Blinds to Go may offer an affidavit by its president or CEO that there is no person in the employ of the subsidiary in the United States with knowledge of the matters at issue here.

A final observation is warranted. This Court has devoted substantial time to oral argument and a review of this complicated and heavily litigated dispute. The parties and their counsel appear to be unreasonably multiplying the proceedings, a matter of concern under *28 U.S.C. § 1927*. By the litigants' [*13] own admission, Magistrate Judge Hurd has already devoted considerable time and energy to resolving discovery disputes in the underlying action, including the October 15, 1998 subpoena. However, this Court will leave such issues to my learned colleagues in the Northern District who are thoroughly familiar with all of the nuances of the parties' litigation activities in the underlying action.

Conclusion

For these reasons, it is ORDERED that:

(1) Blinds to Go shall comply with document request numbers 1 through 14 of the December 15, 1998 subpoena because those requests are identical to requests made in a prior subpoena that was the subject of a ruling of Magistrate Judge Hurd's order dated December 4, 1998;

(2) Blinds to Go shall comply with document request numbers 15 and 16 to the extent that Blinds to Go (US), Inc. can exercise custody and control over the relevant documents because the documents requested are relevant to the claims and not unduly burdensome;

(3) Blinds to Go shall produce an officer or employee of its United States subsidiary with knowledge of the matters sought in the December 15, 1998 subpoena or, alternatively, furnish an affidavit by the [*14] president or CEO of Blinds to Go stating that there are no such persons in the employ of Blinds to Go (US), Inc.; and

(4) the parties and Blinds to Go are directed to bring any additional matters relating to the production of documents or witnesses by Blinds to Go or Blinds to Go (US), Inc. before the magistrate judge assigned to supervise discovery in the underlying patent infringement action in the Northern District of New York.

Dated: New York, New York

January 11, 1999

SO ORDERED:

WILLIAM H. PAULEY III

U.S.D.J.