**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| POWER INTEGRATIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No. 04-1371-JJF |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., and FAIRCHILD SEMICONDUCTOR CORPORATION, | ) ) ) ) |
| Defendants. | ) ) |

**LG ELECTRONICS U.S.A. INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA AD TESTIFICANDUM AND FOR A PROTECTIVE ORDER**

*Of Counsel:*

Andrew C. Sonu
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400
andrew.sonu@finnegan.com
lionel.lavenue@finnegan.com

Dated: November 29, 2005

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for LG Electronics U.S.A., Inc.*

**TABLE OF CONTENTS**

I.     Introduction ........................................................................................................................1

II.    A Subpoena on LGE-USA, a Subsidiary, Does Not Impose Discovery Obligations
       on LGE-Korea, a Parent, Absent Extraordinary Circumstances ........................................2

       A.    A Corporate Subsidiary (LGE-USA) Is a Separate Legal Entity from Its
             Corporate Parent (LGE-Korea), and this District Does Not Determine the
             Rights of One Corporate Entity for Another Corporate Entity "in
             Absentia"..................................................................................................................2

       B.    As a Basic Matter of Corporate Law, A Corporate Subsidiary (LGE-USA)
             Does Not Have "Control" Over Its Corporate Parent (LGE-Korea) .......................3

       C.    A Corporate Subsidiary (LGE-USA) Does Not Generally Have "Control"
             over the Documents of a Corporate Parent (LGE-Korea) .......................................6

III.   LGE-USA Has No Legal Right to Demand the Documents under the Subpoena
       from LGE-Korea; Additionally, the Subpoena Is Unduly Burdensome ..............................9

IV.    LGE-USA's Motion for a Protective Order Is Appropriate, Proper, and Timely..............13

V.     Subpoena on LGE-USA is Procedurally Improper as Violating the 100-Mile Rule .........13

VI.    Conclusion ........................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**

*Addamax Corp. v. Open Software Found.*,
   148 F.R.D. 462 (D. Mass. 1993) ................................................................... 5, 8, 9

*Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*,
   176 F.R.D. 75 (W.D.N.Y. 1996) .......................................................................... 5

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
   102 F.3d 1224 (Fed. Cir. 1996) ........................................................................... 9

*Cooper Indus., Inc. v. British Aerospace, Inc.*,
   102 F.R.D. 918 (S.D.N.Y. 1984) .............................................................. 5, 6, 8, 9

*Dietrich v. Bauer,*
   No. 95 Civ. 7051 (RWS), 2000 U.S. Dist. LEXIS 11729, 2000 WL 1171132 (S.D.N.Y.
   August 16, 2000) ............................................................................................. 8, 9

*Gerling Int'l Ins. Co. v. IRS*,
   839 F.2d 131 (3d Cir. 1988) ........................................................................ *passim*

*Goh v. Baldor Elec. Co.*,
   No. 3:98-MC-064-T, 1999 WL 20943 (N.D. Tex. Jan. 13, 1999) ................ 6, 7, 8, 9

*Hunter Douglas Inc. v. Comfortex Corp.*,
   No. N8-85, 1999 U.S. Dist. Lexis 101 (S.D.N.Y. Jan. 11. 1999) ......................... 8, 9

*MGM Studios, Inc. v. Grokster, Ltd.*,
   218 F.R.D. 423 (D. Del. 2003) ....................................................................... 13, 14

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
   206 F.R.D. 392 (D. Del. 2002) ............................................................................ 4, 5

*Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) ....................... 2, 3, 4

*Rothchild Int'l Corp. v. Liggett Group, Inc.*,
   No. 6239, 1981 WL 7624 (Del. Chancery Ct. July 14, 1981) .................................. 4

*U.S. Phillips Corp. v. United States*,
   No. 22-72, 1972 WL 17965 (Ct. Cl. Nov. 22, 1972) ................................................ 6

*Volkswagen of Am. Inc. v. Superior Court*,
   18 Cal. App. 3d 477, 96 Cal. Rptr. 205 (1971) ........................................................ 6

*Westinghouse Credit Corp. v. Mountain States Min. & Mill. Co.*,
   37 F.R.D. 348 (D. Colo. 1965) ............................................................................ 4, 6

*Willis v. Suburu of America, Inc.*,
    C.A. No. 93-6202, 1996 WL 936866 (R.I. Super. Jan. 9, 1996) ............................................... 4

**RULES**

FED. R. CIV. P. 45(c)(3)(A)(ii) ................................................................................................ 13

**I.    Introduction**

Power Integrations has subpoenaed the wrong entity.  Power Integrations has subpoenaed LG Electronics U.S.A., Inc. ("LGE-USA") for documents that identify 43 specific Fairchild part numbers, but LGE-USA does not have such documents, as expressly stated in a declaration from LGE-USA's general counsel.  Power Integrations nonetheless now demands that LGE-USA obtain the subpoenaed documents and information from its foreign parent corporation, LGE-Korea.  However, Power Integrations has provided no basis for disregarding the corporate separateness and legal distinction between the subsidiary LGE-USA and the foreign parent LGE-Korea.  This District, in particular, respects that corporate structure, and there is no basis to ignore it here.

Despite the distinction between subsidiary LGE-USA and foreign parent LGE-Korea, Power Integrations contends that (1) a subsidiary has control over a parent and (2) a subsidiary has control over the documents of a parent.  Both contentions are contrary to the law in this District.  First, except where two corporations' businesses are so closely intertwined that their status as separate corporate entities is deemed meaningless, it is both black letter law and common sense that a subsidiary does not have control over its parent.  And Power Integrations has not even asserted, let alone proven, that there is any basis for LGE-USA's and LGE-Korea's corporate identities to be deemed meaningless.  Second, a subsidiary does not have "control" over the documents of a parent, if one applies the proper definition of "control."  Power Integrations proffers a minority view definition of control, but the Third Circuit has already opined on the matter and has defined control consistent with the majority view.  Applying that definition (i.e., "possession or the legal right to obtain the documents requested on demand"), LGE-USA does not have possession or the right to demand the documents from LGE-Korea, and thus does not have "control."

1

Finally, Power Integrations makes several unfounded and misleading allegations to the effect that LGE-USA has refused to "make so much as a phone call" to LGE-Korea to request the documents at issue. LGE-Korea includes 66,000 employees working in 76 subsidiaries in 39 countries around the world. It is not a local coffee shop whose owner can be called on the telephone and asked to pull the documents that he keeps in the top drawer of his desk. To require LGE-Korea to conduct a search for responsive documents – even if LGE-USA had the "control" necessary to do so – would be to request an extraordinary undertaking that would be far too burdensome to be reasonable.

II. **A Subpoena on LGE-USA, a Subsidiary, Does Not Impose Discovery Obligations on LGE-Korea, a Parent, Absent Extraordinary Circumstances**

LGE-USA's opening brief only requested that the Court quash the Subpoena Ad Testificandum and prohibit the deposition demanded by Power Integrations. However, in its Opposition brief, Power Integrations requests that this Court compel LGE-USA to produce documents from its parent LGE-Korea. For the same reasons that this Court should quash the subpoena and prohibit the deposition, this Court should also deny any motion to compel.

   A. **A Corporate Subsidiary (LGE-USA) Is a Separate Legal Entity from Its Corporate Parent (LGE-Korea), and this District Does Not Determine the Rights of One Corporate Entity for Another Corporate Entity "in Absentia"**

As this District recognized in *Pennwalt Corp. v. Plough, Inc*., 85 F.R.D. 257, 263 (D. Del. 1979), as a general rule, a subpoena on one corporate entity (e.g., a subsidiary) does not impose discovery obligations on a different corporate entity (e.g., a parent) because the two comprise "separate legal entities . . . having different legal and commercial interests at stake … [with] rights [that] should not be determined in absentia." A court thus should not determine the legal rights of separate corporations "in absentia." *Id*. For this Court to require subsidiary LGE-

2

USA to obtain information from parent LGE-Korea on the basis of a subpoena served on LGE-USA would be to ignore *Pennwalt*, as LGE-USA and LGE-Korea are separate corporations.

Power Integrations contends that it does not seek the production of documents from LGE-Korea because "[LGE-USA] can get the relevant information [from LGE-Korea] merely by asking," but that is exactly what Power Integrations seeks by demanding such a production. In a declaration by LGE-USA's general counsel, LGE-USA has already explained that LGE-USA has no documents or information that identify the component suppliers for LGE-USA products. (Wingate Decl. at ¶ 4). Instead, components in LGE-USA products are identified by "LG numbers," and LGE-USA has no information regarding what suppliers provide components to LGE-Korea. *Id.* Power Integrations ignores LGE-USA's declaration and contends that LGE-USA presumably can obtain a "master list" from LGE-Korea and that such a list is "easily available for the asking," but Power Integrations has absolutely no basis for these erroneous factual contentions. Moreover, even if true (which it is not, as described below), the information would have to come from parent LGE-Korea, which would mean that the subpoena on subsidiary LGE-USA in reality would impose obligations on a separate corporate entity. This requested remedy by Power Integrations clearly violates *Pennwalt* by determining rights of a separate legal entity in absentia. *See also Gerling Int'l Insur. Co. v. IRS*, 839 F.2d 131, 141-42 (3d Cir. 1988) (unless corporate entities disregarded, separate subsidiary/parent existence must be respected, citing *Pennwalt*).

    **B.**     **As a Basic Matter of Corp orate Law, A Corporate Subsidiary (LGE-USA) Does Not Have "Control" Over Its Corporate Parent (LGE-Korea)**

Power Integrations also contends that a subpoena on a subsidiary imposes obligations on the subsidiary to obtain information from the subsidiary's parent based on an unsupported contention that a subsidiary corporation somehow possesses some form of "control" over a

3

parent corporation. Opp. at 1-2. This contention is baseless. To the contrary, it is a matter of basic corporate law that a subsidiary does not 'control" a parent corporation. *Westinghouse Credit Corp. v. Mountain States Min. & Mill. Co.,* 37 F.R.D. 348, 349 (D. Colo. 1965) ("It is sufficient to conclude that since a subsidiary does not control the parent it is not required to furnish information held by the latter."); *Rothchild Int'l Corp. v. Liggett Group, Inc.*, No. 6239, 1981 WL 7624, at *3 (Del. Ch. July 14, 1981) (Ex. K) ("[S]ince a subsidiary corporation by definition does not control the parent corporation, it cannot be compelled through the discovery process to produce documents and information possessed solely by the parent.").[1]

After all, although a subpoena **on a parent** may impose discovery obligations on the parent to identify and produce documents **from its subsidiaries**, *see Pennwalt*, 85 F.R.D. at 263 ("Production . . . may be compelled . . . when a parent corporation is requested to produce documents of a wholly-owned subsidiary") (citations omitted), the converse generally is not true because a subsidiary does not control the parent. *Willis v. Suburu of America, Inc.*, C.A. No. 93-6202, 1996 WL 936866, at *3 (R.I. Super. Jan. 9, 1996) (Ex. L). Nonetheless, Power Integrations improperly seeks to use a subpoena in these proceedings **on subsidiary** LGE-USA to extract information **from parent** LGE-Korea.

This District similarly has recognized that a district court can compel the production of documents "when a parent corporation is requested to produce documents of a wholly-owned subsidiary," because the "corporate [parent] entity is deemed to be in 'control' of [the] documents sought." *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del.

---

[1] Two declarations are being separately filed in support of this Reply: (1) "Supplemental Declaration of Lionel M. Lavenue" and (2) "Supplemental Declaration of Richard C. Wingate, General Counsel of LG Electronics U.S.A., Inc." The referenced Exhibits ("Ex.") are attached to the "Declaration of Lionel M. Lavenue" (Exhibits A-J) and the "Supplemental Declaration of Lionel M. Lavenue" (Exhibits K-L).

2002). However, the same rule does not necessarily apply when a subsidiary corporation is requested to produce documents of a parent because the subsidiary is not in control of the documents sought, unless the respective businesses of each entity 'are so intertwined as to render meaningless their separate corporate identities." *Id.* And, as Power Integrations even seems to concede, there is absolutely no evidence that LGE-USA and LGE-Korea have "meaningless corporate identities."

Power Integrations contends that LGE-USA has control over LGE-Korea because of several additional "considerations." Power Integrations lists these considerations, as (1) "the nature of the relationship between the parties," citing *Addamax Corp. v. Open Software Found.*, 148 F.R.D. 462, 465 (D. Mass. 1993), (2) "whether the subsidiary would be able to have access to the documents and would be able to obtain them during its usual business," citing *Cooper Indus., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918 (S.D.N.Y. 1984), and (3) "whether the subsidiary was in regular contact with the parent regarding the product sales and marketing," citing *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.,* 176 F.R.D. 75, 79 (W.D.N.Y. 1996). Yet, Power Integrations does not explain how any of thee considerations apply to LGE-USA.

Indeed, to the contrary, none of the considerations (and none of the cases) supports Power Integrations' contention that a subpoena **on a subsidiary** imposes obligations to obtain information **from the parent**. As for considerations (1) and (3), in *Addamax* and in *Alcan*, the court required a subsidiary to produce documents in the possession of a foreign parent corporation because there were issues about the cooperate separateness of the subsidiary and parent. *Addamax,* 148 F.R.D. at 465; *Alcan*, 176 F.R.D. at 79. Here, however, there are no such issues regarding the corporate separateness of LGE-USA and LGE-Korea. And, as for consideration (2), in *Cooper*, the court had determined that certain documents were under the

5

control of the subsidiary because, *inter alia*, the subsidiary "work[ed] with [the documents at issue] everyday . . . [in its] usual business." *Cooper,* 102 F.R.D. at 919-20. Here, in contrast, LGE-USA does not work with any documents that identify the names of the component suppliers in its usual business (specifically, to the contrary, LGE-USA only works with documents that contain "LG numbers"). Thus, considerations (1), (2), and (3) are entirely inapplicable here.

The most appropriate case to the circumstances here is *Westinghouse Credit*. In that case, a requesting party argued that a discovery request on a subsidiary required the subsidiary to obtain information from the parent of the subsidiary. *Westinghouse Credit*, 37 F.R.D. at 349. The district court recognized that a parent has an obligation to obtain information from its subsidiaries, yet the court also recognized that a subsidiary does not have an obligation to obtain information from its parent because the parent is not a "source[] under its control." *Id*. This rule that a subsidiary is *not* required to obtain information from its parent because the subsidiary does not have control over the parent is commonly recognized. *See, e.g., U.S. Phillips Corp. v. United States*, No. 22-72, 1972 WL 17965, at *13 (Ct. Cl. Nov. 22, 1972) ("[W]here the information sought [from the subsidiary] is controlled by the parent . . . , the requests are improper."); *Volkswagen of Am. Inc. v. Superior Court*, 18 Cal. App. 3d 477, 480, 96 Cal. Rptr. 205, 207 (1971) ("While it may be argued that a parent controls a subsidiary corporation and its employees for discovery purposes, it is unlikely that a subsidiary controls its parent.").

### C. A Corporate Subsidiary (LGE-USA) Does Not Generally Have "Control" over the Documents of a Corporate Parent (LGE-Korea)

This is no dispute that "a court can command production of documents in a party's 'possession, custody, and control.'" *Goh v. Baldor Elec. Co.*, No. 3:98-MC-064-T, 1999 WL 20943, at *1 (N.D. Tex. Jan. 13, 1999) (Ex. H). Power Integrations concedes that LGE-USA does not have "possession" or "custody" of the requested documents, but Power Integrations

maintains that LGE-USA has "control" of the documents.  However, the issue is the definition of "control."

In *Goh*, the district court held:  "Neither the Federal Rules of Civil Procedure nor the Fifth Circuit offer clear, definitive guidance as to the appropriate definition of control."  *Goh*, 1999 WL 20943, at *2.  Accordingly, in that case, the court refused to define control specifically and instead concluded that the court "must examine the facts of the case before it in order to determine if the relationship is such that [discovery] is to be compelled."  *Id.* (citation omitted).

In contrast, Power Integrations asks this court to apply the incorrect definition of control from a minority view, which maintains that "control is not narrowly limited to instances where the party from whom documents are requested has a 'legal right' to obtain the documents, but rather, includes circumstances where the party has the authority or ability to obtain such documents."  *Id.* (citation omitted.)  Power Integrations fails to point out that the Third Circuit has already opined on the definition of control, by applying the majority view (as also shared by the Sixth Circuit, the Ninth Circuit, and the Eleventh Circuit), which specifically defines control as "the legal right to obtain the documents requested upon demand."  *Id*. (citations omitted.)

In *Gerling Int'l Ins. Co. v. IRS*, 839 F.2d 131, 140 (3d Cir. 1988), the Third Circuit held:  "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce."  The Third Circuit then explained:  "[C]ontrol is the test with regard to the production of documents [and] is defined not only as possession, but as the legal right to obtain the documents requested on demand. . . .  The location of the documents, whether within the territorial jurisdiction of the court or not, is irrelevant."  *Id.* (citations omitted).  Finally, the Third Circuit described the type of control necessary for a subsidiary to have obligations to produce documents from a parent:  "Where the

7

litigating corporation is the subsidiary and the parent possesses the records, control has been found to exist where the 'alter ego' doctrine warranted piercing the corporate veil . . . ." *Id.*

Accordingly, applying the correct definition of control by the Third Circuit, it is clear that LGE-USA does not have possession of the documents at issue and does not have the legal right to demand the documents from its parent, LGE-Korea. Thus, under Third Circuit law, there is no basis for Power Integrations to demand that LGE-USA obtain the documents from LGE-Korea.

In addition, it is clear that the burden is on the party seeking discovery to show that the other party has control over the document(s) sought. *Goh*, 1999 WL 20943, at *2. And, here, Power Integrations has failed to either show that LGE-USA has control of the documents at issue (applying the proper definition of control) or that there is a basis to pierce the corporate veil.

Although ignoring the Third Circuit's definition of control, Power Integrations nonetheless cites four cases to support the position that subsidiary LGE-USA has control over documents of its foreign parent, LGE-Korea: *Dietrich v. Bauer,* No. 95 Civ. 7051 (RWS), 2000 U.S. Dist. LEXIS 11729, 2000 WL 1171132 (S.D.N.Y. August 16, 2000) (Opp. Ex. 1); *Hunter Douglas Inc. v. Comfortex Corp.*, No. N8-85, 1999 U.S. Dist. Lexis 101 (S.D.N.Y. Jan. 11. 1999) (Opp. Ex. 2); *Addamax Corp. v. Open Software Found.*, 148 F.R.D. 462, 465 (D. Mass. 1993); and *Cooper Indus., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918 (S.D.N.Y. 1984). Ironically, other than citing these cases, Power Integrations does not explain how any of them are pertinent to the facts in this case or why any of these cases supports any of its legal contentions.

To the contrary, none of the cases cited by Power Integrations supports the contention that LGE-USA somehow has control over the documents of its parent, LGE-Korea. In *Dietrich,* the district court required a non-party parent corporation to produce bank records possessed by a foreign subsidiary, where the parent corporation had *conceded* its authority to direct its wholly-

8

owned subsidiary to produce the requested documents. *See Dietrich,* 2000 U.S. Dist. LEXIS at *13. *Dietrich* is entirely inapposite, because LGE-USA is a subsidiary of parent LGE-Korea, and also because LGE-USA does not have the authority to direct its parent to produce the requested documents. In *Hunter*, the nature of the relationship between the non-party subsidiary and its corporate parent was such that "documents ordinarily flow[ed] freely between them" and the "documents that a [subsidiary] corporation utilizes in the normal course of its business are presumed to be in its control." *Id.* at *9-10. Here, however, the requested documents with the identification of component suppliers do not "flow freely" between LGE-USA and LGE-Korea, and LGE-USA does not utilize "the requested documents in the normal course of its business." As for *Addamax*, and *Cooper*, those cases are distinguishable for the reasons outlined above.

Notably, in *Goh*, 1999 WL 20943, at *2, a subpoenaing party had sought information from a non-party entity and demanded that the non-party entity obtain documents from foreign affiliates. In that case, the subpoenaing party cited many of the same cases cited by Power Integrations, but the district court found those cases distinguishable and denied a motion to compel the production of documents from the foreign affiliates. *Id.* at *2-4. Here, however, the case is even stronger that Power Integrations' subpoena is improper, because the Third Circuit has already defined "control" in a manner demonstrating that LGE-USA does not have control over the documents at issue. Thus, Power Integrations' subpoena should be quashed, and Power Integrations' request for a motion to compel production of these documents should be denied.

### III. LGE-USA Has No Legal Right to Demand the Documents under the Subpoena from LGE-Korea; Additionally, the Subpoena Is Unduly Burdensome

As noted above, LGE-USA has no legal right to demand that LGE-Korea provide the documents at issue. Thus, Power Integrations' subpoena is improper. *See Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996) ("In the absence of control by

9

a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce. 'Control' with respect to the production of documents is defined 'not only as possession, but as the legal right to obtain the documents requested upon demand.'") (citing *Gerling Int'l*, with other citations omitted).

LGE-USA has repeatedly explained to Power Integrations that LGE-USA does not have the requested documents.  Although LGE-USA has service manuals for the products that it imports, markets, and sells, those service manuals do not identify the name of the component suppliers; the manuals only recite "LG numbers."  (Wingate Decl. at ¶ 4.)  Power Integrations contends that LGE-USA can nonetheless obtain a so-called "master list" from LGE-Korea, but Power Integrations has no basis to believe that such a master list exists.[2]  To the contrary, to the extent they exist, any of the requested documents would be in the possession, custody, and control of LGE-Korea and thus are located in Korea and are likely in the Korean language.  As locating, translating, decoding, and correlating these documents in Korea would involve a

---

[2] In its Opposition brief, Power Integrations also incorrectly contends that LGE-USA "ignores the issue of sales and importation volumes [for the 43 Fairchild part numbers]."  Yet, LGE-USA has specifically explained that it does not have this "information pertaining to importation volumes." (Wingate Decl. at ¶ 10).  Because  LGE-USA does not have this information for importation volumes, it similarly does not have this information for sales in the United States.

massive undertaking by LGE-Korea,[3] LGE-USA has objected to the subpoena and has moved to quash it.[4]

Power Integrations self-servingly asserts that the documents at issue are "narrow, clearly defined" and allegedly available "merely by asking," but Power Integrations has no basis for making these contentions. To the contrary, Power Integrations had broadly demanded that LGE-USA identify what "LG" products contain "Fairchild PWM controllers." This is an incredibly broad request, as Power Integrations has demanded that LGE-USA review all of its "monitors, cellular telephones, VCRs, and television sets." (Seaman Decl. at ¶ 6.) Because LGE-USA does not maintain the information requested by Power Integrations for products in the United States, LGE-Korea would have to locate this information. And, as described at http://www.lge.com/about/corporate/html/company_overview.jsp: "[LGE-Korea] is a global force in electronics, information and communications products with 2004 annual sales of US $38 billion (consolidated). With more than 66,000 employees working in 76 subsidiaries in 39 countries around the world, LG Electronics is comprised of four main business companies

---

[3] Without a scintilla of support, Power Integrations claims that "any burden associated with de-coding the "LG numbers" is so minimal." Opp. at 2. This is not true. Power Integrations' subpoena would require that LGE-Korea basically review each and every product within the broad product lines identified by Power Integrations, then for each product line identify the power controller, then for each power controller identify the component supplier, then for each component supplier determine if Fairchild was a supplier, and then if Fairchild was a supplier determine if any of the 43 Fairchild part numbers were included in the records. Such a Herculean effort could hardly be described as "minimal . . . decoding [of] the 'LG' numbers."

[4] LGE-USA recognizes that the Third Circuit has held: "Where the relationship ... is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful to the litigation, the court will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Gerling*, 839 at 141 (citation omitted). However, this holding is distinguishable. LGE-USA does not utilize the documents at issue "to meet its own business needs." Also, this holding prevents the "sword but not a shield" conundrum, but non-party LGE-USA is not taking inconsistent discovery positions.

11

including Mobile Communications, Digital Appliance, Digital Display, and Digital Media." Thus, to respond to the subpoena, LGE-USA would have to have LGE-Korea poll the entirety of its worldwide operations to locate the documents at issue. Clearly, this is unduly burdensome, and is a particularly unreasonable request to make of a non-party.

In addition, as LGE-USA has explained to Power Integrations, the products imported, marketed, and sold in the United States by LGE-USA do not identify component suppliers and instead use "LG numbers." However, Power Integrations' subpoena is directed to 43 specific Fairchild integrated circuit part numbers. Thus, even if LGE-USA were able to have LGE-Korea identify whether certain LGE-Korea products contain Fairchild PWM controllers, LGE-Korea would then also have to somehow sort through these products to determine whether they contain any of the 43 specified Fairchild integrated circuit part numbers. Given the fact that LGE-USA does not have any of this information,[5] and given the fact that LGE-USA does not know whether LGE-Korea's records would even be able to identify specific Fairchild part numbers, it can again be seen that the demands made by Power Integrations are unreasonable.

---

[5] Without any basis, Power Integrations alleges that LGE-USA must have information about component suppliers "to ensure subcontractors' compliance with a host of U.S. environmental and other regulations and/or to address problems with defective components." Opp. at 3. Again, this allegation by Power Integrations is incorrect. LGE-USA satisfies environmental and other regulations with data based on the "LG numbers." (Wingate Supplemental Decl. at ¶ 1). Similarly, LGE-USA only addresses defective components with "LG numbers." *Id.* Without any basis, Power Integrations also alleges that LGE-USA "has at least a contractual right to get … information from LG-Korea." Opp. at 2 n.1. LGE-USA is not aware of any such contract. (Wingate Supplemental Decl. at ¶ 2.)

Therefore, contrary to the baseless contentions of Power Integrations, it is not simply a matter of a phone call from LGE-USA to LGE-Korea to identify the documents at issue.[6] To the contrary, Power Integrations asks for a Herculean discovery effort that is unduly burdensome.

## IV.     LGE-USA's Motion for a Protective Order Is Appropriate, Proper, and Timely

Power Integrations incorrectly alleges that LGE-USA's motion to quash is premature. LGE-USA has negotiated with Power Integrations for months in an attempt to resolve the subpoena, but Power Integrations improperly demands that LGE-USA obtain information from its parent, LGE-Korea. This demand is without basis, and the motion for a protective order is appropriate, proper, and timely.

## V.     Subpoena on LGE-USA is Procedurally Improper as Violating the 100-Mile Rule

Under Rule 45(c)(3)(A)(ii), Power Integrations' subpoena is also improper as it is in violation of the "100-mile rule." FED. R. CIV. P. 45(c)(3)(A)(ii). Power Integrations contends that the "100-mile rule" is somehow "unsettled," citing *MGM Studios, Inc.* v. *Grokster, Ltd.*, 218 F.R.D. 423, 424 (D. Del. 2003). However, *MGM Studios* does not say anything about the 100-mile rule being "unsettled." Further, due at least in part to the 100-mile rule, the court in *MGM Studios* held that the subpoena on a non-party imposed an undue burden on the non-party who was incorporated in Delaware but did not have any employees, officers, or directors actually

---

[6] Power Integrations makes the following unsupported contention: "LG-Korea undoubtedly has a 'master list' matching LG part numbers to supplier part numbers, and . . . LG's counsel has refused to make so much as a phone call to obtain the master list." Opp. at 1. This is simply not true. There is no single "master list." To identify the components within the broad range of products sought by Power Integrations, LGE-Korea would have to survey many different business units and many different divisions regarding many different products: a massive undertaking. At best, this would result in numerous listings from numerous sources, and then, it would take weeks (and perhaps months) to conduct a survey of the products and part numbers.

13

located in Delaware.[7] *Id.* at 424-25. Accordingly, in *MGM Studios*, the court granted a protective order and quashed the subpoena. *Id.* at 425. LGE-USA maintains that the subpoena in questions violates the 100-mile rule. *MGM Studios* supports that position.

## VI.     Conclusion

For the reasons described above, LGE-USA respectfully requests that: the Court deny Power Integrations' request to compel production of documents from LGE-Korea; the Court enter a protective order quashing the Subpoena Ad Testifcandum and prohibiting the deposition sought by Power Integrations; and the Court grant such other relief as the Court deems appropriate.

---

[7] Power Integrations also alleges in the Opposition brief that a party to a case is not treated any differently from a non-party to the case for purposes of discovery. Opp. at 4, and at 4 n.4. As is evident from the 100-mile rule, this is not true. Power Integrations also alleges that LGE-USA violated the Court's page limits on discovery motions by filing a 27-page opening brief. Opp. at 2. Again, this is not true. Local Rule 7.1.3 sets the page limits for opening briefs at 40 pages, and a motion to quash a subpoena and for issuance of a protective order by a non-party is subject to that 40-page limit. The Court's abbreviated briefing procedure permitting only four-page opening and answering papers, with no reply, appears in the scheduling order in this case and by its express terms applies only to (i) Rule 37 motions to compel discovery, (ii) filed by "[a] party" seeking discovery from the "opposing party." D.I. 17 at paragraph 4(a).

ASHBY & GEDDES

/s/ *Steven J. Balick*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for LG Electronics U.S.A., Inc*

*Of Counsel:*

Andrew C. Sonu
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400
andrew.sonu@finnegan.com
lionel.lavenue@finnegan.com

Dated: November 29, 2005

164052.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November, 2005, the attached **LG ELECTRONICS U.S.A. INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA AD TESTIFICANDUM AND FOR A PROTECTIVE ORDER** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| William J. Marsden, Jr., Esquire<br>Fish & Richardson P.C.<br>919 N. Market Street, Suite 1100<br>Wilmington, DE 19899 | HAND DELIVERY |
| Frank E. Scherkenbach, Esquire<br>Fish & Richardson P.C.<br>225 Franklin Street<br>Boston, MA 02110-2804 | VIA FEDERAL EXPRESS |
| Michael Kane, Esquire<br>Fish & Richardson P.C.<br>60 South Sixth Street<br>3300 Dain Rauscher Plaza<br>Minneapolis, MN 55402 | VIA FEDERAL EXPRESS |
| Howard G. Pollack, Esquire<br>Fish & Richardson P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063 | VIA FEDERAL EXPRESS |
| Andre G. Bouchard, Esquire<br>Bouchard Margules & Friedlander, P.A.<br>222 Delaware Avenue, Suite 1400<br>Wilmington, DE 19801 | HAND DELIVERY |
| Bas de Blank, Esquire<br>Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025 | VIA FEDERAL EXPRESS |

*/s/ Steven J. Balick*
_____
Steven J. Balick

161970.1