**Exhibit K**

Westlaw.

Not Reported in A.2d                                                                                                       Page 1
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421
(Cite as: Not Reported in A.2d)

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware, Sussex County.
ROTHCHILD INTERNATIONAL CORP.
v.
LIGGETT GROUP, INC.
No. 6239

July 14, 1981

Plaintiff, a former stockholder of Liggett Group, Inc.'s seven percent preferred stock, brought this class action pursuant to a cash-out merger between Liggett Group, Inc. and Grand Metropolitan Limited. This merger resulted in the redemption of plaintiff's contractual stockholder rights for $70 per share. Plaintiffs claimed that the merger process amounted to a liquidation which would entitle the preferred stockholders to $100 per share under Liggett's articles of incorporation.

Three motions were filed by the parties and decided by the court in this action. Defendants, Liggett and GM Sub, a Delaware corporation, filed a motion to dismiss the complaint for lack of subject matter jurisdiction because of an adequate and available remedy at law for money damages. The court, in denying the defendants' motion, held that the plaintiff stated a claim for breach of a fiduciary duty by a majority stockholder which is cognizable under Delaware law without regard to whether the plaintiff seeks only a recovery of monetary damages.

The second motion was filed by Grand Metropolitan, a British corporation, to quash service of process as to it and to dismiss the complaint for lack of in personam jurisdiction. The court, in granting Grand Metropolitan's motion, refused to accept three methods of service of process argued by the plaintiff: first, under DEL. CODE ANN. tit. 10, s 3104(c)(3) since the plaintiff was a non-Delaware resident being incorporated under the laws of the State of Washington; second, under DEL. CODE ANN. tit. 8, s 382 because Grand Metropolitan did not conduct any general business activities in Delaware; and third, under an allegation that GM Sub as Grand Metropolitan's subsidiary acted as agent for Grand Metropolitan because the facts pleaded were insufficient to establish an agency relationship.

Since the court lacked in personam jurisdiction over Grand Metropolitan, the plaintiff's motion to compel discovery was denied. The court further rejected plaintiff's attempt to obtain discovery by Grand Metropolitan through GM Sub as its alter ego since GM Sub as a subsidiary by definition has no control over the parent corporation to compel disclosure of information solely in the parent's possession.

[1] Corporations 101 584

101 Corporations
    101XIV Consolidation
        101k584 k. Rights and Remedies of Dissenting Stockholders. Most Cited Cases
Minority preferred stockholders like minority common stockholders have the same right to challenge removal by a cash-out merger for less than full and fair value.

[2] Equity 150 39(3)

150 Equity
    150I Jurisdiction, Principles, and Maxims
        150I(A) Nature, Grounds, Subjects, and Extent of Jurisdiction in General
            150k37 Retention of Jurisdiction Acquired
            150k39 Complete Relief
                150k39(3) k. Damages. Most Cited Cases
A court of equity is not deprived of jurisdiction in a cash-out merger context where the complainant seeks only a recovery of money damages on behalf of the members of the injured class.

[3] Courts 106 12(2)

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) k. Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General. Most Cited Cases

Courts 106 12(3)

106 Courts
A plaintiff may not obtain service of process over a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421
**(Cite as: Not Reported in A.2d)**

Page 2

foreign corporation for alleged tortious acts committed under the forum state's corporate long-arm statute within the state where the plaintiff is not a resident of the forum state.

A plaintiff may not obtain service of process over a foreign corporation for alleged tortious acts committed under the forum state's corporate long-arm statute within the state where the plaintiff is not a resident of the forum state.

**Corporations 101 €⇒665(1)**

101 Corporations
    101XVI Foreign Corporations
        101k663 Actions by or Against
            101k665 Jurisdiction
                101k665(1) k. Facts and Circumstances Conferring Jurisdiction. Most Cited Cases
A plaintiff may not obtain service of process over a foreign corporation for alleged tortious acts committed under the forum state's corporate long-arm statute within the state where the plaintiff is not a resident of the forum state.

[4] **Courts 106 €⇒12(3)**

106 Courts

**Courts 106 €⇒14**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k14 k. Actions Between Nonresidents and Foreign Corporations. Most Cited Cases
To obtain jurisdiction over a foreign corporation under DEL. CODE ANN. tit. 8, s 382, that corporation must generally be doing business within the state and the suit must arise out of a particular business transaction which occurred in the state.

To obtain jurisdiction over a foreign corporation under DEL. CODE ANN. tit. 8, s 382, that corporation must generally be doing business within the state and the suit must arise out of a particular business transaction which occurred in the state.

[5] **Corporations 101 €⇒642(1)**

101 Corporations
    101XVI Foreign Corporations
        101k642 Carrying on Business Within State
            101k642(1) k. In General. Most Cited Cases

**Corporations 101 €⇒665(1)**

101 Corporations
    101XVI Foreign Corporations
        101k663 Actions by or Against
            101k665 Jurisdiction
                101k665(1) k. Facts and Circumstances Conferring Jurisdiction. Most Cited Cases
The measuring standard of minimum contacts is inapplicable for the purpose of service of process to establish what constitutes conducting general business activities within the forum under DEL. CODE ANN. tit. 8, s 382.

The measuring standard of minimum contacts is inapplicable for the purpose of service of process to establish what constitutes conducting general business activities within the forum under DEL. CODE ANN. tit. 8, s 382.

[6] **Corporations 101 €⇒642(1)**

101 Corporations
    101XVI Foreign Corporations
        101k642 Carrying on Business Within State
            101k642(1) k. In General. Most Cited Cases

**Corporations 101 €⇒665(1)**

101 Corporations
    101XVI Foreign Corporations
        101k663 Actions by or Against
            101k665 Jurisdiction
                101k665(1) k. Facts and Circumstances Conferring Jurisdiction. Most Cited Cases
The formation of an indirect subsidiary under the corporation laws of the forum state for the purposes of holding and acquiring shares is insufficient activity to constitute generally doing business for purposes of establishing in personam jurisdiction.

The formation of an indirect subsidiary under the corporation laws of the forum state for the purposes of holding and acquiring shares is insufficient activity to constitute generally doing business for purposes of establishing in personam jurisdiction.

[7] **Corporations 101 €⇒378**

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(A) Extent and Exercise of Powers in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421
(Cite as: Not Reported in A.2d)

Page 3

General

**101k378** k. Combinations, Pools, and Associations. Most Cited Cases

One corporation does not become the agent of another merely because a majority of its voting shares is held by the other.

**[8] Discovery 127 ⟶15**

127 Discovery

A subsidiary by definition does not control the parent corporation and cannot be compelled through the discovery process to produce documents and information in the sole possession of the parent.

**\*\*423 BROWN, Vice-Chancellor**

\*1 This suit is brought as a class action by a former shareholder of the 7 per cent Preferred stock of the defendant-Liggett Group, Inc. ('Liggett'). As a result of a tender offer and merger, the defendant GM Sub Corporation ('GM Sub') became the owner of Liggett. GM Sub, indirectly, is the wholly-owned subsidiary of the named defendant Grand Metropolitan Limited ('Grand Met').

Liggett is a Delaware corporation. GM Sub is also a Delaware corporation which was formed during 1980 as a subsidiary of Grand Met for the purpose of purchasing and holding shares in Liggett. GM Sub is engaged in no other activity. It has no office in Delaware, but it does have a registered agent for service of process. Grand Met is a British corporation. According to the present status of the record, there is no indication that it conducts any commercial business in Delaware under its own name and it has no Delaware registered agent for the purpose of accepting service of process.

Plaintiff's suit, brought on behalf of itself and the other former holders of Liggett's 7 per cent Preferred stock, contends in effect, that the acquisition of Liggett by Grand Met through the merger process amounted to a liquidation of Liggett insofar as the rights of the 7 per cent Preferred shareholders were concerned. Under Liggett's certificate of incorporation \*\*424 existing at the time of the tender offer and merger, the 7 per cent Preferred shareholders were entitled to $100 per share upon the liquidation of Liggett. Under the tender offer, accepted by less than 50 per cent of the 7 per cent Preferred shareholders, and pursuant to the terms of the subsequent merger, the 7 per cent Preferred shareholders received $70 per share as their consideration for being eliminated from the Liggett enterprise.

Plaintiff's suit charges that Liggett, by accepting Grand Met's proposal through the action of its board of directors, contravened the certificate of incorporation insofar as the rights of the 7 per cent Preferred shareholders were concerned. It sharges Grand Met and GM Sub, as the majority shareholders of Liggett at the time of the merger, with a breach of fiduciary duty by paying $70 rather than $100 per share in acquiring the interests of the 7 per cent Preferred shareholders.

The complaint seeks a declaration that Liggett was liquidated within the meaning of the certificate of incorporation as it applied to the rights of the 7 per cent Preferred stock, and it seeks to recover $30 per share for each 7 per cent Preferred shareholder who either tendered or was cashed out at $70 per share under the terms of the merger.

Against this background, three motions are now pending. First, Liggett and GM Sub have moved to dismiss the complaint for lack of jurisdiction, the basis being that the complaint seeks only specified money damages for breach of contract, thus indicating the existence of an adequate remedy at law. Secondly, Grand Met has moved to quash service of process as to it, and to dismiss the complaint against it for lack of in personam jurisdiction. Thirdly, plaintiff has moved to compel discovery against Grand Met, it being conceded that in view of its pending motion to quash service Grand Met has made no effort to respond to plaintiff's discovery demands.

I.

\*2 Based upon the arguments and authorities submitted, I conclude that the motion of Liggett and GM Sub to dismiss for lack of subject matter jurisdiction must be denied. The complaint does not contend that Liggett itself was liquidated. Rather, as I read it, the complaint charges that the actions taken by Grand Met through GM Sub, and approved and accepted by Liggett's board of directors, amounted to a liquidation as to plaintiff and its class in that it terminated the certificate of incorporation right of a 7 per cent Preferred shareholder to ever realize $100 per share upon a total liquidation of Liggett, and did so for only $70 per share.

Thus, the basis of the complaint is not so much that Liggett breached its contractual obligation to plaintiff

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                  Page 4
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421
**(Cite as: Not Reported in A.2d)**

as established by the certificate of incorporation by entering into a liquidation without paying the 7 per cent Preferred the full amount to which they were entitled. Rather, as I view the complaint, the plaintiff is charging that the defendants, through **\*\*425** the tender offer and merger, caused the 7 per cent Preferred shareholders to be eliminated from the corporate enterprise in a manner which destroyed their contractual liquidation rights for less than full value.

(1) (2) So viewed, and without passing on the merits of plaintiff's theory, I feel that the action is one which attacks a corporate act on the basis that a fiduciary duty owed to minority shareholders has been breached, thus requiring the scrutiny of the Court under Singer v. Magnavox Company, Del. Supr., 380 A.2d 969 (1977) and Roland Int'l Corp. v. Najjar, Del. Supr., 407 A.2d 1032 (1979). The grey area here derives from the fact that the would be class of shareholders is comprised of preferred shareholders who, in legal theory, have contract rights with the corporation. But in the cash-out merger context, the issue would appear to be the same whether common or preferred stock is involved, namely, forced removal by a majority shareholder for less than fair value. Thus, as in Roland, the fact that the complaint seeks only the recovery of money on behalf of the members of the class does not deprive this Court of jurisdiction-at least not until the Supreme Court speaks on the subject and takes a contrary view. Citron v. Fairchild Camera and Instrument Corp., Del. Ch., (C.A. No. 6085-NC, Unreported Opinion: Oct. 15, 1980).

II.

The service of process issue presented by Grand Met's motion is more troublesome. Plaintiff has purported to serve Grand Met in three separate ways- all three of which it contends are sufficient. Primarily, it contends that GM Sub. as an indirect, wholly-owned subsidiary of Grand Met, existing for no purpose other than to hold all outstanding stock of Liggett on behalf of Grand Met, is in reality the agent or alter ego of Grand Met and that as a consequence, by serving two copies of the complaint on the registered agent for GM Sub in Delaware, in personam jurisdiction was obtained over Grand Met as well as over GM Sub.

Secondly, plaintiff has served Grand Met pursuant to 8 Del. C. s 382 on the basis that by forming a Delaware corporation for the sole purpose of acquiring and holding stock in another Delaware corporation-such stock ownership ultimately deriving from a merger accomplished under Delaware law- Grand Met falls within the category of an unqualified foreign corporation transacting business in Delaware and thereby, under the aforesaid statute, it has constituted the Secretary of State as its agent to accept service of process.

\*3 Thirdly, plaintiff has purported to effect service of process on Grand Met pursuant to 10 Del. C. s 3104. By Subsection (c)(3) of that statute it is provided that a Delaware court may exercise personal jurisdiction over any nonresident who, in person or through an agent, causes tortious injury in this State by an act or omission in this State. Plaintiff contends that a **\*\*426** breach of a fiduciary duty can be said technically to constitute a tort and that as a consequence, when Grand Met formed GM Sub and caused it, as Grand Met's subsidiary and agent, to acquire Liggett in the manner complained of, it constituted torious (sic) conduct such as gives rise to personal jurisdiction over Grand Met through service of process on the Secretary of State pursuant to s 3104(c)(3).

Plaintiff also contends that under s 3104(c)(1) Grand Met, through GM Sub as it agent, has transacted business in this State, and that under s 3104(c)(2) it has contracted to supply services or things in Delaware. If I understand the argument, plaintiff is saying that by forming GM Sub as its agent to make a tender offer, Grand Met contracted to supply something in Delaware, namely, payment for tendered shares, and that for the same reason, by causing a subsidiary corporation to be formed under Delaware law for the purpose of holding and acquiring shares in another Delaware corporation, it was, through an agent, transacting business in Delaware.

I must confess that I am not persuaded by any of these three arguments, and in taking this position, and without reciting or analyzing them, I am-with one exception-content to rely on the authorities and arguments offered by Grand Met.

(3) Taking them in reverse order, I find no jurisdiction under s 3104. Aside from the questions of whether or not a use of the Delaware corporation law can constitute the type of tortious conduct contemplated by the statute, or whether the formation of a corporation constitutes the transaction of business, s 3104 has been interpreted recently by both this Court and the Superior Court as one intended to afford Delaware residents with a means of redress

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421  
**(Cite as: Not Reported in A.2d)**

Page 5

against persons not subject to personal service within the State. Meeker v. Bryant, Del. Ch., - A.2d - (May 12, 1981); Harmon v. Eudaily, Del. Super., 407 A.2d 232 (1979). The allegations of the complaint in this case indicate that the plaintiff is a corporation of the State of Washington with its principal place of business located in the State of Washington. Thus, in view of the aforesaid decisions, I see no need to give further consideration to the purported service of process by this means. While this point was not argued by counsel, it appears nonetheless to be dispositive of the issue.

(4) As to service attempted pursuant to 8 Del. C. s 382, the transaction of business by a foreign corporation that will give rise to personal jurisdiction is defined by the statute itself to mean 'the course or practice of carrying on any business activities in this State . . . .' This has been interpreted to mean that the corporation must be doing business generally in Delaware and that the suit must arise out of a particular business transaction which occurred in the State. Perry v. American Motors Corp., Del. Super., 353 A.2d 589 (1976); Cropper v. Rego Distribution Center, Inc., D. Del., 344 F. Supp. 7 (1972). There is no indication of **427 record that Grand Met conducts any business activities at all in Delaware. The only activity or transaction relied upon is its formation of GM Sub as its indirect subsidiary under Delaware law for the purpose of acquiring and holding shares of Liggett. I do not find this to be the course or practice of carrying on business activities generally within the meaning of s 382. Compare, Mazzotti v. W.J. Rainey, Inc., Del. Ch., 77 A.2d 67 (1950) wherein it was held that the mere ownership by a foreign corporation of the majority stock of a Delaware corporation did not amount to doing business in this State.

*4 (5) On a related point, the act of forming GM Sub for the aforesaid purpose and using the merger process under Delaware statutes to acquire ownership of Liggett may well constitute such a minimum contact as to subject Grand Met to service of process under the foreign attachment or sequestration statutes. Compare, Papendick v. Bosch, Del. Supr., 410 A.2d 148 (1979), cert. den. sub. nom., Bosch v. Papendick, - U.S. -, 100 S. Ct. 1837 (1980). However, minimum contact is not the measuring standard under s 382, and there has been no attempt at service by the attachment process here.

Finally, I cannot find, as plaintiff argues, that service on the registered agent for GM Sub, a Delaware corporation, constitutes service on Grand Met. While Corporation Trust Company is the registered agent for GM Sub, it is not the registered agent for Grand Met. In fact, Grand Met has no registered agent in Delaware.

(6) (7) Plaintiff argues that it can obtain jurisdiction over Grand Met by serving GM Sub as its agent or alter ego. But so far the indication is that GM Sub is an indirect, wholly-owned subsidiary of Grand Met. The only factual promise on which plaintiff relies, as I understand it, is the statement in the tender offer circular that GM Sub was incorporated 'for the purpose of purchasing and holding shares of (Liggett) and to date has engaged in no other activity and owns no assets,' coupled with the statement that GM Sub is 'an indirect wholly-owned subsidiary of Grand Met.' As a general principle one corporation does not become the agent of another merely because a majority of its voting shares is held by the other. Restatement (Second) of Agency, s 14M. Some further showing is normally required.

Here there is nothing to show that GM Sub is a mere alter ego of Grand Met, or that fraud or some other element is involved such as would justify ignoring the distinction between the two separate corporate entities.

Moreover, as a practical matter, the praecipe accompanying the filing of the complaint does not show that the Sheriff was directed to serve Corporation Trust Company in two different ways- one as registered agent for GM Sub and the other as registered agent for the agent of Grand Met. Nor does the Sheriff's return indicate that he affected, or attempted to affect, service on Grand Met in this manner.

**428 Accordingly, I conclude that Grand Met's motion to quash service of process and to dismiss the complaint against it for lack of in personam jurisdiction should be granted.

III.

(8) Finally, because of this result, plaintiff's motion to compel discovery by Grand Met must be denied. Having been dismissed as a party defendant, Grand Met is not subject to the type of discovery that the motion seeks to compel. Alternatively, plaintiff seeks to obtain discovery against Grand Met by pursuing its motion to compel against GM Sub-the theory again being that GM Sub is really the alter ego of Grand Met. However, on the present status of the record I

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 6
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421
**(Cite as: Not Reported in A.2d)**

find no basis to deviate from the general rule on the subject, namely, that since a subsidiary corporation by definition does not control the parent corporation, it cannot be compelled through the discovery process to produce documents and information possessed solely by the parent. Compare, Pennwalt Corp. v. Plough, Inc., D. Del., 85 F.R.D. 257 (1979); Westinghouse Credit Corp. v. Mountain States Mining and Milling Co., D. Colo., 37 F.R.D. 348 (1965).

\*5 An appropriate form of order may be submitted embodying the rulings made herein.

Del.Ch. 1981
Rothchild International Corp. v. Liggett Group, Inc
Not Reported in A.2d, 1981 WL 7624 (Del.Ch.), 6 Del. J. Corp. L. 421

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.