**Exhibit L**

Case 1:04-cv-01371-JJF     Document 138-3     Filed 11/29/2005     Page 1 of 8

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)
(Cite as: Not Reported in A.2d)

Page 1

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Rhode Island, Providence County.
NANCY WILLIS
v.
SUBARU OF AMERICA, INC. SUBARU OF NEW ENGLAND INC. AND BALD HILL REALTY COMPANY d/b/a BALD HILL SUBARU/DODGE ALIAS JOHN DOE CORPORATION
C.A. No. 93-6202

FILED JANUARY 9, 1996

DECISION

GIBNEY, J.
*1 Before this Court is Plaintiff's R.C.P. 37 motion to compel answers to interrogatories and production of documents in the above-entitled case. Plaintiff also seeks to amend her complaint under R.C.P. 15, adding her two adopted grandchildren as co-plaintiffs. Additionally, plaintiff has filed a motion for sanctions under R.C.P. 37 for failure to disclose certain information requested through interrogatories.

Facts/Travel

On November 15, 1990, Nancy Willis (plaintiff) purchased a new 1990 Subaru Loyale station wagon. That same day, she parked the car at her daughter's house, placing the 3-speed automatic transmission in 'Park' and removing her keys. As she exited her car, it began rolling backward down the driveway, catching her leg in the door and injuring her knee. Defendant Subaru of America, Inc. (SOA), the importer of the vehicle, subsequently issued a recall notice to plaintiff, indicating that her car had a defective three-speed automatic transmission which could slip out of the 'Park' position.

Plaintiff brought this action against several parties, including SOA and Bald Hill Subaru/Dodge ('Bald Hill'), the dealer which sold her the automobile. FN1 As part of the discovery process, plaintiff propounded interrogatories on March 4, 1994. The SOA obtained leave of Court to extend the deadline within which to answer the interrogatories until May 15, 1994. Plaintiff filed a Motion to Compel Answers and SOA provided answers to certain of the interrogatories in July, 1994. On May 3, 1995, plaintiff filed a Motion to Compel More Responsive Answers to these interrogatories pursuant to R.C.P. 37.

Plaintiff also filed a Request for Documents (First Set) and Request for Admissions (First Set) upon Defendant SOA on April 19, 1995, followed by additional Requests for Documents (Second Set, Third Set) on May 4, 1995. Later in May, plaintiff objected to Defendant's Motion to Extend (May 17, 1995) and filed Motions to Compel Answers to Interrogatories and for Production of Documents.

On May 25, 1995, Defendant filed an Objection in Response to Plaintiff's Motions to Compel. Plaintiff responded by filing two Supplemental Memoranda in Support of her Motions, as well as requests for sanctions. Plaintiff also filed a Motion to Amend the Complaint on June 28, seeking to add her two adopted grandchildren as co-plaintiffs.

The court also has before it Defendant's Supplemental Memorandum in Opposition to Plaintiff's Motion to Compel and for Sanctions, a Memorandum in Support of Defendant's Objection to Plaintiff's Motion to Amend the Complaint, and Defendant's Supplemental Memorandum in Support of its Objection to Plaintiff's Motion to Compel Interrogatories and Production of Documents. Plaintiff's filings with the court include a Memorandum in Support of Motion to Compel Further Responses, a Supplemental Memorandum in Support of Motion to Compel Further Response to Discovery Requests, and a Reply to Defendant's Supplemental Memorandum in Opposition to Motion to Compel Further Responses to Discovery Requests.

Scope of Discovery

*2 Under the Rules of Civil Procedure, a party may obtain discovery of 'any matter, not privileged, which is relevant to the subject matter involved in the pending action.' R.C.P. 26(b). The requirement of relevance is viewed liberally. 8 Wright & Miller, Federal Practice and Procedure, 2165 at 225 (1994). Furthermore, the requested information need not be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 2

admissible in evidence to be discoverable. Id. Finally, a party responding to discovery requests has a duty to reasonably amend or supplement its responses to include information acquired subsequent to its original responses. R.C.P. 26(e).

Interrogatories

Under R.C.P. 33, a party served with written interrogatories must respond by furnishing 'such information as is available to the party.' Reading this mandate in conjunction with the requirements of Rule 26, the court, in reviewing interrogatory-related disputes, determines whether the information requested is discoverable and, if so, whether it is 'available' to the party. Cf. General Environmental Science Corp. v. Horsfall, 136 F.R.D. 130, 132 (N.D. Ill 1991) (issues under Rule 34 is whether documents are discoverable and if so whether they are in the 'control' of the party).

Interrogatory 5 requests the names and accompanying personal data 'of each person known to the defendant who has knowledge of the incident which forms the basis of the plaintiff's complaint, its causes and/or consequences . . . ' The SOA identified in-house counsel, local counsel and a claims service representative. Plaintiff claims that SOA can identify other individuals having such knowledge, including those who participated in the issuance of the recall letter and those who repaired the transmission in the plaintiff's car following her injury.

The dispute surrounding this interrogatory appears to result from its drafting. At first glance, the interrogatory appears to seek the identity of those with knowledge of the underlying facts which form the basis of the plaintiff's complaint, specifically those who knew how she was injured. Based on such a reading, SOA's answer would be responsive.

Plaintiff suggests a broader reading of the interrogatory, apparently arguing that it be read as a disjunctive. The court agrees that this is the proper reading given the 'and/or' language contained therein. The defendant is therefore ordered to supplement its response to Interrogatory 5 so that it provides information concerning persons with knowledge of either the underlying incident, or its causes, or its consequences.

Interrogatory 6 requests that defendant 'identify with particularity each and every report, letter, memorandum or other writing known to the Defendant that pertains in any way to the Plaintiff or the Plaintiff's claims.' The SOA responded that no such documents exist with the exception of those produced by the plaintiff. Plaintiff argues that the mechanic's report of the defect in the plaintiff's car, as well as those documents relating to the issuance of the recall letter, are responsive to this interrogatory.

*3 Unlike the previous interrogatory, the information sought in Interrogatory 6 is clear, as is the defendant's response thereto. The defendant claims that no such information exists. As a result, it cannot be compelled to respond further to this interrogatory. See Economou v. Butz, 466 F.Supp. 1351, 1363 (S.D. N.Y. 1979) (court refused to compel further answers where defendant claimed lack of knowledge as to questions posed); Cullins v. Heckler, 108 F.R.D. 172, 177 (S.D. N.Y. 1985) (answer to interrogatory denying possession of requested information is adequate if it states that information is unavailable). The plaintiff's motion with respect to this interrogatory is therefore denied. The court can only remind SOA of its continuing duty to amend or supplement its answers should responsive information later surface.

Interrogatories 9, 10, and 13-19 request information relating to the design, manufacture, and assemblage of the subject vehicle. The SOA repeatedly claims a lack of knowledge concerning these requests in light of the fact that it did not design, manufacture, test, or inspect the subject vehicle. Plaintiff alleges that SOA either has this information or has access to it as the American agent for Fuji.

A party may be obligated to provide answers if it is so 'under the control' of another corporation that the information is effectively within the knowledge of the subsidiary. FN2 See TransContinental Fertilizer Co. v. Samsung Co., 108 F.R.D. 650, 652-53 (E.D. Pa. 1985) (litigating parent required to respond where information available to subsidiary under control of parent); Brunswick Corp. v. Suzuki Motor Co., 96 F.R.D. 684, 686 (E.D. Wis. 1983) (parent exercised sufficient control to require it to provide information possessed by subsidiaries). The reverse situation, requesting information from a subsidiary which is in the hands of its parent, does not impose a corresponding duty. See Westinghouse Credit Corp. v. Mountain Sales Mining and Mining Co., 37 F.R.D. 348, 349 (D. Colo. 1965) (because element of control absent in relationship, subsidiary had no duty to provide answers to interrogatories where information was in hands of its parent).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 3

The plaintiff focuses on SOA's status as an agent for Fuji for

purposes of compliance with the National Highway Transportation Safety Act of 1966, arguing that this relationship supplies the 'control' necessary to deem the requested information 'available' to SOA. The stated intent of the act, however, belies such an interpretation. See 15 U.S.C. 1381 (stating purpose of act is to reduce traffic accidents by establishing motor vehicle safety standards and undertaking research and development)); see also Handy v. General Motors Corp., 518 F.2d 786, 788 (9th Cir. 1975) (Congress did not intend to create a private right of action when it adopted act). FN3

*4 Moreover, courts addressing the issue have uniformly rejected the claim that service upon a domestic entity designated for service of process under the act is sufficient service of process on a foreign manufacturer. See, e.g., Dr. Ing. H.C.F. Porsche A.G. v. Superior Court for Sacramento County, 177 Cal. Rptr. 155, 159 (App. 1981); Sipes v. American Honda Motor Co., Inc., 608 S.W.2d 125, 128 (Mo. App. 1980); Fields v. Peyer, 250 N.W.2d 311, 317 (Wisc. 1977). As the act does not supply the authority necessary to constitute valid service of process under Rule 4, the court similarly finds that it does not supply the 'availability' requirement necessary under Rule 33. The court therefore declines to order SOA to supplement its responses by obtaining information from Fuji simply because SOA acts as Fuji's domestic importer.

Once again the court reminds SOA of its duty to disclose discoverable information available, as well as its duty to amend and supplement that information as necessary. If SOA has available to it any information which is responsive to the plaintiff's requests on this issue, it is obligated to produce such information. The court's ruling on this issue simply removes any duty for SOA to obtain the requested information from Fuji.

Interrogatory 20 requests information concerning SOA's previous dealings with the National Highway Traffic Safety Administration (NHTSA) for the last 15 years. The SOA responded that the interrogatory was '[n]ot applicable.' This response is insufficient. First, the information is arguably relevant to the instant action. See Roberts v. Carrier Corp., 107 F.R.D. 678, 682-83 (N.D. Ill 1985) (products liability plaintiff entitled to information submitted to Consumer Product Safety Commission).

Furthermore, SOA cannot deny that such dealings occurred given that, at the very least, a recall letter was issued for the subject vehicle. The SOA must respond fully to this interrogatory.

Interrogatory 22 requests information relative to legal actions or

claims made against SOA arising out of the negligence and/or design defect relating to the transmission shift linkage of the subject vehicle or any other vehicle similar in style. Interrogatory 23 makes a similar request seeking, apart from lawsuits, any complaints, correspondence, warranty claims or other communications relating to the transmission shift linkage in the Loyale or any other vehicle similar in style. The SOA responded by listing one claim involving a woman injured in Florida when her 1990 AT 3 Subaru station wagon rolled back. The claimant's attorney is also listed. The response provides that '[t]he case was disposed of.'

General information of the type requested here is discoverable in a products liability action. See Josephs v. Harris Corp., 677 F.2d 985, 991 (3rd Cir. 1982) (information concerning prior accidents caused by printing press which injured plaintiff and by similar presses was relevant and discoverable); Kozlowski v. Sears Roebuck & Co, 73 F.R.D. 73, 75 (D. Mass. 1976) (products liability plaintiff entitled to information concerning similar accidents); Abrams v. Vaughan & Bushnell Mfg. Co., 325 N.Y.S.2d 976, 979 (A.D. 1971) (plaintiff entitled to disclosure of information regarding similar claims whether made prior or subsequent to plaintiff's purchase).

*5 The SOA's response to Interrogatory 22 states that SOA objects to answering further and provides information concerning the one previous claim without waiving that objection. Because the information sought is discoverable, however, the court finds that SOA's objection is without merit and orders it to supplement its answers to Interrogatories 22 and 23 so that they respond fully to the respective inquiries.

Requests for Production of Documents

The plaintiff has filed three sets of requests for document production. Within these sets, there are a number of requests which remain in dispute. For the sake of clarity, each set and individual request will be discussed in numerical order.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 4

**First Set**

Request 3(b) seeks all correspondence between SOA and any retail dealer of Subaru automobiles regarding NHTSA recall campaign No. 91-V-091000. Request 4(b) also focuses on recall campaign No. 91-V-091000, seeking memoranda, bulletins and/or any other documents referring or relating to it. The SOA objects to producing these documents, arguing that the recall campaign for which plaintiff seeks information in these requests did not involve the subject vehicle.

The exhibits attached to plaintiff's June 23, 1995 Supplemental Memorandum in Support of Motion to Compel and in Support of Motion for Sanctions suggest that the recall campaign for which information is sought did involve the subject vehicle. Exhibit B is a letter dated April 29, 1991, from David J. Perry, SOA's Director of Product Compliance to William Boehly, Associate Administrator for Enforcement at the NHTSA. In the letter, Perry files a defect information report affecting 1990 and 1991 Loyale models equipped with the 3 AT automatic transmission. The letter is stamped '91V-091' in the upper right-hand corner. Similarly, Exhibit C contains a letter from Perry to Boehly dated July 11, 1991 enclosing a copy of the distributor/dealer notification sent out 'regarding the implementation of recall campaign 91V-091 - 3 AT Shift Linkage Adjustment.'

The court finds SOA's objection to be without merit. It would seem that the only possible objection could be that the request refers to recall 'No. 91-V-091000' while the Exhibits refer to recall campaign '91V-091.' To the extent that SOA relies on this distinction, its objection is overruled. See Continental Illinois National Bank & Trust v. Caton, 136 F.R.D. 682, 688 (D. Kan. 1991) (response that interrogatory would not be answered due to misquotation was improper where gist and meaning of interrogatory was clear). The plaintiff's motion to compel is granted with respect to this request.

**Second Set**

Request 1(b) is essentially identical to Requests 3(b) and 4(b) of the first set. Request 1(b) seeks all documents referring or relating to NHTSA recall campaign No. 91-V-091000. The SOA again objects on the ground that this information is not applicable to the subject vehicle and therefore is not reasonably calculated to lead to the discovery of admissible evidence.

*6 For the reasons stated with respect to Request 1(b) of the first set, however, the information sought does appear applicable to the subject vehicle. The plaintiff's motion to compel is therefore granted with respect to this request as well.

Request 2 seeks all correspondence between SOA and Fuji relating to the plaintiff. The SOA objects on work product immunity grounds.

Under R.C.P. 26(b)(3), a party is not required to produce any writing FN4 obtained or prepared in anticipation of litigation, unless a denial of production or inspection will result in an injustice or undue hardship. The concept of work product immunity is not limited to information or material gathered or assembled by an attorney. See Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1977); see also Weitzman v. Balzing Pedals, Inc., 157 F.R.D. 125, 127 (D. Colo. 1993) (claim file generated by insurer protected by work product doctrine). Where the information does concern the 'mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party, ' it is absolutely immune from discovery. R.C.P. 26(b)(3); see also Town of North Kingston v. Ashley, 118 R.I. 505, 510, 374 A.2d 1033, 1036 (1977).

The doctrine of work product immunity is to be narrowly construed. Republican Party of North Carolina v. Morton, 136 F.R.D. 421, 423 (E.D. N.C. 1991). The burden of proving that the doctrine applies rests on the party seeking to assert it. See Redvanly v. Nynex Corp., 152 F.R.D. 460, 465 (S.D. N.Y. 1993); Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269, 275 (D. Mass. 1991). This burden cannot be discharged by mere conclusory assertions. See Redvanly, 152 F.R.D. at 465; see also P & B Marina Ltd. Partnership v. Logrande, 136 F.R.D. 50, 57 (E.D. N.Y. 1991) (blanket assertion of work product immunity with regard to large number of documents inadequate to prevent discovery). The party seeking protection must establish, as to each document, all elements triggering protection. Republican Party of North Carolina, 136 F.R.D. at 429. Upon such a showing, the burden shifts to the party seeking the discovery to show substantial need and undue hardship. P & B Marina, 136 F.R.D. at 57.

The SOA has not met its burden on this issue. Its blanket assertion is insufficient to shield the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 5
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)
**(Cite as: Not Reported in A.2d)**

requested information. The SOA is therefore ordered to respond fully to this request. If, upon reviewing the information sought, SOA feels that the information is protected from discovery, it is to 'describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.' R.C.P. 26(b)(5); see also Allendale Mutual Ins. Co. v. Bull Data Systems, 145 F.R.D. 84, 88 (N.D. Ill 1992) (party resisting discovery obligated to compile privilege log listing each separate document claimed to be beyond discovery) FN5. Upon such an event, the court can determine whether the information qualifies as work product, thus shifting the burden to the plaintiff to show, as to each document, substantial need and undue hardship.

*7 In Request 4, plaintiff requests SOA's annual reports for the years 1989 to present. The SOA objects on relevancy grounds and further

argues that the reports sought are public documents available from other sources. Rule 26 authorizes the court to limit discovery under Rule 34 if the information sought is obtainable from some other source that is more convenient, less burdensome, or less expensive. While SOA claims that the documents are discoverable from other sources, it has raised no claim that production would be unduly burdensome or expensive. Therefore SOA's contentions do not bring it within the realm of this exception to producing otherwise discoverable information, and plaintiff's request for production is granted.

Finally, Request 5(b) seeks all correspondence between SOA and Fuji that refers or relates to NHTSA recall campaign No. 91-V-091000. The SOA objects on the grounds of work product immunity. Once again, SOA's blanket assertion is insufficient to meet its burden. The SOA is ordered to respond to this request in the same manner as Request 2 of this set.

Third Set

Of the eleven requests for production made in the third set, seven remain in dispute. Request 2 seeks correspondence to and from Fuji that refers or relates to the April 29, 1991 letter from David Perry of SOA to William Boehly at NHTSA. The SOA objects on work product grounds. Again, SOA is ordered to respond to this request in the same manner as

Requests 2 and 5(b) of the second set.

Requests 5 and 6 seek service bulletins and service manual corrections, respectively, for the 1991 model of the subject vehicle. The SOA objects to both on the grounds that the requests are over broad. The court retains discretion to deny a discovery request that is oppressive or burdensome. See Wright and Miller, 2174 (noting that rule 33 does not sanction oppression by interrogatories). It is well settled, however, that bare assertions that discovery requests are overly broad, burdensome, oppressive, or irrelevant are insufficient, standing alone, to bar production; the requested party must clarify and explain how each discovery request so classifies. See Redland Soccer Club v. Dept. of the Army of the United States, 55 F.3d 827, 856 (3rd Cir. 1995); Mead Corp. v. Riverwood Natural Resources Corp., 145 F.R.D. 512, 515 (D. Minn. 1992).

The SOA has not met its burden on this issue. It is therefore ordered to respond to this request fully. The SOA's claim of work product immunity is denied as to this request, for that doctrine's definition cannot be said to encompass the information plaintiff seeks in these requests.

Request 8 asks for any and all documents that refer or relate to Product Campaign WZN-47. The SOA objects on the grounds that the request is over broad, burdensome, and oppressive, and seeks privileged information. Although mindful of its discretion to deny overly broad, burdensome, or oppressive discovery requests, the court remains unpersuaded by SOA's bare assertions. The SOA is ordered to respond fully to this request or explain why it is unable to do so. With respect to its claim of work product immunity or privilege, SOA is ordered to make each claim expressly and describe the nature of the documents in a manner that will enable other parties to assess the applicability of the privilege or protection.

*8 Requests 9 and 10 seek the 1991 and 1992 Genuine Subaru Loyale Service Manual, respectively. The SOA objects on the grounds that the information can be readily obtained by the plaintiff through public sources. Again, however, SOA has not claimed that these other sources would be more convenient, less burdensome or less expensive. The SOA is ordered to respond to this request.

Finally, Request 11 represents a subset of Request 8, seeking any documents received by SOA from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 6
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)
**(Cite as: Not Reported in A.2d)**

Subaru dealers that refer or relate to Product Campaign bulletin WZN-47. The SOA repeats its objection to Request 8, arguing that the request is burdensome and potentially invades on privileged information. The court's ruling on this request is the same as its ruling on Request 8 of this set.

### Motion to Amend Complaint

It is well established that amendments under this rule are generally granted with great liberality and that 'the decision about whether to permit a party to amend his or her pleading is one left exclusively to the sound discretion of the trial justice.' Normandin v. Levine, 621 A.2d 713, 715 (R.I. 1993); Dionne v. Baute, 589 A.2d 833, 835-36 (R.I. 1991). Despite such liberality, the court may deny leave to amend if it finds that such amendment will unfairly prejudice the opposing party. Fauber v. Cavanaugh, 568 A.2d 326 (R.I. 1990). The burden rests on the party opposing a motion to amend the complaint to show that substantial prejudice would result if the motion were granted. Wachsberger v. Pepper, 583 A.2d 77, 78-79 (R.I. 1990).

Plaintiff moves to amend her complaint in naming two adopted children as co-plaintiffs, seeking damages on the basis of loss of consortium under R.I.G.L. 9-1-41(b). Although a loss of consortium claim under this statute constitutes a separate cause of action, it is not an

independent action but a derivative one attached to the claim of the injured party. See Hodor v. United Servs. Auto Ass'n, 637 A.2d 357, 358-59 (R.I. 1994); Sama v. Cardi Corp, 569 A.2d 432, 433 (R.I. 1990).

Defendant SOA, while objecting in principle to the motion to amend, has not indicated that such amendment would unfairly prejudice its defense of the personal injury claim. See Serra v. Ford Motor Credit Co., 463 A.2d 142, 150 (R.I. 1983) (reversing denial of motion to amend where element of prejudice absent). As such, the Court hereby grants the plaintiff leave to amend the complaint to add co-plaintiffs and their claim for loss of consortium.

### Request for Sanctions

Under R.C.P. 37, this court has discretion to order a variety of sanctions for refusal to adequately comply with discovery procedures. See Senn v. Surgidev Corp., 641 A.2d 1311, 1318 (R.I. 1994) (noting rule provides a 'smorgasbord of sanctions'). Reasonable expenses incurred in obtaining an order, including attorney's fees, may be awarded. R.C.P. 37. Refusal to comply with an order may be considered a contempt of court. R.C.P. 37(b)(1). The Court may also make an order refusing to allow a party opportunity to support or oppose designated claims or defenses. R.C.P. 37 (b)(2)(ii). In practice, such sanctions are generally reserved for outrageous conduct. See, e.g., Fournier v. Town of Coventry, 615 A.2d 118, 118-19 (R.I. 1992) (default judgment entered where defendant repeatedly failed to produce documents in spite of court order); Bosler v. Sugarman, 440 A.2d 129, 132 (R.I. 1982) (persistent failure to provide financial records with justifiable excuse warranted entry of default judgment); Providence Gas Co. v. Biltmore Hotel Operating Co., 119 R.I. 108, 114, 376 A.2d 334, 337 (1977) (default judgment ordered where party answered interrogatories sixty days after deadline set for conditional default).

*9 Defendant SOA's conduct in this dispute cannot be deemed outrageous. The SOA had legitimate objections to the plaintiff's requests and motions. These objections were not interposed for the purpose of delay but rather in furtherance of zealous advocacy. To sanction the defendant would effectively penalize its counsel for seeking to protect its rights. See Fremming v. Tansey, 626 A.2d 219, 221 (R.I. 1993) (where motion to compel constituted part of 'sound litigation strategy,' imposition of sanctions would have chilling influence on effective advocacy). As a result, plaintiff's request for sanctions is denied.

With respect to all of the above, Counsel shall submit the appropriate order for entry.

FN1. The plaintiff did not name Fuji Heavy Industries, Inc. ('Fuji'), the automobile's manufacturer, as a defendant.

FN2. Both sides have extensively briefed the issue of 'control' of information as it relates to a party's duty to provide information in the possession of a related entity. The cases cited by the parties, however, concern disputes under Rule 34 rather than Rule 33. The Rule 33 test is inapplicable in the instant case because SOA has not responded to any Rule 34 requests by claiming a lack of 'control' of the information.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)
(Cite as: **Not Reported in A.2d**)

Page 7

FN3. Congress repealed the 1966 act in 1994. The new act is located at 49 U.S.C. 30101 et. seq. Nothing contained in the new version alters the court's conclusion on this issue.

FN4. The Supreme Court of Rhode Island has interpreted this term to include taped statements, documents, tangible materials, photographs, and films. See Carbal v. Arruda, 556 A.2d 47, 49 (R.I. 1989).

FN5. This log should contain detailed information regarding each document, including its date, author, subject matter, and purpose for production as well as all recipients, along with their capacities, and a specific explanation of why the document is allegedly privileged or immune from discovery under the work product doctrine. Id; Nevada Power Co. v. Monsanto Co., 151 F.R.D. 118, 121 n.5 (D. Nev. 1993).

R.I.Super. 1996.
Willis v. Subaru of America, Inc.
Not Reported in A.2d, 1996 WL 936866 (R.I.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.