# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, | |
| Plaintiff, | |
| v. | C.A. No. 04-1371-JJF |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, | |
| Defendants. | |

**POWER INTEGRATIONS, INC.'S FIRST NOTICE OF DEPOSITION OF FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Power Integrations, Inc. ("Power Integrations"), by its counsel, will take the deposition of Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. ("Fairchild") beginning September 1, 2005, at 9:00 a.m., at the law offices of Kim & Chang, Hannuri Building, 219 Naeja-dong, Jongno-gu, Seoul 110-053, Korea, or at such other time and place as the parties agree upon. The deposition will be taken upon oral examination before an official authorized by law to administer oaths and will continue from day to day until completed. Testimony of the witnesses will be stenographically recorded and may be videotaped.

Fairchild shall identify and designate one or more officers, directors, managing agents or other knowledgeable persons to testify on its behalf regarding the subject matter identified in Schedule A. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the persons designated by Fairchild should be prepared to testify as to such matters known or reasonably available to Fairchild.

Fairchild is requested to provide Power Integrations' counsel, on or before Friday, August 12, 2005, a written designation of the names and positions of the officer(s), director(s), managing agent(s) or other person(s) who are most competent to testify concerning the matters set forth in Attachment A, and for each person designated, the matters on which he or she will testify.

Dated:  August 9, 2005                      FISH & RICHARDSON P.C.


                                   By:  /s/ Sean P. Hayes
                                        William J. Marsden, Jr. (#2247)
                                        Sean P. Hayes (#4413)
                                        919 N. Market Street, Suite 1100
                                        P.O. Box 1114
                                        Wilmington, DE  19899-1114
                                        Telephone: (302) 652-5070
                                        Facsimile:  (302) 652-0607

                                        Frank E. Scherkenbach
                                        225 Franklin Street
                                        Boston, Massachusetts 02110-2804
                                        Telephone: (617) 542-5070
                                        Facsimile:  (617) 542-8906

                                        Howard G. Pollack
                                        Gina M. Steele
                                        Michael R. Headley
                                        500 Arguello Street, Suite 500
                                        Redwood City, California 94063
                                        Telephone: (650) 839-5070
                                        Facsimile:  (650) 839-5071

                                        Attorneys for Plaintiff
                                        POWER INTEGRATIONS, INC.


50287218.doc

2

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

1.      "Plaintiff" or "Power Integrations" or "PI" means Power Integrations Inc., individually and collectively, including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Power Integrations and others acting on behalf of Power Integrations.

2.      "Defendant(s)," "Fairchild," "you" or "your" means Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, individually and collectively, including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Fairchild and others acting on behalf of Fairchild.

3.      "Document" is defined broadly to be given the full scope of that term contemplated in Federal Rule of Civil Procedure 34, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including without limitation computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Rule 1001, Federal Rules of Evidence.  Any document bearing marks, including without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate document.

4.      "Person" means any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

5.      "Entity" means any person.

6.      The "'851 patent" means U.S. Patent No. 6,107,851.

7.      The "'876 patent" means U.S. Patent No. 6,249,876.

8.      The "'366 patent" means U.S. Patent No. 6,229,366.

9.      The "'075 patent" means U.S. Patent No. 4,811,075.

10.      "Infringe" and "infringement" refer to direct infringement, contributory infringement, inducement, literal infringement, and/or infringement by the doctrine of equivalents.

11.      "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, or assemblage of components/parts (either individually or collectively), which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

12.      "Accused Product(s)" means and includes all products described by Fairchild as Off-Line Conversion integrated circuits, whether manufactured or sold by Fairchild or other, to at least include specifically part numbers FSCQ0565, FSCQ0765, FSCQ1265, FSCQ1565, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD201, FSD210, FSD210B, FSD211, FSD500, FSD611, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RLB, FSDH0265RN, FSDH0265RNB, FSDL321, FSDL321L, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RLB, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM07652, FAN7601, FAN7602, and any products not materially different from these.

2

13.    The term "high voltage device" means a device capable of conducting a voltage in excess of 50 volts.

14.    "Products containing same" or "downstream product(s)" means and includes all products or kits that contain any Accused Product.

15.    To "relate to" means to describe, discuss, constitute, comprise, or evidence.

16.    The term "identify," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known business address and telephone number; last known title or occupation; and last known employer.

17.    The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided:  the entity's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that legal entity.

18.    The term "identify," when used with respect to a document, subject to the option to produce records under Fed. R. Civ. P. 33(d), means to provide information sufficient to locate that document, including but not limited to the following:  the production number range, the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; the identifying code number, file number, title, or label of such document; a general description of such document (*e.g.*, letter, memorandum, drawing); the title or heading; the number of pages of which such document consists; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of such document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person

having custody of it; and, if the document is in a foreign language, whether an English translation of the document exists, whether partial or complete.

19.     The phrase "patents-in-suit" refers to any of the '851, '876, '366,  or '075 patents.

20.     The terms "use" and "using" include without limitation use in a power supply, use in testing, use in demonstrating, and use in training.

21.      "Any" and "all" shall be construed to mean both any and all.

22.      "The Complaint" refers to the Complaint, filed by Power Integrations on October 20, 2004.

23.      "The Answer" refers to the Answer to Complaint and Counterclaim, filed by Fairchild on December 9, 2004.

Fairchild is requested to promptly notify Power Integrations, in writing, of the name, address, telephone number, capacity and job title of each person designated to testify and the matters on which each person will testify.  Fairchild is requested to designate one or more officers, directors, managing agents, employees or other persons most knowledgeable on the following deposition topics:

## DEPOSITION TOPICS

## I.     GENERAL

TOPIC NO. 1:

The current and past corporate structure and organization of Fairchild with regard to units, divisions, subsidiaries, involved with the design, development, manufacture, marketing and/or sale of the Accused Products.

TOPIC NO. 2:

Fairchild's policies and/or practices relating to document retention and destruction.

TOPIC NO. 3:

The identity of all persons at Fairchild with knowledge relating to the topics in Schedule A of this Notice of Deposition.

TOPIC NO.4:

The identity, location, custody, and control of all documents concerning the topics listed in Topic Nos. 1-42.

## II.    STRUCTURE OF THE ACCUSED PRODUCTS

TOPIC NO. 5:

The structure, function and operation of the circuits of the Accused Products.

TOPIC NO. 6:

The fabrication and resulting physical structure of all high voltage transistor devices incorporated in any of the Accused Products.

TOPIC NO. 7:

The design and development of the circuits of the Accused Products, specifically including the circuits responsible for the "internal soft start" feature as that term is used in Fairchild's datasheets.

TOPIC NO. 8:

The design and development of the circuits of the Accused Products, specifically including the circuits responsible for the "frequency modulation," "frequency scaling," or "frequency jitter" feature as those terms are used in Fairchild's documents.

TOPIC NO. 9:

The design and development of the physical structure of and fabrication process related to all high voltage transistors incorporated in any of the Accused Products.

TOPIC NO. 10:

The interpretation and explanation of Fairchild's technical documents describing the circuits or circuit design of the Accused Products.

TOPIC NO. 11:

The interpretation and explanation of Fairchild's technical documents describing the fabrication and the resulting physical structure of all high voltage transistor devices incorporated in the Accused Products.

TOPIC NO. 12:

Authentication of Fairchild's documents describing the fabrication and the resulting physical structure of all high voltage transistor devices incorporated in the Accused Products.

TOPIC NO. 13:

Authentication of Fairchild's documents describing the circuits or circuit design of the Accused Products, including but not limited to, data sheets and schematics.

## III.    MARKETING, SALES, LICENSING AND PROFITABILITY OF THE ACCUSED PRODUCTS

TOPIC NO. 14:

The features Fairchild customers prefer, or have requested, be incorporated or designed into Fairchild Accused Products.

TOPIC NO. 15:

The date on which Fairchild decided to include an "internal soft start" feature in its devices, the identity of all persons who participated in or can corroborate that decision, the identity of all documents that refer, relate, or corroborate that decision, and all facts and circumstances relating to that decision.

TOPIC NO. 16:

The date on which Fairchild decided to include a "frequency modulation," "frequency scaling" or "frequency jitter" feature in its devices, the identity of all persons who participated in or can corroborate that decision, the identity of all documents that refer, relate, or corroborate that decision, and all facts and circumstances relating to that decision.

TOPIC NO. 17:

The date(s) on which Fairchild decided on the portions of the processes designated as "SDG3" and "SDG4" used for fabricating high voltage transistors, the identity of all persons who participated in or can corroborate those decisions, the identity of all

documents that refer, relate, or corroborate those decisions, and all facts and circumstances relating to those decisions.

TOPIC NO. 18:

Fairchild's process or practice of "benchmarking" competitors' products.

TOPIC NO. 19:

The preparation, content, interpretation and distribution of promotional materials used in marketing the Accused Products.

TOPIC NO. 20:

The existence, development and distribution of any reference designs or demonstration boards associated with any of the Accused Products.

TOPIC NO. 21:

Communications with any customers regarding products that compete with the Accused Products.

TOPIC NO. 22:

Any comparisons made between Fairchild's products and Power Integrations' products, including communications between Fairchild and any third parties about such comparisons.

TOPIC NO. 23:

All communications between Fairchild and any customer, or potential customer, relating to this case, the patents-in-suit, Power Integrations or Power Integrations' products.

TOPIC NO. 24:

All communications relating to the patents-in-suit between Fairchild and any person known to be, or believed by Fairchild to be, a customer of Power Integrations.

TOPIC NO. 25:

Any contacts with distributors, sales representatives, customers or potential customers concerning the sale of the Accused Products.

TOPIC NO. 26:

The importation of the Accused Products into the United States by Fairchild and/or its customers.

TOPIC NO. 27:

Identification of all Fairchild customers who have purchased the Accused Products, the particular Accused Product(s) each Fairchild customer purchases or has purchased, the unit volume of such purchases and Fairchild's customers' uses of the Accused Products.

TOPIC NO. 28:

The manner in which Fairchild customers' incorporate the Accused Products into Fairchild customers' downstream products and the identification of any product designed, manufactured, or sold by any entity other than Fairchild that uses or incorporates any of the Accused Products.

TOPIC NO. 29:

Any licenses Fairchild has entered involving the technology of the Accused Products, including licenses of third party technology and licenses of Fairchild's patented technology, and all royalties paid on those licenses.

TOPIC NO. 30:

Fairchild financial statements on a corporate, division, and product basis, including without limitation, profit and loss statements, operating expenses, balance sheets, and cash flow statements related to the units, divisions, etc. responsible for the accused products.

TOPIC NO. 31:

Any analyses or studies of Fairchild profitability, on a corporate, division, or product basis related to the units, divisions, etc. responsible for the Accused Products.

TOPIC NO. 32:

Any budget, sales, cost, or profit forecasts for Fairchild on a corporate, division, or product basis related to the units, divisions, etc. responsible for the Accused Products.

<u>TOPIC NO. 33:</u>

For each of the Accused Products sold:

     a.  the price charged;
     b.  the revenues received;
     c.  the volume of units ordered, sold, and shipped;
     d.  the costs, including without limitation all selling, marketing, administrative, research and development, production, and capital costs;
     e.  any identification of fixed and variable costs;
     f.  any budgets, sales, cost, or profit forecasts;
     g.  the net profits attributable to the product;
     h.  all methods used to account for financial data, whether reported officially or unofficially;
     i.  all projections relating to the above made by anyone, including all business or marketing plans relating to such products;
     j.  the method of storing, tracking, maintaining, or retrieving data relating to the above;

<u>TOPIC NO. 34:</u>

The profit margin for the sale of the Accused Products.

<u>TOPIC NO. 35:</u>

Fairchild's distribution network, including its sales and marketing organizations and the specific distribution network maintained or used by Fairchild for the distribution and sale of the Accused Products.

<u>TOPIC NO. 36:</u>

The market for each Fairchild Accused Product including any research related to the actual or potential market for the products, such as formal and/or informal surveys, and identification of all competing products.

<u>TOPIC NO. 37:</u>

Communications with any third parties related to the "internal soft start" feature in Fairchild or Power Integrations devices, the identity of those third parties, all documents that refer, relate, or corroborate that communication, and all facts and circumstances relating to that communication.

<u>TOPIC NO. 38</u>:

Communications with any third parties related to the "frequency modulation," "frequency scaling," or "frequency jitter" feature in Fairchild or Power Integrations devices, the identity of those third parties, all documents that refer, relate, or corroborate that communication, and all facts and circumstances relating to that communication.

**IV.    FAIRCHILD'S KNOWLEDGE OF POWER INTEGRATIONS' PATENTS AND COMPETITORS' PRODUCTS**

<u>TOPIC NO. 39</u>:

Fairchild's knowledge or understanding of Power Integrations product(s), including any efforts by Fairchild to analyze or reverse engineer the structures or circuits incorporated therein.

<u>TOPIC NO. 40</u>:

Fairchild's knowledge and/or understanding of Power Integrations' patents-in-suit, including the date Fairchild first became aware of each of the patents-in-suit, and the identity of all individuals at Fairchild who had any knowledge of any of the patents-in-suit, and all analysis by Fairchild of the patents-in-suit.

<u>TOPIC NO. 41</u>:

The date on which Fairchild decided to develop, manufacture, offer for sale and/or sell the Accused Products or to continue such activities despite the knowledge of Power Integrations' patents, the identity of all persons who participated in or can corroborate that decision, the identity of all documents that refer, relate, or corroborate that decision, and all facts and circumstances relating to that decision.

<u>TOPIC NO. 42</u>:

Fairchild's use of an IBM website in or about late 1997 to search for, identify, obtain, download, print, review, and/or analyze competitors' patents, including but not limited to Power Integrations patents such as the '075 Patent, the identity of all parties involved in

10

the use of an IBM website, all documents that refer, relate, or corroborate the use of an IBM website, and all facts and circumstances relating to the use of an IBM website.

<u>TOPIC NO. 43:</u>

Fairchild's use of third party assistance to analyze or reverse engineer competitors' products, including the identity of all third parties who assist, or have assisted, Fairchild in its efforts to conduct analysis, "construction analysis," "benchmarking," or reverse engineering of competitors' products.

50287242.doc

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2005, I electronically filed **POWER INTEGRATIONS, INC.'S FIRST NOTICE OF DEPOSITION OF FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick, Esq.
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE 19899

I hereby certify that on August 9, 2005, I have mailed via Federal Express, the document(s) to the following non-registered participants:

G. Hopkins Guy, III
Bas de Blank
Duo Chen
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025

Fairchild Semiconductor International, Inc.
Attn: Legal Department
82 Running Hill Road
South Portland, ME 04106

Fairchild Semiconductor Corporation
Attn: Legal Department
82 Running Hill Road
South Portland, ME 04106

/s/ *Sean P. Hayes*
Sean P. Hayes

# Exhibit B



# ORRICK

**ORRICK, HERRINGTON & SUTC LIFFE LLP**
1000 MARSH ROAD
MENLO PARK, CA 94025
*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

August 30, 2005

Bas de Blank
(650) 614-7343
bdeblank@orrick.com

*VIA FACSIMILE AND U.S. MAIL*

Howard G. Pollack
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

        Re:     <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Howard:

       On August 25, 2005, I sent you our tentative identification of the topics on which the Korean 30(b)(6) witnesses will be designated to testify. As I cautioned they might, those designations have slightly changed. The largest difference is that ST Im will be designated to testify in place of JW Lee. Here is the updated list of Korean witnesses that we believe will testify in response to Power Integrations' 30(b)(6) topics:

| | |
|---|---|
| H.S. Choi | 2-5, 8, 10, 13, 14, 19-24, 37, 38, 40, 41 |
| J.S. Han | 4, 5, 7, 10, 13 |
| K.O. Jang | 4, 5, 7, 8, 10, 13, 15, 16, 18, 39, 41, 43 |
| S.T. Im | 1, 3, 4, 25-28, 32-36 |
| C.S. Lim | 1-3, 5 |
| C.K. Jeon | 3, 4, 6, 9, 11, 12, 17, 18, 39, 40, 42, 43 |

As before, we will let you know if these designations change again.

                            Sincerely,

                            Bas de Blank

cc:     William J. Marsden, Jr.
        Michael R. Headley

# Exhibit C

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
650 839-5070

**BY FACSIMILE & U.S. MAIL**
(650) 614-7401

Facsimile
650 839-5071

September 22, 2005

Web Site
www.fr.com

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

**Howard G. Pollack**
(650) 839-5007

Email
pollack@fr.com

Re:    Power Integrations Inc. v. Fairchild Semiconductor International
        USDC D. Del. – Civil Action No. 04-1371-JJF

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Bas:

This letter relates to the 30(b)(6) depositions taken in Korea, and the upcoming
30(b)(6) depositions to be taken in the U.S. Power Integrations is concerned about
the lack of full and complete answers received in response to its noticed 30(b)(6)
topics.

Rule 30(b)(6) requires that the individuals designated provide full and complete
answers, to the extent known or reasonably available to the company, to the topics for
which they are designated. In general, the designated Korean witnesses left several
questions unanswered. Attached to this letter is a list of exemplary nonresponsive
answers given by each of the Korean witnesses.

Power Integrations seeks complete responses to all of it 30(b)(6) topics, particularly
to those related to the development of the accused products (topics 7 – 8) and those
related to marketing, sales, applications, and profitability of the accused products
(topics 14 – 38). More particularly, first, Power Integrations seeks to understand who
made the decision to implement certain features in the products, and the
circumstances surrounding those decisions. Second, who makes decisions on pricing,
and who in the company has final authority to approve variances from standard
pricing.

Third, Power Integrations seeks to learn the complete set of worldwide customers for
the accused products, including both the distributors and the final end-customers, and
the products and applications in which end-customers use the accused products. Mr.
Sang Tae Im testified that much of this information is stored in a "BO" electronic
database. Power Integrations therefore requests that Fairchild download and produce
the complete information in its possession on worldwide customers on a by-customer,
by-product basis, including information on applications, prices, volumes, dates of
sales, and any other information compiled in the database related to sales and uses of
the accused products.

FISH & RICHARDSON P.C.

Bas de Blank
September 22, 2005
Page 2

If the witnesses that you have designated as 30(b)(6) witnesses in the United States do not fully respond to these outstanding issues as well as fully as to all topics they are currently designated on, we will request the Court order further depositions, including but not limited to H. K. Kim and Atman Chau, and will request the Court order their production in the U.S.

Finally, Power Integrations requests that you produce a full set of technical data for the FSD500 series of products (which we believe may include at least the 500, 510, and 520) and the FAN7602, which Fairchild witnesses projected would go into volume production prior to trial. This technical data should include data sheets, application notes, and schematics for these parts.

Very truly yours,

Howard G. Pollack

50302684.doc

# Exhibit D

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

<u>VIA FACSIMILE & U.S. MAIL</u>

October 25, 2005

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

**Gina M Steele**
(650) 839-5027

Email
steele@fr.com



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    Power Integrations, Inc. v. Fairchild Semiconductor Int'l
       USDC-D. Del. - C.A. No. 04-1371-JJF

Dear Bas:

This letter relates to Fairchild's failure to produce witnesses in response to Power Integrations' Notice of Deposition Pursuant to FRCP 30(b)(6).

First, Fairchild has failed to identify any witness to testify in response to Topic Nos. 29-31. As a preliminary matter, Fairchild must either identify witnesses who will testify in response to these topics or state that no such witnesses will be produced.

Second, the only witness Fairchild identified to testify in response to Topic Nos. 32-35, S.T. Im, was unable to testify to sales occurring outside of Korea. Specifically, Fairchild's Attorney Vickie Feeman noted during the deposition of Mr. Im that:

> He's only been designated with respect to Korean sales. We talked the other day about – that there are U.S. witnesses that will be designated for U.S. and worldwide sales.

Im Dep. 49:23-50:1, Sep. 9, 2005. Because no U.S. witnesses were ever designated for Topic Nos. 32-35, Fairchild must provide a witness who can testify as to Topic Nos. 32-35 for sales occurring outside of Korea.

Third, in your letter to Michael Headley dated September 27, 2005, you indicated that Fairchild would provide witnesses to testify in response to Topic Nos. 30-33. In your letter dated October 2, however, you indicated to Mr. Headley that topics 30-33 would no longer be covered in the Portland depositions on October 3, 2005. You further indicated that you would identify witnesses to testify as to these omitted topics, but never did so. Please identify witnesses who will testify in response to these topics, or state that no such witnesses will be produced.

More fundamentally, Power Integrations is concerned that Fairchild's 30(b)(6) witnesses' have been unable to answer questions on topics for which they were

F I S H  &  R I C H A R D S O N  P.C.

Bas de Blank
October 25, 2005
Page 2

designated, specifically information about the development of the accused Fairchild
products (Topic Nos. 7-8) and the marketing, sales, and profitability of these products
(Topic Nos. 14-38).

For example, Dan Godbout, who Fairchild identified to testify regarding contacts
with distributors, sales representatives, and customers about sales of the Accused
Products (Topic 25), admitted that he was not involved in distribution, *see* Godbout
(Rough) Tr. 61:15, October 3, 2005, ("I'm not intimately involved in distribution"),
and that he had never contacted customers about selling the accused products. *Id.* at
8:21-9:2 ("Q. At any time between 1997 and 2003 were you involved in the sale of –
sale or marketing of power controllers? … A. No.  Q. During that time were you
involved in the sale of any F.P.S. products?  A. No").  Mr. Godbout further admitted
that he had no knowledge of any sales of any products occurring outside of the United
States. *Id.* at 11:6-11 ("Q: Could you describe for me how Fairchild is organized as
fair as the Americas, Japanese Americas, Korea, globally?  A. I don't have much
knowledge of the other regions").

Fairchild's other 30(b)(6) witnesses were similarly limited in their knowledge of
worldwide sales and importation of the accused products.  Stephen Jensen, identified
by Fairchild to testify as to the importation of the accused products, stated he had no
knowledge about importation into the U.S.  Jensen Dep. 75:12-15, October 4, 2005
("Q: What do you know about the importation of the accused products into the U.S.
by Fairchild and/or its customers?  A. I do not know – I don't know if any products
would be imported").  Robert Gendron, identified by Fairchild to testify as to the
manner in which Fairchild customers' incorporate the Accused Products into
downstream products, stated he had no knowledge of such downstream usage.
Gendron Dep. 62:4-5, October 4, 2005 ("We – we wouldn't know where – what their
plans are for their end product").

Additionally, Fairchild has produced no witnesses able to confirm when or why
Fairchild chose to incorporate frequency jitter and soft-start functionality into the
Accused Products.  Mr. Han, designated for Topic No. 7 (the design and development
of the circuits of the Accused Products, specifically including the circuits responsible
for the 'internal soft start' feature) stated that he had no idea who designed the soft
start feature.  *See* Han Dep. 27:17-21 ("Q.  Who designed the circuits related to the
soft start function of the FSD210?  … A. I don't remember clearly").  Mr. Jang,
designated for Topic Nos. 7-8 (the design and development of "soft start" and
"frequency jitter") similarly stated that he had no idea why these features were added
to the Accused Products.  *See* Jang Dep. 33:4-6, Sept. 8, 2005 ("Q.  Why did
Fairchild decide to implement the frequency scaling feature in the FSD200 product?
A.  I don't remember about that exactly…"); *Id.* at 36:5-10 ("Q.  Why hadn't

FISH & RICHARDSON P.C.

Bas de Blank
October 25, 2005
Page 3


Fairchild implemented frequency scaling in any FPS product prior to your work developing the FSD200?  A.  Well, about that, I don't know clearly…").

Fairchild has an obligation to provide 30(b)(6) witnesses who are knowledgeable about the topics for which they are designated. To date, Fairchild has not lived up to this obligation, at least with respect to information about the development of the accused Fairchild products (Topic Nos. 7-8) and the marketing, sales, and profitability of these products (Topic Nos. 14-38).

In your letter to Howard Pollack of September 28, 2005, you indicated that he should let you know if PI has reason to believe that Mr. H.K. Kim possessed responsive information that the designated 30(b)(6) witnesses did not provide. You similarly confirmed to my colleague Michael Headley your willingness to consider providing additional foreign employees for deposition if PI provided "a compelling reason." Given the deficiencies noted above, and based on the testimony to date, it is clear that the deposition of Mr. Kim will be required for at least Topic Nos. 14-18 and 26-32. *See* Gendron Dep. 40:25-41:6 ("[H.K. Kim] manages all of the power conversion products … it's these products which is part of Green FPS which is part of FPS.  You know, it's part of power conversion"); Rowe (Rough) Tr. 26:22-24 ("Q. You had said before that H.K. Kim was in charge of the product line for the FSD200 and the other FPS products?  A. Correct"); Im Dep. 10:19-11:2, October 9, 2005 ("Q. Do you report to anyone at Fairchild?  A.  I have a team manager above me, Mr. H. K. Kim. […]  Q.  What generally are Mr. Kim's responsibilities?  A.  He's in charge of power conversion products line"); Im Dep. 18:20-24, October 10, 2005 ("Q.  If you need to seek authority for a deviation below standard price, who do you seek that authority from?  A.  I think I'll seek approval from H. K. Kim, who is directly above me.  My boss").  Furthermore, because it is now clear that Mr. Kim should have been designated and that this deposition should have taken place while the parties were in Korea, Fairchild now has a duty to produce H.K. Kim for deposition in the United States.

Also, with regard to the pricing, revenues, sales volumes, costs, and profits of the accused products (contained in Topic 33, for which Fairchild has not yet designated a witness), it appears that the most responsive witnesses are Helen Karabstos and Thomas Hudson.

> A.      I have seen system pricing be broken for some products.
> Q.      And what – what's the process that is used …
> A.      We'd go back through marketing.
> Q.      Who at marketing?
> A.      Pardon me?
> Q.      Who at marketing would you go to?
> A.      There's two individuals.  Kevin Zis …And Helen

FISH & RICHARDSON P.C.

Bas de Blank
October 25, 2005
Page 4

> Karabstos. …
> Q.    Do you know who they report to?
> A.    Yes, I do.
> Q.    And who is that?
> A.    Thomas Hudson. …
> Q.    Is [Hudson] in the marketing department?
> A.    He manages pricing.

Godbout (Rough) Tr. 36:8-38:5.

With regard to downstream usage of the accused products, even a simple search of Fairchild's website reveals individuals who have information more responsive to PI's requests. "Richard Chung joined Fairchild in November of 2002 as a Field Application Engineer for servicing the computing accounts in Texas, specializing in the design of off-line and DC/DC converters for computing and telecommunication equipment. Van Niemela joined Fairchild in January of 2002 as a Market Development Engineer for power applications, specializing in the design of off-line and dc-dc converters for consumer electronics and merchant power supplies." http://www.fairchildsemi.com/power/sem_bios.html. These individuals would undoubtedly have information regarding Topics 25-28 (contact with distributors and customers, importation, and the manner of incorporation of the Accused Products into downstream products), given that they are apparently responsible for designing custom solutions and interacting with Fairchild customers.

Please contact me no later than October 28 to arrange for the depositions of Mr. H.K. Kim, and to discuss the addition of further 30(b)(6) witnesses who can provide responsive answers to PI's 30(b)(6) notice. If I do not hear from you by that time, PI will need to bring this matter to the Court's attention.

Very truly yours,

Gina M. Steele

/vfl

50305828.doc

# Exhibit E

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA FACSIMILE & U.S. MAIL**

October 26, 2005

G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Frank E. Scherkenbach
(617) 521-7883

Email
scherkenbach@fr.com

**FR**

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Re:    Power Integrations, Inc. v. Fairchild Semiconductor International
       USDC-D. Del. - C.A. No. 04-1371-JJF

Dear Hop and Bas:

This letter relates to a number of documents identified in recent depositions that are responsive to Power Integrations' requests for production of documents but which we believe have not been produced. We hereby request that you do so.

First, in his deposition on October 4, 2005, Mr. Jensen stated that he receives weekly e-mail reports from regional sales managers:

> Q. ... So a regional sales manager, what do they do?
> A. A regional sales manager is responsible for a given geographic territory and also responsible for any DSMs or rep companies that fall within that geographic area. They are the management of that region as it – as it has to do with sales; anything to do with sales of Fairchild products.
> Q. Okay. Do they provide periodic reports to you on their activities?
> A. Yes. ...
> Q. What form do their reports take?
> A. Weekly reports. ...
> Q. Okay. Is it actually a piece of paper or –
> A. E-mail.

Jensen Dep. 19:9-20:2. Further, in his October 4, 2005, deposition Mr. Gendron stated that product sales are tracked in "weekly activity reports" prepared by sales people:

> Q. How [are sales] tracked? How is it possible that a salesperson in the United States can get credit for sales that are ... incurred in Japan?
> A. It's a manual process that you see salespeople try to document.
> Q. Where would those records be kept?
> A. Well, you would see it with the salespeople in their weekly activity reports

FISH & RICHARDSON P.C.

G. Hopkins Guy, III
Bas de Blank
October 26, 2005
Page 2

Gendron Dep. 64:21-65:3. As both the weekly reports in e-mails from the sales managers and the sales personnel are responsive to our document requests regarding Fairchild's sales, please produce them immediately or confirm that they have been produced by providing their production numbers.

Second, Mr. Jensen indicated that Fairchild maintains Point of Sale reports for sales of its products by distributors:

> Q. What's a POS report?
> A. Point of Sale report. That is what a distributor will supply to Fairchild to show end customers that they've sold our product to.
> Q. Why does Fairchild want to know who the end customers are?
> A. So that we understand if they – if in fact we're going to be selling more to that person and also understand the customer base at which the distributor is going after. ...
> Q. How frequently do distributors provide Point of Sale reports?
> A. Weekly.

Jensen Dep. 26:2-22. To date Fairchild has only produced some of these reports. Please produce the balance or confirm that they have been produced by providing their production numbers.

Third, Mr. Jensen indicated that Fairchild lists target accounts for the Americas, as well as for "Tier 1" or "segment" customers.

> Q. Do you have any idea of roughly how many Tier 1 customers there are either overall or by segment?
> A. No. I – I've seen the list, but I can't recall.
> Q. So there is a list?
> A. Yes.

Jensen Dep. 17:3-7.

> Q. Okay. What are target accounts?
> A. I have 80 accounts in the Americas that I have deemed as target, which means we'll put extra effort into winning or to making sure we grow revenue.
> Q. Who identifies target accounts?
> A. My individual sales – regional sales managers ...
> Q. Okay. I take it there's a list – you maintain a list of these people?
> A. Yes.

FISH & RICHARDSON P.C.

G. Hopkins Guy, III
Bas de Blank
October 26, 2005
Page 3

Jensen Dep. 24:21-26:4. Please produce these lists for both Tier 1 customers and target accounts or confirm that they have been produced by providing their production numbers.

Fourth, Mr. Jensen indicated that there were both recent and upcoming business reviews conducted by Fairchild for which relevant documents had been created.

> A. We have what we all QBRs, Quarterly Business Reviews.
> Q. What's that?
> A. Quarterly Business Reviews. We meet on a quarterly basis at some location and review your plan, your business, and your activities for the next quarter; what you'll do next quarter. ...
> Q. Okay. When was the most recent one?
> A. September – September – September 13th of this year.
> Q. Okay. And is there another one scheduled, coming up?
> A. We will have another one, yes, in probably November. Mid-November.

Jensen Dep. 37:21-40:3. Fairchild has produced some of the documents presented at these Quarterly Business Reviews, but some are missing, including those created for the September and November 2005 Quarterly Business Reviews referenced in Mr. Jensen's deposition. Please produce all such documents or confirm you have done so by providing their production numbers.

Fifth, Mr. Jensen indicated that he was instituting his own quarterly business reviews with reports from his regional sales managers.

> A. And then we have tried to implement a quarterly business review with each of the regional sales managers, but has been – we've been unable to get it off the ground. Hopefully we'll be starting that ... actually next week will be our first official QBR with our new management.
> Q. And that will be all of your RSMs reporting to you?
> A. Correct. ...
> Q. And the first [meeting] is next week; right?
> A. Correct.
> Q. And what sort of presentations do you expect to – to see at that meeting?
> A. We're going to review each of the territories, key accounts, POS activities. We – I'll implement a – we've implemented what we call an OST, Objective Strategy Tactics, for the given regions, so we'll know what the objective is, what the strategies are, and what the tactics are, you know, to be successful in the strategy. Each of the regional sales managers will present at that.

FISH & RICHARDSON P.C.

G. Hopkins Guy, III
Bas de Blank
October 26, 2005
Page 4

Jensen Dep. 42:11-43:5. Please produce the documents presented at this meeting or confirm you have done so by providing their production numbers .

Sixth, Mr. Jensen indicated that there would be a sales training session conducted in October.

    A. I've been involved recently in some new sales training that we are going to do next week and I've been participating in some discussions around that this week.
    Q. I see. Is it fair to say that the people in your organization attended some Fairchild sales training?
    A. No. They – most of the DSMs in my organization are – are new hires.
    Q. Is it your expectation that they will attend some sort of sales training function, either a seminar or –
    A. Next week.
    Q. I see. What's the nature of this seminar that's going to happen next week?
    A. Just new product training. New training, period, which includes new product training, about Fairchild systems, what's available for them, how we're organized. Trying to get them familiar with the company, understanding how Fairchild works.
    Q. I see. Are you actually going to play a role in that?
    A. I will make a presentation, yeah.

Deposition of Jensen, 90:8-91:4. Please confirm that Fairchild will produce all relevant materials from this training session.

Finally, during his deposition on October 4, 2005, Mr. Gendron made it clear that Fairchild can easily create reports showing worldwide sales of the accused products on a per-customer and month-by-month basis.

    Q. Would you be able to go into the database and determine the number of sales of different Fairchild chips to … Korean manufacturers?
    A. I would be able to go into the database, and just as I selected the Americas, I could select another region.
    Q. Okay.
    A. And see detailed billing information by account.
    Q. So from that database, you're able to get information from all the different regions in Fairchild?
    A. Yes

Gendron Dep. 72:5-14. *See also* Engelbrechten Dep. 121:24-122:6, Sept. 30, 2005 ("…we actually had a design win database which tracked design wins or design-ins. You can put whatever you want. So we could roll up numbers and say how much

FISH & RICHARDSON P.C.

G. Hopkins Guy, III
Bas de Blank
October 26, 2005
Page 5

design win revenue has been driven by North America, for example, and we would look at that, and then judge that number to decide how much of that, because we had to factor hit rate in and things like this").

As requested in Power Integrations' First Set of Interrogatories No. 9, please provide reports from the database of commissions/sales credit identified during both the Gendron and Engelbrechten depositions as soon as possible in electronic format. These reports should include, on a month by month basis, each customer that has purchased an accused product, the specific accused product(s) that customer purchased, the number of units the customer purchased of each accused product, the total amount paid by the customer for each accused product purchased, the end customer for the accused product(s) and, if available, the downstream products into which the accused products will be incorporated.

Please contact me by October 28, 2005, to indicate if Fairchild will produce the documents responsive to Power Integrations' requests which are described in this letter. In order for Power Integrations to complete the supplemental responses to Fairchild's interrogatories by November 7, we would need to have the requested information no later than October 31, 2005.

Sincerely,

*Frank E Scherkenbach*

Frank E. Scherkenbach

ltr to fairchild re docs fes edits.doc

# Exhibit F

**Jennifer Pierce**

| | |
|---|---|
| **From:** | Michael Headley |
| **Sent:** | Friday, October 21, 2005 1:07 AM |
| **To:** | 'de Blank, Bas' |
| **Subject:** | Re: PI-Fairchild: deposition scheduling, claim construction, and document production |

Bas,

This e-mail confirms and follows up our discussion yesterday afternoon in your offices. I have written separately regarding a few of the issues we discussed, but this should confirm (and further) the remaining issues regarding depositions, claim construction, and documents.

**DEPOSITIONS**

**Bob Morrill**: We discussed that it was best for Gina and Vickie to coordinate directly for the continued deposition of Mr. Morrill.

**Vahe Sarkissian**: I am still working to firm up possible dates for a deposition, but I believe Nov. 7 might work for Mr. Sarkissian. I will let you know when I have further word to that end, but let me know if that might work from your end.

**Steve Schott**: You offered Mr. Schott for deposition in Silicon Valley on Nov. 9, and I hope to know in the next few days whether that might work on this end.

**Tom Beaver/Bob Conrad**: You still had no further word on Mr. Beaver and/or Mr. Conrad's availability when we spoke. Please let me know asap if they are available in the date range we'd been looking at (particularly the week of Nov. 14) or if we need to go back to the drawing board for some other dates. If you have other possible dates, please let me know.

**Leif Lund**: You inquired about Mr. Lund's availability for deposition in light of the Power Integrations interrogatory response regarding the '075 patent, and I hope to have an answer for you on that issue here shortly.

**CLAIM CONSTRUCTION**

We noted during our meeting that you had circulated the prior evening a proposed joint chart containing the parties' claim construction positions. Per our discussions, I will review the chart for errors (on either side of the fence) and will let you know if anything is not as I understand it to be. I will not likely be able to get you any response before Monday at the earliest, though, so I apologize in advance for any inconvenience.

**DOCUMENTS**

We also discussed some outstanding documents from Fairchild, but you had no further word for me on the production of the 7602 schematics, the 500 series schematics (or any sort of agreement that we could treat the 200 series products as representative of the 500 series products to simplify things), or the sales commission database referenced in Mr. Engelbrechten's deposition. Let me know if you have any further word on these documents asap, as we need to shore up these issues in the near term.

I look forward to your response.

Sincerely,

Michael R. Headley
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063-1526
(650) 839-5139 (direct)
(650) 839-5071 (fax)

This e-mail may contain confidential and privileged information. If you received it in error, please contact the sender and delete all copies.

# Exhibit G

**Jennifer Pierce**

---

**From:**       Michael Headley
**Sent:**       Monday, November 14, 2005 7:57 PM
**To:**         'de Blank, Bas'
**Subject:**    Re: PI-Fairchild: outstanding damages discovery from Fairchild

**Follow Up Flag:**    Follow up
**Flag Status:**       Green

Bas,

I wrote you on Friday asking for firm answers to Power Integrations' repeated inquiries regarding outstanding damages-related production from Fairchild and asked for a response by noon today, but I have yet to hear anything substantive in response.  In fact, our only word from Fairchild since our conversation last Tuesday regarding these documents, when you stated you hoped to have answers for me later that day, was your e-mail of Friday evening noting you "should be available to speak with [me] on Monday."  I heard nothing from you today, and I was unable to reach you when I called.

Power Integrations needs the critical damages-related discovery we've requested on multiple occasions now to prepare for upcoming depositions and expert reports.  If you do not produce the documents by the close of business on Wednesday, or provide me with a date certain for their production in the very near term, Power Integrations will have no choice but to ask the Court to intervene.

Per my voicemail, I will call you again in the morning in an effort to resolve this issue informally, but we cannot delay this matter indefinitely.

Sincerely,

Michael R. Headley
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063-1526
(650) 839-5139 (direct)
(650) 839-5071 (fax)

This e-mail may contain confidential and privileged information. If you received it in error, please contact the sender and delete all copies.

1

# Exhibit H

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

**Michael R. Headley**
(650) 839-5139

Email
headley@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

<u>VIA FACSIMILE & U.S. MAIL</u>

November 17, 2005

G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:    <u>Power Integrations, Inc. v. Fairchild Semiconductor Int'l</u>
       USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Hop & Bas:

I am writing to address Fairchild's deficiencies in the production of financial information in this case. Power Integrations has specifically requested a wide range of missing financial data for more than a month now, and the sum total of Fairchild's response was the 50 or so pages produced earlier this week. As noted on several occasions, Power Integrations needs

1. Worldwide sales data for the accused products, broken down by product on a per customer, per month basis, with up-to-date figures;

2. Weekly "activity" reports related to the Accused Products provided by salespersons, in particular weekly reports regarding "Green FPS products" and accounts like Samsung;

3. Reports listing the "Tier 1"/"Segment" customers or target accounts for worldwide sales;

4. All documents from Fairchild's Quarterly Business Reviews;

5. Documents from the recent sales training session Mr. Jensen said he would be conducting in October;

6. Commissions and sales credit information for sales of the accused products, including the sales commission database identified during the deposition of Hubertus Engelbrechten.

These documents are necessary to evaluate the volume, pricing, and profitability of Fairchild's sales of the accused parts, and they should indicate quantity, total amount paid, end customer, and downstream product (or application) in which the product is incorporated. If Fairchild has already produced this information, I reiterate Power

FISH & RICHARDSON P.C.

Bas de Blank
November 17, 2005
Page 2

Integrations' request that Fairchild identify the production range(s) for the documents, as Power Integrations has been unable to locate the information in the millions of pages Fairchild has produced to date.

Also of concern is Fairchild's continued refusal to produce financial information in a useful format, i.e. electronic spreadsheets. The financial and sales information in this case is voluminous, and Power Integrations has been providing Fairchild with electronic versions of financial and sales information. For example, Power Integrations produced five POS reports contained in Microsoft Excel spreadsheets earlier this week, and included on the production CD the same information in a series of individually numbered pages in .tif format per the parties standard practice for production. In response to Bas's complaint about the "volume" of production, I explained that the individual pages contained the same information as the five spreadsheets, just in a different form.

Fairchild, by way of contrast, has not produced <u>any</u> financial data in electronic format to date despite Power Integrations' repeated requests for such information and the fact that Fairchild employee Robert Gendron testified that Fairchild's financial information regarding the accused products is readily accessible in electronic format:

> 5  Q. Would you be able to go into the database and determine
> 6      the number of sales of different Fairchild chips to
> 7      Ko -- Korean manufacturers?
> 8  A. I would be able to go into the database, and just as I
> 9      selected the Americas, I could select another region.
> 10 Q. Okay.
> 11 A. And see detailed billing information by account.
> 12 Q. So from that database, you're able to get information
> 13     from all the different regions in Fairchild?
> 14 A. Yes.

Gendron Tr. at 72:5-14. Despite this admission, and similar admissions from other Fairchild employees and former employees who have testified to date, Fairchild has yet to produce financial information in a useful format. In light of Fairchild's delay in producing this highly-relevant information, and the approaching deadlines for expert reports, there is simply no excuse for Fairchild's continued refusal to address this deficiency.

Fairchild has also yet to provide a 30(b)(6) witness to answer a host of topics, including sales and marketing-related questions, on behalf of Fairchild. Fairchild's witnesses to date have lacked sufficient knowledge to answer questions related to a number of topics, including

FISH & RICHARDSON P.C.

Bas de Blank
November 17, 2005
Page 3

- Downstream usage of the accused products and Fairchild's contacts with third parties regarding the same (Topic Nos. 25-28);

- Fairchild financial data for the groups/divisions responsible for the accused products (Topic No. 29-32);

- Fairchild's pricing and cost of goods for the accused parts, and the documentation supporting the same (Topic No. 33);

- Fairchild's profits on sales of the accused parts, including the worldwide sales compensation database identified during the deposition of Hubertus Engelbrechten (Topic Nos. 34);

- Sales and distribution of the accused products (Topic No. 35);

- Sales, marketing, and profitability information for sales outside of Korea (Topic Nos. 32-36), as S.T. Im addressed only Korean sales during his deposition.

On October 25, 2005, Power Integrations specifically requested that Fairchild remedy these deficiencies and others, but Fairchild has yet to identify any witness for deposition on these topics. There is simply no excuse for such a delay.

As a final point, I note that Fairchild has again limited its production of sales information to U.S. sales despite the Court Order of August 9, 2005 permitting discovery of Fairchild's sales outside of the United States. The Court's order is clear: "information related to Fairchild's sales outside the United States is relevant . . . ." Power Integrations is therefore entitled to worldwide sales information as outlined above.

FISH & RICHARDSON P.C.

Bas de Blank
November 17, 2005
Page 4


Fairchild's continued lack of effort and cooperation in the production of financial data is unacceptable. Unless Fairchild provides this critical sales and marketing discovery by the close of business on Tuesday, November 22, and identifies a witness who can authenticate the documents and address the outstanding topics in Power Integrations' 30(b)(6) notice, Power Integrations will have no choice but to move to compel.

Sincerely,

Michael R. Headley

/vfl

10571681.doc

# Exhibit I

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

**Michael R. Headley**
(650) 839-5139

Email
headley@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA FACSIMILE & U.S. MAIL**
650/614-7401

November 26, 2005

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:    <u>Power Integrations Inc. v. Fairchild Semiconductor Int'l</u>
USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Bas:

For months now, Power Integrations has attempted to address deficiencies in Fairchild's production of financial information. On November 17, I wrote you and Mr. Guy to address this topic once again, setting forth a number of specific deficiencies such as responsive 30(b)(6) testimony and electronic documents, including worldwide sales data for the accused products broken down by product, customer, and month. It is clear from Fairchild's responses to Interrogatory Nos. 8-10 and your letter to Mr. Pollack of September 28 that Fairchild has responsive information in electronic format (including electronic versions of the worldwide sales data, the POS reports at FCS1686873-925, and the information produced at FCS0668851-964), but we have yet to receive any production of electronic data.

I requested a response by Tuesday, November 22, but when we spoke this Tuesday you were only able to address one category of documents from my letter (item 5, sales training presentations). Moreover, although you suggested that Fairchild might be willing to produce financial information in electronic form, you stated you needed to look at the letter to form a more specific response to my inquiries.

Power Integrations has waited long enough for this discovery. We have asked for a date certain on several occasions during the past few months for the production of specific categories of financial information and testimony. If Fairchild does not produce the information and identify witnesses by the close of business on Wednesday, November 30, Power Integrations will move to compel production.

Sincerely,

Michael R. Headley

50314122.doc

# Exhibit J



## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

November 14, 2005

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

*VIA FACSIMILE*

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94036

      Re:    <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Michael:

      There are a number of issues that we have been discussing. To make sure that both parties are clear on each other's position, I wanted to memorialize some of these points. Please let me know if you disagree with anything set forth in this letter.

**Depositions:**

      **Balu Balakrishnan:**

      Fairchild will begin Mr. Balakrishnan's deposition at 9:30 a.m. in our offices in Menlo Park on Thursday, November 17, 2005. The deposition will continue on at least Friday, November 18, 2005. In addition to his individual testimony, Mr. Balakrishnan has been designated by Power Integrations to testify in response to 19 different 30(b)(6) deposition topics. These topics are as follows:

            Topic Nos. 3 and 4 of Fairchild's Second Notice of Deposition
            Topic Nos. 3 and 8 of Fairchild's Third Notice of Deposition
            Topic Nos. 1-5, 6, and 8-11 of Fairchild's Fourth Notice of Deposition
            Topic Nos. 1-5 of Fairchild's Fifth Notice of Deposition

While other Power Integrations witnesses may have testified as to some portion of some of these topics, it is our understanding that Mr. Balakrishnan will be offered on each of these topics.

      While Fairchild will seek to complete Mr. Balakrishnan's deposition as efficiently as possible, we have indicated that, given the scope of Mr. Balakrishnan's proposed testimony and that he is one of only two fact witnesses that Power Integrations may call at trial, we believe that we will need four days of deposition. Without conceding that additional time will be necessary, Power Integrations has confirmed that Mr. Balakrishnan would be available on at least November 23, 2005.



**ORRICK**

Michael Headley
11/14/2005
Page 2

**Bruce Renouard:**

Power Integrations has agreed to permit Fairchild to continue Mr. Renouard's deposition. The parties will meet and confer on a mutually convenient date. This date will be after Mr. Lelieur's deposition but sufficiently before damages expert reports. Please let me know what dates are convenient for Mr. Renouard.

**Scheduled depositions:**

The following three depositions have been scheduled to begin at 9:30 on the dates and at the locations indicated:

- Doug Bailey – November 22, 2005 at Orrick's office
- Robert Lelieur – November 30, 2005 at Orrick's office
- Robert Morrill – December 15, 2005 at Fish & Richardson's office

The parties are seeking to schedule dates for the following additional depositions:

Fairchild seeks to depose the following witnesses:

- Cliff Walker
- Vahe Sarkissian
- James Beasom
- Don Wollenson
- Bruce Renouard

Power Integrations seeks to depose the following witnesses:

- Steve Schott
- Bob Conrad
- Tom Beaver
- 30(b)(6) witness on topic nos. 29-33

Messrs. Schott, Conrad, and Beaver are available for deposition in Portland, Maine on January 11 and 12, 2005. The parties will continue to work together to arrange mutually convenient deposition dates and locations for the other depositions.

The parties have agreed that Fairchild will provide Power Integrations with a list of prior art that Fairchild considers relevant to the asserted patents and the date of each piece of prior art.

DOCSSV1:435025.1



ORRICK

Michael Headley
11/14/2005
Page 3

Power Integrations will review the list. If Power Integrations does not agree to the date of the prior art, Fairchild may depose third parties, including librarians and custodians of records, to establish the date of the prior art. You should receive the list of such art shortly.

**Technical Expert Reports:**

Given Power Integrations' difficulty in producing Mr. Balakrishnan for deposition prior to November 14, 2005, the parties have agreed to extend the dates for the technical expert reports. Initial technical expert reports will now be due on December 1, 2005. Rebuttal technical expert reports will be due on December 22, 2005.

**Document Production:**

Power Integrations has requested that Fairchild supplement its document production with respect to certain documents identified during the deposition of Messrs. Jensen, Gendron, and Godbout. Fairchild has agreed to search for and produce such documents if they exist and are not privileged.

We understand that Messrs. Balakrishnan, Renouard, Walker, and other Power Integrations witnesses have been deposed in the Systems General investigation. Those deposition transcripts are relevant to this action and responsive to Fairchild's outstanding document requests. Please produce copies of those transcripts. Given that Mr. Balakrishnan's deposition will begin on November 17, 2005, please provide a copy of his transcript no later than the morning of November 16, 2005.

Sincerely,

Bas de Blank

Bas de Blank

cc:     William J. Marsden, Jr.
        Howard G. Pollack