IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 04-1371-JJF |
| | : |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, | : |
| | : |
| Defendants. | : |

William J. Marsden, Jr., Esquire of FISH & RICHARDSON, P.C., Wilmington, Delaware.
Of Counsel: Andre G. Bouchard, Esquire and John M. Seaman, Esquire of BOUCHARD MARGULES & FRIEDLANDER, P.A., Wilmington, Delaware.
Attorneys for Plaintiff, Power Integrations, Inc.

Steven J. Balick, Esquire, John G. Day, Esquire and Tiffany Geyer Lydon, Esquire of ASHBY & GEDDES, Wilmington, Delaware.
Attorneys for Defendant, Fairchild Semiconductor International, Inc. and LG Electronics USA Inc.

Andrew C. Sonu, Esquire and Lionel M. Lavenue, Esquire of FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., Reston, Virginia.
Attorneys for Non-Party, LG Electronics USA Inc.

**MEMORANDUM OPINION**

December 2, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is LG Electronic U.S.A. Inc.'s Combined (i) Objections To Subpoena Duces Tucem And (ii) Motion To Quash Subpoena Ad Testificandum And For A Protective Order (D.I. 130). The Motion has been fully briefed and argued before the Court. For the reasons discussed, the Court will grant the Motion To Quash and deny as moot the Objections to the subpoena duces tucem filed by LG Electronic U.S.A. Inc.

I.   **Background**

Power Integrations, Inc. ("Power Integrations") filed this patent infringement action against Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation ("Fairchild"). LG Electronic USA Inc. ("LGE-USA") is not a party to this action; however, Power Integrations has served a subpoena duces tucem and a subpoena ad testificandum (collectively, "the subpoena") on LGE-USA seeking documents and information regarding 43 integrated circuits allegedly manufactured by Fairchild, which Power Integrations believes may be contained in certain products marketed by LGE-USA. In addition, Power Integrations seeks a deposition from LGE-USA on these issues.

In response to the subpoena, LGE-USA reviewed its records and informed Power Integrations that it had no documents or information responsive to its request. Power Integrations refused to withdraw its subpoena, contending that LGE-USA has an

obligation to request the subpoenaed documents from its parent company, LGE-Korea, a Korean corporation with a principal place of business in Seoul.  Because Power Integrations declined to withdraw the subpoena, LGE-USA has filed the instant Motion To Quash.

## II. Parties' Contentions

The parties' dispute centers on the question of whether a non-party, domestic subsidiary corporation is obligated to obtain documents from its foreign parent corporation in response to a subpoena served on the non-party subsidiary in the United States.  By its Motion to Quash, LGE-USA contends that it is not obligated to obtain these documents, because it is a discrete and separate legal entity from its parent, LGE-Korea.  LGE-USA also contends that, as a factual matter, LGE-USA operates its business independently from LGE-Korea.  LGE-Korea is a manufacturer of electronic equipment and LGE-USA purchases this equipment from LGE-Korea in Korea and then imports the equipment into the United States for sale.  LGE-USA also has a separate subsidiary LGE-Alabama that deals with service and maintenance issues for the products sold by LGE-USA.  Thus, LGE-USA is strictly a marketing and sales company.

LGE-USA contends that it has no control over its parent corporation or the documents it possesses, because they are not normally utilized in LGE-USA's business.  According to LGE-USA,

3

their products are coded by LGE part number.  The LGE part number does not show who the suppliers are for each part and there may be multiple suppliers for the components of each part.  Thus, LGE maintains that there is no "master list" or "magic decoder ring" in Korea or the United States that matches the LGE numbers with a supplier, and in any event, it would be unduly burdensome and time consuming for LGE-USA to send its staff to Korea to sift through this information.  LGE-USA contends that the proper procedure for Power Integrations to follow is to subpoena its foreign parent through the Hague Convention by means of service through this Court or the use of Letters Rogatory.

In response, Power Integrations contends that the Court must go beyond "corporate formalities" in determining whether LGE-USA has control within the meaning of Federal Rule of Civil Procedure 45, and determine whether LGE-USA has the practical ability to obtain the materials Power Integrations seeks on demand from its foreign parent.  According to Power Integrations it does not matter that the subsidiary has no "control" over its parent.  Rather, Power Integrations contends that the term "control" should be liberally interpreted to include a consideration of such factors as:  (1) the relationship between the parties, (2) whether the subsidiary would be able to access and obtain the documents during its usual business, and (3) whether the subsidiary is in regular contact with the parent.  As for the

costs and expenses LGE-USA might incur in having to obtain this information from Korea, Power Integrations contends that such costs, with the exception of reasonable copy costs, are a normal part of doing business in the United States.

## III. DISCUSSION

Federal Rule of Civil Procedure 45(a)(1) provides:

Every subpoena shall

(A) state the name of the court from which it is issued; and

(B) state the title of the action, the name of the court in which it is pending, and its civil action number, and

(C) command each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person, or to permit inspection of premises, at a time and place therein specified; and

(D) set forth the text of subdivisions (c) and (d) of this rule.

Pursuant to Rule 45(a)(1)(C), the test for the production of information sought by a subpoena is whether the information is "in the possession, custody or control" of the person on whom the subpoena is served. Control is defined as the legal right to obtain the documents required on demand. Gerling International Ins. Co. v. Commissioner of Internal Revenue, 839 F.2d 131, 140 (1988) (collecting cases). Although parent corporations have been required to produce documents held by their subsidiaries, see Novartis Pharm. Corp. v. Eon Labs Mfg., Inc., 206 F.R.D. 392,

5

395 (D. Del. 2002), the converse is not true. A subsidiary, by definition, does not control its parent corporation. Further, the separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded, except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary. Gerling, 839 F.2d at 140.

In this case, the Court concludes that the relationship between LGE-USA and LGE-Korea is not the type of relationship that would justify disregarding the discrete, corporate identity of LGE-USA. In addition to being separate legal entities with separate corporate places of incorporation, LGE-Korea and LGE-USA also function as separate entities in the business world. LGE-Korea and LGE-USA have little more than a vendor relationship, with LGE-Korea being the supplier and LGE-USA being the purchaser. LGE-USA has no interest in the manufacturers of the component parts of the products they purchase from LGE-Korea. In the course of its daily business, LGE-USA uses LGE numbers to track how many products it sells, regardless of who made the components of those parts. Thus, LGE-USA does not utilize the information requested by Power Integrations in the normal course of its business.

Power Integrations directs the Court to several district court decisions in the Second Circuit to support its position;

however, the Court finds those cases to be distinguishable from the circumstances here. First, the Court is not persuaded that the Third Circuit has adopted as expansive a definition of "control" as that used by courts in the Second Circuit. Cases in the Second Circuit go beyond defining "control" as the *legal right* of the subpoenaed party to obtain the documents and include an inquiry into the *practical ability* of the subpoenaed party to obtain those documents. Second, the cases cited by Power Integrations either involve the production by a parent corporation of documents held by the subsidiary, see Dietrich v. Bauer, 2000 U.S. Dist. LEXIS 11729, *7 (S.D.N.Y. Aug. 16, 2000), or use of the expansive definition of control in circumstances where the documents are readily accessible between the parent and the subsidiary and used by the subsidiary in its normal course of business. See Hunter Douglas, Inc. v. Comfortex Corp., 1999 U.S. Dist. LEXIS 101 at *9 (S.D.N.Y. Jan. 11, 1999); Cooper Indus., Inc. v. British Aerospace, Inc., 102 F.R.D. 918, 919-920 (S.D.N.Y. 1984).

Moreover, the Court notes that, while several of the cases cited by the parties fail to draw a distinction between a party and a non-party for purposes of analyzing the issue of control, the Court observes, as a practical matter, that the cases cited by the parties from this Circuit refer to the application of Federal Rule of Civil Procedure 34(a), and thus, involve the

exercise of the Court's authority over a party-litigant in the first instance as a means of ordering the production of documents in the joint control of a party-litigant and a third party.  See Gerling, 839 F.2d at 140 (discussing production of documents in terms of the relationship of the "litigating corporation" to the non-party possessing the documents); Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 129 (D. Del. 1986) ("If a party has control over or shares control of documents with a third person, then a court can order production by means of its power over the party litigant.").  In this case, LGE is not a party litigant, and interestingly, Power Integrations does not seek to make LGE a party-litigant.

Further, the Court understands that Power Integrations has several options available to it to obtain the discovery it seeks. Power Integrations may apply the processes of the Hague Convention to subpoena LGE-Korea, the party with actual possession and control over the documents Power Integrations seeks.  Because alternative avenues exist for Power Integrations to pursue the requested information, and the circumstances in this case do not justify the Court disregarding the "corporate formalities" associated with related but independent corporate entities to obtain documents in the possession and immediate control of a non-party parent corporation, the Court will grant LGE-USA's Motion To Quash.

## III. CONCLUSION

For the reasons discussed, the Court will grant the Motion To Quash filed by LGE-USA. Because the Motion To Quash will be granted, the evidentiary objections maintained by LGE-USA will be denied as moot.

An appropriate Order will be entered.