IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 04-1371 JJF |

**DECLARATION OF ROBERT BLAUSCHILD**

I, Robert Blauschild, declare as follows:

1. I have been asked to give expert opinions and testimony regarding Power Integrations, Inc.'s ("Power Integrations") U.S. Patent Nos. 6,229,366 B1 ("the '366 patent"), 6,249,876 B1 ("the '876 patent"), and 6,107,851 ("the '851 patent").

2. My opening expert report addressed Fairchild's infringement of the '366, '851, and '876 patents and discussed many of the disputed terms in these patents, but it did not address every claim construction issue related to these three patents. I therefore provide this declaration to clarify the meaning of a few of the terms of the patents as they would be understood by one of ordinary skill in the art.

3. As noted in my opening report, a person of ordinary skill in the art related to the three Power Integrations circuit patents would have either a BSEE or MSEE degree in electrical engineering, and would also have 3-7 years experience designing analog electronic circuitry in general. Such a person would also be familiar with the basic textbook topologies of switching power supplies, oscillators, counters, and digital-to-analog converters.

4.  I have reviewed the specification of the '876 patent with respect to the use of the claim term "primary voltage," and the specification describes two alternate embodiments. One embodiment relies on changing a current provided by a DAC to vary the frequency of a current controlled oscillator, and the other relies on changes in a voltage provided by a DAC to vary the frequency of a voltage controlled oscillator. Although the majority of the disclosure in the specification focuses on the current-based DAC implementation, voltage-based DACs and voltage controlled oscillators ("VCOs") are, and were at the time the '876 patent was filed, well-known in the art. In fact, the specification of the '876 patent specifically discloses the voltage-based option at col. 2 (lines 42-55) and col. 3 (lines 10-22). The claim's use of "primary voltage" in context would simply mean the base or initial voltage provided to the VCO. I can find nothing in the specification that would require that the "primary voltage" be created by a "primary voltage source."

5.  The '876 patent also recites "cycling one or more secondary voltage sources to generate a secondary voltage that varies over time." I have reviewed the parties' proposed constructions of this limitation (and its constituent parts). The term "voltage source" as used in this limitation would be understood by one of ordinary skill in the art to mean simply "a source of voltage." This recited "voltage source" would also be understood by those of skill in the art to encompass, for example, a resistor having a substantially constant current flowing through it.

6.  The '366 and '851 patent claims recite a "soft start circuit," and at the time I wrote my opening expert report the parties were in agreement that this term was to be construed as a means-plus-function limitation. However, I now understand that Fairchild has changed its position with respect to this issue. From a technical standpoint, although one of skill in the art could conceive of various "soft start circuit" structures to accomplish the functions recited in the patent claims associated with the soft start circuit, he would be left uncertain from the claim language alone as to what specific structure or

2

class of structures was intended by the claim. Accordingly, to understand fully what was meant by "soft start circuit" in the claims, one of ordinary skill would need to refer to the specification of the patent for guidance.

7. The term "frequency variation signal," recited in the '851 patent, is not a term of art. Nor would this term have had a plain and ordinary meaning to one of skill in the art at the time of the invention. I have reviewed the parties' positions regarding the meaning of frequency variation signal and I agree with Power Integrations that the specification of the '851 clearly defines such a signal as an internal signal that cyclically varies in magnitude during a fixed period of time.

8. Once the meaning of "frequency variation signal" is clear, a class of structures that would be the "frequency variation circuit" for generating such a signal would immediately come to mind for one of ordinary skill in the art. As such, the words in the claim themselves would sufficiently define the "frequency variation circuit" to one of ordinary skill.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of December, 2005, at Washington, D.C.

_____
Robert Blauschild

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2005, I electronically filed the

**DECLARATION OF ROBERT BLAUSCHILD** with the Clerk of Court using

CM/ECF which will send notification of such filing(s) to the following individuals. A

copy of this document was also served by hand on these individuals on this date.

| | |
|---|---|
| Steven J. Balick<br>John G. Day<br>Ashby & Geddes<br>222 Delaware Avenue, 17th Floor<br>P. O. Box 1150<br>Wilmington, DE 19899 | *Attorneys for*<br>*FAIRCHILD SEMICONDUCTOR*<br>*INTERNATIONAL, INC. and FAIRCHILD*<br>*SEMICONDUCTOR CORPORATION* |

I hereby certify that on December 28, 2005, I have caused to be e-mailed and sent

via Federal Express, the document(s) to the following non-registered participants:

| | |
|---|---|
| G. Hopkins Guy, III<br>Bas de Blank<br>Duo Chen<br>Orrick, Herrington & Sutcliffe, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025 | *Attorneys for*<br>*FAIRCHILD SEMICONDUCTOR*<br>*INTERNATIONAL, INC. and FAIRCHILD*<br>*SEMICONDUCTOR CORPORATION* |

/s/ *William J. Marsden, Jr.*
William J. Marsden, Jr.