IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC.
AND FAIRCHILD SEMICONDUCTOR CORPORATION'S FIRST AMENDED
ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor
Corporation (collectively "FAIRCHILD") answer the First Amended Complaint of Power
Integrations, Inc. ("PI") as follows:

FAIRCHILD denies each and every allegation contained in the First Amended
Complaint, except as hereinafter specifically admitted or explained.  To the extent that the
headings, or any other non-numbered statements in Plaintiff's First Amended Complaint contain
any allegations, Defendants deny each and every allegation therein.

**THE PARTIES**

1.      In response to paragraph 1 of the First Amended Complaint, FAIRCHILD lacks
sufficient knowledge or information to admit or deny the allegations set forth therein and
therefore denies each and every allegation contained in paragraph 1.

2.      In response to paragraph 2 of the First Amended Complaint, defendant Fairchild
Semiconductor International, Inc. admits that it is a corporation duly incorporated under the laws
of the State of Delaware, with its headquarters located at 82 Running Hill Road, South Portland,
Maine, 04106.  Defendant Fairchild Semiconductor Corporation admits that it is a corporation

duly incorporated under the laws of the State of Delaware, with its headquarters located at 82 Running Hill Road, South Portland, Maine, 04106. FAIRCHILD denies any and all remaining allegation of paragraph 2.

## JURISDICTION AND VENUE

3.      In response to paragraph 3 of the First Amended Complaint, FAIRCHILD denies that it has infringed or now infringes the patents asserted against FAIRCHILD in the First Amended Complaint. FAIRCHILD admits that the First Amended Complaint purports to state a cause of action under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq.* FAIRCHILD admits that the First Amended Complaint purport to state a cause of action over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.      In response to paragraph 4 of the First Amended Complaint, FAIRCHILD admits that this Court has personal jurisdiction over FAIRCHILD.

5.      In response to paragraph 5 of the First Amended Complaint, FAIRCHILD admits, for the purpose of this action only, that venue is proper in this judicial district.

## GENERAL ALLEGATIONS

6.      In response to paragraph 6 of the First Amended Complaint, FAIRCHILD lacks sufficient knowledge or information to admit or deny the allegations set forth therein and therefore denies each and every allegation contained in paragraph 6.

7.      In response to paragraph 7 of the First Amended Complaint, FAIRCHILD denies that it manufactures PWM integrated circuits devices in the United States. FAIRCHILD denies that it has been or currently is infringing, inducing infringement, or contributing to the infringement of the any PI patent asserted in the First Amended Complaint. FAIRCHILD admits that it imports a de minimis amount of PWM integrated circuits devices into the United States and that it sells and offers to sell a de minimis amount of PWM integrated circuits devices in the United States. FAIRCHILD denies any and all remaining allegations of paragraph 7 of the First Amended Complaint.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,107,851

8.     In response to paragraph 8 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

9.     In response to paragraph 9 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 6,107,851 ("the '851 patent") states on its face that the patent was issued on August 22, 2000.  FAIRCHILD admits that on its face the '851 patent is entitled "Offline Converter with Integrated Softstart and Frequency Jitter."  FAIRCHILD admits that on its face the '851 patent lists "Power Integrations, Inc." as the assignee.  FAIRCHILD admits that a copy of the '851 patent was attached to PI's original Complaint as Exhibit A. FAIRCHILD denies that the '851 patent is dully and legally issued.  FAIRCHILD denies any and all remaining allegations of paragraph 9 of the First Amended Complaint.

10.     In response to paragraph 10 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

11.     In response to paragraph 11 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

12.     In response to paragraph 12 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

13.     In response to paragraph 13 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,249,876

14.     In response to paragraph 14 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

15.    In response to paragraph 15 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 6,249,876 ("the '876 patent") states on its face that the patent was issued on June 19, 2001. FAIRCHILD admits that on its face the '876 patent is entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply." FAIRCHILD admits that on its face the '876 patent lists "Power Integrations, Inc." as the assignee. FAIRCHILD admits that a copy of the '876 patent was attached to PI's original Complaint as Exhibit B. FAIRCHILD denies that the '876 patent is dully and legally issued. FAIRCHILD denies any and all remaining allegations of paragraph 15 of the First Amended Complaint.

16.    In response to paragraph 16 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

17.    In response to paragraph 17 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

18.    In response to paragraph 18 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

19.    In response to paragraph 19 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## THIRD CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 6,229,366

20.    In response to paragraph 20 of the First Amended Complaint, FAIRCHILD realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

21.    In response to paragraph 21 of the First Amended Complaint, FAIRCHILD admits that the title page of United States Patent No. 6,229,366 ("the '366 patent") states on its face that the patent was issued on May 8, 2001. FAIRCHILD admits that on its face the '366 patent is entitled "Off-Line Converter with Integrated Softstart and Frequency Jitter." FAIRCHILD admits that on its face the '366 patent lists "Power Integrations, Inc." as the

4

assignee.  FAIRCHILD admits that a copy of the '366 patent was attached to PI's original

Complaint as Exhibit C.  FAIRCHILD denies that the '366 patent is dully and legally issued.

FAIRCHILD denies any and all remaining allegations of paragraph 21 of the First Amended

Complaint.

22.     In response to paragraph 22 of the First Amended Complaint, FAIRCHILD denies

any and all allegations contained therein.

23.     In response to paragraph 23 of the First Amended Complaint, FAIRCHILD denies

any and all allegations contained therein.

24.     In response to paragraph 24 of the First Amended Complaint, FAIRCHILD denies

any and all allegations contained therein.

25.     In response to paragraph 25 of the First Amended Complaint, FAIRCHILD denies

any and all allegations contained therein.

## FOURTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 4,811,075

26.     In response to paragraph 26 of the First Amended Complaint, FAIRCHILD

realleges its answers as set forth in paragraphs 1-7 above and incorporates by reference

paragraphs 1 through 7, inclusive, as through fully set forth in this paragraph.

27.     In response to paragraph 27 of the First Amended Complaint, FAIRCHILD

admits that the title page of United States Patent No. 4,811,075 ("the '075 patent") states on its

face that the patent was issued on March 7, 1989.  FAIRCHILD admits that on its face the '075

patent is entitled "High Voltage MOS Transistors."  FAIRCHILD admits that on its face the '075

patent lists "Power Integrations, Inc." as the assignee.  FAIRCHILD admits that a copy of the

'075 patent was attached to PI's original Complaint as Exhibit D.  FAIRCHILD denies that the

'075 patent is dully and legally issued.  FAIRCHILD denies any and all remaining allegations of

paragraph 27 of the First Amended Complaint.

28.     In response to paragraph 28 of the First Amended Complaint, FAIRCHILD denies

any and all allegations contained therein.

29.    In response to paragraph 29 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

30.    In response to paragraph 30 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

31.    In response to paragraph 31 of the First Amended Complaint, FAIRCHILD denies any and all allegations contained therein.

## AFFIRMATIVE AND OTHER DEFENSES

Further Answering the First Amended Complaint, FAIRCHILD asserts the following defenses.  FAIRCHILD reserves the right to amend its answer with additional defenses as further information is obtained.

### First Defense:  Noninfringement of the Asserted Patents

32.    FAIRCHILD has not infringed, contributed to infringement of, or induced the infringement of any valid claim of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and is not liable for infringement thereof.

33.    No product made by FAIRCHILD or process used by FAIRCHILD infringes the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent because PI's First Amended Complaint fails to state a claim that meets the requirements of 35 U.S.C. § 271.

### Second Defense:  Invalidity of the Asserted Patents

34.    The '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent are invalid for failing to comply with the provisions of the Patent Laws, Title 35 U.S.C, including without limitation 35 U.S.C §§ 102, 103, 112, and 121.

### Third Defense:  Unavailability of Relief

35.    PI has failed to plead and meet the requirements of 35 U.S.C. § 271(b) and (c) and is not entitled to any alleged damages from FAIRCHILD.

### Fourth Defense: Unavailability of Relief (Marking and Notice)

36.    PI has failed to plead and meet the requirements of 35 U.S.C. § 287 on marking and notice, and has otherwise failed to show that it is entitled to any damages prior to the filing date of the First Amended Complaint.

### Fifth Defense: Limitation on Damages (Past Damages)

37.    PI's claim for relief and prayer for damages are limited by 35 U.S.C. § 286.

### Sixth Defense: Limitation on Damages (Increased Damages and Attorney Fees)

38.    PI has failed to plead and meet the requirements of 35 U.S.C. § 284 and 285 for increased damages and attorney fees and is not entitled to any such increased damages or attorney fees.

### Seventh Defense: Estoppel

39.    PI is estopped from alleging that the '851 Patent, the '876 Patent, the '366 Patent, and/or the '075 Patent cover or include any accused product or activity by FAIRCHILD based on arguments made by PI during prosecution of the '851 Patent, the '876 Patent, the '366 Patent, and/or the '075 Patent.

### Eighth Defense: Laches

40.    On information and belief, PI's claims for relief are barred, in whole or in part, by the equitable doctrine of laches.

### Ninth Defense: Waiver

41.    On information and belief, PI's claims for relief are barred or unenforceable, in whole or in part, due to waiver.

### Tenth Defense: Unenforceability

42.    On information and belief, PI's claims for relief are unenforceable, in whole or in part, due to unclean hands.

**Eleventh Defense:  Unenforceability**

43.    On information and belief, PI's claims for relief are unenforceable, in whole or in part, due to inequitable conduct.  FAIRCHILD incorporates by reference Paragraphs 24-89 of its COUNTERCLAIMS, as if fully restated herein.

**COUNTERCLAIMS**

**First Counterclaim:  Declaratory Judgment of Non-Infringement**

1.    This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1, *et seq*.  This Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

2.    Fairchild Semiconductor International, Inc. is a Delaware corporation with its principal place of business in South Portland, Maine.  Fairchild Semiconductor Corporation is a Delaware corporation with its principal place of business in South Portland, Maine.  (Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation are collectively referred to as "FAIRCHILD.")

3.    On information and belief, Plaintiff/Counterclaim Defendant Power Integrations, Inc. ("PI") is a Delaware corporation with its principal place of business in San Jose, California.

4.    Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400.

5.    PI purports to be the owner of U.S. Patent Nos. 6,107,851 ("the '851 Patent"), 6,249,876 ("the '876 Patent"), 6,229,366 ("the '366 Patent"), and 4,811,075 ("the '075 Patent").

6.    PI alleges that FAIRCHILD has infringed the '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent.

7.    No product made by FAIRCHILD or process used by FAIRCHILD has infringed, either directly or indirectly, any claim of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and FAIRCHILD is not liable for infringement thereof.

8.    No activity by FAIRCHILD comes within the requirements of 35 U.S.C. § 271 with respect to the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and

FAIRCHILD is not liable for infringement of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent under 35 U.S.C. § 271.

9.    FAIRCHILD's activities that are outside of the United States do not come within the requirements of 35 U.S.C. § 271 with respect to the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent, and do not constitute infringement.

10.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to the infringement or noninfringement of the '851 Patent, the '876 Patent, the '366 Patent, and/or the '075 Patent.

**Second Counterclaim:  Declaratory Judgment of Invalidity of the '851 Patent**

11.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

12.    The '851 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

13.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '851 Patent are valid or invalid.

**Third Counterclaim:  Declaratory Judgment of Invalidity of the '876 Patent**

14.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

15.    The '876 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

16.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '876 Patent are valid or invalid.

**Fourth Counterclaim:  Declaratory Judgment of Invalidity of the '366 Patent**

17.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

18.    The '366 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

19.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '366 Patent are valid or invalid.

**Fifth Counterclaim:  Declaratory Judgment of Invalidity of the '075 Patent**

20.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

21.    The '075 Patent, and each claim thereof, is invalid for failing to comply with the provisions of the Patent Laws, including one or more of 35 U.S.C. §§ 102, 103, 112, and 121.

22.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '075 Patent are valid or invalid.

**Sixth Counterclaim:  Declaratory Judgment of Unenforceability the '366 Patent**

23.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

24.    The '366 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '366 Patent.

25.    During prosecution of the '366 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '366 patent under prosecution, and that Power Integrations knew or should have known would have been important to a reasonable examiner.  The undisclosed prior art references include at least devices that anticipate or render obvious claims

of the '366 Patent, that were designed, manufactured, offered for sale and sold by Power

Integrations more than a year before the application leading to the '366 Patent was filed.

26.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists

between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the

claims of the '366 Patent are enforceable or unenforceable.

### Power Integrations' TOP100-4 TopSwitch Datasheets and Family of Devices

27.    Power Integrations' TOP100-4 TopSwitch family of devices was and is highly

material prior art to the patentability of the claims of the '366 patent, would have been important

to a reasonable examiner, would have established at least a case of prima facie obviousness of

the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates

claims of the '366 Patent.  These devices were offered for sale and sold by Power Integrations at

least as early as May 18, 1997.  Power Integrations published in the United States datasheets

describing its TOP100-4 TopSwitch family of devices at least as early as July 1996.  A copy of

such a datasheet is attached hereto as Exhibit A.  This is more than a year before Power

Integrations filed the application leading to the '366 Patent and thus the TOP100-4 TopSwitch

family of devices and the Power Integrations datasheets describing those products are prior art to

the '366 Patent.

28.    The TOP100-4 TopSwitch family of devices and the datasheets describing those

devices were and are highly material to the patentability of the '366 Patent because they teach

every element of claims of the '366 Patent.  The materiality of this prior art is demonstrated by

the fact that Figure 1 from the Power Integrations TOP100-4 TopSwitch datasheet (described in

that datasheet as a "typical application") is identical to Figure 2 of the '366 Patent, which the

Applicants describe as their "invention" (except that the reference to the prior art TOP100-4

device is replaced with a black box PWM controller).  *See*, '366 Patent, col. 4, lines 50-52 ("Fig.

2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according

to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing

Figure 2, identical to Figure 1 from the prior art TOP100-4 datasheet, as the "preferred embodiment".).

29.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP100-4 TopSwitch family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP100-4 TopSwitch family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

### Power Integrations' TOP200-4/14 TopSwitch Datasheets and Family of Devices

30.    Power Integrations sold additional devices that anticipate the claims of the '366 Patent more than a year before the application leading to that patent was filed. For instance, Power Integrations published the TOP200-4/14 datasheet at least as early as November, 1994, a copy of which is attached hereto as Exhibit B. On information and belief, Power Integrations offered for sale and sold its TOP200-4/14 family of devices more than a year before the application leading to the '366 patent was filed.

31.    As with the TOP100-4, the TOP200-4/14 (and datasheets describing these devices) were and are highly material to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of that patent. The materiality of this prior art is demonstrated by the fact that Figure 1 from the Power Integrations TOP200-4/14 TopSwitch datasheet (described in that datasheet as a "typical application") is identical to Figure 2 of the '366 Patent, which the

Applicants describe as their "invention" (except that the reference to the prior art TOP100-4 device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4, lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing Figure 2, identical to figure 1 of the prior art TOP100-4 datasheet, as the "preferred embodiment".).

32.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP200-4/14 TopSwitch family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent.  On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP200-4/14 TopSwitch family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art.  This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

### Power Integrations' TOP221-227 TopSwitch Datasheets and Family of Devices

33.    On information and belief, Power Integrations also offered for sale and sold the TOP221-227 TopSwitch-II family of devices prior to the filing of the application that led to the '366 Patent.  Further, Power Integrations published in the United States datasheets describing the TOP221-227 TopSwitch-II family of devices at least as early as December, 1997, a copy of which is attached hereto as Exhibit C.

34.    As described in the December 1997 datasheet, the prior art TOP221-227 TopSwitch-II family of devices anticipates claims of the '366 Patent.  Thus, the TOP221-227 TopSwitch-II family of devices – and datasheets describing those devices – were and are highly material to the patentability of the '366 Patent, would have been important to a reasonable

examiner and would have established at least a case of prima facie obviousness of the claims
Power Integrations prosecuted in the '366 Patent.

35.    As with the TOP100-4 and TOP200-4/14 datasheets, Figure 1 from the TOP221-
227 datasheet (described as a "typical flyback application") is identical to Figure 2 of the '366
Patent, which the Applicants describe as their "invention" (except that the reference to the prior
art TOP100-4 device is replaced with a black box PWM controller).  *See*, '366 Patent, col. 4,
lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width
modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-
column 6, line 34 (describing Figure 2, identical to Figure 1 of the prior art TOP100-4 datasheet,
as the "preferred embodiment".).

36.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366
Patent disclosed to the Patent Office either Power Integrations' TOP221-227 TopSwitch-II
family of devices or the Power Integrations datasheets describing those devices during the
prosecution of the '366 Patent.  On information and belief, as employees of Power Integrations
working on the design and development of Power Integrations' devices, the Applicants were
aware of Power Integrations' TOP221-227 TopSwitch-II family of devices and the Power
Integrations datasheets describing those devices, knew or should have known of the materiality
of those devices and data sheets to the patentability of the pending claims that issued in the '366
patent and intentionally or in bad faith withheld this highly material prior art.  This constitutes
inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

**Power Integrations' SMP260 Family of Devices and "Off-line Power Integrated
Circuit for International Rated 60-watt Power Supplies" article.**

37.    Power Integrations also offered for sale and sold the PWR-SMP260 family of
devices prior to the filing of the application that led to the '366 Patent.  On information and
belief, these products were also described in datasheets published by Power Integrations in the
United States more than a year before Power Integrations filed the application leading to the '366
Patent.  A copy of the SMP260 datasheet is attached as Exhibit D.

14

38.     Power Integrations' PWR-SMP260 devices were also described in an article by Richard A. Keller entitled "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies", published in 1992, ("Keller Article"), a copy of which is attached as Exhibit F. Upon information and belief, at the time of the article Richard A. Keller was employed by Power Integrations.

39.     Both the PWR-SMP260 devices and the Keller article were and are highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of the '366 Patent.

40.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed either the PWR-SMP260 devices or the Keller Article to the Patent Office during the prosecution of the '366 Patent.

41.     On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP260 devices and the Keller Article, knew or should have known of the materiality of those devices and the Keller Article to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

### Power Integrations' SMP240 Family of Devices

42.     Power Integrations also offered for sale and sold the PWR-SMP240 family of devices prior to the filing of the application that led to the '366 Patent. On information and belief, these products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '366 Patent. A copy of the SMP240 datasheet is attached as Exhibit E.

15

43.     The PWR-SMP240 devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of the '366 Patent.

44.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed the PWR-SMP240 devices to the Patent Office during the prosecution of the '366 Patent.

45.     On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP240 devices, knew or should have known of the materiality of those devices to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

**Power Integrations' SMP211 Datasheets and Family of Devices**

46.     Power Integrations' SMP211 family of devices was and is highly material prior art to the patentability of the claims of the '366 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its SMP211 family of devices at least as early as 1996. A copy of such a datasheet is attached hereto as Exhibit G. This is more than a year before Power Integrations filed the application leading to the '366 Patent and thus the SMP211 family of devices and the Power Integrations datasheets describing those products are prior art to the '366 Patent.

47.     The SMP211 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '366 Patent because they teach every element

of claims of the '366 Patent. Figure 1 of the '366 Patent was described by the Applicants as the "Prior Art". This prior art figure includes a devices labeled "SMP211", which was a prior art Power Integrations device. The Applicants, however, withheld all information about their own SMP211 device from the Patent Examiner.

48.     On December 13, 1999, during the prosecution of Application No. 09/080,774, the application that ultimately led to the issuance of the '366 Patent, the Examiner rejected pending claims as anticipated by Prior Art Figure 1:

> Claims 29, 35 & 37 are rejected under 35 U.S.C. 102(b) as being anticipated by Applicants' Prior Art Fig. 1.
>
> Applicants' Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29.
>
> Further shown is a rectifier 10, a capacitor 15, a first winding 35 and a second winding 45 as recited in claim 35.
>
> Further shown is a feedback terminal (Error Amplifier in) as recited in claim 37.

The Examiner, however, allowed other claims because of his belief that the prior art did not include an oscillator that generated a maximum duty cycle signal and a signal with a frequency range depending on the frequency variation circuit:

*Allowable Subject Matter*

> The prior Art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

49.     However, unknown to the Examiner, the SMP211 device referred to in Figure 1 of the '366 Patent actually included "an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit". *See* Exh. G, Figure 3 and 2-48 – 2-49. Thus, the SMP211 is highly relevant and material to the patentability of the '366 Patent. The Applicants, however, continued to withhold information concerning the SMP211 from the Examiner.

50.     Rather than disclose the SMP211, the Applicants amended the rejected claims to include the oscillator limitation that the Examiner erroneously believed to be missing from the prior art of record:

In the December 13, 1999 Office Action, claims 29, 35 and 37 are rejected under 35 U.S.C. § 102(b) as being anticipated by Applicants' Prior Art Figure 1.

Claim 29 as presently amended now expressly recites a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal. The Applicants' Prior Art Figure 1 fails to disclose, teach or suggest such limitations. Accordingly, the Applicants respectfully submit that the instant section 102 rejection has been overcome.

51.     Applicants' prior art SMP211 device – and datasheets describing the SMP211 device – clearly disclose "a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal." *See* Exh. G at Figure 3 and 2-48 – 2-49. Despite this, Applicants continued to withhold any information about their SMP211 devices. While withholding this information, the Applicants argued that the Examiner should allow the amended claims because Applicants had added limitations concerning the maximum duty cycle signal limitation, which they claimed was not present in the prior art of record (even though these limitations are present in the SMP211 devices and datasheets). Thereafter, the Examiner allowed the amended claims based upon the Applicants' false representations regarding the absence of a maximum duty cycle signal from the prior art.

52.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' SMP211 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP211 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this

highly material prior art.  This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

**Power Integrations' SMP3 Family of Devices, Datasheets, and "Off-Line PWM Switching Regulator IC Handles 3W" Article**

53.    In addition, Power Integrations' SMP3 family of devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent.  On information and belief, these devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997.  These devices are described in an article entitled "Off-Line PWM Switching Regulator IC Handles 3W" by F. Goodenough, published on March 22, 1990 in *Electronic Design* (pp. 35-39) ("Goodenough Article").  A copy of the Goodenough Article is attached hereto as Exhibit I.

54.    On information and belief, F. Goodenough was employed by Power Integrations when he wrote and published the Goodenough Article.

55.    The prior art SMP3 devices and the Goodenough Article were and are highly material to the patentability of the '851 Patent as both the devices and the Article anticipate claims of that Patent.

56.    Despite the highly material nature of the Power Integrations SMP3 devices and the Goodenough Article, neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the Power Integrations SMP3 devices or the Goodenough Article to the Patent Office during the prosecution of the '851 Patent.  On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP3 family of devices and the Goodenough Article describing those devices, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent,

and intentionally or in bad faith withheld this highly material prior art.  This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

**Seventh Counterclaim:  Declaratory Judgment of Unenforceability the '851 Patent**

57.      FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

58.      The '851 Patent, and each claim thereof, is unenforceable due to the inequitable conduct during the prosecution of the '851 Patent.

59.      During the prosecution of the '851 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office prior art that was highly material to the patentability of the claims of the '851 Patent, and that Power Integrations knew or should have known would have been important to a reasonable examiner.  The undisclosed prior art references include at least devices that anticipate or render obvious claims of the '851 Patent, that were designed, manufactured, offered for sale and sold by Power Integrations more than a year before the application leading to the '851 Patent was filed.

60.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '851 Patent are enforceable or unenforceable.

**Power Integrations' SMP402 Datasheets and Family of Devices**

61.      Power Integrations' SMP402 family of devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent.  On information and belief, these devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997.  Power Integrations published datasheets in the United States describing its SMP402 family of devices at least as early as January, 1996.  A copy of such a datasheet is attached hereto as Exhibit H.  This is more than a year before Power Integrations filed the application leading to the '851 Patent and thus the

SMP402 family of devices and the Power Integrations datasheets describing those products are prior art to the '851 Patent.

62.    The SMP402 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '851 Patent because they teach every element of claims of the '851 Patent.

63.    Power Integrations failed to disclose to the Patent Office either Power Integrations' SMP402 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '851 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP402 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP3 Family of Devices, Datasheets, and "Off-Line PWM Switching Regulator IC Handles 3W" Article

64.    In addition, Power Integrations' SMP3 family of devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent. On information and belief, these devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. These devices are described in an article entitled "Off-Line PWM Switching Regulator IC Handles 3W" by F. Goodenough, published on March 22, 1990 in *Electronic Design* (pp. 35-39) ("Goodenough Article"). A copy of the Goodenough Article is attached hereto as Exhibit I.

65.    On information and belief, F. Goodenough was employed by Power Integrations when he wrote and published the Goodenough Article.

66.     The prior art SMP3 devices and the Goodenough Article were and are highly material to the patentability of the '851 Patent as both the devices and the Article anticipate claims of that Patent.

67.     Despite the highly material nature of the Power Integrations SMP3 devices and the Goodenough Article, neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the Power Integrations SMP3 devices or the Goodenough Article to the Patent Office during the prosecution of the '851 Patent.  On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP3 family of devices and the Goodenough Article describing those devices, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art.  This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP260 Datasheets, Family of Devices, and "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies" Article

68.     Power Integrations also offered for sale and sold the PWR-SMP260 family of devices prior to the filing of the application that led to the '851 Patent.  On information and belief, these products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '851 Patent.  A copy of the SMP260 datasheet is attached as Exhibit D.

69.     Power Integrations' PWR-SMP260 devices were also described in an article by Richard A. Keller entitled "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies", published in 1992, ("Keller Article"), a copy of which is attached as Exhibit F.  Upon information and belief, at the time of the article Richard A. Keller was employed by Power Integrations.

70.     The PWR-SMP260 devices and the Keller article were and are both material to the patentability of the '851 Patent as both anticipate claims of that patent.

22

71.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the PWR-SMP260 devices or the Keller Article to the Patent Office during the prosecution of the '851 Patent.

72.     On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP260 devices and the Keller Article, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP240 Family of Devices

73.     Power Integrations also offered for sale and sold the PWR-SMP240 family of devices prior to the filing of the application that led to the '851 Patent. On information and belief, these products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '851 Patent. A copy of the SMP240 datasheet is attached as Exhibit E.

74.     The PWR-SMP240 devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipate claims of the '851 Patent.

75.     Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed the PWR-SMP240 devices to the Patent Office during the prosecution of the '851 Patent.

76.     On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP240 devices, knew or should have known of the materiality of those

devices to the patentability of the pending claims that issued in the '851 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

### Power Integrations' SMP211 Datasheets and Family of Devices

77.     Power Integrations' SMP211 family of devices was and is highly material prior art to the patentability of the claims of the '851 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its SMP211 family of devices at least as early as 1996. A copy of such a datasheet is attached hereto as Exhibit G. This is more than a year before Power Integrations filed the application leading to the '851 Patent and thus the SMP211 family of devices and the Power Integrations datasheets describing those products are prior art to the '851 Patent.

78.     The SMP211 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '851 Patent because they teach every element of claims of the '851 Patent. Figure 1 of the '851 Patent was described by the Applicants as the "Prior Art". This prior art figure includes a devices labeled "SMP211", which was a prior art Power Integrations device. The Applicants, however, withheld all information about their own SMP211 device from the Patent Examiner.

79.     On December 13, 1999, during the prosecution of the '851 Patent, the Examiner rejected pending claims as anticipated by Prior Art Figure 1:

> Claims 29, 35 & 37 are rejected under 35 U.S.C. 102(b) as being anticipated by Applicants' Prior Art Fig. 1.
>
> Applicants' Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29.
>
> Further shown is a rectifier 10, a capacitor 15, a first winding 35 and a second winding 45 as recited in claim 35.

Further shown is a feedback terminal (Error Amplifier in) as recited in claim 37. The Examiner, however, allowed other claims because of his belief that the prior art did not include an oscillator that generated a maximum duty cycle signal and a signal with a frequency range depending on the frequency variation circuit:

*Allowable Subject Matter*

The prior Art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

80.    However, unknown to the Examiner, the SMP211 device referred to in Figure 1 of the '851 Patent actually included "an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit". *See* Exh. G, Figure 3 and 2-48 – 2-49.  Thus, the SMP211 is highly relevant and material to the patentability of the '851 Patent.  The Applicants, however, continued to withhold information concerning the SMP211 from the Examiner.

81.    Rather than disclose the SMP211, the Applicants amended the rejected claims to include the oscillator limitation that the Examiner erroneously believed to be missing from the prior art of record:

In the December 13, 1999 Office Action, claims 29, 35 and 37 are rejected under 35 U.S.C. § 102(b) as being anticipated by Applicants' Prior Art Figure 1.

Claim 29 as presently amended now expressly recites a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal.  The Applicants' Prior Art Figure 1 fails to disclose, teach or suggest such limitations.  Accordingly, the Applicants respectfully submit that the instant section 102 rejection has been overcome.

82.    Applicants' prior art SMP211 device – and datasheets describing the SMP211 device – clearly disclose "a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal." *See* Exh. G at Figure 3 and 2-48 – 2-49.  Despite this, Applicants continued to withhold any information about their SMP211 devices.  While withholding this information, the Applicants argued that the Examiner should allow the amended claims because

Applicants had added limitations concerning the maximum duty cycle signal limitation, which they claimed was not present in the prior art of record (even though these limitations are present in the SMP211 devices and datasheets). Thereafter, the Examiner allowed the amended claims based upon the Applicants' false representations regarding the absence of a maximum duty cycle signal from the prior art.

83.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed to the Patent Office either Power Integrations' SMP211 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '851 Patent. On information and belief, as employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP211 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '851 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

**Seventh Counterclaim:  Declaratory Judgment of Unenforceability the '876 Patent**

84.    FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

85.    The '876 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '876 Patent.

86.    During prosecution of the '876 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '876 patent under prosecution, and that Power Integrations knew or should have known would have been important to a reasonable examiner. The undisclosed prior art references include at least Power Integrations public disclosure of the technology described in Power Integrations '851 Patent.

26

87.     Power Integrations purports to have invented the invention claimed in the '876 Patent on May 21, 1998.  On information and belief, on September 2, 1997 and over eight months before the date of the alleged invention claimed in the '876 Patent, Power Integrations made public disclosure of the alleged invention of the '851 Patent.  Thus, the alleged invention of the '851 Patent is prior art to the alleged invention of the '876 Patent pursuant to 35 U.S.C. § 102(a).

88.     Indeed, in their Invention Disclosure Form, the inventors of the '876 Patent describe the alleged invention of the '851 Patent as "PRIOR ART" and include a Figure labeled "Frequency Jittering Prior Art."  Power Integrations, however, never informed the Patent Office that the '851 Patent was prior art to the '876 Patent.  Power Integrations included the figure from its Invention Disclosure Form that it had previously identified as "PRIOR ART" as Figure 3 of the '876 Patent.  Rather than inform the Patent Office that this Figure depicted the prior art, Power Integrations simply stated that "FIG. 3 is a schematic diagram of an analog frequency jittering device" and incorporated the '851 Patent by reference into the specification of the '876 Patent.

89.     The '851 Patent and the public disclosure of devices that embody the '851 Patent are highly material to the patentability of the claims of the '876 Patent and Power Integrations knew or should have known that they would have been important to a reasonable examiner.

90.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '876 Patent are enforceable or unenforceable.

### Eighth Counterclaim:  Declaratory Judgment of Unenforceability the '075 Patent

91.     FAIRCHILD repeats and realleges paragraphs 1-10 of its Counterclaims, as if fully restated herein.

92.     The '075 Patent, and each claim thereof, is unenforceable due to inequitable conduct during the prosecution of the '075 Patent.

93.     During prosecution of the '075 Patent, the Applicant, Klaus Eklund, and his attorneys failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '075 patent under prosecution, and that Mr. Eklund and his attorneys knew or should have known would have been important to a reasonable examiner.  The undisclosed prior art references include at least technical articles known to Mr. Eklund that were published more than a year before the application leading to the '075 Patent was filed.

94.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between FAIRCHILD, on the one hand, and PI, on the other hand, with respect to whether the claims of the '075 Patent are enforceable or unenforceable.

### *A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC with Shielded Source Structure*, by H. Wakaumi, T. Suzuki, M. Saito and H. Sakuma, IEDM 83, pp. 416-419 (1983) and *High-Voltage DMOS and PMOS in Analog IC's* by A.W. Ludikhuize, IEDM 82, pp. 81-84 (1982).

95.     The article "*A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC with Shielded Source Structure*", by H. Wakaumi, T. Suzuki, M. Saito and H. Sakuma ("Wakaumi Article") and the article "*High-Voltage DMOS and PMOS in Analog IC's*" by A.W. Ludikhuize ("Ludikhuize Article") are highly material prior art to the patentability of the claims of the '075 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Mr. Eklund prosecuted in the application for the '075 Patent.  The Wakaumi Article was published in the IEDM journal at least as early as 1983.  A copy of the Wakaumi Article is attached hereto as Exhibit J.  The Ludikhuize Article was published in the IEDM journal at least as early as 1982.  A copy of the Ludikhuize Article is attached hereto as Exhibit K.  Since both articles were published more than a year before Power Integrations filed the application leading to the '075 Patent, they are prior art to the '075 Patent.

96.     The materiality of the Wakaumi and Ludikhuize Articles is demonstrated by the fact that Mr. Eklund was aware of both articles at the time he allegedly conceived of the '075 Patent, considered the articles to be "key" references, and specifically identified at least the

Wakaumi Article in notes that he now claims describe the invention leading to the '075 Patent. Indeed, one of ordinary skill in the art would have been motivated to combine the Wakaumi and Ludikhuize Articles and the combination of these Articles meets every element of each asserted claim of the '075 Patent. Thus, the claims of the '075 Patent are obvious in light of the Wakaumi and Ludikhuize Articles.

97.     Despite his admitted knowledge and appreciation of the Wakaumi and Ludikhuize Articles, neither Mr. Eklund nor his attorneys disclosed either Article to the Patent Office during the prosecution of the '075 Patent. This constitutes inequitable conduct that renders all claims of the '075 Patent permanently unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, FAIRCHILD prays for the following relief:

A.      The Court enter judgment against PI, and dismiss with prejudice, any and all claims of PI's First Amended Complaint for Patent Infringement; and order that Plaintiff take nothing as a result of the First Amended Complaint;

B.      The Court enter judgment declaring that FAIRCHILD has not infringed, contributed to infringement of, or induced infringement of the '851 Patent, the '876 Patent, the '366 Patent, or the '075 Patent;

C.      The Court enter judgment declaring that the '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent are invalid;

D.      The Court enter judgment declaring that the '851 Patent, the '876 Patent, the '366 Patent, and the '075 Patent are unenforceable;

E.      The Court award to FAIRCHILD its reasonable costs and attorneys' fees against PI pursuant to the provisions of 35 U.S.C. § 285;

F.      The Court award to FAIRCHILD pre-judgment interest and costs of this action; and,

G.     The Court grant to FAIRCHILD such other and further relief as may be deemed just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38.1 of the Local Rules of the United States District Court for the District of Delaware, Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation hereby demand a trial by jury on this action.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*
────────────────────

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*
*Fairchild Semiconductor International,*
*Inc. and Fairchild Semiconductor*
*Corporation*

Of Counsel:

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Tel: (650) 614-7400

Dated: February 23, 2006
166925.1

30