# EXHIBIT H

*Power Intergrations, Inc.  v.*
*Fairchild Semiconductor International, Inc.*

---

*Hearing*
*February 2, 2006*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  United States of America  19801*
*(302) 658-6697*

Original File 020206~2.TXT, 124 Pages
Min-U-Script® File ID: 1702857589

**Word Index included with this Min-U-Script®**

water case, [5] because it included another novel element. Well, [6] in this case, the other novel element was the [7] oscillator element, that they misled the examiner [8] regarding that the examiner believed was in [9] there.

[10] So there was, at the time of [11] prosecution, another novel element. So it does [12] not distinguish that case.

[13] And if you do construe this as [14] means-plus-function, it would need to read on all [15] structures, including the soft start compacitor. [16] Compacitor is a circuit.

[17] I don't think anybody disputes that. [18] That's set forth in detail and detailed in our [19] brief. And I won't belabor the point now.

[20] I'd like to turn now to the last [21] patent, and that's the '876 patent.

[22] The first term that's at issue is [23] frequency jitter. And as Mr. Scherkenbach [24] indicated, there's a threshold question of

Page 83

[1] whether this should be construed or not. Now, [2] this is very different than the DMOS issue that [3] Mr. Guy was discussing.

[4] And in this case, the reason a [5] limitation needed to be read into the claim, as [6] he described, is because they specifically [7] disavowed it during prosecution. So it has to be [8] used to breathe life and meaning into the claim.

[9] Here, we've got different case law [10] that's directly on point that says that if it [11] simply discusses the purpose, you know, if you're [12] just setting forth the purpose, that doesn't [13] breathe any life or meaning, and you don't need [14] to construe it. And the case law In Re: [15] Paulsen, that's cited there.

[16] But if you did construe it, what [17] Power Integrations said is that he didn't [18] understand our most recent construction. Well, [19] Your Honor, that construction is directly out of [20] the patent.

[21] The confusion may arise because it [22] actually appears in the '851 patent, which states [23] varying the frequency operation of the pulse [24] width modulated switch by varying the oscillation

Page 84

[1] frequency of the oscillator is referred to as [2] frequency jitter.

[3] Now, the '851 patent was [4] incorporated by reference into the '876 patent [5] that we're addressing now. When a patent is [6] incorporated by reference, that means you [7] incorporate the entire thing verbatim into the [8] other patent.

[9] So every definition that appears in [10] the first patent also appears in the incorporated [11] patent that applies just as though it was in [12] there. So that definition, it's a — it can't be [13] clearer than that. I don't believe that that [14] should be the definition of frequency jitter.

[15] Now, again, Power Integrations tries [16] to read some additional limitations into [17] frequency jitter hoping to avoid prior art, but [18] that's not appropriate. And that tells you why [19] they want to construe a preamble claim. That's [20] just a purpose for that reason.

[21] Now, the next term at issue is [22] coupled, and it sounds like there may not really [23] be a dispute here. The problem that we faced [24] when we were trying to work out a construction

Page 85

[1] between the parties was we thought that by [2] connected, they might mean direct. And it's [3] clear that when you've got a circuit, you've got [4] elements connected together. A lot of times you [5] have one between the other, and they're coupled, [6] even if they're not directly connected.

[7] That's the way people in the art [8] think of it. That's the way the courts have [9] looked at it.

[10] So we went back and forth with them [11] and we said, Well, we think configured is better [12] than connected, because whereas coupled is clear [13] it's not directly connected, the word connected [14] does. We thought, Well, people might confuse [15] that and think it means direct.

[16] We said, You guys mean direct? They [17] would never give us a straight-forward answer. [18] So we are, like, Well, then, we are sticking with [19] configured.

[20] But if it's clear it's not direct [21] and it's made clear that it's not direct, then we [22] have no problem with that. And as I mentioned, [23] the cases make it very clear that coupled does [24] not mean direct.

Page 86

[1] Now, the next terms that I'd like to [2] briefly discuss are the voltages. And the '876 [3] patent requires three voltages that are distinct [4] from one another.

[5] Now, why do we know they're [6] distinct? It's because all of those voltages [7] appear in one claim.

[8] They appear in Claim 19, which [9] depends from Claim 17. So you'll first see [10] primary and secondary voltage showing up in 17. [11] Claim 19 adds supplemental voltage.

[12] If you've got three different words [13] in a claim, you've got to assume they've [14] got different meanings, that they're

distinct from [15] one another. Now, what Power Integrations wants [16] to do is they want to blur those voltages [17] together, so they can read them on Fairchild's [18] products.

[19] I'm not going to belabor these [20] points. It's all in our brief.

[21] The next claim term that's at issue [22] is combining. And combining, Fairchild believes [23] that it should be given the definition that it's [24] adding together from two or more different

Page 87

[1] sources. It doesn't really make sense that you [2] add together.

[3] You know, you've got voltages that [4] are added together, and they're not from [5] different sources. What Power Integrations wants [6] to do is they want to read this on the idea that [7] if you have a voltage in one place and you move [8] it to another place, that somehow you've combined [9] it. And they want to take out the idea of adding [10] two separate things together.

[11] And I believe that's it, Your Honor. [12] Thank you.

[13] THE COURT: All right. Thank you.

[14] MR. SCHERKENBACH: Your Honor, we [15] had to switch around here for a second.

[16] THE COURT: All right. Thank you. [17] Take your time.

[18] MR. SCHERKENBACH: Your Honor, [19] I'm going to try to do this in some semblance of [20] order.

[21] I've put up on the screen a slide [22] that you don't have. It's one that we sort of [23] kept in reserve.

[24] So I'm just going to rely on showing

Page 88

[1] it to you, rather than giving you a hard copy. [2] This response responds to Mr. Guy's argument [3] about the substrate, and the meaning within the [4] substrate.

[5] He directed you to, obviously, a [6] number of his own slides, and said that substrate [7] can only mean this block of material 12 at the [8] bottom of Colak and nothing else. And that the [9] reason that's true is because Power Integrations [10] disclaimed everything else in the prosecution.

[11] ==Very hard for you to get a handle on== [12] ==this without reading through the prosecution== [13] ==history or the clerk reading through it. But== [14] ==what you will find is we did disclaim a piece of== [15] ==Colak as being — as not being within the== [16] ==substrate. Again, we're not here to tell== [17] you otherwise.

[18] We did, but it was only that top [19] layer 18. Can I have that laser back?

[20] If you read what we said as opposed

[21] to the characterizations of it, the claim [22] requires that these pockets of material, the [23] source here which is highlighted in yellow, and [24] it's labeled 22, and the drain we've also

Page 89

[1] highlighted in yellow is 24, the claim says that [2] those have to be within the substrate. And the [3] applicant said, Well, in Colak, they're not [4] within the substrate. They're way in this layer [5] 18.

[6] Layer 18 is — obviously, it's not [7] the base material, so there's no argument at all [8] that if a substrate were limited on just to 12 [9] that these two pockets of material are not in the [10] substrate.

[11] But beyond that, remember at the [12] same time the applicant made this argument, we [13] amended or they amended the specification to say [14] the substrate could include other doped regions [15] and could include other layers if they were there [16] to support the transistor.

[17] So we did disclaim layer 18 as not [18] being a substrate, but we didn't say anything at [19] all about layer 16 or 14 not being the substrate. [20] We didn't say anything at all about other doped [21] regions not being the substrate or within the [22] substrate.

[23] So, again, we have to be careful [24] about what was disclaimed or not disclaimed. So

Page 90

[1] to say that simply because we disclaimed Colak [2] and we said, Yeah, Colak is a DMOS device; [3] therefore, we've disclaimed everything having to [4] do with DMOS devices, it's a non sequitur. You [5] have to read what actually happened and see what [6] we did disclaim and what we didn't.

[7] And I don't think when you read the [8] within the substrate portion of the prosecution [9] history, which was clearly secondary, by the way, [10] and also I observed at the outset, I think Mr. [11] Guy said this as well, the examiner didn't buy [12] this distinction any way.

[13] The substrate was an argument the [14] applicant made, and frankly, it didn't work. And [15] so the real — the real battle ground was about [16] the surface of the extended drain with the [17] surface-adjoining positions, which I pointed out.

[18] THE COURT: Mr. Guy, do you have [19] enough familiarity to challenge what [20] Mr. Scherkenbach is telling you?

[21] MR. GUY: Absolutely.

[22] THE COURT: Tell me what your [23] argument would be or contention would be on what [24] he's showing me and telling me about the —

Page 91

[1] MR. GUY: If I may, Your Honor, [2] without tripping.

[3] THE COURT: I'm sorry. I think he [4] did that on purpose. I think I saw him lift it.

[5] MR. SCHERKENBACH: It's their cable.

[6] MR. GUY: It's our cable. I have to [7] be careful.

[8] Your Honor, the argument was made [9] that not in the prosecution history, but in the [10] patent itself and the addition of new matter, in [11] which they added additional language that was [12] something called a substrate. And it was [13] something called a secondary substrate.

[14] This is, by their definition, the [15] secondary substrate right here. They added that [16] as new matter and in response to a rejection.

[17] They still got a second rejection, [18] Your Honor. And in the face of that, what they [19] said was their most unequivocal and clear [20] statement that we are limited to an MOS device, [21] and it does not include DMOS devices.

[22] So their point here about which [23] layer did they disclaim and which layer and so [24] forth, the examiner allowed them to amend to

Page 92

[1] include this substrate definition in which this [2] is substrate and this is secondary substrate.

[3] And now what they want to do is go [4] into the definition of substrates to include [5] pieces of this secondary substrate. It's a [6] completely — to completely change what was said [7] 17 or 18 years ago.

[8] The second point, however is —

[9] THE COURT: And your point is that's [10] a complete MOS exclusion?

[11] MR. GUY: Yes, absolutely. And [12] that's the second point.

[13] THE COURT: See what he says.

[14] MR. SCHERKENBACH: I understand the [15] argument, yes.

[16] THE COURT: I am going to give you a [17] chance to get to that second one. I didn't want [18] to cut you off. I just wanted to get a direct [19] response from Mr. Scherkenbach.

[20] MR. SCHERKENBACH: So there are two [21] pieces of this. We disagree on what was [22] disclaimed in number one.

[23] We also disagree —

[24] THE COURT: You don't agree that it

Page 93

[1] was a full exclusion of DMOS?

[2] MR. SCHERKENBACH: No, definitely [3] not.

[4] THE COURT: Okay.

[5] MR. SCHERKENBACH: I mean, there's [6] no — and again, it's not — it's a little bit [7] dense, I acknowledge. But there's no — in fact, [8] Mr. Guy made the observation that you read the [9] prosecution history. There really isn't any [10] discussion of DMOS, per se.

[11] DMOS appears as a label for Colak. [12] The examiner said Colak is DMOS.

[13] And the applicant said Colak is [14] DMOS. That's true.

[15] But there's no discussion of DMOS [16] being: Is it a double diffusion through the same [17] mass or insulating layer or not? No discussion.

[18] THE COURT: What about the testimony [19] he threw up during his initial argument?

[20] MR. SCHERKENBACH: Well, he put up [21] testimony from our inventor.

[22] THE COURT: Exactly.

[23] MR. SCHERKENBACH: Okay. That was [24] actually my second point.

Page 94

[1] THE COURT: Okay.

[2] MR. SCHERKENBACH: What he said, [3] what the inventor said is that, yes, you can call [4] a DMOS structure a high-voltage structure. No [5] doubt about it.

[6] The testimony that Mr. Guy projected [7] is no different in that respect than the patent [8] itself. If you read the background of the '075, [9] the patent talks about DMOS. It says DMOS [10] exists.

[11] These things are constructed in a [12] particular way, which is different than the [13] patent. And it says they are high-voltage [14] devices, but they have disadvantages.

[15] And the structure, the specific [16] structure that's claimed in the '075 is better. [17] So the prosecution history doesn't really add [18] anything to what the patent itself says, which [19] talks about DMOS.

[20] But the problem here is using a [21] label DMOS sort of globally, generically, [22] generally as though we all know what it is. And, [23] you know, it's either in or out of the game.

[24] Colak, the structure of Colak was

Page 95

[1] disclaimed. Certain things about Colak were [2] disclaimed. Absolutely.

[3] If Fairchild can prove that their [4] devices have the structures that were disclaimed, [5] well, they're off the hook. But what the real [6] dispute here is is that the DMOS of Colak is not [7] at all the DMOS of the Fairchild device. And [8] that isn't really a debate for claim [9] construction.

[10] We can go into it, and I actually [11]