# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 04-1371-JJF |

**POWER INTEGRATIONS, INC.'S FIRST NOTICE OF DEPOSITION OF FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Power Integrations, Inc. ("Power Integrations"), by its counsel, will take the deposition of Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. ("Fairchild") beginning September 1, 2005, at 9:00 a.m., at the law offices of Kim & Chang, Hannuri Building, 219 Naeja-dong, Jongno-gu, Seoul 110-053, Korea, or at such other time and place as the parties agree upon. The deposition will be taken upon oral examination before an official authorized by law to administer oaths and will continue from day to day until completed. Testimony of the witnesses will be stenographically recorded and may be videotaped.

Fairchild shall identify and designate one or more officers, directors, managing agents or other knowledgeable persons to testify on its behalf regarding the subject matter identified in Schedule A. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the persons designated by Fairchild should be prepared to testify as to such matters known or reasonably available to Fairchild.

EXHIBIT
Barnes
i

Fairchild is requested to provide Power Integrations' counsel, on or before Friday, August 12, 2005, a written designation of the names and positions of the officer(s), director(s), managing agent(s) or other person(s) who are most competent to testify concerning the matters set forth in Attachment A, and for each person designated, the matters on which he or she will testify.

Dated: August 9, 2005               FISH & RICHARDSON P.C.


                                    By:  /s/ Sean P. Hayes
                                         William J. Marsden, Jr. (#2247)
                                         Sean P. Hayes (#4413)
                                         919 N. Market Street, Suite 1100
                                         P.O. Box 1114
                                         Wilmington, DE 19899-1114
                                         Telephone: (302) 652-5070
                                         Facsimile: (302) 652-0607

                                         Frank E. Scherkenbach
                                         225 Franklin Street
                                         Boston, Massachusetts 02110-2804
                                         Telephone: (617) 542-5070
                                         Facsimile: (617) 542-8906

                                         Howard G. Pollack
                                         Gina M. Steele
                                         Michael R. Headley
                                         500 Arguello Street, Suite 500
                                         Redwood City, California 94063
                                         Telephone: (650) 839-5070
                                         Facsimile: (650) 839-5071

                                         Attorneys for Plaintiff
                                         POWER INTEGRATIONS, INC.

50287218.doc

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1. "Plaintiff" or "Power Integrations" or "PI" means Power Integrations Inc., individually and collectively, including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Power Integrations and others acting on behalf of Power Integrations.

2. "Defendant(s)," "Fairchild," "you" or "your" means Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, individually and collectively, including without limitation all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Fairchild and others acting on behalf of Fairchild.

3. "Document" is defined broadly to be given the full scope of that term contemplated in Federal Rule of Civil Procedure 34, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including without limitation computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Rule 1001, Federal Rules of Evidence. Any document bearing marks, including without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate document.

4. "Person" means any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

5. "Entity" means any person.

6. The "'851 patent" means U.S. Patent No. 6,107,851.

7. The "'876 patent" means U.S. Patent No. 6,249,876.

8. The "'366 patent" means U.S. Patent No. 6,229,366.

9. The "'075 patent" means U.S. Patent No. 4,811,075.

10. "Infringe" and "infringement" refer to direct infringement, contributory infringement, inducement, literal infringement, and/or infringement by the doctrine of equivalents.

11. "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, or assemblage of components/parts (either individually or collectively), which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

12. "Accused Product(s)" means and includes all products described by Fairchild as Off-Line Conversion integrated circuits, whether manufactured or sold by Fairchild or other, to at least include specifically part numbers FSCQ0565, FSCQ0765, FSCQ1265, FSCQ1565, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD201, FSD210, FSD210B, FSD211, FSD500, FSD611, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RLB, FSDH0265RN, FSDH0265RNB, FSDL321, FSDL321L, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RLB, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM07652, FAN7601, FAN7602, and any products not materially different from these.

13. The term "high voltage device" means a device capable of conducting a voltage in excess of 50 volts.

14. "Products containing same" or "downstream product(s)" means and includes all products or kits that contain any Accused Product.

15. To "relate to" means to describe, discuss, constitute, comprise, or evidence.

16. The term "identify," when used with respect to any natural person, means that the following information shall be provided: the person's full name; last known business address and telephone number; last known title or occupation; and last known employer.

17. The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided: the entity's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that legal entity.

18. The term "identify," when used with respect to a document, subject to the option to produce records under Fed. R. Civ. P. 33(d), means to provide information sufficient to locate that document, including but not limited to the following: the production number range, the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; the identifying code number, file number, title, or label of such document; a general description of such document (*e.g.*, letter, memorandum, drawing); the title or heading; the number of pages of which such document consists; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of such document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person

having custody of it; and, if the document is in a foreign language, whether an English translation of the document exists, whether partial or complete.

19. The phrase "patents-in-suit" refers to any of the '851, '876, '366, or '075 patents.

20. The terms "use" and "using" include without limitation use in a power supply, use in testing, use in demonstrating, and use in training.

21. "Any" and "all" shall be construed to mean both any and all.

22. "The Complaint" refers to the Complaint, filed by Power Integrations on October 20, 2004.

23. "The Answer" refers to the Answer to Complaint and Counterclaim, filed by Fairchild on December 9, 2004.

Fairchild is requested to promptly notify Power Integrations, in writing, of the name, address, telephone number, capacity and job title of each person designated to testify and the matters on which each person will testify. Fairchild is requested to designate one or more officers, directors, managing agents, employees or other persons most knowledgeable on the following deposition topics:

## DEPOSITION TOPICS

I. **GENERAL**

TOPIC NO. 1:

The current and past corporate structure and organization of Fairchild with regard to units, divisions, subsidiaries, involved with the design, development, manufacture, marketing and/or sale of the Accused Products.

TOPIC NO. 2:

Fairchild's policies and/or practices relating to document retention and destruction.

TOPIC NO. 3:

The identity of all persons at Fairchild with knowledge relating to the topics in Schedule A of this Notice of Deposition.

4

TOPIC NO. 4:

The identity, location, custody, and control of all documents concerning the topics listed in Topic Nos. 1-42.

## II. STRUCTURE OF THE ACCUSED PRODUCTS

TOPIC NO. 5:

The structure, function and operation of the circuits of the Accused Products.

TOPIC NO. 6:

The fabrication and resulting physical structure of all high voltage transistor devices incorporated in any of the Accused Products.

TOPIC NO. 7:

The design and development of the circuits of the Accused Products, specifically including the circuits responsible for the "internal soft start" feature as that term is used in Fairchild's datasheets.

TOPIC NO. 8:

The design and development of the circuits of the Accused Products, specifically including the circuits responsible for the "frequency modulation," "frequency scaling," or "frequency jitter" feature as those terms are used in Fairchild's documents.

TOPIC NO. 9:

The design and development of the physical structure of and fabrication process related to all high voltage transistors incorporated in any of the Accused Products.

TOPIC NO. 10:

The interpretation and explanation of Fairchild's technical documents describing the circuits or circuit design of the Accused Products.

TOPIC NO. 11:

The interpretation and explanation of Fairchild's technical documents describing the fabrication and the resulting physical structure of all high voltage transistor devices incorporated in the Accused Products.

TOPIC NO. 12:

Authentication of Fairchild's documents describing the fabrication and the resulting physical structure of all high voltage transistor devices incorporated in the Accused Products.

TOPIC NO. 13:

Authentication of Fairchild's documents describing the circuits or circuit design of the Accused Products, including but not limited to, data sheets and schematics.

### III. MARKETING, SALES, LICENSING AND PROFITABILITY OF THE ACCUSED PRODUCTS

TOPIC NO. 14:

The features Fairchild customers prefer, or have requested, be incorporated or designed into Fairchild Accused Products.

TOPIC NO. 15:

The date on which Fairchild decided to include an "internal soft start" feature in its devices, the identity of all persons who participated in or can corroborate that decision, the identity of all documents that refer, relate, or corroborate that decision, and all facts and circumstances relating to that decision.

TOPIC NO. 16:

The date on which Fairchild decided to include a "frequency modulation," "frequency scaling" or "frequency jitter" feature in its devices, the identity of all persons who participated in or can corroborate that decision, the identity of all documents that refer, relate, or corroborate that decision, and all facts and circumstances relating to that decision.

TOPIC NO. 17:

The date(s) on which Fairchild decided on the portions of the processes designated as "SDG3" and "SDG4" used for fabricating high voltage transistors, the identity of all persons who participated in or can corroborate those decisions, the identity of all

documents that refer, relate, or corroborate those decisions, and all facts and circumstances relating to those decisions.

TOPIC NO. 18:

Fairchild's process or practice of "benchmarking" competitors' products.

TOPIC NO. 19:

The preparation, content, interpretation and distribution of promotional materials used in marketing the Accused Products.

TOPIC NO. 20:

The existence, development and distribution of any reference designs or demonstration boards associated with any of the Accused Products.

TOPIC NO. 21:

Communications with any customers regarding products that compete with the Accused Products.

TOPIC NO. 22:

Any comparisons made between Fairchild's products and Power Integrations' products, including communications between Fairchild and any third parties about such comparisons.

TOPIC NO. 23:

All communications between Fairchild and any customer, or potential customer, relating to this case, the patents-in-suit, Power Integrations or Power Integrations' products.

TOPIC NO. 24:

All communications relating to the patents-in-suit between Fairchild and any person known to be, or believed by Fairchild to be, a customer of Power Integrations.

TOPIC NO. 25:

Any contacts with distributors, sales representatives, customers or potential customers concerning the sale of the Accused Products.

7

TOPIC NO. 26:

The importation of the Accused Products into the United States by Fairchild and/or its customers.

TOPIC NO. 27:

Identification of all Fairchild customers who have purchased the Accused Products, the particular Accused Product(s) each Fairchild customer purchases or has purchased, the unit volume of such purchases and Fairchild's customers' uses of the Accused Products.

TOPIC NO. 28:

The manner in which Fairchild customers' incorporate the Accused Products into Fairchild customers' downstream products and the identification of any product designed, manufactured, or sold by any entity other than Fairchild that uses or incorporates any of the Accused Products.

TOPIC NO. 29:

Any licenses Fairchild has entered involving the technology of the Accused Products, including licenses of third party technology and licenses of Fairchild's patented technology, and all royalties paid on those licenses.

TOPIC NO. 30:

Fairchild financial statements on a corporate, division, and product basis, including without limitation, profit and loss statements, operating expenses, balance sheets, and cash flow statements related to the units, divisions, etc. responsible for the accused products.

TOPIC NO. 31:

Any analyses or studies of Fairchild profitability, on a corporate, division, or product basis related to the units, divisions, etc. responsible for the Accused Products.

TOPIC NO. 32:

Any budget, sales, cost, or profit forecasts for Fairchild on a corporate, division, or product basis related to the units, divisions, etc. responsible for the Accused Products.

TOPIC NO. 33:

For each of the Accused Products sold:

   a. the price charged;
   b. the revenues received;
   c. the volume of units ordered, sold, and shipped;
   d. the costs, including without limitation all selling, marketing, administrative, research and development, production, and capital costs;
   e. any identification of fixed and variable costs;
   f. any budgets, sales, cost, or profit forecasts;
   g. the net profits attributable to the product;
   h. all methods used to account for financial data, whether reported officially or unofficially;
   i. all projections relating to the above made by anyone, including all business or marketing plans relating to such products;
   j. the method of storing, tracking, maintaining, or retrieving data relating to the above;

TOPIC NO. 34:

The profit margin for the sale of the Accused Products.

TOPIC NO. 35:

Fairchild's distribution network, including its sales and marketing organizations and the specific distribution network maintained or used by Fairchild for the distribution and sale of the Accused Products.

TOPIC NO. 36:

The market for each Fairchild Accused Product including any research related to the actual or potential market for the products, such as formal and/or informal surveys, and identification of all competing products.

TOPIC NO. 37:

Communications with any third parties related to the "internal soft start" feature in Fairchild or Power Integrations devices, the identity of those third parties, all documents that refer, relate, or corroborate that communication, and all facts and circumstances relating to that communication.

TOPIC NO. 38:

Communications with any third parties related to the "frequency modulation," "frequency scaling," or "frequency jitter" feature in Fairchild or Power Integrations devices, the identity of those third parties, all documents that refer, relate, or corroborate that communication, and all facts and circumstances relating to that communication.

### IV. FAIRCHILD'S KNOWLEDGE OF POWER INTEGRATIONS' PATENTS AND COMPETITORS' PRODUCTS

TOPIC NO. 39:

Fairchild's knowledge or understanding of Power Integrations product(s), including any efforts by Fairchild to analyze or reverse engineer the structures or circuits incorporated therein.

TOPIC NO. 40:

Fairchild's knowledge and/or understanding of Power Integrations' patents-in-suit, including the date Fairchild first became aware of each of the patents-in-suit, and the identity of all individuals at Fairchild who had any knowledge of any of the patents-in-suit, and all analysis by Fairchild of the patents-in-suit.

TOPIC NO. 41:

The date on which Fairchild decided to develop, manufacture, offer for sale and/or sell the Accused Products or to continue such activities despite the knowledge of Power Integrations' patents, the identity of all persons who participated in or can corroborate that decision, the identity of all documents that refer, relate, or corroborate that decision, and all facts and circumstances relating to that decision.

TOPIC NO. 42:

Fairchild's use of an IBM website in or about late 1997 to search for, identify, obtain, download, print, review, and/or analyze competitors' patents, including but not limited to Power Integrations patents such as the '075 Patent, the identity of all parties involved in

the use of an IBM website, all documents that refer, relate, or corroborate the use of an IBM website, and all facts and circumstances relating to the use of an IBM website.

TOPIC NO. 43:

Fairchild's use of third party assistance to analyze or reverse engineer competitors' products, including the identity of all third parties who assist, or have assisted, Fairchild in its efforts to conduct analysis, "construction analysis," "benchmarking," or reverse engineering of competitors' products.

50287242.doc

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2005, I electronically filed **POWER INTEGRATIONS, INC.'S FIRST NOTICE OF DEPOSITION OF FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick, Esq.
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE 19899

I hereby certify that on August 9, 2005, I have mailed via Federal Express, the document(s) to the following non-registered participants:

G. Hopkins Guy, III
Bas de Blank
Duo Chen
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025

Fairchild Semiconductor International, Inc.
Attn: Legal Department
82 Running Hill Road
South Portland, ME 04106

Fairchild Semiconductor Corporation
Attn: Legal Department
82 Running Hill Road
South Portland, ME 04106

/s/ Sean P. Hayes
Sean P. Hayes