# EXHIBIT Y

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a Delaware
corporation,

          Plaintiff,

v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION,
a Delaware corporation,

          Defendants.

C.A. No.  04-1371

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL,
INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S**

**THIRD NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)**

TO:    **POWER INTEGRATIONS, INC. AND ITS ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor

Corp. (collectively, "Fairchild") will take the deposition of Power Integrations, Inc. ("Power

Integrations") on the topics set forth in Attachment A at the offices of Orrick, Herrington &

Sutcliffe at 1000 Marsh Road, Menlo Park, California 94025, commencing at 9:00 a.m. on

September 6, 2005.  Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Power

Integrations shall produce one or more officers, directors, managing agents, or other designated

persons to testify on its behalf as to the topics set forth in Attachment A attached hereto.  The

deposition will be taken before a duly qualified notary public or other officer authorized by law

to administer oaths, and will continue for one day.  The deposition may be recorded

stenographically and by video, as well as by instant visual display of testimony using LiveNote

software.

    A list of all parties or attorneys for parties on whom this Notice of Deposition is being



served is shown on the accompanying proof of service.

## DEFINITIONS AND INSTRUCTIONS

A. "Power Integrations," "you" and "your" means or refers to Power Integrations, Inc., including without limitation its agents, representatives, employee staff members, and consultants; or any affiliate of any of the aforementioned; or any predecessor, assignee, or successor in interest of any of the aforementioned; or any joint ventures; or any person acting on behalf of or purporting to act on behalf of any of the aforementioned.

B. "Fairchild" means Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp.

A. "Power Integrations Patents" as used herein refers to U.S. Patent No. 4,811,075 (the "'075 Patent"), U.S. Patent No. 6,107,851, (the "'851 Patent"), U.S. Patent No. 6,229,366 (the "'366 Patent"), and U.S. Patent No. 6,249,876 (the "'876 Patent"), and all applications, continuations, continuations-in-part, divisionals, reexaminations, or reissues thereof and all foreign applications and patents which claim priority to any of the above.

C. "Any" shall be understood to include and encompass "all." As used herein, the singular shall always include the plural and the present tense shall also include the past tense. The words "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request all information, documents or things that might otherwise be construed to be outside its scope.

Dated:  August 9, 2005

ASHBY & GEDDES

Steven J. Balick (I.D. 2114)
John G. Day (I.D. 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
Tel: (302) 654-1888

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and FAIRCHILD
SEMICONDUCTOR CORPORATION

OF COUNSEL:

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Bas de Blank (#191487)
1000 Marsh Road
Menlo Park, CA  94025
Tel: (650) 614-7400

DOCSSV1:415017.2

- 3 -

## ATTACHMENT A

1.    Patent licenses to which Power Integrations is a party, Power Integrations has been offered, or Power Integrations has offered others, including licenses of the Power Integrations Patents.

2.    Any lost profits or sales allegedly lost by Power Integrations due to any sale or offer of the accused Fairchild devices.

3.    Any evidence of an established or reasonable royalty rate for each of the Power Integrations Patents including, but not limited to, (i) the royalties actually received by Power Integrations for the licensing of the Power Integrations Patents, (ii) any rates paid by the Power Integrations for the use of other patents comparable to the Power Integrations Patents, (iii) the nature and scope of any licenses in (i) or (ii), as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold, (iv) Power Integrations' policy or marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under conditions designed to preserve that monopoly or by freely licensing others, (v) the effect of selling Power Integrations products covered by the Power Integrations Patents in promoting sales of other products of Power Integrations; the existing value of the products covered by the Power Integrations Patents as a generator of sales of its non-patented items; and the extent of any derivative or convoyed sales as a result of sales of any Power Integrations products covered by the Power Integrations Patents, (vii) the established profitability of the products made under the Power Integrations Patents; their commercial success; and their current popularity, (vii) the utility and advantages of the Power Integrations products covered by the Power Integrations Patents Patent over the prior art, if any, (viii) the extent to which Power Integrations has made use of the invention covered by the asserted claims of the Power Integrations Patents; and any evidence probative of the value of that use, (ix) the portion of the profit or of the selling price that may be customary in Power Integrations's business or in comparable businesses to allow for the use of the invention covered by the asserted claims of the Power Integrations Patents or analogous inventions, (x) the portion

of the realizable profit that should be credited to the invention covered by the asserted claims of the Power Integrations Patents as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Fairchild, (xi) any evidence or factor of what would be considered relevant by Power Integrations to the hypothetical negotiation of a license to the asserted claims of the Power Integrations Patents.

4.    The sales, marketing, offer for sale, pricing and costs of any Power Integrations' products that use or have ever used the alleged inventions of the Power Integrations Patents.

5.    For each Power Integrations product that Power Integrations contends lost sales due to Fairchild's alleged infringement, the amount of each products' reduced sales, when such sales were lost, and the Fairchild products that allegedly gained the sale.

6.    For each Power Integrations product for which Power Integrations contends Fairchild alleged infringement led to price erosion, the date such erosion began and all facts concerning the price erosion including, but not limited to, what the uneroded price would be but for the sale of the allegedly infringing Fairchild devices, the price and dates of all price changes, what factors lead to price changes, and who sets the price of the Power Integrations devices.

7.    An identification of the products that compete with Power Integrations devices and the sales and marketing of such competitors' devices.

8.    Non-infringing alternatives to the use of the Power Integrations Patents.

9.    Factors that affect or determine the price at which Power Integrations offers its devices for sale and sells those devices.