IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

<div style="margin-left:40%">

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*
*FAIRCHILD SEMICONDUCTOR*
*INTERNATIONAL, INC. and FAIRCHILD*
*SEMICONDUCTOR CORPORATION*

</div>

*Of Counsel:*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
G. Hopkins Guy, III (#124811)
Vickie L. Feeman (#177487)
Bas de Blank (#191487)
Brian H. VanderZanden (#233134)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: April 19, 2006

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.    LEGAL STANDARDS ......................................................................................... 2

A.    To Create A Dispute Of Fact, Power Integrations Must Identify Some
Admissible Evidence ................................................................................... 2

B.    As A Matter Of Law, Power Integrations' Experts' Reports Cannot Create
A Genuine Dispute Of Fact .......................................................................... 3

C.    As A Matter Of Law, The Conclusory Opinions of Power Integrations'
Experts Cannot Create A Genuine Dispute Of Fact ................................... 3

D.    As A Matter Of Law, Conclusory Arguments By Power Integrations'
Attorneys Cannot Create A Genuine Dispute Of Fact ................................ 4

E.    Power Integrations Cannot Provide New Evidence ..................................... 5

III.    CLAIM 1 OF THE '876 PATENT IS INVALID .................................................. 5

A.    There Is No Genuine Dispute Concerning The Prior Art ............................ 5

1.    Alleged Dispute # 1: "the teaching of the reference[s], the purpose
of the ROM element, and its interrelationship with the counter and
DAC." .............................................................................................. 6

2.    Alleged Dispute #2: "Whether any of the counters disclosed in the
art are 'coupled' to a digital to analog converter ("DAC")." ........... 7

3.    Alleged Dispute #3: "Whether any of the counters causes a DAC
to change the frequency of an oscillator." ...................................... 7

4.    Alleged Dispute # 4 (applies only to Martin and Habetler):
"Whether Martin and Habetler disclose a frequency jittering
circuit." ........................................................................................... 8

B.    The Court Should Grant Summary Judgment That Claim 1 Is Invalid ....... 9

IV.    FAIRCHILD DOES NOT INFRINGE CLAIMS 17-19 OF THE '876 PATENT ........... 9

A.    As A Matter Of Law, Claims 17-19 Require First Generating Primary And
Secondary Voltages And Then "Combining" These Voltages ................... 10

B.    There Is No Dispute Concerning The Operation Of The Accused Devices ........ 11

C.    Power Integrations Admits That Whether Fairchild Infringes Under The
Doctrine Of Equivalents Is A Question Of Law ....................................... 13

1.    As a matter of law, prosecution history estoppel precludes Power
Integrations from arguing that Fairchild infringes claims 17-19
under the doctrine of equivalents ................................................ 13

2.    Power Integrations has raised no dispute of fact as to whether
Fairchild infringes claims 17-19 under the doctrine of equivalents ........ 14

**TABLE OF CONTENTS**
(continued)

Page

V.   FAIRCHILD DOES NOT INFRINGE THE '075 PATENT ......................... 15

  A.   The Parties Agree That Summary Judgment That Fairchild Does Not
       Infringe Under The Doctrine Of Equivalents Is Proper......................... 15

  B.   There Is No Genuine Dispute That Fairchild Does Not Literally Infringe.......... 16

       1.   Alleged Dispute #1: "What 'DMOS' meant to one of ordinary
            skill at the time the '075 patent was prosecuted and whether the
            accused Fairchild parts are, in fact, DMOS devices within that
            meaning." ................................................................. 16

       2.   Alleged Dispute #2: "What one of ordinary skill would understand
            from a review of the prosecution history was being disclaimed in
            the context of the discussion of DMOS and the Colak reference." ......... 17

       3.   Alleged Dispute #3: "Further factual issues are raised by Power
            Integrations' contention that Fairchild does not practice the
            disavowed Colak structure." .............................................. 17

       4.   Alleged Dispute #4: "What the Wakaumi [Sze and Parpia]
            references teach[] one of ordinary skill in the art." ................... 18

  C.   The Court Should Grant Summary Judgment Of No Literal Infringement.......... 18

VI.  THE '851 AND '366 PATENTS ARE UNENFORCEABLE DUE TO POWER
     INTEGRATIONS' INEQUITABLE CONDUCT................................................. 18

  A.   There Is No Genuine Dispute Of Material Fact...................................... 19

       1.   There is no genuine dispute concerning the materiality of Power
            Integrations' affirmative misstatements and withheld prior art.............. 19

  B.   The Court Should Grant Summary Judgment That The '851 and '366
       Patents Are Unenforceable Due To Power Integration's Inequitable
       Conduct............................................................................ 27

VII. CLAIMS 1 AND 5 OF THE '075 PATENT ARE INVALID........................... 28

  A.   There Are No Genuine Issues Of Material Fact Regarding Anticipation Of
       Claim 1 By The '173 Patent....................................................... 28

  B.   There Is No Genuine Issue Of Fact Regarding Obviousness Of Claim 5 .......... 30

  C.   There Are No Genuine Issues Of Material Fact Regarding Priority .................. 31

       1.   Power Integrations has not come forward with evidence that could
            corroborate Eklund's alleged earlier conception ....................... 31

       2.   Absent independent corroboration, any dispute over what Eklund
            conceived or when he conceived it is immaterial ..................... 33

**TABLE OF CONTENTS**
(continued)

Page

       3.    Power Integrations has not come forward with evidence of diligence .................................................................................... 34

       4.    Beasom's earlier conception date and diligence are immaterial for purposes of this motion.................................................... 34

VIII.   FAIRCHILD IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT WITH RESPECT TO ITS PRODUCTS SOLD ABROAD ............. 35

    A.    Fairchild Cannot Be Liable For Indirect Infringement ........................................ 35

       1.    There is no evidence of an underlying act of direct infringement ........... 36

       2.    As a matter of law, Fairchild cannot be found to have indirectly infringed absent evidence of an underlying act of direct infringement ...................................................................................... 39

    B.    Fairchild Is Entitled To Summary Judgment That Its Foreign Sales Do Not Result From "Offers To Sell" Made In The United States ................................... 39

       1.    There Are No Genuine Issues Of Material Fact Regarding The Lack Of Domestic Offers Relating To Foreign Sales .............................. 40

IX.    CONCLUSION.................................................................................................... 46

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*3D Systems, Inc. v. Aarotech Laboratories, Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998)........................................................................ 40

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)........................................................................................ 2

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.,*
    216 F.3d 1042 (Fed. Cir. 2000)............................................................ 4, 7, 12, 17

*Bristol-Myers Squibb Co. v. Ben Venue Labs.,*
    246 F.3d 1368 (Fed. Cir. 2001)........................................................................ 6

*Carson Harbor Village, Ltd. v. Unocal Corp., CV 96-3281 MMM,*
    2003 U.S. Dist. LEXIS 14438 (C.D. Cal. 2003)........................................... 3, 12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)................................................................................ 2, 13, 14

*Combined Sys. v. Def. Tech. Corp. of America,*
    350 F.3d 1207 (Fed. Cir. 2003)........................................................................ 11

*Cooper v. Goldfarb,*
    154 F.3d 1321 (Fed. Cir. 1998)........................................................................ 31

*Dawn Equipment Co. v. Kentucky Farms, Inc.,*
    140 F.3d 1009 (Fed. Cir. 1998)........................................................................ 36

*Digene Corp. v. Ventana Medical Sys., Inc.,*
    316 F. Supp. 2d 174 (D. Del. 2004)................................................................ 38

*Digital Control, Inc. v. Merlin Tech. Inc.,*
    437 F.3d 1309 (Fed. Cir. 2006)........................................ 18, 19, 20, 22, 23

*Enzo Biochem Inc. v. Gen-Probe, Inc.,*
    424 F.3d 1276 (Fed. Cir. 2005)................................................................*passim*

*Epcon Gas Systems v. Bower Compressors, Inc.,*
    279 F.3d 1022 (Fed. Cir. 2002)................................................................ 36, 37

*Ferring B.V. v. Barr Labs., Inc.,*
    437 F.3d 1181 (Fed. Cir. 2006)................................................................*passim*

## TABLE OF AUTHORITIES
### (continued)

*Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (U.S. 2002)................................................................................. 13

*Fowle* v. *C & C COLA,*
    868 F.2d 59 (3rd Cir. 1988) ..................................................................*passim*

*Hahn* v. *Wong,*
    892 F.2d 1028 (Fed. Cir. 1989)................................................................. 31, 33

*Hoffmann-La Roche, Inc.* v. *Promega Corp,*
    323 F.3d 1354 (Fed. Cir. 2003)................................................................. 21, 22

*Imagexpo, LLC* v. *Microsoft Corp.,*
    284 F. Supp. 2d 365 (E.D. Va. 2003)............................................................ 40

*Johns Hopkins Univ.* v. *CellPro,*
    894 F. Supp. 819 (D. Del. 1995)........................................................ 36, 38, 39

*Linear Technology Corp.* v. *Micrel, Inc.,*
    275 F.3d 1040 (Fed. Cir. 2001)0...........................................................*passim*

*Loral Fairchild Corp.* v. *Sony Electronics Corp.,*
    181 F.3d 1313 (Fed. Cir. 1999)..................................................................... 10

*Matsushita Elec. Indus. Co.,* v. *Zenith Radio Corp.,*
    475 U.S. 574 (1986).......................................................................................... 2

*Moldflow Corp.* v. *Simcon, Inc.,*
    296 F. Supp. 2d 34 (D. Mass. 2003) ............................................................ 41

*Novartis Corp.* v. *Ben Venue Labs. Inc.,*
    271 F.3d 1043 (Fed. Cir. 2001)..............................................................*passim*

*Pfaff* v. *Wells,*
    525 U.S. 55 (1998)........................................................................................ 41

*Pioneer Magnetics, Inc.* v. *Micro Linear Corp.,*
    330 F.3d 1352 (Fed. Cir. 2003)..................................................................... 14

*Rhenalu* v. *Alcoa, Inc.,*
    224 F. Supp. 2d 773 (D. Del. 2002) ............................................................. 44

*Rotec Indus., Inc.* v. *Mitsubishi Corp.,*
    215 F.3d 1246 (Fed. Cir. 2000).......................................................... 39, 40, 41

**TABLE OF AUTHORITIES**
(continued)

Page

*Safas Corp.* v. *Etura Premier, L.L.C.*,
293 F. Supp. 2d 442 (D. Del. 2003) ................................................................. 3

*Schwing GmbH* v. *Putzmeister Aktiengesellschaft & Putzmeister*,
305 F.3d 1318 (Fed. Cir. 2002) ..................................................................... 4

*Yurman Design, Inc.* v. *Golden Treasure Imports, Inc.*,
275 F. Supp. 2d 506 (S.D.N.Y. 2003) ................................................. 5, 42, 44

**FEDERAL STATUTES**

35 U.S.C. § 102(e) .......................................................................................... 34

35 U.S.C. § 271(a) .......................................................................................... 39

Fed. R. Civ. P. 56(e) ................................................................................. *passim*

# I.   INTRODUCTION.

Fairchild filed seven motions for summary judgment.  In response to six motions, Power Integrations filed a "counterstatement".[1]  Since Power Integrations does not identify even a single genuine dispute of any fact material to Fairchild's motions, summary judgment is proper:

- Fairchild does not infringe U.S. Patent No. 4,811,075 (the "'075 Patent").

- Claims 1 and 5 of the '075 Patent are invalid.

- Fairchild does not infringe claims 17-19 of U.S. Patent No. 6,249,876 (the '876 Patent).

- Claim 1 of the '876 Patent is invalid.

- U.S. Patent Nos. 6,107,851 and 6,229,366 (the "'851 Patent" and the "'366 Patent) are unenforceable due to Power Integrations' inequitable conduct.

- Since there is no evidence of any direct infringement by a third party, Fairchild cannot indirectly infringe the asserted patents.  Likewise, there is no evidence that Fairchild has made an offer to sell the accused devices in the United States that resulted in a foreign sale.  Thus, Fairchild cannot be liable for its foreign sales.

Fairchild has shown that summary judgment is warranted on each issue.  Thus, the burden shifted to Power Integrations to submit admissible evidence of a genuine dispute of material fact.

Power Integrations failed to meet its burden.  Unable to submit evidence that Fairchild's devices practice the asserted claims or that these claims are valid, Power Integrations relied upon the inadmissible reports of its experts and conclusory arguments of its attorneys.  As a matter of law, this does not create a dispute that can preclude summary judgment.

Rather than cite evidence of a genuine dispute of fact, Power Integrations' attorneys argue that a jury should be permitted to ignore the evidence and, instead, rely on its "intuition":

> At the most basic and intuitive level, though, the finder of fact does not need to make a leap of faith to appreciate that companies like Samsung, Motorola, LG, and Dell directly import cell phones, LCD monitors, TVs, and other consumer electronics products into the United States, because they see them every day at Best Buy, Circuit City, Costco, Fry's Electronics, and a myriad of other electronics retailers.

DI 233, p. 37.  Power Integrations, however, has submitted absolutely no evidence that the allegedly imported "cell phones, LCD monitors, TVs, and other consumer products" contain an accused Fairchild device.  Even were they to contain such an accused device, Power Integrations

---

[1]    Fairchild separately responds to Power Integrations' answering brief in opposition to Fairchild's Motion for Summary Judgment re Limitation on Damages.  DI 202.

has submitted no evidence that the device was sold since the filing of the complaint (necessary since Power Integrations concedes that it cannot recover damages prior to the filing of the complaint) or that Fairchild contributed to or induced the importation of such downstream products. Absent any such evidence, summary judgment is necessary precisely to prevent a finder of fact from relying on its "intuition" rather than the evidence.

## II.    LEGAL STANDARDS.

As an initial matter, Power Integrations served an answering brief, not a counterstatement of disputed facts. Power Integrations' brief makes legal argument and even contains a "Table of Authorities". Since none of Power Integrations' legal arguments are persuasive and – as set forth below – Power Integrations has not raised a genuine dispute of material fact, Fairchild respectfully requests that the Court grant Fairchild's pending motions without further briefing.

### A.    To Create A Dispute Of Fact, Power Integrations Must Identify Some Admissible Evidence.

As the moving party, it was Fairchild's burden to establish that there is no genuine issue of material fact and that it is thereby entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Fairchild met this burden by providing detailed, admissible evidence – documents, deposition testimony, and sworn declarations – showing the existence of each fact upon which Fairchild relied. Thus, the burden of production shifts to Power Integrations to set forth evidence of a genuine issue of material fact for trial. *Id.* at 322-23.

Power Integrations "may not rest upon the mere allegations or denials of [its] pleadings...." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249-250.

Power Integrations must do more than simply show the possibility of some "metaphysical doubt" as to the material facts. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, Power Integrations' "response, by affidavits or otherwise provided in

2

this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Power Integrations has not done so. Thus, summary judgment is appropriate:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Fed. R. Civ. P. 56(e) (emphasis added).

**B.    As A Matter Of Law, Power Integrations' Experts' Reports Cannot Create A Genuine Dispute Of Fact.**

Rather than provide sworn affidavits (as required by Federal Rule of Civil Procedure 56(e)), Power Integrations simply submitted its expert reports. DI 234, Exhs. A, D, E, H, and R. These reports are inadmissible hearsay and cannot create a dispute of fact.[2] *Carson Harbor Village, Ltd. v. Unocal Corp.*, CV 96-3281 MMM, 2003 U.S. Dist. LEXIS 14438 at *23 (C.D. Cal. 2003); *see also Fowle v. C & C COLA*, 868 F.2d 59, 67 (3rd Cir. 1988) ("The substance of this report was not sworn to by the alleged expert. Therefore, the purported expert's report is not competent to be considered on a motion for summary judgment.").

As this Court has noted in granting summary judgment of noninfringement, it would be improper for the Court to assume that Power Integrations could submit admissible evidence in place of its inadmissible expert reports:

> Since I will not presume that Safas could produce non-hearsay testimony to replace the hearsay documents or to somehow support their admission, Safas has not met its burden under Federal Rule of Civil Procedure 56(e) to "set forth such facts as would be admissible in evidence, and... show affirmatively that the affiant is competent to testify to the matters stated therein."

*Safas Corp. v. Etura Premier, L.L.C.*, 293 F. Supp. 2d 442, 446 (D. Del. 2003).

**C.    As A Matter Of Law, The Conclusory Opinions of Power Integrations' Experts Cannot Create A Genuine Dispute Of Fact.**

Moreover, Power Integrations relies upon its inadmissible expert reports for simple

---

[2]    In contrast, Fairchild submitted sworn affidavits from its experts as called for by Fed. R. Civ. Proc. 56(e). Where appropriate, Fairchild also cited Power Integrations' experts' report, which are admissions against interest.

3

conclusory statements such as "Power Integrations' expert found infringement while Fairchild's expert did not...." DI 233, p. 8. As a matter of law, this cannot create a genuine dispute of material fact. "A party may not avoid summary judgment simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device." *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1047 (Fed. Cir. 2000).

The mere fact that Power Integrations' expert says that the asserted claims are valid and infringed does not create a genuine dispute. "A party does not meet this evidentiary threshold [of showing a dispute of fact] merely by submitting the affidavit of an expert who opines that the accused device meets the claim limitations." *Novartis Corp.* v. *Ben Venue Labs. Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001). Here, of course, Power Integrations has not even submitted an affidavit. Instead, the conclusory statements are part of the inadmissible reports of its experts.[3]

As the Federal Circuit noted, "if all expert opinions on infringement or noninfringement were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation." *Novartis*, 271 F.3d at 1051. Clearly, this is not the standard.

**D.    As A Matter Of Law, Conclusory Arguments By Power Integrations' Attorneys Cannot Create A Genuine Dispute Of Fact.**

Finally, the arguments of Power Integrations' attorneys cannot – as a matter of law – create a genuine dispute of fact. "Attorney argument is no substitute for evidence." *Enzo Biochem Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276 , 1284 (Fed. Cir. 2005). Since attorney argument does not provide the level of detail and evidence required by the Federal Rules, it cannot constitute a genuine dispute of material fact. *See* Fed. R .Civ. P. 56(e).

---

[3]    Even had Power Integrations submitted affidavits from its experts, an "affidavit of an expert who opines" that the accused device infringes is not evidence "from which a reasonable fact-finder could find infringement," and thus does not create a genuine issue of fact. *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1047 (Fed. Cir. 2000); *see also Schwing GmbH v. Putzmeister Aktiengesellschaft & Putzmeister*, 305 F.3d 1318, 1326 (Fed. Cir. 2002) ("The only other evidence on which Schwing relies is the single sentence in Mr. Hunter's expert report stating that 'each and every feature of the claims are literally found in the modified valve design.' Without further support, that conclusory statement is insufficient to raise a genuine evidentiary dispute for trial.").

E.    **Power Integrations Cannot Provide New Evidence.**

Power Integrations had every opportunity to provide evidence of a genuine dispute of material fact if, indeed, such evidence existed. Power Integrations has failed to do so. Thus, the Court should address the merits of Fairchild's pending motions. Since Power Integrations' "counterstatement" was, in truth, an answering brief complete with legal argument and citations to legal authority, briefing is complete and the issues are ripe for decision. For the reasons set forth below, the Court should grant Fairchild's motions for summary judgment.

To the extent not disputed by Power Integrations, the facts set forth in Fairchild's motions must be accepted as true. *See Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d 506, 509 (S.D.N.Y. 2003) ("failure to respond or contest the facts set forth by the plaintiffs in their... statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed."). Should the Court accept additional briefing on the pending motions, such briefing should be limited to addressing legal issues relating to the undisputed facts. Power Integrations should not be permitted to submit additional "evidence" in a second attempt to create a dispute of fact.

III.    **CLAIM 1 OF THE '876 PATENT IS INVALID.**

Fairchild seeks summary judgment that claim 1 of the '876 Patent is anticipated by three separate pieces of prior art – the Martin Patent, the Wang reference, and the Habetler reference. Since there is no genuine dispute concerning this prior art, summary judgment is proper.

A.    **There Is No Genuine Dispute Concerning The Prior Art.**

For purposes of this motion, Fairchild accepts Power Integrations' characterization of the prior art. Thus, there is no dispute of fact. Figure 1 of the Martin patent is representative:[4]

---

[4]    The parties agree on the structure of the prior art. DI 233, p. 6 ("Wang places a ROM between his counter and AC, like the system discussed above with respect to the Martin patent.... [¶] Habetler places a ROM between his counter and digital to analog converter as with the two previously discussed references.")



There is no dispute that the prior art contains a digital to analog converter ("D/A") coupled to a

voltage controlled oscillator ("VCO") coupled to a counter ("Counter"). Likewise, there is no

dispute that the prior art includes a ROM or EPROM circuit between the counter and the digital

to analog converter. The only issue is a pure question of law – whether the counter "caus[es] the

digital to analog converter to adjust the control input" to the oscillator as required by claim 1.

The Court already resolved this issue when it rejected Power Integrations' argument that

intermediate circuit elements (like the EPROM in the prior art) "decouple" the counter and DAC:

> However, the Court's construction of the term "coupled" should not be read to
> imply or necessitate a direct connection, as the Court does not read the patent to
> require a direct connection or to preclude the use of intermediate circuit elements.

DI 231, pp. 21-22. Seeking to avoid summary judgment, Power Integrations attempts to

manufacture "disputes" of fact. In each case, the "dispute" is either irrelevant to Fairchild's

motion or a dispute of law that the Court should decide. Summary judgment is appropriate.

    1.    **Alleged Dispute # 1:** "the teaching of the reference[s], the purpose of the
ROM element, and its interrelationship with the counter and DAC."

There is no genuine dispute of fact concerning "the teaching of the reference[s], the

purpose of the ROM element, and its interrelationship with the counter and DAC." The

references are clear on their face and Power Integrations has submitted no evidence to contradict

them. Moreover, as a matter of law, the "purpose" of the prior art is irrelevant – what matters is

whether it meets every element of claim 1. *See Bristol-Myers Squibb Co. v. Ben Venue Labs.*,

246 F.3d 1368, 1378 (Fed. Cir. 2001) ("Thus, the question whether a reference 'teaches away'

from the invention is inapplicable to an anticipation analysis."). Since there is no dispute as to

the circuitry of the prior art, summary judgment is appropriate.

Power Integrations' alleges (without evidence) that the parties' technical experts disagree on certain questions of fact. As an initial matter, Power Integrations' expert's report is not evidence and cannot create a dispute of fact. *Fowle*, 868 F.2d at 67. Further, even were the Court to consider the report, the conclusory statement by Power Integrations' expert that the prior art does not anticipate the asserted claim cannot, as a matter of law, create a dispute of fact. *Collins, Inc.*, 216 F.3d at 1047. Finally, a review of the cited paragraphs of the inadmissible report demonstrates that the only issue the two technical experts dispute is the proper construction of "coupled," which the Court has decided. *See* DI 234, Exh. A, Blauschild Report, ¶¶ 139-40, 144-46, and 148-49. The technical experts are in complete agreement with regard to the operation and functionality of the circuits disclosed in the prior art.

      2.    **Alleged Dispute #2:** "Whether any of the counters disclosed in the art are 'coupled' to a digital to analog converter ("DAC")."

Power Integrations argues that there are "questions of fact [as to whether the counter is 'coupled' to the DAC] with respect to each of the three cited references, particularly in light of the references' insertion of a memory device, such as a 'ROM,' between a counter and a DAC." DI 233, p. 3. This is a question of law (not fact) and one that the Court has already resolved – intermediate circuits (such as a ROM) do not decouple the counter and the DAC. DI 231, p. 22.

      3.    **Alleged Dispute #3:** "Whether any of the counters causes a DAC to change the frequency of an oscillator."

Power Integrations argues that "there are underlying factual issues" whether "the use of the ROM's programming and output to control the DAC" precludes reading the prior art as disclosing a "counter causing the digital to analog converter to adjust the control input and to vary the switching frequency [of the oscillator]" as required by claim 1 of the '876 Patent. DI 233, p. 3. Again, there are no facts in dispute as the parties agree to the operation and functionality of the prior art circuits – (i) the output of the ROM or EPROM causes the DAC to adjust the control input of the oscillator, (ii) the output of the ROM or EPROM only changes

when the counter increments and (ii) the output of the ROM or EPROM changes every time the counter increments. Since the counter "caus[es] the digital to analog converter to adjust the control input" to the oscillator, it is "coupled" as required by claim 1.

4.     **Alleged Dispute # 4 (applies only to Martin and Habetler):** "Whether Martin and Habetler disclose a frequency jittering circuit."

        a.     **There is no dispute that the Wang reference discloses a "frequency jittering circuit."**

Power Integrations does not dispute that the Wang reference discloses a frequency jittering circuit. *See* DI 233, p. 6. Thus, summary judgment is appropriate.

        b.     **The undisputed evidence shows that the Martin patent discloses a "frequency jittering circuit."**

Power Integrations' conclusory assertions cannot contradict the undisputed evidence – the Martin patent expressly states that it describes "a circuit which reduces electromagnetic interference (EMI) by frequency modulation of power converters." DI 208, Exh. A, 1:66-68. Since the Court has construed "frequency jittering" as "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference," the Martin patent meets this element. DI 231, p. 18.

Power Integrations argues (without support) that since the Martin patent refers to "pseudo random" changes in switching frequency, it does not disclose "frequency jittering" as required by claim 1. DI 233, p. 5, 7. This is directly contradicted by the teachings of the Martin patent. DI 208, Exh. A, 1:66-68 (describing "a circuit which reduces electromagnetic interference (EMI) by frequency modulation of power converters").

The undisputed evidence shows that the Martin patent is not limited to reducing the "signature" as Power Integrations argues but, instead, also reduces "noise" (electromagnetic interference). DI 208, Exh. A, 1:55-56 ("the circuit uses spread spectrum techniques to reduce noise, ripple and signature on the output signal."). The Court stated that in order to achieve such reduction of EMI, the changes or variations in the frequency must necessarily be "controlled and predetermined." DI 231, p. 18. Thus, the Martin patent, which teaches reducing electromagnetic

interference, necessarily teaches "frequency jittering", as that term has been construed.[5]

      c.     **The undisputed evidence shows that the Habetler reference discloses a "frequency jittering circuit."**

While Habetler also reduces acoustical noise, the circuit it employs is substantially identical to that of the Martin patent and the Wang reference and expressly teaches that "The instantaneous switching frequency variation is small and can be predetermined." DI 208, Exh. C, p. 362. Thus, when Habetler teaches varying the switching frequency of a switch mode power supply about a target frequency, it will necessarily reduce electromagnetic interference. Moreover, although the variation is "random", it is clearly not uncontrolled as Habetler describes how it "can be constrained within a specified range of frequencies." *Id.* p. 358, col. 1.

**B.**     **The Court Should Grant Summary Judgment That Claim 1 Is Invalid.**

Fairchild satisfied its burden of showing by clear and convincing evidence that the Martin, Wang, and Habetler references anticipate Claim 1 of the '876 patent. DI 209. Thus, the burden shifted to Power Integrations to produce evidence refuting Fairchild's claim. *Enzo*, 424 F.3d at 1284. As Power Integrations is unable to meet its burden, Fairchild respectfully requests that the Court grant summary judgment in its favor of invalidity of Claim 1 of the '876 patent.

**IV.**     **FAIRCHILD DOES NOT INFRINGE CLAIMS 17-19 OF THE '876 PATENT.**

There are no facts in dispute concerning whether the accused Fairchild devices infringe claims 17-19 of the '876 Patent. *See* DI 205. For purposes of this motion, Fairchild will accept Power Integrations' description of the operation of the accused devices:

- Fairchild's "FSD210, FSDL0365RN, and FSDL0365RNB are representative"

---

[5]     The fact that the frequency in Martin may be varied in a pseudo random pattern does not make it any less controlled and predetermined. The pseudo random pattern of Martin is *stored* in an EPROM, ROM or other storage device and is thus necessarily predetermined. DI 208, Exh. A, 2:23-29. Moreover, the patent discloses use of a *"prescribed* signal pattern" (i.e., predetermined) that is not "pseudo random." *Id.* Exh. A, 4:5-7, 43-44 (compare independent claim 1, "including storage means for storing a prescribed signal pattern which is selectively supplied to said VCO means" with dependent claim 8 "wherein said signal pattern comprises a pseudo-random code"). Power Integrations cannot seriously argue that the frequency variations are not controlled, as the "prescribed signal pattern" is "selectively supplied" to the oscillator by a control means. *Id.* Exh. A, 4:5-10 ("control means comprising counter means for supplying signals to said storage means thereby to selectively address said storage means to supply said signal pattern to said VCO means.").

of the accused Fairchild devices.  DI 233, p. 8.

- Rather than combining previously generated voltages, Fairchild's FSD210, FSDL0365RN, and FSDL0365RNB devices generate the secondary voltage "in series" with the primary voltage.  DI 234, Exh. D, p. 30.

- There is no evidence that the accused devices first generate a primary voltage and a secondary voltage and then combine these voltages together.

Thus, Fairchild's motion hinges on a single legal question – whether claim 17 requires first generating primary and secondary voltages and then combining these voltages.

By its plain language, claim 17 has three separate and distinct steps – (i) generating a primary voltage, (ii) generating a secondary voltage, and (iii) combining together these two previously generated voltages.  As a matter of law, the "combining" step must occur *after* the primary and secondary voltages are generated (as, otherwise, there is nothing to combine).  Since there is no dispute that the accused devices do not first generate "uncombined" primary and secondary voltages and then combine these voltages, the Court should grant summary judgment.

### A.    As A Matter Of Law, Claims 17-19 Require First Generating Primary And Secondary Voltages And Then "Combining" These Voltages.

The only issue is a pure question of law – whether the method of claim 17 requires that the primary and secondary voltages be generated prior to the "combining" step.[6]

Claims 17-19 recite a method with three steps – generating a primary voltage, generating a secondary voltage, and combining the two voltages together.  The first two steps (generating the primary and secondary voltages) could proceed in any order.  The logic and grammar of Claim 17 requires, however, that the final step ("combining the secondary voltage with the primary voltage") must occur *after* the primary and secondary voltages have been generated.  *See Loral Fairchild Corp. v. Sony Electronics Corp.*, 181 F.3d 1313, 1321-22 (Fed. Cir. 1999) (logic and grammar of claims required performance of claimed steps in particular order).

---

[6]     Claims 18 and 19 depend from claim 17.  If claim 17 is not infringed, claims 18 and 19 cannot be infringed.

10

This is consistent with the Court's claim construction. The Court determined that the "primary voltage" is a "base or initial voltage" while the "secondary voltage" is "a subsequent or additional voltage". It is clear from both the Court's construction and the language of claim 17 that these two voltages must first exist separately in order to be capable of being combined. Since the Court construed "combining" to mean "adding together", the recited step of "combining the secondary voltage with the primary voltage" simply means "adding together the subsequent or additional voltage with the base or initial voltage."[7]

As a matter of law, claim 17 requires generating (uncombined) primary and secondary voltages and then combining these voltages together. *Combined Sys. v. Def. Tech. Corp. of America*, 350 F.3d 1207, 1211-1212 (Fed. Cir. 2003) ("inserting said formed folds... into said projectile compartment" required formation of folds *before* insertion step.).

**B.    There Is No Dispute Concerning The Operation Of The Accused Devices.**

Fairchild submitted evidence that its devices do not perform these steps. Since Power Integrations cites no evidence that the accused devices first generate primary and secondary voltages and then combine these separate voltages together, summary judgment is proper:

> Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.

*Novartis*, 271 F.3d at 1046.

---

[7]    Power Integrations accuses Fairchild of rearguing whether the primary and secondary voltages are generated by separate *sources*. DI 233, pp. 7-8 and n. 3. This simply is not correct. Fairchild respectfully disagrees with the Court's construction concerning the voltage sources, but accepts it for purposes of this motion. There is no dispute that the "primary voltage" must be separate and distinct from the "secondary voltage" before the "combining" step. Indeed, were this not the case, there would be nothing to combine.

There is no dispute of fact. Pursuant to Federal Rule of Civil Procedure 56(e), Fairchild submitted the sworn affidavit of Dr. Paul Horowitz, who explained that "at no point in time during the operation of these [accused] devices do primary and secondary voltages exist in an uncombined state." DI 206, Horowitz Decl., ¶ 2. Power Integrations did not cite any admissible evidence contesting the operation of the accused devices. Instead, Power Integrations merely referred to the inadmissible report of its own expert, Mr. Blauschild. DI 233, p. 9. As a matter of law, Mr. Blauschild's report is not evidence and cannot give rise to a dispute of fact. *Fowle*, 868 F.2d at 67; *Carson Harbor*, 2003 U.S. Dist. LEXIS 14438 at *23.

Even if the Court were to consider Mr. Blauschild's report, *he does not disagree with Dr. Horowitz about the operation of the accused devices.* Indeed, Mr. Blauschild never suggests that the accused devices first generate primary and secondary voltages in two separate and distinct steps and then combine these voltages together, as required by claim 17. *See* DI 234, Exh. D, pp. 27-30. Instead, Mr. Blauschild, at most, makes the unsupported and conclusory statement that the Fairchild devices infringe the asserted claims. As a matter of law, this does not constitute a genuine dispute of fact. *Arthur A. Collins, Inc.*, 216 F.3d at 1047.

Thus, there is no dispute that the accused devices do not first generate the required voltages and then combine these previously generated voltages together. Since, as a matter of law, claim 17 requires this step, summary judgment of non-infringement is appropriate. "Under modern summary judgment law, a patentee who fails to provide probative evidence of infringement runs the risk of being peremptorily nonsuited." *Novartis*, 271 F.3d at 1050.

12

**C.     Power Integrations Admits That Whether Fairchild Infringes Under The Doctrine Of Equivalents Is A Question Of Law.**

**1.     As a matter of law, prosecution history estoppel precludes Power Integrations from arguing that Fairchild infringes claims 17-19 under the doctrine of equivalents.**

Prosecution history estoppel bars Power Integrations from arguing that the accused devices infringe under the doctrine of equivalents. Power Integrations concedes that this is a question of law. DI 233, p. 9 ("the meaning and import of prosecution history arguments can be amendable to resolution as a matter of law...."). Thus, summary judgment is appropriate.

There is no dispute concerning the prosecution history of the '876 Patent. Power Integrations' original claims did not require the step of "combining" the primary and secondary voltages. DI 205, Exh. C, '876 Pros. History, FCS0000043. Instead, the originally filed claim merely recited "supplying" the primary and secondary voltages (which may or may not have been combined) to the oscillator. *Id.*

Power Integrations' original claim 17 was rejected as invalid in light of the prior art. DI 205, Exh. C, '876 Pros. History, FCS000079-80. To overcome this rejection, Power Integrations amended its claims to add the "combining" step (*id.*, FCS0000091) and then argued that the prior art "fails to disclose teach or suggest" this combining limitation. *Id.*, FCS0000095-96.

Thus, there is no dispute that Power Integrations (i) narrowed the literal scope of its claims by amending them to require "combining the secondary voltage with the primary voltage..." and (ii) did so for a substantial reason related to patentability – to overcome the prior art. Therefore, the only question is the legal effect of this prosecution history.

As a matter of law, Power Integrations surrendered all the territory between its original claim (which did not require "combining" the primary and secondary voltages) and its amended claims (which added the "combining" step). *See Festo Corp. v. Shoketsu Kinzoku Kogyo*

13

*Kabushiki Co.*, 535 U.S. 722, 740 (U.S. 2002); *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356-57 (Fed. Cir. 2003). Consequently, Power Integrations cannot now argue that the accused Fairchild devices – which do not perform the step of "combining" the primary and secondary voltages together – infringe under the doctrine of equivalents.

> ### 2. Power Integrations has raised no dispute of fact as to whether Fairchild infringes claims 17-19 under the doctrine of equivalents.

Power Integrations bears the burden of proving infringement. Since Power Integrations has failed to identify any facts showing that the accused devices infringe claim 17 under the doctrine of equivalents, Fairchild is entitled to summary judgment of non-infringement. *Celotex*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Power Integrations claims that its expert, Mr. Blauschild, "specifically addressed… infringement by equivalents for claims 17-19 of the '876 patent" in pages 27-32 of his report. DI 233, p. 9. This is simply not true. There is no allegation that Fairchild infringes claims 17-19 under the doctrine of equivalents on pages 27-32 or anywhere else in Mr. Blauschild's report.[8] *See* DI 234, Exh. D, pp. 27-32. Since Power Integrations has presented no evidence that Fairchild infringes pursuant to the doctrine of equivalents, Fairchild is entitled to summary judgment of non-infringement. *Celotex*, 477 U.S. at 322.

For the foregoing reasons, Fairchild respectfully requests that the Court grant summary judgment that the accused Fairchild devices do not infringe claims 17-19 of the '876 Patent either literally or under the doctrine of equivalents.

---

[8]     The only discussion of infringement of the '876 Patent under the doctrine of equivalents occurs on page 33 of Mr. Blauschild's report. That discussion is entirely focused on whether Fairchild infringes *claim 1* of the '876 Patent (which requires an oscillator, a counter, and a digital-to-analog converter) under the doctrine of equivalents. Mr. Blauschild never opined that Fairchild infringed claims 17-19 under the doctrine of equivalents.

## V.     FAIRCHILD DOES NOT INFRINGE THE '075 PATENT.

Fairchild sought summary judgment that its accused devices do not infringe the '075

Patent. DI 211. In response, Power Integrations conceded that Fairchild does not infringe under

the doctrine of equivalents, but argues that Fairchild literally infringes the asserted claims.

Power Integrations' admission greatly simplifies the issues. The Court need not

determine the scope of Power Integrations' disavowal of "DMOS" devices. Instead, the only

issue is whether the accused Fairchild devices literally meet every element of the asserted claims.

The asserted claims all require the formation of source and drain pockets "within the

substrate." In its Motion, Fairchild provided evidence showing that its accused devices do not

meet this element. In its "Counterstatement", Power Integrations fails to identify any admissible

evidence that the accused devices do meet this element. Thus, there is no genuine dispute of fact

and summary judgment of non-infringement is appropriate.

### A.     The Parties Agree That Summary Judgment That Fairchild Does Not Infringe Under The Doctrine Of Equivalents Is Proper.

Fairchild sought summary judgment that its accused devices do not infringe the asserted

claims either literally or under the doctrine of equivalents. Power Integrations now concedes that

there is no infringement under the doctrine of equivalents. "Power Integrations is not even

asserting that Fairchild infringes the '075 by equivalents." DI 233, p. 11. Thus, the Court should

grant partial summary that Fairchild does not infringe under the doctrine of equivalents.

Since there is no allegation that Fairchild infringes under the doctrine of equivalents, the

issue of what was meant by "DMOS" and whether Fairchild's accused devices are, in fact,

"DMOS" devices is irrelevant to the pending motion:

> Because DMOS is not a claim term, the Court concludes that its meaning is not
> properly considered in the context of claim construction. Accordingly, the Court
> declines to provide a construction for the term "DMOS" in the context of its
> *Markman* rulings and will defer construction of this term until such time as the
> Court is presented with equivalence and/or estoppel issues involving this term.

DI 231, pp. 8-9. Since Power Integrations concedes that there is no infringement under the doctrine of equivalents, prosecution history estoppel – and the issue of whether Power Integrations disclaimed "DMOS" devices – is irrelevant to Fairchild's motion. The only issue is whether the accused Fairchild devices literally meet every element of each asserted claim.

**B.    There Is No Genuine Dispute That Fairchild Does Not Literally Infringe.**

The claims of the '075 Patent all require that the source and drain pockets be formed "within the substrate."

REDACTED

REDACTED

DI 211, Exh. L, p. 9, FCS0176612; Exh. C, Shields' Opening Expert Report, p. 12, Exh. E; Exh. B, Jeon Depo. vol. II, 67:21-25.

REDACTED

REDACTED

Since Power Integrations is unable to provide any admissible evidence that the accused devices meet this element, summary judgment is appropriate. *Novartis*, 271 F.3d at 1046. Unable to cite evidence that the accused devices incorporate source and drain pockets "within the substrate" as required by the claims of the '075 Patent, Power Integrations chooses to dispute what is meant by "DMOS". As set forth above, this is irrelevant to the issue of literal infringement raised in Fairchild's motion and does not create a genuine dispute of material fact.

**1.    Alleged Dispute #1: "What 'DMOS' meant to one of ordinary skill at the time the '075 patent was prosecuted and whether the accused Fairchild parts are, in fact, DMOS devices within that meaning."**

The issue of whether the accused Fairchild products are DMOS is not material to literal infringement. Regardless of whether the accused devices are "DMOS", as that term would have been understood by one of ordinary skill in the art, they do not include source and drain pockets "within the substrate" as required by the asserted claims. Thus, as a matter of law, Fairchild

16

cannot literally infringe claims 1 and 5 of the '075 Patent.[9]

      **2.**    **Alleged Dispute #2: "What one of ordinary skill would understand from a review of the prosecution history was being disclaimed in the context of the discussion of DMOS and the Colak reference."**

This alleged dispute would be material only if Power Integrations were seeking to expand its claims under the doctrine of equivalents, which it is not. Power Integrations undisputedly narrowed its claims during prosecution by requiring source and drain pockets "within the substrate." As a matter of law, the doctrine of prosecution history estoppel prevents Power Integrations from expanding its claims to recover this relinquished scope. Such questions, however, are irrelevant to the issue of literal infringement that is before the Court.[10]

      **3.**    **Alleged Dispute #3: "Further factual issues are raised by Power Integrations' contention that Fairchild does not practice the disavowed Colak structure."**

Whether Fairchild practices the Colak structure is not in dispute:     REDACTED

            REDACTED          Whether Fairchild practices the Colak patent is irrelevant, however, to whether the accused Fairchild devices literally infringe the asserted claims of the '075 Patent.

---

[9]     Power Integrations has also failed to establish a genuine issue of fact regarding the meaning of "DMOS" and whether Fairchild's products are DMOS. Ignoring the intrinsic evidence, including its own statements during prosecution, as well as its inventor's testimony, Power Integrations attempts to create a factual dispute by submitting an unverified expert report. *See* DI 234, Exh. E. The two paragraphs of that report upon which Power Integrations relies cite no support whatsoever for its "precise definition" of DMOS. As a matter of law, such conclusory and inadmissible evidence is insufficient to defeat Fairchild's motion for summary judgment. Fed. R. Civ. P. 56(e); *see Arthur A. Collins, Inc.*, 216 F.3d at 1047.

[10]     Moreover, Power Integrations fails to create a genuine factual issue that could preclude summary judgment, again submitting only an unverified, conclusory statement by its expert. This is insufficient to overcome the wealth of intrinsic and extrinsic evidence presented by Fairchild on this issue. *See Novartis*, 271 F.3d at 1051. That evidence supports but one conclusion: one of ordinary skill would have understood that by amending its claims to require source and drain regions "within the substrate," Power Integrations was relinquishing coverage of all DMOS structures in which the source region is formed within a channel region rather than directly within the substrate. The public was entitled to rely on Power Integrations' disclaimer and it is, thus, above dispute.

17

4.    **Alleged Dispute #4: "What the Wakaumi [Sze and Parpia] references teach[] one of ordinary skill in the art."**

For purposes of this motion, the Wakaumi, Sze and Parpia references are not material to literal infringement. As Power Integrations is not seeking to expand its claims under the doctrine of equivalents, any dispute regarding Wakaumi, Sze and Parpia is irrelevant to whether the accused devices incorporate source and drain regions "within the substrate."[11]

C.    **The Court Should Grant Summary Judgment Of No Literal Infringement.**

The claims of the '075 Patent require source and drain pockets "within the substrate." As set forth in Fairchild's Motion, none of the accused Fairchild devices form such pockets "within the substrate." Power Integrations has not disputed this fact. Thus, as a matter of law, the Court should grant Fairchild's motion of summary judgment of non-infringement.

VI.    **THE '851 AND '366 PATENTS ARE UNENFORCEABLE DUE TO POWER INTEGRATIONS' INEQUITABLE CONDUCT.**

Fairchild sought summary judgment that the '851 and '366 Patents are unenforceable and that the asserted claims are invalid. DI 213. After Fairchild filed its motion, the Court issued its claim construction order. DI 232. The Court's claim construction renders moot Fairchild's motion with respect to the validity of the asserted claims.[12] It does not, however, preclude summary judgment that the patents are unenforceable since, as a matter of law, "a misstatement or omission may be material even if disclosure would not have rendered the invention unpatentable." *Digital Control, Inc. v. Merlin Tech. Inc.*, 437 F.3d 1309, 1318 (Fed. Cir. 2006).

---

[11]    Power Integrations also has not demonstrated any genuine factual issue. To begin, with respect to Wakaumi, Power Integrations' own inventor, Dr. Eklund, recognized prior to filing the application for the '075 Patent that Wakaumi described a prior art DMOS device. This is not in dispute, nor is the content of the document in dispute. Power Integrations likewise has not shown any disputed fact regarding the Sze reference. Power Integrations also has not shown that there is any material dispute regarding the content of the Parpia reference.

[12]    To be clear, Fairchild will prove at trial that these claims are invalid in light of the prior art, including prior art raised in Fairchild's motion for summary judgment. Fairchild only withdraws its motion for summary judgment because that motion did not expressly address the construction adopted by the Court.

**A.    There Is No Genuine Dispute Of Material Fact.**

Power Integrations has failed to identify any genuine dispute of material fact concerning the unenforceablity of Power Integrations' '851 and '366 Patents.  As set forth below, each of Power Integrations' alleged "factual disputes" is either irrelevant to Fairchild's motion or a question of law.  In either case, summary judgment is appropriate.

1.    **There is no genuine dispute concerning the materiality of Power Integrations' affirmative misstatements and withheld prior art.**

Fairchild submitted evidence that Power Integrations made a material misrepresentation to the Patent Office and intentionally withheld at least four separate pieces of material prior art:

- Power Integrations :
                      **REDACTED**


- Power Integrations' SMP3 was material to the '851 and '366 Patents.
- Power Integrations' SMP211 was material to the '851 and '366 Patents.
- Power Integrations' SMP240 was material to the '851 and '366 Patents.
- Power Integrations' SMP260 was material to the '851 and '366 Patents.

Materiality is not a high standard.  "[A] party alleging inequitable conduct need only prove a 'threshold level' of materiality in order to proceed to the second 'balancing' portion of the inequitable conduct inquiry...." *Digital Control*, 427 F.3d at 1316.  Since information is material "'where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent,'" there is no genuine dispute of fact that Fairchild has met this threshold. *Id.*, 427 F.3d at 1315.

a.    **Alleged Dispute #1: "The materiality of Power Integrations' misrepresentations concerning Prior Art Figure 1."**

During prosecution of the '851 Patent, Power Integrations committed inequitable conduct by making an affirmative representation that Power Integrations now admits was not entirely

true. Specifically, Power Integrations stated that the prior art "fails to disclose, teach or suggest such limitations" as "[i] *an oscillator that provides a maximum duty cycle signal* and [ii] an oscillation signal having a frequency range that is varied according to a frequency variation signal." DI 213, Exh. C, '851 Pros. History, FCS0000449 (emphasis added).

Power Integrations admits that its                    REDACTED

REDACTED                         DI 213, Exh. E, PI's Resp. to RFA Nos. 46 and 47.

There is no dispute that Power Integrations' statement to the Examiner was at least half false.

Seeking to excuse its misrepresentation, Power Integrations' attorneys make two arguments — (i) that the withheld prior art was "cumulative" of other art before the Examiner and (ii) that the patents would have been allowed even without Power Integrations misconduct. Neither argument raises a genuine issue of material fact.

(i)    The withheld prior art was not "cumulative".

Power Integrations has provided absolutely no evidence that the withheld prior art was "cumulative" of art before the Examiner. Rather than identify any particular reference before the Examiner that disclosed a prior art PWM device with an oscillator that generated a maximum duty cycle signal, Power Integrations relies on the deposition testimony of its CEO, Balu Balakrishnan.

REDACTED

DI 234, Exh. J, Balakrishnan Depo., 839:11-18. The Federal Circuit has determined that, as a matter of law, "a genuine issue of material fact is not raised by the submission of 'merely conclusory statements or completely insupportable, specious, or conflicting explanations or excuses.'" *Digital Control*, 437 F.3d at 1314.

Not only is there no evidence that the withheld prior art was "cumulative", the evidence affirmatively shows that it was not. Having reviewed all of the prior art submitted by Power

20

Integrations, the Examiner specifically and unambiguously determined that none of those references even suggested an oscillator for generating a maximum duty cycle signal:

> The prior Art of record does not appear to disclose or suggest a PWM switch comprising *an oscillator for generating a maximum duty cycle signal* and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

DI 213, Exh. C, '851 Pros. History, FCS0000440 (emphasis added).

There is no evidence – and, thus, no dispute of fact – suggesting that the withheld prior art was cumulative of art before the Examiner.

### (ii) Power Integrations' misstatement is material.

Power Integrations also argues that since it provided two reasons for allowance of the pending claims, the fact that one of these reasons was false is not material.[13] Indeed, Power Integrations' attorneys ask "where the alleged duty to correct part of an examiner's comment, especially when you agree with the whole, comes from." *Id.*, p. 16. The answer, according to the Federal Circuit, is the duty of candor Power Integrations owed the Patent Office.

In *Hoffmann-La Roche, Inc. v. Promega Corp.*, the Federal Circuit confronted the legal question raised by Power Integrations. 323 F.3d 1354, 1367-68 (Fed. Cir. 2003). Like Power Integrations, the inventors in that case made two alternative arguments for allowability of their pending patent – (i) that the inventor's enzyme was more pure than the prior art and (ii) that the claimed enzyme was distinct from the prior art. *Id.* Once it was revealed that the applicants had withheld information relevant to their "purity" contention (just like Power Integrations withheld prior art showing an oscillator that generates a maximum duty cycle signal), the patentee argued that the Examiner did not have to rely upon the "purity" argument and could have allowed the

---

[13]     Power Integrations incorrectly applies an objective "but for" standard of materiality (arguing that the misrepresentation was not so material that the patent would not have otherwise issued). The Federal Circuit has recently held that, as a matter of law, materiality is broader than that and need not have rendered the invention

21

claims based on the alternative argument. The district court rejected this argument:

> Since Cetus argued that the patent could issue based on the asserted purity limitations, a reasonable examiner would have considered important information which indicated that Cetus had overstated the level of purity of the claimed enzyme.

*Id.*, 323 F.3d at 1368. The Federal Circuit upheld and expanded the district court's decision:

> The fact that the examiner did not have to rely on the purity representations in issuing the patent is not inconsistent with a finding of materiality. Although the inventors' statements regarding purity were not the principal focus of the office action response, they were clearly an important aspect of it. Under the circumstances, a reasonable examiner would have wanted to know that the patentability argument based on purity was unsupported by the experimental resulted cited by the inventors.

*Id.*, 323 F.3d at 1368 (citations omitted).

Thus, as a matter of law, information contradicting Power Integrations' affirmative misrepresentation that the prior art "fails to disclose, teach or suggest" an oscillator that provides a maximum duty cycle signal is material. Indeed, the Federal Circuit noted that "the submission of a false affidavit may be determined to be 'inherently material.'" *Digital Control*, 437 F.3d at 1318.

        (iii)    **Power Integrations does not dispute that the oscillator shown in the prior art SMP211 datasheet is substantially identical to Power Integrations' alleged invention.**

As set forth in Fairchild's motion, the datasheet for Power Integrations' prior art SMP211 device shows essentially the same oscillator as that depicted in Figures 3, 6, and 9 of Power Integrations' later '851 and '366 Patents. DI 213, pp. 8-10; *compare id.*, Exh. I, SMP211 Datasheet, FCS1685479 and, Exh. A, '851 Patent, Figures 3, 6, and 9. The '851 and '366 Patents describe these figures as preferred and alternative embodiments of Power Integrations' alleged invention. *See* DI 213, Exh. A, '851 Patent, 4:43-61.

Power Integrations distinguished the prior art, at least in part, based on this oscillator. Clearly, there is a substantial likelihood that a reasonable Examiner would have found prior art

---

unpatentable. *Digital Control*, 437 F.3d at 1318.

(such as Power Integrations' SMP211 datasheet) that shows this same oscillator "important in deciding whether to allow the application to issue as a patent." As a matter of law, Power Integrations' SMP211 datasheet and devices are material. *Digital Control*, 427 F.3d at 1315.

Power Integrations did not raise any dispute concerning these facts.

        b.     <u>**Alleged Dispute #2: "The materiality of Power Integrations' SMP3 device."**</u>

The undisputed evidence shows that Power Integrations' prior art SMP3 device contains an oscillator that generates a maximum duty cycle signal. *See* DI 213, Exh. H, SMP3 datasheet Fig. 3, FCS1688150. Thus, the SMP3 was material to the prosecution of the '851 and '366 Patents for the reasons set forth above.

        c.     <u>**Alleged Dispute #3: "The materiality of Power Integrations' SMP240 and SMP260 devices."**</u>

Leif Lund – an inventor of the '851 and '366 Patents and the designer of Power Integrations' SMP240 and SMP260 devices – testified that       REDACTED

             REDACTED          *See* DI 213, pp. 11-12 and Exh. F, Lund Depo., 35-37 and 206. Thus, there is no genuine dispute that Power Integrations' SMP240 and SMP260 devices are material and should have been provided to the Examiner during the prosecution of the '851 and '366 Patents. Indeed, Mr. Lund testified that

                    REDACTED

   REDACTED

             DI 213, Exh. F, Lund Depo., 75:17-22.

Power Integrations cites no evidence to contradict the sworn testimony of its own inventor that        REDACTED

Instead, Power Integrations' attorneys speculate that Mr. Lund may be wrong and that the prior

       REDACTED        DI 233, p. 16. The "evidence"

upon which Power Integrations relies, however, simply does not support their attorney argument. First, Mr. Blauschild's report is inadmissible hearsay and, as a matter of law, cannot constitute a genuine dispute of fact. *Fowle*, 868 F.2d at 67. Second, the deposition testimony cited by Power Integrations does not support the arguments made by Power Integrations' attorneys. *See* DI 234, Exh. C at 111:17-112:13 and Exh. K at 38:7-40:23. The undisputed evidence is the testimony of Power Integrations' own inventor, who designed the prior art SMP240 and SMP260 devices:

**REDACTED**

DI 213, Exh. F, Lund Depo., 35:7-13.

> d.   **Alleged Dispute #4 – "Whether Power Integrations intentionally made material misstatements and withheld material prior art.**

The Federal Circuit has recently confirmed that summary judgment that an applicant intentionally withheld material information is appropriate:

> Summary judgment is appropriate on the issue of intent if there has been a failure to supply highly material information and if the summary judgment record establishes that (1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding.

*Ferring B.V. v. Barr Labs., Inc.* 437 F.3d 1181, 1191 (Fed. Cir. 2006). There is no genuine dispute that Power Integrations' inventors (i) knew that Power Integrations' prior art devices incorporated an oscillator that generated a maximum duty cycle signal and (ii) knew or should have known of the materiality of this information (since the Examiner specifically indicated his mistaken belief that the prior art did not show such an oscillator). Finally, Power Integrations

24

has provided absolutely no evidence of any explanation – credible or otherwise – for withholding this information.  Thus, the Court should grant summary judgment on the issue of intent.

>    (i)    **There is no genuine dispute that Power Integrations knew of prior art PWM devices incorporating an oscillator that generated a maximum duty cycle signal.**

The undisputed evidence shows that the inventors knew of Power Integrations' SMP3, SMP211, SMP240, and SMP260 devices during the prosecution of the '851 and '366 Patents:

- Mr. Balakrishnan managed the Power Integrations group that designed the SMP211.  (DI 213, Exh. G, Balakrishnan Depo., 96:1-4).

- Mr. Lund .       REDACTED       (DI 213, Exh. F, Lund Depo., 88:10-24).

- Mr. Lund       (DI 213, Exh. F, Lund Depo., 19:5-11).

- Mr. Djenguerian worked on Power Integrations' prior art SMP3 device before filing the application for the '851 Patent.  (DI 234, Exh. L, 113:13-114:6).

Indeed, Mr. Balakrishnan testified that,

<div align="center">REDACTED</div>

'851 and '366 Patents.[14]  DI 234, Exh. J, Balakrishnan Depo., 832:7-18.

>    (ii)    **There is no genuine dispute that Power Integrations knew or should have known of the materiality of the withheld information.**

Unable to cite any evidence that Power Integrations' inventors and patent attorneys were unaware of PWM devices with oscillators that generate maximum duty cycle signals, Power Integrations' attorneys speculate that "a finder of fact could reasonably conclude that the inventors had forgotten the details that Fairchild now says are important and, therefore, were not 'aware' of them at the relevant time." DI 233, p. 16.  As an initial matter, Power Integrations' attorneys' argument is flatly contradicted by the       REDACTED

REDACTED     Moreover, the Federal Circuit has unambiguously held that, as a matter of law such

---

[14]    While the Examiner was clearly unaware of such art, the fact that Mr. Balakrishnan believes that it was

attorney argument cannot create a dispute of fact:

> On summary judgment, in order to create a genuine issue, the appellants bore the burden of submitting an affidavit from [the inventor] to contradict movant's evidence of intent if they believed that testimony from [the inventor] would establish credible evidence for the withholding.

*Ferring*, 437 F.3d at 1192.

There is no dispute that the Examiner specifically indicated that, in his opinion, the "prior art of record does not appear to disclose or suggest a PWM switch comprising *an oscillator for generating a maximum duty cycle signal* and a singnal [sic] with a frequency range dependant on a frequency variation circuit…." DI 213, Exh. C, '851 Pros. History, FCS0000440 (emphasis added). Thus, Power Integrations knew – or, at a minimum, should have known – of the materiality of prior art (including Power Integrations' SMP3, SMP211, SMP240, SMP260 devices) that disclosed such an oscillator. Indeed, Mr. Balakrishnan testified that, **REDACTED**

**REDACTED**

DI 234, Exh. J, Balakrishnan Depo., 837:12-22.

Having chosen not to submit any evidence that the applicants were unaware of the prior art, Power Integrations cannot avoid summary judgment by speculating that the jury may ignore the undisputed evidence.

### (iii) Power Integrations has no credible explanation for why it withheld material prior art and information.

Power Integrations has submitted absolutely no evidence explaining why its inventors withheld material information from the Examiner. Instead, Power Integrations' attorneys speculate that the withholding may not have been intentional. DI 233, p. 16 ("a finder of fact could reasonably conclude that the inventors had forgotten the details that Fairchild now says are important…"). As a matter of law, such attorney argument does not constitute a dispute of fact:

---

well known proves that he was aware of it.

> On summary judgment, in order to create a genuine issue, the appellants bore the burden of submitting an affidavit from [the inventor] to contradict movant's evidence of intent if they believed that testimony from [the inventor] would establish credible evidence for the withholding. Appellants cannot create a genuine issue by suggesting that [the inventor] might have proffered favorable evidence at trial. As we said in *Paragon*, when the movant has 'made a prima facia case of inequitable conduct by satisfying both elements thereof, the burden shifts to [the nonmovant] to come forward with evidence which would require reassessment of the validity of the defense.

*Ferring*, 437 F.3d at 1192 (citations omitted). Thus, Fairchild is entitled to partial summary judgment on the issue of intent. *Ferring*, 437 F.3d at 1191.

**B.    The Court Should Grant Summary Judgment That The '851 And '366 Patents Are Unenforceable Due To Power Integrations' Inequitable Conduct.**

There is no genuine dispute that Power Integrations' prior art SMP3, SMP211, SMP240, and SMP260 devices were material to the prosecution of the '851 and '366 Patents. Similarly, there is no genuine dispute that, at the time the '851 and '366 Patents were being prosecuted,

<div align="center">REDACTED</div>

it included an oscillator that generated a maximum duty cycle signal. Finally, Power Integrations has failed to provide any evidence supporting a credible explanation for its withholding of material prior art and its affirmative misrepresentations about this art to the Patent Office.

The only issue is one of law – whether the '851 and '366 Patents are unenforceable due to Power Integrations' inequitable conduct. The Court should grant summary judgment since the withheld prior art and affirmative misrepresentations would clearly have been of interest to the Patent Office. Indeed, the Patent Office had already rejected Power Integrations' claims as invalid in light of the prior art. To avoid this rejection, Power Integrations amended its claims and argued, at least in part, that they should be allowed since the prior art "fails to disclose, teach or suggest such limitations" an oscillator that generates a maximum duty cycle signal. DI 213, Exh. C, '851 Pros. History, FCS0000449. Power Integrations admits that this was not true. The '851 and '366 Patents should be held unenforceable due to Power Integrations' misconduct.

For the foregoing reasons, Fairchild respectfully requests that the Court grant summary judgment that the '851 and '366 Patents are unenforceable.

<div align="center">27</div>

## VII.  CLAIMS 1 AND 5 OF THE '075 PATENT ARE INVALID.

As set forth in Fairchild's motion for summary judgment, claims 1 and 5 of the '075 Patent are invalid in light of U.S. Patent No. 4,823,173 (the "'173 Patent"). DI 216. Because Power Integrations has not identified a genuine dispute of material fact and because Power Integrations is wrong with respect to the legal requirements of anticipation and corroboration, summary judgment is appropriate.

### A.  There Are No Genuine Issues Of Material Fact Regarding Anticipation Of Claim 1 By The '173 Patent.

**Alleged Dispute #1:** "whether the source and drain contacts limitations of claim 1 are disclosed in the '173 patent."

Fairchild presented evidence that the '173 Patent expressly taught each element of claim 1. Power Integrations attempts to manufacture an issue of fact by falsely stating that Fairchild concedes that the '173 patent does not expressly teach the contact limitations. Power Integrations misleadingly quotes statements from Fairchild's opening brief regarding the fact that *Power Integrations' own expert admitted* that every element except the source and drain contacts was present in the '173 patent. Fairchild was simply pointing out to the Court that the contacts were the only elements Power Integrations claimed were at issue, and thus the only elements that needed to be addressed.

In its opening brief, Fairchild established that the contact elements were, in fact, disclosed in the '173 Patent. To begin, the drain contact is disclosed in column 1 of the '173 Patent. Exh. A, '173 col. 1:21-23 ("drain contact $12_a$ and body contact $11_c$ are shown for completeness"). Both source and drain contacts are also explicitly disclosed in U.S. Patent No. 4,283,236 ("236 Patent"), which was incorporated by reference into the '173 Patent. Exh. A, '173 Patent, Col. 1, line 46-49; Exh. N, '236 Patent, col. 4:41-45, Fig. 7. As explained in

28

Fairchild's opening brief, as a matter of law the '236 Patent must be treated as though its entire content is included on the face of the '173 Patent. DI 216 at 19-20. Fairchild's expert further opined that those of ordinary skill would have understood the reference to source "pocket" in the '173 Patent to include a contact. Gwozdz Decl. ¶¶ 2-4.

The only "evidence" Power Integrations submits to allegedly refute what is shown in the '173 specification is a vague and conclusory deposition statement by its expert, Mr. Shields, that the contacts were missing. Power Integrations cannot create a genuine issue of fact simply by having its expert overlook or deny what is plainly shown in the '173 Patent. Notably, Mr. Shields has not submitted an affidavit on this issue. Power Integrations also makes no attempt in its brief to dispute the express disclosure of the contacts incorporated into the '173 Patent through the '236 Patent disclosure, but rather states that it "is not determinative on the issue of inherency." The issue of inherency, however, is immaterial in light of the express disclosure of the contact limitations, and any discussion of inherency cannot create a material issue of fact.

Power Integrations' argument that the intrinsic '236 Patent must be ignored because Fairchild did not direct its attention to this evidence prior to filing its motion is telling: Power Integrations cannot dispute the express disclosure of the allegedly "missing" contact elements and, hence, is reduced to arguing that the evidence should be disregarded. Fairchild is aware of no law that would permit the Court to ignore the express disclosure of a patent – including information incorporated by reference – simply because it was not explicitly pointed out to opposing counsel prior to summary judgment. The '236 Patent, including the figure showing source and drain contacts, was cited in the '173 Patent, which was produced to Power Integrations long ago. Any argument that Power Integrations lacked notice is futile.

29