**B.**     **There Is No Genuine Issue Of Fact Regarding Obviousness Of Claim 5.**

**Alleged Dispute #2:**  whether it was obvious to combine the MOS transistor of claim 1 with a low voltage device.

Power Integrations criticizes Fairchild's observation that the '075 Patent proves the obviousness of combining low and high voltage devices on a single chip. Critically, Power Integrations fails to recognize that the portion of the patent upon which Fairchild is relying *is the inventors' statement of the prior art, not the invention*. It is not "hindsight" to consider the admitted prior art; it is what the inventor expressly recognized was known at the relevant time.

In this case, the inventor admitted that there was nothing novel about the concept of combining low and high voltage devices on a single chip. Rather, the top layer of material of claim 1 reduced the resistance of the high voltage device and thus made it easier to combine with low voltage devices as claimed in dependent claim 5. Once one of ordinary skill understood how to use a top layer to reduce resistance of a high voltage device as in claim 1 (and the '173 patent), according to the specification of the '075 Patent, it would have been obvious to combine such a device with low voltage devices. Exh. B, '075 Patent, 1:15-37.

Power Integrations cannot create a triable issue of fact by simply waiving its hands and arguing that obviousness is "a fact intensive inquiry." Power Integrations must point to a genuine issue of material fact, which it has not done. The only "evidence" submitted by Power Integrations to refute the obviousness of claim 5 is an unverified and inadmissible report by its expert. Even if such evidence were sufficient – which it is not under Rule 56(e) – the statements by Power Integrations' expert fail to create a genuine issue of fact material to the validity of claim 5. Mr. Shields merely discusses the threshold and punch through implants described, but not claimed, in the patent. Because those implants are not claimed, they are not material to the validity of claims 1 or 5 and Mr. Shields' discussion of those implants thus does not create a

30

dispute of any material fact. Indeed, it does not even create a dispute as Fairchild does not

dispute that the '075 Patent describes unclaimed implants.

**C.    There Are No Genuine Issues Of Material Fact Regarding Priority.**

Although Power Integration correctly states the law regarding the *sufficiency* of

corroborating evidence, it ignores the threshold inquiry that must be satisfied even to reach that

issue: Power Integrations must first come forward with *independent corroboration of the*

*earlier conception. See e.g., Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998)

("corroboration must not depend solely on the inventor himself"); *Hahn v. Wong*, 892 F.2d 1028,

1032 (Fed. Cir. 1989) ("The inventor, however, must provide independent corroborating

evidence in addition to his own statements and documents."). Although Power Integrations does

a lot of hand waving about the testimony and other evidence that must be weighed to determine

whether corroboration of Eklund's *testimony* is sufficient, it has not pointed to any evidence

independent of Dr. Eklund's testimony and notes that could actually corroborate his claim that he

conceived of the entirety of claims 1 and 5 prior to January 7, 1986.

**1.    Power Integrations has not come forward with evidence that**
**could corroborate Eklund's alleged earlier conception.**

**Alleged Dispute #3:** "whether Dr. Eklund's testimony concerning conception is
corroborated by... testimony from Dr. Eklund's friends and colleagues."

Not even attempting to create an issue of fact regarding independent corroboration of Dr.

Eklund's alleged conception, Power Integrations merely contends that there is an issue of fact

regarding whether Dr. Eklund's present day testimony can be corroborated. *See* DI 233, p. 26.

This is at best misleading as the necessary threshold corroboration is of the actual fact that Dr.

Eklund possessed the inventions of claim 1 and 5 prior to January 1986, not simply corroboration

of his present day testimony. Without independent corroboration of the actual conception, the

alleged factual disputes raised by Power Integrations are immaterial.

31

There are other flaws in Power Integrations' attempt to create a factual dispute. For example, although Power Integrations claims there is an issue of fact regarding whether "Mr. Sarkissian's testimony" corroborates Dr. Eklund's testimony, Power Integrations did not cite or submit any such testimony. This statement is thus nothing more than attorney argument and is insufficient to create a genuine issue of fact for trial. *See* Fed. R. Civ. P. 56(e). Indeed, the testimony of Mr. Sarkissian submitted by Fairchild demonstrates that he is unable to corroborate Dr. Eklund's alleged conception and thus that his testimony is not material. DI 216, pp. 5-6.

The Brunnberg testimony cited by Power Integrations does not create a genuine issue of material fact regarding corroboration. When questioned by Fairchild's attorney, Mr. Brunnberg clearly testified that                      REDACTED                      Indeed, he stated that

                                                                                   REDACTED

REDACTED

                                                                Exh. L., Brunnberg Depo.,

                                          REDACTED

62-63. He also stated that

                                                    *Id.* at 41, 63. Mr. Brunnberg further testified

that                                                                                   REDACTED

            REDACTED            . *Id.* at p. 65. Further, when Fairchild's attorney showed him

            Mr. Brunnberg stated that            REDACTED            *Id.* at p. 97.

Power Integrations attempts to create an issue of fact by citing Mr. Brunnberg subsequent testimony – notably in response to his own attorney's questions – that a diagram in Dr. Eklund's notes                      REDACTED                                          To begin, Power Integrations cannot create an issue of fact by pointing to a discrepancy in the statements of its own witness. Moreover, while this statement is inconsistent with Mr. Brunnberg's previous assertion that                      REDACTED

32

REDACTED

REDACTED

Even if taken as true, the fact that Mr. Brunnberg

REDACTED

REDACTED

Critically, Power Integrations does not deny that none of the

drawings in Dr. Eklund's notes by itself showed all of the elements of claim 1 or claim 5. DI

216 at 3. Moreover, Mr. Brunnberg unequivocally testified that

REDACTED

REDACTED

*Id.* at 40-41. As a matter of law, a corroborating witness

must understand the invention. *See Hahn*, 892 F.2d at 1032 ("the original affidavits of Hughes

and Harris do not establish that the corroborators' 'activity' – *i.e., reading and understanding

the notebook pages* – occurred prior to Wong's effective filing date....") (emphasis added).

Finally, whether or not Dr. Eklund's "notebook" was stolen does not create a genuine

factual dispute for trial regarding corroboration. Such evidence is immaterial as it in no way

independently corroborates the fact that Dr. Eklund conceived of the alleged invention prior to

January 1987. Critically Dr. Eklund never told anyone at the time that his notebook was in his

stolen briefcase nor did he report his notebook as stolen.

> **2. Absent independent corroboration, any dispute over what
> Eklund conceived or when he conceived it is immaterial.**

**Alleged Dispute #4:** "whether Dr. Eklund conceived of the complete inventions recited
in claims 1 and 5 of the '075 patent before the filing date of the '173 patent"; **Alleged
Dispute #5:** the date of Dr. Eklund's notes and what the notes disclose.

Because Power Integrations has not met its burden of presenting independent

corroborating evidence, whether Dr. Eklund actually conceived of the complete invention before

the filing date of the '173 patent is immaterial. Absent independent corroboration, his testimony

33

alone thus does not create a genuine issue of fact for trial. Moreover, as a matter of law, his unsigned, unwitnessed notes are likewise immaterial absent some independent corroboration of his alleged conception. DI 216 at 12. Thus, neither the date of those notes, nor the what those notes disclose is material.

### 3. Power Integrations has not come forward with evidence of diligence.

**Alleged Dispute #6:** "whether Dr. Eklund was diligent in reducing to practice an embodiment of his claimed inventions between conception and the filing of the patent." Power Integrations has submitted absolutely no evidence whatsoever of diligence.

Although Power Integrations makes conclusory statements that diligence is shown in the "more than 1400 pages" of documents produced by Dr. Eklund, Power Integrations has not submitted any of those documents and has not established that even a single page relates to the invention claimed in the '075 Patent. DI 233, p. 27. Power Integrations cannot create a genuine issue of fact by simply having its attorneys state that there is "testimony on the subject" and "substantial documentation" without identifying that testimony or documentation and showing how it creates a material dispute. *Enzo*, 424 F.3d at 1284. In any event, absent corroborating evidence of conception, the issue of diligence is not material.

### 4. Beasom's earlier conception date and diligence are immaterial for purposes of this Motion.

**Alleged Dispute #7:** Whether Mr. Beasom conceived of his invention in April 1984, whether his conception is corroborated, and whether he was diligent in reducing his invention to practice.

It is undisputed that the '173 Patent was filed before the '075 Patent. Thus, since Power Integrations has not submitted independent corroboration of an earlier invention date, it is immaterial for purposes of this motion under § 102(e) that Mr. Beasom conceived of his invention prior to filing his application. Although Power Integrations devotes more than a page of its brief to attempting to create an issue of fact regarding Mr. Beasom's April 1984 invention,

those facts are not material to Fairchild's motion.

## VIII.  FAIRCHILD IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT WITH RESPECT TO ITS PRODUCTS SOLD ABROAD.

There is no dispute that the accused devices are all manufactured abroad.  Fairchild has

conceded that it has imported a minimal amount of these device (approximately $340,000) into

the United States in the relevant timeframe.  Fairchild does not dispute that if Power Integrations

can prove that Fairchild has infringed a valid and enforceable claim, Power Integrations would

be entitled to damages on these devices.

Power Integrations, however, seeks damages well beyond this domestic activity and,

instead, has demanded :                    REDACTED                         Since, as a

matter of law, Power Integrations' U.S. patents do not apply to manufacture, use, sale, or offers

for sale made outside of the United States, Fairchild seeks summary judgment that Power

Integrations is not entitled to such damages.  DI 219.

Specifically, Fairchild seeks summary judgment on two issues:

- Since there is no evidence of direct infringement by a third party that imports each of the accused devices into the United States, as a matter of law Fairchild cannot be liable for inducing or contributing to the infringement of others.
- Since there is no evidence that Fairchild has offered any of the accused devices for sale in the United States leading to a sale abroad, as a matter of law Fairchild's foreign sales do not infringe based on "offers for sale."

There is no genuine dispute of fact with respect to either issue.  Indeed, as set forth below, Power

Integrations has offered no evidence of such infringement.  Thus, summary judgment is proper.

### A.  Fairchild Cannot Be Liable For Indirect Infringement.

Power Integrations has accused 38 specific Fairchild devices of infringing the claims of

the asserted patents.[15]  It is black letter law that for Fairchild to be even potentially liable for

---

[15]       Specifically, Power Integrations has accused Fairchild's FAN7601, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL,

inducing or contributing to the infringement of others with respect to these accused devices, Power Integrations must prove a specific act of direct infringement by a third party. *Epcon Gas Systems v. Bower Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002) ("there can be no inducement of infringement without direct infringement by some party"). Moreover, Power Integrations must prove a specific act of direct infringement *with respect to each of the 38 accused devices. Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998) (to show patent infringement, must compare claims to an accused product); *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 835 (D. Del. 1995) (instructing jury that they must determine infringement for "each product accused"). The burden is on Power Integrations to submit admissible evidence on this point. *Novartis*, 271 F.3d at 1050. Since Power Integrations has not met — and cannot meet — this burden, summary judgment is appropriate.

1. **There is no evidence of an underlying act of direct infringement.**

There are two glaring failures in Power Integrations' opposition. First, Power Integrations fails to identify any specific direct infringer. Second, Power Integrations fails to identify any specific act of direct infringement for each of the 38 accused Fairchild devices. As a matter of law, Power Integrations' failure of proof on either issue warrants summary judgment.

a. **There is no evidence that any third party infringed the asserted claims.**

Power Integrations has submitted absolutely no evidence that any particular third party has infringed an asserted claim by importing the Fairchild devices into the United States.[16] As a

---

FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, and FSDM07652R devices.

[16]    Power Integrations had every opportunity to take third party discovery. Indeed, Power Integrations served 11 subpoenas and deposition notices on various third parties. DI 99, 104, and 111 (Power Integrations did not file the remaining subpoenas as required by the Local Rules). Presumably realizing that this discovery would not be helpful, Power Integrations chose not to pursue it and, indeed, failed to depose even a single third party.

36

matter of law, absent proof of such direct infringement, Fairchild cannot be liable for inducing or contributing to the infringement of others. *Epcon Gas*, 279 F.3d at 1033.

To substantiate its allegation that Fairchild indirectly infringes, Power Integrations must provide evidence of a specific act of direct infringement by a particular third party. For instance, Power Integrations would need evidence such as "Company X imported accused device Y into the United States on date Z." There is no evidence that such direct infringement ever occurred. Rather than cite evidence of any specific third party that allegedly infringes an asserted claim, Power Integrations relies upon the report of its expert. As a matter of law, this report is inadmissible and cannot create a genuine dispute of material fact. *Fowle*, 868 F.2d at 67.

Even were the Court to consider Power Integrations' characterization of Mr. Troxel's report, Power Integrations *still* does not identify any specific third party infringement. Instead, Power Integrations' attorneys make the conclusory argument that "companies like Samsung, Motorola, LG, and Dell directly import cell phones, LCD monitors, TVs, and other popular consumer electronic products into the United States." DI 233, pp. 37. As an initial matter, such attorney argument cannot create a dispute of fact. *Enzo*, 424 F.3d at 1284. Moreover, even if true, it is not evidence that any of these third parties imported any of the accused Fairchild devices into the United States.[17] Power Integrations still has not identified any specific infringement by any specific third party since the filing of the complaint.

---

[17]    The closest that Power Integrations comes to any evidence on this point is a declaration from a Dell employee regarding Fairchild products "sold and imported into the United States" by Dell. As an initial matter, Power Integrations has never deposed Dell to authenticate this information. Even were the Court to consider the declaration, it only applies to one of the 38 accused devices – the FAN7601. *See* DI 234, Exh. S. Thus, there is no dispute concerning the remaining 37 accused devices and Fairchild is entitled to summary judgment that it does not indirectly infringe with respect to those products.

Finally, Power Integrations relies upon the deposition of Shawn Slayton, an analyst who follows Power Integrations' stock.[18] Mr. Slayton, however, *never* testified that the accused devices are imported into the United States. Thus, this is not evidence of underlying act of direct infringement – let alone evidence that each of the 38 accused devices are imported into the United States. Moreover, Mr. Slayton clearly testified that                REDACTED

                    REDACTED                              DI 234, Exh. T,

70:8-25, 81:3-82:10. As a matter of law, Mr. Slayton's testimony cannot create a dispute of fact. *Digene Corp. v. Ventana Medical Sys., Inc.*, 316 F. Supp. 2d 174, 181 n.10 (D. Del. 2004) (testimony of deponent with "no personal, first-hand knowledge" was inadmissible hearsay).

        b.    **There is no evidence that each of the accused products have been imported by a third party.**

In addition to failing to identify a specific direct infringer, Power Integrations has failed to provide any evidence that each of the 38 accused devices are imported into the United States. Power Integrations must provide such evidence if it alleges that Fairchild indirectly infringes with respect to these products. *See Johns Hopkins Univ.*, 894 F. Supp. at 835. Power Integrations does not do so. Indeed, Power Integrations' opposition does not even refer to a single one of the accused devices. *See*, DI 233, pp. 35-38. Summary judgment is appropriate.

There is no dispute of fact – there is simply no evidence that the FSMD0365RNB, FSDL0165RN, FSCM0765R, or any of the other 35 accused devices have been imported into the United States by a third party. Summary judgment is appropriate for this reason, as well.

Power Integrations' attorneys argue that the jury should be permitted to speculate – without any evidence – that each of the 38 specific Fairchild devices accused by Power

---

[18]    Mr. Slayton was deposed after Fairchild filed its motion for summary judgment and so his testimony was not addressed in Fairchild's opening brief.

Integrations are imported into the United States:

> At the most basic and intuitive level, though, the finder of fact does not need to make a leap of faith to appreciate that companies like Samsung, Motorola, LG, and Dell directly import cell phones, LCD monitors, TVs, and other consumer electronics products into the United States, because they see them every day at Best Buy, Circuit City, Costco, Fry's Electronics, and a myriad of other electronics retailers.

DI 233, p. 37. As there is no evidence for the jury to rely upon on this issue, summary judgment is necessary to prevent the speculation upon which Power Integrations apparently relies.

> **2.     As a matter of law, Fairchild cannot be found to have indirectly infringed absent evidence of an underlying act of direct infringement.**

For each of the accused devices, Power Integrations must cite evidence of a specific underlying act of direct infringement before Fairchild can be even potentially liable for indirect infringement. *See Johns Hopkins Univ.*, 894 F. Supp. at 835. Power Integrations is unable to meet this burden. Thus, the Court should enter summary judgment that Fairchild has not induced or contributed to the infringement of others.

> **B.     Fairchild Is Entitled To Summary Judgment That Its Foreign Sales Do Not Result From "Offers To Sell" Made In The United States.**

The vast majority of Fairchild's sales of the accused devices are outside of the United States. Thus, as a matter of law, these sales cannot infringe a U.S. patent. 35 U.S.C. § 271(a).

Seeking damages on these foreign sales, Power Integrations argues that they are the result of an "offer to sell" made in the United States. Since Power Integrations has absolutely no evidence that Fairchild has ever made an offer for sale in the United States of the accused devices that resulted in a sale abroad, Fairchild is entitled to partial summary judgment that it is not liable for its foreign sales. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) (holding with reference to foreign offer-to-sell activities that "extraterritorial activities... are irrelevant to the case before us, because '[t]he right conferred by a patent under

39

our law is confined to the United States and its territories, and infringement of this right cannot be predicated of acts wholly done in a foreign country.'") (citation omitted).

In particular, Power Integrations has no evidence that any of Fairchild's foreign sales were a result of an offer to sell made in the United States. Instead, it appears to hope that by showing a general possibility that an infringement of this type could occur, the Court will allow it to go to trial on these issues. That is not good enough. The mere possibility that infringement could have happened is not sufficient circumstantial evidence to survive summary judgment. *Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365, 369 (E.D. Va. 2003) ("[I]n cases in which there is a question whether every sale leads to an instance of direct infringement, a patentee must ... establish the connection between sales and direct infringement.").

### 1.    There are no genuine issues of material fact regarding the lack of domestic offers relating to foreign sales.

For purposes of this motion, Fairchild accepts the characterization of Fairchild's sales activity in Power Integrations' brief. Thus, there is no possible dispute of fact. As a matter of law, these activities do not constitute an "offer for sale". Summary judgment is appropriate.

**Alleged Dispute #1:** Fairchild personnel in the United States are "involved" when foreign offers for sale are made.

Most of Power Integrations' argument on this point is based on a misapprehension of the law that, when corrected, renders the alleged factual dispute irrelevant. Arguing that Fairchild's U.S. sales force is "integral[ly] involve[d]" in the sale of the accused products, Power Integrations cites the *3D Systems* case for the proposition that an "offer to sell" is shown if the defendant "generat[ed] interest in a potential infringing product to the commercial detriment of the rightful patentee." DI 233, p. 32, *citing 3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998). But *3D Systems* has been modified on this very point by later Federal Circuit authority. In *Rotec v. Mitsubishi*, the Federal Circuit found that, as in *3D*

*Systems*, the defendant's activities "could also lead to 'generating interest... to the commercial detriment of the rightful patentee.'" 215 F.3d at 1255, *citing 3D Systems*, 160 F.3d at 1379 n. 4. But the Court expressly rejected this standard, holding that "[t]his interpretation goes far beyond the limited "right to exclude" provided under § 271(a)." *Id.*

In *Rotec*, the Federal Circuit defined an "offer to sell" "according to the norms of traditional contractual analysis." *Rotec*, 215 F.3d at 1254-55.[19] Thus, there can be no offer for sale absent a showing that "Defendant communicated a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* at 1257, *citing Restatement (2d) of Contracts* § 24 (1979).

Later Federal Circuit cases have applied this principle, holding that what constitutes an "offer to sell" is far narrower than the activities alleged by Power Integrations. In *Linear Technology Corp. v. Micrel, Inc.*, the Federal Circuit considered a wide range of activities similar to the facts of this case. 275 F.3d 1040 (Fed. Cir. 2001). Among other things, the defendant's sales force was discussing pricing within the company, "actively promoting the [product] to end-user customers," publishing data sheets and promotional information, giving advertising material directly to customers, and seeking "design ins" (defined by the Court just as in this case, as "getting a design engineer at a company to use a component product in one of the engineer's applications"). *Id.* at 1050-51 and n.2. As a matter of law, these activities were not offers for sale because none of them constituted a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* at 1050 (citations omitted). "[I]ntent to be bound [is] a *sine qua non* of an offer." *Id.* at 1051.

It is immediately apparent that the Power Integrations' allegations concerning the "involvement" of Fairchild's U.S. sales operation has no bearing on whether U.S. offers result in

---

[19]    In *Rotec*, the Federal Circuit followed the Supreme Court's decision in *Pfaff v. Wells*, 525 U.S. 55, 119 S.Ct. 304 (1998). The *Pfaff* decision was published three days before the *3D Systems* decision and, thus, was not addressed by that case. *See Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 43 (D. Mass. 2003).

foreign sales. The sum total of Power Integrations' "disputed facts" on this issue are as follows:


**REDACTED**


Fairchild does not dispute that Messrs. Beaver and Conrad are senior members of Fairchild's sales organization. This fact, however, does not indicate that either Mr. Beaver or Mr. Conrad (or US sales people in their organizations) ever made an "offer to sell" any of the 38 specific accused devices in the United States, let alone made such an offer that resulted in a sale abroad since the filing of Power Integrations' complaint.[20]

As a matter of law, the fact that Messrs. Beaver and Conrad may supervise sales employees and communicate with them is *not* evidence of an "offer for sale" in the United States. *Linear Tech.*, 275 F.3d at 1050 ("internal communications between LTC and its sales representatives" regarding pricing "cannot constitute an offer for sale to a customer not privy to the communication"). In short, the mere presence of a supervising executive in the United States is not evidence that he personally makes offers to sell to purchasers abroad, much less of specific accused products to specific customers.

- *"Fairchild admits that Fairchild's U.S. sales personnel are involved in major sales-related activities, including work on the design, planning, promotion, and service of the accused parts."* DI 233, p 31, *citing* DI 219, p. 17.

This "fact" is an inaccurate paraphrase of a generalization about the evidence from Fairchild's brief. Fairchild did not state that its U.S. personnel are involved in service of the accused devices and Power Integrations has not cited any evidence that they are. *See* DI, p. 17. In any case, even if such evidence existed, none of the "admitted" activities (design, planning,

---

[20] Fairchild cited evidence showing that its salespeople work in all the regions of the world where potential customers are found, and negotiate sales with the local customers in their region. DI 219, pp. 22-24. Power Integrations has disputed none of this evidence and it is thus all deemed admitted. *Yurman*, 275 F.Supp.2d at 509.

promotion) constitute offers to sell. *Linear Tech.*, 275 F.3d at 1050-51.

Thus, while there is no genuine dispute of fact that there are U.S. executives with oversight responsibilities for divisions of the company that include foreign sales operations and that U.S. personnel are involved in design, planning and promotion of the accused products, there is no evidence to suggest that these persons (or anyone else in the United States) made any offers to sell to sell the accused devices outside of the United States.[21]

**Alleged Dispute #2:** U.S. price quotes can travel abroad, resulting in sales abroad, and have done so with respect to the accused products.

Power Integrations cites four pieces of "evidence" that purportedly create a dispute of fact. Two of these are factually undisputed and were cited by Fairchild – the parties dispute only their legal import. The third is a snippet of deposition testimony that Power Integrations presented to the Court in a flagrantly misleading manner; the fourth is completely irrelevant.

- *"Fairchild admits that*            REDACTED                        DI
  233, p. 30.

Seeking to create a dispute, Power Integrations misleadingly misquotes Fairchild's opening brief. For purposes of this motion, Fairchild agrees it "is possible for a 'valid quote' to be given in the U.S. for a product that is then sold abroad." DI 219, p. 26. Power Integrations altered the word "sold" to "delivered" to suggest that the stage of the process occurring abroad after such a quote would be mere *delivery*, rather than *sale*. With that important correction, this is not a disputed fact but an undisputed fact of disputed legal significance.

Power Integrations insists that the mere possibility of a valid price quote (for an unspecified product) in the United States, which quote can travel abroad, shows an offer to sell the accused products in the United States. Power Integrations cites neither evidence nor legal authority in support of its position. In contrast, Fairchild cited extensive case law from this

---

[21] Power Integrations speculates (without any evidence) that Fairchild's Joint Defense Agreements ("JDAs") are somehow evidence of U.S. offers for sale. DI 233, p. 38. Fairchild would be happy for the Court to review these privileged documents *in camera* to confirm that they are not evidence of any offer to sell.

Court and many others to the effect that "mere price quotations without other contractual terms (time and place of delivery, terms of payment, etc.) are not offers." *Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773, 801 (D. Del. 2002); *see* DI 219, pp. 28-32.

Power Integrations' only attempt to contest the issue is the unsupported factual assertion that "Fairchild knows that price (as in price quotes and price point negotiations) are the real offers to sell in this industry." DI 233, p. 32. Power Integrations cites no evidence or case law to support this contention. In fact, Fairchild submitted extensive evidence – including the admission of Power Integrations' own expert – establishing that even if a price were validly quoted in the U.S., it would normally have to be renegotiated abroad because the manufacture would be performed abroad by a different company from the recipient of the U.S. quote. *See* DI 219, pp. 24-27. Power Integrations did not dispute any of these facts and they are therefore deemed admitted. *Yurman*, 275 F.Supp.2d at 509. Thus, even were there evidence of a valid quote is given in the U.S. that resulted in a foreign sale (and there is absolutely no evidence that this has occurred with respect to the accused devices), the offer to sell – the act that creates the power of acceptance in the offeree – occurs abroad. *Linear Tech.*, 275 F.3d at 1050 (offer is act such that offeror need give no further assent in order to be bound by offeree). This was confirmed by every specific international transaction in evidence, including the only one presented by Power Integrations as a "disputed fact" – **REDACTED**

- *"Fairchild admits that U.S. sales personnel quoted a price to* **REDACTED** *for the accused FSD210 device, where the ultimate delivery of the accused part, 'was arguably intended to be used in a purchase in Asia.'" [etc.]* DI 233, p. 30.

Power Integrations insists that there is a triable issue as to whether the **REDACTED** involved an offer for sale in the United States, but does not dispute that it involved no more than a "naked price quote" in the U.S. *Id.* Rather, Power Integrations argues, again without any support and contrary to case law, that a price quote alone can constitute an offer for sale. In addition, Power Integrations fails to dispute, and therefore admits, two additional facts mentioned in Fairchild's brief: First, the price quote was given to **REDACTED** , but

44

the purchaser was                          DI 219, p. 27. Thus the quote could not

have been an offer for sale to        **REDACTED**        buying any product from Fairchild;

nor could it have been an offer for :                          Second, Fairchild Japan

refused to honor the quoted price, *id.*, again showing that the quote was not an offer that could be

accepted without a further manifestation of assent from Fairchild.

- *"Tom Beaver... admitted during his deposition to engaging in price negotiations
  and discussions with Fairchild's Tier 1 customers*     **REDACTED**
  **REDACTED**  DI 233, p. 31.

Power Integrations' attorneys argue that Mr. Beaver "admitted" to engaging in price

negotiations and discussions with major customers. DI 233, p. 31. Power Integrations'

argument is flatly contradicted by the evidence. Power Integrations misleadingly provides only a

snippet of deposition testimony and not the immediately preceding question and answer, in

which Mr. Beaver stated that he has had no such discussions *with respect to the accused devices*:

> **Q.**  Have you been involved in pricing discussions for any of what you term
>          very big deals *for any Fairchild FPS products?*
>
> **A.**  No.
>
> **Q.**  When you mentioned discussing the very big deals on which you would be
>          involved in pricing discussion, do you happen to know how many times in
>          your two years you would have actually been involved in such
>          discussions?
>
> **A.**  Much less than ten times.
>
> **Q.**  Could you list for me the accounts that we are talking about?
>
> **A.**  I could.
>
> **Q.**  Would you?
>
> **A.**          **REDACTED**

Exh. A, Beaver Depo. 60:22-61:10. It is because of the possibility of such misdirection that

Courts have refused to consider attorney argument in determining whether there is a dispute of

fact. *See Enzo*, 424 F.3d at 1284. The undisputed evidence is that Mr. Beaver never made an

offer for sale of the accused Fairchild devices.

- *"Mr. Troxel relies on voluminous documents and testimony regarding U.S. sales
  activity involving the accused Fairchild parts..." [etc.]*  DI 233, p. 31.

45

As an initial matter, Power Integrations' expert report is not evidence and cannot create a dispute of fact. *Fowle*, 868 F.2d at 67. Moreover, it is unclear to what Power Integrations refers since Power Integrations merely cites to a five-page range in its expert report without indicating that this passage contains any evidence relevant to the issue of Fairchild's foreign sales. In any case, the only possibly relevant matter in the cited pages is a synopsis of '   **REDACTED** otherwise there is no mention whatsoever of U.S. offers in connection with foreign sales.

Thus, there is no evidence that Fairchild's foreign sales were the result of a binding offer to sell made in the United States. Since, as a matter of law, a price quote, by itself, is not an offer for sale, Fairchild is entitled to summary judgment.

## IX. CONCLUSION.

For the foregoing reasons, the Court should grant each of Fairchild's pending motions for summary judgment.

ASHBY & GEDDES

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue
17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*
*FAIRCHILD SEMICONDUCTOR*
*INTERNATIONAL, INC. and FAIRCHILD*
*SEMICONDUCTOR CORPORATION*

Of Counsel:

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Vickie L. Feeman (#177487)
Bas de Blank (#191487)
Brian H. VanderZanden (#233134)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: April 19, 2006

168730.1

47

# EXHIBIT A

# REDACTED

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of April, 2006, the attached **REDACTED PUBLIC**

**VERSION OF CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' MOTIONS**

**FOR SUMMARY JUDGMENT** was served upon the below-named counsel of record at the

address and in the manner indicated:


William J. Marsden, Jr., Esquire                           <u>HAND DELIVERY</u>
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19801

Frank E. Scherkenbach, Esquire                         <u>VIA ELECTRONIC MAIL</u>
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Michael Kane, Esquire                                      <u>VIA ELECTRONIC MAIL</u>
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN  55402

Howard G. Pollack, Esquire                              <u>VIA ELECTRONIC MAIL</u>
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063


*/s/ John G. Day*
_____

John G. Day