IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF LIMITATION ON DAMAGES UNDER 35 U.S.C. § 287 (FAILURE TO MARK)

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*
*FAIRCHILD SEMICONDUCTOR*
*INTERNATIONAL, INC. and FAIRCHILD*
*SEMICONDUCTOR CORPORATION*

*Of Counsel:*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
G. Hopkins Guy, III (#124811)
Vickie L. Feeman (#177487)
Bas de Blank (#191487)
Brian H. VanderZanden (#233134)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: April 19, 2006

## I.     INTRODUCTION.

REDACTED

Thus, the only issue is one of law – the legal effect of Power Integrations' failure to mark.  Seeking to recapture damages prior to the filing of its complaint, Power Integrations' expert bases his "price erosion" calculations on data from July, 2002 (two and a half years before Power Integrations' complaint).  Through such sleight of hand, Power Integrations demands tens of millions of dollars in damages – many times Fairchild's sales of the accused products.  This amounts to recovering damages "for infringement occurring" *before* notice, which is precisely what the marking statute prohibits.  35 U.S.C. § 287(a) ("damages may be recovered only *for infringement occurring after* such notice") (emphasis added).  Fairchild asks the Court not to allow Power Integrations to circumvent the plain language of the marking statute.

## II.     UNDISPUTED FACTS.

### A.     Power Integrations Concedes That It Ambushed Fairchild.

Power Integrations agrees that there is no genuine issue of fact that would preclude summary judgment of Fairchild's motion to limit damages: "Power Integrations does not believe Fairchild's motion regarding marking raises material disputes of fact." DI 235, p. 1.  Thus, the facts set forth in Fairchild's Motion must be deemed admitted:

REDACTED

- Despite suspecting for years that Fairchild may infringe it patents, Power Integrations decided not to provide notice to Fairchild prior to filing the complaint on October 20, 2004.
- Rather than providing actual or constructive notice, Power Integrations filed suit when it "made sense" to do so in terms of Power Integrations' "strategy." DI 203, p. 3, *citing* Exh. J, Renouard Depo., 271:10-272:10.

1

Power Integrations conduct is directly contrary to the marking statute's policy goals of providing competitors with notice of patent protection. Power Integrations' conduct has the hallmarks of a classic ambush and should not be rewarded or accepted in any way.

**B.**
REDACTED

Power Integrations

REDACTED        DI 235, pp. 1-2. Yet, Power Integrations' damages expert has submitted a report seeking tens of millions of dollars based on allegedly infringing activities ***before the filing of the complaint.*** DI 203, p. 7, *citing* Exh. I, Troxel Expert Report, pp. 5-8, 48-51.

For instance, Power Integrations seeks lost sales commencing in July 2002. DI 203, Exh. I, Troxel Expert Report, pp. 6-8. Likewise, Power Integrations' expert relies on price reductions dating to April 2002, two and a half years before notice. *Id.*, p. 48 and nn. 203-204. These are illustrative examples of how pre-notice data infects Power Integrations' expert's report.

Summary judgment is necessary and proper to prevent Power Integrations from seeking damages based on alleged infringing activity prior to the filing of its complaint.

**III.**   **ANALYSIS.**

**A.**   **The Parties Agree That Fairchild Is Entitled to Summary Judgment Barring Damages For Infringement Occurring Prior to October 20, 2004.**

Power Integrations now
REDACTED

Indeed, Power Integrations states that it

REDACTED

DI 235, pp. 1-2. Thus, Fairchild is entitled to summary judgment that "damages may be recovered only for infringement occurring after" October 20, 2004. 35 U.S.C. § 287(a).

Rather than oppose Fairchild's motion, Power Integrations argues that it is "moot" because
REDACTED

DI 235,

2

p. 1.  Power Integrations' concession of the issue is welcome, if overdue, but to imply that the question was moot before Fairchild filed its motion is simply disingenuous.

Fairchild's motion for summary judgment was necessary since Power Integrations denied Fairchild's requests for admission on this topic.  Moreover, Power Integrations argued that the

REDACTED

DI 88, 125,

pp. 1-2.  Fairchild's motion for summary judgment was necessary to show that, in truth, Power Integrations had no additional evidence and no basis to deny Fairchild's request for admission.[1]

**B.    Power Integrations' Damage Calculations May Not Include Recovery "For Infringement Occurring" Prior to October 20, 2004.**

Despite admitting that it cannot recover damages for alleged infringement prior to the filing of its complaint, Power Integrations opposes Fairchild's request that the Court make explicit that all such damages are prohibited by the marking statute.  Fairchild is not seeking to broaden the scope of the statute, as Power Integrations suggests.  Rather, Fairchild is simply asking the Court to preclude Power Integrations from seeking damages based on infringement occurring during the pre-notice period to which Power Integrations concedes it is not entitled.

For example, Power Integrations' damages expert has opined that Power Integrations is entitled

REDACTED

(in other words,                                    Power Integrations filed its complaint to

REDACTED                  DI 234, Exh. R, p. 7.  Power Integrations' expert argues that Power Integrations is entitled to these damages even if Fairchild stops selling the accused devices.  *Id.*, Exh. R, p. 52.  This leads to the absurd result that even had Fairchild stopped all of its accused activities the minute that Power Integrations filed its complaint, Fairchild would still be liable for over thirty million dollars of damages entirely due to activities before Fairchild

---

[1]    Fairchild reserves its right to seek appropriate sanctions for Power Integrations refusal to admit that it was not entitled to damages prior to the filing of its complaint.

3

received notice of Power Integrations' allegations. This is precisely the result that the marking statute is designed to avoid.[2]

That is why, in the only case directly addressing this issue, the Southern District of New York held that the patentee "may not seek damages for any acts of infringement committed prior to [the date of notice] and to the extent that [its damages expert] has based his damage computations on [defendant's] activities before that date, his conclusions are fatally flawed." *Johnson Elec. North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268, 280 (S.D.N.Y. 2000). This is exactly what Power Integrations is doing and its experts' calculations are, similarly, "fatally flawed." While Power Integrations questions whether *Johnson* did, in fact, forbid price erosion evidence of the type at issue here, the *Johnson* court's own language leaves no doubt of that. While the damages expert in that case presented various scenarios calculating damages from the time of marking, the court noted that most of his calculations of price erosion impermissibly commenced upon the accused infringer's entry into the market.

> Dubin's [patent expert's] erroneous reliance on Johnson's [defendant's] entry into the market, instead of Mabuchi's [patentee's] compliance with the marking statute, as the starting date for price erosion significantly alters Dubin's measure of damages. Price erosion is merely one measure of damages and thus, *to the extent that it occurred prior to compliance with the patent marking statute, cannot be considered.*
>
> In sum, Mabuchi cannot recover any damages, including those for price erosion, for the acts committed prior to July 15, 1988, when Mabuchi gave Johnson notice of infringement. That Dubin's damages calculus is heavily weighted by the factor of estimated price erosion during earlier periods alone destroys the validity of his conclusions. *The effect on the price of micro-motors of Johnson's presence in the market from 1985 through 1988 is simply irrelevant to the measure of damages in this case.*

*Id.* at 281 (underlining in original; other emphases added). Indeed, this Court already has

---

[2]     Power Integrations improperly calculates its claim for price erosion on alleged infringement during the pre-notice period. If, for instance, the price of a part in July 2002 was REDACTED and by October 19, 2004, Power Integrations had reduced it to REDACTED the Power Integrations' expert uses REDACTED as the baseline for calculating price erosion after October 20, 2004. Thus, if Power Integrations' price further eroded REDACTED by June, 2005, Power Integrations would argue that the amount of price erosion per part would REDACTED REDACTED To recover such erosion, Power Integrations would have to establish that pre-notice infringement by Fairchild actually caused its prices to erode. To award pre-notice erosion would thus allow Power Integrations to recover damages arising from infringement occurring *before* notice, which is precisely what the marking statute forbids: "damages may be recovered only *for infringement occurring after* such notice." 35 U.S.C. § 287 (emphasis added).

4

implicitly agreed with the Southern District of New York, having ruled in its Order of August 9, 2005, that pre-notice evidence of damages is irrelevant to this case and not discoverable.  DI 54.

Power Integrations' cases about pre-suit pricing data are not to the contrary.  Each case states the obvious proposition that it is proper to look at prices before infringement commenced in order to determine the effect of the infringement on prices.  *See Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1359 (Fed. Cir. 2001), *citing Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1579 (Fed. Cir. 1992) and *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1579-80 (Fed. Cir. 1992).  None of these cases involved an intervening period of years of allegedly infringing activity for which the plaintiff was specifically barred from recovery.  They simply affirm the basic logic of "before and after" comparison, and do not address whether to allow damages from a barred period to be imported into the permitted period as Power Integrations suggests. Fairchild does not dispute that pricing data immediately prior to the filing of this action would be relevant to determining the effect of alleged post-notice infringement on prices.

## C.    The Date Of The Hypothetical Negotiation Used To Calculate A Reasonable Royalty Is Irrelevant To Calculation Of Lost Profits Or Price Erosion.

Power Integrations suggests, without support, that Federal Circuit authority regarding use of the date of first infringement as the date of a hypothetical negotiation for purposes of calculating a reasonable royalty somehow justifies awarding alleged price erosion caused by pre-notice infringement.  Clearly, the Federal Circuit has never upheld such an award of lost profit damages based on infringement occurring before notice as it would contravene the marking statute, which limits damages to infringement occurring after notice.

Lost profits, including price erosion, is a measure of actual damages caused by infringement. Patent damages "have been defined by [the Supreme] Court as 'compensation for the pecuniary loss he [the patentee] has suffered from the infringement'... [and] 'the difference between his [the patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (internal cites omitted). Since it did not mark, Power Integrations is only entitled to recover damages for post-notice infringement. Hence, it is the actual loss suffered from that alleged post-notice infringement and the difference between Power Integrations' condition before and after such post-notice infringement that is relevant. Any damage caused by alleged pre-notice infringement is irrelevant.

In contrast to the lost profits measure of actual damages, the reasonable royalty measure of damages is a legal fiction. It is a last resort to ensure that patentees are not left without relief for infringement when they are unable to prove measures of actual damages. 35 U.S.C. § 284 (damages shall be "in no event less than a reasonable royalty"). As the Federal Circuit has explained, "the purpose of this alternative is *not to provide a simple accounting method, but to set a floor* below which the courts are not authorized to go." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326-28 (Fed. Cir. 1987). The goal is to make sure that the patentee is fully compensated when damages are hard to measure, and that the royalty is not so painless that the infringer is in effect imposing a compulsory license on the patentee against its will. *Id.*; *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978) (the goal in determining a reasonable royalty cannot and should not be "the normal, routine royalty non-infringers might have paid").

There are fifteen factors used by courts to determine a reasonable royalty, one of which is construction of a hypothetical licensing negotiation between the patent holder and the accused infringer. *See Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Because the reasonable royalty is intended to be the amount "which a person,

6

desiring to manufacture and sell a patented article, as a business proposition, would be willing to pay as a royalty," *Panduit Corp.*, 575 F.2d at 1158, the negotiation is to be "between the patent owner and the ***prospective*** [user] of the infringing [method]" or device. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) (citations omitted) (emphasis added). The courts reason that "[t]he setting of a reasonable royalty after infringement cannot be treated... as the equivalent of ordinary royalty negotiations among truly "willing' patent owners and licensees." *Panduit Corp.*, 575 F.2d at 1158 Hence, the Federal Circuit has held that "[t]he key element in setting a reasonable royalty... is the necessity for return to the date when the infringement began." *Id.*; *Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (citations omitted). That is the date on which the fictional negotiation would have occurred.[5]

In contrast, lost profits and price erosion as calculated by Power Integrations is no legal fiction. Rather, Power Integrations is clearly attempting to recover ***actual*** damages for infringement occurring prior to ***actual*** notice, which is prohibited by the marking statute. There is simply no basis for applying the rule setting the hypothetical negotiation of a reasonable royalty at the time infringement began to calculation of actual damages for post-notice infringement in any manner.

IV.    **CONCLUSION.**

For the foregoing reasons, Fairchild respectfully re-iterates its request that the Court grant partial summary judgment barring all damages prior to October 20, 2004, and requiring any damage calculations for lost profits, price erosion, or any other measure of actual damages to take account solely of conditions on or after October 20, 2004.

---

[5]    Under the *Panduit/Hanson/Wang* line of cases there is an issue of fact regarding the date of a hypothetical negotiation for purposes of establishing a reasonable royalty and thus Fairchild withdraws its request for summary judgment regarding this issue.

ASHBY & GEDDES

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue
17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*
*FAIRCHILD SEMICONDUCTOR*
*INTERNATIONAL, INC. and FAIRCHILD*
*SEMICONDUCTOR CORPORATION*

Of Counsel:

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Vickie L. Feeman (#177487)
Bas de Blank (#191487)
Brian H. VanderZanden (#233134)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: April 19, 2006

168735.1

8

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 26th day of April, 2006, the attached **REDACTED PUBLIC**

**VERSION OF REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT OF LIMITATION ON DAMAGES UNDER 35 U.S.C. §287**

**(FAILURE TO MARK)** was served upon the below-named counsel of record at the address and

in the manner indicated:


William J. Marsden, Jr., Esquire                     <u>HAND DELIVERY</u>
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19801

Frank E. Scherkenbach, Esquire                     <u>VIA ELECTRONIC MAIL</u>
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Michael Kane, Esquire                     <u>VIA ELECTRONIC MAIL</u>
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN  55402

Howard G. Pollack, Esquire                     <u>VIA ELECTRONIC MAIL</u>
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063


*/s/ John G. Day*
_____
John G. Day