IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION,  a Delaware corporation,<br><br>        Defendants. | C.A. No. 04-1371 JJF |

**POWER INTEGRATIONS' [PROPOSED] JURY INSTRUCTIONS**

## **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................. 1

PATENT LAW – GENERAL ........................................................................... 2

DUTIES AS JURORS ...................................................................................... 3

BURDEN OF PROOF ...................................................................................... 4

EVIDENCE ....................................................................................................... 5

WITNESSES - CONFLICTS IN TESTIMONY ............................................. 6

DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................ 7

EXPERT WITNESSES .................................................................................... 8

GENERAL INSTRUCTION ............................................................................ 9

COURSE OF THE TRIAL .............................................................................. 10

GLOSSARY OF PATENT TERMS ............................................................... 11

## INTRODUCTION

Ladies and gentlemen, you have been selected as jurors in this case. What I will now say is intended to introduce you to the trial and the law that you will apply to the evidence that you will hear. I will give you more detailed instructions on the law at the end of the trial. All of my instructions are important, and you should consider them together as a whole. Please listen carefully to everything I say.

This is a case about patent infringement. The parties are Power Integrations, the plaintiff, and Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc., the defendants. Power Integrations owns United States Patent Numbers 6,249,876, 6,107,851, 6,229,366, and 4,811,075, which you may hear called by the lawyers and witnesses in the case by their last three numbers, the '876, '851, '366, and '075 patents, or by the last name of the lead inventors, here, Klas Eklund or Balu Balakrishnan. Power Integrations contends that Fairchild infringes the '876, '851, '366, and '075 patents. Fairchild contends that it did not infringe the '876, '851, '366, and '075 patents. Fairchild also contends that the '876, '851, '366, and '075 patents are invalid.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

## PATENT LAW – GENERAL

The Federal Judicial Center video will be shown at this time.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

## DUTIES AS JURORS

Now a word about your duties as jurors. Trial by jury is one of the cornerstones of our free society. Faithful performance by you of your duties is vital to the administration of justice.

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you will see and hear in court. Deciding what the facts are is your job, not mine, and nothing that I will say or do should influence your view of the facts in any way. In deciding what the facts are, you must not engage in guesswork or speculation. You must not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. Each side is entitled to the same fair and impartial consideration.

Your second duty is to take the law that I give you and apply it to the facts. It is my job to instruct you about the law, and you are bound by the oath you just took to follow my instructions, even if you personally disagree with them. That includes these instructions and the instructions that I will give you during and after the trial. All of my instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

3

**BURDEN OF PROOF**

Power Integrations has the burden to prove patent infringement by what is called a preponderance of the evidence.  That means Power Integrations has to produce evidence that, when considered in light of all of the facts, leads you to believe that what Power Integrations claims is more likely true than not.  To put it differently, if you were to put the Power Integrations' and Fairchild's evidence on the opposite sides of a scale, the evidence supporting the plaintiff's claims would have to make the scales tip somewhat on his side.

In this case, Fairchild is urging that Power Integrations' patents are not valid.  A patent, however, is presumed to be valid.  Accordingly, Fairchild has the burden to prove a patent is not valid by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Some of you may have heard the phrase " proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one.  You should therefore not consider it in this case.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

**EVIDENCE**

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Nothing else is evidence. The lawyers' statements and arguments are not evidence; their questions and objections are not evidence. My comments or questions are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence. It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by any objection or by my reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Make your decisions about the trial based only on the evidence, as I have defined it here, and nothing else.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

## WITNESSES - CONFLICTS IN TESTIMONY

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  For example, you may be guided by the appearance and demeanor of the witnesses as they testified and the witnesses' apparent fairness in giving their testimony.  Other factors may include evidence to the contrary of the testimony given or evidence that at some other time the witness said or did something (or failed to say or do something) that was different from the testimony the witness gave at trial.  You may also consider any bias or interest the witness may have in the outcome of these proceedings.

You should remember that a simple mistake does not necessarily mean that the witness is not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness makes a misstatement, you must consider whether it is simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find the testimony in this case to be in conflict, it will be your duty at the end of the case to reconcile the conflicts if you can.  If you cannot do so, it is your duty to give credit and to disregard that portion of the testimony that you, in your judgment, deem not worthy of credit.

Lastly, the number of witnesses presented is not important; concentrate on how believable the witnesses are and how much weight you believe their testimony deserves.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

6

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

In this trial, the parties may present "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness that, if you believe the testimony, directly proves a fact. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of facts and circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

**EXPERT WITNESSES**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, is permitted to state an opinion on those technical matters.

The value of this kind of testimony depends upon the qualifications and skill of the witness, the sources of the witness's information, and the reasons supplied for any opinions given. You should consider this kind of testimony like all other testimony you hear and weigh it by the same tests. However, as with any other witness, you are not required to accept any expert's opinions. It will be up to you to decide whether to rely upon them.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

## GENERAL INSTRUCTION

Until this case is submitted to you for your deliberation, you are to keep an open mind and not decide any issue in this case. You also must not discuss this case with anyone, remain within hearing of anyone discussing it, or read any newspaper article that discusses it. After this case has been submitted to you, you must discuss this case only in the jury room when all members of the jury are present.

It is important that you wait until all the evidence is received and you have heard my instructions on rules of law before you deliberate among yourselves. The only evidence you may consider will be the evidence presented at trial. Because of this, you should not attempt to gather any information on your own that you think might be helpful. Do not do any outside reading on this case and do not in any other way try to learn about the case outside the courtroom.

The reason for these rules, as I am certain you will understand, is that you must decide this case solely on the evidence presented at the trial.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

**COURSE OF THE TRIAL**

The case will now begin.

First, Power Integrations may make an opening statement outlining its case.  Then Fairchild may make an opening statement outlining its case.  Neither side is required to make an opening statement.  Opening statements are not evidence; their only purpose is to help you understand what the evidence will be.

Next, the parties will present their evidence.  Power Integrations will first introduce the evidence that it believes will support its claims.  When Power Integrations is finished, Fairchild will introduce evidence to defend against Power Integrations' claims.  Power Integrations then has the opportunity to offer rebuttal evidence.

After you have heard all of the evidence, I will instruct you on the law that you must apply in this case.  Then each side may make a closing argument, although no one is required to do so.  The closing arguments are not evidence; their only purpose is to give each side the opportunity to summarize its case and to help you understand the evidence it has presented.

Finally, after the closing arguments, you will deliberate and arrive at your verdict.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

## GLOSSARY OF PATENT TERMS

Assignment                    Transfer of ownership rights in a patent or patent
                              application from one person or company to another.

Claims                        That part of a patent which defines the metes and bounds of
                              the invention.  These are found at the end of the patent
                              specification in the form of numbered paragraphs.

Disclosure of description     That part of the patent specification which explains how
the

                              invention works and usually includes a drawing.

File wrapper                  The written record of proceedings in the Patent Office
                              including the original patent application and subsequent
                              communications between the Patent Office and applicant.

Patent Application            The initial papers filed in the United States Patent and
                              Trademark Office (patent Office or PTO) by an applicant.
                              These typically include a specification, drawings and the
                              oath (Declaration) of applicant.

Patent Examiners              Personnel employed by the Patent Office having expertise
                              in various technical areas who review (examine) patent
                              applications to determine whether the claims of a patent
                              application are patentable and the disclosure adequately
                              describes the invention.

Prior Art                     Any information which is used to describe public, technical
                              knowledge prior to the invention by applicant or more than
                              a year prior to his/her application.

References                    Any item of prior art (publication or patent) used to
                              determine patentability.

Specification                 That part of the patent application or patent which
                              describes the invention and concludes with one or more
                              claims.


Source: *Uniform Jury Instr. For Patent Cases in the D. Del*

11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, | |
| Plaintiff, | |
| v. | C.A. No. 04-1371 JJF |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, | |
| Defendants. | |

**POWER INTEGRATIONS' [PROPOSED] FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

PATENT LAW – GENERAL ................................................................................... 2

DUTIES AS JURORS ............................................................................................. 3

BURDEN OF PROOF ............................................................................................. 4

EVIDENCE ............................................................................................................. 5

WITNESSES - CONFLICTS IN TESTIMONY ..................................................... 6

DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................ 7

EXPERT WITNESSES .......................................................................................... 8

GENERAL INSTRUCTION ................................................................................... 9

COURSE OF THE TRIAL ..................................................................................... 10

GLOSSARY OF PATENT TERMS ....................................................................... 11

      I.1    INTRODUCTION ..................................................................... 1

      I.2    JURORS' DUTIES ..................................................................... 2

      I.3    BURDEN OF PROOF ............................................................... 3

      I.4    EVIDENCE DEFINED ............................................................. 4

      I.5    CONSIDERATION OF EVIDENCE ........................................ 5

           I.5.1   USE OF NOTES ................................................... 6

      I.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE ...................... 7

      I.7    CREDIBILITY OF WITNESSES ................................................ 8

      I.8    NUMBER OF WITNESSES ...................................................... 9

      I.9    EXPERT WITNESSES .............................................................. 10

      I.10   DEPOSITION TESTIMONY ..................................................... 11

      I.11   DEMONSTRATIVE EXHIBITS ............................................... 12

i

THE PARTIES AND THEIR CONTENTIONS ................................................. 13

    II.1    THE PARTIES ................................................................ 13

    II.2    POWER INTEGRATIONS' CONTENTIONS .......................... 14

    II.3    FAIRCHILD'S CONTENTIONS ................................................. 15

    II.4    SUMMARY OF PATENT ISSUES ............................................ 16

 THE PATENT CLAIMS ................................................................. 17

    III.1    PATENT CLAIMS GENERALLY ............................................. 17

    III.2    DEPENDENT AND INDEPENDENT CLAIMS ....................... 18

    III.3    CONSTRUCTION OF CLAIMS .............................................. 19

    III.4    MEANS-PLUS-FUNCTION CLAIMS ...................................... 20

IV.  PATENT INFRINGEMENT ........................................................ 22

    IV.1    PATENT INFRINGEMENT GENERALLY ............................. 22

    IV.2    DIRECT INFRINGEMENT ........................................................ 23

    IV.3    DIRECT INFRINGEMENT – LITERAL INFRINGEMENT ..... 24

    IV.4    DOCTRINE OF EQUIVALENTS ............................................. 25

    IV.5    INDIRECT INFRINGEMENT – GENERALLY ........................ 27

            IV.5.1  INDUCING PATENT INFRINGEMENT ...................... 28

            IV.5.2  CONTRIBUTORY INFRINGEMENT .......................... 29

    IV.6    WILLFUL INFRINGEMENT ...................................................... 30

VALIDITY ...................................................................................... 31

    V.1    PRESUMPTION OF VALIDITY ............................................... 31

    V.2    ANTICIPATION ...................................................................... 32

            V.2.1  PRIOR INVENTION ...................................................... 33

    V.3    OBVIOUSNESS ...................................................................... 35

            V.3.1  SCOPE AND CONTENT OF THE PRIOR ART ........... 36

            V.3.2  DIFFERENCES OVER THE PRIOR ART .................... 37

V.3.3    LEVEL OF ORDINARY SKILL ..................................... 38

V.3.4    MOTIVATION TO COMBINE ...................................... 39

V.3.5    HINDSIGHT ................................................. 40

V.3.6    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
(SECONDARY CONSIDERATIONS) ............... 41

V.4      ENABLEMENT ................................................. 42

DAMAGES ........................................................................ 43

VI.1     COMPENSATORY DAMAGES IN GENERAL ....................... 43

VI.2     BURDEN OF PROOF – REASONABLE CERTAINTY .......... 44

VI.3     METHODS FOR COMPUTING DAMAGES ............................ 45

VI.4     LOST PROFITS — LOST SALES .............................. 46

VI.5     LOST PROFITS — PRICE EROSION ......................... 47

VI.5.1   FUTURE PROFITS – DETERMINATION ................... 48

VI.6     REASONABLE ROYALTY ....................................... 49

VI.6.1   FACTORS FOR DETERMINING REASONABLE
ROYALTY ....................................................... 50

VI.7     CLOSING STATEMENT — DAMAGES ................................. 52

VI.8     CURATIVE INSTRUCTION ....................................... 53

DELIBERATION AND VERDICT ....................................................... 54

VII.1    INTRODUCTION ....................................................... 54

VII.2    UNANIMOUS VERDICT ........................................... 55

VII.3    DUTY TO DELIBERATE ........................................... 56

VII.4    COURT HAS NO OPINION ....................................... 57

**GENERAL INSTRUCTIONS**

**I.1    INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.1*

**I.2     JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.2*

**I.3      BURDEN OF PROOF**

This is a civil case in which Power Integrations, Inc. is charging Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, which are collectively referred to as "Fairchild," with patent infringement.  Power Integrations has the burden of proving patent infringement by what is called a preponderance of the evidence.  That means Power Integrations has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Power Integrations claims is more likely true than not.  To put it differently, if you were to put Power Integrations' and Fairchild's evidence on the opposite sides of a scale, the evidence supporting Power Integrations' claims would have to make the scales tip somewhat on Power Integrations' side.

In this case, Fairchild is urging that Power Integrations' patents are not valid.  A patent, however, is presumed to be valid.  Accordingly, Fairchild has the burden to prove the patent-in-suit is not valid by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Power Integrations must also prove its claims of willful infringement by clear and convincing evidence rather than preponderance of the evidence, the standard that applies to Power Integrations' other claims in this case.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and does not play any part in this case.  Therefore, you should not consider it at all in your deliberations.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.3*

3

### I.4     EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.5     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.5.1     USE OF NOTES**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

6

**I.6      DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.7    CREDIBILITY OF WITNESSES**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.8    NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.9    EXPERT WITNESSES**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – a person called an expert witness – is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del.*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.10    DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.11    DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## THE PARTIES AND THEIR CONTENTIONS

**II.1     THE PARTIES**

The plaintiff in this case is Power Integrations, Inc.  The defendants are Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation.  I will refer to plaintiff as "Power Integrations."  I will refer to defendants as "Fairchild."

## II.2   POWER INTEGRATIONS' CONTENTIONS

Power Integrations contends that Fairchild has infringed, and continues to infringe, various claims of Power Integrations' patents by making, using, selling, offering for sale, and marketing certain integrated circuits, or "chips," for use in power supplies. Specifically, Power Integrations charges that Fairchild has infringed, and continues to infringe, claims 1, 17, and 19 of U.S. Patent 6,249,876; claims 1, 2, 4, 10, 11, 13, and 16 of U.S. Patent 6,107,851; claims 1, 2, 9, 10, 14, and 16 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075.  I will refer to these four patents collectively as the "patents-in-suit," or individually by the last three numbers of the patents.

Power Integrations contends that Fairchild's power supply controller chips, infringe Power Integrations patented high-voltage transistors and, when used as directed by Fairchild, practice Power Integrations' patented methods.

14

**II.3    FAIRCHILD'S CONTENTIONS**

Fairchild contends that its products do not infringe, literally or under the doctrine of equivalents, any of the asserted claims of the patents-in-suit.  Fairchild also contends that the Power Integrations patents-in-suit are not valid.

**II.4     SUMMARY OF PATENT ISSUES**

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

1.     Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has infringed any of the asserted claims of the patents-in-suit.

2.     If you find any of the asserted claims of the patents-in-suit are infringed, whether Power Integrations has proven by clear and convincing evidence that Fairchild's infringement was willful.

3.     Whether Fairchild has proven by clear and convincing evidence that any of the asserted claims of the patents-in-suit are invalid.

4.     If you find any of the asserted claims of the patents-in-suit are valid and infringed, the amount of damages that Power Integrations has proven by a preponderance of the evidence is due to it.

16

# THE PATENT CLAIMS

## III.1   PATENT CLAIMS GENERALLY

Before you can decide whether or not Fairchild has infringed any of Power Integrations' patents, you will have to understand the patent "claims." Patent claims are the numbered paragraphs at the end of a patent. The patent claims involved here are claims 1, 17, and 19 of U.S. Patent 6,249,876; claims 1, 2, 4, 10, 11, 13, and 16 of U.S. Patent 6,107,851; claims 1, 2, 9, 10, 14, and 16 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Claims may be directed to products, such as machines or chemicals, or they may be directed to methods for making or using a product. Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

When making your decision regarding infringement, you should not compare Fairchild's products with any specific example set out in the patents-in-suit, or with any product manufactured by Power Integrations. Rather, you must only compare Fairchild's products with the asserted claims of the patents-in-suit.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.1*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

.

17

## III.2   DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claims 1 and 17 of the '876 patent are independent claims.  You know this because each of these claims mentions no other claims.  Accordingly, the words of each of these claims are read by themselves in order to determine what each of the claims covers.

Claim 19 of the '876 patent, on the other hand, is a dependent claim.  It refers to claim 17.  For a Fairchild product to infringe a dependent claim 19, the Fairchild product must have all the elements of both claim 17 and claim 19.  Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.2*

**III.3    CONSTRUCTION OF CLAIMS**

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of claim.

You must apply the meaning that I give in each patent claim to decide if such claim is valid and infringed. You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here. The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied:

**[insert claim constructions]**

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.2*

19

### III.4    MEANS-PLUS-FUNCTION CLAIMS

Certain claims of the patents have what are known as a "means-plus-function" element. The claim defines this element as a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs and glue; or an inventor could discuss in the patent the use of glue for attaching legs and then claim a table as being a tabletop, legs and means for attaching the legs to the tabletop. The means-plus-function element would cover glue and any equivalent structure that performed the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the function as specified in the claim. If not, the claim containing that means-plus-function element is not infringed.

Second, if Fairchild's accused product does perform the required function, you must identify the structure in Defendant's accused product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the following structure identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill would have believed that the structure of

the accused product and the structure in the patent were interchangeable as of the date the patent issued.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.7*

**IV. PATENT INFRINGEMENT**
**IV.1    PATENT INFRINGEMENT GENERALLY**

A patent owner may enforce its right to stop others from making, using, selling, or offering to sell the patented invention by filing a lawsuit for patent infringement. Here, Power Integrations, the patent owner, has sued Fairchild, the accused infringer, and has alleged that Fairchild's products infringe one or more claims of Power Integrations' patents-in-suit.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell, or imports, without the patent owner's permission, any product or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There are several ways to infringe a patent. One may directly infringe a patent, either literally or under the doctrine of equivalents. Alternatively, one may indirectly infringe a patent, either (1) by inducing others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement; or (2) by contributing to the infringement of a patent by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**IV.2    DIRECT INFRINGEMENT**

In this case, if you find that Power Integrations has proven by a preponderance of the evidence that Fairchild has made, used, sold, offered to sell, or imported the invention defined in at least one claim of a patent-in-suit, Fairchild would be liable for infringing that patent.

Keep in mind that a person may directly infringe a patent without knowledge that what he is doing infringes the patent.  He may also infringe even though in good faith he believes what he is doing does not infringe any patent.

Source: *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**IV.3    DIRECT INFRINGEMENT – LITERAL INFRINGEMENT**

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For Fairchild's product to literally infringe any one of Power Integrations' patent claims, the subject matter of the patent claim must be found in Fairchild's product or use of its product.  In other words, one of Power Integrations' patent claims is literally infringed if Fairchild's product or use of its product includes each and every element in that claim.  If Fairchild's product or use of its product omits any single component recited in Power Integrations' patent claim, Fairchild does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.1*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## IV.4   DOCTRINE OF EQUIVALENTS

If you do not find literal infringement, you may consider infringement under the doctrine of equivalents.  I have referred to the "doctrine of equivalents" before.  Now it is time to explain this term.

As I have noted, to infringe a patent, every claim element must be present in the accused product.  A claim element may be present in an accused product in one of two ways, either literally or under the doctrine of equivalents.  A claim element is literally present if it exists in the accused product just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused product under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused product are insubstantial.  One way to determine this is to look at whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for Fairchild's product or use of its product to infringe any one of Power Integrations' asserted claims under the doctrine of equivalents, the element of a patent claim which is not literally found in a Fairchild product must be present by equivalence.  Therefore, the question is whether the accused product contains an equivalent for each element of the claim that is not literally present in the accused product.  The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a whole.

25

The doctrine of equivalents does not require complete equivalence for every purpose and in every respect.  You must consider the purpose of the element, and the function it is intended to perform.  It is not necessary that any single component of the accused product be equivalent to a particular element of the claimed invention; two or more components of the accused product may operate together to be an equivalent of a single element of the claimed invention.  What is important is that each element required by the claim or its equivalent must be present somewhere in the accused device.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued.  The question of whether Fairchild's product and its components are equivalent to what is defined in Power Integrations' claims is to be determined as of the time of the alleged infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.4*

**IV.5    INDIRECT INFRINGEMENT – GENERALLY**

In addition to stopping infringement by those who are directly infringing, a patent owner also has the right to stop those who are known as "indirect infringers."  A holder of a patent that describes a process or method in its claims often must rely on claims of indirect infringement to protect his or her rights.  That is, without liability for indirect infringement, a company could manufacture a machine to perform a process described in a patent claim and then sell the machine without fear of recourse by the patent holder. There are two types of indirect infringers.  First, there are those who encourage or induce others to infringe a patent; this is known as "inducing infringement."  Second, there are those who contribute to infringement by, for example, supplying them with components used in the patented invention.  I will explain to you in a moment the precise requirements for finding someone has induced or contributed to infringement by another person.

In this case, Power Integrations accuses Fairchild of inducing and contributing to the infringement of the patents-in-suit.  It is your job to determine whether Power Integrations has proven inducement and/or contributory infringement by a preponderance of the evidence.  Keep in mind that there can be no indirect infringement unless someone is directly infringing the patent.  Thus, to prove that Fairchild is inducing another person to infringe or contributing to the infringement of another, Power Integrations must prove by a preponderance of the evidence that Fairchild or another person is directly infringing a claim of the patent.  Such proof may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.7*

**IV.5.1 INDUCING PATENT INFRINGEMENT**

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent - inducement to infringe cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur without any intent to infringe. To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the asserted patent claims. For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that Fairchild induced infringement of a patent, Power Integrations must prove by a preponderance of the evidence the following three things:

1.      Fairchild actively encouraged or instructed another person how to use a product in a way you, the jury, finds infringes the patent claims;

2.      Fairchild knew of the patent-in-suit; and

3.      the other person infringed an asserted claim of the patent-in-suit.

All three of these things must be proven by either direct or circumstantial evidence before you may find that Fairchild induced patent infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.7.1*

**IV.5.2 CONTRIBUTORY INFRINGEMENT**

A second form of indirect infringement is contributory infringement. Contributory infringement can occur when someone supplies a part that is used to infringe one of the patent claims. The necessary proof to show contributory infringement is focused on the intent of the person supplying the part and the nature of that part. Specifically, to prove contributory infringement by Fairchild, Power Integrations must prove by a preponderance of the evidence the following three things:

1.      The part supplied by Fairchild is not simply a common part used for significant non-infringing uses, but rather, the part is especially made or adapted for a use that infringes the claimed invention.

2.      Fairchild knew of the patent and sold the accused part knowing that the part was especially made for a use that infringes the invention.

3.      Someone then bought the part and actually used it in a way that infringes each limitation of an asserted claim of the patent.

All three of these things must be proven by direct or circumstantial evidence before you may find that Fairchild contributed to the patent infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.7.2*

**IV.6    WILLFUL INFRINGEMENT**

If you find on the basis of the evidence and the law as I have explained it that Fairchild's product infringes at least one of Power Integrations' patent claims, you must further decide whether or not Power Integrations has proven by clear and convincing evidence that Fairchild's infringement was willful.  Willful infringement is established where Power Integrations has proven two things:  first, that Fairchild was aware of Power Integrations' patents; and second, that Fairchild had no reasonable good faith basis for concluding that it did not infringe Power Integrations' patents.

For example, if you find that Power Integrations has proven that Fairchild knew about the patents and did not exercise due care to determine whether or not it was infringing the patents, you may find that Fairchild's infringement was willful.

One factor to consider with respect to Fairchild's good faith and due care in determining the infringement and validity issues is whether Fairchild obtained and followed competent legal advice from an attorney after becoming aware of Power Integrations' patents.  A good faith opinion means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers.  Moreover, you should consider whether Fairchild actually relied upon and followed its attorney's opinion.

Another factor in determining whether Power Integrations has proven willful infringement is your assessment of whether or not Fairchild copied Power Integrations' inventions or products covered by Power Integrations' patent claims, or whether Fairchild instead tried to "design around" the patent by designing a product that Fairchild believed did not infringe the patent claims.  Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

30

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.11.*

## VALIDITY

### V.1    PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

This presumption of validity puts the burden of proving invalidity on Fairchild. While this presumption can be rebutted, the burden is on Fairchild to do so. This burden requires that Fairchild prove by clear and convincing evidence that in this case, each of the asserted claims is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.1.*

**V.2     ANTICIPATION**

Fairchild contends that the inventions covered by claims of the patent-in-suit are invalid because they are not new.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles and other patents.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," Fairchild must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.

There cannot be an accidental or unrecognized anticipation.  A prior duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purpose, is not an invalidating anticipation.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.5*

### V.2.1   PRIOR INVENTION

Fairchild contends that the '075 patent is invalid because a person invented the invention before the patentee did.

In the United States, a patent is awarded to the first inventor.  A patent claim is invalid if: (i) the invention defined by that claim was invented by another person in the United States, before it was invented by the patentee; and (ii) that other person did not abandon, suppress or conceal the invention.

A party abandons, suppresses or conceals the invention if, after reducing the invention to practice, the party unreasonably delays making the invention public, selling it, or otherwise using it for a commercial purpose.

There is no particular length of delay that is per se unreasonable.  You must decide whether, under the facts before you, any delay between the reduction to practice and public disclosure was reasonable or excused.  In making this determination, you should consider the length of the delay period, the existence and nature of any activity during the delay period, or the lack of activity during the delay period.  If there was a lack of activity, consider the cause of the resumption of activity.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

There is, however, an important exception to this general rule.  Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she

33

exercised reasonable diligence in reducing the invention to practice from a time just before the other person's conception.  Conception of an invention occurs when the inventor has formed a definite and permanent idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort.  An idea is defined and permanent when the inventor has a specific, settled idea or a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.  Where a party seeks to show conception through oral testimony of an inventor, corroboration of this evidence is required.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.5.3*

### V.3     OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.     Determine the scope and content of the prior art relied upon by Fairchild;

2.     Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.     Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.     Consider whether there was sufficient motivation to combine the prior art references to satisfy all of the elements of the claims;

5.     Check that you have not relied on hindsight; and

6.     Consider objective factors of non-obviousness.

I will explain each of these factors in more detail in a moment.  Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8*

### V.3.1  SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.  The prior art that Fairchild contends render the patents-in-suit obvious includes the following:

1.      prior patents that issued before the critical date for a particular patent;

2.      prior publications having a publication date before the critical date for a particular patent;

3.      U.S. Patents that have a filing date prior to the critical date for a particular patent;

4.      anything in public use or on sale in the United States before the critical date for a particular patent;

5.      anything that was publicly known or used by others in this country before the date of invention of a patent-in-suit; and

6.      anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1*

**V.3.2   DIFFERENCES OVER THE PRIOR ART**

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences.  The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art.  Each claim must be considered separately and in its entirety.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.2*

### V.3.3   LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made.  A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.3*

### V.3.4   MOTIVATION TO COMBINE

Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.  The suggestion or motivation to combine and the expectation of success must be found in: the prior art itself, the knowledge of persons of ordinary skill in the art, or, in some cases, the nature of the problem to be solved.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.4*

**V.3.5   HINDSIGHT**

The question of obviousness is simple to ask but difficult to answer.  A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the patent-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5*

**V.3.6   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)**

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue:

1.      Commercial success or lack of commercial success of products covered by the patents-in-suit;

2.      A long felt need in the art which was satisfied by the invention of the patent-in-suit;

3.      The failure of others to make the invention;

4.      Copying of the invention by others in the field;

5.      Unexpected results achieved by the invention;

6.      Praise of the invention by the infringer or others in the field;

7.      The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or features of the product other than those claimed in the patent-in-suit, then commercial success may have no relation to the issue of obviousness.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.6*

## V.4     ENABLEMENT

Fairchild contends that the '075 patent is invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter that is commonly understood by persons skilled in the art.  Similarly, a specification need not contain a working example if the patent disclosure is otherwise enabling.  Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.3.*

## DAMAGES

### VI.1    COMPENSATORY DAMAGES IN GENERAL

If, after considering all of the evidence and the law as I have stated it, you have determined that there are no patent claims at issue that are both valid and infringed, your verdict should be for Fairchild and you need go no further in your deliberations.  On the other hand, if you decide that one or more of the patent claims are valid and have been infringed by Fairchild, you must then turn to the issue of damages.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty rate for the use made of the invention by the infringer.  Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Fairchild benefited from, realized profits from, or even lost money as a result of the acts of infringement.  It is also not relevant if Fairchild did not foresee that it would cause Power Integrations.  The only issue is the amount necessary to adequately compensate Power Integrations for infringement by Fairchild.  Adequate compensation should return Power Integrations to the position it would have been in had there been no infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.1-5.2*

43

**VI.2     BURDEN OF PROOF – REASONABLE CERTAINTY**

Power Integrations has the burden of proving damages by what is called a preponderance of the evidence.  As you recall, that means that Power Integrations has to produce evidence that, when considered in the light of all the facts, leads you to believe that what Power Integrations claims is more likely true than not.  To put it differently, if you were to put Power Integrations' and Fairchild's evidence concerning damages on the opposite sides of a scale, the evidence supporting Power Integrations' claims would have to make the scales tip somewhat on its side.  Power Integrations is entitled to all damages that can be proven with reasonable certainty.  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Power Integrations.  On the other hand, Power Integrations is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or left to conjecture.  You may base your evaluation of reasonable certainty on opinion evidence.  Any doubts regarding the computation of the amount of damages should be resolved against Fairchild and in favor of Power Integrations.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.3*

**VI.3     METHODS FOR COMPUTING DAMAGES**

There are two common methods for computing damages in a patent infringement case. One is called "lost profits," and the other is called "reasonable royalty." These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

Thus, in determining damages, you must first determine if Power Integrations has proven its entitlement to lost profits. Lost profit damages are the profits Power Integrations lost because of the infringement. They are not the profits that Fairchild actually made. Power Integrations' lost profits may be in several different forms, which I will explain in a moment. They include (i) lost sales, (ii) eroded prices for sales actually made; and (iii) eroded prices for future sales.

Only if you find that Power Integrations is not entitled to lost profits, will you then determine Power Integrations' damages based on a reasonable royalty. I will explain reasonable royalty after I explain lost profits.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.5, 5.7*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## VI.4    LOST PROFITS — LOST SALES

In order to recover lost profits damages for lost sales, Power Integrations must show the following: (i) there was a demand for the patented product; (ii) Power Integrations had the ability to meet the market demand; (iii) no acceptable non-infringing substitutes were available; and (iv) the amount of the profit it would have made.

Power Integrations need not negate every possibility that purchasers of Fairchild's products might have bought another product.  Mere existence of a competing device does not make that product an acceptable substitute.  However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes. To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products.

In proving its damages, Power Integrations' burden of proof is not an absolute one, but rather a burden of reasonable probability.  If it is reasonably probable that Power Integrations would have made some of the infringing sales, and it is reasonably probable what amount Power Integrations would have netted from the denied sales, then Fairchild is liable for the lost profits on those infringing sales.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.8*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## VI.5    LOST PROFITS — PRICE EROSION

In this case, Plaintiff is requesting damages based on "price erosion."  Price erosion occurs when the patentee is forced to lower prices due to the presence in the market of the infringing product.  Specifically, Power Integrations asserts that it lowered its prices for certain of its products and will be unable to raise prices for some period of time in the future because of Fairchild's infringement.

If you determine that the prices on Power Integration's products were eroded, you must then consider whether any such price erosion resulted because Fairchild was in the market or because of some other reason.

Ultimately, to recover price erosion damages, Power Integrations must prove that "but for" Fairchild's competition, it would not have lowered its prices.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.11*

47

**VI.5.1 FUTURE PROFITS – DETERMINATION**

In considering the element of future profits, you should determine whether or not Fairchild's infringement of the patents prevented Power Integrations from earning profits that would have accrued to it but for that infringement. Power Integrations must present reliable economic evidence to support an award of future lost profits and cannot rely upon mere speculation. In determining whether or not any part of Power Integrations' damages constitute future profits, you may consider the past experience of Power Integrations and Fairchild in the business, the competition Power Integrations would have had, and the general market conditions.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.13*

## VI.6    REASONABLE ROYALTY

If you find that Power Integrations is not entitled to lost profits, then Power Integrations is entitled to a reasonable royalty.  A reasonable royalty is the minimum permissible measure of damages set by the patent laws and is not necessarily the actual measure of damages.  Rather, it is the floor below which damages should not fall.  You may find damages in excess of a reasonable royalty if you find that the facts so warrant.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Power Integrations and Fairchild, with both operating under the assumption that the negotiated patents are valid and are being infringed by Fairchild's product or method of using its product.

The reasonable royalty must be calculated as of the point in time just prior to when infringement began.

In the hypothetical arm's length negotiation, you must assume that the person negotiating on behalf of Fairchild, and who was willing to take a license, would have known that Power Integrations' patents were valid and were infringed by Fairchild.  You should also assume that both Power Integrations and Fairchild knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Fairchild's use of the patented inventions, including the opinion testimony of experts.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.14*

## VI.6.1 FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining such a reasonable royalty, some of the factors that should be considered are:

1.    the royalties received by Power Integrations for licensing others under the patents-in-suit;

2.    the rates paid by Fairchild for the use of other patents comparable to the patents-in-suit;

3.    the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured products may be sold;

4.    Power Integrations' established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    the commercial relationship between Power Integrations and Fairchild, such as whether they are competitors in the same territory in the same line of business;

6.    the duration of the patents and the corresponding terms of the hypothetical licenses;

7.    the established profitability of the products made under the patents, their commercial success, and their current popularity;

8.    the utility and advantages of the patented invention over old devices, if any, that had been used for achieving similar results;

9.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Power Integrations, and the benefits to those who have used the invention;

50

10.     the extent to which Fairchild has made use of the invention, and any evidence that shows the value of that use;

11.     the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

12.     the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by Fairchild;

13.     the opinion testimony of qualified experts; and

14.     any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.14.1*

**VI.7    CLOSING STATEMENT — DAMAGES**

In determining the amount of a damages award, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Power Integrations has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that Power Integrations is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing Fairchild or to set an example.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.16*

**VI.8    CURATIVE INSTRUCTION**

The fact that I have instructed you regarding damages should not be construed as suggesting any view of the Court as to which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find that Fairchild has infringed one or more claims of Power Integrations' patents-in-suit.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.17*

## DELIBERATION AND VERDICT

## VII.1  INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.1*

## VII.2   UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges — judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.2*

**VII.3   DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that — your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.3*; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**VII.4   COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.4*

PI-F PI Proposed Jury Instructions 50348908.wpd