**Exhibit 1 to the Proposed Pretrial Order**

## STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

1.     Plaintiff Power Integrations, Inc. is a Delaware corporation having its principal place of business in San Jose, California.

2.     Defendant Fairchild Semiconductor International, Inc. is a Delaware corporation having its principal place of business in Portland, Maine.

3.     Defendant Fairchild Semiconductor Corporation is a Delaware corporation having its principal place of business in Portland, Maine.

4.     The patents at issue in this case are United States Patent No. 6,249,876 B1 ("the '876 patent") entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply," issued on June 19, 2001 to Balu Balakrishnan, Alex Djenguerian, and Leif Lund;  United States Patent No. 6,107,851 ("the '851 patent") entitled "Off-line converter with Integrated Softstart and Frequency Jitter," issued on August 22, 2000 to Balu Balakrishnan, Alex Djenguerian, and Leif Lund;  United States Patent No. 6,229,366 B1 ("the '366 patent"), entitled "Off-line converter with Integrated Softstart and Frequency Jitter," issued on May 8, 2001 to Balu Balakrishnan, Alex Djenguerian, and Leif Lund; and United States Patent No. 4,811,075 ("the '075 patent"), entitled "High Voltage MOS Transistors," issued on March 7, 1989 to Klas Eklund.  Collectively, these four patents are sometimes referred to as "the Patents-in-Suit."  Power Integrations is the owner of all right, title, and interest to the Patents-in-Suit.

2

5.    Fairchild engineers reviewed Power Integrations' '075 patent no later than 1998.

6.    Fairchild engineers reviewed Power Integrations' '876 patent.

7.    Fairchild provides data sheets, application notes, and other materials, including materials available on Fairchild's internet website www.fairchildsemi.com.

8.    The application leading to U.S. Patent No. 4,823,173 was filed before the application leading to U.S. Patent No. 4,811,075.

Power Integrations v. Fairchild

**Exhibit 2**

**Power Integrations' Statement of Issues of Fact Remaining to be Litigated and Expected Proof**

Power Integrations expects that it will present the below listed issues of fact at trial. To the extent that any issues of law set forth in Exhibit 4 of the Joint Pretrial Order may be considered issues of fact, Power Integrations incorporates those portions of Exhibit 4 by reference. These issues of fact may change based on the Court's decisions on Fairchild's seven motions for summary judgment, which are currently before the Court, and motions *in limine*.

**I.    Power Integrations' Statement of Issues of Fact**

**A.    Infringement by Fairchild**

Power Integrations will demonstrate that Fairchild's accused products infringe the asserted claims of the patents-in-suit and that such infringement was willful. Power Integrations will make this proof with the testimony of the inventors, experts Robert Blauschild and Michael Shields, and current and former Fairchild employees, as well as documents and things that have been produced in this case. To that end, the following specific factual issues with respect to infringement remain to be determined at trial:

1. Whether Power Integrations proved by a preponderance of the evidence that Fairchild literally infringes the asserted Claims of the patents-in-suit.

2. Whether Power Integrations proved by a preponderance of the evidence that Fairchild has contributed to the infringement of the asserted Claims of the patents-in-suit.

3. Whether Power Integrations proved by a preponderance of the evidence that Fairchild has induced infringement of the asserted Claims of the patents-in-suit.

4. Whether Power Integrations proved by a preponderance of the evidence that Fairchild infringes any of the asserted claims of the '876, '851, or '366 patents under the doctrine of equivalents.

5. Whether Power Integrations proved by clear and convincing evidence that Fairchild's infringement of any of the patents-in-suit, if any, was willful.

**B.    Validity of Power Integrations' Patents**

The following specific factual issues with respect to the validity of Power Integrations' Patents remain to be determined at trial:

1. Whether any Claims of the '876 patent, the '851 patent, the '366 patent, or the '075 patent are anticipated by the prior art.

2. What the level of ordinary skill in the art was at the time of the invention of the Patents-in-Suit.

3. The content and scope of the prior art asserted by Fairchild as rendering the inventions of the asserted Claims of the '876 patent, the '851 patent, the '366 patent, and the '075 patent obvious.

4. The differences between the asserted Claims of the '876 patent, the '851 patent, the '366 patent, and the '075 patent and the prior art asserted by Fairchild as rendering those patents obvious.

5. Whether any of the following objective evidence of non-obviousness tends to show that the asserted Claims of the '876 patent, the '851 patent, the '366 patent, or the '075 patent are not obvious, the extent of any proffered objective evidence of non-obviousness, and whether a nexus exists between the evidence and the claimed inventions:

   a. Commercial success of products covered by the patent in suit;
   b. A long felt, unmet need in the art that was satisfied by the invention;
   c. The failure of others to make the invention;
   d. Copying of the invention by others in the field;
   e. Initial skepticism of the invention by others in the field; and
   f. Praise of the invention by the infringer or others in the field.

6. Where Fairchild is relying on a combination of references to assert invalidity under 35 U.S.C. §103, whether there is a suggestion to combine the references.

7. Whether there is a suggestion or motivation in the prior art to modify the prior art asserted by Fairchild to arrive at the invention claimed in the patents-in-suit.

8. Whether Claims 1 and 5 of the '075 patent and Claims 17-19 of the '876 patent are enabled.

## C.   Power Integrations' Damages

Power Integrations will demonstrate that it has suffered damages from Fairchild's infringement of the asserted claims of the patents-in-suit and that Power Integrations is entitled to remedies including damages in the form of (1) lost profits from lost sales, (2) lost profits from price erosion, and/or (3) a reasonably royalty. Power Integrations will make this proof with the testimony of Balu Balakrishnan, Bruce Renouard, Richard Troxel, and current and former Fairchild employees, as well as documents and things that have been produced in this case. To that end, the following specific factual issues with respect to damages remain to be determined at trial:

1. Whether Power Integrations was damaged by any alleged infringement by Fairchild.

2. What is the proper measure of any damages due to Power Integrations as a result of any infringement by Fairchild?

3. What is the amount of any damage to Power Integrations resulting from Fairchild's infringement?

## II.    Power Integrations' Statement of Intended Proof

Power Integrations will offer the following proof at trial:

### A.    Background

1. The founding and business of Power Integrations.

2. The invention of the patents-in-suit.

3. The development and commercialization of the patented technology by Power Integrations.

4. Competition with Fairchild.

### B.    Infringement by Fairchild

1. Proof that Fairchild directly infringes, literally and/or by equivalence, the asserted Claims of the patents-in-suit.

2. Proof that Fairchild customers use the accused FPS devices in a manner that satisfies all of the elements of the asserted Claims of the patents-in-suit.

3. Proof that Fairchild actively induces its customers to use the FPS devices in a manner that satisfies all of the elements of the asserted Claims of the patents-in-suit.

4. Proof that Fairchild offers to sell or sells the accused FPS devices in a way that contributes to infringement by its customers of the asserted Claims of the patents-in-suit.

5. Proof that Fairchild's infringement of the asserted Claims of the patents-in-suit was willful.

### C. Validity of Power Integrations' Patents

1. Proof that rebuts Fairchild's assertion that any Claim of the patents-in-suit is anticipated by the prior art.

2. Proof that rebuts Fairchild's assertion that any Claim of the patents-in-suit would have been obvious to one of ordinary skill in the art in light of the prior art, including objective indicia of non-obviousness.

### D.  Damages

1. Proof that Power Integrations is entitled to lost profits damages from lost sales to Fairchild in the sum of $5,950,216.

2. Proof that Power Integrations is entitled to lost profits damages from price erosion in the sum of $29,994,434.

3. Proof that Power Integrations is entitled to a reasonable royalty in the sum of $5,950,216.

4. Proof that this case is exceptional, and that Power Integrations is entitled to increased damages.

5. Proof that this is an exceptional case entitling Power Integrations to its costs and reasonable attorneys fees.

50342536.doc

## EXHIBIT 3

### Defendants' Statement of Issues of Fact That Remain to be Litigated

Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. expect to present the below listed issues of law at trial. To the extent that any issues of law set forth in Exhibit 5 of the Joint Pretrial Order may be considered issues of fact, Fairchild incorporates those portions of Exhibit 5 by reference. These issues of law may change based on the Court's decisions on Fairchild's seven summary judgment motions, which are currently pending before the Court, and motions *in limine.*

1.      Whether the Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102.

2.      Whether the Asserted Claims are invalid because they are obvious under 35 U.S.C. § 103.

3.      Whether the Asserted Claims are invalid because they fail to meet the requirements of 35 U.S.C. § 112.

4.      Whether the Asserted Patents are unenforceable because of the inventors', their attorneys', or Power Integrations' inequitable conduct before the United States Patent and Trademark Office.

5.      Whether Power Integrations is barred from obtaining relief under the Asserted Patents by the doctrine of prosecution history estoppel.

6.      Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, or FSD211 devices practice any of claims 1, 2, 4, 7, 9-11, 13, 16, or 17 of the '851 Patent.

7.      Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSDL0365RN, FSDM0365RN, FSDL321, FSDH321, FSDL0165RN, FSDM0265RN, FSDH0265RN, FSDL0165RL, FSDM0265RL, FSDH0265RL, FSDL0365RL, FSDM0365RL, FSDM0265RNB, FSDL0365RNB, FSDM0365RNB, FSCM0565R, FSCM0765R, or FSD500 devices practice any of claims 1, 17, 18, or 19 of the '876 Patent.

8.      Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDM311, FSDM0265RNB, FSDL0365RNB, or FSDM0365RNB devices practice claims 1, 8, 9, 10 or 18 of the '366 Patent.

9.      Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDM0265RNB, FSDL0365RNB, or FSDM0365RNB devices practice claim 14 of the '366 Patent.

10.     Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211 devices practice either claim 2 or claim 16 of the '366 Patent.

11.     Whether any of Fairchild's FAN7601, FSD200, FSD200B, FSD210, FSD210B, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB,

FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices practice either claim 1 or claim 5 of the '075 Patent.

12.    The quantity, if any, of FAN7601, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices (collectively, the "Accused Devices") that Fairchild has made, used, offered to sell, or sold within the United States or imported into the United States since October 20, 2004.

13.    Whether, since October 20, 2004, an identifiable third party has imported into the United States a device(s) incorporating any of the FAN7601, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices.

14.    If so, whether, since October 20, 2004, Fairchild actively induced that importation by that specific third party.

15.    If so, whether, since October 20, 2004, Fairchild has offered to sell or sold within the United States or imported into the United States a component of a machine, manufacture, combination, or composition that practices any of the Asserted Claims, or a material or apparatus for use in practicing the process of claims 17-19 of the '876 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of any of the Asserted Claims and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

16.    The dates of conception and reduction to practice of the '075 Patent.

17.    Whether the alleged inventors of the '075 Patent exercised diligence between the conception of the invention of the '075 Patent and the filing of that patent.

18.    The dates of conception and reduction to practice of U.S. Patent No. 5,264,719.

19.    Whether the inventor of U.S. Patent No. 5,264,719 exercised diligence between the conception of his invention and the filing of his patent.

20.    Whether Power Integrations added new matter during the prosecution of the '075 Patent.

21.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004, what are the appropriate amount of damages.

22.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004, what would constitute a reasonable royalty.

23.    Identification of Power Integrations' competitors.

24.    Identification of non-infringing alternatives to the patented products.

25.    Identification of the relevant market for the products at issue.

26.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004, whether Power Integrations would have made the sales but for Fairchild's infringement.

27.    Whether Power Integrations has reduced its average selling price for its devices since October 20, 2004.

28.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004 and if Power Integrations has reduced its average selling price for its devices since October 20, 2004, whether any portion of this reduction was a result of Fairchild's infringing activities.

29.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004 and if Power Integrations has reduced its average selling price for its devices since October 20, 2004 and if that reduction was a result of Fairchild's infringement, whether Power Integrations will be unable to raise its prices in the future if Fairchild's infringing activities are enjoined.

30.    The appropriate period, if any, for future price erosion.

**EXHIBIT 3A**

**Defendants' Statement of Issues of Fact That Remain to be Litigated**

Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. expect to present the below listed issues of law at trial. To the extent that any issues of law set forth in Exhibit 5 of the Joint Pretrial Order may be considered issues of fact, Fairchild incorporates those portions of Exhibit 5 by reference. These issues of law may change based on the Court's decisions on Fairchild's seven summary judgment motions, which are currently pending before the Court, and motions *in limine*.

 1. Whether the Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102.

 2. Whether the Asserted Claims are invalid because they are obvious under 35 U.S.C. § 103.

 3. Whether the Asserted Claims are invalid because they fail to meet the requirements of 35 U.S.C. § 112.

 4. Whether the Asserted Patents are unenforceable because of the inventors', their attorneys', or Power Integrations' inequitable conduct before the United States Patent and Trademark Office.

 5. Whether Power Integrations is barred from obtaining relief under the Asserted Patents by the doctrine of prosecution history estoppel.

 6. Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, or FSD211 devices practice any of claims 1, 2, 4, 10, 11, 13, or 16 of the '851 Patent.

 7. Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSDL0365RN, FSDM0365RN, FSDL321, FSDH321, FSDL0165RN, FSDM0265RN, FSDH0265RN, FSDL0165RL, FSDM0265RL, FSDH0265RL, FSDL0365RL, FSDM0365RL, FSDM0265RNB, FSDL0365RNB, FSDM0365RNB, FSCM0565R, FSCM0765R, or FSD500 devices practice any of claims 1, 17, or 19 of the '876 Patent.

 8. Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDM311, FSDM0265RNB, FSDL0365RNB, or FSDM0365RNB devices practice claims 1, 9, or 10 of the '366 Patent.

 9. Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDM0265RNB, FSDL0365RNB, or FSDM0365RNB devices practice claim 14 of the '366 Patent.

 10. Whether any of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211 devices practice either claim 2 or claim 16 of the '366 Patent.

 11. Whether any of Fairchild's FAN7601, FSD200, FSD200B, FSD210, FSD210B, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB,

FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices practice either claim 1 or claim 5 of the '075 Patent.

12.    The quantity, if any, of FAN7601, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices (collectively, the "Accused Devices") that Fairchild has made, used, offered to sell, or sold within the United States or imported into the United States since October 20, 2004.

13.    Whether, since October 20, 2004, an identifiable third party has imported into the United States a device(s) incorporating any of the FAN7601, FSCM0565R, FSCM0765R, FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RN, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RLB, FSDM0265RN, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices.

14.    If so, whether, since October 20, 2004, Fairchild actively induced that importation by that specific third party.

15.    The dates of conception and reduction to practice of the '075 Patent.

16.    Whether the alleged inventors of the '075 Patent exercised diligence between the conception of the invention of the '075 Patent and the filing of that patent.

17.    The dates of conception and reduction to practice of U.S. Patent No. 4,823,173.

18.    The dates of conception and reduction to practice of U.S. Patent No. 5,264,719.

19.    Whether the inventor of U.S. Patent No. 4,823,173 exercised diligence between the conception of his invention and the filing of his patent.

20.    Whether the inventor of U.S. Patent No. 5,264,719 exercised diligence between the conception of his invention and the filing of his patent.

21.    Whether Power Integrations added new matter during the prosecution of the '075 Patent.

22.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004, what are the appropriate amount of damages.

23.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004, what would constitute a reasonable royalty.

24.    Identification of Power Integrations' competitors.

25.    Identification of non-infringing alternatives to the patented products.

26.    Identification of the relevant market for the products at issue.

27.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004, whether Power Integrations would have made the sales but for Fairchild's infringement.

28.    Whether Power Integrations has reduced its average selling price for its devices since October 20, 2004.

29.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004 and if Power Integrations has reduced its average selling price for its devices since October 20, 2004, whether any portion of this reduction was a result of Fairchild's infringing activities.

30.    If Power Integrations proves that Fairchild infringed any valid and enforceable claim of the Asserted Patents since October 20, 2004 and if Power Integrations has reduced its average selling price for its devices since October 20, 2004 and if that reduction was a result of Fairchild's infringement, whether Power Integrations will be unable to raise its prices in the future if Fairchild's infringing activities are enjoined.

31.    The appropriate period, if any, for future price erosion.

32.    Whether Power Integrations has suffered an irreparable injury.

33.    Whether remedies available at law are inadequate to compensate for that injury.

34.    Whether considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted.

35.    Whether the public interest would not be disserved by a permanent injunction.

## EXHIBIT 3B

### Defendants' Statement of Intended Proofs

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation intend to rebut Plaintiff Power Integrations, Inc.'s allegations that Defendants have infringed a valid and enforceable claim of a U.S. patent. Since Plaintiff bears the burden of proof, Defendants cannot conclusively determine the proof they may require to rebut Plaintiff's allegations. At present, however, Defendants intend to prove the following:

1.    The Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102.

2.    The Asserted Claims are invalid because they are obvious under 35 U.S.C. § 103.

3.    The Asserted Claims are invalid because they fail to meet the requirements of 35 U.S.C. § 112.

4.    The Asserted Patents are unenforceable because of the inventors', their attorneys', or Power Integrations' inequitable conduct before the United States Patent and Trademark Office.

5.    Power Integrations is barred from obtaining relief under the Asserted Patents by the doctrine of prosecution history estoppel.

6.    None of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, or FSD211 devices practice any of claims 1, 2, 4, 10, 11, 13, or 16 of the '851 Patent because they lack one or more claim element including, but not limited to, the following:

- In claims 1, 2, 4 and 10 of the '851 Patent:

    i.    "a frequency variation circuit that provides a frequency variation circuit…"

    ii.   "said frequency of said oscillation signal varying within said frequency range according to said frequency variation signal…"

    iii.  "a drive circuit that provides a drive signal when said maximum duty cycle signal is in said first state and a magnitude of said oscillation signal is below a variable threshold level."

- In claim 4 of the '851 Patent:

    i.    "a soft start circuit that provides a signal instructing said drive circuit to discontinue said drive signal when said magnitude of said oscillation signal is greater than a magnitude of said frequency variation signal."

- In claim 10 of the '851 Patent:

    i.    "said variable threshold is a function of a feedback signal received at a feedback terminal of said pulse width modulated switch."

- In claim 11, 13, and 16 of the '851 Patent:

    i. "a feedback terminal coupled to disable the regulation circuit..."

    ii. "a frequency variation circuit that provides a frequency variation circuit..."

    iii. "said frequency of said oscillation signal varying within said frequency range according to said frequency variation signal..."

    iv. "a drive circuit that provides a drive signal when said maximum duty cycle signal is in said first state and said regulation circuit is not disabled."

- In claim 13 of the '851 Patent:

    i. "a soft start circuit that provides a signal instructing said drive circuit to discontinue said drive signal according to a magnitude of said frequency variation signal."

7.    None of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSDL0365RN, FSDM0365RN, FSDL321, FSDH321, FSDL0165RN, FSDM0265RN, FSDH0265RN, FSDL0165RL, FSDM0265RL, FSDH0265RL, FSDL0365RL, FSDM0365RL, FSDM0265RNB, FSDL0365RNB, FSDM0365RNB, FSCM0565R, FSCM0765R, or FSD500 devices practice any of claims 1, 17, or 19 of the '876 Patent because they lack one or more claim element including, but not limited to, the following:

- In claim 1 of the '876 Patent:

    i. "a digital frequency jittering circuit"

    ii. "a digital to analog converter coupled to the control input..."

    iii. "a counter coupled to the output of the oscillator and to the digital to analog converter..."

    iv. "the counter causing the digital to analog converter to adjust the control input and to vary the switching frequency."

- In claims 17 and 19 of the '876 Patent:

    i. "cycling one or more secondary voltage sources..."

    ii. "to generate a secondary voltage..."

    iii. "combining the secondary voltage with the primary voltage...."

- In claim 19 of the '876 Patent:

    i. "each of the secondary voltage sources generates a supplemental voltage lower than V..."

    ii. "passing the supplemental voltage to the voltage-controlled oscillator."

    iii. "a counter coupled to the output of the oscillator and to the digital to analog converter..."

iv. "the counter causing the digital to analog converter to adjust the control input and to vary the switching frequency."

8. None of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDM311, FSDM0265RNB, FSDL0365RNB, or FSDM0365RNB devices practice claims 1, 9, or 10 of the '366 Patent because they lack one or more claim element including, but not limited to, the following:

- In claim 1 of the '366 Patent:

    i. "a drive circuit that provides said drive signal according to said maximum duty cycle signal…"

    ii. "a soft start circuit that provides a signal instructing said drive circuit to disable said drive signal during at least a portion of said on-state of said maximum duty cycle."

- In claims 9 and 10 of the '366 Patent:

    i. "a drive circuit that provides said drive signal for a maximum time period of a cycle…"

    ii. "a soft start circuit that provides a signal instructing said drive circuit to disable said drive signal during at least a portion of said maximum time period."

9. None of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211, FSD500, FSDM0265RNB, FSDL0365RNB, or FSDM0365RNB devices practice claim 14 of the '366 Patent because they lack one or more claim element including, but not limited to, the following:

- In claim 14 of the '366 Patent:

    i. "a drive circuit that provides said drive signal for a maximum time period of a cycle…" (required from claim 9)

    ii. "a soft start circuit that provides a signal instructing said drive circuit to disable said drive signal during at least a portion of said maximum time period." (required from claim 9)

    iii. "a frequency variation circuit that provides a frequency variation signal..."

    iv. "wherein said maximum time period varies according to a magnitude of said frequency variation signal."

10. None of Fairchild's FSD200, FSD200B, FSD210, FSD210B, FSD210H, FSD211 devices practice either claim 2 or claim 16 of the '366 Patent because they lack one or more claim element including, but not limited to, the following:

- In claim 2 of the '366 Patent:

    i. "a drive circuit that provides said drive signal according to said maximum duty cycle signal…" (required from claim 1)

ii. "a soft start circuit that provides a signal instructing said drive circuit to disable said drive signal during at least a portion of said on-state of said maximum duty cycle." (required from claim 1)

- In claim 16 of the '366 Patent:

  i. "a drive circuit that provides said drive signal for a maximum time period of a cycle…" (required from claim 9)

  ii. "a soft start circuit that provides a signal instructing said drive circuit to disable said drive signal during at least a portion of said maximum time period." (required from claim 9)

11.    None of Fairchild's FAN7601, FSD200, FSD200B, FSD210, FSD210B, FSD211, FSD500, FSDH321, FSDH321L, FSDH565, FSDH0165, FSDH0265RL, FSDH0265RN, FSDH0265RLB, FSDH0265RNB, FSDL321, FSDL0165RL, FSDL0165RN, FSDL0365RL, FSDL0365RN, FSDL0365RNB, FSDM311, FSDM0265RL, FSDM0265RN, FSDM0265RLB, FSDM0265RNB, FSDM0365R, FSDM0365RL, FSDM0365RLB, FSDM0365RN, FSDM0365RNB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices practice either claim 1 or claim 5 of the '075 Patent because they lack one or more claim element including, but not limited to, the following:

- In claims 1 and 5 of the '075 Patent:

  i. "a high voltage MOS transistor…"

  ii. a pair of laterally spaced pockets of semiconductor material of a second conductivity type within the substrate…"

  iii. Further, the inventor expressly disavowed DMOS devices, such as the Accused Devices, during the prosecution of the '075 Patent.

12.    Fairchild has not has made, used, offered to sell, or sold within the United States or imported into the United States any of the FSCM0565R, FSCM0765R, FSD211, FSD500, FSDH565, FSDH0165, FSDH0265RLB, FSDH0265RNB, FSDM0265RLB, FSDM0365R, FSDM0365RLB, FSDM0565, FSDM0565R, FSDM07653, or FSDM07652R devices (collectively, the "Accused Devices") since October 20, 2004.

13.    Power Integrations has not met its burden of proving that any identifiable third party has imported into the United States device incorporating any of the Accused Devices since October 20, 2004.

14.    If an identifiable third party has imported into the United States device that incorporate any of the Accused Devices, Power Integrations has not met its burden of proving that Fairchild has actively induced such importation by that specific third party since October 20, 2004.

15.    Power Integrations cannot prove that the '075 Patent was conceived and/or reduced to practice prior to April 24, 1987.

16.    The addition of new matter during the prosecution of the '075 Patent results in that patent having a priority date of April 7, 1988.

17.    Power Integrations cannot prove that Klas H. Eklund exercised diligence between the conception of the invention of the '075 Patent and the filing of that patent.

18.    U.S. Patent Nos. 4,823,173 and 5,264,719 were conceived and reduced to practice prior to the invention of the '075 Patent.

19.    The invention of the '075 Patent was described in U.S. Patent Nos. 4,823,173 and 5,264,719, which were patents granted on an application for patent by another filed in the United States before the invention by the applicant for the '075 Patent.

20.    Before the invention of the '075 Patent, the invention was made in this country by James D. Beasom, who had not abandoned, suppressed, or concealed it.

21.    James D. Beasom, the inventor of U.S. Patent No. 4,823,173, exercised diligence between the conception of his invention and the filing of his patent.

22.    James D. Beasom, the inventor of U.S. Patent No. 5,264,719, exercised diligence between the conception of his invention and the filing of his patent.

23.    Claims 1 and 5 of the '075 Patent are invalid pursuant to 35 U.S.C. §§ 102 and 103 in light of at least the following references, alone or in combination:

- U.S. Patent No. 4,823,173.

- U.S. Patent No. 5,264,719.

- H. Wakaumi, A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC With Shielded Source Structure, IEDM 83, pp. 416-419 (1983).

- A. Ludikhuize, High-Voltage DMOS and PMOS in Analog IC's, IEDM 82, pp. 81-84 (1982).

- The admitted prior art noted in the specification of the '075 Patent.

- M. Pocha, Tradeoff Between Threshold Voltage and Breakdown in High-Voltage Double-Diffused MOS Transistors, IEEE Transactions On Electron Devices, Vol. ED-25, No. 11, pp. 1325-1327 (Nov. 1978).

- Z. Parpia, A Novel CMOS-Compatible High-Voltage Transistor Structure, IEEE Transactions on Electron Devices, Vol. ED-33, No. 12, pp. 1948-1952 (Dec. 1986).

- I. Wacyk, M. Amato & V. Rummennick, A Power IC with CMOS Analog Control (1986).

- S. Sun, Physics and Technology of Power MOSFETS (Dissertation) (1982).

24.    Claims 1, 17, and 19 of the '876 Patent are invalid pursuant to 35 U.S.C. §§ 102 and 103 in light of at least the following references, alone or in combination:

- H. Martin, G. Hitler & D. Parsley, U.S. Patent No. 4,638,417, Power Density Spectrum Controller (Jan. 20, 1987).

- A. C. Wang & S. R. Sanders, <u>Programmed Pulsewidth Modulated Waveforms for Electromagnetic Interference Mitigation in DC –DC Converters,</u> IEEE Transactions on Power Electronics, Vol. 8, No. 4, pp. 596 – 605 (Oct. 1993).

- T. Habetler & D. Divan, <u>Acoustic Noise Reduction in Sinusoidal PWM Drives Using a Randomly Modulated Carrier,</u> IEEE Transactions on Power Electronics, Vol. 6, No. 3, pp. 356 – 363 (Jul. 1991).

- D. Stumfall, <u>U.S. Patent No. 4,507,796,</u> <u>Electronic Apparatus Having Low Radio Frequency Interference From System Clock Signal</u> (Mar. 26, 1985).

- B. Ferrario, <u>U.S. Patent No. 5,555,168,</u> <u>Frequency Modulated Switching Power Supply</u> (Sept. 10, 1996).

- P. Horowitz & I. Robinson, <u>Laboratory Manual for The Art of Electronics,</u> pp. 17-1 – 17-3 (Aug. 6, 1981).

- U. Tietze & Ch. Schenk, <u>Advanced Electronic Circuits</u> (1978).

- D. Sheingold, <u>Analog Digital Conversion Handbook,</u> Prentice Hall, pp. 124-126 (1986).

- K. Hardin, <u>U.S. Patent No. 5,631,920,</u> <u>Spread Spectrum Clock Generator</u> (May 20, 1997).

- National Semiconductor, <u>Data Acquisition Databook</u> (1995).

25.    Claims 1, 2, 4, 10, 11, 13, or 16 of the '851 Patent are invalid pursuant to 35 U.S.C. §§ 102 and 103 in light of at least the following references, alone or in combination:

- Power Integrations, <u>SMP211 PWM Power Supply IC 85-265 VAC Input Isolated, Regulated DC Output</u> (Jan. 1996).

- Power Integrations, <u>Design Schematic PS10,</u> (sheets 1-30) (1990-1992).

- T. Szepesi & H. Santo, <u>U.S. Patent No. 5,498,995,</u> <u>Short Circuit Frequency Shift Circuit for Switching Regulators</u> (Mar. 12, 1996).

- Toko, <u>Power Conversion IC Data Book TK75001,</u> pp. 3-1 – 3-12 (1996).

- Philips Semiconductors, <u>GreenChip SMPS Control IC, TEA1504</u> (Mar. 17, 1998).

- F. J. De Stasi & T. Szepesi, <u>A 5A 100KHz Monolithic Bipolar DC/DC Converter,</u> The European Power Electronics Association, pp. 201 – 208 (1993).

- National Semiconductor, <u>LM2588 SIMPLE SWITCHER 5A Flyback Regulator with Shutdown</u> (Mar. 1996).

- SGS-Thompson, <u>TEA2260, TEA2261 Switch Mode Power Supply Controller</u> (Jun. 2, 1992).

- SGS-Thompson, <u>Application Note: TEA2260, TEA2261 High Performance Driver Circuits for S.M.P.S., Application Note AN376</u> (Jun. 1994).

- SGS –Thompson, TEA2262, Switch Mode Power Supply Controller, pp. 1 – 9 (Apr. 1996).

- B. Ferrario, U.S. Patent No. 5,555,168, Frequency Modulated Switching Power Supply (Sept. 10, 1996).

- H. Martin, G. Hitler & D. Parsley, U.S. Patent No. 4,638,417, Power Density Spectrum Controller (Jan. 20, 1987).

- A. C. Wang & S. R. Sanders, Programmed Pulsewidth Modulated Waveforms for Electromagnetic Interference Mitigation in DC –DC Converters, IEEE Transactions on Power Electronics, Vol. 8, No. 4, pp. 596 – 605 (Oct. 1993).

- T. Habetler & D. Divan, Acoustic Noise Reduction in Sinusoidal PWM Drives Using a Randomly Modulated Carrier, IEEE Transactions on Power Electronics, Vol. 6, No. 3, pp. 356 – 363 (Jul. 1991).

- K. Hardin, U.S. Patent No. 5,631,920, Spread Spectrum Clock Generator (May 20, 1997).

- C. Hoekstra, Frequency Modulation of System Clocks for EMI Reduction, Hewlett –Packard Journal Article 13, pp. 1 – 7 (Aug. 1997).

26.    Claims 1, 2, 9, 10, 14, and 16 of the '366 Patent are invalid pursuant to 35 U.S.C. §§ 102 and 103 in light of at least the following references, alone or in combination:

- Unitrode Integrated Circuits, Application Note for U-100A: The UC3842/3/4/5 Series of Current-Mode PWM IC's (Jun. 1993).

- B. Andreycak, The UC3823A, B and UC3825A, B Enhanced Generation of PWM Controllers, Unitrode Application Note U –128 (1994).

- Unitrode Integrated Circuits, UC1823A,B/1825A,B, UC2823A,B/2825A,B, UC3823A,B/3825A,B, pp. 5-119 – 5-126 (June 1993).

- Unitrode Integrated Circuits, UC1823, UC2823, UC3823 High Speed PWM Controller, pp. 5-113 – 5-118 (June 1993).

- Unitrode Integrated Circuits, UNITRODE u –128, Application note, the UC3823A,B and UC3825A,B Enhanced Generation of PWM Controllers, pp. 10-228 – 10-236 (1994).

- Unitrode Integrated Circuits, UCC 3800/1/2/3/4/5 biCMOS CURRENT MODE CONTROL IC's (U –133), pp. 9-344 – 9-362 (1994).

- Unitrode Integrated Circuits, UCC1810, UCC2810, UCC3810 Low Power BiCMOS Dual Current Mode PWM, pp. 6-145 – 6-151 (Dec. 1994).

- Unitrode Integrated Circuits, UC1823, UC2823, UC3823 High Speed PWM Controller (Jun. 1993).

- Unitrode Integrated Circuits, UC1875/6/7/8, UC2875/6/7/8, UC3875/6/7/8 Phase Shift Resonance Controller (May 1993).

- Unitrode Integrated Circuits, <u>UCC1800/1/2/3/4/5, UCC2800/1/2/3/4/5, UCC3800/1/2/3/4/5, Low-Power BiCMOS Current-Mode PWM</u> (May 1993).

- Unitrode Integrated Circuits, <u>UCC1807-1/-2/-3, UCC2807-1/-2/-3, UCC3807-1/-2/-3 Low Power BiCMOS Current Mode PWM</u> (Jan. 1995).

- Unitrode Integrated Circuits, <u>UC1828, 2828, 3828, 1840, 2840, 3840, 1841, 2841, 3841,1848,2848 ,3848, 1851,2851 ,3851,1854, 2854, 3854, 1874-1, -2, 2874-1, -2, 3874-1, -2, Unitrode Current Mode PWM Controller IC</u> (Nov. 1994).

- Unitrode Integrated Circuits, <u>Unitrode Resonant Mode Power Supply Controller UC1860, 2860, 3860</u> (Oct. 1993).

- Unitrode Integrated Circuits, <u>UC1827-1/-2, UCC2827-1/-2, UCC3827-1/-2 Buck Current/Voltage Fed Push-Pull PWM Controllers</u> (Mar. 1998).

- F. Goodenough, <u>Off –Line PWM Switching Regulator IC Handles 3W</u>, Electronic Design (Mar. 22, 1990).

- Power Integrations, <u>PWR-SMP3 PWM Power Supply IC 120 VAC Input</u> (Jul. 1991).

- Power Integrations, <u>Design Schematic PS03</u> (Feb. 27-28, 1990).

- R. Frank, et. al., <u>LM3001/LM3101 A 1 MHz Off –Line PWM Controller Chipset with Pulse Communication for Voltage –Current – or Charge –Mode Control, AN –918</u>, National Semiconductor (Jan. 1994).

- National Semiconductor, <u>LM3001 Primary –Side PWM Driver</u>, pp. 3-140 – 3-159 (1995).

- National Semiconductor, <u>Power ICs Databook, LM2577, 2587</u>, pp. 3-60 – 3-139 (1995).

- F. J. De Stasi & T. Szepesi, <u>A 5A 100KHz Monolithic Bipolar DC/DC Converter</u>, The European Power Electronics Association, pp. 201 – 208 (1993).

- National Semiconductor, <u>LM1577/LM2577 SIMPLE SWITCHER Step Up Voltage Regulator</u>, Power IC's Databook, pp. 3-80 – 3-101 (1995).

- National Semiconductor, <u>LM2588 SIMPLE SWITCHER 5A Flyback Regulator with Shutdown</u> (Mar. 1996).

- National Semiconductor, <u>LM2597 SIMPLE SWITCHER Power Converter</u>, pp. 1-28 – 1-34 (1995).

- National Semiconductor, <u>LM2671</u>, pp. 1-22 (Aug. 1997).

- National Semiconductor, <u>LM2672 SIMPLE SWITCHER Power converter High Efficiency 1A Step Down Voltage Regulator with Features</u>, pp. 1 –6 (Apr. 1997).

- Linear Technology, <u>LTC1435 High Effeciency Low Noise Synchronous Step – Down Switcher Regulator</u>, pp. 4-212 – 4-225 (1996).

- Linear Technology, <u>LTC1504 500mA Low Voltage Step –Down Synchronous Switching Regulator</u>, pp. 4-257 – 4-268 (1996).

- Linear Technology, <u>LTC1553 5 –Bit Programmable Synchronous Switching Regulator Controller for Pentium Pro Processor</u>, pp. 4-289 – 4-305 (Feb. 1997).

- Maxim, <u>5V –to –3.3V, Synchronous, Step –Down Power –Supply Controller, MAX767</u> (May 1994).

- Maxim, <u>Dual –Output Power –Supply Controller for Notebook Computers, MAX786</u> (May 1994).

- Maxim, <u>5V/3.3V/3V 5A Step –Down, PWM, Switch –Mode DC –DC Regulators, MAX796 –MAX799</u> (Nov. 1, 1994).

- Motorola, <u>Analog/Interface ICs Databook, MC34023</u>, Vol. 1, pp. 3-247 – 3-262 (1995).

- Motorola, <u>High Speed Double –Ended PWM Controller, MC34025, MC33025</u> (1993).

- Cherry Semiconductor, <u>Enhanced Current Mode PWM Controller with SYNC, CS –51021/51023</u>, pp. 91 – 98 (Feb. 20, 1997).

- SGS-Thompson, <u>TEA2260, TEA2261 Switch Mode Power Supply Controller</u> (Jun. 2, 1992).

- SGS-Thompson, <u>Application Note: TEA2260, TEA2261 High Performance Driver Circuits for S.M.P.S., Application Note AN376</u> (Jun. 1994).

- Power Integrations, <u>PWR-SMP240 PWM Power Supply IC 85-265 VAC Input Isolated, Regulated DC Output</u> (Feb. 1992).

- Power Integrations, <u>Application Note AN-11: Function and Application of the PWR-SMP240/260</u> (Mar. 1992).

- Power Integrations, <u>Design Aid DA-5: Charging Batteries with the PWR-SMP260</u> (Mar. 1992).

- Power Integrations, <u>PWR-EVAL8: PWR-SMP240 Evaluation Board 110/220 VAC Input Isolated 5/12V, 20W (Total) Output</u> (Feb. 1992).

- Power Integrations, <u>PWR-EVAL7: PWR-SMP260 Evaluation Board 110/220 VAC Input Isolated 5/12V, 30W (Total) Output</u> (Mar. 1992).

- R. Keller, Power Integrations, <u>Off-Line Power Integrated Circuit for International Rated 60-Watt Power Supplies,</u> (Feb. 23-27, 1992).

- Power Integrations, <u>PWR-SMP260 Design Specification,</u> Rev. 2 (Jul. 12, 1991).

- Power Integrations, <u>SMP211 PWM Power Supply IC 85-265 VAC Input Isolated, Regulated DC Output</u> (Jan. 1996).

- Unitrode Integrated Circuits, <u>Application Note for U-96A: A 25 Watt Off-Line Flyback Switching Regulator</u> (Jun. 1993).

- P. Horowitz & W. Hill, <u>The Art of Electronics</u>, 2nd Ed., pg. 624 (1989).

- Power Integrations, <u>Design Schematic PS10</u>, (sheets 1-30) (1990-1992).

27.     The '075 Patent is unenforceable due to inequitable conduct of Klaus Eklund and his attorney during the prosecution of the '075 Patent.

28.     During prosecution of the '075 Patent, the Applicant, Klaus Eklund, and his attorneys failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '075 patent under prosecution, and that Dr. Eklund and his attorneys knew or should have known would have been important to a reasonable examiner. The undisclosed prior art references include at least technical articles known to Dr. Eklund that were published more than a year before the application leading to the '075 Patent was filed.

29.     The article *"A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC with Shielded Source Structure"*, by H. Wakaumi, T. Suzuki, M. Saito and H. Sakuma ("Wakaumi Article") and the article *"High-Voltage DMOS and PMOS in Analog IC's"* by A.W. Ludikhuize ("Ludikhuize Article") are highly material prior art to the patentability of the claims of the '075 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Dr. Eklund prosecuted in the application for the '075 Patent. The Wakaumi Article was published in the IEDM journal at least as early as 1983. The Ludikhuize Article was published in the IEDM journal at least as early as 1982. Since both articles were published more than a year before Power Integrations filed the application leading to the '075 Patent, they are prior art to the '075 Patent.

30.     The materiality of the Wakaumi and Ludikhuize Articles is demonstrated by the fact that Dr. Eklund was aware of both articles at the time he allegedly conceived of the '075 Patent, considered the articles to be "key" references, and specifically identified at least the Wakaumi Article in notes that he now claims describe the invention leading to the '075 Patent. Indeed, one of ordinary skill in the art would have been motivated to combine the Wakaumi and Ludikhuize Articles and the combination of these Articles meets every element of each asserted claim of the '075 Patent. Thus, the claims of the '075 Patent are obvious in light of the Wakaumi and Ludikhuize Articles.

31.     Despite his admitted knowledge and appreciation of the Wakaumi and Ludikhuize Articles, neither Dr. Eklund nor his attorneys disclosed either Article to the Patent Office during the prosecution of the '075 Patent. This constitutes inequitable conduct that renders all claims of the '075 Patent permanently unenforceable.

32.     The '876 Patent, and each claim thereof, is unenforceable due to the inequitable conduct during the prosecution of the '876 Patent.

33.     During prosecution of the '876 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '876 patent under prosecution, and that Power Integrations knew or should have known would have been important to a reasonable examiner. The undisclosed prior art references include at least Power Integrations public disclosure of the technology described in Power Integrations '851 Patent.

34.    Power Integrations purports to have invented the invention claimed in the '876 Patent on May 21, 1998.  On September 2, 1997 and over eight months before the date of the alleged invention claimed in the '876 Patent, Power Integrations made public disclosure of the alleged invention of the '851 Patent.  Thus, the alleged invention of the '851 Patent is prior art to the alleged invention of the '876 Patent pursuant to 35 U.S.C. § 102(a).

35.    Indeed, in their Invention Disclosure Form provided to their attorneys, the inventors of the '876 Patent describe the alleged invention of the '851 Patent as "PRIOR ART" and include a Figure labeled "Frequency Jittering Prior Art."  Power Integrations, however, never informed the Patent Office that the '851 Patent was prior art to the '876 Patent.  Power Integrations included the figure from its Invention Disclosure Form that it had previously identified as "PRIOR ART" as Figure 3 of the '876 Patent.  Rather than inform the Patent Office that this Figure depicted the prior art, Power Integrations simply stated that "FIG. 3 is a schematic diagram of an analog frequency jittering device" and incorporated the '851 Patent by reference into the specification of the '876 Patent.

36.    The '851 Patent and the public disclosure of devices that embody the '851 Patent are highly material to the patentability of the claims of the '876 Patent and Power Integrations knew or should have known that they would have been important to a reasonable examiner.

37.    The '851 Patent, and each claim thereof, is unenforceable due to the inequitable conduct during the prosecution of the '851 Patent.

38.    During the prosecution of the '851 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office prior art that was highly material to the patentability of the claims of the '851 Patent, and that Power Integrations knew or should have known would have been important to a reasonable examiner.  The undisclosed prior art references include at least devices that anticipate or render obvious claims of the '851 Patent, that were designed, manufactured, offered for sale and sold by Power Integrations more than a year before the application leading to the '851 Patent was filed.

39.    Power Integrations' SMP402 family of devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent.  These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997.  Power Integrations published datasheets in the United States describing its SMP402 family of devices at least as early as January, 1996.  This is more than a year before Power Integrations filed the application leading to the '851 Patent and thus the SMP402 family of devices and the Power Integrations datasheets describing those products are prior art to the '851 Patent.

40.    The SMP402 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '851 Patent because they teach every element of claims of the '851 Patent.

41.    Power Integrations failed to disclose to the Patent Office either Power Integrations' SMP402 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '851 Patent.  As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP402 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad

faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

42.    In addition, Power Integrations' SMP3 family of devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. These devices are described in an article entitled "Off-Line PWM Switching Regulator IC Handles 3W" by F. Goodenough, published on March 22, 1990 in *Electronic Design* (pp. 35-39) ("Goodenough Article").

43.    F. Goodenough was employed by Power Integrations when he wrote and published the Goodenough Article.

44.    The prior art SMP3 devices and the Goodenough Article were and are highly material to the patentability of the '851 Patent as both the devices and the Article anticipate claims of that Patent.

45.    Despite the highly material nature of the Power Integrations SMP3 devices and the Goodenough Article, neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the Power Integrations SMP3 devices or the Goodenough Article to the Patent Office during the prosecution of the '851 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP3 family of devices and the Goodenough Article describing those devices, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

46.    Power Integrations also offered for sale and sold the PWR-SMP260 family of devices prior to the filing of the application that led to the '851 Patent. These products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '851 Patent.

47.    Power Integrations' PWR-SMP260 devices were also described in an article by Richard A. Keller entitled "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies", published in 1992, ("Keller Article"). At the time of the article Richard A. Keller was employed by Power Integrations.

48.    The PWR-SMP260 devices and the Keller article were and are both material to the patentability of the '851 Patent as both anticipate claims of that patent.

49.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the PWR-SMP260 devices or the Keller Article to the Patent Office during the prosecution of the '851 Patent.

50.    As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP260 devices and the Keller Article, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

51.    Power Integrations also offered for sale and sold the PWR-SMP240 family of devices prior to the filing of the application that led to the '851 Patent. These products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '851 Patent.

52.    The PWR-SMP240 devices was and is highly material prior art to the patentability of the claims of the '851 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipate claims of the '851 Patent.

53.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed the PWR-SMP240 devices to the Patent Office during the prosecution of the '851 Patent.

54.    As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP240 devices, knew or should have known of the materiality of those devices to the patentability of the pending claims that issued in the '851 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

55.    Power Integrations' SMP211 family of devices was and is highly material prior art to the patentability of the claims of the '851 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '851 Patent and anticipates claims of the '851 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its SMP211 family of devices at least as early as 1996. This is more than a year before Power Integrations filed the application leading to the '851 Patent and thus the SMP211 family of devices and the Power Integrations datasheets describing those products are prior art to the '851 Patent.

56.    The SMP211 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '851 Patent because they teach every element of claims of the '851 Patent. Figure 1 of the '851 Patent was described by the Applicants as the "Prior Art". This prior art figure includes a devices labeled "SMP211", which was a prior art Power Integrations device. The Applicants, however, withheld all information about their own SMP211 device from the Patent Examiner.

57.    On December 13, 1999, during the prosecution of the '851 Patent, the Examiner rejected pending claims as anticipated by Prior Art Figure 1:

Claims 29, 35 & 37 are rejected under 35 U.S.C. 102(b) as being anticipated by Applicants' Prior Art Fig. 1.

Applicants' Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29.

Further shown is a rectifier 10, a capacitor 15, a first winding 35 and a second winding 45 as recited in claim 35.

Further shown is a feedback terminal (Error Amplifier in) as recited in claim 37.

58.    The Examiner, however, allowed other claims because of his belief that the prior art did not include an oscillator that generated a maximum duty cycle signal and a signal with a frequency range depending on the frequency variation circuit:

### Allowable Subject Matter

The prior Art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

59.    However, unknown to the Examiner, the SMP211 device referred to in Figure 1 of the '851 Patent actually included "an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit". *See* Exh. G, Figure 3 and 2-48 – 2-49. Thus, the SMP211 is highly relevant and material to the patentability of the '851 Patent. The Applicants, however, continued to withhold information concerning the SMP211 from the Examiner.

60.    Rather than disclose the SMP211, the Applicants amended the rejected claims to include the oscillator limitation that the Examiner erroneously believed to be missing from the prior art of record:

In the December 13, 1999 Office Action, claims 29, 35 and 37 are rejected under 35 U.S.C. § 102(b) as being anticipated by Applicants' Prior Art Figure 1.

Claim 29 as presently amended now expressly recites a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal. The Applicants' Prior Art Figure 1 fails to disclose, teach or suggest such limitations. Accordingly, the Applicants respectfully submit that the instant section 102 rejection has been overcome.

61.    Applicants' prior art SMP211 device – and datasheets describing the SMP211 device – clearly disclose "a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal." *See* Exh. G at Figure 3 and 2-48 – 2-49. Despite this, Applicants continued to withhold any information about their SMP211 devices. While withholding this information, the Applicants argued that the Examiner should allow the amended claims because Applicants had added limitations concerning the maximum duty cycle signal limitation, which they claimed was not present in the prior art of record (even though these limitations are present in the SMP211 devices and datasheets). Thereafter, the Examiner allowed the amended claims based upon the Applicants' false representations regarding the absence of a maximum duty cycle signal from the prior art.

62.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed to the Patent Office either Power Integrations' SMP211 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '851 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP211 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '851 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

63.    The '366 Patent, and each claim thereof, is unenforceable due to the inequitable conduct during the prosecution of the '851 and '366 Patents.

64.    During prosecution of the '366 Patent, Power Integrations failed to disclose to the United States Patent and Trademark Office ("PTO") prior art that was highly material to the patentability of the claims of the '366 patent under prosecution, and that Power Integrations knew or should have known would have been important to a reasonable examiner. The undisclosed prior art references include at least devices that anticipate or render obvious claims of the '366 Patent, that were designed, manufactured, offered for sale and sold by Power Integrations more than a year before the application leading to the '366 Patent was filed.

65.    Power Integrations' TOP100-4 TopSwitch family of devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its TOP100-4 TopSwitch family of devices at least as early as July 1996. This is more than a year before Power Integrations filed the application leading to the '366 Patent and thus the TOP100-4 TopSwitch family of devices and the Power Integrations datasheets describing those products are prior art to the '366 Patent.

66.    The TOP100-4 TopSwitch family of devices and the datasheets describing those devices were and are highly material to the patentability of the '366 Patent because they teach every element of claims of the '366 Patent. The materiality of this prior art is demonstrated by the fact that Figure 1 from the Power Integrations TOP100-4 TopSwitch datasheet (described in that datasheet as a "typical application") is identical to Figure 2 of the '366 Patent, which the Applicants describe as their "invention" (except that the reference to the prior art TOP100-4 device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4, lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing Figure 2, identical to Figure 1 from the prior art TOP100-4 datasheet, as the "preferred embodiment".).

67.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP100-4 TopSwitch family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP100-4 TopSwitch family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

68.    Power Integrations sold additional devices that anticipate the claims of the '366 Patent more than a year before the application leading to that patent was filed. For instance, Power Integrations published the TOP200-4/14 datasheet at least as early as November, 1994. Power Integrations offered for sale and sold its TOP200-4/14 family of devices more than a year before the application leading to the '366 patent was filed.

69.    As with the TOP100-4, the TOP200-4/14 (and datasheets describing these devices) were and are highly material to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima

facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of that patent. The materiality of this prior art is demonstrated by the fact that Figure 1 from the Power Integrations TOP200-4/14 TopSwitch datasheet (described in that datasheet as a "typical application") is identical to Figure 2 of the '366 Patent, which the Applicants describe as their "invention" (except that the reference to the prior art TOP100-4 device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4, lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing Figure 2, identical to figure 1 of the prior art TOP100-4 datasheet, as the "preferred embodiment".).

70.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP200-4/14 TopSwitch family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP200-4/14 TopSwitch family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

71.    Power Integrations also offered for sale and sold the TOP221-227 TopSwitch-II family of devices prior to the filing of the application that led to the '366 Patent. Further, Power Integrations published in the United States datasheets describing the TOP221-227 TopSwitch-II family of devices at least as early as December, 1997.

72.    As described in the December 1997 datasheet, the prior art TOP221-227 TopSwitch-II family of devices anticipates claims of the '366 Patent. Thus, the TOP221-227 TopSwitch-II family of devices – and datasheets describing those devices – were and are highly material to the patentability of the '366 Patent, would have been important to a reasonable examiner and would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the '366 Patent.

73.    As with the TOP100-4 and TOP200-4/14 datasheets, Figure 1 from the TOP221-227 datasheet (described as a "typical flyback application") is identical to Figure 2 of the '366 Patent, which the Applicants describe as their "invention" (except that the reference to the prior art TOP100-4 device is replaced with a black box PWM controller). *See*, '366 Patent, col. 4, lines 50-52 ("Fig. 2 is a presently preferred power supply utilizing an [sic] pulse width modulated switch according to the present invention."; *see also*, '366 Patent, col. 5, lines 3-column 6, line 34 (describing Figure 2, identical to Figure 1 of the prior art TOP100-4 datasheet, as the "preferred embodiment".).

74.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' TOP221-227 TopSwitch-II family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' TOP221-227 TopSwitch-II family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

75.    Power Integrations also offered for sale and sold the PWR-SMP260 family of devices prior to the filing of the application that led to the '366 Patent. These products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '366 Patent.

76.    Power Integrations' PWR-SMP260 devices were also described in an article by Richard A. Keller entitled "Off-line Power Integrated Circuit for International Rated 60-watt Power Supplies", published in 1992, ("Keller Article"). At the time of the article Richard A. Keller was employed by Power Integrations.

77.    Both the PWR-SMP260 devices and the Keller article were and are highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of the '366 Patent.

78.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed either the PWR-SMP260 devices or the Keller Article to the Patent Office during the prosecution of the '366 Patent.

79.    As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP260 devices and the Keller Article, knew or should have known of the materiality of those devices and the Keller Article to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

80.    Power Integrations also offered for sale and sold the PWR-SMP240 family of devices prior to the filing of the application that led to the '366 Patent. These products were also described in datasheets published by Power Integrations in the United States more than a year before Power Integrations filed the application leading to the '366 Patent.

81.    The PWR-SMP240 devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipate claims of the '366 Patent.

82.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed the PWR-SMP240 devices to the Patent Office during the prosecution of the '366 Patent.

83.    As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' PWR-SMP240 devices, knew or should have known of the materiality of those devices to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

84.    Power Integrations' SMP211 family of devices was and is highly material prior art to the patentability of the claims of the '366 Patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent. These devices were offered for sale and sold by Power Integrations at

least as early as May 18, 1997. Power Integrations published in the United States datasheets describing its SMP211 family of devices at least as early as 1996. This is more than a year before Power Integrations filed the application leading to the '366 Patent and thus the SMP211 family of devices and the Power Integrations datasheets describing those products are prior art to the '366 Patent.

85.     The SMP211 family of devices and the datasheets describing those devices were and are highly material to the patentability of the '366 Patent because they teach every element of claims of the '366 Patent. Figure 1 of the '366 Patent was described by the Applicants as the "Prior Art". This prior art figure includes a devices labeled "SMP211", which was a prior art Power Integrations device. The Applicants, however, withheld all information about their own SMP211 device from the Patent Examiner.

86.     On December 13, 1999, during the prosecution of Application No. 09/080,774, the application that ultimately led to the issuance of the '366 Patent, the Examiner rejected pending claims as anticipated by Prior Art Figure 1:

Claims 29, 35 & 37 are rejected under 35 U.S.C. 102(b) as being anticipated by Applicants' Prior Art Fig. 1.

Applicants' Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29.

Further shown is a rectifier 10, a capacitor 15, a first winding 35 and a second winding 45 as recited in claim 35.

Further shown is a feedback terminal (Error Amplifier in) as recited in claim 37.

87.     The Examiner, however, allowed other claims because of his belief that the prior art did not include an oscillator that generated a maximum duty cycle signal and a signal with a frequency range depending on the frequency variation circuit:

### *Allowable Subject Matter*

The prior Art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.

88.     However, unknown to the Examiner, the SMP211 device referred to in Figure 1 of the '366 Patent actually included "an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit". *See* Exh. G, Figure 3 and 2-48 – 2-49. Thus, the SMP211 is highly relevant and material to the patentability of the '366 Patent. The Applicants, however, continued to withhold information concerning the SMP211 from the Examiner.

89.     Rather than disclose the SMP211, the Applicants amended the rejected claims to include the oscillator limitation that the Examiner erroneously believed to be missing from the prior art of record:

In the December 13, 1999 Office Action, claims 29, 35 and 37 are rejected under 35 U.S.C. § 102(b) as being anticipated by Applicants' Prior Art Figure 1.

Claim 29 as presently amended now expressly recites a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal. The Applicants' Prior Art Figure 1 fails to disclose, teach or suggest such limitations. Accordingly, the Applicants respectfully submit that the instant section 102 rejection has been overcome.

90.    Applicants' prior art SMP211 device – and datasheets describing the SMP211 device – clearly disclose "a regulation circuit that includes an oscillator that provides a maximum duty cycle signal and an oscillation signal having a frequency range that is varied according to a frequency variation signal." *See* Exh. G at Figure 3 and 2-48 – 2-49. Despite this, Applicants continued to withhold any information about their SMP211 devices. While withholding this information, the Applicants argued that the Examiner should allow the amended claims because Applicants had added limitations concerning the maximum duty cycle signal limitation, which they claimed was not present in the prior art of record (even though these limitations are present in the SMP211 devices and datasheets). Thereafter, the Examiner allowed the amended claims based upon the Applicants' false representations regarding the absence of a maximum duty cycle signal from the prior art.

91.    Neither Power Integrations, nor its attorneys, nor the Applicants for the '366 Patent disclosed to the Patent Office either Power Integrations' SMP211 family of devices or the Power Integrations datasheets describing those devices during the prosecution of the '366 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP211 family of devices and the Power Integrations datasheets describing those devices, knew or should have known of the materiality of those devices and data sheets to the patentability of the pending claims that issued in the '366 patent and intentionally or in bad faith withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '366 patent permanently unenforceable.

92.    In addition, Power Integrations' SMP3 family of devices was and is highly material prior art to the patentability of the claims of the '366 patent, would have been important to a reasonable examiner, would have established at least a case of prima facie obviousness of the claims Power Integrations prosecuted in the application for the '366 Patent and anticipates claims of the '366 Patent. These devices were offered for sale and sold by Power Integrations at least as early as May 18, 1997. These devices are described in an article entitled "Off-Line PWM Switching Regulator IC Handles 3W" by F. Goodenough, published on March 22, 1990 in *Electronic Design* (pp. 35-39) ("Goodenough Article").

93.    F. Goodenough was employed by Power Integrations when he wrote and published the Goodenough Article.

94.    The prior art SMP3 devices and the Goodenough Article were and are highly material to the patentability of the '851 Patent as both the devices and the Article anticipate claims of that Patent.

95.    Despite the highly material nature of the Power Integrations SMP3 devices and the Goodenough Article, neither Power Integrations, nor its attorneys, nor the Applicants for the '851 Patent disclosed either the Power Integrations SMP3 devices or the Goodenough Article to the Patent Office during the prosecution of the '851 Patent. As employees of Power Integrations working on the design and development of Power Integrations' devices, the Applicants were aware of Power Integrations' SMP3 family of devices and the Goodenough Article describing those devices, knew or should have known of the materiality of those devices and Article to the patentability of the pending claims that issued in the '851 Patent, and intentionally or in bad faith

withheld this highly material prior art. This constitutes inequitable conduct that renders all claims of the '851 patent permanently unenforceable.

96.     Manufacture, sale, offer for sale, or use of the Accused Devices outside of the United States does not infringe any of the Asserted Patents.

97.     Power Integrations is not entitled to any damages for the manufacture, sale, offer for sale, or use of the Accused Devices outside of the United States.

98.     There is no admissible evidence that Accused Devices manufactured, sold, offered for sale, or used outside of the United States by Fairchild are imported by an identifiable third party into the United States since October 20, 2004.

99.     There is no admissible evidence that sales of the Accused Devices outside of the United States resulted from offers for sale within the United States.

100.     Were the Accused Devices found to infringe any valid and enforceable claim of the Asserted Patents, the "reasonable royalty" is no more than 5%.

101.     Were the Accused Devices found to infringe any valid and enforceable claim of the Asserted Patents, the appropriate royalty base is those Accused Devices found to infringe that were imported into or manufactured in the United States by Fairchild since October 20, 2004 and does not include products manufactured and sold abroad by Fairchild.

102.     Power Integrations competes with a variety of competitors and solutions including, but not limited to, linear solutions, discrete solutions, RCC, On Semiconductor, Sanken Power Devices, Philips, STMicroelectronics, Systems General, Infineon, MEC, Supertex Inc., Vishay, Rohm Electronics, and Power Integrations' own devices.

103.     Non-infringing alternatives to Power Integrations' products include, but are not limited to, linear solutions, discrete solutions, RCC, the products of Power Integrations' competitors, non-accused Fairchild products, and Power Integrations' own devices.

104.     The relevant market for purposes of determining whether Power Integrations lost profits due to lost sales is those products that compete with the Power Integrations devices that practice the patents-in-suit.

105.     Fairchild's alleged infringement has not resulted in any lost sales by Power Integrations. There is no evidence that, but for Fairchild's alleged infringement, Power Integrations would have sold any additional devices.

106.     Had Fairchild not sold its allegedly infringing devices, those sales would have been made in whole or in part by competitors to Power Integrations.

107.     Fairchild's alleged infringement has not resulted in any reduction of the price Power Integrations charges for its own devices. There is no evidence that, since October 20, 2004, Power Integrations has reduced the price of its devices. Moreover, even if Power Integrations reduced the price of its own devices, there is no evidence that this reduction was caused by any allegedly infringing Fairchild activity.

108.     Had Power Integrations reduced its prices since October 20, 2004, there is no evidence that this reduction was other than what Power Integrations concedes is the typical reduction it expects to give even absent competition.

109.    Any reduction in the price Power Integrations charges for its devices is attributable in whole or in part to factors other than Fairchild.

110.    Since Fairchild's alleged infringement has not resulted in the erosion of the price of Power Integrations' devices, Fairchild cannot be liable for "future price erosion".

111.    "Future price erosion" is inappropriate since, were the Court to issue an injunction prohibiting any infringing activity, Power Integrations could raise its prices to the extent that it had lowered them (if at all) due to the alleged infringement.

112.    "Future price erosion" is inappropriate since Power Integrations cannot prove that it will continue to sell its devices in the future, that there will be demand for these devices, that these devices will be commercially successful, that these devices will not be outdated by new technology, or that Power Integrations will have to lower its prices for other reasons.

**Power Integrations v. Fairchild**

**Exhibit 4**

**Power Integrations' Statement of Issues of Law Remaining to be Litigated**

Plaintiff Power Integrations expects it will present the below listed issues of law at trial. To the extent that any issues of fact set forth in Exhibit 2 of the Joint Pretrial Order may be considered issues of law, Power Integrations incorporates those portions of Exhibit 2 by reference. These issues of law may change based on the Court's decisions on Fairchild's seven summary judgment motions, which are currently pending before the Court, and motions *in limine*.

**A.     Validity of Power Integrations' Patents**

    1.     Whether the asserted Claims U.S. Patent Nos. 6,249,876 B1, of U.S.

Patent No. 6,107,851, U.S. Patent No. 6,229,366 B1, and U.S. Patent No. 4,811,075 are

invalid under 35 U.S.C. §103 as obvious in light of the prior art.  Authority:

- 35 U.S.C. § 102
- 35 U.S.C. § 103
- 35 U.S.C. § 282
- *Carella v. Starlight Archery*, 804 F.2d 135 (Fed. Cir. 1986).
- *Graham v. John Deere Co.*, 383 U.S. 1 (1966).
- *Monarch Knitting Machine Corp. v. Sulzer Morat GmbH.*, 139 F.3d 877 (Fed. Cir. 1998).
- *Panduit Corp. v. Dennison Manufacturing Co.*, 810 F.2d 1561 (Fed. Cir. 1987).
- *In re Rouffet*, 149 F.3d 1350 (Fed. Cir. 1998).

**B.     Non-Jury Issues for Court**

    1.     Whether Power Integrations is entitled to prejudgment interest on any

damages awarded from the time of Fairchild's alleged infringement through judgment.

Authority:

- *Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964 (Fed. Cir. 1987).
- *Gryomat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549 (Fed. Cir. 1984).
- *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226 (Fed. Cir. 1989).

    2.     Whether Power Integrations is entitled to increased damages as a result of

Fairchild's alleged willful infringement of Power Integrations' patents.  Authority:

- 35 U.S.C. § 281.
- 35 U.S.C. § 284.
- *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, (Fed. Cir. 1985).
- *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, (Fed. Cir. 1996).

3.    Whether this is an "exceptional" case justifying an award of attorneys fees

in Power Integrations' favor.  Authority:

- 35 U.S.C. § 285.
- *Great Northern Corp. v. Davis Core & Pad Co., Inc.*, 782 F.2d 159 (Fed. Cir. 1986).
- *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik*, 829 F.2d 1075 (Fed. Cir. 1987).

4.    The scope of the permanent injunction to which Power Integrations is

entitled enjoining Fairchild from further infringement of the asserted claims in the

patents-in-suit.  Authority:

- 35 U.S.C. § 283.
- *Genentech, Inc. v. Wellcome Foundation Ltd.*, 826 F. Supp. 828 (D. Del. 1993).
- *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989).

5.    Whether Power Integrations committed inequitable conduct during the

prosecution of the patents-in-suit.  Authority:

- *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1556 (Fed. Cir. 1995).
- *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1571 (Fed. Cir. 1996).
- *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1582 (Fed. Cir. 1991).
- *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 995 (Fed. Cir. 1995).

## EXHIBIT 5

### Defendants' Statement of Issues of Law That Remain to be Litigated

Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. expect to present the below listed issues of law at trial. To the extent that any issues of fact set forth in Exhibit 3A of the Joint Pretrial Order may be considered issues of law, Fairchild incorporates those portions of Exhibit 3A by reference. These issues of law may change based on the Court's decisions on Fairchild's seven summary judgment motions, which are currently pending before the Court, and motions *in limine*.

Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. have provided exemplary legal citation in support of each issue of law. Further support may be found in Defendants' pending motions for summary judgment. Defendants expressly reserve the right to cite additional legal support, if appropriate.

A.       **Issues of Law.**

1.       Qualifications of Power Integrations' expert witnesses and foundation of Power Integrations' experts' opinions.

Federal Rule of Evidence 702.

2.       Whether the opinions offered by Power Integrations' experts are speculative and should be barred.

Federal Rule of Evidence 702
*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).
*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).
*Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000).

3.       The effect of Power Integrations disavowal of DMOS devices during the prosecution of the '075 Patent.

*ACTV, Inc. v. Hypertv Networks, Inc.*, 346 F.3d 1082 (Fed. Cir. 2003).
*Astrazenca AB v. Mutual Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004).
*Chimie v. PPG Indus.*, 402 F.3d 1371 (Fed. Cir. 2005).
*Housey Pharms., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348 (Fed. Cir., 2004).
*Laitram Corp. v. Morehouse Indus. Inc.*, 143 F.3d 1456 (Fed. Cir. 1998).
*N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281 (Fed. Cir. 2000).
*Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995).
*Spring Windows Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989 (Fed. Cir. 2003).
*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).

4.       Whether Power Integrations must prove a specific act of direct infringement for each of the Accused Devices for Fairchild to be potentially liable for infringement pursuant to 35 U.S.C. § 271(b) or (c).

35 U.S.C. § 271(b) and (c).
*Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009 (Fed. Cir. 1998)
*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002).

*Hopkins Univ. v. CellPro*, 894 F. Supp. 819 (D. Del. 1995)

5.    Whether the addition of new matter during the prosecution of the '075 Patent means that the priority date for claims 1 and 5 of the '075 Patent is other than the date of filing of the application leading to the '075 Patent.

> 35 U.S.C. § 112.
> *Biogen, Inc. v. Berlex Laboratories, Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003).
> *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319(Fed. Cir. 2003).
> *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).
> *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916 (Fed. Cir. 2004).

6.    Whether Power Integrations has met its burden of producing evidence independent of the inventor corroborating the conception and reduction to practice of the invention claimed in claims 1 and 5 of the '075 Patent.

> 35 U.S.C. § 102(e) and (g)
> *Burroughs Wellcome Co. v. Barr Lab.*, 40 F.3d 1223 (Fed. Cir. 1994).
> *Cooper v. Goldfarb*, 154 F.3d 1321 (Fed. Cir. 1998).
> *Hahn v. Wong*, 892 F.2d 1028 (Fed. Cir. 1989).
> *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986).
> *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157 (Fed. Cir. Feb. 2006).
> *Mycogen Plant Sciences, Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001).
> *Price v. Symsek*, 998 F.2d 1187 (Fed. Cir. 1993).
> *Ralston Purina Co. v. Far-Mar-Co., Inc.* 586 F.Supp. 1176 (D. Kan. 1984).
> *Reese v. Hurst*, 661 F.2d 1222 (C.C.P.A. 1981).
> *Singh v. Brake*, 222 F.3d 1362 (Fed. Cir. 2000).
> *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375 (Fed. Cir. 2006).

7.    The effect of Power Integrations' failure to provide actual or constructive notice prior to October 20, 2004.

> 35 U.S.C. § 287(a).
> *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F.
>     Supp. 2d 268 (S.D.N.Y. 2000).
> *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526 (D.N.J., 2005).
> *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998)

8.    Whether Fairchild can be potentially liable for making, using, selling, or offering the Accused Devices for sale outside of the United States.

> 35 U.S.C. § 271(a).
> *Audio Visual Assoc., Inc. v. Sharp Electronics Corp.*, 210 F.3d 254 (4th Cir.
>     2000).
> *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).
> *Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999)
> *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001).
> *Gulf States Util. Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538 (M.D. La.
>     1993).
> *Hamburger Color Co., Inc. v. Landers-Segal Color Co., Inc.*, 1996 WL 379562,
>     (E.D. Pa. 1996).
> *Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365 (E.D. Va. 2003).
> *Linear Technology Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001)

*MLMC, Ltd. v. Airtouch Communications, Inc..*, 215 F. Supp. 2d 464 (D. Del. 2002).

*Pfaff v. Wells*, 525 U.S. 55 (1998)

*Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773 (D. Del. 2002).

9.     Whether Power Integrations is entitled to lost profits due to lost sales.

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978).

10.     Whether Power Integrations can use prices prior to October 20, 2004 in calculating lost profits due to alleged lost sales.

35 U.S.C. § 271(a)

*Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268 (S.D.N.Y. 2000).

*MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526 (D.N.J., 2005).

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998)

11.     Whether Power Integrations can recover lost profits for lost sales due to Fairchild products manufactured and sold outside of the United States.

35 U.S.C. § 271(a)

*Audio Visual Assoc., Inc. v. Sharp Electronics Corp.*, 210 F.3d 254 (4th Cir. 2000).

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).

*Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999)

*Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001).

*Gulf States Util. Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538 (M.D. La. 1993).

*Hamburger Color Co., Inc. v. Landers-Segal Color Co., Inc.*, 1996 WL 379562, (E.D. Pa. 1996).

*Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365 (E.D. Va. 2003).

*Linear Technology Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001)

*MLMC, Ltd. v. Airtouch Communications, Inc..*, 215 F. Supp. 2d 464 (D. Del. 2002).

*Pfaff v. Wells*, 525 U.S. 55 (1998)

*Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773 (D. Del. 2002).

12.     Whether Power Integrations is entitled to lost profits due to price erosion.

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978).

13.     Whether Power Integrations can use prices prior to October 20, 2004 in calculating its alleged lost profits due to price erosion.

35 U.S.C. § 287

*Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268 (S.D.N.Y. 2000).

*MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526 (D.N.J., 2005).

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998)

14.    Whether Power Integrations can recover lost profits for price erosion due to Fairchild products manufactured and offered for sale outside of the United States.

> 35 U.S.C. § 271(a)
> *Audio Visual Assoc., Inc. v. Sharp Electronics Corp.*, 210 F.3d 254 (4th Cir. 2000).
> *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).
> *Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999)
> *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001).
> *Gulf States Util. Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538 (M.D. La. 1993).
> *Hamburger Color Co., Inc. v. Landers-Segal Color Co., Inc.*, 1996 WL 379562, (E.D. Pa. 1996).
> *Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365 (E.D. Va. 2003).
> *Linear Technology Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001)
> *MLMC, Ltd. v. Airtouch Communications, Inc..*, 215 F. Supp. 2d 464 (D. Del. 2002).
> *Pfaff v. Wells*, 525 U.S. 55 (1998)
> *Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773 (D. Del. 2002).

15.    Whether Power Integrations is entitled to lost profits due to future price erosion.

> *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978).

16.    Whether Power Integrations can recover lost profits due to future price erosion after the expiration of the asserted patents.

> *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997).

17.    Whether Power Integrations can use prices prior to October 20, 2004 in calculating its alleged lost profits due to future price erosion.

> 35 U.S.C. § 287
> *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268 (S.D.N.Y. 2000).
> *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526 (D.N.J., 2005).
> *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998)

18.    Whether Power Integrations can recover lost profits for future price erosion due to Fairchild products manufactured and offered for sale outside of the United States.

> 35 U.S.C. § 271(a)
> *Audio Visual Assoc., Inc. v. Sharp Electronics Corp.*, 210 F.3d 254 (4th Cir. 2000).
> *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).
> *Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir. 1999)
> *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001).
> *Gulf States Util. Co. v. NEI Peebles Elec. Prods., Inc.*, 819 F. Supp. 538 (M.D. La. 1993).
> *Hamburger Color Co., Inc. v. Landers-Segal Color Co., Inc.*, 1996 WL 379562, (E.D. Pa. 1996).
> *Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365 (E.D. Va. 2003).
> *Linear Technology Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001)

> *MLMC, Ltd. v. Airtouch Communications, Inc..*, 215 F. Supp. 2d 464 (D. Del. 2002).
>
> *Pfaff v. Wells*, 525 U.S. 55 (1998)
>
> *Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773 (D. Del. 2002).

19.     If Power Integrations is entitled to a reasonable royalty, what is the appropriate royalty base.

20.     Whether the appropriate royalty base can include products manufactured and sold by Fairchild outside of the United States without proof that Fairchild induced the importation of these products into the United States.

> *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997).

21.     Whether Power Integrations is entitled to prejudgment interest on past damages.

> *Dragan v. L.D. Caulk Co.*, 12 USPQ2d 1081 (D. Del. 1989).

> *Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996).

> *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380 (Fed. Cir. 1983).

**B.**     **Equitable Issues For The Court.**

22.     Whether Power Integrations is entitled to increased damages as a result of Fairchild's alleged willful infringement.

23.     Whether this is an "exceptional" case justifying an award of attorneys fees in Fairchild's favor.

24.     Whether Power Integrations is entitled to a permanent injunction enjoining Fairchild from further infringement in the United States and, if so, the scope of such an injunction.

25.     Whether the Patents-In-Suit are unenforceable due to Power Integrations' inequitable conduct.