### 4.6.2   OBVIOUSNESS – DIFFERENCES OVER THE PRIOR ART

You must next consider the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

Sources & Comments:

Instruction 4.8.2, 1993 District of Delaware Patent Instructions; *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 4.8.2, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); Instruction 4.12, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

### 4.6.3   OBVIOUSNESS – LEVEL OF ORDINARY SKILL

The question of obviousness is seen from the vantage point of a person of ordinary skill in the art. This person of ordinary skill in the art is a theoretical construct of a person who thinks along the lines of conventional wisdom in the art to which the invention pertains.

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology, and the education of others working in the field.

Sources & Comments:

Instruction 4.13, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); Instruction 4.8.3, 1993 District of Delaware Patent Instructions; *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); .Instruction 4.8.3, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

### 4.6.4   OBVIOUSNESS – MOTIVATION TO COMBINE

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention.  Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.  The suggestion or motivation to combine and the expectation of success must be found in either: the prior art references themselves, the knowledge of persons of ordinary skill in the art, or, in some cases, the nature of the problem to be solved.

Sources & Comments:

Instruction 4.15, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 4.8.4, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

### 4.6.5   OBVIOUSNESS – HINDSIGHT

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the patent as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  Instead, you must cast your mind back to the time of the invention and consider the thinking of one of ordinary skill in the art, guided only by the prior art and what was then known in the field.

Sources & Comments:

Instruction 4.8.5, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).

### 4.6.6   OBVIOUSNESS – OBJECTIVE CRITERIA

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence that may tend to show the non-obviousness of the claims at issue:

      1.    commercial success or lack of commercial success of products that practice the patents in suit;

      2.    a long-felt need in the art that was satisfied by the invention of the patent;

      3.    the taking of licenses under the patent by others.

However, there must be a causal connection or nexus between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, then any commercial success or license may have no relation to the issue of obviousness.

Evidence that may tend to show the obviousness of an invention is a showing of independent development or making of the invention by others before the inventor of the patent or at about the same time.

<u>Sources & Comments:</u>

*ISCO Int'l v. Conductus, Inc.*, C.A. No. 01-487-GMS (D. Del. 2003); *Ransomes, Inc. v. Great Dane Power Equip.*, 232 F.3d 911 (Fed. Cir. 2000) (unpublished); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 4.8.6, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

### 4.6.7   OBVIOUSNESS – OBVIOUS TO TRY

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard; rather, it is whether the invention as a whole would have been obvious to those of ordinary skill in the pertinent art at the time he or she made the invention.

Sources & Comments:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 4.8.7, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); Instruction 4.8.8, 1993 District of Delaware Patent Instructions.

## 5.    UNENFORCEABILITY

## 5.1    INEQUITABLE CONDUCT

Every applicant for a patent has a duty of candor and good faith in its dealing with the Patent Office and the examiner handling the application. This duty of candor is important because the examiner has only limited information available to determine the state of the art. The time available to the examiner is also limited. Therefore, to prevent an applicant from obtaining a patent he or she does not deserve, the Patent Office requires full disclosure to the Patent Office of all information which is material to examination of the application.

This means that the applicant and his or her attorneys must not intentionally withhold or misrepresent material information concerning the claimed invention. A breach of this duty is called inequitable conduct and renders the patent unenforceable.

To prove inequitable conduct, defendant must show, by clear and convincing evidence, that the applicants or their attorneys, with intent to mislead or deceive, withheld or misrepresented information that was significant and material to the examiner's evaluation of the patent application.

Sources & Comments:

Instruction 5.1, 1993 District of Delaware Patent Instructions; *Joy v. Flakt* Instructions (January 1992; C.A. 89-533-JJF); ABA's Section of Patent, Trademark and Copyright Law; *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556,1562 (Fed. Cir. 1989); *Allen Archery, Inc. v. Browing Mfg. Co.*, 819 F.2d 1087,1093-95 (Fed. Cir. 1987); *Litton Indus. Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158,166-67 (Fed. Cir. 1985).

## 5.1.1 MATERIALITY

In evaluating an allegation that applicants were guilty of inequitable conduct before the Patent and Trademark Office, you must first determine whether there was any withholding or misrepresentation of information at all and, if so, whether the information withheld or misrepresented was indeed material. Information is not material if it is cumulative of information already in the record of the application at the Patent Office, or being made of record therein. In order for the information withheld or misrepresented to be material, it must establish, by itself or in combination with other information, a prima facie case that a claim is not patentable, *or* it must refute, or be inconsistent with a position the patent applicant took either arguing for patentability or opposing an argument of unpatentability relied upon by the Patent Office.

If you determine that there was a withholding or misrepresentation of information and that the information was material, then you must consider the element of intent. If, on the other hand, you find that applicants have failed to prove by clear and convincing evidence that applicants or their attorneys withheld or misrepresented any material information, then you must find that there was no inequitable conduct.

Sources & Comments:

Instruction 5.2, 1993 District of Delaware Patent Instructions; *Joy v. Flakt* Instructions (January 1992; C.A. 89-533-JJF), as modified by 37 C.F.R. § 1.56(b) (1992 revision); *Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.*, 438 F.3d 1123, 1129 (Fed. Cir. 2006).

## 5.1.2 INTENT

Defendant must prove, by clear and convincing evidence, that the applicants or their attorneys withheld or misrepresented material information with the intent to mislead or deceive the patent examiner. If the withholding or misrepresentation occurred through negligence, oversight, carelessness or an erroneous judgment, then there was no intent and no inequitable conduct.

Intent need not be proved directly because there is no way of scrutinizing the operations of the human mind. Therefore, you may infer intent from conduct, from acts substantially certain to accomplish a result, but you are not required to infer it. Any such inference depends upon the totality of the circumstances, including the nature and level of culpability of the conduct and the absence or presence of affirmative evidence of good faith.

Sources & Comments:

Instruction 5.3, 1993 District of Delaware Patent Instructions; *Joy v. Flakt* Instructions (January 1992; C.A. 89-533-JJF); *Engel Industries Inc. v. Lockformer Co.*, 946 F.2d 1258 (Fed. Cir. 1991); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988) (*en banc*), *cert. denied*, 490 U.S. 1067 (1989).

### 5.1.3 BALANCING

You must determine whether the withheld information or misrepresentation satisfies a threshold level of materiality. You must also determine whether the conduct of applicants or their attorneys satisfies a threshold showing of intent to mislead. Assuming satisfaction of the thresholds, materiality and intent must be balanced.

The more material the withheld or misrepresented information is, the less stringent is the requirement to prove intent by clear and convincing evidence. In other words, withholding or misrepresentation of a highly material piece of information requires a lower level of proven intent, thereby allowing you to infer intent. You must be the judge of this balance.

If you find that defendants have proven by clear and convincing evidence that there was a material withholding or a material misrepresentation of information and that applicants or their attorneys acted with intent to deceive the examiner, then you must balance these two factors to determine whether or not, in your view, there was inequitable conduct.

Sources & Comments:

Instruction 5.4, 1993 District of Delaware Patent Instructions; *Joy v. Flakt* Instructions (January 1992; C.A. 89-533-JJF); *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435,1439 (Fed. Cir. 1991), *reh'g denied*, 1991 U.S. App. Lexis 4501 (Fed. Cir. 1991).

## 5.2    PATENT MISUSE

Fairchild contends that the patents in suit are invalid because of Power Integrations' misuse of those patents.

Patent law will not provide a remedy to a patentee who exploits a patent in an improper manner by extending the patent beyond its lawful scope. A United States patent is limited in scope to enforcement in the United States only and does not apply outside the United States. A patent is unenforceable for misuse if the patentee attempts to use the patent to exclude products from a foreign marketplace and the patentee has actual knowledge that those products never entered the United States. However, if a patentee who has misused his patents terminates the misuse, the patents again become fully enforceable.

To prevail on this defense, Fairchild must demonstrate that the misuse of the Power Integrations patents occurred during the time period Power Integrations claims infringement of the same patents since October 20, 2004. If Fairchild does not meet its burden of proof, then you must find against Fairchild on this defense.

Sources & Comments:

Instruction 4.8.8, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); 35 U.S.C. § 271(d); *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488 (1942); Donald S. Chisum, *Chisum on Patents* §19.04 (2001); *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998); *Ethyl Corp. v. Hercules Powder Co.*, 232 F. Supp. 453 (D. Del. 1964); *Metals Disintegrating Co. v. Reynolds Metals Co.*, 107 F. Supp. 105 (D. Del. 1952).

6.    **DAMAGES**

6.1    **GENERALLY**

If, after considering all of the evidence and the law as I have stated it, you are convinced that the patents in suit are not infringed, or are invalid or unenforceable, your verdict should be for Fairchild and you need go no further in your deliberations.  On the other hand, if you decide that at least one of the patents in suit is not invalid and unenforceable, and that some claim or claims of that patent have been infringed by Fairchild, you must then turn to the issue of damages.

You must also understand that my instructions regarding damages should not be construed as indicating any view on my part as to which party is entitled to prevail in this case.  These instructions about damages are given for your guidance in the event that the evidence leads you to conclude that some claim of a valid and enforceable patent has been infringed.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.  Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Fairchild benefited from, realized profits from, or even lost money as a result of the acts of infringement.  The only issue is the amount necessary to compensate plaintiffs adequately for the acts of infringement.

Sources & Comments:

Instruction 5.1, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); Instructions 6.1, 6.13, 1993 District of Delaware Patent Instructions.

## 6.2    REASONABLE CERTAINTY

Under the patent law, once infringement has been determined, the patent owner is entitled to all resulting damages that can be proven with "reasonable certainty." On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to the patent owner. On the other hand, a patent owner is not entitled to entirely speculative damages. That is, you should not award any amount for loss, which although possible, is wholly remote or left to conjecture and/or guess. You may base your evaluation of "reasonable certainty" on opinion evidence that has been offered in the case.

Sources & Comments:

Instruction 5.2, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); Instruction 6.3, 1993 District of Delaware Patent Instructions.

**6.3     DATE DAMAGES MAY BEGIN**

Power Integrations may only recover damages for infringement that occurred after the date it gave notice to Fairchild of its patent rights. Because Power Integrations failed to mark any its products with any words or patent numbers for any of the four patents in suit, such as "U.S. Patent No. 4,811,075," or "U.S. Patent No. 6,249,876," it did not give constructive notice to Fairchild of its patent rights. Also, Power Integrations failed to give actual notice of its patent rights to Fairchild until the date it filed this lawsuit, October 20, 2004. Whether Fairchild knew of the patents in suit prior to October 20, 2004 by some other means or event is irrelevant. This means that if you decide to award lost profits damages in the form of lost sales, price erosion, or increased expenses, the amount of such damages must be calculated without reference to any sales, prices or expenses prior to October 20, 2004. The number of sales that you conclude Power Integrations would have made, the prices it would have charged, or the expenses it would have avoided must commence on October 20, 2004 as though no infringement had occurred before that date.

<u>Sources & Comments:</u>

35 U.S.C. § 287(a); *Honeywell International v. Hamilton Sunstrand Corp., 2001* WL 66345 (D. Del., Jan. 4, 2001) (GMS); *Novartis v. Monsanto,* C.A. *97-39, 97-40* (RRM) (D. Del. 1997); Instruction 5.4, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1440 (Fed. Cir. 1998); *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268, 280-81 (S.D.N.Y. 2000).

## 6.4    METHODS FOR COMPUTING DAMAGES

There are two common methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages. These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

In determining damages, you should first determine whether Power Integrations has proven its entitlement to lost profits. If you find that Power Integrations is not entitled to lost profits, you should then calculate damages based upon another method, which may include a reasonable royalty.

Sources & Comments:

*Novartis v. Monsanto,* C.A. 97-39, 97-40 (RRM) (D. Del. 1997); Instruction 5.5, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

## 6.5    ENTIRE MARKET VALUE RULE

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product. So, if you find that Power Integrations has proven by a preponderance of the evidence that customers demanded the entire accused product because of the patented feature, you may award damages based on the value of the entire product. However, if you find that customer demand for the product is based on something other than the patented feature, you should award damages based on the value of the patented feature alone and not the value of the entire product.

Sources & Comments:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 5.6, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

**6.6    LOST PROFITS – GENERALLY**

In this case, Power Integrations is seeking lost profits as its patent damages with regard to certain customers. Lost profit damages are the profits Power Integrations asserts it lost because of the infringement. They are not the profits Fairchild actually made. Power Integrations' lost profits may be in several different forms, but are commonly in the form of: (i) lost profits from lost sales, (ii) eroded prices on Power Integrations' own sales, or (iii) increased expenses caused by the infringement. In this case, Power Integrations must establish that the infringement actually caused its lost profits. Thus, Power Integrations must show that "but for" the infringement, Power Integrations would have made the sales or profits that were allegedly lost.

Sources & Comments:

*Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Herbert v. Lisiele Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *Novartis v. Monsanto*, C.A. *97-39, 97-40* (RRM) (D. Del. 1997); Instruction 6.5, 1993 District of Delaware Patent Instructions; Instruction 5.7, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

### 6.7    LOST PROFITS FROM LOST SALES

Power Integrations is claiming that it lost sales because of Fairchild's alleged infringement. In order to recover lost profits damages for the sales that Fairchild made, Power Integrations must show each of the following for each instance of lost profits damages:

    1.      There was a demand for the patented product;

    2.      Power Integrations had the ability to meet the additional market demand had there been no infringer;

    3.      No acceptable non-infringing substitutes were available; and

    4.      The amount of the profit it would have made.

Power Integrations need not negate every possibility that purchasers of Fairchild's products might have bought another product or no product at all. The mere existence of a competing device does not make that product an acceptable substitute. To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products. For example, acceptable non-infringing alternatives may include non-accused Fairchild products that incorporate a soft start and/or EMI reduction features or other products that compete with the Power Integrations products that allegedly practice the asserted patents. However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitute.

In proving its damages, the Power Integrations' burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that Power Integrations would have made some or all of the infringing sales, and it is reasonably probable what amount Power Integrations would have netted from the denied sales, then Fairchild is liable for the lost profits on those infringing sales. The infringer is not liable, however, for speculative profits.

Sources & Comments:

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (Fed. Cir. 1978); *Novartis v. Monsanto,* C.A. 97-39, 97-40 (RRM) (D. Del. 1997); *ISCO Int'l, Inc. v. Conductus, Inc.,* 2003 WL 280223, *1 (D. Del. 2003), *citing Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1553 (Fed.Cir.1997); *Shockley v. Arcan, Inc.,* 248 F.3d 1349, 1362 (Fed. Cir. 2001); Instruction 6.5, 1993 District of Delaware Patent Instructions.

**6.8    LOST PROFITS – PRICE EROSION**

In this case, Power Integrations is requesting damages based on "price erosion." Price erosion occurs only when Power Integrations is forced to lower prices due to the presence in the market of the infringing products. Specifically, Power Integrations asserts that it lowered its prices for certain of its products and will be unable to raise prices for some period of time in the future because of Fairchild's infringement.

If you determine that the prices on Power Integrations' products were eroded from its October 20, 2004 prices, you must then consider whether any such price erosion resulted because Fairchild was in the market for the specific patented product or because of some other reason. The relevant product market includes only devices or substitutes similar in physical and functional characteristics, and in price, to the patented invention. You may not find price erosion resulting from sales of products with significantly different physical or functional characteristics from the patented invention, or products with disparately different prices.

Ultimately, to recover price erosion damages, Power Integrations must prove that "but for" Fairchild's competition, it would not have lowered its prices or would have been able to raise its prices. Power Integrations must also prove the amount of sales it would have made at the higher (uneroded) price, and if it cannot do so, it is not entitled to price erosion damages.

Sources & Comments:

This instruction, from Instruction 5.11, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004), is similar to the 1993 District of Delaware Instruction 6.6, Lost Profits Price Erosion. The revisions result from cases since the 1993 version. *See e.g.*, *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356-57 (Fed. Cir. 2001) (patentee must show that "but for" the infringement it would have sold its product at higher prices and must present evidence of the amount of product the patentee would have sold at the higher price; relevant market is products with physical and functional characteristics and prices similar to the patented invention); *Mince v. Combustion Engi'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996) (to prove price erosion damages, a patentee must show that, but for the infringement, it would have been able to charge higher prices); *BCI Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993); *W. R. Grace & Co. v. Intercat, Inc.*, 60

F. Supp. 2d 316, 327 (D. Del. 1999).  Similar instructions were given in *Mycogen Plant Science & Agrigenetics v. Monsanto*, C.A. 96-505 (RRM) (given on Jan. 30, 1998) and *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, C.A. No. 99-309 (GMS) (given on Feb. 15, 2001).  The last sentence is not in the 2004 Instruction, but is based on the last sentence in the 1993 Instruction, and it clearly supported by *Crystal Semiconductor*.

## 6.10    FUTURE PROFITS – DETERMINATION

In considering the element of future profits, you should determine whether or not Fairchild's infringement of the patent prevented Power Integrations from earning profits that it would have earned but for that infringement. In determining whether or not any part of Power Integrations's damages constitute future profits, you may consider the past experience of Power Integrations and Fairchild in the business, the competition Power Integrations would have had, and the general market conditions. Power Integrations must present reliable economic evidence to support an award of future lost profits and cannot rely upon mere speculation.

Sources & Comments:

Instruction 6.7, 1993 District of Delaware Patent Instructions; *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001); Instruction 5.13, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

## 6.11    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

Power Integrations requests damages determined by a reasonable royalty for Fairchild's alleged use of the invention of the patents in suit.  A reasonable royalty is the amount of money that would have been agreed to in a hypothetical arms-length negotiation between the owner of the patents and the accused infringer at the time the alleged infringement began.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms length negotiation that I just referred to would have been likely to occur.  This is typically just before infringement began, which in this case is [date].

In the hypothetical arms-length negotiation, you must assume that the parties engaged in the hypothetical negotiations are negotiating the terms of a license in which the licensee receives nothing from the licensor other than the right to use the patented inventions, and the licensor receives nothing from the licensee other than money.

Sources & Comments:

Instruction 5.3, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

**6.12    PRESUMPTIONS IN THE HYPOTHETICAL NEGOTIATION**

There are certain presumptions in the hypothetical negotiation that you should take into account.

You should assume that both sides to the hypothetical negotiation knew all pertinent information existing at the time of the hypothetical negotiation. Having that in mind, you may consider any relevant fact known as of the hypothetical negotiation in determining the reasonable royalty for Fairchild's alleged use of the patented invention. You may also consider the opinion testimony of experts.

As to events occurring after the hypothetical negotiation, they ought to relate back to the time of the hypothetical negotiation and not be an after-the-fact assessment based on information as of the trial. That is, later information is relevant only as it is used to test the parties' risks and expectations at the time of the hypothetical negotiation.

Another presumption in the hypothetical negotiation is that the licensor is willing to grant a license and the licensee is willing to take a license. As a result, it is presumed that they will reach agreement, rather than sue each other and litigate.

Yet another presumption in the hypothetical negotiation is that the patent is presumed valid, enforceable and infringed. However, this presumption does not warrant awarding the Power Integrations a special "premium" based on the presumption.

<u>Sources & Comments:</u>

Instruction 5.4, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.,* C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

**6.13    FACTORS FOR DETERMINING REASONABLE ROYALTY**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    The royalties received by Power Integrations for the licensing of others under the patent;

2.    The rates paid by Power Integrations, Defendant or others for the use of other patents comparable to the patent in suit;

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Power Integrations' established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Power Integrations and Fairchild, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other products of Fairchild, the existing value of the invention to the Power Integrations as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the patent and the length of the licenses;

8.    The established profitability of the product made under the patent, its commercial success and its current popularity;

9.    The utility and advantages of Power Integrations' patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Power Integrations, and the benefits to those who have used the invention;

11.    The extent to which Fairchild has made use of the invention, and any evidence that shows the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Fairchild;

14.    The opinion testimony of qualified experts; and

15.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Sources & Comments:

Instruction 5.5, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 6.11, 1993 District of Delaware Patent Instructions; Instruction 5.14.1, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

## 6.14    INTEREST

None of the parties' calculations include interest.  Therefore, in arriving at your damages

calculation, you should not consider interest in any way because it is the function of the Court to

award interest.

Sources & Comments:

*Union Carbide v. Shell Oil*, C.A. 99-CU-274, 00-846-SLR (D. Del. given Feb. 6, 2001); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.).

**6.15    CLOSING STATEMENT – DAMAGES**

The fact that I have instructed you regarding damages should not be construed as suggesting

which party is to prevail in this case.  Instructions regarding damages are given for your guidance in

the event that the evidence leads you to find in favor of Power Integrations.  Finally, if you find

Power Integrations is entitled to damages, you may not include or add to the award any sum for

purposes of punishing Fairchild or to set an example.

<u>Sources & Comments:</u>

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, C.A. No. 99-309 (GMS) (D. Del. 2001);
*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21,
2003)(Farnan, J.); Instruction 5.16, Proposed Uniform Jury Instructions For Patent Cases In The
United States District Court For The District Of Delaware (2004).

**7.    DELIBERATIONS AND VERDICT**

**7.1    INTRODUCTION**

My instructions on the law are now finished.  I will end by explaining how you will conduct your deliberation in the jury room and about your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  If you have any questions or messages, you must write them on a piece of paper, sign them and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

<u>Sources & Comments</u>:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction. 7.1, 1993 District of Delaware Patent Instructions; Instruction 6.1, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

## 7.2     UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that, you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to that verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

<u>Sources & Comments</u>:

Instruction 6.2, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.,* C.A. No. 03-241 (D. Del. 2004) (Farnan, J.), which condenses Instructions 7.2 and 7.3 in the 1993 Instructions (they overlap with each other somewhat).

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2006, the attached **FAIRCHILD'S**

**PROPOSED JURY INSTRUCTIONS** was served upon the below-named counsel of record at

the address and in the manner indicated:


William J. Marsden, Jr., Esquire                                HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE  19899

Frank E. Scherkenbach, Esquire                         VIA ELECTRONIC MAIL
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Michael Kane, Esquire                                     VIA ELECTRONIC MAIL
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN  55402

Howard G. Pollack, Esquire                               VIA ELECTRONIC MAIL
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063


*/s/ John G. Day*
_____

John G. Day