# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Suite 1100
919 N. Market Street
p.o. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

**VIA ELECTRONIC FILING**

**June 16, 2006**

The Honorable Joseph J. Farnan, Jr.
United States District Court for the District of Delaware
844 King Street
Wilmington, DE  19801

Re:    Reconsideration of Order of June 2, 2006 regarding damages *calculation* versus *collection*; Power Integrations, Inc. v. Fairchild Semiconductor International, USDC-D. Del. - C.A. No. 04-1371 JJF

Dear Judge Farnan:

Pursuant to the Court's invitation at the Pretrial Conference [Tr. at 3], Power Integrations submits this letter brief seeking reconsideration of a portion of the Court's partial summary judgment order of June 2, 2006 regarding *collection* and *calculation* of damages in this case.

Power Integrations has no objection to the court's order limiting Power Integrations' *collection* of damages from the date the complaint was filed, October 20, 2004.  It is Power Integrations' position, however, that the Court's order precluding the use of pre-October 20, 2004 sales data to *calculate* the rate of price erosion on Power Integrations' products is contrary to the marking statute and relevant case law.  Power Integrations does not intend to collect any damages for lost sales, royalties, or price erosion on units sold before October 20, 2004.  Power Integrations does, however, need to rely on pre-filing erosion data to show the proper rate/percentage of price erosion that it can apply to post-October 20, 2004 unit sales.  Unfortunately, the Court's order would preclude use of the actual data produced in this case to show the price erosion applicable to units sold after October 20, 2004, in favor of an artificial and erroneous erosion starting after October 20, 2004.  Power Integrations therefore requests the Court modify its June 2, 2006 order to allow pre-October 20, 2004 data to  be used to calculate the price erosion applied to unit sales after October 20, 2004.

**THE ORDER OF JUNE 2, 2006**

On June 2, 2006, this Court rendered a partial summary judgment order on Fairchild's motion to limit damages under 35 U.S.C. § 287 (failure to mark), barring Power Integrations from collecting damages incurred prior to October 20, 2004, the date Power Integrations filed its complaint and notified Fairchild of its alleged infringement.  [D.I. 265 at 2].  That part of the order is not challenged, and was, in fact, stipulated to by Power Integrations.  However, the Court further barred Power Integrations from calculating damages for lost profits and price erosion based on

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
June 16, 2006
Page 2

market and other conditions occurring prior to October 20, 2004, relying on *Johnson Electric*. *Id.* at 5 (citing *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268, 280 (S.D. N.Y. 2000)). *Johnson Electric*, however, was wrongly decided to the extent it precludes calculation and use of pre-notice data and information. Further, the *Johnson Electric* case does not square with the marking statute itself, and is at odds with numerous Federal cases clearly establishing a proper basis for *calculating* damages, rather than collecting damages, prior to the marking date. In its June 2, 2006 order, the Court specifically precluded use of sales data and calculations prior to October 20, 2004 and stated that "calculations of price erosion should begin with the notice date." [D.I. 265 at 5]. Power Integrations respectfully suggests this latter ruling is contrary to law and the intent of the marking statute.

**PRE-INFRINGEMENT DATA IS PERMISSIBLE TO USE IN CALCULATING PRICE EROSION DAMAGES**

    A.    The Marking Statute Does Not Create An Evidentiary Limitation On Calculation Of Damages.

The patent marking statute is a limitation on the collection of damages for infringement. *See* 35 U.S.C. § 287 (2000) ("[N]o damages shall be *recovered* by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be *recovered only for infringement* occurring after such notice." (emphasis added)). While the statute limits damage collection to "infringement" that occurs post-notice, it does not create an evidentiary limitation on how to calculate the damages due for each post-notice infringement.

The statute's purpose is not to change the method of calculating damages. *See* § 287(a). Instead, the statute essentially creates a three-step process for recovery[1] of

---

[1] Hypothetical price erosion curve and application of 35 U.S.C. § 287(a).



FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
June 16, 2006
Page 3

damages: (1) calculate total damages caused by the infringement; (2) determine date of notice (or marking); and (3) allow recovery of all damages identified in the first step starting with the date of notice (or marking). If Fairchild ceased its infringement on the day it received notice, then no damages could be recovered. If that had occurred, Power Integrations could not recover, regardless of how price erosion is calculated, because no "infringements" would have occurred to which the calculations could apply. However, each post-notice "infringement" continues to depress the price below the "but for" infringement price. Because Power Integrations continues to suffer damages from the depressed price, it is entitled to recover appropriate damages for each post-notice infringement.

    B.    <u>Courts Are Permitted to Use Pre-Infringement Data In Establishing Price Erosion Damages.</u>

Damages *calculations* are divorced from the date of notice. The Federal Circuit has held that price erosion calculations can include evidence starting prior to the date of infringement. *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1578-79 (Fed. Cir. 1992) (rejecting infringer's argument that it was incorrect to consider price reductions made by patentee on its own chips, after the infringer announced its chips, but before there were infringing sales). In *Brooktree*, it was the infringer's position that the patentee's damage calculations were incorrect since they included data and events occurring before any infringement began. *Id.* at 1578. The Federal Circuit in *Brooktree* allowed the patentee to use pre-infringement price history to determine the actual price erosion suffered by the patentee. *Id.*

The Federal Circuit has also approved use of pre-suit pricing data to establish a proper calculation of lost profits. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1359 (Fed. Cir. 2001). The Federal Circuit has even permitted the use of *pre-issuance* evidence to calculate the value of lost-profits. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed. Cir. 1983). In *Lam*, the Federal Circuit approved a damages award where lost profits calculations were based on 1974-1976 pricing data even though the patent did not issue until April 1976. *Id.* at 1059, 1063, 1068. In giving its blessing to the use of pre-issuance evidence in lost profits calculations, the Federal Circuit in *Lam* made clear that the start date for damages *calculations* cannot be tied to the ability to collect damages. In summary, the relevant case law demonstrates that pre-notice evidence can be used to *calculate* damages even though the marking statute alters the date for *collecting* damages.

    C. <u>The *Johnson Electric* Case Was Wrongly Decided.</u>

The Southern District of New York's decision in *Johnson Electric,* on which this Court relied to exclude evidence of pre-suit erosion, cannot be squared with the plain

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
June 16, 2006
Page 4

language of the statute or with the case law, including the Federal Circuit's cases. The *Johnson Electric* court stated that because the price erosion "*occurred prior to compliance* with the patent marking statute" it could not be considered. 103 F. Supp. 2d at 281 (emphasis added). With all due respect, this analysis is simply wrong. The *Johnson Electric* court presumes that price erosion occurs at a single point in time. Unfortunately, this defies logic and the definition of price erosion set forth by the Supreme Court and the Federal Circuit.

The Supreme Court has defined price erosion as the "[r]eduction of prices, and *consequent* loss of profits, *enforced* by infringing competition." *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 551 (1886) (emphases added). Expounding upon the Supreme Court's definition, the Federal Circuit requires a patentee to "show that 'but for' infringement, it would have sold its product at higher prices." *Crystal Semiconductor*, 246 F.3d at 1357 (quoting *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993)). Taken together, price erosion starts with the initial infringement and, so long as the patentee can demonstrate that the infringement caused the price depression to remain in effect, continues until the pricing pressure is eliminated – when the erosion is no longer "enforced by infringing competition." *See Yale Lock*, 117 U.S. at 551; *Crystal Semiconductor*, 246 F.3d at 1357. Thus, price erosion is not measured at a single point in time but on a continuum that starts with the initial infringement. It is therefore wrong to state, as the *Johnson Electric* court did, that the damages from price erosion occur *only prior* to notice. *See Johnson Electric*, 103 F. Supp. 2d at 281. They *first* occur prior to notice, when infringement began, but plainly continue thereafter. And when the infringement began, of course, bears no necessary relationship to when, or if, the patentee provided notice or marked its product. Indeed, § 287 presumes these dates will differ – that there might be damages due to infringement that go uncollected.

In order to adequately determine the "higher price" a patentee would have charged absent the infringement, it is imperative to analyze the market absent the infringing product. *See Yale Lock*, 117 U.S. at 552 (stating the patentee is entitled to recover "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred"); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978). The most reliable way to do so is to allow evidence of what the market *did* look like prior to infringement.

Here, Power Integrations began suffering the price erosion pre-notice in the same way Brooktree suffered price erosion prior to AMD infringing its patent. *See Brooktree*, 977 F.2d at 1578-80. The price erosion that began pre-notice continues to this day and affects each Power Integrations product sold. While Power Integrations may not *collect* any pre-notice damages for price erosion due to pre-notice infringement, it is

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
June 16, 2006
Page 5

entitled to use pre-notice evidence to *calculate* the price erosion damages that continue to be "enforced by infringing competition."[2] *See Yale Lock*, 117 U.S. at 551.

Additionally, Power Integrations notes that this Court has permitted the use of pre-notice facts to determine the appropriate reasonable royalty. It would be inconsistent to preclude use of this same data to help determine the appropriate amount of price erosion. Just as pre-notice facts can affect the appropriate royalty rate for post-notice infringement, those same facts can affect the appropriate price erosion amount for post-notice sales.

Finally, Power Integrations notes that no further discovery will be required if the Court were to determine that pre-notice evidence can be used to calculate damages. Fairchild has already provided the requisite information, Fairchild has not challenged the accuracy of the sales data, and Power Integrations' damages expert, Richard Troxel, based his calculations on that information.

At the very least, Power Integrations requests, from a practical perspective, that it be allowed to present what it believes to be the proper calculation to the jury, as a separate line item on the verdict form. In the event of an appeal, both results would be available to the Federal Circuit, obviating the potential need for a new trial on the issue of damages.

Very truly yours,

/s/ *Sean P. Hayes*

Sean P. Hayes

SPH/mrh

cc:  G. Hopkins Guy III, Esquire (via First Class Mail and e-mail)
     Steven J. Balick, Esquire (via ECF and hand delivery)

---

[2] Preventing the damages expert from calculating price erosion based on pre-notice evidence is tantamount to asking a stock broker to assess investing conditions in 1930 but preventing her from basing any of her analysis on events that happened pre-October 29, 1929 (Black Tuesday).