# Exhibit A



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025

tel 650-614-7400
fax 650-614-7401
www.ORRICK.COM

May 23, 2006

Brian H. VanderZanden
(650) 614-7629
bvanderzanden@orrick.com

*VIA MAIL AND FACSIMILE*

Michael R. Headley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94036

Re:  <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Michael:

I write in response to your letter of May 22, 2006.  Fairchild has determined that 2,730,000 FSD210HD die were manufactured within the U.S. and shipped to customers in Korea between 10-19-2005 and 3-27-06.  No other accused products were manufactured in the U.S., and the FSD210HD die are not currently being manufactured in the U.S.  The enclosed CD contains a database of manufacture and ship data for the FSD210HD, which Fairchild will also produce in TIFF format.  Fairchild will supplement its response to Interrogatory No. 8 to reflect this information.

Sincerely,

*B. VanderZanden*

Brian H. VanderZanden

Enclosure

BHV:ma5

cc:    William J. Marsden, Jr.
       Howard G. Pollack

US_WEST:260023754.1





ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

TEL 650-614-7400
FAX 650-614-7401
WWW.ORRICK.COM

## FAX TRANSMISSION

DATE    5/23/06                              NO. OF PAGES                    3
                                            (INCLUDING COVER SHEET)

**FROM**

| name | tel |
|------|-----|
| Brian H. VanderZanden | (650) 614-7629 |

**TO**

| name | company/firm | tel | fax |
|------|--------------|-----|-----|
| Michael R. Headley | Fish & Richardson P.C. | | (650) 839-5071 |

RE    Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)

MESSAGE

C-M-A    10414-25                          Originals Will Follow By Regular Mail

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL SHELLA ZAPP AT (650) 614-7387 AS SOON AS
POSSIBLE.

notice to recipient
THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE SENT ONLY TO THE STATED ADDRESSEE OF THE TRANSMISSION.  IT MAY BE PROTECTED
FROM UNAUTHORIZED USE OR DISSEMINATION BY THE ATTORNEY-CLIENT PRIVILEGE, THE ATTORNEY WORK-PRODUCT DOCTRINE, OR ANY OTHER APPLICABLE PRIVILEGE. IF YOU
ARE NOT THE STATED ADDRESSEE, YOUR RECEIPT OF THIS TRANSMISSION WAS UNINTENDED AND INADVERTENT, AND YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE,
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  YOU ARE ALSO ASKED TO NOTIFY US IMMEDIATELY BY TELEPHONE AND TO
RETURN THE ORIGINAL DOCUMENT TO US IMMEDIATELY BY MAIL AT THE ADDRESS ABOVE.  THANK YOU IN ADVANCE FOR YOUR COOPERATION.
US_WEST:260024417.1

# Exhibit B



**O R R I C K**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025

*tel* 650-614-7400
*fax* 650-614-7401

WWW.ORRICK.COM

August 4, 2005

Bas de Blank
(650) 614-7343
bdeblank@orrick.com

***VIA HAND DELIVERY***

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94036

      Re:    <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Michael:

      Enclosed please find subpoenas directed to Messrs. Go, Bereznak, Milikovsky, Schatzel, Tran, and Borovoy. Thank you for agreeing to accept service on their behalf. As we discussed, we are willing to work with you to schedule mutually convenient dates for responses to the subpoenas.

      Also enclosed is a hard drive containing documents Bates numbered FCS1414408-FCS1584102. Please note that some of these documents may be designated "Confidential" or "Highly Confidential" pursuant to the protective order in this case. We apologize for producing documents after June 30, 2005 but are producing, and will continue to produce potentially responsive, non-privileged documents as they are identified.

      Finally, I have enclosed notices for the depositions of Messrs. Lund, Kung, Bell, and Fassler for the dates we have discussed. Thank you for confirming that Mr. Djenguerian is available for deposition on August 23, 2005, I have enclosed a notice for his deposition as well. We have not noticed the depositions of the remaining individuals or served the draft 30(b)(6) deposition notices on Power Integrations because we continue to hope that the parties can work together on a mutually acceptable schedule. If this is not possible, we will serve the deposition notices.

      Sincerely,

Bas de Blank

cc:    William J. Marsden, Jr.
       Howard G. Pollack

Encl.

DOCSSV1:419368.1

# Exhibit C



ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025

tel 650-614-7400
fax 650-614-7401
WWW.ORRICK.COM

May 24, 2006

*VIA FEDERAL EXPRESS*

Michael Headley, Esq.
Fish & Richardson, P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

ORIGINAL ENCLOSURES
GIVEN TO PARALEGAL

Re:    Power Integrations v. Fairchild

Dear Mr. Headley:

Enclosed please find one CD containing Fairchild produced documents, Bates numbered
FCS1691604 – FCS1691717.  These documents contain Tiff image pages that correspond to the
document produced to you yesterday, on the CD Bates numbered FCS1691603.

Please contact our offices if you have any questions.  Thank you.

Very truly yours,

Sarah M. Schultz,
Senior Legal Assistant

Enclosures

US_WEST:260025141.1

# Exhibit D



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025

tel 650-614-7400
fax 650-614-7401

WWW.ORRICK.COM

June 16, 2006

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

*VIA HAND DELIVERY*

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94036

      Re:    Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)

Dear Michael:

      Enclosed is a copy of Fairchild's near final list of exhibits. While we hope to work with Power Integrations to reduce the number of exhibits on both parties lists, we believe that this list is relatively complete. There are, however, a few categories of documents that cannot be listed at this time.

      First, on June 5 and 13, 2006 Fairchild requested that Power Integrations produce copies of its layouts. We have received no response to either letter. Once Power Integrations produces these documents, we will evaluate them and may include them on our exhibit list.

      Second, Fairchild been requesting since November, 2005 that Power Integrations stipulate to the date of the prior art upon which Fairchild intends to rely. Power Integrations has never substantively responded. We believe that the dates of the prior art listed in the stipulate are clearly set forth on the face of the prior art. Fairchild, however, reserves it right to produce and rely upon additional copies of these prior art references if necessary to establish their date.

      Third, Fairchild is still waiting for Power Integrations to produce documents concerning its ongoing investigation of its stock option practice and its restatement of its financial reports. Despite our repeated requests, Power Integrations has yet to begin to produce these documents. Once they are produced, Fairchild will determine whether to include them on Fairchild's exhibit list.

      Fourth, Power Integrations continues to identify the asserted claims, the accused devices, or how it intends to group those products for purposes of trial. It is possible that when Power Integrations provides this information Fairchild will need to produce additional documents and/or identify additional exhibits.



ORRICK

Michael Headley
June 16, 2006
Page 2

Finally, enclosed is a small set of non-confidential documents bearing Bates numbers FCS1691720-FCS1691856. By and large, these are better or color copies of documents that have been previously produced.

Should you have any questions, please do not hesitate to call. Otherwise, please provide the necessary discovery without further delay.

Sincerely,

Bas de Blank

Encl.

cc:    William J. Marsden, Jr.
       Howard G. Pollack

US_WEST:260039986.1

# Exhibit E

*Power Intergrations, Inc.   v.*
*Fairchild Semiconductor International, Inc.*

*Hearing*
*May 31, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 5PWRIN~1.TXT, 52 Pages*
*Min-U-Script® File ID: 3175811218*

**Word Index included with this Min-U-Script®**

**Power Integrations, Inc. v.**
Case 1:04-cv-01371-JJF    Document 276-2    Filed 06/21/2006    Page 14 of 26
**Fairchild Semiconductor International, Inc.**

**Hearing**
**May 31, 2006**

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
POWER INTEGRATIONS, INC., )
    Plaintiff,    )
               )
v.             )
               )
FAIRCHILD SEMICONDUCTOR )
INTERNATIONAL, INC, and )
FAIRCHILD SEMICONDUCTOR )
CORPORATION,       )
    Defendants.  )

United States District Court
844 King Street
Wilmington, Delaware
Wednesday, May 31, 2006
12:30 p.m.

BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
United States District Court Judge
APPEARANCES:
    SEAN P. HAYES, ESQ.
    FRANK SCHERKENBACH, ESQ.
    MICHAEL HEADLEY, ESQ.
    FISH & RICHARDSON
    For Power Integrations
    G. HOPKINS GUY, ESQ
    ORRICLE, HERRINGTON
        and
    BAS DE BLANK, ESQ
    JOHN G. DAY, ESQ
    ASHBY & GEDDES
    For Fairchild
Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302)658-6697 FAX(302)658-8418

---

Page 2

(302)658-6697 FAX(302)658-8418

---

3 1 THE COURT: Be seated, please.

[2] Good afternoon.

[3] (All respond: "Good afternoon.")

[4] **THE COURT:** I've reviewed the [5] proposed pretrial order, and this afternoon [6] I'll be entering an order that essentially [7] denies the motions for summary judgment and [8] also grants partial summary judgment to [9] Fairchild with regard to the damages evidence.

[10] If there's any questions about that [11] after you read it, you could write me a letter [12] and we'll try to explain essentially what it [13] boils down to, the discovery ruling and then [14] the setting of a date.

[15] With regard to the pretrial order, [16] I sound like a broken record sometimes at these [17] conferences, but you list witnesses, for [18] instance, you [19] have like seven people that you say are going [20] to testify and then there's a list that is a [21] little more extensive and there's the cryptic [22] statement that these folks may be called in [23] rebuttal, they may come to Wilmington for [24] lunch, I don't know what they're doing in the

---

Page 4

[1] pretrial order, but, you know, you got to [2] pretry the case.

[3] So what has to happen is both sides [4] have to — and it's important for the [5] allocation of time, you have to tell me who [6] the witnesses are going to be and

---

then I can make [7] decisions about whether there's too many, [8] they're accumulative, there's some question [9] about the offer of their testimony. But I need [10] to know exactly who the witnesses are going to [11] be and it would seem not illogical that they [12] would be — that they'd be listed in the order [13] you intend to call them and a little bit about [14] what they're going to say.

[15] There's no surprises in this case, [16] so there's no rebuttal witnesses, other than a [17] planned rebuttal witness to an answer, and I [18] call that more of an answering witness but it's [19] fairly characterized as a rebuttal witness. [20] But we would know who they are and it's just a [21] question of putting it on logically and [22] consistent with the order of proof so the jury [23] gets, well, this is what they said with the [24] burden and this is what they answered and this [25] (302)658-6697 FAX(302)658-8418

---

Page 5

[1] is our rebuttal or answer to that, but that has [2] to be set out.

[3] And then you know exhibits would be [4] — there's a certain volume of exhibits in a [5] patent case that I allow to come in just for [6] the record because you think you might need it [7] later on but they never get shown to the jury [8] and they're part of the pretrial order and [9] admitted in the record. But I really need to [10] know exactly the — and I never put lawyers to [11] this test, but, you know, sometimes you can [12] actually tell us with what witnesses they're [13] coming in and who's testifying about them but [14] maybe that's too difficult. But at least [15] you'll be able to say exactly what exhibits are [16] going to be presented with testimony before the [17] jury and that gives me some idea of how to make [18] decisions again about time, also about any [19] objections that may be offered. Both of those [20] are going to have to be tightened up in this [21] proposed order. And I guess depending on when [22] we pick a trial date I'll give you an amount of [23] time to get that done.

[24] With regard to the case, the [25] (302)658-6697 FAX(302)658-8418

---

Page 6

[1] validity case, the invalidity case, I'm [2] seriously thinking about separating that from [3] infringement and damages. And without knowing [4] something that would be prejudicial or unduly [5] prejudicial, I'm inclined to do that.

[6] **MR. GUY:** If I may be heard on [7] that, Your Honor?

[8] **THE COURT:** Yes.

[9] **MR. SPEAKER:** We have suggested [10] bifurcation — Fairchild has sug-

---

gested. What [11] we would like to do there is because of time [12] issues that are ongoing right now with respect [13] to damages, we still have a number of [14] depositions to take. The experts have not been [15] deposed, the two damages experts. We need to [16] propound or provide a 30(B)6 deposition on U.S. [17] manufacturing, should be a limited deposition.

[18] Also, there has been an undisclosed [19] expert that — or unnamed expert that is [20] provided, expert reports in end of April, early [21] May, so that would tend to move that issue of [22] damages, all the damages related issues out.

[23] The other point though is that the [24] damages experts, particularly the plaintiff's

[25] (302)658-6697 FAX(302)658-8418

---

Page 7

[1] damages experts, relies upon Power Integrations [2] financial statements, their filings, annual [3] reports, and quarterly reports with the SCC.

[4] There is currently an ongoing [5] investigation apparently going on at Power [6] Integrations. They have not filed their 2005 [7] annual reports. They have notified the SCC [8] that all prior reports are unreliable. I want [9] to make that clear that all prior SCC reports, [10] annual reports, quarterly reports going back to [11] 1999 are unreliable. They'll need to be [12] restated. And in addition, Your Honor, they [13] expect to have those — according to the [14] information we have and it's not subject to [15] discovery, but they would have that information [16] to NASDAQ by August the 2nd. I don't know [17] whether they'll meet that or not.

[18] They have been up in front of the [19] NASDAQ board twice on delisting issues [20] regarding their failure to provide these [21] reports. So this is a fundamental issue that's [22] going on. The damages experts have relied upon [23] these. It relates to back dating of stock [24] options. It's our understanding that both the

[25] (302)658-6697 FAX(302)658-8418

---

Page 8

[1] chairman and the chief financial officer have [2] been fired related to this issue. We know that [3] they've resigned and left the company at the [4] same time this was going on. So this is a [5] material issue and, again, it all relates to [6] damages and I'd ask the Court to consider that [7] in terms of bifurcation in terms of pushing the [8] damages component off.

[9] Thank you, Your Honor.

[10] **THE COURT:** Thank you.

[11] **MR. SCHERKENBACH:** I didn't hear

---

[12] any substantive argument as to why the [13] issues couldn't be divided in the way you [14] suggest. I'm perfectly happy with that. It [15] makes quite a bit of sense to do it. So [16] infringement and damages in one trial, validity [17] in other.

[18] I don't know if Your Honor has in [19] mind the same jury or different juries. I [20] might have some concerns if we're talking about [21] different juries or if there is a substantial [22] subrogation but I suppose we could talk about [23] that.

[24] To respond to Mr. Guy's point, the
[25] (302)658-6697 FAX(302)658-8418

Page 9

[1] further discovery is minor. The two damages [2] experts need to be deposed. We've been tying [3] to schedule that for some time. That will [4] happen shortly.

[5] The witness Mr. Guy referred to [6] relating to Manufacturing, you may have seen [7] this, Your Honor, in the pretrial papers, but [8] there had been an issue in the case about the [9] extent to which Fairchild manufactured the [10] accused products in the U.S. Fairchild is [11] saying essentially they never did that and [12] Power Integrations is a little skeptical.

[13] It turns out Mr. Kim, the elusive [14] Mr. Kim whose deposition we finally got, you [15] may recall you ordered that. He said, well, [16] actually, in fact, they did manufacture in the [17] U.S. This just came out in the last several [18] weeks. We were surprised because we've been [19] told the contrary. And Fairchild then went [20] back to the drawing board, investigated it and [21] said, yes, it turns out that several million of [22] the accused parts have in fact been [23] manufactured in the U.S.

[24] So we agreed that as a result of
[25] (302)658-6697 FAX(302)658-8418

Page 10

[1] that we now get at least one further deposition [2] on the extent to which the U.S. manufacturing [3] actually occurred. It's one deposition. There [4] will be some additional, I think, document [5] discovery that's required but it's not the sort [6] of thing that's going to cause any sort of [7] significant delay.

[8] The financial statement point, if I [9] can comment on that. There's some truth [10] certainly what Mr. Guy is saying. On the other [11] hand, with all due respect, in our view is a [12] sideshow. It doesn't have anything to do with [13] the damages information that's relevant to this [14] case.

[15] Yes, there are some SCC statements [16] and filings that are going to be revised. The [17] portions that the SCC filings were relied on by [18] either expert have nothing to do with stock [19] options, date of grants, so forth. That's [20]

really just a sideshow and shouldn't [21] derail what the scope is in the case.

[22] **MR. GUY:** Your Honor, first of all [23] with respect to the U.S. manufacturing issue, [24] we were unaware that this was going on and what
[25] (302)658-6697 FAX(302)658-8418

Page 11

[1] happened in that case is approximately single [2] digit percentage, five percent or so, certain [3] parts, one part in particular was manufactured [4] in the U.S. very, very briefly.

[5] Mr. Kim's testimony was he did not [6] know whether there was U.S. manufacturing or [7] not; however, a document was produced during [8] that deposition and that's what triggered the [9] investigation.

[10] With respect to the issue about the [11] stock option and issues like that, it has to do [12] with what their true expenses are. It has to [13] do with what their true costs in the case are [14] and they're claiming huge loss profits and huge [15] price erosion claims here basically over a [16] rather minor amount of U.S. sales.

[17] Even if you take their numbers, I [18] think they say that 23 percent of our product [19] comes into the United States, and this is about [20] $27 million worth of worldwide, so we're [21] talking about maybe $6 million in the U.S. and [22] yet their damages claim is $45 million to be [23] trebled to total some $135 million.

[24] **THE COURT:** So the damages claim, I
[25] (302)658-6697 FAX(302)658-8418

Page 12

[1] thought I read, was like 5 or 6 million in lost [2] profits and then there was this price erosion [3] claim in twenties of million.

[4] **MR. GUY:** Yes.

[5] **THE COURT:** How does it get to 45 [6] million? Does that add up to something more?

[7] **MR. GUY:** Yes, if you add it all up [8] it ends up being — the last page under Tab 2 [9] there's 5.9 million lost profits, lost profits, [10] lost damages and price erosion is 29, almost 30 [11] million, and reasonable royalty is another 6 [12] million.

[13] **THE COURT:** Okay.

[14] **MR. GUY:** So that's about 40 [15] million.

[16] **THE COURT:** I was leaving out the [17] reasonable royalty because that wasn't [18] implicated in your argument about the relevance [19] of the cost factor of whatever is going on with [20] the filings.

[21] **MR. GUY:** I think it does in terms [22] of a hypothetical negotiation about what a [23] reasonable buyer and reasonable seller would [24] come to about what

their true profit is. I
[25] (302)658-6697 FAX(302)658-8418

Page 13

[1] think it would be relevant to that even for [2] reasonable royalty. Assuming that's correct, [3] we still have $36 million in lost profits and [4] price erosion and their financial statements [5] clearly depend upon that. That's what they [6] are. They report their profit a loss.

[7] With all due respect to [8] Mr. Scherkenbach, he can't stand up here and [9] tell you what the restatement will be, how much [10] will the amounts vary. All we know are the two [11] key members of Power Integrations have been [12] fired over this and that they have filed [13] statements with the SCC saying that it's going [14] to be material.

[15] **THE COURT:** You're from a large [16] firm. This is 2006. This is corporate [17] America.

[18] **MR. GUY:** Yes.

[19] **THE COURT:** I don't mean to [20] belittle it, but a couple executives get fired, [21] a few restatements, a few false filings, [22] I mean, you know, I don't even know anymore.

[23] **MR. GUY:** Your Honor, that's [24] exactly right and neither do we and nor does
[25] (302)658-6697 FAX(302)658-8418

Page 14

[1] Mr. Scherkenbach.

[2] **THE COURT:** I don't know if that's [3] real important stuff anymore. I used to be a [4] prosecutor. I thought I understood what crime [5] was. I really did. I thought I had a handle [6] on it for about 20 years. I'm not sure I [7] understand what crime is anymore. You can rape [8] somebody and go to jail for three years, and [9] I'm not belittling it, but if you steal a few [10] million you get 25 years. I'm not working the [11] numbers well. I'm glad I'm getting out of this [12] profession soon.

[13] **MR. SCHERKENBACH:** Don't say that.

[14] **THE COURT:** I shouldn't be glad I'm [15] getting out?

[16] **MR. SCHERKENBACH:** No, don't say [17] you're getting out of this profession.

[18] **THE COURT:** I'm going to take up [19] boating. Everybody is real nice. They help [20] you.

[21] **MR. SCHERKENBACH:** Judge Maher used [22] to say he was going to take up mullet spotting.

[23] (Brief discussion off the record.)

[24] **THE COURT:** But I understand what
[25] (302)658-6697 FAX(302)658-8418

Page 15

[1] you're saying and I'm going to five you a [2] chance to get some information, but like, you [3] know, damages are an important issue here and [4] I want you to have as good a handle on what [5] evidence is available.

[6] I'm one that's not going to be too [7] persuaded by a lot of what goes on in corporate [8] governs. I'm interested in damages would be [9] the second route because you can't get to [10] damages unless you have a verdict on [11] infringement, so that's important.

[12] And then if you have a verdict on [13] infringement, it's important to know whether [14] the patents are valid. That's the way I kind [15] of look at things. I don't see any crime going [16] on in infringement invalidity, unless I live [17] another year maybe I will. Because I feel bad [18] for you lawyers and what they're doing with the [19] patent and trademark office.

[20] Anyway, let me say this, I'm going [21] to give you a chance. I think what you're [22] really asking me, Judge, can you hold off. [23] Because I'm not going to try this case in the [24] summer anyway. I have two other patent cases.

[25] (302)658-6697 FAX(302)658-8418

Page 16

[1] You're looking at a fall trial date so we [2] have [2] some time.

[3] But I do want you to tell me — let [4] me tell you my thought about separation of [5] issues rather than bifurcation. I'm willing to [6] separate issues because I have concerns in [7] patent trials, having done a number of them, [8] that there's a lot of overlapping evidence that [9] becomes prejudicial, unduly prejudicial. I've [10] convinced myself, which is pretty easy to do [11] when you talk to yourself, that it's important [12] that if you separate infringement invalidity [13] that they ought to have a different jury. And [14] the first injury ought to hear about [15] infringement and possibly damages.

[16] The second jury ought to hear that [17] the person accusing the patent of being invalid [18] has been found to infringe. That's all they [19] need to know. These defendants were found to [20] infringe and they claim that the patents are [21] invalid, so you're going to get to decide [22] whether the patents are invalid. And, again, [23] in my mind I've reasoned that that's a real [24] fair way to try a patent case.

[25] (302)658-6697 FAX(302)658-8418

Page 17

[1] Now, there's obviously issues on [2] both sides they'd rather have some sort of [3] overlap, maybe and maybe not. But the real [4] issue I focus on is whether or not it violates [5] the Seventh Amen-

dment about jury trials. [6] Federal circuit doesn't seem to have the [7] stomach to take that issue up. But they have [8] said that separation of issues is not a bad [9] thing from when Chief Judge Maher was there [10] he's kind of like when he wrote early on and [11] others have what they've written is that they [12] think it's a good idea.

[13] And so the only issues I can focus [14] on is whether or not a second jury violates [15] lays someone jury trial right. I guess as long [16] as it's still a jury how can it do that? I [17] haven't been able to find a way or heard a good [18] argument that it does.

[19] So let me say this, in your case [20] you got to work on your witness list. You got [21] to work on your exhibit list. So it's really a [22] pretried case. You have to understand you're [23] going to have separation of issues. I'm [24] inclined strongly toward infringement and

[25] (302)658-6697 FAX(302)658-8418

Page 18

[1] damages and then validity. And I'm inclined to [2] two separate juries with some spread of time [3] between the infringement and damages verdict. [4] Of course if it's four defendants then you [5] don't try the validity because you don't go [6] after a patent that you don't infringe. But if [7] there is infringement, then we would have the [8] validity case maybe in a month or so after [9] that.

[10] And, again, let me make this clear, [11] I don't do that so that there's pressure on [12] people to settle. I don't worry about [13] settlement. I just do it because it gives you [14] time to think about your case and get ready and [15] you're not coming right off the trial on the [16] first set of issues. So then we would have [17] that second trial.

[18] Now, I'm willing to listen to [19] anything you want to tell me about — you [20] obviously think that damages ought to be put [21] off even further, as I understand it.

[22] **MR. GUY:** Yes, Your Honor. At [23] least until the numbers are set. I understand [24] your point about crime. I understand the

[25] (302)658-6697 FAX(302)658-8418

Page 19

[1] issue. But the point being here is that all we [2] know is the numbers that both experts have [3] relied upon are un-reliable and we need to know [4] what those numbers are. And hopefully we'll [5] have it by August, but at the same time —

[6] **THE COURT:** You said August 2. [7] We're thinking about a fall trial.

[8] **MR. GUY:** We need to talk about a [9] trial date, if you're talking October, [10] November, I think it would be plenty of time [11] but I understand there may be

conflicts.

[12] **MR. SCHERCKENBACH:** Your Honor, on [13] this financial point, you've in-dicated that [14] you're inclined to give them some further [15] discovery. I guess we can live with that. I'm [16] frankly disappointed in it because what they [17] want to do is have a fifth day of depositions [18] with my CEO who the-y've had for four days.

[19] You may remember there was a [20] dispute over the fourth day. But it's a [21] sideshow. If we have to do that to stay on [22] track here we're willing to do it.

[23] **THE COURT:** I'm inclined, based on [24] what I'm being told today, if the supplemental

[25] (302)658-6697 FAX(302)658-8418

Page 20

[1] filings or substitute filings are about matters [2] that are different than are being argued here [3] today and you can demonstrate they're just [4] nothing rel-evant to what's going on in this [5] trial I may not be inclined.

[6] **MR. SCHERKENBACH:** I appreciate [7] that clarification. I think we at least will [8] be able to make that showing and we'd like an [9] opportunity to do it. It's stock option [10] related. It's non-operating expense. It has [11] nothing to do with the operating profit. It [12] doesn't affect the revenues. It doesn't affect [13] the cost of manufacturing or other costs.

[14] So the thing that the patent [15] damages experts rely on are not going to change [16] a bit as a result of this and we'll be able to [17] show that to you.

[18] In terms of separating the issues, [19] just to respond to your proposal, in-fringement [20] and damages in one trial to one jury, validity [21] to a later jury. I'll be able to accept that [22] on behalf of Power Integrations. I'm not going [23] to make a Seventh Amendment argument. I [24] understand one probably could be made, but

[25] (302)658-6697 FAX(302)658-8418

Page 21

[1] we're not going to get an answer to that anyway [2] in time to matter.

[3] I think as long as the second jury [4] though is told that what the outcome — without [5] embellishment of what the outcome in the first [6] case was, I think that's important.

[7] **THE COURT:** When I've done it I [8] have the jury understand that there has been an [9] infringement finding but nothing else. We [10] don't talk about the damages award if there is [11] one. We just say there's been an infringement [12] finding but under the law now there's a [13] challenge to the validity of the patent

that's [14] been found to infringe. It puts it real nicely [15] before the jury. They understand that. But it [16] gives you eight new people who hear the [17] validity fresh so there's not any prejudice to [18] the presentation of either sides validity case.

[19] **MR. SCHERKENBACH:** And, again, I [20] can accept that on behalf of my client. I've [21] been through that before with Judge Robinson. [22] I thought it worked reasonably well. Despite [23] what defendants tend to think, it tends to [24] be pretty fair.

[25] (302)658-6697 FAX(302)658-8418

Page 22

[1] My major concern is drawing it out. [2] You mentioned fall, that's great. I'm very [3] much hoping we can get September for the first [4] trial, some time in September, and a delay of [5] maybe no longer then until December or so for [6] the second one. We don't want to drag it out.

[7] **THE COURT:** I was thinking I can [8] sort of give you a range.

[9] **MR. SCHERKENBACH:** That would be [10] great.

[11] **THE COURT:** And I want to give you [12] some dates to revise, what I need revised and [13] presented. Let me go to my manually electronic [14] calendar here.

[15] September has been eaten up by [16] Lucent versus Extreme. They're back for a [17] retrial. I have to hear them. That's a [18] retrial. I granted a motion for a new trial [19] and we set that date a long time ago, so [20] there's really difficulty in getting in [21] September.

[22] However, October, the early part of [23] October is available.

[24] **MR. GUY:** That's fine with us, Your [25] (302)658-6697 FAX(302)658-8418

Page 23

[1] Honor.

[2] **MR. SCHERKENBACH:** My wife is going [3] to kill me. We're expecting our third on the [4] 8th. I was hoping I could avoid a direct train [5] wreck.

[6] I, also, I'm in trial with Judge [7] Robinson the beginning 30th of October for [8] three weeks, so if we could work around that, [9] maybe start a little after the eight and [10] continue it in that way. I don't actually have [11] the days of the week. Actually, here I do. [12] Okay.

[13] **THE COURT:** I'll tell you what's [14] going on in October. The week of October 2nd [15] — and I don't want you here if your wife is [16] giving birth to your third child on October [17] 8th, so they're the two blank weeks I have in [18] October. Starting the week of October 16th [19] Affymetrix wants to sue Illum-

ina, and Sun Power [20] Company from Puerto Rico wants to sue another [21] power company and they're double scheduled to [22] share the trial day.

[23] And then the week of the 23rd of [24] October, a company called Trilogen wants to

[25] (302)658-6697 FAX(302)658-8418

Page 24

[1] sues Martese for patent infringement and they'd [2] like to be here for seven days.

[3] So other than those first two weeks [4] that sort of eats up October. But we could go [5] to the week — the first week of November, [6] which is actually — it's available and then we [7] could go thirty days later in December.

[8] Now, remember, when there's [9] separation of issues you don't need as much [10] trial time as you needed if you have everything [11] together, obviously. You could go the week of [12] December 4th. So you could have the week of [13] November 6th and then the week of December 4th. [14] It my run in to the following week on either [15] scheduling but that would be fine.

[16] So if those dates work, that would [17] give you enough time to have the August 2nd [18] filing and some discovery if it's ordered [19] and —

[20] **MR. GUY:** Your Honor, my [21] understanding then we'd only have one week to [22] do damages and infringement?

[23] **THE COURT:** Well, maybe only three [24] days.

[25] (302)658-6697 FAX(302)658-8418

Page 25

[1] No, I didn't want you to grab your [2] chest.

[3] **MR. GUY:** I do workout. It's not [4] too dangerous to hear things like that.

[5] **THE COURT:** Typically here [6] infringement, validity and damages you get ten [7] trial days. That's why we're able to try as [8] many cases we do. If we gave everybody what [9] they wanted, we'd never do what we do.

[10] Actually, the week of November 6th. [11] What I was saying is I have the ability to go [12] in to the next week if you eat up more than [13] let's say five or six days. We can do that on [14] the infringement, damages. And, again, on the [15] December date I can go in to next week. But I [16] can't allocate time until I actually see a good [17] pretrial order and a number of witness and I [18] can measure how much time I'm going to give [19] each witness based on what they're going to [20] say.

[21] So the answer is don't be nervous [22] about that. I'm only saying that's the week [23] we'll start. There's enough time

to get seven [24] days if we need it.

[25] (302)658-6697 FAX(302)658-8418

Page 26

[1] **MR. SCHERKENBACH:** I have a mark-man [2] hearing that's already scheduled on November [3] 15th.

[4] **THE COURT:** You'll be out of here by [5] November 15th, I'll guarantee it, unless the [6] jury is deliberating. There's no way you would [7] be here on infringement and damages November [8] 15th.

[9] **MR. GUY:** We need to raise one [10] other issue, Your Honor, and that has to do [11] with some jury insufficiency in the pretrial [12] order, Power Integrations disclosure. There [13] are 38 products that are accused of infringing [14] 18 claims. And just to March through that, [15] Your Honor, I think — and just 18 claims, Your [16] Honor, in three days is huge.

[17] **THE COURT:** Mr. Scherkenbach has [18] been here before. He knows that we're not [19] going to have 38 products.

[20] **MR. GUY:** Well, there are four [21] groups of product, Your Honor, that statements [22] at face value isn't very helpful. We will pair [23] down the number of claims further.

[24] **THE COURT:** The claims are going to

[25] (302)658-6697 FAX(302)658-8418

Page 27

[1] be paired down.

[2] **MR. GUY:** The claims will be paired [3] down. The products we'll break down in to only [4] three or four groups. 38 is not a real [5] meaningful number. I'm not prepared to say [6] we'll drop whole groups of products. I think [7] the case can easily be tried in groups, in [8] fact, the experts on both sides have dealt with [9] them in that way, so it's not a real —

[10] **THE COURT:** Four categories of [11] products are different than 38 products. 18 [12] claims is 18 claims. That has to be cut back [13] which you're acknowledging.

[14] **MR. GUY:** Absolutely. We have four [15] patents so it works out one per — I think one [16] of them you only have two claims that's [17] asserted. If we're pairing it back to one [18] claim per patent, that would certainly make it [19] doable. But still these technologies are [20] different. Even though three of them are [21] circuit patents, they do different things. So [22] it is important we recognize that what we're [23] asking the jury to do is to consider at least [24] 16 different permutations of four product

[25] (302)658-6697 FAX(302)658-8418

Page 28

[1] groups versus at least four patent

**Power Intergrations, Inc. v.**
Case 1:04-cv-01371-JJF    Document 276-2    Filed 06/21/2006    Page 18 of 26    **Hearing**
**Fairchild Semiconductor International, Inc.**        **May 31, 2006**

claims and [2] four different patent. So I'm anxious to see [3] how it's going to be paired down and I think we [4] can have a meaningful understanding in a more [5] thorough pretrial conference state once we know [6] that.

[7] **THE COURT:** You know, there's no [8] order prohibiting both of you from talking [9] about that.

[10] **MR. GUY:** We have asked, Your [11] Honor.

[12] **THE COURT:** Well, it's, you know, [13] actually having a discussion about what might [14] be reasonable and then if you have dispute [15] bring it to me. But here's what I'm — I'm not [16] discussing that today because I recognize that [17] there-'s some ugliness in other parts of [18] pretrial order, but usually what sets the tone [19] is who's going to be the witness and what [20] they're going to testify about and what [21] exhibits you're going to use.

[22] When I get done addressing those [23] two categories of the pretrial order, I think a [24] little more will become apparent, a little more

[25] (302)658-6697 FAX(302)658-8418

Page 29

[1] of what you have to do will become apparent. [2] If you haven't gotten it done by addressing [3] witnesses and the exhibits.

[4] And when you address witness [5] exhibits they should be addressed in the [6] present understanding of infringement, damages [7] and invalidity. And that should go a long way [8] in pairing down. And you should have [9] discussion with each other, and then if you [10] can't agree then I may have to weigh in.

[11] **MR. SCHERKENBACH:** Can I go back to [12] scheduling for a moment?

[13] **THE COURT:** Yes, you can.

[14] **MR. SCHERKENBACH:** People seem to [15] get a little bit interest in November. That is [16] when I'm in trial if front of Judge Robinson, [17] so October 30 to November 24th. I think that [18] case is highly likely to go. What I would [19] request is that we take the first week of [20] October.

[21] **THE COURT:** You're in a four week [22] trial?

[23] **MR. SCHERKENBACH:** It's two [24] defendants, multiple patents. I think that

[25] (302)658-6697 FAX(302)658-8418

Page 30

[1] will be paired back to probably two weeks at [2] the end of the day. Judge Robinson did [3] bifurcate damages. Nonetheless, the first two [4] weeks in November won't work for me. I'd be [5] happy to take the first week of October

because [6] I don't believe damages and infringement will [7] take more than five trial days by anyone's [8] stretch of the imagination and then we can [9] perhaps take the first week in December for [10] validity trial if necessary. That would work.

[11] **MR. GUY:** That's fine with me, Your [12] Honor, as long as we have the ability to [13] overflow into the second week of October if [14] need be.

[15] **MR. SCHERKENBACH:** I think that's [16] fine. Once Your Honor sees the revised [17] pretrial you can make that decision as to [18] whether it requires that much trial time. I [19] don't believe it will.

[20] **THE COURT:** All right. October [21] 2nd, for present purposes, will be the [22] commencement of — Monday, October 2nd will be [23] the commencement of infringement and damages, [24] and December the 4th will be the commencement

[25] (302)658-6697 FAX(302)658-8418

Page 31

[1] of invalidity.

[2] And both sides understand that [3] there will be time allocations set, which I [4] don't know what they'll be yet because I don't [5] know what the witness list looks like or the [6] exhibit list.

[7] **MR. GUY:** We also have an issue of [8] inequitable conduct in this case. That will be [9] tried during the invalidity section?

[10] **THE COURT:** I don't send that, for [11] any purpose, to the jury. I'll listen to the [12] evidence and then I'll issue a decision post [13] trial.

[14] And if you need to present a [15] witness outside of what's presented to the [16] jury, I'll spend the time to hear that one or [17] two witnesses after the jury section is over [18] some day or at a day after the jury evidence is [19] complete.

[20] **MR. SCHERKENBACH:** Very good.

[21] **THE COURT:** Here's what I'm going [22] to do, I'm going to set a second pretrial [23] conference and a date to submit a revised [24] pretrial order along the lines that I've

[25] (302)658-6697 FAX(302)658-8418

Page 32

[1] indicated here.

[2] The second pretrial order will be [3] due Friday, September 1, and then the second [4] pretrial conference — what are your schedules [5] looking like in September? Do you want to come [6] a couple weeks before the trial?

[7] **MR. SCHERKENBACH:** Yes, Your [8] Honor. Fine for Power Integrations really any time in [9] September.

[10] **MR. GUY:** I have a conflict on the [11] 11th, that's it.

[12] **THE COURT:** Okay. So let's see, [13] the 11th — I guess traveling is better in the [14] middle of the week, right, then getting near [15] the end. So do you want to come for the second [16] pretrial conference on either the 13th or the [17] 14th of September?

[18] **MR. GUY:** 14th would be better, [19] Your Honor.

[20] **MR. SCHERKENBACH:** That's fine with [21] me, Your Honor.

[22] **THE COURT:** All right. We'll do it [23] on the 14th of September, which is a Thursday, [24] and we'll do it at I guess 1:30. Does that

[25] (302)658-6697 FAX(302)658-8418

Page 33

[1] work?

[2] **MR. SCHERKENBACH:** Yes, Your Honor.

[3] **MR. GUY:** Your Honor, we have an [4] issue of motions in liminae in the case. Can [5] we take up the hearing on the motion in liminae [6] or briefing schedule for the September 1st [7] trial?

[8] **THE COURT:** Yes, you can agree to [9] that. What I typically will do is at the [10] pretrial conference that actually is [11] anticipation of a set trial I will give you my [12] rulings at that pretrial conference. So you [13] should give me enough time to read whatever it [14] is you're going to write before that pretrial [15] conference. So if it's the 14th, you probably [16] should get it here that Monday or the Friday [17] before and then we'll take a look at it and [18] give you the rulings on the pretrial [19] conference.

[20] **MR. GUY:** So, in other words, you [21] would like to have briefing completed by [22] September the 4th, that would be the Monday the [23] week before?

[24] **THE COURT:** No, just the Monday —

[25] (302)658-6697 FAX(302)658-8418

Page 34

[1] **MR. GUY:** The 11th?

[2] **THE COURT:** That would be fine if [3] you got it here by then. You know, it's [4] granted or denied. It doesn't take a lot of [5] effort if you get excellent briefing. The [6] decision is as good as what the argument is, [7] right?

[8] **MR. GUY:** Absolutely.

[9] **THE COURT:** Unless minimally [10] skewed.

[11] **MR. SCHERKENBACH:** Can I ask Your [12] Honor how you're handling the issue of experts [13] beyond the scope of report? Is it the same way [14] you have been in the past?

[15] **THE COURT:** Absolutely.

[16] **MR. SCHERKENBACH:** I think that [17] will help resolve a number of things.

[18] **THE COURT:** Right. That's one of [19] my, what is it, we all get 27 great ideas and [20] I'm working on 4,011. That was one of the [21] great ideas. It really works. I've now [22] ordered new trial. It's not good if you play [23] around with the expert report.

[24] You know that practice.

[25] (302)658-6697 FAX(302)658-8418

---

Page 35

[1] **MR. GUY:** Perhaps I should hear it [2] clearer from you, Your Honor.

[3] **THE COURT:** I'll give it to you [4] straight up here. Everybody argues over expert [5] reports and then the expert gets to trial and [6] of course there's something alleged to be [7] different, some new opinion, some nuance on an [8] opinion, particularly after the other side has [9] taken advantage of the opportunity for [10] deposition under the rule.

[11] My practice is in a trial, a [12] serious trial with a jury, or even in a bench, [13] I guess, but particularly the jury, I don't [14] have time to go back and read the report and [15] make an evidentiary ruling on the expert's [16] testimony, so you have to interpose your [17] objection.

[18] If you think the witness is [19] testifying outside of the report and deposition [20] or if it's just a report of the report, if post [21] trial you maintain that objection and I take a [22] look at it and in fact there is some variance, [23] and I mean "some," it doesn't have to be a lot, [24] something that I think could have affected the [25] (302)658-6697 FAX(302)658-8418

---

Page 36

[1] other side to their detriment because it wasn't [2] disclosed, I simply say that there's a mistrial [3] and the other side pays the cost of the first [4] trial and we go to a second trial.

[5] It puts a lot of burden on the [6] attorneys but it's, you know, how can you have [7] experts — I mean discovery. I used to find [8] after trial that in fact the witness deviated [9] substantially and what do you do then? You [10] know, you're kind of interested in keeping the [11] verdict and things like that but it really [12] isn't fair during a trial in my experience, so [13] that's the practice.

[14] **MR. GUY:** Your Honor, both sides [15] filed supplemental expert reports in light of [16] other fact discovery that was ongoing and we [17] still have an issue, certainly if there's a [18] debate 30 days before the trial in which the [19] expert reports are filed by that point, any [20] variance from that is certainly under-standable. [21] You're not addressing

---

issues where there's been [22] an ongoing fact discovery and expert report [23] comes in to supplement?

[24] **THE COURT:** No. You all, as I [25] (302)658-6697 FAX(302)658-8418

---

Page 37

[1] understand it, have a little more your want to [2] do. So get it done, pick a date, if you can't [3] pick a date I'll give you one. It will be some [4] time in August.

[5] **MR. SCHERKENBACH:** For damages I [6] think that's fine. This doesn't bear on [7] liability at all?

[8] **THE COURT:** No, liability from what [9] I saw in the proposed pretrial order is clear. [10] So you will get that date. And what you're not [11] allowed to do is to send a letter like a week [12] before trial saying the witness just told me [13] this and I'm going to add this or something. [14] So whatever that date is, that's what you're [15] locked in to as a report and deposition.

[16] **MR. GUY:** Your Honor, just so we're [17] clear, we had an expert who did add additional [18] prior art at a deposition. As long as that's [19] in a report by this cutoff date, that should be [20] okay. We'll certainly make sure that whatever [21] he testified to is actually contained in that [22] report.

[23] **THE COURT:** That's pushing the [24] envelope a little bit because damages, by your [25] (302)658-6697 FAX(302)658-8418

---

Page 38

[1] request, has opened up a little bit.

[2] **MR. GUY:** Yes, Your Honor.

[3] **THE COURT:** We have expert dates [4] and I know we all get up every day and have a [5] better idea than we had yesterday, but in [6] litigation we really have to tell the expert [7] that there's a date where you can't think [8] anymore. And I'm trying to say this very [9] simply.

[10] So if a new piece of prior art came [11] in but there's been a cutoff date, they're [12] stuck with that cutoff date. We have to limit [13] the discovery and the opinion offering.

[14] Now, if in this case, because the [15] trial date is some time off, you can both agree [16] that you want to — but I wouldn't let that be [17] an August date on liability. That's too close [18] to the trial date. But if by July or something [19] you want to extent it and you want to [20] supplement reports, get them all cleaned up, [21] but you got to on expert opinion testimony [22] there has to be a date when it ends.

[23] In a medical malpractice case and [24] the guy comes in, the doctor, a surgeon, wants

---

Page 39

[1] to talk about an operation he had last week, [2] how are you supposed to prepare for that? At [3] some point — because he learned something. I [4] believe he did. Then they say you can [5] foreclose. You have to foreclose.

[6] **MR. GUY:** Your Honor, we can [7] certainly set a date this summer in which [8] everything will be final and we have the other [9] discovery to do. I just want to make sure that [10] to the extent the expert has provided testimony [11] on something, that we can make sure it's in, [12] we'll go back and make sure if any supplement [13] report is due we can probably do it by the end [14] of June, first of July and give them plenty of [15] time.

[16] **THE COURT:** Do you have a problem [17] with that?

[18] **MR. SCHERKENBACH:** We do bec-ause [19] the deposition has happened. It's done and [20] over with. This is actually one of the motions [21] in limine. Not that I expect the Court to [22] even look at them at this point, but there's a [23] particular person they have in mind who [24] substantially changed his opinions at [25] (302)658-6697 FAX(302)658-8418

---

Page 40

[1] deposition and without supple-menting the [2] report and we were told, well, you've had a [3] chance to ask questions, ask him questions at [4] deposition, that's too bad.

[5] So what I'm sure they'd now love to [6] do is have a date in the future that they can [7] put it in a report. I guess we'll depose him [8] again. We object to that. That's over. It's [9] a very limited window to do damages expert [10] reports — discovery, excuse me, reports are [11] done. Finish those, a will bit of clean up and [12] that should be that.

[13] Maybe this is something Your Honor [14] decides in motion in limine and if we lose we [15] have to go back to the drawing board. We're [16] doing a mock trial next weekend. I need to [17] know what the case looks like, what it's going [18] to be. I think I do on the liability side and [19] we're preparing for trial. I should not have [20] to be redoing liability expert discovery.

[21] **THE COURT:** I'll tell you what that [22] motion in limine gets you a decision, then [23] you'll know whether you can — see, one of the [24] things, if what I'm hearing is factual, if the [25] (302)658-6697 FAX(302)658-8418

---

Page 41

[1] witness changed at the deposition what the [2] opinions of the report were,

that's an [3] egregious violation of the scheduling order [4] because how would you ever prepare for a [5] deposition except from the report, and then [6] when you showed up if there were new opinions [7] that weren't in the report, what would be the [8] sense of a deposition?

[9] **MR. GUY:** Your Honor, he did not [10] change his view in the report originally. What [11] he did was he supplemented with additional [12] prior art and also with an obviousness argument [13] that he provided them with a clear shot at it [14] at the deposition.

[15] **THE COURT:** That's my point. Let's [16] assume he added a piece of prior art and [17] modified his opinion. It's like the surgeon [18] that comes in and says last week I had a [19] cardiac operation, let me tell you what I did. [20] So I go to the deposition, you know, I'm [21] prepared and done and happy, and all of a [22] sudden he starts talking about prior art [23] because it's not in his report, how did I [24] prepare for that? So how did I intelligently

[25] (302)658-6697 FAX(302)658-8418

Page 42

[1] conduct the deposition, which is my opportunity [2] to get further information about the opinions [3] in the report?

[4] **MR. GUY:** They were certainly aware [5] on notice that there was obviousness issue. [6] There was certainly notice on prior art. They [7] certainly had an opportunity and all we wish to [8] do is preserve what is already in a deposition [9] for trial.

[10] **THE COURT:** I'm asking you, we're [11] just having a conversation here, we're not a [12] accusing anybody.

[13] **MR. GUY:** Furthermore —

[14] **THE COURT:** How would I have [15] prepared for that deposition if I didn't know [16] about the new piece of prior art?

[17] **MR. GUY:** You would have gone in [18] and you would have prepared for obviousness. [19] You would have learned about the additional [20] prior art. You would have asked questions [21] related to obviousness.

[22] **THE COURT:** I would have done that?

[23] **MR. GUY:** Furthermore, I forgot [24] this, but it was in part response to their

[25] (302)658-6697 FAX(302)658-8418

Page 43

[1] rebuttal report. So it's a lot more involved [2] in this than just we surprised them. They [3] certainly had an opportunity to cross the [4] expert. They had an opportunity to go in. If [5] they needed more time, they had that, also.

[6] So all we're trying to do is [7] preserve what's in a deposition. It was right [8] after the markman hearing, so it would have [9] been late February or March. So they had ample [10] opportunity. There's no surprise like on a [11] witness stand when someone talks about what [12] they did last week. We have all summer, Your [13] Honor, to address this if there's an issue. We [14] just want to be able to get the evidence in for [15] a validity issue which isn't going to trial [16] until December, so there's ample opportunity [17] here to address this rather than trying to [18] strike some evidence that they feel that they [19] don't like.

[20] I would also add that at least in [21] one instance that where we were aware of the [22] art through one of their experts, so, you know, [23] it does take a little bit of iteration here to [24] get all the evidence in and all the expert

[25] (302)658-6697 FAX(302)658-8418

Page 44

[1] reports right. We certainly will not deviate [2] from the expert reports once they're final. [3] And we can make that final date true July.

[4] **THE COURT:** See, there could be a [5] book written, or at least a chapter, that you [6] and I could do in a patent trial treatise. [7] Because my view would be, and I'm not an [8] advocate, is that the deposition is the trial [9] date in the context of the scheduling order for [10] expert discovery. That's the drop dead [11] examination day.

[12] But you have the view of 95 percent [13] of the lawyers that come here, which is [14] understandable because you need some iteration, [15] you need to play a little bit, you got to find [16] out, then they put a rebuttal and I have to [17] respond to that.

[18] But that, in my view, runs [19] completely against all of the rules of [20] procedure. So why did I do a scheduling order [21] and have expert discovery dates? They're like [22] the world ends on those dates. There is no [23] other day. And they're drop dead dates.

[24] So when that witness comes in and

[25] (302)658-6697 FAX(302)658-8418

Page 45

[1] has a new piece of prior art, which is the [2] practice, I mean, that's what the lawyers do, [3] then you open up the date.

[4] **MR. GUY:** I understand but I think [5] it's one of degree. We're not talking we [6] submitted two pieces of prior art.

[7] **THE COURT:** You're getting nervous. [8] Don't get nervous I'm going to foreclose. [9] You're getting nervous. We're just having a [10] conversation about the real world versus Civil [11] Procedure 1 in

law school. There's actually [12] people that think that there are dates that [13] count.

[14] I might let you have this in. I [15] have to see what was said. But how do we get [16] lawyers to understand that they are drop dead [17] dates and there is no iteration beyond that [18] date? I mean, the world ended for purposes of [19] that discovery. And it doesn't matter whether [20] they learned which was until then truly not [21] able to be found by them some new information, [22] how do we package a trial if we keep having 95 [23] percent of the lawyers think that the dates [24] have some sort of elasticity in them, you know,

[25] (302)658-6697 FAX(302)658-8418

Page 46

[1] they can be just pushed a little bit? It's [2] really hard. But we're not going to solve that [3] today.

[4] What's the motion in liminae I got [5] to look at?

[6] **MR. SCHERKENBACH:** No. 2, Your [7] Honor, on Power Integrations list. This is tab [8] 16 the second item.

[9] **THE COURT:** We'll get you a quick [10] answer from Tab 16 on No. 2

[11] **MR. SCHERKENBACH:** I assume you'd [12] like us to — do you want short letter briefs [13] on this or —

[14] **THE COURT:** Sure. Because the [15] motions are only listed.

[16] **MR. SCHERKENBACH:** Yes, just [17] identifies the issues. So we can get you a [18] short letter brief in say a week.

[19] **THE COURT:** That's fine. And then [20] we'll get you the answer.

[21] **MR. GUY:** Your Honor, would we be [22] also allowed to — they've done much the same [23] and we would like to file a similar motion in [24] liminae on the same issue if they're going to

[25] (302)658-6697 FAX(302)658-8418

Page 47

[1] do it this way.

[2] **THE COURT:** In the legal profession [3] it's always fair to punch back.

[4] **MR. GUY:** Just wanted to make sure.

[5] **THE COURT:** Sure.

[6] **MR. SCHERKENBACH:** Which one is [7] that, Mr. Guy?

[8] **THE COURT:** How would we maintain [9] the adversary system if we didn't punch back? [10] It would just collapse. We'd have lawyers with [11] low blood pressure or something.

[12] Which one do you want to punch back [13] with?

[14] **MR. GUY:** Under our Tab 17.

[15] **THE COURT:** This is the limit now. [16]

This is dropping dead. I'm not going to look [17] at any others.

[18] **MR. GUY:** In terms of?

[19] **THE COURT:** In terms of opening up [20] any kind of expert discovery beyond the damages [21] that you've argued you can't get done because [22] of the August 2 filings, anticipate filing.

[23] **MR. GUY:** In our motions in [24] liminae —

[25] (302)658-6697 FAX(302)658-8418

---

Page 48

[1] **MR. SCHERKENBACH:** And I don't [2] believe Your Honor to raise one that relates to [3] this issue.

[4] **THE COURT:** Let them look at my [5] filing. Give them a chance.

[6] **MR. GUY:** The first one is defense [7] motion in liminae, motion to exclude untimely [8] reports in an undisclosed expert.

[9] **THE COURT:** They got you pretty [10] good there, Scherk.

[11] **MR. SCHERKENBACH:** The expert. If [12] that's the one you want, that's great. No. 1, [13] fine.

[14] **MR. GUY:** Motion with respect to [15] their expert, Troxel, I believe all of those [16] deal with there is an untimely report there as [17] well. I think it's item No. 3 under 2.

[18] **THE COURT:** No. 1, 2. Item No. 3.

[19] **MR. SCHERKENBACH:** I don't think [20] we're talking about damages related stuff. [21] This is liability.

[22] **THE COURT:** If you throw damages in [23] there, you get a yellow flag for piling on.

[24] **MR. GUY:** That was the damage
[25] (302)658-6697 FAX(302)658-8418

---

Page 49

[1] expert, Your Honor, so we're going to preserve [2] those.

[3] **THE COURT:** We've already said [4] that's a different category. We're going to [5] wait until after August 2 to let you have at [6] each other on damages. This is only liability, [7] that be the context of infringement, validity, [8] expert reports.

[9] All right, your time up. It's a [10] game clock. So you have No. 1, Tab 17 and [11] there's No. 2, Tab 16, and we'll get letters [12] and you'll agree to that schedule for about a [13] week to get them in here and we'll give you [14] expeditious decision so you know where you are.

[15] **MR. SCHERKENBACH:** Thank you, Your [16] Honor.

[17] **THE COURT:** Okay. I think that's [18] all we can do today. I will expect that the [19] one date I got to give you is let's just make [20] it —

---

[21] **MR. GUY:** I'm sorry, Your Honor, [22] the first letter brief would be due June 7th; [23] is that right?

[24] **THE COURT:** I'm not getting in to
[25] (302)658-6697 FAX(302)658-8418

---

Page 50

[1] that. You're going to talk with each other and [2] come up with an exchange schedule.

[3] **MR. SCHERKENBACH:** The date for [4] damages wrap up?

[5] **THE COURT:** We need a date for [6] that. It has to be in August because we'll [7] need a couple weeks before the pretrial for any [8] disputes.

[9] **MR. SCHERKENBACH:** The 4th is a [10] Friday. Does that work?

[11] **MR. GUY:** The quarterly reports [12] don't come out until the 2nd.

[13] **MR. SCHERKENBACH:** Okay, the 11th.

[14] **MR. GUY:** You're going to be able [15] to give us a deposition on any changes in that [16] time? Maybe we should push it to the 18th, [17] Your Honor.

[18] **THE COURT:** That would put it [19] beyond the —

[20] **MR. GUY:** It's August the 18th.

[21] **THE COURT:** Oh, August 18th. [22] August 18th is fine with me.

[23] So August 18th is the damages [24] cutoff.

[25] (302)658-6697 FAX(302)658-8418

---

Page 51

[1] **MR. SCHERKENBACH:** That would be [2] fine, Your Honor.

[3] **MR. GUY:** Be fine, Your Honor.

[4] **THE COURT:** Okay. We'll put this [5] all in an order and get it entered and then [6] look to see those motions in liminae letters.

[7] **MR. SCHERKENBACH:** Thank you, Your [8] Honor.

[9] **THE COURT:** Thank you. We'll be in [10] recess.

[11] (Court adjourned at 1:32 p.m.)
[12] (302)658-6697 FAX(302)658-8418

---

Page 52

State of Delaware )
New Castle County )
CERTIFICATE OF REPORTER
I, Stacy L. Vickers, Registered Professional Reporter and Notary Public, do hereby certify that the foregoing record is a true and accurate transcript of my stenographic notes taken on May 31, 2006, in the above-captioned matter.
IN WITNESS WHEREOF, I have hereunto set my hand and seal this 14th day of June, 2006, at Wilmington.

Stacy L. Vickers, RPR
Cert.#: 115-RPR
Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302)658-6697 FAX(302)658-8418

## $

$135 million 11:23
$27 million 11:20
$36 million 13:3
$45 million 11:22
$6 million 11:21

## 1

1 32:3; 45:11; 48:12, 18; 49:10
11th 32:11, 13; 34:1; 50:13
13th 32:16
14th 32:17, 18, 23; 33:15
15th 26:3, 5, 8
16 27:24; 46:8, 10; 49:11
16th 23:18
17 47:14; 49:10
18 26:14, 15; 27:11, 12
18th 50:16, 20, 21, 22, 23
1999 7:11
1:30 32:24
1:32 51:11
1st 33:6

## 2

2 12:8; 19:6; 46:6, 10; 47:22; 48:17, 18; 49:5, 11
20 14:6
2005 7:6
2006 13:16
23 11:18
23rd 23:23
24th 29:17
25 14:10
27 34:19
29 12:10
2nd 7:16; 23:14; 24:17; 30:21, 22; 50:12

## 3

3 48:17, 18
30 12:10; 29:17; 36:18
30(B)6 6:16
302)658-6697 4:25; 5:25; 6:25; 7:25; 8:25; 9:25; 10:25; 11:25; 12:25; 13:25; 14:25; 15:25; 16:25; 17:25; 18:25; 19:25; 20:25; 21:25; 22:25; 23:25; 24:25; 25:25; 26:25; 27:25; 28:25; 29:25; 30:25; 31:25; 32:25; 33:25; 34:25; 35:25; 36:25; 37:25; 38:25; 39:25; 40:25; 41:25; 42:25;

43:25; 44:25; 45:25; 46:25; 47:25; 48:25; 49:25; 50:25; 51:12
30th 23:7
38 26:13, 19; 27:4, 11

## 4

4,011 34:20
40 12:14
45 12:5
4th 24:12, 13; 30:24; 33:22; 50:9

## 5

5 12:1
5.9 12:9

## 6

6 12:1, 11
6th 24:13; 25:10

## 7

7th 49:22

## 8

8th 23:4, 17

## 9

95 44:12; 45:22

## A

ability 25:11; 30:12
able 5:15; 17:17; 20:8, 16, 21; 25:7; 43:14; 45:21; 50:14
Absolutely 27:14; 34:8, 15
accept 20:21; 21:20
according 7:13
accumulative 4:8
accused 9:10, 22; 26:13
acknowledging 27:13
actually 5:12; 9:16; 10:3; 23:10, 11; 24:6; 25:10, 16; 28:13; 33:10; 37:21; 39:20; 45:11
add 12:6, 7; 37:13, 17; 43:20
added 41:16
addition 7:12
additional 10:4; 37:17; 41:11; 42:19

address 29:4; 43:13, 17
addressed 29:5
addressing 28:22; 29:2; 36:21
adjourned 51:11
admitted 5:9
advantage 35:9
adversary 47:9
advocate 44:8
affect 20:12, 12
affected 35:21
Affymetrix 23:19
again 5:18; 8:5; 16:22; 18:10; 21:19; 25:14; 40:8
against 44:19
ago 22:19
agree 29:10; 33:8; 38:15; 49:12
agreed 9:24
alleged 35:6
allocate 25:16
allocation 4:5
allocations 31:3
allow 5:5
allowed 37:11; 46:22
almost 12:10
along 31:24
always 47:3
Amendment 17:5; 20:23
America 13:17
amount 5:22; 11:16
amounts 13:10
ample 43:9, 16
annual 7:2, 7, 10
answered 4:24
anticipate 47:22
anticipation 33:11
anxious 28:2
anymore 13:22; 14:3, 7; 38:8
apparent 28:24; 29:1
apparently 7:5
appreciate 20:6
approximately 11:1
April 6:20
argued 20:2; 47:21
argues 35:4
argument 8:12; 12:18; 17:18; 20:23; 34:6; 41:12
around 23:8; 34:23
art 37:18; 38:10; 41:12, 16, 22; 42:6, 16, 20; 43:22; 45:1, 6
asserted 27:17
assume 41:16; 46:11
Assuming 13:2
attorneys 36:6
August 7:16; 19:5, 6; 24:17; 37:4; 38:17; 47:22; 49:5; 50:6, 20, 21, 22, 23
available 15:5; 22:23; 24:6

avoid 23:4
award 21:10
aware 42:4; 43:21

## B

back 7:10, 23; 9:20; 22:16; 27:12, 17; 29:11; 30:1; 35:14; 39:12; 40:15; 47:3, 9, 12
bad 15:17; 17:8; 40:4
based 19:23; 25:19
basically 11:15
bear 37:6
become 28:24; 29:1
becomes 16:9
beginning 23:7
behalf 20:22; 21:20
belittle 13:20
belittling 14:9
bench 35:12
better 32:13, 18; 38:5
beyond 34:13; 45:17; 47:20; 50:19
bifurcate 30:3
bifurcation 6:10; 8:7; 16:5
birth 23:16
bit 4:13; 8:15; 20:16; 29:15; 37:24; 38:1; 40:11; 43:23; 44:15; 46:1
blank 23:17
blood 47:11
board 7:19; 9:20; 40:15
boating 14:19
book 44:5
both 4:3; 5:19; 7:24; 17:2; 19:2; 27:8; 28:8; 31:2; 36:14; 38:15
break 27:3
Brief 14:23; 46:18; 49:22
briefing 33:6, 21; 34:5
briefly 11:4
briefs 46:12
bring 28:15
burden 4:24; 36:5
buyer 12:23

## C

calendar 22:14
call 4:13, 18
called 23:24
came 9:17; 38:10
can 4:6; 5:11; 10:9; 14:7; 15:22; 17:13, 16; 19:15; 20:3; 21:20; 22:3, 7; 25:13, 15, 18; 27:7; 28:4; 29:11, 13; 30:8, 17; 33:4, 8; 34:11; 36:6; 38:15; 39:4, 6, 11, 13; 40:6, 23; 44:3; 46:1, 17; 49:18

cardiac 41:19
case 4:2, 15; 5:5, 24; 6:1, 1; 9:8; 10:14, 21; 11:1, 13; 15:23; 16:24; 17:19, 22; 18:8, 14; 21:6, 18; 27:7; 29:18; 31:8; 33:4; 38:14, 23; 40:17
cases 15:24; 25:8
categories 27:10; 28:23
category 49:4
cause 10:6
CEO 19:18
certain 5:4; 11:2
certainly 10:10; 27:18; 36:17, 20; 37:20; 39:7; 42:4, 6, 7; 43:5; 44:1
chairman 8:1
challenge 21:13
chance 15:2, 21; 40:2; 48:5
change 20:15; 41:10
changed 39:24; 41:1
changes 50:15
chapter 44:5
characterized 4:19
chest 25:2
chief 8:1; 17:9
child 23:16
circuit 7:16; 27:21
Civil 45:10
claim 11:22, 24; 12:3; 16:20; 27:18
claiming 11:14
claims 11:15; 26:14, 15, 23, 24; 27:2, 12, 12, 16; 28:1
clarification 20:7
clean 40:11
cleaned 38:20
clear 7:9; 18:10; 37:9, 17; 41:13
clearer 35:2
clearly 13:5
client 21:20
clock 49:10
close 38:17
collapse 47:10
coming 5:13; 18:15
commencement 30:22, 23, 24
comment 10:9
company 8:3; 23:20, 21, 24
complete 31:19
completed 33:21
completely 44:19
component 8:8
concern 22:1
concerns 8:20; 16:6
conduct 31:8; 42:1
conference 28:5; 31:23; 32:4, 16; 33:10, 12, 15, 19
conflict 32:10

**conflicts** 19:11
**consider** 8:6; 27:23
**consistent** 4:22
**contained** 37:21
**context** 44:9; 49:7
**continue** 23:10
**contrary** 9:19
**conversation** 42:11; 45:10
**convinced** 16:10
**corporate** 13:16; 15:7
**cost** 12:19; 20:13; 36:3
**costs** 11:13; 20:13
**count** 45:13
**couple** 13:20; 32:6; 50:7
**course** 18:4; 35:6
**COURT** 6:8; 8:6, 10; 11:24; 12:5, 13, 16; 13:15, 19; 14:2, 14, 18, 24; 19:6, 23; 21:7; 22:7, 11; 23:13; 24:23; 25:5; 26:4, 17, 24; 27:10; 28:7, 12; 29:13, 21; 30:20; 31:10, 21; 32:12, 22; 33:8, 24; 34:2, 9, 15, 18; 35:3; 36:24; 37:8, 23; 38:3; 39:16, 21; 40:21; 41:15; 42:10, 14, 22; 44:4; 45:7; 46:9, 14, 19; 47:2, 5, 8, 15, 19; 48:4, 9, 18, 22; 49:3, 17, 24; 50:5, 18, 21; 51:4, 9, 11
**crime** 14:4, 7; 15:15; 18:24
**cross** 43:3
**currently** 7:4
**cut** 27:12
**cutoff** 37:19; 38:11, 12; 50:24

### D

**damage** 48:24
**damages** 6:3, 13, 15, 22, 22, 24; 7:1, 22; 8:6, 8, 16; 9:1; 10:13; 11:22, 24; 12:10; 15:3, 8, 10; 16:15; 18:1, 3, 20; 20:15, 20; 21:10; 24:22; 25:6, 14; 26:7; 29:6; 30:3, 6, 23; 37:5, 24; 40:9; 47:20; 48:20, 22; 49:6; 50:4, 23
**dangerous** 25:4
**date** 5:22; 10:19; 16:1; 19:9; 22:19; 25:15; 31:23; 33:7; 37:2, 3, 10, 14, 19; 38:7, 11, 12, 15, 17, 18, 22; 39:7; 40:6; 44:3, 9; 45:3, 18; 49:19; 50:3, 5
**dates** 22:12; 24:16; 38:3; 44:21, 22, 23; 45:12, 17, 23
**dating** 7:23
**day** 19:17, 20; 23:22; 30:3; 31:18, 18; 38:4; 44:11, 23

**days** 19:18; 23:11; 24:2, 7, 24; 25:7, 13, 24; 26:16; 30:7; 36:18
**dead** 44:10, 23; 45:16; 47:16
**deal** 48:16
**dealt** 27:8
**debate** 36:18
**December** 22:5; 24:7, 12, 13; 25:15; 30:9, 24; 43:16
**decide** 16:21
**decides** 40:14
**decision** 30:17; 31:12; 34:6; 40:22; 49:14
**decisions** 4:7; 5:18
**defendants** 16:19; 18:4; 21:23; 29:24
**defense** 48:6
**degree** 45:5
**delay** 10:7; 22:4
**deliberating** 26:6
**delisting** 7:19
**demonstrate** 20:3
**denied** 34:4
**depend** 13:5
**depending** 5:21
**depose** 40:7
**deposed** 6:15; 9:2
**deposition** 6:16, 17; 9:14; 10:1, 3; 11:8; 35:10, 19; 37:15, 18; 39:19; 40:1, 3; 41:1, 5, 8, 14, 20; 42:1, 8, 15; 43:7; 44:8; 50:15
**depositions** 6:14; 19:17
**derail** 10:20
**Despite** 21:22
**detriment** 36:1
**deviate** 44:1
**deviated** 36:8
**different** 8:19, 21; 16:13; 20:2; 27:11, 20, 21, 24; 28:2; 35:7; 49:4
**difficult** 5:14
**difficulty** 22:20
**digit** 11:2
**direct** 23:4
**disappointed** 19:16
**disclosed** 36:2
**disclosure** 26:12
**discovery** 7:15; 9:1; 10:5; 19:15; 24:18; 36:7, 16, 22; 38:13; 39:9; 40:10, 20; 44:10, 17; 45:19; 47:20
**discussing** 28:16
**discussion** 14:23; 28:13; 29:9
**dispute** 19:20; 28:14
**disputes** 50:8
**divided** 8:13
**doable** 27:19
**doctor** 38:24
**document** 10:4; 11:7
**done** 5:23; 16:7; 21:7;

28:22; 29:2; 37:2; 39:19; 40:11; 41:21; 42:22; 46:22; 47:21
**double** 23:21
**down** 26:23; 27:1, 3, 3; 28:3; 29:8
**drag** 22:6
**drawing** 9:20; 22:1; 40:15
**drop** 27:6; 44:10, 23; 45:16
**dropping** 47:16
**due** 10:11; 13:7; 32:3; 39:13; 49:22
**during** 11:7; 31:9; 36:12

### E

**early** 6:20; 17:10; 22:22
**easily** 7:7
**easy** 16:10
**eat** 25:12
**eaten** 22:15
**eats** 24:4
**effort** 34:5
**egregious** 41:3
**eight** 21:16; 23:9
**either** 11:21; 18:21; 24:14; 32:16
**elasticity** 45:24
**electronic** 22:13
**else** 21:9
**elusive** 9:13
**embellishment** 21:5
**end** 6:20; 30:2; 32:15; 39:13
**ended** 45:18
**ends** 12:8; 38:22; 44:22
**enough** 24:17; 25:23; 33:13
**entered** 51:5
**envelope** 37:24
**erosion** 11:15; 12:2, 10; 13:4
**essentially** 9:11
**Even** 11:17; 13:1, 22; 18:21; 27:20; 35:12; 39:22
**Everybody** 14:19; 25:8; 35:4
**evidence** 15:5; 16:8; 31:12, 18; 43:14, 18, 24
**evidentiary** 35:4
**exactly** 4:10; 5:10, 15; 13:24
**examination** 44:11
**excellent** 34:5
**except** 41:5
**exchange** 50:2
**exclude** 48:7
**excuse** 40:10
**executives** 13:20
**exhibit** 17:21; 31:6

**exhibits** 5:3, 4, 15; 28:21; 29:3, 5
**expect** 7:13; 39:21; 49:18
**expecting** 23:3
**expeditious** 49:14
**expense** 20:10
**expenses** 11:12
**experience** 36:12
**expert** 6:19, 19, 20; 10:18; 34:23; 35:4, 5; 36:15, 19, 22; 37:17; 38:3, 6, 21; 39:10; 40:9, 20; 43:4, 24; 44:2, 10, 21; 47:20; 48:8, 11, 15; 49:1, 8
**expert's** 35:15
**experts** 6:14, 15, 24; 7:1, 22; 9:2; 19:2; 20:15; 27:8; 34:12; 36:7; 43:22
**extent** 9:9; 10:2; 38:19; 39:10
**Extreme** 22:16

### F

**face** 26:22
**fact** 9:16, 22; 27:8; 35:22; 36:8, 16, 22
**factor** 12:19
**factual** 40:24
**failure** 7:20
**fair** 16:24; 21:24; 36:12; 47:3
**Fairchild** 6:10; 9:9, 10, 19
**fairly** 4:19
**fall** 16:1; 19:7; 22:2
**false** 13:21
**FAX(302)658-8418** 4:25; 5:25; 6:25; 7:25; 8:25; 9:25; 10:25; 11:25; 12:25; 13:25; 14:25; 15:25; 16:25; 17:25; 18:25; 19:25; 20:25; 21:25; 22:25; 23:25; 24:25; 25:25; 26:25; 27:25; 28:25; 29:25; 30:25; 31:25; 32:25; 33:25; 34:25; 35:25; 36:25; 37:25; 38:25; 39:25; 40:25; 41:25; 42:25; 43:25; 44:25; 45:25; 46:25; 47:25; 48:25; 49:25; 50:25; 51:12
**February** 43:9
**Federal** 17:6
**feel** 15:17; 43:18
**few** 13:21, 21; 14:9
**fifth** 19:17
**file** 46:23
**filed** 7:6; 13:12; 36:15, 19
**filing** 24:18; 47:22; 48:5
**filings** 7:2; 10:16, 17; 12:20; 13:21; 20:1, 1; 47:22
**final** 39:8; 44:2, 3

**finally** 9:14
**financial** 7:2; 8:1; 10:8; 13:4; 19:13
**find** 17:17; 36:7; 44:15
**finding** 21:9, 12
**fine** 22:24; 24:15; 30:11, 16; 32:8, 20; 34:2; 37:6; 46:19; 48:13; 50:22; 51:2, 3
**Finish** 40:11
**fired** 8:2; 13:12, 20
**firm** 13:16
**first** 10:22; 16:14; 18:16; 21:5; 22:3; 24:3, 5; 29:19; 30:3, 5, 9; 36:3; 39:14; 48:6; 49:22
**five** 11:2; 15:1; 25:13; 30:7
**flag** 48:23
**focus** 17:4, 13
**following** 24:14
**foreclose** 39:5, 5; 45:8
**forgot** 42:23
**forth** 10:19
**found** 16:18, 19; 21:14; 45:21
**four** 18:4; 19:18; 26:20; 27:4, 10, 14, 24; 28:1, 2; 29:21
**fourth** 19:20
**frankly** 19:16
**fresh** 21:17
**Friday** 32:3; 33:16; 50:10
**front** 7:18; 29:16
**fundamental** 7:21
**further** 9:1; 10:1; 18:21; 19:14; 26:23; 42:13
**Furthermore** 42:13, 23
**future** 40:6

### G

**game** 49:10
**gave** 25:8
**gets** 4:23; 35:5; 40:22
**gives** 5:17; 18:13; 21:16
**giving** 23:16
**glad** 14:11, 14
**goes** 15:7
**good** 15:4; 17:12, 17; 25:16; 31:20; 34:6, 22; 48:10
**governs** 15:8
**grab** 25:1
**granted** 22:18; 34:4
**grants** 10:19
**great** 22:2, 10; 34:19, 21; 48:12
**groups** 26:21; 27:4, 6, 7; 28:1
**guarantee** 26:5
**guess** 5:21; 17:15; 19:15; 32:13, 24; 35:13; 40:7

**GUY** 6:6; 9:5; 10:10; 22;
12:4, 7, 14, 21; 13:18, 23;
18:22; 19:8; 22:24; 24:20;
25:3; 26:9, 20; 27:2, 14;
28:10; 30:11; 31:7; 32:10,
18; 33:3, 20; 34:1, 8; 35:1;
36:14; 37:16; 38:2, 24;
39:6; 41:9; 42:4, 13, 17,
23; 45:4; 46:21; 47:4, 7,
14, 18, 23; 48:6, 14, 24;
49:21; 50:11, 14, 20; 51:3
**Guy's** 8:24

**H**

**hand** 10:11
**handle** 14:5; 15:4
**handling** 34:12
**happen** 4:3; 9:4
**happened** 11:1; 39:19
**happy** 14:8; 30:5; 41:21
**hard** 46:2
**hear** 8:11; 16:14, 16;
21:16; 22:17; 25:4; 31:16;
35:1
**heard** 6:6; 17:17
**hearing** 26:2; 33:5;
40:24; 43:8
**help** 14:19; 34:17
**helpful** 26:22
**here's** 28:15; 31:21
**highly** 29:18
**hold** 15:22
**Honor** 6:7; 7:12; 8:9, 18;
9:7; 10:22; 13:23; 18:22;
19:12; 23:1; 24:20; 26:10,
15, 16, 21; 28:11; 30:12,
16; 32:7, 19, 21; 33:2, 3;
34:12; 35:2; 36:14; 37:16;
38:2; 39:6; 40:13; 41:9;
43:13; 46:7, 21; 48:2; 49:1,
16, 21; 50:17; 51:2, 3, 8
**hopefully** 19:4
**hoping** 23:2; 23:4
**huge** 11:14, 14; 26:16
**hypothetical** 12:22

**I**

**idea** 5:17; 17:12; 38:5
**ideas** 34:19, 21
**identifies** 46:17
**illogical** 4:11
**Illumina** 23:19
**imagination** 30:8
**implicated** 12:18
**important** 4:4; 14:3; 15:3,
11, 13; 16:11; 21:6; 27:22
**inclined** 6:5; 17:24; 18:1;
19:14, 23; 20:5
**indicated** 19:13; 32:1
**inequitable** 31:8
**information** 7:14, 15;

**kind** 15:14; 17:10; 36:10;
47:20
**knowing** 6:3
**knows** 26:18

**L**

**large** 13:15
**last** 9:17; 12:8; 39:1;
41:18; 43:12
**late** 43:9
**later** 5:7; 20:21; 24:7
**law** 21:12; 45:11
**lawyers** 5:10; 15:18;
44:13; 45:2, 16, 23; 47:10
**lays** 17:15
**learned** 39:3; 42:19;
45:20
**least** 5:14; 10:1; 18:23;
20:7; 27:23; 28:1; 43:20;
44:5
**leaving** 12:16
**left** 8:3
**legal** 47:2
**letter** 37:11; 46:12, 18;
49:22
**letters** 49:11; 51:6
**liability** 37:7, 8; 38:17;
40:18, 20; 48:21; 49:6
**light** 36:15
**likely** 29:18
**liminae** 33:4, 5; 39:21;
40:14, 22; 46:4, 24; 47:24;
48:7; 51:6
**limit** 38:12; 47:15
**limited** 6:17; 40:9
**lines** 51:4
**list** 17:20, 21; 31:5, 6;
46:7
**listed** 4:12; 46:15
**listen** 18:18; 31:11
**litigation** 38:6
**little** 4:13; 9:12; 23:9;
28:24, 24; 29:15; 37:1, 24;
38:1; 43:23; 44:15; 46:1
**live** 15:16; 19:15
**locked** 37:15
**logically** 4:21
**long** 17:15; 21:3; 22:19;
29:7; 30:12; 37:18
**longer** 22:5
**look** 15:15; 33:17; 35:22;
39:22; 46:5; 47:16; 48:4;
51:6
**looking** 16:1; 32:5
**looks** 31:5; 40:17
**lose** 40:14
**loss** 11:14; 13:6
**lost** 12:1, 9, 9; 13:3
**lot** 15:7; 16:8; 34:4; 35:23;
36:5; 43:1
**love** 40:5
**low** 47:11

**Lucent** 22:16

**M**

**Maher** 14:21; 17:9
**maintain** 35:21; 47:8
**major** 22:1
**makes** 8:15
**malpractice** 38:23
**manually** 22:13
**manufacture** 9:16
**manufactured** 9:9, 23;
11:3
**manufacturing** 6:17;
9:6; 10:2, 23; 11:6; 20:13
**many** 4:7; 25:8
**March** 26:14; 43:9
**markman** 26:1; 43:8
**Martese** 24:1
**material** 8:5; 13:14
**matter** 21:2; 45:19
**matters** 20:1
**may** 5:19; 6:6, 21; 9:6, 15;
19:11, 19; 20:5; 29:10
**maybe** 5:14; 11:21;
15:17; 17:3, 3; 18:8; 22:5;
23:9; 24:23; 40:13; 50:16
**mean** 13:19, 22; 35:23;
36:7; 45:2, 18
**meaningful** 27:5; 28:4
**measure** 25:18
**medical** 38:23
**meet** 7:17
**members** 13:11
**mentioned** 22:2
**middle** 32:14
**might** 5:6; 8:20; 28:13;
45:14
**million** 9:21; 12:1, 3, 6, 9,
11, 12, 15; 14:10
**mind** 8:19; 16:23; 39:23
**minimally** 34:9
**minor** 9:1; 11:16
**mistrial** 36:2
**mock** 40:16
**modified** 41:17
**moment** 29:12
**Monday** 30:22; 33:16, 22,
24
**month** 18:8
**more** 4:18; 12:6; 25:12;
28:4, 24, 24; 30:7; 37:1;
43:1, 5
**motion** 22:18; 33:5;
40:14, 22; 46:4, 23; 48:7,
7, 14
**motions** 33:4; 39:20;
46:15; 47:23; 51:6
**move** 6:21
**much** 13:9; 22:3; 24:9;
25:18; 30:18; 46:22
**mullet** 14:22

**multiple** 29:24
**myself** 16:10

**N**

**NASDAQ** 7:16, 19
**near** 32:14
**necessary** 30:10
**need** 4:9; 5:6, 9; 6:15;
7:11; 9:2; 16:19; 19:3, 8;
22:12; 24:9; 25:24; 26:9;
30:14; 31:14; 40:16;
44:14, 15; 50:5, 7
**needed** 24:10; 43:5
**negotiation** 12:22
**neither** 13:24
**nervous** 25:21; 45:7, 8, 9
**new** 21:16; 22:18; 34:22;
35:7; 38:10; 41:6; 42:16;
45:1, 21
**next** 25:12, 15; 40:16
**nice** 14:19
**nicely** 21:14
**Nonetheless** 30:3
**nonoperating** 20:10
**nor** 13:24
**notice** 42:5, 6
**notified** 7:7
**November** 19:10; 24:5,
13; 25:10; 26:2, 5, 7;
29:15, 17; 30:4
**nuance** 35:7
**number** 6:13; 16:7;
25:17; 26:23; 27:5; 34:17
**numbers** 11:17; 14:11;
18:23; 19:2, 4

**O**

**object** 40:8
**objection** 35:17, 21
**objections** 5:19
**obviously** 17:1; 18:20;
24:11
**obviousness** 41:12;
42:5, 18, 21
**occurred** 10:3
**October** 19:9; 22:22, 23;
23:7, 14, 14, 16, 18, 18,
24; 24:4; 29:17, 20; 30:5,
13, 20, 22
**off** 8:8; 14:23; 15:22;
18:15, 21; 38:15
**offer** 4:9
**offered** 5:19
**offering** 38:13
**office** 15:19
**officer** 8:1
**once** 28:5; 30:16; 44:2
**one** 8:16; 10:1, 3; 11:3;
15:6; 20:20, 20, 24; 21:11;
22:6; 24:21; 26:9; 27:15,
15, 17; 31:16; 34:18, 20;

**infringe** 16:18, 20; 18:6;
21:14
**infringement** 6:3; 8:16;
15:11, 13, 16; 16:12, 15;
17:24; 18:3, 7; 20:19; 21:9,
11; 24:1, 22; 25:6, 14;
26:7; 29:6; 30:6, 23; 49:7
**infringing** 26:13
**injury** 16:14
**instance** 43:21
**insufficiency** 26:11
**Integrations** 7:1, 6; 9:12;
13:11; 20:22; 26:12; 32:8;
46:7
**intelligently** 41:24
**intend** 4:13
**interest** 29:15
**interested** 15:8; 36:10
**interpose** 35:16
**into** 11:19; 30:13
**invalid** 16:17, 21, 22
**invalidity** 6:1; 15:16;
16:12; 29:7; 31:1, 9
**investigated** 9:20
**investigation** 7:5; 11:9
**involved** 43:1
**issue** 6:21; 7:21; 8:2, 5;
9:8; 10:23; 11:10; 15:3;
17:4, 7; 19:11; 26:10; 31:7,
12; 33:4; 34:12; 36:17;
42:5; 43:13, 15; 46:24;
48:3
**issues** 6:12, 22; 7:19;
8:13; 11:11; 16:5, 6; 17:1,
8, 13, 23; 18:16; 20:18;
24:9; 36:21; 46:17
**item** 46:8; 48:17, 18
**iteration** 43:23; 44:14;
45:17

**J**

**jail** 14:8
**Judge** 14:21; 15:22; 17:9;
21:21; 23:6; 29:16; 30:2
**July** 38:18; 39:14; 44:3
**June** 39:14; 49:22
**juries** 8:19, 21; 18:2
**jury** 4:22; 5:7, 17; 8:19;
16:13, 16; 17:5, 14, 15, 16;
20:20, 21; 21:3, 8, 15;
26:6, 11; 27:23; 31:11, 16,
17, 18; 35:12, 13

**K**

**keep** 45:22
**keeping** 36:10
**key** 13:11
**kill** 23:3
**Kim** 9:13, 14
**Kim's** 11:5

**0:13; 15:2; 42:2; 45:21**

37:3; 39:20; 40:23; 43:21, 22; 45:5; 47:6, 12; 48:2, 6, 12; 49:19

**ongoing** 6:12; 7:4; 36:16, 22

**only** 17:13; 24:21, 23; 25:22; 27:3, 16; 46:15; 49:6

**open** 45:3

**opened** 38:1

**opening** 47:19

**operating** 20:11

**operation** 39:1; 41:19

**opinion** 35:7, 8; 38:13, 21; 41:17

**opinions** 39:24; 41:2, 6; 42:2

**opportunity** 20:9; 35:9; 42:1, 7; 43:3, 4, 10, 16

**option** 11:11; 20:9

**options** 7:24; 10:19

**order** 4:1, 12, 22; 5:8, 21; 25:17; 26:12; 28:8, 18, 23; 31:24; 32:2; 37:9; 41:3; 44:9, 20; 51:5

**ordered** 9:15; 24:18; 34:22

**originally** 41:10

**others** 17:11; 47:17

**ought** 16:13, 14, 16; 18:20

**out** 5:2; 6:22; 9:13, 17, 21; 12:16; 14:11, 15, 17; 22:1, 6; 26:4; 27:15; 44:16; 50:12

**outcome** 21:4, 5

**outside** 31:15; 35:19

**over** 11:15; 13:12; 19:20; 31:17; 35:4; 39:20; 40:8

**overflow** 30:13

**overlap** 17:3

**overlapping** 16:8

**P**

**p.m** 51:11

**package** 45:22

**page** 12:8

**pair** 26:22

**paired** 27:1, 2; 28:3; 30:1

**pairing** 27:17; 29:8

**papers** 9:7

**part** 5:8; 11:3; 22:22; 42:24

**particular** 11:3; 39:23

**particularly** 6:24; 35:8, 13

**parts** 9:22; 11:3; 28:17

**past** 34:14

**patent** 5:5; 15:19, 24; 16:7, 17, 24; 18:6; 20:14; 21:13; 24:1; 27:18; 28:1, 2; 44:6

**patents** 15:14; 16:20, 22; 27:15, 21; 29:24

**pays** 36:3

**people** 18:12; 21:16; 29:14; 45:12

**per** 27:15, 18

**percent** 11:2, 18; 44:12; 45:23

**percentage** 11:2

**perfectly** 8:14

**perhaps** 30:9; 35:1

**permutations** 27:24

**person** 16:17; 39:23

**persuaded** 15:7

**pick** 5:22; 37:2, 3

**piece** 38:10; 41:16; 42:16; 45:1

**pieces** 45:6

**piling** 48:23

**plaintiff's** 6:24

**planned** 4:17

**play** 34:22; 44:15

**plenty** 19:10; 39:14

**point** 6:23; 8:24; 10:8; 18:24; 19:1, 13; 36:19; 39:3, 22; 41:15

**portions** 10:17

**possibly** 16:15

**post** 31:12; 35:20

**Power** 7:1, 5; 9:12; 13:11; 20:22; 23:19, 21; 26:12; 32:8; 46:7

**practice** 34:24; 35:11; 36:13; 45:2

**prejudice** 21:17

**prejudicial** 6:4, 5; 16:9, 9

**prepare** 39:2; 41:4, 24

**prepared** 27:5; 41:21; 42:15, 18

**preparing** 40:19

**present** 29:6; 30:21; 31:14

**presentation** 21:18

**presented** 5:16; 22:13; 31:15

**preserve** 42:8; 43:7; 49:1

**pressure** 18:11; 47:11

**pretrial** 4:1; 5:8; 9:7; 25:17; 26:11; 28:5, 18, 23; 30:17; 31:22, 24; 32:2, 4, 16; 33:10, 12, 14, 18; 37:9; 50:7

**pretried** 17:22

**pretry** 4:2

**pretty** 16:10; 21:24; 48:9

**price** 11:15; 12:2, 10; 13:4

**prior** 7:8, 9; 37:18; 38:10; 41:12, 16, 22; 42:6, 16, 20; 45:1, 6

**probably** 20:24; 30:1; 33:15; 39:13

**problem** 39:16

**procedure** 44:20; 45:11

**produced** 11:7

**product** 11:18; 26:21; 27:24

**products** 9:10; 26:13, 19; 27:3, 6, 11, 11

**profession** 14:12, 17; 47:2

**profit** 12:24; 13:6; 20:11

**profits** 11:14; 12:2, 9, 9; 13:3

**prohibiting** 28:8

**proof** 4:22

**proposal** 20:19

**proposed** 5:21; 37:9

**propound** 6:16

**prosecutor** 14:4

**provide** 6:16; 7:20

**provided** 6:20; 39:10; 41:13

**Puerto** 23:20

**punch** 47:3, 9, 12

**purpose** 31:11

**purposes** 30:21; 45:18

**push** 50:16

**pushed** 46:1

**pushing** 8:7; 37:23

**put** 5:10; 18:20; 40:7; 44:16; 50:18; 51:4

**puts** 21:14; 36:5

**putting** 4:21

**Q**

**quarterly** 7:3, 10; 50:11

**quick** 46:9

**quite** 8:15

**R**

**raise** 26:9; 48:2

**range** 22:8

**rape** 14:7

**rather** 11:16; 16:5; 17:2; 43:17

**read** 12:1; 33:13; 35:14

**ready** 18:14

**real** 14:3, 19; 16:23; 17:3; 21:14; 27:4, 9; 45:10

**really** 5:9; 10:20; 14:5; 15:22; 17:21; 22:20; 32:8; 34:21; 36:11; 38:6; 46:2

**reasonable** 12:11, 17, 23, 23; 13:2; 28:14

**reasonably** 21:22

**reasoned** 16:23

**rebuttal** 4:16, 17, 19; 5:1; 43:1; 44:16

**recall** 9:15

**recess** 51:10

**recognize** 27:22; 28:16

**record** 5:6, 9; 14:23

**redoing** 40:20

**referred** 9:5

**regard** 5:24

**regarding** 7:20

**related** 6:22; 8:2; 20:10; 42:21; 48:20

**relates** 7:23; 8:5; 48:2

**relating** 9:6

**relevance** 12:18

**relevant** 10:13; 13:1; 20:4

**relied** 7:22; 10:17; 19:3

**relies** 7:1

**rely** 20:15

**remember** 19:19; 24:8

**report** 23:13; 32:3; 35:14, 19, 20, 20; 36:22; 37:15, 19, 22; 39:13; 40:1, 7; 41:2, 5, 7, 10, 23; 42:3; 43:1; 48:16

**reports** 6:20; 7:3, 3, 7, 8, 9, 10, 10, 21; 35:5; 36:15, 19; 38:20; 40:10, 10; 44:1, 2; 48:8; 49:8; 50:11

**request** 29:19; 38:1

**required** 10:5

**requires** 50:18

**resigned** 8:3

**resolve** 34:17

**respect** 6:12; 10:11, 23; 11:10; 13:7; 48:14

**respond** 8:24; 20:19; 44:17

**response** 42:24

**restated** 7:12

**restatement** 13:9

**restatements** 13:21

**result** 9:24; 20:16

**retrial** 22:17, 18

**revenues** 20:12

**revise** 22:12

**revised** 10:16; 22:12; 30:16; 31:23

**Rico** 23:20

**right** 6:12; 13:24; 17:15; 18:15; 30:20; 32:14, 22; 34:7, 18; 43:7; 44:1; 49:9, 23

**Robinson** 21:21; 23:7; 29:16; 30:2

**route** 15:9

**royalty** 12:11, 17; 13:2

**rule** 35:10

**rules** 44:19

**ruling** 35:15

**rulings** 33:12, 18

**run** 24:14

**runs** 44:18

**S**

**sales** 11:16

**same** 8:4, 19; 19:5; 34:13;

46:22, 24

**saw** 37:9

**saying** 9:11; 10:10; 13:13; 15:1; 25:11, 22; 37:12

**SCC** 7:3, 7, 9; 10:15, 17; 13:13

**schedule** 9:3; 33:6; 49:12; 50:2

**scheduled** 23:21; 26:2

**schedules** 32:4

**scheduling** 24:15; 29:12; 41:3; 44:9, 20

**Scherk** 48:10

**SCHERKENBACH** 8:11; 13:8; 14:1, 13, 16, 21; 19:12; 20:6; 21:19; 22:9; 23:2; 26:1, 17; 29:11, 14, 23; 30:15; 31:20; 32:7, 20; 33:2; 34:11, 16; 37:5; 39:18; 46:6, 11, 16; 47:6; 48:1, 11, 19; 49:15; 50:3, 9, 13; 51:1, 7

**school** 45:11

**scope** 10:21; 34:13

**second** 15:9; 16:16; 17:14; 18:17; 21:3; 22:6; 30:13; 31:22; 32:2, 3, 15; 36:4; 46:8

**section** 31:9, 17

**seem** 4:11; 17:6; 29:14

**sees** 30:16

**seller** 12:23

**send** 31:10; 37:11

**sense** 8:15; 41:8

**separate** 16:6, 12; 18:2

**separating** 6:2; 20:18

**separation** 16:4; 17:8, 23; 24:9

**September** 22:3, 4, 15, 21; 32:3, 5, 9, 17, 23; 33:6, 22

**serious** 35:12

**seriously** 6:2

**set** 5:2; 18:16, 23; 22:19; 31:3, 22; 33:11; 39:7

**sets** 28:18

**settle** 18:12

**settlement** 18:13

**seven** 24:2; 25:23

**Seventh** 17:5; 20:23

**several** 9:17, 21

**share** 23:22

**short** 46:12, 18

**shortly** 9:4

**shot** 41:13

**show** 20:17

**showed** 41:6

**showing** 20:8

**shown** 5:7

**side** 35:8; 36:1, 3; 40:18

**sides** 4:3; 17:2; 21:18; 27:8; 31:2; 36:14

**sideshow** 10:12, 20;

19:21
**significant** 10:7
**similar** 46:23
**simply** 36:2; 38:9
**single** 11:1
**six** 25:13
**skeptical** 9:12
**skewed** 34:10
**solve** 46:2
**somebody** 14:8
**someone** 17:15; 43:11
**sometimes** 5:11
**soon** 14:12
**sorry** 49:21
**sort** 10:5, 6; 17:2; 22:8; 24:4; 45:24
**SPEAKER** 6:9
**spend** 31:16
**spotting** 14:22
**spread** 18:2
**stand** 13:8; 43:11
**start** 23:9; 25:23
**Starting** 23:18
**starts** 41:22
**State** 11:19; 28:5
**statement** 10:8
**statements** 7:2; 10:15; 13:4, 13; 26:21
**stay** 19:21
**steal** 14:9
**still** 6:13; 13:3; 17:16; 27:19; 36:17
**stock** 7:23; 10:18; 11:11; 20:9
**stomach** 17:7
**straight** 35:4
**stretch** 30:8
**strike** 43:18
**strongly** 17:24
**stuck** 38:12
**stuff** 14:3; 48:20
**subject** 7:14
**submit** 31:23
**submitted** 45:6
**subrogation** 8:22
**substantial** 8:21
**substantially** 36:9; 39:24
**substantiative** 8:12
**substitute** 20:1
**sudden** 41:22
**sue** 23:19, 20
**sues** 24:1
**suggest** 8:14
**suggested** 6:9, 10
**summer** 15:24; 39:7; 43:12
**Sun** 23:19
**supplement** 36:23; 38:20; 39:12
**supplemental** 19:24; 36:15

**supplemented** 41:11
**supplementing** 40:1
**suppose** 8:22
**supposed** 39:2
**sure** 14:6; 37:20; 39:9, 11, 12; 40:5; 46:14; 47:4, 5
**surgeon** 38:24; 41:17
**surprise** 43:10
**surprised** 9:18; 43:2
**surprises** 4:15
**system** 47:9

## T

**Tab** 12:8; 46:7, 10; 47:14; 49:10, 11
**talk** 8:22; 16:11; 19:8; 21:10; 39:1; 50:1
**talking** 8:20; 11:21; 19:9; 28:8; 41:22; 45:5; 48:20
**talks** 43:11
**technologies** 27:19
**ten** 25:6
**tend** 6:21; 21:23
**tends** 21:23
**terms** 8:7, 7; 12:21; 20:18; 47:18, 19
**test** 5:11
**testified** 37:21
**testify** 28:20
**testifying** 5:13; 35:19
**testimony** 4:9; 5:16; 11:5; 35:16; 38:21; 39:10
**thinking** 6:2; 19:7; 22:7
**third** 23:3, 16
**thirty** 24:7
**thorough** 28:5
**though** 6:23; 21:4; 27:20
**thought** 1:1; 14:4, 5; 16:4; 21:22
**three** 14:8; 23:8; 24:23; 26:16; 27:4, 20
**throw** 48:22
**Thursday** 32:23
**tightened** 5:20
**today** 19:24; 20:3; 28:16; 46:3; 49:18
**together** 24:11
**told** 9:19; 19:24; 21:4; 37:12; 40:2
**tone** 28:18
**total** 11:23
**toward** 17:24
**track** 19:22
**trademark** 15:19
**train** 23:4
**traveling** 32:13
**treatise** 44:6
**trebled** 11:23
**trial** 5:22; 8:16; 16:1; 17:15; 18:15, 17; 19:7, 9; 22:20; 22:4, 18; 23:6,

22; 24:10; 25:7; 29:16, 22; 30:7, 10, 18; 31:13; 32:6; 33:11; 34:22; 35:5, 11, 12, 21; 36:4, 4, 8, 12, 18; 37:12; 38:15, 18; 40:16, 19; 42:9; 43:15; 44:6, 8; 45:22
**trials** 16:7; 17:5
**tried** 27:7; 31:9
**triggered** 11:8
**Trilogen** 23:24
**Troxel** 48:15
**true** 11:12, 13; 12:24
**truly** 45:20
**truth** 10:9
**try** 15:23; 16:24; 18:5; 25:7
**trying** 38:8; 43:6, 17
**turns** 9:13, 21
**twenties** 12:3
**twice** 7:19
**two** 6:15; 9:1; 13:10; 15:24; 18:2; 23:17; 24:3; 27:16; 28:23; 29:23; 30:1, 3; 31:17; 45:6
**tying** 9:2
**Typically** 25:5; 33:9

## U

**U.S** 6:16; 9:10, 17, 23; 10:2, 23; 11:4, 6, 16, 21
**ugliness** 28:17
**unaware** 10:24
**under** 12:8; 21:12; 35:10; 47:14; 48:17
**understandable** 36:20; 44:14
**understood** 14:4
**undisclosed** 6:18; 48:8
**unduly** 6:4; 16:9
**United** 11:19
**unless** 15:10, 16; 26:5; 34:9
**unnamed** 6:19
**unreliable** 7:8, 11; 19:3
**untimely** 48:7, 16
**up** 5:20; 7:18; 12:6, 7, 8; 13:8; 14:18, 22; 17:7; 22:15; 24:4; 25:12; 33:5; 35:4; 38:1, 4, 20; 40:11; 41:6; 45:3; 47:19; 49:9; 50:2, 4
**upon** 7:1, 22; 13:5; 19:3
**use** 28:21
**used** 14:3, 21; 36:7
**usually** 28:18

## V

**valid** 15:14
**validity** 6:1; 8:16; 18:1, 5, 8; 20:20; 21:13, 17, 18;

25:6; 30:10; 43:15; 49:7
**value** 26:22
**variance** 35:22; 36:20
**vary** 13:10
**verdict** 15:10, 12; 18:3; 36:11
**versus** 22:16; 28:1; 45:10
**view** 10:11; 41:10; 44:7, 12, 18
**violates** 17:4, 14
**violation** 41:3
**volume** 5:4

## W

**wait** 49:5
**wants** 23:19, 20, 24; 38:24
**way** 8:13; 15:14; 16:24; 17:17; 23:10; 26:6; 27:9; 29:7; 34:13; 47:1
**week** 23:11, 14, 18, 23; 24:5, 5, 11, 12, 13, 14, 21; 25:10, 12, 15, 22; 29:19, 21; 30:5, 9, 13; 32:14; 33:23; 37:11; 39:1; 41:18; 43:12; 46:18; 49:13
**weekend** 40:16
**weeks** 9:18; 23:8, 17; 24:3; 30:1, 4; 32:6; 50:7
**weigh** 29:10
**weren't** 41:7
**what's** 20:4; 23:13; 31:15; 43:7; 46:4
**who's** 5:13; 28:19
**whole** 27:6
**whose** 9:14
**wife** 23:2, 15
**willing** 16:5; 18:18; 19:22
**window** 40:9
**wish** 42:7
**without** 6:3; 21:4; 40:1
**witness** 4:17, 18, 19; 9:5; 17:20; 25:17, 19; 28:19; 29:4; 31:5, 15; 35:18; 36:8; 37:12; 41:1; 43:11; 44:24
**witnesses** 4:6, 10, 16; 5:12; 29:3; 31:17
**words** 33:20
**work** 17:20, 21; 23:8; 24:16; 30:4, 10; 33:1; 50:10
**worked** 21:22
**working** 14:10; 34:20
**workout** 25:3
**works** 27:15; 34:21
**world** 44:22; 45:10, 18
**worldwide** 11:20
**worry** 18:12
**worth** 11:20
**wrap** 50:4
**wreck** 23:5
**write** 33:14

**written** 17:11; 44:5
**wrote** 17:10

## Y

**year** 15:17
**years** 14:6, 8, 10
**yellow** 48:23
**yesterday** 38:5