IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR RECONSIDERATION RE BIFURCATION

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403).
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Brian H. VanderZanden
Orrick, Herrington & Stucliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: June 22, 2006

Pursuant to Delaware Local Rule 7.1.5, Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") respectfully move for reconsideration of the Court's June 1, 2006 Order bifurcating the issues of infringement and damages from the issues related to validity. DI 264.[1]

## I.  **INTRODUCTION.**

Because of the unique facts of this case, bifurcating the issues of infringement and damages from the issue of invalidity will necessarily complicate both trials. Rather than assist the jury, such a design likely will result in additional confusion and require an additional jury trial on the damages issue. Moreover, even were such bifurcation appropriate, the issues of infringement and invalidity are inexorably linked and should be tried to the same jury.

Given the complexity of Power Integrations' theories of infringement and damages – and Power Integrations' continued refusal to narrow the asserted claims or inform Fairchild of the accused devices – the Court should bifurcate the issues of infringement and invalidity from the issue of damages. Such bifurcation is consistent with the parties' constitutional right to have a single jury consistently apply the claims to both the accused products and the prior art. Such bifurcation will also greatly reduce the burden on the jury and result in more efficient trials.

## II.  **BACKGROUND.**

During the May 31, 2006 pretrial conference, the Court raised the issue of bifurcation. While there was some discussion at that pretrial conference hearing and Fairchild had previously requested bifurcation of liability and damages, the issue had not been briefed by either party. The Court *sua sponte* raised the issue of bifurcating infringement and damages from invalidity for the first time and then confirmed that determination in its Order. DI 264, ¶ 4.

A first jury trial on the issues of infringement and damages is set to begin on October 2, 2006. DI 264, ¶ 5. The issue of invalidity will be tried to a second jury beginning on December 4, 2006. *Id.* The Court stated that if the first jury determined that any of the claims were

---

[1]     While the Court's Order was dated May 31, 2006, it was entered on the docket and served on June 1, 2006 and, thus, Fairchild's motion is timely. *See* Del. L.R. 7.1.5.

infringed, the second jury would be informed of that finding but not told of the amount of damages, if any, awarded.

At the hearing, Power Integrations conceded that the Constitutional guarantee of a jury trial embodied in the Seventh Amendment presented a significant impediment to the Court's two-jury approach but waived any appeal on that basis:

> **Mr. Scherkenbach: ...**In terms of separating the issues, just to respond to your proposal, infringement and damages in one trial to one jury, validity to a later jury. I'll be able to accept that on behalf of Power Integrations. ***I'm not going to make a Seventh Amendment argument. I understand one probably could be made, but we're not going to get an answer to that anyway in time to matter.***

May 31, 2006 Hearing, pp. 20-21 (rough) (emphasis added). Fairchild shares Power Integrations' concern, but did not waive and has not waived its right to have the issues of infringement and invalidity tried to a single jury.

At the pretrial hearing, Power Integrations agreed to reduce the number of asserted claims and "group" the accused products for purposes of infringement:

> **Mr. Scherkenbach**:[2] Well, there are four groups of product, Your Honor, that statements at face value isn't very helpful. ***We will pair down the number of claims further.***
>
> **The Court**: ***The claims are going to be paired down.***
>
> **Mr. Scherkenbach**: ***The claims will be paired down. The products we'll break down in to only three or four groups.*** 38 is not a real meaningful number. I'm not prepared to say we'll drop whole groups of products. I think the case can easily be tried in groups, in fact, the experts on both sides have dealt with them in that way, so it's not a real –

May 31, 2006 Hearing, pp. 26-27 (rough) (emphasis added). Despite Fairchild's repeated requests, now – over two weeks later – Power Integrations continues to refuse to identify the asserted claims or the "groups" of Fairchild devices accused of infringing each claim. Thus, Power Integrations continues to assert 18 claims from the four patents in suit against a total of some 38 Fairchild products.

In many cases, Power Integrations has asserted multiple claims from different patents against the same Fairchild products. Thus, there is not a one-to-one relationship between

---

[2]     In the rough transcripts, these comments are erroneously attributed to Mr. Guy.

asserted claims and accused products.  At the same time, Power Integrations demand for damages does not discretely separate by claim or by product.  Instead, Power Integrations asserts myriad damages theories under reasonable royalty, lost profits, inducement, past price erosion and future price erosion.  In addition, in his expert report, Power Integrations' damages expert "stacks" or overlaps his damages theories such that infringement of one Power Integrations patent by one Fairchild product results in one amount while infringement of two patents increases the amount by some fraction.  Power Integrations does not discretely apply a single damages theory based on infringement of a single patent on a per product basis.

The multiple theories of damages and infringement asserted against over thirty Fairchild products would be hopelessly overlapping for the first jury to analyze and would require a retrial of the damages issues upon any invalidity decision.

III.  **ARGUMENT.**

  A.  **The Court's Bifurcation Plan Will Unnecessarily Increase Jury Confusion and Effort.**

In this case, the issues of infringement and invalidity are so thoroughly intertwined that any attempt to separate them will simply increase jury confusion and effort.

For instance, Power Integrations has alleged that Fairchild willfully infringed the asserted patents.  To rebut this allegation, Fairchild will rely upon the legal opinions it received.  These opinions state that certain of the asserted claims are considerably overbroad and invalid while others are not infringed.  Thus, invalidity will necessarily be a part of any determination of willfulness by the first jury.  That jury will expect to hear evidence and argument concerning that validity of the asserted claims and may draw unwarranted assumptions (either that no such evidence exists or that Power Integrations does not dispute that the claims are invalid) if this evidence is not presented.  Moreover, this cannot be cured through an instruction to the jury.  In order for the jury to evaluate whether the opinion was competent and whether Fairchild was reasonable in relying upon it, Power Integrations will necessarily wish to address the invalidity of the asserted claims – the basis of the opinion – before the same jury.  If Power Integrations is

permitted to do so, however, Fairchild must also be permitted to introduce evidence and
testimony explaining why the claims are invalid and why its reliance on the opinions was
reasonable.

Furthermore, the particularly complicated theory of damages propounded by Power
Integrations in this case makes it impossible to consider damages before resolving both
infringement and invalidity.  Typically, a patentee seeking a reasonable royalty would request
either separate rates for each patent (that could be added together) or a single rate for all of the
asserted patents (which would be the same regardless of whether one or more patents was found
to be infringed).  Here, however, Power Integrations demands different royalty rates for each
patent *and these rates change depending on the combination of patents and claims that are*
*found to be valid and infringed:*

**REDACTED**

Exh. A (Troxel Damages Report), p. 85 (emphasis added).

The complexity of Power Integrations' approach is illustrated in the 46 pages of charts
necessary to show what it purports to be the appropriate reasonable royalty rate depending on
what specific combination of patents are found to be infringed *and valid*.  *See* Exh. A (Troxel
Damages Report), pp. 82-88 (listing charts); *see also* Exh. B (Exh. G to Troxel Report); Exh. C
(Exh. H to Troxel Report); Exh. D (Exh. I to Troxel Report); and Exh. E (Exh. J to Troxel
Report).  The reason that Power Integrations believes it necessary to present such alternative

scenarios is that its expert has opined that the applicable royalty rate changes depending on the combination of claims that are found to be both valid and infringed.

For instance, if the '851, '366, and '075 Patents are found valid and infringed, Power Integrations demands a royalty of **REDACTED** for sales of the . *See*, Exh D (Exh. I-1a to Troxel Report). If, however, only the '366 and '075 Patent are valid and infringed, Power Integrations' demand drops to a royalty rate of **REDACTED** for the . *See* Exh. D (Exh. I-7a to Troxel Report). If only the '075 Patent is valid and infringed, the royalty rate drops still further to **REDACTED** for the **REDACTED** *See* Exh. B (Exh. G-4a to Troxel Report). This is summarized in the chart below:

| Valid and Infringed Patents | Invalid or Unenforceable Patents | Power Integrations' Proposed Royalty Rate |
|---|---|---|
| '851 and '366 and '075 | '876 | |
| '366 and '075 | '876 and '851 | **REDACTED** |
| '075 | '876, '851, and '366 | |

The consequence of Power Integrations' byzantine damages calculation is that it is impossible for a jury to determine what royalty rate to apply – and, consequently, impossible for them to determine the issue of damages – until they (or a prior jury) have determined what claims are both valid, infringed, and enforceable. For example, if the first jury determined that Fairchild infringed the '851, '366 and '075 patents and accepted Power Integrations' proposed royalty rate, it would determine damages based on **REDACTED** of Fairchild's sales of the accused devices in the United States. If the second jury, however, determines that the '851 patent was invalid, then, according to Power Integrations, the first jury should have applied the **REDACTED** lower, royalty rate. If, after the second jury, the Court determined that the '366 patent was unenforceable due to Power Integrations' inequitable conduct, then, according to Power Integrations, the first jury should have only applied a **REDACTED** royalty rate. If the Court's bifurcation design is implemented and the first jury considers the issue of damages, that determination will likely have to be thrown out and damages retried if some of the claims are later determined to be invalid by the second jury or unenforceable by the Court.

This confusion cannot be cured through a jury instruction or verdict form without massively multiplying and complicating the jury's work. The first jury would have to provide

separate, hypothetical calculations of damages and specify the royalty rate and royalty base for each possible combination of infringement and invalidity. Moreover, the jury would have to understand that these calculations are in the alternative and are not cumulative.

In sum, bifurcating the issues of infringement and damages from that of invalidity greatly increases the chance of mischief and jury confusion in this case and essentially guarantees that a third trial on the issue of damages would be necessary.

### B.    The Issues of Infringement and Invalidity Should Be Tried to the Same Jury.

Moreover, the issues of infringement and invalidity should be tried to the same jury since, in this case, these issues are inexorably intertwined. For both issues, the jury will be asked to apply the asserted claims against a product – either the accused devices or the prior art. It is essential that in doing so, the jury interprets and applies the claims in an identical fashion. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."). Since these issues are not "distinct and separable", separate juries are not appropriate. *See In re Innotron Diag.*, 800 F.2d 1077, 1086 (Fed. Cir. 1986). To try these issues to separate juries violates Fairchild's Constitutional right to a jury trial.

Were separate juries to apply the claims to the accused products and the prior art, there is a significant chance that they would decide the same essential issue – whether a particular circuit structure meets a specific claim element – in very different fashions. For this reason, courts have concluded that separate juries are prohibited. *See Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.* 587 F.Supp. 1112, 1117 (D. Del. 1984) ("the prohibitions is not against having two juries decide the same *evidence*, but rather against having two juries *decide* the same *essential issues*.") (emphasis in original).

Since many of the same witnesses will be testifying on the issues of infringement and invalidity, it is more efficient in this case to try these issues together. For instance, the parties have five technical experts. Were infringement and invalidity tried separately, all five witnesses

would have to testify to each of the two juries. This is likely also true with several of the fact witnesses identified by the parties.[3] These witnesses should testify once to a single jury so that that jury has a full and complete opportunity to evaluate the witnesses' testimony and credibility. Otherwise, there is a significant risk that the two juries will reach different conclusions concerning the weight to be given the witnesses' testimony. *See Paine*, 587 F.Supp. at 1117.

### C.   In This Case, Bifurcating Infringement and Invalidity From Damages Will Simplify The Issues Facing The Jury And Be Most Efficient.

The Court should bifurcate the liability issues (infringement and invalidity) from that of damages. As this Court has specifically noted, "typically, courts bifurcate patent cases into liability and damages trials." *Enzo Life Sciences, Inc. v. Digene Corp.*, 2003 U.S. Dist. LEXIS 10202 at *16 (D. Del. 2003) (J. Farnan) (Exh. F). Indeed, given Power Integrations' damages theory, the only way for a jury to determine the amount of damages is for them to know what claims are found infringed, valid, and enforceable. Thus, it is necessary for the Court to bifurcate liability and determine the issue of inequitable conduct before the trial on damages can begin.

"Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will [i] avoid prejudice, [ii] conserve judicial resources, and [iii] enhance juror comprehension of the issues presented in the case." *Enzo*, 2003 U.S. Dist. LEXIS at *14-15. All of these factors weigh in favor of bifurcating infringement and invalidity from damages in this case.

First, such bifurcation will avoid prejudice. There is no possible concern of prejudice to either party were the Court to try the issues of infringement and invalidity together. In contrast, there is significant and unfair prejudice to Fairchild were the Court to try infringement first and then inform the second jury that Fairchild has been found to infringe. That information can only inflame the jury and is irrelevant to their determination of whether the claims are invalid.

---

[3]   Because Power Integrations continues to refuse to identify the claims that it is asserting, the products that it accuses, or how it proposes to "group" those products for trial, it is impossible for Fairchild to determine precisely which of the fact witnesses would have to testify at separate infringement and invalidity trials.

Second, bifurcating infringement and invalidity from damages would, in this case, conserve judicial resources. As noted above, there is a significant overlap of witnesses and evidence on the issues of infringement and invalidity. For instance, the technical experts would have to repeat large portions of their testimony concerning their background and educate both juries on the technology. Thus, bifurcating liability from damages will result in a shorter total trial time than bifurcating infringement and damages from invalidity. This is especially true if the damages needs to be retried after the claims are found to be invalid or unenforceable. Indeed, if all of the claims are found to be invalid, not infringed, or unenforceable, a damages trial would be unnecessary – the ultimate conservation of judicial resources.

Third, bifurcating liability from damages would greatly enhance juror comprehension of both aspects of the case. To decide the issues of infringement and invalidity, the jury will have to learn a great deal about a very complicated technology – pulse width modulated semiconductor power devices. Similarly, Power Integrations' damages theories are also incredibly complicated. It is clearly inefficient to require two separate juries to learn the technology at issue (and also ask the first jury to master the economics of a damages case). Instead, the first jury should focus on the technology and decide the issues of infringement and invalidity while the second jury can determine damages, if necessary.

## IV.    **CONCLUSION.**

Fairchild agrees that the Court should bifurcate the issues in this case. Bifurcating the issues of infringement and damages from the issue of invalidity, however, is constitutionally impermissible and would complicate matters rather than simply them for the juries. Instead, the Court should bifurcate the issues of infringement and invalidity from that of damages.

8

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403).
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

Of Counsel:

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Brian H. VanderZanden
Orrick, Herrington & Stucliffe LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  June 15, 2006
170486.1

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# EXHIBIT D

# REDACTED

# EXHIBIT E

**REDACTED**

# EXHIBIT F

# REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on the 22st day of June, 2006, the attached **REDACTED PUBLIC VERSION OF DEFENDANTS' MOTION FOR RECONSIDERATION RE: BIFURCATION** was served upon the below-named counsel of record at the address and in the manner indicated:

William J. Marsden, Jr., Esquire                                    HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE  19899

Frank E. Scherkenbach, Esquire                              VIA FEDERAL EXPRESS
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Michael Kane, Esquire                                           VIA FEDERAL EXPRESS
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN  55402

Howard G. Pollack, Esquire                                   VIA FEDERAL EXPRESS
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063


*/s/ Lauren E. Maguire*
_____
Lauren E. Maguire