# EXHIBIT 1

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## Form 8-K

---

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

Date of report (date of earliest event reported): May 5, 2006

---

# Power Integrations, Inc.
#### (Exact name of registrant as specified in its charter)

---

| Delaware | 0- 23441 | 94-3065014 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File No.) | (I.R.S. Employer Identification No.) |

**5245 Hellyer Avenue
San Jose, California 95138-1002**
(Address of principal executive offices)

**Registrant's telephone number, including area code: (408) 414-9200**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

(a) Power Integrations, Inc. (the "Company") disclosed on March 13, 2006 that it had created a Special Committee comprised of disinterested members of its Board of Directors (the "Board") to conduct an internal investigation of company practices related to stock option grants to officers and directors, and related matters. The Special Committee is being assisted by independent outside legal counsel and accounting experts. At this time, the Special Committee has not completed its work or reached final conclusions and is continuing its review. The Special Committee has reached a preliminary conclusion that the actual dates of measurement for certain past stock option grants differed from the recorded grant dates for such awards. As a result, the Company expects to record additional non-cash charges for stock-based compensation expenses in prior periods. Based on the Special Committee's preliminary conclusion, the Company expects that such non-cash charges will be material and that the Company may need to restate its historical financial statements for each of the fiscal years 1999 through 2004, and for the first three quarters of the fiscal year ended December 31, 2005. Such charges may also affect future periods. On May 4, 2006, the Audit Committee of the Company's Board concluded that such financial statements and any related reports of its independent registered public accounting firm should no longer be relied upon.

Any such stock-based compensation charges would have the effect of decreasing income from operations, net income and retained earnings figures contained in the Company's historical financial statements. The Company does not expect that the anticipated restatements would have a material impact on its historical revenues, cash position or operating expenses not related to stock options.

The Special Committee discussed with the Company's independent registered public accounting firm the matters disclosed in this Item 4.02 but, as the internal investigation of the Special Committee has not been completed, the independent registered public accounting firm has not yet had an opportunity to consider the preliminary results of the investigation.

Additionally, the Company is evaluating Management's Report on Internal Controls Over Financial Reporting set forth in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2004. Although the Company has not yet completed its analysis of the impact of this situation on its internal controls over financial reporting, the Company has determined that it is highly likely that it had a material weakness in internal control over financial reporting as of December 31, 2004 and December 31, 2005. A material weakness is a control deficiency, or a combination of control deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financials will not be prevented or detected. If the Company were to conclude that a material weakness existed, it would expect to receive an adverse opinion on internal control over financial reporting from its independent public accounting firm.

The Company intends to file its Annual Report on Form 10-K for 2005 and any financial statements required to be restated, as well as its Form 10-Q for the quarter ended March 31, 2006, as soon as practicable after the completion of the Special Committee's investigation.

A copy of the press release relating to the foregoing is attached hereto as Exhibit 99.1 and is incorporated in this Item 4.02 by reference.

2

**Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers.**

On May 4, 2006, Howard Earhart, resigned as the chairman of the Company's Board of Directors. Mr. Earhart was the Company's chief executive officer, and a director, from 1995 through 2002. Also on May 4, 2006, John Cobb resigned as the Company's chief financial officer. In connection with Mr. Earhart's resignation, the size of the Company's Board was reduced from 9 to 8.

On May 8, 2006, the Company announced that Steven J. Sharp, who has served as a director of the Company since 1988, has been elected chairman of the Board of Directors, succeeding Mr. Earhart. A copy of the press release relating to the foregoing is attached hereto as Exhibit 99.2 and is incorporated in this Item 5.02 by reference.

**Item 8.01 Other Events.**

As announced on March 17, 2006, the Company received a Nasdaq Staff Determination stating that the Company is not in compliance with Marketplace Rule 4310(c)(14) because it has not timely filed its report on Form 10-K for the year ended December 31, 2005 and, therefore, that its securities are subject to delisting from the Nasdaq National Market. On March 22, 2006, the Company requested a hearing with Nasdaq to seek an exception to the filing requirement, which hearing was held on April 12, 2006. On May 2, 2006, Nasdaq notified the Company that the exception had been granted, and that it would continue to list the Company's shares on the Nasdaq National Market, provided that the Company (i) provide Nasdaq with information regarding the final results of the investigation by the Special Committee on or before June 7, 2006, (ii) file its Form 10-K for the year ended December 31, 2005 and all required restatements on or before July 12, 2006, and (iii) file its Form 10-Q for the quarter ended March 31, 2006 on or before August 2, 2006. In the event the Company is unable to comply with the terms of the exception, its securities may be delisted.

On April 25, 2006, a shareholder filed a derivative complaint in the US District Court in the Northern District of California, purportedly on behalf of the Company, against certain executives of the Company and certain members of the Company's Board. The complaint alleges, among other things, that the defendants breached their fiduciary duties between 1998 and 2004 by (i) improperly requesting backdated stock option grants, which were intended to, and did, unduly benefit certain defendants at the expense of the Company, (ii) approving such improper requests and improperly backdating the stock option grants, and (iii) knowingly approving the Company's violations of generally accepted accounting principles. The complaint also alleges that the officer defendants were unjustly enriched by their receipt and retention of the backdated stock option grants.

The Company does not intend to file further current reports on Form 8-K describing additional lawsuits, if any, purporting class action status, in either federal or state court, which are based on allegations substantially similar to those contained in the complaint described herein.

3

Item 9.01 Financial Statement and Exhibits.

    (d)   Exhibits.

| Exhibit Number | Exhibit Title or Description |
| --- | --- |
| 99.1 | Company Press Release dated May 5, 2006 |
| 99.2 | Company Press Release dated May 8, 2006 |

4

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: May 8, 2006

Power Integrations, Inc.

By: /s/ Balu Balakrishnan
      **Balu Balakrishnan**
      **Chief Executive Officer**

5

## EXHIBIT INDEX

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Power Integrations Press Release dated May 5, 2006 |
| 99.2 | Power Integrations Press Release dated May 8, 2006 |

POWER INTEGRATIONS INC (Form: 8-K, Received: 05/09/2006 06:10:16) Case 1:04-cv-01371-JJF Document 303-2 Filed 08/03/2006 Page 8 of 86 Page 7 of 11

EXHIBIT 99.1



**For Immediate Release**

Contact :
Joe Shiffler
Power Integrations, Inc.
(408) 414-8528
jshiffler@powerint.com

### Power Integrations Expects Restatement of Financials Related to
### Stock-Based Compensation

**SAN JOSE, Calif. – May 5, 2006** – Power Integrations, Inc. (Nasdaq: POWI) disclosed on March 13, 2006 that it had created a special committee comprised of disinterested members of its board of directors to conduct an internal investigation of company practices related to stock option grants to officers and directors, and related matters. The special committee is being assisted by independent outside legal counsel and accounting experts. At this time, the special committee has not completed its work or reached final conclusions and is continuing its review. The special committee has reached a preliminary conclusion that the actual dates of measurement for certain past stock option grants differed from the recorded grant dates for such awards. As a result, the company expects to record additional non-cash charges for stock-based compensation expenses in prior periods. Based on the special committee's preliminary conclusion, the company expects that such non-cash charges will be material and that the company may need to restate its historical financial statements for each of the fiscal years 1999 through 2004, and for the first three quarters of the fiscal year ended December 31, 2005. Such charges may also affect future periods. On May 4, 2006, the audit committee of the company's board of directors concluded that such financial statements and any related reports of its independent registered public accounting firm should no longer be relied upon.

Any such stock-based compensation charges would have the effect of decreasing income from operations, net income and retained earnings figures contained in the company's historical financial statements. The company does not expect that the anticipated restatements would have a material impact on its historical revenues, cash position or operating expenses not related to stock options.

On May 4, 2006, Howard Earhart resigned as the chairman of the company's board of directors, and John Cobb resigned as the company's chief financial officer. The board expects to elect a non-executive chairman from among existing independent directors in the near future, and the company plans to initiate a search for a new chief financial officer immediately.

As announced on March 17, 2006, the company received a Nasdaq Staff Determination stating that the company is not in compliance with Marketplace Rule 4310(c)(14) because it has not timely filed its report on Form 10-K for the year ended December 31, 2005 and, therefore, that its securities are subject to delisting from the Nasdaq National Market. On March 22, 2006, the

*—more—*

Power Integrations Expects Restatement of Financials

company requested a hearing with Nasdaq to seek an exception to the filing requirement, which hearing was held on April 12, 2006. On May 2, 2006, Nasdaq notified the company that the exception had been granted, and that it would continue to list the company's shares on the Nasdaq National Market, provided that the company (i) provide Nasdaq with information regarding the final results of the investigation by the special committee on or before June 7, 2006, (ii) file its Form 10-K for the year ended December 31, 2005 and all required restatements on or before July 12, 2006, and (iii) file its Form 10-Q for the quarter ended March 31, 2006 on or before August 2, 2006. In the event the company is unable to comply with the terms of the exception, its securities may be delisted.

The company intends to file its Form 10-K for 2005 and any financial statements required to be restated, as well as its Form 10-Q for the quarter ended March 31, 2006, as soon as practicable after the completion of the special committee's review.

## Note Regarding Forward-Looking Statements

This press release contains forward-looking statements regarding the company that involve risk and uncertainties. There can be no assurances that forward-looking statements will be achieved, and actual results could differ materially from forecasts and estimates. Important factors that could cause actual results to differ materially include: the results of the review by the special committee of matters relating to the company's stock option grants including, but not limited to, the accuracy of the stated dates of option grants and whether all proper corporate procedures were followed; the impact of any restatement of financial statements of the company or other actions that may be taken or required as a result of such reviews; the inability of the company's inability to file reports with the Securities and Exchange Commission; risks associated with the company's inability to meet Nasdaq requirements for continued listing, including possible delisting; and risks of litigation related to the company's stock option grants or any restatement of the financial statements of the company. Additional risk factors associated with the company's business are explained in the company's annual report on Form 10-K, filed with the SEC on March 16, 2005, and its quarterly report on Form 10-Q, filed on November 7, 2005. The company is under no obligation (and expressly disclaims any obligation) to update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

—more—

Case 1:04-cv-01371-JJF Document 302-2 Filed 08/03/2006 Page 9 of 11

**About Power Integrations**

Power Integrations, Inc. is the leading supplier of high-voltage analog integrated circuits used in power conversion. The company's breakthrough technology enables compact, energy-efficient power supplies in a wide range of electronic products, in both AC-DC and DC-DC applications. The company's *EcoSmart* energy-efficiency technology, which dramatically reduces energy waste, has saved consumers and businesses around the world more than an estimated $1.5 billion on their electricity bills since its introduction in 1998. For more information, visit the company's website at *www.powerint.com* . For information on global energy-efficiency standards and *EcoSmart* solutions, visit the Power Integrations Green Room at *www.powerint.com/greenroom* .

# # #



Exhibit 99.2

**For Immediate Release**

**Contact:**

Joe Shiffler
Power Integrations, Inc.
(408) 414-8528
*jshiffler@powerint.com*

### Steve Sharp Elected Non-Executive Chairman of Power Integrations
### Board of Directors

**SAN JOSE, Calif. – May 8, 2006** – Power Integrations (Nasdaq: POWI) today announced that Steven J. Sharp has been elected non-executive chairman of the company's board of directors, succeeding Howard Earhart. Mr. Earhart, the company's chief executive officer from 1995 until 2002, served as non-executive chairman from 2002 until his resignation last week.

Mr. Sharp has served as a director of Power Integrations since the company's inception in 1988, and is also a member of the board's nominating and corporate governance committee. From 1991 until 2002 Mr. Sharp was chairman and CEO of TriQuint Semiconductor, a manufacturer of electronic components for the communications industry. He currently serves as non-executive chairman of TriQuint. In addition, he is vice chair of the Oregon chapter of the American Electronics Association, and heads a private foundation that funds research to find the causes of ADD (attention deficit disorder).

Mr. Sharp is a 45-year veteran of the semiconductor industry and has served in director/officer roles in the formative years of Power Integrations, TriQuint, Megatest (now Teradyne), Crystal Semiconductor (now Cirrus Logic), Silicon Architects (now Synopsys) and Volterra. He qualifies as an independent director of Power Integrations according to Nasdaq and SEC rules.

"I am proud to take on the role of non-executive chairman of Power Integrations," said Mr. Sharp. "I believe that Power Integrations has an extremely bright future as the leader in high-voltage power conversion technology, and I look forward to working with CEO Balu Balakrishnan as he and his management team continue to execute their growth strategy."

**Note Regarding Forward-Looking Statements**

This press release contains forward-looking statements regarding the company's future that involve risk and uncertainties. There can be no assurances that forward-looking statements will be achieved, and actual results could differ materially from forecasts and estimates. Important factors that could cause actual results to differ materially include: the results of the review by the

*– more –*



special committee of matters relating to the company's stock option grants including, but not limited to, the accuracy of the stated dates of option grants and whether all proper corporate procedures were followed; the impact of any restatement of financial statements of the company or other actions that may be taken or required as a result of such reviews; the inability of the company to file reports with the Securities and Exchange Commission; risks associated with the company's inability to meet Nasdaq requirements for continued listing, including possible delisting; and risks of litigation related to the company's stock option grants or any restatement of the financial statements of the company. Additional risk factors associated with the company's business are explained in the company's annual report on Form 10-K, filed with the SEC on March 16, 2005, and its quarterly report on Form 10-Q, filed on November 7, 2005. The company is under no obligation (and expressly disclaims any obligation) to update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

## About Power Integrations

Power Integrations, Inc. is the leading supplier of high-voltage analog integrated circuits used in power conversion. The company's breakthrough technology enables compact, energy-efficient power supplies in a wide range of electronic products, in both AC-DC and DC-DC applications. The company's *EcoSmart*[*] energy-efficiency technology, which dramatically reduces energy waste, has saved consumers and businesses around the world more than an estimated $1.5 billion on their electricity bills since its introduction in 1998. For more information, visit the company's website at *www.powerint.com* . For information on global energy-efficiency standards and *EcoSmart* solutions, visit the Power Integrations Green Room at *www.powerint.com/greenroom* .

# # #

*—more —*

# EXHIBIT 2



Reed Electro

**Partner Sol**

- FREE EDN 2006 DSP Directory PDF dow

Home | Free Email Newsletter                                                    August 2.

EN   NEWS  PRODUCTS  COMPANIES  WEB

[ SEARCH ]

**DEPARTMENTS**
Automotive
Business
Capital Equipment
Communications
Consumer Electronics
Convergence
Defense
EDA
Medical
Packaging
Semiconductors
Supply Chain
Test & Measurement
Special Reports

**OPINION & ANALYSIS**
Audiocasts
Blogs
Breakfast in the Valley
Editor's Note
Executive Insight
Op Ed

**MARKET RESEARCH**
Market Highlights
Processor Highlights
Reed Electronics Group
Research

**SITE MEMBERSHIP**
Welcome, Guest.
[ REGISTER / LOG IN ]

**NEWSLETTERS**
Free Newsletters

**RESOURCES**

RSS Feeds   |   Printer-Friendly Version   |   Email This Article   |   Letter to the Editor

## Power Integrations Involved in Stock Options Snafu
Staff Reporter -- *Electronic News*,
5/5/2006

Print-friendly version    Email this story to a friend

Power conversion chipmaker Power Integrations Inc. said today that an internal investigation has reached a preliminary determination that the actual dates for certain past stock option grants differed from the recorded grant dates.

It also said that Howard Earhart, its board chairman, and CFO John Cobb both resigned Thursday. It did not cite specific reasons for the resignations.

As a result, the Silicon Valley-based company expects to record additional non-cash charges for stock-based compensation expenses in prior periods. Furthermore, Power Integrations expects that it may need to restate its historical financial statements for each of the fiscal years 1999 through 2004, and for the first three quarters of 2005, and that previously published financials for those periods can't be relied upon.

The company had initially disclosed on March 13 of this year that it had created a

**TOP HEADLINES**
- FTC Rules Rambus Monopolized DRAM Market
- Philips Shares Climb on Reported $10B Semi Sale
- Altera Granted Continued Nasdaq Listing
- UMC Posts Solid Q2 Growth
- Marvell Builds Regional HQ in Singapore
- U.K. Mini-Fab Proposal Rejected
- Nimble Newcomer Huawei Pushes Telecoms Mergers
- Synopsys Adds Variation-Aware Library Models

**EDN**

**Goepel supports PCI Express, Altera USB-Blaster**
*Test & Measurement World*, 8/1/2006 4:27:00 AM

**AMD, IBM Expand Server Relationship**
*Electronic News*, 8/1/2006

**Compliance system tackles RoHS reporting**
*Test & Measurement World*, 7/31/2006 5:19:00 AM

**On line exclusive: Jim Hogan, VC, contemplates innov opportunities**
*Electronic Business*, 8/1/2006

Sponsored by:

EE STORY BEHIND
THE STORY

Archives
D&B Business/Credit Reports
Events
Free Software
RSS Feeds XML
Useful Sites

**INSIDE ENEWS**

Advertise with Us
Contact Us
Contribute
Editorial Advisory Board

**REED ELECTRONICS GROUP WEBSITES**

ECN
EDN
Electronic Business
Electronic News
In-Stat
Semiconductor International
Test & Measurement World
Reed Electronics Group

special committee comprised of disinterested members of its board of directors to conduct an internal investigation of company practices related to stock option grants to officers and directors. The special committee is being assisted by independent outside legal counsel and accounting experts.

The committee's investigation is ongoing, and it hasn't reached any final conclusions, the company noted. It is one of several other companies that are dealing with corporate headaches over the dating of options

Any additional charges that will be recorded would have the effect of

Advertisement



Electronic BUSINESS

THE BUSINESS MAGAZINE FOR THE ELECTRONICS INDUS

FREE SUBSCRIPTION

decreasing income from operations, net income and retained earnings figures during the corresp periods, Power Integrations said. It does not expect the anticipated will have a material impact o historical revenues, cash position or operating expenses not related to stock options.

As for the resignation of its chairman and CFO the company said it is beginning a search for a r CFO immediately, and that its board plans to elect a non-executive chairman from among existi independent directors in the near future.

In the midst of all this, the company further said it has staved off delisting from the Nasdaq Nat Market, for the time being. The company received notice in March that it wasn't in compliance Nasdaq rules, not having filed its Form 10-K annual report for 2005. After seeking an exception Power Integrations learned earlier this week that the exception had been granted.

Nasdaq officials said Power Integrations would continue to be listed on the Nasdaq under sever conditions: that it provide Nasdaq with information regarding the final results of the investigatio the special committee on or before June 7, 2006; that it file its Form 10-K for the year ended December 31, 2005 and all required restatements on or before July 12, 2006; and that it file its 1 10-Q for the quarter ended March 31, 2006 on or before August 2, 2006.

Power Integrations said it intends to file its Form 10-K for 2005 and any financial statements re to be restated, as well as its Form 10-Q for the quarter ended March 31, 2006, as soon as practic after the completion of the special committee's review.

Investors reacted predictably to all this news; in late morning trading today, the company's stoc down more than 12 percent at $17.26 per share; it had closed the night before at $19.64.

RSS Feeds  |  Printer-Friendly Version  |  Email This Article  |  Letter to the Editor

**Our Sponsors**

**Globalization Resource Center from Electronic Business**
Find feature articles, analysis, breaking news, market research and other resources to help electronics executives navigate the complexities of managing a global business. Visit **www.eb-mag.com/global**.

**Start a FREE subscription to Electronic Business**
Looking for a fresh perspective on the critical business issues and challenges you face? Electronic Busines: offers in-depth analysis on the market dynamics and business strategies you need to manage your compan more effectively. Request a FREE subscription today - PRINT or DIGITAL. * Digital subscription offered acro the globe, **click here** for more information about the digital edition!

## Marketplace

**Analog Design Services - A2e Technologies**
A2e Technologies excels at Analog Design. We have a deep understanding of the physics of analog desigr have completed complex designs for many mar...

**FREE Technical Paper**
Top 10 Reasons for Using Ultracapacitors - Discover 10 ways that Maxwell's ultracapacitors give system designers more freedom by allowing hybrid power...

**Astec Power- World Leader in AC-DC and DC-DC Power**
Providing standard and custom embedded, bulk front end and board mount (POLA) power converters. Download free catalogs and use Astec's Power Wizard to...

**Flowcharts from C/C++ code -- Free trial download**
Understand C/C++ code in less time. A new team member ? Inherited legacy code ? Get up to speed faste with Crystal Flow for C/C++. Code-formatting im...

**Intel Communications Alliance**
Connect with world class community of communications and embedded developers. Quickly locate product and solutions that can help speed development cy...

Buy a Link

---

**Ads By Google**

**Make Money With Options**
How I turned $5,000 into $1 Million With Options Guru Steve Sarnoff
www.dailyreckoning.com

**The Green Guide**
The Source for Eco-Friendly Advice. Product Reviews, Shopping Tips.
www.thegreenguide.com

---

**HOME | NEWSLETTERS | ADVERTISE | ABOUT ELECTRONIC NEWS | REGISTER/LOG IN**

© 2006 Reed Business Information, a division of Reed Elsevier Inc. All rights reserved.
Use of this web site is subject to its Terms and Conditions of Use. View our Privacy Policy.



# EXHIBIT 3

# FISH & RICHARDSON P.C.

CONFIRMATION

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
650 839-5070

**VIA FACSIMILE & U.S. MAIL**
650/614-7401

Facsimile
650 839-5071

June 22, 2006

Web Site
www.fr.com

Brian VanderZanden
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Michael R. Headley
(650) 839-5139

Email
headley@fr.com

Re:    Power Integrations Inc. v. Fairchild Semiconductor Int'l
       USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Brian:

I have reviewed Fairchild's letters concerning Power Integrations' investigation into the dates of certain stock option grants. They raise a number of issues that have no bearing on this litigation and seek discovery far out of proportion to any impact that the timing of option grants might have on this case.

First and foremost, there is no basis for taking a fifth day of deposition testimony from Power Integrations' President and CEO, Balu Balakrishnan. Equally baseless are Fairchild's demands to depose Howard Earhart, former Chairman of the Board of Power Integrations, and John Cobb, former CFO of Power Integrations. Judge Farnan made clear at the May 31 pretrial conference that "I'm one that's not going to be too persuaded by a lot of what goes on in corporate governance" and that he would allow some discovery only "if [Power Integrations] supplemental filings or substitute filings [with the SEC] are different than are being argued here today." [Tr. at 14:24-15:8, 19:12-20:5.] To date, neither Fairchild nor its damages expert have suggested how, in any way, restated stock option grant dates are relevant to the issues in this case, much less entitle Fairchild to such far-flung discovery. Nor has Fairchild suggested why Mr. Balakrishnan or the former Power Integrations employees might have any information regarding stock options that bears on this case

Fairchild also seeks documents concerning Power Integrations' internal investigation regarding the stock option grant dates and asks for confirmation regarding various dates for Power Integrations' filings with the SEC and Nasdaq. Again, there is no apparent basis for these requests and no explanation as to how the information might bear on this patent case or why Fairchild would be entitled to such information.

Power Integrations has committed to filing updated financial information with the SEC as noted in the press release Fairchild produced at FCS1691854. Once that information is available, if Fairchild can make a specific showing that the earnings restatements on the very narrow issue of stock options grant dates have a meaningful

FISH & RICHARDSON P.C.

Brian VanderZanden
June 22, 2006
Page 2


impact on the damages analysis in this case, we will reconsider your requests at that time.

Sincerely,

Michael R. Headley

50356469.doc

# EXHIBIT 4

07/12/2006 16:40 FAX 65083950    FISH & RICHARDSON    ☑002

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Michael R. Headley
(650) 839-5139

Email
headley@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA FACSIMILE & U.S. MAIL**
650/614-7401

July 12, 2006

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:     Power Integrations Inc. v. Fairchild Semiconductor Int'l
         USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Bas:

This letter responds to your letter of last night regarding the schedule for the completion of damages discovery. Your letter misrepresents that the parties discussed the July 12 interim deadline for Power Integrations to file its Form 10-K for fiscal year 2005 at the pretrial conference, and that the interim deadline provided the basis for the Court's order extending the damages discovery cutoff to August 18. This is plainly false. There was no discussion of the July 12 date during the May 31 pretrial conference; Mr. Guy repeatedly made reference to the August 2 deadline for Power Integrations to submit its 10-Q. *See* Pretrial Conf. Tr. at 7, 19, 50. Indeed, page 50 of the pretrial conference transcript makes perfectly clear that Mr. Guy asked for an August 18 damages discovery cutoff in light of the August 2 date for Power Integrations to file its quarterly report. *Id.* at 50.

It is clear that your request for a three week extension is another pretense for delaying this case, and Power Integrations cannot agree to anything that would throw off the current trial schedule. Nevertheless, because your letter suggests you may need some extra time, we are willing to extend the deadline for the cutoff of damages discovery by one week, to August 25, 2006, provided that this extension does not change the current schedule and that Fairchild not use this brief extension as a basis for changing the current schedule in any way.

I look forward to your response.

Sincerely,

Michael R. Headley

50359622.doc

# EXHIBIT 5



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* 650-614-7400
*fax* 650-614-7401

WWW.ORRICK.COM

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

August 2, 2006

*VIA FACSIMILE*

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94036

Re:    Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)

Dear Michael:

Power Integrations was to have produced the Court-ordered discovery relating to Power Integrations' restatement of its financial reports no later than today. As you know, Fairchild requires this information before it deposes Mr. Balakrishnan and a 30(b)(6) witness on this issue. Further, as we have explained, based on this discovery and those depositions, Fairchild's damages experts will likely need to supplement his report.

The Court ordered this production on May 31, 2006 but Power Integrations refused to provide it. Power Integrations initially indicated that it would provide its restated financial reports on July 12, 2006 but then unilaterally refused, citing an extension it received from the NASDAQ. While this was not a legitimate excuse, Fairchild accepted Power Integrations express promise to complete this production by August 2, 2006. We do not understand why we have not received these documents.

Power Integrations' continuing failure to provide the discovery ordered by the Court severely prejudices Fairchild. If Power Integrations does not complete its production by August 3, 2006, Fairchild will have no choice but to request that the Court compel this discovery and continue the damages phase of the trial until Fairchild and its experts have had an opportunity to review it. Please confirm that Power Integrations will abide by the Court's order and provide its restated financial reports.

Sincerely,

Bas de Bl

Bas de Blank

cc:    William J. Marsden, Jr.
       Howard G. Pollack

US_WEST:260067225.1

# EXHIBIT 6

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA FACSIMILE & U.S. MAIL**
650/614-7401

August 3, 2006

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:    Power Integrations Inc. v. Fairchild Semiconductor Int'l
       USDC-D. Del. - C.A. No. 04-1371-JJF

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Michael R. Headley
(650) 839-5139

E-mail
headley@fr.com



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Bas:

I received your letter of August 1 seeking to delay the completion of damages discovery and to put off the damages trial in this case. There is no reason for any delay, and Power Integrations will oppose it. Power Integrations has repeatedly set forth a schedule that allows for the completion of expert damages discovery this month, as follows:

- Troxel Summary Report – August 8

- Keeley Summary Report – August 16

- Troxel Deposition – August 24

- Keeley Deposition – August 25

We have subpoenaed Dr. Keeley on this schedule and expect the discovery will proceed accordingly. Mr. Troxel will supplement his report based only on new information, including Fairchild's U.S. manufacturing activity, the topics in his April Supplemental Report, and the Court's orders. His Supplemental Report does not address anything related to Power Integrations earnings restatements, which is not relevant to any of the damages issues in this case, and the vast majority of his work will not change.

Given that Fairchild already has deposed Mr. Troxel at length and given the narrow focus of his supplemental report, there is no reason to believe Fairchild will need five weeks to respond as you suggest, particularly as Fairchild accepted a three week schedule for the entire sequence of supplemental damages discovery at the May 31 pretrial conference. In particular, Fairchild has failed to explain why Dr. Keeley requires any further information at all, let alone how any restatement of Power Integrations' earnings with respect to stock options could possibly affect Dr. Keeley's calculations.

FISH & RICHARDSON P.C.

Bas de Blank
August 3, 2006
Page 2

As for the host of new discovery you request in your letter, it will not be forthcoming, as there is no relevance to or need for the materials you have requested regarding the ITC (which does not provide for damages as a remedy) or matters involving the SEC. Indeed, Fairchild's last-minute request for this discovery belies the suggestion that the information is necessary for Dr. Keeley to do his work.

It is abundantly clear that Fairchild has seized on the irrelevant stock option issue as a tool for delaying trial. We are confident the Court will see through this charade, and will consider Fairchild's refusal to engage in the remaining damages discovery to be a violation of the direction it gave at the pretrial conference. If Fairchild refuses to proceed with expert damages discovery, including presenting Dr. Keeley for his first and only deposition on the current schedule, it does so at its own peril, as Power Integrations will move to preclude Fairchild from presenting any testimony from Dr. Keeley at the trial commencing October 2.

Sincerely,

Michael R. Headley

50363856.doc

# EXHIBIT 7

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

---

# FORM 8-K

---

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d) OF
### THE SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): July 31, 2006

---

# Power Integrations, Inc.
### (Exact name of Registrant as specified in its charter)

| **Delaware** | **000-23441** | **94-3065014** |
|:---:|:---:|:---:|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**5245 Hellyer Avenue**
**San Jose, California 95138-1002**
(Address of principal executive offices)

**(408) 414-9200**
(Registrant's telephone number, including area code)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

On July 31, 2006, Power Integrations formally notified The Nasdaq Stock Market that it would not be able to file with the Securities and Exchange Commission its Annual Report on Form 10-K for its fiscal year ended December 31, 2005, and its Quarterly Report on Form 10-Q for the first quarter of 2006, by August 2, 2006, as required to continue its listing on the Nasdaq Global Market. The failure originally to timely file these documents with the SEC was a violation of Marketplace Rule 4310(c)(14). The Nasdaq Stock Market had granted Power Integrations an extension to file these documents with the Securities and Exchange Commission until August 2, 2006.

On July 31, 2006, The Nasdaq Stock Market notified Power Integrations that its common stock will be delisted from the Nasdaq Global Market at the opening of the market on August 2, 2006.

Power Integrations announced the impending delisting by press release on July 31, 2006. A copy of the press release is attached as Exhibit 99.1 to this Current Report on Form 8-K.

**Item 7.01 Regulation FD Disclosure.**

On July 31, 2006, the Board of Power Integrations approved the ability of one of its investors to acquire beneficial ownership of Power Integrations' common stock in excess of 15%, to up to 20%, without triggering the provisions of Power Integrations' Rights Agreement (commonly known as a poison pill). There is no assurance that this investor will actually purchase any additional securities.

**Item 9.01 Financial Statements and Exhibits.**

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Press Release, dated July 31, 2006, Announcing the Impending Delisting of Power Integrations' Common Stock From the Nasdaq Global Market. |

Case 1:04-cv-01371-JJF    Document 303-2    Filed 08/03/2006    Page 30 of 86

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Power Integrations, Inc.

By: /s/ Balu Balakrishman

Name: Balu Balakrishman

Title: President and Chief Executive Officer

Dated: August 1, 2006

# EXHIBIT INDEX

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Press Release, dated July 31, 2006, Announcing the Impending Delisting of Power Integrations' Common Stock From the Nasdaq Global Market. |

Exhibit 99.1

**Power Integrations Expects Shares to Be Delisted from Nasdaq**

**Company to Host Conference Call Today to Discuss Listing Status, Preliminary
Second-Quarter Financial Results and Business Outlook**

SAN JOSE, Calif.—(BUSINESS WIRE)—July 31, 2006—Power Integrations (Nasdaq: POWI - News ) today announced that it has informed Nasdaq that it does not expect to become current in its SEC filings by the previously announced deadline of August 2, 2006. As a result, the company has been notified by Nasdaq that its shares will be delisted from the Nasdaq Global Market at the opening of the market on August 2.

The company has recently been made aware of new information regarding the potential criteria for determining the accounting treatment for stock options whose grant dates may differ from the originally stated measurement dates. Also, the company has recently been advised to submit its accounting treatment to the SEC for review prior to filing its restated financials. As a result of these and other developments, the company's filings will be delayed beyond the August 2 deadline.

Under Nasdaq Rule 4802(b), the Nasdaq Listing Qualifications Panel is prohibited from allowing the company to remain listed for more than 90 days beyond the Panel's original decision to grant the company a listing extension.

The company expects its shares to begin trading on the Pink Sheets beginning on August 2, under the symbol POWI.PK. The company's shares are currently quoted on the Pink Sheets by two market makers, and additional market makers can immediately begin entering quotes. Investors wishing to trade Power Integrations stock may continue to do so through their brokers.

"We are disappointed that for reasons largely beyond our control, we will not be able to regain compliance with Nasdaq rules in time to avoid delisting," said Balu Balakrishnan, president and CEO of Power Integrations. "We have made every effort to restate our financials and file the necessary reports on a timely basis.

"We will continue doing everything within our power to complete this process as quickly as possible, and we intend to reapply for Nasdaq listing at the earliest possible time," continued Balakrishnan. "More importantly, we will remain focused on executing our strategy and growing our business, as we have done throughout this process. Our preliminary second-quarter results are proof that our business remains on track and that our financial condition is extremely strong."

Conference Call at 2:00 pm PDT Today

Power Integrations management will hold a conference call for members of the investment community today at 2:00 pm Pacific time. Company management will provide an update on its efforts to regain compliance with Nasdaq listing requirements, and will discuss its preliminary financial results for the second quarter of 2006, which are addressed in a separate press release issued this afternoon. Members of the investment community may access the call by dialing (800) 374-0113 from within the U.S. or (706) 758-9607 from abroad. A replay of the call will be available by dialing (800) 642-1687 or (706) 645-9291 and entering passcode 3902365. The call will also be available via a live and archived webcast on the "investor info" section of the company's website, www.powerint.com .

**About Power Integrations**

Power Integrations, Inc. is the leading supplier of high-voltage analog integrated circuits used in power conversion. The company's breakthrough integrated-circuit technology enables compact, energy-efficient power supplies in a wide range of electronic products, in both AC-DC and DC-DC applications. The company's EcoSmart ® energy-efficiency technology, which dramatically reduces energy waste, has saved consumers and businesses around the world more than an estimated $1.7 billion on their electricity bills since its introduction in 1998. For more information, visit the company's website at www.powerint.com. To receive Power Integrations news releases via e-mail, register at http://www.b2i.us/irpass.asp?BzID=1306&to=ea&s=0

**Note Regarding Forward-Looking Statements**

This press release contains forward-looking statements involving risk and uncertainty, and actual results could differ from those projected or implied. These forward-looking statements relate to the company's expectation that its shares will be available for trading on the Pink Sheets beginning August 2, 2006, and its intent to reapply for listing on the Nasdaq. These forward-looking statements are based on current information that is, by its nature, subject to change. Forward-looking statements are denoted by the use of such words and phrases as "expect" and "intend," and other words and phrases that look toward future events or performance. Risks that could cause these statements not to come true include the fact that the trading of the company's common stock on the Pink Sheets is outside of the company's control, and many events must occur before the company is able to reapply to have its stock traded on the Nasdaq Global Market, many of which are outside of the company's control. General risk factors associated with the company's business are explained in the company's most recent annual report on Form 10-K, filed with the SEC on March 16, 2005, and its most recent quarterly report on Form 10-Q, filed on November 7, 2005. The company is under no obligation (and expressly disclaims any obligation) to update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

# EXHIBIT 8

Case 1:04-cv-01371-JJF    Document 303-2    Filed 08/03/2006    Page 35 of 86

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5 | 258733<br><br>more sections | **letter to secretary with attachment** | Other | 337-541 | Violation | Confidential | 2006-07-18 | Juan Cockburn *of* USITC | Un Inv |
| | **Investigation Title** | | Certain Power Supply Controllers and Products containing same, Inv. 337-TA-541 | | | | | | |
| | Show Excerpt [+] : | | | | | | | | |
| 6 | 258904 | **Respondent System General Reply Brief On Remedy, Bond, And The Public Interest** | Brief on Review/Remedy | 337-541 | Violation | Confidential | 2006-07-19 | Smith Brittingham *of* Finnegan, Henderson, Farabow, Garrett & Dunner | Ge |
| | **Investigation Title** | | Certain Power Supply Controllers and Products containing same, Inv. 337-TA-541 | | | | | | |
| | Show Excerpt [+] : | | | | | | | | |
| 7 | 258907 | **OUII Remedy Reply Brief** | Brief on Review/Remedy | 337-541 | Violation | Confidential | 2006-07-19 | Juan Cockburn *of* USITC | Un Inv |
| | **Investigation Title** | | Certain Power Supply Controllers and Products containing same, Inv. 337-TA-541 | | | | | | |
| | Show Excerpt [+] : | | | | | | | | |
| 8 | 258783 | **Public Version Final Initial and Recommended Determinations** | ID/RD - Final on Violation | 337-541 | Violation | Public | 2006-07-18 | Paul J. Luckern *of* USITC | Adr Li |
| | **Investigation Title** | | Certain Power Supply Controllers and Products containing same, Inv. 337-TA-541 | | | | | | |
| | Show Excerpt [+] : | | | | | | | | |
| 9 | 258859 | **PI's Response to SG's Brief on Remedy, Bond and Public Interest** | Brief on Review/Remedy | 337-541 | Violation | Confidential | 2006-07-19 | Adjoa K Afful *of* Fish and Richardson | Int |
| | **Investigation Title** | | Certain Power Supply Controllers and Products containing same, Inv. 337-TA-541 | | | | | | |
| | Show Excerpt [+] : | | | | | | | | |
| 10 | 258303 | **Federal Register** | Notice | 337-541 | Violation | Public | 2006-07-12 | Marilyn R. Abbott *of* USITC | Ot S |
| | **Investigation Title** | | Certain Power Supply Controllers and Products containing same, Inv. 337-TA-541 | | | | | | |
| | Show Excerpt [+] : | | | | | | | | |

<< first   < Previous   **1-10**   Next >

Print page.                                                                 Top o



# UNITED STATES INTERNATIONAL TRADE COMMISSION

### WASHINGTON, DC 20436

## Confidential Disclaimer

**In accordance with Commission guidelines, unrestricted public
viewing of the contents of this document is prohibited.**

*Marilyn R. Abbott*
*Secretary to the Commission*

[close window]

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

In the Matter of

**CERTAIN POWER SUPPLY
CONTROLLERS AND PRODUCTS
CONTAINING SAME**

**Investigation No. 337-TA-541**

## NOTICE OF COMMISSION DETERMINATION NOT TO REVIEW A FINAL INITIAL DETERMINATION OF VIOLATION OF SECTION 337; SCHEDULE FOR FILING WRITTEN SUBMISSIONS ON REMEDY, THE PUBLIC INTEREST, AND BONDING

**AGENCY:**     U.S. International Trade Commission.

**ACTION:**     Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has determined not to review the Administrative Law Judge's ("ALJ") final Initial Determination ("ID") finding a violation of section 337. Notice is further given that the Commission is requesting briefing on remedy, public interest, and bonding with respect to the respondent found in violation.

**FOR FURTHER INFORMATION CONTACT:** Michelle Walters, Esq., Office of the General Counsel, U.S. International Trade Commission, 500 E Street, S.W., Washington, D.C. 20436, telephone (202) 708-5468. Copies of non-confidential documents filed in connection with this investigation are or will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, S.W., Washington, D.C. 20436, telephone (202) 205-2000. General information concerning the Commission may also be obtained by accessing its Internet server at *http://www.usitc.gov*. The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *http://www.usitc.gov/secretary/edis.htm*. Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205-1810.

**SUPPLEMENTARY INFORMATION:** On June 13, 2005, the Commission instituted this investigation, based on a complaint filed by Power Integrations, Inc. ("PI") of San Jose, California. The complaint, as amended and supplemented, alleges violations of section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337) in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain power supply

controllers and products containing the same by reason of infringement of claims 1-3, 6, 9, and 17-19 of United States Patent No. 6,212,079; claims 1-3, 5, 6, 24, 28, and 29 of United States Patent No. 6,351,398 ("the '398 patent"); claims 8 and 12 of United States Patent No. 6,366,481; and claims 1, 4, 9-11, 13, 17, 19, 20, 22, 23, 26, 27, 30, 31, and 34 of United States Patent No. 6,538,908 ("the '908 patent"). During the investigation, the Commission allowed PI to terminate the investigation with regard to several claims, leaving only claims 1, 3, 5, and 6 of the '398 patent and claims 26 and 27 of the '908 patent in this investigation. The complaint named a single respondent, System General Corporation ("SG").

On May 15, 2006, the ALJ issued a final ID, including his recommended determination on remedy and bonding. In his ID, the ALJ found that SG's accused products infringe claims 1, 3, 5, and 6 of the '398 patent and claims 26 and 27 of the '908 patent. Moreover, he concluded that these claims are not invalid for anticipation under 35 U.S.C. § 102 and that the '398 patent and the '908 patent are not unenforceable due to inequitable conduct. Finally, the ALJ concluded that PI proved that there is a domestic industry in the United States with respect to both patents. As a result, the ALJ recommended issuing a limited exclusion order directed to infringing power supply controllers produced by SG, as well as certain downstream products containing these controllers.

On May 26, 2006, respondent SG filed a petition for review, challenging various aspects of the ALJ's final ID. On June 5, 2006, PI and the Commission investigative attorney separately filed responses to SG's petition for review, asserting that the ALJ properly determined that there was a violation of section 337 with regard to the asserted claims.

Having examined the record of this investigation, including the ALJ's final ID, the petitions for review, and the responses thereto, the Commission has determined not to review the ALJ's ID. To the extent SG attempts to challenge PI's satisfaction of the importation requirement of 19 U.S.C. § 1337(a)(1)(B) in its petition for review, we decline to reconsider the issue. SG failed to file a petition for review challenging the ALJ's December 12, 2005 ID granting PI's motion for summary determination that it satisfied the importation requirement, and therefore, SG waived the issue. 19 C.F.R. § 210.43(b)(2).

In connection with the final disposition of this investigation, the Commission may (1) issue an order that could result in the exclusion of the subject articles from entry into the United States, and/or (2) issue one or more cease and desist orders that could result in the respondent being required to cease and desist from engaging in unfair acts in the importation and sale of such articles. Accordingly, the Commission is interested in receiving written submissions that address the form of remedy, if any, that should be ordered. If a party seeks exclusion of an article from entry into the United States for purposes other than entry for consumption, the party should so indicate and provide information establishing that activities involving other types of entry either are adversely affecting it or likely to do so. For background, see *Certain Devices for Connecting Computers via Telephone Lines*, Inv. No. 337-TA-360, USITC Pub. No. 2843 (December 1994) (Commission Opinion).

2

If the Commission contemplates some form of remedy, it must consider the effects of that remedy upon the public interest. The factors the Commission will consider include the effect that an exclusion order and/or cease and desist orders would have on (1) the public health and welfare, (2) competitive conditions in the U.S. economy, (3) U.S. production of articles that are like or directly competitive with those that are subject to investigation, and (4) U.S. consumers. The Commission is therefore interested in receiving written submissions that address the aforementioned public interest factors in the context of this investigation.

If the Commission orders some form of remedy, the U.S. Trade Representative, as delegated by the President, has 60 days to approve or disapprove the Commission's action. *See* Presidential Memorandum of July 21, 2005, 70 *Fed. Reg.* 43251 (July 26, 2005). During this period, the subject articles would be entitled to enter the United States under bond, in an amount determined by the Commission and prescribed by the Secretary of the Treasury. The Commission is therefore interested in receiving submissions concerning the amount of the bond that should be imposed if a remedy is ordered.

**WRITTEN SUBMISSIONS:** The parties to the investigation are requested to file written submissions on the issues identified in this notice. Parties to the investigation, interested government agencies, and any other interested parties are encouraged to file written submissions on the issues of remedy, the public interest, and bonding. Such submissions should address the recommended determination by the ALJ on remedy and bonding. Complainant and the Commission investigative attorney are also requested to submit proposed remedial orders for the Commission's consideration. Complainant is also requested to state the dates that the patents expire and the HTSUS numbers under which the accused products are imported. The written submissions and proposed remedial orders must be filed no later than close of business on July 10, 2006. Reply submissions must be filed no later than the close of business on July 17, 2006. No further submissions on these issues will be permitted unless otherwise ordered by the Commission.

Persons filing written submissions must file the original document and 12 true copies thereof on or before the deadlines stated above with the Office of the Secretary. Any person desiring to submit a document to the Commission in confidence must request confidential treatment unless the information has already been granted such treatment during the proceedings. All such requests should be directed to the Secretary of the Commission and must include a full statement of the reasons why the Commission should grant such treatment. *See* 19 C.F.R. § 210.6. Documents for which confidential treatment by the Commission is sought will be treated accordingly. All nonconfidential written submissions will be available for public inspection at the Office of the Secretary.

3

The authority for the Commission's determination is contained in section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), and in sections 210.42-46 and 210.50 of the Commission's Rules of Practice and Procedure (19 C.F.R. §§ 210.42-46 and 210.50).

By order of the Commission.

Marilyn R. Abbott
Secretary to the Commission

Issued: June 30, 2006

4

CERTAIN POWER SUPPLY CONTROLLERS AND
PRODUCTS CONTAINING SAME

337-TA-541

## CERTIFICATE OF SERVICE

I, Marilyn R. Abbott, hereby certify that the attached **NOTICE OF COMMISSION
DETERMINATION NOT TO REVIEW A FINAL INITIAL DETERMINATION OF
VIOLATION OF SECTION 337; SCHEDULE FOR FILING WRITTEN SUBMISSIONS
ON REMEDY, THE PUBLIC INTEREST, AND BONDING** has been served upon all parties
and Commission Investigative Attorney, Everrette V. Snotherly, Esq., via first class mail or certified
mail on July 5, 2006

Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

**ON BEHALF OF COMPLAINANT
POWER INTERGRATIONS:**

Frank E. Scherkenback, Esq.
Peter J. Kirk, Esq.
**FISH & RICHARDSON, P.C.**
225 Franklin Street
Boston, MA 02110
P-617-542-5070
F-617-542-8906

Howard G. Pollack, Esq.
Tamara Fraizer, Esq.
**FISH & RICHARDSON, P.C.**
500 Arguello Street
Suite 500
Redwood City, CA 94063
P-650-839-5060
F-650-839-5071

Evelyn G. Heilbrunn, Esq.
Malan F. Rampton, Esq.
**FISH & RICHARDSON, P.C.**
1425 K Street, N.W.
Suite 1100
Washington, DC 20005
P-202-783-5070
F-202-783-2321

**For Complainant Power Integration, Inc.:**

Andrew F. Bodendorf, Esq.
**LAW OFFICE OF ANDREW
BODENFORF LLC**
1727 King Street, Suite 105
Alexandria, VA 22314-2700
P-703-739-2247
F-703-739-2249

**ON BEHALF OF RESPONDENTS
SYSTEM GENERAL CORPORATION:**
Smith R. Brittingham IV, Esq.
Thomas L. Jarvis, Esq.
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.**
901 New York Avenue, N.W.
Washington, DC 20001
P - 202-408-4000
F-202-408-4400

Roger D. Taylor, Esq.
Douglas S. Weinstein, Esq.
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.**
3200 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3201
P- 404-653-6400
F-404-653-6444

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,                    )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )        C.A. No. 04-1371-JJF
                                             )
FAIRCHILD SEMICONDUCTOR                      )
INTERNATIONAL, INC., and FAIRCHILD           )
SEMICONDUCTOR CORPORATION,                   )
                                             )
                    Defendants.              )

**DEFENDANTS FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR
CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Fairchild

Semiconductor International, Inc. and Fairchild Semiconductor Corp. hereby request that

Plaintiff Power Integrations, Inc. produce for inspection and copying the documents and things

described in the following Requests within thirty (30) days after service hereof at the offices of

Orrick Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, CA 94025.

## DEFINITIONS

The following definitions shall apply when used in these requests:

A.      "Fairchild" as used herein refers to Fairchild Semiconductor International, Inc.

and Fairchild Semiconductor Corp.

B.      "Power Integrations" as used herein refers to Power Integrations, Inc. and its

subsidiaries, divisions, affiliates, successors, predecessors, and any employees, officers,

directors, attorneys, agents, associates, or representatives thereof.

C.      "Power Integrations Patents" as used herein refers to U.S. Patent No. 4,811,075

(the "'075 Patent"), U.S. Patent No. 6,107,851, (the "'851 Patent"), U.S. Patent No. 6,229,366

(the "'366 Patent"), and U.S. Patent No. 6,249,876 (the "'876 Patent"), and all applications,

continuations, continuations-in-part, divisionals, reexaminations, or reissues thereof and all

foreign applications and patents which claim priority to any of the above.

- 1 -

D.    "Related Patent(s)/Application(s)" as used herein means (1) any U.S. or foreign patent or patent application related to any of the Power Integrations Patents or their applications by way of subject matter or claimed priority date, (2) all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications thereof, and/or (3) any patent or patent application filed by one or more of the same applicant(s) (or his or her assignees) that refers to any of (1) or (2) herein.

E.    "Patent Application" as used herein means the application, including material purportedly incorporated by reference therein, and any amendments, additions or deletions, from which one of the Power Integrations Patents actually issued.

F.    "Priority Application" as used herein shall include the Patent Application and any prior application, including material purportedly incorporated by reference therein, and any amendments, additions or deletions to which any of the Power Integrations Patents claims priority under 35 U.S.C. §120 or otherwise.

G.    "Accused Fairchild Products" as used herein mean each and every Fairchild product, method, structure or action alleged in Power Integrations Complaint, or otherwise alleged by Power Integrations in this action, of infringing or causing infringement of any of the claims of any of the Power Integrations Patents whether produced by Fairchild, or its subsidiary, parent, or any other affiliated entity.

H.    "Power Integrations Patented Product" as used herein means any invention, product, or article comprising the alleged technology claimed, disclosed, or described in the asserted Power Integrations Patents, made, used, distributed or sold by or with the authorization of Power Integrations.

I.    "PWM" as used herein means pulse width modulation.

J.    "Document(s)" as used herein is used in its broadest sense and includes, without limitation, the original and all non-identical copies (including drafts and those with any notations) of all "documents," "writings," "recordings," and "photographs" of the types designated in Rule 34(a) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal

Rules of Evidence, and includes materials in digital forms. The term "document(s)" includes but is not limited to any book, pamphlet, periodical, letter, memorandum, diary, file, note, calendar, newspaper, magazine, statement, bill, invoice, order, policy, telegram, correspondence, summary, receipt, opinion, investigation statement or report, schedule, manual, financing statement, audit report, tax return, report, record, study, handwritten note, drawing, working paper, chart, index, tape (audio or visual), microfilm, data sheet, e-mail and all other electronic and digital forms of communication, however produced.

     K.     "Thing" as used herein refers to any physical object other than a "document."

     L.     "Communication" as used herein refers to any contact, oral or documentary, formal or informal, at any place or under any circumstances whatsoever whereby information of any nature is transmitted or transferred, including, without limitation, a single person seeing or hearing any information by any means.

     M.     "Concerning" as used herein refers to referring to, relating to, pertaining to, relevant to, material to, embodying, evidencing, affecting, comprising, discussing, dealing with, supporting, contradicting or otherwise considering in any manner whatsoever the subject matter of the inquiry.

     N.     "Any" and "all" as used herein refer to and include the other; the terms "and" and "or" shall each mean and include the other, and the singular form of any word and the plural form of the word shall each mean and include the other.

## INSTRUCTIONS

     1.     These requests call for information (including any information contained in or on any document or thing) that is available to Power Integrations, or in its possession, custody, or control, including all information known or available to, or in the possession, custody, or control of, Power Integrations' subsidiaries, attorneys, agents, representatives, investigators, or any other person acting on behalf of Power Integrations or under the direction or control of Power Integrations, or its attorneys or agents.

     2.     If Power Integrations withholds documents responsive, in whole or in part, to any

- 3 -

request on any basis, please comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure and identify: (a) the privilege or immunity claimed; (b) the nature of the document or thing (letter, memorandum, notes, etc.); (c) its date; (d) its author(s) and recipient(s), if any; (e) each and every person who has seen such document or a portion of such document; and (f) a general description of the document and its subject matter.

3.     If Power Integrations objects to any request or part thereof, produce all documents to which the objection does not apply.

4.     If in answering these requests Power Integrations claims any ambiguity in either a request or a definition or an instruction applicable thereto, identify in the response the allegedly ambiguous language and state the interpretation Power Integrations used in responding.

5.     In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort not appearing on any other copy.

6.     If Power Integrations or its attorneys know of the existence, past or present, of any document described in any of these requests, but such document is not presently in its possession, custody, or control or in the possession, custody, or control of its agents, representatives, or attorneys, Power Integrations shall so state in response to the request, identify such document in response to the request, and identify the individual in whose possession, custody, or control the document was last known to reside. If any responsive documents have been destroyed or otherwise removed from Power Integrations' custody or control, please state when, how, and why such document was destroyed or removed from its custody.

7.     The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular whenever appropriate in order to bringing within the scope of these requests any document which might otherwise be considered beyond its scope.

8.     The documents produced in response to these requests shall be: (i) organized and designated to correspond to the categories in these requests or, if not, (ii) produced as they are maintained in the normal course of business, and in either case:

   a.  all documents that cannot be legibly copied shall be produced in their original

- 4 -

form; otherwise, you may produce photocopies (but Fairchild reserves the right to inspect the originals); and

b.  each page shall be given a discrete production number.

9.  If any of the documents cannot be produced in full, Power Integrations should produce them to the extent possible, specifying the reasons for the inability to produce the remainder and stating whatever information, knowledge or belief you have concerning the unproduced portion.

10.  Electronic records and computerized information should be produced in an intelligible format or together with a description of the system from which it is derived, sufficient to permit rendering the material in an intelligible format.

11.  The obligation to provide the documents and things sought by these discovery requests is continuing within the requirements of Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents and things concerning Fairchild or any Fairchild subsidiary or related entity.

### REQUEST FOR PRODUCTION NO. 2:

All documents and things concerning any Accused Fairchild Product.

### REQUEST FOR PRODUCTION NO. 3:

Documents sufficient to identify all current and former officers and directors of Power Integrations from the date that the company was incorporated until the present, including, but not limited to, internal telephone directories and organizational charts.

### REQUEST FOR PRODUCTION NO. 4:

Documents sufficient to describe the current corporate organization of Power Integrations, including, but not limited to, the identification of all ownership interests, the names of the members of the board of directions, the identification of managerial, engineering and marketing staff, reporting relationships of any Power Integrations employees and the current

organizational structure.

## REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to identify all of Power Integrations' subsidiaries, corporate parents, divisions, and related entities, whether foreign or domestic, and to describe the relationship between such entities.

## REQUEST FOR PRODUCTION NO. 6:

All documents and things concerning Power Integrations' ability to control or gather documents from its parents, subsidiaries, divisions, and other operations, whether foreign or domestic.

## REQUEST FOR PRODUCTION NO. 7:

All documents and things concerning the decision to bring this action against Fairchild.

## REQUEST FOR PRODUCTION NO. 8:

All documents and things concerning this lawsuit, including, but not limited to, correspondence with any third party concerning this litigation.

## REQUEST FOR PRODUCTION NO. 9:

All business plans, financial forecasts, or board meeting minutes of Power Integrations which discuss or mention Fairchild, the Power Integrations Patents, or this litigation.

## REQUEST FOR PRODUCTION NO. 10:

All documents and things concerning any suspicion, belief, conclusion, determination, or knowledge that any person, product, device, technology, or system other than the Accused Fairchild Products infringe any claim of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 11:

All documents and things concerning any lawsuit, arbitration, or other legal proceeding alleging infringement by any entity other than Fairchild of one or more claims of the Power Integrations Patents, including, but not limited to, pleadings, deposition transcripts, and expert reports.

### REQUEST FOR PRODUCTION NO. 12:

All documents and things concerning the litigation between Power Integrations and Motorola.

### REQUEST FOR PRODUCTION NO. 13:

All documents and things concerning the decision whether to bring any lawsuit, arbitration, or other legal proceeding alleging infringement by any person other than Fairchild of one or more claims of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 14:

All documents and things concerning any communication between Power Integrations and any third person regarding any lawsuit, arbitration, or other legal proceeding alleging infringement of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 15:

All documents and things concerning any settlement proposal or agreement related to any lawsuit, arbitration, or other legal proceeding alleging infringement or seeking a declaratory judgment of non-infringement, invalidity or unenforceability of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 16:

All documents and things concerning any investigation made by or on behalf of Power Integrations prior to the filing of the Complaint regarding whether Fairchild infringed any claim of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 17:

All documents and things concerning any testing or reverse engineering of any Fairchild product.

### REQUEST FOR PRODUCTION NO. 18:

All documents and things concerning any reverse engineering of any product to determine whether or not it infringed the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 19:

All documents and things concerning any comparison of the design, structure, function,

manufacture, or operation of any product, device, technology, or system against any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things concerning the manner in which Power Integrations determined that Fairchild made, used, offered for sale, sold, or imported into the United States any product that Power Integrations contends infringes any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things concerning the manner in which Power Integrations determined that Fairchild induced other to infringe any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things concerning the manner in which Power Integrations determined that Fairchild contributed to others infringement of any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things concerning any test, experiment, analysis, or review conducted by or on behalf of Power Integrations to determine, or which otherwise shows, the nature of any performance characteristic or mode of operation of any product, device, technology, or system of Fairchild or any third party that Power Integrations contends uses or embodies any alleged invention described by any claim of the Power Integrations Patents, including, but not limited to, tests, experiments, analyses and reviews used to determine, or which otherwise show, whether or not any such product, device, technology, or system embodies any of the structural or functional limitations of any such claim.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things concerning any Power Integrations policy, strategy, plan, or practice, whether formal or informal regarding patents, including, but not limited to, filing patent applications, acquiring patents or patent applications from other persons, exploiting patents or patented technology, charging other persons with patent infringement, enforcing patents, licensing patents or patented technology, or cross-licensing patents or patented technology.

## REQUEST FOR PRODUCTION NO. 25:

All documents and things concerning any Power Integrations policy, instruction or set of instructions, directive, policy statement, study, or other communication relating to the destruction or retention of documents or records including, but not limited to, any policy regarding the destruction or retention of electronic mail.

## REQUEST FOR PRODUCTION NO. 26:

All documents and things concerning any Power Integrations policy, instruction or set of instructions, directive, policy statement, study, or other communication relating to invention disclosure, recording, or evaluation.

## REQUEST FOR PRODUCTION NO. 27:

All documents and things concerning the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 28:

All communications with any third parties concerning the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 29:

All documents and things concerning any PWM Product produced, manufactured, displayed, demonstrated, used, tested, offered for sale, licensed or sold by Power Integrations or any of its licensees that Power Integrations claims are covered by the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 30:

All documents and things concerning any test, experiment, examination, analysis, or review conducted with respect to any PWM Product offered for sale, licensed or sold by Power Integrations or any of its licensees that Power Integrations claims are covered by the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 31:

A set of drawings, diagrams, schematics, specifications, and operating instructions sufficient to fully describe each prototype, product, device, technology, and system that uses or embodies, in whole or in part, any alleged invention described by any Power Integrations Patented Product.

**REQUEST FOR PRODUCTION NO. 32:**

Five samples of each Power Integrations product that Power Integrations contends practices any claim of the Power Integrations Patents, that has ever been marked with any of the Power Integrations Patent numbers, or for which Power Integrations claims it lost sales or suffered price erosion due to Fairchild's alleged infringement of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 33:**

All financial documents from October 20, 1998 to the present, including, but not limited to, financial statements (including p&l), budgets, projections, five-year or other long range plans, strategic plans, audit reports, and all SEC filings that reflect financial data about Power Integrations products or systems that practice all of the limitations of any of the asserted claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 34:**

All financial documents from October 20, 1998 to the present, including, but not limited to, financial statements (including p&l), budgets, projections, five-year or other long range plans, strategic plans, audit reports, and all SEC filings that reflect financial data about Power Integrations products or systems that Power Integrations contends lost sales due to Fairchild's alleged infringement of the asserted claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 35:**

All documents and things authored in whole or in part by the inventors of the Power Integrations Patents concerning the Power Integrations Patents, products or methods covered by the Power Integrations patents, or the technology described or claimed by the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 36:**

All documents and things cross-referencing Power Integrations parts to any of the Accused Fairchild Products.

**REQUEST FOR PRODUCTION NO. 37:**

All documents and things cross-referencing Power Integrations PWM devices with

devices manufactured or sold by Fairchild or third parties.

### REQUEST FOR PRODUCTION NO. 38:

All documents and things concerning the conception, discovery, design, development, testing, reduction to practice, or diligence in the reduction to practice of any invention claimed in any Power Integrations Patent.

### REQUEST FOR PRODUCTION NO. 39:

All documents and things concerning the invention of the Power Integrations Patents including, but not limited to, inventor notebooks, engineering notebooks, invention disclosure statements, and patent committee meeting notes and reports.

### REQUEST FOR PRODUCTION NO. 40:

All documents and things concerning the involvement and contributions of persons other that the named inventors to the conception, reduction to practice, or invention of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 41:

All documents and things concerning any testing, developmental, experimental, or research activity conducted in connection with any Power Integrations Patented Product, including, but not limited to, the design, construction, and operation of the first device or prototype embodying or intended to embody inventions in any invention in the Power Integrations Patents and any subsequent such device or prototype.

### REQUEST FOR PRODUCTION NO. 42:

All documents and things concerning the first disclosure, display, or demonstration of any Power Integrations Patented Product or of any invention claimed in any Power Integrations Patent to any person other than an alleged inventor thereof.

### REQUEST FOR PRODUCTION NO. 43:

All documents and things concerning the first public use, first sale or offer for sale, first lease or offer to lease, or other first commercialization of any Power Integrations Patented Product or of any invention claimed in any Power Integrations Patent.

## REQUEST FOR PRODUCTION NO. 44

For each claim of each of the Power Integrations Patents, Patent Applications, and any Related Patents/Applications, all documents and things concerning, in whole or in part, a chronological description of all or part of the development of the claimed subject matter from conception to actual reduction to practice.

## REQUEST FOR PRODUCTION NO. 45

All documents and things upon which Power Integrations intends to rely in support of its contentions, if any, that any claim found in the Power Integrations Patents is entitled to a priority date earlier than the filing date of that patent.

## REQUEST FOR PRODUCTION NO. 46:

All documents and things concerning the prosecution of the Power Integrations Patents before any patent office, domestic or foreign.

## REQUEST FOR PRODUCTION NO. 47:

All documents and things concerning any communication to or from the U.S. Patent and Trademark Office concerning the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 48:

All documents and things concerning any application or request to the U.S. Patent and Trademark Office related to the Power Integrations Patents, including, but not limited to, all drafts of any such application or request, the complete prosecution file for any such application or request, all applications and requests from which any of the above may claim priority, all documents reviewed or relied upon in connection with the preparation or prosecution of any such application or request, and all communications concerning any such application or request.

## REQUEST FOR PRODUCTION NO. 49:

All documents and things concerning any draft communication to the U.S. Patent and Trademark Office, including, but not limited to, draft applications, draft amendments, and draft responses to office actions, related to the prosecution of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 50:

All documents and things cited to the PTO during prosecution of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 51:

All documents and things concerning any decision to provide any information or material to U.S. Patent and Trademark Office in connection with the prosecution of any application related to the Power Integrations Patents, whether such decision occurred prior to, during, or after the close of prosecution on the merits.

## REQUEST FOR PRODUCTION NO. 52

All documents and things that concern the prosecution of the Power Integrations Patents, Patent Applications, Priority Applications or any Related Patents/Applications, and that identify any person who participated in any manner in the prosecution, including, but not limited to, any person who participated in any manner in any searches conducted in connection with the subject matter of the Power Integrations Patents, Patent Applications, or any Related Patent/Application, or any person who participated in the preparation of any document(s) in such prosecution.

## REQUEST FOR PRODUCTION NO. 53

All documents and things related to, considered, or reviewed in the course of the preparation of any document in the prosecution of the Power Integrations Patents, Patent Applications, Priority Applications or any Related Patent/Application.

## REQUEST FOR PRODUCTION NO. 54:

All documents and things concerning the need or desirability of filing any application for reissue, request for reexamination, or certificate of correction of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 55:

All abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 041,994, filed April 24, 1987.

## REQUEST FOR PRODUCTION NO. 56:

All documents and things concerning any communication to or from the U.S. Patent and

Trademark Office or any foreign patent office, relating to any abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 041,994, filed April 24, 1987.

## REQUEST FOR PRODUCTION NO. 57:

All abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 09/573,081, filed May 16, 2000.

## REQUEST FOR PRODUCTION NO. 58:

All documents and things concerning any communication to or from the U.S. Patent and Trademark Office or any foreign patent office, relating to any abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 09/573,081, filed May 16, 2000.

## REQUEST FOR PRODUCTION NO. 59:

All abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 09/080,774, filed May 18, 1998.

## REQUEST FOR PRODUCTION NO. 60:

All documents and things concerning any communication to or from the U.S. Patent and Trademark Office or any foreign patent office, relating to any abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 09/080,774, filed May 18, 1998.

## REQUEST FOR PRODUCTION NO. 61:

All abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 09/192,959, filed November 16, 1998.

## REQUEST FOR PRODUCTION NO. 62:

All documents and things concerning any communication to or from the U.S. Patent and Trademark Office or any foreign patent office, relating to any abandoned or pending domestic and foreign patent applications claiming priority to United States Patent Application Serial No. 09/192,959, filed November 16, 1998.

**REQUEST FOR PRODUCTION NO. 63:**

All documents and things concerning the need or desirability of filing any foreign patent application (including any application or request for reexamination or reissue of any foreign patent) in connection with any alleged invention that corresponds in whole or in part to any alleged invention described by any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and things concerning any foreign patent application (including any challenge, application, request for reexamination or reissue of any foreign patent) filed in connection with any alleged invention that corresponds in whole or in part to any of the Power Integrations Patents, including, but not limited to, all drafts of any such application or request, the complete prosecution file for any such application or request, all applications and requests from which any of the above may claim priority, all documents reviewed or relied upon in connection with the preparation or prosecution of any such application or request, and all communications concerning any such application or request.

**REQUEST FOR PRODUCTION NO. 65:**

All documents and things concerning any communication to or from any foreign patent office or agency concerning any foreign patent for any alleged invention that corresponds in whole or in part to any alleged invention described by any claim of the Power Integrations Patents, or concerning any application for such a patent application (including any application or request for reexamination or reissue of any foreign patent), whether or not a patent ultimately issued on the application.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and things concerning the scope, definition, interpretation or construction of any term or element used in the specification or any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and things concerning any scope, definition, interpretation or construction of any term or element of any claim of the Power Integrations Patents that was provided to or

- 15 -

received from any third party.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and things that Power Integrations contends to be extrinsic evidence of the meaning of any term of any claim of the Power Integrations patents.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things concerning Power Integrations' use in the ordinary course of its business of any term or element of any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 70**

For each element or limitation recited in the claims of the Power Integrations Patents, all documents and things that identify, in whole or in part, any or all of the corresponding structure, material or acts described or shown in the patent's specification.

**REQUEST FOR PRODUCTION NO. 71**

All documents and things that identify, in whole or in part, any defect, misstatement, error, or unintended omission of any kind in any of the Power Integrations Patents, File Histories, Patent Applications, Priority Applications or any Related Patents/Applications.

**REQUEST FOR PRODUCTION NO. 72:**

All documents and things concerning any communication between Power Integrations and any third party relating to any Power Integrations Patents, Fairchild, or this litigation.

**REQUEST FOR PRODUCTION NO. 73:**

All documents and things that Power Integrations has submitted to its auditors from 2002 to the present.

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things concerning Fairchild's alleged infringement of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things concerning any activity or statement by Fairchild that Power Integrations alleges induced others to infringe the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and things concerning whether or not any Fairchild product is for use in practicing a process covered by the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and things concerning whether or not any Fairchild product is a material part of the invention of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 78:**

All documents and things concerning whether or not any Fairchild product is especially made or especially adapted for use in an infringement of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and things concerning whether or not any Fairchild product is a staple article or commodity of commerce suitable for substantial non-infringing use.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and things concerning the scope, validity or invalidity, infringement or noninfringement, or enforceability or unenforceability of the Power Integrations Patents, including, but not limited to, any study, search, investigation, or opinion relating thereto.

**REQUEST FOR PRODUCTION NO. 81:**

All documents and things concerning any search for prior art relevant to the Power Integrations Patents, the applications leading to the Power Integrations Patents, or any Related Patent(s)/Application(s).

**REQUEST FOR PRODUCTION NO. 82:**

All documents and things identified by any person as prior art relevant to any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 83:**

All textbooks, articles, journals, or other publications of any kind concerning any alleged invention described by the claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and things concerning any prior art or possible prior art with respect to the Power Integrations Patents, including, but not limited to, the results of any search for prior art conducted with respect to the subject matter of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and things concerning any secondary considerations that Power Integrations contends is evidence that any invention described by any of the claims of the Power Integrations Patents is not obvious.

**REQUEST FOR PRODUCTION NO. 86:**

All documents and things concerning any failure by others to develop the invention claimed in each of the asserted claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 87:**

All documents and things describing any problems regarding Power Integrations PWM Products.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and things concerning any failure by those skilled in the art to appreciate any problem alleged to have been solved by any alleged invention described by the claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 89:**

All documents and things concerning any copying of or praise for the invention claimed in each of the asserted claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 90:**

All documents and things authored outside of Power Integrations concerning, critiquing, objecting to, criticizing, complimenting, praising, or in any other way appraising, any aspect of Power Integrations PWM Products.

**REQUEST FOR PRODUCTION NO. 91:**

All documents and things concerning any unexpected results achieved by the invention

claimed in each of the asserted claims of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 92:

All documents and things concerning industry acceptance, skepticism or disbelief concerning the invention claimed in each of the asserted claims of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 93:

All documents and things concerning the desirability of patenting or attempting to patent any alleged invention described by any claim of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 94:

All documents and things concerning any product, device, technology, or system that Power Integrations contends uses or embodies, in whole or in part, any alleged invention described by any claims of the Power Integrations Patents, including, but not limited to, technical articles, publications, presentations, advertising materials, promotional literature, publicity releases, sales brochures, pamphlets, and instruction manuals.

## REQUEST FOR PRODUCTION NO. 95:

All documents and things concerning long-felt need in the industry that Power Integrations contends has been met by any product, device, technology, or system that uses or embodies, in whole or in part, any alleged invention described by any claims of the Power Integrations Patents, including, but not limited to, all documents and things that tend in any way to support or negate an assertion of such long-felt need in the industry.

## REQUEST FOR PRODUCTION NO. 96:

All documents and things concerning any substantial attempt by any person other than Power Integrations and the patentees of the Power Integrations Patents to fill any alleged consumer demand or long-felt need in the industry for any alleged invention described by any of the claims of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 97:

All documents and things concerning any action by any person that was taken to avoid

infringing or to design around any of the asserted claims of Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 98:**

All documents and things concerning non-infringing alternatives to or acceptable substitutes for any alleged invention described by any claims of the Power Integrations Patents, or the lack thereof.

**REQUEST FOR PRODUCTION NO. 99:**

All documents and things concerning any commercial success that Power Integrations contends has been achieved by any product, device, technology, or system that uses or embodies, in whole or in part, any alleged invention described by any claim of the Power Integrations Patents, including, but not limited to, all documents and things that tend in any way to support or negate a contention of any such commercial success.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and things concerning any nexus between the alleged commercial success of any Power Integrations product that Power Integrations contends practices or embodies any asserted claim of the Power Integrations Patents and the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 101:**

All documents and things concerning Power Integrations' efforts to develop, build, implement, acquire, or use a working or commercially successful PWM Product.

**REQUEST FOR PRODUCTION NO. 102:**

All documents and things concerning Power Integrations communications of any kind with any standards bodies and industry groups in the semiconductor industry.

**REQUEST FOR PRODUCTION NO. 103:**

All publications that predate the application date of the Power Integrations Patents and teach away from any invention described by any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 104:**

All documents and things concerning the ownership of, or any license to, or any assignment or other transfer of interest in, the Power Integrations Patents including, but not

limited to, all assignments or licenses within Power Integrations or affiliate subsidiaries, parents, or other entities.

### REQUEST FOR PRODUCTION NO. 105:

All documents and things concerning any effort or attempt, whether successful or not, to assign, sell, transfer, license, or offer to assign, sell, or transfer or license any interest in any of the Power Integrations Patents including, but not limited to, any document relating to negotiation of such attempt.

### REQUEST FOR PRODUCTION NO. 106:

All documents and things concerning any communication or decision regarding whether or not to assign, sell, transfer, license, or offer to assign, sell, transfer, or license to any person any interest in any of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 107:

All documents and things concerning any license or cross-license to which Power Integrations is a party.

### REQUEST FOR PRODUCTION NO. 108:

All documents and things concerning any license or cross-license requested by or offered to Power Integrations.

### REQUEST FOR PRODUCTION NO. 109:

All documents and things concerning any communication between Power Integrations and Fairchild regarding any claimed subject matter of the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 110:

All documents and things concerning any notice, warning, or charge of infringement that Power Integrations made or considered making to Fairchild in connection with the Power Integrations Patents.

### REQUEST FOR PRODUCTION NO. 111:

All documents and things concerning any notice, warning, or charge of infringement that Power Integrations made or considered making to any person in connection with any of the

Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 112:

All documents and things concerning any actual notice to Fairchild of Power Integrations' claims of infringement of any of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 113:

All documents and things concerning any constructive notice to Fairchild of Power Integrations' claims of infringement of any of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 114:

All documents and things concerning whether Power Integrations has notified any person of any potential infringement of any Power Integrations intellectual property right.

## REQUEST FOR PRODUCTION NO. 115:

All documents and things concerning any communications between Power Integrations and Fairchild from October 20, 1998 through October 20, 2004, inclusive.

## REQUEST FOR PRODUCTION NO. 116:

All documents and things concerning patent marking or other notice to the public of the existence of the Power Integrations Patents by Power Integrations or any licensee of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 117:

All documents and things constituting, evidencing or relating to the identification of any patent markings applied to any Power Integrations product.

## REQUEST FOR PRODUCTION NO. 118:

All documents and things concerning Power Integrations' alleged damages from Fairchild's alleged infringement of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 119:

All licenses to which Power Integrations is a party.

## REQUEST FOR PRODUCTION NO. 120:

All documents and things concerning licenses or offers to license the Power Integrations

Patents.

## REQUEST FOR PRODUCTION NO. 121:

All documents and things concerning royalties or other consideration paid under the terms of any license of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 122:

All documents and things concerning an established or reasonable royalty rate for each of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 123:

All documents and things that evidence, track or relate to revenues, royalties or consideration (in any form) received by Power Integrations from either the Power Integrations Patents or the Power Integrations Patented Products, including, but not limited to, customer royalty reports, discounts, efforts to enforce (or agreements to forebear) collection of revenues and documents describing any customer's willingness or ability to pay such revenues.

## REQUEST FOR PRODUCTION NO. 124:

All documents and things concerning the royalties actually received by Power Integrations for the licensing of the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 125:

All documents and things concerning any rates paid by the Power Integrations for the use of other patents comparable to the Power Integrations Patents.

## REQUEST FOR PRODUCTION NO. 126:

All documents and things concerning the nature and scope of any licenses granted by or to Power Integrations as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

## REQUEST FOR PRODUCTION NO. 127:

All documents and things concerning Power Integrations' policy or marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under conditions designed to preserve that monopoly or by freely licensing others.

**REQUEST FOR PRODUCTION NO. 128:**

All documents and things concerning the effect of selling Power Integrations products covered by the Power Integrations Patents in promoting sales of other products of Power Integrations.

**REQUEST FOR PRODUCTION NO. 129:**

All documents and things concerning the existing value of the products covered by the Power Integrations Patents as a generator of sales of its non-patented items.

**REQUEST FOR PRODUCTION NO. 130:**

All documents and things concerning the extent of any derivative or convoyed sales as a result of sales of any Power Integrations products covered by the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 131:**

All documents and things concerning the established profitability of the products made under the Power Integrations Patents, their commercial success, and their current popularity.

**REQUEST FOR PRODUCTION NO. 132:**

All documents and things concerning the utility and advantages of the Power Integrations products covered by the Power Integrations Patents over the prior art, if any.

**REQUEST FOR PRODUCTION NO. 133:**

All documents and things concerning the extent to which Power Integrations has made use of the invention covered by the asserted claims of the Power Integrations Patents; and any evidence probative of the value of that use.

**REQUEST FOR PRODUCTION NO. 134:**

All documents and things concerning the portion of the profit or of the selling price that may be customary in Power Integrations' business or in comparable businesses to allow for the use of the invention covered by the asserted claims of the Power Integrations Patents or analogous inventions.

**REQUEST FOR PRODUCTION NO. 135:**

All documents and things concerning the portion of the realizable profit that should be

credited to the invention covered by the asserted claims of the Power Integrations Patents as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Fairchild.

**REQUEST FOR PRODUCTION NO. 136:**

All documents and things concerning any evidence or factor of what would be considered relevant by Power Integrations to the hypothetical negotiation of a license to the asserted claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 137:**

All documents and things concerning any effect on the sale of Power Integrations products by the offer or sale of any Fairchild products anywhere in the world.

**REQUEST FOR PRODUCTION NO. 138:**

Documents sufficient to disclose the gross profit and net profit currently earned by Power Integrations and its licensees of any product, device, technology, or system that Power Integrations contends uses or embodies, in whole or in part, any alleged invention described by any claims of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 139:**

All documents and things concerning the ability of Power Integrations or licensees of the Power Integrations Patents to make, sell, or deliver products that embody inventions claimed in the Power Integrations Patents to additional customers had Fairchild's allegedly infringing products, devices, technologies, or systems not been on the market.

**REQUEST FOR PRODUCTION NO. 140:**

All documents and things concerning the effect of the presence of Fairchild, or any of their respective products, devices, technologies, or systems in the marketplace, on Power Integrations' costs, selling price, pricing structure, profits, or revenues for Power Integrations Patented Product.

**REQUEST FOR PRODUCTION NO. 141:**

All documents and things concerning any analysis (whether internal or from a third-

party) of the value of any Power Integrations intellectual property or patents, including, but not limited to, the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 142:**

Documents sufficient to show the total cost, revenue, margin, allocated direct and indirect costs, and profits on a quarterly and annual basis from October 20, 1998-October 20, 2004 of any Power Integrations product for which Power Integrations contends to have lost profit or suffered price erosion due to Fairchild's alleged infringement.

**REQUEST FOR PRODUCTION NO. 143:**

All documents and things concerning the total amount of lost profits or price erosions, on a quarterly and annual basis, allegedly caused by each Fairchild product Power Integrations accused of infringing the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 144:**

All documents and things concerning the U.S. PWM market share of any Power Integrations product for which Power Integrations contends to have lost profit or suffered price erosion due to Fairchild's alleged infringement.

**REQUEST FOR PRODUCTION NO. 145:**

All documents and things concerning the share of the U.S. PWM market held by Power Integrations, Fairchild, or any competitor of Power Integrations or Fairchild.

**REQUEST FOR PRODUCTION NO. 146:**

All documents and things concerning the share of the PWM market of any country other than the United States held by Power Integrations, Fairchild, or any competitor of Power Integrations or Fairchild.

**REQUEST FOR PRODUCTION NO. 147:**

All documents and things concerning the share of the worldwide PWM market held by Power Integrations, Fairchild, or any competitor of Power Integrations or Fairchild.

**REQUEST FOR PRODUCTION NO. 148:**

Documents sufficient to show U.S. revenues from October 20, 1998-October 20, 2004 of

Power Integrations products that Power Integrations contends compete with or are competed with by the Accused Fairchild products.

**REQUEST FOR PRODUCTION NO. 149:**

Documents sufficient to show non-U.S. revenues from October 20, 1998-October 20, 2004 of Power Integrations products that Power Integrations contends compete with or are competed with by the Accused Fairchild products.

**REQUEST FOR PRODUCTION NO. 150:**

Documents sufficient to on an annual basis from October 20, 1998-October 20, 2004, sales by country for each Power Integrations PWM product including, but not limited to, the TinySwitch I, TinySwitch II, TOPSwitch, TOPSwitch II, TOPSwitch FX, TOPSwitch GX, LinkSwitch, and DPA-Switch family of products.

**REQUEST FOR PRODUCTION NO. 151:**

All documents and things used or referred to in any way in responding to Fairchild's interrogatories in this case.

**REQUEST FOR PRODUCTION NO. 152:**

All documents and things concerning Power Integrations' Patents, intellectual property, this litigation or any Accused Fairchild Products, including, but not limited to, internal communications and communications to or from any third party or governmental entity.

**REQUEST FOR PRODUCTION NO. 153:**

All documents and things that constitute or relate to any Power Integrations communications with, or that relate to any standards organizations (whether formal, informal, final or non-final), or any member thereof, regarding the Power Integrations Patents, Power Integrations Patented Products, Power Integrations' litigation with Fairchild, or Accused Fairchild Products.

ASHBY & GEDDES

Steven J. Balick (I.D. 2114)
John G. Day (I.D. 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
Duo Chen
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: January 24, 2005
152660.1

- 28 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2005, the attached **DEFENDANTS**

**FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD**

**SEMICONDUCTOR CORPORATION'S FIRST SET OF REQUESTS FOR**

**PRODUCTION** was served upon the below-named counsel of record at the address and in the

manner indicated:

William J. Marsden, Jr., Esquire            HAND DELIVERY
Fish & Richardson P.C.
919 N. Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE 19899

Frank E. Scherkenbach, Esquire              VIA FEDERAL EXPRESS
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Michael Kane, Esquire                       VIA FEDERAL EXPRESS
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402

Howard G. Pollack, Esquire                  VIA FEDERAL EXPRESS
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063


John G. Day

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a Delaware
corporation,

          Plaintiff,

  v.

FAIRCHILD SEMICONDUCTOR               C.A. No. 04-1371
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION,
a Delaware corporation,

          Defendants.

### DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Fairchild

Semiconductor International, Inc. and Fairchild Semiconductor Corp. hereby request that

Plaintiff Power Integrations, Inc. produce for inspection and copying the documents and things

described in the following Requests within thirty (30) days after service hereof at the offices of

Orrick Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, CA 94025.

### DEFINITIONS

The following definitions shall apply when used in these requests:

A.    "Fairchild" as used herein refers to Fairchild Semiconductor International, Inc.

and Fairchild Semiconductor Corp.

B.    "Power Integrations" as used herein refers to Power Integrations, Inc. and its

subsidiaries, divisions, affiliates, successors, predecessors, and any employees, officers,

directors, attorneys, agents, associates, or representatives thereof.

C.    "Power Integrations Patents" as used herein refers to U.S. Patent No. 4,811,075

(the "'075 Patent"), U.S. Patent No. 6,107,851, (the "'851 Patent"), U.S. Patent No. 6,229,366 (the "'366 Patent"), and U.S. Patent No. 6,249,876 (the "'876 Patent"), and all applications, continuations, continuations-in-part, divisionals, reexaminations, or reissues thereof and all foreign applications and patents which claim priority to any of the above.

     D.    "Related Patent(s)/Application(s)" as used herein means (1) any U.S. or foreign patent or patent application related to any of the Power Integrations Patents or their applications by way of subject matter or claimed priority date, (2) all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications thereof, and/or (3) any patent or patent application filed by one or more of the same applicant(s) (or his or her assignees) that refers to any of (1) or (2) herein.

     E.    "Patent Application" as used herein means the application, including material purportedly incorporated by reference therein, and any amendments, additions or deletions, from which one of the Power Integrations Patents actually issued.

     F.    "Priority Application" as used herein shall include the Patent Application and any prior application, including material purportedly incorporated by reference therein, and any amendments, additions or deletions to which any of the Power Integrations Patents claims priority under 35 U.S.C. §120 or otherwise.

     G.    "Accused Fairchild Products" as used herein mean each and every Fairchild product, method, structure or action alleged in Power Integrations Complaint, or otherwise alleged by Power Integrations in this action, of infringing or causing infringement of any of the claims of any of the Power Integrations Patents whether produced by Fairchild, or its subsidiary, parent, or any other affiliated entity.

     H.    "Power Integrations Patented Product" as used herein means any invention, product, or article comprising the alleged technology claimed, disclosed, or described in the asserted Power Integrations Patents, made, used, distributed or sold by or with the authorization of Power Integrations.

     I.    "PWM" as used herein means pulse width modulation.

J.     "Document(s)" as used herein is used in its broadest sense and includes, without limitation, the original and all non-identical copies (including drafts and those with any notations) of all "documents," "writings," "recordings," and "photographs" of the types designated in Rule 34(a) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and includes materials in digital forms. The term "document(s)" includes but is not limited to any book, pamphlet, periodical, letter, memorandum, diary, file, note, calendar, newspaper, magazine, statement, bill, invoice, order, policy, telegram, correspondence, summary, receipt, opinion, investigation statement or report, schedule, manual, financing statement, audit report, tax return, report, record, study, handwritten note, drawing, working paper, chart, index, tape (audio or visual), microfilm, data sheet, e-mail and all other electronic and digital forms of communication, however produced.

K.     "Thing" as used herein refers to any physical object other than a "document."

L.     "Communication" as used herein refers to any contact, oral or documentary, formal or informal, at any place or under any circumstances whatsoever whereby information of any nature is transmitted or transferred, including, without limitation, a single person seeing or hearing any information by any means.

M.     "Concerning" as used herein refers to referring to, relating to, pertaining to, relevant to, material to, embodying, evidencing, affecting, comprising, discussing, dealing with, supporting, contradicting or otherwise considering in any manner whatsoever the subject matter of the inquiry.

N.     "Any" and "all" as used herein refer to and include the other; the terms "and" and "or" shall each mean and include the other, and the singular form of any word and the plural form of the word shall each mean and include the other.

## INSTRUCTIONS

1.     These requests call for information (including any information contained in or on any document or thing) that is available to Power Integrations, or in its possession, custody, or control, including all information known or available to, or in the possession, custody, or control

of, Power Integrations' subsidiaries, attorneys, agents, representatives, investigators, or any other person acting on behalf of Power Integrations or under the direction or control of Power Integrations, or its attorneys or agents.

2.     If Power Integrations withholds documents responsive, in whole or in part, to any request on any basis, please comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure and identify: (a) the privilege or immunity claimed; (b) the nature of the document or thing (letter, memorandum, notes, etc.); (c) its date; (d) its author(s) and recipient(s), if any; (e) each and every person who has seen such document or a portion of such document; and (f) a general description of the document and its subject matter.

3.     If Power Integrations objects to any request or part thereof, produce all documents to which the objection does not apply.

4.     If in answering these requests Power Integrations claims any ambiguity in either a request or a definition or an instruction applicable thereto, identify in the response the allegedly ambiguous language and state the interpretation Power Integrations used in responding.

5.     In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort not appearing on any other copy.

6.     If Power Integrations or its attorneys know of the existence, past or present, of any document described in any of these requests, but such document is not presently in its possession, custody, or control or in the possession, custody, or control of its agents, representatives, or attorneys, Power Integrations shall so state in response to the request, identify such document in response to the request, and identify the individual in whose possession, custody, or control the document was last known to reside. If any responsive documents have been destroyed or otherwise removed from Power Integrations' custody or control, please state when, how, and why such document was destroyed or removed from its custody.

7.     The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular whenever appropriate in order to bringing within the scope of these requests any document which might otherwise be considered beyond its scope.

8.    The documents produced in response to these requests shall be: (i) organized and designated to correspond to the categories in these requests or, if not, (ii) produced as they are maintained in the normal course of business, and in either case:

      a.    all documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies (but Fairchild reserves the right to inspect the originals); and

      b.    each page shall be given a discrete production number.

9.    If any of the documents cannot be produced in full, Power Integrations should produce them to the extent possible, specifying the reasons for the inability to produce the remainder and stating whatever information, knowledge or belief you have concerning the unproduced portion.

10.    Electronic records and computerized information should be produced in an intelligible format or together with a description of the system from which it is derived, sufficient to permit rendering the material in an intelligible format.

11.    The obligation to provide the documents and things sought by these discovery requests is continuing within the requirements of Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 154:

All documents and things concerning or filed in *In the Matter of Power Supply Controllers*, International Trade Commission Docket No. 2428, including, but not limited to, all documents or pleadings concerning the existence of a domestic industry for PWM devices.

### REQUEST FOR PRODUCTION NO. 155:

All documents and things concerning Klas H. Eklund, including, but not limited to, all communications and agreements between Power Integrations and Klas H. Eklund.

### REQUEST FOR PRODUCTION NO. 156:

All documents and things concerning Klas H. Eklund while he was an employee at Power Integrations including, but not limited to, all employment agreements.

**REQUEST FOR PRODUCTION NO. 157:**

All documents and things concerning Klas H. Eklund's departure from Power Integrations.

**REQUEST FOR PRODUCTION NO. 158:**

All documents and things concerning communications between Power Integrations and Klas H. Eklund, including, but not limited to, all documents and things concerning the Power Integrations Patents, validity or invalidity of the Power Integrations Patents, infringement or non-infringement of the Power Integrations Patents by Fairchild or others, enforceability or unenforceabilty of the Power Integrations Patents, Fairchild, and litigation between Power Integrations and Fairchild.

**REQUEST FOR PRODUCTION NO. 159:**

All communications between Klas H. Eklund and Power Integrations since Klas H. Eklund departed from Power Integrations.

**REQUEST FOR PRODUCTION NO. 160:**

All documents and things concerning any assignment of intellectual property from Klas H. Eklund to Power Integrations or any other company.

**REQUEST FOR PRODUCTION NO. 161:**

All documents and things concerning any rights Ericsson, Inc. may have to the '075 Patent including, but not limited to, employment or assignment agreements between Klas H. Eklund and Ericsson, Inc.

**REQUEST FOR PRODUCTION NO. 162:**

All documents and things concerning any rights Advanced Micro Devices may have to the '075 Patent including, but not limited to, employment or assignment agreements between Klas H. Eklund and Advanced Micro Devices.

**REQUEST FOR PRODUCTION NO. 163:**

All documents and things concerning any rights Data General Corporation may have to the '075 Patent including, but not limited to, employment or assignment agreements between

Klas H. Eklund and Data General Corporation.

**REQUEST FOR PRODUCTION NO. 164:**

All documents and things concerning *Power Integrations, Inc. v. Klas Eklund*, Case No. C-93 20338 including, but not limited to, all pleadings, discovery, briefs, motions, orders, stipulations, memorandums, or agreements.

**REQUEST FOR PRODUCTION NO. 165:**

All documents and things concerning communications or disputes relating to intellectual property, including, but not limited to, the '075 patent, between Power Integrations and Data General Corporation.

**REQUEST FOR PRODUCTION NO. 166:**

All documents and things concerning communications or disputes relating to intellectual property, including, but not limited to, the '075 patent, between Power Integrations and Ericsson, Inc.

**REQUEST FOR PRODUCTION NO. 167:**

All documents and things concerning statements made by Power Integrations to customers or potential customers regarding Fairchild, including, but not limited to, statements relating to use of Fairchild products, the litigation between Power Integrations and Fairchild, the Power Integrations Patents, any potential outcome of Power Integrations' litigation with Fairchild, or the potential liability for infringing the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 168:**

All documents and things concerning any test, examination, analysis, or review conducted with respect to any PWM Product offered for sale, licensed, or sold by Power Integrations or any of its licensees concerning whether or not the product is covered by any claim of the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 169:**

All documents and things concerning Power Integrations' policy of marking its products or packaging with patent numbers or patent notice.

**REQUEST FOR PRODUCTION NO. 170:**

All documents and things concerning any discussion or decision by Power Integrations whether to mark its products or packaging with the patent number of one of the Power Integrations Patents, and what manner of marking would serve as sufficient notice.

**REQUEST FOR PRODUCTION NO. 171:**

All documents and things concerning any discussion or decision by Power Integrations whether to list the patent numbers of any patents owned or licensed by Power Integrations on any data sheets or application notes.

**REQUEST FOR PRODUCTION NO. 172:**

All documents and things concerning any prior art searches conducted in connection with the filing of the applications for the Power Integrations Patents.

**REQUEST FOR PRODUCTION NO. 173:**

All documents and things concerning Power Integrations' decision to submit prior art in connection with the filing of the applications for the Power Integrations Patents, including, but not limited to, information relating to Power Integrations' existing products.

**REQUEST FOR PRODUCTION NO. 174:**

All documents and things concerning the design, development, and marketing of the following Power Integrations products: (i) #TOP200-4/14 TOPSwitch Family Three-Terminal Off-Line PWN Switch; (ii) SMP3 PWM switches; (iii) SMP402 PWM switch; (iv) TOPSwitch Family – Three-terminal Off-line PWM Switch TOP100-4; (v) PWR SMP260; and (vi) TOP221-227 TOPSwitch II Family Three-Terminal Off-line PWM Switch.

**REQUEST FOR PRODUCTION NO. 175:**

All documents and things concerning Power Integrations' testing, evaluation, analysis, or reverse engineering of the products made by Power Integrations' competitors.

**REQUEST FOR PRODUCTION NO. 176:**

To the extent that Power Integrations alleges that the Accused Fairchild Products are being incorporated into final products that are imported, offered for sale, or used in the United

States, describe all facts and evidence supporting such allegations.

**REQUEST FOR PRODUCTION NO. 177:**

All documents and things concerning litigation between Power Integrations and Systems General including, but not limited to, all pleadings, discovery, briefs, motions, orders, stipulations, memorandums, or agreements.

**REQUEST FOR PRODUCTION NO. 178:**

All documents and things concerning all patent infringement litigation Power Integrations is currently involved in or has ever been a party to.

**REQUEST FOR PRODUCTION NO. 179:**

All documents and things concerning the percentage of Power Integrations devices sold within in the United States versus outside of the United States.

**REQUEST FOR PRODUCTION NO. 180:**

All documents and things concerning the percentage of Power Integrations devices sold on a country by country basis, including, but not limited to, the United States and the Republic of Korea.

**REQUEST FOR PRODUCTION NO. 181:**

All documents and things authored by a current or former Fairchild employee.

**REQUEST FOR PRODUCTION NO. 182:**

All documents and things authored by Fairchild.

**REQUEST FOR PRODUCTION NO. 183:**

All Fairchild documents and things designated by Fairchild "confidential", "secret", "trade secret", or otherwise marked for restricted distribution.

**REQUEST FOR PRODUCTION NO. 184:**

All documents and things concerning Power Integrations' lost sales resulting from the sale of Fairchild's allegedly infringing devices including, but not limited to, documents concerning where and when such lost sales occurred.

**REQUEST FOR PRODUCTION NO. 185:**

All documents and things concerning any erosion in the price of Power Integrations' devices resulting from the sale of Fairchild's allegedly infringing devices including, but not limited to, documents concerning where and when such price erosion occurred.

**REQUEST FOR PRODUCTION NO. 186:**

All documents and things concerning price competition between Power Integrations and Fairchild.

**REQUEST FOR PRODUCTION NO. 187:**

Documents and things sufficient to identify Fairchild devices that compete with Power Integrations' devices.

**REQUEST FOR PRODUCTION NO. 188:**

Documents and things sufficient to identify third party devices that compete with Power Integrations' devices.

**REQUEST FOR PRODUCTION NO. 189:**

Documents and things sufficient to identify manufacturers of devices that compete with Power Integrations' devices including, but not limited to, documents concerning the number of such manufacturers.

**REQUEST FOR PRODUCTION NO. 190:**

Documents and things sufficient to identify Power Integrations' customers.

**REQUEST FOR PRODUCTION NO. 191:**

Documents and things sufficient to identify Fairchild's customers for the accused devices.

**REQUEST FOR PRODUCTION NO. 192:**

All documents and things concerning the design and operation of third party devices that compete with Power Integrations' devices.

Dated: May 31, 2005

ASHBY & GEDDES

_____

Steven J. Balick (I.D. 2114)
John G. Day (I.D. 2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: (302) 654-1888

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and FAIRCHILD
SEMICONDUCTOR CORPORATION

OF COUNSEL:

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____

G. Hopkins Guy, III (#124811)
Bas de Blank (#191487)
Duo Chen (#220675)
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation<br><br>Defendants. | C.A. No. 04-1371-JJF<br><br>**DECLARATION OF SERVICE** |

I am more than eighteen years old and not a party to this action.  My place of employment and business address is 1000 Marsh Road, Menlo Park, CA 94025.

On May 31, 2005, I delivered the following documents:

1. DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S SECOND SET OF REQUESTS FOR PRODUCTION;

2. DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S SECOND SET OF INTERROGATORIES  (NOS. 29-44); and

3. DECLARATION OF SERVICE.

| X | By transmitting a true copy of the above-listed document(s) electronically via facsimile set forth below: |
|---|---|
|   | Howard G. Pollack<br>FISH & RICHARDSON, P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Fax: (650) 839-5071<br><br>*Attorney for Defendants* |
| X | By placing a true and correct copy of the document(s) in a Federal Express envelope addressed as set forth below and then sealing the envelope, affixing a pre-paid Federal Express air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.<br><br>William J. Marsden, Jr.<br>FISH & RICHARDSON, P.C.<br>919 North Market Street, Suite 1000<br>P.O. Box 1114<br>Wilmington, Delaware 19802<br>Fax: (302) 652-0607<br><br>*Attorney for Defendants* |

Executed on May 31, 2005, at Menlo Park, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____

MIMI SAGMIT

DOCSSV1:297126.1

05/31/2005 17:07 FAX                    ORRICK                           @001

```
                    *******************************
                    ***   MULTI TX/RX REPORT   ***
                    *******************************

TX/RX NO            1887
PGS.                24
TX/RX INCOMPLETE

                    -----
TRANSACTION OK
                    (1)   7584#10414#25#8395071
                    (2)   7584#10414#25#13026520607

ERROR INFORMATION
                    -----
```

# O
# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

tel 650-614-7400
fax 650-614-7401
WWW.ORRICK.COM

## FAX TRANSMISSION

DATE    May 31, 2005

NO. OF PAGES
(INCLUDING COVER SHEET)                 24

**FROM**

| name | tel |
|------|-----|
| Bas de Blank | 650-614-7343 |

**TO**

| name | company/firm | tel | fax |
|------|--------------|-----|-----|
| Howard G. Pollack | FISH & RICHARDSON P.C. | | **650.839.5071** |

**CC**

| | | | |
|------|--------------|-----|-----|
| William J. Marsden, Jr. | FISH & RICHARDSON P.C. | | **302.652-0607** |

RE    *Power Integrations v. Fairchild Semiconductor et al*

**MESSAGE**

Please see attached.