IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC. and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING
DEPOSITION OF MICHAEL C. KEELEY, REBUTTAL EXPERT REPORT
ON DAMAGES, AND CONTINUATION OF DAMAGES TRIAL**

                                                             ASHBY & GEDDES
                                                             Steven J. Balick (I.D. #2114)
                                                            John G. Day (I.D. #2403)
                                                            Tiffany Geyer Lydon (I.D. #3950)
                                                            222 Delaware Avenue, 17th Floor
                                                            P.O. Box 1150
                                                            Wilmington, DE  19899
                                                            (302) 654-1888
                                                            sbalick@ashby-geddes.com
                                                            jday@ashby-geddes.com
                                                            tlydon@ashby-geddes.com

*Attorneys for Defendants Fairchild
Semiconductor International, Inc.
and Fairchild Semiconductor Corp.*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated: August 18, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC. and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF MICHAEL C. KEELEY, REBUTTAL EXPERT REPORT ON DAMAGES, AND CONTINUATION OF DAMAGES TRIAL**

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. ("Fairchild") move, pursuant to Fed. R. Civ. Pro. 26(a)(2) and 26(c) and Local Rule 30.2, for a protective order quashing Power Integrations, Inc.'s ("PI") notice of deposition of Fairchild's damages expert, Michael C. Keeley, setting reasonable dates for submission of Dr. Keeley's rebuttal damages expert report and deposition, and continuing the damages portion of the trial in this matter currently set for October 2, 2006.

PI has failed to provide critical damages discovery on PI's de-certified financial statements ordered by the Court over two months ago. During the May 31st pre-trial conference, Fairchild raised the issue that PI had de-certified all of its financial statements back to 1999 and both parties had relied upon the statements in preparing their damages analysis. The Court granted discovery on this basis. Further, on August 8, PI submitted a substantially changed expert report on damages including 93 new pages of calculations and evidence. PI has done so to avoid the effect of the Court's June 2, 2006 order granting Fairchild's motion for partial summary judgment, which substantially limited PI's damages case. In PI's new report, submitted merely weeks from trial, rather than adjust its damages downward based on the Court's June 2 order, PI concocts completely new damages theories based on products that were

previously not accused of infringement, *increasing* its damages numbers.

Despite depriving Fairchild of necessary discovery and changing its damages opinions with 93 pages of new analysis at this late date, PI now demands that Dr. Keeley prepare a damages rebuttal report in one week and has noticed his deposition to occur little more than a week thereafter. Until PI produces the Court-ordered damages discovery, Dr. Keeley cannot prepare his rebuttal report or proceed with deposition. Moreover, once PI does provide the necessary discovery, Dr. Keeley will require time to analyze and prepare opinions based on that information and will require time to rebut the new damages calculations submitted on August 8.

Therefore, Fairchild respectfully requests a protective order quashing the deposition subpoena to Dr. Keeley, currently noticed for August 25. Fairchild further requests that the Court enter an order (a) setting Dr. Keeley's rebuttal expert report to be due 21 days after PI produces necessary damages discovery, (b) setting Dr. Keeley's deposition to occur 14 days after submission of his rebuttal report and (c) continuing the damages portion of the trial until December 4, 2006.

## I. BACKGROUND

### A. On May 31, 2006 The Court Ordered Damages Discovery Relating To PI's Restatement Of Its Historical Financial Data.

In the spring of this year, because of irregularities in PI's treatment of stock options, PI announced that it would restate all of its historical financial reports back to 1999 and that its old reports could not be relied upon. Given the risk that this will impact the damages analysis in this case, which has relied on the old reports, Fairchild sought to discover details regarding PI's restatement of financial data. [DI 282 at pp. 6:23-8:8, 10:8-13:14, 18:18-20:5, 49:3-51:8] At the May 31, 2006 pre-trial hearing, the Court ordered that PI provide Fairchild with documents concerning PI's restated financial reports and provide deposition testimony on that subject. [*Id.* at 18:18-20:5, 36:24-37:4, 47:19-22, 49:3-51:8]

At that time, PI objected that its internal investigation and the resulting material changes to its financial reports were not "relevant." [*Id.* at p. 10:8-14] The Court dismissed PI's objections, however, and continued damages discovery on this issue. Specifically, the Court

ordered PI to provide written discovery and allowed Fairchild to take deposition testimony on the matter. [*Id.* at pp. 19:12-18, 49:3-51:8] PI agreed to provide this discovery, and based on PI's representation that all of its restated and final financial figures would be available by August 2, 2006, Fairchild agreed to an August 18, 2006 close of damages discovery. [*Id.* at pp. 49:3-51:8]

Despite PI's public announcement that it would provide re-stated financial reports by August 2, 2006, it failed to do so. NASDAQ de-listed PI from its listed exchange on August 1, 2006. Thus, the impropriety of PI's "irrelevance" argument is made plain by the fact that PI has not yet provided the public any restated financial data or provided Fairchild any discovery on that issue and instead suffered de-listing as a consequence. Accordingly, PI cannot in good faith assert that the discovery sought is irrelevant or immaterial, when PI does not yet know the full impact of its major financial restatement and the Court has already rejected that assertion. If the changes to its financial statements were small, PI would readily agree to produce to Fairchild all of the requested discovery. Furthermore, as is described below, PI already agreed to provide to the NASDAQ, Securities and Exchange Commission and the Department of Justice the same information in connection with their investigations of PI's financial reporting. Obviously, there is material, non-privileged information in PI's possession. However, as explained in detail below, PI adamantly refuses to produce it, despite the Court's order and the NASDAQ de-listing.

**B.   Despite The Court's Order That PI Provide Discovery Regarding Restatement Of Its Historical Financial Data, PI Continues To Withhold That Critical Damages Discovery.**

On January 31, 2006, PI submitted a damages report by its expert, Mr. Troxel, that expressly relied upon PI's annual reports. [Declaration of Bas de Blank ("de Blank Decl."), Ex. 1 (filed herewith)]

On March 13, 2006, PI announced that its 2005 annual report would be delayed to "allow for the completion on an ongoing internal investigation" by a "special committee" related to PI's stock option practices. [*Id.* Ex. 2] PI did not inform Fairchild of this "ongoing" investigation. Instead, Fairchild only learned of this through PI's press releases. [*Id.* ¶2] On March 15, 2006, Fairchild deposed Balu Balakrishnan—PI's CEO and a key figure in its stock option backdating

scandal. [*Id.* Ex. 3] Mr. Balakrishnan admitted that there was no "special committee" and that the entire investigation was being conducted by Mr. Bala Iyer, a director of PI. [*Id.*] Mr. Balakrishnan testified under oath that there was no recommendation that PI restate its financial reports. [*Id.*]

Relying on Mr. Balakrishnan's testimony and the fact that PI had not indicated that its reports were unreliable, on March 17, 2006 Fairchild's expert, Dr. Keeley, submitted a rebuttal report that also relied upon PI's annual reports. [*Id.* Ex. 4]

That same day, NASDAQ informed PI that it may be delisted because of its failure to file its annual report. [*Id.* Ex. 5] On May 2, 2006, NASDAQ granted PI's request for continued listing, provided that PI — (i) shared the results of its internal investigation by June 7, (ii) filed its restated financial reports by July 12 and (iii) filed its first quarter 2006 report by August 2. On May 4, 2006, PI's CFO and the Chairmen of its Board both resigned abruptly. [*Id.* Ex. 6] PI failed to inform Fairchild of any of these developments or give any indication that the damages discovery PI had produced and upon which both parties were relying was inaccurate. [*Id.* ¶¶5-7]

On May 9, 2006, PI filed a Form 8-K with the Securities and Exchange Commission admitting "material weaknesses" in its internal financial controls and cautioning that its financial reports "should no longer be relied upon." [*Id.* Ex. 7] PI stated that it would be required to report "material" additional charges and would have to restate every historical financial statement since 1999. [*Id.*] PI admitted that this would decrease both net income and income from operations—precisely the type of information relied upon by PI's expert in his damages report. [*Id.*] There is a significant risk that these material changes will affect the damages analysis in this case, including the parties' positions on lost profits, price erosion and reasonable royalty. [DI 282 at 10:22-13:14] Again, PI failed to inform Fairchild of these important developments. [de Blank Decl., ¶8] Instead, Fairchild only learned of them when it later reviewed PI's press releases. [*Id.*]

On May 23, 2006, the U.S. Department of Justice issued a grand jury subpoena to PI "requesting that the Company produce documents relating to the granting of stock options from 1995 through the present." [*Id.* Ex. 8] PI indicated that it would "fully cooperate" with this

-4-

subpoena. [*Id.*] On May 24, 2006, PI also announced that it was the subject of an investigation by the Securities and Exchange Commission and that PI would also cooperate with the SEC. [*Id.*]

By the May 31, 2006 pre-trial hearing, Fairchild had learned that the parties could no longer rely on PI's financial data. Fairchild raised its concerns about this issue during the pre-trial hearing. [DI 282 at pp. 6:23-8:8, 10:8-13:14, 18:18-20:5, 49:3-51:8] Over PI's objection that its internal investigation and restated financial reports were purportedly not "relevant," the court continued the discovery deadline to allow Fairchild to investigate the issue. [*Id.* at p. 10:8-14] The Court ordered PI to provide written discovery and deposition testimony on this issue. [*Id.* at pp. 19:12-18, 49:3-51:8] PI represented that its restated reports were forthcoming and that its first quarter 2006 report would be available on August 2, 2006. [*Id.* at pp. 49:3-51:8] Relying on this representation, Fairchild agreed to and the Court ordered an August 18, 2006 deadline for the close of damages discovery, predicated on the assumption that all materials concerning PI's restated financial data would be produced by August 2. [*Id.*]

Realizing that time was of the essence, Fairchild attempted throughout the summer to conclude the necessary damages discovery and keep the case on track for the scheduled October trial. Fairchild believed that the two months between May and August was adequate to do so. However, despite Fairchild's repeated, good faith attempts to comply with the Court's order and finish damages discovery, PI simply stonewalled at every step of the way. The delay in damages discovery is the sole result of PI's conduct—not Fairchild's.

Beginning on June 8, 2006—eight days after PI had agreed to provide this discovery—Fairchild wrote to schedule the necessary depositions and to remind PI to produce the results of its internal investigation, which had been produced to NASDAQ on June 7, 2006. [*Id.* Ex. 10] PI, however, did not produce the results of the investigation. [*Id.* ¶13] Instead, on June 22, 2006, PI refused to provide *any* discovery until after it provided Fairchild with its restated annual reports. [*Id.* Ex. 11] In that letter, PI repeated its commitment to provide restated financial data by July 12, 2006 (as required by NASDAQ) and agreed to produce additional discovery, if necessary, once Fairchild had an opportunity to review PI's restated financial reports. [*Id.*]

On July 10, 2006—two days before Fairchild was to receive PI's restated financial reports—PI announced in a press release that it had requested and received an extension from NASDAQ and would not provide restated reports until August 2. [*Id.* Ex. 12] PI never requested nor received any extension by Fairchild and did not even inform Fairchild that it had sought an extension from NASDAQ or that this extension may impact PI's discovery obligations to Fairchild. [*Id.* ¶15] Thus, on July 11, 2006, Fairchild wrote objecting to PI's continued delay in providing the Court ordered discovery. [*Id.* Ex. 13] On July 12, 2006, PI agreed to a one-week extension of discovery on this issue. [*Id.* Ex. 14] In that letter, PI again acknowledged for the fourth time that it would provide all of its restated financial reports and its first quarter 2006 report by August 2, 2006. [*Id.*]

However, on August 2, 2006, PI once again failed to provide Fairchild with any restated financial reports or other discovery. [*Id.* ¶20] By letter that same day, Fairchild requested this long-promised information. [*Id.* Ex. 16] Receiving no response, Fairchild's counsel raised this issue with PI's counsel in person on August 3. [*Id.* ¶21] At that time, PI suggested that Fairchild would receive the restated financial reports "shortly," but did not provide a firm date. [*Id.*] In fact, it turns out that on July 31 PI filed a statement with the SEC that it would not complete it restatements by August 2. [*Id.* Ex. 15] As a result, NASDAQ delisted PI's shares from the NASDAQ Global Market, effective August 2. [*Id.*] PI did not inform Fairchild of these developments. [*Id.* ¶19] Finally, on August 3, PI categorically stated that the non-privileged discovery requested by Fairchild "will not be forthcoming," refusing to provide information related to its investigation and asserting that the restated financial data was not relevant. [*Id.* Ex. 17]

Given its past promises and the Court's order requiring PI to produce critical discovery regarding its restatement of financial data, PI's failure to do so is sanctionable. PI has repeatedly promised the Court, Fairchild, and the public that it would provide restated financial reports by a specific date. Time and again, PI has failed to meet the deadline. In every single case, Fairchild was forced to learn of this through its own investigation because PI failed to inform Fairchild that it would not meet the agreed-to deadlines. This misconduct is inconsistent with PI's

discovery obligations under the Federal Rules and the Court's order at the pre-trial hearing. Accordingly, on August 3, 2006, Fairchild filed a motion to compel this discovery and to continue the damages trial.[1]

### C. PI Has Submitted An Improper, Revised Damages Report Containing Wholly New Damages Positions.

The primary reason that the Court extended the damages discovery deadline until August 18 was to provide Fairchild discovery regarding PI's restatement of its financial data. [DI 282 at pp. 6:23-8:8, 10:8-13:14, 18:18-20:5, 36:24-37:4, 47:19-22, 49:3-51:8] Any revised expert report was clearly intended to be limited to changes in these financial statements. Further damages discovery on any other issue was not ordered. At that time the parties contemplated concluding a 30(b)(6) deposition on U.S. manufacture and completing damages expert discovery. [DI 282 at pp. 6:9-17] The Court did not contemplate that any new damages expert reports would be submitted, except as may be necessary to account for PI's restatement of all of its historical financial data. These were the last open damages issues in the case and the Court emphasized the need to finalize matters for trial, advising counsel that "[t]here's no surprises in this case . . ." [DI 282 at p. 4:29]

However, not only has PI refused to provide *any* of the ordered discovery regarding its restated financial reports, it has now abused the extension of the damages discovery deadline by submitting, on August 8, a 93-page revised damages report by Mr. Troxel involving entirely new theories of damage based on evidence that has been in PI's possession for nearly a year. [de Blank Decl., ¶¶ 24-27, Exs. 18-21; Declaration of Michael C. Keeley ("Keeley Decl."), ¶2 (filed herewith)] Mr. Troxel's revised report does not deal at all with PI's restated financial figures, except to say in a footnote that he understands PI's financial restatement will occur, but that he does not "anticipate" any "significant effect" on his analysis. [*Id.* Ex. 21, n. 4] By contrast, PI includes 93 pages of lengthy analysis and evidence on several unrelated and new issues not contemplated by the Court in its prior order regarding damages discovery.[2] PI does so to avoid

---

[1] The motion to compel and to continue the damages trial can be found at DI 304.
[2] Fairchild only received the revised Troxel report late in the evening on August 8. Fairchild will meet and confer with PI in a good faith attempt to resolve the many problems with the report. However, if the problems cannot be

the effect of the Court's June 2 order granting partial summary judgment to Fairchild, which substantially limited PI's damages by finding that PI cannot rely on damages evidence or calculations prior to the filing of the complaint. [DI 265] In its report, now only weeks from trial, PI has dreamed up entirely new damages theories, asking for inflated, speculative amounts based on accusations against an entirely new product. The Court announced at the pretrial hearing that it would "grant[] partial summary judgment to Fairchild with regard to the damages evidence." [DI 282 at p. 2:4-9] However, the Court did *not* order that PI could start over with completely new damages theories, as it has done.

There are several major new theories set forth by PI in Mr. Troxel's 93-page report. First, PI suddenly demands tens of millions of dollars based on a Fairchild product called **REDACTED** [*Id.* Ex. 21, p. 6] However, the **REDACTED** was not even accused of infringement by PI's technical experts in their reports, was not included as a "Fairchild Product[] Asserted To Be Infringing" in Mr. Troxel's original report, and is not at issue in the case.[3] [*Id.* Ex. 23] This "surprise" tactic is precisely what the Court was attempting to avoid in the pre-trial hearing. Therefore, PI's revision of its expert report to include purported damages theories regarding the **REDACTED** is completely inappropriate.

There is no conceivable basis for PI to revise its damages report in this manner, at this late date. PI had detailed knowledge of the **REDACTED** product as early as August 2005. [*Id.* Exs. 24] In interrogatory responses served on August 30, 2005, Fairchild disclosed the **REDACTED** as a product which it had offered for sale or sold, and identified the customer that had bought the product. [*Id.* at pp. 6-7] At that time, Fairchild also provided the worldwide sales and revenue figures for the **REDACTED** generating **REDACTED** in revenue. [*Id.* at pp. 12, 17] However, thereafter PI chose not to include the **REDACTED** as an accused device in this case. In its September 30, 2005 interrogatory responses listing the devices accused in the case, PI did *not* list the **REDACTED**. [*Id.*, Ex. 30] Similarly, PI

---

[3] resolved, Fairchild will move to strike the improper portions of the report.
**REDACTED**

chose not to analyze that product in its expert reports on alleged infringement or in its damages report. [*Id.*, Ex. 23] PI may not change its case at the eleventh hour in this way, adding new accused products.

Second, PI purports to revise its damages report based on "[t]he Court's order limiting damages calculation and collection start dates to October 20, 2004." [*Id.* Ex. 21, p. 6] That order made clear that PI could only rely on information on or after October 20, 2004 in its calculation of alleged damages. [DI 265] However, if PI wished to revise its damages report in light of the Court's order, it should have done so months ago, but has instead unreasonably delayed until mere weeks before trial.

To begin with, long before the Court's order, PI understood that Fairchild contended that damages could not be calculated based on information prior to the October 20, 2004 filing of the complaint. Mr. Troxel specifically testified in his April 27, 2006 deposition that he and PI understood Fairchild's contention in this regard. [de Blank Decl., Ex. 25] Further, Mr. Troxel testified that he deliberately chose to provide opinions based on information before the October 20, 2004 filing date and not on the pricing information after that date. [*Id.*] PI should have calculated damages based on the Court's prior orders, and should not be allowed to dream up entirely new theories of damages recovery, only weeks before trial.

Further, even if the Court's order limiting damages were a basis for revising Mr. Troxel's report—*that order issued on June 2, 2006*. [DI 265] Therefore, if PI had believed that supplementation of its report was necessary based on the order, it should have done so at that time. There is no excuse for PI's months of delay in submitting a supplemental report if it believed it necessary and most certainly no basis for asserting a completely new damages theory. For all of these reasons, any supplementation other than to address PI's restated financial reports is untimely and not permitted.

### D.    PI Unilaterally Demands Dr. Keeley's Rebuttal Report And Deposition On An Unreasonable Schedule.

Having refused to produce the Court-ordered discovery and having sandbagged Fairchild for months with an untimely and improper 93 page expert report, PI now makes the unreasonable

demand that Fairchild's damages expert, Dr. Keeley, prepare and submit a rebuttal report in a single week, on August 16. [de Blank Decl., Ex. 26] Further, PI has noticed Dr. Keeley's deposition for August 25. [*Id.* Ex. 27]

Fairchild informed PI that it has no right to submit any revised expert report, requested that PI provide the necessary discovery, withdraw its subpoena to Dr. Keeley, work with Fairchild to reasonably schedule Dr. Keeley's rebuttal report and deposition and continue the trial date. [de Blank Decl., Ex. 28] PI refuses to agree to any of this. [*Id.* Ex. 29] Accordingly, having exhausted its good faith effort to meet and confer, Fairchild requests a protective order.

## II. PI'S NOTICE OF DEPOSITION OF DR. KEELEY SHOULD BE QUASHED AND ITS DEMAND THAT DR. KEELEY SUBMIT A REBUTTAL REPORT BY AUGUST 16 SHOULD BE REJECTED.

PI's demand that Dr. Keeley prepare a rebuttal damages report by August 16 and appear for deposition on August 25 is completely inappropriate. As an initial matter, Dr. Keeley cannot respond to PI's expert in a single week. [Keeley Decl., ¶2] The Court has previously ordered three weeks between submission of opening expert reports and rebuttal reports. [*See* DI 17] Even now, PI has deprived Fairchild of the discovery related to PI's restated financial reports necessary for Fairchild's damages analysis. Consequently, Dr. Keeley does not have the information necessary to prepare his rebuttal report. [Keeley Decl., ¶3] Even PI's own expert, Mr. Troxel, refuses to unequivocally state that this discovery will have no effect on his analysis—in fact he admits that it may. [de Blank Dec., Ex. 21, n. 4] Before Dr. Keeley can submit a rebuttal report and be deposed about it, PI must produce the necessary damages discovery and provide Dr. Keeley with a reasonable opportunity to revise his report and opinions accordingly.

Further, while it is Fairchild's position that the Court should strike the belated Troxel report, in any event Dr. Keeley would need several weeks to respond to it. [*See* Keeley Decl., ¶2] PI's revised 93-page August 8 report includes a host of new theories and opinions advanced on issues other than PI's restated financial data. While Fairchild will seek to strike this belated, improper report, if Dr. Keeley is ultimately required to respond to these new theories, he will

need time to analyze and formulate expert opinions. [*Id.*]

Under PI's proposed schedule, Dr. Keeley would have to supplement his expert report twice—once in response to Mr. Troxel's improper, revised expert report and again after PI finally provides its restated financial information, which it has delayed producing. It does not make sense for Dr. Keeley to supplement his report twice or for PI to depose Dr. Keeley before his report is complete. Fairchild's proposed schedule, discussed below, is more efficient and avoids this problem.

For all of the foregoing reasons, good cause exists for the court to quash the deposition subpoena to Dr. Keeley, noticed for August 25, 2006, and to enter a protective order that Dr. Keeley's rebuttal report will not be due on August 16.

## III. DR. KEELEY'S REBUTTAL DAMAGES REPORT AND DEPOSITION SHOULD BE SET ON A REASONABLE SCHEDULE.

A necessary predicate to Dr. Keeley's preparation of a revised rebuttal report on damages is PI's production of restated financial reports and related discovery. This is required in order to ensure that the parties' damages opinions are based on accurate information. *See Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) ("If the data underlying 'the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.'"); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993) (underlying expert data must be reliable). As noted above, PI itself took the position that its old financial reports "should no longer be relied upon" and reported that to the financial press.

Accordingly, the Court should enter an order setting Dr. Keeley's revised rebuttal report to be due only after PI provides the discovery that it agreed to produce and which was ordered produced by the Court, and after it revises its own damages analysis based on the new figures, if it decides to do so. Similarly, the rebuttal report should only be due after Dr. Keeley has had adequate time to analyze and review PI's 93 pages of new damages theories and evidence put forth in its August 8 report. Obviously, given the substantial amount of material, and the dramatic changes in the report, it will take Dr. Keeley time to review it. In particular, Dr.

Keeley's rebuttal report should be due only after PI:

    (1) produces the damages-related documents sought by Fairchild,

    (2) makes available PI's CEO Balu Balakrishnan for deposition,

    (3) makes available for deposition a PI corporate witness on the new damages-related materials,

    (4) revises Mr. Troxel's damages report based on the new financial data, if it so chooses, and

    (5) makes Mr. Troxel available for deposition.

Fairchild requests that the Court enter an order scheduling Dr. Keeley's rebuttal report to be due 21 days after *all* of the foregoing discovery has been made available to Fairchild. This time period is completely reasonable. *See e.g.* Fed. R. Civ. Pro. 26(a)(2)(C) (rebuttal reports due 30 days after disclosure of expert reports); DI 17 (rebuttal report in this case was ordered to be due 21 days after opening expert report).

Further, the deposition of Dr. Keeley should occur only after all of the foregoing discovery has been produced and his rebuttal expert report has been submitted. Therefore, Fairchild requests that the Court order Dr. Keeley's deposition to occur within 14 days after Dr. Keeley's rebuttal report is submitted pursuant to the schedule requested above.

## IV. THE DAMAGES TRIAL SHOULD BE CONTINUED.[4]

Because PI is unable or refuses to produce the necessary damages discovery and because it has submitted a revised report demanding damages on products not even accused of infringing, among other new theories, the damages portion of the trial currently scheduled for October 2 should be continued until a later date. PI missed the August 2 deadline for producing the Court-ordered damages discovery concerning restated financial data and has provided no indication as to when it will do so. Once PI does provide the damages discovery, it will be necessary for Fairchild to depose relevant witnesses on that topic. After the conclusion of that discovery, it will be necessary for PI to revise Dr. Troxel's report, if PI so chooses, and produce Mr. Troxel

---

[4] Fairchild has moved for reconsideration of the Court's decision to bifurcate the case and try infringement and damages together. [DI 274]. Fairchild again requested continuation of the damages trial based on PI's failure to provide damages discovery. [DI 304] PI's late submission of an expert report on new subjects and accusing wholly new products provides a further basis for continuing the damages trial.

for deposition. Thereafter, it will take at least three weeks for Dr. Keeley to revise his rebuttal expert report based on the new figures and to analyze and respond to PI's completely new analysis in its improper, revised August 8 report. After that, after a period of time PI will depose Dr. Keeley.

It will be impossible to conclude these activities before the October 2, 2006 trial. If PI's new calculations and theories are allowed in the case, Fairchild must be allowed to respond and to ensure that the expert opinions are based on accurate financial data. PI demands tens of millions of dollars from Fairchild. It would be highly prejudicial to Fairchild to allow trial to proceed on admittedly inaccurate information and without providing Fairchild's expert adequate time to respond to PI's new theories raised at this late date. For all of these reasons, the damages trial date should be continued until December 4, 2006, when the second part of the trial in this matter is scheduled to occur.

## V.   CONCLUSION.

For the foregoing reasons, Fairchild respectfully requests that the Court enter an order quashing the notice of deposition of Dr. Keeley, scheduling Dr. Keeley's rebuttal report and deposition as set forth herein and in the proposed order, and continuing the damages trial date until December 4, 2006.

*Of Counsel:*

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Bas de Blank (#191487)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: August 11, 2006
172091.1

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendants
Fairchild Semiconductor International,
Inc. and Fairchild Semiconductor Corp.*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

I hereby certify that counsel for defendants have discussed the subject of the attached motion with counsel for plaintiff, but that no agreement could be reached.

/s/ *Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. and FAIRCHILD SEMICONDUCTOR CORPORATION, <br><br> Defendants. | C.A. No. 04-1371-JJF |

## [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER RE DEPOSITION OF MICHAEL C. KEELEY, REBUTTAL EXPERT REPORT ON DAMAGES, AND CONTINUATION OF DAMAGES TRIAL

Having considered defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp.'s Motion For Protective Order Regarding Deposition Of Michael C. Keeley, Rebuttal Expert Report On Damages, And Continuation Of Damages Trial, Power Integrations, Inc.'s opposition, the pleadings and papers on file with the Court, and good cause appearing therefore,

IT IS HEREBY ORDERED as follows:

(1) Defendants' Motion For Protective Order Regarding Deposition Of Michael C. Keeley, Rebuttal Expert Report On Damages, And Continuation Of Damages Trial is **GRANTED**;

(2) The subpoena and notice of deposition of Michael C. Keeley, set for August 25, 2006 is, by this order, quashed. Dr. Keeley is not required to appear for deposition on that date.

(3) Dr. Keeley's supplemented rebuttal report on damages shall be due 21 days after the date upon which all of the following events have occurred:

(a) Power Integrations produces restated financial reports and related documents sought by Fairchild in its motion to compel [DI 304] and ordered produced on _____ [DI ___],

(b) Power Integrations makes available its CEO Balu Balakrishnan for deposition,

- 2 -

       (c) Power Integrations makes available for deposition a corporate designee on the new damages-related materials,

       (d) Power Integrations provides a revised damages report of Mr. Troxel, based on Power Integrations' restated financial data, if it so chooses, and

       (e) Power Integrations makes Mr. Troxel available for deposition.

(4)    Within 14 days after Dr. Keeley's submission of his rebuttal expert report, as ordered in item (3) above, Fairchild shall make Dr. Keeley available for deposition.

(5)    The damages portion of the trial currently set for October 2, 2006 is continued and will tentatively proceed on December 4, 2006, dependent upon completion of the foregoing events.

**IT IS SO ORDERED.**

_____
DATE

_____
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2006, the attached **REDACTED PUBLIC VERSION OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF MICHAEL C. KEELEY, REBUTTAL EXPERT REPORT ON DAMAGES, AND CONTINUATION OF DAMAGES TRIAL** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| William J. Marsden, Jr., Esquire<br>Fish & Richardson, P.C.<br>919 N. Market Street<br>Suite 1100<br>Wilmington, DE  19801 | <u>HAND DELIVERY</u> |
| Frank E. Scherkenbach, Esquire<br>Fish & Richardson P.C.<br>225 Franklin Street<br>Boston, MA  02110-2804 | <u>VIA FEDERAL EXPRESS</u> |
| Michael Kane, Esquire<br>Fish & Richardson P.C.<br>60 South Sixth Street<br>3300 Dain Rauscher Plaza<br>Minneapolis, MN  55402 | <u>VIA FEDERAL EXPRESS</u> |
| Howard G. Pollack, Esquire<br>Fish & Richardson P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA  94063 | <u>VIA FEDERAL EXPRESS</u> |

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon