IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | **REDACTED PUBLIC** |
| INTERNATIONAL, INC. and FAIRCHILD | ) | **VERSION** |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S
## SECOND SUPPLEMENTAL REPORT ON DAMAGES

Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp.

("Fairchild") respectfully move to strike Power Integrations, Inc.'s ("Power Integrations")

August 8, 2006 "Summary Report on Damages." Exh. A. To identify the substantial changes

made by Power Integrations in this "Summary" Report, Fairchild has colored yellow those

portions of the exhibits that have been changed from Power Integrations' first damages report.

## I.   INTRODUCTION.

On August 8, 2006 – over six months after the deadline for Power Integrations' damages

report and less than two months before trial is to begin – Power Integrations submitted a second,

93-page supplemental expert report on the issue of damages. This represents Power Integrations'

third damages report in this case. In view of the May 31, 2006 Pretrial Conference, the only

appropriate bases for a supplemental report would be for Power Integrations to (i) reduce its

damages demand to reflect the Court's June 2, 2006 "Marking Order" that Power Integrations

cannot rely on data prior to the filing of its complaint due to is failure to mark (DI 265) or (ii)

amend its damages report in light of Power Integrations' restatement of all financial reports as

reported to the SEC. *See* DI 282. Instead, Power Integrations and its expert raise entirely new

damages theories and accuse an entirely new device in order to *increase* Power Integrations'

alleged damages at the eleventh hour.

Power Integrations' untimely report inflates its damages in a variety of ways. For instance, Power Integrations demands damages – for the very first time – on the Fairchild FSD210HD, a device that has never been accused of infringement by Power Integrations or its experts but was fully disclosed by Fairchild as early as *August 2005*. Similarly, Power Integrations ignores the Court's order prohibiting damages calculations based on pre-complaint data; extends the period for which Power Integrations seeks "future lost profits" by almost a full year until October, 2010; and demands damages for "worldwide sales" (in addition to "U.S. Imports and Sales") well beyond the scope of a U.S. patent.

The prejudice to Fairchild created by Power Integrations' last minute Report cannot be overstated. Power Integrations 93-page "Summary" report seeks to restore its damages demands to the level they were at prior to the Court's Marking Order · **REDACTED**. This latest supplement is clearly untimely. Power Integrations was obligated to disclose all of its damages theories in Mr. Troxel's initial damages report in January, 2006. Having chosen not to do so, Power Integrations cannot now start over. Indeed, were Power Integrations permitted to do so, the Court would have to reopen all discovery – both liability and damages – and permit entirely new technical reports to address Power Integrations' newly minted accusations. For instance, no discovery of the **REDACTED** schematics, datasheets, or other technical information has occurred and Fairchild has offered no deposition testimony concerning the non-accused **REDACTED** devices. Likewise, Power Integrations has produced no discovery responses or expert reports explaining the basis for its new infringement contentions *or, indeed, even identifying the claims allegedly infringed by the* **REDACTED** Simply put, Power Integrations now seeks damages on a Fairchild device for which no infringement analysis has ever been made.

## II.    BACKGROUND.

Power Integrations' damages report was originally due on October 10, 2005. DI 17. Because of Power Integrations' inability to provide Fairchild with necessary discovery, the Court extended this date to January 10, 2006. DI 128. Power Integrations ultimately submitted its damages report on January 31, 2006. Exh. B.

Power Integrations and Fairchild agreed that Power Integrations' damages expert, Richard Troxel, would be deposed on April 27, 2006. The night before that deposition and well after the close of business, Power Integrations produced additional documents and issued an eight page supplemental damages report report. Exhs. C and D. Fairchild was surprised by this untimely supplementation since Power Integrations had never previously indicated that Mr. Troxel would supplement his report or produce additional documents.

Mr. Troxel's eight page April 26, 2006 First Supplemental Report concerned the deposition testimony of Mr. Shawn Slayton and two untimely reports from a previously undisclosed expert, Francis Lum. *See* Exh. D. Fairchild objected to this supplemental report but began to depose Mr. Troxel concerning his original report. Given the length and complexity of that original report, Mr. Troxel's deposition was not concluded on April 27, 2006. Shortly after Mr. Troxel's first day of deposition, Power Integrations' attorney was injured, delaying the completion of Mr. Troxel's deposition. Exh. E.

On May 9, 2006, Power Integrations filed a statement with the Securities and Exchange Commission admitting to "material weaknesses" in its internal controls and cautioning that its financial reports – reports upon which both experts had relied – "should no longer be relied upon." Exh F. "Any such stock-based compensation charges would have *the effect of decreasing income from operations, net income and retained earnings* figures contained in the Company's historical financial statements." *Id* (emphasis added). Thus, Fairchild is unable to conclude Mr. Troxel's deposition until it receives Power Integrations' restated financial reports. Fairchild is still waiting for this discovery.

Fairchild raised this issue during the parties' May 31, 2006 Pre-Trial Hearing. *See* DI 282. While Power Integrations objected that such discovery was irrelevant and that the expert reports should *not be supplemented*, the Court extended damages discovery on this issue to allow Fairchild access to Power Integrations' restated financial reports. *Id.* At no time did Power Integrations suggest that it would wholly revise its own damages expert report.

On June 2, 2006, the Court granted Fairchild's motion for summary judgment that Power Integrations had failed to mark its products and limited Power Integrations' damages claims by

prohibiting Power Integrations from relying on conditions prior to the October 20, 2004 filing of its complaint. DI 265. Power Integrations never indicated that it would supplement its report in response to this order, instead, filing a motion for reconsideration. During this time, Fairchild repeatedly sought to complete Mr. Troxel's deposition. *See* Exhs. G-I. Power Integrations ignored each request. Instead, on July 26, 2006, Power Integrations stated for the first time that Mr. Troxel would change his report again (for the third time). Exh. J.

On August 8, 2006, Mr. Troxel submitted a second amended report – his third report in all – inappropriately titled, "Summary Report on Damages." Exh. A. Far from "summarizing", however, Mr. Troxel's report includes 12 pages of text and 81 pages of new spreadsheets – 93 pages total – of new theories and "evidence" that considerably inflate Power Integrations' damages by tens of millions of dollars. For the first time, Mr. Troxel sought damages for the **REDACTED** – a device that Power Integrations had never previously accused of infringing any of the asserted patents yet which had been disclosed to Power Integrations in Fairchild's interrogatory responses over a year ago. Mr. Troxel also extends until 2010 the period of "future lost profits" for which he argues Power Integrations is entitled. Mr. Troxel also ignores the Court's June 2, 2006 order prohibiting damages calculations based on pre-October 20, 2004 data and shifts focus to now expressly seek damages based on activity that exclusively occurred outside the United States. This transparent attempt by Power Integrations to inflate its damages claims is untimely, inappropriate, highly prejudicial to Fairchild, and should be stricken in toto.

## III.    ARGUMENT.

As the Court made clear during the parties' Pretrial Conference, expert testimony is limited to the opinions disclosed in the expert's report. *See* DI 282. Indeed, Power Integrations' vehemently objected to any supplemental reports, including any supplemental damages report:

> **Mr. Scherkenbach:**  So what I'm sure they'd now love to do is have a date in the future that they can put it in a report. I guess we'll depose him again. We object to that. That's over. It's a very limited window to do damages expert reports – discovery, excuse me, reports are done. Finish those, a will [sic, little] bit of clean up and that should be that.

*Id.*, 40:9-23. Ultimately, the Court ordered Power Integrations to provide Fairchild with restated financial reports and permitted Fairchild to depose Power Integrations about them, and allowed a

supplemental report to address this narrow issue. *See* DI 282.

Despite the Court's order, Power Integrations has never provided Fairchild with the Court-ordered discovery concerning its restated financial reports. Instead, on August 8, 2006, Power Integrations submitted a "Summary Report on Damages" in which its own expert opined without basis that he "do[es] not anticipate that such earnings restatements will have any significant effect on my calculations...." Exh. A, p. 4, n. 4. Power Integrations' "Summary Report" raises a host of new issues and accuses an entirely new Fairchild device of infringement – all of which could have been addressed in the original report.

**A.    Power Integrations Now Seeks Damages For The REDACTED – A Device That Has Never Been Accused Of Infringement.**

In its August 8, 2006 Report, Power Integrations suddenly demands tens of millions of dollars based on Fairchild's REDACTED device. This device, however, was never accused by Power Integrations until now and is not at issue in this case. As explained below, Fairchild had disclosed this product to Power Integrations almost a year ago in interrogatory responses.

On January 24, 2005 – over a year and a half ago – Fairchild served its first set of interrogatories on Power Integrations. The very first interrogatory asked Power Integrations to identify the accused devices. In response, Power Integrations identified 33 accused products but did not accuse the REDACTED . *See* Exh. K, Resp. to Interrogatory No. 1.

On June 30, 2005, Power Integrations supplemented its response. While Power Integrations then identified 42 different Fairchild devices, Power Integrations once again chose not to accuse the REDACTED *See* Exh. L, Supp. Resp. to Interrogatory No. 1.

Power Integrations served discovery in which Power Integrations defined the "Accused Devices". Once again, Power Integrations chose not to accuse the REDACTED . *See* Exh. M, Power Integrations' First Set of Interrogatories, p. 3. Despite the fact that Power Integrations had never accused the REDACTED , *on August 30, 2005* Fairchild provided Power Integrations with information about its sales of all products potentially relevant to the case to be sure that Power Integrations understood that this product existed and that Power Integrations' decision not

to accuse it was deliberate.[1] *See* Exh. N, Fairchild's 2nd Supp. Resp. to Interrogatory Nos. 6, 8 and 9.

**REDACTED**

*Id.*

**REDACTED**

On September 30, 2005 — a month after Fairchild specifically brought the                    to Power Integrations' attention — Power Integrations again supplemented its identification of the accused devices in response to Fairchild's Interrogatory No. 1 but never accused the **REDACTED** While Power Integrations was specifically on notice of the **REDACTED** and, indeed, added a number of other newly accused devices from Fairchild's same interrogatory responses, Power Integrations decided not to accuse the **REDACTED** *See* Exh. O, 2nd Supp. Resp. to Interrogatory No. 1. Power Integrations has not supplemented its response to this interrogatory since September 30, 2005 and has never identified the **REDACTED** as an accused device in response to any of Fairchild's discovery.

On December 1, 2005, Power Integrations' technical experts — Messrs. Shields and Blauschild — submitted reports concerning Fairchild's alleged infringement and also identified the accused products. Neither report identified the **REDACTED** as an accused device nor provided any basis for its alleged infringement. Indeed, Mr. Blauschild specifically omitted the **REDACTED** from his list of accused devices.[2] *See* Exh. P, Blauschild Report, p. 3.

On January 31, 2006, Mr. Troxel submitted his damages report, which included a chart unambiguously entitled "**FAIRCHILD PRODUCTS ASSERTED TO BE INFRINGING**". Exh. B (emph. in original). That listed 38 Fairchild devices (including the **REDACTED** **REDACTED** ) but made clear that Power Integrations was not accusing the **REDACTED** *Id.*

After the close of discovery, Power Integrations demanded to depose H.K. Kim, an employee of non-party Fairchild Semiconductor Korea, Ltd. While Fairchild offered to schedule this deposition in February, 2006, Power Integrations refused to depose Mr. Kim until the end of

---

[1]    Fairchild's interrogatory response identified dozens of Fairchild devices that have, likewise, never been accused by Power Integrations of infringing any claim of the asserted patents. *Compare* Exh. N, Fairchild's 2nd Supp. Resp. to Interrogatory Nos. 6, 8 and 9 *with* Exh. A, Troxel Report, Appendix 2 (accused products).

[2]

**REDACTED**

April. Exh. Q. During that deposition, it appeared that Fairchild may have manufactured some of the accused devices in the United States.

**REDACTED**

On July 13, 2006 – almost a year and a half after Fairchild served its interrogatory seeking an identification of the accused devices – Power Integrations' attorneys sent a letter in which they accused – for the very first time – the **REDACTED** Exh. T. Even then, Power Integrations failed to identify the claims that this device allegedly infringes or how it believes this infringement occurs. Fairchild immediately objected that it was too late in the case for Power Integrations to accuse new devices. Exh. U.

**REDACTED**

Clearly, Mr. Troxel cannot be permitted to opine about – and Power Integrations cannot seek damages for – a device that has never been accused of infringement and for which no technical report exists for infringement. Indeed, to this day Fairchild has no indication as to what claims are allegedly infringed by the **REDACTED** or how this infringement allegedly occurs and Fairchild has not produced schematics or other technical information about the non-accused device. Were the Court to permit Power Integrations to accuse new devices, it would have to reopen all discovery and permit the parties to submit new technical expert reports. The Court should strike those portions of Mr. Troxel's August 8, 2006 Report and the accompanying exhibits that include or refer to the **REDACTED**

**B.    Power Integrations Ignores The Court's Marking Order Limiting Its Damages.**

On June 2, 2006, the Court ordered "that all actual damages calculations be based on conditions occurring on or after the October 20, 2004 notice date." DI 265, p. 5. This order sharply reduced Power Integrations' previously inflated damages. *See* DI 282, pp. 11-12.

In his "Summary Report", however, Mr. Troxel flatly ignores the Court's order. Instead, he has calculated damages "assuming the use of *pre-October 20, 2004* price decreases attributable to Fairchild actions...." Exh. A, ¶ 14 (emphasis added). These calculations and any discussion concerning "pre-October 20, 2004" conditions should be stricken.

**C.    Power Integrations Improperly Changes The Period For Which It Seeks Future Lost Profits.**

In his first report, Mr. Troxel opined that Power Integrations is entitled to "future lost profits" "through the end of 2009". Exh. B, ¶ 141. In his latest report, Mr. Troxel extends this period by almost a year to October, 2010. *See e.g.* Exh. A, ¶ 5. By improperly extending period date, Power Integrations increases its "future lost profit" damages by over **REDACTED** *Id.*

There is no basis for Mr. Troxel to extend the date of the future lost profits and the portion of his report concerning future lost profits after 2009 should be stricken. Had Mr. Troxel believed future lost profits should accrue through October, 2010, he was obligated to disclose this opinion in his initial report. Instead, he opined that future lost profits are only appropriate through December, 2009. Power Integrations cannot change this calculation at this late date.

**D.    Power Integrations Improperly Seeks Damages On "Worldwide Sales".**

As a matter of law, a U.S. patent only governs activity that occurs within the United States. 35 U.S.C. § 271. In his August 8, 2006 Report, Mr. Troxel opines on both the amount of damages due based on Fairchild's alleged "U.S. Imports and Admitted Sales" and "Worldwide Sales." Exh. A, p. 4. Since Mr. Troxel is clearly able to distinguish between – and separately opine on – "U.S." activity and "Worldwide Sales", any discussion of "Worldwide Sales" should be stricken since, as a matter of law, these damages cannot be recovered by Power Integrations.

Power Integrations seeks over    **REDACTED**    based on "Worldwide Sales" even though Power Integrations admits that its damages based on "U.S. Imports and Admitted Sales"

REDACTED

is no more than _____ [3]   Power Integrations' inclusion of "Worldwide Sales" is a

transparent attempt to confuse the jury and to present an inflated damages demand. Any

reference to "Worldwide Sales" and damages should be stricken and Power Integrations limited

to damages allegedly caused by "U.S. Imports and Admitted Sales".

### E.    Power Integrations' Expert Improperly Opines On A Pending ITC Investigation That Does Not Involve Fairchild Or The Asserted Patents.

Power Integrations is a party to a pending action before the International Trade

Commission ("ITC"). In that ongoing action, the Commission is investigating whether *Systems*

*General Corporation's* devices infringe any of U.S. Patent Nos. 6,212,079, 6,351,398,

6,366,481, or 6,538,908. Thus, apart from Power Integrations, this investigation involves

different parties and different asserted patents and accuses products manufactured by Systems

General Corporation (not Fairchild).

Fairchild sought discovery concerning this investigation because Fairchild believes that

Power Integrations has taken inconsistent positions – for instance, arguing before the ITC that

Systems General's devices are causing Power Integrations to lose sales while arguing here that

Fairchild is solely responsible.[4]  Power Integrations has repeatedly refused to provide Fairchild

with discovery concerning the Systems General ITC investigation. *See* Exh. V, Power

Integrations' Response to Requests for Production Nos. 154 and 177 (in which Power

Integrations refuses to produce documents concerning the Systems General investigation since

"the litigation between Power Integrations and Systems General is ongoing and does not involve

any patents involved in this lawsuit."). Indeed, on August 3, 2006 Power Integrations' attorneys

wrote that "there is no relevance to or need for the materials you have requested regarding the

ITC." Exh. R.

A mere five days after refusing to provide Fairchild with any discovery regarding the ITC

action and unequivocally stating that the ITC investigation has "no relevance", Mr. Troxel

submitted his "Summary Report" in which he opined that the ITC investigation is, in fact,

---

3 .

**REDACTED**

4    While damages, per se, are not available in an ITC proceeding, Power Integrations must prove harm to a
domestic industry, such as sales lost to Systems General. *See* 19 U.S.C. § 1337.

relevant to the issue of damages and supports his 93 page supplemental report. *See* Exh. A, ¶¶ 36-38. This section of his report should be stricken entirely.

### F.    Power Integrations' Expert Expands The Opinions Set Forth In His Untimely First Amended Report.

On April 26, 2006, Mr. Troxel submitted his first 8-page supplemental report. Exh. D. In that report, Mr. Troxel addressed a series of untimely expert reports from a previously undisclosed expert – Francis Lum. *Id.*, ¶ 23. Mr. Troxel also addressed the March 31, 2006 deposition of Shawn Slayton and referred to his analyst report in Mr. Troxel's original January, 2006 Report. *Id*, ¶¶ 5-22. This April 26, 2006 Supplemental Report is inappropriate and should not be permitted.[5]

Even were the April Report appropriate, however, there is no excuse for Power Integrations now to submit a second untimely report on these same topics at this late date. Fairchild objected to Power Integrations' reliance on the untimely report of an undisclosed expert – Francis Lum – at the May 31, 2006 Pretrial Hearing and filed a motion in limine on this issue. Incredibly, rather than address Fairchild's concerns, Power Integrations compounded Fairchild's prejudice by submitting additional, even more untimely reports from Mr. Lum. Power Integrations now seeks to do an end run around the issue by having Mr. Troxel rely upon these reports. Clearly, since Mr. Troxel could and did address these issues in his original and first supplemental reports, the second supplemental report on these same topics is untimely. The portions of the August 8, 2006 Report concerning Messrs. Lum and Slayton should be stricken.

## IV.    CONCLUSION.

For the foregoing reasons, the Court should strike portions of Power Integrations' August 8, 2006 Summary Report on Damages.

---

[5]      Indeed, Fairchild has already filed a motion in limine to strike the untimely Lum reports (DI 271) and anticipates filing a motion in limine precluding the Slayton deposition testimony.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys For Defendants*
*Fairchild Semiconductor International,*
*Inc. and Fairchild Semiconductor Corp.*

*Of Counsel:*

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Bas de Blank (#191487)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: August 14, 2006
172130.1

- 11 -

# EXHIBIT A

# REDACTED

# EXHIBIT B

**REDACTED**

# EXHIBIT C

# REDACTED

# EXHIBIT D

# REDACTED

# EXHIBIT E

## de Blank, Bas

| | |
|---|---|
| **From:** | Michael Headley [Headley@fr.com] |
| **Sent:** | Monday, May 01, 2006 3:10 PM |
| **To:** | de Blank, Bas |
| **Subject:** | Re: PI-Fairchild: damages experts issues |
| **Attachments:** | 2005-06-08 Ltr to de Blank from Headley disclosing Gregory Smith.pdf |

Bas,

I wanted to write with respect to a few issues related to damages expert discovery in this case. First, I have unfortunately just learned that we will not be able to proceed with Mr. Keeley's deposition this Thursday. Dave Miclean, the attorney responsible for the damages case who defended Mr. Troxel's deposition last week, was injured this weekend and now has pre-op treatment scheduled for this Thursday. I anticipate we will be able to proceed with Mr. Keeley's deposition later this month, and given that Mr. Keeley is local to Silicon Valley, this turn of events should not cause any great inconvenience for Mr. Keeley. I also have a call in to Mr. Troxel with respect to the schedule for his continued deposition, and I hope we will be able to get both expert damages depositions lined up here shortly (ideally in close proximity, most likely the week of the 30th or perhaps even the week before). I will let you know what I hear to that end, and I ask that you check with Mr. Keeley regarding his schedule as well.

I have also enclosed the letter I sent you last June disclosing Greg Smith from LECG as an expert in this case. You raised some issue with respect to Mr. Smith's disclosure last week during Mr. Troxel's deposition, so I wanted to be sure to follow up on that issue, and I trust this resolves the uncertainty you expressed regarding his disclosure.

Otherwise, I still plan to call you tomorrow at 11:00 to discuss the pretrial submissions. If that time does not work for you, please let me know.

Sincerely,

Michael R. Headley
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063-1526
(650) 839-5139 (direct)
(650) 839-5071 (fax)

This e-mail may contain confidential and privileged information. If you received it in error, please contact the sender and delete all copies.

<<2005-06-08 Ltr to de Blank from Headley disclosing Gregory Smith.pdf>>

8/10/2006

# EXHIBIT F

# POWER INTEGRATIONS INC

.

## FORM 8-K
(Unscheduled Material Events)

## Filed 5/9/2006 For Period Ending 5/5/2006

| | |
|---|---|
| Address | 5245 HELLYER AVE |
| | SAN JOSE, California 95138 |
| Telephone | 408-414-9200 |
| CIK | 0000833640 |
| Industry | Semiconductors |
| Sector | Technology |
| Fiscal Year | 12/31 |

Powered by EDGAR Online
http://www.edgar-online.com/
© Copyright 2006. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online's Terms of Use.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## Form 8-K

---

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

Date of report (date of earliest event reported): May 5, 2006

---

# Power Integrations, Inc.
#### (Exact name of registrant as specified in its charter)

---

| | | |
|---|---|---|
| **Delaware** | **0- 23441** | **94-3065014** |
| (State or other jurisdiction of incorporation) | (Commission File No.) | (I.R.S. Employer Identification No.) |

5245 Hellyer Avenue
San Jose, California 95138-1002
(Address of principal executive offices)

Registrant's telephone number, including area code: (408) 414-9200

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

(a) Power Integrations, Inc. (the "Company") disclosed on March 13, 2006 that it had created a Special Committee comprised of disinterested members of its Board of Directors (the "Board") to conduct an internal investigation of company practices related to stock option grants to officers and directors, and related matters. The Special Committee is being assisted by independent outside legal counsel and accounting experts. At this time, the Special Committee has not completed its work or reached final conclusions and is continuing its review. The Special Committee has reached a preliminary conclusion that the actual dates of measurement for certain past stock option grants differed from the recorded grant dates for such awards. As a result, the Company expects to record additional non-cash charges for stock-based compensation expenses in prior periods. Based on the Special Committee's preliminary conclusion, the Company expects that such non-cash charges will be material and that the Company may need to restate its historical financial statements for each of the fiscal years 1999 through 2004, and for the first three quarters of the fiscal year ended December 31, 2005. Such charges may also affect future periods. On May 4, 2006, the Audit Committee of the Company's Board concluded that such financial statements and any related reports of its independent registered public accounting firm should no longer be relied upon.

Any such stock-based compensation charges would have the effect of decreasing income from operations, net income and retained earnings figures contained in the Company's historical financial statements. The Company does not expect that the anticipated restatements would have a material impact on its historical revenues, cash position or operating expenses not related to stock options.

The Special Committee discussed with the Company's independent registered public accounting firm the matters disclosed in this Item 4.02 but, as the internal investigation of the Special Committee has not been completed, the independent registered public accounting firm has not yet had an opportunity to consider the preliminary results of the investigation.

Additionally, the Company is evaluating Management's Report on Internal Controls Over Financial Reporting set forth in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2004. Although the Company has not yet completed its analysis of the impact of this situation on its internal controls over financial reporting, the Company has determined that it is highly likely that it had a material weakness in internal control over financial reporting as of December 31, 2004 and December 31, 2005. A material weakness is a control deficiency, or a combination of control deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financials will not be prevented or detected. If the Company were to conclude that a material weakness existed, it would expect to receive an adverse opinion on internal control over financial reporting from its independent public accounting firm.

The Company intends to file its Annual Report on Form 10-K for 2005 and any financial statements required to be restated, as well as its Form 10-Q for the quarter ended March 31, 2006, as soon as practicable after the completion of the Special Committee's investigation.

A copy of the press release relating to the foregoing is attached hereto as Exhibit 99.1 and is incorporated in this Item 4.02 by reference.

2

**Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers.**

On May 4, 2006, Howard Earhart, resigned as the chairman of the Company's Board of Directors. Mr. Earhart was the Company's chief executive officer, and a director, from 1995 through 2002. Also on May 4, 2006, John Cobb resigned as the Company's chief financial officer. In connection with Mr. Earhart's resignation, the size of the Company's Board was reduced from 9 to 8.

On May 8, 2006, the Company announced that Steven J. Sharp, who has served as a director of the Company since 1988, has been elected chairman of the Board of Directors, succeeding Mr. Earhart. A copy of the press release relating to the foregoing is attached hereto as Exhibit 99.2 and is incorporated in this Item 5.02 by reference.

**Item 8.01 Other Events.**

As announced on March 17, 2006, the Company received a Nasdaq Staff Determination stating that the Company is not in compliance with Marketplace Rule 4310(c)(14) because it has not timely filed its report on Form 10-K for the year ended December 31, 2005 and, therefore, that its securities are subject to delisting from the Nasdaq National Market. On March 22, 2006, the Company requested a hearing with Nasdaq to seek an exception to the filing requirement, which hearing was held on April 12, 2006. On May 2, 2006, Nasdaq notified the Company that the exception had been granted, and that it would continue to list the Company's shares on the Nasdaq National Market, provided that the Company (i) provide Nasdaq with information regarding the final results of the investigation by the Special Committee on or before June 7, 2006, (ii) file its Form 10-K for the year ended December 31, 2005 and all required restatements on or before July 12, 2006, and (iii) file its Form 10-Q for the quarter ended March 31, 2006 on or before August 2, 2006. In the event the Company is unable to comply with the terms of the exception, its securities may be delisted.

On April 25, 2006, a shareholder filed a derivative complaint in the US District Court in the Northern District of California, purportedly on behalf of the Company, against certain executives of the Company and certain members of the Company's Board. The complaint alleges, among other things, that the defendants breached their fiduciary duties between 1998 and 2004 by (i) improperly requesting backdated stock option grants, which were intended to, and did, unduly benefit certain defendants at the expense of the Company, (ii) approving such improper requests and improperly backdating the stock option grants, and (iii) knowingly approving the Company's violations of generally accepted accounting principles. The complaint also alleges that the officer defendants were unjustly enriched by their receipt and retention of the backdated stock option grants.

The Company does not intend to file further current reports on Form 8-K describing additional lawsuits, if any, purporting class action status, in either federal or state court, which are based on allegations substantially similar to those contained in the complaint described herein.

**Item 9.01 Financial Statement and Exhibits.**

   (d)   Exhibits.

| Exhibit Number | Exhibit Title or Description |
|---|---|
| 99.1 | Company Press Release dated May 5, 2006 |
| 99.2 | Company Press Release dated May 8, 2006 |

4

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: May 8, 2006

Power Integrations, Inc.

By: /s/ Balu Balakrishnan
Balu Balakrishnan
Chief Executive Officer

5

## EXHIBIT INDEX

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Power Integrations Press Release dated May 5, 2006 |
| 99.2 | Power Integrations Press Release dated May 8, 2006 |

EXHIBIT 99.1



**For Immediate Release**

Contact :
Joe Shiffler
Power Integrations, Inc.
(408) 414-8528
jshiffler@powerint.com

### Power Integrations Expects Restatement of Financials Related to Stock-Based Compensation

**SAN JOSE, Calif. – May 5, 2006** – Power Integrations, Inc. (Nasdaq: POWI) disclosed on March 13, 2006 that it had created a special committee comprised of disinterested members of its board of directors to conduct an internal investigation of company practices related to stock option grants to officers and directors, and related matters. The special committee is being assisted by independent outside legal counsel and accounting experts. At this time, the special committee has not completed its work or reached final conclusions and is continuing its review. The special committee has reached a preliminary conclusion that the actual dates of measurement for certain past stock option grants differed from the recorded grant dates for such awards. As a result, the company expects to record additional non-cash charges for stock-based compensation expenses in prior periods. Based on the special committee's preliminary conclusion, the company expects that such non-cash charges will be material and that the company may need to restate its historical financial statements for each of the fiscal years 1999 through 2004, and for the first three quarters of the fiscal year ended December 31, 2005. Such charges may also affect future periods. On May 4, 2006, the audit committee of the company's board of directors concluded that such financial statements and any related reports of its independent registered public accounting firm should no longer be relied upon.

Any such stock-based compensation charges would have the effect of decreasing income from operations, net income and retained earnings figures contained in the company's historical financial statements. The company does not expect that the anticipated restatements would have a material impact on its historical revenues, cash position or operating expenses not related to stock options.

On May 4, 2006, Howard Earhart resigned as the chairman of the company's board of directors, and John Cobb resigned as the company's chief financial officer. The board expects to elect a non-executive chairman from among existing independent directors in the near future, and the company plans to initiate a search for a new chief financial officer immediately.

As announced on March 17, 2006, the company received a Nasdaq Staff Determination stating that the company is not in compliance with Marketplace Rule 4310(c)(14) because it has not timely filed its report on Form 10-K for the year ended December 31, 2005 and, therefore, that its securities are subject to delisting from the Nasdaq National Market. On March 22, 2006, the

*—more—*

Power Integrations Expects Restatement of Financials

company requested a hearing with Nasdaq to seek an exception to the filing requirement, which hearing was held on April 12, 2006. On May 2, 2006, Nasdaq notified the company that the exception had been granted, and that it would continue to list the company's shares on the Nasdaq National Market, provided that the company (i) provide Nasdaq with information regarding the final results of the investigation by the special committee on or before June 7, 2006, (ii) file its Form 10-K for the year ended December 31, 2005 and all required restatements on or before July 12, 2006, and (iii) file its Form 10-Q for the quarter ended March 31, 2006 on or before August 2, 2006. In the event the company is unable to comply with the terms of the exception, its securities may be delisted.

The company intends to file its Form 10-K for 2005 and any financial statements required to be restated, as well as its Form 10-Q for the quarter ended March 31, 2006, as soon as practicable after the completion of the special committee's review.

## Note Regarding Forward-Looking Statements

This press release contains forward-looking statements regarding the company that involve risk and uncertainties. There can be no assurances that forward-looking statements will be achieved, and actual results could differ materially from forecasts and estimates. Important factors that could cause actual results to differ materially include: the results of the review by the special committee of matters relating to the company's stock option grants including, but not limited to, the accuracy of the stated dates of option grants and whether all proper corporate procedures were followed; the impact of any restatement of financial statements of the company or other actions that may be taken or required as a result of such reviews; the inability of the company's inability to file reports with the Securities and Exchange Commission; risks associated with the company's inability to meet Nasdaq requirements for continued listing, including possible delisting; and risks of litigation related to the company's stock option grants or any restatement of the financial statements of the company. Additional risk factors associated with the company's business are explained in the company's annual report on Form 10-K, filed with the SEC on March 16, 2005, and its quarterly report on Form 10-Q, filed on November 7, 2005. The company is under no obligation (and expressly disclaims any obligation) to update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

—more—

**About Power Integrations**

Power Integrations, Inc. is the leading supplier of high-voltage analog integrated circuits used in power conversion. The company's breakthrough technology enables compact, energy-efficient power supplies in a wide range of electronic products, in both AC-DC and DC-DC applications. The company's *EcoSmart* energy-efficiency technology, which dramatically reduces energy waste, has saved consumers and businesses around the world more than an estimated $1.5 billion on their electricity bills since its introduction in 1998. For more information, visit the company's website at *www.powerint.com* . For information on global energy-efficiency standards and *EcoSmart* solutions, visit the Power Integrations Green Room at *www.powerint.com/greenroom* .

# # #

Exhibit 99.2



**For Immediate Release**

**Contact:**

Joe Shiffler
Power Integrations, Inc.
(408) 414-8528
*jshiffler@powerint.com*

### Steve Sharp Elected Non-Executive Chairman of Power Integrations
### Board of Directors

**SAN JOSE, Calif. – May 8, 2006** – Power Integrations (Nasdaq: POWI) today announced that Steven J. Sharp has been elected non-executive chairman of the company's board of directors, succeeding Howard Earhart. Mr. Earhart, the company's chief executive officer from 1995 until 2002, served as non-executive chairman from 2002 until his resignation last week.

Mr. Sharp has served as a director of Power Integrations since the company's inception in 1988, and is also a member of the board's nominating and corporate governance committee. From 1991 until 2002 Mr. Sharp was chairman and CEO of TriQuint Semiconductor, a manufacturer of electronic components for the communications industry. He currently serves as non-executive chairman of TriQuint. In addition, he is vice chair of the Oregon chapter of the American Electronics Association, and heads a private foundation that funds research to find the causes of ADD (attention deficit disorder).

Mr. Sharp is a 45-year veteran of the semiconductor industry and has served in director/officer roles in the formative years of Power Integrations, TriQuint, Megatest (now Teradyne), Crystal Semiconductor (now Cirrus Logic), Silicon Architects (now Synopsys) and Volterra. He qualifies as an independent director of Power Integrations according to Nasdaq and SEC rules.

"I am proud to take on the role of non-executive chairman of Power Integrations," said Mr. Sharp. "I believe that Power Integrations has an extremely bright future as the leader in high-voltage power conversion technology, and I look forward to working with CEO Balu Balakrishnan as he and his management team continue to execute their growth strategy."

### Note Regarding Forward-Looking Statements

This press release contains forward-looking statements regarding the company's future that involve risk and uncertainties. There can be no assurances that forward-looking statements will be achieved, and actual results could differ materially from forecasts and estimates. Important factors that could cause actual results to differ materially include: the results of the review by the

–*more* –



special committee of matters relating to the company's stock option grants including, but not limited to, the accuracy of the stated dates of option grants and whether all proper corporate procedures were followed; the impact of any restatement of financial statements of the company or other actions that may be taken or required as a result of such reviews; the inability of the company to file reports with the Securities and Exchange Commission; risks associated with the company's inability to meet Nasdaq requirements for continued listing, including possible delisting; and risks of litigation related to the company's stock option grants or any restatement of the financial statements of the company. Additional risk factors associated with the company's business are explained in the company's annual report on Form 10-K, filed with the SEC on March 16, 2005, and its quarterly report on Form 10-Q, filed on November 7, 2005. The company is under no obligation (and expressly disclaims any obligation) to update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

## About Power Integrations

Power Integrations, Inc. is the leading supplier of high-voltage analog integrated circuits used in power conversion. The company's breakthrough technology enables compact, energy-efficient power supplies in a wide range of electronic products, in both AC-DC and DC-DC applications. The company's *EcoSmart* ® energy-efficiency technology, which dramatically reduces energy waste, has saved consumers and businesses around the world more than an estimated $1.5 billion on their electricity bills since its introduction in 1998. For more information, visit the company's website at *www.powerint.com* . For information on global energy-efficiency standards and *EcoSmart* solutions, visit the Power Integrations Green Room at *www.powerint.com/greenroom* .

# # #

*–more –*

# EXHIBIT G



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

tel 650-614-7400
fax 650-614-7401
WWW.ORRICK.COM

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

June 8, 2006

*VIA FACSIMILE*

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94036

Re:    Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)

Dear Michael:

At the parties' May 31, 2006 pretrial conference, the Court extended damages discovery due, in part, to Power Integrations' continuing investigation of its financial statements. Power Integrations was to have completed its internal investigation by June 7, 2006. Please confirm that Power Integrations has done so and produce all documents concerning that investigation. This will include, but not be limited to, the report of the investigative committee, any notes or documents prepared for or by the committee, and any other documents relating to either Power Integrations' backdating of its stock options or its restatements of its financial reports. If Power Integrations intends to withhold any documents on the basis of privilege, please provide a log identifying such documents and information sufficient to substantiate the asserted privilege.

Further, please confirm that Power Integrations will file its 2005 10-K and all required restatements by July 12, 2006 and that Power Integrations will file its 10-Q for the quarter ended March 31, 2006 by August 2, 2006. In order for Fairchild to supplement its expert report on damages prior to the August 18, 2006 close of damages discovery, Fairchild must receive this discovery by these dates. Please let us know immediately if there is any chance that this will not occur.

Once Power Integrations has provided this needed discovery, Fairchild will continue Mr. Balakrishnan's individual deposition. Fairchild will also notice a 30(b)(6) deposition of Power Integrations (a copy of that notice will be served shortly). Finally, Fairchild will depose Messrs. Earhart and Cobb. Please let us know whether you will represent these individuals and will accept a subpoena on their behalf. These depositions must all occur between August 3 and August 18, 2006 if the parties are to be able to proceed with the damages portion of the trial on October 6, 2006. Please let me know as soon as possible when these deposition can occur.



# ORRICK

Michael Headley
June 8, 2006
Page 2

Finally, during the pretrial hearing, Power Integrations stated that it would not supplement Mr. Troxel's report. If this is true, there is no need to postpone further Mr. Troxel's deposition. Please let us know whether Mr. Troxel would be available for deposition on Friday, June 30, 2006.

Sincerely,

Bas de Blank

cc:     William J. Marsden, Jr.
        Howard G. Pollack

# EXHIBIT H



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

June 8, 2006

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

*VIA FACSIMILE*

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA 94036

    Re:   <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Michael:

    At the parties' May 31, 2006 pretrial conference, the Court extended damages discovery due, in part, to Power Integrations' continuing investigation of its financial statements. Power Integrations was to have completed its internal investigation by June 7, 2006. Please confirm that Power Integrations has done so and produce all documents concerning that investigation. This will include, but not be limited to, the report of the investigative committee, any notes or documents prepared for or by the committee, and any other documents relating to either Power Integrations' backdating of its stock options or its restatements of its financial reports. If Power Integrations intends to withhold any documents on the basis of privilege, please provide a log identifying such documents and information sufficient to substantiate the asserted privilege.

    Further, please confirm that Power Integrations will file its 2005 10-K and all required restatements by July 12, 2006 and that Power Integrations will file its 10-Q for the quarter ended March 31, 2006 by August 2, 2006. In order for Fairchild to supplement its expert report on damages prior to the August 18, 2006 close of damages discovery, Fairchild must receive this discovery by these dates. Please let us know immediately if there is any chance that this will not occur.

    Once Power Integrations has provided this needed discovery, Fairchild will continue Mr. Balakrishnan's individual deposition. Fairchild will also notice a 30(b)(6) deposition of Power Integrations (a copy of that notice will be served shortly). Finally, Fairchild will depose Messrs. Earhart and Cobb. Please let us know whether you will represent these individuals and will accept a subpoena on their behalf. These depositions must all occur between August 3 and August 18, 2006 if the parties are to be able to proceed with the damages portion of the trial on October 6, 2006. Please let me know as soon as possible when these deposition can occur.

US_WEST:260031440.1



**ORRICK**

Michael Headley
June 8, 2006
Page 2

     Finally, during the pretrial hearing, Power Integrations stated that it would not supplement Mr. Troxel's report. If this is true, there is no need to postpone further Mr. Troxel's deposition. Please let us know whether Mr. Troxel would be available for deposition on Friday, June 30, 2006.

     Sincerely,

     Bas de Blank

cc:    William J. Marsden, Jr.
       Howard G. Pollack

# EXHIBIT I



## ORRICK

August 1, 2006

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

**_VIA FACSIMILE_**

Michael R. Headley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94036

Re:    <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Michael:

We received your subpoena to Dr. Keeley. As we have explained – and as Power Integrations has appeared to agree – this deposition should proceed after Mr. Troxel's deposition is completed. Based on Power Integrations' representation during the May 31, 2006 Pre-Trial Conference that Mr. Troxel did not intend to supplement his report in response to Power Integrations' restatement of its financial reports, on June 8, 2006 we requested a date for this deposition. We have not received a response to this request. Please let us know what dates Mr. Troxel will be available for deposition.

On July 26, 2006 we learned for the first time that Mr. Troxel may supplement his expert report. Please let us know as soon as possible the topics that Mr. Troxel will supplement. While we can, perhaps, understand his need to supplement his report to address Power Integrations' restated earnings, it is not appropriate or timely for Mr. Troxel to supplement his report on other topics. Should he seek to do so, we will move to strike the report.

If, notwithstanding Fairchild's concerns, Mr. Troxel supplements his report, Dr. Keeley will require time to review the supplemental report and formulate a response. The parties had previously stipulated to Dr. Keeley's rebuttal report would be due five weeks after Mr. Troxel's initial report. Thus, if Mr. Troxel supplements his report on August 8, 2006, Dr. Keeley will endeavor to serve a rebuttal report by September 12, 2006 and the experts can thereafter be deposed.

Obviously, the parties cannot begin a trial on damages on October 2, 2006 if expert reports and depositions on this issue are continuing in late September. Unfortunately, Power Integrations' refusal to provide Fairchild with any additional damages related discovery prior to August 2, 2006 and the sudden revelation that Power Integrations' damages expert intends to supplement his report leaves no other outcome.

Therefore, Fairchild will move to postpone the damages trial unless Power Integrations confirms that Mr. Troxel will not supplement his report and that Power Integrations will provide all of the relevant damages related discovery by August 2, 2006. To be clear, this discovery



**ORRICK**

Michael R. Headley
August 1, 2006
Page 2

includes the restatements of Power Integrations' past financial reports, Power Integrations current quarterly reports, documents concerning Power Integrations' investigation into its restatement (including Power Integrations' responses to the subpoenas it received from the Department of Justice and the Securities and Exchange Commission) and damages related documents from the litigation between Power Integrations and Systems General before the International Trade Commission. After we have received these documents, we will likely need to schedule the deposition of Power Integrations, Mr. Balakrishnan, and possibly other individuals on these topics.

Sincerely,

Bas de Blank (mrs)

Bas de Blank

cc:    William J. Marsden, Jr.
       Howard G. Pollack

US WEST:260064045.1

# EXHIBIT J

**de Blank, Bas**

---

| | |
|---|---|
| **From:** | Michael Headley [Headley@fr.com] |
| **Sent:** | Wednesday, July 26, 2006 11:31 AM |
| **To:** | VanderZanden, Brian |
| **Cc:** | de Blank, Bas |
| **Subject:** | RE: PI-Fairchild: documents and testimony re U.S. manufacturing, and expert damages discovery |

Dear Brian,

I have yet to receive any production of the documents referenced in your e-mail regarding the Fairchild U.S. manufacturing activity Power Integrations uncovered during the course of this litigation. Fairchild's initial failure to identify this U.S.-based activity, combined with its continued delay in producing documents on the issue, presents a serious breach of Fairchild's discovery obligations, and it is significantly prejudicing Power Integrations' ability to prepare for trial and the 30(b)(6) deposition on this issue. Fairchild's lack of cooperation is also frustrating Power Integrations' damages expert's efforts to revise his report to account for these newly-discovered activities; although we had hoped to wrap up Mr. Troxel's revised damages report by next week, it is clear we will not be able to do so in light of Fairchild's continued refusal to provide the information Mr. Troxel needs to finalize his calculations. Nevertheless, we cannot allow Fairchild to use its own delay as an excuse for throwing off the trial schedule. To that end, we propose the following schedule for the completion of expert damages discovery:

August 8: service of Troxel revised report
August 16: service of Keeley revised report
August 24-25: damages expert depositions in Silicon Valley

This schedule assumes the immediate production of documents regarding Fairchild's U.S. manufacturing activity and takes into account the additional week I offered in response to Bas's earlier request for an extension for expert damages discovery.

I look forward to your response.

Sincerely,

Michael R. Headley
Fish & Richardson P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063-1526
(650) 839-5139 (direct)
(650) 839-5071 (fax)

This e-mail may contain confidential and privileged information. If you received it in error, please contact the sender and delete all copies.

---

**From:** VanderZanden, Brian [mailto:bVanderZanden@orrick.com]
**Sent:** Thursday, July 20, 2006 11:08 AM
**To:** Michael Headley
**Cc:** de Blank, Bas
**Subject:** Document search for the Dupuis deposition

Michael,

I write to notify you of an error I made in the letter I sent you on Tuesday afternoon. In that letter, I erroneously stated that Fairchild hoped to produce documents responsive to the U.S. manufacturing program deposition topics no later than that same day, Tuesday, July 18. What I had intended to write was that Fairchild

intends to make this production no later that Tuesday, July 25. As Bas had previously mentioned, we do not have any documents to produce at this time, however, we are currently working diligently to collect responsive documents.

I apologize for the confusion and for any inconvenience this error may have caused Power Integrations.

Regards,
Brian


**BRIAN VANDERZANDEN**
*associate*
ORRICK, HERRINGTON & SUTCLIFFE LLP
*tel* 650-614-7629
*fax* 650-614-7401
*email* bvanderzanden@orrick.com
www.orrick.com


IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.


NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/


8/10/2006

# EXHIBIT K

**REDACTED**

# EXHIBIT L

**REDACTED**

# EXHIBIT M

# REDACTED

# EXHIBIT N

REDACTED

# EXHIBIT O

**REDACTED**

# EXHIBIT P

**REDACTED**

# EXHIBIT Q



## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

March 23, 2006

Bas de Blank
(650) 614-7343
basdeblank@orrick.com

*VIA FACSIMILE*

Michael Headley
Fish & Richardson P.C.
500 Arguello Street
Suite 500
Redwood City, CA  94036

Re:    <u>Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)</u>

Dear Michael:

I write in response to your letter of March 21, 2006. As was clearly documented in our correspondence, Mr. Kim had no plans to travel to the United States within the forty day period set by the Court for his deposition. Therefore, pursuant to the Court's Order, Mr. Kim was willing to make a special trip to the United States entirely for the purpose of being deposed by Power Integrations on February 23, 2006. Power Integrations refused to depose Mr. Kim at that time.

As you fully know, such a trip is a serious effort on the part of Mr. Kim, a high level executive of non-party Fairchild Korea. Travel to and from Korea takes a day in each direction, deposition preparation would take another day, and the five hour deposition, itself, would take a day. Thus, Mr. Kim would lose a week of work even though, as the Court recognized, Mr. Kim does not have discovery relevant to this case and is not even employed by any of the parties.

Given Power Integrations' insistence and the Court's order, Fairchild immediately checked with Mr. Kim to determine whether he had any trips planned to the United States. He did not but, with great effort, was able to clear a week of his time in order to be deposed by Power Integrations. On February 8, 2006 – a mere six days after the hearing – I wrote and indicated that Mr. Kim would travel to California for a deposition on February 23, 2006. This gave you fifteen days to prepare for a five hour deposition and was within the period ordered by the Court.

Power Integrations refused to depose Mr. Kim on February 23, 2006. Instead, you demanded that Mr. Kim rearrange his entire schedule so that he could be deposed at Power Integrations' convenience a single day earlier. You offered no explanation as to why none of numerous attorneys representing Power Integrations would be available to depose Mr. Kim on February 23, 2006.

Fairchild immediately sought to determine whether Mr. Kim could rearrange his plans to accommodate Power Integrations' preferences. As I explained less than a day later, however, this was not possible. Four days later, you wrote back saying that Power Integrations "sees no good reason for Mr. Kim to make a special trip to the US for a brief deposition next week" and that Power Integrations was "amenable to scheduling Mr. Kim's deposition on his next trip to the United



**ORRICK**

Michael Headley
3/23/2006
Page 2

States for work." Thus, we understood that Power Integrations refused to depose Mr. Kim on February 23, 2006 and would no longer demand that he make a special trip to the United States for his deposition.

In order to make sure that there was no possible confusion, however, I promptly wrote to explain that Mr. Kim does not regularly travel to the United States and that it was quite possible that he would not travel to the United States prior to trial in this matter. Given this understanding, I again suggested that if Power Integrations wished to depose Mr. Kim, it should do so on February 23, 2006. On February 15, 2006, you wrote a final time on the subject indicating that Power Integrations absolutely would not proceed with Mr. Kim's deposition on February 23, 2006.

The Court ordered Power Integrations to complete Mr. Kim's deposition within "30 to 40 days" after the February 2, 2006 hearing – in other words, no later than March 14, 2006. Mr. Kim was willing to travel to the United States during this period and make himself available for deposition at your offices. You refused to proceed with this deposition, even though you were clearly advised that Mr. Kim would most likely not be available again in the future. Now, you demand that he drop everything, cancel a week of work, and travel to the United States for deposition sometime "before the end of summer".

Power Integrations is being unfair to both Fairchild and Mr. Kim. Mr. Kim has no plans to travel to the United States and does not have the free week necessary to travel for his deposition. Should you once again wish to depose Mr. Kim, we can discuss scheduling this deposition in Korea.

Further, we are simply confused by your continued demands concerning Fairchild's alleged "design win tracking database". Quite simply, we have long since produced all that information – indeed, we have produced more than was ordered by the Court. As I explained at the February 2, 2006 Hearing, the "design win tracking database" does not – and never has – contained relevant information. If it had, it would have been produced along with Fairchild's other documents. Notwithstanding its lack of relevance, Power Integrations sought to compel its production. Fairchild promptly produced it and now Power Integrations complains that – as Fairchild has stated all along – the "design win tracking database" does not contain any relevant information.



**ORRICK**

Michael Headley
3/23/2006
Page 3


    Your letter suggests that Fairchild's production is incomplete or that Fairchild has withheld portions of the "design win tracking database." This is simply not true. To be absolutely clear, Fairchild has produced the Excel "design win tracking database" in its entirety. Fairchild has not withheld information based on geographic region or any other criteria. Indeed, to avoid precisely such accusations, Fairchild produced the entire "design win tracking database", including the portions that relate to non-accused devices. There are no other portions of the "design win tracking database" for Fairchild to produce. I trust this allays your concerns.


                                      Sincerely,

                                        Bas de Blank

cc:    William J. Marsden, Jr.
       Howard G. Pollack

# EXHIBIT R

08/03/2006 09:43 FAX 6506395C    FISH & RICHARDSON    ⊠002

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Frederick P. Fish
1855-1930

Telephone
650 839-5070

W.K. Richardson
1859-1951

Facsimile
650 839-5071

Web Site
www.fr.com

**VIA FACSIMILE & U.S. MAIL**
650/614-7401

August 3, 2006

Michael R. Headley
(650) 839-5139

Email
headley@fr.com

Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:    Power Integrations Inc. v. Fairchild Semiconductor Int'l
USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Bas:

I received your letter of August 1 seeking to delay the completion of damages discovery and to put off the damages trial in this case. There is no reason for any delay, and Power Integrations will oppose it. Power Integrations has repeatedly set forth a schedule that allows for the completion of expert damages discovery this month, as follows:

- Troxel Summary Report – August 8

- Keeley Summary Report – August 16

- Troxel Deposition – August 24

- Keeley Deposition – August 25

We have subpoenaed Dr. Keeley on this schedule and expect the discovery will proceed accordingly. Mr. Troxel will supplement his report based only on new information, including Fairchild's U.S. manufacturing activity, the topics in his April Supplemental Report, and the Court's orders. His Supplemental Report does not address anything related to Power Integrations earnings restatements, which is not relevant to any of the damages issues in this case, and the vast majority of his work will not change.

Given that Fairchild already has deposed Mr. Troxel at length and given the narrow focus of his supplemental report, there is no reason to believe Fairchild will need five weeks to respond as you suggest, particularly as Fairchild accepted a three week schedule for the entire sequence of supplemental damages discovery at the May 31 pretrial conference. In particular, Fairchild has failed to explain why Dr. Keeley requires any further information at all, let alone how any restatement of Power Integrations' earnings with respect to stock options could possibly affect Dr. Keeley's calculations.

FISH & RICHARDSON P.C.

Bas de Blank
August 3, 2006
Page 2

As for the host of new discovery you request in your letter, it will not be forthcoming, as there is no relevance to or need for the materials you have requested regarding the ITC (which does not provide for damages as a remedy) or matters involving the SEC. Indeed, Fairchild's last-minute request for this discovery belies the suggestion that the information is necessary for Dr. Keeley to do his work.

It is abundantly clear that Fairchild has seized on the irrelevant stock option issue as a tool for delaying trial. We are confident the Court will see through this charade, and will consider Fairchild's refusal to engage in the remaining damages discovery to be a violation of the direction it gave at the pretrial conference. If Fairchild refuses to proceed with expert damages discovery, including presenting Dr. Keeley for his first and only deposition on the current schedule, it does so at its own peril, as Power Integrations will move to preclude Fairchild from presenting any testimony from Dr. Keeley at the trial commencing October 2.

Sincerely,

Michael R. Headley

50363856.doc

# EXHIBIT S

**REDACTED**

# EXHIBIT T

**REDACTED**

# EXHIBIT U

**REDACTED**

# EXHIBIT V

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

Plaintiff,

v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

Defendants.

C.A. No. 04-1371-JJF

## PLAINTIFF POWER INTEGRATIONS, INC.'S RESPONSES TO DEFENDANTS' SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Power Integrations, Inc. ("Plaintiff") hereby responds and provides objections to Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation's ("Defendants") Second Set of Requests for Production (154-192). The responses and objections are made according to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware and are based upon information presently available to Plaintiffs. These responses and objections are without prejudice to Plaintiffs' right to use or rely on subsequently discovered information.

## GENERAL OBJECTIONS

1.     Power Integrations will confer with Fairchild regarding a mutually agreeable date, time, place, and manner of inspection.

2.     Power Integrations objects to each and every request to the extent that it calls for documents that are protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity. Any production Power Integration

1

## RESPONSES TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 154:

All documents and things concerning or filed in *In the Matter of Power Supply Controllers*, International Trade Commission Docket No. 2428, including, but not limited to, all documents or pleadings concerning the existence of a domestic industry for PWM devices.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 154:

Power Integrations objects to this request to the extent that is calls for information protected by the work product and attorney-client privilege. Power Integrations also objects to this request in that it is irrelevant, vague, ambiguous, overly broad and seeks information outside the scope of this litigation, and therefore is not reasonably calculated to lead to the discovery of relevant information. Power Integrations further objects to this request in that the burden of producing the requested documents far outweighs their relevance; the request calls for documents that are publicly available, and therefore accessible to Fairchild, and the cited ITC Investigation does not involve any of the patents at issue in this case.

### REQUEST FOR PRODUCTION NO. 155:

All documents and things concerning Klas H. Eklund, including, but not limited to, all communications and agreements between Power Integrations and Klas H. Eklund.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 155:

Power Integrations objects to this request to the extent that it is irrelevant, vague, ambiguous, overly broad, and unduly burdensome. Power Integrations further objects to this request to the extent that it calls for documents that are protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving these objections and the General Objections which are incorporated herein, Power Integrations states that it has produced responsive documents, including: PIF 020414-PIF 020628, PIF

3

requested. However, to the extent that this request could be considered as a request for production, Power Integrations objects to this request as irrelevant, vague, ambiguous, overly broad, and unduly burdensome. Power Integrations further objects to this request to the extent that it calls for documents that are protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing general objections which are stated herein, with the express incorporation of the General Objections asserted above, Power Integrations states the following is a non-exhaustive list of documents produced by Fairchild providing evidence of final products incorporating the Accused Products that are likely to be imported into the United States: PIF 052422-PIF 052522. Further, Power Integrations will be relying upon documents produced by Fairchild.

REQUEST FOR PRODUCTION NO. 177:

All documents and things concerning litigation between Power Integrations and Systems General including, but not limited to, all pleadings, discovery, briefs, motions, orders, stipulations, memorandums, or agreements.

RESPONSE TO REQUEST FOR PRODUCTION NO. 177:

Power Integrations objects to this request to the extent that is calls for information protected by the attorney-client privilege and/or work product doctrine. Power Integrations also objects to this request in that it is irrelevant, vague, ambiguous, overly broad and seeks information outside the scope of this litigation, and therefore is not reasonably calculated to lead to the discovery of relevant information. Power Integrations further objects to this request in that the burden of producing the requested documents far outweighs their relevance; the request seeks documents that are publicly available, and therefore accessible to Fairchild. Further, the litigation between Power Integrations and Systems General is ongoing and does not involve any patents involved in this lawsuit.

15

Dated: June 30, 2005                    FISH & RICHARDSON P.C.


                                        By: _____
                                            William J. Marsden, Jr. (#2247)
                                            Sean P. Hayes (#4413)
                                            John F. Horvath (#4557)
                                            919 N. Market Street, Suite 1100
                                            P.O. Box 1114
                                            Wilmington, DE 19899-1114
                                            Telephone: (302) 652-5070
                                            Facsimile: (302) 652-0607


                                            Frank E. Scherkenbach
                                            225 Franklin Street
                                            Boston, Massachusetts 02110-2804
                                            Telephone: (617) 542-5070
                                            Facsimile: (617) 542-8906


                                            Howard G. Pollack
                                            Gina M. Steele
                                            Michael R. Headley
                                            500 Arguello Street, Suite 500
                                            Redwood City, California 94063
                                            Telephone: (650) 839-5070
                                            Facsimile: (650) 839-5071


                                            Attorneys for Plaintiff
                                            POWER INTEGRATIONS, INC.


50286147.DOC


25

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2006, the attached **REDACTED PUBLIC VERSION OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SECOND SUPPLEMENTAL REPORT ON DAMAGES** was served upon the below-named counsel of record at the address and in the manner indicated:

William J. Marsden, Jr., Esquire                    HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19801

Frank E. Scherkenbach, Esquire                    VIA FEDERAL EXPRESS
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Michael Kane, Esquire                              VIA FEDERAL EXPRESS
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402

Howard G. Pollack, Esquire                         VIA FEDERAL EXPRESS
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063


/s/ Tiffany Geyer Lydon
_____
Tiffany Geyer Lydon