IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Brian H. VanderZanden
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  September 1, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY JURY INSTRUCTIONS**

## INTRODUCTION

Ladies and gentlemen, you have been selected as jurors in this case. What I will now say is intended to introduce you to the trial and the law that you will apply to the evidence that you will hear. I will give you more detailed instructions on the law at the end of the trial. All of my instructions are important, and you should consider them together as a whole. Please listen carefully to everything I say.

This is a case about patent infringement. The parties are Power Integrations, the plaintiff, and Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc., the defendants. Power Integrations owns United States Patent Numbers 6,249,876, 6,107,851, 6,229,366, and 4,811,075, which you may hear called by the lawyers and witnesses in the case by their last three numbers, the '876, '851, '366, and '075 patents, or by the last name of the lead inventors, here, Klas Eklund or Balu Balakrishnan. Power Integrations contends that Fairchild infringes the '876, '851, '366, and '075 patents. Fairchild contends that it did not infringe the '876, '851, '366, and '075 patents. Fairchild also contends that the '876, '851, '366, and '075 patents are invalid.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

**PATENT LAW – GENERAL**

The Federal Judicial Center video will be shown at this time.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## DUTIES AS JURORS

Now a word about your duties as jurors. Trial by jury is one of the cornerstones of our free society. Faithful performance by you of your duties is vital to the administration of justice.

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you will see and hear in court. Deciding what the facts are is your job, not mine, and nothing that I will say or do should influence your view of the facts in any way. In deciding what the facts are, you must not engage in guesswork or speculation. You must not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. Each side is entitled to the same fair and impartial consideration.

Your second duty is to take the law that I give you and apply it to the facts. It is my job to instruct you about the law, and you are bound by the oath you just took to follow my instructions, even if you personally disagree with them. That includes these instructions and the instructions that I will give you during and after the trial. All of my instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

**BURDEN OF PROOF**

Power Integrations has the burden to prove patent infringement by what is called a preponderance of the evidence. That means Power Integrations has to produce evidence that, when considered in light of all of the facts, leads you to believe that what Power Integrations claims is more likely true than not. To put it differently, if you were to put the Power Integrations' and Fairchild's evidence on the opposite sides of a scale, the evidence supporting the plaintiff's claims would have to make the scales tip somewhat on his side.

In this case, Fairchild is urging that Power Integrations' patents are not valid. A patent, however, is presumed to be valid. Accordingly, Fairchild has the burden to prove a patent is not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Some of you may have heard the phrase " proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## EVIDENCE

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Nothing else is evidence. The lawyers' statements and arguments are not evidence; their questions and objections are not evidence. My comments or questions are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence. It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by any objection or by my reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Make your decisions about the trial based only on the evidence, as I have defined it here, and nothing else.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## WITNESSES - CONFLICTS IN TESTIMONY

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. For example, you may be guided by the appearance and demeanor of the witnesses as they testified and the witnesses' apparent fairness in giving their testimony. Other factors may include evidence to the contrary of the testimony given or evidence that at some other time the witness said or did something (or failed to say or do something) that was different from the testimony the witness gave at trial. You may also consider any bias or interest the witness may have in the outcome of these proceedings.

You should remember that a simple mistake does not necessarily mean that the witness is not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness makes a misstatement, you must consider whether it is simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find the testimony in this case to be in conflict, it will be your duty at the end of the case to reconcile the conflicts if you can. If you cannot do so, it is your duty to disregard that portion of the testimony that you, in your judgment, deem not worthy of credit.

Lastly, the number of witnesses presented is not important; concentrate on how believable the witnesses are and how much weight you believe their testimony deserves.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

In this trial, the parties may present "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness that, if you believe the testimony, directly proves a fact. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of facts and circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, is permitted to state an opinion on those technical matters.

The value of this kind of testimony depends upon the qualifications and skill of the witness, the sources of the witness's information, and the reasons supplied for any opinions given. You should consider this kind of testimony like all other testimony you hear and weigh it by the same tests. However, as with any other witness, you are not required to accept any expert's opinions. It will be up to you to decide whether to rely upon them.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## GENERAL INSTRUCTION

Until this case is submitted to you for your deliberation, you are to keep an open mind and not decide any issue in this case. You also must not discuss this case with anyone, remain within hearing of anyone discussing it, or read, watch, or listen to any discussion of the case in any news or entertainment media. After this case has been submitted to you, you must discuss this case only in the jury room when all members of the jury are present.

It is important that you wait until all the evidence is received and you have heard my instructions on the applicable rules of law before you deliberate among yourselves. The only evidence you may consider will be the evidence presented at trial. Because of this, you should not attempt to gather any information on your own that you think might be helpful. Do not do any outside reading on this case and do not in any other way try to learn about the case outside the courtroom.

The reason for these rules, as I am certain you will understand, is that you must decide this case solely on the evidence presented at the trial.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## COURSE OF THE TRIAL

The case will now begin.

First, Power Integrations may make an opening statement outlining its case. Then Fairchild may make an opening statement outlining its case. Neither side is required to make an opening statement. Opening statements are not evidence; their only purpose is to help you understand what the evidence will be.

Next, the parties will present their evidence. Power Integrations will first introduce the evidence that it believes will support its claims. When Power Integrations is finished, Fairchild will introduce evidence to defend against Power Integrations' claims. Power Integrations then has the opportunity to offer rebuttal evidence.

After you have heard all of the evidence, I will instruct you on the law that you must apply in this case. Then each side may make a closing argument, although no one is required to do so. The closing arguments are not evidence; their only purpose is to give each side the opportunity to summarize its case and to help you understand the evidence it has presented.

Finally, after the closing arguments, you will deliberate and arrive at your verdict.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

## GLOSSARY OF PATENT TERMS

| | |
|---|---|
| Assignment | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| Claims | That part of a patent which defines the metes and bounds of the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| Disclosure of description | That part of the patent specification which explains how the invention works and usually includes a drawing. |
| File wrapper/File history | The written record of proceedings in the Patent Office including the original patent application and subsequent communications between the Patent Office and applicant. |
| Patent Application | The initial papers filed in the United States Patent and Trademark Office (patent Office or PTO) by an applicant. These typically include a specification, drawings and the oath (Declaration) of applicant. |
| Patent Examiners | Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and the disclosure adequately describes the invention. |
| Prior Art | Any information which is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to his/her application. |
| References | Any item of prior art (publication or patent) used to determine patentability. |
| Specification | That part of the patent application or patent which describes the invention and concludes with one or more claims. |

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

   v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

        Defendants.

C.A. No. 04-1371 JJF

**FINAL JURY INSTRUCTIONS**

**I**    **GENERAL INSTRUCTIONS**

**I.2.2   INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.

You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 1.1*

### I.2.2   JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 1.2*

15

**I.2.2    BURDEN OF PROOF**

This is a civil case in which Power Integrations, Inc. is charging Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, which are collectively referred to as "Fairchild," with patent infringement. Power Integrations has the burden of proving patent infringement and its claims of damages by what is called a preponderance of the evidence. That means Power Integrations has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Power Integrations claims is more likely true than not. To put it differently, if you were to put Power Integrations' and Fairchild's evidence on the opposite sides of a scale, the evidence supporting Power Integrations' claims would have to make the scales tip somewhat on Power Integrations' side.  If Power Integrations fails to meet this burden, your verdict must be for Fairchild.

In this case, Fairchild is urging that Power Integrations' patents are not valid. A patent, however, is presumed to be valid. Accordingly, Fairchild has the burden to prove the patent-in-suit is not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Power Integrations must also prove its claims of willful infringement by clear and convincing evidence rather than preponderance of the evidence, the standard that applies to Power Integrations' other claims in this case.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and does not play any part in this case. Therefore, you should not consider it at all in your deliberations.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 1.3*

**I.2.2   EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

Do not let any witness' nationality or ethnic heritage, or failure to speak the English language, influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that has been played or read to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

Similarly, no inferences should be drawn from an attorney's objections or my rulings on those objections.  Remember that it is the attorney's duty to object to evidence that the attorney thinks is not admissible.  My rulings do not indicate any opinion I may hold about the credibility of the evidence that was objected to.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

<u>Source</u>:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.2.2    CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.5.1    USE OF NOTES**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

### I.2.2  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

### I.2.2    CREDIBILITY OF WITNESSES

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

<u>Source</u>:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.2.2   NUMBER OF WITNESSES**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.2.2    EXPERT WITNESSES**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – a person called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it. In addition, you should consider whether the information upon which the expert bases his opinion is reliable and you should consider any question of reliability of that information when you evaluate the experts' testimony.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del.; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.2.2    DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**I.2.2    DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## II    THE PARTIES AND THEIR CONTENTIONS

### II.2.2  THE PARTIES

The plaintiff in this case is Power Integrations, Inc. The defendants are Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation. I will refer to plaintiff as "Power Integrations." I will refer to defendants as "Fairchild."

**II.2.2  POWER INTEGRATIONS' CONTENTIONS**

Power Integrations contends that Fairchild has infringed, and continues to infringe, various claims of Power Integrations' patents by making, using, and selling within the United States certain integrated circuits, or "chips," for use in power supplies. Specifically, Power Integrations charges that Fairchild has infringed, and continues to infringe, claims 1, 17, and 19 of U.S. Patent 6,249,876; claims 1, 2, 4, 10, 11, 13, and 16 of U.S. Patent 6,107,851; claims 1, 2, 9, 10, 14, and 16 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075. I will refer to these four patents collectively as the "patents-in-suit," or individually by the last three numbers of the patents.  **[POWER INTEGRATIONS NEEDS TO REDUCE THE NUMBER OF ASSERTED CLAIMS AS IT HAS AGREED.]**

## II.2.2  FAIRCHILD'S CONTENTIONS

Fairchild contends that its products do not infringe, literally or under the doctrine of equivalents, any of the asserted claims of the patents-in-suit. Fairchild also contends that the Power Integrations patents-in-suit are not valid.

**II.2.2  SUMMARY OF PATENT ISSUES**

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

**1.**    Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has infringed any of the asserted claims of the patents-in-suit.

**2.**    If you find any of the asserted claims of the patents-in-suit are infringed, whether Power Integrations has proven by clear and convincing evidence that Fairchild's infringement was willful.

**3.**    Whether Fairchild has proven by clear and convincing evidence that any of the asserted claims of the patents-in-suit are invalid.

**4.**    If you find any of the asserted claims of the patents-in-suit are valid and infringed, the amount of damages that Power Integrations has proven by a preponderance of the evidence is due to it.

## III     THE PATENT CLAIMS

## III.2.2 PATENT CLAIMS GENERALLY

Deciding whether a claim has been directly infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law.  In the second step, you must compare each claim as I have interpreted it to each of the accused products to determine whether every element of the claim can be found in that accused product.  This element-by-element comparison is your responsibility as the jury for this case.

Before you can decide whether or not Fairchild has infringed any of Power Integrations' patents, you will have to understand the patent "claims." Patent claims are the numbered paragraphs at the end of a patent. The patent claims involved here are claims 1, 17, and 19 of U.S. Patent 6,249,876; claims 1, 2, 4, 10, 11, 13, and 16 of U.S. Patent 6,107,851; claims 1, 2, 9, 10, 14, and 16 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075.  **[POWER INTEGRATIONS NEEDS TO REDUCE THE NUMBER OF ASSERTED CLAIMS AS IT HAS AGREED.]**

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Claims may be directed to products, such as machines or chemicals, or they may be directed to methods for making or using a product. Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

When making your decision regarding infringement, you should not compare Fairchild's products with any specific example set out in the patents-in-suit, or with any product manufactured by Power Integrations. Rather, you must only compare Fairchild's products with

the asserted claims of the patents-in-suit.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.1; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**III.2.2 DEPENDENT AND INDEPENDENT CLAIMS**

There are two different types of claims in the patents. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claims 1 and 17 of the '876 patent are independent claims. You know this because each of these claims mentions no other claims. Accordingly, the words of each of these claims are read by themselves in order to determine what each of the claims covers.

Claim 19 of the '876 patent, on the other hand, is a dependent claim. It refers to claim 17. For a Fairchild product to infringe a dependent claim 19, the Fairchild product must have all the elements of both claim 17 and claim 19. Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

The other independent claims are claim 1 and 11 of the '851 Patent, Claims 1 and 9 of the '366 Patent, and Claim 1 of the '075 Patent. The other dependent claims are Claims 2, 4, 10, 13 and 16 of the '851 Patent, Claims 2, 10, 14, and 16 of the '366 Patent, and Claim 5 of the '075 Patent.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.2*

**III.2.2 CONSTRUCTION OF CLAIMS**

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of claim.

You must apply the meaning that I give in each patent claim to decide if such claim is valid and infringed. You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here. The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied:

[insert claim constructions]

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.2*

### III.2.2 MEANS-PLUS-FUNCTION CLAIMS

Claims 1 and 10 of the '366 Patent and claims 4 and 16 of the '851 Patent have what are known as a "means-plus-function" element – specifically, the "soft start circuit" element. The claim defines this element as a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs and glue; or an inventor could discuss in the patent the use of glue for attaching legs and then claim a table as being a tabletop, legs and means for attaching the legs to the tabletop. The means-plus-function element would cover glue and any equivalent structure that performed the required function of "attaching the legs to the tabletop."

I will now explain the four special rules that apply to this type of claim language. First, the accused device must perform the function as specified in the claim. If not, the claim containing that means-plus-function element is not infringed.

Second, if Fairchild's accused product does perform the required function, you must identify the structure in Defendant's accused product that actually performs this function.

Third, you must decide whether the technology of this structure in Defendant's accused product was known as of the date the '366 and '851 patents issued.

Finally, you must determine whether that accused structure is the same as or equivalent to the following structure identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date the patent issued.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.7*

## IV     PATENT INFRINGEMENT

### IV.2.2 PATENT INFRINGEMENT GENERALLY

A patent owner may enforce its right to stop others from making, using, importing, selling, or offering to sell the patented invention within the United States by filing a lawsuit for patent infringement. Here, Power Integrations, the patent owner, has sued Fairchild, the accused infringer, and has alleged that certain Fairchild products infringe one or more claims of Power Integrations' patents-in-suit.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell, or imports, within the United States without the patent owner's permission, any product or method legally protected by at least one claim of a patent before the patent expires, infringes the patent.

There are several ways to infringe a patent. One may directly infringe a patent, either literally or under the doctrine of equivalents. Alternatively, one may indirectly infringe a patent, by inducing others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**IV.2.2 INFRINGEMENT – IMPORTATION BY FAIRCHILD**

I just told you that one of the ways that a patent may be infringed is if a person imports into the United States, without the patent owner's permission, a product, apparatus or method legally protected by at least one claim of a patent, before the patent expires. To "import" simply means to bring goods into the United States from another country. Fairchild can be liable for infringement by importation only if Fairchild itself brings infringing products into the United States. You cannot find that Fairchild has committed infringement by importation based on another person or company bringing products into the United States, even if those products were manufactured by Fairchild.

<u>Sources & Comments</u>:

*Bristol-Myers Co. v. Erbamont Inc.*, 723 F. Supp. 1038, 1044 (D. Del. 1989); *International Rectifier Corp. v. Samsung Electronics, Ltd.*, 361 F.3d 1355, 1360-61 (Fed. Cir. 2004).

**IV.2.2 INFRINGEMENT – OFFER FOR SALE**

I just told you that one of the ways that a patent may be infringed is if a person offers to sell in the United States, without the patent owner's permission, a product, apparatus or method legally protected by at least one claim of a patent, before the patent expires. Power Integrations has agreed that no part of its case is based on "offers to sell" infringing products, as distinguished from actual sales. Therefore you should not consider the issue of whether there were infringing "offers to sell" in this case.

**IV.2.2 DIRECT INFRINGEMENT – LITERAL INFRINGEMENT**

For Fairchild's product to literally infringe any one of Power Integrations' patent claims, Fairchild's product or use of its product must include each and every element in that claim. If Fairchild's product or use of its product omits any single component recited in Power Integrations' patent claim, Fairchild does not literally infringe that claim. If you find, with respect to any claim, that Power Integrations disclaimed a particular scope or feature, then the presence of that scope or feature in Fairchild's products cannot be the basis for a finding of literal infringement. For instance, if you find that PI disclaimed DMOS devices during the prosecution of the '075 Patent and if you find that the accused FC devises are DMOS devices, then the accused FC devices cannot infringe the '075 patent. You must determine literal infringement with respect to each patent claim and each accused product individually.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.1; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC* Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.; Ballard Medical Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1359 (Fed. Cir. 1991) (claim scope disclaimed during prosecution cannot be asserted as a basis for literal infringement).

**IV.2.2 DOCTRINE OF EQUIVALENTS**

If you do not find literal infringement, you may consider infringement under the doctrine of equivalents. The doctrine of equivalents does not apply to your analysis of the '075 Patent, as Power Integrations has agreed that Fairchild does not infringe the '075 Patent under the doctrine of equivalents. I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

As I have noted, to infringe a patent, every claim element must be present in the accused product. A claim element may be present in an accused product in one of two ways, either literally or under the doctrine of equivalents. A claim element is literally present if it exists in the accused product just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused product under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused product are insubstantial. One way to determine this is to look at whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for Fairchild's product or use of its product to infringe any one of Power Integrations' asserted claims under the doctrine of equivalents, the element of a patent claim which is not literally found in a Fairchild product must be present by equivalence. Therefore, the question is whether the accused product contains an equivalent for each element of the claim that is not literally present in the accused product. The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a whole.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Fairchild's product and its components are equivalent to what is defined in Power Integrations' claims is to be determined as of the time of the alleged

infringement.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.4*

**IV.4(a)    SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED**

There are three situations wherein resort to the doctrine of equivalents to find infringement is not permitted.

First, resort to the doctrine of equivalents to find infringement is not permitted if you find that the Fairchild is merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office. Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to the asserted claim, but broad enough to literally cover the accused product or method.

Second, resort to the doctrine of equivalents to find infringement is not permitted if you find that the patent owner is trying to recapture that which he gave up in the Patent Office to distinguish the invention from what was in the public domain prior to his invention. As you have already heard, during prosecution of the patent, arguments and amendments are often made in an attempt to convince the Patent Examiner and the Patent Office that the claimed invention is entitled to a patent in view of the prior art before the Examiner. The applicant, in other words, may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims so that they are distinguished from the prior art. If the inventor, when he was in the process of obtaining one of the Power Integrations patents, limited a claim in some way in order to argue that it was different from what was in the public domain, then he is not now free to assert a broader view of his invention by broadening the claims through the doctrine of equivalents in an effort to recapture that which he surrendered.  Sometimes patent claims, however, are amended, not to avoid what was in the public domain, but to clarify indefinite or ambiguous terms. If you find that an amendment was made to clarify a claim for that sort of reason and not in an effort to avoid what was in the public domain, the doctrine of equivalents can still be applied.

42

Third, you may not find infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is missing from the accused device. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Sources & Comments:

Instruction 3.10, 1993 District of Delaware Patent Instructions (**first two exceptions**); Instruction 3.5, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004) (third exception); Prosecution History Estoppel Instruction, American Intellectual Property Law Association Model Jury Instructions (1998); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685, 14 U.S.P.Q.2d 1942, 1948-9 (Fed. Cir.), cert. denied, 111 S. Ct. 537 (1990) (first exception); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362-63, 219 U.S.P.Q. 473 (Fed. Cir. 1983); *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1243, 222 U.S.P.Q. 649 (Fed. Cir. 1984); Moeller v. Ionetics, 794 F.2d 653, 229 U.S.P.Q. 992, 996 (Fed. Cir. 1986); *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 230 U.S.P.Q. 45, 48 (Fed. Cir. 1986); *Graham v. John Deere Co.*, 383 U.S. 1, 33-34, 148 U.S.P.Q. 459 (1966); *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 673 (Fed. Cir.), *cert. denied*, 469 U.S. 1037 (1984); Kinzenbaw v. Deere & Co., 741 F.2d 383, 389, 222 U.S.P.Q. 929 (Fed. Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985); *Coleco Industries, Inc. v. ITC*, 573 F.2d 1247, 197 U.S.P.Q. 472 (C.C.P.A. 1978); *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1115, 219 U.S.P.Q. 185 (Fed. Cir. 1983) (second exception); *Corning Inc. v. SRU Biosystems*, 400 F. Supp. 2d 653, 658-59 (D. Del. 2005) (Farnan, J.) (third exception).

**IV.2.2  INDIRECT INFRINGEMENT – GENERALLY**

In addition to stopping infringement by those who are directly infringing, a patent owner also has the right to stop those who are known as "indirect infringers." A holder of a patent that describes a process or method in its claims often must rely on claims of indirect infringement to protect his or her rights. That is, without liability for indirect infringement, a company could manufacture a machine to perform a process described in a patent claim and then sell the machine without fear of recourse by the patent holder.  Encouraging or inducing others to infringe a patent is known as "inducing infringement." I will explain to you in a moment the precise requirements for finding someone has induced infringement by another person.

In this case, Plaintiff accuses Defendant of inducing infringement of ___ claims of the ___ patent. It is your job to determine whether Power Integrations has proven inducement by a preponderance of the evidence. Keep in mind that there can be no indirect infringement unless someone is directly infringing the patent. Thus, to prove that Fairchild is inducing another person to infringe, Power Integrations must prove by a preponderance of the evidence that another person is directly infringing a claim of the patent. Such proof may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.7*

**IV.5.1 INDUCING PATENT INFRINGEMENT**

In this case, selling products outside the United States is not enough to make Fairchild an infringer, even if someone else later imports those products into the United States.  Anonly of importation, such as  directed to the United States  *; International Rectifier Corp. v. Samsung Electronics, Ltd.*, 361 F.3d 1355, 1360-61 (Fed. Cir. 2004); *Agere Systems, Inc. v. Atmel Corp.*, 2004 WL 945162, at *11-*12 (E.D.Pa. Apr 30, 2004). *We cannot determine whether an instruction on inducement is appropriate and what that instruction should be until Power Integrations identifies the alleged direct infringer and specifies how it contends Fairchild induced that infringement.*

**IV.2.2 WILLFUL INFRINGEMENT**

Power Integrations contends that Fairchild has willfully infringed the patent claims.

When a person becomes aware that a patent may have relevance to their activities, that person has a duty to exercise due care and investigate whether or not their activities infringe any valid claim of the patent.  If that person does not do so and infringes the patent claims, then the infringement is willful.  Although Power Integrations must prove infringement by a preponderance of the evidence, Power Integrations must prove that Fairchild willfully infringed by the higher burden of clear and convincing evidence.

To establish willful infringement, Power Integrations must prove two things with clear and convincing evidence:

      1.      Fairchild was aware of the patent.

      2.      Fairchild acted without having a reasonable good faith belief that the patent was invalid or that the patent was not infringed.

To determine whether Fairchild acted with a reasonable good faith belief or whether Fairchild willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by Fairchild in this trial and the following factors:

      1.      In designing the product accused of infringement, whether Fairchild intentionally copied Power Integrations's invention or a product made by Power Integrations that is covered by the patent, or whether Fairchild instead tried to "design around" the patent by designing a product that Fairchild believed did not infringe the patent claims.  Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

      2.      When Fairchild became aware of the patent, whether Fairchild formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Fairchild obtained and followed the advice of a competent lawyer.  Although the absence of an opinion of counsel does not require you to find willfulness, the obtaining and following of counsel's advice may be evidence that infringement was not willful.

Keep in mind that a determination by you that Fairchild has infringed the patent does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Fairchild had a good faith belief that it did not infringe or that the patent was invalid, and if its belief was reasonable under all the circumstances.

Sources & Comments:

Instruction 3.13, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004), slightly modified from *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); *Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 569 (D. Del. 2003); *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 843 (D. Del. 1995).

**V     VALIDITY**

Fairchild contends that several claims of the  patents-in-suit are invalid for failure to satisfy the legal requirements of patentability.  In particular, Fairchild contends that the asserted claims are invalid for lack of enablement, anticipation by prior public knowledge, prior public use, prior invention by another, prior publication, and prior sale, and obviousness,.  I will now instruct you on each of these defenses.

## V.2.2  PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that the patent's subject matter is new, useful and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.  Nevertheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

Fairchild has the burden of proving invalidity of each claim by clear and convincing evidence.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.1.*

49

**V.2.2  ANTICIPATION**

Fairchild contends that the inventions covered by claims of the patent-in-suit are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles and other patents. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," Fairchild must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention. However, if the claimed invention was formed only accidentally or under unusual conditions, it is not an invalidating anticipation.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.5*

### 4.5.1   PRIOR PUBLIC KNOWLEDGE

Fairchild contends that some claims of the patents in suit were anticipated because the invention defined in those claims was publicly known or used by others in the United States before the date of invention, which is presumed to be the date the patent application was filed, but that date is to be determined by you, the jury, and there is a separate instruction providing guidance on that date.

A patent claim is invalid if the invention recited in that claim was publicly known or used by others in the United States before the patent applicant invented it.  If this is true, you must find the patent invalid.

<u>Sources & Comments</u>:

Instruction 4.5.1, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); 35 U.S.C. § 102; *Kistler Instrumente AG. v. United States*, 628 F.2d 1303, 1308 (Fed. Cir. 1980); *Eaton v. Rockwell*, C.A. No. 97-421-JJF (June 30, 1998) (Farnan, J.).

**4.5.2   PRIOR PUBLIC USE**

Fairchild contends that some claims of the patents-in-suit were anticipated because the invention defined in those claims was publicly used one year prior to the filing date of the patent.

A public use by any person, who is under no limitation, restriction or obligation of secrecy by the inventor, may invalidate the patents-in-suit if it occurred one year or more prior to the filing date of the patent.

An invention is publicly used by another when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.

<u>Sources & Comments</u>:

Instruction 4.4, St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al., C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

### 4.5.4    PRIOR PUBLICATION

Fairchild contends that some claims of the patents-in-suit were anticipated because the invention defined in each such claim was described in a prior publication, such as an article or another patent. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either: (i) before the patentee made his invention; or (ii) more than one year before the effective filing date of the patentee's patent application.

For a printed publication to anticipate the claims of the patent, Fairchild must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

In deciding whether a single item of prior art anticipates a patent claim you should consider both what is expressly disclosed or embodied in the particular item of prior art, and also what is inherently present.

Sources & Comments:

Instruction 4.6, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); Instruction 4.5.4, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); 35 U.S.C. § 102; *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *Honeywell International, Inc. v. Hamilton Sundstrand Corp.*, C.A. No. 99-309-GMS (Feb. 15, 2001); *Baxter International, Inc. v. Cobe Laboratories, Inc.*, 88 F.3d 1054 (Fed. Cir. 1996).

### 4.5.5    PRIOR UNITED STATES PATENT APPLICATION

Fairchild contends that Claim 1 of the '075 Patent, was anticipated because the invention defined in that claim was embodied in the prior patent application that issued as the Beasom '173 Patent. A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed by another in the United States before the date the invention was made by Power Integrations in the United States. The application for the Beasom '173 Patent was filed on January 7, 1986, approximately 15 months before the application for the Eklund '075 Patent was filed, on April 24, 1987.

In order for the '075 Patent to be anticipated by the application that issued as the Beasom '173 Patent, Fairchild must prove that the Beasom '173 Patent describes or discloses to one of ordinary skill in the art the elements of Claim 1 of the '075 Patent.

Fairchild contends that the Beasom '173 Patent expressly discloses contacts to the source and drain regions because it incorporates by reference Figure 7 of U.S. Patent 4,283,236, which shows such contacts. A patent incorporates material by reference if it identifies the material with detailed particularity, clearly indicates where that material is found in the source, and cites to and specifically identifies the content of the material in a way that demonstrates the intent to make the content part of the specification. To incorporate by reference, a patent need not use the words "incorporate by reference." Power Integrations admits that all other elements of Claim 1 of the '075 Patent are present in the Beasom '173 Patent.

Even if you find that contacts to the source and drain regions are not expressly present, Fairchild contends that contacts to the source and drain regions are inherently present in the Beasom '173 Patent. Something is inherent in an item of prior art if it is necessarily present in what is described in the prior art reference and it would be recognized by persons of ordinary skill in the art. A gap in a prior art reference may be filled by referring to other evidence that describes the missing descriptive matter that is necessarily present in the reference, and to show that the missing matter would be so recognized by persons of ordinary skill in the art.

Sources & Comments:

Instruction 4.6, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); 35 U.S.C. § 102; *Baxter International, Inc. v. Cobe Laboratories, Inc*., 88 F.3d 1054 (Fed. Cir. 1996); *Glaxo Wellcome v. Genentech*, C.A. No. 99-335-RRM (D. Del. May 2, 2001); In re Robertson, 169 F.3d 743, 49 USPQ2d 1949 (Fed. Cir. 1999) (*see also Transclean Corp. v. Bridgewood Serv. Inc*., 290 F.3d 1346, 62 USPQ2d 1865, 1871 (Fed. Cir. 2002) (inherency); *Southern Clay Products, Inc. v. United Catalysts, Inc.*, 43 Fed. Appx. 379, 383-84 (Fed. Cir. 2002) (incorporation by reference).

**4.5.6   PRIOR "ON SALE" PRODUCTS**

The claims of the patents-in-suit are invalid if you find that the subject matter claimed in the patents was "on sale" one year or more before the effective filing date of the patents.  Power Integrations' SMP3, SMP211, SMP240 and SMP 260 products were on sale at least a year before the filing dates of the '366, the '851 and the '876 Patents.  These Power Integrations products are therefore prior art to the '366, '851 and '876 Patents.

To prove anticipation (or obviousness), Fairchild must show that these products anticipate (or render obvious) the claims of the '366, '851 and '876 Patents that Fairchild asserts are invalid.

<u>Sources & Comments</u>:

Instruction 4.8, St. *Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

### V.2.1   PRIOR INVENTION

Fairchild contends that the Claim 1 of the '075 Patent is invalid because James Beasom, the named inventor on U.S. Patent 4,823,173 ("the Beasom '173 Patent") invented the invention before Klas Eklund, the named inventor on the '075 Patent.

In the United States, a patent is awarded to the first inventor. Therefore, Claim 1 of the '075 Patent is invalid if: (i) the invention defined by that claim was invented by Mr. Beasom in the United States before it was invented by Mr. Eklund; and (ii) Mr. Beasom did not abandon, suppress or conceal the invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose. Thus, the first person to file a patent application with an enabling disclosure is presumed to be the first person to reduce the invention to practice. If another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

There is, however, an exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercised reasonable diligence in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed a definite and permanent idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. An idea is defined and permanent when the inventor has a specific, settled idea or a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. Where a party seeks to show conception through oral testimony of an inventor, corroboration of this evidence is required.

A party abandons, suppresses or conceals the invention if, after reducing the invention to practice, the party unreasonably delays making the invention public, selling it or otherwise using it for a commercial purpose or delays filing for a US patent.

There is no particular length of delay that is per se unreasonable. You must decide whether, under the facts before you, any delay between the reduction to practice and public disclosure was reasonable or excused. In making this determination, you should consider the length of the delay period, the existence and nature of any activity during the delay period, or the lack of activity during the delay period. If there was a lack of activity, consider the cause of the resumption of activity.

Sources & Comments:

Instruction 4.5.3, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); 35 U.S.C. §§ 102, 151; *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362 (Fed. Cir. 2000); *Checkpoint Systems, Inc. v. U.S. Intern. Trade Comm'n*, 54 F.3d 756, 761-63 (Fed. Cir. 1995); *Eaton v. Rockwell*, C.A. No. 97-421-JJF (June 30, 1998); *Arigenetics v. Monsanto, et al.,* C.A. No. 96-505-RRM (Jan. 30, 1998);

### 4.5.3.1  CORROBORATION

Where a party seeks to show earlier conception, reduction to practice, or diligence in reduction to practice of the invention by the oral testimony or unwitnessed documents of the inventor, independent corroboration of the inventor's testimony or documents is required.  This means that evidence of the inventor's earlier conception, reduction to practice or diligence must not consist of the inventor's uncorroborated statements and unwitnessed documents.  There must be corroborating evidence which also shows that inventor disclosed to some other person the inventor's complete invention expressed in such clear terms as to enable those skilled in the art to make the invention.  The independent corroborating evidence may not consist of the inventor's unwitnessed notebooks or other documents, but may consist of testimony of a witness, other than the inventor, to the conception.  The corroborating evidence may also consist of evidence of surrounding facts and circumstances independent of information received from the inventor.  There is no single formula that must be followed in proving corroboration.  Rather, you must make a reasonable analysis of all the pertinent evidence to determine whether the inventor's testimony is credible, bearing in mind that the purpose of corroboration is to prevent fraud by providing independent confirmation of the inventor's testimony.

If the documents and oral testimony of the inventor are not corroborated by independent evidence, you may not consider the inventor's uncorroborated testimony or unwitnessed documents.

<u>Sources & Comments</u>:

*Price v. Symsek*, 988 F.2d 1187, 1194-95 (Fed. Cir. 1993); *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998); *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989); *Kridl v. McCormick*, 105 F.3d 1446, 1449-50 (Fed. Cir. 1997); *Stern v. Trustees of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006).

## 4.5.3.2  REDUCTION TO PRACTICE

To constitute a prior invention, a reduction to practice must meet all the limitations of the patent claim.  Since Claim 1 of the '075 Patent is entitled to a presumption of validity, for anticipation by prior invention, this claim, with all its limitations, must be compared separately to the prior-art embodiment that is allegedly reduced to practice.

"Reduction to practice" may be established in two ways.  Reduction to practice may be established by a "constructive" reduction to practice or an "actual" reduction to practice.

A constructive reduction to practice occurs when a patent application describing the claimed invention is filed with the United States Patent and Trademark Office.  The Beasom '173 patent application is a constructive reduction to practice of the inventions disclosed in it.

An actual reduction to practice of a claimed invention occurs when the inventor or persons working at his/her direction construct a physical embodiment meeting each and every limitation of the claimed invention that is shown to work for its intended purpose.  For any actual reduction to practice of Claim 1 of the '075 Patent, you must determine whether the invention that was reduced to practice actually meets all limitations of Claim 1 of the '075 Patent.  This is true for any actual reduction to practice by either of the two inventors – Mr. Eklund or Mr. Beasom.

Sources & Comments:

Reduction to Practice Instruction, *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (D. Del. 2004).

## 4.5.3.3  DILIGENCE IN REDUCTION TO PRACTICE

Priority of invention is usually awarded to the person who first reduces to practice an invention.  However, there is an exception to this rule.  When a person is first to conceive of the invention, but second to reduce to practice, that person will be the first inventor if that person was reasonably diligent during the critical period.  If, applying the previous instructions, you find that either Mr. Beasom or Mr. Eklund was the first to conceive the invention of Claim 1 of the '075 Patent, but the second to reduce it to practice, you must determine whether he was also reasonably diligent.

The critical period for the diligence of such a party starts just prior to the second party's conception date and continues through the first party's reduction to practice.  Lapses in diligence before the second party's conception (i.e., before the critical period) are irrelevant.  Diligence during the critical period means that the inventor's work on the invention, and the work of others at the direction of the inventor, must be reasonably continuous for the critical period in light of all the circumstances until the inventor either actually or constructively reduces to practice the invention.  Constant effort is not required to establish diligence, nor is it necessary to show that an inventor spent all of his/her time working on the invention.  Rather, an inventor must simply have engaged in reasonably continuous activity such that the invention's conception and reduction to practice are substantially one continuous act.  As with conception and reduction to practice, corroboration of the inventor's testimony or unwitnessed documents recording diligence is also required.

Sources & Comments:

Diligence Instruction, *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (D. Del. 2004); *Monsanto Co. v. Mycogen Plant Science, Inc.*, 61 F. Supp. 2d 133, 180 (D. Del. 1999).

### V.2.2  OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

**1.** Determine the scope and content of the prior art relied upon by Fairchild;

**2.** Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

**3.** Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

**4.** Consider objective factors of non-obviousness.

I will explain each of these factors in more detail in a moment. Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8*

**V.3.1  SCOPE AND CONTENT OF THE PRIOR ART**

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. The prior art that Fairchild contends render the patents-in-suit obvious includes the following:

1.      prior patents that issued before the critical date for a particular patent;

2.      prior publications having a publication date before the critical date for a particular patent;

3.      U.S. Patents that have a filing date prior to the critical date for a particular patent;

4.      anything in public use or on sale in the United States before the critical date for a particular patent;

5.      anything that was publicly known or used by others in this country before the date of invention of a patent-in-suit; and

6.      anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1*

### V.3.2   DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences. The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art. Each claim must be considered separately and in its entirety.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.2*

### V.3.3 LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made. A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.3*

### V.3.4  MOTIVATION TO COMBINE

Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. The suggestion or motivation to combine and the expectation of success must be found in: the prior art itself, the knowledge of persons of ordinary skill in the art, or, in some cases, the nature of the problem to be solved.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.4*

**IV.3.5 HINDSIGHT**

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patent-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

_Source_:

_Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5_

### V.3.6 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue:

**1.**     Commercial success or lack of commercial success of products covered by the patents-in-suit;

**2.**     Copying of the invention by others in the field;

**3.**     Praise of the invention by the infringer or others in the field.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or features of the product other than those claimed in the patent-in-suit, then commercial success may have no relation to the issue of obviousness.

Evidence that may tend to show the obviousness of an invention is a showing of independent development or making of the invention by others before the inventor of the patents or at about the same time.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.6*

### V.2.2  ENABLEMENT

Fairchild contends that the '075 and '876 patents are invalid because the patents' specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

If the inventor failed to provide an enabling disclosure, the patent is invalid. To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation. Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter that is commonly understood by persons skilled in the art. Similarly, a specification need not contain a working example if the patent disclosure is otherwise enabling. The enablement defense does not require an intent to withhold; all that is required is a failure to teach how to practice the invention. Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling. A specification is enabling so long as undue experimentation is not needed.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 4.3.*

# VI     DAMAGES

## VI.2.2 GENERALLY

If, after considering all of the evidence and the law as I have stated it, you have determined that there are no patent claims at issue that are both valid and infringed, your verdict should be for Fairchild and you need go no further in your deliberations. On the other hand, if you decide that one or more of the patent claims are valid and have been infringed by Fairchild, you must then turn to the issue of damages.

You must also understand that my instructions regarding damages should not be construed as indicating any view on my part as to which party is entitled to prevail in this case. These instructions about damages are given for your guidance in the event that the evidence leads you to conclude that some claim of a valid and enforceable patent has been infringed.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty rate for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Fairchild benefited from, realized profits from, or even lost money as a result of the acts of infringement. It is also not relevant if Fairchild did not foresee that it would cause Power Integrations damage at the time that it infringed the asserted claims. The only issue is the amount necessary to adequately compensate Power Integrations for infringement by Fairchild. Adequate compensation should return Power Integrations to the position it would have been in had there been no infringement.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.1-5.2*

## VI.2.2  BURDEN OF PROOF – REASONABLE CERTAINTY

Power Integrations has the burden of proving damages by what is called a preponderance of the evidence. Power Integrations is entitled to all damages that can be proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Power Integrations. On the other hand, Power Integrations is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or left to conjecture. You may base your evaluation of reasonable certainty on opinion evidence. However, you may not consider opinion evidence, or any other evidence, to the extent that it relies on or refers to Fairchild's sales outside of the United States.  Because the United States patent laws do not apply outside the United States, Fairchild's foreign sales are not acts of infringement and are completely irrelevant to the amount of damages in this case.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.3*; *International Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360-61 (Fed.Cir.2004).

## VI.2.2  DATE DAMAGES MAY BEGIN

Power Integrations may only recover damages for infringement that occurred after the date it gave notice to Fairchild of its patent rights.  Because Power Integrations failed to mark any its products with any words or patent numbers for any of the four patents in suit, such as "U.S. Patent No. 4,811,075," or "U.S. Patent No. 6,249,876," it did not give constructive notice to Fairchild of its patent rights.  Also, Power Integrations failed to give actual notice of its patent rights to Fairchild until the date it filed this lawsuit, October 20, 2004.  Whether Fairchild knew of the patents in suit prior to October 20, 2004 by some other means or event is irrelevant.  This means that if you decide to award lost profits damages in the form of lost sales, price erosion, or increased expenses, the amount of such damages must be calculated without reference to any sales, prices or expenses prior to October 20, 2004.  The number of sales that you conclude Power Integrations would have made, the prices it would have charged, or the expenses it would have avoided must commence on October 20, 2004 as though no infringement had occurred before that date.

Sources & Comments:

35 U.S.C. § 287(a); *Honeywell International v. Hamilton Sunstrand Corp., 2001* WL 66345 (D. Del., Jan. 4, 2001) (GMS); *Novartis v. Monsanto,* C.A. *97-39, 97-40* (RRM) (D. Del. 1997); Instruction 5.4, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1440 (Fed. Cir. 1998); *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 103 F. Supp. 2d 268, 280-81 (S.D.N.Y. 2000).

## VI.2.2  METHODS FOR COMPUTING DAMAGES

There are two common methods for computing damages in a patent infringement case. One is called "lost profits," and the other is called "reasonable royalty." These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

Thus, in determining damages, you must first determine if Power Integrations has proven its entitlement to lost profits. Lost profit damages are the profits Power Integrations lost because of the infringement. They are not the profits that Fairchild actually made. Power Integrations' lost profits may be in several different forms, which I will explain in a moment. They include (i) lost sales, (ii) eroded prices for sales actually made; and (iii) eroded prices for future sales. In this case, Power Integrations must establish that the infringement actually caused its lost profits.  Thus, Power Integrations must show that "but for" the infringement, Power Integrations would have made the sales or profits that were allegedly lost.

Only if you find that Power Integrations is not entitled to lost profits, will you then determine Power Integrations' damages based on a reasonable royalty. I will explain reasonable royalty after I explain lost profits.

Source:

Uniform Jury Instr. For Patent Cases in the D. Del. 5.5, 5.7; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd*., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.

## VI.2.2 LOST PROFITS — LOST SALES

In order to recover lost profits damages for lost sales, Power Integrations must show the following:

(i) there was a demand for the patented product;

(ii) Power Integrations had the ability to meet the market demand;

(iii) no acceptable non-infringing substitutes were available; and

(iv) the amount of the profit it would have made.

Power Integrations need not negate every possibility that purchasers of Fairchild's products might have bought another product. Mere existence of a competing device does not make that product an acceptable substitute. However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes. To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products. For example, acceptable non-infringing alternatives may include non-accused Fairchild products that incorporate a soft start and/or EMI reduction features or other products that compete with the Power Integrations products that allegedly practice the asserted patents.

In proving its damages, Power Integrations' burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that Power Integrations would have made some of the infringing sales, and it is reasonably probable what amount Power Integrations would have netted from the denied sales, then Fairchild is liable for the lost profits on those infringing sales. The infringer is not liable, however, for speculative profits.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.8; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**ENTIRE MARKET VALUE RULE**

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product. So, if you find that Power Integrations has proven by a preponderance of the evidence that customers demanded the entire accused product because of the patented feature, you may award damages based on the value of the entire product. However, if you find that customer demand for the product is based on something other than the patented feature, you should award damages based on the value of the patented feature alone and not the value of the entire product.

<u>Sources & Comments</u>:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); Instruction 5.6, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004).

## VI.2.2  LOST PROFITS — PRICE EROSION

In this case, Plaintiff is requesting damages based on "price erosion." Price erosion occurs when the patentee is forced to lower prices due to the presence in the market of the infringing product. Specifically, Power Integrations asserts that it lowered its prices for certain of its products and will be unable to raise prices for some period of time in the future because of Fairchild's infringement.

If you determine that the prices on Power Integration's products were eroded from its October 20, 2004 prices, you must then consider whether any such price erosion resulted because Fairchild was in the market for the specific patented product or because of some other reason. The relevant product market includes only devices or substitutes similar in physical and functional characteristics, and in price, to the patented invention. You may not find price erosion resulting from sales of products with significantly different physical or functional characteristics from the patented invention, or products with disparately different prices.

Ultimately, to recover price erosion damages, Power Integrations must prove that "but for" Fairchild's competition, it would not have lowered its prices. Power Integrations must also prove the amount of sales it would have made at the higher (uneroded) price, and if it cannot do so, it is not entitled to price erosion damages.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.11*

**VI.5.1 FUTURE PROFITS – DETERMINATION**

In considering the element of future profits, you should determine whether or not Fairchild's infringement of the patents prevented Power Integrations from earning profits that would have accrued to it but for that infringement. Power Integrations must present reliable economic evidence to support an award of future lost profits and cannot rely upon mere speculation. In determining whether or not any part of Power Integrations' damages constitute future profits, you may consider the experience of Power Integrations and Fairchild in the business since October 20, 2004, the competition Power Integrations would have had, and the general market conditions.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.13*

**VI.2.2  REASONABLE ROYALTY**

Power Integrations requests damages determined by a reasonable royalty for Fairchild's alleged use of the invention of the patents in suit.  A reasonable royalty is the amount of money that would have been agreed to in a hypothetical arms-length negotiation between the owner of the patents and the accused infringer at the time the alleged infringement began.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms length negotiation that I just referred to would have been likely to occur.  This is typically just before infringement began, which in this case is **[date]**.

In the hypothetical arms-length negotiation, you must assume that the parties engaged in the hypothetical negotiations are negotiating the terms of a license in which the licensee receives nothing from the licensor other than the right to use the patented inventions, and the licensor receives nothing from the licensee other than money.

Sources & Comments:

*Instruction 5.3, St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al., C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).*

## 6.12   PRESUMPTIONS IN THE HYPOTHETICAL NEGOTIATION

There are certain presumptions in the hypothetical negotiation that you should take into account.

You should assume that both sides to the hypothetical negotiation knew all pertinent information existing at the time of the hypothetical negotiation.  Having that in mind, you may consider any relevant fact known as of the hypothetical negotiation in determining the reasonable royalty for Fairchild's alleged use of the patented invention.  You may also consider the opinion testimony of experts.

As to events occurring after the hypothetical negotiation, they ought to relate back to the time of the hypothetical negotiation and not be an after-the-fact assessment based on information as of the trial.  That is, later information is relevant only as it is used to test the parties' risks and expectations at the time of the hypothetical negotiation.

Another presumption in the hypothetical negotiation is that the licensor is willing to grant a license and the licensee is willing to take a license.  As a result, it is presumed that they will reach agreement, rather than sue each other and litigate.

Yet another presumption in the hypothetical negotiation is that the patent is presumed valid, enforceable and infringed.  However, this presumption does not warrant awarding the Power Integrations a special "premium" based on the presumption.

Sources & Comments:

Instruction 5.4, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

## VI.6.1 FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining such a reasonable royalty, some of the factors that may be considered are:

**1.** the royalties received by Power Integrations for licensing others under the patents-in-suit;

**2.** the rates paid by Fairchild for the use of other patents comparable to the patents-in-suit;

**3.** the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured products may be sold;

**4.** Power Integrations' established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

**5.** the commercial relationship between Power Integrations and Fairchild, such as whether they are competitors in the same territory in the same line of business;

**6.** the duration of the patents and the corresponding terms of the hypothetical licenses;

**7.** the established profitability of the products made under the patents, their commercial success, and their current popularity;

**8.** the utility and advantages of the patented invention over old devices, if any, that had been used for achieving similar results;

**9.** the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Power Integrations, and the benefits to those who have used the invention;

**10.** the extent to which Fairchild has made use of the invention, and any evidence that shows the value of that use;

**11.**     the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

**12.**     the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by Fairchild;

**13.**     the opinion testimony of qualified experts; and

**14.**     any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.14.1*

**6.14    INTEREST**

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

<u>Sources & Comments</u>:

*Union Carbide v. Shell Oil*, C.A. 99-CU-274, 00-846-SLR (D. Del. given Feb. 6, 200l); *Tristrata*

*Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003)

(Farnan, J.).

**VI.2.2  CLOSING STATEMENT — DAMAGES**

In determining the amount of a damages award, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Power Integrations has suffered as a result of the alleged infringement. If, under the Court's instructions, you find that Power Integrations is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing Fairchild or to set an example.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.16*

**VI.2.2  CURATIVE INSTRUCTION**

The fact that I have instructed you regarding damages should not be construed as suggesting any view of the Court as to which party is to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find that Fairchild has infringed one or more claims of Power Integrations' patents-in-suit.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.17*

# VII     DELIBERATION AND VERDICT

## VII.2.2          INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.1*

### VII.2.2       UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.2*

**VII.2.2        DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that — your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.3; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**VII.2.2    COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based solely on the evidence presented.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.4*

172727.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September, 2006, the attached **DEFENDANTS'**

**PROPOSED JURY INSTRUCTIONS** was served upon the below-named counsel of record at

the address and in the manner indicated:


William J. Marsden, Jr., Esquire                    VIA ELECTRONIC MAIL
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19801

Frank E. Scherkenbach, Esquire                      VIA ELECTRONIC MAIL
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Michael Kane, Esquire                               VIA ELECTRONIC MAIL
Fish & Richardson P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN  55402

Howard G. Pollack, Esquire                          VIA ELECTRONIC MAIL
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063


*/s/ Steven J. Balick*
_____
Steven J. Balick