IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,            )
                                     )
            Plaintiff,               )        **REDACTED PUBLIC VERSION**
                                     )
    v.                               )        C.A. No. 04-1371-JJF
                                     )
FAIRCHILD SEMICONDUCTOR              )
INTERNATIONAL, INC., and FAIRCHILD   )
SEMICONDUCTOR CORPORATION,           )
                                     )
            Defendants.              )

<u>**DEFENDANTS' MOTIONS IN LIMINE**</u>

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Brian H. VanderZanden
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  September 12, 2006

# TABLE OF CONTENTS

Page

I.    MOTION IN LIMINE NO. 1:  PI'S CLAIM FOR DAMAGES BASED ON
      FAIRCHILD'S NON-INFRINGING FOREIGN SALES AND MANUFACTURE
      OF PRODUCTS THAT NEVER ENTER THE U.S. SHOULD BE EXCLUDED
      AS A MATTER OF LAW .................................................................................... 1

II.   MOTION IN LIMINE NO. 2:  PI'S CLAIM FOR AND EVIDENCE OF
      DAMAGES BASED ON THIRD PARTIES' ALLEGED U.S. IMPORTATION
      OF ACCUSED PRODUCTS SHOULD BE EXCLUDED ............................................. 6

      A.    As A Matter Of Law, Fairchild Is Not Liable For Third
            Parties' Alleged U.S. ....................................................................... 6

      B.    There Is No Evidence Of Importation Of The Accused Fairchild
            Products ......................................................................................... 7

      C.    (1) Unreliable Evidence Offered By PI Regarding Third Parties'
            Alleged U.S. Importation Of Finished Goods And (2) PI's
            Speculative U.S. Importation "Percentages" Which Are Based On
            The Unreliable Evidence Should Be Excluded ..................................... 9

            1.    **REDACTED**          Figure Is Speculative,
                  Unreliable, Unsupported By Admissible Evidence And
                  Should Be Excluded ................................................................. 10

                  a.    The "Wireless News" Article And The "IDC" Press
                        Release Are Unreliable, Do Not Support **REDACTED**
                        And Should Be Excluded ................................... 10

                  b.    The "SG Cowen" Report And The Deposition
                        Testimony Of Its Author Mr. Slayton Are
                        Unreliable, Do Not Support **REDACTED**
                        Should Be Excluded ..................................................... 14

            2.    The          **REDACTED**          Is
                  Speculative, Unreliable, Unsupported By Admissible
                  Evidence And Should Be Excluded .......................................... 16

                  a.    The "DisplaySearch" Article Is Unreliable, Does Not
                        Support **REDACTED** And Should Be
                        Excluded ...................................................................... 16

            3.    Averaging The
                  **REDACTED**
                                      Unreliable, And Should Be
                  Excluded ................................................................................. 17

      D.    There Is No Evidence That Fairchild Has Any Knowledge Of The
            Amount Of Importation Of The Accused Products ............................... 18

**TABLE OF CONTENTS**
**(continued)**

Page

III.  MOTION IN LIMINE NO. 3:  (1) PI'S DECERTIFIED FINANCIAL REPORTS, WHICH PI ADMITS CANNOT BE RELIED UPON, AND (2) ANY OPINION REGARDING LOST SALES, PRICE EROSION OR REASONABLE ROYALTY, WHICH ARE BASED UPON THE FINANCIAL REPORTS SHOULD BE EXCLUDED ................................................................. 19

IV.  MOTION IN LIMINE NO. 4:  PI'S CLAIM AND EVIDENCE OF ALLEGED "PRICE EROSION" SHOULD BE EXCLUDED ........................................ 22

    A.  PI And Its Attorneys Concealed From Its Damages Expert Evidence That PI Is Able To Raise Prices ..................................... 23

    B.  There Is No Evidence That Fairchild Caused PI's Prices To Erode ........ 26

    C.  **REDACTED**

        ................................................................................................ 29

    D.  PI's "Future Price Erosion" Theory Is Speculative And Seeks Damages After Expiration Of One Of The Patents ................................. 31

V.  MOTION IN LIMINE NO. 5:  PI'S CLAIM AND ANY EVIDENCE OF DAMAGES OR NOTICE PRIOR TO OCTOBER 20, 2005 SHOULD BE EXCLUDED ............................................................................................ 33

VI.  MOTION IN LIMINE NO. 6:  PI'S ADMITTEDLY UNRELIABLE SALES REPORTS AND DOCUMENTS SHOULD BE EXCLUDED ...................................... 34

    A.  .......................... 34

    B.  **REDACTED**

        ......... 36

    C.  PI Admits Its Sales Forecast Documents Are Unreliable .................... 36

    D.  The Foregoing Documents Should Also Be Excluded Because They Constitute Hearsay ................................................................. 37

VII.  MOTION IN LIMINE NO. 7:  PI'S TECHNICAL EXPERTS LEGAL OPINION THAT ANY OF THE ACCUSED DEVICES INFRINGE THE ASSERTED CLAIMS SHOULD BE EXCLUDED ....................................................... 38

VIII.  MOTION IN LIMINE NO. 8:  PI'S CLAIM AND EVIDENCE THAT **REDACTED** SHOULD BE EXCLUDED ............................................................................................ 39

    A.  There Is No Evidence That .................... 39

    B.  Any Alleged **REDACTED** ............................... 40

IX.  MOTION IN LIMINE NO. 9:  PI CLAIMS AND EVIDENCE REGARDING FAIRCHILD'S **REDACTED** . SHOULD BE EXCLUDED BECAUSE THAT PRODUCT WAS NOT INCLUDED IN PI'S INFRINGEMENT OR DAMAGES REPORTS ......................................................................... 40

TABLE OF CONTENTS
(continued)

Page

X.    MOTION IN LIMINE NO. 10:  ANY CLAIMS OR EVIDENCE OF DAMAGES
      BASED ON AN ALLEGED
                         **REDACTED**
                         .......................................................................................... 44

XI.   MOTION IN LIMINE NO. 11:  PI'S "DOCTRINE OF EQUIVALENTS"
      ARGUMENTS SHOULD BE EXCLUDED WITH REGARD TO THE '075,
      '876 AND '366 PATENTS AND SHOULD BE LIMITED WITH REGARD TO
      THE '851 PATENT ........................................................................................ 45

      A.    PI's Expert Did Not Provide An Opinion That The '075 Patent Was
            Infringed Under The "Doctrine Of Equivalents" ..............................46

      B.    PI's Expert Did Not Provide A Basis For His Opinion That The
            '876 Patent Was Infringed Under The "Doctrine Of Equivalents" .........47

      C.    PI's Expert Did Not Provide A Basis For His Opinion That The
            '366 Patent Was Infringed Under The "Doctrine Of Equivalents" .........48

      D.    The "Doctrine Of Equivalents" Argument Regarding The '851
            Patent Should Be Excluded As To All Elements And Products
            Which PI Failed To Analyze Under the Doctrine ...................................49

XII.  MOTION IN LIMINE NO. 12:  ANY EVIDENCE REGARDING EARLIER
      LITIGATION SUCCESS AGAINST SYSTEM GENERAL OR MOTOROLA
      SHOULD BE EXCLUDED ........................................................................... 50

XIII. MOTION IN LIMINE NO. 13:  ANY EVIDENCE OF FAIRCHILD'S CLAIM
      CONSTRUCTION POSITIONS IN THIS CASE PRIOR TO THE COURT'S
      CLAIM CONSTRUCTION ORDER, OR WHO "WON" OR "LOST," SHOULD
      BE EXCLUDED. ............................................................................................ 51

XIV.  MOTION IN LIMINE NO. 14:  ANY EVIDENCE OR ASSERTION THAT
      OPINION COUNSEL MUST HAVE CONSTRUED ALL TERMS TO THE
      CLAIMS AS PART OF A PROPER ANALYSIS SHOULD BE EXCLUDED ............ 51

XV.   MOTION IN LIMINE NO. 15:  IRRELEVANT AND PREJUDICIAL
      DOCUMENTS REGARDING PI AND ITS PRODUCTS SHOULD BE
      EXCLUDED .................................................................................................. 51

XVI.  MOTION IN LIMINE NO. 16:  ALL TESTIMONY BY PI'S TECHNICAL
      EXPERT   **REDACTED**   ON THE ISSUE OF INHERENCY MUST BE
      EXCLUDED .................................................................................................. 52

      A.    Inherency Is Outside The Scope Of **REDACTED** Reports ................ 53

      B. **REDACTED**    Is Not Qualified To Opine On Inherency ...................... 54

XVII. MOTION IN LIMINE NO. 17:  EMAILS BETWEEN      **REDACTED** ........55
      SHOULD BE EXCLUDED ..............................................................

- iii -

**TABLE OF CONTENTS**

Page

A.  Power Integrations' Damage Expert Should Not Be Allowed To Testify About Any Of **REDACTED**    Since They Are Not Relied Upon In His Report ........................................................................56

B.  **REDACTED**                Be Excluded From Evidence Since They Are Dated Before The Established Damage Period Of October 20, 2004 ..................................................................... 57

C.  All**REDACTED**Should Be Excluded Because They Have Not Been Authenticated And Contain Inadmissible Hearsay......................... 57

XVIII. MOTION IN LIMINE NO. 18:  ANY TESTIMONY BY DR. EKLUND REGARDING ANY CONCEPTION OR REDUCTION TO PRACTICE DATE SHOULD BE EXCLUDED UNLESS PI PROVIDES AND LAYS THE FOUNDATION OF INDEPENDENT EVIDENCE CORROBORATING THE DATES.................................................................................................. 58

XIX. MOTION IN LIMINE NO. 19:  ANY ARGUMENT OR EVIDENCE CHALLENGING THE PUBLICATION DATES OF PRIOR ART REFERENCES LISTED ON FAIRCHILD'S 35 U.S.C. §282 STATEMENT SHOULD BE EXCLUDED............................................................................ 60

# CASES

*BIC Leisure Prods.* v. *Windsurfing Int'l,*
  1 F.3d 1214 (Fed. Cir. 1993)...........................................................................28

*Becton Dickinson & Co.* v. *Tyco Healthcare Group LP,*
  2006 U.S. Dist. LEXIS 14999 (D. Del. 2006) ...............................................41

*Brooktree Corp.* v. *Advanced Micro Devices, Inc.,*
  977 F.2d 1555 (Fed. Cir. 1992).......................................................................31

*Coalition To Save Our Children* v. *State Bd. of Educ.,*
  90 F.3d 752 (3d Cir. 1996)...............................................................................53

*Corp.* v. *SeaChange Int'l, Inc.,*
  436 F.3d 1317 (Fed. Cir. 2006)...................................................................45, 46

*Crystal Semiconductor Corp.* v. *Tritech Microelectronics Int'l, Inc.,*
  246 F.3d 1336 (Fed. Cir. 2001)...................................................................28, 30

*Daubert* v. *Merrell Dow Pharms.,*
  509 U.S. 579 (1993)..........................................................9, 22, 29, 30, 32

*Dean Foods Co.* v. *Consolidated Freightways,*
  29 F. Supp. 2d 495 (N.D. Ill. 1998) ................................................................11

*Doe* v. *Johnson,*
  52 F.3d 1448 (7th Cir. 1995) ...........................................................................55

*Grain Processing Corp.* v. *American Maize-Products Co.,*
  185 F.3d 1341 (Fed. Cir. 1999)........................................................................28

*Hebert* v. *Lisle Corp.,*
  99 F.3d 1109 (Fed. Cir. 1996)..........................................................................31

*Johnson* v. *Colt Indus. Operating Corp.,*
  797 F.2d 1530 (10th Cir. 1986) .......................................................................50

*Kaufman Co.* v. *Lantech, Inc.,*
  926 F.2d 1136 (Fed. Cir. 1991)........................................................................26

*Kolmes* v. *World,*
  107 F.3d 1534 (Fed. Cir. 1997)........................................................................58

*Krystal Cadillac-Oldsmobile GMC Truck, Inc.* v. *GMC,*
  337 F.3d 314 (3d Cir. 2003)...............................................................................4

*Lear Siegler, Inc.* v. *Sealy Mattress Co. of Mich., Inc.*,
    873 F.2d 1422 (Fed. Cir. 1989) ...........................................................................45

*Montgomery County* v. *Microvote Corp.*,
    320 F.3d 440 (3d Cir. 2003) ...............................................................21, 35, 36

*Oiness* v. *Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996) ..........................................................10, 13, 17

*P&G* v. *Teva Pharms. USA, Inc.*,
    2006 U.S. Dist. LEXIS 54300 (D. Del. 2006) .............................................38

*Panduit* v. *Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ......................................................................26

*Pellegrini* v. *Analog Devices, Inc.*,
    375 F.3d 1113 (Fed. Cir. 2004) ......................................................................2

*Rotec Indus.* v. *Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000) ......................................................................2

*Scott* v. *IBM Corp.*,
    196 F.R.D. 233 (D.N.J. 2000) ......................................................................25

*Shockley* v. *Arcan, Inc.*,
    248 F.3d 1349 (Fed. Cir. 2001) ......................................................................6

*Sidel* v. *Uniloy Milacron, Inc.*,
    2001 U.S. Dist. LEXIS 24004 (N.D. Ga. 2001) .........................................31

*St. Clair* v. *Johnny's Oyster & Shrimp, Inc.*,
    76 F. Supp. 2d 773 (S.D. Tex. 1999) ..........................................................11

*Telecomm Tech. Servs.* v. *Siemens Rolm Communs., Inc.*,
    1999 U.S. Dist. LEXIS 21415 (N.D. Ga. 1999) .........................................17

*Texas Instruments* v. *Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) .....................................................................45

*United States* v. *Jackson*,
    208 F.3d 633 (7th Cir. 2000) .......................................................................12

*Venture Indus. Corp.* v. *Autoliv ASP, Inc.*,
    2006 U.S. App. LEXIS 20114 (Fed. Cir. 2006) .........................................22

*Wady* v. *Provident Life and Accident Ins. Co. of Am.*,
   216 F. Supp. 2d 1060 (C.D. Cal. 2002) ..................................................................12

## FEDERAL STATUTES

35 U.S.C. §271 .................................................................................................6, 7, 44

35 U.S.C. §271(a) ...........................................................................................2, 39, 44

Fed. R. Civ. P. 26(a)(2)(B) .......................................................................................56

Fed. R. Civ. P. 37(c) .................................................................................................54

Fed. R. Evid. 403 ..........................................................18, 35, 36, 39, 40, 50, 51, 52

Fed. R. Evid. 602 ...........................................................................10, 16, 35, 36

Fed. R. Evid. 702 ...............................14, 17, 21, 28, 30, 33, 35, 36, 54, 55

Fed. R. Evid. 703 ...............................................................................................35, 36

Fed. R. Evid. 801 ..............................................................................10, 16, 37, 58

Fed. R. Evid. 802 ..............................................................................10, 16, 37, 58

Fed. R. Evid. 805 ........................................................................................................58

Fed. R. Evid. 807 ........................................................................................................58

Fed. R. Evid. 901 ..............................................................................................10, 57

## MISCELLANEOUS

Fed R. Civ. P. 807 .....................................................................................................11

Federal Rule of Civil Procedure 26(a)(2) .........................................................53, 55

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. ("Fairchild") hereby respectfully move *in limine* as set forth in detail below, pursuant to the Federal Rules of Evidence and established principles regarding the admissibility of expert testimony, to exclude and limit testimony, admission of evidence, theories and argument asserted by Defendant Power Integrations, Inc. ("PI").

I.   **MOTION IN LIMINE NO. 1:  PI's Claim For Damages Based On Fairchild's Non-Infringing Foreign Sales And Manufacture Of Products That Never Enter The U.S. Should Be Excluded As A Matter Of Law.**

PI's damages expert, Mr. Troxel, claims damages based on Fairchild products manufactured and sold entirely outside of the United States.  In fact, the bulk of **REDACTED** damages claim relies upon Fairchild's activity which occurred *entirely* outside of the U.S. and products which PI admits were never subsequently imported into the U.S. by anyone at anytime! [Declaration of Bas de Blank ("de Blank Declaration") (filed herewith), Ex. 1 at ¶¶64-247 and Exs. E-1a–E-3a, F-1–F-7, G–G5a); Ex. 3 at 410:17-413:6]

Realizing the untenable nature of its claims, PI submitted two different damages calculations: one,                 **REDACTED**         based primarily on entirely foreign, never-imported sales and a second,         **REDACTED**              based on Fairchild's U.S. activity and speculated importation by third-parties.[1]  [*Id.*, Ex. 2 at Table 1]  PI's expert readily admits that **REDACTED**  between these figures is based solely on products made and sold abroad, and never imported into the U.S. by any party:

**REDACTED**

* * * *

---

[1]  Fairchild moves to exclude speculative importation figures at *infra* Motion In Limine No. 2.

- 1 -

**REDACTED**

[*Id.*, Ex. 3 at 410:17-413:6)]

**REDACTED** and any related analysis or evidence must be excluded as a

matter of law. It is straightforward, hornbook law that a plaintiff *cannot* recover damages for

manufacture or sale of an allegedly infringing product which occurs outside of the United States

or base any damages theories on such extraterritorial activities. The Federal Circuit has observed

that integrated circuits "not made in, used in, sold in, offered for sale in, or imported into the

United States . . . are therefore outside of the reach of U.S. patent laws." *Pellegrini v. Analog*

*Devices, Inc.*, 375 F.3d 1113, 1118 (Fed. Cir. 2004). Indeed, the Federal Circuit has found that a

defendant's manufacturing and sales in Asia was not the proper basis of a damages claim:

> many of [the accused infringer's] activities took place outside the United States,
> in China and elsewhere. These extraterritorial activities ... are irrelevant to the
> case before us, because '[t]he right conferred by a patent under our law is
> confined to the United States and its territories, and infringement of this right
> cannot be predicated of acts wholly done in a foreign country'

*Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000). Moreover, even where

an "offer for sale" is made in the United States, a plaintiff is not entitled to damages where the

"sale" of the products occurs outside of the U.S.:

> It is clear, however, that an infringing offer to sell, § 271(a), must be of an item
> that would infringe the United States patent upon the intended sale, § 271(i). Thus
> an offer made in the United States, to sell a system all of whose components
> would be made in foreign countries, for sale, installation, and use in a foreign
> country, does not infringe the United States patent.

*Id.* at 1260. For these reasons, all testimony by PI's damages expert, Richard Troxel, and all

other evidence regarding alleged lost profits, price erosion or reasonable royalty based on manufacture or sales of the accused products occurring outside of the United States, must be excluded, as a matter of law.[2]  Further, to the extent that PI purports to present evidence of offers for sale which are outside of the U.S., such should be excluded as a matter of law given that the U.S. patent law does not reach foreign activities.  Moreover, even where an "offer for sale" occurs in the United States, a plaintiff is not entitled to damages where the "sale" of the products occurs outside of the U.S.  Accordingly, all alleged evidence of any offer for sale occurring in the U.S. where the "sale" occurred outside the U.S. should be excluded as well.

Recently, the Court noted after significant discovery, no evidence of importation of the accused products.  [DI 334 ("[T]he depositions of numerous Power Integrations' witnesses demonstrate that Power Integrations had no evidence prior to April 18, 2006, that Fairchild's accused devices were imported into the United States.")]  The Court has clearly warned PI of its failure of evidence, yet PI persists in advocating a legally improper theory of damages which is unsupported by any evidence.

In addition to its fatal legal flaws, PI is also judicially estopped from making its worldwide damages argument based on non-U.S sales.  In this case, PI attempts to improperly side-step the prohibition against collecting damages on non-U.S. sales by arguing that

<center>**REDACTED**</center>

[de Blank Decl., Ex. 1 at ¶¶101-102)]  Following PI's rationale, no one can separate the U.S. and foreign markets for the parts at issue and the U.S. market purportedly drives worldwide sales. [*Id.*]  However, PI and its counsel in this case recently argued *exactly the opposite* in an ITC action against System General ("SG") involving the same market for PI power products.[3]  Incredibly, PI maintained this position on July 2006, six months *after* PI's

---

[2]  Recognizing the tenuousness of his theory, in his expert report Mr. Troxel explicitly states

<center>**REDACTED**</center>    [de Blank Decl., Ex. 1 at ¶94)]

[3]  PI's counsel in the System General action were Frank Scherkenbach and Howard Pollack of Fish & Richardson—who are also its lead counsel in the instant case.

expert took the opposite position in his expert report in this case. In order to convince the ITC

that excluding SG power products from the U.S. would not have far-reaching global

consequences outside the U.S., PI and its counsel asserted that

<center>REDACTED</center>

In other words, PI and its

counsel said that the exclusion of these power products from the U.S. did *not* affect the foreign

markets and were separate. A comparison of the two positions reveals the clear contradiction:

| *PI's Position In The Instant Case* | *PI's Contrary Position In The SG ITC Case* |
|---|---|
| | |

<center>**REDACTED**</center>

| [de Blank Decl., Ex. 1 (Troxel Report (January 31, 2006), at ¶¶101-102)] | [de Blank Decl., Ex. 4 (PI Reply Brief On Remedy, Bond And The Public Interest, at pp. 12-13 (July 19, 2006))] |

When a party has taken and benefited from a prior position and then advances the

opposite position in bad faith to gain a litigation advantage, it is estopped from doing so. *Krystal

Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319 (3d Cir. 2003) ("a party

should not be allowed to gain an advantage by litigation on one theory, and then seek an

inconsistent advantage by pursuing an incompatible theory"). PI's position in the SG case

convinced the ITC to issue an Exclusion Order on August 11. [de Blank Decl., Ex. 5] In its

Opinion, the ITC specifically accepted and relied upon PI's position regarding whether the U.S.

exclusion order would affect SG's worldwide sales:

<center>- 4 -</center>

> SG asserts that its distributors may just avoid its chips entirely, since it will be difficult to discern which chips can be imported into the United States and which cannot. *SG's assertion, however, is mere speculation*. Accordingly, this factor does not weigh against an exclusion order covering downstream products as SG suggests.

[*Id.*, Ex. 6] Thus, PI most certainly benefited from its position, since the ITC directly used the same words argued in PI's briefing papers. PI is now bound to the position advocated to the ITC, namely that it is "pure speculation" that a

<center>**REDACTED**</center>

Clearly PI has completely reversed its position in bad faith, to secure a litigation advantage. PI's bad faith is evident from its attempts to conceal the assertions in the SG case. Indeed, Fairchild suspected that PI may have taken inconsistent positions, and for that reason asked for materials in the SG ITC action. [*Id.*, Exs. 7, 8 (at Request No. 177)] Fairchild was only able to discover the above contradictory position, as it was included in a redacted, publicly filed version of PI's brief on the ITC's website. PI told Fairchild "there is no relevance or need for the materials you have requested regarding the ITC." [*Id.*, Ex. 9] It is now clear that PI has resisted production of the ITC materials precisely because it knows that its argument in the System General matter directly contradicts its **REDACTED** .[4] PI's position that a **REDACTED** "pure speculation" must control here and further supports exclusion of all purely foreign sales and manufacturing activities.

For all of the foregoing reasons, all testimony by Mr. Troxel and all other evidence attempting to claim damages for worldwide or foreign sales or manufacture of the accused products should be excluded, including any evidence related to

<center>**REDACTED**</center>

---

[4] At the same time that PI was suppressing evidence of its positions in the SG action, it submitted a brand new damages report from Mr. Troxel attempting to rely on the entry of an exclusion order in the SG matter. [de Blank Decl., Ex. 2 at p. 11] As set forth *infra* at Motion In Limine No. 12 Fairchild moves to preclude PI from introducing to the jury prejudicial evidence from the SG action.

<center>- 5 -</center>

II.   <u>MOTION IN LIMINE NO. 2</u>:  PI's Claim For And Evidence Of Damages Based On
      Third Parties' Alleged U.S. Importation Of Accused Products Should Be Excluded.

      A.   As A Matter Of Law, Fairchild Is Not Liable For Third Parties'
           Alleged U.S. Importation.

Except for the limited manufacture of a small amount of **REDACTED** · (which is

subject to Motion in Limine No. 9) and

all of the accused parts are manufactured and sold **REDACTED** , to

third-party companies located in **REDACTED** [de Blank Decl., Ex. 65 at Ex. 4-c (Keeley

Damages Report and Updated Exhibit 4-c)] Those companies then incorporate the Fairchild

parts into various products, including battery chargers.  The chargers are then bundled with other

end products such as the cell phones or laptops.  Downstream, these bundled, finished goods may

be imported into other countries, including the U.S. by an OEM customer.  These customers may

or may not direct their products containing Fairchild parts into the United States—a decision

entirely up to those third parties and over which Fairchild has no influence or knowledge.

Similarly, PI lacks any ability to track its own competing **REDACTED**

downstream and does not even know where the downstream customers' products are destined.

Importantly, Fairchild's and PI's products can operate in any country and are not U.S. specific.

Critically, PI admits that as to its own products sold outside of the U.S.,

**REDACTED**

. [*Id.*, Exs. 10 at 159:16-160:15), 11 at

379:23-381:3)]  It only stands to reason that Fairchild also cannot track its products throughout

the world or know which finished goods contain a Fairchild part or when such a product might

be imported into the U.S.

As a matter of law, Fairchild cannot be liable for what third-party downstream customers,

located outside of the U.S., decide to do with products containing the accused Fairchild parts

bought outside of the U.S.  The case *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir.

2001) is highly instructive.  There, a defendant located in China manufactured and sold the

accused products in Shanghai to other companies.  Those other companies then imported and

-6-

sold the products in the U.S. The Court held that the manufacturer in China could not be liable for infringement:

> [The manufacturer in China], however, cannot be held jointly and severally liable. To be liable for infringement under 35 U.S.C. § 271, a party must make, use, offer to sell, or sell within the United States, or import into the United States, the patented invention. Although [the manufacturer] manufactured every [accused product] that [third party customer] sold in the United States, all of [manufacturer's] activities took place in Shanghai. [The manufacturer], therefore, cannot be liable for infringement under § 271 nor be jointly liable with [third-party customers].

*Id.* Likewise, in the instant case, Fairchild cannot be liable for any alleged U.S. importation by third-party foreign customers, as there is no evidence that Fairchild induced its customers' alleged importation and or that Fairchild knows or has any influence over where these customers sell their products. Furthermore, PI's damages expert admits that no evidence exists that Fairchild is involved in the actual importation of the finished goods into the U.S. [*See infra* Motion In Limine No. 2 at Section I.B.]

For the foregoing reasons, the Court should therefore exclude all testimony by Mr. Troxel or any other witnesses claiming damages based upon alleged third party importation or sale of accused products in the U.S. Mr. Troxel and all other PI witnesses should be limited to Fairchild's own        **REDACTED**

### B.    There Is No Evidence Of Importation Of The Accused Fairchild Products.

PI offers no admissible evidence of U.S. importation of any of the accused Fairchild products. As the Court recently recognized:

> [T]he depositions of numerous Power Integrations' witnesses demonstrate that Power Integrations had no evidence prior to April 18, 2006, that Fairchild's accused devices were imported into the United States.

[DI 334] Similarly, PI's damages expert Mr. Troxel *admits*

**REDACTED**

- 7 -

[de Blank Decl., Ex. 3 at 358:15-23; 362:2-4          **REDACTED**

Mr. Troxel further admitted that no

**REDACTED**

[*Id.*, Ex. 3 at 408:11-14, 409:15-18] Therefore, even if PI's third-party importation theory were not precluded as a matter of law, clearly no tenable position exists to allow Mr. Troxel to testify regarding importation of finished goods or products by third-party customers as evidence that the Fairchild accused products are being imported.

Critically, PI sought discovery on this issue and found none.  PI issued subpoenas and deposition notices to ten potential importers or Fairchild customers—

**REDACTED**

[*Id.*, Ex. 12 at Exs. 17-26]  No relevant evidence was found and Mr. Troxel relies upon no evidence actually produced by any of the subpoenaed potential importers. [*Id.*, Ex. 3 at 362:14-385:23)]  In fact, after PI subpoenaed these parties it intentionally abandoned that discovery completely.  [de Blank Decl., ¶14]  It simply ignored its own outstanding subpoenas and did not seek depositions or documents from them.[5]

---

[5]  Only one of these companies even filed a motion to quash—LG Electronics.  In granting that motion, the Court clearly explained to PI how to obtain proper discovery of importation from the third party customers:

> Further, the Court understands that Power Integrations has several options available to it to obtain the discovery it seeks. Power Integrations may apply the processes of the Hague

Having no evidence of any importation and having refused to take discovery from the best source of information regarding importation—the allegedly importing companies themselves—PI should not be allowed to present any damages theories based on alleged importation. To do so would be extremely prejudicial to Fairchild and is contrary to the principles set forth in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993). This is particularly the case given that despite Fairchild's requests that PI explain the facts underlying its importation theory, PI refused. As the Court recently noted:

> Although Fairchild repeatedly asked Power Integrations to provide it with the basis for its allegations that Fairchild's accused devices were imported into the United States and that Fairchild induced this importation, Power Integrations provided no response prior to the close [of discovery].

[DI 334] Because PI has no evidence of any importation of the accused Fairchild products, the Court should therefore exclude all testimony by Mr. Troxel or any other witnesses claiming damages based upon alleged third party importation or sale of accused products in the U.S. Mr. Troxel and all other PI witnesses should be limited to Fairchild's actual manufacture of products **REDACTED** if allowed into the case, and Fairchild's own actual importation of products into the U.S. of other products **REDACTED**

      C.    **(1) Unreliable Evidence Offered By PI Regarding Third Parties' Alleged U.S. Importation Of Finished Goods And (2) PI's Speculative U.S. Importation "Percentages" Which Are Based On The Unreliable Evidence Should Be Excluded.**

PI has done nothing more than speculate and guess on the quantity of Fairchild products *actually* incorporated in products sold outside the U.S. and then subsequently imported by third parties into the U.S. On the basis of only three unauthenticated, hearsay articles, a belated,

---

Convention to subpoena LGE-Korea [the parent company], the party with actual posession and control over the documents Power Integrations seeks. Because alternative avenues exist for Power Integrations to pursue the requested information, and the circumstances in this case do not justify the Court disregarding the 'corporate formalities' associated with related but independent corporate entities to obtain documents in the possession and immediate control of a non-party parent corporation, the Court will grant LGE-USA's Motion To Quash.

[*Id.*, Ex. 13] PI ignored the Court's suggested options to obtain evidence of actual importation of Fairchild's products and never obtained the proper discovery.

unreliable report and the unreliable deposition of its author, PI concocts wholly speculative

percentages of imported finished goods and assumes all contained accused Fairchild products:

- Mr. Troxel opines that              REDACTED
  the U.S. for purpose of PI's "lost sales" and "price erosion" theories and then
  assumes
  accused Fairchild product.

- Mr. Troxel opines that              **REDACTED**
  and then averages that number with
  Shipped" to the U.S. for purposes of the "reasonable royalty" theory and again
  assumes every**REDACTED**contained a Fairchild accused product.

[de Blank Decl., Ex. 1 at ¶143 and Appendix 9]  It is well-settled that damages for patent

infringement may not be speculative and must be based on reliable information.  *See Oiness v.*

*Walgreen Co.*, 88 F.3d 1025, 1029-1030 (Fed. Cir. 1996).  Because the materials relied upon by

Mr. Troxel are unreliable and inadmissible, they must be excluded, as well as the resultant

speculative importation percentages and the damages based upon them.

      1.     **The    REDACTED    Figure Is Speculative,
Unreliable, Unsupported By Admissible Evidence And Should
Be Excluded.**

      a.    **The "Wireless News" Article And The "IDC" Press
Release Are Unreliable,    REDACTED
And Should Be Excluded.**

      Mr. Troxel purports to base his assertion that              REDACTED

United States solely on two pieces of unreliable data—an Internet "Wireless News" article

reporting              REDACTED

release reporting                                    [de Blank Decl., Exs. 1 at

Appendix 9; 14 (Wireless News Article), 15 (IDC Article)]  Neither of these press releases

indicate that they were authorized by              REDACTED

Critically, none of the articles mention Fairchild, the accused products or the actual chargers that

might contain the accused products—the              REDACTED              The articles are

inadmissible hearsay—i.e. out of court statements offered for their truth in establishing

percentages of accused Fairchild products entering the United States.  Fed. R. Evid. 801, 802.

The articles and resulting opinions should be excluded for this reason alone.

The Wireless News and IDC articles should also be excluded because they are not reliable. First, they are entirely unauthenticated by REDACTED anyone else, thus there is simply no way to ensure or assess their accuracy. Fed. R. Evid. 602, 901. Mr. Troxel testified that he

<div style="text-align: center;">REDACTED</div>

[de Blank Decl., Ex. 3 at 531:24-532:21] He admitted that he did not know if the NPD Group obtained sales information from the companies identified in the article or the margin of error in its survey. [*Id.*, Ex. 3 at 534:16-535:12] He admitted that despite the fact that a full report underlying the IDC article was available, he neglected to obtain or review it, and consequently had no understanding of the basis of IDC's figures regarding     REDACTED

margin of error. [*Id.*, Ex. 3 at 538:10-540:21] Mr. Troxel admitted that he had never relied on the NPD Group or IDC in forming expert opinions. [*Id.*, Ex. 3 at 531:24-532:21, 538:3-5] Mr. Troxel admitted that he was unable to independently determine the accuracy of the information provided by NPD Group or IDC. [*Id.*, Ex. 3 at 532:22-533:24, 538:3-9] For this reason, the information should be excluded. *See In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999) (data not a proper basis for expert opinion where it is so unreliable that no reasonable expert could base opinion on it).

Ultimately, Mr. Troxel admitted that these documents were simply found on the Internet by someone else and given to him to rely upon. [de Blank Decl., Ex. 3 at 532:22-533:24, 541:5-14] Courts have observed the serious risk of unreliability concerning information pulled off of the Internet:

> Plaintiff's electronic "evidence" is totally insufficient to withstand Defendant's Motion to Dismiss. While some look to the Internet as an innovative vehicle for communication, the Court continues to warily and wearily view it largely as one large catalyst for rumor, innuendo, and misinformation. So as to not mince words, the Court reiterates that this so-called Web provides no way of verifying the authenticity of the alleged contentions that Plaintiff wishes to rely upon in his Response to Defendant's Motion. There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is inherently untrustworthy. Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court

<div style="text-align: center;">- 11 -</div>

holds no illusions that hackers can adulterate the content on any web-site from any location at any time. For these reasons, any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules found in FED. R. CIV. P. 807. Instead of relying on the voodoo information taken from the Internet, Plaintiff must hunt for hard copy back-up documentation in admissible form . . .

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774-775 (S.D. Tex. 1999).[6]

Second, the articles only address the third quarter of 2005 and explain that sales were

unusually high in that quarter. [de Blank Decl., Ex. 14 (Wireless News Article) ("The handset

market was very robust in the third quarter.")] Mr. Troxel admitted that he had not even looked

at sales in any other period. [*Id.*, Ex. 3 at 535:20-536:12] Further, he admitted that he had no

idea how the 2005 third quarter compared with any other period. [*Id.*, Ex. 3 at 543:19-544:6]

Therefore, it is inappropriate to extrapolate from the single, inaccurate data point.

Third, the articles are unreliable because they address sales of                    while it is

undisputed that the accused Fairchild products are used only in        **REDACTED**

                    During his deposition, Mr. Troxel admitted that, despite the fact that he

relied upon

**REDACTED**

---

[6]  *See also Dean Foods Co. v. Consolidated Freightways*, 29 F. Supp. 2d 495, 496 (N.D. Ill. 1998) (rejecting evidence where witness "who reported the data did nothing more than report what appeared on her screen. Had she some personal knowledge of the machines and the market, the answer might be different."); *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) (excluding internet evidence on basis that it could not be authenticated); *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) (finding that evidence taken from the Internet lacked authentication where the proponent was unable to show that the information had been posted by the organizations to which she attributed it).

[7]  This is not a trivial distinction.      **REDACTED**     include integrated circuits (like those sold by Fairchild, Power Integrations, System General, STMicroelectronics, and a number of other competitors) as well as competing non-integrated devices (such as linear and discrete solutions). There is no evidence that the chargers that accompany      **REDACTED** contain integrated solutions (or, specifically, any of the accused devices) and no evidence as to whether or at what rate **REDACTED**      are imported into the U.S.

- 12 -

<div align="center">**REDACTED**</div>

[*Id.*, Ex. 3 at 536:18-537:3; 409:13-14

<div align="center">**REDACTED**</div>

     Fourth, while Mr. Troxel makes the assumption that for every

imported into the U.S. a Fairchild accused product is imported too, he offers absolutely *no*

*evidence* to support the assumption that *any* **REDACTED**    actually contain Fairchild parts or

were sold with a charger that contained one. In fact, to the contrary, Mr. Troxel testified that he

did not know of any Fairchild devices imported into the U.S.:

<div align="center">**REDACTED**</div>

[*Id.*, Ex. 3 at 360:7-18] He further testified that he was not aware of **REDACTED**

any documents in this case regarding importation of the accused devices. [*Id.*, Ex. 3 at 385:3-17]

Similarly, PI's CEO also testified that he was not aware of any U.S. importation of any **REDACTED**

    containing a Fairchild part. [*Id.*, Ex. 10 at 151:14-152:23] Thus, the use

<div align="center">**REDACTED**</div>

                    without foundation that every

      bundled         and that every one of      contains a Fairchild accused

product. **REDACTED** This is pure speculation and guesswork and must be excluded.

     Finally, it is inappropriate for PI to rely on the foregoing unauthenticated and unreliable

evidence when it had direct sources of evidence at its disposal. Indeed, during discovery, PI

    **REDACTED**     for documents and a deposition on damages issues, but then

*abandoned* it before obtaining any documents or deposition testimony    [*Id.*, Ex.

12 and ¶14] As PI's damages expert observed,       **REDACTED**

                  [*Id.*, Ex. 3 at 386:5-18] He testified that if he were

trying to determine the importation figures     **REDACTED**    [*Id.*, Ex. 3

at 386:20-387:9] PI cannot choose to bury its head in the sand in order to remain deliberately

<div align="center">- 13 -</div>

ignorant of actual     REDACTED     and instead rely on unsupported hearsay documents. To reward PI for this tactic would be unfairly prejudicial to Fairchild when PI clearly knew how to obtain more reliable information but chose not to.

For the foregoing reasons, both the "Wireless News" and IDC articles must be excluded, as well as Mr. Troxel's testimony regarding the speculative     REDACTED     based on those articles. *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-1030 (Fed. Cir. 1996) (damages report which failed to provide evidence of "actual sales" of accused product, but rather extrapolated from other information was found unreliable); Fed. R. Evid. 702 (expert opinion must be "based upon sufficient facts or data")

<blockquote>
b. **The "SG Cowen" Report And The Deposition Testimony Of Its Author Mr. Slayton Are Unreliable, Do Not Support REDACTED And Should Be Excluded.**
</blockquote>

Mr. Troxel later submitted an improper, belated expert report attempting to bolster the REDACTED by incorporating an analyst report by "SG Cowen"[8] and the deposition testimony of its author, Shawn Slayton. [de Blank Decl., Ex. 16] Like the Wireless News article, the SG Cowen report and Mr. Slayton's deposition testimony are based on unreliable hearsay and mere speculation and should be excluded. Further, neither establishes REDACTED The SG Cowen report *does not even address* any purported percentage of Samsung phones imported into the U.S. [*Id.*, Ex. 17] Further, its author, Shawn Slayton, admitted that he did not know the percentage of Samsung products imported into the U.S. and more generally did not know where the accused Fairchild parts were manufactured or what percentage of their sales occur in the U.S.:

<blockquote>
REDACTED
</blockquote>

---

[8] SG Cowen is a stock analyst which is unrelated to System General, or "SG," a competitor of both Fairchild and PI.

**REDACTED**

[de Blank Decl., Ex. 18 at 86:19-25, 70:5-9, 17-22, 76:7-11] Obviously, neither the Cowen

Report nor the testimony of its author can establish the **REDACTED** by Mr. Troxel. Yet,

amazingly, in his recent deposition Mr. Troxel testified that Mr. Slayton is the *only* purported

basis of his assertion that there is actual U.S. importation:

**REDACTED**

[*Id.*, Ex. 3 at 361:6-12] Mr. Troxel should not be allowed to rely on Mr. Slayton's speculations

about importation to establish U.S. importation figures because Mr. Slayton testified under oath

that he had no actual knowledge of importation by Fairchild.[9]

---

[9] Slayton at one point claimed regarding Samsung cell phone importation that
**REDACTED** [*Id.*, Ex. 18 at 87:6-11] But, he later
recanted. admitting that he had no support on this number:

[*Id.*, Ex. 18 at 87:15-20]                    **REDACTED**

2.  The  REDACTED     Importation Figure Is Speculative, Unreliable, Unsupported By Admissible Evidence And Should Be Excluded.

a.  The "DisplaySearch" Article Is Unreliable, Does Not Support REDACTED   And Should Be Excluded.

Mr. Troxel purports to base his assertion that                          enter the United States on a single piece of unreliable data—a "DisplaySearch" article reporting that REDACTED REDACTED     were shipped to North America. [*Id.*, Exs. 1 at Appendix 9), 19 (DisplaySearch article)] Mr. Troxel then prorated sales between the U.S., Canada and Mexico based on the entire Gross Domestic Product of the respective countries in order to reach the REDACTED               [*Id.*, Ex. 1 at Appendix 9)] There was no mention of Fairchild, PI, the accused Fairchild products or power chargers anywhere in the article. Use of this percentage is rank speculation and should be precluded at trial.

Like the articles discussed above, the "DisplaySearch" article represents inadmissible hearsay, offered for its truth in establishing percentages of accused Fairchild products entering the United States. Fed. R. Evid. 801, 802. Further, the article is unreliable. First, it is unauthenticated and thus the accuracy of its contents cannot be ensured. Fed. R. Evid. 602. Mr. Troxel admitted that he was not even sure he had ever heard of DisplaySearch before this case and other than the article, had no information about that organization. [de Blank Decl., Ex. 3 at 547:2-22)] Mr. Troxel admitted that he had no understanding regarding the methodology or margin of error employed, how data was gathered, or whether DisplaySearch contacted manufacturers directly. [*Id.*, Ex. 3 at 548:8-549:2] Mr. Troxel admitted that, like the articles above, the DisplaySearch article was merely taken from the Internet. [*Id.*, Ex. 3 at 549:3-10] For all of these reasons, the article is highly unreliable.

Second, the article only purports to state North American importation REDACTED the first quarter of 2005. Like the articles above, it is unreliable to extrapolate from a single quarter in this way.

Third, the document is unreliable because it does not establish that any of the allegedly

- 16 -

imported **REDACTED** actually contained any *Fairchild part* much less a Fairchild product accused in this case.  Mr. Troxel does not even attempt to do so.  Indeed, he admitted in his deposition that the article does not refer to Fairchild in any way and that he was not even certain whether Fairchild sold to the manufacturers of **REDACTED** identified in the article.  *[Id.*, Ex. 3 at 549:11-551:17]  He admitted that the article does not state the percentage of **REDACTED** entering the U.S.  *[Id.*, Ex. 3 at 552:18-23]  Instead, Mr. Troxel purported to prorate the "North American" importation figure in the article by the gross domestic product of the U.S., Mexico and Canada to arrive at the U.S. importation figure.  *[Id.*, Ex. 1 at Appendix 9]  This is sheer speculation.  Such a generalization cannot possibly reflect the market share of a very particular good, **REDACTED** which is subject to particular market conditions and factors.  Moreover, the approach certainly does not address the portion of such          actually containing Fairchild accused parts.                                   **REDACTED**

     For the foregoing reasons, the article must be excluded, as well as Mr. Troxel's testimony regarding the     **REDACTED**          *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-1030 (Fed. Cir. 1996) (rather than provide evidence of "actual sales" of accused product, plaintiff extrapolated from store's overall "sales per square foot" (like PI's extrapolation from GDP)—the court found this method to be wholly unreliable and "fraught with speculation" given the lack of any nexus to actual sales of infringing product); *Telecomm Tech. Servs. v. Siemens Rolm Communs., Inc.*, 1999 U.S. Dist. LEXIS 21415 (N.D. Ga. 1999) (Court excluded evidence of purported sales where, rather than using information regarding actual sales of infringing systems, expert instead estimated using "the average of the percentages that were calculated for the other [parties selling similar accused products]."); Fed. R. Evid. 702 (expert opinion must be "based upon sufficient facts or data").

     3.     **Averaging The Unreliable**     **REDACTED**          's Even
            **And The Unreliable**
            **More Unreliable, And Should Be Excluded.**

     In order to arrive at the importation figure for his reasonable royalty calculations, Mr. Troxel averaged the above described     **REDACTED**

- 17 -

**REDACTED**          [de Blank Decl., Ex. 1 at ¶143]  This is simply piling unreliable inference upon inference.  For example, Mr. Troxel testified in his deposition, the accused parts could be used in other types of goods, such as          **REDACTED** but has no opinion or evidence regarding importation of such goods.  *[Id.,* Ex. 1 at 553:8-556:21] But, by ignoring those products, Mr. Troxel is assuming with no basis that **REDACTED** products are          **REDACTED**                    His admission that the accused products are in other products demonstrates the unreliability of his methodology.  For the foregoing reasons, Mr. Troxel's          **REDACTED**

> D.    **There Is No Evidence That Fairchild Has Any Knowledge Of The Amount Of Importation Of The Accused Products.**

PI presents absolutely no evidence in the reports of Mr. Shields, Mr. Blauschild or Mr. Troxel, or anywhere else, that Fairchild had any knowledge of the amount of U.S. importation of third-party finished goods containing Fairchild parts.  Also, PI deposed 18 Fairchild witnesses and can point to no testimony regarding Fairchild's knowledge of actual importation of specific finished goods containing an accused product.  This is particularly the case given that PI had every opportunity to depose third parties in Asia that purchased parts from Fairchild.

Importantly, in the only instance in which PI actually pursued third-party discovery of an importer, it subpoenaed the *wrong* party.  In that debacle, this court outlined the proper process to obtain discovery of sales data from foreign corporations:

> Further, the Court understands that Power Integrations has several options available to it to obtain the discovery it seeks. Power Integrations may apply the processes of the Hague Convention to subpoena LGE-Korea [the parent company], the party with actual posession and control over the documents Power Integrations seeks. Because alternative avenues exist for Power Integrations to pursue the requested information, and the circumstances in this case do not justify the Court disregarding the 'corporate formalities' associated with related but independent corporate entities to obtain documents in the possession and immediate control of a non-party parent corporation, the Court will grant LGE-USA's Motion To Quash.

[de Blank Decl., Ex. 13]  PI failed to do so.  In fact, PI served subpoenas on ten potential importers, but abandoned every one of them prior to receiving documents or taking depositions. *[Id.,* ¶14]  Further, PI took no action as advised by the Court to pursue discovery of any foreign

corporation. [*Id.*, ¶14]  The Court warned PI, but PI failed to heed that warning.  PI may not take advantage of its willful ignorance.  PI should be precluded from making any blanket assertion that Fairchild had knowledge of the amount of products imported into the U.S. containing its parts, and should be limited to putting on evidence of specific proven instances of importation of third-party products containing Fairchild parts.  If PI is not precluded from doing so, the result will be to unfairly taint the jury's perception, without any evidence, and unduly prejudice Fairchild.  Fed. R. Evid. 403.

Based on the foregoing, except for specific proven instances of actual importation by Fairchild, PI should be precluded from arguing that Fairchild has any general knowledge of the amount of importation of third-party finished goods containing Fairchild parts.

III.     **MOTION IN LIMINE NO. 3:** **(1) PI's Decertified Financial Reports, Which PI Admits Cannot Be Relied Upon, And (2) Any Opinion Regarding Lost Sales, Price Erosion Or Reasonable Royalty, Which Are Based Upon The Financial Reports Should Be Excluded.**

On January 31, 2006, Mr. Troxel submitted a damages report that expressly relied upon PI's financial reports:

**REDACTED**

[de Blank Decl, Ex. 1 at p. 12 & n. 21]

On May 9, 2006, PI admitted to the SEC and the public that there were "material weaknesses" in its internal financial controls.  [*Id.*, Ex. 20]  <u>PI cautioned that its financial reports</u> <u>*"for each of the fiscal years 1999 through 2004, and for the first three quarters of the fiscal*</u> <u>*year ended December 31, 2005 . . . should no longer be relied upon."*</u>  [*Id.*]  PI told the SEC and

- 19 -

the public that the "material" changes it anticipated to its financial reports *__would have the__* *__effect of decreasing income from operations, net income and retained earnings.__*" [*Id.*] PI's Chairman and its CFO both abruptly resigned. [*Id.*] The U.S. Department of Justice issued a grand jury subpoena to PI and the Securities Exchange Commission announced an investigation. [*Id.*, Ex. 21] PI indicated that it would "fully cooperate" with the subpoena and investigation into these issues. [*Id.*]

At the May 31, 2006 pre-trial hearing, Fairchild raised its concerns about the fact that all of PI's financial reports were no longer reliable. [DI 282 at pp. 6:23-8:8, 10:8-13:14, 18:18-20:5, 49:3-51:8] Over PI's objection that its internal investigation and restated financial reports were purportedly not "relevant," the court allowed Fairchild further discovery to investigate the issue. [*Id.* at p. 10:8-14] The Court ordered PI to provide written discovery and deposition testimony. [*Id.* at pp. 19:12-18, 49:3-51:8] PI represented that its restated reports were forthcoming and that its first quarter 2006 report would be available on August 2, 2006. [*Id.* at pp. 49:3-51:8] Relying on this representation, the parties agreed to and the Court ordered an August 18, 2006 deadline for the close of damages discovery, predicated on the assumption that all materials concerning PI's restated financial data would be produced by August 2. [*Id.*]

Fairchild repeatedly attempted to conclude the necessary damages discovery regarding PI's financial reports and figures, as ordered by the Court and agreed by PI. [*Id.*, Ex. 22] However, PI has stonewalled at every step of the way and refused to provide *any discovery whatsoever* on the issue. [*Id.*, Ex. 23] PI refused to produce any restated financial data, any deposition testimony and the non-privileged information provided to the DOJ and SEC in response to their investigations. [*Id.*] PI has also continuously extended and missed the NASDAQ deadlines to provide its restated financials—and ultimately PI was delisted from the NASDAQ on August 2, 2006. [*Id.*, Ex. 24]

Incredibly, on August 8, 2006, despite refusing to produce any information regarding the restated financials, PI submitted a third belated expert report by Mr. Troxel which represented that                    **REDACTED**

**REDACTED**                                " [*Id.*, Ex. 2 at n. 4)] This is

simply outrageous. The problems with PI's financial reporting and changes to its financial

figures were so serious that PI decertified all reports back to 1999, told the world not to rely on

them and admitted that "***income from operations***, net income and retained earnings" would

decrease. The issues were so serious that PI fired two high-ranking officers over the matter, the

DOJ and SEC instituted investigations and PI was willing to suffer delisting from the NASDAQ

stock exchange rather than provide restated reports. PI didn't say that there were small changes

to its financials—it said that *all* of its financials were untrustworthy. But, now PI and its expert

Mr. Troxel want to get away with glibly saying "this is not serious" while simultaneously

denying Fairchild the Court-ordered discovery necessary to investigate the veracity of that

assertion. Mr. Troxel make this assertion despite admitting that     **REDACTED**

        [*Id.*, Ex. 3 at 453:24-455:5] How can PI's expert Mr. Troxel credibly say that the

changes are not relevant if he has not been privy to any more information than Fairchild? And if

PI truly believes that the changes are not relevant, why won't they produce the requested

discovery to prove their assertions? Regardless, Mr. Troxel's statements regarding the restated

financials must be excluded.

        PI's restated financial information is very likely to change the damages analysis in this

case. PI admits that                **REDACTED**

                                        Similarly, PI argues that in its

price erosion arguments

        **REDACTED**                [*Id.*, Ex. 1 at ¶¶137-138] PI's restatement will impact this

same projected growth rate. [*Id.* (growth rate based on analyst reports relying on PI financial

reports)] Further, PI's "reasonable royalty" figure takes into account the profitability of the

product. [*Id.* at ¶¶199-202] PI's restatement will impact profitability, and thus the reasonable

royalty analysis. During his deposition, Mr. Troxel finally conceded that

                **REDACTED**

            [*Id.*, Ex. 3 at 340:2-21, 456:16-23, 457:2-12] Mr. Troxel has never

- 21 -

seen them, yet he opined in **REDACTED** Clearly, this opinion lacks foundation and must be excluded.

Based on the foregoing, given that PI's damages analysis relies on its prior, admittedly unreliable financial data and given that PI refuses to update its financial information or provide Fairchild Court-ordered discovery on this issue, Mr. Troxel must be precluded from offering any opinions of lost sales, price erosion or reasonably royalty based upon the unreliable data. Fed. R. Evid. 702 (expert opinion must be "based upon sufficient facts or data"); *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) ("If the data underlying 'the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.'"); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993) (underlying expert data must be reliable). Indeed, in a similar case, where the damages expert knowingly testified at trial based on unreliable, de-certified financial statements, the Federal Circuit remanded for a determination of whether the damages expert's trial testimony based on the incorrect information constituted "fraud, misrepresentation or other misconduct" warranting relief from the judgment. *See Venture Indus. Corp. v. Autoliv ASP, Inc.*, 2006 U.S. App. LEXIS 20114, *10-14 (Fed. Cir. 2006) (plaintiff had reported "potential accounting irregularities," including understatement of costs which would affect financial data and stated "financial information previously publicly reported by [plaintiff] as far back as at least 1998 is unreliable and should not be relied upon by investors"; damages expert knowingly relied upon). The same is true here.

At a minimum, Mr. Troxel must be precluded from opining that the restated financials will have no effect on damages when he has never seen them and contradicts PI's prior public statement. At the same time, Fairchild must be allowed to present to the jury the full extent of the matter as presently known, that the financials are admittedly unreliable and to disclose the seriousness of the matter through the firing of PI executives and delisting of PI stock.

**IV.    MOTION IN LIMINE NO. 4:  PI's Claim And Evidence Of Alleged "Price Erosion" Should Be Excluded.**

A.     **PI And Its Attorneys Concealed From Its Damages Expert Evidence That PI Is Able To Raise Prices.**

PI's damages expert has opined that dramatic price erosion has occurred and will continue to occur for four years into the future. [de Blank Decl., Ex. 1 at pp. 46-53, 56-62; Ex. 2 at Ex. F)] The foundation of this opinion relies upon Mr. Troxel's misbelief that PI cannot raise its product prices even if Fairchild exits the market post-trial. This opinion is false and was procured by PI by deliberately removing evidence of actual price increases from what was provided to Mr. Troxel.

Late in this case, on August 21, 2006, only four days before the deposition of Mr. Troxel, eleven pages of               **REDACTED**

                              *[Id.,* Ex. 25]                     was apparently to prepare financial materials which were to be used in Mr. Troxel's damages report. Initially, LECG received financial information directly from PI and its attorneys and passed it back to PI's attorneys to then give to Mr. Troxel. In this process certain                     were removed by LECG.

**REDACTED**

*[Id.,* Ex. 25] An example above,

**REDACTED**                                        *[Id.,* Ex. 3 at 588:4-

591:1]                          **REDACTED**

**REDACTED**

[*Id.*, Ex. 3 Troxel Depo. 431:6-12]  The reason that Mr. Troxel never obtained these charts—

which seriously undermine his price erosion theory—is that PI's counsel intentionally concealed

them.  Indeed, in December 2005, while Mr. Troxel was preparing his report,

**REDACTED**          [*Id.*, Ex. 3 at 431:18-432:17]     **REDACTED**

[*Id.*, Exs. 3 at 432:18-433:3; 25]  Consequently     **REDACTED**          . [*Id.*,

Ex. 3 at 432:18-433:3]  This was part of an overall strategy by PI to filter out harmful

information by passing it through PI's lawyers.  PI's lawyers repeatedly

information to Mr. Troxel only through them:                **REDACTED**

        **REDACTED**              [*Id.*, Ex. 26]  PI did so in order

to create a "wall" around LECG.  In one instance in which LECG violated PI's instructions and

breached the "wall" by sending information directly to Mr. Troxel, PI's counsel assailed them for

the lapse:

                        **REDACTED**



**REDACTED**

[*Id.*, Ex. 26]

Through this scheme, PI and its counsel deliberately obtained an inflated damages report from Mr. Troxel based on the false and incomplete information they supplied to Mr. Troxel. Unless excluded, the fraud will be inflicted on Fairchild.

Furthermore, PI's direct involvement is proven by Mr. Troxel's testimony.

**REDACTED**

[*Id.*, Ex. 25]  At the same time,                           **REDACTED**

[*Id.*, Ex. 1 at ¶¶120-122 and n. 22]

**REDACTED**

pricing charts that showed price increases after a decline.  Unaware of charts showing actual price increases for certain products after a decline, Mr. Troxel     **REDACTED**

[*Id.*, Ex. 1 at ¶¶120-122

**REDACTED**                                      Ex. 3 at 261:11-14

]  Mr.

Troxel then opined that            **REDACTED**

.  Both are clearly false and rely upon false information—yet they could allow PI to argue to the jury that PI is entitled to price erosion damages

**REDACTED**

PI should not be rewarded for hiding evidence that completely undermines its theory and manipulating its expert testimony to inflate its damages claim.  This conduct warrants exclusion of Mr. Troxel's price erosion theories altogether and damages calculations based on them. *See In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) (excluding expert report based on discovery

abuse); *see also Scott v. IBM Corp.*, 196 F.R.D. 233, 248 (D.N.J. 2000) ("When the contents of a document are relevant to an issue in the case, the spoliation inference is nothing more than the common sense observation that a party who hides relevant evidence until the eve of trial did so out of a well-founded fear that the contents would harm him."). As a consequence, all lost profits and price erosion damages should be excluded.[10]

### B.    There Is No Evidence That Fairchild Caused PI's Prices To Erode.

Mr. Troxel recognizes the established test set forth in *Panduit v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) for proving a "causal relationship" between the sale of the accused products and plaintiff's alleged loss.[11] [de Blank Decl., Ex. 1 at ¶67)] Indeed, he applies that test in his analysis of "lost profits from lost sales." [*Id.*, at ¶¶64-106, 125-131] As Mr. Troxel recognizes,

<div align="center">REDACTED</div>

[*Id.*, at ¶67] This same test is required for any analysis of "price erosion." *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1157 (6th Cir. 1978) ("The right to damages caused by price reduction stands on the same ground as that to damages caused by lost sales."). However, with respect to his analysis of "lost profits from price erosion," Mr. Troxel fails completely to consider any element of the *Panduit* test or any other "but for" analysis that Fairchild's alleged infringement was the proximate cause of PI's price erosion. [*Id.*, Ex. 1 at ¶¶107-123, 132-141] For this reason, Mr. Troxel's "price erosion" analysis must be rejected and excluded from evidence.

Further, PI's and Mr. Troxel's price erosion theory is unreliable because it does not

<div align="center">REDACTED</div>

<div align="right">[*Id.*, Ex. 27 at Response</div>

---

[10]        **REDACTED**

[11]  This test is well-established and has been adopted by the Federal Circuit. *See e.g. Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1140 (Fed. Cir. 1991) (applying *Panduit* test).

No. 37] Indeed, '

<center>**REDACTED**</center>

<div align="right">*[Id.]*</div>

PI should be precluded from now arguing that the "alternative solutions" identified in its second supplemental response to interrogatory no. 37 are not non-infringing alternatives since PI never supplemented or changed its identification of competing products.  As an initial matter, PI's second supplemental response was made at the direction of the Court in response to Fairchild's motion to compel an answer.  Thus, there is no excuse for PI to argue that its identification was mistaken.  Moreover, in December 2005 Fairchild expressly informed PI's counsel—on the record—that Fairchild was relying on PI's second supplemental response to interrogatory no. 37 and would hold PI to that response unless it was supplemented.  *[Id.*, Ex. 11 at 414:24-418:2]  PI's attorney agreed,          **REDACTED**

      *[Id.* at 416:24-25]  Presumably, PI reviewed the responses as they agreed to do and determined that supplementation was not necessary—

<center>**REDACTED**</center>

<center>- 27 -</center>

products.

When faced with this admission in his deposition, Mr. Troxel conceded that

**REDACTED**                                                    [*Id.*, Ex. 3 at 505:15-

518:16]

Specifically, in Mr. Troxel's discussion of alleged price erosion in his expert report

**REDACTED**                                                    [*Id.*, Ex. 1 at ¶¶107-123,

132-144, Exs. F-1–F-7]  Under settled authority, consideration of competition is essential to a

price erosion theory. *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,

246 F.3d 1336, 1357-1358 (Fed. Cir. 2001) ("the patentee's price erosion theory must account

for the nature, or definition, of the market . . ."; rejecting price erosion theory, noting "[Patentee]

faced great price competition from many other CODEC manufacturers besides the alleged

infringers."); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1352

(Fed. Cir. 1999) (noting that the cases establish "that market sales of an acceptable noninfringing

substitute often suffice alone to defeat a case for lost profits"); *BIC Leisure Prods. v.

Windsurfing Int'l*, 1 F.3d 1214, 1220 (Fed. Cir. 1993) (rejecting price erosion as "speculative"

where "[t]he record shows that other market forces, not [defendant], forced [plaintiff] to lower its

prices.").

Mr. Troxel cannot merely *assume* a two-supplier market and *assume* all price erosion

occurs as a result of alleged infringement by Fairchild in an effort to shift the burden to Fairchild

to argue otherwise.  Where PI unequivocally admits

**REDACTED**

To do so would allow PI to obtain damages for

price erosion caused by admittedly *proper* competition from non-infringing products PI typically

faces in the market.  As a matter of law, Fairchild is not responsible for such price erosion since

it is admittedly non-infringing *and* it is caused by someone else—not Fairchild.

- 28 -

Mr. Troxel's failure to even *consider* the competition in his price erosion theory renders it unreliable and unsupported. It is settled that expert opinions must be "the product of reliable principles and methods" and experts must have "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Mr. Troxel's failure to even address or consider the admitted competition PI faces from non-infringing alternatives warrants exclusion of his "price erosion" theories as grossly overstated and highly prejudicial to Fairchild. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-593 (1993) (expert methodology must be valid).

### C.  There Is No Evidence That Fairchild Caused

### REDACTED

The bulk of Mr. Troxel's

### REDACTED

[*Id.*, Ex. 2 at Exs. F3b, F5b] This argument lacks all credibility for many reasons. Specifically, Mr. Troxel claims that

### REDACTED

To stress this key point,

First, while this theory presumes a future market without Fairchild's allegedly infringing competition, it also assumes that PI controls the pricing on both PI products remaining in the market. Thus, it is PI, not Fairchild, that will control pricing. Second,

### REDACTED

[*Id.*, Ex. 2 at ¶14] To do so, would allow PI to recover damages based on pre-complaint economics or conditions and would violate the Court's order preventing the recovery of pre-complaint damages, based on PI's failure to mark. [DI 265] The existence of the        **REDACTED**

Third, there is also no evidence to support PI's claim that *Fairchild* caused

customers        **REDACTED**

- 29 -

**REDACTED**                          [de Blank Decl., Ex. 3 at 609:4-20)]

Finally, requiring Fairchild to pay for the price differential between


**REDACTED**

Mr. Troxel fails to account for

this striking increase in sales and instead claims

Mr. Troxel claims the price differential


**REDACTED**


[*Id.*, Ex. 3 at 575:19-22]


**REDACTED**


Because Mr. Troxel's opinion in this regard is not

based on reliable or even credible "principles or methods" it must be excluded.  Fed. R. Evid.

702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-593 (1993).[23]  Based on the foregoing,

---

[23] Additionally, the price erosion theories are *solely* based on          **REDACTED**

- 30 -

Fairchild requests that all opinion, analysis and evidence of price erosion be excluded, including

<center>**REDACTED**</center>

<center>D.    **PI's "Future Price Erosion" Theory Is Speculative And Seeks Damages After Expiration Of One Of The Patents.**</center>

Mr. Troxel's opinions regarding alleged "future" price erosion are sheer speculation and must be excluded. Beyond the severe problems already addressed, Mr. Troxel's purported

<center>**REDACTED**</center>

. [de Blank Decl., Ex. 2 at Ex. F] To begin with, if PI were successful in its infringement claim and the Court were to enjoin Fairchild's products,

<center>**REDACTED**</center>

Troxel ignores this and asserts without basis that customers

    *[Id.,* Ex. 1 at ¶121].

<center>**REDACTED**</center>

Rather, he only asserts that

<center>**REDACTED**</center>

*See Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1581 (Fed. Cir. 1992) (rejecting assertion that plaintiff was "entitled to damages for future lost profits for a limited period (two years was proposed) after cessation of infringement due to the price erosion that occurred as a result of infringement, and that [plaintiff] asserted could not be recovered as a matter of practical marketing."); *Sidel v. Uniloy Milacron, Inc.,* 2001 U.S. Dist. LEXIS 24004, *27 (N.D. Ga. 2001) (rejecting argument that "since customers have been buying less expensive allegedly infringing shell systems, they will not go back to paying higher prices").

<center>**REDACTED**</center>

More generally the future price erosion theory must be precluded because it is subject to far too many speculative variables to be reliable. In one case, the Federal Circuit affirmed the

<center>- 31 -</center>

district court's decision not to present a speculative price erosion theory to the jury, noting the future "unknowns" including uncertainty in future pricing, future competition and future markets.  Likewise here, Mr. Troxel's theory must be excluded,

<div align="center">**REDACTED**</div>

This lack of evidence is fatal. *See*

*Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996) ("Damage awards can not be based upon speculation or optimism, but must be established by evidence.").

During his deposition Mr. Troxel conceded the difficulty of predicting future market conditions.  Indeed,

<div align="center">**REDACTED**</div>

[de Blank

Decl., Ex. 3 at 599:7-600:4]  Today,

<div align="center">**REDACTED**</div>

**REDACTED**


[*Id.*, Ex. 3 at 599:14-601:25, 605:15-19]            **REDACTED**

     In this case, Mr. Troxel again provides

         **REDACTED**                                    Mr. Troxel's

opinion lacks all indicia of reliability or evidentiary support and must be excluded.  As his

       **REDACTED**                        Finally, Mr. Troxel's theory projects

price erosion                        despite the fact that the asserted '075 Patent will expire on April 24,

2007.  This is also entirely inappropriate.  For the foregoing reasons, all of Mr. Troxel's "future

price erosion" theories and all damages amounts related to price erosion must be excluded and

not presented to the jury.  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579,

592-593 (1993).

**V.**    <u>**MOTION IN LIMINE NO. 5**</u>:  **PI's Claim And Any Evidence Of Damages Or Notice Prior To October 20, 2005 Should Be Excluded.**


**REDACTED**


               [DI 265]  Accordingly, Mr.

Troxel should be precluded from testifying about any pre-October 20, 2004 damages evidence or

economic conditions or pricing prior to October 20, 2004 in support of its damages case.
Furthermore, before offering any pre-October 20, 2004 evidence at trial, PI should be required to
make an offer of proof that the evidence relates to infringement and is not offered as to damages.


REDACTED                         [DI 265]  Accordingly, Mr. Troxel and
all other witnesses should be precluded from presenting any evidence or argument that PI placed
Fairchild on constructive          REDACTED

## VI.   MOTION IN LIMINE NO. 6:  PI's Admittedly Unreliable Sales Reports And Documents Should Be Excluded.

### A.                       REDACTED

PI produced

as well as summary documents based on the


REDACTED

PI's damages expert, Richard Troxel, relied on these
documents to support his lost sales and price erosion figures.  [de Blank Decl., Ex. 1 at ¶¶113-
123,128, 132-136, nn. 198-221, Ex. C)][24]  However,

REDACTED

Therefore, the weekly reports, the summary documents based


REDACTED

Fairchild asked          REDACTED

*[See e.g. id.*, Ex. 28]  Fairchild inquired
whether these documents were

[*Id.*, Ex. 29 at 279:22-24)]          REDACTED


REDACTED                                [*Id.*, Ex. 29 at 280:17-21, 283:2-4

---

[24] Listing such documents—     REDACTED

. [*Id.*, Exs. 28, 30-33]

- 34 -

**REDACTED**

He reemphasized the

**REDACTED**

**REDACTED**            [*Id.*, Ex. 29 at 282:13-15, 284:17-22)]

testified that it was not PI, but rather

The materials were then provided to            **REDACTED**

**REDACTED**

[*Id.*, Ex. 29 at 280:4-16, 278:4-23]

However, despite reviewing the documents,

**REDACTED**

[*Id.*, Ex. 29 at 281:10-282:4]  Indeed,

**REDACTED**

[*Id.*, Ex. 29 at 282:20-283:1]  He also testified that in            would regularly notice

material which        **REDACTED**

[*Id.*, Ex. 29 at 283:2-18]

Ultimately, when confronted with        **REDACTED**

**REDACTED**            [*Id.*, Ex. 29 at 281:4-6]  Given the

admitted unreliability and lack of foundation, the

**REDACTED**

*See Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) ("If the data underlying 'the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.'"); *Daubert v. Merrell Dow Pharms.*, 509 U.S.

579, 595 (1993) (underlying expert data must be reliable); Fed. R. Evid. 403, 602, 702, 703.

**B.    PI Admits**

<center>REDACTED</center>

[de Blank Decl., Exs. 29 at
110:6-14); 30, 31, 34]          <center>REDACTED</center>

[*Id.*, Ex. 29 at 351:17-19; 352:20-22
(summary documents based on      <center>REDACTED</center>      ; 180:21-182:15, 183:13-21

(summary documents

<center>REDACTED</center>

[*Id.*, Ex. 29 at 345:8-22; 352:15-353:18][25] Further,

<center>REDACTED</center>

[124:6-18, 131:8-16, 132:17-133:3, 134:11-135:9]  Because

<center>REDACTED</center>

*See Montgomery County*, 320 F.3d at 448;
*Daubert*, 509 U.S. at 595; Fed. R. Evid. 403, 602, 702, 703.

**C.    PI Admits Its**          <center>REDACTED</center>

[de
Blank Decl., Exs. 32, 33]

<center>REDACTED</center>

---

[25] Attempts to standardize collection of          <center>REDACTED</center>

[*Id.*, Ex. 29 at 109:24-110:5]

<center>- 36 -</center>

REDACTED

[*Id.*, Ex. 29 at 289:14-290:10, 300:13-301:15 (Exhibit 17 was '

REDACTED                                      [*Id.*, Ex. 29 at 291:16-

292:20]

                                                                [*Id.*, Ex. 29

at 293:9-296:24] For this reason, the sales forecast documents and

REDACTED

     D.    **The Foregoing Documents Should Also Be Excluded Because They Constitute Hearsay**

       Finally, all of the foregoing documents are comprised of hearsay, and are therefore

inadmissible. The statements in the documents were made by

                                         REDACTED

             -although, as explained above, '

[*Id.*, Ex. 29 at 53:24-25 (distributors "     REDACTED                )] Because the statements

in these documents are not made by a declarant testifying at trial and are offered for their truth,

they are hearsay which should be excluded. Fed. R. Evid. 801, 802. For all of the foregoing

reasons, the following documents should be excluded, as well as any testimony based on these

documents regarding

REDACTED

**REDACTED**

[*See* Exs. 28, 30-35]  Based on the foregoing, all of the above-identified documents should be excluded at trial.

VII.  **MOTION IN LIMINE NO. 7:  PI's Technical Experts Legal Opinion That Any Of The Accused Devices Infringe The Asserted Claims Should Be Excluded.**

In their expert reports, PI's technical experts—Michael Shields and Robert Blauschild—opine that            **REDACTED**            [de Blank Decl., Exs. 36 (Shields Report), 37 (Blauschild Report)]  This is inappropriate.  First, the determination of whether a patent is "infringed" is a legal opinion.  Indeed, during the deposition of Mr. Blauschild,

**REDACTED**

[*Id.*, Ex. 38 at 126:8-127:1, 132:1-134:5]  Both Mr. Shields and Mr. Blauschild lack the training or experience to render such a legal opinion.  [*Id.*, Exs. 36 at ¶3-4 (technical background, no legal qualifications); 37 at ¶III (same)]  Accordingly, any testimony rendering the ultimate conclusion

---
26  *See id*, Exs. 36 at ¶1 (            **REDACTED**
; 37 at ¶I (purportedly

- 38 -

**REDACTED**                 *See P&G v. Teva Pharms. USA, Inc.*, 2006 U.S. Dist.

LEXIS 54300 (D. Del. 2006) (observing "The Rules of Evidence do not permit expert testimony

as to legal conclusions").

Second, these experts do not rely on or present any evidence or offer any opinion whether

the accused devices were made, used, offered for sale or sold in the United States or imported

into the United States. [*See generally id.*, Exs. 36, 37]  Such a determination is a necessary

predicate to any opinion ·                    *See* 35 U.S.C. §271(a).  PI's expert, Mr.

Blauschild admitted              **REDACTED**                    [*Id.*, Ex. 38 at 123:2-12,

126:14-127:1]  For these reasons, all testimony by Mr. Shields and Mr. Blauschild that Fairchild

"infringes" the asserted patents is unreliable and should be excluded at trial.

**VIII.   MOTION IN LIMINE NO. 8:** PI's Claim And Evidence That Fairchild Copied PI's
Circuits Or Datasheets Should Be Excluded.

    **A.    There Is No Evidence That Fairchild Copied PI's Circuits.**

PI should be precluded from offering any assertion that Fairchild "copied" PI's

technology, as there is no evidence of copying.  To the contrary, as is made clear by Fairchild's

expert report of Gu-Yeon Wei,            **REDACTED**

                              [de Blank Decl., Ex. 39 (Wei Report)]  At the

same time, the products here are small semiconductor products which, when packaged, would

appear to an average juror to be very similar if not identical.  The likelihood of confusion is high.

Dr. Wei analyzed Fairchild's and PI's products, as well as well-known prior art features, in

enormous detail.  [*Id.*, at pp. 3-23]  Based on this detailed analysis, Dr. Wei


                  **REDACTED**                    [*Id.*]



                              For this reason, any suggestion that

Fairchild copied PI's products should be excluded.  Fed. R. Evid. 403.

**B.     Any Alleged Copying Of PI Datasheets Is Irrelevant.**

**REDACTED**            However, those similarities have no bearing on the claimed

inventions at issue in this case, and therefore are not relevant to any theory asserted in the case.

Rather,                              **REDACTED**                              *[Compare*

de Blank Decl., Exs. 40, 41] As noted by Fairchild, the

                                                                                    *[Id.,*

Ex. 40] The            **REDACTED**

                                This has no bearing on any of the claimed inventions

or even the products themselves, but simply reflects a choice concerning presentation of product

details in a manner accessible to customers.

                                **REDACTED**

     However, if PI were permitted to present evidence regarding the similarities in the

datasheets and to allege copying, or argue that it had been "copied," there is a considerable risk

that the jury will be confused and will incorrectly believe that there is some relationship to the

patented inventions, accused technology or infringement.  Fundamentally,

                                **REDACTED**

                                                                Weighing the

nonexistent relevance against the high risk of prejudice and confusion, pursuant to Federal Rule

of Evidence 403, the Court should prevent PI from presenting any evidence concerning

similarities in the datasheets or any alleged "copying" related to them.  Fed. R. Evid. 403.

**IX.     MOTION IN LIMINE NO. 9:**  **PI Claims And Evidnce Regarding**     **REDACTED**
                      **Should Be Excluded Because That Product Was Not Included**
     **In PI's Infringement Or Damages Reports.**

     PI has had ample opportunity to state definitively the accused Fairchild products.

Fairchild repeatedly requested that PI identify with specificity the Fairchild products accused of

infringement.  Throughout discovery, PI continually revised that list in its interrogatory

responses—adding some while deleting others.            **REDACTED**

[de Blank Decl. Ex. 36, 37] '     **REDACTED**

[*Id.*, Ex. 1]


**REDACTED**


PI's infringement and damages claims and all testimony and infringement claims at trial must be limited to these accused products. The Court emphasized the need to finalize matters for trial at the May 31 pre-trial conference, advising counsel that "[t]here's no surprises in this case . . ." [DI 282 at p. 4:29]  It would be entirely prejudicial allow PI to present an infringement case on any products other than those listed and discussed in its expert report.  To do otherwise would amount to trial by surprise. *See Becton Dickinson & Co. v. Tyco Healthcare Group LP*, 2006 U.S. Dist. LEXIS 14999, *33 (D. Del. 2006) (noting that "[s]urprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial is underway, is a long-established ground for granting a new trial motion.)

However, even after the Court's directive at the May pre-trial conference and its pre-trial order instructing PI to pare down its claims and specify products, PI refused to do so.  The Court therefore entered an order limiting PI to one claim per patent and three product groups.  [DI 330]

- 41 -

In other words, PI was to "pare down" the individual products it had accused in its expert report to three chosen product groups. PI has no intention of "paring down" its case as ordered by the Court, but instead continues its gamesmanship. In particular, in a belated damages report of Mr. Troxel, submitted August 8th,

<div align="center">**REDACTED**</div>

[*Id.*, Ex. __ (Summary Report on Damages)]

<div align="center">**REDACTED**</div>

PI has known about this product since at least *August 2005*, but consistently has failed to accuse it. On January 24, 2005 – over a year and a half ago – Fairchild served its first set of interrogatories on Power Integrations. The very first interrogatory asked PI to identify the accused devices. In response,

<div align="center">**REDACTED**</div>

[*Id.*, Ex. 42 (PI Response to Interrogatory No. 1)]  On June 30, 2005, PI supplemented its response.

<div align="center">**REDACTED**</div>

[*Id.*, Ex. 43 (PI Supp. Resp. to Interrogatory No. 1)]

<div align="center">**REDACTED**</div>

[*Id.*, Ex. 44 (Power Integrations' First Set of Interrogatories, p. 3.)]

Despite the fact that

<div align="center">**REDACTED**</div>

[*Id.*, Ex. 45 (Fairchild's 2nd Supp. Resp. to Interrogatory Nos. 6, 8 and 9).]  In particular, Fairchild made clear it that some interrogatory response that it had manufactured over

<div align="center">**REDACTED**</div>

*Id.*

A month later, on September 30, 2005,

<div align="center">**REDACTED**</div>

<div align="center">- 42 -</div>

While PI was specifically on

**REDACTED**

[*Id.*, Ex. 42 (2nd Supp. Resp. to Interrogatory No. 1)]  PI has not supplemented its response to this interrogatory since September 30, 2005 and

**REDACTED**

On December 1, 2005, PI's technical experts – Messrs. Shields and Blauschild – submitted reports concerning Fairchild's alleged infringement and also identified the accused products.  Neither report          **REDACTED**

Indeed, Mr. Blauschild specifically

**REDACTED**          [*Id.*, Ex. 37 at p. 3)]  On January 31, 2006, Mr. Troxel submitted his damages report, which included a chart of accused products, shown above.  As can be seen, the chart          **REDACTED**

*Id.*  Mr. Troxel testified that despite the fact that

[*Id.*, Ex. 3 at 480:13-482:1)]

After the close of discovery, PI demanded to          **REDACTED**

While Fairchild offered to schedule this deposition in February, 2006, Power Integrations refused to depose Mr. Kim until the end of April.  During that deposition, it appeared that Fairchild may have manufactured products relevant to this case in the United States.  Upon further investigation, however,

**REDACTED**

[*Id.*, Ex. 46 at 307:13-311:17]

**REDACTED**

[*Id.*, Ex. 46 at 311:19-312:15]

**REDACTED**

- 43 -

**REDACTED**

to PI's interrogatories.

Clearly, Mr. Troxel cannot be permitted to opine about – and PI cannot seek damages for – a device that has never been accused of infringement and for which no technical report exists for infringement. Indeed, Power Integrations never requested, and Fairchild never produced, schematics or other technical information about the non-accused device, and Power Integrations did not submit an infringement report on this device. [*Id.*, Ex. 3 at 350:3-23)] Were the Court to permit PI to accuse new devices, it would have to open discovery and permit the parties to submit new technical and damages expert reports. For all of these reasons, PI should be limited to presenting evidence on products from the list of accused products as set forth in

**REDACTED**

X.    **MOTION IN LIMINE NO. 10:  Any Claims Or Evidence Of Damages Based On An Alleged**

**REDACTED**

While 35 U.S.C. §271 provides that patent infringement includes an "offer to sell" an infringing product, PI's

**REDACTED**                          [*Id.*, Ex. 3 at 413:17-24

The same is borne out in his expert report, which

**REDACTED**                          [*Id.*, Exs. 1, 2]  As the Court emphasized at the pre-trial conference, such opinions outside of the expert's report are not admissible at trial. [DI 282 at pp. 35-38]  Therefore, because such a theory is outside of Mr. Troxel's expert report and present knowledge,

**REDACTED**

Further, to the extent that PI purports to present evidence of offers for sale which are outside of the U.S., such should be excluded as a matter of law given that the U.S. patent law does not reach such foreign activities. [*See supra* Motion In Limine No. 1]  Indeed, the only actionable "offer for sale" is one which occurs "within the United States." 35 U.S.C. §271(a). Moreover, even where an "offer for sale" occurs in the United States, a plaintiff is not entitled to

damages where the "sale" of the products occurs outside of the U.S.  [*See supra* Motion In

Limine No. 1]  Accordingly, all alleged evidence of any offer for sale occurring in the U.S.

where the "sale" occurred outside the U.S. should be excluded as well.

**XI.    MOTION IN LIMINE NO. 11:  PI's "Doctrine Of Equivalents" Arguments Should
Be Excluded With Regard To The '075, '876 And '366 Patents And Should Be
Limited With Regard To The '851 Patent.**

It is well-settled that any expert analysis of the "doctrine of equivalents" must be set forth

clearly in a plaintiff's expert report, must be based on independent evidence, separate from the

evidence underlying literal infringement theories,  and must specifically "link" such evidence to

the established elements of the doctrine of equivalents.  Particular evidence must be set forth

establishing "insubstantiality of the differences" between the claims and accused device or that

an accused device performs "substantially the same function," "in substantially the same way" to

achieve "substantially the same result" as a claimed limitation.  It is simply not sufficient for an

expert to provide literal infringement analysis and then conclusorily include a statement that the

doctrine of equivalents also applies.  The Federal Circuit has observed:

> Pursuant to our precedent, a patentee must still provide particularized testimony
> and linking argument as to the "insubstantiality of the differences" between the
> claimed invention and the accused device or process, or with respect to the
> function, way, result test when such evidence is presented to support a finding of
> infringement under the doctrine of equivalents. Such evidence must be presented
> on a limitation-by-limitation basis. Generalized testimony as to the overall
> similarity between the claims and the accused infringer's product or process will
> not suffice.

*Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).  The

Federal Circuit has repeatedly affirmed this concept:

> The jury held that SeaChange's systems infringed the '804 patent under the
> doctrine of equivalents. The trial court granted SeaChange's JMOL motion on this
> decision. During trial nCube did not raise separate and distinct arguments for
> infringement under the doctrine of equivalents, and elicited no expert testimony
> on this subject. nCube argues nevertheless that the record contains substantial
> evidence supporting the jury's verdict, because the evidence supporting literal
> infringement of claim 10 also supports a finding of infringement under the
> doctrine of equivalents.
>
> To the contrary, this court has articulated distinct rules for the evidence showing
> infringement under the doctrine of equivalents. See Texas Instruments, Inc. v.
> Cyprus Semiconductor Corp., 90 F.3d 1558, 1566-68 (Fed. Cir. 1996). "The party

asserting infringement must present 'evidence and argument concerning the doctrine and each of its elements.' The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc., 873 F.2d 1422, 1425 (Fed. Cir. 1989) (Internal citations omitted) (Emphasis in original). Not having satisfied this evidentiary burden, nCube's arguments do not persuade this court."

*nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006)

**REDACTED**

### A.    PI's Expert Did Not Provide An Opinion That The '075 Patent Was Infringed Under The "Doctrine Of Equivalents".

PI has not presented any opinions in its technical expert reports, or elsewhere, for infringement under the "doctrine of equivalents" with regard to the '075 Patent. [1]

**REDACTED**

[de Blank Decl., Ex. 47 at p. 11]

**REDACTED**

- 46 -

**B.     PI's Expert Did Not Provide A Basis For His Opinion That The '876 Patent Was Infringed Under The "Doctrine Of Equivalents".**

With respect to the '876 Patent, the entirety of PI's expert discussion of "doctrine of equivalents" is as follows:

**REDACTED**

[de Blank Decl., Ex. 37 at pp. 32-33)]

Obviously,

**REDACTED**

- 47 -

REDACTED

    C.    **PI's Expert Did Not Provide A Basis For His Opinion That The '366 Patent Was Infringed Under The "Doctrine Of Equivalents".**

With respect to the single asserted Claim 14 of the '366 Patent,[28]

**REDACTED**

[de Blank Decl., Ex. 37 at p. 65)]

**REDACTED**

_____

[28] Claim 14 is the single claim PI has chosen to assert at trial.

REDACTED

  D.  **The "Doctrine Of Equivalents" Argument Regarding The '851 Patent Should Be Excluded As To All Elements And Products Which PI Failed To Analyze Under the Doctrine.**

  PI's expert sets forth a doctrine of equivalents argument with respect to only one accused

REDACTED

             · [de Blank Decl., Ex. 37 at pp. 39–40]  PI has failed to set forth any analysis of the doctrine of equivalents with respect to any other element of the single asserted Claim 1.  [*Id.* at pp. 37–42]  Accordingly,

REDACTED

---

[29] Claim 1 is the single claim PI has chosen to assert at trial.

[*Id.* at pp. 37-42]


**REDACTED**



**XII.    MOTION IN LIMINE NO. 12:  Any Evidence Regarding Earlier Litigation Success Against System General Or Motorola Should Be Excluded.**

PI has brought litigation against two competitors in recent years—System General and

Motorola.  In both disputes,              **REDACTED**                              However, *neither* of

those cases involved the same patents or Fairchild products at issue in the instant case.  This is

recognized by both PI's counsel and its damages expert.  [de Blank Decl., Exs. 9

               **REDACTED**                              3 at 391:4-18)]

Nonetheless,

                              **REDACTED**                    PI

should be prevented from doing so.

Obviously, because none of the patents at issue in this case were litigated in the prior

disputes,        **REDACTED**                    have absolutely no relevance to the

patents in the instant case.  Moreover, if PI were permitted to present its earlier victories to the

jury, there is a severe risk that the jury may mistakenly believe that the earlier successes have

some bearing on this case.  The utter lack of relevance weighed against the risk of confusion of

issues and unfair prejudice to Fairchild warrants exclusion of all testimony and evidence

regarding PI's success or allegations in the System General and Motorola litigations.  Fed. R.

Evid. 403; *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986)

(admission of prior court opinion was error, risk of confusion outweighed relevance because the

jury might assume that the opinion is entitled to as much weight as the trial court's instructions

since both emanate from courts)

**XIII.  MOTION IN LIMINE NO. 13:  Any Evidence Of Fairchild's Claim Construction Positions In This Case Prior To The Court's Claim Construction Order, Or Who "Won" Or "Lost," Should Be Excluded.**

PI has suggested in depositions that it may attempt to present to the jury that Fairchild

took certain claim construction positions in this case prior to the Court's Claim Construction

Order                    **REDACTED**

This would be completely prejudicial and confuses the issues.  Therefore, PI

should be precluded from presenting any evidence          **REDACTED**

in this case prior to the Claim Construction Order.  Fed. R. Evid. 403.

**XIV.  MOTION IN LIMINE NO. 14:  Any Evidence Or Assertion That Opinion Counsel Must Have Construed All Terms To The Claims As Part Of A Proper Analysis Should Be Excluded.**

PI has suggested that it may attempt to present to the jury that an attorney providing a

non-infringement opinion must construe all claim terms, in order to render a valid opinion.  To

begin with, this simply is not true.  Indeed, all that is required for non-infringement is the

absence of a single claim element.  If opinion counsel reasonably construed a single claim

element and found that element was absent in a particular device, both literally and under the

doctrine of equivalents, that would be a proper way to prepare a non-infringement opinion.

Accordingly, the fact that all claim elements or terms were not construed by opinion counsel is

simply irrelevant.  Based on the foregoing, all evidence suggesting that all terms of a claim must

be construed in order to perform a proper analysis of non-infringement must be excluded.

**XV.  MOTION IN LIMINE NO. 15:  Irrelevant And Prejudicial Documents Regarding PI And Its Products Should Be Excluded**

**REDACTED**

[de Blank Decl., Ex. 48 ʹ

However, the statement does not refer to any of the patented inventions or the patents

themselves.  Rather.                              It appears        **REDACTED**

that PI will attempt to introduce this document as              If PI were to so, there is a

serious risk that the jury would give undue credit to PI's infringement claims, in light of

- 51 -

**REDACTED**                          Given the complete

irrelevance of this email and the fact that it may confuse the issues and unfairly prejudice

Fairchild, it should be excluded at trial.  Fed. R. Evid. 403.

**REDACTED**

[de Blank Decl., Ex. 50

However,

**REDACTED**

Further,

**REDACTED**                          Given the low

relevance and high risk of prejudice,                          Fed. R.

Evid. 403.

**REDACTED**

XVI.  <u>MOTION IN LIMINE NO. 16</u>:  **All Testimony By PI's Technical Expert Michael Shields**

Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation

("Fairchild") anticipate that Power Integrations' expert Michael Shields

**REDACTED**                          Fairchild

respectfully requests that this Court exclude expert opinions and trial testimony of Mr. Shields

**REDACTED**

It is well settled law that experts are prohibited from opining on matters beyond their

expert reports.

**REDACTED**

[de Blank Decl., Ex. 53 at

99:1-3)

. Thus,                          **REDACTED**

- 52 -

REDACTED

### A.    Inherency Is Outside The Scope Of Michael Shields' Reports.

The issue of inherency is integral to a claim of patent invalidity. 1 DONALD S. CHISUM, CHISUM ON PATENTS, § 3.03 (2006).  On December 1, 2005,          REDACTED

[de Blank Decl., Ex. 51 (Gwozdz Report)]  In his report,

[*Id.*, Ex. 51 at p. 6 (

REDACTED

(emphasis added).  On January 9, 2006,

REDACTED                          [*Id.*, Ex. 52 (Rebuttal Expert Report of Michael Shields).  Mr. Shields' trial testimony is properly excluded since he had an opportunity to address this issue in his report but did not.  *See Coalition To Save Our Children v. State Bd. of Educ.*, 90 F.3d 752, 776 (3d Cir. 1996) (The court held that the trial court did not abuse its discretion when it excluded testimony not contained within the expert reports).

As this Court made clear during the Pretrial Conference on May 31, 2006, expert testimony is limited to disclosures made within the expert's report.  *See* DI 282 at 35:35-47, 36: 1-7).  Furthermore, Federal Rule of Civil Procedure 26(a)(2) provides that expert reports "shall contain a *complete statement of all opinions* to be expressed" by the expert at trial.  Fed. R. Civ. P. 26(a)(2) (emphasis added).  The Federal Rules were intended to impose a duty to disclose information concerning expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross examination.  Fed. R. Civ. P. 26(a)(2) (citing Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 Amendments).  In order to prevent sandbagging and trial by surprise the Federal Rules require earlier disclosure of

---

[30]

(Shields Report).        REDACTED                     [de Blank Decl., Ex. 36

- 53 -

expert testimony and prohibit a party from using expert testimony not disclosed pursuant to the rules. Fed. R. Civ. P. 37(c)(1). Mr. Shields is therefore limited to the opinions expressed in his reports and any testimony that exceeds the scope of Mr. Shields' report must be excluded.

<div align="center">**REDACTED**</div>

Not only is the law quite clear on this issue, this Court and both parties recognize that an expert must be precluded from testifying on matters that exceed the scope of their expert report.[31] Accordingly,

<div align="center">**REDACTED**</div>

### B.     Michael Shields Is Not Qualified To Opine On Inherency.

Mr. Shields should also be precluded from testifying on matters relating to inherency

<div align="center">**REDACTED**</div>

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Court must act as a "gatekeeper" to ensure that expert witness opinion testimony is reliable. *See Daubert*, 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702 requires that expert testimony must be based upon sufficient facts or data and the testimony is the product of reliable principles and methods. Fed. R. Evid. 702 ("An expert's opinion must be based on specialized knowledge or experience").

In the instant case,

<div align="center">**REDACTED**</div>

[de Blank Decl., Ex. 53 at 80:9-21, 132:18-21]. Moreover,

---

[31]     **REDACTED**
D.I. 272 (Power Integrations' Mot. in Limine, p.1, June 14, 2006).

Opp. to Mot. in Limine, June 21, 2006).     **REDACTED**     D.I. 279 (Fairchild's

<div align="center">- 54 -</div>

**REDACTED**                                    [*Id.*, Ex. 53 at 98:24-25;
99:1-3]


**REDACTED**
When an expert refuses to offer an opinion at the deposition, he thereby
forecloses the possibility of those opinions [at trial].  *Doe v. Johnson*, 52 F.3d 1448, 1464 (7th
Cir. 1995).  Here


**REDACTED**




**XVII.** **MOTION IN LIMINE NO. 17:**

Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp.
(collectively, "Fairchild") oppose Power Integrations'

**REDACTED**

[de Blank Decl., Ex. 54]

**REDACTED**

A.    **Power Integrations' Damage Expert Should Not Be Allowed To Testify About Any Of**
**Upon In His Report.**            **REDACTED**

Power Integrations'

**REDACTED**                                                                   [de

Blank Decl., Ex. 1 (Troxel Report, List of Exhibits, Exhibit C).


**REDACTED**                               [de Blank Decl.,

Ex. 1 at pp. 7, 46-53).

**REDACTED**

As this Court made clear during the May 31, 2006 Pre-Trial Conference, an expert's

testimony is limited to what is in the expert's report.  [DI 282 at 35:35-47, 36:1-7].  This Court

also noted that if "there is some variance [between the expert's testimony and report], and I mean

'some,' it doesn't have to be a lot… there's a mistrial and the other side pays the cost of the first

trial and we go to a second trial." [DI 282 at 35:35-47, 36:1-7].  Furthermore, Federal Rules of

Civil Procedure 26(a)(2)(B) explicitly requires an expert to provide "a complete statement of all

opinions to be expressed and the basis and reasons therefor."  Fed. R. Civ. P. 26(a)(2)(B).

**REDACTED**

Fed. R. Civ. P.

37(c).


**REDACTED**

---

[32] There is a small discussion regarding

        [de Blank Decl., Ex. 1 at pp. 24-25 and 31).            **REDACTED**

        [*Id.*, Ex. 1 at p. 43.]

[33] Exhibits F-1 through F-7 of Mr. Troxel's
        [de Blank Decl., Ex. 1]                               **REDACTED**

- 56 -

**B.**     **REDACTED**     .

**Evidence Since They Are Dated Before The Established Damage**

This Court     .

**REDACTED**     [DI 265]  This Court further

held "that all damages calculations [must] be based on conditions occurring on or after the

October 20, 2004 notice date." *[Id.]*  Any documents dated prior to October 20, 2004 should be

excluded as they are irrelevant since damages cannot be collected for any actions occurring prior

to this date.[34]  Thus, Power Integrations should be precluded from offering into evidence or

relying upon the exhibits listed below as they are all dated prior to October 20, 2004.


**REDACTED**

                                                                  ¦


**C.**     .

**Authenticated And Contain Inadmissible Hearsay.**

Power Integrations has failed to identify a sponsoring witness who has personal

knowledge of these emails and who can introduce and authenticate

Thus, there is no live witness to testify


**REDACTED**

                                            .

- 57 -

hearsay as they are offered to prove the truth of Power Integrations'

<div align="center">**REDACTED**</div>

[37] *See*

Fed. R. Evid. 801 and 802.

**REDACTED**     Fed. R. Evid. 805 (explaining that "hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.").[38] Because an appropriate exception to the hearsay rule does not exist for the first layer of hearsay it is doubtful that Power Integrations can offer up an exception for the other layers.

<div align="center">**REDACTED**</div>

**XVIII. MOTION IN LIMINE NO. 18: Any Testimony By Dr. Eklund Regarding Any Conception Or Reduction To Practice Date Should Be Excluded Unless PI Provides And Lays The Foundation Of Independent Evidence Corroborating The Dates.**

<div align="center">**REDACTED**</div>

*Symsek*, 998 F.2d 1187 (Fed. Cir. 1993).

<center>REDACTED</center>                *Hahn v. Wong*, 892

F.2d 1028, 1032 (Fed. Cir. 1989) ("The inventor, however, must provide *independent*

corroborating evidence *in addition* to his own statements and documents.") (emph. added).

<center>REDACTED</center>

> Since corroboration must be independent of the inventor, the inventor's notebooks
> unsigned by witnesses do not suffice since they are simply documents which he
> produced... and are merely self-serving declarations by the inventors....

*Ralston Purina Co. v. Far-Mar-Co., Inc.* 586 F.Supp. 1176, 222 USPQ 863 (D. Kan. 1984), *aff'd*

*in part & rev'd in part*, 772 F.2d 1570, 227 USPQ 177 (Fed. Cir. 1985). "Regardless of the

contents of the notebooks, unwitnessed laboratory notebooks on their own are insufficient to

support his claim [of conception, and therefore] of co-inventorship." *Stern v. Trs. of Columbia*

*Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006).

<center>REDACTED</center>

As the Federal Circuit has held, the straightforward purpose of the requirement of

independent corroboration is "to prevent fraud." *Hahn*, 892 F.2d at 1033.

<center>REDACTED</center>

<center>- 59 -</center>

XIX.  **MOTION IN LIMINE NO. 19:** **Any Argument Or Evidence Challenging The Publication Dates Of Prior Art References Listed On Fairchild's 35 U.S.C. §282 Statement Should Be Excluded.**

In compliance with 35 U.S.C. § 282,

[DI 342]

**REDACTED**

[de Blank Decl., Ex. 55]  Since that time,

**REDACTED**

*[Id.,* Exs. 56, 59-64]

**REDACTED**                                              *[Id.,*
Exs. 57, 58]

**REDACTED**

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Brian H. VanderZanden
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  September 1, 2006

172731.1

- 61 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2006, the attached **REDACTED**

**PUBLIC VERSION OF DEFENDANTS' MOTIONS IN LIMINE** was served upon the

below-named counsel of record at the address and in the manner indicated:

William J. Marsden, Jr., Esquire                                    HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE  19801

Frank E. Scherkenbach, Esquire                              VIA FEDERAL EXPRESS
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Howard G. Pollack, Esquire                                      VIA FEDERAL EXPRESS
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063


/s/ Tiffany Geyer Lydon
_____
Tiffany Geyer Lydon