# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**FILED UNDER SEAL**

September 1, 2006

The Honorable Joseph J. Farnan, Jr.
United States District Court For the District of Delaware
844 King Street
Wilmington, DE 19801

Re:    Power Integrations' Motions *in limine*
       Power Integrations, Inc. v. Fairchild Semiconductor International
       USDC-D. Del. - C.A. No. 04-1371 JJF

Dear Judge Farnan:

Power Integrations submits this letter brief to resolve four issues in anticipation of the trial set to begin in this action on October 2, 2006. Specifically, Power Integrations moves *in limine* to:

(1) preclude Fairchild from mentioning or attempting to introduce evidence related to Power Integrations' restatement of earnings due to stock option accounting, with the exception of the restated figures themselves and the fact that they were occasioned by the accounting treatment of certain stock option expenses. This motion specifically seeks to exclude any reference to (a) any investigations of Power Integrations by the SEC, DOJ or any other agency or department; (b) any civil suits filed against Power Integrations related to its restatements; and (c) any personnel changes at Power Integrations alleged to be related in any way to the restatements;

(2) preclude Fairchild from arguing that the                                                during the course of litigation (a) were not manufactured in the U.S.                              or (b) are different from other products manufactured                              or the representative FSD210 device, in any matter that is relevant to the patents-in-suit;

(3) preclude any testimony from Gu-Yeon Wei, Fairchild's purported "expert on copying;" and

(4) preclude Fairchild witness Robert Conrad from testifying about alleged conversations with                              (or any alleged evidence of those communications) regarding any analysis of the Power Integrations' patents-in-suit.



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

EDACTED

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
September 1, 2006
Page 2

I.    **FAIRCHILD SHOULD NOT BE ALLOWED TO INTRODUCE
      IRRELEVANT OR PREJUDICIAL EVIDENCE RELATED TO
      POWER INTEGRATIONS' RESTATED EARNINGS FIGURES**

On August 3, 2006, Fairchild brought a motion to compel damages discovery related
to Power Integrations' restatement of its earnings figures. (D.I. 303.) Fairchild asked
this Court to compel a broad range of documents, including "All drafts of PI's final
restated financial reports," "All documents related to PI's internal investigation of
financial irregularities," and "All documents produced by PI in response to subpoenas
from the SEC or DOJ." (D.I. 303 at 2.) Fairchild also issued subpoenas for ex-Power
Integrations employees John Cobb and Howard Earhart which similarly sought
documents and testimony related to the earnings restatements, along with information
about SEC and DOJ investigations, stock options grants, and other topics. (*See* Ex. A
& B.)

In response to Fairchild's motion to compel, this Court stated that "Fairchild has not
demonstrated how revised reports pertaining to stock options will impact its damages
case. In addition, Fairchild has not demonstrated the relevance of the additional
discovery it seeks. As Power Integrations points out, this case is a patent
infringement case and not an SEC investigation or a securities case." (D.I. 331 at 3.)

Consistent with this Court's Order, Power Integrations will supply Fairchild with its
revised statements upon their filing with the SEC, and Fairchild can (if justified) raise
any issue relating to the restated figures at that time. There is no reason, however, for
Fairchild to make any reference during trial to the irrelevant and potentially
prejudicial facts surrounding these restated earnings figures. Even the slightest
mention of any purported "irregularities" (Fairchild's term), SEC or DOJ
investigations, officer resignations and the like – especially in a post-Enron
environment – would be extremely prejudicial to Power Integrations and would
provide absolutely no probative value on any of the patent issues relevant in this case.
(*See* Fed. R. Evid. 403.)

Consequently, while Power Integrations has no objection to Fairchild referring to the
restated earnings figures themselves if it shows those figures are relevant once they
are available, and Power Integrations similarly would have no objection (again,
assuming a showing of relevance) to the jury being told that the reason for the
restated earnings had to do with accounting for stock options, Power Integrations
respectfully asks this Court to preclude Fairchild from introducing any evidence,
providing any testimony, or making any reference to the additional facts surrounding
the restated earnings figures, including any press releases, Department of Justice or
Securities and Exchange Commission subpoenas, investigations, derivative or
shareholder suits, employee resignations, and the like.

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
September 1, 2006
Page 3

**II.    BECAUSE OF ITS FAILURE TO PROVIDE ANY DISCOVERY TO THE CONTRARY, FAIRCHILD SHOULD NOT BE ALLOWED TO ARGUE THAT THE FSD210HD WAS NOT MANUFACTURED IN THE U.S. OR THAT THESE DEVICES ARE NOT A MEMBER OF THE ACCUSED FAMILIES OF DEVICES, SUCH AS THE FSD210 FAMILY, MANUFACTURED WITH THE SDG4 PROCESS**

Power Integrations has always clearly identified products manufactured with the SDG4 process, as well as the FSD210 family of products, as accused devices in this case. It did so in its definition of the accused devices provided with its interrogatories and in its interrogatory responses, and Power Integrations' experts, Mr. Shields and Mr. Blauschild, explicitly identified the SDG4-manufactured products and the FSD210 family of products as infringing the Power Integrations' patents-in-suit.

Fairchild acknowledged as early as August of 2005 that the FSD210HD was a member of the accused family of products manufactured with the SDG4 process,

(Ex. C at 6-7, 11-12, 16-17, 22.)

REDACTED

*(e.g. id.* at 7)
*(E.g., id.* at 11-12.)

Power Integrations discovered of its own accord that one member of the accused FSD210 family of products, the FSD210HD, had in fact been manufactured in the United States with the accused SDG4 process. This was done as part of a substantial effort by Fairchild to transfer the SDG4 technology to Fairchild's Portland, Maine fabrication plant during the course of this litigation, When confronted with these facts, Fairchild belatedly admitted—in May, 2006— FSD210HD die were manufactured in the U.S. but argued that "[n]o other accused products were manufactured in the U.S., and the FSD210HD die are not currently being manufactured in the U.S." (Ex. D.)

Power Integrations sent 30(b)(6) notices to Fairchild on July 10, 2006, and July 15, 2006, that included topics specifically related to the U.S. manufacturing of the FSD210HD and any differences Fairchild might claim to exist between specifically the HD variation of the FSD210 and the other members of the family. (Exs. E & F.) In response, Fairchild said that Ronald Dupuis was knowledgeable about the topics (with the exception of the topic of 52, for which Fairchild has refused to provide any testimony—*see* Ex. G), and that it would produce documents responsive to Power

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
September 1, 2006
Page 4


Integrations requests.

REDACTED



Even more disturbingly, Mr. Dupuis testified that Fairchild



REDACTED



    To date, though, Fairchild has only produced four (4) documents concerning U.S. manufacturing using the accused SDG4 process and the resulting FSD210HD devices.

Fairchild also refuses to produce witnesses and documents identified during the Dupuis deposition, taking the position that the FSD210HD is not an accused device despite its admission to the contrary and its admission that the accused SDG4 process was the very purpose behind the U.S. manufacturing program (which went online during the course of this litigation). (Ex. J.) Fairchild also refuses to explain any difference between the FSD210HD and the other accused products manufactured using the SDG4 process or to provide documents or witnesses who could explain any alleged differences between these parts and the representative device and process Power Integrations intends to address in presenting its infringement case at trial.

Fairchild should not be able to conceal its U.S. manufacturing of products with the accused SDG4 process and then deny that the products are even relevant to this case. Because Fairchild belatedly admitted that                           FSD210HD die were manufactured in the United States,                           and has refused relevant discovery on this topic, Power Integrations respectfully asks this Court to prohibit Fairchild from now arguing that these devices were not manufactured in the U.S. with the SDG4 process or that the devices are different from other SDG4 and/or FSD210 devices in any way that is meaningful to the infringement of the Power Integrations' patents-in-suit.

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
September 1, 2006
Page 5

### III.    THE COURT SHOULD PREVENT FAIRCHILD'S BACKUP TECHNICAL EXPERT, GU-YEON WEI, FROM PROVIDING ANY TESTIMONY IN THIS CASE

On January 10, 2006, Fairchild served a report from Dr. Gu-Yeon Wei that purportedly addresses the issue of copying. (Ex. K (Wei Report).) Dr. Wei, however, has no personal knowledge of what Fairchild did in developing any of its accused parts. Rather than investigate the issue with those who did develop those parts (some of whose depositions Dr. Wei attended last year in Korea), Dr. Wei instead reached his conclusion merely by looking at the circuits in question. (Ex. L (Wei Tr.) at 37:8-22; 41:3-42:15; 43:23-44:2.) Dr. Wei therefore has no direct knowledge of any copying (or lack thereof), and any testimony he might offer regarding copying would amount to pure speculation. Moreover, to the extent that Dr. Wei provides conclusions based on a purported analysis of the accused devices, his testimony is duplicative of Fairchild's infringement expert Dr. Horowitz. Because Dr. Wei's testimony is not relevant under Fed. R. Evid. 401/402, Power Integrations respectfully asks this Court to prevent Fairchild from attempting to introduce any testimony from Fairchild's backup technical expert, Gu-Yeon Wei.

### IV.    THE COURT SHOULD PREVENT FAIRCHILD WITNESS, ROBERT CONRAD, FROM PROVIDING TESTIMONY CONCERNING COMMUNICATIONS WITH FAIRCHILD IN-HOUSE LAWYER, STEVE SCHOTT, REGARDING INFRINGEMENT OR VALIDITY OF THE POWER INTEGRATIONS' PATENTS-IN-SUIT

During his first deposition, Robert Conrad

REDACTED

During that same deposition, Fairchild's lawyers also instructed Mr. Conrad not to answer questions regarding conversations with others

Fairchild would only permit inquiry with respect to conversations in which opinion counsel participated. Surprisingly, Fairchild subsequently listed Mr. Schott as a trial witness in its initial pretrial submissions. (*See* Ex. N.) Consequently, when Fairchild produced a third set of opinion letters this June (there are now 13 total letters), Power Integrations asked to depose Mr. Schott and pressed

FISH & RICHARDSON P.C.

The Honorable Joseph J. Farnan, Jr.
September 1, 2006
Page 6

for the ability to take further testimony from Mr. Conrad on his conversations with Mr. Schott. (Ex. O.)  When Fairchild refused, Power Integrations ultimately moved to compel a deposition of Mr. Schott. (*See* D.I. 307.)  In response to Power Integrations' motion to compel, Fairchild reversed course, agreeing not to call Mr. Schott as a witness at trial.  As a result, Power Integrations withdrew its motion. (*See* Ex. P.)

Power Integrations thought that was the end of the matter.  But when it took a second day of deposition of Mr. Conrad to address Fairchild's third set of opinion letters, Mr. Conrad changed his testimony  Specifically, Mr. Conrad stated that he **REDACTED**

In anticipation of and immediately after the second day of Mr. Conrad's deposition, Fairchild produced a few documents related to the

This new testimony is an effort by Fairchild to back-door the testimony of Mr. Schott through other Fairchild witnesses, while shielding Mr. Schott and his documents from discovery.  It contravenes the clear agreement between the parties that Mr. Schott would not provide testimony at trial, and it introduces a willfulness defense that was never presented during discovery and which cannot be verified or tested now.  Consequently, Power Integrations respectfully asks the Court to preclude Mr. Conrad, or any other Fairchild witnesses, from providing any testimony concerning communications with Mr. Schott about Power Integrations' patents (including making reference to or introducing any documents allegedly referring to such communications).

Very truly yours,

*/s/ William J. Marsden, Jr.*

William J. Marsden, Jr.
Enclosures

WJM/kxk

cc:     Clerk of Court
        Steven J. Balick, Esq. (By Hand)
        Bas de Blank, Esq. (By Federal Express)