IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>    Defendants. | **REDACTED**<br><br>C.A. No. 04-1371 JJF<br><br>**HIGHLY CONFIDENTIAL**<br>**FILED UNDER SEAL**<br>**PURSUANT TO COURT ORDER** |

## POWER INTEGRATIONS' COMBINED OPPOSITION TO FAIRCHILD'S NINETEEN (19) MOTIONS *IN LIMINE*

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Sean P. Hayes (#4413) (hayes@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Facsimile:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Michael R. Headley
Howard G. Pollack
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

Date:  September 11, 2006

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................1

II.   ANSWER TO MIL NO. 1: POWER INTEGRATIONS IS NOT
      SEEKING DAMAGES BASED ON ACTIVITIES
      OCCURRING "ENTIRELY OUTSIDE THE U.S." ...........................................2

III.  ANSWER TO MIL NO. 2: IMPORTATION OF ACCUSED
      FAIRCHILD PRODUCTS ARE RELEVANT TO BOTH
      DIRECT AND INDIRECT INFRINGEMENT ......................................................6

IV.   ANSWER TO MIL NO. 3: BOTH PARTIES CAN RELY ON
      RELEVANT PORTIONS OF FINANCIAL REPORTS, AND
      ANY ALLEGED UNRELIABILITY CAN BE DEALT WITH
      BY CROSS-EXAMINATION...............................................................................8

V.    ANSWER TO MIL NO. 4: NOTHING WAS "CONCEALED"
      FROM POWER INTEGRATIONS' EXPERTS; POWER
      INTEGRATIONS' PRICE EROSION CALCULATIONS
      SHOULD STAND ....................................................................................9

VI.   ANSWER TO MIL NO. 5: THERE IS NO BASIS FOR
      CREATING A PER-SE RULE AGAINST PRESENTING
      EVIDENCE OF THINGS THAT HAPPENED PRIOR TO
      THE START OF THIS LITIGATION ..................................................................12

VII.  ANSWER TO MIL NO. 6: THE RELIABILITY AND
      WEIGHT OF EVIDENCE IS FOR THE JURY TO DECIDE............................12

VIII. ANSWER TO MIL NO. 7: TECHNICAL EXPERTS ARE
      ENTITLED TO TESTIFY REGARDING INFRINGEMENT ...........................13

IX.   ANSWER TO MIL NO. 8: EVIDENCE OF COPYING IS
      HIGHLY RELEVANT TO WILLFULNESS AND SHOULD
      BE ADMITTED.................................................................................................14

X.    ANSWER TO MIL NO. 9: AS PREVIOUSLY ARGUED,
      FAIRCHILD'S HIDDEN U.S. MANUFACTURING
      PROGRAM USED THE ACCUSED SDG4 PROCESS, AND
      FAIRCHILD'S EFFORTS TO SUPPRESS THIS EVIDENCE
      PRESENTS SERIOUS CONCERNS .................................................................15

i

## TABLE OF CONTENTS (cont'd)

**Page**

XI.    ANSWER TO MIL NO. 10: MR. TROXEL DID DISCUSS
       LOSSES DUE TO FAIRCHILD OFFERS FOR SALE, AND
       EVIDENCE OF OFFERS FOR SALE IS ADMISSIBLE ...................................16

XII.   ANSWER TO MIL NO. 11: POWER INTEGRATIONS HAS
       CLEARLY ARTICULATED WHERE IT IS AND IS NOT
       ASSERTING THE DOCTRINE OF EQUIVALENTS........................................17

XIII.  ANSWER TO MIL NO. 12: FAIRCHILD, NOT POWER
       INTEGRATIONS, CONTINUALLY RAISES THE SG AND
       MOTOROLA LITIGATION ..............................................................................18

XIV.   ANSWER TO MIL NO. 13: FAIRCHILD'S THIRTEEN (13)
       OPINION LETTERS AND THEIR SHIFTING
       CONSTRUCTIONS ARE RELEVANT TO WILLFULNESS...........................19

XV.    ANSWER TO MIL NO. 14: POWER INTEGRATIONS IS
       ENTITLED TO QUESTION THE REASONABLENESS OF
       FAIRCHILD'S RELIANCE ON OPINION LETTERS......................................20

XVI.   ANSWER TO MIL NO. 15: THE DOCUMENTS FAIRCHILD
       MOVES TO EXCLUDE ARE RELEVANT AND NOT
       "PREJUDICIAL" BEYOND THE FACT THAT THEY
       SUPPORT POWER INTEGRATIONS' CASE ...................................................20

XVII.  ANSWER TO MIL NO. 16: POWER INTEGRATIONS'
       PROCESS TECHNOLOGY EXPERT MIKE SHIELDS
       SHOULD BE ALLOWED TO TESTIFY CONCERNING
       INHERENCY AND THE BEASOM NOTES .....................................................22

XVIII. MIL NO. 17: COMMUNICATIONS BETWEEN FAIRCHILD
       AND GENERAL ELECTRIC ARE RELEVANT TO
       SHOWING INFRINGEMENT...........................................................................24

XIX.   MIL NO. 18: FAIRCHILD MISSTATES THE LAW OF
       CORROBORATION AND ASKS FOR AN
       EXTRAORDINARY REMEDY ........................................................................24

XX.    MIL NO. 19: FAIRCHILD SHOULD NOT BE ALLOWED
       TO HIDE ITS TRUE INVALIDITY CONTENTIONS IN A
       PILE OF 80 PRIOR ART REFERENCES .........................................................26

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Burroughs Wellcome Co. v. Barr Labs., Inc.*
   40 F.3d 1223 (Fed. Cir. 1994)................................................................25

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.,*
   723 F.2d 1573 (Fed. Cir. 1983)..............................................................14

*Checkpoint System, Inc. v. All-Tag Sec. S.A.,*
   412 F.3d 1331 (Fed. Cir. 2005)..............................................................25

*Cordis Corp. v. Boston Scientific Corp.,*
   431 F. Supp. 2d 465 (D. Del. 2006).......................................................13

*Envirotech Corp. v. Al George, Inc.,*
   730 F.2d 753 (Fed.Cir.1984)..................................................................13

*P&G v. Teva Pharmaceuticals USA, Inc.,*
   2006 U.S. Dist. LEXIS 54300 (D. Del. Aug. 4, 2006) .....................13

*Rite-Hite Corp. v. Kelley Co.,*
   56 F.3d 1538 (Fed. Cir. 1995)............................................................3, 5

*Rotec Industrial, Inc. v. Mitsubishi Corp.,*
   215 F.3d 1246 (Fed. Cir. 2000)..........................................................3, 4

*SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.,*
   127 F.3d 1462 (Fed. Cir. 1997)..............................................................20

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,*
   264 F.3d 1344 (Fed. Cir. 2001)..............................................................25

*Shockley v. Arcan, Inc.,*
   248 F.3d 1349 (Fed. Cir. 2001)................................................................7

*Snellman v. Ricoh Co.,*
   862 F.2d 283 (Fed.Cir.1988),
   *cert. denied*, 491 U.S. 910 (1989)......................................................13

*Venture Industries Corp. v. Autoliv ASP, Inc. ,*
   2006 U.S. App. LEXIS 20114 (Fed. Cir. 2006) .................................9

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
   256 F. Supp. 2d 228 (D. Del. 2003)........................................................3

**STATUTES**

35 U.S.C. § 271(a) ................................................................................................1, 3

35 U.S.C. § 271(b) ...............................................................................................1, 3

35 U.S.C. § 282.....................................................................................................26

Plaintiff Power Integrations, Inc. ("Power Integrations") hereby opposes the nineteen (19) motions *in limine* submitted by defendants Fairchild Semiconductor International, Inc., and Fairchild Semiconductor Corp. ("Fairchild").

## I.    INTRODUCTION

As pointed out in Power Integrations' letter to the Court dated September 5, 2006 (D.I. 358), Fairchild's "motions *in limine*" are all improper: they argue and reargue summary judgment motions, challenge the weight of the evidence rather than its admissibility under the rules of evidence, raise *Daubert*-like challenges without properly applying the *Daubert* test, raise issues that have already been settled by the parties or determined by the Court, and generally do more to delay than resolve issues. For these reasons, and for the reasons identified below and in the voluminous briefing both parties have already submitted on many of these issues, all of Fairchild's motions in limine should be denied.

One of the most glaring errors in Fairchild's brief, an error that permeates the various motions, is the way that it misapprehends – and misrepresents – Power Integrations' damages case. Fairchild argues that Power Integrations is seeking damages for sales that occur "entirely outside of the U.S." (D.I. 356 at 1.) This is simply false. Power Integrations is making two related but distinct claims of infringement:

(1) Fairchild made infringing sales and offers for sale <u>in the United States</u> in violation of 35 U.S.C. § 271(a).

(2) Fairchild induced others to import and use infringing products <u>in the United States</u> in violation of 35 U.S.C. § 271(b).

These two infringement contentions, one direct and one indirect, may involve some activity that takes place outside of the United States, such as foreign manufacturing, but neither relies on activities occurring "entirely outside the U.S." for the underlying proof of infringement as Fairchild suggests. Both require Power Integrations to show

activity in the United States – either sales or offers for sale in this country, or activity in the U.S. that induces others to import infringing products into this country – and there is a wide range of evidence of such infringement in this case. Both types of infringement can and should be remedied by this Court. As for the proper measure of damages, as Power Integrations will explain below, it is proper to measure damages for both types of infringement by taking account of all of Fairchild's worldwide sales. The reason is simple: if the infringing parts could not be sold in, used in, and imported to the United States, Fairchild would have sold none of them anywhere in the world.

## II.     ANSWER TO MIL NO. 1: POWER INTEGRATIONS IS NOT SEEKING DAMAGES BASED ON ACTIVITIES OCCURRING "ENTIRELY OUTSIDE THE U.S."

As an initial matter, Fairchild's first issue is not a "motion *in limine*" – it is an attempt by Fairchild to re-argue summary judgment motions that Fairchild lost. As the Court is well aware, a motion *in limine* is supposed to constitute a request that certain evidence be admitted for a limited purpose or not at all for evidentiary reasons – not because one party disputes the factual or legal basis of anther party's claim. Fairchild, however, is asking the Court to rule that "Foreign Sales And Manufacture of Products That Never Enter The U.S. Should Be Excluded As A Matter Of Law." (D.I. 356, MIL #1.) This is not an appropriate motion *in limine*. Moreover, the Court has already denied Fairchild's request for summary judgment on this issue. (*See* D.I. 266, Order Denying Fairchild's Motion for Partial Summary Judgment of Non-Infringement (Foreign Sales).) A motion *in limine* is not the proper place to reargue a summary judgment motion on the eve of trial, without full briefing, and without so much as a mention of the standards for reconsideration.

More importantly, as discussed above, the evidence Fairchild asks this court to exclude is directly relevant to Power Integrations' damages case in several respects. First, it is for the jury to decide how many infringing sales and offers for sale took place in the United States and how to compensate Power Integrations for that infringement. If

the jury agrees, as Power Integrations contends, that Fairchild made infringing sales and offers for sale in the United States, Fairchild directly infringes Power Integrations' patents under 35 U.S.C. § 271(a) and must compensate Power Integrations for all harm caused by the infringement. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995). Second, Fairchild finally admits in its brief that its accused products are incorporated into power supplies that are imported into the United States by others for use with products such as cell phones and laptops. (D.I. 356 at 6.) If Fairchild induces these third parties to import, sell and use these infringing products in the United States – and the evidence at trial will show that Fairchild does so – Fairchild is liable for these importations under 35 U.S.C. § 271(b), and again Power Integrations is entitled to all damage caused by that infringement. As explained above, both of these theories require the jury to hear about both the U.S. and overseas activity, and to make its own determination as to how many of those sales and offers for sale took place in or were directed towards the United States. The only way the jury can make this determination is to hear evidence about Fairchild's worldwide activities.

Fairchild cites *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000), for the proposition that infringing offers for sale must involve an eventual sale in the United States (D.I. 356 at 2 (citing *Rotec* at 1260)), but Fairchild fails to mention that the support it cites for this position is from a concurrence which notes that the majority *expressly rejected* the position Fairchild now forwards. *See Rotec*, 215 F.3d at 1258 (Newman, J., concurring) ("[T]he majority opinion necessarily accepts the critical premise that an 'offer to sell' made in the United States can constitute patent infringement even when the contemplated sale could not infringe the patent."). Delaware courts agree with the majority opinion in *Rotec* - infringement occurs when offers for sale take place in the U.S., even if those offers contemplate delivery outside of the United States. *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 232-234 (D. Del. 2003) (Jordan, J.). Finally, the language in the *Rotec* concurrence that Fairchild

3

relies on still requires that the "sale, installation, and use" of the product all take place overseas in order to avoid the reach of U.S. patent laws. *See Rotec*, 215 F.3d at 1260. Power Integrations will prove in this case the infringing sales and offers for sale also contemplate importation into the United States, which takes them outside the language of the concurrence in *Rotec*.

Finally, Fairchild argues that based on statements made during the SG litigation, Power Integrations should be judicially estopped from "making [] worldwide damages argument based on non-U.S. sales."[1] (D.I. 356 at 3-5.) As an initial matter, Fairchild's argument is irrelevant to the extent that the jury agrees with Power Integrations' that all of Fairchild's sales are directed from the United States. In that scenario, Power Integrations is clearly entitled to recover damages for all sales of accused products, even according to Fairchild. This is an issue that can be resolved only if all of the facts, including facts concerning activities overseas, are before the jury. Fairchild also mischaracterizes the activity in the SG case. In the SG case, the issue was evidentiary – SG was arguing that an exclusion order directed to one set of SG parts would sweep in other products not at issue in the case. (*See* D.I. 357, de Blank Decl., Ex. 6, at 8 (Commission Opinion noting "several of SG's power supply controllers are specifically excluded from the exclusion order" but SG nevertheless "asserts that its distributors may just avoid its chips entirely"). Power Integrations' response to SG's assertion regarding the impact of an exclusion order on non-accused devices was merely to point out the lack of any evidentiary support for it. (*Id.*, Ex. 4 at 12-13 (noting that "SG complains that the proposed exclusion of downstream products would 'sweep in' downstream products that are expressly not to be excluded here. But it cites no evidence . . ." and "[w]hether power supply manufacturers choose to avoid SG chips 'altogether merely out of convenience' is pure speculation" (internal citation omitted).) Power Integrations said nothing in the SG

---

[1]    That Fairchild again brings up the SG litigation is yet another reason to deny Fairchild's MIL # 12 to the extent that Fairchild makes previous cases an issue in this litigation.

case that is inconsistent with the critical fact here: both Power Integrations and its competitors like Fairchild and SG design and sell their chips for worldwide use, and customers in turn use those same chips in all their power supplies and products containing power supplies which are sold worldwide.

Regardless of the ways in which Fairchild infringes – by making direct sales or offers in the U.S., by manufacturing in the U.S., by making offer for sale from the U.S. that result in actual sales overseas, or by inducing offshore customers to subsequently import infringing products into the U.S. – the jury could properly find that Power Integrations is entitled to damages based on overseas activity if Fairchild's U.S.-based infringing activity caused the harm. *See Rite-Hite Corp.*, 56 F.3d at 1548-49. Power Integrations will show that Fairchild's U.S.-based infringing activity caused lost sales not just for the accused products located in this country, but also for those same products when initially distributed overseas. Indeed, Fairchild itself has elicited evidence (the testimony of S.G. Cowen analyst Shawn Slayton) that supports this conclusion. (*See* Ex. A[2] (Slayton Tr.) at 85:20-86:2 ("Common sense says that Samsun[g], a multinational firm, is not going to buy a part and put it into a certain device and then have to mark that device with a [SKU] that this device can only go outside the United States because it has an infringing part, and these electronics can go to the U.S. because they don't have any infringing parts. That would be very inefficient. Okay. You would just get rid of the infringing part").) Testimony from Power Integrations' witnesses at trial will be to the same effect. Fairchild's own witnesses will also confirm that its products are designed for "universal" applications so that the same chip may be used in power supplies that function anywhere in the world. If Fairchild would not have made any of its sales, anywhere in the world, due to customers being shut out of the U.S. market because of the

---

[2]    All citations to exhibits with letters refer to the accompanying Declaration of Sean P. Hayes unless noted otherwise.

5

patents in suit, Power Integrations' is entitled to damages on all of those sales and the jury should be allowed to decide the issue.

For these reasons, Fairchild's motion should be denied.

## III.  ANSWER TO MIL NO. 2: IMPORTATION OF ACCUSED FAIRCHILD PRODUCTS ARE RELEVANT TO BOTH DIRECT AND INDIRECT INFRINGEMENT

First, as above, this is not a proper "motion *in limine*." Fairchild at several points makes arguments about the weight of the evidence (*see, e.g.,* D.I. 356 at 6: "all of the accused parts are manufactured and sold in Korea...to third-party companies located in Asia and Europe") even though these facts are not stipulated and even though Fairchild lost its motion for summary judgment on this very issue. (*See* D.I. 266.) Power Integrations believes that the facts must be determined by the jury and should not be excluded via a "motion *in limine*" or any other type of motion.

Second, as noted above, the importation of accused Fairchild products by third parties is directly relevant to Power Integrations' case. (*See* Answer To MIL No. 1, *supra*.) Third party importation into the U.S. provides evidence that Fairchild made sales and offers for sale from the United States, and if Fairchild induced these third parties to import infringing parts into the United States, Fairchild is liable for inducing the infringement. There will be substantial evidence at trial that Fairchild induces its customers to import the infringing products into the U.S.

Interestingly, Fairchild's brief admits exactly what happens with its products – they are "bundled with other end products...[and] may be imported into other countries, including the U.S. by an OEM customer." (D.I. 356 at 6.) This admission by Fairchild is noteworthy, as it confirms what Fairchild has for so long denied – that it knows the accused parts end up in the United States. The remaining disputed issue is thus whether or not Fairchild either directly (via sales, offers for sale, or manufacturing) or indirectly (via inducement or contributory infringement) is responsible for this importation, again an issue of fact that should be determined by the jury, not by a motion *in limine*.

Fairchild's reliance on *Shockley v. Arcan, Inc.,* 248 F.3d 1349 (Fed. Cir. 2001) at pages 6-7 of its brief is misplaced because the defendant being discussed in that case was located in China, did all of its manufacturing in China, and all of that defendant's sales and offers took place in China, *id.* at 1364. Fairchild is located in the United States, Fairchild made sales and offers for sale in the United States, Fairchild manufactured infringing parts in the U.S., and Fairchild has induced importation into this country. In addition, the products at issue in this case are unique – they are the key component of "universal power supplies" which are designed to be used worldwide.

Fairchild makes several arguments about the types of evidence Power Integrations relies on to prove its case, but just because Fairchild doesn't like a fact doesn't mean the fact should be excluded via a motion *in limine*. For example, Fairchild attacks the documents Power Integrations' damages expert used to help him determine what percentage of the accused products were imported into the United States, claiming that these articles are improper hearsay. But Fairchild certainly knows experts are allowed to rely on hearsay if it is the type of information reasonably relied upon by experts in the field. *See* F.R.E. 703. Also, circumstantial evidence of importation can be just as probative as direct evidence, especially where many of Fairchild's witnesses have repeatedly plead ignorance on the issue of importation. (*See, e.g.,* D.I. 259, Fairchild's Proposed Jury Instructions, at 20 ("Direct and Circumstantial Evidence").) Furthermore, Fairchild ignores the direct evidence Power Integrations intends to introduce on this issue, such as Power Integrations' own first-hand testimony about lost sales to Fairchild due to infringing products.

Fairchild also attempts to package its argument in terms of a *Daubert* challenge, claiming that allowing Power Integrations' experts to rely on evidence of importation would be "contradictory to the principles set forth in *Daubert*," (D.I. 356 at 9), but Fairchild makes no effort to actually apply the *Daubert* test or to show how the evidence relied on by Power Integrations is in any way different from the types of evidence

7

commonly used by damages experts.  The Court should reject such generic and unsupported *Daubert* challenges (both here and elsewhere in Fairchild's 19 motions).

Finally, Fairchild claims it has "no knowledge" of the <u>amount</u> of importation of the accused products.  (D.I. 356 at 18.)  That is not the test for indirect infringement.  The test is whether Fairchild had knowledge of the <u>existence</u> of the importation, not the amount.  Power Integrations will present evidence that allows the jury to reasonably determine the amount.  Now that Fairchild has admitted  knowledge of importation, the issues of intent and extent are issues of fact to be determined by the jury, and the Court should deny Fairchild's motion.

## IV.  ANSWER TO MIL NO. 3: BOTH PARTIES CAN RELY ON RELEVANT PORTIONS OF FINANCIAL REPORTS, AND ANY ALLEGED UNRELIABILITY CAN BE DEALT WITH BY CROSS-EXAMINATION

Fairchild makes many unfounded claims about Power Integrations' earnings restatements, most notably that Power Integrations feels this issue "is not serious" (D.I. 356 at 21).  Fairchild's characterizations are wrong.  This is a serious issue to Power Integrations – one Power Integrations has acted quickly and diligently to address.  It is NOT, however, a serious issue <u>for this litigation</u>.  To the extent that existing damages calculations are unchanged (a result which Power Integrations' expert has said is likely) there is no reason for this Court to exclude reliance on the existing financial figures.  To the extent the existing damages calculations must be changed (a result Fairchild's expert has still not said is likely) the parties and the Court can deal with those changes when the updated financial figures are released.

Nevertheless, Fairchild presses the issue despite the Court's previous order denying Fairchild's request for additional discovery, which noted in part: "Fairchild has not demonstrated how revised reports pertaining to stock options will impact its damages case.  In addition, Fairchild has not demonstrated the relevance of the additional discovery it seeks.  As Power Integrations points out, this case is a patent infringement case and not an SEC investigation or a securities case." (D.I. 331 at 3.)  There is nothing

8

new in Fairchild's latest briefing regarding these restated earnings figures, and this Court should continue on the correct path of waiting for the updated financial figures and allowing the parties to make any appropriate and necessary corrections at that time.

Fairchild's reliance on *Venture Industries Corp. v. Autoliv ASP, Inc.* , 2006 U.S. App. LEXIS 20114 (Fed. Cir. 2006), is misplaced. In *Venture Industries,* the Federal Circuit actually upheld the district court's finding that information pertaining to financial irregularities in reports from a court-appointed forensic accountant were not likely to have any impact on the jury's decisions on damages. *See Id.* at *18-19. The Federal Circuit did remand the case for a determination of whether the plaintiff had committed fraud by deliberately relying on inaccurate financial data, *id.* at *33, but that is not an issue here and Fairchild has not demonstrated that restated earnings based on stock options grant dates has any relevance to this case. (D.I. 331 at 3.)

Finally, with regard to Fairchild's statement that "at a minimum, Mr. Troxel must be precluded from opining that the restated financials will have no effect on damages" (D.I. 356 at 22), Power Integrations has already made it clear that it has no intent to make the restated financials an issue in this litigation – indeed, it has moved *in limine* to exclude just this type of reference. (*See* D.I. 343 at 2.) As much as Fairchild enjoys raising the issue and apparently feels it necessary to rely on it, this is a patent case, not a securities case, and neither expert needs to discuss the circumstances surrounding the restated earnings figures. Fairchild's motion should be denied.

## V.    ANSWER TO MIL NO. 4: NOTHING WAS "CONCEALED" FROM POWER INTEGRATIONS' EXPERTS; POWER INTEGRATIONS' PRICE EROSION CALCULATIONS SHOULD STAND

Fairchild gives several reasons for why it believes Power Integrations' claims of price erosion should be excluded. First, Fairchild argues that Power Integrations and its attorneys "concealed" evidence from its damages expert concerning Power Integrations' ability to raise prices. (D.I. 356 at 24.) But as an initial matter, it should be no surprise to this Court (or to Fairchild) that attorneys often withhold work product from testifying

experts in light of concerns regarding waiver.  That Power Integrations asked a consulting firm to conduct research and to keep that research confidential does not constitute a "scheme" for "hiding evidence" (Fairchild's words).[3]

Also, if Power Integrations were trying to "hide" or "conceal" these documents, why would it have produced them to Fairchild?  The truth is that Mr. Troxel did have access to precisely the same sort of sales and pricing tracking information that Fairchild now breathlessly builds its motion around, and he cited this very information in his opening expert report.  For example, PIF 53037-54, produced to Fairchild in August of 2005 and listed among the documents Mr. Troxel considered in forming his opinions, shows that the ASP for TOP242Y went from $.60 in the second quarter of 2002 to $.76 in the second quarter of 2003, precisely the sort of average price increase Fairchild now says was "concealed" from Mr. Troxel.[4]  (*See* Ex. B (excerpt from Mr. Troxel's list of documents considered and the actual document (PIF 53045-46).)  The truth of the matter is that Fairchild appears not to have bothered to read Mr. Troxel's report and the documents cited therein before leveling its charge of "concealing information."

More fundamentally, after spending several pages arguing that the LECG charts are extremely relevant to Mr. Troxel's damages analysis, Fairchild cut off the portion of Mr. Troxel's transcript where he actually addressed the relevance of these charts.  In that withheld passage, Mr. Troxel said:  "I would be very suspicious of data such as this to try to rely on for any sort of, particularly for any sort of analysis.  When I looked at it, I looked at individual customers which is, of course, the proper way to do it."  (Ex. C, (Troxel Tr. day 2) at 592:3-8.)  In other words, charts such as these, which show average pricing trends for various Power Integrations products, are very different from evidence

---

[3]   This is certainly of a different type and degree than Fairchild

REDACTED

[4]   This same information was also produced to Fairchild in electronic form on production CD 29 on August 12, 2005.

of prices charged to individual customers for a specific product. The <u>average</u> price for a product may increase for a number of reasons, including infringing competition that siphons off high-volume customers (who would of course receive the lowest prices). This is precisely the situation at hand, where Power Integrations had to reduce its prices to specific customers when Fairchild offered infringing products at vastly reduced prices. If Fairchild believes certain facts do not support the conclusion that Power Integrations' prices were eroded, it can cross-examine Mr. Troxel at trial and present its own expert to rebut Mr. Troxel's conclusions. Fairchild will have its day in court, and the strength or weakness of both parties' evidence can be determined at that time.

The remainder of Fairchild's motion argues and reargues summary judgment with respect to Power Integrations' damages calculations. This is inappropriate, particularly without any reference in this section of the brief to the standards for reconsideration. Equally inappropriate, though, is Fairchild's statement that Mr. Troxel should not be able to make any reference to post-filing sales or pricing for specific Power Integrations products simply because those products were first sold before this case was filed. (D.I. 356 at 29 ("PI introduced the SC1009 prior to October 20, 2004, the filing date of the complaint and as such, <u>its existence</u> in the market cannot be the basis of any damages claim against Fairchild.") (emphasis added).) Fairchild appears to have taken the Court's orders regarding the calculation of damages to the extreme with this assertion, and it appears as though Fairchild is arguing that something first sold before this case was filed cannot provide a basis for any damages in this case, even when the calculations are attributable to post-filing sales and only make use of post-filing financial data regarding those sales. That is simply not the law, and it is not what the Court ordered. Indeed, it is tantamount to saying that the Court gave Fairchild a royalty-free perpetual license for all product models first sold prior to the notice date of October 20, 2004. That suggestion is silly, and Fairchild's motion should be denied.

11

## VI.    ANSWER TO MIL NO. 5: THERE IS NO BASIS FOR CREATING A PER-SE RULE AGAINST PRESENTING EVIDENCE OF THINGS THAT HAPPENED PRIOR TO THE START OF THIS LITIGATION

The issue of pre-suit damages has already been decided.  As referenced above, the Court agreed with Fairchild that Power Integrations cannot collect or compute damages accruing prior to the start of this litigation, and Mr. Troxel will not do so.  It does not follow, however, that all evidence of any activity of any kind occurring prior to this litigation should require "an offer of proof that the evidence relates to infringement and is not offered as to damages." (D.I. 356 at 34.)  A per-se rule such as the one Fairchild proposes, creating a presumption against the admission of any pre-suit evidence on any issue, has absolutely no precedent (Fairchild cites none) and would be tremendously prejudicial to Power Integrations case, in particular Power Integrations' showing that Fairchild's infringement was willful.  This Court should go no further than its prior orders on damages, which Power Integrations of course intends to follow.

## VII.    ANSWER TO MIL NO. 6: THE RELIABILITY AND WEIGHT OF EVIDENCE IS FOR THE JURY TO DECIDE

Fairchild's sixth motion *in limine* identifies a number of documents it claims are allegedly "unreliable."  Fairchild is certainly entitled to its opinions, but there is no reason for this Court to exclude these documents on evidentiary grounds.  Documents such as Power Integrations' weekly reports and sales figures are kept in the normal course of its business and are a snapshot of sales activity and activity in the marketplace occurring at a particular date in time.  The degree to which these documents help or hurt Power Integrations' case goes to the weight of these exhibits, not to their admissibility.  With regard to Fairchild's claims that these documents should be excluded as hearsay, the documents fall under a number of exceptions (records of regularly conducted activity, present sense impression, then existing mental or physical condition, recorded recollection, market reports, and others), and such documents should not be excluded by a blanket motion *in limine*.

12

## VIII.  ANSWER TO MIL NO. 7: TECHNICAL EXPERTS ARE ENTITLED TO TESTIFY REGARDING INFRINGEMENT

Fairchild's Motion in Limine No. 7 seeks to exclude Power Integrations' experts from expressing opinions that the accused products infringe on the basis that it calls for a legal conclusion. Fairchild is simply wrong. The Federal Circuit has noted, "Whether a product infringes a patent claim is indisputably a question of fact." *See Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed.Cir.1984); *see also Cordis Corp. v. Boston Scientific Corp.*, 431 F. Supp. 2d 465, 471 (D. Del. 2006) ("Claim construction is a question of law while infringement is a question of fact"). The Federal Circuit has said that experts may opine regarding the "ultimate question" of infringement. *See Snellman v. Ricoh Co.*, 862 F.2d 283, 287 (Fed.Cir.1988), *cert. denied*, 491 U.S. 910 (1989) ("[a]lthough claim interpretation is a question of law, expert testimony is admissible ... to give an opinion on the ultimate question of infringement" (citations omitted)). That experts may opine on infringement is matter of black-letter patent law, and is certainly the custom in this district.

Fairchild's reliance on *P&G v. Teva Pharmaceuticals USA, Inc.*, 2006 U.S. Dist. LEXIS 54300 (D. Del. Aug. 4, 2006), is misplaced because the Court noted that the expert report in that case was really a thinly veiled attempt to "focus[] on case law related to commercial success." *Id.* at *3. Power Integrations' experts, on the contrary, will not argue about what the law should or should not be. They will testify as to the facts, demonstrating that Fairchild's accused parts meet every limitation of each asserted claim, and then state their opinions that the products therefore infringe Power Integrations' patents. Fairchild has not shown how this is in any way improper (or in any way different from what occurs in every other patent case in this district), and its motion should be denied.

13

IX.    **ANSWER TO MIL NO. 8: EVIDENCE OF COPYING IS HIGHLY RELEVANT TO WILLFULNESS AND SHOULD BE ADMITTED**

Fairchild's Motion in Limine No. 8 seeks to exclude evidence of copying, but again the fact that Fairchild is unhappy about evidence of its willful infringement does not provide a basis for excluding this sort of evidence. Fairchild starts down this path by arguing that the jury may be "confused" because Power Integrations parts and Fairchild parts appear similar when packaged. (D.I. 356 at 39.) First, the jury will be instructed by this Court on what constitutes willful infringement, and any risk of confusion can be eliminated at that time. Second, Fairchild's reliance on F.R.E. 403 is improper because Fairchild completely ignores the probative value of evidence related to copying, and does not even attempt to apply any sort of balancing test to determine whether that probative value is outweighed by its hypothetical concerns about "prejudice."

Fairchild also seeks to exclude evidence regarding its copying of Power Integrations' datasheets. Again, Fairchild argues that this evidence might confuse the jury, and that the evidence is not relevant (D.I. 356 at 40), but Fairchild completely ignores the fact that copying datasheets is relevant to show that Fairchild also copied the functionality described in those datasheets – which includes the functionality covered by the patents in suit – and thus bears directly on the issue of willful infringement. Fairchild's argument that the jury may confuse patent law with copyright law is again misplaced because this Court will instruct the jury as to the correct law to apply regarding willful infringement.

Because the test for willfulness calls for examination of "the totality of the circumstances," *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983), and because the evidence of what Fairchild actually did is far more relevant on the issue of copying than the unsupported speculation of Fairchild's purported copying expert, Dr. Gu-Yeon Wei, (*See* D.I. 343 at 5), Fairchild's motion should be denied. Fairchild's widespread and gross copying of Power Integrations' products and

14

marketing collateral, with knowledge of the patents, is precisely the sort of evidence the jury could rely on in finding Fairchild's infringement willful.

## X.  ANSWER TO MIL NO. 9: AS PREVIOUSLY ARGUED, FAIRCHILD'S HIDDEN U.S. MANUFACTURING PROGRAM USED THE ACCUSED SDG4 PROCESS, AND PRESENTS SERIOUS CONCERNS

Both Fairchild and Power Integrations have extensively briefed the issue of Fairchild's U.S. manufacturing program, which is the subject of Fairchild's Ninth Motion *in Limine*, and Power Integrations respectfully refers the Court to those previous filings. (*See* D.I. 314, Defendants' Motion to Strike Plaintiff's Second Supplemental Report on Damages; D.I. 319, Power Integrations' Response to Defendants' Motion to Strike, at 7-10; D.I. 343, Power Integrations' Motions *in Limine*, at 3-4.)

The only "new" argument raised in Fairchild's Motion #9 is the assertion that Power Integrations "never requested" schematics or other technical information about the FSD210HD. To call this statement a distortion is charitable. Fairchild misled Power Integrations and the Court for months before Power Integrations discovered the U.S. manufacturing program, and Fairchild never produced any datasheet or schematic regarding the FSD210HD despite many long-standing discovery requests for just this sort of information for the accused products. Moreover, when Power Integrations learned of the U.S. manufacturing, it *repeatedly* and specifically demanded production of such information for the FSD210HD (*see, e.g.,* Exs. D & E (Headley letters of 5/11/2006 & 5/22/2006), F (Headley e-mail of 6/7/2006), G & H (Headley letters of 7/10/2006 & 7/15/2006). Fairchild just as consistently refused to provide the information[5] or to provide any suggestion that there is any meaningful difference between the FSD210HD and any other member of the FSD210 or 210H family of products. Power Integrations also questioned H.K. Kim and Ronald Dupuis (Fairchild's eventual 30(b)(6) witness)

---

[5]  As Power Integrations has explained in its prior briefing on this issue, it is highly likely that there **is** no separate datasheet or schematic for the 210HD part, because it is merely a version of the 210H in a new package type and therefore is the same in all material respects. The 210H part is and always has been in the case.

about this very product. Fairchild's posturing on this issue alone shows that it is playing games and wasting the valuable time of the parties and the Court.

Fairchild should not be allowed to shield U.S.-based manufacturing of products made with the accused SDG4 process. Furthermore, the exclusion Fairchild seeks would accomplish nothing but delay and further expense – it would require another trial on a device in the same FSD210 family that will be addressed with a representative device in this case, and which is manufactured using the same accused SDG4 process, with absolutely no evidence that this part differs in any material way from any other accused part. Indeed, if Power Integrations obtained a standard injunction prohibiting the manufacture of products that use the accused technologies, the FSD210HD would be enjoined whether or not Fairchild considers it "accused" in light of the total absence of any evidence of differences from the products Fairchild admits are in play. More importantly, though, Fairchild's motion should be denied because Fairchild has always known (and previously admitted) that the FSD210HD and its U.S. manufacturing program for the SDG4 process stand accused, despite Fairchild's recent posturing to the contrary.

## XI.    ANSWER TO MIL NO. 10: MR. TROXEL DID DISCUSS LOSSES DUE TO FAIRCHILD OFFERS FOR SALE, AND EVIDENCE OF OFFERS FOR SALE IS ADMISSIBLE

Fairchild attempts to argue that Mr. Troxel did not specifically calculate damages figures based on "offers for sale," and that offers for sale should thus be excluded from this case, but Fairchild's arguments are incorrect, both factually and legally. First, as a matter of law, lost profits damages based on lost sales can only be calculated based on lost sales. If Power Integrations did not actually lose a sale to Fairchild (for example, if Fairchild made an offer for sale that was declined by the potential purchaser) Power Integrations cannot claim lost sales damages based on that transaction, and thus Mr. Troxel did not need to make (and did not make) any calculations based on offers for sale in this context.

What Power Integrations can and does claim, however, is that offers for sale of infringing products required Power Integrations to reduce the prices it was able to charge customers for its own products that use patented technology. This led to price erosion damages, and Mr. Troxel discussed losses caused by Fairchild offering to sell the accused products in that context. (*See, e.g.,* D.I. 357, de Blank Decl., Ex. 1 (Troxel Report) at 4 (describing price erosion damages "attributable to lower prices offered by Fairchild")).

Even if Fairchild's position were correct as a matter of law or fact (which it is not), the scope of the remedy Fairchild seeks – precluding any evidence of any offer for sale occurring in the U.S. – is far too broad. Besides themselves constituting an infringement, evidence of offers to sell infringing products in the U.S. is strong evidence that actual sales of infringing products occurred in the United States, and they shed light on the terms of those sales. Fairchild's U.S. offers for sale also show Fairchild's intent that others import and use these products into the United States.

Because Fairchild's legal and factual arguments are incorrect, and because the remedy Fairchild seeks is far too broad, this motion should be denied.

## XII.    ANSWER TO MIL NO. 11: POWER INTEGRATIONS HAS CLEARLY ARTICULATED WHERE IT IS AND IS NOT ASSERTING THE DOCTRINE OF EQUIVALENTS

Fairchild's Motion *in Limine* No. 11 seeks to limit or exclude doctrine of equivalents arguments with respect to the patents in suit, but as with the other "motions *in limine*," this effort is misplaced. First, the leading argument in this motion (*See* D.I. 356 at 46, Section A) is moot, for the simple reason that Power Integrations is not asserting the Doctrine of Equivalents for the '075 patent. The quotation in bold in this section (*see Id.*) shows that Fairchild is well aware of this fact and knows its motion in that regard is moot (and thus frivolous).

The rest of the motion is similarly misplaced, as it is more properly the subject of a summary judgment motion and not a motion *in limine*. If Fairchild truly believed the

evidence was inadequate as a matter of law, it should have filed an eighth motion for summary judgment back on March 17 pursuant to the schedule for such motions.

Fairchild's next argument (*id.* at 47, Section B) ignores the very text of the expert report it cites. Fairchild says that, "[o]bviously, none of these generalized, summary paragraphs refer to any independent evidence specifically linked to the individual elements of the 'doctrine of equivalents,'" (*id.*), but the cited paragraphs do in fact identify the elements of the claims and the accused products, and the cited passages explain their equivalence under the function, way, result test.

Next, at Section C of this motion (*id.* at 48), Fairchild states that "the *entirety* of PI's analysis of Claim 14 is set forth as follows...." (*id.*, emphasis in original) and that "none of these generalized, summary paragraphs refer to any independent evidence specifically linked to the doctrine of equivalents." (*Id.*) However, Fairchild has not reproduced the entire discussion of claim 14, because the cited portion refers to another portion of the report which analyses the doctrine of equivalents for the frequency variation circuit claim element. Indeed, Fairchild acknowledges in Section D of its motion that Power Integrations' expert covered that  element, and Power Integrations will apply the doctrine of equivalents as explained in the cited report at trial. (*Id.* at 49). The remainder of Fairchild's Motion in Limine raises issues that are now moot, and so the motion should be denied.

## XIII.  ANSWER TO MIL NO. 12: FAIRCHILD, NOT POWER INTEGRATIONS, CONTINUALLY RAISES THE SG AND MOTOROLA LITIGATION

It is true that Power Integrations received favorable decisions in previous suits against System General ("SG") and Motorola. It is also true that those outcomes are generally irrelevant to this litigation, and Fairchild cites no evidence to support its statement that "Power Integrations has made it clear that it will attempt to present its prior trial victories against System General and Motorola to the jury as some indicia of economic value in this case." (D.I. 356 at 50.) Power Integrations will not affirmatively

18

raise these prior litigation victories. Fairchild, however, has itself raised these two suits on numerous occasions, including in its expert's reports, in depositions of both Power Integrations' CEO and damages expert, and in its second motion *in limine*.

Power Integrations will not raise its previous litigation victories unless and until Fairchild opens the door, at which point those litigation victories become fair game. Because Fairchild's proposed motion seeks to prohibit Power Integrations from responding to Fairchild's offensive use, however, Fairchild's motion should be denied.

## XIV.   ANSWER TO MIL NO. 13: FAIRCHILD'S OPINION LETTERS AND THEIR SHIFTING CONSTRUCTIONS ARE RELEVANT TO WILLFULNESS

Fairchild's Motion *in Limine* No. 13 asks the court to exclude "any evidence" regarding Fairchild's claim construction positions in this case prior to the Claim Construction Order. With this motion, Fairchild ignores the fact that the Court will instruct the jury on claim construction and again fails to analyze the relevance of the evidence versus the alleged prejudice under F.R.E. 403. Fairchild has obtained opinions of counsel in this case, and the positions in those opinions

REDACTED

By relying on those opinions, Fairchild put at issue the competence of the opinions and the reasonableness of any reliance on them. The shifting sands approach to Fairchild's defense to willful infringement is highly relevant:

> To serve as exculpatory legal advice the opinion of counsel is viewed objectively, to determine whether it was obtained in a timely manner, whether counsel analyzed the relevant facts and explained the conclusions in light of the applicable law, and whether the opinion warranted a reasonable degree of certainty that the infringer had the legal right to conduct the infringing activity.

*See SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1467 (Fed. Cir. 1997). Because Power Integrations is entitled to call into question the reasonableness of Fairchild's asserted reliance on various positions in its opinion letters,

this motion should be denied.  Among other things,



relevant to whether the Fairchild business

person who allegedly relied on those opinions was reasonable in doing so.

## XV.  ANSWER TO MIL NO. 14: POWER INTEGRATIONS IS ENTITLED TO QUESTION THE REASONABLENESS OF FAIRCHILD'S RELIANCE ON OPINION LETTERS

Fairchild's Motion *in Limine* No. 14 also seeks to exclude evidence relevant to the

competence of Fairchild's opinions, its opinion counsel and the reasonableness of any

reliance on the opinions.  Fairchild claims that "Power Integrations has suggested that it

may attempt to present to the jury that an attorney providing a non-infringement opinion

must construe all claim terms," but cites no evidence to support this statement.  (D.I. 356

at 51.)  Power Integrations has not asserted that all terms of a claim must be construed for

a competent opinion letter.  Whether opinion counsel should have construed a *particular*

claim term, however, is a question for the jury.  If Power Integrations asserts that the lack

of a construction raises an issue of competence or reasonableness, Fairchild can respond

on redirect regarding that issue.  Further, if Fairchild attempts to rely on oral opinions at

trial,[6] Power Integrations would need to determine whether such opinions competently

incorporated any construction(s) of the relevant term(s).  Conversely, opinion counsel's

lack of claim constructions may provide evidence that it would be unreasonable for

Fairchild to rely on a particular opinion.  As such, Fairchild's motion should be denied.

## XVI.  ANSWER TO MIL NO. 15: THE DOCUMENTS FAIRCHILD MOVES TO EXCLUDE ARE RELEVANT AND NOT "PREJUDICIAL" BEYOND THE FACT THAT THEY SUPPORT POWER INTEGRATIONS' CASE

Fairchild moves to exclude two documents under F.R.E. 403 on the grounds that

their relevance is outweighed by an alleged risk of prejudice to Fairchild, but there is no

basis for excluding these documents.

---

[6]    As noted in Power Integration's MIL # IV, Fairchild appears to be trying to advance (improperly) new evidence of such oral opinions in this case.  *See* D.I. 343.

First, Fairchild seeks to exclude a Fairchild e-mail discussing Power Integrations' technology (D.I. 357, de Blank Decl., Ex. 48), but this e-mail is relevant to issues in both trials, including validity (praise by others) and willfulness (Fairchild's desire to copy Power Integrations' technology). Fairchild's claim that the e-mail, "does not refer to any of the patented inventions or the patents themselves" is plainly false.

REDACTED

The patents in this case relate to Power Integrations' semiconductor manufacturing process technology (the `075) and to ideas that make power supply systems easier to design and more cost-effective (the `876, `851 and `366 patents). In his deposition, Mr. Lim

REDACTED

This fact no doubt troubles Fairchild as it prepares for trial, but it is not a reason for excluding such highly relevant evidence of Fairchild's intent to copy Power Integrations' patents.

Second, with respect to the awards Power Integrations received for its patented technology, the article Fairchild moves to exclude discusses the features of the Power Integrations products which embody the patented technologies in this case. As a result, the documents and praise are directly relevant to providing, for example, general background on Power Integrations and the relevant marketplace for power supplies (which impacts damages), as well as willfulness (showing Fairchild's need to copy Power Integrations' technology).

The alleged risk of prejudice Fairchild raises – that the jury will believe infringement is more likely when a product is popular – has no basis in fact and is pure speculation. In any event, this Court will instruct the jury on the law to apply at the end of the case, which will correct any alleged prejudice. For these reasons, both parts of this two-part motion in limine should be denied.

21

## XVII. ANSWER TO MIL NO. 16: POWER INTEGRATIONS' PROCESS TECHNOLOGY EXPERT MIKE SHIELDS SHOULD BE ALLOWED TO TESTIFY CONCERNING INHERENCY AND THE BEASOM NOTES

Fairchild's Motion *in Limine* No. 16 seeks to exclude Power Integrations process technology expert, Mike Shields, from providing testimony on "matters relating to inherency." (*See* D.I. 356 at 54.) First, Fairchild's assertion that Mr. Shields "admitted he does not have the requisite knowledge or basis to opine on inherency as it relates to the Beasom patent" (*id.* at 55) is wrong. Mr. Shields is qualified to opine on inherency and articulated the inherency standard with respect to the Beasom patent in his deposition. (*See, e.g.,* Ex. J (Shields Tr.) at 80-82.) Fairchild claims that Mr. Shields confirmed in his deposition that he will not offer an opinion on inherency at trial, but that is not what Mr. Shields said. (*See, e.g., id.* at 98-99.) What Mr. Shields said was that he *did not agree* with Fairchild's characterization of what it means for something to be "inherent." (*Id.* at 97:10-98:23.) Mr. Shields may not apply Fairchild's definition during his analysis, but nowhere did he say that he would not opine on inherency. In any event, Fairchild will have ample opportunity to cross-examine and rebut his testimony if it so chooses.

Fairchild's motion *in limine* does, however, preview an issue that the Court should address at the pretrial conference. It appears that Fairchild may seek to argue that Power Integrations' process technology expert should not be allowed to provide any testimony regarding certain documents that came to light **after** Mr. Shields provided his rebuttal report (such as Mr. Beasom's notes), and that he should not be able to give opinions on validity issues first raised by Fairchild's process expert **after** Mr. Shields provided both his rebuttal report and his deposition testimony (again, mostly relating to Mr. Beasom's notes).

The Beasom notes were produced by Intersil on January 23, 2006 (*See* Ex. K), over a week after the technical experts provided their rebuttal reports in this case. As such, Mr. Shields did not have an opportunity to address them in his reports. Fairchild's

22

REDACTED

expert, Dr. Gwodz, likewise did not address the Beasom notes in either of the two expert reports he filed in accordance with the Court's schedule. However, after the notes were produced by Intersil

and after Mr. Shields was deposed, Dr. Gwodz provided a third, "supplementary" report addressing these notes on February 23. Because of this sequence of events, Mr. Shields had no opportunity to address the Beasom notes (or any Intersil documents pre-dating the filing of the Beasom patent). It is hypocritical for Fairchild to suggest that its expert should be allowed a third report to deal with what in effect are its own late-produced documents, but Power Integrations' expert should be precluded from responding. This is particularly true where Fairchild bears the burden of proof on the issue of validity. [7]

Therefore, in light of Fairchild's strident motion to exclude testimony regarding "inherency," which is a key issue in the evaluation of the late-produced Beasom notes, Power Integrations asks the Court to clarify that its expert, Mike Shields, will indeed be able to respond to Fairchild's expert's testimony on the issue of what is taught in Mr. Beasom's notes. Power Integrations further requests that the Court make clear that Fairchild cannot sandbag Power Integrations at the validity trial with the Beasom notes by holding them for "rebuttal" in an attempt to keep Mr. Shields from responding to the testimony Dr. Gwozdz is expected to offer as to what the notes teach with respect to the validity of the '075 patent.

---

[7]  Power Integrations raised the issue at the first pretrial conference and then filed a motion *in limine* to preclude Dr. Gwozdz from relying on his supplementary report because the report was not served within the schedule for expert disclosures. The Court recently decided to allow the testimony, but there was no way to predict that Power Integrations would need to serve another expert rebuttal report to respond to issues first raised after Power Integration's expert had already offered opinions in a timely manner and had been deposed.

## XVIII. MIL NO. 17: COMMUNICATIONS BETWEEN FAIRCHILD AND GENERAL ELECTRIC ARE RELEVANT TO SHOWING INFRINGEMENT

Fairchild challenges the admissibility of various e-mails between Fairchild and

General Electric Corporation ("GE")     REDACTED

Fairchild first attacks these e-mails on the grounds that they were not relied upon

by Power Integrations' damages expert, Mr. Troxel. Power Integrations, however, is not

claiming lost sales to GE and is not claiming price erosion on any sales to GE. That is

the reason these e-mails were not cited in Mr. Troxel's damages report, and that is why

he will not discuss them at trial. These e-mails are, however, directly relevant to show

Fairchild's intent to induce others to import infringing products into the U.S., and they

also generally show the control Fairchild's U.S. operations exert over Fairchild's

worldwide activity.

Fairchild claims that Power Integrations has no live witnesses who can discuss

these documents, but Fairchild's suggestion ignores that the documents are Fairchild

documents which Fairchild either did not produce or buried in its 1,700,000 pages of

production in this case. This is the only reason Power Integrations needed to obtain the

documents directly from GE in the first place, and Power Integrations should be able to

have Fairchild authenticate (or stipulate to the authenticity of) its own documents. With

respect to Fairchild's hearsay objections, these documents are admissible as admissions

by a party opponent, and they are also business records of Fairchild, both of which are

admissible under F.R.E. 801 and 803 respectively. Fairchild's motion should be denied.

## XIX.   MIL NO. 18: FAIRCHILD MISSTATES THE LAW OF CORROBORATION AND ASKS FOR AN EXTRAORDINARY REMEDY

Fairchild argues that the inventor of the '075 Patent, Klas Eklund, should not be

able to testify as to his conception and reduction to practice of the ideas expressed in the

'075 patent. In doing so, Fairchild seeks to reargue its unsuccessful motion for summary

judgment, (*see* D.I. 266, Order Denying Defendants' Motion for Summary Judgment of Invalidity of Claims 1 and 5 of U.S. Patent No. 4,811,075), and misstates and inflates the law of corroboration. The Federal Circuit has said that an inventor, "must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure," s*ee, e.g., Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1228 (Fed. Cir. 1994), but it has never held that this requires all testimony of the inventor be excluded from trial. Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party, may all be used to corroborate conception. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.,* 412 F.3d 1331, 1337-39 (Fed. Cir. 2005). Indeed, evidence about the inventive process alone (which Mr. Eklund can provide) may corroborate. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344, 1351 (Fed. Cir. 2001).

Second, Fairchild neglects to mention that there is corroborating evidence in this case. For example, Jan Brunnberg will testify that he witnessed an inventor's notebook that disclosed Dr. Eklund's ideas in the '075 patent as early as 1984. (*See, e.g.,* Ex. L (Brunnberg Tr.) at 48:25-49:18.) Issues such as conception, reduction to practice, and corroboration are intensely factual and should be left for the jury to hear and decide.

Notably, Fairchild puts forward no new arguments and never discusses the standards necessary for reconsideration in revisiting its failed motion for summary judgment. Instead, Fairchild seeks to exclude relevant evidence without any showing of prejudice or any other grounds for exclusion. That is improper. Also, as above, there is absolutely no precedent for the relief Fairchild seeks (a per-se rule to exclude all evidence of prior invention without a threshold showing of corroboration), and Fairchild cites no such precedent. For these reasons, Fairchild's motion should be denied.

## XX.   MIL NO. 19: FAIRCHILD SHOULD NOT BE ALLOWED TO HIDE ITS TRUE INVALIDITY CONTENTIONS IN A PILE OF 80 PRIOR ART REFERENCES

Fairchild's nineteenth and final motion asks the Court to prohibit Power Integrations from objecting to the authenticity, admissibility, and publication date of any of the 80 prior art references submitted by Fairchild.  What Fairchild neglects to mention is that Power Integrations offered repeatedly to consider a stipulation as to publication dates if and when Fairchild agreed to reduce its list of 80 prior art references to those references it would actually proceed with at trial.  (*See, e.g.,* Ex. M (Headley e-mail of 5/2/06), N (Headley letter of 5/22/06).)  Fairchild refused these requests and again listed 80 references in its 35 U.S.C. § 282 statement, even though the vast majority of the art has never been analyzed by Fairchild's experts and is no longer relevant in light of the Court's claim constructions and Power Integrations' narrowing its claims for trial.

As argued in Power Integrations' pretrial filings, (*See* D.I. 360, Proposed Joint Pretrial Order, at Ex. 16), the Court should limit Fairchild to a reasonable number of prior art references.  Fairchild itself has implicitly suggested this number is one reference per patent, as there is no conceptual reason Power Integrations should be forced to select only one claim per patent to prove infringement (which Fairchild of course strenuously argued) while Fairchild remains free to take more than one shot per patent in the validity trial.  Since the Court has now allowed Power Integrations to select 7 claims for purposes of trial, however, Power Integrations would have no objection to Fairchild being allowed to choose an equal number of prior art references.  Once Fairchild has narrowed its case to focus on these seven references, the parties can no doubt reach an agreement as to which references are admissible and which have publication dates prior to the critical dates of the asserted patents.

Dated:  September 11, 2006          FISH & RICHARDSON P.C.


By:  /s/ Sean P. Hayes
      William J. Marsden, Jr. (#2247) (marsden@fr.com)
      Sean P. Hayes (#4413) (hayes@fr.com)
      919 N. Market Street, Suite 1100
      P.O. Box 1114
      Wilmington, DE  19899-1114
      Telephone: (302) 652-5070
      Facsimile:  (302) 652-0607

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA  02110-2804
      Telephone: (617) 542-5070
      Facsimile:  (617) 542-8906

      Michael R. Headley
      Howard G. Pollack
      500 Arguello Street, Suite 500
      Redwood City, CA  94063
      Telephone: (650) 839-5070
      Facsimile:  (650) 839-5071

      Attorneys for Plaintiff
      POWER INTEGRATIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2006, I served the **PUBLIC VERSION OF DECLARATION OF SEAN P. HAYES IN SUPPORT OF POWER INTEGRATIONS' COMBINED OPPOSITION TO FAIRCHILD'S NINETEEN (19) MOTIONS *IN LIMINE*** on the following:

**BY ELECTRONIC MAIL**
Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P. O. Box 1150
Wilmington, DE 19899

Attorneys for Defendant-
Counterclaimant
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

**BY ELECTRONIC MAIL**
G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

　*/s/ Sean P. Hayes*
Sean P. Hayes

REDACTED - sph DECL TO mil.doc