IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC. and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendants
Fairchild Semiconductor International,
Inc. and Fairchild Semiconductor Corp.*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: September 19, 2006
173073.1

# TABLE OF CONTENTS

Page


I. OPPOSITION TO PI'S MOTION IN LIMINE NO. 1: FAIRCHILD SHOULD BE PERMITTED TO INTRODUCE HIGHLY RELEVANT EVIDENCE RELATING TO POWER INTEGRATIONS' RESTATEMENT OF ITS FINANCIAL DATA ........ 1

II. OPPOSITION TO MOTION IN LIMINE NO. 2: POWER INTEGRATIONS SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE REGARDING THE **REDACTED** ........ 2

- A. **REDACTED** Is Not Accused ........ 3
- B. Despite Knowing Of **REDACTED** For Over A Year, Power Integrations And Its Experts Decided Not To Accuse That Device ........ 4
- C. Fairchild's U.S. Manufacture Of **REDACTED** Is Irrelevant ........ 8
- D. Were The Court To Permit Power Integrations To Add Accused Devices, Power Integrations Should Be Precluded From Arguing That Fairchild Failed To Produce Discovery Before These Devices Were Added To The Case ........ 9

III. OPPOSITION TO MOTION IN LIMINE NO. 3: DR. WEI'S TESTIMONY IS APPROPRIATE ........ 10

IV. OPPOSITION TO MOTION IN LIMINE NO. 4: MR. CONRAD SHOULD BE PERMITTED TO TESTIFY REGARDING **REDACTED** ........ 11

# TABLE OF AUTHORITIES

Page

*Hall* v. *Aqua Queen Manufacturing, Inc.*,
93 F.3d 1548, 1555 (Fed. Cir. 1996)....................11

## I. *OPPOSITION TO PI'S MOTION IN LIMINE NO. 1:* FAIRCHILD SHOULD BE PERMITTED TO INTRODUCE HIGHLY RELEVANT EVIDENCE RELATING TO POWER INTEGRATIONS' RESTATEMENT OF ITS FINANCIAL DATA

As has been explained previously, PI's decertification of all of its annual reports, quarterly reports and SEC filings are highly relevant to the damages aspects of this case. The expert reports and opinions rely directly upon PI's existing financial data—which PI has explicitly cautioned "should no longer be relied upon." [Declaration of Gabriel M. Ramsey ("Ramsey Decl."), Ex. 1 (filed herewith)].

**REDACTED**

[Ramsey Decl., Ex. 26 at 457:6-20 (emphasis added)] Similarly, Fairchild's damages expert

**REDACTED** [Ramsey Decl., Ex. 3 at ¶¶73-81]

As set forth in detail in Fairchild's Motion in Limine No. 3, all of this inaccurate PI financial data and any opinions based thereon should be excluded.[1] However, if the Court decides to allow damages testimony based on PI's existing, unreliable financial reports, Fairchild must be allowed to explain to the jury the unreliability of the information and that the decertification is highly material.

Fairchild should be permitted to explain to the jury that in March 2006 PI decertified its financial reports and has told the world that the reports "should no longer be relied upon." These facts establish the unreliability of the information upon which PI bases its expert damages opinion, and are therefore highly relevant. Fairchild should be allowed to introduce the termination of PI's Chairman and its CFO; the appointment of a review committee, the estimated

[1] Fairchild's Motion in Limine No. 3 is incorporated herein, by this reference.

cost of the restatement **REDACTED** and that the Securities Exchange Commission and Department of Justice instituted investigations into the matter. These facts demonstrate the unreliability of the financial reporting and the materiality of the decertification. Obviously, the restatement is no minor "accounting error" since it led to such results. This evidence directly rebuts PI's position that the restatement is minor and has no effect on the case.

These plain, admitted facts are not unduly prejudicial—rather they accurately establish the unreliability and materiality of the data PI relies upon in its damages report. The jury will simply assess these facts in deciding whether PI's damages expert has a reliable basis for his opinion. PI itself has repeatedly and publicly asserted these facts in its securities filings, and has expressly cautioned the investing public not to rely on existing data in their analysis of PI's stock because of these circumstances. PI should now be allowed to hide that fact from a jury to whom **REDACTED** is presented based on the same data. That would be extremely prejudicial to Fairchild. In light of the high relevance of the information and low chance of undue prejudice, the information should be admitted at trial.

## II. *OPPOSITION TO MOTION IN LIMINE NO. 2:* POWER INTEGRATIONS SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE REGARDING **REDACTED**

PI's second motion in limine seeks to preclude Fairchild from offering particular evidence concerning **REDACTED** This puts the cart before the horse. As explained in Fairchild's own Motion in Limine No. 9, PI never accused **REDACTED** Now, long after technical expert reports have been submitted and trial is imminent, PI attempts to make this product part of the case. It must not be allowed to do so. PI chose which products it accused and which it did not accuse. Fairchild relied upon those representations in preparing its expert reports, conducting discovery, and preparing for trial. PI's argument that **REDACTED** "always accused" is false, and it attempts to divert attention from this fact by peppering its brief with completely inappropriate accusations against Fairchild. The plain fact is that PI led Fairchild to believe that **REDACTED** was not an accused product and now attempts to ambush Fairchild. That attempt must be rejected.

**A. REDACTED Is Not Accused.**

PI seeks to REDACTED as a newly accused device. This is extremely significant. PI claims that REDACTED —a device PI never accused of infringing any of the asserted patents.

Throughout this case, Fairchild has repeatedly sought an identification of the accused devices. Each time Fairchild believes that it understands what is at issue, PI pulls the rug out and accuses entirely new products. [*See* Appendix A hereto (chart showing PI's changed accusations)] The most recent example of this was on July 13, 2006 when PI suggested—for the very first time— REDACTED was accused of infringing unspecified claims of the asserted patents. [Ramsey Decl., Ex. 2]

PI's recent accusations REDACTED are untimely:

- Over a year after the June 30, 2005 close of document production
- Over 11 months after Fairchild specifically informed PI about these devices
- Over 10 months after the September 30, 2005 close of fact discovery
- Over seven months after (the already extended date for) PI's technical expert reports concerning infringement
- Over six months after PI's expert report on damages
- Over six weeks after PI submitted its proposed pre-trial order (which did not REDACTED
- Less than 12 weeks before trial is to begin

The Court should not permit PI to play fast and loose with its allegations and expand the case by including new products at this late date.

PI and its experts have never explained the basis for their recent decision to accuse the REDACTED or identified how they believe this device meets every element of any asserted claim. Indeed REDACTED is not identified in PI's technical experts reports in any fashion. Therefore, PI's experts should be precluded from testifying REDACTED infringes the asserted patents. If the Court grants PI's request to add REDACTED at this late date, PI's

experts must supplement their reports to address this device (so that Fairchild will know the basis of their testimony) and Fairchild must be permitted to redepose these experts and supplement its own expert reports, accordingly.

**B. Despite Knowing Of REDACTED ) For Over A Year, Power Integrations And Its Experts Decided Not To Accuse That Device.**

Attempting to justify its earlier decision not to accuse **REDACTED** PI suggests that its recent accusations are somehow related to Fairchild's manufacture of **REDACTED** in the United States. This is a red herring. PI admits that it had specific knowledge of **REDACTED** "as early as August of 2005." [DI 343 at p. 3] Knowing this, PI still decided not to accuse the **REDACTED** Moreover, Fairchild produced detailed sales data on **REDACTED** (FCS1688295-1688319). PI's damages expert cited and relied upon that database in his January 31, 2006 report, but PI still did not **REDACTED** or calculate any damages based on it. [*See* Ramsey Decl., Ex. 3 at ¶19] The fact that a small percentage

**REDACTED**

From the beginning, PI has been very specific as to precisely which variations of the Fairchild devices it was and was not accusing. For instance, in its February 4, 2005 discovery requests, PI defined "Accused Product(s)" as any of 46 specific Fairchild devices. PI did not **REDACTED** [Appendix A; Ramsey Decl., Ex. 4] Thereafter, PI repeatedly changed the devices accuse of infringing—but at no point **REDACTED** The changes to PI's specific identification of accused devices over time is illustrated in Appendix A hereto.

Pursuant to the Court's Guidelines for Electronic Discovery, on February 10, 2005 PI provided three pages of search terms for Fairchild to use to identify potentially relevant documents. [Appendix A; Ramsey Decl., Ex. 5]. While PI took this opportunity to drop three previously accused devices and add two newly accused devices, PI still did not accuse the **REDACTED** [*Id.*] This was not inadvertent. For some terms, PI included a "wildcard" – "Note: The * denotes a wildcard so that, for example, "anticipat*" would return documents that include

"anticipate", "anticipates", "anticipated", "anticipating", etc." [*Id.*, n. 1] Had PI intended to

**REDACTED**

Seeking to confirm the identification of accused devices and to understand how each accused device allegedly infringed the asserted claims Fairchild first interrogatory requested this information:

> For each asserted claim of the Power Integrations Patents, identify the accused Fairchild product or products and state, on an element by element basis, how each accused product or products allegedly meets each element of each asserted claim.

[Ramsey Decl., Ex. 6 at Interrogatory No. 1 and Response thereto]. In its February 23, 2005 verified response, "Power Integrations identifies the accused Fairchild products as follows:" and **REDACTED** (once more, both adding and dropping previously accused products). [*Id.*; Appendix A] **REDACTED** What is more, while PI specifically **REDACTED** gave no indication that it may accuse other members

On June 28, 2005, PI wrote to Fairchild and identified 37 devices accused of infringing the '075 patent. [Ramsey Decl., Ex. 7] As illustrated in Appendix A, while PI once more added previously non-accused devices, **REDACTED**. [*Id.*; Appendix A]

On June 30, 2005—merely two days after its letter—PI supplemented its response to Fairchild's Interrogatory No. 1. [Ramsey Decl., Ex. 8]. Now, devices as "accused products." [*Id.*; Appendix A] **REDACTED**

On July 15, 2005, PI served a 30(b)(6) deposition notice in which it, once again, purported to identify the "Accused Products." [Ramsey Decl., Ex. 9]. While PI dropped one product it had accused two weeks earlier in its supplemental interrogatory responses and added two products that were not previously accused, **REDACTED** [*Id.*; Appendix A]

On August 8, 2005, PI served a number of subpoenas on Fairchild's customers. [Ramsey Decl., Ex. 10]. Again, the subpoenas defined what PI contended to be the "Accused Products"

and REDACTED [*Id.*; Appendix A]

On August 30, 2005, Fairchild supplemented its interrogatory response concerning the sales of its products. Given the ever-shifting nature of PI's accusations, Fairchild decided to provide information on a variety of products—whether accused or not—so that it would not need to supplement its response with each change in PI's accusations. In these interrogatory responses, Fairchild specifically **REDACTED** [Ramsey Decl., Ex. 11 at Second Supp. Resp. to Interrogatory Nos. 6, 8, 9, and 10]. Contrary to the assertions in PI's motion in limine, this was not a concession **REDACTED** was accused—it could not be, the device had never been identified by PI. Indeed, Fairchild's interrogatory responses also include a number of other devices that have never been accused before or since by PI. There is no dispute, however, that as of at least August 30, 2005, PI was specifically aware **REDACTED** devices.

On September 30, 2005—a month after Fairchild inarguably **REDACTED** PI again supplemented its response to Interrogatory No. 1. [Ramsey Decl., Ex. 12 at Second Supp. Resp. to Interrogatory No. 1]. PI added a number of devices listed in Fairchild's August 30, 2005 interrogatory responses but *yet again* **REDACTED** even though PI knew of that device. [*Id.*; Appendix A]

On December 1, 2005, PI submitted reports from its technical experts providing the basis for the experts' opinions that the accused devices infringe the asserted claims. Even at this late date, PI was adding and removing the accused devices. For instance, **REDACTED** accused in Mr. Blauschild's expert report. [Ramsey Decl., Ex. 13 at p. 3 (Blauschild report), Ex 14 (Shields report)]. While PI's experts identified dozens of specific Fairchild products, they **REDACTED** and did not identify how that product allegedly met any element of any asserted claim. [Appendix A] In its motion in limine, PI glosses over this fact and fails to provide any evidence to the contrary. Thus, PI's technical experts should be precluded from **REDACTED**

On January 31, 2006, PI submitted its damages expert report. Presumably to resolve any

doubt over the identification of the accused devices, that report unambiguously identified the "FAIRCHILD PRODUCTS ASSERTED TO BE INFRINGING" (emphasis in original). [Ramsey Decl., Ex. 15 (Troxel Report, Appendix 2)] Once again, PI changed its identification of accused products but **REDACTED** [*Id.*; Appendix A] Indeed, PI made clear that while it separately accused **REDACTED** (though the latter device is not accused of infringing the '075 patent),

**REDACTED**

[*Id.*]

On May 25, 2006, the parties submitted their pretrial order. PI did not identify the **REDACTED** as an accused device in that order. [*See* DI 258]. During the May 31, 2006 Pre-Trial Conference, PI's attorney indicated that PI would "group" the accused devices for purposes of infringement. [DI 282] PI gave no indication that it would seek to **REDACTED** as an accused device.

On June 8, 2006, Fairchild wrote requesting that PI identify the groups of accused devices. [Ramsey Decl., Ex. 16]. PI did not indicate that it would add additional accused devices. Indeed, it did not respond at all.

On June 29, 2006, Fairchild met and conferred with PI's attorneys concerning the grouping of the accused devices. During that call, PI's attorneys refused to provide the "groupings" of accused devices but stated that it would be as set forth in PI's expert reports.

[Ramsey Decl., Ex. 17]. These reports REDACTED

In sum, PI identified the accused products 14 times between when it filed its complaint and July, 2006—including seven different sets of "accused devices" after Fairchild specifically

REDACTED At no time did PI, its attorneys, or its experts ever

On July 13, 2006, PI's attorney sent a letter in which they REDACTED accused device for the very first time. [Ramsey Decl., Ex. 2] PI did not supplement its interrogatory responses or expert reports or provide any explanation for this untimely expansion of its allegations. Fairchild immediately REDACTED was not an accused device. [Ramsey Decl. Ex. 18]

**C. Fairchild's U.S. Manufacture Of REDACTED Is Irrelevant.**

Unable to explain its decision not to REDACTED , PI seeks to distract the Court with improper and false accusations of misconduct by Fairchild. This effort should fail

REDACTED

Fairchild has long believed that none of the accused devices have been manufactured in the United States. Fairchild made this statement in its interrogatory responses. [Ramsey Decl., Ex. 11] During Mr. Kim's April 29, 2006 deposition, PI charged—for the very first time—that

REDACTED [Ramsey Decl., Ex. 19 at 76:4-79:17] After this deposition, Fairchild double checked and confirmed that none of the accused devices had been manufactured in the United States—the only device even remotely related to the accused devices that REDACTED which PI did not even suggest it accused prior to July 12, 2006.

To address PI's concerns, Fairchild provided additional documents and deposition testimony confirming that none of the accused devices were manufactured in the United States. [Ramsey Decl., Ex. 20 at 307:13-311:17]. PI's suggestion REDACTED

REDACTED As the parties agreed,

Fairchild used the list of search terms provided by PI to locate any potentially responsive electronic documents (including email). PI never requested that Fairchild search for or produce **REDACTED** since that device was never accused. [Ramsey Decl., Ex. 5].

> D. **Were The Court To Permit Power Integrations To Add Accused Devices, Power Integrations Should Be Precluded From Arguing That Fairchild Failed To Produce Discovery Before These Devices Were Added To The Case.**

**REDACTED** because it has **REDACTED** infringes any of the asserted claims. Indeed, PI's experts should be precluded from testifying about this device at all because they failed to disclose any opinions about it in their reports.

Therefore, were the Court to permit PI **REDACTED** and permit PI's experts to testify about it, PI would be obligated to submit new expert reports and Fairchild should be permitted to re-depose the experts about their expected testimony. Further, Fairchild's experts should be permitted to supplement their reports to address this new device. Finally, PI would have to supplement its responses to a number of discovery requests that seek information about PI's allegations because PI never previously **REDACTED** as an accused device. [See e.g. Ramsey Decl., Exs. 6 (Responses to Fairchild's First Set of Interrogatories, Nos. 1 (PI would have to include **REDACTED** claim), No. 9 (when and how Power Integrations **REDACTED** )); Ex. 21 (Fairchild's Second Set of Interrogatories, Nos. 33-35 (PI would have to included statements it **REDACTED**

To avoid this, PI moves in limine that the Court rule that PI need not meet its burden of proving infringement and that **REDACTED** device is identical to the devices PI has accused. There is simply no basis for this relief—PI's inability to prove infringement is entirely due to its failure **REDACTED** The Court should not reward PI's lack of diligence.

Finally, if the Court does permit PI to **REDACTED** as an accused device, PI

9

should be precluded from arguing that Fairchild withheld or destroyed any information about this product. Fairchild has at all times complied with its discovery obligations and provided PI with all of the discovery it requested concerning the products that PI actually accused. For all of the foregoing reasons, PI's motion in limine concerning **REDACTED** product must be denied. Further, in the event that the Court allows PI to proceed **REDACTED** the Court should allow Fairchild to inform the jury that accusations of this product adding . **REDACTED** additional damages **REDACTED** came extremely late in the case, and should be permitted to show the jury PI's interrogatory responses and other documents failing to accuse the **REDACTED**

## III. *OPPOSITION TO MOTION IN LIMINE NO. 3:* DR. WEI'S TESTIMONY IS APPROPRIATE.

Dr. Wei's testimony directly rebuts the opinion of PI's technical expert, Robert Blauschild, **REDACTED** Crucially, Fairchild fully anticipates that PI will argue that Fairchild **REDACTED** It is not. Dr. Wei's testimony and opinion directly attack a primary thesis of PI's case. There is no dispute as to Dr. Wei's qualifications as an expert and no dispute that his proposed testimony is a proper subject for expert testimony. Instead, PI simply complains that it is "not relevant". [PI's Motion in Limine at p. 5]

Dr. Wei's testimony is relevant and appropriate to rebut the implication in Mr. Blauschild's report that **REDACTED** If PI will stipulate that **REDACTED** then Dr. Wei's testimony will not be necessary. If, however, PI insists on arguing that **REDACTED** then Fairchild should be permitted to rebut this allegation.

Fairchild's fact witnesses have testified and will testify that **REDACTED** As set forth in his report, rather than rely simply on the testimony of Fairchild's witnesses, Dr. Wei reviewed the objective evidence—

**REDACTED**

[Ramsey Decl., Ex. 22] Dr. Wei did so to prevent PI from later arguing that the opinion relied upon biased testimony. His opinion is clearly set forth in his report and he should be permitted to testify that the objective evidence confirms that **REDACTED**

## IV. *OPPOSITION TO MOTION IN LIMINE NO. 4:* MR. CONRAD SHOULD BE PERMITTED TO TESTIFY REGARDING

**REDACTED**

**REDACTED**

[2] In his first deposition, Mr. Conrad only stated that

**REDACTED**

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp.*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: September 11, 2006
173073.1



REDACTED

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of September, 2006, the attached **REDACTED PUBLIC VERSION DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE** was served upon the below-named counsel of record at the address and in the manner indicated:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19801

HAND DELIVERY

Frank E. Scherkenbach, Esquire
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

VIA FEDERAL EXPRESS

Howard G. Pollack, Esquire
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

VIA FEDERAL EXPRESS

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon