IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, <br><br> Defendants. | C.A. No. 04-1371 JJF |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

# TABLE OF CONTENTS

**Page**

GENERAL INSTRUCTIONS.................................................................................1

INTRODUCTION..................................................................................................1

JURORS' DUTIES.................................................................................................2

BURDEN OF PROOF............................................................................................3

EVIDENCE DEFINED...........................................................................................4

CONSIDERATION OF EVIDENCE.......................................................................5

USE OF NOTES.....................................................................................................6

DIRECT AND CIRCUMSTANTIAL EVIDENCE..................................................7

CREDIBILITY OF WITNESSES............................................................................8

NUMBER OF WITNESSES...................................................................................9

EXPERT WITNESSES..........................................................................................10

DEPOSITION TESTIMONY..................................................................................11

DEMONSTRATIVE EXHIBITS.............................................................................12

THE PARTIES AND THEIR CONTENTIONS.......................................................13

THE PARTIES.......................................................................................................13

POWER INTEGRATIONS CONTENTIONS..........................................................14

FAIRCHILD'S CONTENTIONS............................................................................15

SUMMARY OF PATENT ISSUES........................................................................16

THE PATENT CLAIMS.........................................................................................17

PATENT CLAIMS GENERALLY..........................................................................17

DEPENDENT AND INDEPENDENT CLAIMS......................................................19

CONSTRUCTION OF CLAIMS...........................................................................20

MEANS-PLUS-FUNCTION CLAIMS.................................................................22

PATENT INFRINGEMENT..................................................................................24

PATENT INFRINGEMENT GENERALLY.........................................................24

INFRINGEMENT - IMPORTATION BY FAIRCHILD......................................25

INFRINGEMENT - OFFER FOR SALE.............................................................26

DIRECT INFRINGEMENT - LITERAL INFRINGEMENT...............................27

DOCTRINE OF EQUIVALENTS........................................................................28

SITUATIONS WHERE RESORT TO DOCTRINE OF
EQUIVALENTS IS NOT PERMITTED...............................................................30

INDIRECT INFRINGEMENT - GENERALLY...................................................32

INDUCING PATENT INFRINGEMENT..............................................................33

WILLFUL INFRINGEMENT................................................................................34

VALIDITY..............................................................................................................36

DAMAGES.............................................................................................................37

GENERALLY..........................................................................................................37

BURDEN OF PROOF - REASONABLE CERTAINTY.......................................38

DATE DAMAGES MAY BEGIN..........................................................................39

METHODS FOR COMPUTING DAMAGES.......................................................40

LOST PROFITS – LOST SALES..........................................................................41

LOST PROFITS – PRICE EROSION....................................................................42

FUTURE PROFITS – DETERMINATION...........................................................43

REASONABLE ROYALTY..................................................................................44

PRESUMPTIONS IN THE HYPOTHETICAL NEGOTIATION............................45

FACTORS FOR DETERMINING REASONABLE ROYALTY............................ 46

INTEREST..................................................................................... 48

CLOSING STATEMENT – DAMAGES.................................................. 49

CURATIVE INSTRUCTION................................................................50

DELIBERATION AND VERDICT..........................................................51

INTRODUCTION.............................................................................51

UNANIMOUS VERDICT....................................................................52

DUTY TO DELIBERATE....................................................................53

COURT HAS NO OPINION.................................................................54

# I.    GENERAL INSTRUCTIONS

## I.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.

You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 1.1*

## 1.2   JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 1.2*

2

## 1.3    BURDEN OF PROOF

This is a civil case in which Power Integrations, Inc. is charging Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, which are collectively referred to as "Fairchild," with patent infringement. Power Integrations has the burden of proving patent infringement and its claim of damages by what is called a preponderance of the evidence. That means Power Integrations has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Power Integrations claims is more likely true than not. To put it differently, if you were to put Power Integrations' evidence and Fairchild's evidence on the opposite sides of a scale, the evidence supporting Power Integrations' claims would have to make the scales tip somewhat on Power Integrations' side. If Power Integrations fails to meet this burden, your verdict must be for Fairchild.

In this case, Power Integrations is also alleging that Fairchild's infringement was willful. Power Integrations must prove its claims of willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and does not play any part in this case. Therefore, you should not consider it at all in your deliberations.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 1.3*

3

## 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

Do not let any witness' nationality or ethnic heritage, or ability to speak the English language, influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played or read to you) the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

4

## 1.5     CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 1.6    USE OF NOTES

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

<u>Source</u>:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 1.7     DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

7

## 1.8    CREDIBILITY OF WITNESSES

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

**1.9     NUMBER OF WITNESSES**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

<u>Source</u>:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

9

## 1.10    EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – a person called an expert witness – is permitted to state his opinion on those technical matters.  You are not required, however, to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it. In addition, you should consider whether the information upon which the expert bases his opinion is reliable and you should consider any question of reliability of that information when you evaluate the experts' testimony.

<u>Source:</u>

*Uniform Jury Instr. For Patent Cases in the D. Del.; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 1.11   DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

<u>Source</u>:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 1.12  DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

Source:

*Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

12

## II.   THE PARTIES AND THEIR CONTENTIONS

## 2.1   THE PARTIES

The plaintiff in this case is Power Integrations, Inc. The defendants are Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation. I will refer to plaintiff as "Power Integrations." I will refer to defendants as "Fairchild."

## 2.2    POWER INTEGRATIONS' CONTENTIONS

Power Integrations contends that Fairchild has infringed, and continues to infringe, various claims of Power Integrations' patents by making, using, selling, or offering for sale within the United States certain integrated circuits, or "chips," for use in power supplies. Specifically, Power Integrations charges that Fairchild has infringed, and continues to infringe, claim 1 of U.S. Patent 6,249,876; claims 1 and 4 of U.S. Patent 6,107,851; claims 9 and 14 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075. I will refer to these four patents collectively as the "patents-in-suit," or individually by the last three numbers of the patents.

Power Integrations also contends that it is entitled to damages for Fairchild's infringement in the form of lost profits on some Fairchild sales and a reasonable royalty on other Fairchild sales.

## 2.3    FAIRCHILD'S CONTENTIONS

Fairchild contends that its products do not infringe, literally or under the doctrine of equivalents, any of the asserted claims of the patents-in-suit.

If Fairchild is found to infringe, Fairchild contends that Power Integrations is only entitled to a reasonable royalty on those accused products that Power Integrations has proven Fairchild made, used, sold, or offered for sale within the United States or imported into the United States.

If Fairchild is found to infringe, Fairchild contends that such infringement was not willful since Fairchild had a good faith belief that the asserted patents were invalid or not infringed.

## 2.4    SUMMARY OF PATENT ISSUES

In this case, you must decide the issues according to the instructions I give you. In general these issues are:

1.    Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has infringed any of the asserted claims of the patents-in-suit.

2.    If you find any of the asserted claims of the patents-in-suit are infringed, whether Power Integrations has proven by clear and convincing evidence that Fairchild's infringement was willful.

3.    If you find any of the asserted claims of the patents-in-suit are infringed, the amount of damages that Power Integrations has proven by a preponderance of the evidence is due to it.

## III.    THE PATENT CLAIMS

## 3.1    PATENT CLAIMS GENERALLY

Deciding whether a claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to each of the accused products to determine whether every element of the claim can be found in that accused product. This element-by-element comparison is your responsibility as the jury for this case.

Before you can decide whether or not Fairchild has infringed any of Power Integrations' patents, you will have to understand the patent "claims." Patent claims are the numbered paragraphs at the end of a patent. The patent claims involved here are claim 1 of U.S. Patent 6,249,876; claims 1 and 4 of U.S. Patent 6,107,851; claims 9 and 14 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Claims may be directed to products, such as machines or chemicals, or they may be directed to methods for making or using a product. Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

When making your decision regarding infringement, you should not compare Fairchild's products with any specific example set out in the patents-in-suit, or with any product manufactured by Power Integrations. Rather, you must only compare Fairchild's products with the asserted claims of the patents-in-suit.

Power Integrations bears the burden of proving that each product infringes. Any product

17

for which PI has not met this burden must be found not to infringe.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.1; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 3.2     DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in the patents. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 1 of the '876 patent is an independent claim. You know this because it mentions no other claims. Accordingly, the words of each of the independent claims are read by themselves in order to determine what each of the claims covers.

Claim 14 of the '366 patent, on the other hand, is a dependent claim. It refers to independent claim 9. For a Fairchild product to infringe dependent claim 14 of the '366 patent, the Fairchild product must have all the elements of both claim 14 and claim 9. Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.2*

19

## 3.3     CONSTRUCTION OF CLAIMS

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of claim.

You must apply the meaning that I give in each patent claim to decide if such claim is valid and infringed. You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here. The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied:

1. The term "MOS transistor" means "a metal oxide transistor."

2. The term "substrate" means "the physical material on which a transistor or microcircuit is fabricated."

3. The phrase "a pair of laterally spaced pockets of semiconductor material of a second conductivity type within the substrate" means "two laterally spaced pockets of semiconductor material of the opposite conductivity type from the substrate."

4. The phrase "a surface adjoining layer of material of the first conductivity type on top of an intermediate portion of the extended drain region between the drain contact pocket and the surface adjoining positions" is construed according to its plain meaning, and further construction by the Court is not required.

5. The phrase "said top layer of material" is construed according to its plain meaning when read in the context of the claim, and further construction by the Court is not required.

6. The term "reverse bias voltage" means "a voltage applied across a rectifying junction with a polarity that provides a high-resistance path."

7. The phrase "substrate region thereunder which forms a channel" is construed according to its plain meaning when read in the context of the claim, and further construction by the Court is not required.

8. The term "frequency jittering" means "varying the switching frequency of a switch

mode power supply about a target frequency in order to reduce electromagnetic interference."

9. The term "coupled" means that "two circuits are coupled when they are connected such that voltage, current or control signals pass from one to another."

10. The term "primary voltage" means a "base or initial voltage" and the term is not defined by reference to the source from which it may be generated.

11. The term "secondary voltage" means "a subsequent or additional voltage."

12. The term "combining" means "adding together."

13. The term "supplemental voltage" means "a voltage in addition to the primary voltage."

14. The term "soft start circuit" is a means-plus-function element. The functions of the various "soft start circuits" are construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions. The corresponding structures related to the "soft start circuit" are shown in Figures 3, 6, and 9 of the '366 patent and described in the specification of the '366 patent at col. 6, ll. 7-17; col. 6, l. 35-col. 7, l. 18; col. 11, ll. 40-50 and col. 12, ll. 5-10.

15. The phrase "frequency variation circuit" means "a structure that provides the frequency variation signal."

16. The phrase "frequency variation signal" means "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal within a predetermined frequency range."


Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.2*

21

### 3.4  MEANS-PLUS-FUNCTION CLAIMS

Claims 9 and 14 of the '366 Patent and claim 4 of the '851 Patent have what are known as a "means-plus-function" element – specifically, the "soft start circuit" element. The claim defines this element as a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs and glue; or an inventor could discuss in the patent the use of glue for attaching legs and then claim a table as being a tabletop, legs and means for attaching the legs to the tabletop. The means-plus-function element would cover glue and any equivalent structure that performed the required function of "attaching the legs to the tabletop."

I will now explain the four special rules that apply to this type of claim language. First, the accused device must perform the function as specified in the claim. If not, the claim containing that means-plus-function element is not infringed.

Second, if Fairchild's accused product does perform the required function, you must identify the structure in Fairchild's accused product that actually performs this function.

Third, you must decide whether the technology of this structure in Fairchild's accused product was known as of the date the '366 and '851 patents issued.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date the patent issued.

22

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.7*

## IV.    PATENT INFRINGEMENT

## 4.1    PATENT INFRINGEMENT GENERALLY

A patent owner may enforce its right to stop others from making, using, importing, selling, or offering to sell the patented invention within the United States by filing a lawsuit for patent infringement. Here, Power Integrations, the patent owner, has sued Fairchild, the accused infringer, and has alleged that certain Fairchild products infringe one or more claims of Power Integrations' patents-in-suit.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell, or imports, within the United States without the patent owner's permission, any product or method legally protected by at least one claim of a patent before the patent expires, infringes the patent.

There are several ways to infringe a patent. One may directly infringe a patent, either literally or under the doctrine of equivalents. Alternatively, one may indirectly infringe a patent, by actively inducing others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement.  In the case of indirect infringement, Power Integrations must prove an underlying act of direct infringement.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 4.2    INFRINGEMENT – IMPORTATION BY FAIRCHILD

I just told you that one of the ways that a patent may be infringed is if a person imports into the United States, without the patent owner's permission, a product, apparatus or method legally protected by at least one claim of a patent, before the patent expires. To "import" simply means to bring goods into the United States from another country. Fairchild can be liable for infringement by importation only if Fairchild itself brings infringing products into the United States. You cannot find that Fairchild has committed infringement by importation based on another person or company bringing products into the United States, even if those products were manufactured by Fairchild.

Sources & Comments:

*Bristol-Myers Co. v. Erbamont Inc.*, 723 F. Supp. 1038, 1044 (D. Del. 1989); *International Rectifier Corp. v. Samsung Electronics, Ltd.*, 361 F.3d 1355, 1360-61 (Fed. Cir. 2004).

## 4.3    INFRINGEMENT – OFFER FOR SALE

I just told you that one of the ways that a patent may be infringed is if a person offers to sell in the United States, without the patent owner's permission, a product, apparatus or method legally protected by at least one claim of a patent, before the patent expires.

## 4.4    DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For Fairchild's product to literally infringe any one of Power Integrations' patent claims, Fairchild's product or use of its product must include each and every element in that claim.  If Fairchild's product or use of its product omits any single component recited in Power Integrations' patent claim, Fairchild does not literally infringe that claim.  If you find, with respect to any claim, that Power Integrations disclaimed a particular scope or feature, then the presence of that scope or feature in Fairchild's products cannot be the basis for a finding of literal infringement.  For instance, if you find that PI disclaimed DMOS devices during the prosecution of the '075 Patent and if you find that the accused FC devises are DMOS devices, then the accused FC devices cannot infringe the '075 patent.  You must determine literal infringement with respect to each patent claim and each accused product individually.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.1; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC* Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.; Ballard Medical Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1359 (Fed. Cir. 1991) (claim scope disclaimed during prosecution cannot be asserted as a basis for literal infringement).

27

**4.5    DOCTRINE OF EQUIVALENTS**

If you do not find literal infringement, you may consider infringement under the doctrine of equivalents. The doctrine of equivalents does not apply to your analysis of the '075 Patent, as Power Integrations has agreed that Fairchild does not infringe the '075 Patent under the doctrine of equivalents. I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

As I have noted, to infringe a patent, every claim element must be present in the accused product. A claim element may be present in an accused product in one of two ways, either literally or under the doctrine of equivalents. A claim element is literally present if it exists in the accused product just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused product under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused product are insubstantial. One way to determine this is to look at whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for Fairchild's product or use of its product to infringe any one of Power Integrations' asserted claims under the doctrine of equivalents, the element of a patent claim which is not literally found in a Fairchild product must be present by equivalence. Therefore, the question is whether the accused product contains an equivalent for each element of the claim that is not literally present in the accused product. The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a whole.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Fairchild's product and its components are equivalent to what is defined in Power Integrations' claims is to be determined as of the time of the alleged

infringement.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.4*

**4.6     SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED**

There are three situations wherein resort to the doctrine of equivalents to find infringement is not permitted.

First, resort to the doctrine of equivalents to find infringement is not permitted if you find that the Fairchild is merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office. Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to the asserted claim, but broad enough to literally cover the accused product or method.

Second, resort to the doctrine of equivalents to find infringement is not permitted if you find that the patent owner is trying to recapture that which he gave up in the Patent Office to distinguish the invention from what was in the public domain prior to his invention. As you have already heard, during prosecution of the patent, arguments and amendments are often made in an attempt to convince the Patent Examiner and the Patent Office that the claimed invention is entitled to a patent in view of the prior art before the Examiner. The applicant, in other words, may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims so that they are distinguished from the prior art. If the inventor, when he was in the process of obtaining one of the Power Integrations patents, limited a claim in some way in order to argue that it was different from what was in the public domain, then he is not now free to assert a broader view of his invention by broadening the claims through the doctrine of equivalents in an effort to recapture that which he surrendered. Sometimes patent claims, however, are amended, not to avoid what was in the public domain, but to clarify indefinite or ambiguous terms. If you find that an amendment was made to clarify a claim for that sort of reason and not in an effort to avoid what was in the public domain, the doctrine of equivalents

can still be applied.

Third, you may not find infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is missing from the accused device. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Sources & Comments:

Instruction 3.10, 1993 District of Delaware Patent Instructions (**first two exceptions**); Instruction 3.5, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004) (third exception); Prosecution History Estoppel Instruction, American Intellectual Property Law Association Model Jury Instructions (1998); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685, 14 U.S.P.Q.2d 1942, 1948-9 (Fed. Cir.), cert. denied, 111 S. Ct. 537 (1990) (first exception); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362-63, 219 U.S.P.Q. 473 (Fed. Cir. 1983); *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1243, 222 U.S.P.Q. 649 (Fed. Cir. 1984); Moeller v. Ionetics, 794 F.2d 653, 229 U.S.P.Q. 992, 996 (Fed. Cir. 1986); *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 230 U.S.P.Q. 45, 48 (Fed. Cir. 1986); *Graham v. John Deere Co.*, 383 U.S. 1, 33-34, 148 U.S.P.Q. 459 (1966); *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 673 (Fed. Cir.), *cert. denied*, 469 U.S. 1037 (1984); Kinzenbaw v. Deere & Co., 741 F.2d 383, 389, 222 U.S.P.Q. 929 (Fed. Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985); *Coleco Industries, Inc. v. ITC*, 573 F.2d 1247, 197 U.S.P.Q. 472 (C.C.P.A. 1978); *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1115, 219 U.S.P.Q. 185 (Fed. Cir. 1983) (second exception); *Corning Inc. v. SRU Biosystems*, 400 F. Supp. 2d 653, 658-59 (D. Del. 2005) (Farnan, J.) (third exception).

## 4.7    INDIRECT INFRINGEMENT – GENERALLY

In addition to stopping infringement by those who are directly infringing, a patent owner also has the right to stop those who are known as "indirect infringers." A holder of a patent that describes a process or method in its claims often must rely on claims of indirect infringement to protect his or her rights. That is, without liability for indirect infringement, a company could manufacture a machine to perform a process described in a patent claim and then sell the machine without fear of recourse by the patent holder.  Actively inducing others to infringe a patent is known as "inducing infringement."  I will explain to you in a moment the precise requirements for finding someone has actively induced infringement by another person.

In this case, Power Integrations accuses Fairchild of actively inducing infringement of the patents-in-suit.  It is your job to determine whether Power Integrations has proven inducement by a preponderance of the evidence. Keep in mind that there can be no indirect infringement unless someone is directly infringing the patent. Thus, to prove that Fairchild is actively inducing another person to infringe, Power Integrations must prove by a preponderance of the evidence that another person is directly infringing a claim of the patent. Such proof may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 3.7*

## 4.8    INDUCING PATENT INFRINGEMENT

Active inducement to infringe requires proof of actual intent to cause the acts which constitute infringement.  Merely having knowledge of the underlying acts of direct infringement by itself is not enough to prove active inducement.  In this case, selling products outside the United States is not enough to make Fairchild an infringer, even if it knows that some of those products are later imported into the United States.  Power Integrations must prove that Fairchild actually intends that the accused products be shipped into the United States by the companies that it sells the accused products to.

**4.9    WILLFUL INFRINGEMENT**

Power Integrations contends that Fairchild has willfully infringed the patent claims.

When a person becomes aware that a patent may have relevance to their activities, that person has a duty to exercise due care and investigate whether or not their activities infringe any valid claim of the patent. If that person does not do so and infringes the patent claims, then the infringement is willful. Although Power Integrations must prove infringement by a preponderance of the evidence, Power Integrations must prove that Fairchild willfully infringed by the higher burden of clear and convincing evidence.

To establish willful infringement, Power Integrations must prove two things with clear and convincing evidence:

    1.    Fairchild was aware of the patent.

    2.    Fairchild acted without having a reasonable good faith belief that the patent was invalid or that the patent was not infringed.

To determine whether Fairchild acted with a reasonable good faith belief or whether Fairchild willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by Fairchild in this trial and the following factors:

    1.    In designing the product accused of infringement, whether Fairchild intentionally copied Power Integrations's invention or a product made by Power Integrations that is covered by the patent, or whether Fairchild instead tried to "design around" the patent by designing a product that Fairchild believed did not infringe the patent claims. Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

    2.    When Fairchild became aware of the patent, whether Fairchild formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Fairchild obtained and followed the advice of a competent lawyer. Although the absence of an opinion of counsel does not require you to find willfulness, the obtaining and following of counsel's advice may be evidence that infringement was not willful.

Keep in mind that a determination by you that Fairchild has infringed the patent does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Fairchild had a good faith belief that it did not infringe or that the patent was invalid, and if its belief was reasonable under all the circumstances.

<u>Sources & Comments</u>:

Instruction 3.13, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004), slightly modified from *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); *Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 569 (D. Del. 2003); *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 843 (D. Del. 1995).

## V.      VALIDITY

The issue of whether the asserted patents are valid is not in dispute in this case. However, Fairchild contends that it did not willfully infringe the asserted patents because it had a good faith belief that the asserted patents are invalid.   The validity of the asserted patents should only be considered in determining whether Fairchild's belief that it did not infringe was reasonable.

## VI.    DAMAGES

## 6.1    GENERALLY

If, after considering all of the evidence and the law as I have stated it, you have determined that there are no patent claims at issue that are infringed, your verdict should be for Fairchild and you need go no further in your deliberations. On the other hand, if you decide that one or more of the patent claims have been infringed by Fairchild, you must then turn to the issue of damages.

You must also understand that my instructions regarding damages should not be construed as indicating any view on my part as to which party is entitled to prevail in this case. These instructions about damages are given for your guidance in the event that the evidence leads you to conclude that some claim of a valid and enforceable patent has been infringed.

The patent laws provide that in the case of infringement of a patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty rate for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Fairchild benefited from, realized profits from, or even lost money as a result of the acts of infringement. It is also not relevant if Fairchild did not foresee that it would cause Power Integrations harm. The only issue is the amount necessary to adequately compensate Power Integrations for infringement by Fairchild. Adequate compensation should return Power Integrations to the position it would have been in had there been no infringement.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.1-5.2*

37

## 6.2    BURDEN OF PROOF – REASONABLE CERTAINTY

Power Integrations has the burden of proving damages by what is called a preponderance of the evidence. Power Integrations is entitled to all damages that can be proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Power Integrations. On the other hand, Power Integrations is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or left to conjecture. You may base your evaluation of reasonable certainty on opinion evidence. However, you may not consider opinion evidence, or any other evidence, to the extent that it relies on or refers to Fairchild's sales outside of the United States.  Because the United States patent laws do not apply outside the United States, Fairchild's foreign sales are not acts of infringement and are completely irrelevant to the amount of damages in this case.

Source:

Uniform Jury Instr. For Patent Cases in the D. Del. 5.3; *International Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360-61 (Fed.Cir.2004).

## 6.3    DATE DAMAGES MAY BEGIN

Power Integrations may only recover damages for infringement that occurred after the date it gave notice to Fairchild of its patent rights. Because Power Integrations failed to mark any its products with any words or patent numbers for any of the four patents in suit, such as "U.S. Patent No. 4,811,075," or "U.S. Patent No. 6,249,876," it did not give constructive notice to Fairchild of its patent rights. Also, Power Integrations failed to give actual notice of its patent rights to Fairchild until the date it filed this lawsuit, October 20, 2004. Whether Fairchild knew of the patents in suit prior to October 20, 2004 by some other means or event is irrelevant. This means that if you decide to award lost profits damages in the form of lost sales, price erosion, or increased expenses, the amount of such damages must be calculated without reference to any sales, prices or expenses prior to October 20, 2004. The number of sales that you conclude Power Integrations would have made, the prices it would have charged, or the expenses it would have avoided must commence on October 20, 2004 as though no infringement had occurred before that date.

Sources & Comments:

35 U.S.C. § 287(a); *Honeywell International v. Hamilton Sunstrand Corp., 2001* WL 66345 (D. Del., Jan. 4, 2001) (GMS); *Novartis v. Monsanto,* C.A. *97-39, 97-40* (RRM) (D. Del. 1997); Instruction 5.4, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1440 (Fed. Cir. 1998); *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.,* 103 F. Supp. 2d 268, 280-81 (S.D.N.Y. 2000).

## 6.4    METHODS FOR COMPUTING DAMAGES

There are two common methods for computing damages in a patent infringement case. One is called "lost profits," and the other is called "reasonable royalty." These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

Thus, in determining damages, you must first determine if Power Integrations has proven its entitlement to lost profits. Lost profit damages are the profits Power Integrations lost because of the infringement. They are not the profits that Fairchild actually made. Power Integrations' lost profits may be in several different forms, which I will explain in a moment. They include (i) lost sales, (ii) eroded prices for sales actually made; and (iii) eroded prices for future sales. In this case, Power Integrations must establish that the infringement actually caused its lost profits. Thus, Power Integrations must show that "but for" the infringement, Power Integrations would have made the sales or profits that were allegedly lost.

Only if you find that Power Integrations is not entitled to lost profits, will you then determine Power Integrations' damages based on a reasonable royalty. I will explain reasonable royalty after I explain lost profits.

Source:

Uniform Jury Instr. For Patent Cases in the D. Del. 5.5, 5.7; *Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd.*, and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.

## 6.5    LOST PROFITS — LOST SALES

Power Integrations is claiming that it lost sales because of Fairchild's alleged infringement.  In order to recover lost profits damages for lost sales, Power Integrations must show the following:

(i) there was a demand for the patented product;

(ii) Power Integrations had the ability to meet the market demand;

(iii) no acceptable non-infringing substitutes were available; and

(iv) the amount of the profit it would have made.

Power Integrations need not negate every possibility that purchasers of Fairchild's products might have bought another product. Mere existence of a competing device does not make that product an acceptable substitute. However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes. To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products. For example, acceptable non-infringing alternatives may include non-accused Fairchild products that incorporate a soft start and/or EMI reduction features or other products that compete with the Power Integrations products that allegedly practice the asserted patents.

In proving its damages, Power Integrations' burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that Power Integrations would have made some of the infringing sales, and it is reasonably probable what amount Power Integrations would have netted from the denied sales, then Fairchild is liable for the lost profits on those infringing sales. The infringer is not liable, however, for speculative profits.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.8; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 6.6     LOST PROFITS — PRICE EROSION

In this case, Power Integrations is requesting damages based on "price erosion." Price erosion occurs when the patentee is forced to lower prices due to the presence in the market of the infringing product. Specifically, Power Integrations asserts that it lowered its prices for certain of its products and will be unable to raise prices for some period of time in the future because of Fairchild's infringement.

If you determine that the prices on Power Integration's products were eroded from its October 20, 2004 prices, you must then consider whether any such price erosion resulted because Fairchild was in the market for the specific patented product or because of some other reason. The relevant product market includes only devices or substitutes similar in physical and functional characteristics, and in price, to the patented invention. You may not find price erosion resulting from sales of products with significantly different physical or functional characteristics from the patented invention, or products with disparately different prices.

Ultimately, to recover price erosion damages, Power Integrations must prove that "but for" Fairchild's competition, it would not have lowered its prices. Power Integrations must also prove the amount of sales it would have made at the higher (uneroded) price, and if it cannot do so, it is not entitled to price erosion damages.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.11*

42

## 6.7    FUTURE PROFITS – DETERMINATION

In considering the element of future profits, you should determine whether or not Fairchild's infringement of the patents prevented Power Integrations from earning profits that would have accrued to it but for that infringement. Power Integrations must present reliable economic evidence to support an award of future lost profits and cannot rely upon mere speculation. In determining whether or not any part of Power Integrations' damages constitute future profits, you may consider the experience of Power Integrations and Fairchild in the business since October 20, 2004, the competition Power Integrations would have had, and the general market conditions.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.13*

## 6.8    REASONABLE ROYALTY

Power Integrations requests damages determined by a reasonable royalty for Fairchild's alleged use of the invention of the patents in suit. A reasonable royalty is the amount of money that would have been agreed to in a hypothetical arms-length negotiation between the owner of the patents and the accused infringer at the time the alleged infringement began.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms length negotiation that I just referred to would have been likely to occur. This is typically just before infringement began, which in this case is October 20, 2004.

In the hypothetical arms-length negotiation, you must assume that the parties engaged in the hypothetical negotiations are negotiating the terms of a license in which the licensee receives nothing from the licensor other than the right to use the patented inventions, and the licensor receives nothing from the licensee other than money.

Sources & Comments:

*Instruction 5.3, St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al., C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).*

**6.9    PRESUMPTIONS IN THE HYPOTHETICAL NEGOTIATION**

There are certain presumptions in the hypothetical negotiation that you should take into account.

You should assume that both sides to the hypothetical negotiation knew all pertinent information existing at the time of the hypothetical negotiation.  Having that in mind, you may consider any relevant fact known as of the hypothetical negotiation in determining the reasonable royalty for Fairchild's alleged use of the patented invention.  You may also consider the opinion testimony of experts.

As to events occurring after the hypothetical negotiation, they ought to relate back to the time of the hypothetical negotiation and not be an after-the-fact assessment based on information as of the trial.  That is, later information is relevant only as it is used to test the parties' risks and expectations at the time of the hypothetical negotiation.

Another presumption in the hypothetical negotiation is that the licensor is willing to grant a license and the licensee is willing to take a license.  As a result, it is presumed that they will reach agreement, rather than sue each other and litigate.

Yet another presumption in the hypothetical negotiation is that the patent is presumed valid, enforceable and infringed.  However, this presumption does not warrant awarding the Power Integrations a special "premium" based on the presumption.

<u>Sources & Comments</u>:

Instruction 5.4, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

## 6.10    FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining such a reasonable royalty, some of the factors that may be considered are:

1.    the royalties received by Power Integrations for licensing others under the patents-in-suit;

2.    the rates paid by Fairchild for the use of other patents comparable to the patents-in-suit;

3.    the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured products may be sold;

4.    Power Integrations' established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    the commercial relationship between Power Integrations and Fairchild, such as whether they are competitors in the same territory in the same line of business;

6.    the duration of the patents and the corresponding terms of the hypothetical licenses;

7.    the established profitability of the products made under the patents, their commercial success, and their current popularity;

8.    the utility and advantages of the patented invention over old devices, if any, that had been used for achieving similar results;

9.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Power Integrations, and the benefits to those who have used the invention;

10.    the extent to which Fairchild has made use of the invention, and any evidence that shows the value of that use;

          **11.**    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

          **12.**    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by Fairchild;

          **13.**    the opinion testimony of qualified experts; and

          **14.**    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

<u>Source:</u>

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.14.1*

## 6.11   INTEREST

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

Sources & Comments:

*Union Carbide v. Shell Oil*, C.A. 99-CU-274, 00-846-SLR (D. Del. given Feb. 6, 2001); *Tristrata*

*Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003)

(Farnan, J.).

## 6.12   CLOSING STATEMENT — DAMAGES

In determining the amount of a damages award, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Power Integrations has suffered as a result of the alleged infringement. If, under the Court's instructions, you find that Power Integrations is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing Fairchild or to set an example.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.16*

## 6.13   CURATIVE INSTRUCTION

The fact that I have instructed you regarding damages should not be construed as suggesting any view of the Court as to which party is to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find that Fairchild has infringed one or more claims of Power Integrations' patents-in-suit.

<u>Source</u>:

*Uniform Jury Instr. For Patent Cases in the D. Del. 5.17*

## VII.    DELIBERATION AND VERDICT

## 7.1    INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.1*

51

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.2*

## 7.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that — your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source:

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.3; Jury Instructions for Kyphon Inc. v. Disc-O-Tech Medical Technologies Ltd., and DISC Orthopaedic Technologies, Inc., C.A. No. 04-204-JJF, D. Del.*

## 7.4     COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based solely on the evidence presented.

<u>Source:</u>

*Uniform Jury Instr. For Patent Cases in the D. Del. 6.4*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2006, the attached **DEFENDANT'S**

**PROPOSED JURY INSTRUCTIONS** was served upon the below-named counsel of record at

the address and in the manner indicated:

William J. Marsden, Jr., Esquire                    HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19801

Frank E. Scherkenbach, Esquire                    HAND DELIVERY
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack, Esquire                    HAND DELIVERY
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

*/s/ John G. Day*

John G. Day