IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION,  a
Delaware corporation,

        Defendants.

C.A. No. 04-1371 JJF

**POWER INTEGRATIONS' COMBINED OPPOSITION TO DEFENDANTS'
MOTION TO ADD PRIOR ART REFERENCES TO THE INVALIDITY TRIAL
AND CROSS-MOTION TO PRECLUDE FAIRCHILD'S UNTIMELY
CONTENTIONS AND DOCUMENTS AT TRIAL**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Facsimile:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

Date:  November 13, 2006

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................1

III.   ARGUMENT ..........................................................................................................4

      A.     Fairchild Has Not Shown Any Undue Prejudice and
            Should Be Limited to the References It Originally
            Identified to Power Integrations (plus the Beasom '173
            Patent). ........................................................................................................5

      B.     There Is No Excuse for Fairchild's Delay in Bringing
            the Instant Motion, and the Clear Prejudice to Power
            Integrations Outweights Any Alleged Need by Fairchild
            to Rely on the Art in Question. ....................................................................9

      C.     Fairchild Should Not Be Permitted to Introduce New
            Invalidity Contentions on the Eve of Trial. ...............................................10

            1.     Fairchild's Expert Did Not Analyze the Martin,
                   Habetler or Wang References Fairchild Now
                   Seeks to Use at Trial. ....................................................................12

            2.     Fairchild's Expert Reports Do Not Support
                   Fairchild's Contentions Regarding the SMP211. ........................13

            3.     Because Fairchild and its Expert Evaluated the
                   TEA2262 and SMP240/260 But Chose Not to
                   Address Them Under the Constructions Power
                   Integrations Proposed (and the Court Adopted),
                   Fairchild Has No Basis To Change Its
                   Contentions At This Point.............................................................15

      D.     Fairchild's Disregard for the Rules Shows that, in this
            Case, There Is No Deterrent Value in the Court's
            Traditional Approach to Addressing the Scope of Expert
            Testimony After Trial. ...............................................................................17

IV.    CONCLUSION......................................................................................................18

# **TABLE OF AUTHORITIES**

**PAGE**

Fed. R. Civ. P. 26 ............................................................................................................. 13

## I.    INTRODUCTION

Plaintiff Power Integrations, Inc. ("Power Integrations") responds as follows to Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation's ("Fairchild") Request to Use Eleven Prior Art References During The Invalidity Phase Trial (D.I. 423).  In its present motion, Fairchild fails to address the rationale of the Court's original order limiting Fairchild's presentation of prior art, does not address how the facts and circumstances justify its second request for reconsideration of that ruling, and ignores its own prior arguments for limiting Power Integrations to proving infringement of only seven claims at the first trial.  Fairchild also makes no attempt to explain why it should be allowed to *substitute* new prior art references as well as to add even more prior art to the art it originally chose to rely upon for the purposes of trial. Indeed, Fairchild is completely silent on the fact that, by its proposed substitution and addition of seven new references, Fairchild in effect seeks to rely on twice as many prior art "references" as the seven allowed by the Court's orders.  And most troubling of all, Fairchild attempts to "justify" doubling the amount of prior art in the validity trial by now providing fifteen invalidity contentions that *have never before been identified* to Power Integrations in this case, either in contention interrogatory responses or in the reports of Fairchild's experts.  Fairchild's motion should be denied, and the Court should further preclude Fairchild from raising validity contentions (and relying on documents) at trial regarding the prior art that are not disclosed in their experts' reports.

## II.    STATEMENT OF FACTS

On February 3, 2005, the Court issued a scheduling order setting a contention discovery cutoff of June 30, 2005 and providing a schedule for the disclosure of expert testimony.  (D.I. 17.)  Fairchild provided invalidity contentions with respect to Power Integrations' patents-in-suit on March 7, 2005, and it updated those contentions on June 30, 2005.  The parties thereafter agreed to a slight modification of the schedule for expert disclosures, and in accordance with that agreed-upon schedule the parties exchanged

opening technical expert reports on December 1, 2005 and rebuttal technical expert reports on January 10, 2006. On February 2, 2006, the Court held a claim construction hearing. On February 23, 2006, one of Fairchild's technical experts provided a "supplementary" report that addressed the deposition testimony of one of Power Integrations' experts and other new documents and testimony Fairchild obtained after the agreed-upon cutoff for the exchange of expert disclosures.

During the course of expert discovery in this case, Fairchild suggested it would rely on upwards of eighty (80) prior art references at trial, and Fairchild's initial section 282 statement contained 80 pieces of alleged prior art.[1] (D.I. 342.) However, on September 20, 2006, the Court issued an order limiting Fairchild to seven references for trial. (D.I. 384 at 15.) Fairchild did not initially identify seven references, instead moving for reconsideration of the Court's order. (D.I. 389.) Power Integrations opposed Fairchild's motion for reconsideration, noting that Fairchild had not identified any real prejudice in any of its moving papers. (D.I. 395.) The Court denied Fairchild's motion for reconsideration and again ordered Fairchild to identify the seven references it intended to rely on for the infringement and validity trials in this case. Fairchild thereafter identified the following seven references:

1. Martin patent
2. Wang article
3. Colak patent
4. SMP240 datasheet
5. TEA2260
6. Sun Dissertation
7. Wakaumi article

(Ex. A.)[2] The parties then tried Power Integrations' infringement, willfulness, and damages claims, and the jury found all seven claims infringed, found Fairchild's infringement willful, and awarded Power Integrations $33,981,781 in damages.

---

[1] Fairchild recently filed a "supplemental" section 282 prior art notice identifying more than 100 pieces of allegedly invalidating art. *See* D.I. 422.

[2] All exhibit citations herein refer to the accompanying Declaration of William J. Marsden, Jr. ("Marsden Decl.") unless otherwise noted.

When the Court denied Fairchild's motion for reconsideration with respect to the number of pieces of prior art, it stated "[n]ow, if there's some piece of prior art, again, that's critical to your case, notice them, and then make an application for that." (Ex. B, D.I. 416 at 101:16-19.) Instead of doing so in a timely manner, though, Fairchild waited a month before providing Power Integrations with a list of eleven references for trial, seven of which were not on the original list of seven references Fairchild provided. (Ex. C.) With this new list, Fairchild also dropped three of the references it relied on in the first trial (Colak, the Sun dissertation, and the TEA2260), instead seeking to rely on the following:

1. U.S. Pat. No. 4,638,417 ("Martin").

2. Wang and Sanders, "Programmed Pulsewidth Modulated Waveforms For Electromagnetic Interference Mitigation In DC-DC Converters," IEEE Transactions on Power Electronics, Vol. 8, No. 4 (October 1993).

3. Habetler and Divan, "Acoustic Noise Reduction In Sinusoidal PWM Drives Using A Randomly Modulated Carrier," IEEE Transactions on Power Electronics, Vol. 6, No. 3, July 1991, p. 356.

4. Power Integrations' SMP211 device.

5. Power Integrations' SMP240/60 series device.

6. SGS-Thompson TEA2262 device.

7. Power Integrations' SMP3 device.

8. U.S. Pat. No. 4,823,173 ("Beasom").

9. Wakaumi, "A Highly Reliable 16 Output High Voltage NMOS/CMOS Logic IC With Shielded Source Structure," IEMD 83, pp. 416-19 (1983).

10. Ludikhuize, "High-Voltage DMOS and PMOS in Analog IC's," IEMD 82, pp. 81-84 (1982).

11. Wacyk, "A Power IC with CMOS Analog Control," (1986).

Fairchild thereafter filed the instant motion, identifying forty-seven (47) different exhibits that make up the "eleven references" Fairchild seeks to rely upon at trial. (D.I. 423.) Fairchild first produced several of these 47 exhibits allegedly relating to the

Beasom '173 patent[3] in the weeks after the conclusion of the infringement trial.[4] (Exs. D, E, F.)  Fairchild's motion also raises—for the first time—fifteen new invalidity contentions that are not set forth in Fairchild's expert reports.  Power Integrations takes exception to Fairchild's efforts to completely recast its validity case at this stage in the proceedings.

## III.    ARGUMENT

Allowing Fairchild's motion would effectively reverse the Court's original orders regarding the number of prior art references Fairchild could rely on at trial, and would prejudice Power Integrations by allowing Fairchild to now recast its invalidity case in the wake of the first trial.  Fairchild now proposes to put on invalidity theories at trial that vary dramatically from those identified and addressed during discovery.  Specifically, Fairchild now seeks to add seven references not originally identified in response to the Court's narrowing order, but it has not provided any justification for doing so (or for its delay in raising the issue).  Fairchild has not shown that it would be unduly prejudiced by the Court's limitation on the number of prior art references.  Nor has Fairchild shown why it could not have identified anything truly "critical" to its case over a month ago, in place of the three references Fairchild now seeks to drop from the seven it originally identified.

On the other hand, there is clear prejudice to Power Integrations in these eleventh-hour changes, in the form of surprise (particularly as to the new references) and unfairness (because Fairchild argued for and got an order restricting Power Integrations

---

[3]    These new productions of documents and things purportedly come from Intersil, the party that worked with Fairchild to provide selected discovery related to the Beasom patents earlier in the case, with whom Fairchild has a joint defense agreement, and from whom Fairchild purchased a license to sue Power Integrations on the Beasom patents.

[4]    As noted below, Power Integrations does not oppose the addition of the Beasom '173 patent itself to the validity trial, but Power Integrations maintains its objection to Fairchild's efforts to use at trial documents and things not produced in a timely manner during discovery, especially those not listed on Fairchild's trial exhibit list.  *See* Ex. G.

to 7 claims, but proposes that it be subject to no meaningful limitation at all). The prejudice to Power Integrations is compounded because Fairchild's motion identifies fifteen new invalidity contentions that were never addressed in Fairchild's expert reports and seeks to rely on documents and things identified and produced to Power Integrations after the conclusion of the first trial. Power Integrations has no idea what Fairchild or its experts will say in front of the jury to support these fifteen new contentions or about these new documents, and for this reason Power Integrations cross-moves to preclude Fairchild from presenting untimely contentions and untimely documents at trial. Allowing the new prior art, the new contentions, and the new documents will also substantially extend the length and complexity of what should be a short trial. The Court should therefore deny Fairchild's motion.

> **A.    Fairchild Has Not Shown Any Undue Prejudice and Should Be Limited to the References It Originally Identified to Power Integrations (plus the Beasom '173 Patent).**

Fairchild's motion seeks to add seven new prior art references and to drop three it relied on in the first trial, but it has not shown any undue prejudice that justifies changing the parameters of trial at this late hour. As the Court has already ruled and explained twice, the Court's limit on the scope of Fairchild's prior art for the purposes of the present trial presents no meaningful prejudice to Fairchild's substantive rights. Indeed, the lack of prejudice from sticking with the original, reasonable limitation is particularly clear because there is no timely expert testimony to support many of the allegedly "critical" arguments Fairchild now seeks to inject into the dispute.

With one important condition, Power Integrations is willing to allow an adjustment to add the Beasom '173 patent, because that reference is and has been at issue throughout the case, notwithstanding Fairchild's failure to include it on its initial list of 7.[5] The condition is this: Power Integrations' expert should be permitted to respond to

---

[5]    The Beasom patent was the only reference asserted by Fairchild to anticipate any claim of Power Integrations' '075 patent, and Power Integrations was surprised that it was not included in Fairchild's original list of seven. Because Power Integrations has

issues related to the '173 patent that Fairchild raised, for the first time, in Dr. Gwozdz's "Supplementary" expert report. Dr. Gwozdz submitted that report after Power Integrations' expert was deposed, and the report addresses documents and testimony produced after technical expert reports were initially served.[6] Power Integrations does, however, oppose Fairchild's untimely efforts to introduce still more new documents allegedly related to the Beasom patent, including several documents and things Fairchild has produced since the conclusion of the first trial. (*See* Exs. D-F, H.) These materials are untimely, and there is clear prejudice in permitting Fairchild to rely on materials not produced during discovery, not relied upon by the parties' experts,[7] and not addressed during depositions of key witnesses.

There can be no excuse for Fairchild's delay in producing these documents: Fairchild and Intersil claim to have a joint defense agreement in place, they have worked together to produce other documents and testimony in this case, and they sued Power Integrations together in the Eastern District of Texas on the Beasom '173 patent in question. Fairchild recently asserted that it does not have any control of the Intersil productions and that there is no prejudice in providing production "immediately before trial" (Ex. H), but that position flies in the face of Intersil and Fairchild's coordinated work on the Beasom patents vis-à-vis Power Integrations. Fairchild's position also

---

expected the Beasom reference to be at issue in the validity trial all along, it does not believe the addition of this reference results in the kind of prejudice and unnecessary duplication and confusion of the issues prompted by Fairchild's other new references and contentions.

[6] Power Integrations raised this issue in earlier briefing before the first trial, but the Court deferred ruling on it at that time. *See* D.I. 384 at 12-13 n.2.

[7] In addition to the new documents allegedly relating to the Beasom '173 patent, Fairchild's motion includes the cryptic statement that "Fairchild will also refer to U.S. Patent No. 4,283,236 ("Sirsi")" in its treatment of Beasom '173 patent. *See* D.I. 423 at 8. As with the other new documents and contentions raised in Fairchild's motion, Fairchild is on thin ice with respect to the Sirsi patent. Fairchild's process technology expert, Dr. Peter Gwozdz, provided two reports with invalidity contentions in this case, but neither report discussed the Sirsi '236 patent. *See* Exs. I-J. Dr. Gwozdz should therefore be precluded from addressing the Sirsi patent at trial. Power Integrations also disagrees with Fairchild's unsupported statement that the Sirsi patent is incorporated by reference in its entirety in the '173 specification, but Fairchild's expert's failure to address the issue renders the point moot.

ignores the fact that Fairchild's and Intersil's counsel moved to quash an earlier Power
Integrations subpoena to Intersil that sought to obtain these very sorts of documents.
(D.I. 262, 263.)  In briefing that issue, Intersil's lawyers (who are also counsel for
Fairchild in this case) stated that "Power Integrations has already received the
information requested in the Intersil subpoena" (D.I. 263 at 7) and that any further
discovery Power Integrations was seeking "has no legitimate use in the present suit."  (*Id.*
at 6.)  The Court thereafter quashed the subpoena to Intersil.[8]  (D.I. 335, 337.)

     Fairchild also suggests the Ludikhuize and Wacyk references are critical
references when it seeks to substitute these two for the Sun and Colak references
Fairchild relied on in addressing the '075 patent at the first trial, but the additional
Beasom reference and the Wakaumi reference disclosed on Fairchild's initial list of seven
provide sufficient opportunity for Fairchild to make an invalidity case with respect to
Power Integrations '075 ("PTOP") patent.  If Ludikhuize and Wacyk were truly critical,
Fairchild should have listed them instead of the Sun and Colak references in the first
place (neither of which has ever been relied on by Fairchild's experts for any invalidity
theory).  The reason Fairchild did not do so, of course, is that it wanted to use the Sun and
Colak references in the first trial to make its "DMOS" noninfringement argument – a
gambit that was doomed from the beginning because it contradicted the Court's own
claim construction.  Fairchild's strategic choice to identify some references rather than
others so it could make what it knew to be an improper argument during the first trial
cannot work prejudice on Fairchild at all, let alone the undue prejudice necessary to
support reconsideration of the Court's prior ruling.  In fact, Fairchild's motion itself
recognizes that that the Wacyk and Ludikhuize references are cumulative of the
Wakaumi reference, particularly with respect to Fairchild's assertion that the combination

---

[8]    The court also granted a Fairchild motion to preclude the use by Power Integrations
of materials produced after the discovery cutoff in this case, even though the parties
had fully investigated the materials and taken deposition testimony from the person
responsible for those documents. *See* D.I. 271.  Fairchild's present arguments with
respect to the new Beasom documents thus flatly contradict its prior position.

of high voltage and low voltage devices on a single chip was well known. (D.I. 423 at 9.)
The Court should reject Fairchild's efforts to change course at this stage absent some real
showing of undue prejudice, which Fairchild has not made.

Fairchild has equally failed to show any prejudice (beyond its strategy in selecting
the original list of references) to justify the addition of new references with respect to the
three circuit patents at issue in this case. In particular, the Habetler, TEA2262, SMP3,
and SMP211 references all could have been on Fairchild's original list, and given that
Fairchild now seeks to drop three of its original seven references, it cannot establish that
the mere number of references establishes any prejudice. The fact that Fairchild failed to
choose these references in the first place and now wants to substitute them for others
simply does not give rise to a claim of "prejudice."

Furthermore, Fairchild has completely failed to explain (or justify) its sudden
change of course with respect to the art it intends to assert at trial. In addition to the fact
(discussed *infra*) that three of the four Habetler contentions identified in Fairchild's
Motion (those addressing the '851 patent) are entirely new, Fairchild admits the Habetler
reference is duplicative of the Martin patent and Wang article already on Fairchild's
initial list. (D.I. 423 at 5 ("Habetler is to some extent duplicative of Martin and Wang
. . . .").) Coupled with the fact that Habetler on its face relates to acoustic noise, rather
than the EMI problem the '851 patent addresses, it strains credulity to say that the
reference is critically important to Fairchild's validity claims. Fairchild also gives no
explanation for its efforts to introduce a different SGS-Thompson product at trial (the
TEA2262) than the one it identified in its initial list (the earlier TEA2260), even though
these are different parts with different features and functionalities. Indeed, Fairchild's
silence on this substitution in its motion speaks volumes. Nor has Fairchild explained
why it now seeks to add the Power Integrations SMP211 and SMP3 devices as references
at the upcoming trial (or why they are not cumulative) after Fairchild's expert failed to
address the validity of the patents in view of these devices under Power Integrations'

8

proposed claim constructions, which the Court ultimately adopted.[9]  Fairchild's motion

fails to come close to establishing any undue prejudice from the Court's prior orders and

should be denied.

      **B.**     **There Is No Excuse for Fairchild's Delay in Bringing the Instant Motion, and the Clear Prejudice to Power Integrations Outweighs Any Alleged Need by Fairchild to Rely on the Art in Question.**

      If the art in question were truly critical to Fairchild's case, why did Fairchild wait

a full month before dropping three of its initial seven references and seeking to add

another seven to the case?  Fairchild does not say, because there is no excuse for the

delay.  Rather than supporting a claim that Fairchild is prejudiced by the Court's

limitation, Fairchild's delay has severely prejudiced Power Integrations.  During the full

month before Fairchild notified Power Integrations that it intended to change the list of

prior art references for use in the second trial, Power Integrations has been diligently

preparing for the validity trial based on the list of references provided on October 2.

Now, Fairchild wants to force Power Integrations to undo a significant portion of that

work and to prepare for a vastly different trial with seven new "references," forty-seven

exhibits, and fifteen entirely new invalidity contentions.  It is not fair to burden Power

Integrations on account of Fairchild's unreasonable delay and inability to (or strategic

decision not to) decide in a timely manner what its case would be about.

      Fairchild's delay also prejudices Power Integrations simply by virtue of the

timing of Fairchild's motion.  Fairchild brought its motion such that the parties will not

have finished their briefing much before Thanksgiving, and with a December 4 start date

for trial, Fairchild cannot expect to have the final word on its motion until the eve of trial.

Power Integrations has responded as quickly as possible and in advance of the deadline to

speed up the resolution of this issue, but it is inconceivable that Fairchild should be

---

[9]   Power Integrations is not suggesting that Fairchild cannot attempt to use the Power Integrations SMP211 or SMP3 devices for purposes of pressing its contentions concerning inequitable conduct before the Court, but Power Integrations should not have to prepare to address these additional references for the purposes of addressing validity in front of the jury.

rewarded for last-minute motions that, if allowed, would force Power Integrations to make wholesale revisions to its rebuttal presentation on the eve of trial.

Fairchild's delay further prejudices Power Integrations with respect to the length of the upcoming trial. If the case is limited to Fairchild's original choice of seven reference (plus Beasom '173) and what Fairchild's experts actually identified in their expert reports, the Court will need no more than three trial days to complete the validity trial – Power Integrations estimates that 8-9 hours per side would be sufficient. If Fairchild is permitted to effectively double the volume of prior art and present entirely new contentions, it will substantially increase the length of trial, requiring hours of additional expert testimony to address the new contentions that Power Integrations will hear for the first time at trial. Power Integrations (and presumably the Court) arranged its schedule on the assumption the validity trial would be about the subjects, and at the time, contemplated when the Court and the parties discussed it previously. Fairchild has not made a showing sufficient to upset those expectations.

C.    **Fairchild Should Not Be Permitted to Introduce New Invalidity Contentions on the Eve of Trial.**

In his expert report (Ex. K), Fairchild's technical expert on the circuit patents, Dr. Paul Horowitz, identified quite a number of invalidity theories and opinions, but he did not address the bulk of the contentions Fairchild now suggests it will raise at trial. Specifically, Fairchild's motion identifies the following fifteen new invalidity contentions that are not in Dr. Horowitz's report (the six other contentions raised in Fairchild's motion regarding the circuit patents are identified in some form in Dr. Horowitz's invalidity report):

**New Invalidity Contentions Regarding the '851 patent**

1.  Martin allegedly anticipates claim 1 of the '851 patent;

2.  Martin and the SMP211 allegedly render claim 1 of the '851 patent obvious;

3.  Martin and the SMP240/260 and the SMP211 and/or the TEA2262 allegedly render claim 4 of the '851 patent obvious;

4.  Wang allegedly anticipates claim 1 of the '851 patent;

5.  Wang and the SMP211 allegedly render claim 1 of the '851 patent obvious;

6.  Wang and the SMP240/260 and the SMP211 and/or the TEA2262 allegedly render claim 4 of the '851 patent obvious;

7.  Habetler allegedly anticipates claim 1 of the '851 patent;

8.  Habetler and the SMP211 allegedly render claim 1 of the '851 patent obvious;

9.  Habetler and the SMP240/260 and the SMP211 and/or the TEA2262 allegedly render claim 4 of the '851 patent obvious.

**New Invalidity Contentions Regarding the '366 patent**

10. The SMP240/260 allegedly anticipates claim 9 of the '366 patent;

11. TEA2262 allegedly anticipates claims 9 and 14 of the '366 patent;

12. The SMP3 allegedly renders claim 9 of the '366 patent obvious;

13. Martin and the SMP240/260 and the SMP211 and/or the TEA2262 allegedly render claim 14 of the '366 patent obvious;

14. Wang and the SMP240/260 and the SMP211 and/or the TEA2262 allegedly render claim 14 of the '366 patent obvious;

15. Habetler and the SMP240/260 and the SMP211 and/or the TEA2262 allegedly render claim 14 of the '366 patent obvious.

Dr. Horowitz did not identify any of these opinions in his expert report, let alone provide claim charts or any supporting analysis, and Power Integrations therefore has no way to know what Dr. Horowitz might say on these subjects. For example, for the new anticipation contentions, Power Integrations has no way of knowing what portions of the prior art Dr. Horowitz believes teach each element of any particular claim. With regard to the alleged obviousness contentions, there is no way to know which pieces of the multiple references are being relied upon to correspond to elements in the asserted claims and how or why Dr. Horowitz believes one of ordinary skill could or would be motivated to combine them.[10]

Power Integrations also has no way to know how to prepare to rebut any combinations of art for Fairchild's new obviousness contentions, which in several places include combinations of up to four references. The four-reference combinations are emblematic of the problem with Fairchild's new contentions. Given the clear prejudice to Power Integrations if Fairchild is permitted to present this new jumble of art at trial, Power Integrations asks that Fairchild specifically demonstrate to the Court the explicit analysis of the references (including any combination of references) in Dr. Horowitz's expert report, before Dr. Horowitz is permitted to provide any such testimony to the jury. Absent such a showing, which Power Integrations asserts cannot be made, there will be clear prejudice to Power Integrations in the upcoming trial.

1.    **Fairchild's Expert Did Not Analyze the Martin, Habetler or Wang References Fairchild Now Seeks to Use at Trial.**

In his report, Fairchild's circuit expert provided no claim chart for the '851 or '366 patents based on the Habetler, Wang, or Martin references Fairchild now seeks to rely on. Rather, Fairchild's expert provided detailed contentions and claim charts for

---

[10]    Fairchild clearly knew it needed to provide such detailed analysis, as it provided claim charts and at least some superficial level of analysis for numerous other anticipation and obviousness contentions in a timely manner. *See* Exs. K-M.

these references only in the context of the '876 digital frequency jitter[11] patent. The entirety of Dr. Horowitz's mention of Martin, Wang, and Habetler references in the portions of his report addressing the '851 and '366 patents is as follows:

> 99. Prior art references not cited in the '851 patent that include all the elements of Claim 1, (again assuming no means-plus-function claim elements) include the Szepesi patent and related National Semiconductor LM3001/3101 datasheets; the datasheet for the TK75001; the datasheet for the TEA1504 integrated circuits; the datasheet for the LM2588 and related deStasi & Szepesi article; the TEA2260/1 datasheet and related Application Note AN376; and the TEA2262 datasheet. Additionally, to one of skill in the art the title and context of the Ferrario patent would render any missing claim elements obvious.[37]

> _____
> [37]Similar reasoning applies, likewise, to the Habetler and Divan article; the Martin patent; and the Wang & Sanders article.

(Ex. K at ¶99 and fn. 37.) This passing mention of Habetler, Martin, and Wang in a footnote (itself attached to a cursory statement about the import of another reference mentioned only in passing, and even that solely in the context of a vague comment on obviousness) does not meet the Rule 26 standard of "a complete statement of all opinions to be expressed and the basis and reasons therefore." Fed. R. Civ. P. 26(a)(2)(B). It cannot, therefore, provide a basis upon which Fairchild or its expert can argue the '851 and '366 patents are invalid at trial, particularly given that, having been given no notice of these alleged contentions, Power Integrations did not depose Dr. Horowitz on them.[12]

### 2.     Fairchild's Expert Reports Do Not Support Fairchild's Contentions Regarding the SMP211.

Fairchild also seeks to add new invalidity contentions regarding Power Integrations' SMP211 device despite the absence of supporting analysis in Fairchild's

_____
[11]   It must be noted, however, that the contentions regarding these references vis-à-vis the '876 patent were limited to anticipation, and there is no discussion of obviousness in Dr. Horowitz's report even though Fairchild's present motion suggests it will try to argue that claim 1 of the '876 patent is obvious based on these references at trial.

[12]   This is true of all Fairchild's new contentions – because they are new, Power Integrations could not and did not depose Dr. Horowitz (or any relevant fact witnesses) about them.

expert's invalidity report. Fairchild seeks to present a theory that the SMP211 renders claim 1 of the '851 patent obvious in combination with either the Martin, Habetler, or Wang reference (D.I. 423 at 5), but these combinations are not present in Fairchild's expert's report. These references are not mentioned together in the same paragraph, let alone in the same sentence or in the vicinity of the word "obvious."

Fairchild's attempt to add these contentions regarding the SMP211 illustrates the problem with Fairchild's present course of action. Fairchild initially raised invalidity contentions with respect to the SMP211, but Fairchild's expert presented no argument that the asserted claims of the '851 patent were invalid in light of the SMP211 under the Court's constructions. Instead, Dr. Horowitz provided an invalidity analysis for the '851 and the SMP211 that addressed two potential constructions, both of which the Court rejected. (Ex. K at ¶ 69.) Indeed, Power Integrations understands the Court's claim construction memorandum (D.I. 231), which dealt with these exact contentions regarding the SMP211, to definitively reject the notion that the SMP211 was even relevant to validity, as the Court ruled that the claims must be construed to sustain their validity in view of the prior art disclosed on the face of the patent.[13] (*Id.* at 32-33.) Now, Fairchild seeks to resurrect this reference for trial after Power Integrations prepared for trial on the assumption that the SMP211 was no longer at issue with respect to the '851 or '366 patents. Fairchild's gamesmanship frustrates Power Integrations' efforts to prepare for trial, and the Court should prevent Fairchild from recasting its invalidity case at this point.

---

[13]    The Court will recall that the SMP211 is explicitly shown in the Figure 1 "Prior Art" of the '851 and '366 patents.

14

**3.    Because Fairchild and its Expert Evaluated the TEA2262 and SMP240/260 But Chose Not to Address Them Under the Constructions Power Integrations Proposed (and the Court Adopted), Fairchild Has No Basis To Change Its Contentions At This Point.**

Fairchild's effort to introduce new contentions regarding the TEA2262 and the SMP240/260 at this stage are pure sandbagging. Fairchild provided invalidity contentions with respect to the '366 patent and the TEA2262 device in interrogatory responses (*see* Exs. L-M), but Dr. Horowitz apparently did not agree with them and did not include any such analysis in his expert report. Instead, Dr. Horowitz addressed the TEA2260, the product Fairchild initially listed among the seven references it intended to rely on at trial. (*See* Ex. K at ¶¶ 61-70, 84, 89; Ex. A.) Fairchild now suggests that the TEA2262 reference is critical to its invalidity case as anticipatory art for the '366 patent, but Power Integrations relied on Dr. Horowitz's rejection of Fairchild's earlier positions in his report, and it would frustrate the scheduling order and unfairly prejudice Power Integrations if Dr. Horowitz is now permitted to address these previously undisclosed theories at trial.[14]

Fairchild's position with respect to the SMP240/260 is even more extreme. Originally, Dr. Horowitz had a claim chart providing a contention that the SMP240/260 "Anticipated or Rendered Obvious" claim 14 of the '366 patent, but he later expressly rejected the notion that that early argument still applied, physically crossing out the contention in a supplemental set of claim charts provided to counsel just before his deposition. (Ex. N at 3.) After knowingly and intentionally abandoning this contention, it is wholly unreasonable for Fairchild to argue it should be now able to present new testimony on this issue.

---

[14] Fairchild's new multi-reference combinations re the '851 patent (#s 3, 6, and 9 above) are also absent from Dr. Horowitz's report, and given the great potential for confusing the jury with such broad obviousness contentions, the burden should be on Fairchild to show where this testimony is supported in Dr. Horowitz's report before Fairchild is allowed to present the theories at trial.

The same problem is present with Fairchild's new suggestion that the SMP240/260 anticipates claim 9 of the '366 patent under the Court's constructions. Dr. Horowitz's report says the opposite, noting that the SMP240/260 anticipates claim 9 of the '366 patent "if the soft start element is not construed as means-plus function." (Ex. K at ¶ 66, 84. (emphasis added).) During his deposition, Dr. Horowitz admitted he had no opinion on the impact of the SMP240/260 on the '366 patent in light of the construction of "soft start circuit" the Court ultimately adopted. (Ex. O at 134:19-137:1 ("That has not been done here.").) The fact that Dr. Horowitz later tried to waffle by arguing "I haven't excluded this as applying" (*Id.* at 137:14) is beside the point, as Dr. Horowitz's testimony shows that he simply did not render an opinion that the SMP240/260 anticipates claim 9 of the '366 patent under the Court's construction of "soft start circuit" as a means-plus-function element.

Any argument that claim construction is to blame for the late addition of Fairchild's new contentions is not persuasive. The parties' experts addressed various alternative claim constructions in their timely reports, and to the extent that claim construction did change the landscape, the change does not now constitute "prejudice." The parties exchanged claim construction contentions in accordance with the Court's schedule, and Fairchild had plenty of time to fix the problems with its expert reports on the basis of the parties' constructions before expert depositions. Instead, Dr. Horowitz considered the TEA2262 and SMP240/260 references in his report but provided no opinion as to the import of the references under the constructions Power Integrations provided (which the Court ultimately adopted). Because Dr. Horowitz had the parties' contentions before the Court's ruling and before his deposition and chose not to address them (Ex. K at ¶ 61), there is no basis for Fairchild's efforts to inject new contentions into the trial at this point.

**D.     Fairchild's Disregard for the Rules Shows that, in this Case, There Is No Deterrent Value in the Court's Traditional Approach to Addressing the Scope of Expert Testimony After Trial.**

Fairchild has created an issue far broader and more troubling than simply adding to the list of prior art references. By filing a motion seeking to double the number of references and to assert more than twice as many new contentions as old, Fairchild has created a situation where it clearly hopes to have the Court throw up its hands and let everything in at trial. In doing so, Fairchild has put Power Integrations in an impossible situation, because the Court's standard practice of addressing the issue of the scope of expert reports after trial simply cannot work when the stated intention of a party is clearly and unequivocally that it will repeatedly go well beyond the reports.[15]

Moreover, the typical remedy for going beyond the scope presumes that the prospect of a second trial, including bearing the costs involved, is an adequate deterrent. But such a practice cannot deter a party that does not mind delay and the costs associated with a new trial (like Fairchild) because it believes it will be able to reap far more benefit from continued uncertainty in the marketplace. In this case in particular, given that infringement and willfulness have been decided and only invalidity remains to be tried, Fairchild has clearly weighed the cost of paying the expenses for only a relatively short invalidity trial, against the potential gains from continuing and indeed expanding its infringement in the meantime. At present, Fairchild is engaged in "business as usual" with the infringing products, aggressively touting the very products that have already been adjudged to infringe, in addition to parts with new numbers but which appear to be identical in terms of the features of the patents-in-suit. (*See* Exs. P & Q ("[Fairchild] will continue offering its full line of pulse-width modulation (PWM) products.").) Fairchild's strategy thus will allow it to reap tens of millions of dollars in profit during the inevitable

---

[15]     Indeed, Fairchild has already gone beyond the scope of the expert reports in the first trial when it elicited testimony from Dr. Horowitz to the effect that the Martin reference anticipated the '851 patent even though, as explained above, no such opinion addressing the claims under the Court's constructions can be found in his expert report.

17

delay caused by briefing over the question of a mistrial and a subsequent new trial, with only the <u>potential</u> threat of a few million dollars in legal costs as a result of these new theories. At least on these facts, that sort of math will inevitably lead to the result Fairchild proposes here, so, with respect, Power Integrations does not believe the Court's standard practice for remedying matters after the fact is appropriate in this situation. The only way to prevent Fairchild from being rewarded for this sort gamesmanship is to preclude the new contentions ahead of time.

## IV.    CONCLUSION

The Court should deny Fairchild's motion and preclude Fairchild from presenting testimony regarding new invalidity contentions and new documents for the first time at trial.

Dated: November 13, 2006

FISH & RICHARDSON P.C.

By: _____
    William J. Marsden, Jr. (#2247)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE 19899-1114
    Telephone: (302) 652-5070

    Frank E. Scherkenbach
    225 Franklin Street
    Boston, MA 02110-2804
    Telephone: (617) 542-5070

    Howard G. Pollack
    Michael R. Headley
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Telephone: (650) 839-5070


    Attorneys for Plaintiff
    POWER INTEGRATIONS, INC.

50383519.doc

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, I served by hand and electronically

filed with the Clerk of Court **POWER INTEGRATIONS' COMBINED**

**OPPOSITION TO DEFENDANTS' MOTION TO ADD PRIOR ART**

**REFERENCES TO THE INVALIDITY TRIAL AND CROSS-MOTION TO**

**PRECLUDE FAIRCHILD'S UNTIMELY CONTENTIONS AND DOCUMENTS**

**AT TRIAL** using CM/ECF which will send notification of such filing(s) to the

following:

**BY HAND**                                     Attorneys for Defendant-
Steven J. Balick, Esq.                           Counterclaimant
John G. Day, Esquire                             FAIRCHILD SEMICONDUCTOR
Ashby & Geddes                                   INTERNATIONAL, INC. and
222 Delaware Avenue, 17th Floor                  FAIRCHILD SEMICONDUCTOR
P. O. Box 1150                                   CORPORATION
Wilmington, DE 19899


I hereby certify that on November 13, 2006, I have mailed by email and Federal

Express, the document(s) to the following non-registered participants:

G. Hopkins Guy, III                              Attorneys for Defendants
Bas de Blank                                     FAIRCHILD SEMICONDUCTOR
Orrick, Herrington & Sutcliffe, LLP              INTERNATIONAL, INC. and
1000 Marsh Road                                  FAIRCHILD SEMICONDUCTOR
Menlo Park, CA 94025                             CORPORATION


William J. Marsden, Jr.

50383519.doc