# Exhibit B

*Power Integrations, Inc. v.*
*Fairchild Semiconductor International, Inc.*

*Trial Volume 1*
*October 2, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE 19801*
*(302) 658-6697*

Original File 100206~1.TXT, 296 Pages
Min-U-Script® File ID: 2756634309

**Word Index included with this Min-U-Script®**

Page 97

[1] And they're doing it through the back door of an
[2] expert.
[3]     So in terms of an evidentiary
[4] expert here, we have a rule for putting that in,
[5] which is the designation. They did not
[6] designate it that way.
[7]     THE COURT: Well, if they wanted
[8] to use it affirmatively, have it as evidence in
[9] the case, it would have to be designated. If
[10] they want to use it under 407 to cross-examine
[11] somebody for impeachment contradiction, all the
[12] things the commentators talk about under 407,
[13] then it's not proof, but it's a material that
[14] can be utilized to examine a witness.
[15]     But it's not evidence, because
[16] it's impeachment and impeachment material
[17] doesn't have to be noticed, because it doesn't
[18] become evidence. Only evidence is noticed.
[19]     But — am I missing something?
[20]     MR. SCHERKENBACH: You're not.
[21] Except I think one of us has got the rule number
[22] wrong. 407 is subsequent remedial measures.
[23] It's a different number.
[24]     I'll withdraw the slides. So it

Page 98

[1] doesn't come up affirmatively in his direct
[2] testimony, so we'll just take those off. And if
[3] it's relevant to cross-examining somebody, we'll
[4] use it that way.
[5]     THE COURT: All right.
[6]     MR. GUY: Thank you, Your Honor.
[7]     THE COURT: Here we go. We'll
[8] pass it back, please.
[9]     MR. GUY: We also have an
[10] objection to three press releases.
[11]     THE COURT: Press releases? Press
[12] releases.
[13]     MR. GUY: Their own press release,
[14] as you might imagine.
[15]     THE COURT: Shoo.
[16]     MR. DAY: Keep an open mind until
[17] you see them.
[18]     THE COURT: I always have an open
[19] mind, but some things just start closing
[20] earlier.
[21]     MR. GUY: PX-373, 374.
[22]     MR. SCHERKENBACH: These —
[23]     MR. GUY: 375.
[24]     THE COURT: Sometimes newspaper

Page 99

[1] articles, because they're public, but your own
[2] press releases?
[3]     MR. SCHERKENBACH: It was just —
[4] announcing the availability of two of our
[5] products are what two of these are.
[6]     MR. GUY: Can I come around, Your
[7] Honor? It may help.
[8]     Thank you.
[9]     So, Your Honor, these press
[10] releases do more than simply announce the
[11] product. They claim that they are the first
[12] something, and the greatest something. They're
[13] self-serving documents.
[14]     There's no exception under the
[15] hearsay rule. And one of them is announcement
[16] that they won an award.
[17]     So, and of course, they embellish
[18] that. So it's hearsay without exception, Your
[19] Honor.
[20]     MR. SCHERKENBACH: Well, there's
[21] certainly business records. It's not like we
[22] created the press release during the trial.
[23] These are dated.
[24]     Two of them are going to be used

Page 100

[1] for the purpose of describing that the patent,
[2] the products at issue, the TOPSwitch FX and the
[3] TOPSwitch GX were simply introduced.
[4]     How about this? I think I'll just
[5] take it out under 403, because in substance the
[6] company's actual results could differ materially
[7] from those implied by a forward-look statement
[8] due to risks and uncertainty associated with —
[9] I mean
[10]     MR. SCHERKENBACH: I get your
[11] point, Your Honor. We'll withdraw them.
[12]     THE COURT: Okay. Next.
[13]     MR. GUY: That's it for the
[14] objections, Your Honor, today.
[15]     THE COURT: Okay.
[16]     MR. GUY: I'll take the binder
[17] back.
[18]     Thank you.
[19]     THE COURT: Okay. So now is
[20] somebody set up to show that video?
[21]     MR. SCHERKENBACH: We have —
[22]     MR. GUY: We have one more matter,
[23] Your Honor, and that is the issue with respect
[24] to the seven pieces of prior art. And we have a

Page 101

[1] motion for reconsideration on that.
[2]     THE COURT: Right.
[3]     MR. GUY: They've responded. What
[4] we're looking for here, Your Honor, is in this
[5] case to limit the prior art to seven pieces of
[6] new prior art that were not in the file history
[7] somewhere. And all we're asking is that that be
[8] allowed in. I mean, our prior art, we haven't
[9] had an opportunity —
[10]    THE COURT: Here's what you're
[11] going to have to do, because Power Integrations'
[12] response, which I have right here and had a
[13] chance to study, it's — I don't know if it has
[14] a DI number. It's September 28th. It makes a
[15] lot of sense in the context of this case.
[16]    Now, if there's some piece of
[17] prior art, again, that's critical to your case,
[18] notice them, and then make an application for
[19] that. But to file and have the whole decision
[20] or holding reconsidered, I would deny it.
[21]    But if you can, and I think that's
[22] basically what Power Integrations' letter says.
[23] There's a lot of, you know, reference to,
[24] vaguely, in my view, and ambiguously to how

Page 102

[1] you'll be prejudiced, but you don't put anything
[2] out there that can be clearly evaluated and
[3] commented on by Power Integrations. And then
[4] we'll see.
[5]     But the motion, as it stands now,
[6] would be denied. But, again, I'm not
[7] foreclosing you from making the kind of showing
[8] that — I don't know who wrote that letter,
[9] whether it was Mr. Marsden or Mr. Scherkenbach,
[10] but in this September 28th letter, if you can,
[11] you know, put something on it, and I'll give you
[12] some time to do that.
[13]    But you've got to —
[14]    MR. GUY: Just so we're clear. I
[15] understand we certainly have seven references
[16] with respect to prior art in this case. And if
[17] we need to go above that, then we will make the
[18] application; is that correct, Your Honor?
[19]    THE COURT: In other words, I
[20] limited you, just like I limited them on
[21] representative claims —
[22]    MR. GUY: Yes.
[23]    THE COURT: — because I think you
[24] had something like 80 out there.

Page 103

[1]     MR. GUY: That was in our 282
[2] statements. That's correct.
[3]     THE COURT: Right. So what I did
[4] was I said, Listen, we've got to get this case
[5] pared down to make it intelligible to the jury.
[6] So take your best shot.
[7]     I did the same thing to them on
[8] claim construction. Now, what I'm saying is —
[9] and they got — didn't I give you some relief
[10] when you squealed?
[11]    MR. SCHERKENBACH: You did.
[12]    THE COURT: Yeah.
[13]    MR. SCHERKENBACH: But I did not
[14] squeal. You originally said for —
[15]    THE COURT: I just used that —
[16]    MR. SCHERKENBACH: I know, —
[17]    THE COURT: I just used that.
[18]    MR. SCHERKENBACH: — but it's in
[19] the record now. And then you gave us seven.
[20] Started with four, so we ended up with seven.
[21]    THE COURT: Seven. So, but you
[22] made a showing, and they got to comment on it.
[23]    MR. SCHERKENBACH: Right.
[24]    THE COURT: So I'm saying the same

Page 104

[1] thing to you. I limited you to seven.
[2]     I understand what you're arguing
[3] for. But if there's some piece of prior art
[4] you make a point about, you know, obviousness
[5] can't be established on one piece of prior art.
[6]     They kind of answer that in a
[7] footnote, I think. Obviousness, if you can show
[8] me that there's a piece of prior art or two that
[9] are critical to your case, then I'll consider
[10] that. But I'll listen to what they have to say
[11] about it.
[12]    But on what you've presented, I'm
[13] denying it.
[14]    MR. GUY: All right, Your Honor.
[15]    THE COURT: The motion for
[16] reconsideration.
[17]    MR. GUY: With respect to the
[18] motion, is it that we can use seven in this case
[19] and a different seven in the second case? We
[20] want to make sure.
[21]    I mean, that would seem certainly
[22] to be fair. We have different issues in both
[23] cases.
[24]    THE COURT: Are you going to have

Page 105

[1] to —
[2]    MR. GUY: We can make the
[3] application later.
[4]    THE COURT: You're going to have
[5] to for the later case, which is what one of the
[6] points in their letter is, show us why you need
[7] something different. Again, you're not
[8] foreclosed, but you've got —
[9]    MR. GUY: I understand.
[10]   THE COURT: You've got to make
[11] your case.
[12]   MR. GUY: All right.
[13]   MR. SCHERKENBACH: Can we just
[14] have some clarity on when we're going to hear
[15] about the seven? I'd like to know.
[16]   I mean, trial is starting today.
[17]   THE COURT: That's a good point.
[18]   MR. GUY: That's a good point. We
[19] will give them the seven within an hour.
[20]   THE COURT: That's a good answer.
[21]   MR. SCHERKENBACH: I can live with
[22] that.
[23]   THE COURT: This trial is going to
[24] go well. I'm sensing that you're coming

Page 106

[1] together.
[2]    It's kind of like you're able to
[3] talk with each other, and it's going to be good.
[4] After this case is over, if you want to make
[5] that application, you understand the record says
[6] you can do that.
[7]    MR. GUY: Yes.
[8]    THE COURT: Okay. All right.
[9] Anything else.
[10]   MR. SCHERKENBACH: You asked
[11] whether we have the video. We do.
[12]   We do we have it ready.
[13]   THE COURT: We've going to break
[14] for lunch at 12:30. I'll give you five or ten
[15] minutes.
[16]   Let's say we'll come back in five
[17] minutes. We'll put that tape on, then we'll
[18] have the jury go to lunch. We'll come back at
[19] 1:15 and have your opening statement.
[20]   Okay?
[21]   MR. SCHERKENBACH: Thank you.
[22]   THE COURT: All right. Thank you.
[23] We'll be in recess.
[24]   THE CLERK: All rise.

Page 107

[1]    (Whereupon a brief recess was
[2] taken)
[3]    THE CLERK: All rise.
[4]    THE COURT: May I see you at side
[5] bar for one minute, please?
[6]    It doesn't have to be on the
[7] record. It is going to be really quick.
[8]    (Whereupon a conference was held
[9] at side-bar off the stenographic record:)
[10]   THE COURT: All right. The jury
[11] is on its way in.
[12]   MR. SCHERKENBACH: Okay.
[13]   (Jury entering the courtroom at
[14] 12:10 p.m.)
[15]   THE COURT: You may be seated.
[16] All right. Members of the jury,
[17] before we have lunch, we have this video to show
[18] you, as I told you, about the patent system. So
[19] we'll start that up now.
[20]   (Beginning of video:)
[21] As you probably know by now, this
[22] is a patent case. So you may be wondering how
[23] can I sit in judgment on a case like this when
[24] I'm not entirely sure what a patent is. We hope

Page 108

[1] to answer that concern with this brief video,
[2] which will give you some of the background
[3] needed to do your job.
[4]    This case will involve some
[5] special issues that the judge and lawyers will
[6] explain to you, but all patent cases involve
[7] some basics that you will learn about. This
[8] video will discuss what patents are, why we have
[9] them, how people get them, and why there are
[10] disputes that arise that require us to call in a
[11] jury like you.
[12]   We'll also show you what patents
[13] look like. The United States Constitution gives
[14] Congress the power to pass laws relating to
[15] patents. It allows Congress to promote the
[16] progress of science and useful arts by securing,
[17] for limited times, to authors and inventors the
[18] exclusive right to their respective writings and
[19] discoveries.
[20]   A patent then is an official grant
[21] by the United States Government that gives the
[22] owner certain rights to an invention. Those
[23] include the right to keep others from making,
[24] using, selling, or offering for sale the