IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1371-JJF |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC** |
| FAIRCHILD SEMICONDUCTOR | ) | **VERSION** |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## FAIRCHILD'S OPPOSITION TO POWER INTEGRATIONS' CROSS-MOTION RE FAIRCHILD'S PRIOR ART DOCUMENTS AND CONTENTIONS AT TRIAL

## I.  INTRODUCTION

Power Integrations' ("PI") cross-motion to preclude key evidence is entirely without merit, and seeks relief which would deny Fairchild due process and a fair trial. Such a result would significantly prejudice, and possibly eliminate, Fairchild's invalidity case on PI's '851 patent, and would seriously undermine Fairchild's ability to prove that each of the other asserted patents is invalid. Given the clear and convincing evidentiary standard that Fairchild faces, such an exclusion of key prior art in a validity trial would be tantamount to the entry of summary judgment in PI's favor on many of Fairchild's invalidity defenses. PI in essence asks the Court to tie Fairchild's hands behind its back and severely limit its ability to defend itself. PI's overly aggressive request invites the Court to abuse its discretion, and we urge the Court to decline that invitation.

Fairchild now has been found to infringe each of the seven claims asserted against it by PI, and its need to effectively mount a validity challenge to all seven of those claims is neither theoretical nor speculative. Fairchild therefore should be permitted to fully defend itself by presenting admissible evidence to a jury that each of those claims is invalid. To so severely restrict Fairchild's ability to present key evidence during this invalidity trial would be unfair and highly prejudicial, and would not serve the interests of justice. Fairchild requests that it be

permitted to present eleven prior art references – prior art references which have been clearly identified, and repeatedly analyzed and argued throughout this case. This proposed use of eleven previously identified references to invalidate seven claims is neither excessive nor unduly burdensome, and Fairchild respectfully asks that it be permitted.

Fairchild was surprised to receive PI's briefing which asserts that critical prior art and Fairchild's arguments are somehow "new" or unexpected. This simply is not true. PI's assertions are extremely troubling and indicative of its last-minute, desperate attempt to preclude admissible prior art evidence that it knows invalidates its patents. PI has been fully aware of every reference and argument relied upon by Fairchild at this point. PI's assertions to the contrary must be rejected and Fairchild permitted to rely on the subset of eleven prior art references selected from the body of references previously identified in this case.

## II.    ARGUMENT

### A.    Fairchild Should Not Be Limited To The List Of Seven References Identified For Purposes Of The Infringement Trial.

As PI knows, the list of seven references provided by Fairchild prior to the infringement and damages trial was directed towards issues addressed during that phase of trial. The "Sun," "Colak" and "Wakaumi" references were included to help understand the "DMOS" arguments related to willful infringement, and the state of the art concerning "DMOS." PI recognizes this in its brief. [DI 425 at p. 7] Similarly, the "Martin," "Wang" and "SMP240" and "TEA2262"[1] references were included to help understand issues in the circuit case, and for the most part, issues pertaining to Fairchild's reliance on opinion counsel.[2] The invalidity of the patents in suit was not at issue in that phase of the trial, and Fairchild never conceded or suggested that the prior art identified for purposes of the infringement trial would be the same as the prior art that would be critical to invalidating the seven asserted claims at the subsequent invalidity trial. It

---

[1] Due to a typographical error, the list provided to PI indicated "TEA2260," but it is obvious from the opinion letters, admitted trial exhibits, and trial testimony that the "TEA2262" was used at the first trial, not the "TEA2260." [See Ramsey Decl., Ex. 1]. PI did not object to use of the TEA2262 at that time, and should not be allowed to object now.

[2] In fact, PI asserted that if Fairchild did not include all of the references relied upon by its opinion counsel, PI would argue Fairchild did not believe its own opinions: if Fairchild "chooses to rely on references for the invalidity trial that are different than those its opinion counsel relied on, Power Integrations is entitled to point out to the first jury that Fairchild has taken an inconsistent position and chosen to disregard the references used by its own opinion counsel, and the jury is entitled to give the inconsistency the weight it believes appropriate." [DI 395]

makes no sense to require Fairchild to include in the invalidity trial references that were pertinent to issues only in the infringement trial. Indeed, Fairchild made clear prior to its identification of those references that it would require more than seven pieces of prior art to establish the invalidity of each of the seven asserted claims, and that Fairchild would address which references it would use prior to the invalidity trial. [Ramsey Decl., Ex. 2 at 104:17-105:11] PI, however, by limiting Fairchild to the prior art selected for the infringement trial would limit Fairchild to less than one piece of prior art per asserted claim, as PI admits that several of the seven references used in the prior trial are irrelevant to the issues of invalidity in the second trial.

    As the Court previously made clear, the point of limiting the list of prior art references to seven is to keep the issues simple for trial and for the jury:

> THE COURT: Right. So what I did was I said, Listen, we've got to get this case pared down to make it intelligible to the jury. So take your best shot. I did the same thing to them on claim construction. Now, what I'm saying is – and they got – didn't I give you some relief when you squealed?

[Ramsey Decl., Ex. 2 at 103:3-10] The fact that seven references were presented to the first jury on a distinct set of issues relating to infringement and willfulness is irrelevant to the selection of references for the second jury on the distinct invalidity issues. For precisely this reason, Fairchild made it clear that it would adjust the list for the second trial and the Court agreed that Fairchild could seek to do so, as it is timely doing now:

> MR. GUY: With respect to the motion, is it that we can use seven in this case and a different seven in the second case? We want to make sure. I mean, that would seem certainly to be fair. We have different issues in both cases.
>
> THE COURT: Are you going to have to --
>
> MR. GUY: We can make the application later.
>
> THE COURT: You're going to have to for the later case, which is what one of the points in their letter is, show us why you need something different. Again, you're not foreclosed, but you've got -
>
> MR. GUY: I understand.
>
> THE COURT: You've got to make your case

[Ramsey Decl., Ex. 2 at 104:17-105:11] PI even recognizes that different lists of prior art are necessary for different trial phases in footnote 9 of its brief, where it acknowledges that a third

set of prior art will be involved in the inequitable conduct portion of the case. [DI 425 at n. 9] If the Court were to limit the prior art to the seven references that were pertinent to the infringement trial, Fairchild would be extremely prejudiced.[3]

PI's complaint that Fairchild waited "a month" to submit its revised list of prior art for the second phase of trial is—to put it bluntly—petty. One week of the "month" referred to by PI was consumed by the prior trial. Thereafter, Fairchild had to determine which references were most critical to the case, in light of events at the first trial. Fairchild did so, and promptly submitted its revised list and associated motion—30 days before trial—on the same day the Patent Act required Fairchild submit its comprehensive list of prior art pursuant to 35 U.S.C. §282. The Patent Act disclosure date (30 days before trial) is a highly relevant benchmark demonstrating that the timing of Fairchild's disclosure is inherently reasonable.[4] Further, there is no surprise or prejudice to PI—it has been aware of this prior art for many months, as it was addressed repeatedly in Fairchild's expert reports and discovery responses.

### B.    Use Of Eleven Prior Art References To Invalidate Seven Claims From Four Different Patents Is Entirely Reasonable.

Contrary to PI's assertions, Fairchild is seeking to use only eleven prior art references. This number is entirely reasonable, particularly in light of the fact that seven claims from four different patents are asserted. Indeed, it comes down to less than two references per asserted claim. As demonstrated in Fairchild's motion, Fairchild has carefully limited this list to the most critical references to ensure that the jury understands the invalidity of the asserted patents. Fairchild's selections are reasonable, fair, and timely.

PI disingenuously attempts to argue that the fact that there are 47 pieces of *evidence* describing the prior art devices means that there are 47 separate "references." This is absurd because Fairchild is relying on on-sale prior art *devices* and a critical §102(g) prior art invention as references. Such on-sale devices are not fully described in any one document, nor are the prior inventor's notes, laboratory notebooks, testing documents, and research papers. For example, different pertinent details regarding a device may be captured in its published

---

[3] Fairchild maintains its general objection to any limitation on the body of prior art upon which it may rely.

datasheet, its schematics, and its related application notes and other marketing materials. It may take each of these documents to fully describe the prior art device to meet the clear and convincing standard, but it is still a single prior art device. PI's gamesmanship in this regard must be rejected.

PI itself sought and obtained leave to assert several additional claims shortly before the first trial, with little showing of prejudice at all. [*See* DI 336 (PI's two-page motion to increase number of asserted claims merely argued, with no detailed support, that PI was attempting to pare the case down and that it would be prejudiced)]. Further, as little as two months before trial, PI sought to bring in a completely new accused Fairchild product (the "FSD210HD") – which was never addressed in any expert report – and was permitted to do so. By contrast, Fairchild is simply seeking to use eleven prior art references (amounting to less than two references per asserted claim) that were disclosed and described in expert reports nearly a year ago and were subject to full discovery. It should be permitted to do so.

### C.    Power Integrations Has Been On Notice Of Every Asserted Reference And Contention Throughout This Case—Its Attempt To Limit Fairchild's Invalidity Theories Is A Baseless, Unfair Litigation Tactic

PI attempts to limit Fairchild's case to its June 30, 2005 interrogatory response. This is completely unfair and inappropriate. Indeed, PI never limited itself to the June 30, 2005 deadline, continuing to supplement its case through interrogatory responses and otherwise as the case proceeded. For example, in PI's own interrogatory responses served on June 30, 2005, despite being required to set forth all accused products and an element-by-element assessment of infringement for each product, PI failed to do so, instead providing only assessments of "representative" products. Yet, it was permitted to put on an infringement case as to all of these products at the first trial in this matter. Similarly, in its June 30, 2005 responses, PI identified only certain accused products, but was later permitted to amend and change the accused products virtually at will, including the addition of Fairchild's FSD210HD as an accused product in the weeks before trial. It would, therefore, be unfair to limit Fairchild to the substance of interrogatory responses served the same day, when PI has not been so limited.

---

[4] In its brief, PI implies that the supplemental section 282 prior art notice filed on November 3, 2006 is somehow deficient or untimely. [DI 425 at n. 1] 35 U.S.C. §282 requires that the notice be filed 30 days before trial. Thus, Fairchild's filing of the notice on that date was entirely proper.

More to the point, PI has been fully apprised of each of the eleven prior art references relied upon by Fairchild, as well as the substance of Fairchild's arguments, throughout the development of this case.  These references are in Fairchild's expert reports, interrogatories, and inequitable conduct allegations.  The references have been addressed during depositions, and a number of them were addressed during the first trial.  There are no surprises here whatsoever.

     1.     **Fairchild's Prior Art And Invalidity Contentions Regarding The "Circuit Patents" Are Not New.**

**REDACTED**

Patent No. 4,638,417 ("Martin"), ¶ 44; (2) Wang and Sander's article ("Wang"), ¶ 48; (3) Habetler and Divan article ("Habetler"), ¶ 49; (4) SMP240/260, ¶ 38; (5) SMP3, ¶ 39; (6) SMP211, ¶ 53 and (7) TEA2262, ¶¶ 41, 54.[5]  PI thus has been on notice of each of these invalidating references, and their applicability to the claimed frequency variation and soft start circuits, since at least November 30, 2005.

**Martin, Wang, and Habetler**

PI's suggestion that the Martin, Habetler and Wang references are "new" is factually wrong.  In its Motion, PI stated that     **REDACTED**

This is simply and objectively false.

**REDACTED**

---

[5] The relevance of these references is underscored by the fact that Fairchild has filed reexamination applications with the patent office for each of the "circuit" patents, asserting all of the prior art references (and more) that Fairchild is seeking to use in this case.

**REDACTED**

PI also ignores the detailed discussion of the frequency variation circuits disclosed in Martin, Habetler and Wang in the context of the '876 patent. In contrast to the '876 patent, which claims specific circuit structure (a counter, a digital-analog converter and an oscillator), the '851 and '366 patents simply claim a "frequency variation circuit that provides a frequency variation signal" without requiring any specific structure. The specific discussion of the frequency variation circuits of Martin, Habetler and Wang in the context of the '876 patent is thus equally relevant to the '851 and '366 patents, which more broadly claim "a frequency variation circuit." There is nothing new about Fairchild's contention that Martin, Habetler and Wang disclose the frequency variation circuits of PI's patents, and it is disingenuous for PI to claim otherwise.

### TEA2260/2262

PI's assertions regarding the TEA2260 and TEA2262 are equally disingenuous. To begin, PI attempts to take advantage of a typographical error in Fairchild's identification of art for use in the infringement trial to argue that Fairchild has recently "substituted" the TEA2260 for the TEA2262. As PI surely is aware, the exhibit entered and used at trial, DX035, was the datasheet for the **TEA2262** – not the TEA2260. PI did not object to Fairchild's use of the TEA2262 during the infringement trial, and, thus, can hardly claim to be surprised or prejudiced by the use of the TEA2262 during the invalidity trial.[6]

---

[6] As PI knows, the only relevant difference between the TEA2260 and TEA2262 is that the TEA2262 uses the same signal for soft start and frequency variation (as required by claim 4 of the '851 Patent), whereas the TEA2260 shows use of different signal paths for soft start and frequency variation (which invalidates claims 1 of the '851 Patent and claims 9 and 14 of the '366 Patent). In order to reduce the prior art on which it will rely at trial, Fairchild selected

Moreover, Fairchild's contentions with respect to the TEA2262 are not new. In its June 30, 2005 interrogatory responses, Fairchild provided detailed claim charts explaining that the TEA2262 invalidated the asserted claims of the '366 and '851 Patents. [Ramsey Decl., Ex. 4 (6/30/05 Interrogatory Responses, Ex. B)]. Likewise,

**REDACTED** [Ramsey Decl., Ex. 3 (Horowitz Invalidity Report, Exs. D, E)]. Indeed, PI specifically deposed Dr. Horowitz about ***both*** the TEA2260 and the TEA2262, .

**REDACTED**

[Ramsey Decl., Ex. 5 at 79:8-15.] In response to PI's questions,

**REDACTED** [Ramsey Decl., Ex. 5 at 78:10-81:20.]

### SMP240/260

Fairchild's contentions regarding the SMP240/260 also are not new. Fairchild has alleged that PI's failure to provide this prior art to the Patent Office constitutes inequitable conduct. Indeed, PI's knowledge of and failure to disclose the SMP240 and 260 devices was particularly described in Fairchild's inequitable conduct allegations, contained in its First Amended Answer and Counterclaims. [Ramsey Decl., Ex. 26.] Thus, there can be no possible doubt that PI has long known that Fairchild believes that the SMP240/260 invalidate the claims of the '366 and '851 Patents.

Indeed, PI does not dispute that

**REDACTED** [Ramsey Decl., Ex. 3 (Horowitz Invalidity Report, ¶ 66).] PI, however, ignores that

**REDACTED**

[Ramsey Decl., Ex. 3] Further, during his deposition, .

---

the TEA2262, as it fully encompassed the relevant functionality of the TEA2260 and could be identically applied to the asserted claims. If PI and the Court prefers, Fairchild could rely on the TEA2260 for the '366 patent and the TEA2262 for the '851 patent, so long as the Court permits Fairchild to rely upon an additional piece of art.

**REDACTED**

[Ramsey Decl., Ex. 5 at 134:19-137:15].

In this case,

**REDACTED**

[Ramsey Decl., Exs. 6 (Rebuttal Expert Report of Paul Horowitz on Non-Infringement, ¶¶ 43, 49 and 69); 3 (Horowitz Invalidity Report ¶66).]


**REDACTED**

Finally, any suggestion by Power Integrations that Fairchild should have included additional details about the SMP240/260 in its expert report must be rejected in light of the fact that PI had improperly withheld schematics, datasheets, and other details concerning these devices from Fairchild until November 21, 2005 – almost five months after all such documents were to be produced. Indeed, the Court granted Fairchild's motion to compel additional deposition time with PI's witnesses because of PI's failure to produce this evidence. These depositions were not completed until March, 2006 – months **_after_** the expert reports were submitted. It is the height of hypocrisy for PI to rely upon its failure to meet its discovery obligations to argue that Fairchild should be precluded from proving that the SMP240/260 invalidates the asserted claims.

## SMP211

PI's claim that Fairchild has asserted new contentions regarding the SMP211 device is equally meritless. To begin, the SMP211 is a PI device, cited by PI in its prior art Figure 1 of the '366 and '851 patents. Indeed, PI's knowledge of and failure to disclose critical details of the SMP211 is detailed in Fairchild's First Amended Answer and Counterclaims. [Ramsey Decl., Ex. 26.] PI, thus, has long been aware of the content and applicability of the SMP211.

Moreover,

**REDACTED**

[Ramsey Decl., Ex. 3 (Horowitz Invalidity Report, ¶¶ 53, 69, 97, 101, etc.)]

**REDACTED**

[Ramsey Decl., Ex. 3 (Horowitz Invalidity Report, ¶¶102-103).]  Finally,

**REDACTED**

**SMP3**

PI's claim that Fairchild has asserted new contentions regarding the SMP3 device are meritless as well.  The SMP3 is a PI device, which PI failed to disclose to the Patent Office.  Indeed, Fairchild set forth detailed contentions regarding PI's knowledge of and failure to disclose the SMP3 as a basis for its inequitable conduct claim, in the First Amended Answer and Counterclaims.  [Ramsey Decl., Ex. 26.]  PI has been fully on notice of Fairchild's contentions regarding the SMP3.

Moreover,

**REDACTED**

[Ramsey Decl., Ex. 3 (Horowitz Report, Ex. D)]  *[Id.* at ¶¶65, 82-84].

**2.    Fairchild's Prior Art And Invalidity Contentions Regarding The '075 Patent Are Not New**

Fairchild relies upon four prior art references to invalidate the '075 Patent—(1) the Beasom invention, (2) the Wakaumi article, (3) the Ludikhuize article, and (4) the Wacyk article.  PI has been on notice of all of this prior art throughout the duration of the case.  These references

10

have been addressed in detail in Fairchild's expert reports and interrogatory responses.[7] Each is critical to Fairchild's invalidity case. Given the high burden of proof of clear and convincing evidence, preclusion of any one of these references would extremely prejudice Fairchild and amount to denial of due process. PI apparently does not take issue with the Wakaumi reference, thus the three remaining references are addressed herein.

### The Beasom Patented Invention

The Beasom invention has been one of the primary invalidating references to the '075 patent since the beginning of this case. The Beasom invention is prior art under § 102(e) and (g). PI admits that it "has expected the Beasom reference to be at issue in the validity trial all along . . ." [DI 425 at n. 5, *see also* n. 4.] Fairchild's evidence of the Beasom invention is comprised of several documents and things, each of which has been timely produced in this case:

*Beasom U.S. Patent No. 4,823,173*.[8] The Beasom patent has been central to Fairchild's invalidity theories. The Beasom '173 patent represents prior art under § 102(e), meaning that its filing date is some 15 months before the filing date of the '075 patent *and* that it issued as a U.S. Patent. However, PI can attempt to show Mr. Eklund invented before the filing date of the Beasom patent. As PI recognizes, the patent "is and has been at issue throughout the case." [DI 425 at p. 5] The patent has been addressed in detail

### REDACTED

, Mr. Beasom.[9]

But in an outrageous display of gamesmanship, PI now says that it will oppose reliance on the Beasom patent unless it is permitted to offer new expert opinions at trial, allegedly in response to the February 23, 2006 Gwozdz Supplemental expert report. [DI 425 at pp. 5-6] It is somewhat unclear precisely what PI is asking for. If it is asking that its expert, Mr. Shields, be permitted to testify regarding inherency, that request should be denied as Fairchild's motion in limine precluding such testimony has already been granted. [DI 384 at p. 12] If PI is seeking to

---

[7] *See e.g.* Ramsey Decl., Exs. 7 (12/1/05 Expert Report of Dr. Peter S. Gwozdz ("Gwozdz Report")), 8 (2/23/06 Supplemental Expert Report of Dr. Peter S. Gwozdz ("Gwozdz Supplemental Report")), 4 (6/30/05 Supp. Response to PI's First Set of Interrogatories).

[8] The Beasom patent is listed as Defendants' trial exhibit DX541. *See* Ramsey Decl., Ex. 9.

[9] *See e.g.* Ramsey Decl., Exs. 7 (Gwozdz Report, ¶¶35-51), 8 (Gwozdz Supplemental Report, ¶¶26-28), 4 (Supp. Response to PI's First Set of Interrogatories, at Ex. B), 21 at 26:16-21, 18 at 16:25-17:7.

submit new expert opinions about documents improperly withheld by PI itself, that request too should be denied as the issue has already been resolved by the Court twice. Indeed, months ago the Court denied PI's motion to exclude the Gwozdz Supplemental Report, observing that it only addressed documents PI failed to timely produce, and contained opinions consistent with the original report or properly elaborating based on the deposition of PI's expert. [DI 327 at p. 3] If PI felt the need to respond to the Gwozdz Supplemental Report, it has had since last February to put forth its own supplemental report giving Fairchild notice. It has failed to do so and instead attempts to sandbag Fairchild at trial. Further, PI recently asked the Court to allow new testimony by its expert regarding the documents, but the Court declined to do so. [DI 384 at n. 2] PI's attempted end-run around these prior orders must be rejected and Fairchild's reliance on the Beasom patent must not be "conditioned" upon PI's wrongful demand.

   *Beasom §102(g) Prior Art.*  PI will attempt to prove that Mr. Eklund conceived and reduced to practice the '075 invention before the filing date of the Beasom '173 patent. This attempt creates a contest of inventorship under §102(g) as to who was the first to conceive and reduce to practice the invention.

**REDACTED**

Preclusion

of any of the evidence supporting Mr. Beasom's prior invention would prejudice Fairchild's ability to meet the high standard of proof necessary to show prior conception and reduction to practice. The evidence and exhibits supporting Mr. Beasom's prior invention are each addressed separately below.

**REDACTED**

   These documents were admitted as Exhibits 6, 7, 8, 9, and 10 in his deposition over ten months ago and are now Trial Exhibits DX129, DX128, DX130, DX131, and DX132. [Ramsey Decl., Exs. 12, 11, 13, 14, and 15.] These critical materials are essential corroborating evidence of Mr. Beasom's dates of conception and reduction to practice of the Beasom patent invention. Contrary to the characterizations in PI's motion, these are not different prior art references, but rather are the factual evidentiary material establishing Mr. Beasom's

---

[10] These Beasom materials are listed as Defendants' trial exhibits DX66, DX128-132, DX542-543. *See* Ramsey Decl., Exs. 10-17.

12

date of invention some five to six months before PI's invention date.  Nor are they untimely produced.  Like the Beasom '173 patent itself,

**REDACTED**

Mr. Beasom was likewise questioned in great detail in his deposition ten months ago about these materials.  [*See generally* Ramsey Decl., Ex. 18].  Accordingly, Fairchild is entitled to rely on these Beasom materials to establish the prior invention date of the Beasom prior art.  To preclude this essential evidence would effectively grant judgment to PI and would be an abuse of discretion in precluding otherwise admissible evidence.

**REDACTED**

Like the category of materials above, this is corroborating evidence of the dates of conception and reduction to practice of the Beasom patent invention.  In particular, Mr. Beasom

**REDACTED**

During his deposition on January 26, 2006, Mr. Beasom

[*See e.g.* Ramsey Decl., Ex. 18 at 43:23-48:2]

Fairchild's counsel stated several times that he expected these test wafers and devices to be produced. [*Id.* 142:5-8, 191:21-22]

**REDACTED**

. PI was on full notice that Mr. Beasom and Intersil

to explore that with Mr. Beasom during his deposition.  Mr. Beasom and Intersil have now produced to Fairchild and to PI

**REDACTED**

Critically,

**REDACTED**

[Ramsey Decl., Exs. 14 and 15.]  Because PI has had a full and fair opportunity to

---

[11] *See* Ramsey Decl., Ex. 8 (Gwozdz Supplemental Report, ¶¶16-25), Ramsey Decl., Ex. 4 at Ex. B
[12] These Beasom materials are listed as Defendants' trial exhibit DX544  **REDACTED**  DX545
Chip Notes, Run C  **REDACTED**  DX 546          DX547
DX548 ·                                          *See* Ramsey Decl., Exs. 20, 22-25.

explore these materials with Mr. Beasom, it is simply not prejudicial in any way to PI. Indeed, as soon as Mr. Beasom and Intersil provided the materials to Fairchild, they were also provided to PI. Accordingly, Fairchild should be entitled to rely on them at trial. Contrary to PI's assertion, the fact that these materials were not specifically enumerated in an expert report is entirely irrelevant. Indeed, as already discussed, this is not separate prior art, but factual evidence directed at establishing the dates of conception and reduction to practice of the Beasom patent—*not* expert opinions. For example, the Court has observed: "questions concerning conception, reduction to practice and corroboration are factual in nature, and therefore, reserved for the jury." [DI 384 at p. 14] In any case, the true inventor, Mr. Beasom, can testify regarding them.

Fairchild has no control over how third parties Beasom and Intersil have responded to Fairchild's discovery.[13] To this day, Intersil refuses to produce the original test wafers and packaged devices to Fairchild, opting instead to produce them for inspection by both parties. Fairchild should not be prejudiced by the decisions of independent third-parties regarding how and when they have responded to Fairchild's discovery requests. These materials are very important to establish Mr. Beasom's reduction to practice. Because PI has taken substantial discovery on them, and because Fairchild will be severely prejudiced if not allowed to rely upon them, Fairchild should be permitted to do so.

### The Ludikhuize And Wacyk Articles

The Court should permit Fairchild to assert the Ludikhuize reference.

**REDACTED**

[Ramsey Decl., Ex. 7

(Gwozdz Report, ¶¶52-56)] Moreover, the inventor of the '075 Patent knew of, but failed to disclose to the Patent Office, the Ludikhuize article (and the Wakaumi article as well). Fairchild

---

[13]

**REDACTED**

PI misrepresents that the Beasom '173 Patent is asserted in the Texas action. [DI 425 at 6] It is not. Finally, the fact that PI's subpoena to Intersil was quashed is irrelevant as the Court found that it was duplicative of the discovery taken from Beasom. [DI 335]

detailed this fact in its inequitable conduct contentions in the First Amended Answer and Counterclaims. [Ramsey Decl., Ex. 26] PI has been fully on notice of this reference.

Similarly, the Court should permit Fairchild to assert the Wacyk reference. Like Beasom and Ludikhuize, it is not a reference that received merely passing attention,

**REDACTED**

(asserted by PI). In particular, Wacyk shows the combination of high-voltage transistors and low-voltage CMOS logic on the same chip. [Ramsey Decl., Ex. 8 (Gwozdz Supplemental Report, ¶¶34-36)] In its brief, PI argues because Fairchild relied on two other references to support its non-infringement arguments in the first trial, that Fairchild is now purportedly precluded from relying on Ludikhuize and Wacyk—key invalidating art in its expert reports. [DI 425 at p. 7] This is just a disingenuous and mean-spirited tactic, making a mockery of the Court's attempt to make this case comprehensible for the jury. To be clear, with respect to Ludikhuize and Wacyk, there is no surprise to PI, the references are critical to Fairchild's case, and they are carefully chosen as necessary for the jury to understand Fairchild's arguments.

## III.    CONCLUSION

For all of the foregoing reasons, Fairchild respectfully requests that it be permitted to rely upon each of these eleven prior art references, which are critical to Fairchild's invalidity case.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403).
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated: November 17, 2006
175317.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November, 2006, the attached **REDACTED PUBLIC VERSION OF FAIRCHILD'S OPPOSITION TO POWER INTEGRATIONS' CROSS-MOTION RE FAIRCHILD'S PRIOR ART DOCUMENTS AND CONTENTIONS AT TRIAL** was served upon the below-named counsel of record at the address and in the manner indicated:

William J. Marsden, Jr., Esquire                         HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Frank E. Scherkenbach, Esquire                     VIA FEDERAL EXPRESS
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack, Esquire                            VIA FEDERAL EXPRESS
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063


/s/ Lauren E. Maguire
_____
Lauren E. Maguire