IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## FAIRCHILD'S MEMORANDUM
## RE PROPOSED TRIAL DATE

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403).
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & STUCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: May 31, 2007
181152.1

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND ................................................................................ 2

    A.    Approximately Two Weeks Before Trial, Power Integrations Produced
        266 Pages Of Additional Eklund Notes ................................................................ 2

    B.    The New Production Contains Different Versions Of Power Integrations'
        Invention Documents—Trial Exhibits PX29 And PX30—Which Are
        Inconsistent With Power Integrations' Contentions ............................................. 3

        1.    Exhibits PX29 And PX30 Are Central To The Dispute Regarding
                Invention Of The '075 Patent ..................................................................... 3

        2.    The New Production Reveals a Fourth Page of PX29 Was Not
                Created At the Same Time as The First Three .......................................... 4

        3.    The New Production Reveals The Second Page of PX30 Lacked a
                Page Number ............................................................................................. 5

        4.    Power Integrations Used A Different, Third Version Of The
                Eklund Notes Corresponding To PX29 And PX30 During Dr.
                Eklund's Prior Deposition And The Previous Trial ................................... 9

    C.    The New Production Reveals That Dr. Eklund Was Not Working On The
        '075 Invention At The Time He Claims ........................................................... 10

    D.    The New Production Reveals That Dr. Eklund Was Aware Of, But Failed
        To Disclose, A Substantial Amount Of Highly Material Prior Art ..................... 10

    E.    Dr. Eklund Stated Under Oath On October 15, 2005 That He Had
        Produced All Materials Relevant To His Work On His Invention ..................... 11

II.   FAIRCHILD WILL NEED AT LEAST EIGHT WEEKS TO CONDUCT
    DISCOVERY REGARDING THE NEWLY DISCLOSED DOCUMENTS AND
    TO PREPARE FOR TRIAL ........................................................................... 12

    A.    The Parties Agree That August 13, 2007 Would Be An Acceptable Date
        For Trial Given Scheduling Limitations Of The Witnesses And Counsel .......... 12

    B.    Fairchild Will Need Until At Least August 13, 2007 To Conduct Its
        Investigation And Motion Practice Concerning The Newly Produced
        Documents ....................................................................................................... 12

        1.    Fairchild Must Conduct The Deposition Of Dr. Eklund ....................... 13

        2.    Fairchild Must Analyze Dr. Eklund's Notes And The Newly
                Disclosed Prior Art .................................................................................. 13

        3.    Fairchild May Need To Revise Its Expert Reports And Conduct
                Expert Depositions .................................................................................. 14

        4.    Fairchild Will Likely Need To File A Motion In Limine To
                Exclude PX29 And PX30 And, Depending On The Result Of Its

**TABLE OF CONTENTS**
**(continued)**

Page

Investigation, May Seek Sanctions ........................................................ 14

5.  Fairchild May Renew It's Motion For Summary Judgment
Regarding The '075 Patent ...................................................... 15

III.  CONCLUSION ............................................................................................ 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aptix Corp.* v. *Quickturn Design Sys., Inc.*,
269 F.3d 1369 (Fed. Cir. 2001)..................................................................................14

*Hahn* v. *Wong*,
892 F.2d 892 (Fed. Cir. 1989)....................................................................................14

*Ralston Purina Co.* v. *Far-Mar., Inc.*,
586 F. Supp. 1176 (D. Kan. 1984)..............................................................................15

*Stern* v. *Trs. of Columbia Univ.*,
434 F.3d 1375 (Fed. Cir. 2006)..................................................................................15

Pursuant to the Court's May 22, 2007 Order, Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") respectfully submit the following memorandum regarding the proposed trial date. [*See* DI 483]

Only two weeks before the scheduled trial, Power Integrations produced 225 pages of new notes of Dr. Klas Eklund, the sole inventor of asserted U.S. Patent No. 4,872,075 ("the '075 patent"). The late produced documents:

**REDACTED**

A central issue in the upcoming invalidity trial will involve an invention contest as between Power Integrations' Klas Eklund and the prior art work of James Beasom. Who was first to conceive of the invention will be the primary question as to the '075 patent. Power Integrations relies upon six loose-leaf pages of Dr. Eklund's notes to establish an alleged date of conception. Originally offered in the first trial as PX 37, the six pages of notes were separated after the first trial when Fairchild objected to their presentation as a single document; Power Integrations admits that these documents were created by Dr. Eklund during at least two different time periods and subsequently separated them as currently identified PX29 (the first four pages of PX37) and PX30 (the last two pages of PX37). *See* Exs. G, H and I. In doing so after the first

**REDACTED**

the two pages of PX30.

Critically, Power Integrations' recent 225-page production raises serious questions about exhibits PX29 and PX30—the only two exhibits that Power Integrations relies upon in an attempt to prove Dr. Eklund's conception of Claim 1 of the '075 patent. Incredibly, the new production contains two new versions of these key exhibits, which are different from PX29 and PX30 and different from PX37 used by Power Integrations at the first trial. The newly produced

versions call into question the actual dates of each page of PX29 and PX30 and whether Dr.

Eklund was "in actual possession of the invention" prior to Mr. Beasom. These newly produced

documents are central to the case and should have been produced long ago. Fairchild should

have been able to depose Dr. Eklund and Power Integrations' expert on these documents and

should have been able to cross-examine Dr. Eklund on them at the previous trial, but was denied

those opportunities.

**REDACTED**

Because of the importance of the late-produced documents, Fairchild will need time to

conduct necessary investigation of these materials. The trial date should be set with sufficient

time for Fairchild to conduct these activities. A deposition of Dr. Eklund will be required.

Fairchild will need time to review the documents and have forensic analysis conducted by its

forensic expert. Fairchild also will need time to submit an additional expert reports by its

technical and forensic experts, and expert depositions will likely be required thereafter. Fairchild

will also need to conduct a further deposition of Power Integrations' technical expert, in light of

the recently produced materials. Fairchild also may need time to file motions *in limine* regarding

Dr. Eklund's invention notes, and possibly a motion for sanctions. Finally, Fairchild may seek to

renew its motion for summary judgment of invalidity, in light of the newly produced material.

Fairchild respectfully suggests that the trial schedule should account for the foregoing

issues and the scheduling limitations of witnesses and counsel. The parties agree that there is no

date prior to August 13, 2007 that the witnesses and counsel are available for trial. The parties

have agreed that August 13, or September 11 or September 17, 2007 would be an appropriate

start date for trial. Accordingly, Fairchild requests that the Court schedule the trial to begin on

August 13, 2007 or thereafter as the Court's calendar permits.

## I.    FACTUAL BACKGROUND

### A.    Approximately Two Weeks Before Trial, Power Integrations Produced 266 Pages Of Additional Eklund Notes.

On May 16, 2007—less than three weeks before the scheduled June 4 trial—Power Integrations produced 266 pages of additional "invention" notes of Klas Eklund.  Power Integrations' counsel represented in the cover letter that '                **REDACTED**

This was not the case.  In fact, 225 pages were either entirely new or were different versions of previously produced documents.  These newly produced documents reveal:  (1) serious inconsistencies in Dr. Eklund's previously produced invention notes PX37, PX29 and PX30, (2) serious questions about whether Dr. Eklund was working on the '075 invention at the time he claims, and (3) that Dr. Eklund was in possession of over twelve material prior art references that he did not disclose to the Patent Office or disclose to Fairchild during this litigation.

**B.**    **The New Production Contains Different Versions Of Power Integrations' Invention Documents—Trial Exhibits PX29 And PX30—Which Are Inconsistent With Power Integrations' Contentions.**

One of the most serious issues arising from the new production of documents is Power Integrations' production of new, different versions of its trial exhibits PX37, PX29 and PX30.  PX29 and PX30 are the sole documents relied upon by Power Integrations to prove the alleged conception of Claim 1 of the '075 patent by Klas Eklund.  The newly produced versions of the documents appear to contradict Power Integrations' assertions regarding the dates and content of PX29 and PX30, and raise questions whether those exhibits were intentionally altered.

**1.**    **Exhibits PX29 And PX30 Are Central To The Dispute Regarding Invention Of The '075 Patent.**

**REDACTED**

3

**REDACTED**

**2.**    **The New Production Reveals That a Fourth Page of PX29 Was Not Created At the Same Time as The First Three.**

Originally, PX29 was presented as *four*-pages of Dr. Eklund's notes created at the same

**REDACTED**                    ' Power Integrations takes the position that this

date applies to all four pages.                    **REDACTED**

[Ex. H]  However, the newly produced material contains a different version

of PX29, comprised of only *three* pages.  [Ex. B]  The third page of the new version is generally

the same as the third page of PX29, except that it states at the bottom:                    .e

ˉEx. B at KE001449]

**REDACTED**

4

**REDACTED**

***Ex. B (Newly Produced Version of Pg. 3)***

**REDACTED**

At a minimum, Fairchild should be afforded the right to question Dr. Eklund regarding these inconsistencies. Assuming that the first three pages common to both documents can be trusted, the newly produced version suggests that Dr. Eklund continued to add substance to the document *after* it was first dated **REDACTED** contrary to Dr. Eklund's claim that the entire PX29 document was created on that date. Indeed, the newly produced version suggests that at some point he apparently deleted the **REDACTED** comment from page three of PX29 in order to create the appearance that the substance of page 4 had been there on **REDACTED** More generally, the apparent willingness of Dr. Eklund to continue adding later created material to earlier dated documents without noting the date on which the information was added calls into question the reliability of *all* of his notes, including PX30 discussed below.

### 3. The New Production Reveals The Second Page of PX30 Lacked a Page Number.

PX30 is an allegedly two page document created, according to Power Integrations, four months after PX29, **REDACTED** Power Integrations has consistently attempted to date this second page **REDACTED** PX29 is the earliest document offered by Power Integrations on the issue of

**REDACTED**

---

[2] It should be noted that Power Integrations has never produced the original version of PX 29, but only photocopies.

**REDACTED**

The second page of PX30 allegedly provides the missing elements not found in PX29.  It is therefore critical to Power Integrations' claim that the second **REDACTED** be afforded the same .

**REDACTED**    For this reason, Power Integrations attempts to *combine* PX29 with PX30 in order to prove Eklund's alleged conception **REDACTED** According to Power Integrations, handwritten page numbers, 1 and 2, in superscript next to the **REDACTED**

However, in the recent document production, Fairchild discovered a *different single page* version of the second page of PX30 which bears no handwritten page number, but is otherwise the same as the previously produced second page of PX30.  This new version of the second page of PX30 calls into question Power Integrations' claim the two pages of PX30 were originally linked together at the time of invention.  The newly produced version also suggests that PX30 may have been altered to include page numbers that create the appearance that both pages were prepared on the same date.

a. **Power Integrations' Theory Regarding PX30**

**REDACTED**

REDACTED

REDACTED

b.      **The Newly Produced Version Of PX30 Contradicts Power Integrations' Theory.**

REDACTED

4.    **Power Integrations Used A Different, Third Version Of The Eklund Notes Corresponding To PX29 And PX30 During Dr. Eklund's Prior Deposition And The Previous Trial.**

**REDACTED**

Power Integrations' production of the single version of the notes marked as PX37 and its use of that version at the October 2006 trial denied Fairchild an opportunity to impeach Dr. Eklund on the existence of multiple versions of the same inventor notes. Dr. Eklund's "story"

9

could have been considerably undermined by the existence of multiple versions of the same notes. Power Integrations' use of PX37 at the first trial, and its withholding of PX29, PX30 and the more recently produced versions of those same notes until after the first trial was over, denied Fairchild the opportunity to challenge the authenticity of Dr. Eklund's notes during the infringement trial, and will irreparably prejudice Fairchild unless Fairchild is afforded a full opportunity to get to the bottom of the discrepancies between the versions of Dr. Eklund's notes that have now been produced.

C. **The New Production Reveals That Dr. Eklund Was Not Working On The '075 Invention At The Time He Claims.**

**REDACTED**

D. **The New Production Reveals That Dr. Eklund Was Aware Of, But Failed To Disclose, A Substantial Amount Of Highly Material Prior Art.**

Dr. Eklund had a duty to disclose all prior art relevant to his "High Voltage MOS

Transistor" invention of the '075 Patent. Fairchild has already adduced evidence that Dr. Eklund withheld prior art from the Patent Office, constituting inequitable conduct. The newly produced notes of Dr. Eklund reveal that Dr. Eklund was in possession of additional material prior art, which he withheld from the Patent Office.

**REDACTED**

E.     **Dr. Eklund Stated Under Oath On October 15, 2005 That He Had Produced All Materials Relevant To His Work On His Invention.**

Fairchild knew that the testimony and documents of Klas Eklund would be crucial in the case. Accordingly, from the outset, Fairchild requested Dr. Eklund's deposition and the production of all of his engineering notes. Power Integrations would only make Dr. Eklund available for deposition in Sweden, and in advance of the deposition produced only the six pages of his notes subsequently marked as trial exhibit PX37.

However, when Fairchild's counsel arrived at the deposition in Sweden on October 15, 2005, Dr. Eklund produced over 1400 pages of additional notes the morning of the deposition.

Fairchild's counsel was forced to depose Dr. Eklund on these notes without adequate time to thoroughly review the documents or to prepare his examination concerning them.

**REDACTED**

Yet, none of these 1400 pages contained any alternate version of PX29 or PX30, or any of the other 225 pages of newly produced documents.

**REDACTED**

## II.     FAIRCHILD WILL NEED AT LEAST EIGHT WEEKS TO CONDUCT DISCOVERY REGARDING THE NEWLY DISCLOSED DOCUMENTS AND TO PREPARE FOR TRIAL.

### A.     The Parties Agree That August 13, 2007 Would Be An Acceptable Date For Trial Given Scheduling Limitations Of The Witnesses And Counsel.

Fairchild's witnesses and counsel had planned months in advance for the scheduled June 4 trial, and had ensured that they were free to appear at that time.  However, Power Integrations' late production and the consequent necessity of changing the trial date has created a serious problem with regard to the availability of witnesses and counsel.  None of the witness reside within the District of Delaware, all have scheduling conflicts over the next two months and some will be out of the country at that time.  Similarly, counsel has scheduling conflicts over the next two months.

Power Integrations has proposed August 13, 2007 as the date for trial—thus apparently its witnesses and counsel are all available at that time and not at any earlier date.  Fairchild has conferred with its own witnesses and determined that they are all available during the week of

August 13, 2007, as proposed by Power Integrations.[4]  Given the scheduling conflicts of Fairchild's witnesses and counsel between now and August 13, Fairchild has not found a time before August when all of its witnesses and counsel are available for trial.

**B.    Fairchild Will Need Until At Least August 13, 2007 To Conduct Its Investigation And Motion Practice Concerning The Newly Produced Documents.**

**1.    Fairchild Must Conduct The Deposition Of Dr. Eklund.**

Fairchild will need to conduct at least one full day of deposition of Dr. Eklund.  That deposition is currently scheduled for June 7, 2007.  Given the 225 new pages of documents, the new issues raised by the documents, and the fact that many of Dr. Eklund's previously produced 1400 pages of documents will have to be revisited, it is necessary to prepare for and conduct an additional deposition of Mr. Shields, Power Integration's technical expert, as well.

**2.    Fairchild Must Analyze Dr. Eklund's Notes And The Newly Disclosed Prior Art.**

Fairchild is reviewing in detail the invention activity set forth in the newly produced notes.  The documents and issues described above are only examples that Fairchild has identified to date.  There are hundreds of pages to review, analyze and understand.  Fairchild must also now reassess its understanding of the previously produced notes, in light of this recently produced material.  Fairchild must engage its forensic consultant to analyze the newly produced questionable documents (particularly the new versions of PX29 and PX30) and the now questionable earlier produced versions of these documents.  Further, Fairchild will need to analyze the newly identified prior art references disclosed in the newly produced notes. Fairchild, and its forensic and technical experts, must be afforded a full and fair opportunity to conduct these analyses.  This material was due long ago, and Dr. Eklund represented under oath that he had produced everything.  Fairchild should not be denied the time it needs to understand

---

[4] Fairchild will work diligently to complete any required investigation, expert reports, discovery or briefing by August 13.  However, Fairchild respectfully reserves the right to seek additional time if the circumstances necessitate.

these critical materials, and form a position on them, due to Power Integrations' failure to comply with its discovery obligations.

### 3.   Fairchild May Need To Revise Its Expert Reports And Conduct Expert Depositions.

It appears likely that, based on the new documents and the deposition of Dr. Eklund, Fairchild will have to revise its technical expert report.  Further, given the serious questions concerning some of these documents, it appears likely that Fairchild may need to submit an additional expert report by its forensic expert as well.  Fairchild will be in a better position to assess this after taking Dr. Eklund's deposition and potential testing of the documents.

Certainly, Mr. Shields, Power Integrations' technical expert who offered an opinion regarding when Dr. Eklund first conceived, will in all likelihood need to be deposed as well.  Given the serious problems with the documents that Mr. Shields relies on for his opinions regarding "conception," it would be extremely unfair to allow him to offer those opinions at trial without first allowing Fairchild the opportunity to explore them in a deposition.  The trial schedule should provide sufficient time to finish all of this necessary expert discovery.

### 4.   Fairchild Will Likely Need To File A Motion *In Limine* To Exclude PX29 And PX30 And, Depending On The Result Of Its Investigation, May Seek Sanctions.

The serious problems with the Eklund documents underscore the necessity of the Federal Circuit's rule that an inventor's uncorroborated testimony or documents cannot provide a basis for earlier conception or reduction to practice.  As the Federal Circuit has bluntly put it:  "The purpose of the rule requiring corroboration is to prevent fraud."  *Hahn v. Wong*, 892 F.2d 892 F.2d 1028, 1033 (Fed. Cir. 1989).  Indeed, falsification of invention notes in a patent case is potentially case dispositive.  *See Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001) (affirming dismissal of patent case based on unclean hands due to falsification of notes).

The Federal Circuit has observed that "[t]he inventor, however, must provide

independent corroborating evidence in addition to his own statements and documents." *Hahn*, 892 F.2d at 1032.  Further:

> Since corroboration must be independent of the inventor, the inventor's notebooks unsigned by witnesses do not suffice since they are simply documents which he produced. . . and are merely self-serving declarations by the inventors. . . .

*Ralston Purina Co. v. Far-Mar., Inc.*, 586 F. Supp. 1176 (D. Kan. 1984) *aff'd in part & rev'd*, 772 F.2d 1570 (Fed. Cir. 1985).  "Regardless of the contents of the notebooks, unwitnessed laboratory notebooks on their own are insufficient to support his claim [of conception, and therefore] of co-inventorship." *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006).  Depending on the results of its investigation, Fairchild may have to file additional motions *in limine* to exclude PX29 and PX30.  Depending on the results of its investigation, Fairchild may also seek to file a motion to dismiss the case based on unclean hands or a related theory.  Fairchild will be in a better position to assess this necessity after the deposition of Dr. Eklund and further analysis by its experts.

### 5. <u>Fairchild May Renew It's Motion For Summary Judgment Regarding The '075 Patent.</u>

**REDACTED**

**REDACTED**

          Sufficient time should be allotted in the schedule for this briefing, if Fairchild determines that such a motion is appropriate after its investigation.

## III.    <u>CONCLUSION</u>

          For the foregoing reasons, Fairchild respectfully requests that the Court enter an order scheduling the invalidity trial in this matter for August 13, 2007 or thereafter as the Court's calendar will permit.

        ASHBY & GEDDES

        */s/ Lauren E. Maguire*

        Steven J. Balick (I.D. #2114)
        John G. Day (I.D. #2403).
        Lauren E. Maguire (I.D. #4261)
        500 Delaware Avenue, 8th Floor
        P.O. Box 1150
        Wilmington, DE 19899
        302-654-1888
        sbalick@ashby-geddes.com
        jday@ashby-geddes.com
        lmaguire@ashby-geddes.com

        *Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Bas de Blank
ORRICK, HERRINGTON & STUCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: May 31, 2007

# EXHIBITS A – M

# REDACTED IN THEIR ENTIRETY

# EXHIBIT N

**10/2/2006 Trial Transcript**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., ) Trial Volume I

                                 )

           Plaintiff,     )

                                 ) C.A. No. 04-1371-JJF

v.                          )

                                 )

FAIRCHILD SEMICONDUCTOR   )

INTERNATIONAL, INC., and  )

FAIRCHILD SEMICONDUCTOR   )

CORPORATION,          )

                               )

        Defendants.   )

               Monday, October 2, 2006

               9:20 a.m.

               Courtroom 4B

               844 King Street

               Wilmington, Delaware

BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.

              United States District Court Judge

APPEARANCES:

        FISH & RICHARDSON

        BY:  WILLIAM J. MARSDEN, JR., ESQ.

        BY:  FRANK E. SCHERKENBACH, ESQ.

        BY:  HOWARD G. POLLACK, ESQ.

        BY:  MICHAEL R. HEADLEY, ESQ.

                Counsel for the Plaintiff

10/2/2006 Trial Transcript

1      here?  Is that your handwriting on some of the

2      notes PX-37?

3              A.  Yes, it is.

4              Q.  We are going to look at some of

5      the drawings but, for example, on the first page

6      is that a drawing that you made?

7              A.  Yes, I did.

8              Q.  And do these notes and drawings

9      show some of the concepts in your invention?

10             A.  The first.

11             Q.  Let's put up the second to the

12     last page of PX-37, and for the record this has

13     production number KE00005.

14                  You can look at it on the screen

15     Dr. Eklund, or on the book?

16             A.  Yes.

17             Q.  First of all, this is a drawing

18     that you made?

19             A.  Yes.  This is one of the drawings,

20     yes.

21             Q.  Can you explain in general terms

22     what this drawing shows?

23             A.  Shows a more effective

24     high-voltage device.  As we went through before,

1    we explained there was an N class and N class

2    drain on the switching devices.  And this

3    approach, this N class drain has been replaced

4    by an N well.

5           And you can see you have an N

6    class drain that is far away from the gate.  And

7    the distance from the gate and the drain has to

8    take up high voltage when the switch is in the

9    off position.

10          So to improve this, we added or I

11   added a P-TOP reaching the surface into the L

12   well reaching the surface close to the gate.  By

13   doing this, being able to increase the current

14   capability of the device by the fact of two to

15   three on the same area.

16          Q.  Let me step through some pieces of

17   that and ask you to identify pieces of this

18   drawing.

19          First of all, right in the middle

20   there is a pocket labeled n+ with a D above it.

21   What is that?

22          A.  That is the drain of the

23   transistor where goes the current.

24          Q.  Over on the left-hand side there

10/2/2006  Trial Transcript

1    is n+ pocket with the source above; do you

2    understand that?

3        A.   That is the N class where you get

4    electrodes to flow under the gate.

5        Q.   So that structure in between the

6    structure with the G above it, what is that?

7        A.   Extended drain region.

8        Q.   But the actual structure above

9    labeled G, what is that?

10       A.   This is the gate.

11       Q.   The gate?

12            Now, when voltage is applied to

13   this gate in this drawing, where does the

14   current flow?

15       A.   Under the outside.

16       Q.   Where does that flow?

17       A.   From there to there.

18       Q.   From the source to the drain?

19       A.   Exactly.

20       Q.   With reference to this drawing,

21   what at the time did you consider to be your

22   invention?

23       A.   By introducing this P-TOP

24   implementation with the servers you can increase

1     the dope within this N well and increase the

2     apparent capability by a fact of two to three in

3     the same area.

4               Q.   When you are pointing to the

5     P-TOP, can you point where it is?

6               A.   There.

7               Q.   Is it just on one side or on both

8     sides?

9               A.   On both side.

10              Q.   All right.  What are the -- above

11    the what you call the P-TOP regions, what are

12    those sort of trapezoid-shaped boxes?

13              A.   This is the outside isolating the

14    devices.

15              Q.   For isolating?

16              A.   For isolating.

17              Q.   All right.  Now, you said you made

18    these initial drawings on which the patent is

19    based; is that right?

20              A.   Yes, I did.

21              Q.   Is this drawing that we have been

22    looking at here, okay, E00005 of PX-37, is that

23    the basis for one of the drawings in the patent?

24              A.   Yes, it is.

# EXHIBIT O

**REDACTED**

# EXHIBIT P

# REDACTED