IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION,  a Delaware corporation,<br><br>          Defendants. | C.A. No. 04-1371 JJF |

**POWER INTEGRATIONS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS OF DR. KLAS EKLUND FOR FORENSIC TESTING**

**I.    INTRODUCTION**

Fairchild's most recent motion to compel forensic testing is unnecessary, unwarranted, and has the potential to delay the trial date yet again. The motion should be denied.

In its motion, Fairchild misrepresents the relevant facts in two key respects. First, Power Integrations has offered – and continues to offer – the recently produced Eklund documents for inspection and analysis. Fairchild has refused to proceed with that testing, choosing to file this motion instead. Second, Fairchild has already had a full and fair opportunity to inspect and conduct testing on the previously produced trial exhibits PX29, PX30 and PX37. These are the documents Power Integrations already has used in this case and has told Fairchild it will rely on at the upcoming trial, so there is no reason Fairchild should be given a second bite at the apple.

Specifically, in January, Fairchild and its forensics consultant were given the opportunity to conduct forensic analyses to address the exact same issues regarding the

dating and numbering of pages that Fairchild raises again here. After Fairchild's forensic consultant visually inspected the documents, including those from which PX29, PX30 and PX37 were generated, and physically handled the pages in question, Fairchild offered no opinions from that consultant suggesting these documents were anything other than what Klas Eklund has said they are: contemporaneous copies of the notes Dr. Eklund made while creating the inventions claimed in the '075 patent. As these trial exhibits and the issues have not changed since then, there is no reasonable basis for further testing – including destructive punch sampling – on the documents Fairchild has already inspected and had the opportunity to further test.

The rest of Fairchild's motion makes arguments that are more properly the subject of cross-examination and irrelevant to the issue of testing. The motion also indicates that Fairchild intends to prepare further expert reports, file more motions, and seek more discovery, all to delay further a case that has already been pending for almost three years and which was substantially tried last October. These transparent efforts to further delay trial are improper and this Court should deny Fairchild's request for re-testing of trial exhibits PX29, PX30 and PX37 and any further relief beyond what Power Integrations has already offered.

## II.   STATEMENT OF FACTS

Dr. Klas Eklund founded Power Integrations and invented Power Integrations' first patent, asserted U.S. Patent No. 4,811,075 ("the '075 patent"). On September 9, 2005, Power Integrations produced 6 pages of key documents regarding Dr. Eklund's early work on the invention of the '075 patent, Bates-labeled KE00001-00006, which Dr. Eklund sent from Sweden. These 6 pages contain two separate documents, but Fairchild marked these six pages as a single exhibit for use during depositions, so the parties treated the documents as a single exhibit for much of the case. The documents were marked as Plaintiff's exhibit PX37 at the first trial on infringement.

When he came to the United States for the infringement trial, Dr. Eklund brought the underlying documents from which the copies KE00001-00006 were made, and Power Integrations produced better copies of those pages to Fairchild on September 29, 2006, before the infringement trial. [Ex. A.][1] At Fairchild's request, Power Integrations thereafter marked the two documents as separate exhibits, PX29 and PX30, after the conclusion of the infringement trial. [Ex. B (MRH letter of 11/29/06).]

On December 1, 2006, Fairchild wrote a letter to Power Integrations concerning these documents. [Ex. C.] Fairchild questioned the dates and page numbers on exhibits PX29 and PX30 and requested that Power Integrations make the "original" versions of exhibits PX29, PX30 and PX37 available for forensic testing. [*Id*.]

On January 5, 2007, Power Integrations agreed to make the "originals" of PX29, PX30 and PX37 available for testing by Fairchild's forensics consultant. [Ex. D.] Power Integrations stated that it would allow Fairchild to perform tests on these documents. [*Id*.] Fairchild and its forensic consultant, Erich Speckin, were given unfettered access to Dr. Eklund's documents on January 25, 2007. [*See* Ex. E.] Despite Power Integrations' offer to allow a full range of forensic inspection and testing, Mr. Speckin chose only to visually examine the documents.[2] [*Id.*] Power Integrations asked that Fairchild conduct any follow-up work and provide any opinions they expected to rely upon in the weeks that followed [*id.*], but Fairchild did not produce any report from Mr. Speckin, and it did not raise any further concerns at that time or otherwise challenge the authenticity of these documents.

---

[1] All exhibit citations refer to the accompanying declaration of William J. Marsden, Jr., unless otherwise noted.

[2] Fairchild's statement that "Power Integrations' counsel has persistently obscured the fact that there are three distinct original versions of these critical notes," D.I. 496 at 7, is simply untrue. Fairchild's counsel and forensic consultant examined all of the underlying documents from which PX29, PX30 and PX37 were created, along with other old copies of Dr. Eklund's notes from his files, during their January, 2007 inspection.

3

Several months later, while looking through a file containing documents unrelated to his work on the '075 patent, Dr. Eklund located approximately 250 pages of additional documents, including work done contemporaneously with his development of the inventions of the '075 patent and duplicate copies of documents previously produced to Fairchild. These documents were immediately produced to Fairchild.

On May 23, 2007, Fairchild sent an emergency e-mail asking this Court to postpone the date of the validity trial based on this new production. On May 24, 2007, this Court issued an oral Order vacating the June trial date.

After the validity trial was postponed, Fairchild took Dr. Eklund's deposition on June 7, 2007, and it inspected all of Dr. Eklund's documents with its forensic consultant in conjunction with the deposition. This included re-inspecting the same documents (PX29, PX30 and PX37) they had examined back in January. Fairchild then demanded a new round of forensic testing on the underlying copies of both the documents its forensic consultant had previously addressed and the newly-located documents labeled KE1466 and KE1447-1449. [Ex. F.] Power Integrations agreed to allow Fairchild to inspect and test the newly-located Eklund documents, but did not agree to another round of testing on PX29, PX30 and PX37. [Ex. G.] On June 20, 2007, Fairchild filed its Motion to Compel Production of Documents of Dr. Klas Eklund for Forensic Testing. [D.I. 496.]

## III.    ARGUMENT

Power Integrations has agreed to allow Fairchild to test Dr. Eklund's documents on several occasions, including the recently produced documents Bates-labeled KE 1466 and 1447-1449.[3] Fairchild's motion is, therefore, really a motion for further inspection and testing of the three documents its consultant previously inspected in January and again during the recent deposition of Dr. Eklund: PX29, PX30 and PX37. This motion should be denied because Fairchild had a full and fair opportunity, and the same

---

[3]  Despite Power Integrations' repeated offer, *see* Ex. G, and despite Fairchild's statement that it wants to conduct the testing as soon as possible, Fairchild has taken no steps to perform any testing on these documents.

4

motivation to analyze these documents completely, when it inspected them in January with the assistance of its forensic consultant. Despite Fairchild's suggestion to the contrary, there are no "new" issues with respect to these exhibits, because Fairchild's original inspection was similarly prompted by its desire to investigate the dates and page numbers of the Eklund invention notes Power Integrations intends to rely on at trial. Fairchild's motion is instead an excuse to push off the trial date, on its own case, once again. Fairchild's arguments as to what the documents do or do not show can be presented if Fairchild chooses through its cross-examination of Dr. Eklund at trial, and this Court should deny Fairchild's present motion in its entirety.

      **A.    Fairchild Had Every Opportunity To Inspect and Test The Eklund Trial Exhibits in January.**

Fairchild argues that the newly produced versions of Dr. Eklund's notes "raise questions regarding each version of the Eklund notes," including the underlying copies of the trial exhibits PX29, PX30 and PX37 that Fairchild previously inspected. [D.I. 496 at 2.] All of these allegedly "new" questions, however, are really the same questions that prompted Fairchild to inspect Dr. Eklund's notes with the help of its forensic consultant back in January.

In its letter dated December 1, 2006, Fairchild specifically noted that the reason it wanted forensic testing in the first place was to examine the dates in the upper right-hand corner of these exhibits, as well as the page numbering and ordering. [Ex. C.] Power Integrations allowed Fairchild to inspect these documents, and even agreed to allow some further testing and analysis of the documents at that time. [Ex. D.] In response, Fairchild and its consultant did in fact conduct an inspection, but after closely viewing and handling the original documents, they chose not to follow up with any additional testing and provided no report or further concern or complaint about the documents. [*See* Ex. E.]

All of the issues that Fairchild raises in its present motion concerning the relative dating and ordering of these exhibits, including the overwriting and hole punch

characteristics, were front and center at the time Fairchild inspected these exhibits in January. The documents obviously have not changed since that time, and Fairchild does not suggest the contrary. Because Fairchild's consultant did not find anything worth testing or opining about after he inspected these documents to his satisfaction in January -- because there was nothing about them to call into question their provenance or authenticity -- there is no reason to do further testing now.

Indeed, given that Fairchild found nothing untoward in January with the trial exhibits Power Integrations intends to use again at the upcoming trial, Fairchild's speculation about improper back-dating, later page numbering, concealing documents, and "obscuring facts" by both Dr. Eklund and counsel for Power Integrations is entirely unsupported and unprofessional. While it is unfortunate, and frankly as disappointing to Power Integrations as it is to Fairchild, that Dr. Eklund did not locate and produce all of the various copies of his notes when he provided his original documents in September of 2005, the delay in production was unintentional and beyond the control of Power Integrations, and any risk of prejudice to Fairchild was eliminated when Power Integrations allowed a second deposition of Dr. Eklund and offered a second round of forensic testing on the newly-produced documents. There is, however, no reason to allow Fairchild to re-test the documents it examined in January especially because, as explained below, Fairchild has already so much as stated that it has no intention of stopping there.[4]

**B.    Fairchild Should Not Be Allowed To Postpone The Invalidity Phase Of This Trial any Further.**

Fairchild claims that "Dr. Eklund's recent testimony raises completely new questions" about his notes, but Fairchild questioned Dr. Eklund about his documents during the recent deposition, and it is free to cross-examine Dr. Eklund at trial with what he allegedly said in his deposition (which Fairchild frequently misquotes), as well as with

---

[4]    Power Integrations further notes, as it raised with Fairchild in January, the additional concern that destructive testing of the Eklund notes will alter the documents, especially in the area of the date and page numbering, so that the jury's perception of these documents will be compromised to Power Integrations' prejudice.

what he said about his notes and record keeping in his first deposition. Fairchild is also free to ask Dr. Eklund about what he did or did not do to allegedly "alter" these documents. What Fairchild should not be permitted to do is manufacture "expert evidence" based on re-testing documents it already had an opportunity to address, especially at the risk of further delaying trial.

The impact of granting Fairchild's motion extends beyond merely allowing another inspection (and potentially destructive testing) of the three exhibits at issue. Fairchild has already stated that it intends to use this dispute as an excuse to submit additional expert reports,[5] additional summary judgment briefing, additional motions *in limine*, and even a motion for sanctions. [*See* D.I. 491 (Memorandum re Trial Date) at 2, 13-17.] This will potentially also require additional depositions, and there is no guarantee that all of this new briefing and discovery can be conducted before an August or September trial date—the outcome Fairchild clearly would like to have happen.

Despite Fairchild's statements about wishing to preserve the schedule, delay benefits Fairchild by permitting it to continue, as it has throughout these proceedings, to sell products and commit other acts the jury found to be willful infringement of all of the asserted claims of Power Integrations' patents. That same delay greatly prejudices Power Integrations because it continues to be harmed in the marketplace by Fairchild's willful infringement -- harm that will be impossible to remedy with money damages alone. To avoid this further prejudice, the Court should deny Fairchild's motion and permit the parties to proceed to trial as soon as possible.

---

[5] Fairchild's statement that it "needs" to file a report, before its consultant has even tested a single document, shows that Fairchild is motivated by delay, not truth, particularly given that Fairchild's consultant did not seek further testing or submit any report after his initial inspection. Fairchild has simply come to realize that attacking the authenticity of these documents, even on the thinnest of reeds, is its only hope to prevail on the priority of invention issue because, if the documents are genuine (and they are), they conclusively prove that Dr. Eklund invented first.

7

IV.     **CONCLUSION**

Fairchild had every motivation and a full and fair opportunity to address PX29, PX30 and PX37 with its forensic consultant when they originally inspected these documents in January, 2007 and Power Integrations has agreed to allow Fairchild the opportunity to inspect and test any new documents, eliminating any possibility of prejudice.  Fairchild's further efforts to delay this litigation with unnecessary and duplicative testing, and further discovery and motion practice to follow, should be denied.

Dated:  June 28, 2007                    FISH & RICHARDSON P.C.


                                         By:  */s/ William J. Marsden, Jr.*
                                              William J. Marsden, Jr. (#2247)
                                              919 N. Market Street, Suite 1100
                                              P.O. Box 1114
                                              Wilmington, DE  19899-1114
                                              Telephone: (302) 652-5070
                                              Email:  marsden@fr.com

                                              Frank E. Scherkenbach
                                              225 Franklin Street
                                              Boston, MA 02110-2804
                                              Telephone: (617) 542-5070

                                              Howard G. Pollack
                                              Michael Headley
                                              500 Arguello Street, Suite 500
                                              Redwood City, CA 94063
                                              Telephone: (650) 839-5070

                                         **ATTORNEYS FOR PLAINTIFF
                                         POWER INTEGRATIONS, INC.**

# CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, I electronically filed with the Clerk of Court POWER INTEGRATIONS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS OF DR. KLAS EKLUND FOR FORENSIC TESTING using CM/ECF which will send electronic notification of such filing(s) to the following counsel.  In addition, the filing will also be sent in the manner indicated:

| | |
|---|---|
| **BY HAND DELIVERY**<br>Steven J. Balick<br>John G. Day<br>Ashby & Geddes<br>500 Delaware Avenue, 8th Floor<br>P. O. Box 1150<br>Wilmington, DE 19899 | Attorneys for Defendants<br>FAIRCHILD SEMICONDUCTOR<br>INTERNATIONAL, INC. and<br>FAIRCHILD SEMICONDUCTOR<br>CORPORATION, and third party<br>INTERSIL CORPORATION |
| **BY E-MAIL AND FIRST CLASS MAIL**<br>G. Hopkins Guy, III<br>Bas de Blank<br>Orrick, Herrington & Sutcliffe, LLP<br>1000 Marsh Road<br>Menlo Park, CA  94025 | Attorneys for Defendants<br>FAIRCHILD SEMICONDUCTOR<br>INTERNATIONAL, INC. and<br>FAIRCHILD SEMICONDUCTOR<br>CORPORATION |

  */s/ William J. Marsden, Jr.*
William J. Marsden, Jr. (#2247)

50423348.doc