IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,                )     **REDACTED**
                                         )     **PUBLIC VERSION**
                          Plaintiff,     )
                                         )     C.A. No. 04-1371-JJF
            v.                           )
                                         )
FAIRCHILD SEMICONDUCTOR                  )
INTERNATIONAL, INC., and FAIRCHILD       )
SEMICONDUCTOR CORPORATION,               )
                                         )
                          Defendants.    )

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS OF DR. KLAS EKLUND FOR FORENSIC TESTING**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403).
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
ORRICK, HERRINGTON & STUCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: July 3, 2007
182030.1

## I.    __INTRODUCTION__

Power Integrations does not dispute that it produced 266 pages of highly relevant notes of its inventor Klas Eklund over a year after the close of discovery.  The obvious relevance of these materials is beyond dispute.  Klas Eklund claims to have founded Power Integrations on the asserted '075 patent.      **REDACTED**

Power Integrations most certainly should have produced the late produced documents many months ago and had the ability to do so.  There is no excuse for its failure to produce these critical notes.

**REDACTED**

It produced only one version of these notes prior to the close of discovery and used that version in the first trial.  Only after the conclusion of the first trial did Power Integrations begin producing new versions of the notes      **REDACTED**

With its recent production on the eve of trial of yet another entirely new version of these same six pages, there are now three versions of the notes corresponding to trial exhibit PX30 and two versions of trial exhibit PX29

**REDACTED**

This was first discovered by Fairchild in May 2007, when Power Integrations produced these materials only a few weeks before the scheduled start of the second trial.

The new versions raise questions that must be explored by forensic testing of all versions.  Every version of Eklund's notes are now in question.  Indeed, Power Integrations does not even dispute the merits of Fairchild's request.  Power Integrations does not dispute that:

**REDACTED**

**REDACTED**

Power Integrations does not address these issues at all in its opposition and fails to refute that these circumstances are *highly relevant.*

Rather, Power Integrations only argues that Fairchild has somehow lost its right at this time to conduct the testing called for by this recent production. Power Integrations attempts to argue that because Fairchild and its forensic expert visually inspected a previously produced version of the notes, Fairchild should be precluded from investigating the issues raised by the newly produced versions. This is tantamount to blaming the victim. Fairchild was not in any position to assess the newly produced documents or to be aware of the questions they raised until Power Integrations provided them in May, on the eve of trial.

Power Integrations' position on forensic testing is unreasonable. Curiously, it *actively invites* Fairchild to conduct full testing of the recently produced versions of Dr. Eklund's notes, which Power Integrations has said that it will *not* use at trial. Yet, by contrast, Power Integrations refuses to allow forensic testing of the versions of the notes that it *will* and has used at trial and refuses to allow any forensic comparison of the various versions of the notes. This is facially unfair and prejudicial. As explained by Fairchild in its opening brief, the new versions of the notes must be compared with the previously produced versions. Power Integrations cannot credibly challenge the fact that the existence of multiple versions of Dr. Eklund's "invention" documents make testing of *all* documents relevant.

**REDACTED**

2

**REDACTED**                              Power Integrations' attempt to shield from

forensic testing certain versions of the notes that it will rely on at trial is unfair, unreasonable and

suspicious.

Further, there is no practical reason for Power Integrations' refusal to allow the testing

requested by Fairchild. Indeed, testing of the sixteen pages of notes requested by Fairchild will

be no more burdensome or time-consuming, and will result in no more delay than testing the four

pages that Power Integrations readily admits *should be tested*. Power Integrations' opposition

based on arguments of delay are thus baseless. Indeed, Power Integrations is undeniably the sole

cause of delay in this matter.

Power Integrations is attempting to take advantage of its own failure to produce relevant

documents. It should not be allowed to do so. In order to ensure that Fairchild is not prejudiced

and this case is not further delayed, Power Integrations should be ordered to promptly make

available for forensic testing all versions of the notes of Dr. Klas Eklund, including the

documents designated as trial exhibits PX29, PX30, PX37 and the documents Bates-labeled

KE001466 and KE001447-KE001449.

II.    **ARGUMENT**

A.    **Power Integrations Recognizes That Forensic Testing Is Appropriate**

Power Integrations readily admits that further forensic testing of Dr. Eklund's notes is

appropriate. Indeed, it agrees to produce the newly produced versions of Dr. Eklund's notes for

testing—but *only* the newly produced versions. [Opposition Brief, at p. 4] Power Integrations

has represented that it will not use these versions of the notes at trial. [Ex. 1 (attached hereto)]

Yet, on the other hand, Power Integrations refuses to produce its trial exhibits PX37, PX29 or

PX30, for comparison with the new versions by forensic means. [Opposition Brief, at p. 4]

Power Integrations cannot have it both ways. In recognizing that forensic testing of the new

versions of the documents is warranted, it cannot deny that forensic testing of the previously

produced versions is appropriate, since the existence of multiple versions itself raises questions.

Further, forensic testing of all the notes will pose no undue burden as it will not take significantly more time to test and compare all versions together at the same time. Fairchild and its expert will proceed as quickly as possible, and will take care to minimize the impact of testing on all of the original documents. Accordingly, Power Integrations should be ordered to promptly produce all versions of Dr. Eklund's notes for forensic testing.

**B.    Power Integrations Does Not Dispute The Highly Relevant Nature Of The Multiple Versions Of Eklund's Notes**

In its opening brief, Fairchild laid out a host of serious questions raised by the various versions of Eklund's invention notes that have been produced recently. Power Integrations does not dispute or challenge the vast majority of the issues the documents raise.

**REDACTED**

4

REDACTED

[Ex. 2 (Eklund Depo., 413:24–414:15)]

Power Integrations does not refute any of this, much less discuss the merits.  Power Integrations does not dispute that these circumstances involving the *key invention notes upon which it relies in this case* are highly relevant matters appropriate for discovery.  Power Integrations does not dispute that it should have produced all of these materials many months ago—indeed, it admits that it should have.  [Opposition at p. 6]  Given the highly relevant nature of these issues and the documents, and Power Integrations' failure to dispute their relevance, Power Integrations cannot credibly resist necessary forensic testing.

## C.     Power Integrations Admits The Prejudice To Fairchild.

Power Integrations' piecemeal production deprived Fairchild and its forensic expert of critical information and Power Integrations now improperly seeks to take advantage of that failure.  Power Integrations argues that because Fairchild inspected the documents once, based on the information available to it in January of this year, that it should be precluded from conducting any detailed forensic testing of the previously produced versions of Eklund's notes. This is unfair and baseless given Power Integrations' piecemeal production of the multiple versions after the first trial.  This deprived Fairchild of the critical new versions of the notes thereby leading Fairchild to falsely believe that forensic testing was not necessary at that time.

First, testing of all versions of the notes is necessary so that Fairchild may investigate and

fully understand the *differences* between the new versions and the previously produced versions.

**REDACTED**

This complicates the process of determining which versions of the notes reflect earlier or later copy generations and dating the documents. Forensic comparison of the various copy generations is necessary. Fairchild has never had the opportunity to investigate the differences between the documents because the new versions of the notes were not produced until very recently. For this reason alone, testing of all versions is warranted.

Second, the existence of any new versions of inventor's notes causes Fairchild to question attributes of the previously produced versions and cause Fairchild to see the previously produced versions in an entirely new light. Fairchild was not provided this perspective until Power Integrations produced the new documents on the eve of trial. For this reason as well, testing of all versions is warranted.

    1. <u>**During The Prior Forensic Inspection, The Only Question Raised Resulted From The Poor Copies Of PX30 And PX37 That Power Integrations Provided To Fairchild.**</u>

**REDACTED**

[Marsden Decl., Ex. C]

**REDACTED**

**2.    The Newly Produced Documents Raise Substantial New Questions**

**REDACTED**

i. To investigate this issue, it is necessary to attempt to date PX30, PX37 and the newly produced version through forensic methods.

**REDACTED** In January, Fairchild was not aware of this practice, thus it had no reason to question the dating of PX29 or

---

[1] The documents actually produced from Dr. Eklund's files are photocopies, but with original ink overwriting in some cases.

to question the dating of PX30 and PX37 on this basis.

**REDACTED**

[Ex. 2 (Eklund Depo., 418:8-419:24)]  To investigate this issue, it is necessary to forensically test PX30, PX37 and the newly produced version.

The dates of the inventor's notes represent critical evidence in any patent contest to determine who invented first.  He.

**REDACTED**

Power Integrations is attempting to conceal the truth behind the dates, yet affirmatively will use the same dated notes to establish prior invention.  The prejudice cannot be overstated.

It is Power Integrations' failure to meet its discovery obligations that has caused this situation. Rather than promptly ameliorating the prejudice that it has caused by providing all versions of the notes for forensic testing, Power Integrations attempts to compound it. Power Integrations is wasting critical time by dragging its feet and requiring Fairchild to litigate the instant motion when it should instead allow the forensic testing that Fairchild requests to proceed as soon as possible.

### D.    Power Integrations Is The Sole Cause Of Delay In This Matter

Power Integrations is solely responsible for the delay of the trial in this matter. Power Integrations produced the new versions of Dr. Eklund's notes over a year after the close of fact discovery. When Fairchild immediately requested the deposition of Dr. Eklund, Power Integrations dragged its feet, refusing to produce him for deposition despite the fact that he was in the U.S. only days earlier. Further, after Fairchild requested prompt forensic testing of the notes, Power Integrations again refused to comply, thus requiring the instant motion practice and the concomitant delay. Fairchild has tried to move this matter expeditiously and is prepared to complete this critical investigation quickly so that the parties can submit any relevant expert reports and other submissions and so that the case may proceed to trial without further delay. Power Integrations, however, refuses to cooperate. Power Integrations should not be permitted to prolong the dispute in this matter, and should be ordered to promptly produce all versions of Dr. Eklund's notes for testing.

### III.    CONCLUSION.

For the foregoing reasons, Fairchild respectfully requests that the Court grant Defendants' Motion to Compel, and order Power Integrations to make available for forensic testing all versions of the notes of Dr. Klas Eklund, including the documents designated as trial exhibits PX29, PX30, PX37 and the documents Bates-labeled KE001466 and KE001447-KE001449.

9

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403).
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
ORRICK, HERRINGTON & STUCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  July 3, 2007
182030.1

# EXHIBIT 1

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA E-MAIL & U.S. MAIL**
650/614-7401

May 18, 2007

Brian VanderZanden
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:    Power Integrations Inc. v. Fairchild Semiconductor Int'l
       USDC-D. Del. - C.A. No. 04-1371-JJF

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Michael R. Headley
(650) 839-5139

Email
headley@fr.com



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Brian:

I received your letter sent late Wednesday evening regarding Klas Eklund's recent production of documents and am writing to address your concerns.

First and foremost, I appreciate your recognition of the overlap between some of this production and documents which were earlier produced. We acknowledge there are new documents as well, but they are nowhere near as significant as your letter suggests. Knowing that Fairchild might make this a cause célèbre, we produced them anyway because we felt obligated to do so. We are not aware of any additional non-privileged documents. As with the Intersil materials Fairchild produced just weeks before the originally-scheduled validity trial in December, we provided Dr. Eklund's documents to you as soon as we received them, and as you did with the late-produced Intersil materials, we will permit you to inspect the originals from which the copies were made.

In terms of a further deposition, we have no objection conceptually, but we cannot accommodate your request to take Dr. Eklund's deposition next week in light of his schedule and the fact that Dr. Eklund lives in Sweden. Although he will appear voluntarily, Dr. Eklund cannot arrive in Wilmington for trial until Saturday, June 2. We will make him available for deposition the afternoon of Sunday, June 3. That should allow you more than enough time to address the documents with Dr. Eklund (there are only about 200 new pages), including where they were found, particularly given that he will most likely not be taking the stand until Wednesday, June 6 at the earliest. We similarly expect you will make Mr. Beasom available for deposition before trial to address the various Intersil documents and things produced since Mr. Beasom's deposition, so please let us know when you can do so. If we can work out these two depositions before trial, and it does not appear that there should be any problem in doing so, Power Integrations would be willing to withdraw its motion *in limine* to preclude any reliance on the untimely Intersil documents allegedly related to Mr. Beasom's work.

FISH & RICHARDSON P.C.

Brian VanderZanden
May 18, 2007
Page 2

Lastly, your allegation that the underlying document designated and produced to you as PX-30 has been "modified" is baseless.  We intend to use the original version of PX-30 that Fairchild already inspected, not the recently produced copy of the document to which you refer.  However, you are free to ask Dr. Eklund about the provenance of the recent copy when you depose him or to use it yourself as you wish.  Given that Fairchild previously reviewed the underlying documents we marked for trial, including PX-30, with the assistance of a forensic expert who took no further steps to test the documents and raised no concerns following his inspection, your proposal to exclude PX-30 (and also PX-29, for some unstated reason) is unwarranted.

Sincerely,

Michael R. Headley

50416660.doc

# EXHIBIT 2

# REDACTED