# Exhibit A



ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025
*tel 650-614-7400*
*fax 650-614-7401*
WWW.ORRICK.COM

August 24, 2007

G. Hopkins Guy III
(650) 614-7452
hguy@orrick.com

**VIA FACSIMILE**

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
Facsimile:  (617) 542-8906

> Re:   Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)

Dear Frank:

This letter requests that you now dismiss all aspects of the willfulness verdict in the above styled case and any related claim for increased damages or attorney fees under 35 U.S.C. §§ 284 and 285.  This request is made in light of the recent decision in *In re Seagate*.  *In re Seagate* sets out an entirely new "objectively reckless" standard for willful infringement, which the evidence presented at trial does not meet.

Should you not agree to this request, Fairchild will seek a new trial on all issues in order to retry invalidity and infringement together with willful infringement, as is now required by *In re Seagate*.  "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its action constituted infringement of a valid patent."  *Slip Opinion*, p. 12.  As you recall from our prior trial, Fairchild was prevented from putting on its invalidity case and from arguing that Fairchild could not infringe an invalid patent.  Indeed, the Court specifically instructed the parties that "for purposes of this trial, Fairchild can infringe an invalid patent, because we're only talking about infringement in this trial."  Tr., p. 1498.

Please let me know you position by Monday, August 27, 2007 so that we can raise this with the Court, if necessary.  I am available to discuss this with you today, if you wish.

Sincerely,

G. Hopkins Guy, III

cc:   William J. Marsden, Jr.
      Howard G. Pollack
      Michael Headley

OHS West:260291506.1



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

**FAX TRANSMISSION**

| DATE | August 24, 2007 | | | NO. OF PAGES (INCLUDING COVER SHEET) | **2** |

**FROM**

| *name* | *tel* |
| --- | --- |
| G. Hopkins Guy, III | 650-614-7451 |

**TO**

| *name* | *company / firm* | *tel* | *Fax* |
| --- | --- | --- | --- |
| Frank E. Scherkenbach | FISH & RICHARDSON P.C. | | **617.542.8906** |

**CC**

| | | | |
| --- | --- | --- | --- |
| William J. Marsden, Jr. | FISH & RICHARDSON P.C. | | **302.652-0607** |
| Howard Pollack | FISH & RICHARDSON P.C. | | **650.839.5071** |
| Michael R. Headley | FISH & RICHARDSON P.C. | | **650.839.5071** |

**RE**    *Power Integrations v. Fairchild Semiconductor et al*

**MESSAGE**

Please see attached.

C-M-A    10414-25 (7584)

**IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL MIMI SAGMIT AT (650) 614-7451 AS SOON AS POSSIBLE.**

*notice to recipient*

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE SENT ONLY TO THE STATED ADDRESSEE OF THE TRANSMISSION. IT MAY BE PROTECTED FROM UNAUTHORIZED USE OR DISSEMINATION BY THE ATTORNEY-CLIENT PRIVILEGE, THE ATTORNEY WORK-PRODUCT DOCTRINE, OR ANY OTHER APPLICABLE PRIVILEGE. IF YOU ARE NOT THE STATED ADDRESSEE, YOUR RECEIPT OF THIS TRANSMISSION WAS UNINTENDED AND INADVERTENT, AND YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. YOU ARE ALSO ASKED TO NOTIFY US IMMEDIATELY BY TELEPHONE AND TO RETURN THE ORIGINAL DOCUMENT TO US IMMEDIATELY BY MAIL AT THE ADDRESS ABOVE. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
US_WEST:23040364.1
10414-25

# Exhibit B

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

**Frank E. Scherkenbach**
617 521-7883

Email
scherkenbach@fr.com

<u>**VIA FACSIMILE & U.S. MAIL**</u>

August 27, 2007

G. Hopkins Guy III
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:    <u>Power Integrations Inc. v. Fairchild Semiconductor Int'l</u>
       USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Hop:

I have read your letter of Friday the 24th regarding the recent *In re Seagate* decision. Power Integrations disagrees with your contention—the decision does not require a new trial on willfulness.  The proofs at trial demonstrated that Fairchild was objectively reckless in infringing Power Integrations' patents, so even if the standard enunciated in *Seagate* were to be applied to our case, there is no basis for a new trial on the willfulness issue.  Indeed, on this record, Power Integrations believes the case is exceptional, and Power Integrations is therefore entitled to recover enhanced damages and attorney fees, irrespective of the Jury's conclusion on willfulness. Accordingly we will not be "dismissing" any aspect of the jury verdict or any claim for increased damages or attorney's fees.

Your assertion that Fairchild was prevented from presenting evidence at trial about validity is also incorrect—Fairchild relied extensively on its opinions of counsel and related testimony at the first trial, which specifically addressed the validity of the patents in defending the claim of willful infringement.  Your quotation from the trial transcript ignores the next several sentences, in which the Court explained that Fairchild could rely on its asserted belief that the patents were not valid as a defense to the charge of willful infringement.  (*See* Trial Tr. at 1498-99.)  Fairchild had its opportunity to, and did, present evidence in support of that position.

On the other hand, nothing in *Seagate* suggests, let alone holds, that willfulness can only be tried in the same trial as infringement <u>and</u> validity.  I suspect the Federal Circuit itself would be more than a little surprised to learn that *Seagate* de facto prevents district courts from bifurcating trials as appropriate in a given case and in their sound discretion.

//

//

//

FISH & RICHARDSON P.C.

G. Hopkins Guy III
August 27, 2007
Page 2


Simply put, there is no basis for re-trying any issues in this case, and we will oppose any motion you file on this point in due course.

Sincerely,

*Frank E. Scherkenbach*

Frank E. Scherkenbach

50434489.doc

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| TX/RX NO | 1725 |
|---|---|
| CONNECTION TEL | #10256#000453531#6147401 |
| CONNECTION ID | |
| ST. TIME | 08/27 14:33 |
| USAGE T | 00'56 |
| PGS. SENT | 3 |
| RESULT | OK |

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

**Date**　August 27, 2007

**To**　G. Hopkins Guy, III
　　Orrick, Herrington & Sutcliffe, LLP
　　1000 Marsh Road
　　Menlo Park, CA 94025
　　Telephone: (650) 614-7452

**Facsimile number**　10256-00453531 / (650) 614-7401

**From**　Frank E. Scherkenbach

**Re**　Power Integrations, Inc. v. Fairchild Semiconductor International
　　USDC-D. Del. – C.A. No. 04-1371 JFF

**Number of pages including this page**　3

**Message**　Please see attached.

# Exhibit C

## EXHIBIT 17

### Defendants' Miscellaneous Issues

Defendants may raise the following issues at the Pretrial Hearing. This list is without prejudice to Defendants' rights to raise additional issues, if appropriate:

1.    Motion in Limine Briefing Schedule

Fairchild requests that the Court set a briefing schedule on the issue of bifurcation and for the parties' motions in limine.

2.    Mediation

The parties' principals have met once to discuss resolving this litigation and have recently exchanged additional correspondence. Fairchild requests that the Court order the parties to mediation at least three months before trial.

3.    Improper Expert Reports

In the last month, Power Integrations has submitted three untimely expert reports from a previously undisclosed expert. According to the Court's scheduling order, the date to identify experts and exchange expert reports has long since passed. Notwithstanding, in the last several weeks Power Integrations has belatedly produced three separate expert reports on the issue of third party direct infringement. These reports should be excluded.

4.    Authentication of Prior Art Patents, Datasheets and Articles

Fairchild has produced patents, datasheets, and articles that on their face identify their date of publication. These dates should be deemed authentic and non-hearsay.

Since November, 2005, Fairchild has repeatedly requested that Power Integrations stipulate to the dates of publication. Despite the fact that approximately half of this prior art consists of issued U.S. Patents and Power Integrations' own datasheets, Power Integrations has refused to agree on a single date for a single reference. Power Integrations, however, has no evidence that the dates are not accurate and reliable.

The Court should deem each prior art reference published – for purposes of 35 U.S.C. § 102 – as of the date on the face of the reference unless Power Integrations can provide specific evidence showing that that date is not accurate. Otherwise, Fairchild will have no choice but to depose multiple third parties to authenticate this prior art.

5.    Advisory Verdict on Inequitable Conduct – Fairchild requests an advisory opinion from the jury on the issue of inequitable conduct.

Fairchild believes that an advisory verdict will assist the Court.

6.     Bifurcation of Trial – For the convenience of the jury, and to avoid confusion, the Court should bifurcate the trial of the case.

The Court should first try the issue of direct infringement and the invalidity of the patents. After the completion of the direct infringement and invalidity phase, the issues whether Fairchild induced infringement, the amount of damages (if any), and whether Fairchild's alleged infringement was willful should be tried to a second jury.

Bifurcating the case in this manner will greatly simply and reduce the issues for the jury. Power Integrations has asserted 18 claims from four patents against 38 different accused devices. Power Integrations' damages theories are even more complicated – the measure of damages depends on the specific combination of accused device and asserted patents. For instance, Power Integrations is seeking combinations of lost profits, price erosion, future price erosion, and a reasonable royalty depending on what products infringe which claims. If the issues of invalidity and infringement are tried first, it is likely that damages will not even need to be addressed and, if they are, the issues will be simplified. Finally, damage related issues should be bifurcated since the parties are still continuing fact and expert damage-related discovery.

Trying all issues together of whether 38 products infringe any of the 18 asserted claims, the invalidity of the 18 asserted claims, and the measure and theory of damages would be unnecessarily complicated for a single jury.

7.     Summary Judgment Motions – Fairchild requests that the Court schedule a hearing for Fairchild's pending motions for summary judgment.

The parties agree that Fairchild's Motion for Summary Judgment re Limitation of Damages (Marking) does not raise any dispute of fact and is purely a question of law that directly affects the measure of damages.

Further, as set forth in Fairchild's pending motion for summary judgment re non-infringement of the '075 Patent, in view of the Court's claim construction Power Integrations no longer asserts that Fairchild infringes the '075 Patent under the doctrine of equivalents.

Since Power Integrations has submitted a responsive brief that raised issues of law in response to each of the pending motions, briefing on these motions should be deemed complete and the Court should schedule a hearing.

8.     Damages Discovery

Damages discovery has not been completed. Fairchild has not concluded its deposition of Power Integrations' expert and Power Integrations has yet to begin to depose Fairchild's expert. Further, Fairchild will provide Power Integrations with a 30(b)(6) witness concerning the manufacture of the accused devices in the United States since October 20, 2004. Also, as set forth above, Power Integrations has produced a number of untimely expert reports that are potentially relevant to damages. This may require either or both parties to supplement their damages reports.

9.     Power Integrations' Financial Reports Are Unreliable

Both parties' damages experts relied upon Power Integrations' SEC filings and annual reports. Recently, Power Integrations has publicly stated that these reports are not reliable and that all of its reports from 1999-2005 may be restated. Furthermore, Power Integrations has not filed an annual report for 2005. According to Power Integrations' press releases, an on-going investigation is currently being conducted into their policies and practices regarding stock option grants and back dating of those grants. The seriousness of the issue is underscored by the recent resignations of both the Chairman of the Board and Chief Financial Officer of Power Integrations. Fairchild previously sought this discovery on this issue and was told that there was no plan to restate Power Integrations' financial results. Fairchild will need additional discovery – specifically, continuing the deposition of Balu Balakrishnan – on this issue to determine whether it will need to supplement its damages report.

10.     Additional Litigation Between the Parties

Fairchild wishes to advise the Court that there is additional litigation between the parties pending in the Eastern District of Texas. This litigation involves additional parties, Intersil Americas, Inc. and Intersil Corporation, which are not parties to this action. Fairchild sees no reason why this Texas litigation should delay resolution of this matter.

## Defendants' Motions in Limine

Defendants may make the following motions in limine. Defendants note that damages discovery is continuing and Plaintiff has not provided its exhibit list, deposition designations, or an adequate statement of proof. Therefore, Defendants reserve the right to identify additional motions in limine, if appropriate:

1.     Motion to Exclude Untimely Reports from an Undisclosed Expert

As set forth above, Power Integrations has recently produced a series of expert reports from Mr. Lum, a previously undisclosed expert. These reports are untimely and should be excluded.

2.     Motion to Limit the Testimony to Power Integrations' Damages Expert

Fairchild has yet to complete the deposition of Mr. Troxel so the list of topics for which he should be precluded from testifying may change. At present, Fairchild identifies the following topics:

Mr. Troxel should be precluded from opining on damages due to devices manufactured and sold abroad absent evidence that these specific devices are later imported into the United States.

Mr. Troxel should be precluded from speculating on the number of devices imported into the United States that incorporate Fairchild devices manufactured and sold abroad. Specifically, Mr. Troxel should be precluded from relying on speculative and unreliable reports concerning the percentage of unrelated devices that may have been imported into the United States at select times.

Mr. Troxel should be precluded from relying upon the untimely report of Power Integrations' undisclosed expert alleging third party direct infringement.

In light of Power Integrations' failure to mark its products, Mr. Troxel should be precluded from testifying about sales and prices prior to October 20, 2004.

Mr. Troxel should be precluded from relying on Power Integrations' "sales reports" as these documents are admittedly unreliable and speculative.

Mr. Troxel should be precluded from speculating about "future lost profits", especially concerning damages allegedly owed after the asserted patents have expired.

Mr. Troxel should be precluded from opining about "lost sales" when Power Integrations simply chose to sell a cheaper product in place of its more expensive device.

3.      Motion to Exclude Admittedly Unreliable Evidence

Power Integrations purports to rely upon "weekly reports" from its sales force. These reports contain hearsay within hearsay and lack foundation. Moreover, Power Integrations' Vice President of Sales, the officer in charge of these reports, testified that they are unreliable. Therefore, the reports – and any testimony or evidence based on the reports – should be excluded.

4.      Motion to Limit the Testimony of Power Integrations' Experts

During deposition and in their reports, Power Integrations' experts opine that Fairchild's devices infringe the asserted claims. These technical experts, however, lack the training or experience to render a legal opinion. Further, they lack any evidence concerning whether the accused devices were made, used, offered for sale or sold in the United States or imported into the United States. Thus, the experts should be precluded from opining that any of the accused devices infringe the asserted claims.

5.      Motion to Limit the Testimony of Michael Shields

During deposition, Power Integrations' expert, Mr. Michael Shields, admitted that he was not an expert with respect to the issues of conception, reduction to practice, or inherency. Therefore, he should be precluded from opining on these subjects.

6.      Motion to Exclude Unreliable Third Party Documents

In its exhibit list and expert report, Power Integrations purports to rely upon documents produced by Dell and GE. Despite the fact that Power Integrations has every opportunity to depose these third parties, Power Integrations chose not to do so. Thus, these documents are inadmissible hearsay and have not been authenticated. The documents – and any testimony concerning these documents – should be excluded.

7.      Motion to Limit the Testimony of Klaus Eklund

As a matter of law, Power Integrations must provide independent evidence corroborating the alleged conception, diligence to reduction to practice, and actual reduction to practice of the '075 Patent. To prevent undue prejudice, Dr. Eklund should be precluded from testifying as to any date of conception and reduction to practice until Power Integrations lays a foundation for this independent corroboration.

8.     Motion to Exclude Evidence of Copying

Power Integrations should be precluded from arguing that Fairchild "copied" Power Integrations' products. Such evidence is irrelevant to the issue of infringement and will only prejudice the jury. In particular, Power Integrations should be precluded from arguing that Fairchild has "copied" Power Integrations datasheets as there is no allegation of copyright infringement.

9.     Motion to Preclude Prior Notice

Power Integrations should be precluded from arguing that it placed Fairchild on either constructive notice or actual notice of infringement before October 20, 2004, or that any knowledge of the patents in suit by Fairchild is germane to damages, validity or infringement.

10.     Motion to Preclude Knowledge of Importation.

Except as to specific proven instances of importation, Power Integrations should be precluded from arguing that Fairchild has any general knowledge pertinent to the amount of any of the importation.

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., )   Trial Volume V
                          )
        Plaintiff,        )
                          )   C.A. No. 04-1371-JJF
v.                        )
                          )
FAIRCHILD SEMICONDUCTOR   )
INTERNATIONAL, INC., and  )
FAIRCHILD SEMICONDUCTOR   )
CORPORATION,              )
                          )
        Defendants.       )


            Friday, October 6, 2006
            9:30 a.m.
            Courtroom 4B


            844 King Street
            Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge




APPEARANCES:


         FISH & RICHARDSON
         BY:  WILLIAM J. MARSDEN, JR., ESQ.
         BY:  FRANK E. SCHERKENBACH, ESQ.
         BY:  HOWARD G. POLLACK, ESQ.
         BY:  MICHAEL R. HEADLEY, ESQ.


                 Counsel for the Plaintiff

1        MR. SCHERKENBACH:  And you will do

2    that, Your Honor, without saying anything in the

3    claim construction section about DMOS.

4        THE COURT:  Well, my order says

5    I'm not going to say anything about DMOS, I'm

6    only going to give the claim construction order

7    as it was at the commencement of the trial.

8        MR. SCHERKENBACH:  Okay, Your

9    Honor.  Thank you.

10        MS. FEEMAN:  Thank you.

11        MR. SCHERKENBACH:  You can't

12    infringe an invalid patent, we would ask for an

13    instruction on that.  Is that something you

14    would entertain or not?  This authority for that

15    by the way is in the letter that we handed up,

16    it's not contested, I don't think, except that

17    they're going to argue it.

18        MR. GUY:  Your Honor, it flies

19    directly in the face of the current instruction

20    on infringement under the Doctrine of

21    Equivalents in which they cannot expand the

22    scope of equivalents and that's in the model

23    instruction, so I can't see how they would even

24    propose this at this time.  It's going to

1   directly conflict with one of their theories of

2   infringement.

3                MR. SCHERKENBACH:  Literal

4   infringement is what I'm talking about, second

5   page of the letter.

6                MR. GUY:  I haven't had time to

7   read it.

8                MR. SCHERKENBACH:  The Federal

9   Circuit has said it repeatedly.

10               THE COURT:  For purposes of this

11  trial, Fairchild can infringe an invalid patent,

12  because we're only talking about infringement in

13  this trial.

14               Now, whether Fairchild can

15  willfully infringe an invalid patent is the

16  question of fact for the jury.  I'm going to

17  listen -- so in my view, what Fairchild would

18  argue -- and let me say this, we now have a

19  validity, the role of validity in this case in

20  an instruction which says to the jury, you're

21  not to consider that in any way except in the

22  context of willfulness.

23               I'm going to listen to the closing

24  arguments, and if there is an argument that you

1   can't infringe an invalid patent, which in

2   fairness is either directly or by inference

3   arguing to the jury that Fairchild can't be

4   guilty of infringing on this case, I'll clear

5   that up real easily with my -- I'll add a jury

6   instruction that makes that clear.

7           If Fairchild merely argues that

8   they can't willfully infringe because of their

9   belief that the patents are invalid, then I

10  think we have the proper jury instructions, it's

11  the proper argument in this case and there is no

12  problem, but you can't argue that you don't

13  infringe in this case because the patents were

14  invalid.

15          MR. GUY:  But, Your Honor, you

16  talked I believe directly about literal

17  infringement and you talked about willful

18  infringement.  In the middle there is this other

19  category of Doctrine of Equivalents that we

20  should be able to argue because we have an

21  instruction that says we can.  They cannot

22  expand the Doctrine of Equivalents to include

23  the prior art.

24          So with respect to Doctrine of

1       Equivalents argument, we should be able to argue

2       that they can encompass the prior art.

3                   THE COURT:  You can argue that,

4       but you can't argue that that makes the patent

5       invalid because of the prior art, and therefore,

6       we can't infringe by Doctrine of Equivalents.

7       These are not -- I mean, these are not

8       simplistic concepts, but in the context of this

9       case, they're not that difficult.

10                  It depends how you argue whether I

11      have to clear it up for the jury, but I think I

12      have made myself clear.  You can't argue that we

13      don't infringe literally or by the Doctrine of

14      Equivalents because these patents are invalid

15      and your lawyers told us so.

16                  You can argue we can't willfully

17      infringe because our lawyers told us these

18      patents are invalid, then you have your

19      argument, on literal infringement you don't come

20      within the scope of the claims on Doctrine of

21      Equivalents you practice the prior art and

22      therefore the equivalency is met, that's how the

23      case is.  I don't know how to say it clearer.

24                  MR. GUY:  I think that's clear, we

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,  )
                           )
            Plaintiff,     )
                           )  C.A. No. 04-1371-JJF
v.                         )
                           )
FAIRCHILD SEMICONDUCTOR    )
INTERNATIONAL, INC., and   )
FAIRCHILD SEMICONDUCTOR    )
CORPORATION,               )
                           )
            Defendants.    )

COPY

                Monday, November 20, 2006
                4:30 p.m.
                Teleconference in Chambers


                844 King Street
                Wilmington, Delaware


BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge




APPEARANCES:


          FISH & RICHARDSON
          BY:  WILLIAM J. MARSDEN, JR., ESQ.
          BY:  FRANK E. SCHERKENBACH, ESQ.
          BY:  HOWARD G. POLLACK, ESQ.
          BY:  MICHAEL R. HEADLEY, ESQ.


                    Counsel for the Plaintiff

1    broader -- the entire array, which showed the

2    other test structures on the same chip. We just

3    want to show them what this is, so that they're

4    not looking at something, and they have no idea

5    how big it is or what's on it.

6                And I think that that was all part

7    of the discussion that was in the deposition. So

8    you clearly had the specific bond diagram for

9    this particular test chip. It was in evidence.

10               I can't remember whether it was

11   Beesom Deposition Exhibit 8 or 9, but you had it.

12               MR. SCHERKENBACH: And the ones that

13   we had -- we have no problem with the new ones

14   that we have. The problem, which are, as I

15   understand it here, four or five, five documents

16   that I have on my list that are admittedly new,

17   now they may be related to, I think so, that you

18   produced before and used. But that doesn't, you

19   know, mean there isn't some prejudice to us in

20   having them produced late.

21               So that's our position.

22               MR. GUY: But you refused to inspect

23   them to explore that.

24               So I think, Your Honor, the point is

14

1    that we're trying to explain semiconductor

2    technology to a jury.  And to be able to find the

3    actual physical exhibits that correspond to the

4    documentation that was clearly in the deposition

5    would be helpful.  And that's really what we're

6    trying to get to here.

7            If these additional so-called new

8    exhibits, you know, I think there are only like

9    four or so of them, if they come in as

10   demonstratives, that's fine with us.  But I don't

11   believe that they should be excluded, given the

12   difficulty of explaining this technology to a lay

13   jury.

14           And if that's the only thing we have

15   at issue here, I'm sure that can be resolved on

16   that issue, Your Honor.  But I think that they're

17   trying to exclude a vast majority of exhibits on

18   what is a gotcha.  They really want to eliminate

19   our entire defense here.

20           MR. SCHERKENBACH:  Well, that is --

21           MR. GUY:  And let me just continue.

22           MR. SCHERKENBACH:  All right.  Go

23   ahead.

24           MR. GUY:  The issues that were in

15

1    the infringement phase were clearly -- you know,

2    it was not a validity case.  That case dealt with

3    willful infringement, and we had to put on

4    certain pieces of art that were initially known.

5    As you can imagine, not all of the evidence is

6    known immediately to our opinion counsel, and we

7    had to provide that in order to have those

8    opinions.

9            Now, we're at the validity phase.

10    We should be allowed to present, certainly not be

11    bound by the initial seven, but be able to

12    redefine them.  These are all exhibits that

13    they've had, Your Honor, for a very, very long

14    time.

15            Secondly, Your Honor, we're talking

16    about exclusion of admissible evidence.  And

17    that's critical.

18            We're not talking about here a

19    question of admissibility.  We're talking about

20    here the exclusion of admissible evidence that

21    would literally eliminate defenses.  And I think,

22    in all candor, Your Honor, this is reversible

23    error to exclude these exhibits.

24            THE COURT:  Don't use that.  Don't

16

1    use the reversible error argument.

2                MR. GUY:  All right, Your Honor.

3                THE COURT:  Because assuming it is

4    reversible error, I always blame the lawyers for

5    screwing up the record.  And you know who it

6    hurts?  Never the Court.  I get the same check.

7                MR. GUY:  Okay.  Thank you, Your

8    Honor, for that clarification.

9                THE COURT:  I just want to help you

10   out on that one.  I would be concerned if I was

11   an attorney or a party, not the judge.

12               MR. GUY:  Your Honor, this evidence

13   is admissible evidence.  We have a high burden of

14   clear and convincing evidence to meet.

15               And the exclusion of admissible

16   evidence at this juncture for no other reason

17   than to limit to some arbitrary number, Your

18   Honor, is highly prejudicial to our cause.  And

19   we have shown repeatedly that we're willing to

20   live by our expert reports.

21               They raised the issue of

22   Mr. Horwitz, they don't know what he's going to

23   say.  Well, what he's going to say is contained

24   in his expert report.  We will live and die by

1    into that there was an adjudication.  The

2    information they need is before them by that

3    assumption or presumption.

4              With regard to that, does anybody

5    have any misunderstandings?

6              MR. GUY:  We understand it, Your

7    Honor.  Again, I think that does rise to a level

8    of prejudice that we can avoid by simply doing

9    what we did in the validity instruction, which is

10   simply to change the word validity in the

11   validity instruction to patent infringement,

12   which is what we would propose, which is that

13   they've heard of the concept of patent

14   infringement and the issue of patent infringement

15   has no role in this case whatsoever.

16             So I believe that you're making

17   that -- you're addressing that.  We would propose

18   that language in a jury instruction.  The

19   language in the first trial was you have heard

20   that the patent concept of validity or invalidity

21   has no bearing in this case at all.

22             MR. SCHERKENBACH:  Your Honor, it's

23   Frank Scherkenbach.  That, of course, is apples

24   and oranges, because in the first trial validity

1   had not yet been decided.  And this trial we

2   already know the answer.  I do think it's a jury

3   trial ripe issue.  If the jury is told the

4   minimum, I think what you propose is acceptable.

5   We asked for more, and with all due respect, we

6   think a little bit more would be appropriate.

7   But I can live with the indication that you've

8   given.

9           I would also note that the first

10  jury actually did hear about both invalidity and

11  infringement.  They heard about validity, at

12  least to some degree through the willfulness

13  defense.  And so it strikes me as particularly

14  inappropriate for the second jury to hear

15  absolutely nothing about the fact of

16  infringement.

17          THE COURT:  Yeah.  Well, I thought

18  that in the first trial they did hear a lot

19  about, both in the context of willfulness and to

20  some degree in spillover about validity.

21          I do think that Fairchild was

22  scrupulous in following my order about it not

23  being an issue in the case, but it did spill

24  over.  And I guess, I can think, although I don't

1    want to promote this with either of you, through

2    witnesses where it could innocently come up, the

3    issue of infringement could innocently come up.

4              And what I'm trying to do is, from

5    the beginning of the trial, to make it a

6    non-issue. And I thought that this solution,

7    which has been used before, avoided it and

8    resulted in the same kind of treatment that

9    validity got in the first trial.

10             I will add to this that if during

11   the trial, as I believe, I mean, innocently

12   infringement is brought up by a witness, I would

13   be more than willing to add Fairchild's language,

14   which would be exchanging the word infringement

15   for validity, and give that kind of instruction

16   in my closing instruction, so that it's clear to

17   them that they not only assume infringement, for

18   purposes of this analysis, but that they

19   shouldn't be concerned about infringement,

20   because it has no role in this decision. It's

21   all about validity.

22             But I'll wait to hear the case

23   before I do that. But I think to start out,

24   unless you can assure me on both sides of the

1    State of Delaware      )
                            )
2    New Castle County      )

3

4

5              CERTIFICATE OF REPORTER

6

7          I, Heather M. Triozzi, Registered

8    Professional Reporter, Certified Shorthand

9    Reporter, and Notary Public, do hereby certify

10   that the foregoing record, Pages 1 to 54

11   inclusive, is a true and accurate transcript of

12   my stenographic notes taken on November 20, 2006,

13   in the above-captioned matter.

14

15          IN WITNESS WHEREOF, I have hereunto

16   set my hand and seal this 22nd day of November,

17   2006, at Wilmington.

18

19

20

21            Heather M. Triozzi, RPR, CSR

22

23

24