Power Integrations v. Fairchild

Exhibit 16

**Power Integrations' List and Brief Discussion of Motions *in limine* and Miscellaneous Issues**

Power Integrations' has renewed previously-filed motions *in limine* numbers 1, 2, 3, and 5 and withdrawn previously-filed motion *in limine* number 4.  (*See* D.I. 479; D.I. 511.) Power Integrations also raises two new motions *in limine* and four remaining miscellaneous issues it asks the Court to address in advance of trial.  Power Integrations filed a consolidated brief addressing the six remaining motions *in limine*, but provides the following list with its pretrial order submissions for the Court's reference:

1. **Motion to preclude any reference at trial to the reexamination of Power Integrations' circuit patents.**  Fairchild has indicated that it intends to introduce its reexamination requests and the PTO's grant of reexam during the upcoming trial.  Those requests are irrelevant and unduly prejudicial to Power Integrations for several reasons, including that different legal standards apply in the Patent Office and that there has been no substantive office action by the Patent Office in any of the reexam proceedings.   Power Integrations therefore seeks an order preventing Fairchild from addressing at trial, in any manner, the reexamination of Power Integrations' patents or the standards governing reexamination, including but not limited to any introduction of such materials as impeachment evidence.

2. **Motion to preclude Fairchild expert Dr. Paul Horowitz from relying on alleged "implied" findings by the jury in the first trial which contradict the Court's claim constructions.**  Dr. Horowitz testified recently in deposition that he will apply, in the validity trial, claim constructions different than those provided by the Court because, according to Dr. Horowitz's interpretation of the first jury's infringement finding, the jury could not have reached their verdict using the Court's constructions.  This issue is particularly significant with respect to the "soft start circuit" limitation in Power Integrations' '366 patent, where Dr. Horowitz apparently intends to testify that even though he previously acknowledged that certain structures are required under the Court's means-plus-function construction of the term, those structures must not really be required because the jury disagreed with Dr. Horowitz's ultimate conclusion and found that Fairchild infringed the patent.  Dr. Horowitz's new position assumes that the jury construed the claims in a manner contrary to the Court's instructions, and such an argument runs contrary to the presumption that jurors follow instructions and apply them correctly.  It also ignores a legitimate explanation for the first verdict – that the first jury disagreed with Dr. Horowitz and agreed instead with Power Integrations' expert Mr. Blauschild, finding that the required claim elements **were** present in the accused products using the proper claim construction.  Any testimony based on a different claim construction would be improper and likely to confuse the jury in the second case or, worse yet, suggest

to the second jury that it is free to disregard the Court's claim constructions in the manner Dr. Horowitz asserts the first jury did.

3. **Motion for more definite statement regarding Fairchild's invalidity contentions.** Fairchild has buried the contentions it will actually present at trial among more than 40 invalidity contentions set forth in Fairchild's expert reports. As with Fairchild's prior effort to raise more than 80 prior art references, Power Integrations has been unable to determine the true scope of Fairchild's intended proofs, without which Power Integrations cannot prepare its rebuttal presentation. With four days allotted for trial, though, it is clear that Fairchild will not introduce testimony on all of the contentions it has enumerated to date. Power Integrations therefore seeks an order compelling Fairchild to identify the specific contentions it intends to present at trial.

4. **[Withdrawn]**

5. **Motion to preclude any testimony from Gu-Yeon Wei, Fairchild's purported "expert on copying."** Fairchild has included its purported "expert on copying," Gu-Yeon Wei, on its most recent witness list, but Dr. Wei cannot provide any testimony on "copying" that will assist the finder of fact in this trial. Although the Court denied a similar motion *in limine* before the first trial, Dr. Wei's testimony during the first trial showed that he has no first-hand knowledge of any facts relevant to Fairchild's copying of the claimed inventions, as he freely admitted he has no knowledge of and did not consider the process Fairchild actually used to design the infringing products in forming his "opinion" on copying. (*See* Trial Tr. (10/5/2006) at 1165-67.) As such, Dr. Wei's opinion cannot meet the standards for admissibility of expert testimony, and the Court should prevent Fairchild from wasting time at trial and potentially confusing the Jury with Dr. Wei's testimony.

6. **Motion to preclude Fairchild expert Dr. Paul Horowitz from relying on alleged "prior art" not disclosed in his expert report and which lacks foundation, including specifically "demonstration materials" Fairchild manufactured during litigation purporting to exhibit a mode of operation of an integrated circuit not known before this case.** In his Supplemental report, Dr. Horowitz relied on the TEA2262 device as allegedly invalidating prior art to Power Integrations' '851 patent based on the description of a "burst mode" feature in the TEA2262 documentation. However, Dr. Horowitz admitted during his deposition that tests performed <u>after</u> submitting his report confirmed that the documented "burst mode" of TEA2262 does not, in fact, anticipate any claim of the '851 patent because the frequency of the TEA2262's oscillator actually remains constant, and does not vary, during burst mode, contrary to what Dr. Horowitz opined in his Supplemental Report. Because the documented burst mode was the sole basis for his invalidity arguments in his Supplemental Report, Dr. Horowitz set forth a new theory of invalidity <u>during his deposition</u> – one not found anywhere in his supplemental expert report. This new theory is that the

> TEA2262 device allegedly invalidates the '851 patent based on a purported "discontinuous burst mode" of operation; terminology Dr. Horowitz admitted he "made up," for a mode of operation Dr. Horowitz admitted is not described in the TEA2262 documentation.[1]  To support this new theory, Dr. Horowitz had Fairchild engineers create a "test board" that, under certain conditions he created in his laboratory tests, he now claims allegedly demonstrates "discontinuous burst mode" operation in the TEA2262 device.  Dr. Horowitz further admitted during deposition that he has no evidence to suggest that anyone ever operated a TEA2262 device in such a manner before his experiments on the Fairchild-made "test board."  Given the lack of any evidence of "discontinuous burst mode" prior to Dr. Horowitz and Fairchild's creation of that mode <u>after serving</u> his report, there is no foundation for any testimony regarding this allegedly invalidating feature of the TEA2262.  As Dr. Horowitz admitted, this theory is not set forth in his Supplemental Report, and his only excuse was that he "didn't have time" to conduct further experiments to "find" the discontinuous burst mode behavior before the report was due.  Because Fairchild's only invalidity theory is based on "evidence" not disclosed in an expert report, of a mode of operation for which there is no evidence ever existed before this litigation, the Court should preclude Fairchild from offering evidence at trial from Dr. Horowitz concerning "discontinuous burst mode" or arguing that the TEA2262 invalidates claims 1 or 4 of the '851 patent based on such an alleged mode of operation.

7. **Motion to exclude "expert" testimony from fact witness James Beasom.**  In connection with its pretrial submissions, Fairchild has suggested that it intends to have fact witness James Beasom provide previously-undisclosed expert testimony at the upcoming trial.  Specifically, Fairchild has stated in its witness list (Ex. 9) that Mr. Beasom will testify "that the '173 patent anticipates the '075 patent." Fairchild also produced new prior art earlier this year (DX606-DX613), well after the first trial was completed, and has indicated in its exhibit list (Ex. 7) that it intends to use these documents in connection with Mr. Beasom's testimony.  Because Fairchild did not designate Mr. Beasom as an expert or provide any expert reports from Mr. Beasom, any effort by Fairchild to elicit such testimony from Mr. Beasom would be improper.

Power Integrations also intends to ask the Court to consider the following issues at the pre-trial conference:

1. **Fairchild's inequitable conduct proofs.**  Fairchild has taken the position that it will not identify any of its inequitable conduct contentions or intended proofs until the Court sets a hearing on the matter.  Power Integrations believes the Court already resolved during the previous November 20, 2006 pretrial conference the

---

[1] During his deposition, Dr. Horowitz called the documented burst mode "continuous burst mode" to distinguish it from his new "discontinuous burst mode" theory.  Dr. Horowitz admitted that the only burst mode functionality described in the literature and discussed in his Supplemental Report – referred to only as "burst mode" in the documents but termed "continuous burst mode" by Dr. Horowitz during his deposition – does not invalidate the '851 patent claims.

3

procedure by which it will take testimony concerning inequitable conduct (at the end of the day outside the presence of the jury).  Power Integrations also believes Fairchild should not be permitted to elicit any testimony on inequitable conduct if it declines to do so during the week of the validity trial, particularly given that the parties and witnesses will already be assembled in Wilmington, with the facts of the validity trial fresh in mind.

2. **Fairchild's allegation regarding "new matter" added during prosecution of the '075 patent.**  Fairchild's pretrial submissions contain allegations that new matter was added during the prosecution of the '075 patent (*see* Pretrial Order Exhibit 3A ¶ 8, Exhibit 3B ¶ 5), but Fairchild has not provided any explanation of that contention in its pleadings, interrogatory responses, or expert reports, and even now Fairchild does not explain the basis for its claim.  Given the untimeliness and lack of any explanation for the new matter theory, Power Integrations requests the Court to preclude Fairchild from presenting arguments or testimony concerning "new matter" at trial.

3. **The order of evidence on forensic testing of Dr. Eklund's documents.**  At this point, Power Integrations does not know how Fairchild intends to present the evidence of its forensic consultant's work at trial or whether the Court will allow it; as a result, Power Integrations reserves the right to call its own forensic witness depending on Fairchild's proofs.  Power Integrations is prepared to rebut the testimony of Fairchild's consultant if necessary, but seeks clarification with regard to the order and timing of the presentation of any such evidence.  Specifically, Power Integrations submits that, if Fairchild calls its forensic consultant at all, it should do so as an answering witness, after Dr. Eklund testifies, and that Power Integrations should be permitted to provide brief answering testimony from its own forensic consultant thereafter.

4. **Fairchild and Intersil's continued refusal to produce Intersil documents concerning Mr. Beasom's work.**  Fairchild and Intersil recently noted during the parties' meet and confer in the context of their offensive case against Power Integrations (C.A. No. 07-187-JJF) that Intersil would be producing approximately ten boxes of documents related to Mr. Beasom's and Intersil's work related to the '719 patent, a patent that copied claim 1 of Power Integrations '075 patent verbatim.  Intersil has yet to provide a date certain for the production of these documents.  In contrast to its position on Beasom's documents in its offensive case, in this case Intersil repeatedly represented it had no additional documentation regarding Mr. Beasom's patents, but then continued to selectively produce additional materials regarding Mr. Beasom's work.  When Intersil and Fairchild continued to produce such materials following the conclusion of the first trial, Power Integrations expressed concerns with the selective production of documents, but neither Intersil nor Fairchild (who are both now represented by the Orrick and Ashby firms) mentioned these new documents or produced anything further at that time.  Given Fairchild and Intersil's continued gamesmanship with the production of documents regarding Mr. Beasom's work

4

and patents, Power Integrations raises this issue now so that the Court can address it in advance of the upcoming trial.

5