IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

              Plaintiff,

      v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

           Defendants.

C.A. No. 04-1371 JJF

**POWER INTEGRATIONS' [PROPOSED] JURY INSTRUCTIONS –
VALIDITY TRIAL**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
Jonathan J. Lamberson
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

Dated: September 7, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, | |
| Plaintiff, | |
| v. | C.A. No. 04-1371 JJF |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, | |
| Defendants. | |

**PRELIMINARY INSTRUCTION ON THE SCOPE OF THIS TRIAL**

Members of the jury, we've completed the patent video. The issue you are to consider in this case is whether Fairchild has met its burden of proof by showing clear and convincing evidence that any of the asserted claims of the four Power Integrations patents are invalid. We showed the entire video, and it talked about infringement, but that's not an issue in this trial. This is a validity trial. You should assume that the patents are infringed by Fairchild. I wanted to present the whole video, though, so you would have the whole context of it.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>                    Defendants. | C.A. No. 04-1371 JJF |

**FINAL JURY INSTRUCTIONS**

**I.**                              **GENERAL INSTRUCTIONS**

**I.1    INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.

You will also have a verdict form, which will list the questions that you must answer to decide in this case.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.1; Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp.,* C.A. No. 04-1371 JJF (October 6, 2006).

**I.2     JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.2; Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## I.3    BURDEN OF PROOF

This is a civil case in which Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, which are collectively referred to as "Fairchild," is urging that Power Integrations' patents are not valid. A patent, however, is presumed to be valid. Accordingly, Fairchild has the burden to prove each asserted claim of each patent-in-suit is not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and does not play any part in this case. Therefore, you should not consider it at all in your deliberations.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.3*

**I.4     EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played or read to you), the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Source: *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## I.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source: *Jury Instructions for Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**I.5.1    USE OF NOTES**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

Source: *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## I.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del.*; *Jury Instructions for ; Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**I.7    CREDIBILITY OF WITNESSES**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

Source: *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**I.8     NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Source: *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## I.9     EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field – a person called an expert witness – is permitted to state his opinion on those technical matters.

You are not required, however, to accept that opinion. As with any other witness, it is up to you to decide how much weight to give the opinion in light of all the evidence in the case.

You should take into account the expert's actual experience in the field, such as whether he has worked in the technology area to which he is testifying.  Even though the person rendering the opinion may have been admitted as an expert, you may weigh his level of expertise in determining the reliability of his opinion.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del.*; *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**I.10     DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

Source: *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**I.11     DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

Source: *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## II.  THE PARTIES AND THEIR CONTENTIONS

**II.1     THE PARTIES**

The plaintiff in this case is Power Integrations, Inc.  The defendants are Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation.  I will refer to plaintiff as "Power Integrations."  I will refer to defendants as "Fairchild."

## II.2     THE PARTIES' CONTENTIONS

Fairchild contends that the asserted claims of Power Integrations' patents-in-suit are not valid.  Power Integrations disagrees and contends that its patents are valid.

## II.3    SUMMARY OF PATENT ISSUES

In this case, you must decide the issues according to the instructions I give you.  In general the issue is whether Fairchild has proven by clear and convincing evidence that any of the asserted claims of the patents-in-suit are invalid.

Because this is a validity trial, you will not consider the issue of infringement, but you should assume that the patents are infringed by Fairchild.

## III. THE PATENT CLAIMS

### III.1  PATENT CLAIMS GENERALLY

Before you can decide whether or not the claims of Power Integrations' patents are valid, you will have to understand the patent "claims." Patent claims are the numbered paragraphs at the end of a patent. The patent claims involved here are claim 1 of U.S. Patent 6,249,876; claims 1 and 4 of U.S. Patent 6,107,851; claims 9 and 14 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

Claims may be directed to products, such as machines or chemicals, or they may be directed to methods for making or using a product. Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.1*; *Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006)*.

**III.2    DEPENDENT AND INDEPENDENT CLAIMS**

There are two different types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 1 of the '876 patent is an independent claim.  You know this because it mentions no other claims.  Accordingly, the words of each of the independent claims are read by themselves in order to determine what each of the claims covers.  Claim 14 of the '366 patent, on the other hand, is a dependent claim because it refers to independent claim 9.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2.2; Jury instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**III.3   CONSTRUCTION OF CLAIMS**

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is invalid.  You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied:

1.      The terms "MOS transistor" means "a metal oxide transistor."

2.      The term "substrate" means "the physical material on which a transistor or microcircuit is fabricated."

3.      The phrase "a pair of laterally spaced pockets of semiconductor material of a second conductivity type within the substrate" means "two laterally spaced pockets of semiconductor material of the opposite conductivity type from the substrate."

4.      The phrase "a surface adjoining layer of material of the first conductivity type on top of an intermediate portion of the extended drain region between the drain contact pocket and the surface adjoining positions" is construed according to its plain meaning, and further construction by the Court is not required.

5.      The phrase "said top layer of material" is construed according to its plain meaning when read in the context of the claim, and further construction by the Court is not required.

6.      The term "reverse bias voltage" means "a voltage applied across a rectifying junction with a polarity that provides a high-resistance path."

7.      The phrase "substrate region thereunder which forms a channel" is construed according to its plain meaning when read in the context of the claim, and further construction by the Court is not required.

18

8.     The term "frequency jittering" means "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference."

9.     The term "coupled" means that "two circuits are coupled when they are connected such that voltage, current or control signals pass from one to another."

10.     The term "soft start circuit" is a means-plus-function element.  The functions of the various "soft start circuits" are construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions.  The corresponding structures related to the "soft start circuit" are shown in Figures 3, 6 and 9 of the '366 patent and described in the specification of the '366 patent at col. 6, 11.  7-17; col. 6, 1. 35-col. 7, 1. 18; col. 11, 11.  40-50 and col. 12, 11. 5-10.

11.     The phrase "frequency variation circuit" means "a structure that provides the frequency variation signal."

12.     The phrase "frequency variation signal" means "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal within a predetermined frequency range."

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.2;Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

### III.4   MEANS-PLUS-FUNCTION CLAIMS

Claims 9 and 14 of the '366 patent and Claim 4 of the '851 patent have what are known as a "means-plus-function" element – specifically, the "soft start circuit" element.  The claim defines this element as a means for performing a specified function.  For example, a table could be claimed in a patent as being a tabletop, legs and glue; or an inventor could discuss in the patent the use of glue for attaching legs and then claim a table as being a tabletop, legs and means for attaching the legs to the tabletop.  The means-plus-function element would cover glue and any equivalent structure that performed the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language.  First, the prior art must perform the same function as specified in the claim.  If not, the claim containing that means-plus-function element is not anticipated.

Second, if the prior art does perform the required function, you must identify the structure in the prior art that actually performs this function.

Finally, you must determine whether that prior art structure is the same as or equivalent to the structure identified in the patent for performing the required function.  If the structure of the prior art is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present in the prior art.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.  Another way is to consider whether or not people of ordinary skill would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date the patent issued.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3.7 (modified for this trial); Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

# IV. VALIDITY

## IV.1    PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid.  From issuance of the patent, it is presumed that its subject matter is new, useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

This presumption of validity puts the burden of proving invalidity on Fairchild.  While this presumption can be rebutted, the burden is on Fairchild to do so.  This burden requires that Fairchild prove by clear and convincing evidence that in this case, each of the asserted claims is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.1*

## IV.2   ANTICIPATION

Fairchild contends that the inventions covered by certain claims of the patent-in-suit are invalid because they are not new.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles and other patents.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," Fairchild must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.

There cannot be an accidental or unrecognized anticipation.  A prior duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purpose, is not an invalidating anticipation.

Fairchild claims that certain elements are "inherent" in the prior art.  A party claiming inherency must prove that an element is inherent by clear and convincing evidence.  Inherency may not be established by probabilities or possibilities.  To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference, rather than possibly present.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.5; MEHL/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999); Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373,1377 (Fed. Cir. 2003).*

### IV.2.1 PRIOR INVENTION

Fairchild contends that the '075 patent is invalid because James Beasom invented the invention before Klas Eklund did.

In the United States, a patent is awarded to the first inventor. A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose. If another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she exercised reasonable diligence in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed a definite and permanent idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. An idea is defined and permanent when the inventor has a specific, settled idea or a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. Where a party seeks to show conception through oral testimony of an inventor, corroboration of this evidence is required.

While Power Integrations must present evidence concerning Dr. Eklund's conception, reduction to practice, and diligence, Fairchild bears the ultimate burden in showing that any claim of the '075 patent is invalid for prior invention. Fairchild can only meet this burden if it can show by clear and convincing evidence that Dr. Eklund was not the first inventor.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.5.3; Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1578 (Fed. Cir. 1996).*

## IV.2.2  DILIGENCE

I will now define for you the meaning of the term "diligence."  As I just explained, priority of invention usually goes to the party who first reduces to practice an invention. However, there is an important exception to this rule.  Where a party is first to conceive but second to reduce to practice, that party will be the first inventor if it can show reasonable diligence during the critical period.

The critical period starts on a date just prior to the other party's conception.  Thus, lapses in diligence before the other party's conception (i.e., before the critical period) are irrelevant. Once diligence during the critical period begins, it must continue uninterrupted until the inventor either actually or constructively reduces to practice the invention.

The question of diligence must be considered in light of all the circumstances.  The question is whether the inventor was pursuing his or her goal in a reasonable fashion.  If the inventor was doing things reasonably necessary to reduce the invention to practice, then he or she was diligent even if he or she did not actually work on the invention every day.  Inactivity can be justified by the reasonable everyday problems and limitations encountered by an inventor.

Source:  Jury Instructions for *Mycogen v. Monsanto*, C.A. No. 96-505-RRM, D. Del.; *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1316 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996).

### IV.2.3  CORROBORATION

Conception must be corroborated by evidence that shows the inventor disclosed to others his complete thought expressed in such clear terms as to enable those skilled in the art to make the invention.  However, there is no final single formula that must be followed in proving corroboration.  Rather, the sufficiency of corroborative evidence is determined by the "rule of reason."  Accordingly, you must make a reasonable analysis of all of the pertinent evidence to determine whether the inventor's testimony is credible.  Conception by an inventor, for the purpose of establishing priority, cannot be proved solely by an inventor's unsupported testimony; it must be supported by evidence of disclosure to others, or of an embodiment of the invention in some clearly perceptible form, such as drawings or models, with sufficient proof of identity in point of time.

Source: Jury Instructions for *Mycogen v. Monsanto*, C.A. No. 96-505-RRM, D. Del.; *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Loral Fairchild Corp. v. Matsushita Electrical Industrial Co.*, 266 F.3d 1358, 1363 (Fed. Cir. 2001).

## IV.3    OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.      Determine the scope and content of the prior art relied upon by Fairchild;

2.      Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention of the patent-in-suit was made;

4.      Consider objective factors of non-obviousness.

In addition, you may consider whether there was an apparent reason to combine or modify the prior art references in the fashion claimed by the patent at issue, but in doing so, you must guard against slipping into the use of hindsight.

I will explain each of these factors in more detail in a moment.  Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8; KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742-43 (April 30, 2007).*

### IV.3.1  SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.  The prior art that Fairchild contends render the patents-in-suit obvious includes the following:

1.      prior patents that issued before the critical date for a particular patent;

2.      prior publications having a publication date before the critical date for a particular patent;

3.      anything in public use or on sale in the United States before the critical date for a particular patent; and

4.      anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1*

## IV.3.2 DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences.  The test is whether the claimed invention as a whole would have been obvious after considering all of the prior art.  Each claim must be considered separately and in its entirety.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.2*

### IV.3.3  LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made.  A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.3*

**IV.3.4 REASON TO COMBINE**

Among the factors you may consider in determining whether multiple prior art references render a patent obvious are whether there was some apparent reason combine or modify the references and whether the combination would be reasonably likely to achieve the goal of the invention.

Source: *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742-43 (April 30, 2007).

**IV.3.5 HINDSIGHT**

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patent-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5*

## IV.3.6 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)

Lastly, in making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue:

1.     Commercial success or lack of commercial success of products covered by the patents-in-suit;

2.     A long felt need in the art which was satisfied by the invention of the patent-in-suit;

3.     The failure of others to make the invention;

4.     Copying of the invention by others in the field;

5.     Unexpected results achieved by the invention;

6.     Praise of the invention by the infringer or others in the field.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or features of the product other than those claimed in the patent-in-suit, then commercial success may have no relation to the issue of obviousness.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.6*

## IV.4   ENABLEMENT

Fairchild contends that the asserted claims of the '075 patent are invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter that is commonly understood by persons skilled in the art.  Similarly, a specification need not contain a working example if the patent disclosure is otherwise enabling.  Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.3*

## IV.5    DEFINITENESS UNDER 35 U.S.C. § 112

I will next discuss in more detail the standards by which the legal adequacy of a patent specification, both disclosure and claims, will be judged.

As previously mentioned, the Patent Laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the precise limits of the claimed invention. If a claim is found to be indefinite, the claim is invalid.

The amount of detail required to be included in claims depends on the particular invention and the prior art, and is not to be evaluated in the abstract but in conjunction with the disclosure. If the claims, read in light of the disclosure, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite.

Simply because some claim language may not be precise does not automatically render a claim invalid. When a word or phrase of degree such as "substantially equal to" is used, we must determine whether the patent disclosure provides some standard for measuring that degree. One must then determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the disclosure. Even if one needed to experiment so as to determine the limits of the claims of the patent, that would not necessarily be a basis for holding the claims invalid.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.1 (March, 1993)*

## V. DELIBERATION AND VERDICT

### V.1     INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.1;Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## V.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges — judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.2;Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

**V.3     DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that — your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.3*; *;Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## V.4    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 6.4;Jury Instructions for Power Integrations, Inc.  v. Fairchild Semiconductor Int'l, Inc. and Fairchild Semiconductor Corp., C.A. No. 04-1371 JJF (October 6, 2006).*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2007, I electronically filed with the Clerk of Court **POWER INTEGRATIONS' [PROPOSED] JURY INSTRUCTIONS – VALIDITY TRIAL** using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.  In addition, the filing will also be sent as indicated:

**BY HAND DELIVERY**
Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION, and third party
INTERSIL CORPORATION

**BY E-MAIL AND FEDERAL EXPRESS**
G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA  94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

*/s/ William J. Marsden, Jr.*
William J. Marsden, Jr.

80048974.doc