IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,               )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        C.A. No. 04-1371-JJF
                                        )
FAIRCHILD SEMICONDUCTOR                 )
INTERNATIONAL, INC., and FAIRCHILD      )
SEMICONDUCTOR CORPORATION,              )
                                        )
                    Defendants.         )

## DEFENDANTS' PROPOSED FINAL JURY INSTRUCTIONS

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*
G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
ORRICK, HERRINGTON & STUCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: September 7, 2007

OHS West:260297944.3

# TABLE OF CONTENTS

**Page**

I.    GENERAL INSTRUCTIONS ................................................................ 1

    I.1    INTRODUCTION ................................................................ 1
    I.2    JURORS' DUTIES ................................................................ 2
    I.3    BURDEN OF PROOF ................................................................ 3
    I.4    EVIDENCE DEFINED ................................................................ 4
    I.5    CONSIDERATION OF EVIDENCE ................................................ 5
    I.5.1    USE OF NOTES ................................................................ 6
    I.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................ 7
    I.7    CREDIBILITY OF WITNESSES ................................................ 8
    I.8    NUMBER OF WITNESSES ................................................ 9
    I.9    EXPERT WITNESSES ................................................ 10
    I.10    DEPOSITION TESTIMONY ................................................ 11
    I.11    DEMONSTRATIVE EXHIBITS ................................................ 12

II.    THE PARTIES AND THEIR CONTENTIONS ................................ 13

    II.1    THE PARTIES ................................................................ 13
    II.2    FAIRCHILD'S CONTENTIONS ................................................ 14
    II.3    POWER INTEGRATIONS' CONTENTIONS ................................ 15
    II.4    SUMMARY OF PATENT ISSUES ................................................ 16

III.    THE PATENT CLAIMS ................................................................ 17

    III.1    PATENT CLAIMS GENERALLY ................................................ 17
    III.2    DEPENDENT AND INDEPENDENT CLAIMS ................................ 18
    III.3    CONSTRUCTION OF CLAIMS ................................................ 19
    III.4    MEANS-PLUS-FUNCTION CLAIMS ................................................ 21

IV.    INVALIDITY ................................................................................ 22

    IV.1    PRESUMPTION OF VALIDITY ................................................ 23
    IV.2    ANTICIPATION ................................................................ 24
    IV.2.1    INHERENCY ................................................................ 25
    IV.3    PRIOR PUBLIC KNOWLEDGE ................................................ 26
    IV.4    PRIOR PUBLIC USE ................................................................ 27
    IV.5    PRIOR PUBLICATION ................................................................ 28
    IV.6    PRIOR UNITED STATES PATENT APPLICATION ........................ 29
    IV.7    PRIOR "ON-SALE" PRODUCTS ................................................ 30
    IV.8    PRIOR INVENTION ................................................................ 31
    IV.8.1    CORROBORATION ................................................................ 33
    IV.8.2    REDUCTION TO PRACTICE ................................................ 34
    IV.8.3    DILIGENCE IN REDUCTION TO PRACTICE ................................ 35
    IV.9    OBVIOUSNESS ................................................................ 36
    IV.9.1    SCOPE AND CONTENT OF THE PRIOR ART ........................ 38
    IV.9.2    LEVEL OF ORDINARY SKILL ................................................ 39
    IV.9.3    HINDSIGHT ................................................................ 40

## TABLE OF CONTENTS
(continued)

IV.9.4 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) ..................................... 41

IV.10  ENABLEMENT ................................................................. 42

IV.11  ABANDONMENT ............................................................. 43

V.    INFRINGEMENT .................................................................... 44

VI.   DELIBERATION AND VERDICT ........................................ 45

VI.1  INTRODUCTION ................................................................ 45

VI.2  UNANIMOUS VERDICT ................................................... 46

VI.3  DUTY TO DELIBERATE .................................................. 47

VI.4  COURT HAS NO OPINION .............................................. 48

# I. GENERAL INSTRUCTIONS

## I.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.

You will also have a verdict form, which will list the questions that you must decide in this case.

Source:

*Instruction given in first trial.*

## I.2     JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source:

*Instruction given in first trial.*

## I.3    BURDEN OF PROOF

This is a civil case in which Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation, which are collectively referred to as "Fairchild," is charging that four of Power Integrations, Inc.'s patents are not valid. Fairchild has a burden of proving invalidity by what is called clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Some of you may have heard the phrase " proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

Source:

*Instruction given in first trial (changing "infringement" to "invalidity"); 2004 Uniform Jury Instr. For Patent Cases in the D. Del .*

### I.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played or read to you), the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said of what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

<u>Source:</u>

*Instruction given in first trial.*

**I.5    CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

<u>Source</u>:

*Instruction given in first trial.*

### I.5.1   USE OF NOTES

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

<u>Source:</u>

*Instruction given in first trial.*

**I.6     DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

<u>Source:</u>

*Instruction given in first trial.*

### I.7     CREDIBILITY OF WITNESSES

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

<u>Source</u>:

*Instruction given in first trial.*

## I.8     NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Source:

*Instruction given in first trial.*

**I.9     EXPERT WITNESSES**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - a person is called an expert witness - is permitted to state his or her opinion on those technical matters.

You are not required, however to accept that opinion.  As with any other witness, it is up to you to decide how much weight to give the opinion in light of all the evidence in the case.

You should take into account the expert's actual experience in the field, such as whether he has worked in the technology area to which he is testifying.  Even though the person rendering the opinion may have been admitted as an expert, you may weigh his level of expertise in determining the reliability of his opinion.

<u>Source:</u>

*Instruction given in first trial.  Note: Fairchild continues to assert that the instruction it proposed in the first trial is the proper instruction.*

**I.10    DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

<u>Source:</u>

*Instruction given in first trial.*

### I.11    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

<u>Source</u>:

*Instruction given in first trial.*

## II.  THE PARTIES AND THEIR CONTENTIONS

**II.1    THE PARTIES**

The plaintiff in this case is Power Integrations, Inc.  The defendants are Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation.  I will refer to plaintiff as "Power Integrations." I will refer to defendants as "Fairchild."

<u>Source:</u>

*Instruction given in first trial.*

## II.2    FAIRCHILDS' CONTENTIONS

Fairchild contends that claims from four Power Integrations patents are invalid. Specifically, Fairchild charges that claim 1 of U.S. Patent 6,249,876, claims 1 and 4 of U.S. Patent 6,107,851, claims 9 and 14 of U.S. Patent 6,229,366, and claims 1 and 5 of U.S. Patent 4,811,075 are invalid. I will refer to these four patents collectively as the "patents-in-suit," or individually by the last three numbers of the patents.

These claims are invalid because they are anticipated by prior art that existed at the time the patents-in-suit were filed, or because the claims would have been obvious to someone having ordinary skill in the art at the time the patents-in-suit were filed. Claims 1 and 5 of the '075 patent are invalid for the additional reasons that they are not enabled, and that Power Integrations added new matter during its prosecution.

Source:

*Instruction given in first trial (replacing "infringement" with "invalidity").*

## II.3    POWER INTEGRATIONS' CONTENTIONS

Power Integrations contends that the claims of the four patents-in-suit are valid.

**II.4     SUMMARY OF PATENT ISSUES**

In this case, you must decide the issues according to the instructions I give you. In general the issue is:

1.     Whether Fairchild has proven by clear and convincing evidence that any of the seven claims of the patents-in-suit are invalid.

<u>Source</u>:

*Instruction given in first trial (replacing "infringement" with "invalidity").*

## III. THE PATENT CLAIMS

### III.1    PATENT CLAIMS GENERALLY

Deciding whether a claim of a patent is invalid is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to the prior art to determine whether every element of the claim can either be found in the prior patent or publication, or would have been obvious to include to one having ordinary skill in the art in light of the prior patent or publication.

Before you can decide whether or not the patents-in-suit are invalid, you will have to understand the patent "claims." Patent claims are the numbered paragraphs at the end of a patent. The patent claims involved here are claim 1 of U.S. Patent 6,249,876; claims 1 and 4 of U.S. Patent 6,107,851; claims 9 and 14 of U.S. Patent 6,229,366; and claims 1 and 5 of U.S. Patent 4,811,075.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. It is the claims of the patent that are invalidated.

Claims may be directed to products, such as machines or chemicals, or they may be directed to methods for making or using a product. Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

Source:

*Instruction given in first trial (replacing "infringement" with "invalidity").*

### III.2  DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 1 of the '075 patent is an independent claim.  You know this because it mentions no other claims.  Accordingly, the words of each of the independent claims are read by themselves in order to determine what each of the claims covers.

Claim 5 of the '075 patent, on the other hand, is a dependent claim.  It refers to independent claim 1 of the same patent.  For a prior art reference to invalidate dependent claim 5 of the '075 patent, all the elements of claim 1 and claim 5 both either be present in the prior art reference or would have been obvious to include to one having ordinary skill in the art.  Therefore, if you find that a dependent claim is invalid, you must also find that the independent claim upon which it depends is also invalid.

<u>Source:</u>

*Instruction given in first trial (replacing "infringement" with "invalidity").*

### III.3    CONSTRUCTION OF CLAIMS

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is infringed.  You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are toward the end of each patent.  You are advised that the following definitions for the following terms must be applied:

1.    The terms "MOS transistor" means "a metal oxide transistor."

2.    The term "substrate" means "the physical material on which a transistor or microcircuit is fabricated."

3.    The phrase "a pair of laterally spaced pockets of semiconductor material of a second conductivity type within the substrate" means "two laterally spaced pockets of semiconductor material of the opposite conductivity type from the substrate."

4.    The phrase "a surface adjoining layer of material of the first conductivity type on top of an intermediate portion of the extended drain region between the drain contact pocket and the surface adjoining positions" is construed according to its plain meaning, and further construction by the Court is not required.

5.    The phrase "said top layer of material" is construed according to its plain meaning when read in the context of the claim, and further construction by the Court is not required.

6.    The term "reverse bias voltage" means "a voltage applied across a rectifying junction with a polarity that provides a high-resistance path."

7.     The phrase "substrate region thereunder which forms a channel" is construed according to its plain meaning when read in the context of the claim, and further construction by the Court is not required.

8.     The term "frequency jittering" means "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference."

9.     The term "coupled" means that "two circuits are coupled when they are connected such that voltage, current or control signals pass from one to another."

10.     The term "primary voltage" means a "base or initial voltage" and the term is not defined by reference to the source from which it may be generated.

11.     The term "secondary voltage" means "a subsequent or additional voltage."

12.     The term "combining" means "adding together."

13.     The term "supplemental voltage" means "a voltage in addition to the primary voltage."

14.     The term "soft start circuit" is a means-plus-function element.  The functions of the various "soft start circuits" are construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions.  The corresponding structures related to the "soft start circuit" are shown in Figures 3, 6 and 9 of the '366 patent and described in the specification of the '366 patent at col. 6, 11. 7-17; col. 6, 1. 35-col. 7, 1. 18; col. 11, 11. 40-50 and col. 12, 11.5-10.

15.     The phrase "frequency variation circuit" means "a structure that provides the frequency variation signal."

16.     The phrase "frequency variation signal" means "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal within a predetermined frequency range."

Source:

*Instruction given in first trial.*

### III.4    MEANS-PLUS-FUNCTION CLAIMS

Claims 9 and 14 of the `366 patent and Claim 4 of the `851 patent have what is known as a "means-plus-function" element - specifically, the "soft start circuit" element. The claim defines this element as a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs and glue; or an inventor could discuss in the patent the use of glue for attaching legs and then claim a table as being a tabletop, legs and means for attaching the legs to the tabletop. The means-plus-function element would cover glue and any equivalent structure that performed the required function of "attaching the legs to the tabletop."

I will now explain the three special rules that apply to this type of claim language. First, the prior art reference must perform the same function as specified in the claim. If not, the claim containing that means-plus-function element is not invalidated.

Second, if the prior art reference does perform the required function, you must identify the structure in the prior art reference that actually performs this function.

Finally, you must determine whether that prior art structure is the same as or equivalent to the structure identified in the patent for performing the required function. If the structure of the prior art reference is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the structure in the prior art reference performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill would have believed that the structure of the prior art reference and the structure in the patent were interchangeable as of the date the patent issued.

<u>Source</u>: *Instruction given in first trial (replacing "infringement" with "invalidity").*

## IV. INVALIDITY

Fairchild contends that several claims of the patents-in-suit are invalid for failure to satisfy the legal requirements of patentability. In particular, Fairchild contends that the asserted claims are invalid for anticipation by prior public knowledge, prior public use, prior invention by another, prior publication, prior sale, obviousness, lack of enablement, and for additional matter having been added during prosecution. I will now instruct you on each of these defenses.

<u>Source</u>:

*2004 Uniform Jury Instr. For Patent Cases in the D. Del*

### IV.1    PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that the patent's subject matter is new, useful and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law. The presumption is much diminished where Fairchild shows Power Integrations failed to disclose prior art to the patent office, or where Fairchild relies on prior art that was not before the patent office during that patent's prosecution.

Fairchild has the burden of proving invalidity of each claim by clear and convincing evidence.

Source:

*2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.1.*

*KSR v. Teleflex, 127 S. Ct. 1727 (U.S. 2007).*

**IV.2    ANTICIPATION**

Fairchild contends that the inventions covered by claims of the patent-in-suit are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles and other patents. Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," Fairchild must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention. However, if the claimed invention was formed only accidentally or under unusual conditions, it is not an invalidating anticipation.

Source:

*2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.5*

## IV.2.1 INHERENCY

In determining whether a single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently occurred as a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

Source:

*2006 AIPLA Model Patent Jury Instructions; LG Phillips v. Tatung*, No. 05-292-JJF

## IV.3    PRIOR PUBLIC KNOWLEDGE

Fairchild contends that some claims of the patents in suit were anticipated because the invention defined in those claims was publicly known or used by others in the United States before the date of invention. The date the patent applicant made its invention is presumed to be the date the patent application was filed, but that date is to be determined by you, the jury, and there is a separate instruction providing guidance on that date.

A patent claim is invalid if the invention recited in that claim was publicly known or used by others in the United States before the patent applicant invented it. If this is true, you must find the patent invalid.

Sources & Comments:

Instruction 4.5.1, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); 35 U.S.C. § 102; *Kistler Instrumente AG. v. United States*, 628 F.2d 1303, 1308 (Fed. Cir. 1980); *Eaton v. Rockwell*, C.A. No. 97-421-JJF (June 30, 1998) (Farnan, J.).

## IV.4   PRIOR PUBLIC USE

Fairchild contends that some claims of the patents-in-suit were anticipated because the invention defined in those claims was publicly used one year prior to the filing date of the patent.

A public use by any person, including Power Integrations or any Power Integrations inventor, who is under no limitation, restriction or obligation of secrecy by the inventor, may invalidate the patents-in-suit if it occurred one year or more prior to the filing date of the patent.

An invention is publicly used by another when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.

Sources & Comments:

Instruction 4.4, St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al., C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

## IV.5    PRIOR PUBLICATION

Fairchild contends that some claims of the patents-in-suit were anticipated because the invention defined in each such claim was described in a prior publication, such as an article or another patent. The prior publication can include publications by the inventor or by Power Integrations. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either: (i) before the patentee made his invention; or (ii) more than one year before the effective filing date of the patentee's patent application.

For a printed publication to anticipate the claims of the patent, Fairchild must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the patent claim. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

In deciding whether a single item of prior art anticipates a patent claim you should consider both what is expressly disclosed or embodied in the particular item of prior art, and also what is inherently present.

Sources & Comments:

(2004) Instruction 4.6, *St. Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.); Instruction 4.5.4, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); 35 U.S.C. § 102; *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *Honeywell International, Inc. v. Hamilton Sundstrand Corp.*, C.A. No. 99-309-GMS (Feb. 15, 2001); *Baxter International, Inc. v. Cobe Laboratories, Inc.*, 88 F.3d 1054 (Fed. Cir. 1996).

## IV.6    PRIOR UNITED STATES PATENT APPLICATION

Fairchild contends that claim 1 of the '075 patent was anticipated because the invention defined in that claim was embodied in the prior Beasom '173 patent application. A patent may be found invalid if the claimed invention was described in a patent granted on an application as filed by another in the United States before the invention was made by Power Integrations in the United States. The application leading to the Beasom '173 patent was filed on January 7, 1986, approximately 16 months before the filing of the Eklund '075 patent.

In order for the '075 patent to be anticipated by a prior United States patent application, Fairchild must prove the following:

1.    There is another patent that has inventors other than named inventor of the '075 patent;

2.    The application for the other patent was filed in the United States before the invention of the '075 patent was conceived and reduced to practice; and

3.    That the other patent describes what Mr. Eklund claimed in claim 1 of the '075 patent.

Sources & Comments:

2004 Delaware Model Jury Instructions; 35 U.S.C. § 102; *Baxter International, Inc. v. Cobe Laboratories, Inc.*, 88 F.3d 1054 (Fed. Cir. 1996); *Glaxo Wellcome v. Genentech*, C.A. No. 99-335-RRM (May 2, 2001).

## IV.7    PRIOR "ON SALE" PRODUCTS

The claims of the patents-in-suit are invalid if you find that the subject matter claimed in the patents was "on sale" one year or more before the effective filing date of the patents. Power Integrations' SMP3, SMP211, SMP240, and SMP 260 products, as well as SGS-Thompson's TEA2262 device, were on sale at least a year before the filing dates of the '366, the '851 and the '876 Patents. These products are therefore prior art to the '366, '851 and '876 Patents.

To prove anticipation (or obviousness), Fairchild must show that these products anticipate (or render obvious) the claims of the '366, '851 and '876 Patents that Fairchild asserts are invalid.

Sources & Comments:

(2004) Instruction 4.7, St. *Clair Intellectual Property Consultants, Inc. v. Fuji Photo Film Co. Ltd., et al.*, C.A. No. 03-241 (D. Del. 2004) (Farnan, J.).

## IV.8    PRIOR INVENTION

Fairchild contends that the Claim 1 of the '075 Patent is invalid because James Beasom, the named inventor on U.S. Patent 4,823,173 ("the Beasom '173 Patent") invented the invention before Klas Eklund, the named inventor on the '075 Patent.

In the United States, a patent is awarded to the first inventor. Therefore, Claim 1 of the '075 Patent is invalid if: (i) the invention defined by that claim was invented by Mr. Beasom in the United States before it was invented by Mr. Eklund; and (ii) Mr. Beasom did not abandon, suppress or conceal the invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose. Thus, the first person to file a patent application with an enabling disclosure is presumed to be the first person to reduce the invention to practice. If another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

There is, however, an exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercised reasonable diligence in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed a definite and permanent idea of how to make and use each and every element of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. An idea is defined and permanent when the inventor has a specific, settled idea or a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. Where a party seeks to show conception through oral testimony of an inventor, corroboration of this evidence is required.

A party abandons, suppresses or conceals the invention if, after reducing the invention to practice, the party unreasonably delays making the invention public. A party can make an invention public by either filing for a U.S. patent or selling it or otherwise using it for a commercial purpose.

There is no particular length of delay that is per se unreasonable. You must decide whether, under the facts before you, any delay between the reduction to practice and public disclosure, such as the filing of a patent application, was reasonable or excused. In making this determination, you should consider the length of the delay period, the existence and nature of any activity during the delay period, or the lack of activity during the delay period. If there was a lack of activity, consider the cause of the resumption of activity.

Sources & Comments:

Instruction 4.5.3, Proposed Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2004); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003) (Farnan, J.); 35 U.S.C. §§ 102, 151; *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362 (Fed. Cir. 2000); *Checkpoint Systems, Inc. v. U.S. Intern. Trade Comm'n*, 54 F.3d 756, 761-63 (Fed. Cir. 1995); *Eaton v. Rockwell*, C.A. No. 97-421-JJF (June 30, 1998); *Arigenetics v. Monsanto, et al.*, C.A. No. 96-505-RRM (Jan. 30, 1998);

### IV.8.1 CORROBORATION

Where a party seeks to show earlier conception, reduction to practice, or diligence in reduction to practice of the invention by the oral testimony or unwitnessed documents of the inventor, independent corroboration of the inventor's testimony or documents is required. This means that evidence of the inventor's earlier conception, reduction to practice or diligence must not consist of the inventor's uncorroborated statements or unwitnessed notes or other documents. There must be corroborating evidence which shows that inventor disclosed to some other person each and every element of the inventor's complete invention expressed in such clear terms as to enable those skilled in the art to make the invention. The independent corroborating evidence may consist of testimony of a witness, other than the inventor, to the conception. The corroborating evidence may also consist of evidence of surrounding facts and circumstances independent of information received from the inventor. There is no single formula that must be followed in proving corroboration. Rather, you must make a reasonable analysis of all the pertinent evidence to determine whether the inventor's testimony is credible, bearing in mind that the purpose of corroboration is to prevent fraud by providing independent confirmation of the inventor's testimony.

If the documents and oral testimony of the inventor are not corroborated by independent evidence, you may not consider the inventor's uncorroborated testimony or unwitnessed documents.

Sources & Comments:

*Price v. Symsek*, 988 F.2d 1187, 1194-95 (Fed. Cir. 1993); *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998); *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989); *Kridl v. McCormick*, 105 F.3d 1446, 1449-50 (Fed. Cir. 1997); *Stern v. Trustees of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006).

**IV.8.2 REDUCTION TO PRACTICE**

To constitute a prior invention, a reduction to practice must meet all the limitations of the patent claim. "Reduction to practice" may be established in two ways. Reduction to practice may be established by a "constructive" reduction to practice or an "actual" reduction to practice.

A constructive reduction to practice occurs when a patent application describing the claimed invention is filed with the United States Patent and Trademark Office. The Beasom '173 patent application is a constructive reduction to practice of the inventions disclosed in it as of January 7, 1986.

An actual reduction to practice of a claimed invention occurs when the inventor or persons working at his/her direction construct a physical embodiment meeting each and every limitation of the claimed invention that is shown to work for its intended purpose. For any actual reduction to practice of Claim 1 of the '075 Patent, you must determine whether the invention that was reduced to practice actually meets all limitations of Claim 1 of the '075 Patent. This is true for any actual reduction to practice by either of the two inventors – Mr. Eklund or Mr. Beasom.

Sources & Comments:

Reduction to Practice Instruction, *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (D. Del. 2004).

## IV.8.3 DILIGENCE IN REDUCTION TO PRACTICE

Priority of invention is usually awarded to the person who first reduces to practice an invention. However, there is an exception to this rule. When a person is first to conceive of the invention, but second to reduce to practice, that person will be the first inventor if that person was reasonably diligent during the critical period and can corroborate that diligence. If, applying the previous instructions, you find that either Mr. Beasom or Mr. Eklund was the first to conceive the invention of Claim 1 of the '075 Patent, but the second to reduce it to practice, you must determine whether he was also reasonably diligent.

The critical period for the diligence of such a party starts just prior to the second party's conception date and continues through the first party's reduction to practice. Lapses in diligence before Mr. Beasom's conception (i.e., before the critical period) are irrelevant. Diligence during the critical period means that the inventor's work on the invention, and the work of others at the direction of the inventor, must be reasonably continuous for the critical period in light of all the circumstances until the inventor either actually or constructively reduces to practice the invention. Constant effort is not required to establish diligence, nor is it necessary to show that an inventor spent all of his/her time working on the invention. Rather, an inventor must simply have engaged in reasonably continuous activity such that the invention's conception and reduction to practice are substantially one continuous act. As with conception and reduction to practice, corroboration of the inventor's testimony or unwitnessed documents recording diligence is also required.

Sources & Comments:

Diligence Instruction, *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (D. Del. 2004); *Monsanto Co. v. Mycogen Plant Science, Inc.*, 61 F. Supp. 2d 133, 180 (D. Del. 1999).

**IV.9   OBVIOUSNESS**

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.  I will explain to you what a person of ordinary skill in the art is later on in these instructions.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

**1.**     Determine the scope and content of the prior art relied upon by Fairchild;

**2.**     Identify the differences, if any, between each claim of the patents-in-suit and the prior art; and

**3.**     Determine the level of ordinary skill in the pertinent art at the time the invention of the patents-in-suit were made.

In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patent owner controls.  The analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for you can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.  Design incentives and other market forces can prompt variations of prior art.  If a person of ordinary skill can implement a predictable variation, then it is obvious.  Changes or additions to prior art that would have been obvious to one of ordinary skill in the art are not patentable.  Nor are design steps that are well within the grasp of a person of ordinary skill in the relevant art.

The combination of familiar elements according to known methods is also likely to be obvious when it does no more than yield predictable results.  When a patent simply arranges old elements with each performing the same function it had been known to

perform and yields no more than one would expect from such an arrangement, the combination is obvious. Common sense teaches that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle. Any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed.

Source:

*KSR v. Teleflex, 127 S. Ct. 1727 (U.S. 2007); (2004) Uniform Jury Instr. For Patent Cases in the D. Del. 4.8*

## IV.9.1 SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. The prior art that Fairchild contends render the patents-in-suit obvious includes the following:

1.      prior patents that issued before the critical date for a particular patent;

2.      prior publications having a publication date before the critical date for a particular patent;

3.      U.S. Patents that have a filing date prior to the critical date for a particular patent;

4.      anything in public use or on sale in the United States before the critical date for a particular patent, including the products of Power Integrations;

5.      anything that was publicly known or used by others in this country before the date of invention of a patent-in-suit, including the products of Power Integrations; and

6.      anything that was made or built or any process that was used in this country by another person before the date of invention of a patent-in-suit, where the thing made or built or the process used was not abandoned, suppressed or concealed.

Source:

*Both 1993 and 2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1*

## IV.9.2 LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made. A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention. A person of ordinary skill is also a person of ordinary creativity, not an automaton.

Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

For purposes of the '075 patent, a person of ordinary skill in the art would have at least a bachelor's degree in electrical engineering, or its equivalent, as well as the equivalent of at least two years of practical experience with MOS transistors, semiconductor fabrication processes, or related technologies. For purposes of the '876, '851, and '366 patents, a person of ordinary skill in the art would have either a BSEE or MSEE degree in electrical engineering, and would also have 3-7 years experience designing analog electronic circuitry in general. Such a person would also be familiar with the basic textbook topologies of switching power supplies, oscillators, counters, and digital-to-analog converters.

Source:

*1993 and 2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.3*

### IV.9.3 HINDSIGHT

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patent-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. A person of ordinary skill, however, will be able to fit the teachings of multiple prior art references together like pieces of a puzzle.

*Source:*

*KSR v. Teleflex, 127 S. Ct. 1727 (U.S. 2007); 2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5*

## IV.9.4 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)

In making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence that may tend to show the non-obviousness of the claims at issue:

7.     Commercial success or lack of commercial success of products covered by the patents-in-suit;

8.     A long-felt need in the art that was satisfied by the invention of the patents-in-suit; and

9.     Copying of the invention by others in the field.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or copying occurred of features of the product other than those claimed in the patent-in-suit, then any commercial success or copying may have no relation to the issue of obviousness.

Evidence that may tend to show the obviousness of an invention is a showing of independent development or making of the invention by others before the inventor of the patents or at about the same time.

Source:

*1993 and 2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.6*

## IV.10  ENABLEMENT

Fairchild contends that the '075 patent is invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter that is commonly understood by persons skilled in the art.  Similarly, a specification need not contain a working example if the patent disclosure is otherwise enabling.  The enablement defense does not require an intent to withhold; all that is required is a failure to teach how to practice the invention.  Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

Source:

*2004 Uniform Jury Instr. For Patent Cases in the D. Del. 4.3.*

## IV.11  ABANDONMENT

Fairchild contends that the '075 patent is invalid because Mr. Eklund abandoned his invention.  A person is not entitled to a patent if he has abandoned the invention.

<u>Source</u>:

35 U.S.C. § 102(c)

## V.    INFRINGEMENT

You have heard the concept of patent infringement. The issue of patent infringement has no role in this case whatsoever. The issues of patent infringement and damages have previously been resolved in this case. They should play no role in your determination of validity of the four asserted patents.

## VI.  DELIBERATION AND VERDICT

### VI.1    INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

Source:

*Instruction given in first trial.*

## VI.2   UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source:

*Instruction given in first trial.*

### VI.3   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each others views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that - your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source:

*Instruction given in first trial.*

**VI.4    COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

Source:

*Instruction given in first trial.*