IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>            Defendants. | C.A. No. 04-1371 JJF<br><br>**HIGHLY CONFIDENTIAL**<br>**FILED UNDER SEAL**<br>**PURSUANT TO COURT ORDER**<br><br>**REDACTED** |

**POWER INTEGRATIONS, INC.'S APPLICATION TO EXCLUDE
THE ADMISSION OF CERTAIN EVIDENCE RELATED TO
FAIRCHILD'S FORENSIC TESTING**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wagner Compton (#4693) (kcompton@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

DATED: August 31, 2007

Redacted Version: September 10, 2007

## TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARDS ...................................................................................................3

II.   ARGUMENT..................................................................................................................6

      A.    Fairchild's Forensic Consultant Should Not Be
             Permitted to Provide Conclusory Legal Opinions. ....................................6

      B.    Several of Mr. Speckin's Opinions Are Based on Pure
             Speculation and Should Be Excluded Because They Will
             Not Assist the Trier of Fact..........................................................................6

III.  CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adrian v. Lafler*,
    299 F. Supp. 2d 754 (E.D. Mich. 2004)..................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................4, 5 6, 7, 8

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000).....................................................................................4

*Izume Products Co. v. Koninklijke Philips Electronics N.V.*,
    315 F. Supp. 2d 589 (D. Del. 2004)........................................................................4

*Izume Products*,
    315 F. Supp. 2d 589 (D. Del. 2004)........................................................................5

*In re Paoli Railroad Yard PCB Litigation*,
    35 F.3d 717 (3d Cir. 1994)..................................................................................4, 5

*Watkins v. New Castle County*,
    374 F. Supp. 2d 379 (D. Del. 2005)........................................................................6

## FEDERAL STATUTES

Fed. R. Evid. 702 ...........................................................................................3, 4, 6, 10

Advisory Committee Notes to Fed. R. Evid. 704 ..................................................................6

Pursuant to Federal Rules of Evidence 104(a), 402, 403, and 702, the Court's invitation during the hearing of July 13, 2007, and the Court's order of August 6, 2007, Plaintiff Power Integrations, Inc. respectfully asks the Court to exclude certain testimony of Erich J. Speckin, Fairchild's purported expert in the area of forensic document analysis, because the testimony lacks foundation, consists of conclusory legal opinions, is unreliable, and will not assist the trier of fact.

Mr. Speckin's work falls into two main categories. First, Mr. Speckin conducted analysis of ballpoint pen ink samples taken from certain documents to determine their chemical composition and, thereby, render opinions about their origin and dates of commercial availability. Power Integrations' application is not directed to this portion of Mr. Speckin's anticipated testimony. On the other hand, Mr. Speckin renders opinions in his reports purportedly based on observations about photocopies of original documents, including such things as the number and placement of staple holes and punch holes. Because these observations and resulting conclusions are irrelevant to the question of whether the underlying original documents were created on the dates written on them, and because Mr. Speckin's associated opinions are not based on any scientific principals, objective test procedures, or analyses, they lack foundation and do not have the necessary degree of relevance and reliability to satisfy the requirements of the Rules of Evidence. They should be excluded.

More specifically, based on a review of <u>copies</u> of certain of Dr. Klas Eklund's invention notes, Mr. Speckin provides a number of opinions concerning the underlying <u>original</u> documents, including that



Despite these unequivocally stated conclusions about the <u>original</u> documents from which certain copies were made, Mr. Speckin elsewhere notes in his report that

    This fundamental inconsistency undermines Mr. Speckin's analysis and demonstrates the potential for confusion at trial, as the testimony about certain markings (or lack thereof) on the copies has no bearing with respect to Fairchild's ultimate burden of providing clear and convincing evidence that someone other than Dr. Eklund was the first to conceive of the complete claimed invention of the '075 patent.

    Mr. Speckin nevertheless attempts to support his conclusions regarding the date of Dr. Eklund's original notes based on his inspection of <u>copies</u> of the documents, including the number of staple holes in the copies, the number and placement of punch holes in the copies, the alignment of graph paper lines in copies, and the like. (*See id.* at ¶¶16(a)(i-iv), 16(a)(vi-ix), 17(a)(i-viii), 17(a)(xi); Ex. 2 at ¶10.) As noted above, Power Integrations is not challenging Mr.

---

[1]    All exhibit citations refer to the accompanying declaration of Kyle Wagner Compton.

Speckin's ability to analyze inks or to conduct Electro Static Detection Apparatus ("ESDA") testing, even if it disagrees with the conclusions he draws from those tests, because those conclusions are based on information that can be gleaned from and relates to the copies themselves. In the case of the original pen ink overwriting on the copies, that ink can be analyzed, and ESDA testing can expose impressions on pages that were beneath the overwritten page at the time the pen overwriting was done. However, Mr. Speckin's attempt to draw "scientific" conclusions about original documents from other observations regarding the condition of multiple copies of documents is pure speculation, which does not depend on any specialized knowledge and would confuse, not assist, the trier of fact.

First, Mr. Speckin presents no testable hypothesis with respect to the original documents that is subject to verification by reliable scientific principles and methods. Rather, as pointed out by Dr. Lyter, and conceded by Mr. Speckin, there are any number of possible explanations for the condition of the copies inspected by Mr. Speckin, and it is not possible to draw inferences about the condition of the originals from the copies. Second, to the extent the conditions of the copies have any relevance, Mr. Speckin's basic observations, and any conclusion(s) to be drawn from them, are within the knowledge and understanding of the Jury. As such, they will not assist the trier of fact beyond what the Jury will already be able to observe from its own review of the documents, and any "expert" testimony on these issues would be unduly prejudicial because it would bear the imprimatur of Mr. Speckin's self-proclaimed "expert" status, in addition to the "Forensic Document Examiner" title he was given by his father. (Ex. 3 (Speckin Tr.) at 236:8-22; Ex. 4 (excerpts from *Armament Systems* deposition) at 147:25-149:5.)

I.  **LEGAL STANDARDS**

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, provides:

3

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires the Court to determine whether proposed testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Pursuant to these teachings, the Third Circuit has construed Rule 702 as embodying "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli Railroad Yard PCB Litigation ("Paoli II")*, 35 F.3d 717, 741-43 (3d Cir. 1994)).

First, to qualify as an expert, "a witness must have sufficient qualifications in the form of knowledge, skills, and training" in the proposed area of testimony. *Izume Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004). Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony, the basis of which "can be practical experience as well as academic training and credentials." *Id.* (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)).

Second, an expert's opinion must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 589-90). The Third Circuit has enumerated the following factors for courts to consider when determining whether the proposed scientific methodology is reliable:

4

>(1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and, (8) the non-judicial uses to which the method has been put.

*Izume Products*, 315 F. Supp. 2d at 600-601 (citing *Paoli II*, 35 F.3d at 742 n.8); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

Finally, the proffered testimony must fit the issues in the case. *Daubert*, 509 U.S. at 591. That is, it must be relevant for the purposes of the case and must assist the trier of fact. This requirement mandates "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Paoli II*, 33 F.3d at 743 (quoting *Daubert*, 509 U.S. at 591).

The Supreme Court has declared that the district court has a gatekeeping obligation to ensure that any expert testimony admitted is relevant and reliable. *Daubert*, 509 U.S. at 589. "[T]he trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. The party offering the expert must satisfy this burden "by a preponderance of proof." *Id.* at 593 n.10 (citation omitted).

5

## II. ARGUMENT

### A. Fairchild's Forensic Consultant Should Not Be Permitted to Provide Conclusory Legal Opinions.

Fairchild's forensic consultant, Mr. Erich Speckin, has provided two reports in this case, in which he makes a number of statements regarding whether something in his view provides "clear and convincing evidence" or a "preponderance of evidence" with respect to certain issues. (Ex. 1 at 3, ¶¶6(D)-(F) & 11, ¶18; Ex. 2 at 3, ¶6.) Such testimony is impermissible, as "testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder." *See Watkins v. New Castle County*, 374 F. Supp. 2d 379, 392 (D. Del. 2005) (citations omitted); *see also* Advisory Committee Notes to Federal Rule of Evidence 704 (noting that Rules 701, 702, and 403 "stand ready to exclude opinions phrased in terms of inadequately explored legal criteria"). As in *Watkins*, the Court should prevent Mr. Speckin from testifying as to his beliefs regarding the weight of the evidence, instead limiting Mr. Speckin to the results of his analysis of inks and ESDA testing.

### B. Several of Mr. Speckin's Opinions Are Based on Pure Speculation and Should Be Excluded Because They Will Not Assist the Trier of Fact.

Fairchild has the burden of proving the admissibility of Mr. Speckin's "expert testimony." *See Daubert*, 509 U.S. at 592 n. 10 (citation omitted). In this case, Power Integrations does not challenge Mr. Speckin's analysis of original ballpoint pen inks or his ESDA work, but Fairchild cannot meet its burden of proving that Mr. Speckin's testimony regarding the contents of Dr. Eklund's original documents, on the basis of general observations about <u>copies</u> of those documents, would amount to anything more than pure speculation.

First and foremost, there is no testable hypothesis with respect to much of Mr. Speckin's commentary on the documents in question, in particular his observations concerning the number of staple holes, the number and alignment of hole punches, the alignment of the lines copied onto

6

**REDACTED**

the present pages, and the like. Mr. Speckin and Power Integrations' forensic consultant Dr. Albert Lyter both testified that there are any number of possible explanations for the observations. For example, when asked about his statement regarding the number of staple holes in various pages, Mr. Speckin admitted

Mr. Speckin also admitted that there was no way to tell when or why the various copies (or copies of copies) of documents were stapled or hole-punched in the manner they were. (*Id.* at 155:7-24; 181:9-12.) Power Integrations' forensic consultant similarly testified that the number of staple holes and the alignment of hole punches on copies of documents tells you nothing about the underlying originals from which those copies were made. (Ex. 5 (Lyter Tr.) at 175:18-177:23; 128:19-129:20.) Given the range of possible explanations for the documents' various characteristics, any testimony that the handling of <u>copies</u> bears on the nature of the underlying originals is pure speculation.

The only apparent reason for Mr. Speckin's reliance on so many general observations, and the unsupportable conclusions he draws from them, is that Mr. Speckin did not conduct the one simple test that would have proved whether Dr. Lyter's conclusions regarding the date and manufacturer of the original ballpoint pen inks overwritten on the copies are correct. Power Integrations' expert conducted a test that detected the presence of fluorescent date tags in the black ink taken from several pages of the copies of Dr. Eklund's notes, tags only used by a single manufacturer—Formulabs. (Ex. 6 (Lyter report) at 7-8, ¶¶16(B)-(D).)[2] The tags found in the black ink in question demonstrate that the ink was manufactured by Formulabs in 1983 (*id.*), and this fact is entirely consistent with the underlying Eklund invention notes having been prepared

---

[2] The procedures for conducting these tests of original inks are governed by general standards recognized by both parties' forensic consultants, including standards set forth by the American Society for Testing and Materials ("ASTM"), and are therefore objective test procedures based on generally accepted principals of chemical analysis.

in late 1984 and early 1985 as indicated by the hand-written dates on them. Mr. Speckin is familiar with the fluorescent Formulabs date tags and has relied on them in the past in his work (Ex. 3 (Speckin Tr.) at 9:23-10:20), but instead of testing for these date tags in the first instance, or even attempting to replicate Dr. Lyter's analysis before serving his second report commenting on that analysis, Mr. Speckin dismissed such testing as inapposite because he had already "concluded" the ink was not a Formulabs ink. (*Id.* at 133:20-135:1.) That sort of conclusory judgment shows the lack of scientific rigor in Mr. Speckin's approach, and the Court should be skeptical about the value of permitting testimony based on Mr. Speckin's non-scientific observations of staple holes and the like.

Mr. Speckin's methods, credibility, and credentials have also been severely questioned in a number of published decisions, further suggesting the need to limit the scope of his testimony to the areas in which he truly has at least a modicum of specialized knowledge—ink analysis and ESDA testing. For example, in *EEOC v. Ethan Allen, Inc.*, 259 F. Supp. 2d 625 (N.D. Ohio 2003), the Court excluded Mr. Speckin's testimony for lack of scientific rigor, and in *Adrian v. Lafler*, 299 F. Supp. 2d 754 (E.D. Mich. 2004), a court in Mr. Speckin's home state noted that his credentials were so significantly challenged on cross-examination during trial that "the trial judge indicated regret at qualifying him as an expert." *Id.* at 758. In another high-profile case, the court noted that "[Speckin's] credibility falls far short of the high standards of integrity which one would expect from an expert witness or indeed an [sic] witness who has taken the oath, and his evidence is thus devalued. His evidence cannot be accepted." (Ex. 7 (*Wang* opinion) at page 201 of the printed transcript, also available online at 2002 WL 1341762). That same court noted a lingering suspicion that Mr. Speckin "tailored his results to suit his client's requirements." (*Id.*)

8

Mr. Speckin has also been found to have misrepresented his credentials by a governing body in his field, the American Board of Forensic Document Examiners ("ABFDE"). In his recent deposition, Mr. Speckin admitted he received a letter concerning one such incident noting "It is the unanimous consensus of the ABFDE Board of Directors that your representation is, at the least, inaccurate, and at worst, could be viewed as a fraudulent misrepresentation." (Ex. 3 (Speckin Tr.) at 244:20-245:25.) These criticisms show the importance of the Court setting clear guidelines for Mr. Speckin's testimony to prevent Fairchild from using his testimony to mislead the Jury.

Equally important is the fact that Mr. Speckin's focus on certain characteristics of copies of the invention notes—including the number of staple holes in a copy, the alignment of lines on various copies, and the number and placement of hole punches in copies—says nothing about the original documents. In fact, Mr. Speckin ignores the one thing about the copies (other than the provenance of the pen ink overwriting) that might actually assist the trier of fact in determining the status of the original documents—the age of the copies themselves. The age of the copies has a direct bearing on the age of the original documents from which they were copied, but Mr. Speckin did not test the toner on the copies to determine whether they were of recent vintage, and Mr. Speckin similarly ignored Dr. Lyter's testimony concerning the apparent age of Dr. Eklund's photocopy documents, which bear the signs of age and are visibly yellowed.

To the extent the things Mr. Speckin did focus on have any relevance, there are no standards to judge the reasonableness of his conclusions and, in any event, the presence and characteristics of staple holes, punch holes, and the alignment of lines on <u>copies</u> of documents are well within the knowledge and understanding of the Jury. Mr. Speckin admitted as much during his recent deposition: when asked whether one needed to be an expert to look at graph

paper to determine the alignment of various pages, for example, he said

Because these sorts of observations have little if anything to do with the underlying original documents and do not rely on "scientific, technical, or other specialized knowledge" as contemplated under Rule 702, the Court should exclude these portions of Mr. Speckin's testimony and prevent Fairchild from attempting to confuse the Jury with such unsupportable and irrelevant "opinions."

## III. CONCLUSION

Mr. Speckin's conclusory legal opinions, his lack of scientific rigor, the volume and intensity of the published decisions criticizing Mr. Speckin's work, and the fact that much of what Mr. Speckin intends to address is not "specialized knowledge" but instead basic observation easily within the grasp of the Jury all demonstrate a need for clear limitations on his testimony. Power Integrations therefore asks the Court to limit Mr. Speckin's testimony to his chemical testing and evaluation of the ballpoint pen inks used in the overwriting and the ESDA films created during the course of his forensic testing in this case and to preclude Mr. Speckin from providing the testimony set forth in paragraphs ¶¶6(D)-(F), 16(a)(i)-(iv), 16(a)(vi(-(ix), 17(a)(i)-(viii), 17(a)(xi), and 18 of his report of August 1 and ¶ 6 of his second report of August 20, 2007.

Dated: August 31, 2007            FISH & RICHARDSON P.C.


                                  By: /s/ *Kyle Wagner Compton*
                                      William J. Marsden, Jr. (#2247)
                                      Kyle Wagner Compton (# 4693)
                                      919 N. Market Street, Suite 1100
                                      P.O. Box 1114
                                      Wilmington, DE 19899-1114
                                      Telephone: (302) 652-5070
                                      Email: marsden@fr.com

                                      Frank E. Scherkenbach
                                      225 Franklin Street
                                      Boston, MA 02110-2804
                                      Telephone: (617) 542-5070

                                      Howard G. Pollack
                                      Michael Headley
                                      500 Arguello Street, Suite 500
                                      Redwood City, CA 94063
                                      Telephone: (650) 839-5070

                                  Attorneys for Plaintiff
                                  POWER INTEGRATIONS, INC.

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2007, I served **POWER INTEGRATIONS, INC.'S APPLICATION TO EXCLUDE THE ADMISSION OF CERTAIN EVIDENCE RELATED TO FAIRCHILD'S FORENSIC TESTING** on the following as indicated:

| | |
|---|---|
| **BY HAND DELIVERY**<br>Steven J. Balick<br>John G. Day<br>Ashby & Geddes<br>500 Delaware Avenue, 8th Floor<br>P. O. Box 1150<br>Wilmington, DE 19899 | Attorneys for Defendants<br>FAIRCHILD SEMICONDUCTOR<br>INTERNATIONAL, INC. and<br>FAIRCHILD SEMICONDUCTOR<br>CORPORATION, and third party<br>INTERSIL CORPORATION |
| **BY E-MAIL AND FIRST CLASS MAIL**<br>G. Hopkins Guy, III<br>Gabriel M. Ramsey<br>Orrick, Herrington & Sutcliffe, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025 | Attorneys for Defendants<br>FAIRCHILD SEMICONDUCTOR<br>INTERNATIONAL, INC. and<br>FAIRCHILD SEMICONDUCTOR<br>CORPORATION |

/s/ Kyle Wagner Compton
Kyle Wagner Compton