IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | **REDACTED** |
| Plaintiff, | ) | **PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**FAIRCHILD'S OPPOSITION TO POWER INTEGRATIONS, INC.'S
APPLICATION TO EXCLUDE CERTAIN EVIDENCE
RELATED TO FAIRCHILD'S FORENSIC TESTING**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
*Attorneys for Defendants*

*Of Counsel:*
G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Orrick, Herrington & Stucliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: September 7, 2007

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................1

    A.    Mr. Speckin's Opinions Based On Visible Features Of The Eklund Documents Are Appropriate And Will Assist The Trier Of Fact ................................................1

        1.    Mr. Speckin Offers Basic Observations And Conservative Conclusions Regarding The Eklund Documents ................................................................1

        2.    Power Integrations' Own Expert Admits That Expert Analysis Will Assist The Trier Of Fact ........................................................................................2

        3.    Mr. Speckin's Observations Regarding Visible Features Of The Eklund Documents Meet The Requirements Of *Daubert* .........................................3

        4.    Mr. Speckin's Conclusions Meet The Requirements Of *Daubert* And Federal Rule Of Evidence 702 ....................................................................5

            a.    Mr. Speckin's Opinions Are Based On Sufficient Facts And Data.5

            b.    Mr. Speckin's Opinions Are Based On Reliable Principles And Methods......................................................................................6

            c.    Mr. Speckin Has Applied The Principles And Methods Reliably To The Facts Of The Case....................................................................9

        5.    Mr. Speckin's Conclusion Regarding The Lack Of Evidence Concerning The Dating Of Page Two Of PX30 Is Appropriate....................................11

        6.    Power Integrations Misstates Mr. Speckin's Opinions.............................12

    B.    Mr. Speckin's Opinions Regarding Ink Dating Are Appropriate And Will Assist The Trier Of Fact ........................................................................................13

    C.    Mr. Speckin Is Fully Qualified To Provide Expert Testimony In This Case ........14

    D.    Power Integrations' Arguments Demonstrate That Both The Eklund Documents And Dr. Eklund's Testimony Should Be Excluded ................................................16

III.    CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Adrian v. Lafler*,
    299 F. Supp. 2d 754 (E.D. Mich. 2004)..........................................................15

*Corning Inc. v. SRU Biosystems*,
    2005 U.S. Dist. LEXIS 22699 (D. Del. 2005) ................................................11

*Daubert v. Merrell Dow Pharms, Inc.*,
    509 U.S. 579 (1993).................................................................................1, 10, 11

*EEOC v. Ethan Allen, Inc.*,
    259 F. Supp. 2d 625 (N.D. Ohio 2003)..........................................................15

*Re Estate of Wang Teh Huei*,
    2002 WL 1341762 (2002)..........................................................................15, 16

*Heller v. Shaw Indus, Inc.*,
    167 F.3d 146 (3d Cir. 1999)...........................................................................13

*Hahn v. Wong*,
    892 F.2d 1028 (Fed. Cir. 1989).....................................................................16

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)...............................................................................6

*KB Home v. Antares Homes, Ltd*,
    2007 U.S. Dist. LEXIS 47273 (N.D. Tex. 2007)............................................12

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................................7

*Linkstrom v. Golden T. Farms, Inc.*,
    883 F.2d 269 (3d Cir. 1989).............................................................................9

*Mahurkar v. C.R. Bard Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996)........................................................................11

*Nina Kung v. Wang Din Shin*,
    2005 WL 1687117 (2005)...............................................................................15

*Ralston Purina Co. v. Far-Mar, Inc.*,
    586 F. Supp. 1176 (D. Kan. 1984)..................................................................17

*Stern v. Trs. of Columbia Univ.*,
    434 F. 3d 1375 (Fed. Cir. 2006) ...................................................................17

*United States v. Chappell*,
    6 F.3d 1091 (5th Cir. 1993) .......................................................................8

*United States v. Demjanjuk*,
    367 F.3d 623 (6th Cir. 2004) .....................................................................8

*United States v. Mornan*,
    413 F.3d 372 (3d Cir. 2005) .......................................................................5

*United States v. Perez*,
    280 F.3d 318 (3d Cir. 2002) .......................................................................5

*United States v. Watson*,
    260 F.3d 301 (3d Cir. 2001) .......................................................................7

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd*,
    931 F. Supp. 1014 (E.D.N.Y. 1996) ...........................................................11

*Werth v. Makita Electric Works Ltd*,
    950 F.2d 643 (10th Cir. 1991) ...........................................................11, 12

## STATUTES AND RULES

Federal Rule of Evidence 702 ........................................................................1, 6, 8, 9
Federal Rule of Evidence 703 ........................................................................6
Federal Rule of Evidence 704(a) ...................................................................12

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") respectfully request that the Court deny Power Integrations' application to exclude evidence related to Fairchild's forensic testing.

## I.    INTRODUCTION

There can be no dispute that Fairchild's forensic expert, Mr. Erich Speckin, offers analysis and opinions that comport with Federal Rule of Evidence 702 and the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  Mr. Speckin has applied specialized knowledge and experience to offer an expert opinion based on the current state of forensic science regarding the notes of Power Integrations' alleged inventor, Klas Eklund (the "Questioned Eklund Notes").

He has conducted his testing based on reliable data, regularly relied upon by experts in his field.  He has conducted his analysis of the Questioned Eklund Notes using reliable testing methods and hypotheses recognized in the field of forensic document examination.  He has applied these testing methods and hypotheses reliably to the evidence at hand and to the facts in the case, in order to reach important conclusions that will help the jury understand details of the evidence that they would not otherwise be equipped to assess.  When laid bare, Power Integrations' objection is simply to  the unfavorable evidence—Mr. Speckin's work represents direct challenges both to the credibility of the invention documents and Power Integrations' inventor and founder.  This goes to the weight of the evidence and not its admissibility.  Mr. Speckin's testimony should be admitted and Power Integrations' motion should be denied.

## II.    ARGUMENT

### A.    Mr. Speckin's Opinions Based On Visible Features Of The Eklund Documents Are Appropriate And Will Assist The Trier Of Fact.

#### 1.    Mr. Speckin Offers Basic Observations And Conservative Conclusions Regarding The Eklund Documents.

The examination task of Fairchild's forensic expert, Mr. Speckin, was to determine whether there were any alterations, additions or rewritings to the notes of Klas Eklund.  [Ex. 1

1

(Speckin Report, ¶9)]  Mr. Speckin reviewed all available copies of the Eklund notes, which were found in Klas Eklund's files, and stated some fundamental opinions regarding visible features of those copies.

**REDACTED**

[Ex. 1 (Speckin Report, ¶¶7, 8, 10, 11, 14)]

Based on the visible features of the available photocopies, and applying his knowledge and expertise, Mr. Speckin reached some conservative conclusions about the Questioned Eklund Notes.  First,

**REDACTED**

. [Ex. 1 (Speckin Report, ¶¶14, 16, 17(v))]

Second,

**REDACTED**

*[Id.* at

¶17]  Third,

**REDACTED**

*[Id.* at ¶16]  Fourth,

**REDACTED**

. *[Id.* at ¶18]

2.    <u>Power Integrations' Own Expert Admits That Expert Analysis Will
Assist The Trier Of Fact.</u>

While Power Integrations now challenges Mr. Speckin's analysis, it's own expert readily agreed with a number of Mr. Speckin's observations and views.  In particular, Power Integrations challenges Mr. Speckin's observations regarding

**REDACTED**

[Br.

at pp. 6-7]

This criticism is baseless.  Indeed, Power Integrations' own expert Dr. Lyter recently

testified

**REDACTED**

Dr. Lyter, *Power Integrations'* expert, testified as follows:

**REDACTED**

**REDACTED**

[Ex. 2 (Lyter Depo., 58:18-59:16) (emphasis added)]  Thus, both parties' experts agree that the

3.    **Mr. Speckin's Observations Regarding Visible Features Of The Eklund Documents Meet The Requirements Of *Daubert***

Mr. Speckin sets forth basic observations regarding the nature of the available copies of

the Eklund documents and the presence or absence of physical features such as

**REDACTED**

In its brief, Power Integrations does not directly dispute the propriety

of Mr. Speckin's analysis regarding          **REDACTED**

Nor can it do so.  This kind of empirical observation regarding the documents is

well within the expertise of a forensic document examiner, as admitted by Power Integrations'

3

own expert, and will assist the trier of fact.

First, Mr. Speckin possesses specialized knowledge regarding what to look for in copies of documents and how to review documents. Second, Mr. Speckin's knowledge will assist the trier of fact as the document features are complex and cannot be presented in any other way than through expert testimony. For example, the jury cannot determine

**REDACTED**

Indeed, Dr. Eklund himself stated that

**REDACTED**

[Ex. 3 (Eklund Depo., 385:3-386:21; 413:24-415:5)]

Mr. Speckin's testimony is necessary to establish the important fact that

**REDACTED**

Dr. Eklund admits that                                [Ex. 4

(Eklund Depo., 425:2-8)] However, Dr. Eklund would not agree that the

**REDACTED**

[Ex. 3 (Eklund Depo., 414:17-415:1)] Both forensic experts actually agree

**REDACTED**

Similarly, Mr. Speckin's testimony is necessary to establish that there was one version of documents with page numbers and one version without. Critically, the inventor claims

**REDACTED**

Without Mr. Speckin, the inventor's testimony would be unchallenged in this regard and would suppress a critical expert opinion that                **REDACTED**

Mr. Speckin's testimony is also necessary to establish

**REDACTED**

For all of these reasons, Mr. Speckin's expert testimony regarding presence or absence of features of the documents is necessary to Fairchild's case and will assist the jury in understanding the evidence before them. *See United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (expert testimony admissible where "helpful and relevant" to jury's understanding of evidence)

4.     **Mr. Speckin's Conclusions Meet The Requirements Of *Daubert* And Federal Rule of Evidence 702**

Based on his observations regarding features of the documents at issue, applying his knowledge and experience, Mr. Speckin set forth some specific opinions regarding Dr. Eklund's notes based on his expertise and training. Mr. Speckin opined:

**REDACTED**

[Ex. 1 (Speckin Report, ¶¶16-18)] Each of these conclusions is well within the expertise of a forensic document examiner, will assist the jury and has an adequate foundation and the necessary degree of relevance and reliability to satisfy the Rules of Evidence.

a.     **Mr. Speckin's Opinions Are Based On Sufficient Facts And Data**

Textbooks on forensic document examination specify that the examiner should study

**REDACTED**                                                    [Ex. 5 (Suspect

Documents: Their Scientific Examination, pp. 45-48)] In formulating their opinions document examiners regularly consider "alterations and erasures," "photocopy problems," and differences between "pens, pencils and papers." [Ex. 6 (The Whole Document, p. 1)] A document examiner should take the entire document into consideration and assess details such as:

Is there evidence that suggests that a page has been inserted or deleted? Has one been substituted? There is a need to show that all pages are properly related to one another. Is all the typewriting by the same typewriter? In the same condition? Same handwriting? Same ink and same pen? Same paper? From the same box or tablet? Were the pages bound together once? Or the same number of times? How? by staples, pins, or paper clips?

[Ex. 6 (The Whole Document, p. 2)]

Mr. Speckin reviewed all of the available documents and made multiple, detailed observations about each document, as discussed above and in his expert report, using objective test procedures. He considered facts and data regularly relied upon by forensic document examiners in conducting their examination task, including hole punches, photocopy toner, ink overwriting, staple marks, damage marks, grid lines, the document's content, relationship between the pages and similar features of the documents. Mr. Speckin's conclusions are based on adequate facts and data, and thus meet the requirements of Federal Rule of Evidence 702 and *Daubert*. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994) (basis of expert opinion must be the "type of data reasonably relied upon by experts" in the field); Fed. R. Evid. 703.

## b.    Mr. Speckin's Opinions Are Based On Reliable Principles And Methods

Mr. Speckin's opinions are based on reliable principles and methods. First, Mr. Speckin's opinions that :                  **REDACTED**

is based on a testable hypothesis that if pages of a multipage document are purported to have been attached and combined for a period of time, and to have a similar history, they should be expected to share similar features and similar effects of copying and aging. Indeed, Mr. Speckin validates this hypotheses by observing

[*See e.g.* Ex. 1 (Speckin Report,

¶16(vi))              **REDACTED**                  The validity of

this hypothesis is also recognized in the methods regularly applied by forensic document examiners. [*See e.g.* Exs. 7 (Physical Characteristics of Paper as a Means of Identification, at pp.

1-7) (noting that agreement as to a number of physical features between pages can reasonably establish that a page is similar to another); 8 (Scientific Examination of Questioned Documents, p. 334) (multiple page documents which are prepared at one time in a continuous manner may be expected to share similarities and consistencies); 6 (The Whole Document, p. 2) (similar features and indications that pages connected can reasonably establish that "pages are properly related to one another")]

Similarly, Mr. Speckin's opinion that

## REDACTED

Courts have repeatedly recognized that it is appropriate for experts to apply their training and experience to discern meaningful patterns in the evidence and to suggest inferences that should be drawn from those patterns. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience."); *United States v. Boissoneault*, 926 F.2d 230, 232 (2d Cir. 1991) (expert may suggest inferences that should be drawn from facts); *United States v. Watson*, 260 F.3d 301, 307-308 (3d Cir. 2001) (expert opinions regarding patterns of conduct of drug dealers based on experience).

The comparison of similarities and differences between documents and drawing reasonable inferences based on training and experience are the foundations of forensic document examination. [*See* Exs. 9 (ASTM E444, at ¶¶3.2.1.4, 3.4)[1]; 5 (Suspect Documents); 6 (The Whole Document); 7 (Physical Characteristics as a Means of Identification); 10 (Evidential Documents); 8 (Scientific Examination of Questioned Documents); 11 (Document Examiner

---

[1] ASTM standard E444 indicates that forensic document examiners analyze the "date, source, history, sequence of preparation, alterations or additions to documents and relationships of documents" based on "application of knowledge, skill, experience, training or education specific to forensic document examination."

Textbook, Ch. 12 - Comparison of Writings), 16 – Alterations)]  Indeed, Mr. Speckin's

testimony in this regard has been admitted in numerous cases.  For example, in *Irish Carbonic

Co. v. Archer-Daniels-Midland Co.* (97-CV-293S), the court admitted Mr. Speckin's opinion that

differences between pages were inconsistent with copying over a consecutive chronology as was

stated by another witness in the case.  [Ex. 12 (8/31/00 Opinion and Order, at p. 17)]

 Courts regularly admit expert testimony based on such practical experience observing

and comparing features in questioned documents.  *See e.g. United States v. Chappell*, 6 F.3d

1091, 1100 (5th Cir. 1993) (bank security officer opined properly based on experience that

irregularities in checks identified them as forgeries); *United States v. Mornan*, 413 F.3d 372,

380-381 (3d Cir. 2005) (district court did not err in admitting handwriting expert's testimony,

even where her opinions were "less than certain"; jury would decide what weight to give

testimony); *see also United States v. Demjanjuk*, 367 F.3d 623, 635 (6th Cir. 2004) (fact that

expert opinions are practical and have not been confirmed through empirical analysis does not

render them unreliable or inadmissible); Fed. R. Evid. 702 (expert testimony based on any

"technical or specialized knowledge")

 Mr. Speckin's conclusions are not only reliable, but quite conservative.

**REDACTED**

 The reliability of Mr. Speckin's principles, methods and conclusions is verified by the

fact that Power Integrations' own expert

[*See e.g.* Ex. 13 (Lyter

**REDACTED**

; Br. at p. 7

; Br. at p. 9

; Ex. 14 (Lyter Report, ¶¶6(B), 16(E)); *see also* Ex. 15

8

(Lyter Depo., 93:2-94:12, 91:23-92:19]  The fact that Power Integrations' own expert considers the same features of the questioned documents to reach similar conclusions supports the reliability of Mr. Speckin's methods, analysis and conclusions.

     **c.**     <u>**Mr. Speckin Has Applied The Principles And Methods Reliably To The Facts Of The Case**</u>

Mr. Speckin has applied the principles and methods reliably to the facts.  First, Mr. Speckin has many years of training and experience and has reviewed many documents over the years.  He is particularly well-equipped to bring that knowledge and experience to bear on the inferences that can be drawn from the physical features of the Eklund documents, which will help the jury understand the Eklund documents.  Contrary to Power Integrations' assertions, Mr. Speckin reaches his conclusions based on a set of specialized skills and experiences that is not shared by the lay population.  [*See e.g.* Lyter Depo., 61:12-62:15    **REDACTED**

**REDACTED**

     Accordingly, Mr. Speckin's testimony is appropriate as it will assist the jury in understanding the evidence and determining the facts in issue.  *See* Fed. R. Evid. 702; *Linkstrom v. Golden T. Farms, Inc.*, 883 F.2d 269, 270 (3d Cir. 1989) ("This court has . . . indicated that it will interpret possible helpfulness to the trier of fact broadly.").

Using the sound hypotheses discussed above, Mr. Speckin applied his knowledge and experience reviewing documents to analyze the attributes of the pages and similarities and differences between pages.  As is an established practice in the discipline, he assessed

**REDACTED**     Based on this analysis, Mr. Speckin concluded

**REDACTED**

9

**REDACTED**


**REDACTED**


[Ex. 16 (Lyter Depo., 110:5-9)]


**REDACTED**


Each of Mr. Speckin's conclusions is based on his knowledge and experience, is supported by the *totality* of observations[2] regarding the documents at issue, and is drawn to a reasonable degree of scientific certainty.  [Ex. 1 (Speckin Report, ¶¶16-19)]  Ultimately, Power Integrations simply dislikes the result Mr. Speckin's opinions represent—

**REDACTED**                         However, Power Integrations' dislike goes merely to the weight of the evidence and is not an adequate or appropriate basis to exclude Mr.

---

2


**REDACTED**

Speckin's analysis and opinions. *See Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 594-595 (1993) ("[t]he focus [of the reliability analysis], of course, must be solely on principles and methodology, not on the conclusions they generate.")

Finally, contrary to Power Integrations' assertions, Mr. Speckin's conclusions

**REDACTED**

**5.    Mr. Speckin's Conclusion Regarding The Lack Of Evidence Concerning The Dating Of Page Two Of PX30 Is Appropriate**

Mr. Speckin's opinion that

**REDACTED**    Mr. Speckin is not opining

about the substance of the standard or what the appropriate standard is. Rather, he is simply applying standards that he is familiar with to the evidence that he has analyzed to help qualify for the jury his level of certainty regarding his opinion. Expert opinions always exist in the context of legal standards and experts must apply the appropriate standards.[4] *See e.g. Corning Inc. v. SRU Biosystems*, 2005 U.S. Dist. LEXIS 22699, *3-4 (D. Del. 2005) (whether expert applies correct legal standard affects weight afforded to testimony); *Werth v. Makita Electric Works,*

---

[3] While Fairchild carries the overall burden of proving invalidity and priority of invention, Power Integrations bears the burden of proving a pre-filing invention date early enough to predate a prior art reference. *See e.g. Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996) (patentee had burden to offer evidence showing he invented subject matter of his patent before the publication date of the prior art document); *Loral Fairchild Corp. v. Victor Company of Japan, Ltd.*, 931 F. Supp. 1014, 1031 (E.D. N.Y. 1996), *aff'd*, 181 F.3d 1313 (Fed. Cir. 1999), *cert. denied*, 528 U.S. 1075 (2000) (Rader J, by designation) (patentee bears burden of showing pre-filing invention date early enough to antedate a prior art reference)

[4] For example, Power Integrations' own experts in this case

**REDACTED**

11

*Ltd.*, 950 F.2d 643, 650 (10th Cir. 1991) ("the correct legal standard having been identified, and an inquiry having been made thereunder about the saw based on the relevant circumstances, we cannot sustain the trial judge's refusing to admit the testimony proffered under the right standard."); *KB Home v. Antares Homes, LTD.*, 2007 U.S. Dist. LEXIS 47273, *27-29 (N.D. Tex. 2007) (expert witness must use a correct legal standard).  Indeed, Federal Rule of Evidence 704(a) makes clear that expert testimony may "embrace[] an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a).  Mr. Speckin's opinion

**REDACTED**

6.     **Power Integrations Misstates Mr. Speckin's Opinions**

Lacking an appropriate legal basis to exclude Mr. Speckin's opinions, Power Integrations constructs each of its arguments around rank misstatement of Mr. Speckin's opinions.  First, Power Integrations repeatedly misrepresents that Mr. Speckin purportedly offered opinions ·

[5] To the contrary, Mr. Speckin only concluded that,

**REDACTED**

[Ex. 1 (Speckin Report, ¶¶16(a)(i)-(ix), 17(a)(i)-(xi))]

**REDACTED**

---

[5]

**REDACTED**

Mr. Speckin offered **REDACTED**

[Br. at pp. 1, 2]  Power Integrations argues that Mr. Speckin's observations

**REDACTED** [Br. at pp. 1, 2]  The problem with the questions set

forth by Power Integrations is that they are *not* the questions asked by Mr. Speckin.  Rather, Mr.

Speckin assessed :

**REDACTED**

[6]  Certainly, there can be no dispute that all of

Mr. Speckin's observations are relevant to these inquiries.  Power Integrations' improper attempt

to ignore the analysis Mr. Speckin actually undertook and to reframe the purported "questions" is

a misleading rhetorical trick and divorced from reality.  Power Integrations' arguments should be

rejected.

  **B.**  **Mr. Speckin's Opinions Regarding Ink Dating Are Appropriate And Will Assist The Trier Of Fact**

   Power Integrations first asserts in its brief that it is not challenging Mr. Speckin's

anticipated testimony regarding ink dating.  [Br. at p. 1, 6]  However, halfway through the brief it

changes course and **REDACTED** [Br. at p.

7]  Mr. Speckin's ink testing method—thin layer chromatography—is perhaps the most well-

established and recognized approach.  [*See* Exs. 18 (ASTM Standard 1422), 19 (ASTM Standard

1789)]  The fact that he chose this reliable method of dating ink

**REDACTED**

       The fact that Power Integrations' expert

**REDACTED**

            *See Heller v.*

*Shaw Indus., Inc.*, 167 F.3d 146, 160 (3d Cir. 1999) (trial court cannot exclude expert testimony

simply because witness used one test rather than another, when both tests are accepted in

expert's field of expertise).

---

[6] As Power Integrations recognizes, Mr. Speckin **REDACTED** [Br. at p. 2]

Further, Power Integrations asserts that

**REDACTED**

[Br. at pp. 7-8]  This is plainly absurd.

**REDACTED**

Similarly, the dating of ink has no bearing on the evidence of a month or day that a document was created.  [*See e.g.* Ex. 11 (Document Examiner Textbook, at p. 327) (By using ink dating techniques "[o]nly the 'approximate' date of ink can be determined.")]  Power Integrations' arguments in this regard make no sense and should be rejected.

**C.**     **Mr. Speckin Is Fully Qualified To Provide Expert Testimony In This Case**

There can be no question that Mr. Speckin is fully qualified to provide his expert testimony on the matters at issue in this case.  Mr. Speckin has been qualified as an expert in forensic document analysis and the ink dating procedures numerous times over the years, as has been recognized by Power Integrations' own expert.  [*See* Ex. 20 (Lyter Depo., 261:16-262:4]] Mr. Speckin has been appointed by judges in Michigan, California, Maine, Florida and Australia to perform examinations at the request of the court.  [*See* Ex. 21 (CV)]  Power Integrations' own expert recognizes that Mr. Speckin is qualified to provide opinions in this case:

**REDACTED**

[Ex. 20 (Lyter Depo., 261:21-262:13)]

Power Integrations cites eagerly to several judicial opinions containing pejorative statements about a few instances regarding Mr. Speckin's work.  These opinions are plainly

14

irrelevant to the issues at hand, disparage Mr. Speckin unfairly and have no bearing whatsoever on whether he is qualified to act as an expert in this case. Power Integrations quotes from *Re Estate of Wang Teh Huei*, 2002 WL1341762 (Court of First Instance, Hong Kong, 2002), *EEOC v. Ethan Allen, Inc.*, 259 F. Supp. 2d 625 (N.D. Ohio 2003), and *Adrian v. Lafler*, 299 F. Supp. 2d 754 (E.D. Mich. 2004).

First, all of those cases involved forensic methods that are not at issue in this case. The *Wang* case and *EEOC* cases involved ink dating processes called "accelerated aging method" and the dye-ratio method. [*Wang* at ¶¶18.8-18.17; *EEOC* at 626-630, 632] The *Adrian* case involved infrared analysis of grease. None of the methods or issues employed in this case involved "accelerated aging," "dye-ratio method" or infrared testing of grease. For this reason, Power Integrations' citation to them are completely irrelevant and has no bearing on Mr. Speckin's qualifications or testimony.

Further, Power Integrations unfairly presents quotations from these case, completely out of context and without providing important contextual background. For example, while selectively quoting the *Adrian* opinion, a District Court opinion commenting on an underlying state court action, it fails to mention that the underlying state court judge determined that "certainly this gentleman is well qualified in the field of ink and document analysis." [Ex. 22 (Trial Transcript, at p. 35:9-10) (*People v. Adrian*, Case No. 99-3323-FH)]

Similarly, Power Integrations quotes extensively from the *Wang* opinion (an opinion by a Hong Kong trial court), and the *EEOC* opinion which itself reproduces portions of the *Wang* opinion. However, it fails to mention that subsequent to both of these opinions, the Hong Kong Court of Final Appeal criticized the *Wang* trial judge for "copying verbatim almost the whole of the appellant's submissions" regarding Mr. Speckin. *Nina Kung v. Wang Din Shin*, 2005 WL 1687117 at ¶¶452 (2005). Bluntly, the trial court simply copied the opposition's submission. This practice was so prevalent that the Court of Final Appeal found that "[l]egitimate concerns as to whether [the trial judge] did bring an independent mind to his judicial function do arise in the present case." *Kung*, 2005 WL 1687117 at ¶¶452-455. The trial court was overturned. *Id.* The

15

foregoing emphasizes the unreliability of quotations from the *Wang* opinion.

The statements that Power Integrations attempts to rely on from the *Wang* case are simply a diversion and wholly irrelevant to Mr. Speckin's qualifications or the admissibility of Mr. Speckin's opinions.[7]  There is no dispute that he is well-qualified and has used appropriate and reliable methods in this case.  Accordingly, Mr. Speckin's testimony should be admitted.

**D.      Power Integrations' Arguments Demonstrate That Both The Eklund Documents And Dr. Eklund's Testimony Should Be Excluded**

Throughout its brief, Power Integrations repeatedly asserts that the available photocopies of the Eklund notes can say nothing reliable about the original documents.  In sum, Power Integrations admits that the                     **REDACTED**

Thus, they should be excluded as was detailed in Fairchild's motion *in limine*. [D.I. 513]   Moreover, Power Integrations' assertions in its brief establish that its arguments regarding "corroboration" of its invention dates are now fully circular.  Indeed, a year ago, in its opposition to Fairchild's motion for summary judgment [D.I. 233], Power Integrations argued that                     **REDACTED**

[*Id.* at p. 26]  However, now Power Integrations admits that

**REDACTED**

[Ex. 14 (Lyter Report, ¶19)]

Power Integrations cannot have it both ways.  This circular logic violates the established principles set forth by the Federal Circuit requiring independent corroboration of alleged invention dates offered by an inventor.  *See e.g. Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir.

---

[7] For example, Power Integrations refers to a dispute between Mr. Speckin and a professional organization dating back to *1996*—11 years ago.  *Wang*, 2002 WL 1341762 at ¶29.25.  This has no bearing on the reliability of Mr. Speckin's analysis and methods in this case.  Further, as discussed in greater detail in Fairchild's motion *in limine* [D.I. 513], the statements from these cases are unreliable, prejudicial hearsay which have been excluded by other courts and should be excluded during the instant trial as well.

1989); *Ralston Purina Co. v. Far-Mar., Inc.*, 586 F. Supp. 1176 (D. Kan. 1984) *aff'd in part & rev'd*, 772 F.2d 1570 (Fed. Cir. 1985); *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006). It underscores the need to exclude questionable documents that require the inventor's present oral testimony to corroborate. Simply, the questioned Eklund documents are no longer independently corroborated but mere props. Accordingly, Dr. Eklund's uncorroborated testimony should be excluded as well. [*See* D.I. 513]

## III.    CONCLUSION.

For the foregoing reasons, Fairchild respectfully requests that the Court deny Power Integrations' application to exclude evidence related to Fairchild's forensic testing.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. 2114)
John G. Day (I.D. 2403)
Lauren E. Maguire (I.D. 4261)
500 Delaware Avenue
8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

Of Counsel:

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III (#124811)
Vickie L. Feeman (#177487)
Bas de Blank (#191487)
Gabriel M. Ramsey (#209218)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  September 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2007, the attached **FAIRCHILD'S OPPOSITION TO POWER INTEGRATIONS, INC.'S APPLICATION TO EXCLUDE CERTAIN EVIDENCE RELATED TO FAIRCHILD'S FORENSIC TESTING** was served upon the below named counsel of record at the address and in the manner indicated:

William J. Marsden, Jr., Esquire                          HAND DELIVERY
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Frank E. Scherkenbach, Esquire                          VIA ELECTRONIC MAIL
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Howard G. Pollack, Esquire                              VIA ELECTRONIC MAIL
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063


*/s/ Steven J. Balick*

Steven J. Balick