IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 04-1371 JJF<br><br>**REDACTED** |

## PLAINTIFF POWER INTEGRATIONS, INC.'S OPENING BRIEF IN SUPPORT OF ITS POST-TRIAL MOTION FOR AN ACCOUNTING

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wagner Compton (#4693) (kcompton@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

Dated: October 22, 2007

# TABLE OF CONTENTS

**PAGE**

I. NATURE AND STAGE OF THE PROCEEDINGS .................................................... 2

II. ARGUMENT ................................................................................................................. 3

    A. The Legal Standards For Awarding Post-Verdict Damages ........................... 3

    B. The Parties Agree that Power Integrations is Entitled to an Accounting and an Award of Damages for Fairchild's Post-Verdict Infringement .................................................................................................... 5

III. CONCLUSION ............................................................................................................. 9

# TABLE OF AUTHORITIES

**CASES**     **PAGE**

*Alpex Computer Corp. v. Nintendo Co., Ltd.*,
 1994 WL 681752 (S.D.N.Y. Dec. 5, 1994) ................................................................3

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
 377 U.S. 476 (1964) ................................................................................................5

*Dentsply International, Inc. v. Kerr Manufacturing Co.*,
 1992 WL 470239 (D. Del. July 8, 1992) ...............................................................3, 6

*General Motors Corp., v. Devex Corp.*,
 461 U.S. 648 (1983) .............................................................................................4, 9

*Grain Processing Corp. v. America Maize-Products Co.*,
 185 F.3d 1341 (Fed. Cir. 1999) ................................................................................4

*In re Hayes Microcomputer Products, Inc.*,
 766 F. Supp. 818 (N.D. Cal. 1991) ...........................................................................3

*IMX, Inc. v. LendingTree, LLC*,
 2007 WL 1232184 (D. Del. Apr. 25, 2007) ..............................................................3

*Itron, Inc. v. Benghiat*,
 2003 WL 22037710 (D. Minn. Aug. 29, 2003) ........................................................3

*King Instruments Corp. v. Perego*,
 65 F.3d 941 (Fed. Cir. 1995) ....................................................................................5

*Lucent Techs., Inc. v. Newbridge Networks Corp.*,
 168 F. Supp. 2d 269 (D. Del. 2001) ..........................................................................7

*Maxwell v. J. Baker, Inc.*,
 879 F. Supp. 1007 (D. Minn. 1995) ..........................................................................3

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
 2001 WL 34778689 (D. Nev. Aug. 2, 2001) .........................................................3, 4

*Oscar Mayer Foods Corp. v. Conagra, Inc.*,
 869 F. Supp. 656 (W.D. Wis. 1994) .........................................................................3

*Padco, Inc. v. Newell Cos., Inc.*,
 1988 WL 187504 (E.D. Wis. July 27, 1988) ............................................................3

*Stryker Corp. v. Davol, Inc.*,
 75 F. Supp. 2d 746 (W.D. Mich. 1999) ....................................................................3

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
 962 F. Supp. 357 (E.D.N.Y. 1997) ...........................................................................3

*Tech. for Energy Corp. v. Computational System, Inc.*,
    1992 WL 535791 (E.D. Tenn. July 29, 1992) ................................................................3

*Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.*,
    2004 WL 769357 (D. Del. Apr. 7, 2004) ......................................................................7

*Whelan Associate, Inc. v. Jaslow Dental Laboratories, Inc.*,
    609 F. Supp. 1325 (E.D. Pa. 1985) ..............................................................................3

## STATUTES

35 U.S.C. § 284 ..................................................................................................................4

Fed. R. Civ. P. 62(a) ..........................................................................................................4

Over one year ago, Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") were adjudged willful infringers of four patents held by Plaintiff Power Integrations, Inc. ("Power Integrations"). On October 10, 2006, the same day the jury ruled that Fairchild willfully infringed Power Integrations' patents, Fairchild issued a press release defiantly announcing that it would continue to offer its full line of adjudged infringing products. Since then, Fairchild has not only continued to sell its infringing products to Power Integrations' detriment, Fairchild admitted during the recent validity trial that it has significantly <u>expanded</u> its infringing activities. This increased infringement includes expanding the scope of its U.S. manufacturing — infringing manufacturing that Fairchild hid during the discovery phase of the case.

Despite its knowing expansion of infringing activity during this litigation, Fairchild steadfastly refused to provide updated sales figures for its infringing products. Instead, Fairchild provided only limited sales figures through December of 2005. Power Integrations sought updated sales figures, and even asked the Court to order Fairchild to produce those figures during the September 14, 2006 pretrial conference, but Fairchild refused. In the absence of actual sales data, Power Integrations' damages expert made estimates based on the data he did have and projected the damages amount up to the date of trial. However, Power Integrations has had no opportunity to obtain recovery for infringing sales made after the 2006 trial.

Power Integrations is not seeking additional or different damages for the pretrial period, but it is seeking a proper accounting to reflect Fairchild's <u>actual</u> sales since the infringement verdict, which remain unaccounted for. This accounting should not be controversial—during the September 14, 2006 pre-trial conference, Fairchild's counsel acknowledged that an accounting for damages not submitted to the jury would be appropriate in this case, and that the Court could

appropriately order such an accounting. (Ex. 1 (9/14/2006 Pretrial Conference Tr.) at 16:23-17:2[1] ("If there is a need for accounting at a later time that can occur and the Court certainly has the power to do that.").)

Fairchild's continuing and expanded course of willful infringement has caused Power Integrations financial injury far in excess of the damages awarded by the jury on October 10, 2006. Because the damages awarded by the jury do not provide Power Integrations with a remedy for Fairchild's post-verdict infringement, they do not amount to the statutorily guaranteed "adequate compensation" for infringement contemplated under the Patent Act. Furthermore, the jury was asked to and did accept Power Integrations' expert's calculation of lost profits, in addition to setting a reasonable royalty for each of the asserted patents. Therefore, calculating the damages from Fairchild's further infringement is a simple matter of arithmetic. Because an accounting is necessary to adequately compensate Power Integrations for Fairchild's continuing infringement, Power Integrations moves the Court for an accounting of Fairchild's infringing sales since October 1, 2006.[2]

## I. NATURE AND STAGE OF THE PROCEEDINGS

Power Integrations initiated this lawsuit against Fairchild on October 20, 2004, asserting infringement of four patents. On October 10, 2006, a jury determined that Fairchild willfully infringed all four of Power Integrations' asserted patents, awarded lost profits for a portion of the infringing sales, and set a reasonable royalty rate for other sales in reaching its verdict on damages. Notwithstanding that verdict, Fairchild continued to sell the adjudged infringing

---

[1] All exhibit citations refer to the accompanying Declaration of Kyle Wagner Compton, unless otherwise noted.
[2] Power Integrations has asked Fairchild for updated sales information, *see* Ex. 2 (10/17/2007 Pollack ltr to Guy), but Fairchild has not responded to Power Integrations' inquiry or provided the information requested. To the extent Fairchild refuses to produce the requisite sales data, Power Integrations also moves to compel the production of data from which the

2

products, and even expanded the sales volume and the number of different infringing products it sells.

Originally, this Court's scheduling order set the validity phase of the trial immediately following the October 2006 infringement phase of the trial, with a start date in December 2006. The validity phase was twice delayed, however, both times at Fairchild's request: first, until June 2007, and later, until September 2007. Issues of validity were finally tried to a jury during the week of September 17, 2007. On September 21, 2007, the jury affirmed the validity of all four of Power Integrations' asserted patents.

## II.    ARGUMENT

### A.    The Legal Standards For Awarding Post-Verdict Damages

"Courts routinely grant motions for further accounting where the jury did not consider certain periods of infringing activity." *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *15 (D. Minn. Aug. 29, 2003) (internal quotation omitted). *See also Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999) (awarding "supplemental damages, consistent with the jury's verdict, based on [infringer's] continuing infringing activities during the period after the jury's verdict had been returned but before the permanent injunction issued"). This practice of awarding additional damages for post-verdict infringement, described alternately as an accounting or an amendment of judgment, is commonplace enough that Fairchild's own counsel admitted during the September 14, 2006 pretrial conference that the Court could order an accounting: "If there is a need for accounting at a later time that can occur and the Court certainly has the power to do that." (Ex. 1 at 16:23-17:2.)[3]

---

Court can calculate the appropriate measure of damages for Fairchild's post-verdict infringement.
[3]    Other cases in which accounting for post-jury verdict infringement was permitted or acknowledged to be appropriate include *IMX, Inc. v. LendingTree, LLC*, 2007 WL 1232184, at *2 (D. Del. Apr. 25, 2007); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 2001 WL

3

Indeed, Congress has explicitly contemplated that accountings will routinely take place in patent actions, as Federal Rule of Civil Procedure 62(a) provides that "a judgment or order directing an accounting in an action for infringement of letters patent" shall not be stayed pending appeal. Fed. R. Civ. P. 62(a); *see also Mikohn Gaming*, 2001 WL 34778689 at *18 (noting Congressional recognition of accountings and the standard practice of ordering them). The practice of accounting for an adjudicated infringer's continued infringing activity stems from the Patent Act itself, which provides that a patentee shall receive damages "adequate to compensate for the infringement."[4] 35 U.S.C. § 284. "The phrase damages adequate to compensate means full compensation for any damages the patent owner suffered as a result of the infringement." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (citing *Gen. Motors Corp., v. Devex Corp.*, 461 U.S. 648, 654-55 (1983)).

A patentee's entitlement to compensation for infringement is limited only by the harm that the patentee has sustained:

> Section 284 imposes no limitation on the types of harm resulting from infringement that the statute will redress. The section's broad language awards damages for any injury as long as it resulted from the infringement. Though this

---

34778689, at *18-22 (D. Nev. Aug. 2, 2001); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 962 F. Supp. 357, 361 (E.D.N.Y. 1997) (referring to "the accounting following the original Judgment . . . bringing the damages calculation up to date for the purpose of the Amended Judgment"); *Maxwell v. J. Baker, Inc.*, 879 F. Supp. 1007, 1011 (D. Minn. 1995); *Alpex Computer Corp. v. Nintendo Co., Ltd.*, 1994 WL 681752, at *47-48 (S.D.N.Y. Dec. 5, 1994); *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994); *Tech. for Energy Corp. v. Computational Sys., Inc.*, 1992 WL 535791, at *3, *36 (E.D. Tenn. July 29, 1992); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 1992 WL 470239, at *5 (D. Del. July 8, 1992); *In re Hayes Microcomputer Prods., Inc.*, 766 F. Supp. 818, 828 (N.D. Cal. 1991); *Padco, Inc. v. Newell Cos., Inc.*, 1988 WL 187504, at *10-11 (E.D. Wis. July 27, 1988); *Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc.*, 609 F. Supp 1325, 1327 (E.D. Pa. 1985) (accounting awarded for post-trial copyright infringement).

[4] The text of Section 284, in relevant part, is as follows:

> Upon a finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.
>
> When the damages are not found by a jury, the court shall assess them.

section sets a lower limit of a reasonable royalty on the amount of recovery, it mandates an amount 'adequate to compensate for the infringement.'

*King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995). The question in determining damages is not "when did the infringement occur," but "how much ha[s] the Patent Holder . . . suffered by the infringement [and] had the infringer not infringed, what would Patent Holder . . . have made?" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (internal quotations and citations omitted). Thus, the statute does not in any way contemplate temporal limitations as an obstacle to full recovery for all use made of the invention by the infringer, and the Court should order an accounting for Fairchild's continued infringement.

> B.  **The Parties Agree that Power Integrations is Entitled to an Accounting and an Award of Damages for Fairchild's Post-Verdict Infringement**

Power Integrations has suffered and continues to suffer significant and ongoing harm as a result of Fairchild's ongoing sale of infringing products, including substantial sales made after Fairchild was adjudged a willful infringer on October 10, 2006. Fairchild acknowledged at the September 14, 2006 pre-trial conference that an accounting for damages not considered by the jury during the first trial would be appropriate in this case. (Ex. 1 at 16:23-17:2.) Power Integrations agrees, and now seeks an accounting for Fairchild's post-verdict infringing sales.

The same day the jury determined that Fairchild willfully infringed Power Integrations' patents, Fairchild released a statement in which it emphatically declared it would not stop the infringing activities and in fact would "continue offering its full line of pulse-width modulation (PWM) products." (Ex. 3 (Fairchild Press Release of Oct 10, 2006).) In fact, Fairchild's Executive Vice President and General Manager of Analog Products, Mr. Robert Conrad, testified unequivocally during the validity phase of trial that Fairchild has continued to manufacture and sell infringing products at the rate of $30,000,000 per year. (Ex. 4 (Trial #2 Tr., D.I. 557) at

5

633:18-23.) Moreover, since the jury reached its verdict of infringement, Power Integrations has learned that Fairchild expects to ship 50,000,000 units of the infringing FSD210 chip to Samsung's manufacturing subcontractors alone in 2007. (D.I. 567 (Renouard Decl.) at Ex. A.) Because damages for this continuing infringement were not considered by the jury in the first trial — and indeed, could not have been determined in October 2006 — an accounting is necessary to fully compensate Power Integrations for Fairchild's continued infringement.

Calculating the damages for Fairchild's ongoing infringement is straightforward. The jury in the first trial was asked to determine whether lost profits should be awarded and the jury agreed, adopting the calculations and exact damage amounts provided by Power Integrations' damages expert. (D.I. 415 (verdict form); Ex. 5 (Trial #1 Tr.) at 784:23-785:17, 803:18-806:4; Ex. 6 (Plaintiff's demonstratives (PD) showing damages calculations).) Similarly, the jury was asked to determine a reasonable royalty rate for each of the four asserted patents separately, and the jury's verdict included a royalty rate for each patent and a total award of royalty-based damages. (D.I. 415 (verdict form).) Calculating damages for Fairchild's infringement subsequent to the first jury verdict will be a simple matter of arithmetic based on these clear findings by the first jury, and based on the figures and calculations presented by Power Integrations' expert (and accepted by the first jury) during trial.

This Court has recognized that an accounting and award of damages supplemental to a jury award may be appropriate to provide full and complete compensation for infringement not considered by the jury in calculating its damages award. *See, e.g., Dentsply*, 1992 WL 470239, at *5. Such an accounting and award of supplemental damages should be awarded where, as

6

here, the parties agree that an accounting is appropriate.[5] This is not a case of a patentee asking the court to award additional damages for infringing acts already submitted to a jury for a calculation of damages.[6] Nor is Power Integrations seeking an accounting to increase the lost profits already awarded by the jury — Power Integrations seeks only to recover damages, including lost profits, for Fairchild's *post-verdict sales* of parts to the nine customers that formed the basis for the lost profits calculations Power Integrations presented at trial. (*See* Ex. 5 (Trial #1 Tr.) at 793:15-795:13.) These damages were not and could not have been submitted to the jury during the first trial. Further, Power Integrations seeks a reasonable royalty for the remainder of Fairchild's infringing post-verdict sales of the infringing products based on the royalty rates already determined by the jury.

The damages that Power Integrations seeks for Fairchild's post-verdict infringement is fully supported by — and can easily be calculated consistent with — the jury's verdict in the first trial. Power Integrations asked the jury: "do you find by a preponderance of the evidence that Power Integrations suffered actual damages as a result of Fairchild's infringement?" (D.I. 415 (jury verdict form) at 6).) Power Integrations then asked, "If you answered "YES" . . . please state the type and amount of damages you find Power Integrations to have proven," and further to, "please state the applicable royalty rates that should apply to each patent you found Fairchild infringed." (*Id.* at 6-7.) Power Integrations requested, and the jury provided, a specific amount of damages for lost profits due to lost sales (limited to the '876 and '851 patents) as well as a specific royalty rate to be applied for infringement of each of the 4 patents. (*Id.*) Power

---

[5] *Compare Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp.2d 269, 272-3 (D. Del. 2001) (distinguishing cases where parties agreed that an accounting was appropriate and denying patentee's motion for adjustment of damages absent such agreement).

[6] *Compare Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.*, 2004 WL 769357, at *1-2 (D. Del. Apr. 7, 2004) (declining to order an accounting for infringing sales that the patentee invited the jury to calculate itself).

7

Integrations' unmistakable intent, as set forth in its pre-trial order recitation of the issues to be tried was to establish "the proper measure of *any damages* due to Power integrations as a result of any infringement by Fairchild." (D.I. 360 (9/5/06 pretrial order) Exhibit 2 at 3 (emphasis added).) Power Integrations requested, and the jury provided, a way to measure both lost profits and reasonable royalty damages that could be consistently applied to *any damages* — whether for infringement before trial or for any continued infringement afterward. To calculate the post-verdict damages, Power Integrations and the Court need only obtain from Fairchild the unit volume of sales for each of the adjudged infringing products, and the identities of the customers to whom they were sold, for the relevant time period.

An award of an accounting and supplemental damages is particularly warranted in this case, given the long delay between the initial damages award in the first trial and the ultimate verdict upholding each of Power Integrations' patents as valid in the second trial. Power Integrations provided its damages proofs to the first jury in October of 2006, but its ultimate entitlement to collect damages was resolved only after the second favorable jury verdict on September 21, 2007.[7] This full year delay, coupled with Fairchild's decision to continue selling adjudged infringing products after both jury verdicts, provides a unique factual scenario where an accounting is not optional, but is in fact required by the patent statute. The damages awarded to Power Integrations in October of 2006 explicitly were based on sales data current only through December 2005, extrapolated through October 20, 2006, and did not (indeed could not) compensate Power Integrations for Fairchild's continued sale of infringing products. Consistent with Power Integrations' entitlement under § 284 to an award of "damages adequate to

---

[7] When confronted with possible delay of the second trial on invalidity, Power Integrations requested that the Court grant preliminary injunctive relief to prevent continued irreparable harm as a consequence of Fairchild's ongoing willful infringement. *See* Ex. 7 (November

8

compensate for the infringement . . . for the use made of the invention by the infringer," and the requirement under § 284 that "when the damages are not found by a jury, the court shall assess them," the Court should award Power Integrations full compensation for Fairchild's ongoing willful infringement. Consistent with the express requirement of § 284 of the Patent Act that a court "shall award the claimant damages adequate to compensate for the infringement," and in order to ensure that Power Integrations in fact receives "full compensation for 'any damages' [it] suffered as a result of the infringement," *General Motors*, 461 U.S. at 654-55, the Court should grant Power Integrations' Motion for an Accounting.

### III. CONCLUSION

For the foregoing reasons, Power Integrations respectfully requests an accounting for Fairchild's sales of infringing products from October 1, 2006 through the present, and an award of damages sufficient to compensate Power Integrations for Fairchild's continued infringing sales since the cut-off date of October 20, 2006 used in the first trial.[8]

---

30, 2006 Hearing Transcript) at 11:7-13:15, 16:1-17:21. The Court did not grant Power Integrations' request at that time.

[8] Power Integrations asks that Fairchild be ordered to provide sales data from October 1 rather than October 21 merely as an accounting convenience. If Fairchild can in fact provide complete data commencing October 21, 2006, Power Integrations has no objection to using that date. In either case, of course, Power Integrations does not seek to recover twice for the October 1-20, 2006 period.

Dated: October 22, 2007         FISH & RICHARDSON P.C.

By: /s/ Kyle Wagner Compton
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2007, I electronically filed with the Clerk of Court PLAINTIFF POWER INTEGRATIONS, INC.'S OPENING BRIEF IN SUPPORT OF ITS POST-TRIAL MOTION FOR AN ACCOUNTING using CM/ECF which will send electronic notification of such filing(s) to the following counsel.

**BY HAND DELIVERY**  
Steven J. Balick  
John G. Day  
Ashby & Geddes  
500 Delaware Avenue, 8th Floor  
P. O. Box 1150  
Wilmington, DE 19899

Attorneys for Defendants  
FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. and  
FAIRCHILD SEMICONDUCTOR CORPORATION, and third party INTERSIL CORPORATION

**BY E-MAIL AND FEDERAL EXPRESS**  
G. Hopkins Guy, III  
Bas de Blank  
Orrick, Herrington & Sutcliffe, LLP  
1000 Marsh Road  
Menlo Park, CA 94025

Attorneys for Defendants  
FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. and  
FAIRCHILD SEMICONDUCTOR CORPORATION

_/s/ Kyle Wagner Compton_  
Kyle Wagner Compton

80050101.doc