IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

        Defendants.

C.A. No. 04-1371 JJF

**REDACTED**

## PLAINTIFF POWER INTEGRATIONS, INC.'S OPENING BRIEF IN SUPPORT OF ITS POST-TRIAL MOTION FOR ENTRY OF A PERMANENT INJUNCTION

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) (marsden@fr.com)
Kyle Wager Compton (#4693) (compton@fr.com)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

Dated: October 17, 2007

## TABLE OF CONTENTS

**PAGE**

I.  NATURE AND STAGE OF THE PROCEEDINGS ............................................2

II. ARGUMENT ..................................................................................................2

    A.  Legal Standard for Entry of Permanent Injunction....................................2

    B.  Traditional Principles of Equity Compel Entry of a Permanent
        Injunction Against Fairchild .......................................................................5

            1.  Power Integrations has been Irreparably Harmed by
                Fairchild's Willful Infringement.....................................................6

            2.  Remedies at Law are Inadequate to Compensate Power
                Integrations for Harm Caused by Fairchild's Willful
                Infringement..................................................................................13

            3.  The Balance of Hardships Favors Entry of a Permanent
                Injunction Against Fairchild .........................................................17

             4.  The Public Interest Will Be Served by Entry of a
                Permanent Injunction Against Fairchild .......................................19

III. CONCLUSION...............................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                                **PAGE**

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
    2006 WL 2735499 (D. Minn. Sept. 25, 2006) .......................................................4, 20

*800 Adept, Inc. v. Murex Securities, LLC*,
    2007 WL 1101238 (M.D. Fla. Apr. 12, 2007) ...................................................4, 9, 14

*Baden Sports, Inc., v. Kabushiki Kaisha Molten*,
    2007 WL 2790777 (W.D. Wash. Sept. 25, 2007) .........................................................4

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
    2006 WL 3446144 (N.D. Ill. Nov. 11, 2006) ...............................................4, 10, 12, 13

*Brooktrout, Inc. v. Eicon Networks Corp.*,
    2007 WL 1730112 (E.D. Tex. June 14, 2007) ..........................................................4, 6

*Canon, Inc. v. GCC International Ltd.*,
    450 F. Supp. 2d 243 (S.D.N.Y. 2006) ...........................................................................11

*Commonwealth Scientific and Industrial Research Organization v. Buffalo Tech. Inc.*,
    492 F. Supp. 2d 600 (E.D. Tex. 2007) ..........................................................4, 14, 18, 19

*eBay Inc. v. MercExchange, LLC*,
    126 S. Ct. 1837 (2006) ..............................................................................................3, 4

*Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*,
    --- F.3d ----, 2007 WL 2482122 (Fed. Cir. Sept. 5, 2007) .............................................3

*IMX, Inc. v. LendingTree, LLC*,
    469 F. Supp. 2d 203 (D. Del. 2007).................................................................................5

*Johns Hopkins University v. Datascope Corp.*,
    2007 WL 2682001 (D. Md. Aug. 9, 2007) ..................................................4, 13, 18, 20

*MGM Well Services, Inc. v. Mega Lift Systems, LLC*,
    2007 WL 1231682 (S.D. Tex. Apr. 25, 2007) .............................................4, 15, 18, 20

*MPT, Inc. v. Marathon Labels, Inc.*,
    2007 WL 184747 (N.D. Ohio Jan. 19, 2007).................................................4, 9, 15, 19

*Mercexchange, LLC v. eBay, Inc.*,
    2007 WL 2172587 (E.D. Va. July 27, 2007) ..................................................................5

*Muniauction, Inc. v. Thomson Corp.*,
    2007 WL 2225847 (W.D. Pa. July 31, 2007) ....................................................... passim

*Novozymes A/S v. Genencor International, Inc.*,
    474 F. Supp. 2d 592 (D. Del. 2007).........................................................................4, 6, 8

*O2 Micro International Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    2007 WL 869576 (E.D. Tex. Mar. 21, 2007) ...........................................................4, 15

*Ortho-McNeil Pharm., Inc. v. Mylan Laboratoriess Inc.,*
  2007 WL 869545 (D.N.J. Mar. 20, 2007) ...................................................................4

*Paice LLC v. Toyota Motor Corp.,*
  2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) ...........................................................5

*Praxair, Inc. v. ATMI, Inc.,*
  479 F. Supp. 2d 440 (D. Del. 2007) ...........................................................................5

*Rosco, Inc. v. Mirror Lite Co.,*
  2006 WL 2844400 (E.D.N.Y. Sept. 29, 2006) ...........................................................4

*Sanofi-Synthelabo v. Apotex, Inc.,*
  492 F. Supp. 2d 353 (S.D.N.Y. 2007) ........................................................................4

*Smith & Nephew, Inc. v. Synthes (U.S.A.),*
  466 F. Supp. 2d 978 (W.D. Tenn. 2006) .............................................................. passim

*Sundance, Inc. v. DeMonte Fabricating, Ltd.,*
  2007 WL 37742 (E.D. Mich. Jan. 4, 2007) ................................................................5

*Telequip Corp. v. The Change Exchange,*
  2006 WL 2385425 (N.D.N.Y. Aug. 15, 2006) ...........................................................4

*Tivo Inc. v. Echostar Communications Corp.,*
  446 F. Supp. 2d 664 (E.D. Tex. 2006) .............................................................4, 9, 19

*Transocean Offshore Deepwater Drilling, Inc., v. GlobalSantaFe Corp.,*
  2006 WL 3813778 (S.D. Tex. Dec. 27, 2006) ......................................................4, 13

*Verizon Services Corp. v. Vonage Holdings Corp.,*
  --- F.3d ----, 2007 WL 2781869 (Fed. Cir. Sept. 26, 2007) ............................... passim

*Visto Corp. v. Seven Networks, Inc.,*
  2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) .....................................................4, 8, 15

*Voda v. Cordis, Corp.,*
  2006 WL 2570614 (W.D. Okla. Sept. 5, 2006) ...........................................................5

*Wald v. Mudhopper Oilfield Svcs., Inc.,*
  2006 WL 2128851 (W.D. Okla. July 27, 2006) .......................................................4, 7

*Windsurfing International, Inc. v. AMF, Inc.,*
  782 F.2d 995 (Fed. Cir. 1986) ...................................................................................18

*z4 Techs., Inc. v. Microsoft Corp.,*
  434 F. Supp. 2d 437 (E.D. Tex. 2006) ...........................................................5, 10, 11

## STATUTES

35 U.S.C. § 283 ............................................................................................................3

On October 10, 2006, just over one year ago, Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") were adjudged willful infringers of four patents held by Plaintiff Power Integrations, Inc. ("Power Integrations"). Despite that adverse jury verdict, Fairchild issued a press release defiantly announcing that it would continue to offer its full line of infringing products, maintaining its baseless claim that Power Integrations' patents were invalid. The trial that would have, and ultimately did, verify the validity of Power Integrations' patents – over Fairchild invalidity contentions that had changed substantially since Fairchild's pronouncement that it would be business as usual – was initially scheduled in December of 2006, but that trial was repeatedly delayed at Fairchild's request. In the interim, Fairchild not only continued to sell its infringing products to Power Integrations' detriment, Fairchild expanded the scope of its infringing product line and the volume of its infringing sales.

Fairchild took every opportunity to push back the invalidity trial in this case, day by day enjoying the financial benefits of selling infringing products with impunity, while further eroding Power Integrations' market share and prices through unchecked infringement. On September 21, 2007, a jury affirmed the validity of all four of Power Integrations' patents. That same evening, Fairchild issued yet another defiant press release, asserting that "it will keep fighting," that "the verdict finding was incorrect and disappointing," and asserting error in "several decisions made by the court over the course of the three-year-old dispute, including the division of the trial into several phases, rulings construing the claims of the patents involved, and limitations on the evidence Fairchild was permitted to present." (Ex. A[1] (Fairchild 9/21/2007 press release).) Because Fairchild has repeatedly indicated its willingness to continue infringing Power Integrations' patents, and to continue harming Power Integrations in the process, and because all the other relevant factors strongly favor injunctive relief under the facts here, Power Integrations

---

[1]    All exhibit citations refer to the accompanying Declaration of William J. Marsden, Jr., unless noted otherwise.

hereby moves the Court to enter a permanent injunction immediately, precluding Fairchild from further infringement.[2]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Power Integrations initiated this lawsuit against Fairchild for infringement of four patents on October 20, 2004.  After Fairchild requested bifurcation (D.I. 258 (5/25/2006 Pretrial Order) at Ex. 17, issue 6; D.I. 282 (5/31/2006 Pretrial Conf. Tr.) at 6:6-8:9), the issues in this case were bifurcated for trial.  On October 10, 2006, following a first jury trial on issues of infringement, willfulness, and damages, a jury found Fairchild willfully infringed each and every asserted claim of all four of Power Integrations' asserted patents.  Notwithstanding that verdict, Fairchild issued a press release that same day, announcing that it would continue to offer the full line of products found to be infringing.  (*See* Ex. B (Fairchild 10/10/2006 press release).)  A second trial on issues of invalidity was set for December 2006, but was pushed back to June 2007 at Fairchild's request.  The June 2007 trial date was then pushed back to September 2007, again at Fairchild's request.  Finally, issues of invalidity were tried to a jury during the week of September 17, 2007.  On September 21, 2007, the jury confirmed the validity of each and every asserted claim of all four of Power Integrations' asserted patents, rejecting Fairchild's numerous invalidity contentions.  Power Integrations now moves the Court to enter a permanent injunction against Fairchild to prevent further willful infringement of Power Integrations' patents.

## II.    ARGUMENT

### A.    Legal Standard for Entry of Permanent Injunction

The Patent Act provides broad discretion for courts to provide injunctive relief to prevent acts of patent infringement, specifying that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the

---

[2]    One of Power Integrations' patents-in-suit, U.S. Patent No. 4,811,075 ("the '075 patent") has expired at this point, and Power Integrations is not seeking to enjoin activity that implicates only that patent.  Instead, Power Integrations seeks a permanent injunction for Fairchild products that infringe the other three patents-in-suit, which cover the integrated frequency jitter and soft start inventions and were referred to throughout the proceedings as "the circuit patents."

violation of any right secured by patent, on such terms as the court deems reasonable." 35

U.S.C. § 283.  Under Section 283, a district court can enjoin both "infringement of the patent by

the adjudicated products and infringement by products not more than colorably different from

the adjudicated products." *Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*, --- F.3d ----,

2007 WL 2482122, at *8 (Fed. Cir. Sept. 5, 2007) (internal quotations and citations omitted).

This case epitomizes the circumstances calling for injunctive relief as authorized by the statute.

 The Supreme Court recently addressed and confirmed the long-standing standard for the

entry of permanent injunctions in patent cases in *eBay Inc. v. MercExchange, LLC*, 126 S. Ct.

1837 (2006).  Referring to the express language of the Patent Act, 35 U.S.C. § 283, the *eBay*

Court held that "the decision whether to grant or deny injunctive relief rests within the equitable

discretion of the district courts, and . . . such discretion must be exercised consistent with

traditional principles of equity, in patent disputes no less than in other cases governed by such

standards." *Id.* at 1841; *see also Verizon Services Corp. v. Vonage Holdings Corp.*, --- F.3d ----,

2007 WL 2781869, at *12 (Fed. Cir. Sept. 26, 2007) (noting that a district court's decision to

grant an injunction is reviewed for abuse of discretion and affirming injunction in part).

 The proper analysis, in accordance with well-established equitable principles, requires

that:

> a plaintiff seeking a permanent injunction must satisfy a four-
> factor test before a court may grant such relief.  A plaintiff must
> demonstrate:  (1) that it has suffered an irreparable injury;  (2) that
> remedies available at law, such as monetary damages, are
> inadequate to compensate for that injury;  (3) that, considering the
> balance of hardships between the plaintiff and defendant, a remedy
> in equity is warranted;  and (4) that the public interest would not be
> disserved by a permanent injunction.

*eBay*, 126 S. Ct. at 1839.  The *eBay* Court concomitantly rejected the application of any general

rule, unique to patent law, that would result in *per se* or categorical denial or grant of injunctive

relief. *Id.* at 1840.

 Chief Justice Roberts, writing in concurrence, emphasized that the Court's opinion "rests

on the proposition that a major departure from the long tradition of equity practice should not be

lightly implied," noting that "[f]rom at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." *Id.* at 1841 (citation omitted). Thus, while there is no general rule that a patentee is *entitled* to a permanent injunction upon a finding of infringement, "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." *Id.* In this regard, and in keeping with the principle that like cases should be decided alike, Justice Roberts noted that "a page of history is worth a volume of logic" in applying the traditional principles of equity to grant injunctions when patent infringement is found. *Id.* at 1842 (quoting *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921)).

Consistent with *eBay*, the majority of district courts that have considered entry of permanent injunctions against adjudged patent infringers have granted such relief. Power Integrations has identified twenty-eight post-*eBay* patent cases in which district courts applied the four-factor analysis in considering motions for permanent injunctive relief. Permanent injunctions were granted in twenty-one of these cases.[3] Permanent injunctions were denied in seven cases. In two of those cases, the denial of permanent injunctive relief was based upon a

---

[3]    *See Baden Sports, Inc., v. Kabushiki Kaisha Molten*, 2007 WL 2790777 (W.D. Wash. Sept. 25, 2007); *Johns Hopkins Univ. v. Datascope Corp.*, 2007 WL 2682001 (D. Md. Aug. 9, 2007); *Muniauction, Inc. v. Thomson Corp.*, 2007 WL 2225847 (W.D. Pa. July 31, 2007); *Sanofi-Synthelabo v. Apotex, Inc.*, 492 F. Supp. 2d 353 (S.D.N.Y. 2007); *Commonwealth Scientific and Industrial Research Organization v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600 (E.D. Tex. 2007); *Brooktrout, Inc. v. Eicon Networks Corp.*, 2007 WL 1730112 (E.D. Tex. June 14, 2007); *MGM Well Services, Inc. v. Mega Lift Systems, LLC*, 2007 WL 1231682 (S.D. Tex. Apr. 25, 2007); *800 Adept, Inc. v. Murex Securities, LLC*, 2007 WL 1101238 (M.D. Fla. Apr. 12, 2007); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007); *Ortho-McNeil Pharm., Inc. v. Mylan Labs. Inc.*, 2007 WL 869545 (D.N.J. Mar. 20, 2007); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007); *MPT, Inc. v. Marathon Labels, Inc.*, 2007 WL 184747 (N.D. Ohio Jan. 19, 2007); *Visto Corp. v. Seven Networks, Inc.*, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006); *Transocean Offshore Deepwater Drilling, Inc., v. GlobalSantaFe Corp.*, 2006 WL 3813778 (S.D. Tex. Dec. 27, 2006); *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144 (N.D. Ill. Nov. 11, 2006); *Rosco, Inc. v. Mirror Lite Co.*, 2006 WL 2844400 (E.D.N.Y. Sept. 29, 2006); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978 (W.D. Tenn. 2006); *3M Innovative Properties Co. v. Avery Dennison Corp.*, 2006 WL 2735499 (D. Minn. Sept. 25, 2006); *Tivo Inc. v. Echostar Communications Corp.*, 446 F. Supp. 2d 664 (E.D. Tex. 2006); *Telequip Corp. v. The Change Exchange*, 2006 WL 2385425 (N.D.N.Y. Aug. 15, 2006); *Wald v. Mudhopper Oilfield Svcs., Inc.*, 2006 WL 2128851 (W.D. Okla. July 27, 2006).

failure of the plaintiff to adduce sufficient evidence to carry its burden, rather than a decision on the merits that injunctive relief was improper, and denial was without prejudice.[4]  In each of the five cases where injunctive relief was denied on the merits, either the plaintiff merely sought to license its patents, or the patented invention was a minor component of the infringing product — neither of which is true here.[5]

## B.    Traditional Principles of Equity Compel Entry of a Permanent Injunction Against Fairchild

In the case now before the Court, Fairchild has been found by a jury to have willfully infringed Power Integrations' valid patents.  (D.I. 415; 555.)  Although the finding of infringement does not by itself guarantee Power Integrations injunctive relief, the Court should enter a permanent injunction against Fairchild and thereby put an end to a course of knowing and deliberate infringement that has continued unchecked throughout this litigation, even after Fairchild was adjudged a willful infringer over one year ago.  Applying the four-factor test to the facts of this case, entry of a permanent injunction against Fairchild is required.

---

[4]  *See Praxair, Inc. v. ATMI, Inc.*, 479 F.Supp.2d 440, 443-4 (D. Del. 2007) (" [Plaintiff] has not provided or described any specific sales or market data to assist the court,' ... [Plaintiff] may renew its motion for injunctive relief following appellate review of the jury verdict." (internal citations omitted)); *IMX, Inc. v. LendingTree, LLC*, 469 F.Supp.2d 203, 226 (D. Del. 2007) ("Absent any specific information regarding the effect of defendant's infringing operation of the [infringing system] on plaintiff's business, the court is reluctant to make a determination based solely on the considerations present in the current record. ... the court is inclined to give plaintiff the opportunity to provide additional evidence which will aid its determination of the issue.").

[5]  *See Mercexchange, LLC v. eBay, Inc.*, 2007 WL 2172587, at *9 (E.D. Va. July 27, 2007) ("[Plaintiff] has followed a consistent course of seeking to maximize the money it can obtain from licensing its patents to market participants allegedly utilizing such patents...") (emphasis omitted); *Sundance, Inc. v. DeMonte Fabricating, Ltd.*, 2007 WL 37742, at *2 (E.D. Mich. Jan. 4, 2007) ("[Plaintiff] licenses the [patent-in-suit] to others, and offered to license it to [infringer] prior to filing suit against it, thus demonstrating that money damages are adequate.); *Voda v. Cordis, Corp.*, 2006 WL 2570614, at *5 (W.D. Okla. Sept. 5, 2006) ("plaintiff identifies no harm to himself; rather, he relies on alleged harm to a non-party [exclusive licensee]. . . . [S]uch harm is irrelevant because [licensee] elected not to sue to enforce the patent rights."); *Paice LLC v. Toyota Motor Corp.*, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006) ("Plaintiff, throughout post-trial motions, has extended Defendants an offer to license its technology."); *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp.2d 437, 440 (E.D. Tex. 2006) ("[Infringer] only uses the infringing technology as a small component of its own software, and it is not likely that any consumer of [infringer's] software purchases these products for their [infringing] functionality.").

As an initial matter, it should be noted that this is a case that parallels many prior cases where injunctions were routinely entered. Power Integrations is a producer and seller of highly specialized integrated circuits that incorporate its inventions — a practicer, not a licensor, of its patents. Power Integrations seeks injunctive relief not for use as a bargaining chip to assert undue leverage in negotiations, but as an essential tool to protect its investment in research and development of ground-breaking new technologies, and to protect the market share it built by selling those innovative patented products. This is a classic infringement case, substantially similar to infringement cases that courts have confronted since the early 19th century: a small innovator finds success marketing its patented product, only to have its product and its market stolen by a larger, infringing competitor. These are precisely the facts upon which courts have granted injunctive relief in the vast majority of previous cases and this court should similarly grant injunctive relief here.

While *eBay* dispelled application of unwarranted "general rules" in issuance of permanent injunctions, it did not dispel issuance of permanent injunctions. District courts, including this Court, have continued to grant permanent injunctive relief against adjudicated patent infringers in the majority of cases. *See, e.g., Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007). Similarly, district courts have reaffirmed past grants of permanent injunctive relief on remand for reconsideration in light of *eBay. See Brooktrout, Inc. v. Eicon Networks Corp.*, 2007 WL 1730112 (E.D. Tex. June 14, 2007). And so they should, consistent with the long tradition of equity practice, which led courts in the vast majority of patent cases to grant injunctive relief upon a finding of infringement. As discussed fully below, the equities of this case warrant immediate entry of permanent injunctive relief, and Power Integrations' Motion for Entry of Permanent Injunction should be granted.

### 1. Power Integrations has been Irreparably Harmed by Fairchild's Willful Infringement

Fairchild's ongoing and expanded campaign of willful infringement has irreparably harmed and continues to irreparably harm Power Integrations in a manner for which Power

Integrations has not been compensated: "Irreparable harm . . . is often suffered when the injury cannot be adequately atoned for in money or when the district court cannot remedy the injury following a final determination on the merits." *Wald*, 2006 WL 2128851, at *5 (internal citation and quotations omitted). Courts have identified numerous injuries that constitute irreparable harm to a patentee caused by infringement, and the Federal Circuit recently addressed the issue of irreparable harm in affirming in part the entry of an injunction. *Vonage*, 2007 WL 2781869. The Federal Circuit noted that the record contained "several areas of irreparable harm" to support the injunction, including lost sales, price erosion, and other lost opportunities with respect to the lost customers. *Id.* at *12. The weight of factors commonly considered in the irreparable harm analysis, including the factors recently addressed by the Federal Circuit, heavily favors entry of a permanent injunction here.

        **a.**    **Fairchild's direct, infringing competition with Power Integrations has irreparably harmed Power Integrations' position in the market.**

     As an initial matter, it is important to recognize that Power Integrations is an innovator in the power supply industry. Power Integrations has built a market around its patented technology because its patents provide significant improvements over competitive technologies. (Ex. C (excerpts from Trial #2 Tr.) at 887:3-889:22, 896:4-897:7, 900:18-901:15, 958:19-961:22; Ex. D (excerpts from Trial #1 Tr.) at 647:2-21.) This is not merely a self-serving opinion advanced by Power Integrations — the superiority of Power Integrations technology has been recognized by industry analysts. (*See, e.g.*, Ex. E (SG Cowen Feb. 3, 2006 Report, SGC0106-0123) at SGC0113; Ex. F (SG Cowen June 22, 2005 Report, SGC0332-0343) at SGC0333.) Power Integrations has also won numerous industry awards and has been recognized by government agencies for its contributions to the field of power supply technology. (*See* Ex. G (selected awards and press releases).) Power Integrations' status as an innovator is itself an important factor that district courts have considered relevant in granting injunctive relief, but it also provides a basis for consideration of numerous other factors in the irreparable harm analysis. Fairchild's willful infringement of Power Integrations' patents has deprived Power Integrations

of the benefits of its industry leadership position and the benefits of its exclusive use of its patented technology. (*See, e.g.*, Ex. E (SG Cowen Feb. 3, 2006 Report, SGC0106-0123) at SGC0113 ("[W]e believe Fairchild's Power Switch likely infringes Power Integrations' [patents] and we think that these products currently cause [Power integrations] to forego approximately $10 million per year in sales. . . . had the company not lost a large part of the Samsung business to Fairchild, [Power Integrations] would likely have grown revenue at about 13% in 2005, as compare to 6% sales growth.") The irreparable nature of the harm that Power Integrations has suffered flows from this deprivation.

District courts have recognized that patentees are likely to suffer irreparable harm when an infringing product is offered in direct competition with a patentee. *See, e.g., Muniauction*, 2007 WL 2225847, at *2 ("Plaintiff and defendants are direct competitors in a two-supplier market. If plaintiff cannot prevent its only competitor's continued infringement of its patent, the patent is of little value."); *Visto*, 2006 WL 3741891, at *4 ("The parties to this case are direct competitors, and this fact weighs heavily in the court's analysis. Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market."). Injunctive relief is used to prevent infringement by competitors because a patentee "has a right, granted by Congress, not to assist its rivals with the use of proprietary technology." *Novozymes*, 474 F. Supp. 2d at 613.

Fairchild admits that it competes directly with Power Integrations in the market for the integrated power supply controller chips at issue in this case. (Ex. D (excerpts from Trial #1 Tr.) at 881:11-16.) By infringing Power Integrations' patents, Fairchild has usurped Power Integrations' market position, stealing the lion's share of the business from what, at the time, was Power Integrations' biggest account — Samsung, and the subcontractors who make Samsung Wireless cell phone chargers. (*See, e.g.*, Ex. F (SG Cowen June 22, 2005 Report, SGC0332-0242) at SGC0333 ("In 3Q03 Fairchild announced that it had commenced shipping its branded Power Switch ICs into certain battery charger platforms to accompany Samsung mobile handsets. Prior to this, [Power Integrations] garnered 100% of Samsung's handset charger

8

business.")"); Ex. D (excerpts from Trial #1 Tr.) at 658:1-24, 747:15-748:21, 758:16-759:13.) Power Integrations has been irreparably harmed by that usurpation.

District courts have recognized that industry pioneers like Power Integrations who create markets for their pioneering technologies are necessarily irreparably harmed by infringement. "[W]here a company pioneers an invention in the marketplace, irreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill." *800 Adept*, 2007 WL 1101238, at *6. District courts have also recognized that loss of a market that the patentee created to an infringer constitutes irreparable harm. *See, e.g., MPT*, 2007 WL 184747, at *14 ("[Patentee] invented a method, actively created a market, and established a strong market position and customer goodwill. Usurping this market by . . . infringement will irreparably harm [patentee].").

The tendency for infringement by a competitor to result in irreparable harm is amplified where the market for the patented product is in the early stages of development. *See Tivo*, 446 F. Supp. 2d at 669-70 ("The availability of the infringing products leads to loss of market share for Plaintiff's products. Loss of market share in this nascent market is a key consideration in finding that Plaintiff suffers irreparable harm — Plaintiff is losing market share at a critical time in the market's development, market share that it will not have the same opportunity to capture once the market matures.").

An evaluation of these considerations in light of the evidence adduced in this case demonstrates that Power Integrations has been irreparably harmed by Fairchild's infringement. Solely by virtue of its having willfully infringed Power Integrations' patents, Fairchild has been able to enter a market in which it did not previously participate to compete head-to-head with Power Integrations. (Ex. D (excerpts from Trial #1 Tr.) at 609:24-610:15, 659:1-661:3.) The harm that Power Integrations has suffered as a consequence of Fairchild's infringement is all the more damaging because Fairchild directly competes against Power Integrations in a developing market for integrated power supply controller chips:

> Power Integrations is currently benefiting from the accelerating
> adoption of power conversion integrated circuits (ICs) used in

> power supply applications. . . . A majority of the power supply market is still dominated by first-generation linear power supplies and second-generation discrete electronic switching power supplies. Consequently, a sizeable opportunity exists for power conversion IC companies such as Power Integrations, as the benefits of silicon integration are increasingly being recognized by consumer electronics OEMs and merchant power supply manufacturers.

(Ex. H (SG Cowen July 14, 2004 Report, SGC0039-0086) at SGC0040; *see also* Ex. D (excerpts from Trial #1 Tr.) at 762:14-763:7.) This direct competition, including Fairchild's successful efforts to steal Power Integrations' largest accounts by selling the infringing parts, has irreparably harmed Power Integrations.

<blockquote>

**b.    Power Integrations has demonstrated actual harm that evidences further irreparable harm from Fairchild's willful infringement.**

</blockquote>

As discussed above, irreparable harm is most likely to occur when patents owned by an industry pioneer, such as Power Integrations, are infringed by a direct competitor, such as Fairchild, in a growing market, such as the market for integrated power supply controller chips. In addition to demonstrating that all of these factors are applicable in this case, Power Integrations has demonstrated that it suffered actual harms which courts have previously characterized as supporting a finding of irreparable harm, including lost sales, loss of market share, price erosion, and other lost opportunities. *See Vonage*, 2007 WL 2781869, at *12. *See also z4*, 434 F. Supp. 2d at 440 (describing "lost profits, the loss of brand name recognition or the loss of market share" as "the type of injuries that are often incalculable and irreparable.").

"Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm." *Black & Decker*, 2006 WL 3446144, at *4. Power Integrations has shown that it developed a significant market for its innovative integrated power supply controller chips and then lost market share to Fairchild when Fairchild introduced its infringing products. (*See, e.g.*, Ex. E (SG Cowen Feb. 3, 2006 Report, SGC0106-0123) at SGC0113 ("[H]ad the company not lost a large part of the Samsung business to Fairchild, [Power Integrations] would likely have grown revenue about 13% in 2005, as compared to 6% sales growth."); Ex. D

(excerpts from Trial #1 Tr.) at 747:15-748:21, 758:16-759:13.)  Power Integrations' loss of market share, confirmed by the jury's award of lost profits for lost sales, demonstrates irreparable injury warranting grant of injunctive relief.

Power Integrations also suffered substantial price erosion as a result of Fairchild's willful infringement, which courts following *eBay* have identified as supporting a finding of irreparable harm.  *See Vonage*, 2007 WL 2781869, at *12.  *See also z4*, 434 F. Supp. 2d at 440.  By offering infringing products at reduced prices, Fairchild forced Power Integrations to slash prices on its own patented products in order to compete with Fairchild and avoid further loss of business. (Ex. D (excerpts from Trial #1 Tr.) at 659:1-664:18 (explaining the reduction from prices above $0.40 per unit to less than $0.30 per unit), 671:17-22 (explaining that Fairchild's infringing sales resulted in Power Integrations' margins being cut in half for the Samsung cell phone charger market), 673:15-22 (same), 671:23-672:21 (explaining that Fairchild's infringement allowed Fairchild to substantially undercut Power Integrations' prices in the LCD monitor market).)  This price erosion has been extremely harmful to Power Integrations beyond the specific competing sales lost to Fairchild, and it warrants a grant of injunctive relief here.  *See z4*, 434 F. Supp. 2d at 440 (noting price erosion among other harms "that are often incalculable and irreparable"); *Canon, Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 255-6 (S.D.N.Y. 2006) (applying the *eBay* factors in the context of a preliminary injunction analysis and finding irreparable harm from "significant price erosion" warranting an award of injunctive relief).

The harm to Power Integrations due to loss of customers is particularly severe in that Power Integrations essentially offers only one type of product — integrated power supply controller chips — and cannot compensate for the loss of any customer by cross-selling additional products to its remaining customers, or recapture lost customers by offering a full range of products.  (*See* Ex. D (excerpts from Trial #1 Tr.) at 601:14-19; Ex. I (Power Integrations' 2005 10-K, PX 387) at 7; Ex. C (excerpts from Trial #2 Tr. at 887:3-8, 896:4-897:7, 900:18-901:15, 958:19-961:22.)  The damage that Fairchild has caused to Power Integrations by selling infringing products cannot be repaired by money damages alone.

11

      **c.**    **The reputational harm to Power Integrations and eroded public evaluation of Power Integrations' intellectual property warrant entry of an injunction against Fairchild.**

Courts have also recognized that, in addition to market-related injuries, patentees may suffer irreparable harm to customer goodwill, brand recognition, or reputation as a consequence of infringement. *See, e.g., Muniauction*, 2007 WL 2225847, at *2 ("Defendants' infringement has . . . done harm to plaintiff's reputation as the leading innovator in this field. . . . Such a harm is not compensable in damages, and is irreparable, making equitable relief appropriate."); *Black & Decker*, 2006 WL 3446144, at *4 ("[H]arm to reputation . . . is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure. Because [patentee] has presented evidence that its reputation as an innovator . . . may be harmed by the continued selling and marketing of [infringing products], this factor weighs in favor of a permanent injunction.") (quotations omitted).

Prior to Fairchild's infringement, Power Integrations established itself as a technological innovator, offering superior solutions for power supplies. (*See, e.g.,* Ex. H (SG Cowen July 14, 2004 Report, SGC0039-0086) at SGC0051 ("Power supplies that employ Power Integrations' products generally possess a lower cost profile, have richer features, and are more manufacturable. The company's products also allow superior designs over both linear transformer and discrete electronic power supplies, by enabling fewer total parts and enhanced electrical efficiency."); Ex. D (excerpts from Trial #1 Tr.) at 647:2-21; Ex. C (excerpts from Trial #2 Tr.) at 889:10-22, 958:19-961:22.) Power Integrations historically maintained this leadership and reputation by not licensing its patented chip technology, but rather by supplying the market demand for its innovations itself. By infringing Power Integrations' patents and offering competing products in a market that it could not have served but for its infringement, Fairchild has usurped Power Integrations' goodwill and harmed its reputation as a leading innovator — damage that warrants entry of a permanent injunction.

The nature of the patent right also weighs in favor of injunctive relief. "Because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs

12

against holding that monetary damages will always suffice to make the patentee whole." *Black & Decker*, 2006 WL 3446144, at *3 (quoting *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir 1994)). "Since a patent grants the right to exclude others from practicing the invention, 35 U.S.C. § 154, the right to exclude remains a relevant issue for courts to consider when weighing the equities for and against an application for permanent injunction." *Transocean*, 2006 WL 3813778, at *3. Here, additional evidence demonstrates that Fairchild's infringement has degraded the public perception of Power Integrations' patent rights. Another competitor, observing the profits Fairchild has made from its willful infringement and the length of time it has taken to resolve the issue of Fairchild's infringement, has decided that the immediate upside profits outweigh any potential risk of being held accountable for infringing Power Integrations' patents. (Declaration of Bruce Renouard at ¶ 3[6] and Ex. B (weekly sales report).)[7] District Courts have explicitly recognized that encouragement of serial infringement by other competitors is a relevant factor favoring the grant of a permanent injunctive relief. *See Johns Hopkins*, 2007 WL 2682001, at *6 ("If the Plaintiffs do not obtain injunctive relief, others may be encouraged to infringe their patents and risk litigation, thus devaluaing the Plaintiffs' property."). Power Integrations has thus far been deprived of its statutory right to exclude, and the fact that potential new competitors are choosing to ignore Power Integrations' patents in light of Fairchild's strategy of willful infringement and tactical delay demonstrates further irreparable harm to Power Integrations. Taken as a whole, the evidence weighs heavily in favor of entry of a permanent injunction against Fairchild.

> **2.  Remedies at Law are Inadequate to Compensate Power Integrations for Harm Caused by Fairchild's Willful Infringement**

In addition to the irreparable harm discussed above, the evidence demonstrates that legal remedies are insufficient to repair the full impact of Fairchild's willful infringement. The weight

---

[6]    The Declaration of Bruce Renouard is filed contemporaneously herewith.
[7]    Power Integrations has initiated litigation against this party, including asserting claims of the same frequency jitter patents at issue here, further showing the value of those patents to the market and the need for injunctive relief.

of factors commonly considered as demonstrating inadequacy of remedies at law heavily favors

the grant of permanent injunctive relief here.

As an initial matter, the insufficiency of legal remedies to compensate Power Integrations

for Fairchild's willful infringement is shown by the same evidence demonstrating irreparable

harm that Power Integrations has sustained as a consequence of Fairchild's willful infringement,

discussed above. Irreparable injury is a basis for showing inadequacy of legal remedy, and

accordingly the concepts of 'irreparable injury' and 'no adequate remedy at law' often overlap in

the context of a permanent injunction. *800 Adept*, 2007 WL 1101238, at *6 (citations omitted).

*See also Smith & Nephew*, 466 F. Supp. at 982-3 ("Although stated as two separate factors

under *eBay*, the irreparable harm requirement contemplates the inadequacy of alternate remedies

available to the plaintiff.") (citations omitted). Indeed,

> when an infringer saturates the market for a patented invention
> with an infringing product or damages the patent holder's good
> will or brand name recognition by selling infringing products, that
> infringer violates the patent holder's exclusionary right in a
> manner that cannot be compensated through monetary damages.
> This is because it is impossible to determine the portions of the
> market the patent owner would have secured but for the infringer's
> actions or how much damage was done to the patent owner's brand
> recognition or good will due to the infringement.

*Commonwealth Scientific and Industrial Research Organisation v. Buffalo Technology Inc.*, 492

F. Supp. 2d 600, 605 (E.D. Tex. 2007) ("*CSIRO*"). These factors, discussed above, support a

finding that legal remedies are inadequate to compensate Power Integrations for harm caused by

Fairchild's willful infringement. Other factors, discussed below, also support the same finding.

District courts have often cited the threat of continued infringement as a significant

consideration favoring injunctive relief. *See, e.g., Smith & Nephew*, 466 F. Supp. 2d at 984

("Relief in the form of monetary damages alone would not meet the ends of justice here because

this remedy would allow the infringement to continue. Monetary damages generally are not an

adequate remedy against future infringement because the central value of holding a patent is the

right to exclude others from using the patented product."). Other courts have explained that

14

injunctive relief is warranted in addition to, and is not inconsistent with, an award of money

damages for past patent infringement:

> It is true that the jury awarded a large damages verdict. Those
> damages, however, are designed to compensate [the patentee]
> fairly and reasonably for its past injury. . . . Although future
> damages may compensate [the patentee] for an *approximate* loss,
> that does not make them adequate in the sense that they are a
> suitable proxy for injunctive relief. What makes legal remedies
> inadequate under the circumstances of this case is the inability to
> calculate the plaintiff's future losses with precision. An injunction
> against the continued use of the plaintiff's intellectual property is
> the proper remedy to prevent future infringement."

*Visto*, 2006 WL 3741891, at *4 (emphasis in original). Further, the money damages awarded by

the jury are insufficient to compensate for the true extent of the harm to Power Integrations based

on Fairchild's erosion of market prices and Power Integrations' loss of market share. *See MPT*,

2007 WL 184747, at *15.

Courts have found the need to enjoin future infringement even more compelling when

confronted with evidence of persistent, unjustifiable infringing activity. *See, e.g., Muniauction*,

2007 WL 2225847, at *2 ("We note that defendants apparently have every intention of

continuing to offer their infringing system in the absence of an injunction. Therefore, continued

harm to plaintiff's patent rights, and continuous damages, both monetary and non-monetary, are

guaranteed."); *MGM*, 2007 WL 1231682, at *14 (finding "no reason to believe that [infringer]

will refrain from marketing infringing products absent a permanent injunction" given history of

"persistent infringement."). Accordingly, courts have weighed jury findings of willful

infringement as strongly favoring injunctive relief. *See, e.g., O2 Micro*, 2007 WL 869576, at *2

("The jury has found that the defendants have willfully infringed [the patentee's] intellectual

property. The threat of continued infringement exists and an injunction is the proper remedy to

prevent future infringement.").

These factors obviously warrant injunctive relief here. Fairchild has demonstrated its

willingness to continue its infringing activities by vowing to continuing to offer its full line of

infringing products, even after being adjudged a willful infringer. (Ex. B (Fairchild 10/10/2006

press release).) Fairchild has also expanded its infringing U.S. activities since the case was filed, including further expansion since Fairchild was found to infringe Power Integrations' patents. (Ex. D (excerpts from Trial #1 Tr.) at 774:17-23 (noting the U.S. manufacturing of FSD210 parts found to infringe during the course of the litigation); Ex. C (excerpts from Trial #2 Tr.) at 605:23-606:16 (noting that Fairchild is consolidating the manufacturing of power conversion products in Maine).) Fairchild has also expanded its campaign of infringement with new parts which are not colorably different from those adjudged to infringe. (*See* Ex. A (Fairchild 9/21/2007 press release) (noting the release of new products to "replace" the products adjudged to infringe).) To date, Power Integrations has identified at least 26 new Fairchild products that appear not to be colorably different from those adjudged to infringe. (Declaration of Robert Blauschild at ¶¶ 3-5.)[8] Power Integrations' technical expert on the circuit patents at issue in this injunction, Robert Blauschild, has reviewed the publicly available materials regarding these new parts, and they all appear to contain Power Integrations' patented integrated frequency jitter and/or soft start inventions. (*Id.*) Fairchild's actions demonstrate to an almost certainty that infringement will continue. Absent an injunction against the further sale of the parts found by the jury to infringe, the additional parts identified by Mr. Blauschild and any others not colorably different, there is no reason to expect Fairchild will change its conduct and in the future respect Power Integrations' intellectual property.

This is also not the type of case in which the patents-in-suit are used primarily for obtaining licensing fees. Power Integrations has shown it is not willing to accept royalties or licensing fees in lieu of market exclusivity. Power Integrations has never licensed its patented technology to a direct competitor. (Ex. D (excerpts from Trial #1 Tr.) at 317:18-318:8.) Indeed, Power Integrations has brought patent infringement suits against three other infringers, prevailing against the two others (Motorola and System General) against whom a trial has occurred and is presently prosecuting its infringement claims against the third. This investment in time and resources shows the importance to Power Integrations of protecting its patented

---

[8] The Declaration of Robert Blauschild is filed contemporaneously herewith.

innovations and the role of those patents in allowing Power Integrations to be properly compensated in the market for its pioneering product and technology development. Although Power Integrations has, in the past, licensed its patents to contract wafer manufacturers, such an arrangement is not indicative of Power Integrations' willingness to forego its right to exclude. (Ex. D (excerpts from Trial #1 Tr.) at 317:18-318:8; 342:6-12; 344:23-345:10; 346:6-347:5.) Power Integrations' limited licensing in the context of a manufacturing relationship, including licensing limited to the Japanese market (*id.* at 344:23-345:10), reflects that Power Integrations uses its patents to maintain the market exclusivity of its products, not for the purposes of licensing competition.

The jury has determined that Fairchild violated Power Integrations' exclusionary rights, and the true extent of the harm to Power Integrations' goodwill and reputation as a consequence of Fairchild's infringement cannot be accurately ascertained. Monetary damages are inadequate to compensate Power Integrations for future infringement, and in any event, would not prevent further loss of market share or price erosion. Moreover, Fairchild has demonstrated its willingness not only to continue infringing Power Integrations' patents, but to expand its infringement. (Exs. A & B (Fairchild 9/21/2007 & 10/10/2006 press releases); Ex. C (excerpts from Trial #2 Tr.) at 605:23-606:16.) Accordingly, legal remedies are inadequate to redress the harm that Power Integrations has sustained and continues to sustain as a consequence of Fairchild's infringement.

### 3. The Balance of Hardships Favors Entry of a Permanent Injunction Against Fairchild

Like the "irreparable harm" and "inadequate remedy at law" factors discussed above, and for many of the same reasons discussed above, the balance of hardships in this case strongly favors a grant of injunctive relief. Generally speaking, the harm that Power Integrations will endure if a permanent injunction is not entered in this case is a continuation of the irreparable harm that it has already suffered as a consequence of Fairchild's willful infringement. Power Integrations will suffer continued loss of market share, price erosion, harm to reputation, and loss

of goodwill. Further, if Power Integrations is not afforded injunctive relief, other competitors will be encouraged to infringe Power Integrations' patents. Indeed, as noted above, Power Integrations believes the length of the case has led at least one other competitor to believe that Power Integrations' patent rights are so diminished that the risk of being caught for infringement is outweighed by the significant profits to be made by selling infringing chips in the interim. (Declaration of Bruce Renouard at ¶ 3 and Ex. B (weekly sales report).) *See Johns Hopkins*, 2007 WL 2682001, at *6 (finding injunctive relief necessary because if injunctive relief was not granted, others would be encouraged to infringe the plaintiffs' patents and risk litigation). Power Integrations has sued the latest infringer, but the entry of any such additional infringers in the market, emboldened by Fairchild's actions, will further drive down prices, and thereby further erode the value of the market Power Integrations created and continues to lead despite repeated infringement by others.

By way of comparison, the harm that Fairchild will endure if a permanent injunction is entered is that it will no longer be able to infringe Power Integrations' patents. This hardship is imposed by law, rather than by the particular circumstances of this case, and should not be considered an unreasonable hardship. *See MGM*, 2007 WL 1231682, at *15. Moreover, the hardship to Fairchild of permanently enjoining its infringement is limited to that normally expected when an injunction is imposed, and the hardship incurred in the process of ceasing infringement is afforded no weight in the "balance of hardships" analysis. *See CSIRO*, 492 F. Supp. 2d at 606; *Smith & Nephew*, 466 F. Supp. 2d at 984. An infringer should not be heard to complain that an injunction will damage the business it has built around infringing products. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

The balance of hardships also favors the grant of injunctive relief because Power Integrations' business focuses primarily on one type of product: integrated power supply controller chips. Power Integrations' pioneering integrated power supply controller chips are successful in part because they practice the patented inventions at issue in this case, and chips with the patented features account for approximately 90% of all of Power Integrations' revenues.

18

(Ex. C (excerpts from Trial #2 Tr.) at 887:3-8, 896:4-897:7, 900:18-901:15, 958:19-961:22; Ex. I

at 7.) ; Ex. I at 7.)  Under such circumstances, the harm caused by Fairchild's infringement is

particularly severe and weighs heavily in favor of an injunction.  *See Tivo*, 446 F. Supp. 2d at

670.

   Fairchild, by way of contrast, is a diversified semiconductor company, and it will endure

significantly less harm if it is enjoined.  Sales of Fairchild's infringing products account for only

a small fraction of Fairchild's revenues.  (Ex. B (Fairchild 10/10/2006 press release); Ex. D

(excerpts from Trial #1 Tr.) at 972:2-5 (noting that Fairchild currently sells roughly 20,000

different products), 974:8-17 (noting that Fairchild's revenue for 2006 was in the range of $1

Billion); Ex. C (excerpts from Trial #2 Tr.) at 633:18-23 (noting that Fairchild Green FPS

products account for roughly $30 Million in annual sales).)  Moreover, Fairchild will not be

precluded from selling non-infringing first-generation linear power supply components or

second-generation discrete electronic switching power supply components, as it does and did

before it began infringing Power Integrations' patents.  Because the infringing products represent

a comparatively insubstantial segment of Fairchild's overall business, the hardship Fairchild will

suffer as a result of an injunction is far outweighed by the harm that Power Integrations will

suffer in the absence of one.  *See CSIRO*, 492 F. Supp. 2d at 606 (hardship to infringer for whom

infringing products make up only eleven percent of business "is far from catastrophic"); *MPT*,

2007 WL 184747, at *15 ("[O]nly a small percentage of [infringer's] total sales will be

prohibited by an injunction" but "[patentee] is likely to face substantial hardship from the

continued infringement of the patents.").

   **4. The Public Interest Will Be Served by Entry of a Permanent
Injunction Against Fairchild**

   The Court should find that public interests will be served by entry of a permanent

injunction against Fairchild.  Courts considering the public interest factor have consistently

acknowledged public interest in a strong patent system and public policy favoring the

enforcement of patent rights.  *See, e.g., CSIRO*, 492 F. Supp. 2d at 607 ("The public maintains an

interest in protecting the rights of patent holders as well as enforcing adequate remedies for patent infringement. Permanent injunctions serve that interest."). Although concerns about public health or safety might in some cases weigh against entry of a permanent injunction, such concerns are not implicated in this case. *See, e.g., 3M*, 2006 WL 2735499. at *2. Moreover, public policy is served by enjoining willful patent infringement. *See, e.g., Muniauction*, 2007 WL 2225847, at *3.

Neither will public policy favoring competition be disserved by entry of a permanent injunction here. Even if Fairchild is enjoined from infringing Power Integrations' patents, it will remain free to offer non-infringing alternatives. *See MGM*, 2007 WL 1231682, at *15. There is no evidence of any enormous need for Fairchild's infringing products to suggest the public interest would be disserved by enjoining Fairchild's infringement, *see Smith & Nephew*, 466 F. Supp. 2d at 985, and Power Integrations has sufficient manufacturing capacity to meet all public demand for its products, *Johns Hopkins*, 2007 WL 2682001, at *6, including the demand now met by Fairchild. (Ex. D (excerpts from Trial #1 Tr.) at 801:10-802:5).

Indeed, the public interest will be served by the award of an immediate permanent injunction and the protection it will afford Power Integrations' business. Power Integrations is the acknowledged industry leader in the development of integrated power supply controller chips and its innovations have been recognized as greatly beneficial to the reduction in power consumption and improvements in the efficiency of the manner in which electronic devices are powered. (*See* Ex. G.) Without the protections of its intellectual property, including the right to exclude enforced by injunction, Power Integrations could not maintain its level of research and development investment that has led to so many industry advancements. The protection of innovation, in the form of companies like Power Integrations that create and bring to market patented technologies that benefit society at large, are what the patent system is all about. As the Supreme Court has recognized, that system works best when injunctions are granted in appropriate cases, like this one. Accordingly, the Court should grant Power Integrations' Motion for Entry of Permanent Injunction.

## III.    CONCLUSION

Fairchild has been found to have willfully infringed Power Integrations' valid patents. Even after having been adjudicated a willful infringer, Fairchild remains incorrigible, publicly vowing to continue offering its full line of infringing products and expanding its product line to offer more infringing products. Power Integrations has moved the Court for an immediate, permanent injunction to prevent further infringement of its patents, both with the infringing products and with those not colorably different from those adjudged to infringed, including the new products specifically identified by Power Integrations' technical expert. As demonstrated above, each factor of the four-part test required under *eBay* favors entry of injunctive relief here. Accordingly, Power Integrations' Motion for Entry of Permanent Injunction should be granted.

Dated:  October 17, 2007                 FISH & RICHARDSON P.C.

By:    */s/ William J. Marsden, Jr.*
     William J. Marsden, Jr. (#2247)
     Kyle Wagner Compton (#4693)
     919 N. Market Street, Suite 1100
     P.O. Box 1114
     Wilmington, DE  19899-1114
     Telephone: (302) 652-5070
     Email:  marsden@fr.com

     Frank E. Scherkenbach
     225 Franklin Street
     Boston, MA 02110-2804
     Telephone: (617) 542-5070

     Howard G. Pollack
     Michael Headley
     500 Arguello Street, Suite 500
     Redwood City, CA 94063
     Telephone: (650) 839-5070

     **ATTORNEYS FOR PLAINTIFF**
     **POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2007, I electronically filed with the Clerk of Court PLAINTIFF POWER INTEGRATIONS, INC.'S OPENING BRIEF IN SUPPORT OF ITS POST-TRIAL MOTION FOR ENTRY OF A PERMANENT INJUNCTION using CM/ECF which will send electronic notification of such filing(s) to the following counsel.

**BY HAND DELIVERY**
Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION, and third party
INTERSIL CORPORATION

**BY E-MAIL AND FEDERAL EXPRESS**
G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA  94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

_/s/ William J. Marsden, Jr._
William J. Marsden, Jr.