## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

In September 2006, the SEC issued Staff Accounting Bulletin No. 108 (SAB 108), which provides interpretive guidance on how the effects of the carryover or reversal of prior year misstatements should be considered in quantifying a current year misstatement. The guidance is applicable for the Company's fiscal year 2006. The Company currently does not believe that the adoption of SAB 108 will have a material impact on its consolidated financial position and results of operation.

In September 2006, the FASB issued Statement of Financial Accounting Standards No. 157, *Fair Value Measurements* (SFAS 157). SFAS 157 establishes a framework for measuring fair value and expands disclosures about fair value measurements. The changes to current practice resulting from the application of SFAS 157 relate to the definition of fair value, the methods used to measure fair value, and the expanded disclosures about fair value measurements. SFAS 157 is effective for fiscal years beginning after November 15, 2007 and interim periods within those fiscal years. The Company is currently in the process of evaluating the impact that the adoption of SFAS 157 will have on its consolidated financial position and results of operation.

In September 2006, the FASB issued SFAS No. 158, *Employers Accounting for Defined Benefit Pension and Other Postretirement Plans—an amendment of FASB Statements No. 87, 88, 106, and 132(R), (SFAS 158)*. SFAS 158 requires an employer to recognize the over-funded or under-funded status of a defined benefit postretirement plan (other than a multiemployer plan) as an asset or liability in its statement of financial position to recognize changes in that funded status in the year in which the changes occur through comprehensive income of a business entity or changes in unrestricted net assets of a not-for-profit organization. The provisions of SFAS 158 require an employer with publicly traded equity securities to recognize the funded status of a defined benefit postretirement plan and to provide the required disclosures as of the end of the fiscal year ending after December 15, 2006. The Company does not believe that the adoption of the provisions of SFAS No. 158 will materially impact its consolidated financial position and results of operation.

## 3. RESTATEMENT OF CONSOLIDATED FINANCIAL STATEMENTS:

*Background*

Based upon an investigation and determinations made by a Special Committee of the board of directors and management's undertaking of a separate review of historical stock option activity subsequent to the issuance of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2004, the Company identified errors in its accounting related to stock option compensation expense in prior periods.

The Company announced on March 13, 2006 that a Special Committee of the board of directors was conducting an internal investigation of its practices related to stock option grants to officers, directors and employees, and related matters. The Special Committee was comprised of disinterested members of the Company's board of directors and was assisted by independent outside legal counsel and accounting experts.

On May 24, 2006, the Special Committee advised the board of directors of its final conclusion that, among other things, the recorded grant dates for certain option grants should not be relied upon. After receiving the Special Committee's conclusions and consistent with those conclusions, the Company reviewed stock option grants during the period from 1998 through June 2006. The Company developed and applied certain methodologies in determining the revised measurement dates for option grants during the periods from 1998 through 2005.

In addition to restatements for stock-based compensation charges and the related income and payroll tax effects, the Company recorded adjustments to correct other errors that occurred in the periods ended December 31, 2001 through the third quarter of 2005, which have been reflected in the accompanying restated consolidated financial statements.

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX02 98 | PAL jaslv0dc | 04-Mar-2007 22:32 EST | 86507 TX 98 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |
| | | | | | Page 1 of 1 | |

# POWER INTEGRATIONS, INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

*Restatement Adjustments*

The Company's restated consolidated financial statements incorporate stock-based compensation expense, payroll tax expense, and other accounting adjustments, including the income tax impacts of the restatement adjustments. The restatement adjustments result in a $29.4 million reduction of retained earnings as of December 31, 2004. This amount includes an increase in the Company's previously reported consolidated net income of approximately $0.1 million for the year ended December 31, 2004, and a reduction in the Company's previously reported consolidated net income of approximately $6.6 million for the year ended December 31, 2003. The total restatement impact for the years ended December 31, 1998 through December 31, 2002, of $22.9 million, has been reflected as a prior period adjustment to beginning retained earnings as of January 1, 2003. The Company also recorded restatement adjustments to its condensed consolidated financial statements for the three quarters ended September 30, 2005. See Note 12 "Selected Quarterly Information, as Restated" of the Company's notes to consolidated financial statements for more information on the Company's quarterly information. The following table summarizes the impact of the restatement adjustments on beginning retained earnings as of January 1, 2003, and net income for the years ended December 31, 2004 and 2003 (in thousands):

| | Net Income Year Ended December 31, | | Retained Earnings As Of Jan. 1, |
| | 2004 | 2003 | 2003 |
| --- | ---: | ---: | ---: |
| As previously reported | $20,367 | $18,085 | $ 51,249 |
| Adjustments: | | | |
| Stock compensation expense | (1,288) | (9,888) | (29,597) |
| Payroll taxes, interest and penalties | 1,289 | (254) | (2,282) |
| Other miscellaneous accounting adjustments | (107) | (28) | 512 |
| Income tax benefit (provision) | 239 | 3,522 | 8,484 |
| Total adjustments | 133 | (6,648) | (22,883) |
| As adjusted | $20,500 | $11,437 | $ 28,366 |

The table below presents the impact of the individual restatement adjustments, and are explained in further detail following the table (in thousands):

| | Year Ended December 31, | | | | | | |
| | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | 1998 |
| --- | ---: | ---: | ---: | ---: | ---: | ---: | ---: |
| STOCK COMPENSATION: | | | | | | | |
| New hire non-officer stock option grants accounted for as being made prior to the terms being fixed | $ 264 | $ 411 | $ 542 | $ 506 | $ 556 | $ 431 | — |
| Stock option grants with insufficient or incomplete corporate approvals | 3,053 | 4,992 | 7,978 | 6,429 | 6,127 | 4,175 | 24 |
| Stock option grants cancelled and repriced | (2,067) | 4,422 | (107) | 1,418 | | | |
| Accelerated vesting and other matters related to stock-based compensation | 38 | 63 | (49) | (171) | 171 | 1,567 | — |
| Total stock compensation expense | 1,288 | 9,888 | 8,364 | 8,182 | 6,854 | 6,173 | 24 |
| PAYROLL TAXES, INTEREST AND PENALTIES | (1,289) | 254 | 574 | 172 | 1,468 | 68 | — |
| Total stock compensation related adjustments | (1) | 10,142 | 8,938 | 8,354 | 8,322 | 6,241 | 24 |

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX05 5.5 | PAL jaslv0dc | 04-Mar-2007 22:32 EST | | 86507 TX 99 | 1* |
| FORM 10-K | | ■ PAL | | | | HTM IFV | 1C |
| | | | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

| | Year Ended December 31, | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | 1998 |
| OTHER MISCELLANEOUS ACCOUNTING ADJUSTMENTS: | | | | | | | |
| Correction of sales returns reserve | $ (14) | $ 14 | $ 348 | $ (872) | $ — | $ — | $ — |
| Correction of period of charge for cost of wafers used in engineering | 108 | — | — | — | — | — | — |
| Record unfunded post-employment health benefit obligation | 13 | 14 | 12 | — | — | — | — |
| Total other miscellaneous accounting adjustments | 107 | 28 | 360 | (872) | — | — | — |
| Total adjustments to income before income tax | 106 | 10,170 | 9,298 | 7,482 | 8,322 | 6,241 | 24 |
| INCOME TAX BENEFIT | 239 | 3,522 | 3,829 | 1,095 | 2,033 | 1,515 | 12 |
| Total (increase) decrease to net income | $(133) | $ 6,648 | $5,469 | $6,387 | $6,289 | $4,726 | $ 12 |
| (DECREASE) INCREASE IN DILUTED EARNINGS PER SHARE | $0.00 | $ (0.21) | $(0.19) | $(0.22) | $(0.22) | $(0.17) | $0.00 |

*Stock Compensation*—These adjustments are from the Company's determination, based upon the Special Committee's investigation and the Company's subsequent reviews and analyses, that the initially recorded measurement dates for various categories of option grants could not be relied upon. These categories included the following:

- *New hire non-officer stock option grants accounted for as being made prior to the terms being fixed.* The Company's practice was to set the exercise price of new hire non-officer awards based upon the fair value of its stock on the employee's hire date or the last day of the month of the employee's first month of employment, whichever was lower. Because this determination was made at the end of the month of hire, the last day of the month of the employee's first month of employment was determined to be the first date when the number of shares and the price of each grant were known with finality. Grants accounted for as being made before the last day of the month of the employee's first month of employment (options to purchase an aggregate of 1,214,550 shares) were accounted for as fixed awards under Accounting Principles Board Opinion (APB) No. 25 *Accounting for Stock Issued to Employees*, or APB 25.

- *Stock option grants with insufficient or incomplete corporate approvals.* The Company determined that for certain stock option grants the number of shares and the exercise price were not known with finality at the original measurement date. The Company determined that the original recorded grant date could not be relied on because there was correspondence or other evidence that indicated that not all required corporate approvals had been obtained, including the finalization of the number of stock options allocated and the related exercise price. The Company adopted a methodology to remeasure these option grants to a revised measurement date, as described below, and accounted for these grants (options to purchase an aggregate of 6,358,639 shares) as fixed awards under APB 25.

- *Stock option grants determined to have been cancelled and repriced.* The Company determined that the terms of certain stock option grants (options to purchase an aggregate of 415,000 shares) may have been communicated to employees and that those terms were subsequently modified. The Company concluded that such modifications constitute repricings, and therefore, these stock option grants should have been accounted for as variable awards for accounting purposes.



| POWER INTEGRATIONS, | RR Donnelley ProFile | LAN FBU-MWS-CX 9.6 | PAL jaslv0dc | 04-Mar-2007 22:20 EST | 86507 TX 100 | 1* |
|---|---|---|---|---|---|---|
| FORM 10-K | | | PAL | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

- *Accelerated vesting and other matters related to stock-based compensation.* Accelerated vesting consists primarily of the acceleration of stock option vesting (options to purchase an aggregate of 341,174 shares) upon termination of a few employees prior to 2001, which resulted in stock-based compensation expense which had not previously been recorded. The other matters relate primarily to the impact of the capitalization in inventory of stock-based compensation in 2001 through 2005.

*Payroll taxes, interest and penalties*—In connection with the stock-based compensation adjustments, the Company determined that certain options previously classified as Incentive Stock Option, or ISO, grants were determined to have been granted with an exercise price below the fair market value of the Company's stock on the revised measurement date (see discussion under "Accounting Considerations" below). Under U.S. tax regulations, ISOs may not be granted with an exercise price less than the fair market value on the date of grant, and therefore these grants might not qualify for ISO tax treatment. The Company refers to these stock options as the "Affected ISOs." The potential disqualification of ISO status exposes the Company to additional payroll related withholding taxes on the exercise of these Affected ISOs granted to U.S. employees, and penalties and interest for failing to properly withhold taxes on exercise of those options. The payroll taxes, interest and penalties were recorded as expenses in the periods in which the underlying stock options were exercised. Then, in subsequent periods in which the liabilities were legally extinguished due to statutes of limitations, the payroll taxes, interest and penalties were reversed, and recognized as a reduction in the related functional expense category in the Company's consolidated statements of income. The fluctuations in the restatement adjustments in the table above are the result of: (1) the timing of stock option exercises, and (2) the reversals of expenses previously recorded due to the expiration of statutes of limitations. The net tax liability at December 31, 2005 for this potential disqualification of ISO tax treatment for option awards totaled $1.1 million.

*Other miscellaneous accounting adjustments*—In addition to stock-based compensation charges, the Company recorded adjustments that occurred in the periods ended December 31, 2001 through the third quarter of 2005 that had not been previously reflected in its restated consolidated financial statements. These restatements relate primarily to a correction of the Company's sales return reserve, which should have been reduced in 2001. In addition, the Company also corrected the period of charge for certain wafers used in engineering and recorded an unfunded post-employment health benefit obligation.

Further, the Company corrected the classification of the balance of auction rate securities (for which interest rates reset in less than 90 days, but for which the underlying maturity date is longer than 90 days), and callable securities (for which interest rates reset between 90 days and 1 year, but for which the underlying maturity date exceeds 1 year) from cash and cash equivalents or short-term investments to long-term investments, as of December 31, 2004 and 2003. The consolidated statements of cash flows were also corrected for the effects of the aforementioned restatements as well as to correct for the non-cash effects of property and equipment purchases recorded, but not yet paid for, at each period end.

*Income tax benefit*—The Company reviewed the income tax effect of the stock-based compensation charges, and the Company believes that the proper income tax accounting for U.S. stock options under generally accepted accounting principles depends, in part, on the tax distinction of the stock options as either ISOs or non-qualified stock options, or NSO's. Although some of the Affected ISOs were originally intended to be ISOs, the Company noted that, under U.S. tax regulations, ISOs may not be granted with an exercise price less than the fair market value on the date of grant. Because of the potential impact of the measurement date changes on the qualified status of Affected ISOs, the Company has determined that all Affected ISOs might not be qualified ISOs under the tax regulations, and therefore should be accounted for as if they were NSO's for income tax accounting purposes.

100



| POWER INTEGRATIONS, | RR Donnelley ProFile | LAN FBU-MWS-CX09.6 PAL jaslv0dc | 04-Mar-2007 22:20 EST | 86507 TX 101 | 1* |
| FORM 10-K | | PAL | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The Company has recorded a net income tax benefit of approximately $12.2 million in connection with the stock-based compensation related expense and other restatement adjustments during the period from fiscal year 1998 to December 31, 2004, net of estimated limitations under IRC §162(m). This tax benefit has resulted in an increase of the Company's deferred tax assets for all U.S. affected stock options prior to the exercise or forfeiture of the related options. The Company recorded no tax benefit or deferred tax asset for affected stock options granted to non-U.S. employees because the Company determined that it could not receive tax benefits outside of the U.S. Further, the Company limited the deferred tax assets recorded for affected stock options granted to certain highly paid officers to reflect estimated limitations on tax deductibility under Internal Revenue Code Section 162(m). Upon exercise or forfeiture of the underlying options, the excess or deficiency in deferred tax assets are written-off to either expense or paid-in capital in the period of exercise or forfeiture.

Partially offsetting the income tax benefit on the restatement adjustments described above, the Company also recorded an income tax expense of approximately $692,000 during fiscal year 2003 to correct for an error in the determination of the effect of a cost sharing arrangement with one of its subsidiaries.

Further, the Company recorded restatements aggregating approximately $1.2 million to record additional indirect tax benefits resulting from the exercise of certain stock options in 2002 and 2003. Although these entries had no impact on the Company's consolidated statements of income, they decreased income taxes payable and increased additional paid-in capital in its consolidated balance sheet as of January 1, 2004.

The Company's board of directors has ratified each of the options granted, and the Company intends to honor each stock option granted pursuant to the terms of the applicable stock option plan and stock option agreement.

*Accounting Considerations—Stock-Based Compensation*

The Company originally accounted for all employee, officer and director stock option grants as fixed grants under APB 25, using a measurement date of the recorded grant date. The Company issued all grants with an exercise price equal to the fair market value of its common stock on the recorded grant date, and therefore originally recorded no stock-based compensation expense.

As a result of the Special Committee findings, and the Company's own further review of its stock option granting practices, the Company determined that the measurement dates for certain stock option grants differed from the recorded grant dates for such grants. In some instances, the Company was only able to locate sufficient evidence to identify the measurement date described in APB 25, the first date on which both the number of shares that an individual employee was entitled to receive and the exercise price were known, within a possible range of dates. As a result, the Company developed a methodology to establish the revised measurement date primarily by using communication dates as its estimate of the first date on which both the number of shares that an individual employee was entitled to receive and the exercise price were known with finality. Using the methodology described below the Company concluded that it was appropriate to revise the measurement dates for these grants based upon its findings, and the Company refers to these revised measurement dates as the *"Deemed Measurement Dates"*. The Company calculated stock-based compensation expense under APB 25 based upon the intrinsic value as of the Deemed Measurement Dates of stock option awards determined to be "fixed" under APB 25 and the vesting provisions of the underlying options. The Company calculated the intrinsic value on the Deemed Measurement Date as the closing price of its common stock on such date as reported on the Nasdaq National Market, now the Nasdaq Global Market, less the exercise price per share of common stock as stated in the underlying stock option agreement, multiplied by the number of shares subject to such stock option award. The Company recognizes these amounts as compensation expense over the vesting period of the

101

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX02 SS | PAL jaslv0dc | 04-Mar-2007 22:21 EST | 86507 TX 102 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |
| | | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

underlying options (generally four years). The Company also determined that variable accounting treatment was appropriate under APB 25 for certain stock option grants to three officers for which evidence was obtained that the terms of the options may have been communicated to those officers and that those terms were subsequently modified (stock options cancelled and repriced). When variable accounting is applied to stock option grants, the Company remeasures, and reports in its consolidated statement of income, the intrinsic value of the options at the end of each reporting period until the options are exercised, cancelled or expire unexercised.

The methodology the Company used to determine the Deemed Measurement Dates associated with prior stock option grants was as follows:

*New Hire Non-Officer Employee Stock Options*—The Company determined the Deemed Measurement Date for each of these grants to be the last day of the month of the employee's first month of employment. The Company's practice was to set the exercise price of these awards at the end of the month of hire, and therefore the Company determined that the last day of the month of the employee's first month of employment was the first date when the number of shares and the price of each grant were known with finality.

*All Other Stock Options*—The Company determined the Deemed Measurement Date for each stock option grant, other than grants of new hire non-officer employee options, to be the Approval Date for the stock option, provided the Approval Date criteria set forth below were met. If the criteria for use of the Approval Date were not met, then the Company used the Communication Date, as defined below, as the Deemed Measurement Date for the stock option.

- "Approval Date"—The Approval Date was the date of approval set forth in executed minutes or a fully-executed consent of the board of directors, compensation committee or stock option committee documenting the grant of the stock option. However, the Company generally only used the Approval Date as the Deemed Measurement Date if both:

    (1)  there was documentary evidence that the allocation of the shares had been finalized, and the written consent, if applicable, was executed, on that date ; and

    (2)  the Communication Date for the stock option was within 30 days of the date of approval set forth in the documentary evidence.

- "Communication Date"—The Company defines the "Communication Date" as the date the Company determined the key terms of the option (both the number of shares and the exercise price) had initially been communicated to the optionee. In the absence of specific documentary evidence of initial communication, the Company generally determined the Communication Date to be the earliest of:

    (1)  the date the employee record of the grant of the stock option was added to the stock option database application, or the latest recordation date in the case of a group of grants (the "Record Add Date");

    (2)  the optionee manual signature date on the stock option agreement, or the earliest optionee manual signature date in the case of a group of grants (the "Stock Option Agreement Date"); and

    (3)  for officers and directors, the date that a Form 3 or 4 was filed with the SEC with respect to the grant (the "Form 3/4 Date").

However, the Company did not consider the Record Add Date in its determination if the Stock Option Agreement Date was more than 30 days after the Record Add Date in the case of individual grants and grants to groups of less than five, or more than 10 days after the Record Add Date in the case of grants to groups of five or more The Company made the distinction regarding small and large groups because the

102

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX0 5.6 | PAL jaslv0dc | 04-Mar-2007 22:21 EST | 86507 TX 103 | 1* |
| FORM 10-K | | ■ | PAL | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Company would expect to see at least one agreement returned to the Company within 10 days with larger groups of optionees; but with small groups, the probability of seeing an agreement returned to the Company within 10 days was less likely.

When applying this methodology to groups of grants, the Company generally determined the Communication Date for the group to be the latest Record Add Date, the earliest Stock Option Agreement Date, or Form 3/4 Dates as the Company determined that, under the Company's stock option grant process, the terms of stock options were communicated concurrently to each member of a group. The Company excluded a limited number of options, or "Outliers", from the determination of the latest Record Add Date and the earliest Stock Option Agreement Date for a group of grants when, based upon available evidence, it considered the Outlier dates as not reliable as to the date that the terms of the stock option grants were communicated to the group.

*Outside Director Automatic Stock Option Grants*

The Company has determined that, as a result of administrative errors, a total of 16 grants representing options to purchase 180,000 shares under the Outside Directors Plan collectively to three of its outside directors were documented as having been made on dates other than as set forth in the Outside Directors Plan. The Company has corrected the documentation of these grants to reflect the correct dates and exercise prices, as automatically established under the Outside Directors Plan. Because these actions were corrections of administrative errors in the documentation, rather than changing any of the terms of the stock option grants as automatically granted, the Company determined that there was no accounting charge to be recognized in connection with these corrections, as the correct measurement date was the date of grant as automatically established by the Outside Directors Plan, and the exercise price was the fair market value of the Company's common stock on the correct measurement date.

Subsequent to the correction of the documentation of these grants, the three outside directors have agreed to increase the exercise prices of certain of such misdocumented grants to purchase 80,000 shares. Further, the only director who exercised a misdocumented grant has reimbursed the Company $78,290 for the difference between the aggregate exercise price as misdocumented and as corrected.

103



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX0P 9.6 | PAL jaslv0dc | 04-Mar-2007 22:21 EST | | 86507 TX 104 | 1* |
| FORM 10-K | | | PAL | | | HTM IFV | 1C |
| | | | | | | Page 1 of 1 | |

**POWER INTEGRATIONS, INC.**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)**

*Impact of the Restatement Adjustments on our Consolidated Financial Statements*

The following table presents the impact of the financial statement restatement adjustments on the Company's previously reported consolidated statements of income for the years ended December 31, 2004 and 2003 (in thousands).

| | Year Ended December 31, 2004 | | | Year Ended December 31, 2003 | | |
| --- | --- | --- | --- | --- | --- | --- |
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
| NET REVENUES | $ 136,636 | $ 17[B] | $136,653 | 125,706 | $ (24)[B] | $125,682 |
| COST OF REVENUES | 71,409 | 447[A,B] | 71,856 | 62,814 | 682[A,B] | 63,496 |
| GROSS PROFIT | 65,227 | (430) | 64,797 | 62,892 | (706) | 62,186 |
| OPERATING EXPENSES: | | | | | | |
| Research and development | 16,162 | (722)[A,C] | 15,440 | 16,443 | 3,664[A] | 20,107 |
| Sales and marketing | 15,273 | 797[A] | 16,070 | 15,484 | 1,682[A] | 17,166 |
| General and administrative | 8,102 | (133)[A,D] | 7,969 | 6,848 | 4,020[A,D] | 10,868 |
| Total operating expenses | 39,537 | (58) | 39,479 | 38,775 | 9,366 | 48,141 |
| INCOME FROM OPERATIONS | 25,690 | (372) | 25,318 | 24,117 | (10,072) | 14,045 |
| OTHER INCOME (EXPENSE): | | | | | | |
| Interest income | 1,808 | 1[A] | 1,809 | 1519 | 1[A] | 1,520 |
| Interest expense | — | 265[A] | 265 | (7) | (99)[A] | (106) |
| Other, net | (754) | — | (754) | (511) | — | (511) |
| Total other income | 1,054 | 266 | 1,320 | 1,001 | (98) | 903 |
| INCOME BEFORE PROVISION FOR INCOME TAXES | 26,744 | (106) | 26,638 | 25,118 | (10,170) | 14,948 |
| PROVISION FOR INCOME TAXES | 6,377 | (239)[A] | 6,138 | 7,033 | (3,522)[A,E] | 3,511 |
| NET INCOME | $ 20,367 | $ 133 | $ 20,500 | $ 18,085 | $ (6,648) | $ 11,437 |
| EARNINGS PER SHARE: | | | | | | |
| Basic | $ 0.66 | $ 0.01 | $ 0.67 | $ 0.61 | $ (0.22) | $ 0.39 |
| Diluted | $ 0.63 | $ 0.01 | $ 0.64 | $ 0.57 | $ (0.21) | $ 0.36 |
| SHARES USED IN PER SHARE CALCULATION: | | | | | | |
| Basic | 30,802 | — | 30,802 | 29,473 | — | 29,473 |
| Diluted | 32,414 | (185) | 32,229 | 31,812 | (324) | 31,488 |

A.  Adjustment for stock-based compensation expense pursuant to APB No. 25 and the associated payroll taxes, interest, penalties and income tax benefit.
B.  Adjustment to correct the sales return reserve.
C.  Adjustment to correct for the period of charge for engineering wafers.
D.  Adjustment to record unfunded post-employment health benefit obligation.
E.  Adjustment to correct for an error in the calculation under a cost sharing agreement with a subsidiary company.



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUDSK141053 PAL heckn0pa | 08-Mar-2007 16:08 EST | 86507 TX 105 | 2* |
| FORM 10-K | | PAL | | HTM PMT | 1C |
| | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The following table presents the impact of the restatement adjustments on the Company's previously reported consolidated balance sheet as of December 31, 2004 (in thousands).

| | December 31, 2004 | | |
|---|---|---|---|
| | As Previously Reported | Adjustments | As Restated |
| **ASSETS** | | | |
| **CURRENT ASSETS:** | | | |
| Cash and cash equivalents | $119,596 | $ (12,200)D | $107,396 |
| Short-term investments | 2,750 | (1,501)D | 1,249 |
| Accounts receivable, net of allowances of $469 and $382, respectively | 12,230 | 520B | 12,750 |
| Inventories | 25,354 | 119A,C | 25,473 |
| Deferred tax assets | 3,878 | (662)A | 3,216 |
| Prepaid expenses and other current assets | 2,600 | — | 2,600 |
| Total current assets | 166,408 | (13,724) | 152,684 |
| PROPERTY AND EQUIPMENT, net | 51,718 | — | 51,718 |
| INVESTMENTS | 12,211 | 13,700D | 25,911 |
| DEFERRED TAX ASSETS | 1,923 | 5,607A | 7,530 |
| OTHER ASSETS | 3,172 | 1A | 3,173 |
| | $235,432 | $ 5,584 | $241,016 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | |
| **CURRENT LIABILITIES:** | | | |
| Accounts payable | $ 8,612 | $ 132A | $ 8,744 |
| Accrued payroll and related expenses | 4,672 | 1,152A,E | 5,824 |
| Taxes payable | 5,696 | 947A,F,G | 6,643 |
| Deferred income on sales to distributors | 3,058 | — | 3,058 |
| Other accrued liabilities | 882 | 109A | 991 |
| Total current liabilities | 22,920 | 2,340 | 25,260 |
| **STOCKHOLDERS' EQUITY:** | | | |
| Common stock | 30 | — | 30 |
| Additional paid-in capital | 122,895 | 35,718A,G | 158,613 |
| Deferred compensation | — | (3,076)A | (3,076) |
| Accumulated translation adjustment | (114) | — | (114) |
| Retained earnings | 89,701 | (29,398) | 60,303 |
| Total stockholders' equity | 212,512 | 3,244 | 215,756 |
| | $235,432 | $ 5,584 | $241,016 |

A. Adjustment for stock-based compensation expense pursuant to APB No. 25 and the associated payroll taxes, interest, penalties and income tax benefit.
B. Adjustment to correct the sales return reserve.
C. Adjustment to correct for the period of charge for engineering wafers.
D. Reclassification of auction rate securities.
E. Adjustment to record unfunded post-employment health benefit obligation.
F. Adjustment to correct for an error in the calculation under a cost sharing agreement with a subsidiary company.
G. Adjustment to record additional indirect tax benefits resulting from the exercise of certain stock options in 2001 and 2002.

The above restatements impacted the statements of cash flows. Operating activities and investing activities were also impacted due to a reclassification from purchases of property and equipment to accounts payable, to reflect property and equipment not paid for at December 31, 2004 and 2003.

| POWER INTEGRATIONS, | RR Donnelley ProFile | LAN/BU-MWS-CX09 9.6 | PAL jaslv0dc | 04-Mar-2007 22:21 EST | | 86507 TX 106 | 1* |
| FORM 10-K | | | PAL | | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The following table shows the effect of the restatements to previously reported cash flow amounts for the years ended December 31, 2004 and 2003 (in thousands).

| | Year ended December 31, | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | **2004** | | | **2003** | | |
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
| CASH FLOWS FROM OPERATING ACTIVITIES: | | | | | | |
| Net income | $ 20,367 | $     133 | $ 20,500 | $ 18,085 | $  (6,648) | $ 11,437 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | | | | | |
| Depreciation and amortization | 6,880 | — | 6,880 | 6,846 | — | 6,846 |
| Stock-based compensation expense | — | 1,288[A] | 1,288 | — | 9,888[A] | 9,888 |
| Deferred income taxes | 72 | 665[A] | 737 | 191 | 1,473[A] | 1,664 |
| Deferred rent | — | — | — | (725) | — | (725) |
| Provision for accounts receivable and other allowances | 456 | (11)[B] | 445 | 688 | 16[B] | 704 |
| Tax benefit associated with employee stock plans | 4,082 | (1,974)[A] | 2,108 | 6,841 | (3,544)[A] | 3,297 |
| Stock compensation to non-employees | 37 | — | 37 | 135 | — | 135 |
| Change in operating assets and liabilities: | | | | | | |
| Accounts receivable | (2,360) | — | (2,360) | (2,492) | — | (2,492) |
| Inventories | (2,241) | — | (2,241) | (8,085) | — | (8,085) |
| Prepaid expenses and other assets | 295 | — | 295 | (2,909) | — | (2,909) |
| Accounts payable | 694 | (298)[A,C,D] | 396 | 191 | 1,528[A,D] | 1,719 |
| Taxes payable and other accrued liabilities | 1,336 | 165[A,F,G] | 1,501 | 1,773 | (1,266)[A,F,G] | 507 |
| Deferred income on sales to distributors | 493 | — | 493 | (153) | — | (153) |
| Net cash provided by operating activities | 30,111 | (32) | 30,079 | 20,386 | 1,447 | 21,833 |
| CASH FLOWS FROM INVESTING ACTIVITIES: | | | | | | |
| Purchases of property and equipment | (6,395) | 32[D] | (6,363) | (36,368) | (1,447)[D] | (37,815) |
| Acquisition of technology patents/ licenses | (1,740) | — | (1,740) | (1,419) | — | (1,419) |
| Purchases of available-for-sale investments | — | (45,775)[E] | (45,775) | — | (18,765)[E] | (18,765) |
| Proceeds from available-for-sale investments | — | 52,890[E] | 52,890 | — | 450[E] | 450 |
| Purchases of investments, held-to-maturity | (29,182) | (1,001)[E] | (30,183) | (6,210) | —[E] | (6,210) |
| Proceeds from maturities of investments | 19,270 | (88)[E] | 19,182 | 33,037 | 89[E] | 33,126 |
| Net cash used in investing activities | (18,047) | 6,058 | (11,989) | (10,960) | (19,673) | (30,633) |

106

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX09 8.6 | PAL jaslv0dc | 04-Mar-2007 22:21 EST | 86507 TX 107 | 1* |
| FORM 10-K | | ■ PAL | | | HTM IFV | 1C |
| | | | | | Page 1 of 1 |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

| | Year ended December 31, | | | | | |
| | 2004 | | | 2003 | | |
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
|---|---|---|---|---|---|---|
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | | | | | |
| Net proceeds from issuance of common stock | $ 9,099 | $ 2 | $ 9,101 | $ 23,554 | $ — | $23,554 |
| Repurchase of common stock | (11,797) | (2) | (11,799) | — | — | — |
| Principal payments under capitalized lease obligations | (41) | — | (41) | (233) | — | (233) |
| Net cash (used in) provided by financing activities | (2,739) | — | (2,739) | 23,321 | — | 23,321 |
| NET INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | 9,325 | 6,026 | 15,351 | 32,747 | (18,226) | 14,521 |
| CASH AND CASH EQUIVALENTS AT BEGINNING OF PERIOD | 110,271 | (18,226) | 92,045 | 77,524 | — | 77,524 |
| CASH AND CASH EQUIVALENTS AT END OF PERIOD | $119,596 | $ (12,200) | $107,396 | $110,271 | $ (18,226) | $92,045 |

A.  Adjustment for stock-based compensation expense pursuant to APB No. 25 and the associated payroll taxes, interest, penalties and income tax benefit.
B.  Adjustment to correct the sales return reserve.
C.  Adjustment to correct for the period of charge for engineering wafers.
D.  Adjustment for unpaid property and equipment purchases at December 31, 2004 and 2003
E.  Reclassification of auction rate securities.
F.  Adjustment to record unfunded post-employment health benefit obligation.
G.  Adjustment to correct for an error in the calculation under a cost sharing agreement with a subsidiary company.

The restatement also impacted footnotes 2, 7, 8, and 12.

### 4. BANK LINE OF CREDIT:

The Company had a $10.0 million revolving line of credit agreement with Union Bank of California, which expired on October 1, 2006, and restricted the Company from entering into certain transactions, paying or declaring dividends without the bank's prior consent and contained certain financial covenants. As of December 31, 2005 and 2004, there were no amounts due under the bank line of credit. A portion of the credit line was used to cover advances for commercial letters of credit and standby letters of credit, used primarily for the shipment of wafers from wafer supply manufactures to the Company, and also to its workers compensation insurance carrier as part of its insurance program. As of December 31, 2005, there were outstanding letters of credit totaling approximately $641,000, and as of December 31, 2004, there were outstanding letters of credit totaling approximately $5.3 million. On October 26, 2006, the Company entered into a security agreement with Union Bank of California, whereby it agreed to maintain $1.3 million in an interest bearing certificate of deposit with the bank. The purpose of this agreement is to secure the commercial letters of credit and standby letters of credit. This agreement remains in effect until cancellation of the Company's letters of credit.

### 5. COMMITMENTS AND CONTINGENCIES:

*Customer Claims*—From time to time in the ordinary course of business the Company becomes involved in lawsuits, or customers and distributors may make claims against the Company. During 2004, a small number of

107

## POWER INTEGRATIONS, INC.

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

product lots of one of the Company's products were not built to design specifications because of a foundry process defect. As a result of this manufacturing defect, there were a limited number of product failures and the Company replaced all of the parts that had not yet been installed in end-customer products. Several customers made requests for reimbursement of costs and expenses in excess of the Company's contractual warranty liability. In accordance with SFAS No. 5, *Accounting for Contingencies*, the Company makes a provision for a liability when it is both probable that a liability has been incurred and the amount of the loss can be reasonably estimated. After further discussions with its customers, the Company determined that it was appropriate to accrue approximately $481,000 during 2005, related to this manufacturing defect, for customer costs and expenses in excess of the Company's contractual warranty liability. The Company expects that there will be no additional charges related to this matter.

*Facilities*—In October 2003 the Company completed the purchase of an 118,000 square foot facility, located in San Jose, California, for approximately $30.0 million in cash. The Company previously leased this same facility, which houses the Company's main executive, administrative, manufacturing and technical offices.

The Company had no capital leasing arrangements as of December 31, 2005. At December 31, 2005 the Company had $7.9 million of non-cancelable purchase obligations.

Future minimum lease payments under all non-cancelable operating lease agreements as of December 31, 2005 are as follows (in thousands):

| Fiscal Year | |
| --- | --- |
| 2006 | $ 433 |
| 2007 | 309 |
| 2008 | 229 |
| 2009 | 113 |
| 2010 | 52 |
| Total minimum lease payments | $1,136 |

Total rent expense amounted to $400,000, $400,000 and $1.2 million in the years ended December 31, 2005, December 31, 2004 and December 31, 2003, respectively.

### 6. PREFERRED STOCK PURCHASE RIGHTS PLAN:

In February 1999, the Company adopted a Preferred Stock Purchase Rights Plan (the Plan) designed to enable all stockholders to realize the full value of their investment and to provide for fair and equal treatment for all stockholders in the event that an unsolicited attempt is made to acquire the Company. Under the Plan, stockholders received one right to purchase one one-thousandth of a share of a new series of preferred stock for each outstanding share of common stock held at $150.00 per right, when someone acquires 15 percent or more of the Company's common stock or announces a tender offer which could result in such person owning 15 percent or more of the common stock. Each one one-thousandth of a share of the new preferred stock has terms designed to make it substantially the economic equivalent of one share of common stock. Prior to someone acquiring 15 percent, the rights can be redeemed for $0.001 each by action of the board of directors. Under certain circumstances, if someone acquires 15 percent or more of the common stock, the rights permit the stockholders, other than the acquirer, to purchase the Company's common stock having a market value of twice the exercise price of the rights, in lieu of the preferred stock. Alternatively, when the rights become exercisable, the board of directors may authorize the issuance of one share of common stock in exchange for each right that is then exercisable. The Company's Board of Directors may, in its discretion, permit a stockholder to increase its

108



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX06 5.8 PAL jaslv0dc | 04-Mar-2007 22:21 EST | | 86507 TX 109 | 1* |
| FORM 10-K | | ■ PAL | | | HTM IFV | 1C |
| | | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

ownership percentage in excess of 15 percent without triggering the provisions of the Plan, and has done so with respect to one investor, allowing that investor to acquire up to 20 percent of the Company's common stock without triggering the provisions of the Plan. In addition, in the event of certain business combinations, the rights permit the purchase of the common stock of an acquirer at a 50 percent discount. Rights held by the acquirer will become null and void in both cases. The rights expire on February 23, 2009.

### 7. STOCKHOLDERS' EQUITY:

*Preferred Stock*

The Company is authorized to issue 3,000,000 shares of $0.001 par value preferred stock, none of which was issued or outstanding during each of the three years ended December 31, 2005.

*Common Stock*

As of December 31, 2005, the Company was authorized to issue 140,000,000 shares of $0.001 par value common stock.

On October 20, 2004, the Company announced that its board of directors had authorized the repurchase of up to $40.0 million of the Company's common stock. The board directed that the repurchases be made pursuant to Rule 10b5-1 of the Exchange Act. From inception of the stock repurchase program in October 2004 through June 30, 2005, the Company repurchased 2,033,270 shares for approximately $40.0 million. On October 19, 2005, the Company announced that its board of directors had authorized a second stock repurchase program of up to $25.0 million of the Company's common stock, with the repurchases again to be made pursuant to Rule 10b5-1 of the Exchange Act. From inception of the second stock repurchase plan to December 31, 2005, the Company purchased a total of 249,500 shares for a total of approximately $5.3 million. There is no expiration date for this plan, and share repurchases will take place from time to time on the open market.

*1988 Stock Option Plan*

In June 1988, the board of directors adopted the 1988 Stock Option Plan (the "1988 Plan"), whereby the board of directors may grant incentive stock options and non-qualified stock options to key employees, directors and consultants to purchase the Company's common stock. The exercise price of incentive stock options may not be less than 100% of the fair market value of the Company's common stock on the date of grant. The exercise price of non-qualified stock options may not be less than 85% of the fair market value of the Company's common stock on the date of grant. In general, options vest over either 48 or 50 months. Options generally have a maximum term of ten years after the date of grant (five years if an incentive stock option is granted to a ten percent owner optionee), subject to earlier termination upon an optionee's cessation of employment or service. Effective July 1997, the board of directors determined that no further options would be granted under the 1988 Plan, but all outstanding options would continue to be governed and remain outstanding in accordance with their existing terms.

*1997 Stock Option Plan*

In June 1997, the board of directors adopted the 1997 Stock Option Plan (the "1997 Plan"), whereby the board of directors may grant incentive stock options and non-qualified stock options to key employees, directors and consultants to purchase the Company's common stock. The exercise price of incentive stock options may not be less than 100% of the fair market value of the Company's common stock on the date of grant. The exercise price of non-qualified stock options may not be less than 85% of the fair market value of the Company's

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX0 2.6 PAL jaslv0dc | 04-Mar-2007 22:21 EST | 86507 TX 110 | 1* |
| FORM 10-K | | PAL | | HTM IFV | 1C |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

common stock on the date of grant. The 1997 Plan originally provided that the number of shares reserved for issuance automatically increased on each January 1st, from January 1, 1999 through January 1, 2007, by 5% of the total number of shares of common stock issued and outstanding on the last day of the preceding fiscal year. In January 2005, the board of directors amended the 1997 Plan to reduce the annual increase from 5% to 3.5%, so that the number of shares reserved for issuance automatically increase on each January 1st, from January 1, 2006 through January 1, 2007, by 3.5% of the total number of shares of common stock issued and outstanding on the last day of the preceding fiscal year. As of December 31, 2005, the maximum number of shares that may be issued under the 1997 Plan was 14,085,792 shares, which was comprised of (i) 11,142,828 shares (new shares allocated to the 1997 Plan) and (ii) 2,942,964 shares granted pursuant to the 1988 Plan (the "1988 Plan Options"). In general, options vest over 48 months. Options generally expire no later than ten years after the date of grant (five years if an incentive stock option is granted to a ten percent owner optionee), subject to earlier termination upon an optionee's cessation of employment or service.

### 1997 Outside Directors Stock Option Plan

In September 1997, the board of directors adopted the 1997 Outside Directors Stock Option Plan (the "Directors Plan"). A total of 800,000 shares of common stock have been reserved for issuance under the Directors Plan. The Directors Plan is designed to work automatically without administration; however, to the extent administration is necessary, it will be performed by the board of directors. The Directors Plan provides for the automatic grant of nonstatutory stock options to nonemployee directors of the Company over their period of service on the board of directors. The Directors Plan provides that each future nonemployee director of the Company will be granted an option to purchase 30,000 shares of common stock on the date on which such individual first becomes a nonemployee director of the Company (the "Initial Grant"). Thereafter, each nonemployee director who has served on the board of directors continuously for 12 months will be granted an additional option to purchase 10,000 shares of common stock (an "Annual Grant"). Subject to an optionee's continuous service with the Company, approximately 1/3rd of an Initial Grant will become exercisable one year after the date of grant and 1/36th of the Initial Grant will become exercisable monthly thereafter. Each Annual Grant will become exercisable in twelve equal monthly installments beginning in the 25th month after the date of grant, subject to the optionee's continuous service. The exercise price per share of all options granted under the Directors Plan is equal to the fair market value of a share of common stock on the date of grant. Options granted under the Directors Plan have a maximum term of ten years after the date of grant, subject to earlier termination upon an optionee's cessation of service. In the event of certain changes in control of the Company, all options outstanding under the Directors Plan will become immediately vested and exercisable in full.

### 1998 Nonstatutory Stock Option Plan

In July 1998, the board of directors adopted the 1998 Nonstatutory Stock Option Plan (the "1998 Plan"), whereby the board of directors may grant nonstatutory stock options to employees and consultants, but only to the extent that such options do not require approval of the Company's stockholders. The 1998 Plan has not been approved by the Company's stockholders. The exercise price of nonstatutory stock options may not be less than 85% of the fair market value of the Company's common stock on the date of grant. As of December 31, 2005, the maximum number of shares that may be issued under the 1998 Plan was 1,000,000 shares. In general, options vest over 48 months. Options generally have a maximum term of ten years after the date of grant, subject to earlier termination upon an optionee's cessation of employment or service.

110



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUAC15Z159 5.6.18 | PAL soeus0pa | 06-Mar-2007 21:43 EST | | 86507 TX 111 | 2* |
| FORM 10-K | | | PAL | | | HTM PMT | 1C |
| | | | | | | Page 1 of 1 | |

POWER INTEGRATIONS, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The following table presents the functional allocation of all stock-based compensation and related expenses included in the Company's consolidated financial statements (in thousands):

| | Year ended December 31, | | |
| | 2005 | 2004 As restated | 2003 As restated |
|---|---|---|---|
| Cost of sales | $ 405 | $ 512 | $ 641 |
| Research and development | 994 | (130) | 3,599 |
| Sales and marketing | 655 | 969 | 1,652 |
| General and administrative | 1,064 | (63) | 3,996 |
| Total | $3,118 | $ 1,288 | $ 9,888 |

The following table summarizes option activity under the Company's option plans (prices are weighted average prices):

| | Year Ended December 31, | | | | | |
| | 2005 | | 2004 As restated | | 2003 As restated | |
| | Shares | Price | Shares | Price | Shares | Price |
|---|---|---|---|---|---|---|
| Options outstanding, Beginning of year | 6,689,279 | $18.99 | 5,752,100 | $16.62 | 5,951,573 | $15.02 |
| Granted: | | | | | | |
|   Below fair market value | 138,668 | $21.08 | 242,000 | $21.64 | 1,345,763 | $18.54 |
|   At fair market value | 1,409,181 | $18.14 | 1,467,037 | $26.27 | 175,599 | $29.38 |
|   Above fair market value | — | | — | | 3,000 | $20.88 |
|   Total Granted | 1,547,849 | $18.40 | 1,709,037 | $25.62 | 1,524,362 | $19.79 |
| Exercised | (414,070) | $13.29 | (491,812) | $13.76 | (1,621,218) | $13.38 |
| Cancelled | (253,204) | $21.79 | (280,046) | $19.98 | (102,617) | $22.39 |
| Options outstanding, end of year | 7,569,854 | $19.09 | 6,689,279 | $18.99 | 5,752,100 | $16.62 |
| Vested and exercisable, end of year | 4,950,914 | $17.97 | 3,870,840 | $17.14 | 2,850,311 | $16.22 |
| Weighted average fair value per option granted below fair market value | | $15.77 | | $17.41 | | $14.89 |
| Weighted average fair value per option granted at fair market value | | $12.91 | | $19.60 | | $22.45 |
| Weighted average fair value per option granted above fair market value | | $ — | | $ — | | $15.66 |

Options issued under the 1988, 1997 and 1998 plans may be exercised at any time prior to their expiration. The Company has a repurchase right that lapses over time, under which it has the right, upon termination of an optionholder's employment or service with the Company, at its discretion, to repurchase any unvested shares issued under the 1988, 1997 and 1998 plans at the original purchase price. Under the terms of the option plans, an option holder may not sell shares obtained upon the exercise of an option until the option has vested as to those shares. As of December 31, 2005, 2004 and 2003, there were no shares of common stock issued under the 1988, 1997 and 1998 plans that are subject to repurchase by the Company. Options issued under the Directors Plan are exercisable upon vesting



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX0P 9.8 | AL jaslv0dc | 04-Mar-2007 22:21 EST | 86507 TX 112 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |

Page 1 of 1

POWER INTEGRATIONS, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The following table summarizes the stock options outstanding at December 31, 2005:

| | Options Outstanding | | | Options Vested and Exercisable | |
| Exercise Price | Number Outstanding | Weighted Average Remaining Life | Weighted Average Exercise Price | Number Vested | Weighted Average Exercise Price |
|---|---|---|---|---|---|
| $ 0.68—$ 4.38 | 154,445 | 2.08 | $ 3.44 | 154,445 | $ 3.44 |
| $ 4.42—$12.10 | 946,582 | 5.35 | $ 11.96 | 944,359 | $ 11.96 |
| $12.13—$16.81 | 1,514,389 | 5.24 | $ 14.77 | 1,456,990 | $ 14.78 |
| $17.00—$20.51 | 2,695,724 | 8.02 | $ 17.93 | 1,233,701 | $ 17.99 |
| $20.55—$24.64 | 667,262 | 7.93 | $ 22.57 | 278,795 | $ 23.08 |
| $24.90—$28.55 | 1,180,029 | 7.87 | $ 27.19 | 579,373 | $ 27.14 |
| $28.81—$29.50 | 46,594 | 6.27 | $ 29.28 | 31,889 | $ 29.24 |
| $31.50—$36.56 | 282,243 | 6.08 | $ 34.87 | 188,776 | $ 35.57 |
| $36.88—$43.88 | 65,311 | 4.04 | $ 42.81 | 65,311 | $ 42.81 |
| $44.75—$51.50 | 17,275 | 4.13 | $ 45.60 | 17,275 | $ 45.60 |
| $ 0.68—$51.50 | 7,569,854 | 6.85 | $ 19.09 | 4,950,914 | $ 17.97 |

*1997 Employee Stock Purchase Plan*

Under the 1997 Employee Stock Purchase Plan (the "Purchase Plan"), eligible employees may apply accumulated payroll deductions, which may not exceed 15% of an employee's compensation, to the purchase of shares of the Company's common stock at periodic intervals. The purchase price of stock under the Purchase Plan is equal to 85% of the lower of (i) the fair market value of the Company's common stock on the first day of each two-year offering period, or (ii) the fair market value of the Company's common stock on the semi-annual purchase date. If the fair market value of the Company's common stock on any semi-annual purchase date within a two-year offering period is less than the fair market value per share on the first day of such offering period, then immediately following purchase of shares of the Company's common stock on that semi-annual purchase date, participants will be automatically withdrawn from the offering period and enrolled in a new two-year offering period beginning immediately thereafter. An aggregate of 2,000,000 shares of common stock is reserved for issuance to employees under the Purchase Plan. As of December 31, 2005, 1,526,908 shares had been purchased and 473,092 shares were reserved for future issuance.

*Non-employee Stock Options*

In 2005, the Company granted no non-employee options. In 2004 and 2003, the Company granted to non-employees options to acquire 1,000 shares of common stock for each of the two years, respectively, under the 1997 Plan, at weighted average exercise prices of $27.22 and $17.75 per share respectively. As of December 31, 2005 there were no non-employee options outstanding.

*Shares Reserved*

As of December 31, 2005, the Company had 4,271,635 shares of common stock reserved for future issuance under stock option and stock purchase plans.

*Shares Accounted for Using Variable Accounting*

As of December 31, 2005 the Company accounted for 415,000 shares using variable accounting. The value of vested shares is remeasured at each balance sheet date based upon the market value of the Company's common stock, with the corresponding changes being charged to stock-based compensation.



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX08 PAL jaslv0dc | 04-Mar-2007 22:21 EST | 86507 TX 113 | 1* |
|---|---|---|---|---|---|
| FORM 10-K | | ◼ PAL | | HTM IFV | 1C |
| | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

**8. TAXES:**

*Payroll taxes*

Recorded in connection with the stock-based compensation charges included in the restatement as disclosed in note 3, the Company determined that certain options previously classified as Incentive Stock Option, ISO, grants were determined to have been granted with an exercise price below the fair market value of its stock on the revised measurement date. Under U.S. tax regulations, ISOs may not be granted with an exercise price less than the fair market value on the date of grant, and therefore might not qualify for ISO tax treatment. The Company refers to these stock options as the "Affected ISOs." The potential disqualification of ISO status exposes the Company to additional payroll related withholding taxes on the exercise of options granted to U.S. employees, and penalties and interest for failing to properly withhold taxes on exercise of those options. The Company recorded a net tax liability of approximately $1.1 million in connection with the potential disqualification of such ISO tax treatment. The tax, interest and penalty expenses were recorded in the periods in which the underlying stock options were exercised. Then, in periods in which the liabilities were legally extinguished due to statutes of limitations, the expenses were subsequently reversed.

*Income Taxes*

U.S. and foreign components of income (loss) before income taxes were (in thousands):

| | Year Ended December 31, | | |
|---|---|---|---|
| | **2005** | **2004** | **2003** |
| | | As restated | As restated |
| U.S. operations | $ 6,945 | $ 12,010 | $ 14,821 |
| Foreign operations | 15,206 | 14,628 | 127 |
| Total pretax income | $22,151 | $ 26,638 | $ 14,948 |

Undistributed earnings of the Company's foreign subsidiaries of approximately $22.2 million at December 31, 2005, are considered to be indefinitely reinvested and, accordingly, no provision for Federal income taxes have been provided thereon. Upon distribution of those earnings in the form of dividends or otherwise, the Company would be subject to both U.S. income taxes (subject to an adjustment for foreign tax credits) and withholding taxes payable to various foreign countries.

The American Jobs Creation Act of 2004 (the Jobs Act), enacted on October 22, 2004, provides for a temporary 85% dividends received deduction on certain foreign earnings repatriated during a one-year period. The deduction would result in an approximate 5.25% Federal tax rate on the repatriated earnings. To qualify for the deduction, the earnings must be reinvested in the United States pursuant to a domestic reinvestment plan established by a company's chief executive officer and approved by the Company's board of directors. Certain other criteria in the Jobs Act must be satisfied as well.

The Company did not apply the above provision to qualifying earnings repatriations in fiscal year 2005.



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX08 9.6 | PAL jaslv0dc | 04-Mar-2007 22:22 EST | 86507 TX 114 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |
| | | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The components of the provision for income taxes are as follows (in thousands):

| | Year Ended December 31, | | |
| --- | --- | --- | --- |
| | 2005 | 2004 As restated | 2003 As restated |
| Current provision: | | | |
| Federal | $ 6,798 | $ 4,674 | $ 1,583 |
| State | 199 | 244 | 2 |
| Foreign | 556 | 485 | 286 |
| | 7,553 | 5,403 | 1,871 |
| Deferred provision (benefit): | | | |
| Federal | (942) | 1,256 | 2,037 |
| State | (158) | (521) | (397) |
| | (1,100) | 735 | 1,640 |
| | $ 6,453 | $ 6,138 | $ 3,511 |

The Company is entitled to a deduction for Federal and state tax purposes with respect to employees' stock option activity. The net reduction in taxes otherwise payable in excess of any amount credited to income tax benefit has been credited to additional paid-in capital. For 2005, 2004 and 2003, the benefit arising from employee stock option activity that resulted in a credit to additional paid in capital was approximately $0.6 million, $2.1 million and $3.3 million, respectively.

The provision for income taxes differs from the amount, which would result by applying the applicable Federal income tax rate to income before provision for income taxes as follows:

| | Year Ended December 31, | | |
| --- | --- | --- | --- |
| | 2005 | 2004 As restated | 2003 As restated |
| Provision computed at Federal statutory rate | 35.0% | 35.0% | 35.0% |
| State tax provision, net of Federal benefit | 1.21 | 2.97 | 2.98 |
| Research and development credits | (3.65) | (1.86) | (7.56) |
| Extraterritorial income exclusion | — | — | (6.75) |
| Deferred compensation | 1.74 | (0.95) | (3.30) |
| Foreign income taxed at different rate | (4.56) | (8.57) | 4.63 |
| Release of reserve for tax contingency | — | (4.17) | — |
| Other | (0.61) | 0.62 | (1.51) |
| | 29.13% | 23.04% | 23.49% |

114

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX08<br>8.8 | PAL jaslv0dc | 04-Mar-2007 22:22 EST | 86507 TX 115 | 1* |
|---|---|---|---|---|---|---|
| FORM 10-K | | | PAL | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The components of the net deferred income tax asset were as follows (in thousands):

|  | December 31, | |
|---|---|---|
|  | 2005 | 2004<br>As restated |
| **Deferred Tax Assets** | | |
| Tax credit carry-forwards | $ 3,353 | $ 4,506 |
| Inventory reserves | 838 | 1,066 |
| Other reserves and accruals | 1,180 | 196 |
| Stock compensation | 5,403 | 4,978 |
|  | 10,774 | 10,746 |
| **Deferred Tax Liability** | | |
| Depreciation | (2) | — |
| Net deferred tax asset | $10,772 | $ 10,746 |

In assessing the realizability of deferred tax assets, management considers whether it is more likely than not that some portion or all of the deferred tax assets will not be realized. The ultimate realization of deferred tax assets is dependent upon the generation of future taxable income during the periods in which those temporary differences become deductible. Management considers the scheduled reversal of deferred tax liabilities and projected future taxable income. The Company limits the deferred tax assets recognized related to certain highly-paid officers of the Company to amounts that it estimates will be deductible in future periods based upon the provisions of the Internal Revenue Code Section 162(m). Based upon the level of historical taxable income and projections for future taxable income over the periods in which the temporary differences are deductible, management believes it is more likely than not that the Company will realize the benefits of these deductible differences.

As of December 31, 2005, the Company had California research and development tax credit carryforwards of approximately $5.2 million. There is no expiration of research and development tax credit carryforwards for the State of California. The Company had no Federal research and development tax credit carryforwards as of December 31, 2005.

## 9. LEGAL PROCEEDINGS:

On June 28, 2004, the Company filed a complaint for patent infringement in the U.S. District Court, Northern District of California, against System General Corporation, a Taiwanese company, and its U.S. subsidiary. The Company's complaint alleges that certain integrated circuits produced by System General infringed and continue to infringe certain of its patents. The Company seeks, among other things, an order enjoining System General from infringing its patents and an award for damages resulting from the alleged infringement. On June 10, 2005, in response to the initiation of the International Trade Commission (ITC) investigation, the District Court stayed all proceedings. Subsequent to the completion of the ITC proceedings, the District Court lifted the stay and has scheduled a case management conference. No other schedule has been set for the matter. On December 6, 2006, System General filed a notice of appeal of the ITC decision as discussed below. In response, and by agreement of the parties, the District Court vacated the scheduled case management conference and, instead, renewed the stay of proceedings pending the outcome of the Federal Circuit appeal of the ITC determination.

115



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUDSK141049PAL garcm0pa 9.9.18 | 06-Mar-2007 17:55 EST | 86507 TX 116 | 6* |
| FORM 10-K | | PAL | | HTM PMT | 1C |
|  |  |  |  | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

On May 9, 2005, the Company filed a complaint with the U.S. International Trade Commission (ITC) under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. section 1337, naming System General Corporation of Taiwan as the respondent. The Company filed a supplement to the complaint on May 24, 2005. The Company alleges infringement by System General of the same patents raised in the action in the Northern District of California. The ITC instituted an investigation on June 8, 2005 in response to the Company's complaint. By the Company's complaint, it seeks an order from the ITC excluding certain System General's pulse width modulation (PWM) chips and the products containing them, such as LCD monitors, from importation into the United States. The Company subsequently and voluntarily narrowed the number of patents and claims in suit, which proceeded to a hearing. The ITC hearing took place in January 2006. Post-hearing briefs were submitted and briefing concluded February 24, 2006. The Administrative Law Judge's (ALJ) initial determination was issued on May 15, 2006. The ALJ found all remaining asserted claims valid and infringed, and recommended the exclusion of the infringing products as well as certain downstream products that contain the infringing products. After further briefing, on June 30, 2006 the Commission decided not to review the initial determination on liability. On August 11, 2006 the Commission issued an order excluding from entry into the United States the infringing System General PWM chips, and any LCD computer monitors, AC printer adapters and sample/demonstration circuit boards containing an infringing System General chip. The order also set a bond of 38 cents per chip or downstream product containing such chips for temporary importation during the Presidential review period. The U.S. Customs Service is authorized to enforce the exclusion order and collect the bond during the review period. On October 11, 2006, the review period expired with no action by the President, and the ITC exclusion order is now in full effect. On December 6, 2006, System General filed a notice of appeal of the ITC decision. The appeal will be heard by the U.S. Court of Appeals for the Federal Circuit with briefing to occur in the first quarter of 2007 and an oral argument thereafter.

On October 20, 2004, the Company filed a complaint for patent infringement in the U.S. District Court for the District of Delaware, against Fairchild Semiconductor International, Inc., a Delaware corporation, and Fairchild Semiconductor Corporation, a Delaware corporation (collectively, Fairchild). The complaint alleges that Fairchild produces certain integrated circuits that infringed and continue to infringe certain of the Company's patents. The Company seeks, among other things, an order enjoining Fairchild from infringing its patents and an award for damages resulting from the alleged infringement. On October 10, 2006, after a week-long trial, a jury returned a verdict in favor of the Company finding all asserted claims of all four patents-in-suit to be willfully infringed by Fairchild and determining damages in the amount of $33,981,781. No benefits have been recorded in its consolidated financial statements as a result of its award for damages. The court has not yet set a schedule for post-trial motions on these issues. The Company intends to request that the court enhance the damage award in view of the jury's finding on willfulness. Fairchild has raised defenses contending that the asserted patents are invalid or unenforceable and the court has set a second trial on these issues that is scheduled to begin on June 4, 2007.

On April 11, 2006, Fairchild Semiconductor Corporation and Intersil Corporation filed a patent infringement lawsuit against the Company in the U.S. District Court for the Eastern District of Texas. The complaint asserts that the Company infringed on an old Intersil patent that Fairchild recently secured exclusive rights to assert against the Company, but Fairchild has not yet identified any of the Company's specific products it believes infringes the patent. Fairchild's lawsuit is duplicative of a portion of the Company's suit against Fairchild in Delaware, and the Company therefore believes the case should be transferred to Delaware and filed a motion to that effect. The Texas Court granted the Company's motion to transfer the case to Delaware on March 6, 2007, and the case is in the process of being transferred to Delaware. The Company believes Fairchild's case should be stayed pending the outcome of the trial against Fairchild later this year. Either way, the Company does not expect Fairchild's suit to have any impact on its lawsuit against Fairchild in Delaware.

116

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX09 8.6 | PAL jaslv0dc | 04-Mar-2007 22:22 EST | 86507 TX 117 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |

Page 1 of 1

# POWER INTEGRATIONS, INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

On April 25, 2006, Kimberly Quaco, an alleged shareholder, filed a derivative complaint in the United States District Court for the Northern District of California, purportedly on behalf of the Company, against certain of the Company's current and former executives and members of the Company's board of directors relating to its historical stock option practices. On August 1, 2006, Kathryn L. Champlin, another alleged shareholder, filed a similar derivative complaint in the United States District Court for the Northern District of California purportedly on behalf of the Company. On September 21, 2006, Christopher Deboskey, another alleged shareholder, filed a similar derivative suit in the United States District Court for the Northern District of California purportedly on behalf of the Company. On November 30, 2006, Ms. Champlin voluntarily dismissed her suit. On December 18, 2006, the Court appointed Ms. Quaco's counsel as lead counsel and ordered that another purported shareholder, Mr. Geoffrey Wren, be substituted in as lead plaintiff. On January 17, 2007, the plaintiffs filed their consolidated complaint. The consolidated complaint alleges, among other things, that the defendants breached their fiduciary duties by improperly backdating stock option grants in violation of the Company's shareholder-approved stock option plans, improperly recording and accounting for the backdated options, improperly taking tax deductions based on the backdated options, and disseminating false financial statements that improperly recorded the backdated option grants. The consolidated complaint asserts claims for, among other things, breach of fiduciary duty, unjust enrichment, and violations of Section 10(b) of the Securities Exchange Act of 1934. On February 9, 2007, the Court extended the Company's response date to April 17, 2007.

On May 26, 2006, Stanley Banko, an alleged shareholder, filed a derivative complaint in the Superior Court of California, Santa Clara County, purportedly on behalf of the Company, against certain of its current and former executives and members of the Company's board of directors relating to its historical stock option practices. On May 30, 2006, Joan Campbell, also an alleged shareholder, filed a derivative suit in the Superior Court of California, Santa Clara County, making the identical allegations asserted in the Banko lawsuit. On June 30, 2006, pursuant to a stipulation by the parties, the Court consolidated the two cases into a single proceeding and required plaintiffs to file an amended, consolidated complaint. Plaintiffs filed their consolidated complaint on August 14, 2006, in which plaintiffs named additional officers and former officers and KPMG LLP, the Company's former auditor, as new defendants. The consolidated complaint alleges, among other things, that the defendants caused or allowed the Company's executives to manipulate their stock option grant dates, that defendants improperly backdated stock option grants, and that costs associated with the stock option grants were not properly recorded in the Company's financial statements. The complaint asserts claims for, among other things, insider trading, breach of fiduciary duty, gross mismanagement and unjust enrichment. On September 15, 2006, the Court stayed this action until January 19, 2007. On January 11, 2007, pursuant to a stipulation by the parties, the Court extended the stay until March 23, 2007.

On May 23, 2006, the U.S. Attorney's Office for the Northern District of California, or DOJ, issued a grand jury subpoena to the Company directing that it produce documents relating to the granting of stock options from 1995 through the present. On May 31, 2006, the staff of the Securities and Exchange Commission, or SEC, sent a letter to the Company directing it to take appropriate actions to preserve certain documents relating to its stock option practices. Since that time, the government has made a number of requests for the Company to voluntarily produce documents relating to, among other things, its stock option practices. In addition, the government has been conducting voluntary interviews of certain current and former officers and employees. The Company is cooperating fully with the SEC and the DOJ and intends to continue to do so.

On June 19, 2006, the Company received a demand letter pursuant to section 16(b) of the Securities Exchange Act of 1934 from an attorney purporting to represent an unnamed shareholder. The letter demands that the Company bring a lawsuit against certain of our current and former officers and directors to recover short-swing profits allegedly earned by the officers and directors in violation of section 16(b) when they allegedly acquired options to purchase the Company's stock within six months of corresponding sales of the stock at higher prices. The letter states that if the Company does not take action against the individuals within 60 days, the unnamed shareholder will file a lawsuit.



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX09 5.0 | PAL jaslv0dc | 04-Mar-2007 22:22 EST | 86507 TX 118 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |
| | | | | | Page 1 of 1 | |

# POWER INTEGRATIONS, INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The Internal Revenue Service ("IRS") is conducting an audit of the Company's 2002 and 2003 tax returns. Throughout the course of 2005, the IRS issued a number of Notices of Proposed Adjustment to such returns. Among other things, the IRS has challenged several aspects of the Company's research and development cost-sharing arrangement, which was put into place on November 1, 2003. While the Company has agreed to some of the adjustments proposed by the IRS, it disputes other such proposed adjustments. Additionally, the Company has not received all of the adjustments the IRS intends to propose with respect to the Company's research and development cost-sharing arrangement.

There can be no assurance that the Company will prevail in its litigation with either System General or Fairchild. This litigation, whether or not determined in the Company's favor or settled, will be costly and will divert the efforts and attention of the Company's management and technical personnel from normal business operations, potentially causing a material adverse effect on its business, financial condition and operating results. In addition, the Company is unable to predict the outcome of the other legal proceedings described above. Adverse determinations in litigation could result in monetary losses, the loss of the Company's proprietary rights, subject the Company to significant liabilities, require the Company to seek licenses from third parties or prevent the Company from licensing its technology, any of which could have a material adverse effect on the Company's business, financial condition and operating results.

## 10. CHANGE IN ESTIMATE TO DEFERRED INCOME ON SALES TO DISTRIBUTORS

The Company made a change to its estimation of deferred income on sales to distributors in the first quarter of 2005. This change of estimate resulted in the recognition of $1.1 million in previously deferred revenue, the recognition of $0.6 million of previously deferred costs, and an increase in net income after tax of approximately $0.4 million, which represented diluted earnings per share of approximately $0.01 for the year ended December 31, 2005. The impact of this change in estimate was not material to any of the Company's prior period financial statements.

## 11. LOAN TO SUPPLIER

On August 30, 2005, the Company entered into a loan agreement with one of its suppliers to fund the implementation of new technology. The principal amount of the loan was $10.0 million. The unpaid principal and interest is due on December 31, 2009. The loan is convertible into equity of the supplier upon certain conditions at the discretion of the Company. The interest rate will follow the one-year Treasury bill rate, and be reset at each anniversary of the closing date of the loan agreement. The loan principal is reflected in "other assets" in the accompanying consolidated balance sheet.

118



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX06 8.8 | PAL jaslv0dc | 04-Mar-2007 22:22 EST | | 86507 TX 119 | 1* |
| FORM 10-K | | | PAL | | | HTM IFV | 1C |
| | | | | | | Page 1 of 1 | |

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

**12. SELECTED QUARTERLY INFORMATION (Unaudited), AS RESTATED**

The following table presents selected quarterly information for the three quarters ended September 30, 2005 and for the four quarters ended December 31, 2004 as restated from previously reported information filed on the Company's Form 10-Q's and Form 10-K, as a result of the restatement of its financial results discussed in Note 3, "Restatement of Consolidated Financial Statements".

| | As previously reported | | | | | | |
| | Quarter ended (in thousands, except per share amounts) | | | | | | |
| | Sept. 30, 2005 | Jun. 30, 2005 | Mar. 31, 2005 | Dec. 31, 2004 | Sept. 30, 2004 | Jun. 30, 2004 | Mar. 31, 2004 |
|---|---|---|---|---|---|---|---|
| Net revenues | $36,543 | $35,299 | $34,416 | $33,581 | $32,946 | $35,944 | $34,165 |
| Cost of revenues | 18,463 | 18,045 | 17,779 | 17,356 | 17,188 | 19,392 | 17,473 |
| Gross profit | 18,080 | 17,254 | 16,637 | 16,225 | 15,758 | 16,552 | 16,692 |
| Operating Expenses: | | | | | | | |
| Research and development | 4,105 | 4,104 | 4,098 | 3,826 | 4,096 | 4,088 | 4,152 |
| Sales and marketing | 4,418 | 4,263 | 4,018 | 3,806 | 3,412 | 3,943 | 4,112 |
| General and administrative | 4,092 | 2,933 | 2,777 | 2,092 | 2,382 | 2,049 | 1,579 |
| Total operating expenses | 12,615 | 11,300 | 10,893 | 9,724 | 9,890 | 10,080 | 9,843 |
| Income from operations | 5,465 | 5,954 | 5,744 | 6,501 | 5,868 | 6,472 | 6,849 |
| Interest and other income, net | 939 | 725 | 654 | 325 | 339 | 131 | 259 |
| Income before provision for income taxes | 6,404 | 6,679 | 6,398 | 6,826 | 6,207 | 6,603 | 7,108 |
| Provision for income taxes | 739 | 1,632 | 1,663 | 2,310 | 502 | 1,575 | 1,990 |
| Net income | $ 5,665 | $ 5,047 | $ 4,735 | $ 4,516 | $ 5,705 | $ 5,028 | $ 5,118 |
| Per share amounts: | | | | | | | |
| Basic | $ 0.19 | $ 0.17 | $ 0.16 | $ 0.15 | $ 0.18 | $ 0.16 | $ 0.17 |
| Diluted | $ 0.18 | $ 0.16 | $ 0.15 | $ 0.14 | $ 0.18 | $ 0.15 | $ 0.16 |
| Shares used in computing per share amounts: | | | | | | | |
| Basic | 29,478 | 29,423 | 29,919 | 30,886 | 30,912 | 30,785 | 30,622 |
| Diluted | 30,732 | 30,876 | 30,907 | 31,934 | 31,994 | 32,598 | 32,757 |

119

POWER INTEGRATIONS,    RR Donnelley ProFile    LANF8U-MWS-CX10    PAL jaslv0dc    04-Mar-2007 22:22 EST    86507 TX 120    1*
FORM 10-K    9.6    PAL    HTM IFV    1C
Page 1 of 1

# POWER INTEGRATIONS, INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

**Adjustments**

Quarter ended (in thousands, except per share amounts)

| | Sept. 30, 2005 | Jun. 30, 2005 | Mar. 31, 2005 | Dec. 31, 2004 | Sept. 30, 2004 | Jun.30, 2004 | Mar. 31, 2004 |
|---|---|---|---|---|---|---|---|
| Net revenues | $ — | $ (1,058) | $ (4) | $ 17 | $ — | $ — | $ — |
| Cost of revenues | 24 | (429) | 113 | 122 | 50 | 128 | 147 |
| Gross profit | (24) | (629) | (117) | (105) | (50) | (128) | (147) |
| Operating expenses: | | | | | | | |
| Research and development | 168 | 37 | 241 | 278 | (165) | (851) | 16 |
| Sales and marketing | 155 | 140 | 195 | 208 | 222 | 49 | 318 |
| General and administrative | 156 | 247 | 326 | 198 | (141) | (191) | 1 |
| Total operating expenses | 479 | 424 | 762 | 684 | (84) | (993) | 335 |
| Income from operations | (503) | (1,053) | (879) | (789) | 34 | 865 | (482) |
| Interest and other income, net | (15) | 72 | (17) | (15) | (13) | 322 | (28) |
| Income before provision for income taxes | (518) | (981) | (896) | (804) | 21 | 1,187 | (510) |
| Provision for income taxes | (123) | (972) | (205) | (229) | (45) | 392 | (357) |
| Net income | $ (395) | $ (9) | $ (691) | $ (575) | $ 66 | $ 795 | $ (153) |
| Per share amounts: | | | | | | | |
| Basic | $ (0.01) | $ — | $ (0.02) | $ (0.02) | $ 0.01 | $ 0.03 | $ (0.01) |
| Diluted | $ (0.01) | $ — | $ (0.02) | $ (0.02) | $ — | $ 0.03 | $ (0.01) |

**As restated**

Quarter ended (in thousands, except per share amounts)

| | Sept. 30, 2005 | Jun. 30, 2005 | Mar. 31, 2005 | Dec. 31, 2004 | Sept. 30, 2004 | Jun.30, 2004 | Mar. 31, 2004 |
|---|---|---|---|---|---|---|---|
| Net revenues | $36,543 | $34,241 | $34,412 | $33,598 | $32,946 | $35,944 | $34,165 |
| Cost of revenues | 18,487 | 17,616 | 17,892 | 17,478 | 17,238 | 19,520 | 17,620 |
| Gross profit | 18,056 | 16,625 | 16,520 | 16,120 | 15,708 | 16,424 | 16,545 |
| Operating expenses: | | | | | | | |
| Research and development | 4,273 | 4,141 | 4,339 | 4,104 | 3,931 | 3,237 | 4,168 |
| Sales and marketing | 4,573 | 4,403 | 4,213 | 4,014 | 3,634 | 3,992 | 4,430 |
| General and administrative | 4,248 | 3,180 | 3,103 | 2,290 | 2,241 | 1,858 | 1,580 |
| Total operating expenses | 13,094 | 11,724 | 11,655 | 10,408 | 9,806 | 9,087 | 10,178 |
| Income from operations | 4,962 | 4,901 | 4,865 | 5,712 | 5,902 | 7,337 | 6,367 |
| Interest and other income, net | 924 | 797 | 637 | 310 | 326 | 453 | 231 |
| Income before provision for income taxes | 5,886 | 5,698 | 5,502 | 6,022 | 6,228 | 7,790 | 6,598 |
| Provision for income taxes | 616 | 660 | 1,458 | 2,081 | 457 | 1,967 | 1,633 |
| Net income | $ 5,270 | $ 5,038 | $ 4,044 | $ 3,941 | $ 5,771 | $ 5,823 | $ 4,965 |
| Per share amounts: | | | | | | | |
| Basic | $ 0.18 | $ 0.17 | $ 0.14 | $ 0.13 | $ 0.19 | $ 0.19 | $ 0.16 |
| Diluted | $ 0.17 | $ 0.16 | $ 0.13 | $ 0.12 | $ 0.18 | $ 0.18 | $ 0.15 |
| Shares used in computing per share amounts: | | | | | | | |
| Basic | 29,478 | 29,423 | 29,919 | 30,886 | 30,912 | 30,785 | 30,622 |
| Diluted | 30,849 | 30,835 | 30,966 | 31,934 | 31,972 | 32,372 | 32,481 |

120



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUAC15215S 9.8.18 | PAL soeus0pa | 05-Mar-2007 20:51 EST | | 86507 TX 121 | 2* |
| FORM 10-K | | | PAL | | | HTM PMT | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

The following table presents balance sheet information as of September 30, June 30 and March 31, 2005 and 2004 respectively, as restated from previously reported information filed in the Company's Form 10-Q's, as a result of the restatement of its financial results discussed in Note 3, "Restatement of Consolidated Financial Statements" (in thousands).

| | September 30, 2005 | | | June 30, 2005 | | | March 31, 2005 | | |
| --- | ---: | ---: | ---: | ---: | ---: | ---: | ---: | ---: | ---: |
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
| **ASSETS** | | | | | | | | | |
| CURRENT ASSETS: | | | | | | | | | |
| Cash and cash equivalents | $ 100,143 | $ (1,000) | $ 99,143 | $ 106,496 | $ (1,000) | $105,496 | $ 104,985 | $ (1,000) | $103,985 |
| Short-term investments | 14,738 | (3,497) | 11,241 | 7,210 | (2,500) | 4,710 | 6,410 | (2,500) | 3,910 |
| Accounts receivable | 14,749 | — | 14,749 | 11,929 | — | 11,929 | 10,156 | 517 | 10,673 |
| Inventories | 22,300 | (35) | 22,265 | 24,093 | (36) | 24,057 | 26,773 | 53 | 26,826 |
| Deferred tax assets | 4,022 | (2,494) | 1,528 | 4,022 | (2,501) | 1,521 | 4,022 | (2,521) | 1,501 |
| Prepaid expenses and other current assets | 1,264 | — | 1,264 | 1,549 | 1 | 1,550 | 1,354 | — | 1,354 |
| Total current assets | 157,216 | (7,026) | 150,190 | 155,299 | (6,036) | 149,263 | 153,700 | (5,451) | 148,249 |
| PROPERTY AND EQUIPMENT, NET | 49,615 | 192 | 49,807 | 50,143 | 127 | 50,270 | 50,591 | 64 | 50,655 |
| INVESTMENTS | 6,958 | 4,497 | 11,455 | 10,468 | 3,500 | 13,968 | 11,296 | 3,501 | 14,797 |
| DEFERRED TAX ASSETS | 1,789 | 7,295 | 9,084 | 1,789 | 7,256 | 9,045 | 1,789 | 7,134 | 8,923 |
| OTHER ASSETS | 14,012 | (1) | 14,011 | 3,067 | — | 3,067 | 3,104 | (1) | 3,103 |
| | $ 229,590 | $ 4,957 | $234,547 | $ 220,766 | $ 4,847 | $225,613 | $ 220,480 | $ 5,247 | $225,727 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | | | | | | |
| CURRENT LIABILITIES: | | | | | | | | | |
| Accounts payable | 6,635 | 93 | 6,728 | 6,758 | 78 | 6,836 | 7,328 | 150 | 7,478 |
| Accrued payroll and related expenses | 4,180 | 967 | 5,147 | 4,507 | 954 | 5,461 | 3,715 | 1,198 | 4,913 |
| Taxes payable | 5,459 | (186) | 5,273 | 5,234 | (187) | 5,047 | 5,647 | 516 | 6,163 |
| Deferred income on sales to distributors | 3,002 | — | 3,002 | 2,992 | — | 2,992 | 2,868 | — | 2,868 |
| Other accrued liabilities | 2,672 | — | 2,672 | 2,122 | — | 2,122 | 1,279 | — | 1,279 |
| Total current liabilities | 21,948 | 874 | 22,822 | 21,613 | 845 | 22,458 | 20,837 | 1,864 | 22,701 |
| STOCKHOLDERS' EQUITY: | | | | | | | | | |
| Common stock | 30 | — | 30 | 29 | — | 29 | 30 | — | 30 |
| Additional paid-in capital | 102,578 | 35,800 | 138,378 | 99,754 | 35,846 | 135,600 | 105,291 | 35,829 | 141,120 |
| Deferred compensation | — | (1,224) | (1,224) | — | (1,745) | (1,745) | — | (2,356) | (2,356) |
| Accumulated translation adjustment | (114) | — | (114) | (114) | — | (114) | (114) | — | (114) |
| Retained earnings | 105,148 | (30,493) | 74,655 | 99,484 | (30,099) | 69,385 | 94,436 | (30,090) | 64,346 |
| Total stockholders' equity | 207,642 | 4,083 | 211,725 | 199,153 | 4,002 | 203,155 | 199,643 | 3,383 | 203,026 |
| | $ 229,590 | $ 4,957 | $234,547 | $ 220,766 | $ 4,847 | $225,613 | $ 220,480 | $ 5,247 | $225,727 |

121



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX09 9.6 | PAL jaslv0dc | 04-Mar-2007 22:22 EST | | 86507 TX 122 | 1* |
| FORM 10-K | | | PAL | | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

| | September 30, 2004 | | | June 30, 2004 | | | March 31, 2004 | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
| **ASSETS** | | | | | | | | | |
| CURRENT ASSETS: | | | | | | | | | |
| Cash and cash equivalents | $ 129,969 | $ (36,275) | $ 93,694 | $ 119,001 | $ (24,080) | $ 94,921 | $ 111,048 | $ (16,931) | $ 94,117 |
| Short-term investments | 9,000 | (9,000) | — | 11,055 | (9,335) | 1,720 | 7,594 | (5,384) | 2,210 |
| Accounts receivable, net of allowances | 9,617 | 509 | 10,126 | 13,052 | 509 | 13,561 | 13,290 | 509 | 13,799 |
| Inventories | 22,219 | 119 | 22,338 | 19,785 | 52 | 19,837 | 21,320 | 134 | 21,454 |
| Deferred tax assets | 4,275 | (1,071) | 3,204 | 4,275 | (996) | 3,279 | 4,275 | (842) | 3,433 |
| Prepaid expenses and other current assets | 3,454 | (1) | 3,453 | 3,620 | — | 3,620 | 3,017 | — | 3,017 |
| Total current assets | 178,534 | (45,719) | 132,815 | 170,788 | (33,850) | 136,938 | 160,544 | (22,514) | 138,030 |
| PROPERTY AND EQUIPMENT, NET | 51,688 | — | 51,688 | 51,509 | — | 51,509 | 51,600 | — | 51,600 |
| INVESTMENTS | 5,044 | 45,275 | 50,319 | 4,810 | 33,415 | 38,225 | 4,810 | 22,315 | 27,125 |
| DEFERRED TAX ASSETS | 1,598 | 5,905 | 7,503 | 1,598 | 6,082 | 7,680 | 1,598 | 6,443 | 8,041 |
| OTHER ASSETS | 1,775 | 1 | 1,776 | 1,679 | — | 1,679 | 1,735 | — | 1,735 |
| | $ 238,639 | $ 5,462 | $244,101 | $ 230,384 | $ 5,647 | $236,031 | $ 220,287 | $ 6,244 | $226,531 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | | | | | | |
| CURRENT LIABILITIES: | | | | | | | | | |
| Accounts payable | 7,982 | 118 | 8,100 | 8,385 | 106 | 8,491 | 6,687 | 426 | 7,113 |
| Accrued payroll and related expenses | 4,150 | 1,122 | 5,272 | 4,312 | 1,106 | 5,418 | 3,518 | 2,230 | 5,748 |
| Taxes payable | 5,213 | (168) | 5,045 | 5,210 | (192) | 5,018 | 4,190 | (150) | 4,040 |
| Deferred income on sales to distributors | 3,580 | — | 3,580 | 3,448 | — | 3,448 | 3,473 | — | 3,473 |
| Other accrued liabilities | 1,073 | — | 1,073 | 719 | — | 719 | 805 | — | 805 |
| Total current liabilities | 21,998 | 1,072 | 23,070 | 22,074 | 1,020 | 23,094 | 18,673 | 2,506 | 21,179 |
| STOCKHOLDERS' EQUITY: | | | | | | | | | |
| Common stock | 31 | — | 31 | 31 | — | 31 | 30 | — | 30 |
| Additional paid-in capital | 131,549 | 37,060 | 168,609 | 128,921 | 38,304 | 167,225 | 127,252 | 39,200 | 166,452 |
| Deferred compensation | — | (3,846) | (3,846) | — | (4,787) | (4,787) | — | (5,778) | (5,778) |
| Accumulated translation adjustment | (124) | — | (124) | (121) | — | (121) | (120) | — | (120) |
| Retained earnings | 85,185 | (28,824) | 56,361 | 79,480 | (28,890) | 50,590 | 74,452 | (29,684) | 44,768 |
| Total stockholders' equity | 216,641 | 4,390 | 221,031 | 208,310 | 4,627 | 212,937 | 201,614 | 3,738 | 205,352 |
| | $ 238,639 | $ 5,462 | $244,101 | $ 230,384 | $ 5,647 | $236,031 | $ 220,287 | $ 6,244 | $226,531 |

122

| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX09.0 PAL jaslv0dc | 04-Mar-2007 22:22 EST | 86507 TX 123 | 1* |
| FORM 10-K | | PAL | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

**13. SUBSEQUENT EVENTS**

*Stock Option Investigation and Regulatory Proceedings*

As described in Note 3, "Restatement of Consolidated Financial Statements," on March 13, 2006, the Company announced that its Board of Directors established a Special Committee to conduct an investigation of the Company's practices related to stock option grants to officers and directors, and related matters. As a result of this investigation, the Company delayed filing its 2005 Form 10-K, which was due on March 16, 2006.

On May 9, 2006, the Company announced that based upon the Special Committee's preliminary determinations, its previously issued financial statements for the years ended December 31, 2004 and 2003, which were included in its 2004 Form 10-K, and the Forms 10-Q for each of the three quarters in 2005 and 2004, should no longer be relied upon and would be restated.

On May 23, the U.S. Attorney's Office for the Northern District of California ("DOJ") issued a grand jury subpoena to the Company directing the Company to produce documents relating to the granting of stock options from 1995 through the present. On May 31, 2006, the staff of the Securities & Exchange Commission ("SEC") sent a letter to the Company directing it to take appropriate actions to preserve certain documents relating to its stock option practices. Since that time, the government has made a number of requests for the Company to voluntarily produce documents relating to, among other things, its stock option practices. In addition, the government is conducting voluntary interviews of certain current and former officers and employees. The Company is cooperating fully with the SEC and the DOJ and intends to continue to do so.

If the Company is subject to adverse findings resulting from the above investigations, it could be required to pay significant damages or penalties or have other remedies imposed upon it.

*Nasdaq Delisting*

In 2006, the Company received two Nasdaq Staff Determinations stating that the Company was not in compliance with Marketplace Rule 4310(c)(14) because the Company has not timely filed its Form 10-K for the year ended December 31, 2005 and Form 10-Q for the quarter ended March 31, 2006 and therefore, the Company's securities were subject to delisting from The NASDAQ Stock Market.

On May 2, 2006, and June 10, 2006, the Company received exceptions to the filing requirements and extensions to filing the required SEC filings by August 2, 2006. The Company formally notified Nasdaq on July 31, 2006 that it would not be able to meet their deadline for filings with the SEC. Accordingly, the Company was delisted on August 2, 2006 and its shares then began trading on the Pink Sheets under the symbol "POWI.PK".

On October 30, 2006, the suspension of the trading of the Company's shares on Nasdaq was lifted and in order to be in compliance with the listing requirements, the Company must file the 2005 Form 10-K and Forms 10-Q for the quarters ended March 31, June 30 and September 30, 2006 by December 18, 2006. The Company did not meet this deadline, and the Company's shares have been delisted and resumed trading on the Pink Sheets under the symbol "POWI.PK".



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX0 &6 | PAL jaslv0dc | 04-Mar-2007 22:23 EST | 86507 TX 124 | 1* |
| FORM 10-K | START PAGE | | PAL | | HTM IFV | 1C |

Page 1 of 1

## POWER INTEGRATIONS, INC.
### SCHEDULE II—VALUATION AND QUALIFYING ACCOUNTS
#### (In thousands)

| Classification | Balance at Beginning of Period | Charged to Costs and Expenses | Deductions(1) | Balance at End of Period |
|---|---|---|---|---|
| **Allowances for doubtful accounts:** | | | | |
| Year ended December 31, 2003 | $  377 | $  (17) | $  0 | $  360 |
| Year ended December 31, 2004 | $  360 | $  (84) | $  5 | $  281 |
| Year ended December 31, 2005 | $  281 | $  67 | $  (7) | $  341 |

| Classification | Balance at Beginning of Period | Charged to Costs and Expenses | Deductions(1) | Balance at End of Period |
|---|---|---|---|---|
| **Allowances for customer returns:** | | | | |
| Year ended December 31, 2003,(2) | $  88 | $  720 | $  (708) | $  100 |
| Year ended December 31, 2004,(2) | $  100 | $  645 | $  (644) | $  101 |
| Year ended December 31, 2005 | $  101 | $  525 | $  (498) | $  128 |

| Classification | Balance at Beginning of Period | Charged to Costs and Expenses | Deductions(1) | Balance at End of Period |
|---|---|---|---|---|
| **Allowances for ship and debit credits:** | | | | |
| Year ended December 31, 2003 | $  1,483 | $  12,384 | $  (11,967) | $  1,900 |
| Year ended December 31, 2004 | $  1,900 | $  17,401 | $  (16,809) | $  2,492 |
| Year ended December 31, 2005 | $  2,492 | $  20,006 | $  (18,762) | $  3,736 |

(1)  Deductions relate to amounts written off against the allowances for doubtful accounts, customer returns and ship and debit credits.

(2)  The allowance for customer returns in the years ended December 31, 2004 and 2003 was $101,000 and $100,000. This amount was restated as a result of miscellaneous accounting adjustments. The previously reported allowance for customer returns was $621,000 and $609,000 as of December 31, 2004 and 2003, respectively. See Note 3, "Restatement of Consolidated Financial Statements," of the Notes to Consolidated Financial Statements.

| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUAC152160 9.8.18 | PAL saruc0pa | 06-Mar-2007 13:36 EST | | 86507 TX 125 | 2* |
|---|---|---|---|---|---|---|---|
| FORM 10-K | START PAGE | | PAL | | | HTM PMT | 1C |

Page 1 of 1

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

POWER INTEGRATIONS, INC.

Dated: March 6, 2007

By:        /s/   RAFAEL TORRES

Rafael Torres
Chief Financial Officer

125



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUDSK14104 9.6.18 | PAL garcm0pa | 06-Mar-2007 13:38 EST | | 86507 TX 126 | 2* |
| FORM 10-K | START PAGE | | PAL | | | HTM PMT | 1C |
| | | | | | | Page 1 of 1 |

### POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints Balu Balakrishnan and Rafael Torres his true and lawful attorney-in-fact and agent, with full power of substitution and, for him and in his name, place and stead, in any and all capacities to sign any and all amendments to this Report on Form 10-K, and to file the same, with all exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorney-in-fact and agent full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection therewith, as fully to all intents and purposes as he might or could do in person, hereby ratifying and confirming all that said attorney-in-fact and agent, or his substitute or substitutes, may lawfully do or cause to be done by virtue hereof.

PURSUANT TO THE REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, THIS REPORT HAS BEEN SIGNED BY THE FOLLOWING PERSONS ON BEHALF OF THE REGISTRANT AND IN THE CAPACITIES AND ON THE DATES INDICATED.

Dated: March 6, 2007                    By:  /s/  BALU BALAKRISHNAN
                                             Balu Balakrishnan President, Chief Executive Officer
                                             (Principal Executive Officer)

Dated: March 6, 2007                    By:  /s/  RAFAEL TORRES
                                             Rafael Torres
                                             Chief Financial Officer
                                             (Principal Financial and Principal
                                             Accounting Officer)

Dated: March 1, 2007                    By:  /s/  ALAN D. BICKELL
                                             Alan D. Bickell
                                             Director

Dated: March 6, 2007                    By:  /s/  NICHOLAS E. BRATHWAITE
                                             Nicholas E. Brathwaite
                                             Director

Dated: March 5, 2007                    By:  /s/  R. SCOTT BROWN
                                             R. Scott Brown
                                             Director

Dated: March 1, 2007                    By:  /s/  E. FLOYD KVAMME
                                             E. Floyd Kvamme
                                             Director

Dated: March 1, 2007                    By:  /s/  STEVEN J. SHARP
                                             Steven J. Sharp
                                             Director and Chairman of the Board

Dated: March 1, 2007                    By:  /s/  BALAKRISHNAN S. IYER
                                             Balakrishnan S. Iyer
                                             Director

Dated: March 1, 2007                    By:  /s/  JAMES FIEBIGER
                                             James Fiebiger
                                             Director

126



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX9 5.8 | PAL jaslv0dc | 04-Mar-2007 22:23 EST | 86507 TX 127 | 1* |
| FORM 10-K | START PAGE | | PAL | | HTM IFV | 1C |

Page 1 of 1

**POWER INTEGRATIONS, INC.**
**INDEX TO EXHIBITS**
**TO**
**FORM 10-K ANNUAL REPORT**
For the Year Ended
December 31, 2005

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 3.1 | Restated Certificate of Incorporation. (As filed with the SEC as Exhibit 3.1 to our Annual Report on Form 10-K on March 16, 1999, SEC File No. 000-23441.) |
| 3.2 | Certificate of Amendment to Restated Certificate of Incorporation. (As filed with the SEC as Exhibit 3.3 to our Annual Report on Form 10-K on March 22, 2002, SEC File No. 000-23441.) |
| 3.3 | Form of Certificate of Designation, Preferences and Rights of the Terms of the Series A Preferred Stock filed as Exhibit A to the Form of Rights Agreement between us and BankBoston N.A., dated February 24, 1999. (As filed with the SEC as Exhibit 1 to our Current Report on Form 8-K on March 12, 1999, SEC File No. 000-23441.) |
| 3.4 | Amended and Restated Bylaws. (As filed with the SEC as Exhibit 3.1 to our Current Report on Form 8-K on April 22, 2005, SEC File No. 000-23441.) |
| 4.1 | Reference is made to Exhibits 3.1 to 3.5. |
| 4.2 | Fifth Amended and Restated Rights Agreement by and among us and certain of our investors, dated April 27, 1995. (As filed with the SEC as Exhibit 4.1 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441.) |
| 4.3 | Investor's Rights Agreement between us and Hambrecht & Quist Transition Capital, LLC, dated as of May 22, 1996. (As filed with the SEC as Exhibit 4.2 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441.) |
| 4.3 | Rights Agreement between us and BankBoston N.A., dated as of February 24, 1999 (As filed with the SEC as Exhibit 1 to our Current Report on Form 8-K on March 12, 1999, SEC File No. 000-23441.) |
| 4.4 | Amendment to Rights Agreement between us and BankBoston N.A., dated as of October 9, 2001 (As filed with the SEC as Exhibit 4.3 to our Quarterly Report on Form 10-Q on November 9, 2001, SEC File No. 000-23441.) |
| 10.1 | Form of Indemnification Agreement for directors and officers. (As filed with the SEC as Exhibit 10.1 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441.)* |
| 10.2 | 1988 Stock Option Plan and forms of agreements thereunder. (As filed with the SEC as Exhibit 10.2 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441.)* |
| 10.3 | 1997 Stock Option Plan (as amended through January 25, 2005) (as filed with the SEC as Exhibit 10.5 to our Quarterly Report on Form 10-Q on May 6, 2005) and forms of agreements thereunder (as filed with the SEC as Exhibit 10.3 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441).* |
| 10.4 | 1997 Outside Directors Stock Option Plan (as amended through June 6, 2000) (as filed with the SEC as Annex C to our Proxy Statement on April 27, 2000) and forms of agreements thereunder-as filed with the SEC as Exhibit 10.4 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441).* |

127



| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 10.5 | 1997 Employee Stock Purchase Plan (as amended through June 6, 2000) (as filed with the SEC as Annex C to our Proxy Statement on April 27, 2000) and forms of agreements thereunder (as filed with the SEC as Exhibit 10.5 to our Registration Statement on Form S-1 on September 11, 1997, SEC File No. 000-23441).* |
| 10.6 | 1998 Nonstatutory Stock Option Plan. (As filed with the SEC as Exhibit 10.30 to our Quarterly Report on Form 10-Q on May 12, 2003, SEC File No. 000-23441.)* |
| 10.7 | Chief Executive Officer Benefits Agreement between us and Balu Balakrishnan, dated April 25, 2002. (As filed with the SEC as Exhibit 10.14 to our Quarterly Report on Form 10-Q on May 10, 2002, SEC File No. 000-23441.) * |
| 10.8 | Executive Officer Benefits Agreement between us and Derek Bell, dated April 25, 2002. (As filed with the SEC as Exhibit 10.15 to our Quarterly Report on Form 10-Q on May 10, 2002, SEC File No. 000-23441.)* |
| 10.9 | Executive Officer Benefits Agreement between us and Bruce Renouard, dated April 25, 2002. (As filed with the SEC as Exhibit 10.17 to our Quarterly Report on Form 10-Q on May 10, 2002, SEC File No. 000-23441.)* |
| 10.10 | Executive Officer Benefits Agreement between us and John Tomlin, dated April 25, 2002. (As filed with the SEC as Exhibit 10.19 to our Quarterly Report on Form 10-Q on May 10, 2002, SEC File No. 000-23441.)* |
| 10.11 | Executive Officer Benefits Agreement between us and Clifford J. Walker, dated April 25, 2002. (As filed with the SEC as Exhibit 10.20 to our Quarterly Report on Form 10-Q on May 10, 2002, SEC File No. 000-23441.)* |
| 10.12 | Loan Agreement between us and Union Bank of California, N.A., dated as of October 16, 1998. (As filed with the SEC as Exhibit 10.23 to our Annual Report on Form 10-K on March 16, 1999, SEC File No. 000-23441.) |
| 10.13 | First Amendment to Loan Agreement dated October 16, 1998 between us and Union Bank of California, N.A., dated August 1, 2000. (As filed with the SEC as Exhibit 10.29 to our Quarterly Report on Form 10-Q on November 14, 2000, SEC File No. 000-23441.) |
| 10.14 | Wafer Supply Agreement among us and Matsushita Electronics Corporation and Matsushita Electric Industry Co., Ltd., dated as of June 29, 2000. (As filed with the SEC as Exhibit 10.27 to our Quarterly Report on Form 10-Q on November 14, 2000, SEC File No. 000-23441.) |
| 10.15 | Technology License Agreement between us and Matsushita Electronics Corporation, dated as of June 29, 2000. (As filed with the SEC as Exhibit 10.28 to our Quarterly Report on Form 10-Q on November 14, 2000, SEC File No. 000-23441.) |
| 10.16 | Purchase Agreement among us, SPI HO II Associates, L.P., SPI/TSA Arrowhead, LLC, SPI/TSA Chula Vista L.P. and SPI/Braintree Unit 5 Limited Partnership, dated as of April 21, 2003. (As filed with the SEC as Exhibit 10.33 to our Quarterly Report on Form 10-Q on August 7, 2003, SEC File No. 000-23441.) |
| 10.17 | Amended and Restated Wafer Supply Agreement between us and OKI Electric Industry Co., Ltd., dated as of April 1, 2003. (As filed with the SEC as Exhibit 10.31 to our Quarterly Report on Form 10-Q on August 7, 2003, SEC File No. 000-23441.)† |
| 10.18 | Wafer Supply Agreement between us and ZMD Analog Mixed Signal Services GmbH & CoKG, dated as of May 23, 2003. (As filed with the SEC as Exhibit 10.32 to our Quarterly Report on Form 10-Q on August 7, 2003, SEC File No. 000-23441.)† |



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBIJAC152159 8.6.18 | PAL soeus0pa | 06-Mar-2007 23:16 EST | | 86507 TX 129 | 2* |
|---|---|---|---|---|---|---|---|
| FORM 10-K | | | PAL | | | HTM PMT | 1C |
| | | | | | | Page 1 of 1 | |

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 10.19 | Wafer Supply Agreement between us and Matsushita Electric Industrial Co., Ltd., effective as of June 29, 2005. (As filed with the SEC as Exhibit 10.21 to our Current Report on Form 8-K on July 26, 2005, SEC File No. 000-23441.)† |
| 10.20 | 2005 Bonuses; 2006 Bonus Plan, Salaries and Option Grants. (As filed with the SEC in our Current Report on Form 8-K on February 21, 2006, SEC File No. 000-23441.)* |
| 10.21 | Agreement to make a one-time payment of $25,000 to members of the Special Committee. (As filed with the SEC in our Current Report on Form 8-K on March 27, 2006, SEC File No. 000-23441.)* |
| 10.22 | Cash Compensation for Non-Employee Directors* |
| 10.23 | Amendment Number One to the Amended and Restated Wafer Supply Agreement between us and OKI Electric Industry Co., Ltd., effective as of August 11, 2004. (As filed with the SEC as Exhibit 10.22 to our Current Report on Form 8-K on April 18, 2006, SEC File No. 000-23441.)† |
| 10.24 | Confidential Resignation Agreement and General Release of Claims between us and John Cobb, dated June 15, 2006. (As filed with the SEC as Exhibit 10.1 to our Current Report on Form 8-K on June 20, 2006, SEC File No. 000-23441.)* |
| 10.25 | Offer Letter, dated June 30, 2006, between us and Rafael Torres. (As filed with the SEC as Exhibit 10.1 to our Current Report on Form 8-K on July 17, 2006, SEC File No. 000-23441.)* |
| 10.26 | Amendment to Offer Letter, dated July 6, 2006, between us and Rafael Torres. (As filed with the SEC as Exhibit 10.2 to our Current Report on Form 8-K on July 17, 2006, SEC File No. 000-23441.)* |
| 10.27 | Letter Agreement and accompanying election form regarding officer stock option amendments in connection with Section 409A cure, executed December 15, 2006, between us and Balu Balakrishnan.* |
| 10.28 | Letter Agreement and accompanying election form regarding officer stock option amendments in connection with Section 409A cure, executed December 18, 2006, between us and Derek Bell.* |
| 10.29 | Letter Agreement and accompanying election form regarding officer stock option amendments in connection with Section 409A cure, executed December 22, 2006, between us and Bruce Renouard.* |
| 10.30 | Letter Agreement and accompanying election form regarding officer stock option amendments in connection with Section 409A cure, executed December 21, 2006, between us and John Tomlin.* |
| 10.31 | Letter Agreement and accompanying election form regarding officer stock option amendments in connection with Section 409A cure, executed December 21, 2006, between us and Clifford J. Walker.* |
| 10.32 | Acknowledgment and Waiver regarding stock option agreements, dated February 20, 2007, between us and Alan Bickell.* |
| 10.33 | Acknowledgment and Waiver regarding stock option agreements, dated February 20, 2007, between us and Nicholas Brathwaite.* |
| 10.34 | Acknowledgment and Waiver regarding stock option agreements, dated February 20, 2007, between us and R. Scott Brown.* |
| 10.35 | Amendment No. 1 to Nonstatutory Stock Option Agreements for Outside Directors, dated February 20, 2007, between us and Alan Bickell.* |
| 10.36 | Amendment No. 1 to Nonstatutory Stock Option Agreements for Outside Directors, dated February 20, 2007, between us and Nicholas Brathwaite.* |



| POWER INTEGRATIONS, | RR Donnelley ProFile | LANFBU-MWS-CX0P 5.6 | PAL jaslv0dc | 04-Mar-2007 22:23 EST | | 86507 TX 130 | 1* |
| FORM 10-K | | | PAL | | | HTM IFV | 1C |
| | | | | | | Page 1 of 1 | |

| EXHIBIT NUMBER | DESCRIPTION |
| --- | --- |
| 10.37 | Amendment No. 1 to Nonstatutory Stock Option Agreements for Outside Directors, dated February 20, 2007, between us and R. Scott Brown.* |
| 10.38 | 2006 Bonuses to Executive Officers (As filed with the SEC in our Current Report on Form 8-K on February 9, 2007, SEC File No. 000-23441.)* |
| 21.1 | List of subsidiaries. |
| 24.1 | Power of Attorney (See signature page). |
| 31.1 | Certification of Chief Executive Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 31.2 | Certification of Chief Financial Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 32.1 | Certification of Chief Executive Officer pursuant to Section 906 of the Sarbanes-Oxley Act of 2002.** |
| 32.2 | Certification of Chief Financial Officer pursuant to Section 906 of the Sarbanes-Oxley Act of 2002.** |

†    This Exhibit has been filed separately with the Commission pursuant to an application for confidential treatment. The confidential portions of this Exhibit have been omitted and are marked by an asterisk.

*    Indicates a management contract or compensatory plan or arrangement.

**   The certifications attached as Exhibits 32.1 and 32.2 accompany this Annual Report on Form 10-K, are not deemed filed with the SEC, and are not to be incorporated by reference into an filing of Power Integrations, Inc. under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, whether made before or after the date of this Form 10-K, irrespective of any general incorporation language contained in such filing.

130



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUAC152I60 9.9.18 | PAL sarucOpa | 06-Mar-2007 16:58 EST | | 86507 EX10_22 1 | 2* |
| FORM 10-K | START PAGE | | PAL | | | HTM ESS | 1C |

Page 1 of 1

Exhibit 10.22

## Cash Compensation for Non-Employee Directors

Power Integrations non-employee board members shall receive the following cash compensation for the services performed, which cash compensation is cumulative:

Retainers:

| | |
|---|---|
| Service as a non-employee director: | $ 5,000 per quarter |
| Service as chairman of the audit committee: | $ 5,000 per quarter |
| Service as chairman of the compensation committee: | $ 1,875 per quarter |
| Service as chairman of the nominating committee: | $ 1,250 per quarter |

Meeting attendance fees:

| | |
|---|---|
| Board meeting in person: | $ 1,500 |
| Board meeting telephonically: | $ 750 |
| Audit, Compensation, or Nominating Committee meeting in person: | $ 1,000 |
| Audit, Compensation, or Nominating Committee meeting telephonically: | $ 500 |
| One-time Special Committee fees (Messrs. Iyer and Fiebiger): | $25,000 |

In addition, non-employee directors shall be reimbursed for all reasonable travel and related expenses incurred in connection with attending board and committee meetings.



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUAC152160 9.8.18 | PAL saruc0pa | 05-Mar-2007 16:23 EST | 86507 EX10_27 1 | 4* |
|---|---|---|---|---|---|---|
| FORM 10-K | START PAGE | | PAL | image001 | HTM ESS | 1C |

Page 1 of 1

Exhibit 10.27



December 8, 2006

Balu Balakrishnan

Dear Mr. Balakrishnan

Power Integrations, Inc. (the "**Company**") has previously granted you the stock options set forth on the attached <u>Exhibit A</u> (the "**Options**") to purchase shares of the Company's common stock.

## I.    INTRODUCTION

The Company has determined that the grant dates of the Options for federal income tax purposes may have been dates other than the grant dates set forth in the documentation you received in connection with the Options. It is possible, therefore, that the Options were issued with an exercise price that is or may be less than 100% of the fair market value of the stock on the grant date for federal income tax purposes and therefore may be subject to adverse tax consequences under Section 409A of the Internal Revenue Code of 1986, as amended ("**Section 409A**"). These adverse tax consequences likely include, at a minimum, (i) ordinary income tax plus (ii) an additional 20% tax on the intrinsic value of the Option prior to and regardless of whether the Options are ever exercised plus (iii) an additional tax in the nature of interest. These adverse tax consequences apply to the extent that the Options (a) vested after December 31, 2004 and (b) were not exercised or otherwise cancelled on or before December 31, 2005. If a portion of one of your Options was vested as of December 31, 2004, only the unvested portion as of such date is potentially subject to Section 409A. <u>Exhibit A</u> indicates the shares subject to each of your Options that the Company believes are at risk for adverse tax consequences under Section 409A (the "**At Risk Options**").

Based on the currently available guidance and proposed regulations issued in connection with Section 409A, we believe that it is possible to avoid or minimize the potential adverse tax consequences that may apply under Section 409A in respect of your At Risk Options by amending the At Risk Options as to that part of the At Risk Options that remains outstanding and unexercised[1] (the "**Curable Options**")) using either (a) the Amended Exercise Price Approach as described in Section II.A, below or the Amended Exercise Schedule Approach as described in Section II.B, below. We refer to those Curable Options (or portions thereof) that you elect to amend as "**Amended Options**."

---

[1]    Note that to the extent that your At Risk Option is deemed to be beneficially owned by another person (e.g., pursuant to a qualified domestic relations order in favor of your former spouse), you must provide evidence satisfactory to the Company that you have the right to make an election to amend the Curable Options.

1



| POWER INTEGRATIONS, | RR Donnelley ProFile | gsldoc §§ | PAL delol0ma | 01-Mar-2007 07:14 EST | 86507 EX10_27 2 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |
Page 1 of 1

You may also leave your Curable Options unchanged; however, if you elect to leave your Curable Options unchanged, the Company currently intends to treat such options as subject to Section 409A. In addition, the Company intends to treat as subject to Section 409A any portion of your At Risk Options that is not a Curable Option, and make the appropriate filings and tax withholdings on your At Risk Options as required by Section 409A. If you do not return a properly completed election form to the Company on or before December 29, 2006 (the "**Expiration Date**"), you will be deemed to have elected to leave your Curable Options unchanged.

II.    DESCRIPTION OF THE AVAILABLE AMENDMENT ALTERNATIVES

A.    THE AMENDED EXERCISE PRICE APPROACH

If you select the Amended Exercise Price Approach for a Curable Option, you are agreeing to increase the exercise price of the Curable Option to be equal to 100% of the fair market value of the Company's common stock on the date the Company is using as the measurement date for such Curable Option for the purposes of preparing its financial statements (the "**Amended Exercise Price**"). Such Amended Exercise Price is shown on **Exhibit A**. All other terms and conditions of the Curable Option will remain the same.[2]

B.    THE AMENDED EXERCISE SCHEDULE APPROACH

1. If you select the Amended Exercise Schedule Approach, you are agreeing to change the exercise (but not the vesting) schedule applicable to the Curable Options to provide that the At Risk Option may not be exercised as to the Curable Options prior to the earliest to occur of:

(i) the termination of your service with the Company for any reason,

(ii) your death,

(iii) your suffering a "disability" (as defined under Section 409A),

(iv) a "change in control" of the Company (as defined under Section 409A), or

(v) January 1 of one or more calendar years specified by you (with such year(s) not earlier than 2007 and not later than the year in which your At Risk Option will expire) (collectively such specified calendar years, the "**Selected Years**," and each a "**Selected Year**") (this amendment alternative, the "**Amended Exercise Schedule**").[3] For each Curable Option, you may elect more than one Selected Year, making such

---

[2]    It should be noted that all At Risk Options will be deemed to be nonqualified stock options whether or not the option is amended pursuant to this offer and whether or not the option originally purported to be an incentive stock option.
[3]    The Compensation Committee of our Board of Directors will determine whether and when any of the events set forth in (i) through (iv) has occurred.

2



option exercisable pursuant to a schedule adopted now. For example, assuming you had a fully vested Curable Option, you could elect an Amended Exercise Schedule making 50% of the Curable Option Exercisable in 2007 and 50% exercisable in 2008.

    2.    If you elect to amend a Curable Option to reflect an Amended Exercise Schedule:

    (i) The Amended Exercise Schedule does not change the vesting schedule for your Curable Options. If a Curable Option is not fully vested at the time of your election and you choose more than one Selected Year, then shares will be allocated among the Selected Years based on vesting status to the greatest extent possible, with currently vested shares being allocated to the earliest Selected Year(s) and unvested shares allocated to the latest Selected Year(s). For example, if the Curable Option that you tender covers 400 shares, and is currently vested as to 100 shares, and you wish to select 2007 as the Selected Year as to 50 shares, 2008 as the Selected Year as to 100 shares, and 2009 as the Selected Year as to the remaining 250 shares, your Amended Option covering 50 shares will be fully vested as of the date your Curable Option is amended pursuant to the terms described herein, your Amended Option covering 100 shares will be 50% vested as of the Amendment Date, and your Amended Option covering 250 shares will be completely unvested as of the Amendment Date, and any future vesting will be deemed to occur as to the 100 share portion of the option prior to the 250 share portion of the option.

    (ii) The exercise price of the Amended Option will not change. Instead, the Amended Option will no longer be exercisable (to the extent currently exercisable), and generally will only become exercisable again, if at all, on the date of the earliest to occur of the events described above under the Amended Exercise Schedule.

    (iii) If your Amended Option becomes exercisable as a result of an event under the Amended Exercise Schedule other than the start of your Selected Year(s), your Amended Option generally will be exercisable only until the earlier of (a) the date the underlying Curable Option would cease to be exercisable in accordance with its terms (including upon the expiration of the three month post-termination exercise period applicable the underlying Curable Option) or (b) the later of (x) December 31 of the year in which the event occurs or (y) the 15th day of the third calendar month following the date on which the event occurs. However, you should be aware that if the event that triggers the right to exercise your Amended Option is a change in control of the Company, then, subject to the terms of the stock plan under which the underlying Curable Option was granted, the transaction agreement between the Company and the acquiring entity may provide for the termination of your Amended Option upon the consummation of the change in control (notwithstanding the terms of your Amended Exercise Schedule).

    (iv) If the first event to occur is January 1 of your only Selected Year, your Amended Option generally will expire not later than December 31 of the Selected Year. If your Amended Exercise Schedule includes more than one Selected Year, then your Amended Option generally will expire in traunches pursuant to your Amended Exercise Schedule, not later than December 31 of each of the Selected Years. In all cases, if you

3



| POWER INTEGRATIONS, | RR Donnelley ProFile | geldoc §§ | PAL delol0ma | 01-Mar-2007 07:14 EST | | 86507 EX10_27 4 | 1* |
| FORM 10-K | | | PAL | | | HTM IFV | 1C |
| | | | | | | Page 1 of 1 | |

select the last calendar year of the current term of the underlying Curable Option as your Selected Year, you will not have the full calendar year to exercise your Amended Option, as you will remain subject to the existing expiration date of the underlying Curable Option.[4]

(v) If you incur a termination of your service with the Company and you are a member of senior management who is determined to be a "specified employee" (as defined under Section 409A) at the time of the termination, Section 409A generally requires us to implement a six month delay in the exercisability of your Amended Option. Therefore, to the extent reasonably necessary to comply with Section 409A, you may only exercise your Amended Option during the three-month period commencing on the first business day that is more than six months after your termination date. The Company will advise you at the time of your termination of service with the Company as to the period of time during which you may exercise your Amended Option.

(vi) Except as provided in Section II.B.2(v) above, an election to amend a Curable Option to reflect an Amended Exercise Schedule will not extend the period in which you may exercise the Amended Option. Except as provided in Section II.B.2(v) above, such election will have the sole effect of limiting the period(s) during which you may exercise the Amended Option.

3. Except as set forth in this Section II.B and Section III below, the remaining terms and conditions of your At Risk Options, including the portions that are Amended Options, will remain the same.[5]

## III.   PROVISIONS APPLICABLE REGARDLESS OF THE APPROACH SELECTED

You will receive no compensatory payments in connection with the amendment of any Curable Options.

You do not have to agree to amend any of your Curable Options. If you elect to amend more than one of your Curable Options, you may elect to amend one (or more) option(s) to reflect the Amended Exercise Price and one (or more) option(s) to reflect the Amended Exercise Schedule.

If you accept this offer to amend one or more of your Curable Options, such amendment will be effective as of the date on which you accepted this offer. The Company will issue you an amended option agreement for each Amended Option reflecting the amended terms and conditions. The amendment of your At Risk Options as to the Curable Options

---

[4]   You should be aware that a termination of employment in the last year of an option may result in the option not being exercisable for 6 months. If such termination were to occur less than six months prior to the termination date for the option, you may not be permitted to exercise such option and the option might expire unexercised. See Section II.B.2(v).

[5]   It should be noted that all At Risk Options will be deemed to be nonqualified stock options whether or not the option is amended pursuant to this offer and whether or not the option originally purported to be an incentive stock option.

4



| POWER INTEGRATIONS, | RR Donnelley ProFile | eaidoc | PAL delol0ma | 01-Mar-2007 07:14 EST | 86507 EX10_27 5 | 1* |
| FORM 10-K | | | PAL | | HTM IFV | 1C |
| | | | | | Page 1 of 1 | |

will not materially affect the terms and conditions of the other option shares subject to the At Risk Options. This letter, and any amendment of your Curable Options, does not modify the at will nature of your service with the Company.

Please note that even if you accept this offer to amend your Curable Options, and regardless of the alternative that you choose, your ability to exercise your Amended Options will remain subject to compliance with applicable laws and requirements (including any legal limitations, requirements or restrictions arising from the Company's legal situation in relation to its equity compensation practices) and the Company's policies on trading in Company securities. In addition, in no event may you exercise your Options as to unvested shares.

Whether or not you choose to accept this offer, your Options will be deemed to be nonqualified stock options for federal income tax purposes and not incentive stock options.

Finally, while we believe that the acceptance of this offer should result in the avoidance of the potential adverse tax consequences under Section 409A with respect to the Amended Options, such interpretation is not free from doubt. Certain states have adopted tax laws that are similar in effect to Section 409A and we make no representations as to the effect of this offer under federal tax laws or such state tax provisions. In all cases, you will be solely responsible for any taxes, penalties, or interest payable under Section 409A (and any state laws of similar effect) in connection with your Options. Before deciding whether to accept our offer to amend your Curable Options, you are strongly encouraged to consult with your personal tax, financial and legal advisors.

IV.  PROCEDURE TO ACCEPT OFFER

If you wish to accept this offer, you must complete the Election Form attached to this letter as <u>Exhibit B</u> and return it to Rafael Torres on or before the Expiration Date.

V.   CIRCULAR 230 DISCLAIMER.

The following disclaimer is provided in accordance with the Internal Revenue Service's Circular 230 (21 CFR Part 10). This advice is not intended or written to be used, and it cannot be used, by you for the purpose of avoiding any penalties that may be imposed on you. This advice was written to support the promotion or marketing of amending your Curable Options as set forth in this letter. You should seek advice based on your particular circumstances from an independent tax advisor.

Sincerely,

/s/ Rafael Torres
_____
Rafael Torres
Chief Financial Officer and
Vice President, Finance and Administration

5



| POWER INTEGRATIONS, | RR Donnelley ProFile | PALFBUAC152160 9.8.18 | PAL sarucOpa | 05-Mar-2007 16:24 EST | | 86507 EX10_27 6 | 2* |
| FORM 10-K | | ■ | PAL | | | HTM ESS | 1C |
| | | | | | | Page 1 of 1 | |

## EXHIBIT A

### OPTIONS

| GRANT NUMBER | OPTION PRICE (ORIGINAL) | AMENDED EXERCISE PRICE | EXPIRATION DATE (ORIGINAL) | TOTAL SHARES UNDER OPTION | CURABLE OPTIONS |
|---|---|---|---|---|---|
| 1246 | $12.10 | $16.00 | 5/30/11 | 8,264 | 861 |
| 1247 | $12.10 | $16.00 | 5/30/11 | 291,736 | 30,390 |
| 2077 | $14.82 | $21.20 | 2/20/12 | 6,747 | 1,968 |
| 2078 | $14.82 | $21.20 | 2/20/12 | 193,253 | 56,366 |
| 2170 | $17.75 | $18.95 | 1/7/13 | 5,633 | 2,934 |
| 2171 | $17.75 | $18.95 | 1/7/13 | 294,367 | 153,317 |

6



| POWER INTEGRATIONS, | RR Donnelley ProFile | galdoc<br>§6 | PAL delol0ma | 01-Mar-2007 07:14 EST | 86507 EX10_27 7 | 1* |
| FORM 10-K | | | ◼ PAL | | HTM IFV | 1C |
| | | | | | | Page 1 of 1 |

## EXHIBIT B

### ELECTION FORM

I elect to amend the following At Risk Options to increase the current exercise price to the Amended Exercise Price as to all of the Curable Options subject to these At Risk Options:

| GRANT NUMBER | OPTION PRICE (ORIGINAL) | AMENDED EXERCISE PRICE |
|---|---|---|
| 2170 | $17.75 | $18.95 |
| 2171 | $17.75 | $18.95 |

I elect to amend the following At Risk Options to reflect an Amended Exercise Schedule as to all of the Curable Options subject to these At Risk Options:

| GRANT NUMBER | OPTION PRICE (ORIGINAL) | SELECTED YEAR | NUMBER OF CURABLE OPTIONS TO BE EXERCISABLE IN SELECTED YEAR* |
|---|---|---|---|
| 1246 | $12.10 | 2007 | 861 |
| 1247 | $12.10 | 2007 | 15,000 |
| 1247 | $12.10 | 2008 | 15,390 |
| 2077 | $14.82 | 2007 | 1,968 |
| 2078 | $14.82 | 2007 | 25,000 |
| 2078 | $14.82 | 2008 | 31,366 |

\* If you choose to have an At Risk Option fully exercisable within a single calendar year, then this column should be equal to the number of "Curable Options" for that At Risk Option. If you choose to amend an At Risk Option such that its exercise schedule is split among two or more years, the sum of the entries in this column should be equal to the number of Curable Options for each At Risk Option.

7