1

117

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., ) Trial Volume II
                          )
        Plaintiff,        )
                          ) C.A. No. 04-1371-JJF
v.                        )
                          )
FAIRCHILD SEMICONDUCTOR   )
INTERNATIONAL, INC., and  )
FAIRCHILD SEMICONDUCTOR   )
CORPORATION,              )
                          )
        Defendants.       )

COPY

                Monday, September 24, 2007
                11:40 a.m.
                Courtroom 4B


                844 King Street
                Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge




APPEARANCES:


         FISH & RICHARDSON
         BY:  WILLIAM J. MARSDEN, JR., ESQ.
         BY:  FRANK E. SCHERKENBACH, ESQ.
         BY:  HOWARD G. POLLACK, ESQ.
         BY:  MICHAEL R. HEADLEY, ESQ.


                Counsel for the Plaintiff

118

```
 1    APPEARANCES CONTINUED:

 2

 3

 4         ASHBY & GEDDES
           BY:  JOHN G. DAY, ESQ.
 5
                  -and-
 6
           ORRICK, HERRINGTON & SUTCLIFFE, LLP
 7         BY:  G. HOPKINS GUY, III, ESQ.
           BY:  WILLIAM L. ANTHONY, ESQ.
 8         BY:  VICKIE FEEMAN, ESQ.
           BY:  BAS de BLANK, ESQ.
 9         BY:  BRIAN VANDERZANDEN, ESQ.

10                    Counsel for the Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

159

1    provided during the prosecution of the '366

2    patent as well?

3         A.   My opinion is that it should have

4    been because the '366 patent, soft start patent,

5    includes dependent claims that deal with

6    frequency variation.  And the '851 conversely

7    has dependent claims that deal with soft start.

8    So the prior art cited for the '851 patent

9    should have been provided for the prosecution of

10   the '366 patent, and vice versa.

11        Q.   So just to be clear, then, with

12   respect to the prior art and information you

13   testified should have been provided to the

14   patent office during the prosecution of the '366

15   soft start patent, what is your opinion as to

16   whether that art should also have been provided

17   during the prosecution of the '851 patent?

18        A.   Yes.  As I just said, the '366 is

19   about soft start, the '851 has dependent claims

20   about soft start, the prior art relevant to the

21   '366 is relevant also to the '851 and should

22   have been provided.

23             MR. DE BLANK:  Thank you,

24   Dr. Horowitz.  We have no further questions at

160

1    this time.

2              MR. POLLACK:  Your Honor, this is

3    Howard Pollack and hopefully I will be ably

4    assisted by William Marsden.  We just have a few

5    questions for Dr. Horowitz.

6              CROSS-EXAMINATION

7    BY MR. POLLACK:

8              Q.   Dr. Horowitz, can you hear me

9    okay?

10             A.   Yes, I can, Mr. Pollack.

11             Q.   Dr. Horowitz, can you confirm for

12   me that as of the time you submitted your second

13   expert report on validity in this case in

14   December of 2006, at that point in time you

15   hadn't reviewed all of the prior art that was

16   cited to the patent office in the '366

17   prosecution; correct?

18             A.   That is correct.

19             Q.   And that is true also of the '851

20   patent; right?

21             A.   That is correct.

22             Q.   And also I just want to be clear,

23   Dr. Horowitz, you have not provided any opinions

24   today in any way related to the '876 patent;

161

1    right?

2            A.    That's correct.

3            Q.    Okay.    A couple of questions about

4    the '851 patent, Dr. Horowitz.    And if you will

5    just take a look at the patent itself, I believe

6    you have it there in front of you.

7            A.    Give me just a moment.    Yes.

8            Q.    And looking at Figure 1 of the

9    '851 patent.

10           A.    Yes.

11           Q.    Figure 1 shows an external signal

12   for varying frequency; correct?

13           A.    That is correct.

14           Q.    And so if the Court's construction

15   is correct that a frequency variation signal

16   recited in the claims of the patent must be

17   internal, that's not shown in Figure 1; right?

18           A.    That's correct.    But I'm a little

19   mystified because we're talking here about the

20   prosecution history as I understand it, not

21   about invalidity or infringement.

22           Q.    And Dr. Horowitz, it's true that

23   the text of the patent, the '851 patent itself

24   distinguishes what's shown in Figure 1 as using

162

1    a external signal and says that's different from

2    the internal signal of the invention; right?

3              A.    Yes.

4              Q.    Now, if you will turn to Figure 3

5    of the patent.

6              A.    Yes.

7              Q.    And that shows an embodiment of

8    the claimed frequency variation circuit;

9    correct?

10              A.    Yes, it does.

11              Q.    Okay.  Now, in that circuit, it's

12    true that the frequency of the oscillation

13    signal of what's called the main oscillator,

14    that varies with the frequency variation signal;

15    correct?

16              A.    Yes, that's correct.

17              Q.    Okay.  And it's also true that the

18    DC Max, there is a maximum duty cycle signal,

19    the frequency of that signal also varies with

20    the frequency variation signal; right?

21              A.    Yes, they both are the same

22    frequency.

23              Q.    Okay.  Now, you will agree, won't

24    you, that there were PWM controllers that

187

```
1    State of Delaware )
                       )
2    New Castle County )

3

4

5             CERTIFICATE OF REPORTER

6

7         I, Heather M. Triozzi, Registered

8    Professional Reporter, Certified Shorthand Reporter,

9    and Notary Public, do hereby certify that the

10   foregoing record, Pages 117 to 187 inclusive, is a

11   true and accurate transcript of my stenographic notes

12   taken on September 24, 2007, in the above-captioned

13   matter.

14

15        IN WITNESS WHEREOF, I have hereunto set my

16   hand and seal this 24th day of September, 2007, at

17   Wilmington.

18

19

20        _____

21        Heather M. Triozzi, RPR, CSR
          Cert. No. 184-PS
22

23

24
```

2

# EXHIBIT REDACTED
# IN ITS ENTIRETY

3

# EXHIBIT REDACTED
# IN ITS ENTIRETY

4

# EXHIBIT REDACTED
# IN ITS ENTIRETY

5

# EXHIBIT REDACTED
# IN ITS ENTIRETY

6

*Power Integrations, Inc.   v.*
*Fairchild Semiconductor International, Inc.*

*Trial Volume 1*
*October 2, 2006*

*Hawkins Reporting Service*

*715 N King Street*

*Suite 3*

*Wilmington, DE  19801*

*(302) 658-6697*

*Original File 100206~1.TXT, 296 Pages*
*Min-U-Script® File ID: 2756634309*

**Word Index included with this Min-U-Script®**

Power Integrations, Inc.  v.
Fairchild Semiconductor International, Inc.

Trial Volume 1
October 2, 2006

Page 273

[1] A: Yeah. I mentioned earlier that
[2] the switching power supplies operate at high
[3] frequency. These high-frequency signals add to
[4] the electromagnetic interference also known as
[5] EMI of the power supply, and in fact, are the
[6] largest contributor to EMI of the power supply.
[7] The EMI generated by the power
[8] supply can cause problems for communications
[9] devices in the vicinity of the power supply such
[10] as radios, TVs and so on.
[11] Further, the radiated EMI by the
[12] power supply can interfere with radio and
[13] television transmissions that are transmitted
[14] over the air by various entities. So what this
[15] is saying is the noise or interference can
[16] travel through the power line, but it also — it
[17] can travel through air and interfere with other
[18] devices.
[19] Q: Before your invention of the '851
[20] patent, did people deal with this EMI problem?
[21] A: Yes, they did.
[22] Q: And how did they deal with it
[23] before your invention?
[24] A: By using a expensive and large EMI

Page 274

[1] filter to filter out this interference.
[2] Q: Does the invention of the '851
[3] patent have some advantages over that?
[4] A: Yes. It makes the — it reduces
[5] the EMI so that I don't need as much filtering,
[6] which reduces the cost of the power supply.
[7] Q: Okay. I'd like to show you one of
[8] the figures from the patent, Figure 3.
[9] Can you briefly explain to us how
[10] the Integrated Frequency Jitter invention works
[11] with reference to this figure?
[12] A: Sure. This is the main
[13] oscillator, which generates the switching signal
[14] to switch the high-voltage transistor I talked
[15] about.
[16] There is another oscillator which
[17] produces a very, very slow frequency, a very
[18] slow ramp that is actually — it would just call
[19] the frequency variation signal, which is just
[20] called — that is connected to control the main
[21] oscillator such that the frequency of the main
[22] oscillator is slowly varied back and forth
[23] around the normal frequency.
[24] You can think of it as wiggling

Page 275

[1] the frequency. That's why they call it jitter.
[2] Q: Put up Figure 5 from the patent.
[3] Does this describe what you just said?
[4] A: Yes. This is the low-frequency
[5] triangular signal.
[6] So one thing to notice, that is
[7] very well controlled, so which means that it
[8] determines what the minimum and the maximum
[9] frequencies are and also is repeatable. It's
[10] repeated.
[11] And when the lines are close
[12] together, that means the frequency is higher.
[13] When the lines are further apart, the frequency
[14] is lower.
[15] So the frequency goes between the
[16] maximum frequency to the minimum frequency back
[17] and forth.
[18] Q: In addition to the low-frequency
[19] oscillator we just looked at creating that
[20] frequency variation signal, does the patent
[21] describe any other possibilities?
[22] A: Well, you can use different types
[23] of low-frequency signal. It doesn't have to be
[24] a triangular wave form.

Page 276

[1] It could be a ramp wave form. It
[2] could also be other types of wave forms, like a
[3] counter can be used to generate a variation
[4] signal.
[5] Q: Is that specifically recited in
[6] the patent?
[7] A: Yes, it is.
[8] Q: I'm just going to put up 34 to 38.
[9] Is that just what you referring to?
[10] A: It says, Although the presently
[11] preferred frequency variation signal 400 is a
[12] triangular wave form, alternate frequency
[13] variation signals such as ramp signals, counter
[14] output signals or other signals that vary in
[15] magnitude during a fixed period of time, it may
[16] be utilized as the frequency variation signal.
[17] Q: If you would turn to PX 326 in
[18] your book. Do you recognize that exhibit?
[19] A: Yes, I do.
[20] Q: And what is that exhibit?
[21] A: It is the invention disclosure
[22] form that we use at Power Integrations.
[23] Q: I'll just put up as Plaintiff's
[24] Demonstrative PD 216, the first front page of

Trial Volume 1
October 2, 2006

Power Integrations, Inc.    v.
Fairchild Semiconductor International, Inc.

Page 277

[1] exhibits PX-326. What's an invention disclosure
[2] form?
[3]    A: It's a form they use to document
[4] new ideas that may be patentable and then also
[5] document who invented it and when it was
[6] invented.
[7]    Q: Does this particular invention
[8] disclosure form relate to the 851 patent?
[9]    A: Yes. You can see that it says
[10] frequency jitter for offline PWM switch.
[11]    Q: And when did you and your
[12] co-inventors come up with the integrated
[13] frequency jitter idea?
[14]    A: The date of the invention is
[15] 8/26/97. That is August 26th, '97. I just want
[16] to make one more comment. The same invention
[17] form is also its invention disclosure form for
[18] the '366, patent that's why you see two
[19] different inventions here.
[20]    Q: Now, if you'll turn to the second
[21] page of the form and I'll put it up here, it
[22] refers to something called the TOPSwitch III.
[23] What is that?
[24]    A: TOPSwitch III was the name given

Page 278

[1] to the TOPSwitch FX project early on. Then when
[2] we realize that TOPSwitch FX was so much, such a
[3] big advance over TOPSwitch II, we decided to
[4] give it a different name, something more
[5] fancier.
[6]    Q: Now, if you'll turn to page PIF
[7] 63319 in the invention disclosure form. I have
[8] it up there on the screen, PD 218. What is this
[9] showing?
[10]    A: This is showing the circuitry we
[11] used to implement the frequency jittering.
[12]    Q: And is what's shown here what's
[13] actually used in the Power Integrations
[14] TOPSwitch FX part?
[15]    A: Yes.
[16]    Q: What did you do with its invention
[17] disclosure form after you prepared it?
[18]    A: We gave it to our attorneys to
[19] prepare a patent application.
[20]    Q: If you please turn to PX 34. What
[21] is Exhibit PX 34?
[22]    A: It is a data sheet for TOPSwitch
[23] FX and a data sheet a specification of the
[24] product that we give out to customers so that

Page 279

[1] they can understand how its product operates and
[2] so that they can design with it.
[3]    Q: And with regard to the TOPSwitch
[4] FX product, what actual product numbers are
[5] included within that?
[6]    A: This includes TOPSwitch 2232
[7] through 2234.
[8]    Q: And does the data sheet for the FX
[9] refer to the Integrated Frequency Jitter
[10] invention?
[11]    A: Yes. It actually does it right on
[12] the front page.
[13]    You can see on the product
[14] highlights, which is on the front page,
[15] frequency jittering reduces EMI and EMI
[16] filtering costs.
[17]    Q: And does the data sheet describe
[18] the feature in any more detail?
[19]    A: Yes. Actually if you go inside
[20] the data sheet, the function on this description
[21] section shows a diagram, and also explains how
[22] this frequency jittering works.
[23]    Here's your triangular wave form
[24] and here is the frequency of the main oscillator

Page 280

[1] changing according to this well-controlled wave
[2] form that is repeating.
[3]    And this explains that the EMI
[4] level is reduced by jittering. The frequency,
[5] plus or minus 4 kilohertz at 250 Megahertz rate.
[6]    Q: Just for the record, we are
[7] looking at PD-220 from PX-34 at PIF 3748.
[8]    Does the data sheet describe the
[9] benefits of the frequency jitter?
[10]    A: Yes. That is actually the figure
[11] that shows the benefits of jittering.
[12]    So on the top, you have a
[13] TOPSwitch II device which, of course, does not
[14] have jitter. And then in the same power supply,
[15] we place the TOPSwitch FX device. And you can
[16] see, there's a big difference in the
[17] interference noise.
[18]    Q: Is the invention of the '581
[19] patent also use in the TOPSwitch GX?
[20]    A: Yes, it is.
[21]    Q: If you'll turn to PX-35 in your
[22] book, what's that exhibit?
[23]    A: This is the TOPSwitch GX family
[24] data sheet.

Trial Volume 1
October 2, 2006

Power Integrations, Inc.    v.
Fairchild Semiconductor International, Inc.

Page 293

[1]    THE COURT: But I don't want you
[2] losing any sleep worrying about that half a
[3] pickup truck, either.
[4]    MR. MARSDEN: Thank you.
[5]    THE COURT: Can you get them to
[6] them — when's this witness coming on?
[7]    MR. SCHERKENBACH: We're calling
[8] Mr. Conrad, who relied on the opinions, as our
[9] last witness, so probably Wednesday morning. I
[10] don't know that we'll get to him late tomorrow.
[11]    THE COURT: So if you can get them
[12] to them by tomorrow, say, at 6:00 p.m.
[13]    MR. GUY: Yes, Your Honor.
[14] One other matter. Given the time
[15] frame today, what is the expectation to close on
[16] Friday? I mean, is that —
[17]    THE COURT: Well, I don't know how
[18] much time has been used. We probably used about
[19] four hours today.
[20]    You have 20 — no, you have 12 or
[21] 14 hours each.
[22]    MR. SCHERKENBACH: Twelve hours
[23] each side, not counting closing. But it works
[24] out that we should be done by Friday.

Page 294

[1]    THE COURT: So you should be
[2] closing sometime on Friday, then, at that rate.
[3] We go from 9:30 to 5:00.
[4]    Six hours of trial time a day.
[5] That would mean if you used four hours, now
[6] there's 20.
[7]    That's Tuesday, Wednesday,
[8] Thursday and maybe an hour or so on Friday. So
[9] you should anticipate, I would say, summing up
[10] sometime around mid-day Friday, unless I'm off.
[11]    MR. GUY: One last issue, Your
[12] Honor. In your Markman memorandum order, both
[13] the construction of MOS and the construction of
[14] within the substrate was tabled.
[15]    I think after we've had the
[16] discussions this morning on DMOS, we do need a
[17] construction on that. We can take that up
[18] perhaps at the time for considering jury
[19] instruction.
[20]    THE COURT: Right. But you know
[21] what you should do before then so that both your
[22] position will be clear to me and depending on my
[23] ruling it's clear that there's an appeal, what
[24] I'd ask you to do is, and I don't want you to

Page 295

[1] spend a lot of time writing some formalistic
[2] brief or memorandum.
[3]    But if you could open with a
[4] letter setting out what you're requesting and
[5] then you could respond to it, and then we'll
[6] give it a docket item, and I would caption it
[7] Request for Claim Interpretation. And that way
[8] the issue will be properly presented in the, you
[9] know, present time frame.
[10]    MR. GUY: Thank you, Your Honor.
[11]    THE COURT: And, you know, the
[12] sooner you get it to me, the sooner I'll read it
[13] and you'll get an answer.
[14]    MR. GUY: Thank you.
[15]    MR. SCHERKENBACH: I don't have
[16] anything further.
[17]    THE COURT: All right. Then we
[18] will be in recess until 9:30 tomorrow morning.
[19]    (Court was recessed at 5:13 p.m.)
[20]
[21]
[22]
[23]
[24]

Page 296

[1]  State of Delaware                    )
[2]  New Castle County )
[3]
[4]
[5]        CERTIFICATE OF REPORTER
[6]
[7]    I, Heather M. Triozzi, Registered
[8] Professional Reporter, Certified Shorthand Reporter,
[9] and Notary Public, do hereby certify that the
[10] foregoing record, Pages 1 to 296 inclusive, is a true
[11] and accurate transcript of my stenographic notes
[12] taken on October 2, 2006, in the above-captioned
[13] matter.
[14]
[15]    IN WITNESS WHEREOF, I have hereunto set my
[16] hand and seal this 2nd day of October, 2006, at
[17] Wilmington.
[18]
[19]
[20]
[21]        Heather M. Triozzi, RPR, CSR
[22]
[23]
[24]

7

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Michael R. Headley
(650) 839-5139

Email
headley@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA FACSIMILE & U.S. MAIL**
650/614-7401

October 18, 2007

Gabriel M. Ramsey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

Re:  Power Integrations Inc. v. Fairchild Semiconductor Int'l
     USDC-D. Del. - C.A. No. 04-1371-JJF



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Gabe:

We have reviewed your designations and list of exhibits regarding your allegations of inequitable conduct, and none contain any evidence related to any claim regarding the '876 patent.  Nor did you elicit any testimony from any witness during the inequitable conduct or validity portions of the trial that relates in any way to a claim of inequitable conduct with respect to this patent.  As such, we infer that Fairchild has withdrawn its contention that there was any inequitable conduct with respect to the '876 patent.  Please let us know by noon Pacific tomorrow if our understanding is correct or if Fairchild does, in fact, intend to press this contention.

Sincerely,

Michael R. Headley

50443903.doc

10/18/2007 14:03 FAX 6508395071          FISH & RICHARDSON                    ☑001

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO            3038
CONNECTION TEL      #10256#000453531#6147401
CONNECTION ID
ST. TIME            10/18 14:02
USAGE T             00'39
PGS. SENT           2
RESULT              OK
```



# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

|  |  |
|---|---|
| **Date** | October 18, 2007 |
| **To** | Gabriel M. Ramsey |
|  | Associate |
|  | Orrick, Herrington & Sutcliffe LLP – Menlo Park |
|  | 1000 Marsh Road |
|  | Menlo Park, CA |
|  | Telephone: (650) 614-7400 |
| **Facsimile number** | 10256-00453531 / (650) 614-7401 |
| **From** | Michael R. Headley |
| **Re** | Power Integrations, Inc. v. Fairchild Semiconductor International |
| **Number of pages including this page** | 2 |
| **Message** | See attached. |

8



ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA  94025
tel 650-614-7400
fax 650-614-7401
WWW.ORRICK.COM

October 19, 2007

G. Hopkins Guy
(650) 614-7452
hopguy@orrick.com

**VIA EMAIL AND U.S. MAIL**

Howard Pollack
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94036

Re:   Power Integrations v. Fairchild Semiconductor et al. (CA 04-1371 JJF)

Dear Howard:

I write concerning the briefing schedule on the various post-trial motions that the parties may file. Since many of the issues to be briefed are interrelated such that resolution of one issue may impact others, it is imperative for the parties to determine a sensible order of issues to be raised.

With respect to inequitable conduct, we agree that the Court should schedule a hearing on our motion. We do not agree, however, that such a hearing should necessarily be set during the Court's monthly discovery motion calendar, in which each party is only allocated twenty minutes to argue and respond to questions from the Court. Therefore, we do not see a need to schedule the briefing around the December, 2007 discovery hearing date. Instead, we propose the following compromise between our initial proposal and Michael Headley's October 18, 2007 letter:

On **November 5, 2007,** Fairchild files its Opening Brief, Proposed Findings of Fact, and Conclusions of Law

On **November 21, 2007,** Power Integrations files its Answering Brief, Objections to Fairchild's Proposed Findings of Fact and Conclusions of Law, and submits any Counter Proposed Findings of Fact and Conclusions of Law.

On **December 5, 2007,** Fairchild files its Reply Brief, Objections to Power Integrations' Counter Proposed Findings of Fact and Conclusions of Law, and Counter-Counter Proposed Findings of Fact and Conclusions of Law (if necessary).

Please let me know if this schedule is acceptable. The parties would then have a hearing on this issue at the convenience of the Court in early December.

Further, Mr. Headley wrote to inquire whether Fairchild was asserting that the '876 Patent is unenforceable due to Power Integrations' inequitable conduct. As set forth in our answer, we believe that all four of Power Integrations' patents are unenforceable.

With respect to Power Integrations' Motion for Permanent Injunction, we need to discuss the evidentiary hearing on the factors set forth in the eBay. We believe that several of these factors will require evidence that was not presented at the hearings. We propose that the parties jointly request a hearing date at the Court's convenience.



**ORRICK**

Howard Pollack
Page 2

Furthermore, the issue of a permanent injunction can only be resolved after the Court addresses the issue of Power Integrations' inequitable conduct and the various other post-trial motions that the parties will file. For instance, the adequacy of damages and Power Integrations' inequitable conduct supporting "unclean hands" for example.

Fairchild will file its motions for judgment as a matter of law and motion for new trial within the 10 day period set by the Federal Rules of Civil Procedure after entry of judgment. We propose that the parties agree on a briefing schedule based on the entry of judgment:

Ten days after entry of judgment, the parties to file JMOLs and motion for new trial and all other post-trial motions:

Within three weeks thereafter, the parties shall file their Answering or Opposition Briefs;

Within two weeks thereafter, the parties shall file their Reply Briefs.

Please let me know whether this is acceptable.

In the draft of the Motion served on Fairchild, Power Integrations claims that various non-accused devices practice some unspecified claim or claims of the asserted patents. Since Power Integrations concedes in its motion that it has not reviewed schematics or other technical documents necessary for it to determine whether or not these devices infringe, we do not understand how Power Integrations could have a Rule 11 basis to request such an injunction. Please withdraw this portion of Power Integrations' Motion or provide the Rule 11 basis for the assertion (including the claims allegedly infringed by each previously non-accused device).

Finally, Mr. Headley's letters suggest that Power Integrations intends to file a motion for an accounting and increased damages. Like the motion for a permanent injunction, we believe that such a motion is premature and can only be addressed after the Court has resolved the parties various post-hearing briefs (for instance, the accounting will be radically different depending on which patents are found unenforceable or whether damages are properly limited to U.S. activity). Therefore, we suggest that the briefing on this issue be the same as the briefing for the issue of permanent injunction.

Clearly, there are a number of issues upon which the parties should meet and confer and seek to agree. We propose to have a conference call Monday afternoon after 1:30 p.m. (PST). Please let me know if you are available to discuss these issues.

Sincerely,

*Hopkins Guy*

G. Hopkins Guy, III



ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* 650-614-7400
*fax* 650-614-7401
WWW.ORRICK.COM

**FAX TRANSMISSION**

DATE     October 19, 2007

NO. OF PAGES
(INCLUDING COVER SHEET)     **3**

**FROM**

| *name* | *tel* |
|---|---|
| G. Hopkins Guy, III | 650-614-7323 |

**TO**

| *name* | *company/firm* | *tel* | *Fax* |
|---|---|---|---|
| Howard Pollack | FISH & RICHARDSON P.C. | | 650.839.5071 |

RE     *Power Integrations v. Fairchild Semiconductor et al*

MESSAGE

Please see attached.

C-M-A     10414-25 (7584)

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL MIMI SAGMIT AT (650) 614-7451 AS SOON AS POSSIBLE.

*notice to recipient*

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE SENT ONLY TO THE STATED ADDRESSEE OF THE TRANSMISSION. IT MAY BE PROTECTED FROM UNAUTHORIZED USE OR DISSEMINATION BY THE ATTORNEY-CLIENT PRIVILEGE, THE ATTORNEY WORK-PRODUCT DOCTRINE, OR ANY OTHER APPLICABLE PRIVILEGE. IF YOU ARE NOT THE STATED ADDRESSEE, YOUR RECEIPT OF THIS TRANSMISSION WAS UNINTENDED AND INADVERTENT, AND YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. YOU ARE ALSO ASKED TO NOTIFY US IMMEDIATELY BY TELEPHONE AND TO RETURN THE ORIGINAL DOCUMENT TO US IMMEDIATELY BY MAIL AT THE ADDRESS ABOVE. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
260221602_1
10414-25 NAA/NAA