IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,                )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        C.A. No. 04-1371-JJF
                                         )
FAIRCHILD SEMICONDUCTOR                  )
INTERNATIONAL, INC., and FAIRCHILD       )
SEMICONDUCTOR CORPORATION,               )
                                         )
                    Defendants.          )


**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC.
AND FAIRCHILD SEMICONDUCTOR CORPORATION'S
MOTION FOR JUDGMENT AS A MATTER OF LAW CONCERNING
NONINFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 6,249,876**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated:  December 3, 2007
186365.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................... 3

    A.   The Jury Verdicts ....................................................................................... 3

    B.   The Asserted Claim 1 Of The '876 Patent ................................................ 4

    C.   The Prior Art .............................................................................................. 5

        1.   No Dispute As To Level Of Skill In The Art ................................. 6

        2.   No Dispute As To The General Knowledge Of One Of Ordinary
             Skill In The Art .............................................................................. 6

        3.   No Dispute That The Martin Patent Is Prior Art ........................... 7

        4.   No Dispute As To The Contents Of The Martin Patent .................. 7

             a.   The Martin circuit reduced EMI ....................................... 7

             b.   The Martin circuit reduced signature ................................ 8

III. JUDGMENT AS A MATTER OF LAW IS APPROPRIATE WHEN THE
    EVIDENCE SHOWS THAT NO REASONABLE JURY COULD RULE FOR
    THE NONMOVING PARTY ................................................................................ 9

IV.  FAIRCHILD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT
    ITS ACCUSED PRODUCTS DO NOT INFRINGE THE '876 PATENT .................. 10

    A.   To Infringe, The Accused Products Must Meet Every Claim Element ............... 10

    B.   Power Integrations Failed To Provide Sufficient Evidence For A
        Reasonable Jury To Find That The Preamble Of Claim 1 Was Met By Any
        Of Fairchild's Products. ............................................................................. 10

        1.   The Preamble Is A Limitation Requiring That An Infringing
             Device Vary Switching Frequency "About A Target Frequency." ......... 11

        2.   Power Integrations Submitted No Evidence That Fairchild's
             Accused Products Meet The Preamble Limitation ................................. 11

        3.   Conclusory Assertions Made By Power Integrations' Expert
             Witness Were Not Enough To Satisfy Power Integrations' Burden
             Of Proof. .................................................................................... 13

V.   FAIRCHILD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT
    THE '876 PATENT IS OBVIOUS IN LIGHT OF THE PRIOR ART MARTIN
    PATENT. ........................................................................................................... 14

    A.   The Jury's Findings Are Not Supported By Substantial Evidence ..................... 15

**TABLE OF CONTENTS**
(continued)

Page

1. Fairchild Presented Clear And Convincing Evidence That It Would Have Been Obvious To One Of Ordinary Skill In The Art To Remove The ROM From Martin's Circuit .............................................. 16

    a. Removing the ROM would have been within the technical grasp of one of skill in the art ...................................... 16

    b. Removing the ROM was a predictable variation ......................... 17

    c. Design incentives and other market forces would have motivated one of skill in the art to remove the ROM ................. 17

    d. The Martin Patent disclosed all components and the common goal of EMI reduction, so no combination of art is necessary ..................................................................... 18

2. Power Integrations Expert Mr. Blauschild Did Not Contradict Fairchild's Evidence That It Would Have Been Obvious To Remove The ROM From Martin's Circuit .............................................. 19

    a. Blauschild's testimony regarding anticipation is irrelevant ........ 19

    b. Blauschild's testimony is insufficient to counter Fairchild's evidence that it was obvious to remove the ROM ...................... 20

    c. Martin did not teach away from removing the ROM ................. 21

    d. Blauschild ignored Martin's goal of reducing EMI ................... 22

3. Any Secondary Considerations Are Insufficient To Overcome Fairchild's Prima Facie Evidence Of Obviousness. ................................ 23

    a. There is no substantial evidence linking any commercial success of Power Integrations' products to the invention of Claim 1 ..................................................................... 23

    b. There is no evidence of failure by others, and the evidence of long felt need is insufficient .................................... 24

    c. There is no substantial evidence of copying. ............................. 25

B. The Jury Instructions Regarding Obviousness And Hindsight Improperly Required A Rigid Analysis Of The Prior Art In Violation Of *KSR v. Teleflex* ..................................................................... 25

    1. *KSR* Instructed Courts To Apply An "Expansive And Flexible" Inquiry To The Determination Of Obviousness ...................................... 25

    2. The Jury Instructions Did Not Sufficiently Account For The Change In The Obviousness Inquiry Set Forth In *KSR* ........................... 27

    3. Other Courts Have Modified Jury Instructions To Fully Account For *KSR* ..................................................................... 28

**TABLE OF CONTENTS**
(continued)

**Page**

4.    The Patent Office Modified Its Obviousness Guidelines For Patent Examiners ............................................................................ 29

C.    The Presumption of Validity Instructions Failed To Account For The Fact That Fairchild Relied Upon Art That Was Not Before The Examiner ............... 30

VI.    CONCLUSION .......................................................................................... 33

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Augustine Medical, Inc.* v. *Gaymar Indus., Inc.*,
    181 F.3d 1291 (Fed. Cir. 1999)......................................................................................10

*Applied Materials* v. *Advanced Semiconductor Materials Am., Inc.*,
    98 F.3d 1563 (Fed. Cir. 1996)......................................................................................31

*Cooper Distributing Co., Inc.* v. *Amana Refrigeration, Inc.*,
    180 F.3d 542 (3rd Cir. 1999).......................................................................................26

*Cybor Corp.* v. *FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998)....................................................................................10

*Dawn Equip. Co.* v. *Kentucky Farms, Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998)......................................................................................9

*Dystar Textilfarben GMBH & Co. Deutschland KG* v. *C.H. Patrick Co.*,
    464 F.3d 1356 (Fed. Cir. 2006)............................................................................ *passim*

*Graham* v. *John Deere Co.*,
    383 U.S. 1 (1966).......................................................................................14, 15, 23

*Hazeltine Research, Inc.* v. *Brenner*,
    382 U.S. 252 (1965).....................................................................................................22

*KSR* v. *Teleflex*,
    127 S. Ct. 1727 (2007)........................................................................................ *passim*

*Kahn* v. *General Motors, Inc.*,
    135 F.3d 1472 (Fed. Cir. 1998)....................................................................................31

*Lantech, Inc.* v. *Keip Mach. Co.*,
    32 F.3d 542 (Fed. Cir. 1994).......................................................................................10

*Leapfrog Enterprises, Inc.* v. *Fisher-Price, Inc.*,
    485 F.3d 1157 (Fed. Cir. 2007).......................................................................3, 17, 18, 23

*Pannu* v. *Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)......................................................................................9

*In re Paulsen*,
    30 F.3d 1475 (Fed. Cir. 1994).....................................................................................11

*Perkin-Elmer Corp.* v. *Computervision Corp.*,
732 F.2d 888 (Fed. Cir. 1984)...................................................................................9

*Pfizer, Inc.* v. *Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007)...............................................................................26

*Richardson-Vicks, Inc.* v. *Upjohn Co.*,
122 F.3d 1476 (Fed. Cir. 1997)...............................................................................14

*Rohm & Haas Co.* v. *Brotech Corp.*,
48 F.3d 1172 (Fed. Cir. 1997).................................................................................13

*Ruiz* v. *A.B. Chance Co.*,
357 F.3d 1270 (Fed. Cir. 2004)...............................................................................26

*SmithKline Diagnostics, Inc.* v. *Helena Labs. Corp*,
859 F.2d 878 (Fed. Cir. 1998)...........................................................................1, 12

*Ultra-Tex Surfaces, Inc.* v. *Hill Brothers Chemical Co.*,
204 F.3d 1360 (Fed. Cir. 2000)...............................................................................11

*Williamson* v. *CONRAIL*,
926 F.2d 1344 (3d Cir. 1991)....................................................................................9

*Z4 Tech. Inc.* v. *Microsoft Corp.*,
2007 U.S. App. LEXIS 26567 (Nov. 16, 2007)......................................................31

## DOCKETED CASES

*Rohm & Haas Co.* v. *Brotech Corp.*,
No. 90-109-JJF (D. Del. June 30, 1995), *aff'd*, 48 F.3d 1172 (1997)...........1, 13, 14

*Forgent* v. *Echostar*,
No. 6:06-CV-208 (E.D. Tex.) .................................................................................28

## FEDERAL STATUTES

35 U.S.C. § 103 ...............................................................................................14, 26

35 U.S.C. § 271...................................................................................................10

35 U.S.C. § 282...................................................................................................32

## RULE

*9A Wright & Miller*, Federal Practice & Procedure § 2524 at 249-266 (3d ed. 1995)....................9

**MISCELLANEOUS**

John R. Thomas, *Collusion and Collective Action in the Patent System: A Proposal for Patent Bounties*,
2001 U. ILL. L. REV. 305, 314 (2001) ...................................................................................32

Kristen Osenga, *Entrance Ramps, Tolls, and Express Lanes—Proposals for Decreasing Traffic Congestion in the Patent Office*,
33 FLA. ST. U. L. REV. 119, 130 (2005) ...............................................................................32

## I.    INTRODUCTION.

Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively "Fairchild") move this Court for Judgment as a Matter of Law (JMOL) that Claim 1 of Power Integrations, Inc.'s ("Power Integrations") United States Patent No. 6,249,876 (the "'876 Patent") (1) is not infringed by any Fairchild accused product and (2) is obvious in light of the prior art Martin Patent relied on by Fairchild at trial.

Power Integrations has failed to present sufficient evidence to support a verdict in its favor on the issue of infringement.  To sustain an infringement verdict, Power Integrations had to prove that every claim limitation of the '876 Patent was met by Fairchild's accused products. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp*, 859 F.2d 878, 889 (Fed. Cir. 1998).  At Power Integrations' request and over Fairchild's objections, the Court concluded that the preamble of Claim 1 of the '876 Patent was itself a limitation that required "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference." [3/31/06 Claim Construction Order, DI 232, ¶ 8]  During trial, Power Integrations put forth absolutely no evidence that the accused Fairchild products vary the switching frequency "about a target frequency."  Consequently, no reasonable juror could find that Fairchild's accused products infringe the "frequency jittering" limitation of Claim 1 of the '876 Patent as construed by the Court.  *See* Tab 1, *Rohm & Haas Co. v. Brotech Corp.*, No. 90-109-JJF, slip op. at 22-23 (D. Del. June 30, 1995) (J. Farnan), *aff'd*, 48 F.3d 1172 (1997) (holding that where a claim includes a preamble limitation and a plaintiff presents merely conclusory evidence that the accused products meet that limitation, no reasonable fact finder could come to a conclusion of infringement).

Power Integrations also did not submit evidence sufficient to rebut Fairchild's prima facie showing that Claim 1 of the '876 Patent is obvious in light of the prior art Martin Patent.  The Martin Patent issued as a U.S. patent 11 years prior to the filing of the '876 Patent and constitutes prior art under §102(b).  The '876 Patent claims a circuit for reducing the EMI

radiated by a power supply, comprising three electronic components: a counter, a digital to analog converter and an oscillator. As discussed above, according to the Court's claim construction, that circuit must reduce EMI by varying the switching frequency of the power supply about a target frequency. It is undisputed that the prior art Martin Patent likewise discloses a circuit that reduces the EMI of a power supply and includes each of the three electronic components of Claim 1; Power Integrations instead disputes whether Martin meets the preamble limitation. The only difference between the two circuits is that the Martin Patent includes an additional specialized memory element that camouflages the power supply for use in military applications, and thus makes the Martin circuit *more* sophisticated than the circuit claimed by the '876 Patent. Power Integrations and its expert admit that if the memory component were removed from the Martin circuit, it would be identical to the circuit of the '876 Patent.

Although Power Integrations ignored the preamble requirement of Claim 1 during the infringement trial and failed to provide evidence that the accused Fairchild products varied the switching frequency "about a target frequency," the main focus of Power Integrations' invalidity argument at trial was that the prior art failed to disclose that limitation. This is a prime example of Power Integrations' abuse of the Court's bifurcation of the infringement and invalidity trials. Power Integrations' argued during claim construction that the preamble was a limitation so that it could use this limitation during the invalidity trial to attempt to avoid the prior art Martin Patent. Yet, at the infringement trial, Power Integrations ignored this limitation because it had no evidence demonstrating that Fairchild's products varied the switching frequency "about a target frequency." Power Integrations cannot have it both ways – it could not argue at the invalidity trial that the preamble was a necessary limitation to avoid the Martin Patent, yet fail to show that the accused Fairchild products practiced that same limitation at the infringement trial.

In particular, at the invalidity trial Power Integrations argued that the Martin Patent did not vary the switching frequency "about a target frequency" because it varied the frequency in a pseudorandom fashion based on code stored in the memory component. However, this argument

ignores and is irrelevant to Fairchild's invalidity argument based on the obvious removal of the memory component from Martin's circuit. Power Integrations admits that with the memory component removed, the two circuits are identical. Accordingly, to the extent the '876 circuit varies the switching frequency "about a target frequency" so does the identical circuit achieved by the obvious removal of the memory component from the Martin circuit.

To a person of ordinary skill in the art, it would be a matter of "common sense" or common skill or creativity simply to remove the memory for a simpler and less sophisticated circuit where military camouflage is not necessary. The Federal Circuit repeatedly has held that it is an obvious goal to create a simpler, smaller and more cost-effective circuit. *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007). Removing the memory would be a "predictable variation" of the Martin Patent that would be driven by the market, and thus unpatentable as a matter of law under the Supreme Court's recent decision in *KSR v. Teleflex*. 127 S. Ct. 1727, 1739-40 (2007).

Fairchild respectfully submits that the jury failed to reach this conclusion because it was not properly instructed as to the "flexible and expansive" inquiry regarding obviousness required under *KSR*. In particular, the instructions to the jury regarding obviousness and hindsight failed to take into account any of the substance of *KSR*, and stand in direct contrast to jury instructions given in another recent post-*KSR* trial. Fairchild was further prejudiced by the jury instruction regarding the presumption of validity because it did not advise the jury the presumption was much diminished, where, as here, the prior art was never considered by the examiner during prosecution of the '876 Patent. The evidence Fairchild presented at trial, when viewed according to the proper standards, clearly and convincingly demonstrates that Claim 1 of the '876 Patent is obvious in light of the Martin Patent.

## II.   STATEMENT OF FACTS.

### A.   The Jury Verdicts.

A jury trial on the issue of infringement of Claim 1 of the '876 Patent commenced on

October 2, 2006. On October 10, the jury returned a verdict that Fairchild infringed Claim 1 of the '876 Patent. [DI 415] A subsequent jury trial commenced on September 17, 2007, before a different jury, on the issue of the validity of Claim 1 of the '876 Patent. This second jury returned a verdict on September 21 that Fairchild had not met its burden of proving that Claim 1 of the '876 Patent would have been obvious in light of the prior art identified by Fairchild at trial. [DI 555] The Court has not yet entered judgment on the verdicts.

### B.     The Asserted Claim 1 Of The '876 Patent.

Power Integrations filed the application for United States Patent No. 6,249,876 (the "'876 Patent") on November 16, 1998. The patent was prosecuted for over two and one half years before issuing on June 19, 2001, with 32 claims. [DX 99] Claim 1 of the '876 Patent, the only claim asserted in this case, claims a circuit for varying the frequency of a switch mode power supply in order to reduce the peak electromagnetic interference ("EMI") radiated by the switch. [DX 99, 1:65-2: 4, 3:58-65, 8:42-53; 9/19/07 Horowitz Trial Tr. 690:1-24; 722:15-723:2] According to the inventors, this circuit reduces the size and weight of a power supply by eliminating noise filtering components previously used to reduce EMI. [DX 99, 1:50-63, 4:6-9]

The circuit of Claim 1 comprises three electronic components: a counter, a digital to analog converter and an oscillator:

> 1. A digital frequency jittering circuit for varying the switching frequency of a power supply, comprising:
>
> an oscillator for generating a signal having a switching frequency, the oscillator having a control input for varying the switching frequency;
>
> a digital to analog converter coupled to the control input for varying the switching frequency; and
>
> a counter coupled to the output of the oscillator and to the digital to analog converter, the counter causing the digital to analog converter to adjust the control input and to vary the switching frequency.

[DX 99, 8:43-53; 9/19/07 Horowitz Trial Tr. 713:17-715:19] The Court construed two terms from Claim 1, (1) "frequency jittering" from the preamble and (2) "coupled." "Frequency jittering" was construed as "varying the switching frequency of a switch mode power supply

about a target frequency in order to reduce electromagnetic interference." "Coupled" was construed to mean that "two circuits are coupled when they are connected such that voltage, current or control signals pass from one to another."[1] [3/31/06 Claim Construction Order, DI 232, ¶¶ 8-9]

The oscillator provides the switching frequency for the switch mode power supply, and the counter and digital to analog converter vary the frequency of the oscillator. [DX 99, 4:28-39, 4:62-66; 9/19/07 Horowitz Trial Tr. 714:17-715:19; 9/19/07 Balakrishnan Trial Tr. 897:22-899:5] Each time the counter increments, it provides a different digital signal to the digital to analog converter. [DX 99, 4:62-35; 9/19/07 Balakrishnan Trial Tr. 898:10-15] The converter transforms the digital signal into an analog signal, which it then applies to a control input of the oscillator. [DX 99, 5:36-39; 9/19/07 Balakrishnan Trial Tr. 898:16-18] The change in the control signal causes the frequency of the oscillator to vary, which results in varying the switching frequency of the power supply. [DX 99, 2:5-9; 9/19/07 Balakrishnan Trial Tr. 898:17-899:2] At some point, the counter rolls over (like an odometer) and repeats. [DX 99, 5:36-3934-35; 9/19/07 Balakrishnan Trial Tr. 899:3-5] This results in a variation of switching frequency that is repetitive and predictable.

**C.    The Prior Art.**

At trial, Fairchild relied upon United States Patent No. 4,638,417 (the "Martin Patent") as its primary reference. [DX 83] The Martin Patent issued on January 20, 1987, some 11 years before Power Integrations filed its application for the '876 Patent. The Martin Patent similarly described a circuit for reducing the EMI radiated by a switch mode power supply, well before the '876 Patent. [DX 83, 1:66-68] The preferred embodiment of the Martin Patent included each of the electronic components of the circuit Power Integrations claimed as its invention. Fairchild also relied upon the general knowledge of those of ordinary skill in the art. Fairchild's expert, Dr. Paul Horowitz, presented this prior art to the jury.

---

[1]    Fairchild reserves all rights and objections to claim construction previously made of record.

### 1.    No Dispute As To Level Of Skill In The Art.

The parties did not dispute the level of one of ordinary skill in the art at trial.  Rather, because of the remarkable similarity between the proposed criterion set forth by both parties, Dr. Horowitz adopted the level of skill proffered by Power Integrations.  The agreed criteria for one of ordinary skill in the art is:  (1) a bachelor's or higher degree of electrical engineering or something similar; (2) three to seven years of experience designing analog circuits for switch mode power supplies; (3) familiarity with the basic components used in such circuits including oscillators, counters and digital to analog converters.  [9/19/07 Horowitz Trial Tr. 686:20-687:23; 9/20/07 Blauschild Trial Tr. 1077:12-1079:4]

### 2.    No Dispute As To The General Knowledge Of One Of Ordinary Skill In The Art.

The basic devices and technology at issue in this case – switch mode power supplies – have been around since at least the 1970s.  [9/19/07 Horowitz Trial Tr. 693:3-694:5]  From the time such switch mode power supplies were invented, engineers knew that they radiated EMI that could interfere with other electronic devices, and have been devising solutions for this problem.  [*Id.* at 698:20-702:14]  One such solution was to use the well known technique of frequency variation to spread out the EMI, reducing the peak radiation at any given frequency.  [*Id.* at 700:15-702:14]  Engineers had known how to use frequency variation techniques to spread frequency since as early as World War II, albeit for different purposes than reducing the peak EMI radiated by a power supply.  [*Id.* at 703:19-704:5]  Such spread spectrum techniques were applied to switch mode power supplies at least as early as 1985, as demonstrated by an invention patented by Hubert Martin and his colleagues at Sperry Corporation.  [*Id.* at 704:6-16; DX 83, 1:65-68]  By that time, engineers were also familiar with the components used to implement such techniques – including counters, oscillators and digital to analog converters.  [9/19/07 Horowitz Trial Tr. 686:20-687:23; 9/20/07 Blauschild Trial Tr. 1078:21-1079:4]  Accordingly, by the time Power Integrations applied for the '876 Patent in 1998, there was a substantial body of prior art available to engineers designing and building switch mode power supplies.

### 3.    No Dispute That The Martin Patent Is Prior Art.

The Martin Patent indisputably is prior art to the '876 Patent having issued as a U.S. patent some 11 years prior to the filing date of the '876 Patent. [9/19/07 Horowitz Trial Tr. 704:17-24] It is also undisputed that the patent examiner who examined and issued the '876 Patent did not have before him the Martin Patent or any similar prior art. [9/19/07 Horowitz Trial Tr. 705:1-12, 723:5-18]

### 4.    No Dispute As To The Contents Of The Martin Patent.

The Martin Patent, entitled "Power Density Spectrum Controller" was filed on August 16, 1985 by Hubert Martin and others. [DX 83] Dr. Horowitz testified that Claim 1 of the '876 Patent is invalid as obvious in light of the Martin Patent. [9/19/07 Horowitz Trial Tr. 704:11-16, 713:17-721:7, 797:24-798:10]. Like the '876 Patent, the Martin Patent discloses "a circuit which reduces electromagnetic interference (EMI) by frequency modulation of power converters." [DX 83, 1:66-68; 9/19/07 Horowitz Trial Tr. 704:11-16; 721:21-723:4] Moreover, like the circuit of Claim 1, the circuit described in the Martin Patent includes a counter, a digital to analog converter and an oscillator. [DX 83, 2:16-38 and Fig.; 9/19/07 Horowitz Trial Tr. 707:4-710:11, 713:17-715:19] Although the Martin circuit included an additional element, an Electronically Programmable Read Only Memory or "EPROM" (also referred to as a "ROM"), Dr. Horowitz testified that it would have been obvious to one of ordinary skill to remove the ROM. [9/19/07 Horowitz Trial Tr. 715:20-721:7]

### a.    The Martin circuit reduced EMI.

The inventors of the Martin Patent had two goals: (1) to reduce EMI (which Martin also refers to as "noise"),[2] and (2) to reduce "signature" in a switch mode power supply.[3] [9/19/07 Horowitz Trial Tr. 705:13-706:22; DX 83, 1:12-46] The first goal is the same as discussed

---

[2]    The '876 Patent likewise refers to EMI as "EMI noise." [DX 99, 1:23-25]

[3]    The terms "power converter" and "power supply" are used interchangeably in the Martin Patent and the industry. [9/19/07 Horowitz Trial Tr. 710:12-711:2] Although the Martin Patent does not use the term "switch mode power supply," there is no dispute that the power supply of the Martin Patent is a "switch mode power supply." [*Id.*]

above for the '876 Patent. Like the inventors of the '876 Patent, the inventors of the Martin

Patent recognized that filters were frequently used to reduce EMI noise. [DX 83, 1:15-24;

9/19/07 Horowitz Trial Tr. 700:15-701:2]   Such filters, however, not only add to the cost and

size of the power supply, they also may attenuate or reduce the output signal. [DX 83, 1:18-24,

1:55-56, 3:11-20] Martin eliminated the need for such expensive filters by varying the frequency

of the switch to reduce peak EMI. [DX 83, 1:18-24, 1:55-56, 3:11-20; 9/19/07 Horowitz Trial

Tr. 705:17-21, 712:22-713:4]

### b.    The Martin circuit reduced signature.

In addition to interfering with other devices, the EMI radiated by a power supply may

also "generate a 'signature' which is a signal pattern which is unique to the power supply and

identifies same much in the nature of a fingerprint." [DX 83, 1:25-28; 9/19/07 Horowitz Trial

Tr. 719:13-24] Although this signature "is not a significant problem in most ordinary usages," it

could pose a serious issue in military or other covert applications where it may be desirable to

keep the source of signals anonymous or unidentifiable. [9/19/07 Horowitz Trial Tr. 705:23-

706:22, 720:1-15; DX 83, 1:24-40]

Varying the switching frequency in a repeatable and predictable manner, while reducing

EMI, does not eliminate signature from a device. [9/19/07 Horowitz Trial Tr. 706:5-9, 712:22-

713:6] The Martin Patent instead eliminated the signature by also varying the frequency in a less

predictable fashion. [9/19/07 Horowitz Trial Tr. 716:15-17] Martin accomplished this by

inserting a ROM or other storage device between the counter and the digital to analog converter.

[9/19/07 Horowitz Trial Tr. 708:23-709:3, 712:14-713:4; DX 83, 2:22-24, 2:33-35 and Figure]

The ROM contained pseudorandom code, or a prescribed signal pattern, stored as digital signals.

[DX 83, 2:27-29, 2:33-34, 4:5-6, 4:41-44] As the counter of Martin's circuit incremented,

instead of sending an output signal directly to the digital to analog converter, the counter

transferred a signal to the ROM memory. [9/19/07 Horowitz Trial Tr. 708:18-709:24; DX 83,

2:29-31] The signal from the counter selected a digital signal stored at a particular address in the

ROM memory, which was then sent to the digital to analog converter. [9/19/07 Horowitz Trial

Tr. 708:23-709:3; DX 83, 2:30-35] The digital to analog converter converted the digital signal to an analog signal, which was supplied as a control signal to the oscillator. This control signal caused the frequency of the oscillator to vary in a pseudorandom pattern or other prescribed manner, depending on the signals stored in the ROM memory. [9/19/07 Horowitz Trial Tr. 709:2-19; DX 83, 2:35-36, 2: 44-54]

### III.  JUDGMENT AS A MATTER OF LAW IS APPROPRIATE WHEN THE EVIDENCE SHOWS THAT NO REASONABLE JURY COULD RULE FOR THE NONMOVING PARTY.

To prevail on a motion for judgment as a matter of law following a jury trial, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. CONRAIL*, 926 F.2d 1344, 1348 (3d Cir. 1991), *reh'g en banc denied*, 1991 U.S. App. Lexis 16758 (3d Cir. 1991). The Court may not evaluate the credibility of the witnesses, may not weigh the evidence, and may not substitute its view of the evidence for the jury's view. Rather, the Court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); 9A *Wright & Miller*, Federal Practice & Procedure § 2524 at 249-266 (3d ed. 1995) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury properly could find a verdict for that party.").

Fairchild is entitled to judgment as a matter of law that none of Fairchild's accused products infringe Claim 1 of the '876 Patent because there is not legally sufficient evidence in the record to support a verdict of infringement. Fairchild is also entitled to judgment as a matter

of law that Claim 1 of the '876 Patent is obvious in light of the prior art Martin Patent. The jury's factual findings underlying its determination are not supported by substantial evidence and as a matter of law those findings do not support a legal determination of non-obviousness of Claim 1.

## IV.    FAIRCHILD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT ITS ACCUSED PRODUCTS DO NOT INFRINGE THE '876 PATENT.

### A.    To Infringe, The Accused Products Must Meet Every Claim Element.

The determination of patent infringement is a two-step process. First, the patent claims are construed as a matter of law by the Court. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). Second, the claims as construed are compared to the accused products to determine whether there is literal infringement. *Id.* Thus, proving infringement under 35 U.S.C. § 271(a) requires proof by a preponderance of evidence that each and every limitation of a patent claim is present in the product accused of infringing. *See Augustine Medical, Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1304 (Fed. Cir. 1999) (there can be no infringement where the accused products do not literally contain every limitation of a claim); *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) (any difference between the structure of the accused product and the claim limitations, no matter how small, absolutely precludes a finding of literal infringement).

In this case, Power Integrations did not present any evidence that the accused Fairchild products vary the switching frequency "about a target frequency" – a necessary element of Claim 1 of the '876 Patent. Power Integrations thus has not shown that this limitation of Claim 1 is met by the accused Fairchild products, and there can be no infringement as a matter of law.

### B.    Power Integrations Failed To Provide Sufficient Evidence For A Reasonable Jury To Find That The Preamble Of Claim 1 Was Met By Any Of Fairchild's Products.

Claim 1 of the '876 Patent as construed by the Court contains four elements: the three circuit component limitations defined by the claim elements and the "frequency jittering" limitation defined by the preamble. Power Integrations presented absolutely no evidence that

Fairchild's accused products infringe the preamble's limitation, and thus failed to meet its burden of proof. Lacking such evidence, blanket statements made by Power Integrations' expert that Fairchild's products infringed the '876 Patent were not sufficient to form the basis for an infringement verdict. Accordingly, Fairchild is entitled to a judgment of noninfringement as a matter of law.

<div align="center">

**1.    The Preamble Is A Limitation Requiring That An Infringing Device Vary Switching Frequency "About A Target Frequency."**

</div>

Where the preamble of a claim breathes life and meaning into a claim it is considered an essential element just like any other limitation. *In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994). In this case, the Court determined that the preamble of Claim 1 gives life and meaning to the claim and is therefore a claim limitation:

> The invention is not just a "circuit" but a "digital frequency jittering circuit." Reading the patent as a whole, the Court is persuaded that this language is not mere introductory language, but language which is meant to define the invention and limit the claim. *See In re Paulsen*, 30 F.3d 1475, 1479 (concluding that term "computer" used in preamble was a claim limitation that gave life and meaning to the claim.)

[3/31/06 Claim Construction Opinion, DI 231 at p. 18 n. 5]

The preamble of Claim 1 recites "[a] digital frequency jittering circuit for varying the switching frequency of a power supply…" [DX 99, 8:41-52]. At Power Integrations' request, and over Fairchild's objections, the Court construed the term "frequency jittering" to mean "varying the switching frequency of a switch mode power supply ***about a target frequency*** in order to reduce electromagnetic interference." [3/31/06 Claim Construction Order, DI 232 at ¶ 8. (emphasis added)] Thus, to prove infringement, Power Integrations had to prove that Fairchild's accused products vary the switching frequency "about a target frequency." Because Power Integrations has failed to provide any evidence in this regard, it has not, as a matter of law, met its burden of proving infringement.

**2.  Power Integrations Submitted No Evidence That Fairchild's Accused Products Meet The Preamble Limitation.**

It is axiomatic that a patentee has the burden of proving infringement. *Ultra-Tex Surfaces, Inc. v. Hill Brothers Chemical Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000). Because Power Integrations presented absolutely no evidence that any of Fairchild's products vary the switching frequency "about a target frequency," no reasonable jury could have come to a verdict of infringement. In fact, save for the jury instructions, the term "target frequency" was mentioned only once during the entire infringement trial – when Power Integrations' expert described the limitations of Claim 1 of the '876 Patent. In that instance, Power Integrations' expert conceded that based on the Court's construction "varying the switching frequency of a switch mode power supply about a target frequency" was indeed one of the claimed requirements. [10/3/06 Blauschild Trial Tr. 454:19-24].

While admitting that the preamble was a necessary element of the claim, Mr. Blauschild – Power Integrations' technical expert on the '876 Patent – failed to provide any evidence that any of Fairchild's accused products meet the claim limitation "about a target frequency" as required by the Court's construction. *SmithKline*, 859 F.2d at 889 (patent owner's proof of infringement must show that every limitation of the patent claims is found in the accused device). In fact, he entirely ignored this requirement when describing how Claim 1 purportedly read on Fairchild's accused products. Instead, Mr. Blauschild's testimony was expressly limited to describing how the other three elements of Claim 1 – the oscillator, digital to analog converter, and the counter, were met by the accused products:

Q.    Okay, I'd like to refer you to the claim language of Claim 1. Can you explain to us what Claim 1 covers?

A.    Sure. Claim 1 is about a digital frequency jittering circuit. ***Three elements here***. I can color code those to emphasize them. An ***oscillator***, a ***digital to analog converter***, and a ***counter***. These ***three elements*** are coupled together to vary switching frequency of the power supply.

[10/3/06 Blauschild Trial Tr. 455:2-14 (emphasis added)] Not only did Mr. Blauschild never offer any discussion, reasoning or explanation as to whether or how Fairchild's products met the "about a target frequency" limitation of the preamble – ***he never even stated that the accused***

*products met this particular limitation*.[4]  In contrast, Mr. Blauschild could only have misled the jury by giving the perception that Claim 1 contained only three limitations, rather than four as construed by the Court.

### 3.    Conclusory Assertions Made By Power Integrations' Expert Witness Were Not Enough To Satisfy Power Integrations' Burden Of Proof.

Power Integrations may argue that it satisfied its burden of proof with respect to the preamble limitation because Mr. Blauschild made repeated, conclusory statements that Fairchild's accused products "jittered" or had the "jitter feature."  However, "general testimony that an accused product or process infringe" does not satisfy a patentee's burden of proof for infringement.  *Rohm & Haas Co. v. Brotech Corp.*, 48 F.3d 1172, 1189 (Fed. Cir. 1997).

In *Rohm & Haas*, the Federal Circuit affirmed this Court's holding of noninfringement on essentially the same facts.  *Id.*  As here, the allegedly infringed claim contained a preamble limitation and the patentee offered nothing more than its expert's general opinion that the accused products infringed.[5]  *See Rohm & Haas Co. v. Brotech Corp.*, No. 90-109-JJF, slip op. at 22 (D. Del. June 30, 1995) (J. Farnan), *aff'd*, 48 F.3d 1172 (1997), attached as Tab 1.  This Court concluded that a "blanket statement that certain accused products infringe" was of "little value absent some underlying support specific to" the limitation taught by the preamble.  *Id.* at 22.

This case is analogous to *Rohm & Haas*.  Here,  Mr. Blauschild's blanked statements that Fairchild's accused products had the "jitter feature" lacked the necessary support to form a legally sufficient evidentiary basis for a finding of infringement.  The term "frequency jittering,"

---

[4]    Nor did Mr. Blauschild provide the jury with any relevant background information from which they could make their own inferences.  He did not provide an explanation of what a target frequency was.  He did not explain how Fairchild's accused products practiced the target frequency limitation or point to any evidence of what target frequency was used by such products.  He also did not point to any evidence demonstrating that any of Fairchild's products varied the switching frequency about a target frequency.

[5]    In *Rohm & Haas*, the Plaintiff also pointed to purported admissions by the other side's expert witness during a deposition in which he failed to identify the preamble limitations as placing the alleged infringer's technology outside of the patent claims.  The district court examined these statements and found that the passage in question was "muddled and subject to misinterpretation."  Tab 1, No. 90-109-JJF, slip op. at 23.

or "jitter" is a general term that is inherently broader than a limitation to frequency jittering "about a target frequency" as required by Claim 1. In other words, not all forms of "frequency jittering" infringe Claim 1, only a narrower form of frequency jittering "about a target frequency." Thus, simply stating that Fairchild's products have the "jitter feature" is not sufficient to form the basis for an infringement verdict. There was no evidence or testimony whatsoever to support a finding that any Fairchild product varied the switching frequency "about a target frequency," or what that alleged target frequency was. Accordingly, no reasonable jury could have come to the conclusion that Fairchild's products met the limitations of the preamble. *See* Tab 1, *Rohm & Haas Co.*, No. 90-109-JJF, slip op. at 23.

## V. FAIRCHILD IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THE '876 PATENT IS OBVIOUS IN LIGHT OF THE PRIOR ART MARTIN PATENT.

The jury's verdict that Claim 1 of the '876 Patent was not obvious is unsupportable as a matter of law under the legal test for obviousness clarified by the Supreme Court in *KSR v. Teleflex*. 127 S. Ct. 1727 (2007) ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability"). This Court is the ultimate arbiter of obviousness as the determination is legal, not factual, and thus cannot be delegated to the jury. *See, e.g., Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). Particularly where, as in the instant case, "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute," obviousness is a matter of law for the Court to decide. *See KSR*, 127 S. Ct. at 1745-46. Accordingly, the Court should not defer to the jury's determination of the legal issue of whether Claim 1 is obvious. Rather, the Court must itself determine "if the differences between the claimed subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

Although the determination of obviousness is based on certain findings of fact, which are the province of the jury, the evidence does not support a determination of nonobviousness in this

case. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). Rather, Fairchild presented clear and convincing evidence at trial supporting but one conclusion – Claim 1 of the '876 Patent is obvious in light of the prior art Martin Patent. Power Integrations did not present substantial evidence rebutting Fairchild's prima facie showing of obviousness.

The jury's findings also are unpersuasive because they are the product of erroneous jury instructions. Fairchild respectfully submits that had the jury been properly instructed, it should have determined that Claim 1 is a "predictable variation" of the circuit disclosed in the Martin Patent and thus obvious under the Supreme Court's holding in *KSR v. Teleflex*. Likewise, the jury should have found Claim 1 invalid if it had been advised, as suggested by the *KSR* Court, that the presumption of validity was much diminished where Fairchild was relying on art that was not before the examiner.

### A.    The Jury's Findings Are Not Supported By Substantial Evidence.

The Supreme Court set forth the factual considerations underpinning the legal determination of whether a claim is obvious in *Graham v. John Deere Co.*:

> Under §103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

383 U.S. at 17-18; *see also KSR*, 127 S. Ct. at 1734 (affirming that these factors "continue to define the inquiry that controls" a determination of obviousness). In the instant case, the jury did not make explicit factual findings in the form of special interrogatories or a special verdict. Accordingly, the Court must "discern the jury's implied factual findings by interpreting the evidence consistently with the verdict and drawing all reasonable inferences in [Power Integration's] favor." *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1361 (Fed. Cir. 2006) (reversing the district court's denial of motion for JMOL of invalidity for obviousness).

Fairchild's obviousness argument rests on the Martin Patent, as viewed in light of the general knowledge of one of ordinary skill in the art. By its plain language, the Martin Patent discloses "a circuit which reduces electromagnetic interference" by varying the frequency of the power supply, precisely the same goal as set forth in the '876 Patent. *Supra* at pp. 7-8. It is undisputed that the Martin Patent explicitly disclosed a circuit for varying frequency which included each of the three electronic components of Claim 1 of the '876 Patent. *Supra* at p.7; *see also* consistent testimony from Power Integrations' expert, Mr. Blauschild, [9/20/07 Blauschild Trial Tr.: 1072:22-1074:11] Power Integrations' only argument at trial was that Claim 1 was not invalid because the preferred Martin embodiment included an additional element – a ROM or other memory or storage device – between the counter and the digital to analog converter which purportedly decoupled the components and caused the frequency to vary in a pseudorandom manner. [9/20/07 Blauschild Trial Tr. 1069-1070; *see also* 9/19/07 Horowitz Trial Tr. 717:6-718:7]

<p style="margin-left:2em;"><strong>1.    Fairchild Presented Clear And Convincing Evidence That It Would Have Been Obvious To One Of Ordinary Skill In The Art To Remove The ROM From Martin's Circuit.</strong></p>

<p style="margin-left:3em;"><strong>a.    Removing the ROM would have been within the technical grasp of one of skill in the art.</strong></p>

The evidence overwhelmingly demonstrates that removing the ROM from Martin's circuit would have been well within the reach of one of ordinary skill in the art. *KSR*, 127 S. Ct. at 1740 ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability"). The criteria agreed upon by the parties expressly recognizes that those of skill would not only be familiar with counters, digital to analog converters and oscillators, but also would have had 3-7 years experience building analog circuits for power supplies using these components. *Supra* at p.6. Based on this knowledge, one of ordinary skill surely would have been capable of removing the ROM from Martin's circuit and connecting the counter directly to the digital to analog converter.

In fact, Dr. Horowitz testified that removing the ROM would have been easy to one of

skill in the art, and that his college students (who are significantly below the level of skill in the art) would be able to build such a circuit by the end of a one semester beginners' course on circuit design. [9/19/07 Horowitz Trial Tr. 718:8-719:4]  There is absolutely nothing in the record to suggest it would have been difficult for one of ordinary skill to have built such a circuit.  This evidence thus strongly supports a determination that Claim 1 was obvious. *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (affirming judgment of invalidity based on obviousness where plaintiff presented "no evidence that the inclusion of a reader in this type of device was uniquely challenging or difficult for one of ordinary skill in the art").

### b.    Removing the ROM was a predictable variation.

One of ordinary skill would have reasonably expected the Martin circuit to successfully reduce peak EMI, even without the ROM.  In fact, a power supply designer, familiar with counters, digital to analog converters and oscillators, would have understood that connecting a counter directly to a digital to analog converter would result in a control signal that would vary incrementally.  They also would know that connecting such a varying control signal to the control input of a voltage controlled oscillator (as shown in Martin) would vary the switching frequency of a switch mode power supply.  [9/19/07 Horowitz Trial Tr. 712:22-713:16, 715:20-721:20]  Moreover, reading the Martin Patent, one of ordinary skill would have understood that such variation in switching frequency would reduce peak EMI.  [9/19/07 Horowitz Trial Tr. 721:21-723:4; DX 83, 1:49-68]  Indeed, using such spread spectrum techniques to reduce a peak signal was well known long before Martin.  *Supra* at p.6.  This use of known elements – counter, digital to analog converter and oscillator – to achieve a predictable, known result – varying frequency and reducing peak EMI – is exactly the obvious combination of known elements that is unpatentable under *KSR*.  127 S. Ct. at 1739 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.")

### c.   Design incentives and other market forces would have motivated one of skill in the art to remove the ROM.

One of ordinary skill in the art would have been motivated to remove the ROM from Martin's circuit if the signature of the power supply was not needed for a military or other covert purpose. *See KSR*, 127 S. Ct. at 1741 ("it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does"). In *KSR*, the Supreme Court expressly recognized that in a situation such as this, where design incentives and market forces prompt a predictable variation of known art, the variation is not patentable. *KSR*, 127 S. Ct. at 1740, 1742. As discussed *Supra* at pp. 8-9, the purpose of the ROM in Martin's circuit was to reduce the signature generated by radiated EMI. Reducing signature is only necessary in specialized military or other covert applications. One of ordinary skill in the art designing a power supply for typical civilian use would simply eliminate this signature reduction feature and remove the ROM memory as superfluous. *Supra* at 16-17. The designer of such a commercial power supply would be motivated to remove this unnecessary feature and thus to reduce the size, cost and complexity of the supply. *See Dystar*, 464 F.3d at 1368 (an implicit motive to combine exists when a combination "results in a product or process that is more desirable, for example because it is stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient."); *Leapfrog Enterprises, Inc.*, 485 F.3d at 1162 (designer would have been motivated to "update [the prior art] to use modern electronic components in order to gain the commonly understood benefits of such adaptation, such as decreased size, increased reliability, simplified operation, and reduced cost")

### d.   The Martin Patent disclosed all components and the common goal of EMI reduction, so no combination of art is necessary.

While the primary focus of *KSR* was to eliminate the "teaching, suggestion or motivation to combine" (hereinafter "TSM") requirement, and replace it with the more flexible standard, the decision also redefined the skill of one of ordinary skill in the art. Frequently, a TSM was used to combine multiple references to find all elements of a claim within the prior art. In the instant

case, all elements are within the prior art Martin Patent and the skill of one of ordinary skill in the art is merely used to remove the ROM memory which was directed to a separate feature of the Martin circuit. No dispute exists that all three of the principal electronic components were disclosed in a single reference nor that their combination was unique or different from the '876 combination except for the presence of the ROM memory. The *KSR* analysis found obviousness even in light of the more difficult task of combining two references to find all elements of the invalid claim. *KSR*, 127 S. Ct. at 1740, 1743-45. In contrast, the Martin Patent's disclosure of both all components and a common goal of EMI reduction point to a simpler and more straightforward case of obviousness.

In sum, Fairchild presented clear and convincing evidence establishing a prima facie case of obviousness for Claim 1 of the '876 Patent. The evidence shows that removing the ROM from Martin's circuit would have been a predictable solution to reducing EMI in a commercial power supply. This solution was well within the technical grasp of one of ordinary skill, who would have been motivated to remove the unwanted ROM memory to reduce size, cost and complexity of the power supply.

> **2.    Power Integrations Expert Mr. Blauschild Did Not Contradict Fairchild's Evidence That It Would Have Been Obvious To Remove The ROM From Martin's Circuit.**
>
> **a.    Blauschild's testimony regarding anticipation is irrelevant.**

Most of Mr. Blauschild's testimony regarding the Martin Patent was directed towards the *anticipation* of Claim 1 of the '876 Patent, or the other patents-in-suit. This testimony is simply not relevant to the issue of obviousness – while anticipation requires a showing that each and every claim limitation is met, an obviousness analysis merely requires a showing that the limitation was a predictable variation of the prior art. *KSR*, 127 S. Ct. at 1740. For example, Mr. Blauschild's testimony that the Martin circuit with the ROM in place does not meet the preamble limitation, "vary about a target frequency," because the variation is pseudorandom is irrelevant

to the obviousness inquiry.[6]  [9/20/07 Blauschild Trial Tr. 1063:3-4, 1063:15-23, 1067:2-5]  *It is undisputed that with the ROM removed, as argued for obviousness, Martin's circuit is identical to Claim 1 of the '876 Patent and would meet the preamble limitation.*  [9/19/07 Horowitz Trial Tr. 723:19-724:20; 9/20/07 Blauschild Trial Tr. 1077:3-11]  Accordingly, if Claim 1 jitters the switching frequency about a target frequency, then the circuit created by removing Martin's ROM likewise jitters the switching frequency about a target using identical components.  [9/19/07 Horowitz Trial Tr. 723:19-724:20]

Mr. Blauschild's statements that "it has to do with coupling and control of the signals" and that Martin "has this EPROM that couples things" are likewise irrelevant to obviousness.  [9/20/07 Blauschild Trial Tr. 1062:23-24, 1067:6-1069:4]  Again, Mr. Blauschild presumes that the ROM is always intact and not removed.  If the ROM were removed from Martin's circuit, as argued for obviousness, the coupling and control of the signals would be identical to the '876 Patent circuit of Claim 1.  [9/19/07 Horowitz Trial Tr. 723:19-724:20; 9/20/07 Blauschild Trial Tr. 1077:3-11]  A proper obviousness analysis does not focus solely upon the differences between the prior art and the alleged invention but must be viewed in light of the invention as a whole.  *KSR*, 127 S. Ct. 1734.  In his analysis, Mr. Blauschild consistently refused to do so.

### b.  Blauschild's testimony is insufficient to counter Fairchild's evidence that it was obvious to remove the ROM.

Even taken in a light most favorable to Power Integrations, Mr. Blauschild's testimony does not support a finding of nonobviousness.  The totality of Mr. Blauschild's testimony as to why it would not be obvious to remove the ROM from Martin's circuit was:

... and it wouldn't be obvious to take that out of Martin.  That's – that's what

---

[6]    Further, Mr. Blauschild never explained why pseudorandom variation around a target frequency was not sufficient to meet the language of the Court's construction of frequency jitter, which does not require repeatable or identical variation.  [*See generally* 9/20/07 Blauschild Trial Tr. 1063-1067; 1061:20-1062:2]  Dr. Horowtiz testified that the Martin circuit did in fact perform the frequency jitter called for in the patent and the Court's claim construction, regardless of whether the variation was random.  [9/19/07 Horowitz Trial Tr. 713:17-714:16]  In any event, this argument is irrelevant to Fairchild's argument that it would be obvious to remove the ROM that provides the pseudorandom variation.

> Martin does. That's the heart of Martin.
>
> . . .
>
> Well, I would be totally disregarding what Martin is teaching. We've heard this Humvee thing where you could just take some of the accessories off. Well, this would be like removing the engine. The ROM is the essential part of Martin. It's all over Martin's patent. It's in the only figure in the patent. It's in all the claims of the patent. It's what does what he wants to do, what he's describing as his invention. It's the only teaching in Martin is to use this ROM.

[9/20/07 Blauschild Trial Tr. 1063:11-14; 1069:12-1070:1]

This vague, conclusory testimony is most telling for its complete failure to address any of the critical factors cited by *KSR* and established by Fairchild. Mr. Blauschild did *not* testify that one of ordinary skill in the art would have been incapable of removing the ROM or directly connecting the counter to the digital to analog converter.[7] In fact, he did not even suggest that such changes to Martin's circuit would have been difficult or unknown at the time. He did *not* testify that removing the ROM from Martin's circuit would result in any surprising or unexpected results. Nor did he suggest that one of ordinary skill in the art would have had any reason to doubt that the modified circuit would vary the frequency of the power supply and successfully reduce EMI. In sum, Mr. Blauschild said nothing to contradict Dr. Horowitz's testimony that one of ordinary skill in the art with knowledge of the Martin Patent – who was interested in reducing EMI, but not concerned with reducing signature – would be capable of removing, and motivated to remove, the ROM from Martin's circuit. Mr. Blauschild instead ignored these *KSR* factors.

### c.    Martin did not teach away from removing the ROM.

Mr. Blauschild indirectly argued that Martin taught away from removing the ROM because the Martin Patent did not explicitly depict or claim a ROM-less circuit. The Supreme Court, however, expressly recognized that "the analysis need not seek out precise teachings directed to the specific subject of the challenged claim, for a court can take account of the

---

[7]      As even Mr. Blauschild recognizes, his testimony that the ROM of Martin is "a type of thing that, as I mentioned, is incompatible with other circuits, with integrated circuits for the other patents" is not relevant to the analysis of Claim 1 of the '876 Patent. [9/20/07 Blauschild Trial Tr. 1062:14-22]

inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 127 S. Ct. at 1741. Indeed, requiring Martin to disclose the exact circuit of Claim 1 would simply eliminate obviousness as a legal defense and replace it with anticipation. Mr. Blauschild's argument that removing the ROM was not obvious because "[t]o my knowledge no one has ever made the combination" is unavailing for the same reason. [9/20/07 Blauschild Trial Tr. 1046:5-6] Mr. Blauschild essentially applied an anticipation standard and not obviousness.

Further, Mr. Blauschild could not cite to any specific language in the Martin patent teaching away from the circuit of Claim 1. The Federal Circuit has explicitly rejected reading a teaching away into a reference based on the absence of disclosure, and instead requires an express teaching away in the document. *Dystar*, 464 F.3d at 1364 ("We will not read into a reference a teaching away from a process where no such language exists.")

### d.    Blauschild ignored Martin's goal of reducing EMI.

Mr. Blauschild also totally disregarded the broader disclosure of the Martin Patent and instead improperly limited the scope of that prior art to the preferred embodiment and claimed invention. This is improper as the entirety of the Martin Patent disclosure is considered prior art, not just the claims or diagrams. *See Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252 (1965) (holding that all disclosures contained in a patent become a part of the prior art). Mr. Blauschild *never acknowledged the expressly stated goal set forth by Martin – reducing EMI noise without using expensive filters. See Supra* at 7-9. He also ignored that the purpose of the ROM in Martin's circuit was to remove the signature of the radiation, and that the circuit would reduce EMI noise even without the ROM. Mr. Blauschild argued that since Martin's circuit was designed also to reduce signature, a commercial power supply designer, striving to reduce only EMI noise, would ignore the teachings of Martin completely. The Supreme Court expressly rejected this exact argument in *KSR*. 127 S. Ct. at 1742 ("The idea that a designer hoping to make an adjustable electronic pedal would ignore Asano because Asano was designed to solve the constant ratio problem makes little sense. A person of ordinary skill is also a person of ordinary creativity, not an automaton.") Mr. Blauschild never applied this level of "ordinary

creativity" in his analysis.

Finally, Mr. Blauschild's assertion that "the essence of the invention" of the '876 Patent
is "how to do something simpler" is unsupported by the evidence. [9/20/07 Blauschild Trial Tr.
1070:19-1071:1] There is no evidence that the inventors of the '876 Patent were attempting to
simplify Martin's circuit. In any event, a patent should not be awarded for the easy task of
removing a ROM from Martin's circuit as it is simply the work of a skilled circuit designer, not
of an inventor. *Dystar*, 464 F.3d at 1371 (new, more efficient way of dyeing indigo was "merely
'exploitation'" of well known principals and "the work of a skilled chemist, not of an inventor").

In sum, Mr. Blauschild's testimony did not contradict Fairchild's clear and convincing
evidence that it would have been obviousness to remove the ROM memory from Martin's circuit
if reducing the signature of the power supply was not necessary.

### 3. Any Secondary Considerations Are Insufficient To Overcome Fairchild's Prima Facie Evidence Of Obviousness.

Although secondary considerations "might be utilized to give light to the circumstances
surrounding the origin of the subject matter sought to be patented," *Grahm*, 383 U.S. at 17-18,
such considerations typically are insufficient to overcome strong prima facie evidence of
obviousness. It is axiomatic that these considerations are secondary to the primary analysis of
obviousness. *Leapfrog Enterprises*, 485 F.3d at 1162 (substantial evidence of commercial
success, praise, and long-felt need were inadequate to overcome strong prima facie showing of
obviousness); *Dystar*, 464 F.3d at 1371 (evidence of commercial success and 80 year lapse
between prior art and claimed invention were inadequate to overcome conclusion that evidence
only supported a legal conclusion of obviousness). In the instant case, the evidence of secondary
considerations put forth by Power Integrations are not supported by substantial evidence and are
not sufficient to overcome Fairchild's clear and convincing evidence of obviousness

### a. There is no substantial evidence linking any commercial success of Power Integrations' products to the invention of Claim 1.

Power Integrations' assertions that the success of its products is attributable to the

purported invention of the '876 Patent are not supported by substantial evidence. [9/19/07 Balakrishnan Trial Tr. 899:10-901:15; 9/20/07 Renouard Trial Tr. 958:19-21] Although Mr. Balakrishnan bluntly states that this assertion is "based on the feedback we have gotten" he does not provide even a brief explanation as to what that feedback is or who it was from. [9/19/07 Balakrishnan Trial Tr. 901:11-15] Notably, Mr. Renouard, Power Integrations Vice President of Worldwide Sales, did *not* suggest that his department received any feedback from customers that they purchased Power Integrations products because of the digital frequency jitter feature of the '876 Patent. [*See* 9/20/07 Renouard Trial Tr. 958:19-21, 960:10-965:12]

In fact, it is unlikely that customers even know whether a product implements **digital** frequency jitter, as opposed to the **analog** frequency jitter of the '851 Patent. Although Power Integrations' datasheets indicate whether a product includes frequency jitter, they do not specify whether it is the digital jitter of the '876 Patent or the analog jitter of the '851 Patent.[8] [*See* PX 27, PX 34] Indeed, most of Mr. Renouard's testimony focuses on the desirability of "integrating" the frequency jitter, which relates to the '851 Patent, *not* the '876 Patent. This testimony thus is irrelevant to the obviousness inquiry for the '876 Patent. [9/20/07 Renouard Trial Tr. 961:6-963:3] Even viewed in a light most favorable to Power Integrations, the evidence does not link the commercial success of any Power Integrations' product to the invention of the '876 Patent.

####         b.        There is no evidence of failure by others, and the evidence of long felt need is insufficient.

Mr. Blauschild testified that in the mid 90's, there was an "evolution" to smaller power supplies, which created a need to "make the EMI filter smaller." [9/20/07 Blauschild Trial Tr. 1043:7-16] This testimony should be disregarded by the Court because it was beyond the scope

---

[8]        PX 27 is a datasheet for Power Integrations' TopSwitch, which according to Mr. Balakrishnan utilizes the analog frequency jitter of the '851 Patent. [9/19/07 Balakrishnan Trial Tr. 887:3-8] PX 34 is a datasheet for Power Integrations' TinySwitch, which Mr. Balakrishnan indicates uses the digital frequency jitter of the '876 Patent. [9/19/07 Balakrishnan Trial Tr. 899:10-12, 900:18-22] Nothing in these datasheets suggests that the method of frequency jitter utilized is different.

of Mr. Blauschild's expert report and timely objected to at trial.[9] [9/20/07 Blauschild Trial Tr. 1043:2-4]  Moreover, Mr. Blauschild was unable to answer the question of "whether others tried to solve the problem and failed," and instead simply responded that no one had "come up with this" before.  [9/20/07 Blauschild Trial Tr. 1043:18-1044:7]  Mr. Blauschild's testimony in this regard boils down to a long felt need argument.  His conclusory statement that "Martin had been around I said eleven years before the patent, no one ever did anything like that.  And there were a lot of companies working in that space" [9/20/07 Blauschild Trial Tr. 1071:2-8] is not sufficient to overcome the substantial evidence that Claim 1 was a predictable variation.[10]  *See Dystar*, 464 F.3d at 1371 (rejecting argument that *80 year* lapse between prior art and invention was sufficient to overcome prima facie evidence of obviousness).

### c.    There is no substantial evidence of copying.

When asked about copying of the '876 Patent Mr. Blauschild simply stated "Mr. Jang [a Fairchild engineer] had the '876 patent in his development – during his development.  I looked at the Fairchild products." [9/20/07 Blauschild Trial Tr. 1042:7-16]  Again, his testimony is telling for what he could not testify to truthfully – that the Fairchild products are a copy of the embodiment disclosed in the '876 Patent.  They are not.  [9/20/07 Jang Trial Tr. 973:12—975:4 (describing Fairchild's development of its own frequency modulation circuit)].  In the embodiment disclosed in the patent, the frequency variation is performed using current sources. [9/20/07 Jang Trial Tr. 987:18-989:10]  In contrast, in the Fairchild products the frequency variation is performed using voltage levels (a patented Fairchild method).  [9/20/07 Jang Trial Tr. 989:2-18, 990:5-18]  Vague and unsupported statements by Power Integrations' paid expert are insufficient to contradict Mr. Jang's testimony that he did not "copy" the embodiment

---

[9]      *See* Tab 2, Supplemental Rebuttal Expert Report of Robert Blauschild, ¶10, which demonstrates that Mr. Blauschild did not discuss an "evolution" to smaller power supplies in the 1990s creating a need to "make the EMI filter smaller."

[10]      Mr. Blauschild's testimony that having the same frequency variation signal driving both the soft start and frequency variation functions is "just to big a coincidence to say that they came up with that all of a sudden by themselves" is irrelevant to the '876 Patent, which does not include soft start.  [9/20/07 Blauschild Trial Tr. 1045:11-21]

disclosed in the '876 Patent.

**B.    The Jury Instructions Regarding Obviousness And Hindsight Improperly Required A Rigid Analysis Of The Prior Art In Violation Of *KSR v. Teleflex*.**

**1.    *KSR* Instructed Courts To Apply An "Expansive And Flexible" Inquiry To The Determination Of Obviousness.**

The jury instructions regarding obviousness and hindsight failed to incorporate any substantive aspect of *KSR v. Teleflex*, and consequently failed to instruct the jury to follow the "expansive and flexible" inquiry for obviousness required by the Supreme Court in *KSR*. 127 S. Ct. at 1739. Because the instructions misstate the law, it is a reversible error, subject to *de novo* review by the Federal Circuit. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270 (Fed. Cir. 2004).[11] Moreover, the new obviousness standard is no formalism, as the Federal Circuit has already reversed two district court determinations of nonobviousness using a more expansive approach to obviousness than what was instructed in this case. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007); *Dystar*, 464 F.3d at 1367 (reversing a district court's denial of a motion for JMOL on obviousness grounds, finding that the district court had failed to consider "consideration of common knowledge and common sense.")[12]  Of course, *KSR* itself reversed the Federal Circuit's determination of nonobviousness under the previous test.

The core of the *KSR* decision is a "common sense" admonition against patenting "predictable variations" of the prior art:

> When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, 35 U.S.C. 103 bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious

---

[11]    Third Circuit law holds that an appellate court must exercise plenary review over jury instructions that misstate the law. *Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 549 (3rd Cir. 1999) ("We exercise plenary review to determine whether jury instructions misstated the applicable law, but in the absence of a misstatement we review for abuse of discretion.").

[12] These cases issued after *certiorari* was granted in *KSR*, and both advocated a more expansive inquiry than "teaching-suggestion-motivation," predicting the Supreme Court's decision.

unless its actual application is beyond his or her skill.

*KSR*, 127 S. Ct. at 1740.

The *KSR* Court noted that this holding was a rejection of the rigid approach focused on an explicit "teaching-suggestion-motivation" in the prior art, and that "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."[13] *Id.* at 1741. The Court also cautioned against undue fear of hindsight in the analysis: "A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning. Rigid preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it." *Id.* at 1742-43 (citations omitted).

> ### 2. The Jury Instructions Did Not Sufficiently Account For The Change In The Obviousness Inquiry Set Forth In *KSR*.

The jury instructions in this case failed to instruct the jury about this dramatic loosening of the obviousness standard, and accordingly misstated the law of obviousness. The only difference between the jury instructions in this case and Delaware's Model Patent Jury Instructions, which have not been updated since the *KSR* decision, was replacing:

> The suggestion or motivation to combine and the expectation of success must be found in either: the prior art itself, the knowledge of persons of ordinary skill in the art, or, in some cases, the nature of the problem to be solved.

With

> In addition, you may consider whether there was a reason to combine or to modify the prior art references in the fashion claimed by the patent at issue, but, in doing so, you must guard against slipping into the use of hindsight.

[9/21/07 Trial Tr. 1586:23-1587:4]

Though Power Integrations will doubtlessly argue that its revised instruction does not contain the literal words "teaching, suggestion, motivation," the instruction is more notable in

---

[13]    The *KSR* Court did note that though the "T-S-M" test did not control the obviousness inquiry, it did "capture[] a helpful insight." *Id.*

what else it lacked -- the "flexible and expansive" approach *required* by the Supreme Court in *KSR*. Indeed, it fails to convey any aspect of the *KSR* Court's admonition against the patenting of "predictable variations," the use of "common sense" in obviousness inquiries, the consideration of market forces and design incentives in assessing a motivation to combine, or any other aspect of the *KSR* decision's impact on the §103 analysis. Indeed, it is debatable whether this new sentence is any less restrictive than the Model Jury Instruction, given that it includes a warning that jurors should not use hindsight in determining obviousness, a warning that was absent from the original Model Jury Instruction.

This defect is compounded by the instruction on hindsight, which is directly taken from the Model Jury Instructions, and states that "[i]t is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit." Again, no mention of the role of "common sense" or the prohibition against "rigid preventative rules" is contained in these instructions. In reality, the hindsight instructions only state a strong proscription against the combination of references, warning the jury against using the patents-in-suit as a "guide," without informing them that "common sense" combinations and modifications to the prior art are required post-*KSR*.

### 3. Other Courts Have Modified Jury Instructions To Fully Account For *KSR*.

Though Power Integrations argued prior to trial that an accurate recitation of the mandate of *KSR* would "confuse" the jury, this is *precisely* how post-*KSR* obviousness instructions have read. In the recently decided case of *Forgent v. Echostar*, No. 6:06-CV-208 (E.D. Tex.), the jury received obviousness instructions that are much more in line with the holding of the *KSR* Court than the instructions given in this case:

> It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was

an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.

[Tab 3, Forgent Jury Instructions, at 20-21] The *Forgent* instruction clarifies the flexibility the finder of fact has in making the factual determinations underlying obviousness, as required by *KSR*. Following the giving of these jury instructions, the jury returned a verdict of invalidity of the patents-in-suit. [Tab 4, Forgent Verdict Form]

Similar language was contained in Fairchild's proposed jury instructions for obviousness:

In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patent owner controls. Rather, modifications or combinations that are within the grasp of a person of ordinary skill may be obvious if they yield predictable results.

To determine whether a person of ordinary skill would be capable of modifying or combining prior art in the manner claimed, you should take account of the inferences and creative steps that a person of ordinary skill in the art would employ. Common sense teaches that to persons of ordinary skill and creativity, familiar items may have obvious uses beyond their primary purposes and that a person of ordinary skill will be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle.

In determining whether the results of a modification or combination of prior art are predictable, you should consider whether it yields no more than one would expect from such variation or arrangement, or whether each known element continues to perform the same functions it was known to perform.

You may also consider whether there was a reason to modify or combine known elements. Any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for modifying or combining elements in the manner claimed. For example, design incentives or trends and other market forces may prompt variations or combinations of prior art.

[Fairchild's Proposed Jury Instruction - Obviousness IV.9, DI 550 at pp 49-50] Fairchild respectfully submits that had the jury been provided these instructions, it is likely that they would have properly applied the obviousness analysis, and determined that Claim 1 of the '876 Patent was an obvious variation of the Martin Patent.

### 4.    The Patent Office Modified Its Obviousness Guidelines For Patent Examiners.

The U.S. Patent Office has also recognized that *KSR* has completely changed the obviousness inquiry, and on October 10, 2007 published radically revised obviousness guidelines for examiners reviewing patent applications.  The Patent Office emphasized that examiners should avoid "rigid preventative rules," stressing that "[a] person of ordinary skill in the art is also a person of ordinary creativity, not an automaton.  [I]n many cases <u>a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle</u>.  Office personnel may also take into account the inferences and creative steps that a person of ordinary skill in the art would employ."  [Tab 5, PTO Rules at p. 57528 (internal marks and footnotes omitted)]  Fairchild offered similar language in its proposed obviousness and hindsight instructions.  [Fairchild's Proposed Jury Instruction - Obviousness IV.9 and Hindsight IV.9.5, DI 550 at pp 49-50, 58]

The Patent Office further identified seven rationales, based on *KSR,* that examiners use in determining obviousness:

> (A) Combining prior art elements according to known methods to yield predictable results;
>
> (B) Simple substitution of one known element for another to obtain predictable results;
>
> (C) Use of known technique to improve similar devices (methods, or products) in the same way;
>
> (D) Applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;
>
> (E) "Obvious to try"—choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;
>
> (F) Known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations would have been predictable to one of ordinary skill in the art;
>
> (G) Some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.

[Tab 5, PTO Rules at p. 57529]  Despite Fairchild's request, none of these rationale were

included in the jury instructions in the instant case.

**C.     The Presumption of Validity Instructions Failed To Account For The Fact That Fairchild Relied Upon Art That Was Not Before The Examiner.**

Fairchild is also entitled to a JMOL since the jury was instructed (over Fairchild's objection) to apply an improper and illogical presumption of validity to the '876 Patent, notwithstanding the fact that the examiner never considered the Martin Patent during prosecution. Under these circumstances, the presumption served to unfairly bolster the '876 Patent in the jury's eyes, and is likely to have caused the jury to give unwarranted deference to the examiner's issuance of the '876 Patent. Accordingly, the Court should not be persuaded by the jury's erroneous findings, and should find that Claim 1 is obvious as a matter of law.

The presumption has been called into question repeatedly through the years, most recently by the Supreme Court in *KSR*. 127 S. Ct. at 1745. Though the Court did not need to discuss the presumption in *KSR*, as the asserted prior art (which was not before the examiner) had met the standard for invalidity in any event, the Court felt compelled to note "We nevertheless think it appropriate to note that the rationale underlying the presumption-that the PTO, in its expertise, has approved the claim-<u>seems much diminished here</u>." *Id.* (emphasis added).

The Supreme Court's comment in *KSR* is a common sense proposition, as the application of the presumption makes less sense when facts that were not considered by the Patent Office and undermine its determination of validity are at issue. Indeed, even before the Supreme Court's decision in *KSR*, the Federal Circuit had long acknowledged that the burden of showing invalidity may be "more...easily carried" through the presentation of prior art that the Patent Office did not consider during prosecution. *See, e.g., Kahn v. General Motors, Inc.*, 135 F.3d 1472, 1480 (Fed. Cir. 1998) ("The presentation of evidence that was not before the examiner does not change the presumption of validity, although the burden may be more or less easily carried because of the additional evidence.")(citing *Applied Materials v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996)).

The Federal Circuit recently held that the language of these cases only suggested that defendants "may" more easily meet their clear and convincing burden and thus does not compel courts to provide an instruction that the defendant's "burden is more easily carried when the references on which the assertion is based were not directly considered by the examiner during prosecution." *Z4 Technologies, Inc. v. Microsoft Corporation*, 2007 U.S. App. LEXIS 26567, *33-35 (Nov. 16, 2007). The *Z4 Technologies* court, however, did not directly address the presumption of validity or the *KSR* Court's statement that the rationale underlying the presumption seems much more diminished in the present situation, where Fairchild is relying on art that was not before the Patent Office. To the extent that the Federal Circuit's decision in *Z4 Technologies* is inconsistent with the Supreme Court's statement, Fairchild respectfully submits that it is in error.

As a practical matter, the fact that the Patent Office does not canvass the entirety of the prior art during prosecution of any given patent is undisputable. Patent examiners, who are rarely experts in the technology of a given patent application, spend on average 16 to 17 hours over a three-to-four year period for a given patent application. *See* John R. Thomas, Collusion and Collective Action in the Patent System: A Proposal for Patent Bounties, 2001 U. ILL. L. REV. 305, 314 (2001); Kristen Osenga, Entrance Ramps, Tolls, and Express Lanes—Proposals for Decreasing Traffic Congestion in the Patent Office, 33 FLA. ST. U. L. REV. 119, 130 (2005). This is barely an adequate period of time to read a patent's disclosure in some cases, let alone study every piece of relevant prior art that may exist. Given this reality, it is simply not plausible to expect that uncited prior art has been considered by the Patent Office in allowing a patent.[14]

Power Integrations argued at trial that the jury instructions regarding the presumption were mandated pursuant 35 U.S.C. § 282. [PI 9/19/07 Letter Br., DI 551 at 4] This argument is

---

[14]    The PTO has itself acknowledged this reality in various of its recent reforms, including its recent Pilot "Peer-to-Peer" patent program that calls on the public to supply it with relevant prior art for patents being prosecuted. [*See* Tab 6, U.S. Patent and Trademark Office, Official Gazette Notice: Pilot Concerning Public Submission of Peer-Reviewed Prior Art]

simply groundless. 35 U.S.C. § 282 makes no requirement regarding jury instructions during trial, which is a matter of discretion for the trial court. At best, 35 U.S.C. § 282 can be relied upon for the proposition that Fairchild bears the burden of persuasion by clear and convincing evidence, a proposition that is not in dispute, and is clear from the jury instructions. What 35 U.S.C. § 282 does not require is highly prejudicial jury instruction that blinders the jury from the correct obviousness analysis required by the Supreme Court or suggest an immoveable standard even in light of prior art never considered by the Patent Office in issuing the patent-in-suit. Fairchild proposed at trial that the jury should be instructed that the presumption was much diminished, where, as in the instant case, Fairchild is relying upon prior art that was not before the examiner. [Fairchild's Proposed Jury Instruction – Burden of Proof I.3, Presumption of Validity IV.1, DI 550 at pp 4, 26] Fairchild respectfully submits that if the jury had been so instructed, it is likely that they would have determined that Fairchild met its burden of proving that Claim 1 of the '876 Patent was invalid in light of the prior art Martin Patent.

## VI.    CONCLUSION.

For the foregoing reasons, Fairchild respectfully requests that the Court order, as a matter of law, that Claim 1 of the '876 Patent is not infringed by any Fairchild product and is invalid as obvious in light of the Martin Patent.

ASHBY & GEDDES

/s/ *John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

33

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  December 3, 2007
186365.1