# TAB 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **FORGENT NETWORKS, INC.** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **6:06-CV-208** |
| | § | |
| **ECHOSTAR TECHNOLOGIES** | § | |
| **CORPORATION, et al.,** | § | |
| | § | |

## COURT'S CHARGE

## 1. GENERAL INSTRUCTIONS

MEMBERS OF THE JURY,

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have

1

called them, and all exhibits received in evidence, regardless of who may have produced them.

**1.1 Considering witness testimony**

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has

made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**1.2 How to examine the evidence**

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The

3

other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

### 1.3 Expert witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying.

## 2. STIPULATIONS

The parties have agreed, or stipulated to the following facts. This means that both sides agree that these are facts. You must therefore treat these facts as having been proved:

1. The patent-in-suit is U. S. Patent No. 6,285,746, which is sometimes referred to as "the '746 patent." The '746 patent is assigned to Forgent Networks, Inc., the Plaintiff in this case. The '746 patent was issued on September 4, 2001.

2. The asserted claims of the '746 patent are claims 1 through 4.

3. Defendant Echostar does not contest and stipulates that its accused DVR devices infringe the '746 patent, but does not stipulate that the '746 patent is valid.

## 3. SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on these issues.

### 3.05  Summary Of Patent Issues

You must decide the following three main issues:  Is the '746 patent invalid for any of the reasons EchoStar alleges?  If it is not invalid, then you may assume Echostar's products infringe the '746 patent, and your next question will be was EchoStar's infringement of the '746 patent willful?  And finally, what damages, if any, should be awarded?

### 3.1 Forgent's Contentions

Forgent contends that EchoStar is infringing the '746 patent by EchoStar's manufacturing and use of EchoStar's DVRs and its infringement is willful.  Forgent contends it is entitled to damages caused by that infringement.

### 3.2 EchoStar's Contentions

EchoStar first contends that the '746 patent is invalid.  However, EchoStar has chosen not to contest the fact that its products do infringe the '746 patent if it is not invalid.  While EchoStar does not contest the issue of infringement, it does contend that any infringement was not willful and that Forgent is not entitled to the damages it seeks.

### 3.3 Burdens of Proof

"Preponderance of the evidence" means evidence that persuades you that a claim is more likely true than not true.

"Clear and convincing evidence" means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion

5

than is necessary for the preponderance of the evidence standard. The proof must establish in your mind a firm belief or conviction that the claim is true.

In determining whether any fact has been proved by either burden of proof, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

EchoStar has the burden of proving that the '746 is invalid by clear and convincing evidence. Forgent has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence. Forgent has the burden of proving its damages by a preponderance of the evidence.

## 4. CLAIMS OF THE PATENT IN SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts or steps, called "limitations" or "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

### 4.1 Construction of the Claims

In deciding whether or not a claim is invalid, the first step is to understand the

6

meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. It may be helpful to refer to the copies of the '746 patent that you have been given as I discuss the claims at issue here.

**4.15 Glossary of Patent Terms**

The following are definitions for patent terms that you should use in this case.

Application – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

Claims – Claims are the numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

Comprising – The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" is not limited to products or methods having only the elements that are recited in the claim limitations, but also covers products or methods that have all of the elements and add additional elements without changing the required limitations.

Take as an example a claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the

7

legs.  However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table.

<u>File Wrapper</u> - See prosecution history below.

<u>License</u> – Permission to use the patented invention, which may be granted by a patent owner in exchange for a fee called a "royalty" or other consideration.

<u>Office Action</u> – Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

<u>Patent Examiners</u> – Personnel employed by the United States Patent and Trademark Office ("PTO") who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

<u>Prior Art</u> – Knowledge that is available to the public either prior to the invention by the applicant or more than a year prior to the effective filing date of his/her patent application.

<u>Prosecution History</u> – The written record of proceedings in the United States Patent and Trademark Office ("PTO") between the applicant and the PTO. It includes the original patent application and later communications between the PTO and the applicant.  The prosecution history may also be referred to as the "File wrapper" of the patent during the course of this trial.

<u>Reasonable Royalty</u> – the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

<u>References</u> - Any item of prior art used to determine patentability.

<u>The</u> – Use of the word "the" in the beginning of a phrase indicates that it is referring to a previous use of the same or a similar phrase.

<u>Said</u> – Use of the word "said" in the beginning of a phrase indicates that it is referring to a previous use of the same or similar phrase.

<u>Specification</u> – The specification is the information, which appears in the patent and concludes with one or more claims. The specification includes the written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.

<u>Ordinary Skill in the Art</u> – From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art." This hypothetical person is presumed to be aware of all of the prior art and knowledge that existed in the field during the relevant time period. The skill of the actual inventor and experts is irrelevant, because they may possess something that distinguishes them from workers of ordinary skill in the art.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**4.2 Interpretation of Claims**

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. In accordance with that duty, I have interpreted the meaning of some of the language in the patent claims involved in this case. My interpretation of those claims appear in Appendix A to this charge. You must accept as correct the interpretations contained in Appendix A as defined by the Court. The claim language I have not interpreted for you in Appendix A is to be given its ordinary and

9

accustomed meaning as understood by one of ordinary skill in the art.

### 4.3  Independent and Dependent Claims

Patent claims may exist in two forms, referred to as independent claims or dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  Claim 1 of the '746 patent is the patent's only independent claim.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each and every one of the limitations of the other claim to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look both at the dependent claim and at the other claim or claims to which it refers.

Claims 2, 3, and 4 of the '746 patent are dependent claims.  To determine, for example, if claim 2 is invalid, the words of that claim and the words of independent claim 1 must be read together.

### 5. INFRINGEMENT

A device infringes a patent claim if it contains each and every limitation of that particular claim.  EchoStar does not contest and stipulated for purposes of this trial that its accused DVR devices infringe the '746 patent, so you do not need to decide this issue, but you do need to decide if such infringement was willful.

### 5.1 Willful Infringement

Forgent contends that EchoStar willfully infringed the '746 patent claims.

When a person or company becomes aware that a patent may have relevance to its activities, they have a duty to exercise due care and investigate whether or not their activities

10

or proposed activities infringe any valid claim of the patent. If they did not do this and are found to have infringed the patent claims, then the infringement was willful.

The issue of willful infringement is relevant to the amount of damages to which Forgent is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that EchoStar willfully infringed the '746 patent claims, then it is my job to decide whether or not to award increased damages to Forgent. You should not consider willful infringement in making your damage award, if any.

The burden of proving that the infringement was willful is the clear and convincing evidence standard.

To establish willful infringement, Forgent must prove two things by clear and convincing evidence. First, Forgent must prove that EchoStar was aware of that patent. Second, Forgent must prove that EchoStar proceeded with the activities that are accused of infringement without a good faith belief that the patent was either invalid, not infringed, or both.

In determining whether or not EchoStar acted in good faith, you should consider all of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to: whether EchoStar made a good faith effort to avoid infringing the patent, whether EchoStar deliberately copied a patent holder's ideas or designs, whether EchoStar obtained and followed the advice of a competent lawyer, EchoStar's behavior as a party to this litigation, and whether or not EchoStar instead tried to "design around" the patent by designing a DVR that EchoStar believed did not infringe the patent claims. Evidence of copying the patent is evidence of willful infringement. On

11

the other hand, evidence that EchoStar attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful. Although the absence of a lawyer's opinion does not require you to find willfulness, the obtaining and following of a lawyer's advice may be evidence that infringement was not willful.

In evaluating EchoStar's reliance on the advice of a lawyer, you should consider when EchoStar obtained the advice, the quality of the information EchoStar provided to the lawyer, the competence of the lawyer's opinion, and whether or not EchoStar relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to invalidity and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

The fact that you may have determined that EchoStar was wrong and that EchoStar admits it infringes the '746 patent does not mean that EchoStar's infringement was willful. All that is required to avoid a finding of willful infringement is that EchoStar had a good faith belief that it did not infringe or that the patent was invalid and that its belief was reasonable under all of the circumstances.

### 6. INVALIDITY

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful, and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful," and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss EchoStar's grounds for asserting invalidity. The law also requires that the description in the patent specification of the

12

invention must be complete.  This is called the "written description requirement."

EchoStar has challenged the validity of the '746 patent claims on a number of grounds.  Since there is a presumption that the United States Patent and Trademark Office acted correctly in issuing a patent, EchoStar must prove that a patent claim is invalid by clear and convincing evidence.

I will now explain to you each of EchoStar's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

**6.1 Written Description**

A patent must contain a written description of the invention claimed in the patent. In order to satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.

A patent discloses preferred embodiments of the invention at the time the patent application is filed.  The law does not require a patentee to describe every conceivable and possible future embodiment of his invention in the specification of the patent.  You must review the entire specification to determine whether support for the claim limitations are present.  I have interpreted the claims as a matter of law and will provide the construction of these terms.

EchoStar contends that claims 1-4 of the '746 patent are invalid for lack of an adequate written description of the claimed invention. If you find that EchoStar has proven by clear and convincing evidence that the '746 patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

**6.2  Prior Art**

13

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. Otherwise, the claim is invalid. That which came before is referred to as the "prior art." Prior art can include anything that was already invented, publicly known, already made by someone else, already described in a printed publication or issued patent, or described in a patent application. I will describe these categories of prior art more fully in a moment. A prior art reference must be analyzed as a person of ordinary skill in the field would understand its disclosure.

EchoStar is relying on the following prior art references to show that the patent is invalid:

1. U.S. Patent No. 5,241,428 to Goldwasser

2. U.S. Patent No. 4,682,248 to Schwartz

3. Luther, "Digital Video in the PC Environment."

**6.2.1 Prior Art-Date of Invention**

Many of the different categories of prior art refer to the date by which the inventor made the invention. This is called the "date of invention." In this case, the date of invention is the date on which the '746 patent relies upon for priority, which is the filing date of the patent, May 21, 1991.

I will now describe the specific requirements for the prior art categories relied on by EchoStar in this case.

**6.2.3  Prior Art – Prior Patent**

An issued patent may be prior art to a patent claim under a number of different circumstances. First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued before Forgent's filing date for its patent.

14

A U.S. patent or published U.S. patent application may be prior art to a patent claim, even if the patent that issued from that application was issued after the date of invention of the claimed invention. This occurs when the patent application for the U.S. patent was filed by another person before the inventor made the claimed invention.

In this case, EchoStar relies on United States Patent No. 5,241,428 to Goldwasser as a prior art patent to the asserted patent claims.

### 6.2.4  Prior Art – Prior Printed Publication

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public. Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public. Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims. The date of invention is irrelevant to this category of prior art.

In this case, EchoStar relies on Luther, "Digital Video in the PC Environment" as a

15

prior art printed publication to the '746 patent claims.

### 6.3  Anticipation – Lack of Novelty

A patent claim is invalid if the claimed invention is not new.  For a claimed invention to be invalid as not new, all of its requirements must be in a single previous device or method, or described in a single previous publication or patent.  We call those things "prior art references."  The description in a reference does not have to be in the same words as the claim, but all the requirements must be there, either expressly or inherently, so that someone of ordinary skill in the field looking at that one reference would have everything necessary to make and use the claimed invention.  Something is inherent in an item of prior art if it is always present in the prior art, or always results from the practice of the prior art, and if a skilled person would understand that to be the case.  You may not combine two or more items of prior art to make out an anticipation.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  Factors to be considered in determining whether a disclosure would require undue experimentation include:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are

16

always present in the prior art or always result from the practice of the prior art. EchoStar must prove by clear and convincing evidence that the inventions recited in these claims of the '746 patent are present in U.S. Patent No. 5,241,428 to Goldwasser.

EchoStar must prove Anticipation for Lack of Novelty by clear and convincing evidence.

### 6.3.1 Anticipation by Prior Patent

A claim in a patent is invalid if the invention defined by that claim was patented in the United States before it was invented by the inventor of the patent-in-suit or more than one year before the inventor patentee filed his United States patent application.

To show anticipation of the patented invention, EchoStar must show by clear and convincing evidence that the prior patent disclosed all of the elements of each claim of the patent that EchoStar contends is invalid. As with a printed publication, the disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation (you may refer back to the instructions on Anticipation for Lack of Novelty for the eight factors to consider when determining undue experimentation).

### 6.4 Obviousness

EchoStar contends that various claims of the patent-in-suit are invalid because the claimed invention was obvious to one of ordinary skill in the art at the time the invention was made. To be patentable, an invention must not have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the

17

patent claims are invalid. EchoStar has the burden of proving by clear and convincing evidence that claims of the '746 patent are invalid for obviousness. Each claim must be considered separately.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art. EchoStar bears the burden of proving this defense by clear and convincing evidence.

You must not use hindsight when comparing the prior art to the invention for obviousness. In making a determination of obviousness or non-obviousness, you must consider only what was known before the invention was made. You may not judge the invention in light of present day knowledge or by what you learned from or about the '746 patent during trial.

In determining whether or not EchoStar has established obviousness of a claim of the patent-in-suit patent by clear and convincing evidence, you must consider the following:

1. The scope and content of the prior art put into evidence in this case;

2. The differences, if any, between each claim of the patent and that prior art;

3. The level of ordinary skill in the art at the time the invention was made;

4. Any objective indications of nonobviousness including the following secondary considerations, which may give light to the circumstances surrounding the origination of the subject matter of the '746 patent:

        a. Commercial success of the products or methods covered by the patent claims;

b.  A long-felt need for the invention;

c.  Failed attempts by others to make the invention;

d.  Copying of the invention by others in the field;

e.  Unexpected results achieved by the invention;

f.  Praise of the invention by the alleged infringer or others in the field;

g.  The taking of licenses under the patent by others;

h.  Expressions of surprise by experts and those skilled in the art at the making of this invention; and

I.  The patentee proceeded contrary to accepted wisdom of the prior art.

To be relevant to your determination of obviousness, any of these secondary considerations must have a connection, or "nexus," to the claimed invention set forth in the patent claims.  If a secondary consideration is unrelated to the claimed invention, but is instead attributable to something else, such as innovative marketing, then you should not consider it relevant to your obviousness determination.

If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those items. A claim is not obvious merely because all of the elements of that claim already existed.  One test you may consider when determining an asserted claim of obviousness, is whether there was some teaching, suggestion, or motivation to combine the items in the prior art into the particular claimed combination.

The prior art also must be complete enough to enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.

I will now describe in more detail the specific determinations you must make in

deciding whether or not the claimed invention would have been obvious.

### 6.4.2  The Scope and Content of the Prior Art

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by EchoStar. You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

### 6.4.3 Differences Between the Invention of the Claims and the Prior Art

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

One way to decide whether one of ordinary skill in the art would combine what is described in various items of prior art, is whether there is some teaching, suggestion, or motivation in the prior art for a skilled person to make the combination covered by the patent claims. Motivation can be implicit.  In other words, motivation need not be explicit.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  Multiple references in the prior art can be combined to show that a claim is obvious.  Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed.  To determine whether there was an apparent reason to combine the known elements in the way

a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.

**6.4.4 Level of Ordinary Skill**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinarily skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**6.4.5 Determination of Obviousness**

EchoStar contends that the inventions claimed in claims 1-4 of the '746 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of combinations of the following prior art:

1. U.S. Patent No. 5,241,428 to Goldwasser and U.S. Patent No. 4,682,248 to Schwartz;

2. U.S. Patent No. 5,241,428 to Goldwasser and Luther, "Digital Video in the PC

21

Environment."

If you find that EchoStar proved obviousness by clear and convincing evidence, then you must find that the claims are invalid for obviousness.

## 7. DAMAGES

I have now instructed you as to the law governing EchoStar's claims of invalidity and Forgent's claim of willful infringement. If you find the claims of '746 patent are not invalid, then you must determine what damages EchoStar must pay to Forgent for infringement of those claims. If, on the other hand, you find the claims of '746 patent are invalid, then Forgent is not entitled to any damages, and you should not make any findings about damages for those claims.

The fact that I am instructing you about damages does not mean that Forgent is or is not entitled to recover damages. You should not interpret the fact that I have given instructions about Forgent's damages as an indication in any way that I believe that the Forgent should, or should not, win this case. I am instructing you on damages only so that you will have guidance in the event you decide that EchoStar is liable and that Forgent is entitled to recover money from EchoStar.

### 7.1 Damages – Generally

The type of patent damages Forgent is seeking in this case is called a reasonable royalty. I will discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

If you find that any claim of the '746 patent is not invalid, then Forgent is entitled to

damages adequate to compensate for the infringement of that claim.  These damages may not be less than what a reasonable royalty would be for the use made of the invention by EchoStar.  In determining damages, you must decide how much financial harm Forgent has suffered by reason of the infringement.

The amount of those damages must be adequate to compensate Forgent for the infringement.  You may not add anything to the amount of damages to punish EchoStar, or to set an example.

Forgent has the burden to persuade you by a preponderance of the evidence that it suffered the damages it seeks.  While Forgent is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty.  Forgent is not entitled to damages that are remote or speculative.

**7.2 Reasonable Royalty**

A royalty is the amount of money a licensee pays to a patent owner for each article the licensee makes (or uses or sells) under the patent. A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention.  It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee, assuming that both parties understood the patent to be valid and infringed and that the licensee would respect the patent.  Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts

that existed at that time. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity. The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1.  whether the patent holder had an established royalty for the invention; in the absence of such a licensing history, any royalty arrangements that were generally used and recognized in the particular industry at that time;

2.  the nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

3. the established profitability of the patented product, its commercial success and its popularity at the time;

4.  whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

5. the size of the anticipated market for the invention at the time the infringement began;

6.  the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

24

7.  the rates paid by the licensee for the use of other patents comparable to the plaintiff's patent;

8.  whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

9.  the nature of the patented invention and the benefits to those who have used the invention;

10.  the extent to which the infringer used the invention and any evidence probative of the value of that use;

11.  the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

12.  the portion of the profits realized that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

13.  the opinion and testimony of qualified experts and of the patent holder;

14.  any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

### 7.3 Date Damages Begin

Forgent can recover damages for infringement that occurred only after Forgent gave notice of its patent rights.  It is Forgent's burden to prove by the preponderance of the evidence standard that it gave notice.

Forgent can give notice of its patent by telling EchoStar that EchoStar is infringing the '746 patent and to identify EchoStar's product that was infringing.  This type of notice

is effective from the time it is given. If you find that Forgent did not provide this type of notice before beginning this lawsuit, then Forgent can only recover damages for infringement that occurred after it sued EchoStar on July 14, 2005.

## 8. INSTRUCTIONS FOR DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your

Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

## APPENDIX A
### Claim Constructions for U.S. Patent No. 6,285,746

| CLAIM TERMS-CLAIM 1 | COURT'S CONSTRUCTION |
|---|---|
| computer controlled video processing device | A device controlled by a computer, separate from the communication central processing unit, to process one or more video and audio signals. |
| communication central processing unit | A programmable CPU that controls the bi-directional exchange of data including video and audio signals. |
| Coupled to | No construction needed. |
| At least one source of video and audio signals | One or more video and audio signals. |
| program memory | Storage medium that stores control information. |
| communication bus coupled to said communication central processing unit | A set of signal lines that bidirectionally receives and routes the video and audio signal(s) between the communications CPU and the other devices coupled to the bus. |
| video memory buffer | A device that temporarily stores video information. |
| audio memory buffer | A device that temporarily stores audio information. |
| At least one mass storage device having random access capabilities | At least one or more mass storage devices where data is stored and received, in which the access time is effectively independent of the location of the stored information. |
| video processing device is configured | No further construction needed for "video processing device." "Is configured" means "physically arranged to provide the following functionality." |

| CLAIM TERMS-CLAIM 1 | COURT'S CONSTRUCTION |
|---|---|
| said video and audio received at said least one audio and video source is supplied and stored on said at least one mass storage device | No construction needed. |
| and further such that a video and audio signals that is stored on said at least one mass storage device are supplied to a video display and audio playback unit | No construction needed. |
| wherein said supplied video and audio signals to the video display and audio playback unit from said at least one mass storage device is capable of being supplied independently of the storage of a video and audio signal to said mass storage device based upon a command from said communication central processing unit | "Independently" means "not contingent upon."<br><br>"Capable of being" means "configured to be."<br><br>"Said supplied video and audio signals to the video display unit and audio playback unit from said at least one mass storage device is capable of being supplied independently of the storage of a video and audio signal to said mass storage device" means "the process of playing back a message from the mass storage device during its recording is not contingent on the process of storing that message to the mass storage device."<br><br>"Based upon a command from said communication central processing unit" means "based upon one or more commands from the programmable communication processing unit." |

| CLAIM TERMS- CLAIM 2 | COURT'S CONSTRUCTION |
|---|---|
| video and audio signals are supplied to said video display and audio playback unit in real time | One or more video and audio signals are supplied to a video display and audio playback unit at the same rate at which it is received. |

| CLAIM TERMS- CLAIM 3 | COURT'S CONSTRUCTION |
|---|---|
| video and audio signals are supplied to said video display and audio playback unit at a time removed from said storage of said video and audio signal | One or more video and audio signals are supplied to a video display and audio playback unit after completion of storage. |

| CLAIM TERMS- CLAIM 4 | COURT'S CONSTRUCTION |
|---|---|
| said video signal and audio signals are supplied in digital form | One or more video and audio signals are supplied to at least one source in digital format. |

30