IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL,
INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S
MOTION FOR NEW TRIAL ON ALL ISSUES IN LIGHT OF IN RE
SEAGATE AND INSEPARABILITY OF WILLFULNESS,
<u>INFRINGEMENT AND VALIDITY</u>**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: December 3, 2007
186367.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  FACTS AND ARGUMENT ................................................................. 2

    A.  A New Trial on Willfulness Is Required ................................. 2

        1.  The Federal Circuit's Seagate decision fundamentally alters the law of willfulness .......................................................... 2

        2.  Seagate applies retroactively and will govern any appeal in this action .................................................................................. 3

        3.  After Seagate, the jury instructions on willfulness were erroneous on multiple grounds ............................................... 4

            a.  The jury instructions stated that Power Integrations need prove mere negligence rather than recklessness and imposed a duty of care that does not apply ................. 5

            b.  The jury instructions apply an incorrect threshold standard of knowledge instead of a threshold standard of objective recklessness as required by Seagate, and indeed contain no purely objective prong ................................................................................. 7

            c.  Fairchild has not waived its new trial demand ................ 10

    B.  A New Trial Is Also Required to Try Validity and Infringement Together ............................................................................................ 11

        1.  Under Seagate, willfulness cannot be tried separately from liability without violating the Seventh Amendment .................... 11

        2.  The bifurcation of infringement from validity violated the Seventh Amendment in this case ................................................. 13

            a.  Infringement and validity of the '851 and '366 Patents must be retried because the scope of the soft start element was an issue considered by two successive juries ............................................................ 15

            b.  Infringement and validity of the '876 Patent must be retried because the scope of the frequency jitter element was an issue considered by two successive juries ............................................................................ 21

            c.  Interwoven and overlapping issues pervaded both trials, prejudicing Fairchild ............................................ 22

III. CONCLUSION .................................................................................... 23

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*2660 Woodley Road Joint Venture* v. *ITT Sheraton Corp.*,
  2002 WL 53913 (D. Del. 2002) ............................................................4

*Allison* v. *Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ............................................................14

*Amazon.com, Inc.* v. *Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ........................................................14

*Benner* v. *Becton Dickinson & Co.*,
  214 F.R.D. 157 (S.D.N.Y. 2003) ......................................................13

*Blyden* v. *Mancusi*,
  186 F.3d 252 (2d Cir. 1999) ............................................................14

*Bonjorno* v. *Kaiser Aluminum & Chem. Corp.*,
  752 F.2d 802 (3d Cir. 1984) ........................................................13, 15

*Ciena Corp.* v. *Corvis Corp.*,
  352 F. Supp. 2d 526 (D. Del. 2005) ..................................................11

*Cohn* v. *Massachusetts Mutual Life Ins. Co.*,
  189 F.R.D. 209 (D. Conn. 1999) ......................................................13

*Ecolab, Inc.* v. *Paraclipse, Inc.*,
  285 F.3d 1362 (Fed. Cir. 2000) ........................................................4

*Environ Prods., Inc.* v. *Furon Co.*,
  215 F.3d 1261 (Fed. Cir. 2000) ........................................................4

*Forshey* v. *Principi*,
  284 F.3d 1335 (Fed. Cir. 2002) ....................................................10, 11

*Franchi Construction Co., Inc.* v. *Combined Ins. Co. of America*,
  580 F.2d 1 (1st Cir. 1978) ..............................................................15

*Harper* v. *Virginia Dep't of Taxation*,
  509 U.S. 86 (1993) ..........................................................................3

*Harris Corp.* v. *Ericsson, Inc.*,

ii

## TABLE OF AUTHORITIES
(continued)

Page

417 F.3d 1241 (Fed. Cir. 2005)........................................................................10, 11

*Hook* v. *Ernst & Young*,
28 F.3d 366 (3d Cir. 1994)..............................................................................1, 4, 6

*Hormel* v. *Helvering*,
312 U.S. 552 (1941).............................................................................................11

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986)......................................................................12, 13

*LNP Engineering Plastics, Inc.* v. *Miller Waste Mills, Inc.*,
275 F.3d 1347 (Fed. Cir. 2001)............................................................................4

*In re Lower Lake Erie Iron Ore Antitrust Litigation*,
998 F.2d 1144 (3d Cir. 1993)...........................................................2, 12, 13, 14

*Pryer* v. *C.O. 3 Slavic*,
251 F.3d 448 (3d Cir. 2001)...........................................................................2, 12

*Rivers* v. *Roadway Express, Inc.*,
511 U.S. 298 (1994)..............................................................................................3

*Rolls-Royce Ltd.* v. *GTE Valeron Corp.*,
800 F.2d 1101 (Fed.Cir.1986)..............................................................................6

*Safeco Ins. Co of Am.* v. *Burr*,
127 S.Ct. 2201 (2007).................................................................................6, 8, 12

*Savarese* v. *Agriss*,
883 F.2d 1194 (3d Cir. 1989).............................................................................4, 7

*In re Seagate Technologies LLC*,
497 F.3d 1360 ..............................................................................................*passim*

*SKF USA, Inc.* v. *United States*,
2007 WL 2481578 (Fed. Cir. 2007)....................................................................3

*Spence* v. *Bd. of Educ. of the Christina School Dist.*,
806 F.2d 1198 (3d Cir.1986)...........................................................................2, 13

*Underwater Devices Inc.* v. *Morrison-Knudsen Co.*,
717 F.2d 1380 (Fed. Cir. 1983)..........................................................1, 2, 5, 6, 11

## TABLE OF AUTHORITIES
(continued)

**Page**

*W.L. Gore & Assoc., Inc.* v. *Garlock, Inc.*,
   842 F.2d 1275 (Fed. Cir. 1988)...............................................................................15

*Witco Chemical Corp.* v. *Peachtree Doors, Inc.*,
   787 F.2d 1545 (Fed. Cir. 1986)..............................................................................22

## FEDERAL STATUTES

38 U.S.C. § 7292(a) (2002).........................................................................................11

I.    **INTRODUCTION**

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation ("Fairchild") move this Court for a new trial on all issues. This is necessary because of changes in the law of willful infringement and the unfair prejudice and confusion created by Power Integrations in light of the Court's bifurcation of infringement and invalidity.

In light of the Federal Circuit's 2007 *In re Seagate* decision rewriting the law of willful infringement in patent cases, Fairchild is entitled to reversal of the verdict on willfulness and a new trial. Ten months after the infringement trial in this action concluded on October 10, 2006, the Federal Circuit announced a new standard for proving willful infringement. *Seagate* replaced the longstanding *Underwater Devices* case and its progeny – which required a showing of mere negligence – with new law that the patentee must prove the higher standard of reckless conduct by the infringer in order to show willful infringement. *Seagate* also added a "threshold objective standard" of recklessness that must be met before the fact-finder may even consider any subjective criteria such as knowledge and intent. As judgment has not yet been entered and direct review has not begun, the *Seagate* holding retroactively controls in this case.

*Seagate* renders the jury instructions erroneous and, thus, more than "capable of confusing and misleading the jury." *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994). The jury instructions applied the *Underwater Devices* negligence standard rather than a recklessness standard for willfulness as a whole, omitted the threshold "objective recklessness" requirement altogether, and and applied an almost entirely subjective standard, among other defects. The jury also was not permitted to hear a large body of evidence that is relevant to objective recklessness – namely, Fairchild's evidence of invalidity. Because the law relied upon in the jury instructions was reversed, at a minimum a new willfulness trial is required.

The necessity of retrying willful infringement mandates a new trial on all issues. Whether the objective recklessness threshold is met depends on the strength of defendant's legal position on the merits of liability, which is exactly what the infringement and invalidity trials decided. *In re Seagate Technologies LLC*, 497 F.3d at 1371, *citing Safeco Ins. Co. of Am. v.*

1

*Burr*, 127 S.Ct. 2201, 2215-16 (2007). Consequently, the issues that must be presented in trying willfulness are not sufficiently "distinct and separable" from those that arise in the liability context to permit either to be tried alone. *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 454-55 (3d Cir. 2001). In fact, willfulness and liability overlap so heavily under *Seagate* that trying them separately would violate the Seventh Amendment's rule that a second court may not reexamine issues previously tried by a jury. *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1181-85 (3d Cir. 1993); *Spence v. Bd. of Educ. of the Christina School Dist.*, 806 F.2d 1198, 1201-02 (3d Cir.1986). Apart from willfulness, the bifurcation of infringement from validity in this case failed to meet the "distinct and separable" requirement and resulted in successive juries impermissibly determining the same issues. For that additional reason, a new trial of all issues is required.

## II.    FACTS AND ARGUMENT

### A.    A New Trial on Willfulness Is Required.

#### 1.    The Federal Circuit's *Seagate* decision fundamentally alters the law of willfulness.

On August 20, 2007, the United States Court of Appeals for the Federal Circuit, to which any appeal from this action will lie, issued its decision in *In re Seagate Technologies LLC*, 497 F.3d 1360, expressly overruling *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983) and replacing the standard established therein with an entirely new one. *Seagate*, 497 F.3d at 1371. Instead of a duty of due care to avoid infringement, which was met if the jury found that the defendant had, under all the circumstances, a good faith reasonable belief that it did not infringe, the Federal Circuit announced a new two part test.

Under *Seagate*, the patentee must now show by clear and convincing evidence that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" – in short, the patentee must prove "objective recklessness." *Id.* Importantly, "[t]he state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* If and only if this "threshold objective standard" is satisfied, the patentee must then also show

2

subjective recklessness. That is, the patentee must prove by clear and convincing evidence that the "objectively-defined risk... was either known or so obvious that it should have been known to the accused infringer." *Id.* Thus all questions of the infringer's intent and knowledge are confined to the second prong of the standard and are excluded from the threshold objective recklessness inquiry.

### 2.    *Seagate* applies retroactively and will govern any appeal in this action.

Although *Seagate* was decided after the jury rendered a verdict on willfulness in this action, its holding governs this case. In *Harper v. Virginia Dep't of Taxation*, the Supreme Court held that when it construes and applies federal law to the parties before it, its construction is a "controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement" of its holding. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993). The Court explained that this blanket rule of retroactivity is required by the principle of treating similarly situated parties alike, and avoiding "selective application of new rules." *Id.* Although *Harper* refers by its terms to interpretations issued by the Supreme Court, its rationale applies equally to the holdings of lower federal courts and indeed the Federal Circuit applies the *Harper* rule of retroactivity to its own constructions of federal law. *SKF USA, Inc. v. United States*, 2007 WL 2481578, at *4 (Fed. Cir. 2007) (applying a 2005 Federal Circuit decision to acts taken in 2003, and noting that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student...."), *quoting Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311-12 (1994). Because the Federal Circuit applied its holding to the parties in *Seagate*, that holding applies equally to the parties in this action, in which judgment has not been entered and direct review has not even begun.

### 3.    After *Seagate*, the jury instructions on willfulness were erroneous on multiple grounds.

Under *Seagate*, the Court's charge to the jury on willfulness contained multiple legal errors when measured against the new standard that the plaintiff must now meet to establish

willfulness. The willfulness standard provided to the jury was (i) almost entirely subjective rather than objective; (ii) consistent with a lower, negligence standard rather than the required higher recklessness standard; (iii) devoid of the threshold objective recklessness requirement; (iv) incorrectly based on the now-discarded duty of due care. It also (v) incorrectly folded the small objective component it contained ("reasonable") into the overarching subjective test, and (vi) incorrectly omitted consideration of the objective non-recklessness of Fairchild's invalidity case as a basis for non-willfulness.

Where the movant asserts legal error, the standard for granting a new trial is whether "the charge [taken] as a whole fairly and adequately submits the issues in the case to the jury," with reversal warranted "if the instruction was capable of confusing and thereby misleading the jury." *Hook*, 28 F.3d at 370 (brackets in original), *quoting Bennis v. Gable*, 823 F.2d 723, 727 (3d Cir. 1987); *2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 2002 WL 53913, at *4 (D. Del. 2002), *rev'd in part on other grounds*, 369 F.3d 732 (3d Cir. 2002).[1] A jury instruction that entirely misstates the applicable standard easily meets that threshold and Fairchild is entitled to a new trial. *Savarese v. Agriss*, 883 F.2d 1194, 1202-05 (3d Cir. 1989) (awarding new trial where jury instruction misstated legal standard for awarding punitive damages, possibly leading jury to believe that intentional, rather than reckless, conduct was a prerequisite for punitive damages); *Hook*, 28 F.3d at 370, *citing Savarese*, 883 F.2d at 1202 (review of trial court's grant or denial of new trial is not for abuse-of-discretion but rather is plenary where asserted basis is that jury charge states incorrect legal standard).

---

[1] Third Circuit law determines the legal standard for evaluating this motion. *LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1353 (Fed. Cir. 2001) ("A district court's grant of a new trial is a procedural issue that this court reviews under the law of the regional circuit."). In any event, the Federal Circuit standard for new trial based on erroneous jury instructions is also satisfied here. *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2000) (party seeking new trial based on erroneous jury instructions must show that the instructions were legally erroneous and had a prejudicial effect); *Environ Prods., Inc. v. Furon Co.*, 215 F.3d 1261, 1265-67 (Fed. Cir. 2000) (lack of prejudice means error in jury instructions is harmless, i.e., it "could not have changed the result"). Obviously the complete absence of the correct willfulness standard from the jury instruction, the use of an incorrect, lower-threshold standard that fails to direct the jury to the relevant objective evidence, and the withholding from the jury of an entire category of relevant evidence (invalidity) could have changed the result of the jury's deliberations on willful infringement.

a.    **The jury instructions stated that Power Integrations need prove mere negligence rather than recklessness and imposed a duty of care that does not apply.**

The jury instructions given in this action conformed to the standard set forth in

*Underwater Devices* and its progeny, which the Federal Circuit has deemed "akin to negligence"

and thus fall far short of the recklessness standard that must be met to establish willfulness in the

civil context. *Seagate*, 497 F.3d at 1361. During the infringement trial, this Court instructed the

jury as follows:

> Now, as you know, Power Integrations claims willful infringement against Fairchild in this case. If you find on the basis of the evidence and the law that I've explained that Fairchild's product infringes at least one of Power Integrations' patent claims, you must further decide whether or not Power Integrations has proven by clear and convincing evidence that Fairchild's infringement was willful. Willful infringement is established where Power Integrations has proven two things:
>
> First, that Fairchild was aware of Power Integrations' patents;
>
> And second, that Fairchild had ***no reasonable good-faith basis*** for concluding that it did not infringe Power Integrations' patents.
>
> For example, if you find that Power Integrations has proven that Fairchild knew about the patents and ***did not exercise due care to determine whether or not it was infringing the patents***, you may find that Fairchild's infringement was willful.
>
> One factor to consider with respect to ***Fairchild's good faith and due care*** in determining the infringement and validity issues is whether Fairchild obtained and followed competent legal advice from an attorney after becoming aware of Power Integrations' patents. ***A good-faith opinion*** means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues consistent with the standards and practices generally followed by competent lawyers. Moreover, you should consider whether Fairchild actually relied upon and followed its attorneys opinion.
>
> Another factor in determining whether Power Integrations has proven willful infringement is your assessment of whether or not Fairchild copied Power Integrations' inventions or products covered by Power Integrations' patent claims, or whether Fairchild instead tried to design around the patent by designing a product that Fairchild believed did not infringe the patent claims.
>
> Evidence of copying is evidence of willful infringement. On the other hand, evidence of a ***good-faith effort*** to design around the claims is evidence that the infringement was not willful.
>
> Now, in this case, you've heard reference from witnesses and the attorneys to the patent concept of validity, or they may have referred to it as invalidity. ***What I want you to understand is that validity or invalidity has no role in this case whatsoever except to the extent that it may factor into the consideration of whether Fairchild willfully infringed the asserted patent claims if you find the patent claims were infringed.***

5

[10/6/06 Trial Tr. 1668:6-1670:19 (emphasis added)]. Apart from some additional explanation of the factors in the last three paragraphs, this language is taken verbatim from Instruction 3.18 of the Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware ("Uniform Jury Instructions"). It faithfully incorporates the language and negligence concepts of *Underwater Devices* and the cases elaborating it, as indicated in the Uniform Jury Instructions. Just as in the above-quoted instructions, *Underwater Devices* held that actual notice of the plaintiff's patent rights is a prerequisite for willfulness, and that if the defendant has such notice, a duty of due care, or negligence standard, attaches to determine whether or not he is infringing. *Underwater Devices,* 717 F.2d at 1389-90. The other components of the instructions – the element of reasonable good-faith basis, and factors such as opinions of counsel and evidence of copying or design-around – are found in cases that *Seagate* identifies as evolutions of the *Underwater Devices* negligence standard. *Seagate,* 497 F.3d at 1369, *citing Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-29 (Fed.Cir.1992) and *Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1110 (Fed.Cir.1986).

The Federal Circuit has now held that this entire regime is tantamount to negligence and falls far short of the reckless level of conduct that is necessary to establish willfulness in civil law generally and, thus, in patent cases. *Seagate,* 497 F.3d at 1368-69, 1371. The inconsistency of a negligence requirement with recent Supreme Court jurisprudence on punitive damages was the reason the Federal Circuit overruled *Underwater Devices,* rejected its approach to willfulness and discarded the duty of due care. *Id.* at 1370-71, *citing Safeco,* 127 S.Ct. at 2214-15, 2216 n.20. In its place, the Federal Circuit has now substituted the higher, two-pronged recklessness standard discussed above, consistent with Supreme Court precedent.

Because the instruction directed the jury to apply a standard of mere negligence where a higher showing of recklessness was required, it "was capable of confusing and thereby misleading the jury." *Hook,* 28 F.3d at 370. Indeed, it was certain to mislead the jury in that it stated an entirely incorrect legal standard and Fairchild is accordingly entitled to a new trial on willfulness. *Savarese v. Agriss,* 883 F.2d 1194, 1202-05 (3d Cir. 1989). In *Savarese,* the Third

Circuit vacated the judgment and remanded for a new trial where the instruction as a whole revealed that the jury "may have been led erroneously to believe… that in order to award punitive damages it was required to find that the defendants' conduct was 'intentional,' 'vicious,' 'deliberate,' and 'evil,' a standard which exceeds that of 'recklessness' which the Supreme Court held was an alternative basis" for such an award. *Id.* at 1205. Although *Savarese* is directly on point with the instant case, the facts here militate even more strongly in favor of a new trial. In *Savarese*, the instruction had presented both reckless and intentional conduct as supporting punitive damages, but failed to consistently present them disjunctively, at times treating them as equivalent or as conjunctive (i.e., as both required). *Id.* at 1204-05. In this case, the instruction provided only the incorrect lower negligence standard for willfulness and made no mention at all of the correct, higher recklessness standard. This warrants a new trial on willfulness, even without the additional errors discussed below. Notably, the Third Circuit in *Savarese* did not deem it necessary to consider any of the evidence in the case to conclude that the application of an incorrect intent standard was so fundamental an error that a new trial was required.

        **b.**    <u>**The jury instructions apply an incorrect threshold standard of knowledge instead of a threshold standard of objective recklessness as required by *Seagate*, and indeed contain no purely objective prong.**</u>

The jury instructions on willfulness suffer from numerous additional defects under *Seagate*. By directing the jury to first determine whether "Fairchild was aware of Power Integrations' patents," the instruction established a threshold requirement of knowledge. [10/6/06 Trial Tr. 1668:19-20]. This is directly contrary to *Seagate*'s clear command that there is a "threshold ***objective*** standard," and that the issue of whether the risk of infringement was "either known or so obvious that it should have been known" is reached only if the objective recklessness requirement has first been met. *Seagate*, 497 F.3d at 1370 (emphasis added). More importantly, a subjective analysis permeates every part of the willfulness standard in the instruction given to the jury.

7

The second requirement recited to the jury was that "Fairchild had no reasonable ***good-faith*** basis for concluding that it did not infringe Power Integrations' patents." 10/6/06 Trial [Tr. 1668:21-23 (emphasis added)]. Among the factors enumerated as weighing on this question were whether Fairchild obtained an opinion of counsel and whether it copied Power Integrations' inventions or tried to design around them. *Id.*, 1669:6-1670:9. These factors go to Fairchild's subjective knowledge and intent, and not to whether there was an "objectively high likelihood that its actions constituted infringement." *Seagate*, 497 F.3d at 1371.

In other words, it is not the case that the correct components were merely presented in the wrong order. Rather, the purely ***objective*** recklessness prong required by *Seagate* was entirely absent from the instructions and never presented to the jury. And the kind of evidence that would bear on the objective question was either not mentioned in the instructions as relevant to willfulness or not presented to the jury at all. Specifically, the jury was not instructed to consider, in connection with willfulness, the objective strength of Fairchild's non-infringement case. Yet that is what it must consider, first and foremost.

In *Safeco*, the Supreme Court case from which *Seagate* derived the new willfulness standard, the defendant fell "well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability" where its "***reading of the statute***, albeit erroneous, was not objectively unreasonable." *Safeco*, 127 S. Ct. at 2215-16 (emphasis added). A defendant's legal position that was "not objectively unreasonable" was ***alone*** sufficient to defeat a finding of willful conduct. The Court noted that "not objectively unreasonable" was so far short of reckless that there was "no need to pinpoint the negligence/recklessness line" in that case. *Id.* at 2215. For Fairchild to avoid willfulness, its legal position need only be something even ***weaker*** than "not objectively unreasonable" (probably meaning non-frivolous). Yet, the jury instruction was that Fairchild's basis had to be "reasonable" as well as in "good faith" (a purely subjective requirement). Thus, even if the jury had concluded that Fairchild's conduct met the incorrect higher standard of "reasonable," it still could not have found for Fairchild without also finding the same conduct to be characterized by the subjective component of "good faith." Moreover,

8

the factors enumerated by the court were entirely subjective while omitting the only thing that now matters to this threshold inquiry – the objective strength of Fairchild's legal position.

Compounding the defect, considerable evidence bearing on the objective strength of Fairchild's legal position was withheld from the jury entirely. Because infringement and invalidity were bifurcated from each other for trial – and because the Court granted Power Integrations' motion *in limine* barring the presentation of evidence relating to invalidity – the willfulness jury did not hear any ***objective*** evidence about Fairchild's actual invalidity position except insofar as the latter was mentioned in the opinions of counsel. Yet the invalidity analysis in the opinions of counsel did not represent Fairchild's entire invalidity case as it was later developed through discovery and presented at trial, and therefore was not the appropriate measure of the objective risk of infringement. *Seagate*, 497 F.3d at 1370-71, 1374. Moreover, the jury was, as just discussed, instructed to evaluate this evidence by the wrong objective standard (reasonable instead of non-reckless) intertwined with an impermissible subjective component (good-faith). The jury that decided willfulness also was not allowed to hear any evidence of Fairchild's unenforceability (i.e., inequitable conduct) position, which bears on the objective risk that Fairchild was an infringer.

In sum, the jury was neither charged with the correct threshold objective recklessness inquiry, nor instructed to consider objective and subjective factors separately, nor directed to consider any objective evidence in connection with willfulness at all, nor even permitted to hear all the evidence that would have been relevant to objective recklessness. Instead it was instructed to apply the now-discarded duty of due care and to consider Fairchild's reasonableness and good faith (also inapplicable under *Seagate*), as reflected by evidence of copying and reliance on opinions of counsel.

In addition to being legally flawed in all these respects, the erroneous jury instruction also prejudicially shaped Fairchild's decisions about which evidence to present. For instance, Fairchild would not have presented twelve post-filing opinions of counsel in light of *Seagate*'s holding that they are of "marginal value." *Seagate,* 497 F.3d at 1374. At trial, Power

9

Integrations' counsel used this evidence to insinuate that for any claim as to which opinion counsel did **not** offer an opinion of non-infringement or invalidity, there was an implicit admission of willfulness. [9/19/07 Conrad Trial Tr. 641:5-656:12]. Had the case been conducted under the *Seagate* regime, Fairchild would have avoided the prejudice occasioned by this now-irrelevant evidence. A new trial is required.[2]

**c.    Fairchild has not waived its new trial demand.**

Although it is a meritless argument, Fairchild expects that Power Integrations will take the position that Fairchild has waived the basis for a new trial presented in this motion by failing to raise it as a proposed jury instruction or to object at trial. This contention is wrong as a matter of both common sense and Federal Circuit law.

Waiver is the "intentional relinquishment... of a known right." *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1263 n.2 (Fed. Cir. 2005), *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019 (1938). Fairchild cannot have waived a right it was unaware of at the time of trial in 2006, but learned of only in August, 2007, when the Federal Circuit announced the new willfulness standard in *Seagate*. The Federal Circuit has recognized this circumstance as one where the normal waiver rule does not apply: "[A]n exception exists in those [cases] in which there have been judicial interpretations of existing law after decision below and pending appeal – interpretations which if applied might have materially altered the result." *Forshey v. Principi,*

---

[2]    Indeed, it is difficult to imagine how Power Integrations will be able to prove willfulness. Not only is there no basis for asserting that Fairchild's positions on claim construction, infringement, validity and unenforceability were worse than "objectively unreasonable," but, in addition, Power Integrations will have to prove willfulness under circumstances where the Federal Circuit has already stated it should not be found. In *Seagate*, the Federal Circuit stated that, because the patentee must have a Rule 11 basis for alleging willful infringement, "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." 497 F.3d at 1374. But here, Fairchild's pre-filing conduct cannot have been "objectively reckless" because the Court has already held that Fairchild has no liability for any of its pre-filing activities due to Power Integrations' failure to mark its products. D.I. 265. Thus, Power Integrations' willfulness claim must be based on Fairchild's post-filing conduct. There too, willfulness is barred because Power Integrations failed to move for preliminary injunction. "[W]hen an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Seagate*, 497 F.3d at 1374.

10

284 F.3d 1335, 1356 (Fed. Cir. 2002) (*en banc*) (internal quotations omitted),[3] *quoting Hormel v. Helvering*, 312 U.S. 552, 558-59 (1941).[4] As long as "a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless," the Federal Circuit will consider the issue. *Forshey*, 284 F.3d at 1356, *quoting United States v. Washington*, 12 F.3d 1128, 1139 (D.C. Cir.1994). There can be no question that the willfulness standard in effect as of trial was well-settled, given that the Federal Circuit had to expressly overrule a leading case (and a long line of jurisprudence based thereon) in order to modify the standard. *Underwater Devices* had not only been good law on this point for twenty-four years, but was the starting point for all discussions of willfulness in the patent context (including the Uniform Jury Instruction relied on in this case) from the time of its decision until *Seagate*. If the duty of due care and the standard of good-faith reasonable belief under all the circumstances were not "well-settled," then the term has no meaning. *A fortiori*, if the Court of Appeals would consider the substantive argument made in this motion, this Court should consider it as the basis for a new trial. *See Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 527 (D. Del. 2005) ("a court may only alter or amend its judgment if it is presented with (i) a change in the controlling law") (motion for reconsideration).

> **B.**     <u>**A New Trial Is Also Required to Try Validity and Infringement Together.**</u>
>
> > **1.**     <u>**Under *Seagate*, willfulness cannot be tried separately from liability without violating the Seventh Amendment.**</u>

Given that willfulness must be retried for the reasons stated above, it will also be necessary to retry validity and infringement to protect Fairchild's Seventh Amendment right to a fair trial for two closely related reasons: First, "a partial new trial… may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from

---

[3]     An aspect of *Forshey* unrelated to the issue for which it is cited here was superseded by statute. Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (2002), 38 U.S.C. § 7292(a) (2002).

[4]     Federal Circuit rather than Third Circuit law governs this issue because the issue whose waiver is in question – enhanced damages for willfulness in a patent case – is substantively with the Federal Circuit's patent enforcement purview. *Harris*, 417 F.3d at 1250-51 ("Because the ability to make claim construction arguments on appeal is intimately bound up with patent enforcement, we hold that Federal Circuit law controls waiver in the context of claim construction arguments.").

the others that a trial of it alone may be had without injustice." *Pryer v. C.O. 3 Slavic*, 251 F.3d

448, 454-55 (3d Cir. 2001), *quoting Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S.

494, 500 (1931). Otherwise, "a new trial on all issues is required under the *Gasoline Products*

standard." *Id.* at 456. As discussed above, the objective strength of the defendants' non-

infringement and invalidity case is the basis for evaluating objective recklessness under *Seagate*.

*Seagate,* 497 F.3d at 1371 ("[T]o establish willful infringement, a patentee must show by clear

and convincing evidence that the infringer acted despite an objectively high likelihood that its

actions constituted infringement of a ***valid*** patent") (emph. added); *Safeco,* 127 S. Ct. at 2215-16

(where defendant's "reading of the statute, albeit erroneous, was not objectively unreasonable,"

it fell "well short of raising the 'unjustifiably high risk' of violating the statute necessary for

reckless liability"), cited in *Seagate* at *id*. To determine the willfulness, the jury will have to

consider the strength of Fairchild's non-infringement and invalidity cases on the merits offered

in the infringement and validity trials. This is the furthest thing from where it "clearly appears"

that the issues are "distinct and separable." Rather, the retrial of the willfulness issue is

inextricably tied to the merits of infringement and validity and so they must be tried together.

   This overlap of issues is impermissible on Seventh Amendment grounds. The Seventh

Amendment provides that "no fact tried by a jury, shall be otherwise re-examined in any Court

of the United States, than according to the rules of the common law." U.S. CONST. AM. VII. The

federal courts have construed this language to prohibit separate or bifurcated trials if the second

jury would necessarily reconsider an issue decided by the first jury. *In re Lower Lake Erie Iron*

*Ore Antitrust Litigation*, 998 F.2d 1144, 1181-85 (3d Cir. 1993); *In re Innotron Diagnostics*, 800

F.2d 1077, 1086 (Fed. Cir. 1986) (two juries cannot decide the same issues).

   In *Lower Lake Erie*, the Third Circuit ordered a new damages trial where the first jury

had found liability under a statute that made causation of injury a required element, and the

second jury was also instructed to consider the degree of causation in determining damages.

*Lower Lake Erie,* 998 F.2d at 1182-94. A number of negligence cases have found a Seventh

Amendment violation where the second (damages) jury would have to implicitly re-examine

negligence in order to determine comparative negligence for the purpose of calculating damages. *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 174 (S.D.N.Y. 2003), *citing Simon v. Philip Morris, Inc.*, 200 F.R.D. 21, 49 (E.D.N.Y.2001); *Cohn v. Massachusetts Mutual Life Ins. Co.*, 189 F.R.D. 209, 219 (D. Conn. 1999).

Jury determination of willfulness under *Seagate* presents a precisely analogous problem. In order to decide whether the defendant was objectively non-reckless, the jury must re-evaluate the merits of the defendant's non-infringement and invalidity positions as offered at trial. Just as it is impermissible for one jury to determine the fact of negligence or causation while a second jury determines the degree of negligence or causation, so it is impermissible for one jury to determine the fact of infringement or validity, while a second jury determines the degree of infringement or validity, *i.e.*, how clear a case of infringement or validity this was. Indeed, the Third Circuit has expressly recognized that punitive damages should be retried together with liability where, in order to decide punitive damages, the jury would have to rehear "all the facts" that formed the basis for liability. *Spence v. Bd. of Education of the Christina School Dist.*, 806 F.2d 1198, 1201-02 (3d Cir.1986), *cited in Pryer v. C.O. 3 Slavic*, 251 F.3d at 455; *Seagate*, 497 F.3d at 1371 (noting that damages for willful infringement are punitive damages). Yet a rehearing of all the liability facts is what would necessarily happen in this case if willfulness were retried by itself. A new trial on all issues is required.

## 2.    The bifurcation of infringement from validity violated the Seventh Amendment in this case

A new trial on infringement and validity is required for the additional and independent reason that – exactly as Fairchild argued would happen in its Motion for Reconsideration re Bifurcation – the jury in the validity trial considered issues that were either the same as issues considered by the infringement jury, or so interwoven that it was unjust to try them separately. [D.I. 274]. Each of these circumstances violates the Seventh Amendment, *Lower Lake Erie*, 998 F.2d 1144; *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir. 1984); *Innotron Diagnostics*, 800 F.2d at 1086. In particular, there were common claim elements whose

scope and application was heavily contested by the parties and decided independently by each jury. There need not be a showing that the two issues were decided inconsistently, merely that they were duplicatively litigated, creating the possibility of an inconsistency. *Blyden v. Mancusi*, 186 F.3d 252, 268-69 (2d Cir. 1999); *Lower Lake Erie*, 998 F.2d at 1182-94.

In *Blyden*, a section 1983 case arising from the suppression of a prison uprising, the liability jury found that the defendants' had carried out tortious "reprisals" against the plaintiffs, but was not asked to specify which acts were reprisals. *Blyden v. Mancusi*, 186 F.3d at 268-69. Later damages juries were instructed that there had been reprisals, but were left to determine which particular acts were reprisals for purposes of assessing damages. *Id.* "This of course created the real possibility – amounting to a probability – that acts found to be 'reprisals' by the liability jury were different from the acts found to be 'reprisals' by the damages juries. This procedure clearly violated the Seventh Amendment." *Id.* at 269. As long as it was possible that that the different juries' verdicts were inconsistent with one another – actual inconsistency did not need to be shown – the duplicative consideration of issues required a reversal. *Id.* The issues need not be identical – it suffices if they are heavily overlapping. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 424-25 (5th Cir. 1998) (questions of whether a challenged practice was "job related and a business necessity" for a disparate impact claim could not be tried separately from question of whether same practice was a "legitimate non-discriminatory reason for the employer's actions" in a pattern or practice claim because one finding "strongly, if not wholly implicates" the other).

As in *Blyden*, the infringement and validity trials in this action had the juries determining the scope of common claim elements that were material to both outcomes. It is almost unimaginable that two different juries could have understood those elements in the same way. Consistency in claim scope for purposes of infringement and validity is so important in patent cases that it is an oft-stressed principle unto itself. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (patent "claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses"); *W.L. Gore & Assoc.*,

*Inc. v. Garlock, Inc.*, 842 F.2d 1275 (Fed. Cir. 1988) ("Having construed the claims one way for determining their validity, it is axiomatic that the claims must be construed in the same way for infringement."). This principle was violated here. Even in those instances where the issues were not identical, they were so closely interwoven that it was unjust to consider them separately, requiring a new trial on that basis. *Bonjorno*, 752 F.2d at 812; *Franchi Construction Co., Inc. v. Combined Ins. Co. of America*, 580 F.2d 1, 8 (1st Cir. 1978) (reversing and ordering new trial on all issues where issues in two trials were not "distinct and separable" but "interwoven").

        a.    <u>Infringement and validity of the '851 and '366 Patents must be retried because the scope of the soft start element was an issue considered by two successive juries.</u>

Infringement and validity must be retried for U.S. Patents No. 6,229,366 ("the '366 Patent") and 6,107,851 ("the 851 Patent") because in both trials, the juries had to determine and apply the scope of a key disputed means-plus-function element – the "soft start circuit" – found in claims 9 and 14 of the '366 Patent and claim 4 of the '851 Patent. In order to do this, the jury had to resort to their own reading of highly technical sections of the '366 Patent, guided not by a limiting instruction that would minimize or eliminate the possibility of an inconsistency, but by highly contentious and differing expert testimony. As in *Bryden*, it is not only possible but highly likely that the two juries reached impermissibly different conclusions as to the scope of the "soft start circuit."

In each trial, the Court properly gave identical instructions (substituting "prior art" for "accused" at the invalidity trial) on how to compare the claim to technology:

> Finally, you must determine whether that [accused/prior art] structure is the same as or equivalent to the structure identified in the patent for performing the required function. If the structure of the [accused/prior art] device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present.

[10/6/06 Trial Tr. 1657:15-22]. But then the groundwork for a possible divergence between the two juries was laid. The instruction "describing" the structure read as follows:

> The term "soft start circuit" is a means-plus-function element. The functions of the various "soft start circuits" are construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions. The

15

corresponding structures related to the "soft start circuit" are shown in Figures 3, 6 and 9 of the '366 patent and described in the specification of the '366 patent at col. 6, ll. 7-17; col. 6, l. 35-col. 7, l. 18; col. 11, ll. 40-50 and col. 12, ll. 5-10.

[10/6/06 Trial Tr. 1655:11-23]. The referenced portions of the specification are far from clear to the average juror. This is immediately obvious upon reading them:

> Pulse width modulated switch 262 also may have soft start capabilities. When the device to which the power supply is coupled is switched on, a power up signal is generated within the internal circuitry of pulse width modulated switch 262. The power up signal is used to trigger soft start circuitry that reduces the duty cycle of the switch that operates within the pulse width modulated switch 262 for a predetermined period of time, which is presently preferred to be ten (10) milliseconds. Once soft start operation is completed, pulse width modulated switch 262 operates according to its regular duty cycle.

> Referring to FIG. 3, frequency variation signal 400 is utilized by the pulse. width modulated switch 262 to vary its switching frequency within a frequency range. The frequency variation signal 400 is provided by frequency variation circuit 405, which preferably comprises an oscillator that operates at a lower frequency than main oscillator 465. The frequency variation signal 400, is presently preferred to be a triangular waveform that preferably oscillates between four point five (4.5) volts and one point five (1.5) volts. Although the presently preferred frequency variation signal 400 is a triangular waveform, alternate frequency variation signals such as ramp signals, counter output signals or other signals that vary in magnitude during a fixed period of time may be utilized as the frequency variation signal.

> The frequency variation signal 400 is provided to soft start circuit 410. During operation soft start circuit 410 is also provided with pulse width modulation frequency signal 415 and power up signal 420. Soft start enable signal 421 goes high at power up and remains high until oscillator signal 400 reaches its peak value for the first time. Soft start circuit 410 will provide a signal to or-gate 425 to reset latch 430 thereby deactivating conduction by the switch 435, which is presently preferred to be a MOSFET. Soft start circuit 410 will instruct switch 435 to cease conduction when the soft start enable signal 421 is provided and the magnitude of the frequency variation signal 400 is less than the magnitude of pulse width modulation signal 415. In other words, start up circuit 410 will allow the switch 435 to conduct as long as soft start enable signal is high and the magnitude of the pulse width modulation signal 415 is below the magnitude of frequency variation signal 400 as depicted in FIG. 4. In this way, the inrush current at startup will be limited for all cycles of operation, including the first cycle. By limiting the inrush current during all cycles of startup operation, the maximum current through each of the components of the power supply is reduced and the maximum current rating of each component can be decreased. The reduction in the ratings of the components reduces the cost of the power supply. Soft start signal 440 will no longer be provided by the frequency variation circuit 405 when the frequency variation signal 400 reaches its peak magnitude.

> Operation of soft start circuit 410 will now be explained. Soft start circuit 410 comprises a soft start latch 450 that at its set input receives the power up signal 420 and its reset input receives the soft start signal 440. Soft start enable signal 421 is provided to one input of soft start and-gate 455 while the other input of soft

16

start and-gate 455 is provided with an output from soft start comparator 460. The output of soft start comparator 460 will be high when the magnitude of frequency variation signal 400 is less than the magnitude of pulse width modulation oscillation signal 415.

Regulation circuit 850 also may have integrated soft start capabilities. When the device to which the power supply is coupled is switched on, a power up signal is generated within the internal circuitry of regulation circuit 850. A power up signal is used to trigger soft start circuitry that reduces the duty cycle of the switch that operates within the pulse width modulated switch 262 for a predetermined period of time, which is presently preferred to be ten (10) milliseconds. Once soft start operation is completed, regulation circuit 850 operates according to its regular duty cycle.

The soft start functionality of the presently preferred regulation circuit 850 of FIG. 9, will shorten the on-time of switch 435 to less than the time of the maximum duty cycle signal 607 as long as the soft start enable signal 421 is provided and the magnitude of frequency variation signal 400 is less than the magnitude of main oscillation signal 415.

'366 Patent, col. 6, ll. 7-17; col. 6, l. 35-col. 7, l. 18; col. 11, ll. 40-50 and col. 12, ll. 5-10.



Fig. 3



Trying to construe this highly technical language and drawings without any other illumination from the Court, jurors undoubtedly looked for guidance to the testimony of the respective experts and to attorney argument.

At the infringement trial, Power Integrations characterized the invention of the '366 Patent in broad terms, suggesting that it had invented basic features, including soft start:

You're also going to see documents that talk all about the value of these patented features to customers that Fairchild realized the frequency jitter feature, the SoftStart feature were very important to customers, very valuable. And that's why they wanted to have those features.

[10/2/06 Scherkenbach Trial Tr. 167:12-18]. While acknowledging that it was not literally present in Fairchild's products, Power Integrations' expert testified that the jury should take a wide view of what constituted soft start and find it there as an equivalent:

Q. ... In the Fairchild products that you looked at, isn't it true that none of the Fairchild products included a low frequency oscillator as shown in those figures?

A. Right. They show other structure that is discussed in the patent.

Q. But did not show the low frequency analog oscillator that is shown in that figure?

A. I believe that's correct.

Q. Isn't it true that none of the Fairchild products show two independent oscillators as shown in Figures 3, 6 and 9?

A. Certainly not for this part of the circuit. I don't remember any second oscillator.

Q. So they never showed the comparison of signals come from, I think, two independent oscillators?

A. That's correct. They compare another frequency variation signal.

[10/3/06 Blauschild Trial Tr. 511:20-512:14].

Q. Does the FSD210 have this AND gate 455?

A. No, but it has other logic circuitry that works with the latch to force the input to the SoftStart comparator high so the output is forced low.

Q. How does the structure in FSD210 for the SoftStart circuit compare to that disclosed in the patent corresponding for the SoftStart circuit?

A. I don't see any substantial difference."

[*Id.*, 496:20-497:5].

Q. Have you considered whether FSD210 in part infringes [Claim 9 of the '366] under the doctrine of equivalence?

A. I have.

...

Q. Does FSD210 operate in essentially the same way as Claim 9?

A. Yes. It is comparing the fast and slow ramp and issuing the disable signal.

Q. Does FSD accomplish the same result as the SoftStart in Claim 9?

A. Yes. Gradual build up of current.

Q. So what is your conclusion on Claim 9 under the doctrine of equivalence?

> A.  That the FSD210 infringes under the doctrine of equivalence also.

*Id.*, 503:20-504:17.

> What's the difference?  In the patent, you've got an AND gate after one of the comparators.  In their circuit, you have a switch that's before one of the comparators.  That's the difference.  And there's no dispute that this AND gate operates like a switch.  It's really a location issue.

[10/6/06 Scherkenbach Trial Tr. 1558:23-1559:6].  Crucially, Power Integrations argued that it was immaterial that the Fairchild switch was in a different position in the circuit and was a switch and not an AND gate, so long as it "operates like a switch."

At the second trial on validity, Power Integrations sang an entirely different tune, arguing that it only invented a slight improvement on what was previously known in the prior art and that the soft start element should be construed narrowly with respect to equivalents:

> It's not enough to say, well, gee, there were prior ways in the prior art to do SoftStart.  There were prior ways beforehand to do EMI to minimize EMI.  Absolutely, there were.…  The question is whether the way that Power Integrations solved those problems, *the particular circuits that they came up to solve those problems*, were those in the prior art?  And that's what you have to look for in the evidence.

[9/17/07 Scherkenbach Trial Tr. 147:5-24 (emphasis added)].

> [W]ith all these patents, we have been straight from the beginning, we didn't invent frequency modulation per se.  *We didn't invent soft start per se.  We just want to protect the neat way we figured out to do it.*  Our circuit.…  And when you're trying to find whether, or decide whether the prior art invalidates the patents, *the question is whether the way the prior art does it the same.*

[9/21/07 Scherkenbach Trial Tr. 1523:12-22 (emphases added)].  Now, the "particular circuit" was asserted to be determinative of whether soft start was present, the invention limited to the way Power Integrations does it.  Power Integrations' expert took the view that the AND-gate was an absolute requirement – unlike in the infringement trial, a switch or signal coming from a different position in the circuit would not do:

> There are three things in that box: *a latch, an [AND]-gate* and a SoftStart comparator.  Three things.  Three.  Okay.  *Every one of those is part of the structure that this claim requires.*

[9/21/07 Scherkenbach Trial Tr. 1527:20-24 (emphases added)].

> [T]he latch and the AND gate in particular, there are quite a number of things that are *required* by the patent, *but in particular latch, AND gate*, the evidence will

show those are not in prior art..... Mr. Balakrishnan will explain to you why
actually those are really important, why a circuit that has them works very
differently from a circuit that does not.

[9/17/07 Scherkenbach Trial Tr. 166:7-16 (emphases added)].

Put bluntly, Power Integrations argued the same claim element meant two different things
to two different juries. In the infringement trial, the soft start circuit covered circuits with or
without an AND gate or latch – anything substantially similar. In the validity trial, the same
claims now "required" a latch and AND gate. Thus, to determine and apply the scope of
equivalents to the soft start element, two successive juries had to read extensive, technical patent
text and drawings through the lens of sharply contrasting characterizations by Power
Integrations' counsel and witnesses. There is not merely a possibility but a likelihood that "soft
start" was given different meanings and applied differently for purposes of infringement and
validity. A new trial is required.

>    **b.    Infringement and validity of the '876 Patent must be retried
>    because the scope of the frequency jitter element was an issue
>    considered by two successive juries.**

As explained in Fairchild's Motion For Judgment As A Matter Of Law Concerning
Noninfringement And Invalidity Of U.S. Patent No. 6,249,876 ("Motion for JMOL re '876
Patent"), filed herewith, the scope of Claim 1 of the '876 Patent was considered by both the
infringement and validity juries in a manner that produced inconsistent results. That claim, per
the Court's Claim Construction Order, required "frequency jitter," construed as varying
frequency "about a target frequency" to reduce EMI, a limitation as to which Power Integrations
failed to present substantial evidence at the infringement trial, indeed ignoring it altogether. [*See*
D.I. 232, ¶ 8]. Nevertheless, the jury found the accused Fairchild products to infringe and thus
necessarily to vary switching frequency "about a target frequency."

At the validity trial, Power Integrations' expert attempted to use the frequency jitter
element as a basis for distinguishing the '876 Patent over the Martin prior art patent. [9/20/07
Blauschild Trial Tr. 1063:3-4, 1063:15-23, 1067:2-5]. Yet, Power Integrations has admitted that
the Martin patent is identical to Claim 1 of the '876 Patent except for an additional ROM

disclosed by Martin, a component not necessary to vary the frequency or reduce EMI. [9/19/07
Horowitz Trial Tr. 723:19-724:20; 9/20/07 Blauschild Trial Tr. 1077:3-11; 9/19/07 Horowitz
Trial Tr. 723:19-724:20]. If Claim 1 of the '876 Patent discloses the construed frequency jitter,
then the Martin prior art must logically disclose it too. The infringement jury's finding that the
accused Fairchild products infringed Claim 1 without substantial evidence that those products
varied the switching frequency "about a target frequency" would be inconsistent with the validity
jury's failure to find Claim 1 obvious in light of the Martin art despite Power Integrations'
admission. At a minimum, it was unjust to consider validity and infringement separately when
they were "interwoven" by the requirement that the claim have an identical breadth for both
trials. The nature of the issues and of Power Integrations' presentation created the impermissible
possibility – indeed the likelihood – that the two juries applying Claim 1 of the '876 Patent gave
it a different scope. If judgment as a matter of law of noninfringement or invalidity is not
granted, a new trial is required.

        c.      **Interwoven and overlapping issues pervaded both trials,**
                **prejudicing Fairchild**

      In order to keep this motion reasonable in length, Fairchild has selected the clearest
examples for full presentation herein. Besides those above, there were several additional terms
that were successively litigated despite presenting "interwoven" issues and or the danger of
inconsistent scope and application between the two trials. These include but are not limited to
"coupled," "maximum duty cycle" and "drive circuit." The intensity with which the latter two –
both unconstrued terms – were litigated illustrates the reason why, before the *Markman* decision,
it was unheard of to bifurcate infringement from validity (and still is rare). Where the jury must
determine claim scope, "the arguments against infringement are indistinguishably woven with
the factual underpinnings of the validity and enforceability determinations." *Witco Chemical
Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986).

      Obviously, Fairchild suffered significant prejudice as a result of Power Integrations'
abuse of the bifurcated trial procedure. Power Integrations repeatedly exploited the separation of

trials by arguing for simple, broad constructions during the infringement trial and narrower specific constructions on validity. Simply put, the tension between validity and infringement that every patentee usually faces was absent. Rather being forced to argue consistently for a single scope of invention applicable to both validity and infringement, Power Integrations was free to push each in the opposite direction, unburdened by the other. The court's directive to each jury to ignore either infringement or validity, compounded the prejudice because neither jury understood the limits imposed by the issue it was not considering. In combination, the effect was highly prejudicial to Fairchild.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Fairchild respectfully requests that the Court grant its motion for new trial on all issues to resolve the issue of willful infringement and the prejudice created by Power Integrations in light of the bifurcation of infringement and invalidity.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  December 3, 2007
186367.1