IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**FAIRCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR
IN THE ALTERNATIVE MOTION FOR A NEW TRIAL REGARDING
INVALIDITY OF U.S. PATENT NO. 4,811,075**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: December 3, 2007
186366.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

    A.  Fairchild Is Entitled To Judgment As A Matter Of Law That The '075
    Patent Is Invalid ........................................................................................ 3

        1.  The Legal Standard for Judgment as a Matter of Law ............................. 3

        2.  Claim 1 Of The '075 Patent Is Anticipated By The Beasom '173
        Patent, As A Matter Of Law, Under 35 U.S.C. §102(e) ........................... 4

            a.  Power Integrations Admits That Beasom's Earlier '173
            Patent  Contains All Elements Of Claim 1 Of Eklund's
            Later '075 Patent. ................................................................. 4

            b.  Power Integrations Has Not Corroborated All Elements Of
            The Alleged Invention Prior To The Beasom '173 Patent's
            Filing Date, As Required By Federal Circuit Authority ............... 5

                (1)  Power Integrations Failed To Corroborate Eklund's
                Alleged Conception At Any Point Prior To The
                Filing Date Of The '075 Patent ........................................ 6

                    (a)  The Inventor's Testimony Alone Fails To
                    Corroborate Conception As A Matter Of
                    Law ...................................................................... 6

                    (b)  The Inventor's Notes Fail To Corroborate
                    Conception Of All Elements Of Claim 1 ............... 6

                    (c)  No Documents Or Testimony Corroborate
                    The "Date" Of The Inventor's Notes ..................... 9

                    (d)  No Independent Third Party Witness Has
                    Corroborated All Elements Of Claim 1 ............... 10

                  (2)  Power Integrations Failed To Corroborate Eklund's
                  Reduction To Practice At Any Point Prior To The
                  Filing Date Of The '075 Patent ........................................ 12

                  (3)  Power Integrations May Not Rely On Any
                  Argument Regarding Alleged "Diligence" By
                  Eklund In Reducing To Practice ...................................... 14

                    (a)  The "Diligence" Exception Does Not Apply
                    In The Context Of 35 U.S.C. §102(e) ................. 14

**TABLE OF CONTENTS**
**(continued)**

Page

(b)    Power Integrations Failed To Corroborate Any Purported "Diligence" By Eklund In Reducing To Practice ........................................... 16

3.    Claim 1 Of The '075 Patent Is Anticipated By Beasom, As A Matter Of Law, Under 35 U.S.C. §102(g) ................................. 17

a.    Beasom Conceived The '075 Invention Prior To Eklund............ 18

(1)    Power Integrations Admits That Beasom Conceived By April 1985 .................. 18

(2)    Beasom Conceived Of The '075 Invention In His Witnessed April 1984 Notes ............................................. 18

b.    Beasom Reduced The '075 Invention To Practice Prior To Eklund ...................................................................................... 21

4.    Claim 1 Of The '075 Patent Is Obvious In Light Of Beasom Alone Or In Combination With Ludikhuize ...................................................... 22

5.    Claim 5 Of The '075 Patent Is Obvious In Light Of Prior Art Combining High And Low Voltage Devices On The Same Chip .......... 25

B.    Fairchild Is Entitled To A New Trial Because Power Integrations Surprised Fairchild At Trial With Previously Undisclosed Expert Theories Regarding Validity Of The '075 Patent ................................................................. 27

1.    The Legal Standard for a Motion for a New Trial. ............................... 27

2.    Power Integrations Surprise Theory Regarding The P-TOP Element ..................................................................................................... 28

3.    Power Integrations Surprise Theory Regarding The Extended Drain Going To "Surface Adjoining Positions" ....................................... 30

4.    Fairchild Has Been Severely Prejudiced And Is Thus Entitled To A New Trial And Costs For The First Trial.................................................. 31

C.    Fairchild Is Entitled To A New Trial Because The Jury Instruction Regarding "Corroboration" Was Erroneous As A Matter Of Law ...................... 32

III.    CONCLUSION.................................................................................................... 32

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Abrutyn* v. *Giovanniello,*
　　15 F.3d 1048 (Fed. Cir. 1994)............................................................4

*Automotive Tech. Int'l, Inc.* v. *TRW Vehicle Safety Sys., Inc.,*
　　2006 U.S. Dist. LEXIS 69548 (E.D. Mich. 2006) ................................11

*Barnhart* v. *Sigmon Coal Co.,*
　　534 U.S. 438 (2002).......................................................................14

*Bates* v. *Coe,*
　　98 U.S. 31 (1878)............................................................................5

*Becton Dickinson & Co.* v. *Tyco Healthcare Group LP,*
　　2006 U.S. Dist. LEXIS 14999 (D. Del. 2006) ...............................27, 31

*Bennett* v. *Sonnenfeld,*
　　28 C.C.P.A. 951, 958 (CCPA 1941) .................................................17

*Bosies* v. *Benedict,*
　　27 F.3d 539 (Fed. Cir. 1994).......................................................7, 16

*Bullen* v. *Chaffinch,*
　　336 F. Supp. 2d 342 (D. Del. 2004)...................................................3

*Callaway Golf Co.* v. *Slazenger,*
　　384 F. Supp. 2d 735 (D. Del. 2005)..............................................3, 27

*Chen* v. *Bouchard,*
　　347 F.3d 1299 (Fed. Cir. 2003)...................................................11, 13

*Cooper* v. *Goldfarb,*
　　154 F.3d 1321 (Fed. Cir. 1998)........................................................12

*Diasonics, Inc.* v. *Acuson Corp.,*
　　1993 U.S. Dist. LEXIS 8871 (N.D. Cal. 1993) ....................................5

*Ecolochem, Inc.* v. *Southern California Edison Co.,*
　　227 F.3d 1361 (Fed. Cir. 2000).........................................................4

**TABLE OF AUTHORITIES**
(continued)

Page

*Freeman* v. *Motorola, Inc.*,
    1980 U.S. Dist. LEXIS 11346 (N.D. Ill. 1980) ....................................................11

*Frilette* v. *Kimberlin*,
    412 F.2d 1390 (CCPA 1969) ....................................................................................10

*Gozlon-Peretz* v. *United States*,
    498 U.S. 395 (1991) ....................................................................................................15

*Hahn* v. *Wong*,
    892 F.2d 1028 (Fed. Cir. 1989) ................................................................................12

*Hilleby* v. *FMC Corp.*,
    1992 U.S. Dist. LEXIS 20837 (N.D. Cal. 1992) ......................................................8

*IMX, Inc.* v. *Lending Tree, LLC*,
    469 F. Supp. 2d 203 (D. Del. 2007) ...................................................................3, 27

*Invitrogen Corp.* v. *Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ...........................................................................7, 19

*Joy Technologies, Inc.* v. *Flakt, Inc.*,
    820 F. Supp. 802 (D. Del. 1993) ...............................................................................3

*KSR Int'l Co.* v. *Teleflex Inc.*,
    127 S. Ct. 1727 (2007) ................................................................................23, 24, 26

*Kendall* v. *Searles*,
    173 F.2d 986 (CCPA 1949) ......................................................................................16

*Lichtenwalter* v. *Caron*,
    34 C.C.P.A. 792, 796 (CCPA 1947) ........................................................................13

*Means* v. *Letcher*,
    51 Fed. Appx. 281, 284 (10th Cir. 2002) ................................................................27

*Medichem, S.A.* v. *Rolabo, S.L.*,
    437 F.3d 1157 (Fed. Cir. 2006) .................................................................10, 12, 13

*Mikus* v. *Wachtel*,
    542 F.2d 1157 (CCPA 1976) ...........................................................................8, 11, 13

# TABLE OF AUTHORITIES
## (continued)

**Page**

*nCube* v. *Seachange International, Inc.,*
   313 F. Supp. 2d 361 (D. Del. 2004) ........................................................... 3

*Nelson* v. *Hainsworth,*
   32 C.C.P.A. 1025, 1038 (CCPA 1945) ....................................................... 8

*Ortho-Mcneil Pharm., Inc.* v. *Kali Labs., Inc.,*
   482 F. Supp. 2d 478 (D.N.J. 2007) ........................................................... 19

*Pannu* v. *Iolab Corp.,*
   155 F.3d 1344 (Fed. Cir. 1998) ................................................................. 3

*Perkin-Elmer Corp.* v. *Computervision Corp.,*
   732 F.2d 888 (Fed. Cir. 1984) ................................................................... 3

*Price* v. *Symsek,*
   988 F.2d 1187 (Fed. Cir. 1993) ............................................................ 6, 16

*Princeton Biochemicals, Inc.* v. *Beckman Coulter, Inc.,*
   2004 U.S. Dist. LEXIS 11918 (D.N.J. 2004) ............................................. 5

*Ralston Purina Co.* v. *Far-Mar-Co., Inc.,*
   586 F. Supp. 1176 (D. Kan. 1984), *aff'd in part & rev'd in part,* 772 F.2d 1570, 227
   USPQ 177 (Fed. Cir. 1985) ..................................................................... 13

*Reese* v. *Hurst,*
   661 F.2d 1222 (CCPA 1981) .............................................................. 11, 12

*Riche* v. *Permutit Co.,*
   47 F. Supp. 275 (D. Del. 1942) ............................................................... 17

*Ruiz* v. *A.B. Chance Co.,*
   357 F.3d 1270 (Fed. Cir. 2004) ............................................................... 32

*Russello* v. *United States,*
   464 U.S. 16 (1983) ................................................................................. 15

*Sanford* v. *Crittenden Memorial Hosp.,*
   141 F.3d 882 (8th Cir. 1998) .............................................................. 27, 31

**TABLE OF AUTHORITIES**
(continued)

Page

*Singh* v. *Brake*,
    222 F.3d 1362 (Fed. Cir. 2000).................................................................7, 12

*Singh* v. *Brake*,
    317 F.3d 1334 (Fed. Cir. 2002).............................................................8, 9, 17

*Stern* v. *Trs. of Columbia Univ.*,
    434 F.3d 1375 (Fed. Cir. 2006)...................................................................7, 9

*Tenbarge* v. *Ames Taping Tool Sys.*,
    190 F.3d 862 (8th Cir. 1999) ...................................................................27, 31

*Williamson* v. *Consolidated Rail Corp.*,
    926 F.2d 1344 (3d. Cir. 1991)........................................................................3

**FEDERAL STATUTES**

35 U.S.C. §103 ............................................................................................23

35 U.S.C. § 102 .....................................................................................*passim*

Fed. R. Civ. P. 50........................................................................................2

Fed. R. Civ. P. 59(a) ...................................................................................27

Fed. R. Civ. P. 26(a)(2)(B)..........................................................................30

Fed. R. Evid. 702 .....................................................................................7, 19

Fed. R. Evid. 703 .....................................................................................7, 19

## I.    **INTRODUCTION**

Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively "Fairchild") move this Court for Judgment as a Matter of Law (JMOL) (1) that Claim 1 of U.S. Patent No. 4,811,075 ("'075 Patent") is anticipated pursuant to 35 U.S.C. §§102(e) and (g), (2) that Claim 1 and Claim 5 of the '075 Patent are obvious pursuant to 35 U.S.C. §103, and (3) that Fairchild is entitled to a new trial on invalidity of the '075 Patent.

At the start of the invalidity trial, Power Integrations admitted that every element of Claim 1 of the '075 Patent was contained in Mr. Beasom's earlier U.S. Patent No. 4,823,173 ("'173 Patent"). Thus, in order to overcome the '173 Patent as prior art, Power Integrations was required to show that Dr. Eklund invented Claim 1 of the '075 Patent before the filing date of Mr. Beasom's '173 Patent. Power Integrations failed to present legally sufficient evidence corroborating any invention date prior to the filing of the '173 Patent:

- The testimony of Dr. Eklund—the inventor of the '075 Patent—is legally insufficient to alone establish prior conception or reduction to practice without some independent corroboration;

- Power Integrations has not shown any single document corroborating Dr. Eklund's conception prior to the '173 Patent. Neither Exhibit PX29 nor Exhibit PX30—Dr. Eklund's notes relied upon by Power Integrations—independently shows all elements of Claim 1 of the '075 Patent, and thus such exhibits do not corroborate Dr. Eklund's conception of Claim 1 prior to the '173 Patent filing date;

- Power Integrations has not provided any independent corroborating evidence that PX29 and PX30 were meant to be read together, in order to establish conception. The documents were made months apart and do not refer to each other. Power Integrations did not present any corroborating evidence, prior to the time the '173 Patent was filed, the documents were meant to be read together;

- Power Integrations has not produced any independent witness who can corroborate that Dr. Eklund conceived of all elements of Claim 1 prior to the filing of the '173 Patent.

1

Power Integrations' third party witnesses Mr. Brunnberg and Mr. Sarkissian did not even recall seeing PX29 or PX30 and neither could testify that Dr. Eklund was in possession of all elements of Claim 1;

- Power Integrations has not produced any documents, prototypes or devices corroborating that Dr. Eklund reduced all elements of Claim 1 to practice at any time prior to the filing of the '173 Patent;

- Power Integrations has not produced any independent witness who can corroborate that Dr. Eklund ever reduced all elements of Claim 1 to practice. Neither Mr. Brunnberg, nor Mr. Sarkissian, could testify regarding any purported reduction to practice.

In sum, the undisputed facts establish that Dr. Eklund cannot prove prior conception and reduction to practice prior to the filing date of Mr. Beasom's '173 Patent, and thus the '173 Patent anticipates as a matter of law under 35 U.S.C. § 102(e). Further, the undisputed facts establish that Mr. Beasom conceived of the invention of Claim 1 in his notebook and prior art invention disclosure document, and that he reduced the invention to practice by creating and testing a working device, all prior to Dr. Eklund's conception and reduction to practice. Thus, Mr. Beasom's notes and test devices also anticipate under 35 U.S.C. § 102(g). Moreover, based on the undisputed facts, both Claim 1 and Claim 5 of the '075 Patent are obvious as a matter of law, in light of the work of Mr. Beasom, in combination with the 1982 Ludikhuize article and other prior art—no reasonable jury could find otherwise. For all of these reasons, the Court should enter judgment finding the '075 Patent to be invalid.

In the alternative, the Court should order a new trial on the invalidity of the '075 Patent. Power Integrations surprised Fairchild at trial with two entirely new theories of validity that were addressed nowhere in its expert's reports or depositions. Also, the jury instruction on "corroboration" of invention proposed by Power Integrations and adopted by the Court was incorrect as a matter of law. Both of these errors have caused severe prejudice to Fairchild, entitling it to a new trial.

## II.    ARGUMENT

### A.    Fairchild Is Entitled To Judgment As A Matter Of Law That The '075 Patent Is Invalid

#### 1.    The Legal Standard for Judgment as a Matter of Law.

Under Rule 50(a)(1) of the Federal Rules of Civil Procedure, a party moving for judgment as a matter of law must "show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *nCube v. Seachange International, Inc.*, 313 F. Supp. 2d 361, 366 (D. Del. 2004) (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998)); *see also Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 739 (D. Del. 2005) (quoting *Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 346 (D. Del. 2004) (Moving party must prove "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue" (internal citations omitted)). Substantial evidence is "such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support the finding under review." *IMX, Inc. v. Lending Tree*, LLC, 469 F. Supp. 2d 203 (D. Del. 2007) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984). Substantial evidence is an inquiry into the quality, rather than the quantity, of the evidence and "does not refer to the amount of evidence proffered but rather to the substance or nature of the evidence and whether that evidence would reasonably support the jury's verdict." *Joy Technologies, Inc. v. Flakt*, Inc., 820 F. Supp. 802 (D. Del. 1993); *see also nCube*, 313 F. Supp. 2d at 366 ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could properly find a verdict for that party" (internal citations omitted)).

In determining whether substantial evidence exists in the record to support the jury's verdict, a court draws all inferences in favor of the non-moving party. The court grants the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general,

view the record in the light most favorable to him." *nCube*, 313 F. Supp. 2d at 366 (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1348 (3d. Cir. 1991)); *see also Callaway Golf*, 384 F. Supp. 2d at 739. Additionally, a court may not examine witness credibility, weigh evidence or substitute its own view for that of the jury. *See Callaway Golf*, 384 F. Supp. 2d at 739 ("The difference in views between the court and the jury is an insufficient basis to enter judgment as a matter of law." (internal citations omitted)). Even with all inferences drawn in favor of Power Integrations, a review of the record discloses that the verdict in its favor is against the weight of the evidence.

In the instant matter, there is not legally sufficient evidence in the record to support the jury's verdict that the '075 Patent is valid. Based on the undisputed facts developed at trial, Power Integrations has failed to demonstrate the validity of the '075 Patent as a matter of law and no reasonable jury could find otherwise.

> **2.      Claim 1 Of The '075 Patent Is Anticipated By The Beasom '173 Patent, As A Matter Of Law, Under 35 U.S.C. §102(e)**
>
> > **a.      Power Integrations Admits That Beasom's Earlier '173 Patent Contains All Elements Of Claim 1 Of Eklund's Later '075 Patent.**

Power Integrations readily admitted at trial that every element of Claim 1 of the '075 Patent, filed on April 24, 1987, is found in Beasom's '173 Patent, which was filed over 15 months earlier on January 7, 1986. [9/21/07 Shields Trial Tr. 1390:3-14; PX4; DX541] In opening, Power Integrations admitted:

> "[w]hen you talk about the P-Top patent, the '075 patent, I'll tell you right now the evidence will show Mr. Beasom did have the same idea as Dr. Eklund. No question about it."

[9/17/07 Power Integrations Opening Statement 148:22-149:1] The Beasom '173 Patent anticipates Claim 1 of the '075 Patent pursuant to 35 U.S.C. § 102(e). The filing date of both the '173 Patent and the '075 Patent are presumed to be their respective dates of invention, and thus the '173 Patent was presumptively invented first. *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) ("[T]he date of the invention is presumed to be the

filing date of the parent application ... ."); *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050 (Fed. Cir. 1994) ("[A] rebuttable presumption exists that the inventors made their invention in accordance with the order of their filing dates.")

Because the '173 Patent undisputedly discloses every element of the '075 Patent, the burden of production was then on Power Integrations to rebut Fairchild's showing in this regard and to demonstrate that Dr. Eklund invented the subject matter of the '075 Patent prior to the '173 Patent's filing date. *See Bates v. Coe*, 98 U.S. 31, 34 (1878) ("the presumption in respect to the invention described in the patent in suit, if it is accompanied by the application for the same, is that it was made at the time the application was filed; and the complainant or plaintiff may, if he can, introduce proof to show that it was made at a much earlier date"); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 2004 U.S. Dist. LEXIS 11918, *231-238 (D.N.J. 2004) (reviewing state of the law; where defendant makes out prima facie case of prior invention and the patentee "seeks to stave off a claim of prior invention by asserting a date of invention prior to the date it filed its patent application" the patentee bear the burden of proving the date of its own prior invention by clear and convincing evidence); *Diasonics, Inc. v. Acuson Corp.*, 1993 U.S. Dist. LEXIS 8871, *39-40 (N.D. Cal. 1993) (addressing burden of proof on a patentee who seeks to avoid a finding of prior invention by relying on an invention date earlier than the filing date; concluding that the patentee could only rely on an earlier date if it could establish an invention on that date by clear and convincing evidence).

Thus, regardless of the specific characterization of the burden, Power Integrations carried a heavy burden to show that it could overcome anticipation under Section 102(e) after its initial admission that the earlier Beasom '173 patent had all elements of Claim 1. Only by corroborating both a conception and actual reduction to practice—the two requisite elements of invention—prior to the filing date of the '173 Patent, could it sustain that burden. As discussed below, Power Integrations has failed to do so as a matter of law. Thus, the '075 Patent is anticipated by the '173 Patent under 35 U.S.C. §102(e).

**b.** **Power Integrations Has Not Corroborated All Elements Of The Alleged Invention Prior To The Beasom '173 Patent's Filing Date, As Required By Federal Circuit Authority**

Power Integrations has failed to prove that Dr. Eklund both conceived and actually reduced to practice the invention of Claim 1 at any point prior to the filing of Beasom's '173 Patent, or at any point prior to the filing of the '075 Patent. The Federal Circuit has clearly established that independent corroborating evidence is necessary to prove each of these components of "invention." Power Integrations has failed to corroborate Dr. Eklund's purported invention. Thus, the earliest invention date that Power Integrations may claim is the April 24, 1987 filing date of the '075 Patent, which it admits is anticipated by the '173 Patent.

**(1)** **Power Integrations Failed To Corroborate Eklund's Alleged Conception At Any Point Prior To The Filing Date Of The '075 Patent**

**(a)** **The Inventor's Testimony Alone Fails To Corroborate Conception As A Matter Of Law**

The Federal Circuit's well-settled "corroboration" rules require independent corroborating evidence of conception. Corroboration must be independent of the inventor. Power Integrations failed to put forward sufficient corroboration of a complete conception by Dr. Eklund of all elements of Claim 1 prior to the filing date of the '075 Patent. First, Power Integrations put forth the testimony of the inventor, Dr. Eklund to establish conception. The testimony of the inventor is inadequate to establish conception as a matter of law, without some independent corroboration. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993) ("it has been ruled in many cases that the mere unsupported evidence of the alleged inventor, on an issue of priority, as to . . . conception and the time thereof, can not be received as sufficient proof of . . . prior conception"; "an inventor's testimony, standing alone, is insufficient to prove conception"). Fairchild objected to uncorroborated testimony of Dr. Eklund in its Motion *In Limine* No. 18, and hereby renews that objection. [DI 356]

**(b)** **The Inventor's Notes Fail To Corroborate Conception Of All Elements Of Claim 1**

Power Integrations then attempted to corroborate the alleged prior conception by relying

on the combination of two sets of Dr. Eklund's unwitnessed notes—PX29 and PX30. Power Integrations' expert Mr. Shields admits that combining PX29 and PX30 is "essential" to his opinion that Eklund conceived of the invention. [9/21/07 Shields Trial Tr. 1400:15-19; *see also id.* at 1377:2-7] However, these notes do not establish or corroborate conception of all elements of Claim 1, as a matter of law, as *neither shows the entire claimed invention, there is no corroborated evidence that the notes were meant to be combined.*

Power Integrations concedes that not all elements are present in PX29—Eklund's unwitnessed September 26, 1984 notes. Particularly, Power Integrations admits that the extended drain element of Claim 1 going to "surface adjoining positions" is not present. [9/21/07 Shields Trial Tr. 1396:18-1397:17; *see also* 9/18/07 Gwozdz Trial Tr. 500:22-502:21] Likewise, Power Integrations concedes that not all elements are present in PX30 either— Eklund's unwitnessed 1985 notes in which the month and day have been removed, but which Power Integrations contends is dated "January" 1985. Particularly, in those notes Power Integrations admits that the claim element requiring the top layer and substrate being connected or subject to application of a reverse-bias voltage is not shown. [9/21/07 Shields Trial Tr. 1381:20-1382:8, 1399:6-1400:14; 9/20/07 Eklund Trial Tr. 1176:19-1177:9, 1177:23-1178:14; *see also* 9/18/07 Gwozdz Trial Tr. 503:3-509:23][1]

Because neither PX29 nor PX30 contain *all* elements of Claim 1 of the '075 patent, neither constitutes a conception of the invention, nor corroborates Dr. Eklund's testimony as a matter of law. *See Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000) ("A conception must encompass all limitations of the claimed invention ... ."); *Bosies v. Benedict*, 27 F.3d 539, 543 (Fed. Cir. 1994) (no conception where element of the claim was missing from notes); *Stern v.*

---

[1] At most, regarding reverse biasing in PX30, Mr. Shields testified that PX30 "implies it by implication. But to show this more directly, let's go to an earlier note from September" [9/21/07 Shields Trial Tr. 1379:10-16] First, he provides no explanation or support for the conclusory statement "implies it by implication"—whatever that may mean—and thus the assertion fails as a matter of law. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (rejecting expert testimony regarding conception where there was a failure to "properly explain[] the technical notebook entries."); Fed. R. Evid. 702, 703 (expert opinions must be based on reliable principles, methods, facts and data). Second, in this testimony Mr. Shields clearly admits that PX30 does not explicitly show reverse biasing and that he must rely on PX29 to show the reverse biasing element of Claim 1. During cross-examination, when asked whether PX30 showed reverse biasing, Mr. Shields conceded "[i]t could, but I won't say it definitely does." [9/21/07 Shields Trial Tr. 1399:6-13]

*Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) (conception requires a showing that the inventor had "a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice."). While Eklund may have been investigating some of the ideas later claimed in the '075 patent, he never fully set forth a complete conception of all elements of the Claim 1 invention in any single set of notes or any other document prior to the filing of the '075 Patent.

Further, Power Integrations may not attempt to cobble these two disparate sets of notes together to argue that there was any purported conception, as there is no independent corroborating evidence to establish that the notes were meant to be read together. *See Singh v. Brake*, 317 F.3d 1334, 1342 (Fed. Cir. 2002) (rejecting argument that different pages of unwitnessed notes established conception where there "there is nothing . . .that corroborates [the inventor's] testimony that [the] entries were meant to be read together"); *Nelson v. Hainsworth*, 32 C.C.P.A. 1025, 1038 (CCPA 1945) (rejecting argument that early sketches, which lacked combination of all elements, should be combined for the purpose of showing conception); *Mikus v. Wachtel*, 542 F.2d 1157, 1159 (CCPA 1976) ("each and every element of the count must be corroborated"); *Hilleby v. FMC Corp.*, 1992 U.S. Dist. LEXIS 20837, *24 (N.D. Cal. 1992) (same).

Indeed, Power Integrations has offered no testimony by any corroborating witness to establish that the pages were meant to be read together at the time. To the contrary, Mr. Brunnberg, a colleague of Dr. Eklund's put on by Power Integrations in support of its conception argument, admitted that he had never even seen or witnessed documents PX29 or PX30, much less received any explanation from Dr. Eklund at the time that the documents were meant to be combined. [9/20/07 Brunnberg Trial Tr. 1250:19-1251:4, 1253:2-9, 1254:7-10] Thus, because there is no evidence corroborating the purported combination of PX29 and PX30 to show all elements of Claim 1, neither of which shows the whole invention on its own, Power Integrations has failed to establish conception as a matter of law.

In fact, the evidence developed at trial indicates that the pages of PX29 and PX30 should

*not* be combined to evidence any purported conception. The pages of PX29 and PX30 are not in a single notebook, are on different paper, were written at least four months apart and there is no explicit reference from one document to the other. [PX29, PX30] Further, not only does Power Integrations admit that PX30 is missing the reverse bias element, but Fairchild's expert, Dr. Gwozdz, established that the PX30 notes actually teach away from that element due to the presence of a thick oxide which prevents connection to the substrate and by calling the device a "pinch resistor." [9/18/07 Gwozdz Trial Tr. 509:4-23] Thus, the evidence strongly indicates that the PX29 and PX30 notes should *not* be combined and that Dr. Eklund did not have a complete conception of the invention at that time. It would be completely incorrect, as a matter of law, to permit Dr. Eklund to look back with hindsight and paste together two incomplete descriptions to arrive at the purported "invention" of Claim 1. Corroboration requires more.

> **(c)    No Documents Or Testimony Corroborate The "Date" Of The Inventor's Notes**

The need for independent corroboration of Dr. Eklund's testimony and notes is particularly acute in this case. First, the notes are not witnessed and are, thus, insufficient evidence of conception. *See Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) ("Regardless of the contents of the notebooks, unwitnessed laboratory notebooks on their own are insufficient to support his claim [of conception, and therefore] of co-inventorship.").

Moreover, the dating of PX30—the group of Dr. Eklund's notes principally relied upon by Power Integrations for its conception date—cannot be independently determined. Power Integrations alleges the date of these pages to be "January" 1985. However, the month and day on each page of that document has been punched out and cannot be conclusively determined. This was confirmed by the extensive testimony of *both* Fairchild's and Power Integrations' forensic experts at trial. [9/20/07 Eklund Trial Tr. 1169:18-23; 9/20/07 Lyter Trial Tr. 1231:14-18, 1232:7-1235:6; 9/18/07 Speckin Trial Tr. 353:7-358:4, 387:11-388:23] The *only* evidence of the purported month and day of these pages is again the uncorroborated testimony of Dr. Eklund. This is inadequate corroboration as a matter of law. *Singh v. Brake*, 317 F.3d 1334, 1341 (Fed.

Cir. 2002) ("Evidence of the inventive facts must not rest alone on the testimony of the inventor himself.").[2]  Fairchild objected to the failure of corroboration of the dates in its Motions *In Limine* Nos. 3 and 4, and hereby renews those objections.  [DI 513]

**(d)    No Independent Third Party Witness Has Corroborated All Elements Of Claim 1**

Finally, Power Integrations' other attempts to rely on the testimony of Mr. Jan Brunnberg regarding corroboration fail as well as a matter of law.  First, he admitted that he had never seen or witnessed PX29 or PX30 during the relevant time.  [9/20/07 Brunnberg Trial Tr. 1250:19-1251:4, 1253:2-9, 1254:7-10]  Further, Brunnberg never corroborated that he was shown and understood that all elements of Claim 1 were present in *any* of Eklund's notes in 1984 or 1985.  While Brunnberg allegedly recalls looking at, signing and dating as many as fifty documents showed to him by Dr. Eklund in approximately 1984 to 1985, he has never seen these documents since that time.  [9/20/07 Brunnberg Trial Tr. 1248:11-1249:3, 1254:7-10, 1260:8-13]

It is impossible to determine whether those documents that were allegedly signed actually contained all elements of the '075 invention.  Brunnberg testified that he did not understand what he was signing at the time, and did not understand how Dr. Eklund's devices worked, but signed and dated the documents anyway.  [9/20/07 Brunnberg Trial Tr. 1249:24-1250:2, 1257:16-1258:22]  In fact, Brunnberg testified that he simply signed everything that Dr. Eklund brought to him, that he "just didn't care" about the substance of the documents he was signing and that when he asked Dr. Eklund what the substance was, Eklund told him not to worry about it and to sign it anyway. [9/20/07 Brunnberg Trial Tr. 1258:5-16, 1258:5-1259:10, 1260:21-1261:1]  This evidence falls far short of corroborating all elements of Claim 1.

Given that Brunnberg admits that he did not independently understand the substance of

---

[2] The need for corroboration is further accentuated in this case given the forensic testimony establishing that the pages of PX30 were improperly combined, to manipulate the dating.  [9/18/07 Speckin Trial Tr. 349:2-352:14, 376:9-387:10]  Further, Dr. Eklund admitted at trial that the fourth page of PX29 was created at a different time than the first three pages.  [9/20/07 Eklund Trial Tr. 1098:24-1099:4]  Yet, he attached them together and purported to apply the date on the first page to all of the pages.  [PX29]  The corroboration requirement applies with force under these circumstances. *Singh v. Brake*, 317 F.3d 1334, 1341 (Fed. Cir. 2002) ("the purpose of corroboration" is "to prevent fraud, by providing independent confirmation of the inventor's testimony").

10

any documents he saw, whatever purported information he may have about them merely came from Dr. Eklund himself. This is a failure of corroboration as a matter of law. *See Medichem, S.A.*, 437 F.3d at 1170 ("The requirement of independent knowledge remains key to the corroboration inquiry."); *Frilette v. Kimberlin*, 412 F.2d 1390, 1398 (CCPA 1969) (where alleged corroborating witness' only information about the invention "was not based on either knowledge or analysis" by the corroborating witness, but was rather only information provided by the inventor himself, there was no corroboration); *Chen v. Bouchard*, 347 F.3d 1299, 1310 (Fed. Cir. 2003) (explaining *Frilette*); *Reese v. Hurst*, 661 F.2d 1222, 1233 (CCPA 1981) (testimony of purported corroborating witness legally insufficient "because it was dependent solely on what [inventor] told him"); *Freeman v. Motorola, Inc.*, 1980 U.S. Dist. LEXIS 11346, *19-20 (N.D. Ill. 1980) (to corroborate invention, corroborating witness must have been "capable of understanding, and in fact understood, how the claimed invention worked to produce the desired results.")

There is no way to test whether the documents Brunnberg signed contained each element of Claim 1 of the '075 invention, as the purportedly witnessed documents have never been produced in this case. Brunnberg testified that if he were asked to draw what Dr. Eklund showed him at the time, that he could not do so because he cannot remember twenty years back.[3] [9/20/07 Brunnberg Trial Tr. 1250:14-18] Such rank hearsay is not admissible in the first place, as the Court recognized during the trial. [9/20/07 Brunnberg Trial Tr. 1107:20-1108:17] For this reason as well, corroboration fails and Dr. Eklund has failed to prove conception as a matter of law. *See Automotive Tech. Int'l, Inc. v. TRW Vehicle Safety Sys., Inc.*, 2006 U.S. Dist. LEXIS 69548, *13-17 (E.D. Mich. 2006) (where document allegedly showing conception was "destroyed," testimony about it was insufficient corroboration as a matter of law).

---

[3] Despite this admission that he couldn't remember or draw what Dr. Eklund showed him at the time, Brunnberg testified that the figure on the first page of Eklund's PX29 notes "looks like the structure that Klas had me sign" and that the drawings he had signed purportedly had a P-TOP structure in an N-well and had two components in series. [9/20/07 Brunnberg Trial Tr. 1249:10-23, 1251:5-16] Not only is this testimony not credible, it does not establish that Eklund was in possession *of every element of the invention of Claim 1 of the '075 Patent* and thus fails to corroborate conception as a matter of law. *Mikus v. Wachtel*, 542 F.2d 1157, 1159 (CCPA 1976) ("each and every element of the count must be corroborated").

### (2) Power Integrations Failed To Corroborate Eklund's Reduction To Practice At Any Point Prior To The Filing Date Of The '075 Patent

It is also well-settled Federal Circuit law that independent corroborating evidence of reduction to practice is required. While Dr. Eklund predictably testified that he purportedly reduced the invention to practice by November 1986, Power Integrations failed to put forward any corroboration of a reduction to practice by Dr. Eklund prior to the filing date of the '173 Patent. [9/20/07 Eklund Trial Tr. 1144:2-1145:3] Dr. Eklund admits that he has no actual evidence of a reduction to practice. He has no test chips, wafers or prototypes of any kind. [9/20/07 Eklund Trial Tr. 1162:1-12] Rather, Power Integrations relies *solely* on Dr. Eklund's own bare testimony and unwitnessed documents as evidence of alleged reduction to practice.

Power Integrations does not offer any other testimony of any witness regarding any alleged reduction to practice. Indeed, Mr. Brunnberg did not testify at all regarding any reduction to practice by Dr. Eklund and admitted that he does not even understand the details of how such a device would work. [9/20/07 Brunnberg Trial Tr. 1249:24-1250:2] Similarly, Mr. Sarkissian, who worked with Dr. Eklund at both AMD and Data General during the period of alleged invention, testified that he has no recollection of seeing any wafer or die which was represented to contain a device designed by Eklund. [9/20/07 Sarkissian Trial Tr. 1276:11-15]

The Federal Circuit has held that "the standard of proof required to corroborate a reduction to practice [is] more stringent . . . than that required to corroborate a conception." *Singh v. Brake*, 222 F.3d 1362, 1370 (Fed. Cir. 2000). Under the well-settled corroboration rules, Dr. Eklund's own testimony is insufficient to corroborate reduction to practice, as a matter of law. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) ("In order to establish an actual reduction to practice, an inventor's testimony must be corroborated by independent evidence."); *Reese v. Hurst*, 661 F.2d 1222, 1225 (CCPA 1981) ("evidence of corroboration must not depend solely on the inventor himself").

Likewise, Eklund's unwitnessed notes are inadequate to establish reduction to practice as a matter of law. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170, 1172 (Fed. Cir. 2006)

("[I]n a case involving reduction to practice, an unwitnessed notebook is insufficient on its own to support a claim of reduction to practice"; rejecting unwitnessed notebooks as they did "not provide an 'independent' source of authority on the issue of reduction to practice"); *Reese v. Hurst*, 661 F.2d 1222, 1232 (CCPA 1981) ("The inventors' notebooks are accorded no more weight than the inventors' testimony in this instance, since they were not witnessed or signed and were unseen by any witness until after this interference was declared."); *Hahn v. Wong*, 892 F.2d 1028, 1032-1033 (Fed. Cir. 1989) ("The inventor, however, must provide independent corroborating evidence in addition to his own statements and documents."); *Mikus v. Wachtel*, 542 F.2d 1157, 1161 (CCPA 1976) (holding that an invention record, based on an unwitnessed laboratory notebook and results performed by technicians unaware of what they were testing, was insufficient evidence of reduction to practice).[4]

Further, none of Dr. Eklund's unwitnessed notes establish that any device with all elements of Claim 1 of the '075 Patent was ever reduced to practice. Likewise, at trial neither Dr. Eklund nor any other witness established that each element of Claim 1 existed in any purported reduction to practice. There was not even an attempt to establish that all elements of Claim 1 were reduced to practice. It is well settled that to establish reduction to practice, Power Integrations was required to prove (1) construction of an embodiment that "met all limitations" and (2) that the embodiment "worked for its intended purpose." *Medichem, S.A. v. Rolabo*, 437 F.3d 1157, 1169 (Fed. Cir. 2006). Power Integrations has failed to demonstrate reduction to practice under this standard. *See Chen v. Bouchard*, 347 F.3d 1299, 1311 (Fed. Cir. 2003) (inventor "utterly failed to explain in his brief how the evidence on which he relies as evidence of an actual reduction to practice of the subject matter of the counts 'reads on' the specific limitations required by each of the counts."); *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1173 (Fed. Cir. 2006) (documents showing certain test data showed generally the possession of a

---

[4] *See also Ralston Purina Co. v. Far-Mar-Co., Inc.* 586 F.Supp. 1176, 1214 (D. Kan. 1984), *aff'd in part & rev'd in part*, 772 F.2d 1570, 227 USPQ 177 (Fed. Cir. 1985) ("Since corroboration must be independent of the inventor, the inventor's notebooks unsigned by witnesses do not suffice since they are simply documents which he produced... and are merely self-serving declarations by the inventors....")

chemical but did not adequately corroborate the *claimed* process or that the chemical was obtained by the claimed process); *Lichtenwalter v. Caron*, 34 C.C.P.A. 792, 796 (CCPA 1947) (rejecting non-inventor witness' testimony regarding reduction to practice because it did not establish each element of the claim).

Because Power Integrations failed to prove conception and actual reduction to practice prior to the filing of Beasom's '173 Patent, the '173 Patent anticipates under 35 U.S.C. § 102(e), as a matter of law.

> ### (3)  Power Integrations May Not Rely On Any Argument Regarding Alleged "Diligence" By Eklund In Reducing To Practice
>
> #### (a)  The "Diligence" Exception Does Not Apply In The Context Of 35 U.S.C. §102(e)

Power Integrations improperly attempted to take advantage of an exception in the priority rules of Section 102(g) under which the party that was first to conceive, but last to reduce to practice, may nonetheless be considered the inventor if they were "diligent" in achieving their later reduction to practice. However, it may not avail itself of this exception to overcome the '173 Patent, under 35 U.S.C. § 102(e). The Patent Act expressly states that the "diligence" exception is available *only* to overcome prior art under 35 U.S.C. § 102(g). Section 102(g) states:

> (g)(1) during the course of an interference conducted under section 135 or section 291, another inventor involved therein establishes, to the extent permitted in section 104, that before such person's invention thereof the invention was made by such other inventor and not abandoned, suppressed, or concealed, or (2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. *In determining priority of invention under this subsection*, there shall be considered not only the respective dates of conception and reduction to practice of the invention, *but also* the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

[35 U.S.C. § 102(g) (emphasis added)]  Clearly Congress intended that the diligence exception apply only to Section 102(g) prior art—i.e. prior art "under this subsection." "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says

there.  When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-462 (2002) (citations omitted).

By contrast, Section 102(e) does not refer to "diligence" to a reduction to practice at all. Instead, it provides that a patent is anticipated where:

> (e) the invention was described in - (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language

[35 U.S.C. §102(e)]  If Congress had intended to allow a patentee a diligence exception as to Section 102(e) prior art, it would have said so.  It did not, and thus the diligence exception is not available to overcome Section 102(e) prior art.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *Gozlon-Peretz v. United States*, 498 U.S. 395, 404-405 (1991) (same).[5]  The adopted Jury Instruction on Section 102(e) prior art correctly reflects the standard and does not mention diligence.  [D.I. 550 at p. 30 (Jury Inst. IV.6., "Prior United States Patent Application")]

Rather, to overcome prior art under Section 102(e), the patentee must prove that he both conceived *and* actually reduced the invention to practice *before* the 102(e) prior art reference. As discussed, Power Integrations has admittedly failed to prove conception *and* reduction to practice prior to the filing date of the '173 Patent and thus the '173 Patent anticipates under Section 102(e) as a matter of law.  Critically, Power Integrations admits that Dr. Eklund's earliest actual reduction to practice occurred, at the earliest in November 1986, which is at least

---

[5] While the U.S. Patent Office and the Federal Circuit have applied the "diligence" exception in the context of interferences as contemplated by 35 U.S.C. § 102(g) and in the context of prosecution practice under 37 C.F.R. 1.131, we have found no case in which the Federal Circuit has applied the 102(g) diligence exception to overcome admittedly anticipating 102(e) prior art in litigation.

ten months after the January 7, 1986 filing date of the Beasom '173 Patent. [9/20/07 Eklund Trial Tr. 1144:2-1145:3; DX541] Thus, Power Integrations admits at the outset that Dr. Eklund did not reduce to practice prior to Mr. Beasom's filing date. Since the "diligence" exception applies only in the context of Section 102(g) and not Section 102(e), Power Integrations' admission is fatal to Claim 1 of the '075 Patent.

        **(b)**       **Power Integrations Failed To Corroborate Any Purported "Diligence" By Eklund In Reducing To Practice**

Even if the "diligence" exception were available, Power Integrations may not avail itself of the exception. To begin, the rule does not apply at all in this case because, as discussed below, Mr. Beasom conceived before Dr. Eklund. [*See infra* Section 3.a.]; *Bosies v. Benedict*, 27 F.3d 539, 544 (Fed. Cir. 1994) (where party seeking to extend date of invention prior to filing date fails to prove prior conception, the issue of diligence need not be considered)

Further, the diligence exception applies only if the party who first conceived exercised "continuous and reasonable diligence" in reducing to practice from a point right before the other inventor's conception up to their own, later reduction to practice. The Federal Circuit has made it clear that independent corroboration of any such alleged "diligence" is required. *Price v. Symek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993) (observing that corroboration is required regarding evidence of alleged diligence); *Kendall v. Searles*, 173 F.2d 986, 993 (CCPA 1949) (same). Power Integrations has failed to provide any independent corroboration of alleged diligence and thus the exception does not apply as a matter of law.

In this case, the period of required diligence would be at least from the period right before Mr. Beasom's undisputed conception, April 24, 1985, continuously up until Dr. Eklund's constructive reduction to practice on April 24, 1987—the filing date of the '075 Patent. There has been no corroboration of diligence for this entire period. The only purported evidence of "diligence" offered by Power Integrations is again the bare testimony of Dr. Eklund and pages of Eklund's own notes. No other independent witness corroborated Dr. Eklund's purported work on the invention. To the contrary, Mr. Sarkissian, an employee working with Dr. Eklund during

the alleged "diligence" period, admitted that he did not recall exactly what Eklund was working on and was unable to corroborate any particular idea prior to April 24, 1987. [9/20/07 Sarkissian Trial Tr. 1267:10-18, 1269:15-1271:8, 1281:3-15]

Moreover, Eklund failed to explain whether any of the documents relied upon for alleged diligence contain *any* elements of Claim 1 of the '075 Patent, much less all elements. [*See generally* 9/20/07 Eklund Trial Tr. 1127:17-1145:11 (referring to documents; failing to discuss *any* particular elements); *see also* 9/20/07 Eklund Trial Tr. 1122:20-1124:2 (admitting that work was "not actually the same as the patent"). While Dr. Eklund referred to a number of Exhibits as having the invention,[6] Dr. Eklund never showed a single drawing that contained all elements of Claim 1. Accordingly, Power Integrations' assertion of alleged "diligence" fails as a matter of law. *See Singh v. Brake*, 317 F.3d 1334, 1343 (Fed. Cir. 2002) (finding that "various pages from Dr. Singh's laboratory notebook which are (i) unexplained as to content and relevance to the invention of the Count, and (ii) uncorroborated" were insufficient "to prove reasonable diligence toward reduction to practice by a preponderance of the evidence"); *Bennett v. Sonnenfeld*, 28 C.C.P.A. 951, 958 (CCPA 1941) (rejecting evidence of alleged diligence where the work was not proven to be related to the *claims*); *Riche v. Permutit Co.*, 47 F. Supp. 275, 278-279 (D. Del. 1942) ("The diligence upon which the plaintiff relies must be directed to a reduction to practice of the invention in issue"; diligence "calls for something more than simply keeping the patentable idea in a state of incubation"; rejecting argument of diligence where there was no evidence that inventor worked on combining elements of claim).

### 3. Claim 1 Of The '075 Patent Is Anticipated By Beasom, As A Matter Of Law, Under 35 U.S.C. §102(g)

As discussed above, Power Integrations is unable to show that Dr. Eklund conceived or diligently reduced to practice the entire invention of Claim 1 of the '075 Patent at any point prior to the April 1987 filing of the '075 Patent. By contrast, Mr. Beasom conceived of the invention

---

[6] Dr. Eklund referred to the following material: PX29; PX30; PX404 (KE1513-1517, KE1576-1577); PX47 (KE920, KE944, KE951, KE955-957, KE961, KE986, KE1083-1085); PX41 (KE498-499); PX414 (KE1588); PX39 (KE46-47, KE39, KE61-63); PX43 (KE331); PX40 (KE315-316); PX406 (KE1524-1526); PX44 (KE520-526); PX48 (KE1362-1364); PX45 (KE744); PX46 (KE836-840)

and reduced it to practice prior to the '075 Patent and prior to Dr. Eklund's claimed dates of conception and reduction to practice. Accordingly, Mr. Beasom's work anticipates the '075 Patent, pursuant to 35 U.S.C. § 102(g).

### a.    Beasom Conceived The '075 Invention Prior To Eklund

#### (1)    Power Integrations Admits That Beasom Conceived By April 1985

Power Integrations expressly admitted that Beasom conceived of Claim 1 of the '075 invention by at least the date of April 24, *1985* in an invention disclosure to his attorney. [9/21/07 Shields Trial Tr. 1390:23-1391:11; DX632] Thus, as discussed, given that Dr. Eklund is unable to prove conception at any point before the filing of the '075 Patent, Mr. Beasom's April 1985 notes establish that Mr. Beasom conceived the invention before Dr. Eklund.

#### (2)    Beasom Conceived Of The '075 Invention In His Witnessed April 1984 Notes

Even if Dr. Eklund's purported September 1984 or "January" 1985 conception dates were assumed for purposes of argument, Mr. Beasom had an even earlier conception in his April 24, *1984* laboratory notebook entry. Mr. Beasom's notebook entry contained a detailed description of his high voltage MOS device. [9/18/07 Beasom Trial Tr. 216:6-227:24; DX130] The notebook was bound, written in ink and witnessed by two engineers who understood its substance at the time it was created. [9/18/07 Beasom Trial Tr. 216:6-222:24; 9/18/07 Moore Trial Tr. 315:10-326:20; 9/18/07 Prentice Trial Tr. 332:7-339:12; DX130] During trial, Fairchild's expert Dr. Gwozdz established in great detail that each element of the '075 Patent Claim 1 is present in Mr. Beasom's April 24, 1984 notebook entry and that Mr. Beasom conceived before Dr. Eklund. [9/18/07 Gwozdz Trial Tr. 474:1-493:16, 500:12-501:9; 9/19/07 Gwozdz Trial Tr. 582:17-589:9] The following are the relevant figures in the Beasom notebook:



[DX130 pp. 62, 64 (emphasis added)]  Power Integrations' expert, Mr. Shields, testified that two elements of the '075 Patent were purportedly absent from Beasom's notebook.  Both of these assertions are incorrect and unsupported by substantial evidence.

First, Mr. Shields testified that in Beasom's notes the "extended drain" purportedly does not extend laterally "each way" from the drain contact pocket and, for the first time at trial further opined that it does not extend to "surface adjoining positions."  [9/21/07 Shields Trial Tr. 1392:8-1394:20]  He provides absolutely no rationale or explanation, but rather superficially concludes that the "P-" area around the drain contact pocket cannot be part of an extended drain. [9/21/07 Shields Trial Tr. 1382:18-1384:4]

At most, Mr. Shields applied a semantic argument that Mr. Beasom did not use the same words as Dr. Eklund used in Claim 1 and labeled the extended drain merely "drain."  [9/21/07 Shields Trial Tr. 1383:10-1384:4; *see* Figure above]  No reasonable jury could find this to be correct. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (rejecting expert testimony regarding conception where expert did not "properly explain[] the technical notebook entries"); *Ortho-Mcneil Pharm., Inc. v. Kali Labs.*, Inc., 482 F. Supp. 2d 478, 527-528 (D.N.J. 2007) (rejecting plaintiff's expert opinion regarding prior art where there was "no explanation"); Fed. R. Evid. 702, 703 (expert opinions must be based on reliable principles, methods, facts and data).

To the contrary, as was testified by Dr. Gwozdz, it is well established in the prior art that

an extended drain is a "lightly doped region" around the drain contact pocket and Dr. Gwozdz

explained the purpose of such lightly doped regions. [9/18/07 Gwozdz Trial Tr. 463:1-454:13,

486:20-487:23] At no point during trial did Mr. Shields or any other witness contest the basic

observation that an extended drain is a lightly doped area around the drain contact pocket.

Further, neither Mr. Shields nor any other witness disputed that Mr. Beasom's notebook shows a

lightly doped "P-" region around a more heavily doped "P+" drain contact pocket (*see* figure

above). The "P-" region is clearly an extended drain extending each way from the "P+" drain

contact pocket to surface adjoining positions. [9/18/07 Beasom Trial Tr. 225:17-227:18; 9/18/07

Gwozdz Trial Tr. 479:8-481:21] Shields relied entirely upon a semantic argument that Beasom's

notebook referred to the extended drain as a "drain" and as a "drift region" even though both

were in fact lightly doped P regions. [9/21/07 Shields Trial Tr. 1383:10-1384:4; DX130 at p. 62]

This argument must be rejected as a matter of law. Similarly, Dr. Eklund never used the term

"extended drain" in his own notes—but rather simply called it "N-WELL"—which Mr. Shields

predictably found to be the claimed "extended drain" in Claim 1 without applying the same

semantic argument he applied to the Beasom notebook. [9/18/07 Gwozdz Trial Tr. 508:9-20]

　　　　Second, Mr. Shields took issue with the "surface adjoining layer" element, which

requires:

> *a* surface adjoining layer of material of the first conductivity type on top of an
> intermediate portion of the extended drain region between the drain contact
> pocket and the surface-adjoining positions

[PX4 at 5:65-68 (emphasis added)] Mr. Shields testified for the first time at trial that this

element of the claim purportedly requires *two* "surface adjoining layers"—one on each side of

the drain contact pocket. [9/21/07 Shields Trial Tr. 1374:18-1375:5] Mr. Shields further argued

that the claim required a surface adjoining position on one side of the drain contact pocket and a

surface adjoining position on the other side of the pocket.[7] [9/21/07 Shields Trial Tr. 1375:2-14]

---

[7] As discussed further below in Fairchild's alternative motion for a new trial, the argument that the extended drain does not go to multiple "surface adjoining positions" and the entire argument regarding the "P-TOP" was a surprise tactic concocted at trial and was found nowhere in Mr. Shields' expert report or deposition testimony, thus entitling Fairchild to a new trial on invalidity.

This is incorrect as a matter of law. According to its plain meaning, the claim clearly requires only "a" surface adjoining layer of material, not two layers. [PX4 at 5:65 (emphasis added)] Thus, Mr. Shields' "two layer" argument fails. Indeed, Power Integrations argued, and the Court agreed, that the plain meaning of the term was clear and no further construction was necessary. [DI 231 at pp. 11-12] It is therefore improper for Power Integrations to now import additional limitations into the claim which are not in the plain language or found in the Court's claim constructions. There is nothing whatsoever in the claim dictating that there be a surface adjoining layer on both sides of the drain contact pocket. The only limitation is that the top layer be between multiple "surface adjoining positions" and the "drain contact pocket," which the Beasom 1984 notebook discloses. There is no additional limitation dictating "where" the surface adjoining positions must be.

Thus, Power Integrations' arguments must be rejected as a matter of law and the Court should rule that Mr. Beasom conceived the '075 invention on April 24, 1984.

        **b.**    <u>**Beasom Reduced The '075 Invention To Practice Prior To Eklund**</u>

As discussed, Dr. Eklund has not demonstrated *any* actual reduction to practice prior to filing of the '075 Patent and has not demonstrated "diligence" toward any such reduction to practice. However, even if Dr. Eklund's November 1986 reduction to practice date were assumed for purposes of argument, there can be no dispute that Mr. Beasom actually reduced the invention to practice prior to that date. Indeed, it is undisputed that the January 7, 1986 filing of Mr. Beasom's '173 Patent constituted a constructive reduction to practice.

Moreover, it is undisputed that by September 1985 Mr. Beasom had actually reduced to practice the invention described in his April 24, 1984 notes. Mr. Beasom testified about and showed the actual plot setting out the structure of the test masks that were used to make devices according to his invention. [9/18/07 Beasom Trial Tr. 229:10-233:14] At trial, Mr. Beasom showed actual test wafers made from the test plot from the 1985 period. [9/18/07 Beasom Trial Tr. 233:15-234:15] Mr. Beasom showed a magnified image of the original test chips containing

the structures and also showing the high-voltage device of the invention on the same chip as low voltage devices. [9/18/07 Beasom Trial Tr. 234:17-235:20] Mr. Beasom also testified from the original manufacturing documentation, which established that the wafers were processed in July and August 1985. [9/18/07 Beasom Trial Tr. 238:18-240:16] Mr. Beasom is in possession of and testified about the final packaged test chips containing the invention. [9/18/07 Beasom Trial Tr. 240:17-242:2]

Finally, Mr. Beasom testified about the test documentation, which establishes that a test engineer tested the devices containing the invention on September 11, 1985 and confirmed that they worked. [9/18/07 Beasom Trial Tr. 242:6-248:14] None of this is contested by Power Integrations. Thus, it is undisputed that Beasom reduced his invention to practice by no later than September 11, 1985, prior to Dr. Eklund.

### 4.     Claim 1 Of The '075 Patent Is Obvious In Light Of Beasom Alone Or In Combination With Ludikhuize

Claim 1 of the '075 Patent is obvious in light of the prior art. As discussed, the only elements that Power Integrations alleges to be missing from the Beasom 1984 notebook are an extended drain extending "each way" and a "p-top" and surface adjoining position on each side of the drain contact pocket. It is interesting that Power Integrations emphasizes these elements as the inventive features, given that during prosecution Dr. Eklund withheld at least five references showing these same features, as discussed in detail in Fairchild's brief regarding inequitable conduct by Dr. Eklund. One such withheld reference, the article by Ludikhuize, *High Voltage DMOS and PMOS in Analog IC's*, IEEE (1982), contained both the extended drain and P-TOP features of the '075 invention. [DI585 at pp. 4-10; DI586 at Findings of Fact 1-17, 105-150] The device in the Ludikhuize article is as follows:



Fig. 2. LDMOST with interrupted p-layer.

**Ludikhuize, _High Voltage DMOS and PMOS in Analog ICs_, Fig 2 at pg. 81**

[DX627 at Ex. X]

The Ludikhuize article contains the elements that Power Integrations argued at trial were missing from the Beasom notebook. First, as testified by Dr. Gwozdz, the Ludikhuize article has an extended drain extending "each way" from the drain contact pocket. [9/18/07 Gwozdz Trial Tr. 497:16-499:20] Power Integrations' expert Mr. Shields does not dispute this. [9/21/07 Shields Trial Tr. 1388:13-23] This structure was clearly in the prior art and known to Dr. Eklund as well. At trial, Dr. Eklund admitted that in 1984 he was aware of at least six articles, including the Ludikhuize article, showing an extended drain extending laterally "each way" from a drain contact pocket. [9/20/07 Eklund Trial Tr. 1188:9-1194:20]

Second, as Dr. Gwozdz testified, the Ludikhuize reference specifically refers to a P-TOP layer on each side of the drain contact pocket and is used "in the same context as the '075 patent." [9/18/07 Gwozdz Trial Tr. 497:12-498:13; 9/19/07 Gwozdz Trial Tr. 587:9-18] Eklund admits that the P-TOP is present in Ludikhuize. [9/20/07 Eklund Trial Tr. 1194:15-20] Where "a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using a technique is obvious . . ." _KSR Int'l Co. v. Teleflex Inc._, 127 S. Ct. 1727, 1733 (2007).

Power Integrations' expert Mr. Shields does not contest that Ludikhuize discloses the P-

TOP.  Instead, he argues that the P-TOP is "not symmetrical."  [9/21/07 Shields Trial Tr.

1388:13-16]  *However, this is not an element of Claim 1* and thus must be rejected as a matter of

law.  *See* 35 U.S.C. §103 (obviousness relates to "the differences between the subject matter

*sought to be patented* and the prior art") (emphasis added)]  Further, he says that the extended

drain does not have multiple surface adjoining positions.  [9/21/07 Shields Trial Tr. 1388:13-18]

As discussed, that element is found in Mr. Beasom's notebook, as well as most of the prior art

references that Dr. Eklund testified about at trial:

<u>**DX627 at Ex. I**</u>



Fig. 1.  Schematic cross-section of a high voltage output MOS transistor compatible with low voltage NMOS or DMOS circuits.

Extended Drain – Multiple Surface Positions

<u>**DX627 at Ex. III**</u>

FIGURE 1—Cutway view of the DSA MOSFET.

<u>**DX627 at Ex. V**</u>

Fig. 4  Resurf-based lateral HV MOSFET

[DX627 at Exhibits I, III, V; 1192:8-1193:18 (9/20/07)]  The combination of an extended drain

with multiple surface adjoining positions as in Beasom and a P-TOP over the extended drain is

simply the "predictable use of prior-art elements according to their established functions." *KSR Int'l Co.*, 127 S. Ct. at 1733.

Accordingly, Dr. Gwozdz confirmed that one of ordinary skill in the art at the time would have known to combine the teachings of the Beasom notebook and the Ludikhuize article to arrive at the invention described in the '075 Patent Claim 1 if the Beasom 1984 notebook allegedly lacks this feature. [9/18/07 Gwozdz Trial Tr. 500:4-10] Dr. Gwozdz confirmed that the devices in the Ludikhuize article and Beasom's notes were both types of MOS devices and that the teachings of the articles could be combined. [9/19/07 Gwozdz Trial Tr. 563:15-565:10] Mr. Shields did not dispute this fact. [9/21/07 Shields Trial Tr. 1388:13-23] One of ordinary skill in the art would have considered Ludikhuize in reaching the '075 invention. Indeed, Dr. Eklund himself considered Ludikhuize in his overview of high voltage MOS transistors at the time he was working on his invention and called it "[a]n interesting approach." [DX627 at KE001453; 9/20/07 Eklund Trial Tr. 1188:9-1194:17]

Importantly, Mr. Shields does not explain why any of the purportedly missing elements from the Beasom 1984 notebook or 1982 Ludikhuize reference are inventive or non-obvious. Indeed, when Dr. Eklund testified what he considered to be his invention, he did not emphasize the irrelevant details that Mr. Shields now argues about, but rather testified:

> Q. Can you explain what your invention was?
> A. Yes. This is the drain of the high voltage devices. And from the drain, it was an n-well extending both to the right and to the left. And on top of this n-well extended drain, there was a P-TOP diffusion, both on the right and left side. So this two pieces together made a much more efficient device.

[9/20/07 Eklund Trial Tr. 1091:13-22] There can be no dispute that the Beasom and Ludikhuize inventions together contain these fundamental features. Claim 1 of the '075 Patent is obvious as a matter of law in light of Beasom combined with Ludikhuize.

### 5.    Claim 5 Of The '075 Patent Is Obvious In Light Of Prior Art Combining High And Low Voltage Devices On The Same Chip

The only additional element in Claim 5 is the combination of the high voltage device of

Claim 1 on the same chip with a low voltage CMOS device.  Given that the high voltage device of Claim 1 is anticipated or obvious in view of Beasom and Ludikhuize, combining such a device on the same chip with a low voltage Claim 5 is also obvious.  Indeed, when he reduced the '075 Patent invention to practice, Mr. Beasom combined those devices on test chips which also contained low voltage devices and had combined such devices in his past work, showing that to do so was obvious.  [9/18/07 Beasom Trial Tr. 207:16-210:6, 235:1-20]

Power Integrations' witnesses also admit that combining a high voltage MOS device, such as the device of Claim 1 onto the same chip with a low voltage CMOS device would have been obvious to one of skill in the art in the 1980s.  For example, when asked whether he believed that it was inventive to combine a high voltage MOS transistor with a low voltage CMOS control circuit in the mid-1980s, Power Integrations' Vice President of Engineering, Derek Bell, testified "I don't think there was anything particularly innovative about putting the two devices on – on – onto one chip."  [9/19/07 Bell Trial Tr. 595:15-596:3]  He confirmed that products combining high and low voltage devices were available in 1985.  [9/19/07 Bell Trial Tr. 593:24-596:3]

Dr. Eklund himself explicitly recognized in the background of the patent itself that combining high and low voltage devices on the same chip was well-known in the art stating that "the main advantage" of the prior art "is that low voltage control logic easily can be combined on the same chip."  [PX4 at 1:35-37; 9/18/07 Gwozdz Trial Tr. 493:5-495:15]  In his 1984 review of the prior art, Dr. Eklund states that combining high voltage MOS and low voltage CMOS logic was "a general trend."  [DX627 at KE001453]  Dr. Gwozdz opined further that Claim 5 is obvious in view of the Wakaumi and Wacyk articles, which explicitly show the combination of high voltage transistors on the same chip with low voltage CMOS devices.  [9/18/07 Gwozdz Trial Tr. 495:16-497:11, 499:21-500:3]

While Mr. Shields attempts to distinguish the devices of Wakaumi and Wacyk from Dr. Eklund's device of Claim 1, he *never disputes* that those references teach the combination of high and low voltage devices, as contemplated by Claim 5, and *never disputes* that one of

ordinary skill in the art would know to combine such devices on the same chip. [9/21/07 Shields Trial Tr. 1386:17-1389:14]  Given the overwhelming and undisputed evidence that at the time of the '075 Patent it was generally well-known by those of ordinary skill in the art to combine high voltage MOS devices and low voltage CMOS devices on the same chip, the combination of the particular high voltage MOS device of Claim 1 in such a manner would be obvious.  *See KSR Int'l Co. v. Teleflex Inc.*, 1727, 1740 (2007) ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill.")  Claim 5 is obvious and invalid as a matter of law.

**B.    Fairchild Is Entitled To A New Trial Because Power Integrations Surprised Fairchild At Trial With Previously Undisclosed Expert Theories Regarding Validity Of The '075 Patent**

In the alternative, Fairchild seeks a new trial on the invalidity of the '075 Patent.  The basis for this request is that during the recent invalidity trial, Power Integrations' technical expert Mr. Shields argued two brand new theories of validity not previously disclosed in his expert reports or prior depositions.  In fact, his prior deposition testimony had expressly excluded such theories.  When Power Integrations' expert witness put forward his surprise theories, Fairchild immediately objected to the testimony as beyond the scope of the expert report. [9/21/07 Shields Trial Tr. 1375:2-10]  However, he was allowed to present the surprise opinions nonetheless.  Under well-settled authority, such highly prejudicial "surprise" expert opinions are grounds for a new trial.  Accordingly, Fairchild is entitled to a new trial on the invalidity of the '075 Patent.

### 1.    The Legal Standard for a Motion for a New Trial.

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a).  The decision whether to grant a motion for a new trial lies within the discretion of the court, and the decision to grant a motion for a new trial does not have to make all inferences in non-moving party's favor.  *Callaway Golf*, 384 F. Supp. 2d at 739-40; *IMX v. LendingTree*, LLC, 469 F.

Supp. 2d 203, 208 (D. Del. 2007).

It is well-settled that a new trial is appropriate where surprise expert opinions are presented at trial causing prejudice to the opposing party. *See e.g. Becton Dickinson & Co. v. Tyco Healthcare Group LP*, 2006 U.S. Dist. LEXIS 14999, *31-40 (D. Del. 2006) (new trial ordered where new expert theory introduced at trial); *Means v. Letcher*, 51 Fed. Appx. 281, 284 (10th Cir. 2002) (same); *Tenbarge v. Ames Taping Tool Sys.*, 190 F.3d 862, 865 (8th Cir. 1999) (same); *see also Sanford v. Crittendon Memorial Hosp.*, 141 F.3d 882, 886 (8th Cir. 1998) ("Surprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial is underway, is a long-established ground for granting a new trial motion."). Power Integrations' presentation of two new surprise theories regarding validity of the '075 Patent, to the extreme prejudice of Fairchild, entitle Fairchild to a new trial.

### 2. Power Integrations Surprise Theory Regarding The P-TOP Element

The first new theory Power Integrations argued at the invalidity trial was that the "surface adjoining layer" element of the '075 Patent was purportedly missing from the April 1984 notebook of Mr. Beasom. The surface adjoining layer element is as follows:

> a surface adjoining layer of material of the first conductivity type on top of an intermediate portion of the extended drain region between the drain contact pocket and the surface-adjoining positions

[PX4 at 5:65-68] Power Integrations' technical expert on the '075 Patent, Mr. Shields, testified for the first time at the invalidity trial that this element of the claim purportedly requires *two* "surface adjoining layers"—one on each side of the drain contact pocket:

> Q. So the P-TOP is orange in that figure?
> A. Yes, I have drawn it here in orange which is the same color or should be as the substrate here. And see, it's two areas, both sides of the drain pocket on two extended areas of the drain, extended to the surface as required by the patent.
> Q. So do you understand the claim to require that the P-TOP layer be on both sides of the drain?
> A. I do.

[9/21/07 Shields Trial Tr. 1374:18-1375:5] Mr. Shields argued that this purportedly was the case because the element "says surface adjoining positions, that's plural." [9/21/07 Shields Trial Tr.

1375:2-14]  In other words, Mr. Shields was asserting that the claim required a P-TOP and a surface adjoining position on one side of the drain contact pocket and another P-TOP and surface adjoining position on the other side of the pocket.

Based on this surprise theory, Mr. Shields proceeded to assert at the invalidity trial that the drawings in Beasom's April 1984 notebook "only have one position of the P-TOP layer." [9/21/07 Shields Trial Tr. 1382:16-1383:9, 1394:21-1396:7]  Similarly Mr. Shields asserted that Beasom's December 1984 patent disclosure "only shows one occurrence of the P-TOP layer" and "doesn't show multiple P-TOP layers." [9/21/07 Shields Trial Tr. 1384:5-22]

**REDACTED**

Nowhere did Mr. Shields state any opinion that two "surface adjoining layers" were required by Claim 1 or that one was required on each side of the drain contact pocket.  The claim

clearly requires only "a surface adjoining layer"—a *single* layer—as stated in the claim and as Mr. Shields admitted in his deposition. During the claim construction proceedings, Power Integrations argued, and the Court agreed, that the plain meaning of the phrase was clear and no further construction was necessary. [DI 231 at pp. 11-12] As to this same language, Mr. Shields' admitted during deposition that "[t]he language does *not* say that" two surface adjoining layers have to be present, one on each side of the drain. In other words, Mr. Shields admitted in his deposition that the plain meaning is clear. Thus, Power Integrations' presentation at trial of a new validity theory based upon new expert testimony *and* a new claim construction is wholly inappropriate and warrants a new trial.

   3.    **Power Integrations Surprise Theory Regarding The Extended Drain Going To "Surface Adjoining Positions"**

   The second new theory that Power Integrations argued at the invalidity trial was that Mr. Beasom's April 1984 notebook and December 1984 patent disclosure were purportedly missing an extended drain region extending to "surface adjoining positions." [9/21/07 Shields Trial Tr. 1384:16-21, 1392:8-1394:20]

**REDACTED**

However, at the invalidity trial

for the very first time, Mr. Shields introduced the additional argument that the extended drain in Mr. Beasom's notes purportedly did not go to multiple "surface adjoining positions."

### 4.    Fairchild Has Been Severely Prejudiced And Is Thus Entitled To A New Trial And Costs For The First Trial

Federal Rule of Civil Procedure 26(a)(2)(B) explicitly requires that an expert report "shall contain a *complete* statement of all opinions to be expressed and the basis and reasons therefor . . ." Fed. R. Civ. Pro. 26(a)(2)(B) (emphasis added).  This Court has recognized the serious nature of surprise expert testimony by adopting a practice of ordering a new trial where there is a substantial, prejudicial deviation from the opinions disclosed in an expert report and requiring the party who puts on the surprise testimony to pay the costs of the first trial.  [Tab 4 (May 31, 2006 Transcript at pp. 34:11-36:13)]  This practice is consistent with the well-settled authority that a new trial is appropriate where surprise expert theories are presented at trial.  *See e.g. Becton Dickinson & Co.*, 2006 U.S. Dist. LEXIS 14999, *31-40; *Means*, 51 Fed. Appx. at 284; *Tenbarge*, 190 F.3d at 865; *Sanford*, 141 F.3d at 886.

Power Integrations' presentation of two completely new expert theories at the invalidity trial was extremely prejudicial to Fairchild.  Fairchild had no notice of these surprise theories, which were highly material, going to the heart of the invalidity trial.  Mr. Shields filed three expert reports in this case.

**REDACTED**

REDACTED

There can be no doubt that the jury relied upon the theories to improperly find that the '075 Patent is valid. Indeed the theories were emphatically presented by Mr. Shields. For example, Mr. Shields testified that his new theory of multiple "surface adjoining positions," purportedly absent from Beasom's notes, was "a key part of the whole thing." [9/21/07 Shields Trial Tr. 1393:3-1394:20] Likewise, during closing argument at the invalidity trial counsel for Power Integrations emphasized these surprise theories. [9/21/07 Power Integrations Closing Argument 1502:14-1504:7, 1537:4-1539:18] Fairchild has been extremely prejudiced by this improper litigation tactic and is entitled to a new trial and costs.

### C. Fairchild Is Entitled To A New Trial Because The Jury Instruction Regarding "Corroboration" Was Erroneous As A Matter Of Law

Both Power Integrations and Fairchild proposed jury instructions on the issue of "corroboration" of invention. The Court adopted Power Integrations' jury instruction on the issue. That instruction is erroneous as a matter of law. The adopted instruction states *only* that corroboration of "conception" is required. As discussed in detail above, it is well-settled in under Federal Circuit precedent that corroboration of conception, reduction to practice and diligence toward reduction to practice, where applicable, are *all* required. For this reason alone, the instruction is erroneous as a matter of law. Because the instructions misstate the law, it is a reversible error, subject to *de novo* review by the Federal Circuit. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270 (Fed. Cir. 2004). Fairchild was greatly prejudiced by the instruction, as the jury necessarily did not require Power Integrations to corroborate any reduction to practice or diligence. Fairchild is thus entitled to a new trial.

## III. CONCLUSION

For the foregoing reasons, Fairchild respectfully requests that the Court order, as a matter of law, that:

1. Claim 1 of the '075 Patent is invalid based on the '173 Patent, pursuant to 35 U.S.C. §102(e)

2. Claim 1 of the '075 Patent is invalid based on the invention materials of Mr. Beasom, including notes and test materials, pursuant to 35 U.S.C. §102(g)

3. Claim 1 of the '075 Patent is obvious, in light of the Beasom invention materials, alone and in combination with the 1982 Ludikhuize article.

4. Claim 5 of the '075 Patent is obvious, in light of the prior art combining high and low voltage devices on the same chip, including Wakaumi, Wacyk, Beasom and Dr. Eklund's own statements about the prior art.

5. Fairchild is entitled to a new trial on invalidity of the '075 Patent, as a result of Power Integrations' presentation at trial of two new theories of validity, which severely prejudiced Fairchild.

6. Fairchild is entitled to a new trial on invalidity of the '075 Patent, because the jury instruction regarding corroboration of invention was incorrect as a matter of law and severely prejudicial to Fairchild.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  December 3, 2007

186366.1

# TAB 1

# REDACTED

# TAB 2

# REDACTED

# TAB 3

# REDACTED

# TAB 4

RECEIVED BY HAND

JUN 15 2006

A&G
COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,          )
                                   )
                                   )
              Plaintiff,           )
                                   )
v.                                 )
                                   )
FAIRCHILD SEMICONDUCTOR            )
INTERNATIONAL, INC, and            )
FAIRCHILD SEMICONDUCTOR            )
CORPORATION,                       )
                                   )
              Defendants.          )


                    United States District Court
                    844 King Street
                    Wilmington, Delaware

                    Wednesday, May 31, 2006
                    12:30 p.m.


BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge


APPEARANCES:

          SEAN P. HAYES, ESQ.
          FRANK SCHERKENBACH, ESQ.
          MICHAEL HEADLEY, ESQ.
          FISH & RICHARDSON
           For Power Integrations

          G. HOPKINS GUY, ESQ
          ORRICLE, HERRINGTON
                  and
          BAS DE BLANK, ESQ
          JOHN G. DAY, ESQ
          ASHBY & GEDDES
           For Fairchild

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware   19801
(302)658-6697  FAX(302)658-8418

MR. GUY:  The 11th?

THE COURT:  That would be fine if you got it here by then.  You know, it's granted or denied.  It doesn't take a lot of effort if you get excellent briefing.  The decision is as good as what the argument is, right?

MR. GUY:  Absolutely.

THE COURT:  Unless minimally skewed.

MR. SCHERKENBACH:  Can I ask Your Honor how you're handling the issue of experts beyond the scope of report?  Is it the same way you have been in the past?

THE COURT:  Absolutely.

MR. SCHERKENBACH:  I think that will help resolve a number of things.

THE COURT:  Right.  That's one of my, what is it, we all get 27 great ideas and I'm working on 4,011.  That was one of the great ideas.  It really works.  I've now ordered new trial.  It's not good if you play around with the expert report.

You know that practice.

MR. GUY:  Perhaps I should hear it clearer from you, Your Honor.

THE COURT:  I'll give it to you straight up here.  Everybody argues over expert reports and then the expert gets to trial and of course there's something alleged to be different, some new opinion, some nuance on an opinion, particularly after the other side has taken advantage of the opportunity for deposition under the rule.

My practice is in a trial, a serious trial with a jury, or even in a bench, I guess, but particularly the jury, I don't have time to go back and read the report and make an evidentiary ruling on the expert's testimony, so you have to interpose your objection.

If you think the witness is testifying outside of the report and deposition or if it's just a report of the report, if post trial you maintain that objection and I take a look at it and in fact there is some variance, and I mean "some," it doesn't have to be a lot, something that I think could have affected the

other side to their detriment because it wasn't disclosed, I simply say that there's a mistrial and the other side pays the cost of the first trial and we go to a second trial.

It puts a lot of burden on the attorneys but it's, you know, how can you have experts -- I mean discovery.  I used to find after trial that in fact the witness deviated substantially and what do you do then?  You know, you're kind of interested in keeping the verdict and things like that but it really isn't fair during a trial in my experience, so that's the practice.

MR. GUY:  Your Honor, both sides filed supplemental expert reports in light of other fact discovery that was ongoing and we still have an issue, certainly if there's a debate 30 days before the trial in which the expert reports are filed by that point, any variance from that is certainly understandable. You're not addressing issues where there's been an ongoing fact discovery and expert report comes in to supplement?

THE COURT:  No.  You all, as I

# TAB 5

**REDACTED**

# TAB 6

# REDACTED