# Exhibit A

# REDACTED IN ITS ENTIRETY

# Exhibit B

*Power Intergrations, Inc.   v.*
*Fairchild Semiconductor International, Inc.*

*Hearing*
*February 2, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  United States of America  19801*
*(302) 658-6697*

Original File 020206~1.TXT, 35 Pages
Min-U-Script® File ID: 0909548355

**Word Index included with this Min-U-Script®**

their [22] compensation is to present proof that their [23] products, the Fairchild products are incorporated [24] on the bill of materials or sold to companies

[1] with incorporating them and importing them into [2] the U.S., selling them all over the world, in [3] fact.

[4] Fairchild suggests that it has [5] provided all the information called for by Power [6] Integrations' motion to compel. But even looking [7] at the four-page motion to compel, that is not [8] true.

[9] Page 4 of Power Integrations' motion [10] to compel lists four topics. Four categories, I [11] should say.

[12] Number one, up-to-date sales [13] information including information broken down by [14] customer product in quarterly months. They [15] haven't given us the end-product information.

[16] Number two, a Rule 30(b)6 deposition [17] of a knowledgeable witness. Again, Mr. Barnes is [18] not a knowledgeable witness, and Fairchild's [19] claim that we don't have access to the [20] information is not, in fact, what Mr. Barnes [21] said. Mr. Barnes said, I don't have any [22] information about these topics walking through a [23] number of topics.

[24] Fairchild cannot be permitted to

[1] take an aggressive position with respect to what [2] is discoverable with respect to foreign sales, [3] teach the 30(b)6 witnesses only about the narrow [4] subset of documents that it has said are [5] discoverable in contrast to the Court's August [6] 9th order, about what's discoverable, and then [7] throw up its hands when Power Integrations tries [8] to get more information that we know is available [9] based on these depositions.

[10] Category 3, H.K. Kim is in there. [11] Fairchild has not provided him, has not said they [12] will provide him for deposition. Mr. Kim has [13] been in discussion for a long time, since at [14] least July, if not late June in our exchanges [15] back and forth in preparing for the Korean [16] depositions.

[17] And category four, the other [18] responsive relevant documents called out during [19] the meet and confer as noted today. That is now [20] a very narrow subset of documents called on in my [21] January 17th letter in an attempt to formally [22] resolve these disputes.

[23] We're not getting discovery, Your [24] Honor, and we'd ask the Court to compel that

[1] discovery.

[2] THE COURT: What is it about the [3] information that is in the Excel format that —[4] I've read your paper. But tell me, again, what [5] it is that you would additionally want in Excel.

[6] MR. HEADLEY: The key information [7] today in Excel — and just to put this in [8] context, Your Honor, the parties are preparing [9] damage expert reports. Power Integrations, in [10] fact, served its damage expert report.

[11] The key there was ease of use. [12] Fairchild had access to information in Excel [13] format. That was the format in which it was [14] stored in the ordinary course of business, could [15] be obtained and manipulated.

[16] After moving to compel, Fairchild [17] provided some information in Excel. So the issue [18] of the Excel documents is not entirely the most [19] critical issue. But, again, the design wind [20] tracking database is what we want today. Right.

[21] THE COURT: I understand all that [22] Excel argument. Now, you've gotten it.

[23] But what's missing in the Excel [24] formatted information specifically?

[1] MR. HEADLEY: Yes, Your Honor. This [2] is the information from the design wind tracking [3] database that Mr. Beaver talked about. Having [4] this employee, Eric Guere, G-U-E-R-E — I believe [5] this is a database were he reconciles these [6] claims for compensation.

[7] THE COURT: You didn't get that?

[8] MR. HEADLEY: We haven't seen [9] anything about this, even though that database —

[10] THE COURT: No. Now, hold on a [11] second.

[12] Where is that information? It's in [13] Excel format. The witness testified about it.

[14] Is that information available?

[15] MR. De BLANK: I think there's some [16] confusion about what that information is. The [17] information in the design wind tracking database [18] that Mr. Headley is referring to is not [19] information that shows the downstream products.

[20] THE COURT: Forget what it shows.

[21] MR. De BLANK: Right. The [22] information shows —

[23] THE COURT: Just tell me if it [24] exists.

[1] MR. De BLANK: Yes, it exists. And [2] that information has been provided.

[3] What it shows is it's a database, as [4] Mr. Headley explained —

[5] THE COURT: So the Guere information [6] has been given to Power Integrations?

[7] MR. De BLANK: What that database [8] shows is the —

[9] THE COURT: That's not helping.

[10] MR. De BLANK: Sorry.

[11] THE COURT: The question is: Has [12] that been given to Power Integrations?

[13] See, I don't think it has.

[14] MR. De BLANK: Okay.

[15] THE COURT: So you've got to give [16] them that information.

[17] MR. De BLANK: Okay.

[18] THE COURT: Then we'll find out what [19] it shows and doesn't show. I understand what [20] you're saying.

[21] It doesn't meet their request. But [22] a witness testified about it. It's in Excel [23] format.

[24] It's easy enough to give over.

[1] There's a protective order.

[2] So give them that reference [3] information.

[4] MR. De BLANK: Yes, Your Honor.

[5] THE COURT: And that's about as far [6] as I think I'm willing to go to grant your motion [7] to compel except for the elusive Mr. Kim. Now, [8] if he went to Phoenix, how many times a year, or [9] Portland, or anyplace? Where would that be, west [10] of the Mississippi?

[11] MR. HEADLEY: Your Honor, during the [12] deposition of Jeff Barnes —

[13] THE COURT: I didn't ask you.

[14] MR. HEADLEY: I thought you were.

[15] Oh, pardon me.

[16] THE COURT: How often does he get [17] somewhere in the Continental United States west [18] of the Mississippi?

[19] MR. De BLANK: I do not know the [20] answer to that question. I can find out for Your [21] Honor.

[22] I can find out probably this [23] afternoon probably by the time of the Markman [24] this afternoon.

[1] THE COURT: See if he can get there [2] within the next 30 or 40 days for five hours. [3] See, that is what I'm going to do.

[4] I'd like Mr. Kim to travel to the [5] West Coast and spend five hours with you and the [6] folks from Power Integrations.

[7] MR. De BLANK: Okay.

[8] THE COURT: That would be their five [9] hours unilaterally, you know, to depose him.

[10] MR. De BLANK: Yes.

[11] THE COURT: That's all I'm going to [12] give him on Mr. Kim. I don't really think [13] Mr. Kim is going to help them.

[14] But, you know, it's kind of like [15] conspiracies in government. Once you get to the [16] bottom of it, you find out that it's either a lot [17] bigger than you thought and you don't want to [18] tackle it, or it didn't exist.

[19] Giving them five hours with Mr. Kim [20] somewhere on the West Coast will pretty much, I [21] think, resolve the issue, one way or another.

[22] **MR. De BLANK:** Yes, Your Honor. If [23] I could ask —

[24] **THE COURT:** Sure.

Page 29

[1] **MR. De BLANK:** I can check whether [2] Mr. Kim is going to plan to come to the U.S. in [3] the next 30 to 40 days.

[4] **THE COURT:** No, you pick the date.

[5] **MR. De BLANK:** And if he does, I [6] will make him available for the five hours as the [7] Court asks. If Mr. Kim — and I don't believe he [8] travels regularly to the U.S.

[9] His responsibilities are in Korea. [10] If he's not coming to the U.S. and Power [11] Integrations insists on this deposition, we would [12] insist that they bear the cost of Mr. Kim's [13] travel, and lodging, and transportation.

[14] **THE COURT:** They'd be happy to pay [15] for him to come from Korea.

[16] **MR. De BLANK:** Very good.

[17] **THE COURT:** Would you fly him first [18] class, business class? What can we get out of [19] you?

[20] Northwest.

[21] **MR. SCHERKENBACH:** We're all looking [22] at the client, Your Honor.

[23] **THE COURT:** They'll pay for it, and [24] we'll make his trip comfortable.

Page 30

[1] **MR. De BLANK:** Very good.

[2] **THE COURT:** But I really want him [3] here in the next 30 to 40 days. I looked at the [4] calender before I came in.

[5] I think that's a time frame that [6] will work for what else has to be done.

[7] **MR. De BLANK:** Yes, Your Honor.

[8] **THE COURT:** The Excel, the [9] information that I've ordered, if you get that [10] over to them in the next 15 working days, —

[11] **MR. De BLANK:** Yes, Your Honor.

[12] **THE COURT:** — that would be helpful. [13] If you have a problem, talk with me if you need a [14] little more time. And the rest of the motion, I [15] think is really resolved.

[16] But I'll order those two things on [17] the pending motion to compel. And then I'll get [18] you an answer on your motion about the inventors [19] next week after I read their papers.

[20] **MR. De BLANK:** Thank you, Your [21] Honor.

[22] **MR. HEADLEY:** Thank you, Your Honor.

[23] **THE COURT:** Okay. I'm not going to [24] enter another order, because we're

Page 31

[1] environmentally conscious here, and we're saving [2] trees.

[3] I'm just going to so order the [4] transcript. Is there any question about what [5] I've ordered?

[6] **MR. HEADLEY:** Not from Power [7] Integrations, Your Honor.

[8] **MR. De BLANK:** No, Your Honor.

[9] **THE COURT:** Okay. All right. Are [10] we all — do we have everybody here we need for [11] one o'clock?

[12] **MR. De BLANK:** No, Your Honor. The [13] rest of the Fairchild team will be here by one [14] o'clock.

[15] **THE COURT:** Oh, you have —

[16] **MR. De BLANK:** We have a team.

[17] **THE COURT:** — an entourage?

[18] **MR. De BLANK:** Yes.

[19] **THE COURT:** Okay. And how long are [20] the anticipated presentations?

[21] **MR. SCHERKENBACH:** Your Honor, I'll [22] be doing it for Power Integrations. I think my [23] opening remarks are maybe 45 minutes at most.

[24] And I thought I might reserve a

Page 32

[1] little bit of time to respond. I thought I had [2] heard that you had maybe set aside an hour and a [3] half per side.

[4] I don't think we need that much [5] time.

[6] **THE COURT:** What I had done, having [7] only quickly, or let me say not having looked at [8] the briefs, but now I've read them. I said that [9] I would maximize you at 90 minutes each.

[10] **MR. SCHERKENBACH:** Okay.

[11] **THE COURT:** I now had a chance to [12] fully digest the papers, and I was thinking what [13] was I thinking about giving them that long. But [14] I didn't know. So I wanted to be cautious so you [15] have some sense of planning.

[16] **MR. SCHERKENBACH:** Sure.

[17] **THE COURT:** But, you know, with the [18] time limits you are talking about, you are [19] talking about the same kind of time.

[20] **MR. De BLANK:** Yes, Your Honor.

[21] **THE COURT:** Okay. That sounds [22] reasonable. So we're okay.

[23] Yeah, sometimes, you know, you get [24] asked a quick question and you give an answer

Page 33

[1] saying, Well, what would be the outside? And [2] then you read the papers. You think, What was I [3] thinking giving them that much time?

[4] **MR. de BLANK:** I didn't mean to [5] interrupt. I was just going to ask, just so the [6] parties can tailor their presentations to the [7] Court, is there any patent or issue when you read [8] the papers you thought deserved particular focus?

[9] **THE COURT:** No. I think I've said [10] this before, which Mr. Marsden and Mr. Balick [11] heard it, you know, probably.

[12] I am continually impressed with how [13] good the papers we get here are. You know, I'm [14] going to look at your amplification on your [15] papers, but the papers were really good.

[16] **MR. De BLANK:** Thank you.

[17] **THE COURT:** You know, I have to say, [18] I don't want you to feel too puffed up, but the [19] instances when you don't get good papers in the [20] patent cases, they stick out like sore thumbs. [21] Sore thumbs. That's how good the work is.

[22] I wish I could say that across the [23] board. But, no, your papers — I'm just going to [24] listen to what you want to emphasize and amplify,

Page 34

[1] and I don't have anything in particular in this [2] case.

[3] When I do, I usually tell you ahead [4] of time that there's something I saw that I have [5] not been able to come out of the darkness on. [6] But that's not the case here.

[7] **MR. De BLANK:** Okay.

[8] **THE COURT:** Okay.

[9] **MR. SCHERKENBACH:** Very good.

[10] **THE COURT:** We'll give your [11] entourage a chance to show up. We'll be back at [12] one o'clock.

[13] **MR. MARSDEN:** Thank you, Your Honor.

[14] **THE CLERK:** All rise.

[15] (Court was recessed at 12:35 p.m.)

Page 35

State of Delaware        )
New Castle County        )
    CERTIFICATE OF REPORTER
I, Heather M. Triozzi, Registered
Professional Reporter, Certified Shorthand
Reporter, and Notary Public, do hereby certify
that the foregoing record, Pages 1 to 35
inclusive, is a true and accurate transcript of
my stenographic notes taken on February 2, 2006,
in the above-captioned matter.
    IN WITNESS WHEREOF, I have hereunto
set my hand and seal this 3rd day of February,
2006, at Wilmington.
            Heather M. Triozzi, RPR, CSR

# Exhibit C

# REDACTED IN ITS ENTIRETY

# Exhibit D

# REDACTED IN ITS ENTIRETY