IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC. AND
FAIRCHILD SEMICONDUCTOR CORPORATION'S OBJECTIONS AND
RESPONSES TO POWER INTEGRATIONS' PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Of Counsel:*                                    *Attorneys for Defendants*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

December 12, 2007

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") hereby respond and object to Plaintiff Power Integrations, Inc.'s Proposed Findings of Fact and Conclusions of Law. As set forth below, the majority of these proposed findings are simply attorney argument, rather than facts supported by the admitted evidence or conclusions drawn from the case law and statutes. As such, these proposed findings and conclusions should be stricken.

To address these deficiencies, Fairchild has sought to provide the Court with citations to the admitted evidence. These citations, however, are by way of example and Fairchild incorporates by reference its Proposed Findings of Fact and Conclusions of Law, as well as its Brief and Reply on the issue of Power Integrations' inequitable conduct (D.I. 586, 585, and 626, respectively).

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| 8.    Power Integrations filed its complaint in this action on October 20, 2004, asserting that Fairchild willfully infringed one or more claims of each of the patents-in-suit. [D.I. 1.] In its amended answer, Fairchild asserted defenses of non-infringement, invalidity and unenforceability due to alleged inequitable conduct. [D.I. 198.] | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Power Integrations did not allege willful infringement in its complaint filed on October 20, 2004. *See* D.I. 1. |
| 11.    Now before the Court are Fairchild's contentions that the patents-in-suit should be held unenforceable due to alleged acts of inequitable conduct in the prosecution of the patents before the U.S. Patent and Trademark Office ("PTO"). Specifically Fairchild contends:<br><br>A) That Power Integrations committed inequitable conduct with regard to the '876 patent because it failed to inform the PTO about an alleged public disclosure of the subject-matter described in Power Integrations' '851 patent that Fairchild contends occurred prior to the invention date of the claimed invention of the '876 patent and that this alleged failure to disclose was made with the intent to deceive the PTO.<br><br>B) That Power Integrations committed inequitable conduct with regard to the '851 | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence. Power Integrations purports to summarize Fairchild's contentions. Fairchild's contentions are fully and accurately set for in its Brief and Reply, D.I 585 and 626, respectively. |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| patent because it (1) made what Fairchild contends was a material misstatement to the PTO during prosecution concerning the prior art, or (2) failed to disclose what Fairchild contends was material information regarding Power Integrations' prior "SMP211" product, and that this alleged failure to disclose was made with the intent to deceive the PTO.<br><br>C) That Power Integrations committed inequitable conduct with regard to the '366 patent because it failed to disclose to the PTO what Fairchild contends was material information regarding (1) Power Integrations' prior "SMP3" product or (2) Power Integrations prior "SMP240/260" products, and that this alleged failure to disclose was made with the intent to deceive the PTO.<br><br>D) That Dr. Klas Eklund committed inequitable conduct with regard to Power Integrations' '075 patent because he allegedly withheld art during prosecution, and that this alleged failure to disclose was made with the intent to deceive the PTO. | |
| 13.     The Court also received into evidence an invention disclosure form related to the '851 patent. [PX-326] The '851 invention disclosure form indicates that the "DATE OF DISCLOSURE TO OTHERS IN THE COMPANY" of the invention of the subject matter described in the form occurred on "9-2-97." Although Fairchild originally contended that a "public" disclosure of the '851 patent subject matter occurred on this date [see D.I. 198 at ¶ 87], Fairchild seems to have withdrawn this contention. Based on the unambiguous text of the invention disclosure form, and the testimony of Power Integrations' CEO and inventor, Mr. Balakrishnan, discussed below, the Court finds that there was no public disclosure of the subject matter of the '851 patent as of September 2, 1997. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence. Further, Power Integrations purports to summarize Fairchild's contentions. Fairchild's contentions are fully and accurately set for in its Brief and Reply, D.I 585 and 626, respectively. |
| 14.     In its briefing, Fairchild raised a new contention-that an alleged public disclosure of the '851 subject-matter occurred in "March of 1998." Although this contention was not plead with specificity in Fairchild's Amended Answer, the Court will address it. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence. Further, Power Integrations purports to summarize Fairchild's contentions. Fairchild's contentions are fully and accurately set for in its Brief and Reply, D.I 585 and 626, respectively. |
| 15.     The '851 invention disclosure form | Fairchild objects that this proposed finding is |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | |
| REDACTED | |
| 19.    Fairchild has not provided any testimony at all, expert or otherwise, that the description in the invention disclosure form would have been | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| considered material to the claims of the '876 patent. Instead, Fairchild asks the Court to impute an adverse admission to Power Integrations based on the use of the label "prior art" in the invention disclosure form. | whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>Further, the proposed finding purports to summarize Fairchild's contentions. Fairchild's contentions are fully and accurately set for in its Brief and Reply, D.I 585 and 626, respectively. |
| | |
| **REDACTED** | |
| | |
| | |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
| --- | --- |
| | |

**REDACTED**

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | Integrations own invention disclosure forms. [PX325 and PX326]. |
| 30.    In the December 13, 1999 office action, the examiner rejected original claim 29 on two bases.  First, the examiner rejected the claim under 35 U.S.C. § 112 as indefinite, stating "in claim 29, the phrase 'that provides a drive signal for a maximum time period of a time duration signal' is not understood.  If the drive signal were applied for the maximum period of the duration, the drive signal would always be applied." [DX-106 at FCS0000438.]  Second, the examiner rejected claim 29 under 35 U.S.C. § 102(b) and stated "Applicant's Prior Art Fig. 1 shows a first terminal 95, a second terminal Com, a switch/drive circuit 90 and a frequency variation circuit 140 as recited in claim 29." [DX-106 at FCS0000439.]  In the rejection in view of Figure 1, the examiner made no mention of the frequency variation signal or how such a signal was used to vary the time duration of the cycle.  The obvious reason for this was because the examiner had already stated he did not understand the original language of the claim when making his rejection under § 112.  The rejection based on Figure 1, however, cannot be read as an assertion by the examiner that the frequency variation circuit that provides a frequency variation signal was itself in the prior art, because he had already allowed claim 1 reciting that element over the disclosure of Figure 1. | While Fairchild agrees that Power Integrations accurately copied the quotations it cites, Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence.  Indeed, such argument is contradicted by the admitted evidence.

For instance, Power Integrations argues that "the examiner made no mention of the frequency variation signal or how such a signal was used to vary the time duration of the cycle."  This is untrue.  The Examiner specifically found that "Applicant's Prior Art Fig. 1 shows... a frequency variation circuit 140 *as recited in claim 29*." [DX-106 at FCS0000439 (emphasis added)].  "As recited in claim 29", the "frequency variation circuit" "provides a frequency variation signal". [DX106 at FCX00003777-78].  Thus, contrary to Power Integrations unsupported proposed finding of fact, the Examiner found that the Figure 1 Prior Art included a frequency variation signal and determined that such a signal was provided by "frequency variation circuit 140". |
| 33.    In making the amendment to original claim 29, which thereafter issued as claim 11, Power Integrations replaced the "maximum time period of a time duration cycle" language that the examiner had not understood, with the oscillator and maximum duty cycle language from original claim 1 which the examiner had already allowed.  In making its remarks, Power Integrations simply quoted back to the examiner his own statement about the lack of disclosure in Figure 1. | Fairchild objects that this proposed finding is unsupported by the admitted evidence.  Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding.  Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.

Furthermore, Power Integrations attorney argument is contradicted by the admitted evidence.  Far from "simply quot[ing] back the examiner's own statement about the lack of disclosure in Figure 1", Power Integrations emphasized it and made affirmative representations that Power Integrations knew to be false.  *Compare* Examiner's Statement ("The prior art of record *does not appear to suggest* a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | claim 1") with stronger affirmative misrepresentation ("The Applicants Prior Art Figure 1 *fails to disclose, teach or suggest such limitations.*").  DX106 at FCS0000440 and FCS0000449 (emphasis added). |

**REDACTED**

| | |
|---|---|
| 35.     Fairchild alleges that this file history suggests that the PTO examiner allowed the claims because he was unaware of prior art showing oscillators that provided maximum duty cycle signals.  In support of this argument, Fairchild suggests that the examiner's statement "the prior art of record does not appear to disclose or suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a signal with a frequency range dependent on a frequency variation circuit as recited in claim 1" was somehow "partially" incorrect because the first half of the sentence "an oscillator for generating a maximum duty cycle signal" was known in the prior art.  The Court finds that such a reading of the examiner's statement is incorrect-both as a matter of grammar and logic.  It is improper to interpret the examiner's statement as asserting that two independent features-an oscillator generating a maximum duty cycle signal on the one had and a signal with a frequency range dependent on a frequency variation signal on the other-were both, independently absent from the prior art.  The phrase must be read as a whole, just as the limitations of the claim must be read as a whole and can only be reasonably understood as stating that the entire combination of elements (and the other claim elements of which they were part) was not found in the prior art. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence.  Power Integrations purports to summarize Fairchild's contentions.  Fairchild's contentions are fully and accurately set for in its Brief and Reply, D.I 585 and 626, respectively. |
| 36.     This understanding of the examiner's statement is also the only reasonable interpretation in light of the other evidence in the record.  Specifically, all the technical witnesses, the inventor Mr. Balakrishnan, Power Integrations' technical expert Mr. Blauschild, and | Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence.  Indeed, the admitted evidence directly contradicts Power Integrations' unsupported arguments. |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| Fairchild's technical expert Dr. Horowitz, all consistently testified that, at the time of the '851 prosecution, oscillators that generated maximum duty cycle signals were well known components of conventional pulse width modulation controllers. [D.I. 561 (Trial Tr. 9/24/07) at 162:23-163:10 (Dr. Horowitz agreeing that "an oscillator generating a maximum duty cycle signal was fairly conventional at the time [the '8 5 1] patent was filed"); D.I. 557 (Trial Tr. 9/19/07) at 738:7-10, 738:17-22, 740:22-741:3, 747:2-748:4, 810:14-18, 811:6-13, 816:4-5, 816:16-22 (Dr. Horowitz explaining in each case that the SMP211's oscillator generating a maximum duty cycle signal was well known in the prior art.); Balakrishnan Tr. 3/15/06 at 832:13-18 ("[M]aximum duty cycle [signal] has been used in many, many products. It is very well known in the art."), 841:21-844:17 (stating at one point that "someone who is in the art would know what a PWM, pulse width modulation is, and similarly maximum duty cycle signal is a well known term in the art."); Blauschild Tr. 3/12/07 at 263:6-12 (agreeing with Fairchild's attorney that "at the time of the '851 patent, it was well known to those of ordinary skill in the art that PWM devices could include an oscillator that generates a maximum duty cycle signal").] In view of this testimony, and the legal authority that the patent examiner must be presumed to be a person of skill in the art, the Court finds that the patent examiner must have been aware that such oscillators were conventional in the art when he allowed the claims to issue. | For instance, Power Integrations speculates that the "patent examiner must have been aware that such oscillators were conventional in the art when he allowed the claims to issue." The admitted evidence, however, proves that the Examiner believed that "the prior art of record ***does not appear to suggest*** a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1." DX106 at FCS0000440 (emphasis added). Indeed, Power Integrations capitalized on the Examiner's misunderstanding of the prior art by misrepresenting that "The Applicants Prior Art Figure 1 ***fails to disclose, teach or suggest such limitations.***" DX106 at FCS0000449 (emphasis added). Thus, only the logical conclusion that can be drawn from the admitted evidence is that the Examiner misunderstood the contents of the prior art (since much of it had been withheld by Power Integrations) and relied upon Power Integrations' misrepresentations when he allowed claim 29 to issue as claim 11 of the '851 Patent. |
| 37.    In addition, as discussed in more detail below, the examiner had before him during prosecution several references that disclosed oscillators with maximum duty cycle signals in the context of PWM controllers. *[See, e.g.,* PX-19; PX-394; PX-395.] The examiner indicated that he had reviewed these references by checking them off on an information disclosure statement in August of 1999, before issuing his December 13, 1999 office action. [DX-106 at FCS0000410-13.] This is further support for the Court's conclusion that the examiner was aware of the conventional nature of oscillators providing maximum duty cycle signals and that such a limitation, in and of itself, would not have been considered relevant to patentability by a | Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence. Furthermore, the cited references do not support Power Integrations' proposed finding.

For instance, there is absolutely no evidence that "the examiner had before him during prosecution several references that disclosed oscillators with maximum duty cycle signals in the context of PWM controller". To the contrary, in its decision to reexamine the '851 Patent, the Patent Office directly rejected Power Integrations' argument and specifically determined that the SMP211 "cannot be judged as merely cumulative." [DX601, p. 8]. Indeed, |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| reasonable examiner at the time. | Dr. Horowitz (the only witness presenting admitted evidence on this point) testified that the withheld prior art was not cumulative of the references before the Examiner during the prosecution of the '851 Patent. [9/24/07 Horowitz Tr. 138:1-139:3]. |

<br>

**REDACTED**

<br>

| | |
|---|---|
| 39.　　During the claim construction portion of this case, the Court construed the claim terms "frequency variation circuit" and "frequency variation signal" and determined that these terms could not be construed so broadly as to read on the type of frequency change shown in Figure 1 of the '851 patent and described with reference to that figure in the text. [D.I. 231 at 34-37.] It would similarly not be reasonable to conclude that the patent examiner would have construed these limitations more broadly to read on the disclosed "Prior Art" of Figure 1. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence.<br><br>Furthermore, Power Integrations' unsupported argument is contradicted by the admitted evidence. While Power Integrations now contends that it would "not be reasonable to conclude that the patent examiner would have construed these limitations more broadly to read on the disclosed "Prior Art" of Figure 1", the admitted evidence proves that is precisely how the Examiner construed the claims. [DX-106 at FCS0000439] ("Applicant's Prior Art Fig. 1 shows... a frequency variation circuit 140 as recited in claim 29.") |
| 40.　　The Court finds, that when read in its entirety, as it must be, the examiner's statement that "the prior art of record does not appear to disclose or suggest a PWM switch comprising an | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| oscillator for generating a maximum duty cycle signal and a signal with a frequency range dependent on a frequency variation circuit as recited in claim 1", which prior art included Figure 1 of the '851 patent, is a correct statement. Indeed, Fairchild did not assert at trial that the prior art of record itself invalidated any of the claims of the '851 patent but, instead, relied on prior art that was not considered during prosecution. | Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>As set forth in Fairchild's Motion and Reply, the admitted evidence proves that Examiner's understanding of the prior art was incorrect and that, when used in the prior art circuit shown in Prior Art Figure 1, the withheld SMP211 included "a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a signal with a frequency range dependent on a frequency variation circuit as recited in claim 1." *See* D.I. 585 and 626. |
| 41.    The Court also finds that Power Integrations' remarks in response to the PTO regarding the teaching of Figure 1 did not include any misstatement of fact.  Because these statements simply reflected the examiner's correct understanding of the prior art, they cannot be considered material to patentability. | Fairchild objects that this proposed finding is unsupported by the admitted evidence.  Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding.  Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>As set forth in Fairchild's Motion and Reply, the admitted evidence proves that Power Integrations affirmative representations to the Examiner was intentionally false.  *See* D.I. 585 and 626 |
| 42.    In view of the foregoing, and particularly the testimony of Mr. Balakrishnan which this Court finds credible, the Court further finds that, at the time it made the statements to the PTO that Fairchild complains of, Power Integrations believed the statements to be true and correct. Therefore, in light of all of the record evidence, the Court finds no intent to deceive the PTO on the part of Power Integrations in making the statements. | Fairchild objects that this proposed finding is unsupported by the admitted evidence.  Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>As set forth in Fairchild's Motion and Reply, the admitted evidence proves that Power Integrations intentionally withheld material prior art and made affirmative misrepresentations to the Examiner in order to secure allowance of the '851 Patent. *See* D.I. 585 and 626. |
| 45.    As noted above, all the technical witnesses testified consistently that oscillators that generated maximum duty cycle signals were conventional in the art as of the time of the prosecution of the '851 patent.  *[See citations supra at ¶ 36.]*  The Court finds that oscillators with maximum duty cycle signals were conventional at the relevant time.  The Court further finds that the examiner who allowed the claims of the '851 patent would have been aware of the conventional nature of these circuit | Fairchild objects that this proposed finding is unsupported by the admitted evidence.  Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding.  Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>For instance, Power Integrations speculates that the "the examiner who allowed the claims of the '851 patent would have been aware of the conventional nature of these circuit components."  The admitted evidence, however, |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| components. | proves that the Examiner believed that "the prior art of record *does not appear to suggest* a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1." DX106 at FCS0000440 (emphasis added). Indeed, Power Integrations capitalized on the Examiner's misunderstanding of the prior art by misrepresenting that "The Applicants Prior Art Figure 1 *fails to disclose, teach or suggest such limitations.*" DX106 at FCS0000449 (emphasis added). Thus, only the logical conclusion that can be drawn from the admitted evidence is that the Examiner misunderstood the contents of the prior art (since much of it had been withheld by Power Integrations) and relied upon Power Integrations' misrepresentations when he allowed claim 29 to issue as claim 11 of the '851 Patent. |
| 46.    As noted above, the Court finds that the existence of an oscillator with a maximum duty cycle signal, per se, was not material to the patentability of the claims of the '851 patent. Accordingly, the Court finds that the datasheet of the SMP211 showing that it contained such an oscillator was also not material to patentability of the claims. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.

While Fairchild agrees that the SMP211 datasheet shows that it contains an oscillator with a maximum duty cycle signal, Power Integrations unsupported argument that this prior art is immaterial is contradicted by the admitted evidence. *See* DX106 at FCS0000440 (Examiner believed that "the prior art of record does not appear to suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1.") and DX106 at FCS0000449 (Power Integrations misrepresented that "the Applicants Prior Art Figure 1 fails to disclose, teach or suggest such limitations."). |
| 47.    Even if the details of the SMP211, and specifically that it included an oscillator with a maximum duty cycle signal, were material to the claims, the examiner was already aware of such prior art technology. In addition to the basic knowledge of a person of ordinary skill, the examiner had before him during prosecution at | Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence. Furthermore, the cited references do not support Power Integrations' proposed finding.

For instance, there is absolutely no evidence |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| least 3 references that disclosed such oscillators. [PX-19; PX-394; PX-395.] | that "the examiner had before him during prosecution at least 3 references that disclosed such oscillators" as in the SMP211 that Power Integrations withheld from the Patent Office. To the contrary, in its decision to reexamine the '851 Patent, the Patent Office directly rejected Power Integrations' argument and specifically determined that the SMP211 "cannot be judged as merely cumulative." [DX601, p. 8]. Indeed, Dr. Horowitz (the only witness presenting admitted evidence on this point) testified that the withheld prior art was not cumulative of the references before the Examiner during the prosecution of the '851 Patent. [9/24/07 Horowitz Tr. 138:1-139:3].<br><br>Contrary to Power Integrations' proposed finding, the admitted evidence proves that the Examiner believed that "the prior art of record does not appear to suggest a PWM switch comprising an oscillator for generating a maximum duty cycle signal and a singnal [sic] with a frequency range dependant on a frequency variation circuit as recited in claim 1." DX106 at FCS0000440. |
| 48.    During trial, Fairchild's expert was unable to dispute that the Pelly article [PX-19 at PIF08770], U.S. Patent No. 5,313,381 [PX-394 at Fig. 3], and U.S. Patent No. 5,461,303 [PX-395 at Fig. 2] all disclosed PWM controller devices which incorporated an oscillator with a maximum duty cycle signal.  [D.I. 561 (Trial Tr. 9/24/07) at 163:20-165:9 (stating that he could not dispute that the Pelly article labeled PX-19 had a maximum duty signal cycle), 165:11-167:10 (discussing the '381 patent and its maximum duty signal cycle), 167:11-168:22 (discussing the '303 patent and its maximum duty signal cycle).] | Fairchild objects that this proposed finding is unsupported by the evidence cited by Power Integrations.  Dr. Horowitz clearly testified that the SMP211 was not cumulative to the '381 Patent, the '303 Patent, the Pelly article, or any other art cited during the prosecution of the '851 Patent. [9/24/07 Horowitz Tr. 138:1-139:3].  Dr. Horowitz's testimony was independently confirmed by the Patent Office when it granted reexamination of the '851 Patent, in part, because the SMP211 "cannot be judged as merely cumulative." [DX601, p. 8]. |
| 49.    The '381 patent and the '303 patent are earlier patents of Power Integrations that were cited to the PTO during prosecution of the '851 patent.  The Court finds that the oscillator shown in these two patents is substantially identical to the oscillator contained in the SMP211. [Compare PX-394 at Fig. 3 and PX-395 at Fig. 2 with DX-76 at Fig. 3] | Fairchild objects that this proposed finding is unsupported by the evidence cited by Power Integrations.  Indeed, there is no admitted evidence that the oscillators shown in the '381 and '303 Patents are "substantially identical" to the oscillator contained in the SMP211.  To the contrary, Dr. Horowitz clearly testified that the SMP211 was not cumulative to the '381 Patent, the '303 Patent, the Pelly article, or any other art cited during the prosecution of the '851 Patent. [9/24/07 Horowitz Tr. 138:1-139:3]. Dr. Horowitz's testimony was independently confirmed by the Patent Office when it granted |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | reexamination of the '851 Patent, in part, because the SMP211 "cannot be judged as merely cumulative." [DX601, p. 8]. |
| 50.    The Court finds that the information about the SMP211 as shown for example in DX-76, would have been merely cumulative of the prior art already before the examiner during prosecution of the '851 patent. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>Furthermore, the proposed finding is contradicted by the evidence, which proves that the SMP211 is not cumulative of art cited during the prosecution of the '851 Patent. *See* 9/24/07 Horowitz Tr. 138:1-139:3; DX601, p. 8. |
| 52.    The Court finds, in view of all the record evidence, including Mr. Balakrishnan's testimony, the fact that by putting the indication "SMP211" in the patent figure itself allowing the examiner to locate the data sheet if he so chose, and the fact that Power Integrations cited at least three references having substantially the same disclosure as the SMP211, that Power Integrations had no intent to deceive the PTO when it failed to provide a copy of the SMP211 datasheet during prosecution of the 1851 patent. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>As set forth in Fairchild's Brief and Reply, the admitted evidence proves that Power Integrations intended to (and did) deceive the Patent Office by withholding evidence concerning its prior art SMP211 devices. *See* D.I. 585 and 626. |
| 54.    During the claim construction phase of this case, Fairchild asserted that the claim term "soft start circuit" must be construed broadly to encompass any circuit structures capable of performing a soft start function. Based on the specification, however, the Court concluded that such construction was incorrect, and in fact, would not be a reasonable construction because it would cause the claim to read on the very same prior art disclosed in Figure 1 of the '366 patent and expressly distinguished from the invention in the text of the patent. Accordingly, the Court concluded that the claimed "soft start circuit" was a "means-plus-function" element subject to interpretation under 35 U.S.C. § 112(6). [D.I. 231 at 28-34.] The Court further concluded that the structure corresponding to the claimed soft start circuit was shown in, for example, Figure 3, and the accompanying text. [Id. at 32-34.] In light of arguments at trial, however, the Court believes that it would be useful to note, and is | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence. In fact, Power Integrations mischaracterizes the Court's order and claim construction in its proposed finding.<br><br>Finally, Fairchild objects to Power Integrations attempt to have the Court change its claim construction after the conclusion of the infringement and invalidity trials in order to avoid a finding of inequitable conduct. |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| apparently undisputed, that this structure includes the three circuit components inside the box labeled "soft start" in Figure 3. | |
| 55.　　Consistent with its decision on claim construction , the Court finds that its construction of "soft start circuit" as subject to application of 35 U.S.C. § 112(6) is the broadest reasonable construction in light of the intrinsic record and that no reasonable examiner would have construed the term as Fairchild suggested because such a construction would have made the claim unpatentable in view of the admitted prior art discussed in the figure and text of the patent itself. | Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence.  Indeed, the admitted evidence directly contradicts Power Integrations' unsupported arguments. <br><br> For instance, Power Integrations speculates that the "no reasonable examiner would have construed" the "soft start circuit" element as other than a means-plus-function term.  This is contradicted by the admitted evidence, including Dr. Horowitz's testimony and Power Integrations' earlier patents that (in contrast to the '366 Patent) expressly claim a "soft start means" when Power Integrations intended for its claim to be subject to the application of 35 U.S.C. § 112 ¶ 6.  *See* DX1000 (U.S. Patent No. 5,245,526, claim 8); 9/24/07 Horowitz Tr. 151-154. |
| 57.　　It is undisputed that the SMP3 datasheet does not mention a soft start function and has no disclosure or suggestion that the SMP3 had such a feature.  As such, the SMP3 datasheet could not have been material to the patentability of the claims of the '366 patent. | Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence.  Indeed, the admitted evidence directly contradicts Power Integrations' unsupported arguments. <br><br> Further, Power Integrations unsupported conclusion that the SMP3 datasheet could not be material is not even supported by Power Integrations unsupported assertion that it does not mention a soft start function.  Prior art may be material even if it does not meet every element of a pending claim.  37 C.F.R. § 1.56. |
| 58.　　Mr. Balakrishnan testified that the SMP3 product, as sold, had no soft start functionality.  [Balakrishnan Tr. 11/17/05 at 69:18-19; Balakrishnan Tr. 11/23/05 at 550:4-7, 587:9-15.]  Mr. Balakrishnan credibly testified that, based on the importance of such a feature in the marketplace, if such a function had been included in the SMP3, Power Integrations would have highlighted it in the datasheet for the product.  [Balakrishnan Tr. 11/23/05 at 557:13-16, 558:20-559-7.]  After having been given the opportunity to review the detailed internal circuit schematics for the SMP3, Mr. Balakrishnan confirmed that the product was incapable of performing a soft start function of any kind.  [Id.  at 587:9-15.] | Fairchild objects that this proposed finding includes attorney argument (such as to the Mr. Balakrishnan's "credibility") unsupported by the admitted evidence. |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| 59.     Power Integrations' circuit expert, Mr. Blauschild, also reviewed the internal circuit schematics and came to the conclusion that the product was not capable of performing a soft start function. [Blauschild Rebuttal Report at ¶ 62.] | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any admitted evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>Fairchild further objects to Power Integrations' attempt to rely upon its experts' report as "evidence" of some fact. Power Integrations elected not to offer testimony from its expert (or subject him to cross examination) concerning inequitable conduct. Expert reports were not admitted into evidence and cannot be relied upon in these findings. |
| 60.     Fairchild's own expert, Dr. Horowitz, also admitted that the circuit as shown in the detailed circuit schematics would not be able to perform a soft start function. [D.I. 561 (Trial Tr. 9/24/07) at 176:20-177:7.] Dr. Horowitz hypothesized that it might be possible to modify the circuit to perform some sort of soft start function, but had no knowledge of any such modification ever having been made. [Id. at 175:8-176:19; D.I. 557 (Trial Tr. 9/19/07) at 826:14-20.] | Fairchild objects that this proposed finding is not supported by the admitted evidence. To the contrary, Dr. Horowitz stated that the SMP3 circuit **would** be able to perform a soft start function. 9/24/07 Horowitz Tr. 174:17-175:17. |
| 61.     In view of all of the evidence directly relevant to the actual functioning of the SMP3, the Court finds that the SMP3 product, as available to the public and sold, did not incorporate a soft start function at all and, therefore, could not have been material to the patentability of the claims of the '366 patent. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>Power Integrations' argument is contradicted by the admitted evidence, including the Goodenough article stating that the SMP3 included an internal softstart, the SMP3 schematics showing this soft start circuit, and Dr. Horowitz's testimony. *See* DX17 (Goodenough article) and 9/24/07 Horowitz Tr. 174:17-175:17. |
| 62.     Instead of providing evidence directly about the actual circuit of the SMP3 itself, Fairchild relies on an article written by a third party allegedly describing the SMP3. [DX-17.] Mr. Balakrishnan and Mr. Blauschild both explained, however, that the description of the SMP3 in the "Goodenough" article, was mistaken in its description of the operation of the SMP3 as including a soft start function. [Blauschild | Fairchild objects that this proposed finding includes unsupported attorney argument, such as that Fairchild did not provide evidence about the "actual" circuit of the SMP3. The admitted evidence contradicts this unsupported argument. *See* 9/24/07 Horowitz Tr. 147:9-2 (the SMP3 schematics confirm that the SMP3 included a soft start circuit). |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| Rebuttal Rpt. at ¶¶ 62, 65; Balakrishnan Tr. 11/23/05 at 547-587.] In view of the evidence noted above, the statement in the Goodenough article, DX-17, is insufficient to support the conclusion that the SMP3, in fact, was capable of performing a soft start function. | Fairchild further objects to Power Integrations' attempt to rely upon its experts' report as "evidence" of some fact. Power Integrations elected not to offer testimony from its expert (or subject him to cross examination) concerning inequitable conduct. Expert reports were not admitted into evidence and cannot be relied upon in these findings. |
| **REDACTED** | |
| 66.     Dr. Horowitz also admitted that, if the SMP3 if [sic] fact performed a feedback function as he hypothesized, that function would be performed by modifying the feedback signal using an external capacitor. [D.I. 561 (Trial Tr. 9/24/07) at 177:8-15.] In other words, even if the SMP3 were modified as Dr. Horowitz suggested to perform a soft start function, the implementation would be the same as what Mr. Blauschild and Mr. Balakrishnan described as "conventional." | Fairchild objects that this proposed finding includes attorney argument unsupported by the admitted evidence. Furthermore, the cited references do not support Power Integrations' proposed finding.<br><br>For instance, the citations cited by Power Integrations do not support its proposed "fact" that Dr. Horowitz "admitted that, if the SMP3 if [sic] fact performed a feedback function as he hypothesized, that function would be performed by modifying the feedback signal using an external capacitor." To the contrary, Dr. Horowitz testified that the SMP3 performs a softstart function without any modification. *See* 9/24/07 Horowitz Tr. 147:9-2. |
| 67.     The Court further finds that the SMP3 would not have been material to patentability of the '366 patent, even if it could be considered to have embodied or disclosed something about a soft start function, because any such disclosure or function, including the statement in the Goodenough article, would have been cumulative of prior art already before the PTO, including specifically the Pelly article, PX-19. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.<br><br>Further, as set forth in Fairchild's Motion and Reply, the admitted evidence proves that the SMP3 is not cumulative of the Pelly article or other art considered by the Examiner during the prosecution of the '366 Patent. *See* D.I. 585 |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | and 626. |
| **REDACTED** | |
| 69.     The Court further finds that, in light of all the evidence, including the evidence of the actual function and operation of the SMP3, its internal circuits, and Power Integrations' knowledge of them at the relevant time, that there was no intent to deceive the PTO on the part of Power Integrations by not providing information concerning the SMP3, including DX-76 or DX-17, to the PTO. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.

Further, as set forth in Fairchild's Motion and Reply, the admitted evidence proves that Power Integrations intended to (and did) deceive the Patent Office by withholding all information about its prior art SMP3 device. *See* D.I. 585 and 626. |
| 73.     Fairchild's expert, Dr. Horowitz, also failed to identify during his testimony any specific structures in the SMP240/260 that were allegedly the same or equivalent to the disclosed structures for the '366 patent soft start circuit. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.

Further, Power Integrations' unsupported attorney argument is directly contradicted by the admitted evidence. Dr. Horowitz testified at length as to how specific structures in the SMP240/260 were the same as or equivalent to the soft start structures disclosed in the '366 Patent. *See* 9/19/07 Horowitz Tr. at 769:15-773:4 and 776:16-779:5. |
| 74.     Mr. Balakrishnan also testified as to his knowledge of the SMP240/260 and how it was both conventional in its approach to soft start and different from the invention of the '366 patent. [Id. at 902:19-903:10.] | Fairchild objects that this proposed finding is not supported by the admitted evidence. The citations to the record identified by Power Integrations do not support the proposition Power Integrations seeks for the Court to draw. |
| 75.     Rather than address any of this evidence, | Fairchild objects that this proposed finding |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | |

REDACTED

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| 77.    In view of all of the evidence concerning the actual circuitry of the SMP240/260 and how it compared to the prior art that was in front of the PTO during prosecution, the Court finds that the SMP240/260 was not material to the patentability and was merely cumulative of other prior art of record. | Fairchild objects that this proposed finding is unsupported by the admitted evidence.  Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.

For instance, there is no evidence that "the SMP240/260 was not material to the patentability and was merely cumulative of other prior art of record".  To the contrary, in its decision to reexamine the '366 Patent, the |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | Patent Office directly rejected Power Integrations' argument and concluded that the SMP240/SMP260 was not cumulative. [DX602]; *see also* Fairchild's Motion and Reply, D.I. 585 and 626, respectively. |

**REDACTED**

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| 81.    In view of all the evidence of record, the Court finds that Fairchild has failed to establish that the failure to disclose the SMP240/260 or its datasheet to the PTO during prosecution of the '366 patent was done with any intent to deceive the PTO. | Fairchild objects that this proposed finding is unsupported by the admitted evidence. Indeed, Power Integrations fails to cite to any evidence whatsoever to support this proposed finding. Thus, it appears merely to be attorney argument and not the proper subject of a finding of fact.

Further, the proposed finding is contradicted by the admitted evidence, which proves that Power Integrations intentionally withheld all information about its SMP240/260 during the prosecution of the '366 Patent. *See* Fairchild's Brief and Reply, D.I 585 and 626, respectively. |
| 83.    Fairchild does not contend that Dr. Eklund made any material misrepresentations during the course of prosecuting the '075 patent, and the | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence. Indeed, Power |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| Court finds that Dr. Eklund did not make made any misrepresentations or misleading statements during the prosecution of his first U. S. Patent, the '075 patent. | Integrations fails to cite to any evidence whatsoever to support this proposed finding.<br><br>Power Integrations purports to summarize Fairchild's contentions. Fairchild's contentions are fully and accurately set forth in its Brief and Reply, D.I 585 and 626, respectively.<br><br>Further, the proposed finding is inaccurate and misleading. While the proposed finding of fact states that "Fairchild does not contend that Dr. Eklund made any material misrepresentations during the course of prosecuting the '075 Patent," in fact Fairchild does contend that Dr. Eklund made material misrepresentations during the course of prosecuting the '075 Patent, as set forth in its Brief and Reply. |
| 84.    In the background section of the '075 patent, Dr. Eklund explained the state of the art and summarized the prior art. Specifically , at column 1, lines 15-50, Dr. Eklund' s patent explains the prior art and its significant limitations. As Dr. Eklund testified at trial , this description included an averaging of the performance characteristics of the art in his possession at that time , which provided a base line against which to demonstrate the significant improvements of the claimed invention . [D.I. 560 (Trial Tr. 9/21/07) at 5:21-6:1, 7:14-21, 13:12-20, 16:13-17:5, 18:2-9, 19:8-14, 25 : 19-26:15 .] Dr. Eklund further testified that he believed this description disclosed the art he had in his possession at that time, including specifically the Wakaumi, Ludikhuize, and other references he surveyed when he first began his work on what ultimately became the '075 patent. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence.<br><br>Further, the cited references do not support Power Integrations' allegations and thus Fairchild objects to this proposed finding as inaccurate, misleading and irrelevant. Power Integrations does not provide any evidentiary citations for the assertion that "Dr. Eklund further testified that he believed this description disclosed the art he had in his possession at that time, including specifically the Wakaumi, Ludikhuize, and other references he surveyed when he first began his work on what ultimately became the '075 patent." None of the citations provided by Power Integrations in this proposed finding support this assertion. |
| 85.    Fairchild's process technology expert, Dr. Peter Gwozdz, admitted at trial that Dr. Eklund's description in the background of the patent "certainly" disclosed the structure of conventional high voltage MOS transistors like Wakaumi and the other references identified in Dr. Eklund's initial market survey. [D.I. 556 (Trial Tr. 9/18/07) at 541:16-542:21.] | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence.<br><br>Further, the cited references do not support Power Integrations' allegations and thus Fairchild objects to this proposed finding of fact as inaccurate, misleading and irrelevant. Power Integrations does not provide any evidentiary citations that support the assertion that "Dr. Peter Gwozdz, admitted at trial that Dr. Eklund's description in the background of the patent 'certainly' disclosed the structure of conventional high voltage MOS transistors like Wakaumi and the other references identified in |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| | Dr. Eklund's initial market survey." The citations provided by Power Integrations establish only that Dr. Gwozdz merely agreed with the assertion by Power Integrations' counsel that the background section "described some typical prior art transistors that had an extended drain or drift region" and which were "like Wakaumi." |
| 86.     At trial, Fairchild relied extensively on the testimony of an alleged prior inventor of the technology of the '075 patent, Mr. James Beasom, who copied Dr. Eklund's claim into a later patent application verbatim.  There is no dispute that Mr. Beasom knew about the Wakaumi and Ludikhuize papers during the prosecution of his patents, as he presented at the IEDM conferences during the sessions when these papers were presented in 1982 and 1983.  [D.I. 556 (Trial Tr. 9/18/07) at 298:8-304:19.]  Nevertheless, Mr. Beasom did not submit the Wakaumi or Ludikhuize articles (or any articles, IEDM or otherwise) to the patent office during the prosecution of his patents. *[Id.]*  When asked about this art at trial, Mr. Beasom admitted the references did not disclose the invention *[id.]*, and Mr. Beasom also confirmed that an extended drain region going both ways from the drain was "quite common" in the art. [D.I. 556 (Trial Tr. 9/18/07) at 304:20-306:4.]  Mr. Beasom also admitted that he would not submit references disclosing such common structures when applying for patents.  [D.I. 556 (Trial Tr. 9/18/07) at 306:5-16.]  The Court credits Mr. Beasom's testimony and finds that the Wakaumi and Ludikhuize references taught conventional high voltage MOS technology, were not material, and had no bearing on the '075 patent. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence.  Further, the cited references do not support Power Integrations' allegations and thus Fairchild objects to this proposed finding of fact as inaccurate, misleading and irrelevant.  Power Integrations does not provide any evidentiary support for the assertion that Mr. Beasom "copied Dr. Eklund's claim into a later patent application verbatim."  The citations provided by Power Integrations do not support the assertion that Mr. Beasom "knew about the Wakaumi and Ludikhuize papers during the prosecution of his patents."  Power Integrations' assertion that "Mr. Beasom admitted that the references did not disclose the invention" is vague, ambiguous and irrelevant, as it is unclear what "the invention" is and Mr. Beasom never refers to the '075 Patent in any of the evidentiary citations provided by Power Integrations in this proposed finding.  Power Integrations' assertion that "Mr. Beasom also admitted that he would not submit references disclosing such common structures when applying for patents," is vague, ambiguous and irrelevant, and is unsupported by the citations provided by Power Integrations.  In the citations provided, Mr. Beasom does not admit that any particular prior art reference was a common structure or unnecessary to disclose in the prosecution of the '075 Patent and never refers to the '075 Patent at all.  The assertion that "Wakaumi and Ludikhuize references taught conventional high voltage MOS technology, were not material, and had no bearing on the '075 patent" is unsupported by any evidentiary citations. |
| 87.     Despite the evidence from Fairchild expert Dr. Gwozdz and its alleged prior inventor James Beasom, Fairchild contends that Dr. Eklund committed inequitable conduct by not | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence. |

| Power Integrations' Proposed Finding of Fact | Fairchild's Objection and Response |
|---|---|
| submitting the prior art articles described above during the course of prosecuting the '075 patent. In view of the evidence of Dr. Eklund's disclosure in the background of the patent, and the testimony of Dr. Eklund, Dr. Gwozdz, and James Beasom, the Court finds that Dr. Eklund did not withhold any material, non-cumulative art during the prosecution of the '075 patent. | Further, Fairchild objects to this proposed finding of fact as inaccurate, misleading and irrelevant. Power Integrations assertion that "[i]n view of the evidence of Dr. Eklund's disclosure in the background of the patent, and the testimony of Dr. Eklund, Dr. Gwozdz, and James Beasom, the Court finds that Dr. Eklund did not withhold any material, non-cumulative art during the prosecution of the '075 patent" is mere argument and is unsupported by any evidentiary citations. |
| 88.     Fairchild did not present any persuasive evidence that Dr. Eklund intended to deceive the patent office during the course of prosecuting the '075 patent, much less the sort of clear and convincing evidence necessary to render the patent unenforceable . Fairchild did not identify any misstatement to support a finding of intent, and Fairchild can point to no evidence - beyond the contentions with respect to the disclosed prior art addressed above - to demonstrate an intent to deceive.  Instead, Fairchild makes a number of unsupported charges on unrelated issues such as Dr. Eklund's compensation, communications with potential investors , and deposition testimony in this case.  The Court finds that Fairchild's arguments do not evidence an intent to mislead the patent office. | Fairchild objects that this proposed finding is attorney argument rather than a fact supported by the admitted evidence.<br><br>Further, Fairchild objects to this proposed finding of fact as inaccurate, misleading and irrelevant.<br><br>Power Integrations assertion that "Fairchild did not present any persuasive evidence that Dr. Eklund intended to deceive the patent office during the course of prosecuting the '075 patent, much less the sort of clear and convincing evidence necessary to render the patent unenforceable" is mere argument, is unsupported by any evidentiary citations and is contrary to the evidence.  Power Integrations assertion that "Fairchild did not identify any misstatement to support a finding of intent, and Fairchild can point to no evidence – beyond the contentions with respect to the disclosed prior art addressed above – to demonstrate an intent to deceive" is mere argument, is unsupported by any evidentiary citations and is contrary to the evidence.  Power Integrations assertion that "Fairchild makes a number of unsupported charges on unrelated issues such as Dr. Eklund's compensation, communications with potential investors, and deposition testimony in this case" is mere argument, is unsupported by any evidentiary citations and is contrary to the evidence. |

| Power Integrations' Proposed Conclusions of Law | Fairchild's Objection and Response |
|---|---|
| 1.     In light of the applicable legal standards governing materiality, the Court finds that, because there was no public disclosure of the subject -matter of the '851 patent prior to the invention of the claims of the '876 patent, there was no "prior art" to disclose and, therefore, no failure by Power Integrations to disclose material information to the patent office. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 2.     The Court concludes that Fairchild has failed to meet its burden of proof on the essential materiality element and, accordingly, the Court need not reach the issue of intent. *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("In view of our holding that a public use bar is not supportable on the evidence that was adduced, the failure to tell the examiner about this purported bar can not be deemed material and culpable ." (internal quotations and citation omitted)). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 3.     Therefore, Fairchild' s claim that Power Integrations committed inequitable conduct in the prosecution of the '876 patent has not been established; the '876 patent is enforceable. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 4.     The doctrine of "infectious unenforceability," whereby closely related patents are invalidated on the ground of inequitable conduct committed in the prosecution of one of the related patents, applies in the reverse, and demonstrated lack of inequitable conduct on one patent necessarily means that the same type of inequitable conduct must be rejected with respect to the closely related patents. *Mosaid Technologies Inc. v. Samsung Electronics Co.,* 362 F. Supp. 2d 526, 555 (D.N.J. 2005) (holding that the lack of inequitable conduct on one patent meant that infectious unenforceability was "perforce rejected"). Thus, the Court concludes that a finding of no inequitable conduct on the '851 patent with respect to frequency variation will apply to the same subject matter in the '366 patent.  Similarly, the Court concludes that a determination of no inequitable conduct on the '366 patent's soft-start claims will preclude a finding of inequitable conduct on the '851 soft-start circuit. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 5.     The mere grant of reexamination is insufficient to establish the materiality of a reference. *See Lummus Industries, Inc. v. D.M. & E Corp.,* 862 F.2d 267, 273 (Fed. Cir. 1988) (holding that even a rejection of claims after reexamination does not establish per se high materiality for a finding of | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |

| | |
|---|---|
| inequitable conduct). Since none of the claims of the '851 patent have been rejected on the basis of the undisclosed referenced, the Court declines to find materiality from the mere grant of reexamination. | |
| 6.     The Court's conclusion that reexamination is insufficient to support a materiality determination is further confirmed by the different standards of materiality for granting a reexamination and for finding inequitable conduct. Grants of reexamination are almost automatic and requires only "a substantial *likelihood* that *a reasonable* examiner would *consider* the prior art... *important* in deciding whether or not the claim is patentable." U.S. PTO, MPEP § 2242 (8th ed., rev. 5, Aug. 2006) (emphasis added); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). On the other hand, a materiality finding for inequitable conduct requires clear and convincing evidence. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 7.     In order to breach the duty of candor, the patentee must either: (1) make "an affirmative misrepresentations of material facts;" (2) fail "to disclose material information;" or (3) submit "false material information." *See Honeywell Intern. Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007). Because the Court concludes that Power Integrations' statements regarding amended claim 29 (issued claim 11) were factually correct, they cannot be considered either "an affirmative misrepresentation" or a submission of "false material information." Furthermore, because Power Integrations' statement was an accurate statement of the state of the prior art when considered as a whole, rather than dissected into discrete clauses as Fairchild suggests, it cannot be considered an affirmative misrepresentation. As such, Power Integrations' statements during prosecution do not constitute any of the types of actions which are required to show a violation of the duty of candor. Therefore, the Court concludes that Power Integrations' statement with respect to amended claim 29 was not material to patentability and was not misleading. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 8.     The Court finds no evidence of any intent by Power Integrations to deceive the PTO. In light of their context, the nature of Power Integrations' statements support a strong inference that Power Integrations did not intend to deceive the Patent Office, and acted in good faith. *Juicy Whip, Inc. v. Orange Bang, Inc., 292* F.3d 728, 745 (Fed. Cir. 2002) ("Whether the statements in the Bowers declaration were false or misleading is irrelevant to our inquiry, however, because Orange Bang failed to | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |

| | |
|---|---|
| present any evidence that the Strattons knew or considered the Bowers declaration to contain anything untrue or that the declaration was submitted with any intent to mislead the examiner."); *Key Pharm., Inc. v. HerconLabs. Corp.,* 981 F. Supp. 299, 317 (D. Del. 1997) (finding insufficient intent where "[claimant] produced no evidence that suggests that [applicant] did not believe that he had appropriately brought the Kokais to the attention of the PTO by submitting the abstracts"); *Allen Engineering Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1351 (Fed. Cir. 2002) (rejecting inequitable conduct because claimant "has provided no direct evidence that [applicant] withheld information about the [prototype] with an intent to deceive the PTO"). | |
| 9.      In light of the applicable legal standards governing materiality and Power Integrations' disclosure of prior art with identical teachings, the Court also concludes that the SMP211 datasheet was not material to the claims presented in the '366 application. *Jazz Photo Corp. v. Int'l Trade Comm'n,* 264 F.3d 1094, 1110 (Fed. Cir. 2001) ("The ALJ found that the subject matter contained in these references was before the patent examiner in a cited Netherlands patent and Japanese publication. References cumulative to cited references do not raise issues of withholding of material prior art."); *Dayco Products, Inc. v. Total Containment Inc.,* 329 F.3d 1358, 1367 (holding that "prior art or information was not material ... because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO"); *Lifescan, Inc. v. Home Diagnostics, Inc.,* 103 F. Supp. 2d 379, 384 (D. Del. 2000) ("[A]n otherwise material reference need not be disclosed if it is cumulative or less material than other references already disclosed."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 10.      The Court finds that there is no evidence that, in failing to submit the SMP211 datasheet, Power Integrations intended to deceive the Patent Office. The fact that Power Integrations disclosed references that render the SMP211 datasheet cumulative, and the fact that Power Integrations labeled its Figure with "SMP211 ", thereby providing the examiner the ability to find the datasheet if he so chose, demonstrates Power Integrations' good faith and lack of deceptive intent. *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1384 (Fed. Cir. 1998) ("Our confidence in [finding intent] is undermined, however, when we afford weight to the inference running contrary to deceitful intent that must be drawn from Container's disclosure of the Katz application to the Venus application's | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |

| | |
|---|---|
| examiner."); *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1442 (Fed. Cir. 1991) (finding no inequitable conduct, even though applicant was aware of withheld reference and noting that "a mere showing that references having some degree of materiality were not disclosed does not establish inequitable conduct"); *Dayco Products Inc. v. Total Containment Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("However, inequitable conduct requires not intent to withhold, but rather intent to deceive. Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible."). | |
| 11.     Even if there were threshold showings of materiality and intent, the balance of materiality and intent with the additional factor of Power Integrations' good faith and reasonable belief in its disclosure of all relevant prior art leads this Court to conclude that Power Integrations' conduct was not of sufficient culpability as to render the '851 patent unenforceable. *See Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1128-1129 (Fed. Cir. 2006) (reversing inequitable conduct finding because balancing of a low level of materiality combined with a low level of intent offset by evidence of good faith could not support district courts holding). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 12.     The Court further finds that even if the alleged instances of inequitable conduct were combined, there is no evidence of any type of pattern from which to infer that Power Integrations acted with deceptive intent. To the contrary, Power Integrations' multiple disclosures in compliance with its duty of candor and good faith lead to the conclusion that it acted with good faith. Fairchild has not shown with clear and convincing evidence that Power Integrations was so culpable that the '851 patent must be held unenforceable. *Merck & Co. v. Teva Pharm. USA, Inc.*, 288 F. Supp. 2d 601, 631 (D. Del. 2003) ( "[Claimants] must prove, by clear and convincing evidence, that material information was intentionally withheld for the purpose of the misleading or deceiving the examiner."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 13.     Therefore, Fairchild's claim that the Power Integrations committed inequitable conduct in the prosecution of the '851 patent has not been established; the '851 patent is enforceable. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 14.     The mere grant of reexamination is insufficient to establish the materiality of a reference . *See Lummus Industries, Inc. v. D.M. & E Corp.*, 862 F.2d 267, 273 (Fed. Cir. 1988) (holding that even | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable |

| | |
|---|---|
| a rejection of claims after reexamination does not establish per se high materiality for a finding of inequitable conduct).  Since none of the claims of the '366 patent have been rejected on the basis of the undisclosed referenced , the Court declines to find materiality from the mere grant of reexamination. | precedent.  As such it should be stricken. |
| 15.     The Court's conclusion that reexamination is insufficient to support a materiality determination is further confirmed by the different standards of materiality for granting a reexamination and for finding inequitable conduct.  Grants of reexamination are almost automatic and requires only "a substantial *likelihood* that *a reasonable* examiner would *consider* the prior art... *important* in deciding whether or not the claim is patentable ."  USPTO, MPEP § 2242 (8th ed., rev. 5, Aug.  2006) (emphasis added); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988).  On the other hand, a materiality finding for inequitable conduct requires clear and convincing evidence. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 16.     In light of the applicable legal standards governing materiality , and that the only claim construction a reasonable examiner would employ for the '366 patent soft start circuit would be one based on means plus function, the Court concludes that because the SMP3 did perform a soft start function and did not contain any of the structures required by the teachings of the '366 patent, the SMP3 is not material prior art.  The Court further concludes that the SMP3 would also not have been material because it was cumulative of the Pelly article already disclosed the PTO. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 17.     Similarly, the Court concludes that the SMP240/260 was not material prior because it too contained none of the required structures of the '366 patent.  Moreover, the Court concludes that the SMP240 /260 was not material because it was cumulative of references already before the PTO, including the Pelly article and the '526 patent.  37 C.F.R.  § 1.56(b) (2003) ("information is material to patentability when it is not cumulative to information already of record or being made of record in the application."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 18.     Because none of the reference relied upon by Fairchild are material, the Court concludes that Fairchild has failed to meet its burden of proof on the essential materiality element.  *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("'In view of our holding that a public use bar is not supportable on the evidence that was adduced, the failure to tell the examiner about this purported bar can not be deemed | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |

| | |
|---|---|
| material and culpable."') | |
| 19.     The Court further concludes that there is no evidence that, in failing to submit the SMP3 datasheet, Power Integrations intended to deceive the Patent Office.  The fact that the '366 patent taught a new method of performing soft start and the fact that the SMP3 did not perform even a conventional prior art method of soft start, demonstrates Power Integrations' lack of intent to even withhold prior art (let alone intent to deceive the PTO) as the inventors' had a good faith and reasonable basis to believe, and correctly so, that the SMP3 was not material.  Further, Power Integrations had disclosed multiple references that would have rendered the SMP3 cumulative, even if it had contained a soft start feature.  *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1384 (Fed. Cir. 1998) ("Our confidence in [finding intent] is undermined, however, when we afford weight to the inference running contrary to deceitful intent that must be drawn from Container's disclosure of the Katz application to the Venus application's examiner.") | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 20.     The Court additionally concludes that there is insufficient evidence to support the inference that, in failing to submit the SMP240/260 datasheet, Power Integrations intended to deceive the Patent Office.  The fact that Power Integrations disclosed references that render the SMP240/260 datasheet cumulative, the inventor's credible testimony as to their lack of recollection of the SMP240/260 soft start feature at the relevant time and their belief of the differences between the SMP240/260 and their claimed '366 invention, demonstrates Power Integrations' good faith and lack of deceptive intent.  *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1384 (Fed. Cir. 1998); *Halliburton,* 925 F.2d at 1442 (holding no inequitable conduct, even though applicant was aware of withheld reference, "a mere showing that references having some degree of materiality were not disclosed does not establish inequitable conduct"); *Dayco Products Inc. v. Total Containment Inc.,* 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("However, inequitable conduct requires not intent to withhold, but rather intent to deceive.  Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 21.     Even if there were threshold showings of materiality and intent, the balance of materiality and intent with the additional factor of Power Integrations' good faith and reasonable belief in its | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |

| | |
|---|---|
| disclosure of all relevant prior art, leads this Court to conclude that Power Integrations' conduct was not of sufficient culpability as to render the '366 patent unenforceable. *See Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1128-1129 (Fed. Cir. 2006) (reversing inequitable conduct finding because balancing of a low level of materiality combined with a low level of intent offset by evidence of good faith could not support district courts holding). | |
| 22.     The Court further finds that even if the alleged instances of inequitable conduct were combined, there is no evidence of any type of pattern from which to infer that Power Integrations acted with deceptive intent.  To the contrary, Power Integrations' multiple disclosures in compliance with its duty of candor and good faith lead to the conclusion that it acted with good faith.  Fairchild has not shown with clear and convincing evidence that Power Integrations was so culpable that the '366 patent must be held unenforceable. *Merck & Co. v. Teva Pharm. USA, Inc.*, 288 F. Supp. 2d 601, 631 (D. Del. 2003) ("[Claimants] must prove, by clear and convincing evidence, that material information was intentionally withheld for the purpose of the misleading or deceiving the examiner."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 23.     Therefore, Fairchild ' s claim that the Power Integrations committed inequitable conduct in the prosecution of the '366 patent has not been established; the '366 patent is enforceable. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 24.     Further, the Court concludes that its ruling of no inequitable conduct on the '851 patent applies to the common subject matter in the '366 patent , and therefore finds no inequitable conduct by Power Integrations in failing to disclose the SMP211 during prosecution of the '851 or '366 patent .  Similarly, the Court concludes that its determination of no inequitable conduct on the '366 patent claims applies to the common subject matter in the '851 patent and finds no inequitable conduct by Power Integrations in failing to disclose the SMP3 or SMP240/260 during prosecution of the '851 or '366 patent. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 25.     The Court concludes that Dr. Klas Eklund did not make any material misstatements during the course of the prosecution of the '075 patent. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 26.     The Court finds no failure by Dr. Klas Eklund to disclose material, noncumulative information to the patent office during the prosecution of the '075 patent.  Dr. Eklund disclosed the relevant teachings | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |

| | |
|---|---|
| of the prior art he was aware of, including those two primary references Fairchild relies upon (Wakaumi and Ludikhuize) and an average of the characteristics of other prior art high voltage MOS transistors, in the background section of the specification to his patent. Fairchild's expert recognized that the description in the background "certainly" disclosed the known prior art structures. | |
| 27.     The Court concludes that the evidence is insufficient to support the inference that Dr. Eklund intended to deceive the Patent Office when he submitted a description of the art rather than submitting the articles identified in his initial marketplace survey, particularly when viewed in light of Dr. Eklund' s testimony that he believed he properly disclosed the art in the background section. *Dayco Products Inc. v. Total Containment Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("However, inequitable conduct requires not intent to withhold, but rather intent to deceive.  Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible.");*Halliburton,* 925 F.2d at 1442 (finding no inequitable conduct, even though applicant was aware of withheld reference, and noting that "a mere showing that references having some degree of materiality were not disclosed does not establish inequitable conduct").  In light of the admissions by Fairchild's expert and Fairchild fact witness James Beasom regarding the lack of materiality of the withheld prior art, the evidence supports a strong inference that Dr. Eklund did not intend to deceive the Patent Office, and acted in good faith.  *Allen Engineering Corp. v. Bartell Indus.,* Inc., 299 F.3d 1336, 1351 (Fed. Cir. 2002) (rejecting inequitable conduct because claimant "has provided no direct evidence that [applicant] withheld information about the [prototype] with an intent to deceive the PTO"); *Key Pharm., Inc. v. Hercon Labs. Corp.,* 981 F. Supp. 299, 317 (D. Del. 1997) (finding insufficient intent where "[claimant] produced no evidence that suggests that [applicant] did not believe that he had appropriately brought the Kokais to the attention of the PTO by submitting the abstracts."); 37 C.F.R.  § 1.56(b) (2003) ("information is material to patentability when it is not cumulative to information already of record or being made of record in the application."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |
| 28.     Even if there were threshold showings of materiality and intent, the balance of materiality and intent with the additional factor of Power Integrations' good faith and reasonable belief in its | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent.  As such it should be stricken. |

| | |
|---|---|
| disclosure of all relevant prior art, leads this Court to conclude that Power Integrations' conduct was not of sufficient culpability as to render the '075 patent unenforceable. *See Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1128-1129 (Fed. Cir. 2006) (reversing inequitable conduct finding because balancing of a low level of materiality combined with a low level of intent offset by evidence of good faith could not support district courts holding). | |
| 29.     The Court further finds that even if the alleged instances of inequitable conduct were combined, there is no evidence of any type of pattern from which to infer that Power Integrations acted with deceptive intent . Fairchild has not shown with clear and convincing evidence that Power Integrations was so culpable that the '075 patent must be held unenforceable. *Merck & Co. v. Teva Pharm. USA, Inc.*, 288 F. Supp . 2d 601 , 631 (D. Del. 2003 ) ("[Claimants] must prove, by clear and convincing evidence, that material information was intentionally withheld for the purpose of misleading or deceiving the examiner."). | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |
| 30.     Therefore, Fairchild' s claim that the Power Integrations committed inequitable conduct in the prosecution of the '075 patent has not been established ; the '075 patent is enforceable. | Fairchild objects that this proposed finding is attorney argument rather than a conclusion of law supported by applicable precedent. As such it should be stricken. |

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated: December 12, 2007
186612.1