# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

        Defendants.

C.A. No. 04-1371 JJF

---

**POWER INTEGRATION'S OPPOSITION TO FAIRCHILD'S POST-TRIAL MOTION
FOR NEW TRIAL ON ALL ISSUES IN LIGHT OF *IN RE SEAGATE***

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email:  marsden@fr.com
Email:  kcompton@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

# TABLE OF CONTENTS

                                                                                                    **PAGE**

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARDs ...........................................................................................2

      A.    New Trial ...............................................................................................2

      B.    Willfulness Under *Seagate* .....................................................................3

III.  ARGUMENT ........................................................................................................5

      A.    Regardless of Whether *Seagate* Applies Retroactively, This
            Court Should Not Grant a New Trial on Validity or
            Infringement Because *Seagate* Has No Effect on Bifurcation...................5

            1.    *Seagate* Requires That Willfulness Evidence Focus on
                  the Prelitigation Conduct of the Accused Infringer and
                  Not on the Strengths of the Later-Developed
                  Invalidity/Non-Infringement Contentions. ....................................5

            2.    The *Seagate* Court Made No Changes to a Trial Court's
                  Inherent Case Management Authority to Bifurcate
                  Trials. .........................................................................................7

            3.    If Anything, *Seagate* Demonstrates That Willfulness
                  *Can* Be Bifurcated from Infringement and Validity. .....................8

      B.    Regardless of Whether *Seagate* Applies Retroactively, Fairchild
            Is Not Entitled to a new trial on Willfulness Because No
            Reasonable Jury Could Conclude that Fairchild Did Not
            Willfully Infringe Power Integrations' Patents........................................9

            1.    The Evidence at Trial Showed Both an Objectively High
                  Likelihood that Fairchild Infringed the '075 Patent and
                  That the Risk Was So Obvious That Fairchild Should
                  Have Known It Infringed.............................................................11

            2.    The Evidence at Trial Shows Both an Objectively High
                  Likelihood that Fairchild Would Infringe the Circuit
                  Patents and That the Risk Was So Obvious that
                  Fairchild Should Have Known It Infringed the Patent. ...............13

      C.    No Seventh Amendment Violation Occurs by Trying
            Willfulness Separately from Validity or by Separating Validity
            and Infringement, Because There Is No Overlap in the Issues
            Considered By the Jury..........................................................................17

1.   Because Willfulness Under *Seagate* Depends on the Prelitigation Conduct of the Accused Infringer While Infringement/Validity Depend on the Accused Device, the Prior Art, and the Patent Claims, No Evidentiary Overlap Exists. ........................................................................ 17

2.   Bifurcating the Trial into Infringement and Validity Phases Did Not Violate the Seventh Amendment. ...................... 18

3.   There Is No Factual Basis for Finding a Seventh Amendment Violation. .................................................................. 22

IV.   CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Allied Chemical Corp. v. Daiflon, Inc.,*
    449 U.S. 33 (1980)............................................................................2

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
    239 F.3d 1343 (Fed. Cir. 2001)..................................................22

*Aptargroup, Inc. v. Owens-Illinois, Inc.,*
    2003 WL 21557632 (N.D. Ill. July 3. 2003)...............................7

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    2004 WL 896002 (D. Del. Mar. 10, 2004) ..................................7

*Blyden v. Mancusi,*
    186 F.3d 252 (2d Cir. 1999)................................................22, 23

*Corning Inc. v. SRU Biosystems, LLC,*
    223 F.R.D. 189 (D. Del. 2004) ....................................................7

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
    246 F.3d 1336 (Fed. Cir. 2001)...................................................4

*In re Bayside Prison Litig.,*
    157 Fed. Appx. 545 (3d Cir. 2005).............................................7

*In re Seagate,*
    497 F.3d 1369 (Fed. Cir. 2007).........................................*passim*

*Lafate v. Chase Manhattan Bank (USA),*
    123 F. Supp. 2d 773 (D. Del. 2000)......................................3, 10

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370 (1996)...........................................................18, 22

*Martin v. Heideman,*
    106 F.3d 1308 (6th Cir. 1997) ....................................................7

*Moore v. Vislosky,*
    240 Fed. Appx. 457 (3d Cir. 2007)...........................................20

*Princeton Biochems., Inc. v. Beckman Instruments, Inc.,*
    180 F.R.D. 254 (D.N.J. 1997).....................................................9

*Quantum Corp. v. Tandon Corp.,*
    940 F.2d 642 (Fed. Cir. 1991)..................................................7, 8

*Richardson v. Marsh,*
    481 U.S. 200 (1987)...................................................................19

*Shannon v. United States,*
    512 U.S. 573 (1994)..........................................................................................19

*Thorne v. Welk Investment, Inc.,*
    197 F.3d 1205 (8th Cir. 1999) ..........................................................................7

*Tristrata Tech., Inc. v. ICN Pharms., Inc.,*
    313 F. Supp. 2d 405 (D. Del. 2004)..................................................................3

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.,*
    308 F.3d 1167 (Fed. Cir. 2002)..........................................................................2

*W.L. Gore & Associate, Inc. v. Garlock, Inc.,*
    842 F.2d 1275 (Fed. Cir. 1988)..................................................................21, 22

*Watson v. S.E. Pa. Transport Authority,*
    207 F.3d 207 (3d Cir. 2000)..............................................................................3

*Williamson v. Consolidated Rail Corp.,*
    926 F.2d 1344 (3d Cir. 1991)............................................................................2

*Z4 Techs., Inc. v. Microsoft Corp.,*
    2007 WL 3407175 (Fed. Cir. Nov. 16, 2007) .............................................3, 19

## STATUTES AND OTHER AUTHORITIES

35 U.S.C. §§ 102, 103, 271 .....................................................................................17

35 U.S.C. § 112(6) ..................................................................................................20

Fed. R. Civ. P. 42(b) .................................................................................................7

Fed. R. Civ. P. 51(d)(1).............................................................................................20

Fed. R. Civ. P. 51(d)(2).............................................................................................20

Fed. R. Civ. P. 59(a) .................................................................................................2

Joseph Casino & Michael Kasdan, In re Seagate Technology: *Willfulness and
    Waiver, a Summary and a Proposal*, 2007 Patently-O Patent L.J. 1, 19 ...................8

Katherine P. Barecchia, In Re: Seagate. *How Claims and Defenses For Willful
    Infringement Have Changed*, 14 Intellectual Property, Sept. 25, 2007 ....................9

## I.    INTRODUCTION

Fairchild's motion for a new trial in light of *In re Seagate* should be denied because it is based on an erroneous interpretation of *Seagate*. The Federal Circuit's new willfulness standard focuses on whether the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." That objective analysis focuses on the *prelitigation* actions of the accused infringer and not on the later, litigation-induced arguments of trial counsel. Fairchild's motion for a new trial on willfulness is premised on its belief that the jury should be able to hear the "strengths" of Fairchild's invalidity and non-infringement case. But *Seagate* recognized that when, as here, the defendant's conduct *before* the lawsuit supports the charge of willful infringement, it is the defendant's *prelitigation* conduct that matters, and the defendant's proffered evidence with respect to invalidity and infringement developed in litigation is not relevant.

Moreover, no reasonable jury, even under the new *Seagate* standard of willfulness, could conclude that Fairchild was anything but a willful infringer. The evidence showed that Fairchild intentionally copied Power Integrations' patented inventions, failed to seek advice of counsel, had no basis to believe the claims were invalid, and in some cases did not even read the text or claims of the patent before deciding to copy Power Integrations' inventions. Fairchild's conduct sets the high water mark for an objectively high likelihood of infringing a valid patent. Nor was Fairchild prejudiced due to its choice of proofs at trial because it had every incentive to produce evidence to counter Power Integration's copying evidence under the pre-*Seagate* standard, but it had no relevant evidence to offer. No new trial on willfulness is required.

Fairchild's argument for a new trial on validity and infringement is likewise flawed. Under *Seagate*, any *litigation inspired* defenses (non-infringement, invalidity, or otherwise) are irrelevant to an objective determination of the accused infringer's actions at the time its infringing activities began. Thus, there is no evidentiary overlap between willfulness and validity in the present case, and there is no reason to grant a new trial with respect to validity or infringement due to the bifurcation of willfulness from the validity issues. Furthermore,

Fairchild's contention that *Seagate* altered the inherent authority of trial courts to bifurcate complex patent trials lacks any legal support, and is in fact squarely contradicted by *Seagate*'s reiteration of prior precedent allowing for precisely that sort of bifurcation.

Fairchild's request for a new trial in light of an alleged Seventh Amendment violation should similarly be denied as baseless, because neither jury reconsidered any factual decision made by the other. The Court construed the terms of the patent claims only once, and it instructed both juries using the same constructions. Because juries are presumed to follow the instructions they are given, both juries are presumed to have applied the same construction for the claim terms, and Fairchild presents no legal or factual basis to overcome that presumption. Speculation does not suffice. Moreover, to the extent Fairchild argues that expert testimony misled the juries, such an argument really boils down to an assertion by Fairchild that the Court did not sufficiently instruct the juries with respect to its claim constructions. However, Fairchild waived that argument by failing to object to the jury instructions when given. Finally, the facts and evidence adduced at trial demonstrate that the testimony of Power Integrations' expert was entirely consistent with respect to the required elements for both infringement and validity. Fairchild's request for a new trial on the basis of alleged prejudice should be denied.

## II.    LEGAL STANDARDS

### A.    New Trial

Under the Federal Rules of Civil Procedure, a new trial may be granted following a jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial is committed to the discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). However, a court should only grant a motion for a new trial when allowing the jury's verdict to stand would result in a miscarriage of justice. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).[1] "A court should not disturb a verdict unless the verdict, 'on the

---

[1]    The applicable legal standard for determining whether to grant a new trial is controlled by Third Circuit law. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1182 (Fed. Cir. 2002) ("The denial of a motion for a new trial is a procedural issue not

record, cries out to be overturned or shocks [the court's] conscience.'" *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 408 (D. Del. 2004) (quoting *Williamson*, 926 F.2d at 1353) (brackets in original).

Where the complained of error is an allegedly erroneous jury instruction, if the error is harmless—one that does not prejudice the complaining party—the verdict should be affirmed. *Watson v. S.E. Pa. Transp. Auth.*, 207 F.3d 207, 221-22 (3d Cir. 2000).[2] In determining whether to grant a new trial on the basis of an allegedly erroneous jury instruction, the court must first determine there has been an error, and then determine "whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice." *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 785 (D. Del. 2000).

## B.    Willfulness Under *Seagate*

In *In re Seagate*, the Federal Circuit set forth a new test to be applied in determining whether an accused infringer's actions support a finding of willful infringement. *See* 497 F.3d 1369, 1370-72 (Fed. Cir. 2007). Under the *Seagate* standard, the patentee must first prove "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* The state of mind of the accused infringer is not relevant to this objective inquiry. *Id.* But, as is clear in the statement of the standard, the objective inquiry is focused on the circumstances under which the infringer "acted" – in other words, what happened at the time the infringer decided to engage in the conduct that constituted infringement.

After presenting sufficient evidence to show an objectively high risk of infringement, the patentee must then prove "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* Taken in context, the parenthetical means only that the facts and

---

[2] unique to patent law which this court reviews under the law of the appropriate regional circuit-in this case, the United States Court of Appeals for the Third Circuit.").
The legal standard relating to new trial on the basis of allegedly erroneous jury instructions is controlled by the circuit of origin. *See, e.g., Z4 Techs., Inc. v. Microsoft Corp.*, 2007 WL 3407175 (Fed. Cir. Nov. 16, 2007) (looking to Fifth Circuit law to determine whether new trial was warranted for erroneous jury instruction).

circumstances to which the objective test are to be applied—i.e. the circumstances surrounding the infringer's actions at the time the infringement started—will be developed and proven up as part of the infringement litigation.[3]

The Federal Circuit did not further explain how trial courts should apply the new *Seagate* standard. *Id.* However, the majority agreed that, while an exhaustive list of factors was beyond the scope of the *Seagate* opinion, Judge Newman's concurrence provides some guidance. *Id.* at 1371 n.5. Judge Newman indicated that "the standards of behavior by which a possible infringer evaluates adverse patents should be the standards of fair commerce, including reasonableness of the actions taken in the particular circumstances." *Id.* at 1385 (Newman, J., concurring). Furthermore, Judge Newman emphasized that, even under the new arguably more stringent standard, a court should not "tolerate the intentional disregard or destruction of the value of the property of another." *Id.*

The *Seagate* court recognized that in ordinary circumstances proof of willfulness focuses "on the infringer's pre-litigation conduct." *Id.* at 1374. The emphasis on pre-litigation conduct comports with the Federal Circuit's acknowledgement of the differences between trial counsel's retrospective arguments and opinion counsel's prospective judgment: "Defenses prepared [by litigation counsel] for a trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as 'due care' before undertaking any potentially infringing activity." *Id.* at 1373 (quoting *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001)) (brackets in original)). This confirms that the relevant inquiry is on conduct at the time the infringement began and not the "strength" of defenses presented later in litigation.

---

[3] It is important to note that the parenthetical says nothing about the record developed "at trial" but rather refers to the factual record developed during "the proceeding", meaning the entire case.

## III.    ARGUMENT

### A.    Regardless of Whether *Seagate* Applies Retroactively, This Court Should Not Grant a New Trial on Validity or Infringement Because *Seagate* Has No Effect on Bifurcation.

Fairchild argues that this Court should grant a new trial on validity and infringement based on *Seagate* because "the objective strength of the defendant's non-infringement and invalidity case is the basis for evaluating objective recklessness." [D.I. 615 at 12.] Fairchild's argument, however, turns the *Seagate* decision on its head. The *Seagate* court explicitly noted that it is ordinarily the *prelitigation* conduct of the accused infringer that matters. When, as here, the charge of willful infringement was fully supported by Fairchild's prelitigation conduct, the "strength" of the defendant's "non-infringement and invalidity case" at trial is simply not relevant. No new trial on infringement or validity is warranted here for three independent reasons: (1) the focus of *Seagate*'s willfulness inquiry is on the prelitigation conduct of the accused infringer and not the merits of the invalidity/non-infringement case presented at trial; (2) *Seagate* says nothing about the discretion of trial courts to bifurcate trials; and (3) *Seagate*, if standing for anything with respect to bifurcation, confirms that willfulness *can* be bifurcated from the infringement and validity portions of the trial.

### 1.    *Seagate* Requires That Willfulness Evidence Focus on the Prelitigation Conduct of the Accused Infringer and Not on the Strengths of the Later-Developed Invalidity/Non-Infringement Contentions.

Fairchild argues that the "strength of defendant's non-infringement and invalidity case" as presented at trial is one of the factors a jury must consider in determining "objective recklessness." [D.I. 615 at 12.] This is wrong for several reasons. First, the *Seagate* court explained that "in ordinary circumstances willfulness will depend on an infringer's *prelitigation conduct*." *Id.* at 1374 (emphasis added).[4] The "strengths" of the contentions eventually mustered by the accused infringer after being sued and spending considerable time and resources

---

[4]    This case presents the "ordinary circumstances" where the infringer had knowledge of the patent long before the suit was filed, rather than the special case also discussed in *Seagate* where the willfulness claim depends entirely on allegations of post-lawsuit "continued" infringement.

evaluating the prior art are irrelevant to an objective determination of its prelitigation conduct. Second, "objective recklessness" is determined at the time the accused infringer learns of the patent and chooses to "act" to infringe. The purpose of the new standard is to ignore the subjective state of mind of the infringer and to focus on whether the defendant acted despite an objectively high likelihood that its actions constituted infringement. *Id.* at 1371. The "objective recklessness" standard has nothing to do with the "strength" of the accused infringer's contentions developed years later in litigation. Fairchild argues, inexplicably, that it must be allowed to present its entire invalidity case, as developed throughout the course of the litigation, as a defense to willful infringement. [D.I. 615 at 12.] Fairchild's argument suggests that an accused infringer with knowledge of a patent, who recklessly disregards those patent rights by intentionally copying the patented invention without any reasoned basis or legal advice of invalidity *at the time of the copying*, can successfully avoid a willfulness determination if its *litigation* counsel later develops a non-frivolous defense during the course of litigation. This is plainly absurd and flies in the face of the Federal Circuit's insistence that the "objective" determination be made focusing on the prelitigation conduct of the accused infringer.

In addition to its trial presentation, Fairchild apparently believes that prior art searches conducted for the purpose of litigation and opinion letters of counsel received after the suit was filed should all factor into the willfulness determination. [*See id.* ("[T]he jury will have to consider the strength of Fairchild's non-infringement and invalidity cases on the merits offered.")] But the Federal Circuit has explicitly rejected this contention. *See Seagate*, 497 F.3d at 1371, 1374 (holding that the inquiry is objective and based on "prelitigation conduct"). In fact, the court recognized the different roles of opinion counsel and litigation counsel, emphasizing that each serves a different function, and explained that, while consulting the former may demonstrate "due care," based on an objective assessment, the latter is hired to act as an advocate to attempt to prove that there is no liability. *See id.* at 1373. Moreover, in keeping with its analysis that prelitigation conduct is what matters for willfulness, the court noted that opinion letters received after litigation began are of only "marginal value." *Id.* at 1374. Because

extensive evidence of Fairchild's *prelitigation* conduct fully supported Power Integrations

allegation of willful infringement, and Fairchild had no evidence to rebut the evidence that it

copied Power Integrations patented products, there is no need to relitigate infringement and

validity.

### 2. The *Seagate* Court Made No Changes to a Trial Court's Inherent Case Management Authority to Bifurcate Trials.

"In furtherance of convenience or to avoid prejudice, or when separate trials will be

conducive to expedition and economy," a district judge may bifurcate a trial. Fed. R. Civ. P.

42(b). It is axiomatic that bifurcation of trials is a basic legal precept. *Martin v. Heideman*, 106

F.3d 1308, 1329 (6th Cir. 1997). As such, bifurcation rests within the sound discretion of the

district judge. *See, e.g., In re Bayside Prison Litig.*, 157 Fed. Appx. 545, 547 (3d Cir. 2005);

*Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213-14 (8th Cir. 1999) (finding no error in bifurcation

of punitive damages from liability phase of trial); *Martin*, 106 F.3d at 1329 (finding no error in

bifurcating causation/liability from damages even though such a split was unusual and

emphasizing that the trial court's discretion is on "*any* separate issue" (emphasis added))).

The Federal Circuit has approved the bifurcation of willfulness from liability in patent

cases. *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991). Moreover, in

*Seagate*, the Federal Circuit cited *Quantum* and noted that bifurcating willfulness would be

warranted "in appropriate cases." *Seagate*, 497 F.3d at 1369. Tellingly, the court did not

overrule *Quantum* despite its clear pronouncement that it was overruling *Underwater Devices*.

*See id.* If the Federal Circuit had intended its decision in *Seagate* to preclude the bifurcation of

willfulness from liability in all cases, it would have said so, rather than reiterating the usefulness

of such a procedure.

Bifurcation of willfulness is often used in patent cases. *See, e.g., Corning Inc. v. SRU*

*Biosystems, LLC*, 223 F.R.D. 189, 191(D. Del. 2004); *Arthrocare Corp. v. Smith & Nephew,*

*Inc.*, 2004 WL 896002, at *1 (D. Del. Mar. 10, 2004) (discussing the court's previous order to

bifurcate willfulness/damages from infringement/validity); *Aptargroup, Inc. v. Owens-Illinois,*

*Inc.*, 2003 WL 21557632, at *1 (N.D. Ill. July 3. 2003). Indeed, in the *Quantum* case cited in *Seagate* although the Federal Circuit did not order bifurcation, it encouraged trial courts to consider the tool of bifurcation. *Quantum Corp.*, 940 F.2d at 643-44.

The decision of whether to bifurcate is within the sound discretion of the trial court, the Federal Circuit has explicitly endorsed bifurcation of willfulness in the past, and multiple courts in numerous cases have bifurcated willfulness from liability. The Federal Circuit would not have ushered in the dramatic shift in the law regarding bifurcation Fairchild posits without a single word on the issue in *Seagate*. This Court recognized that in its letter to the parties on September 6, 2007: "This Court does not read *Seagate* to effectuate a change in the trial court's discretion to manage a trial utilizing such tools as bifurcation." [D.I. 517.] *Seagate* did not alter the inherent authority of a trial court to bifurcate willfulness from invalidity/infringement.

### 3.   If Anything, *Seagate* Demonstrates That Willfulness *Can* Be Bifurcated from Infringement and Validity.

The proofs required for willfulness are distinct from the proofs required to show invalidity or non-infringement. *See, e.g., Princeton Biochems., Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258-60 (D.N.J. 1997) (bifurcating willfulness from liability because no significant evidentiary overlap exists). The legal community has read *Seagate* in the same way, predicting that under the *Seagate* standard, bifurcation of willfulness from infringement will become even more common. *See* Katherine P. Barecchia, In re: Seagate*: How Claims and Defenses For Willful Infringement Have Changed*, 14 Intellectual Property, Sept. 25, 2007 [Ex. 1][5] ("Because an analysis of pre-litigation conduct involves facts that do not necessarily relate to the underlying claim of infringement, it is likely that courts will increasingly order bifurcation to avoid jury confusion."). *See also* Joseph Casino & Michael Kasdan, In re Seagate Technology*: Willfulness and Waiver, a Summary and a Proposal*, 2007 Patently-O Patent L.J. 1, 19 [Ex. 2] ("[B]ifurcation of willfulness from the liability phase makes especially good sense, because there is little, if any, overlap between the evidence relevant to the issues of liability and willfulness.").

---

[5]   All exhibit citations refer to the accompanying Declaration of William J. Marsden, Jr. unless otherwise noted.

*Seagate* did not eliminate trial courts' sound discretion to manage their cases by bifurcating willfulness from liability. After *Seagate*, there is even less likelihood of overlap in the issues presented to the jury because "willful infringement in the main must find its basis in prelitigation conduct," and positions developed after the decision to engage in acts that infringe are not relevant. *Seagate*, 497 F.3d at 1374.

Nothing in the Federal Circuit's *Seagate* decision supports Fairchild's request for a new trial on liability and that request should be denied.

**B.    Regardless of Whether *Seagate* Applies Retroactively, Fairchild Is Not Entitled to a new trial on Willfulness Because No Reasonable Jury Could Conclude that Fairchild Did Not Willfully Infringe Power Integrations' Patents.**

Fairchild makes the erroneous argument that this Court should order a new trial on willfulness because "the jury was not instructed to consider, in connection with willfulness, the objective strength of Fairchild's non-infringement case." [D.I. 615 at 8.] Fairchild then states that "this [the objective strength of Fairchild's non-infringement case] is what it [the jury] must consider, *first and foremost*." [*Id.* (emphasis added).] The absurdity of Fairchild's argument is apparent from Fairchild's own statement, just two sentences earlier, where it highlights that the first portion of the willfulness inquiry is "**_objective_** recklessness." [*Id.* (emphasis in original).] In other words, Fairchild dutifully recites the test set forth by the Federal Circuit (objective pre-suit recklessness) and then argues the opposite, demanding a new trial based on its subjective post-suit litigation defenses. Fairchild's argument turns *Seagate* on its head. In fact, the *last* thing a jury should consider in connection with its determination of objective recklessness is the "strength" of Fairchild's non-infringement case first developed and presented by its litigation counsel and paid experts. The die is cast at the time the accused infringer learns of the existence of the patent and begins infringing despite this knowledge. Again, the focus under *Seagate* is on how Fairchild acted *before* the suit was filed – what actions it took once it became aware of the patent, and the objective recklessness of those actions.[6]

---

[6]    Fairchild makes the additional argument that, because Power Integrations did not mark its products, Power Integrations is precluded from presenting any pre-suit evidence to prove

Furthermore, Fairchild has not made any showing that the alleged error in the jury instruction was "so prejudicial that denial of a new trail would be inconsistent with substantial justice." *See Lafate*, 123 F. Supp. 2d at 785. In fact, it is telling that in its opening brief, Fairchild's only specific claim of prejudice relates to its presentation of "twelve post-filing opinions of counsel" that, in light of *Seagate*, "are of 'marginal value.'"[7] [D.I. 615 at 9.] Any alleged prejudice to Fairchild based on its introduction of twelve post-filing opinions flows precisely from the fact that they were **post-filing** opinions that offered no explanation for Fairchild's reckless pre-suit conduct. Power Integrations offered overwhelming proof that Fairchild intentionally copied Power Integrations' patented products. Fairchild had every incentive, even under the old "good faith basis" test, to present any evidence in its possession to rebut the evidence of copying. That Fairchild was only able to attempt to rebut this evidence with post-filing opinions of marginal value is a predicament Fairchild created for itself with its reckless pre-suit conduct. Tellingly, Fairchild makes no argument now that its strategy with respect to the copying allegation would have been any different under *Seagate*. Therefore, any alleged error in the jury instructions was not so prejudicial as to warrant a new trial because no reasonable jury presented with the overwhelming evidence of copying could have concluded that Fairchild's infringement was not willful.

---

"objective recklessness." [*See* D.I. 615 at 10 n.2.] Fairchild must have realized the weakness of its argument when it chose to present it only in a footnote. The *Seagate* willfulness inquiry is an objective standard that looks to the prelitigation actions of the accused infringer from the time it became aware of the patent. While marking provides constructive notice to the accused infringer for the purposes of collecting damages, it is not a prerequisite, or even relevant, to a finding of willfulness. All *Seagate* requires is evidence that the accused infringer had knowledge of the patent. Fairchild's reading of *Seagate* would mean that absent marking, no pre-suit willful infringement could ever be found. This is plainly incorrect. Fairchild also argues, in the same footnote, that Power Integrations' failure to move for a preliminary injunction should preclude it from asserting willfulness. *Seagate's* discussion of the role of motions for preliminary injunctions is in the context of an allegation of willful infringement based on an infringer's reckless *post-filing* conduct, not an allegation based on pre-suit copying as was the case here.

[7] Fairchild's argument that it was also prejudiced by not being able to present the whole of its invalidity case is also an incorrect interpretation of *Seagate*. *See supra* Part III(A).

1.  **The Evidence at Trial Showed Both an Objectively High Likelihood that Fairchild Infringed the '075 Patent and That the Risk Was So Obvious That Fairchild Should Have Known It Infringed.**

Because the focus of *Seagate* is on the prelitigation conduct of the accused infringer, the ship of willful infringement sets sail at the time the accused infringer learns of the patent. Nothing done later will significantly alter a party's liability for willful infringement if its conduct after learning of the patent was objectively reckless. *See Seagate*, 497 F.3d at 1374 (noting opinions of counsel received after the filing of litigation are of marginal value).

a.  **An Objectively High Likelihood of Infringement Existed with Respect to the '075 Patent.**

Under the first prong of the *Seagate* test, no reasonable jury could have conclude that there was not an objectively high likelihood that Fairchild's actions constituted infringement of a valid patent. *See* 497 F.3d at 1371. The facts presented to the jury established that: (1) Fairchild's engineers knew of and were in possession of the '075 patent as they were creating the accused devices [D.I. 417 (Trial Tr. 10/3/06) at 546:1-4, 550:20-551:9, 551:13-21, 554:16-20]; (2) Fairchild reverse engineered the Power Integrations' chips embodying the '075 patent to determine how they worked, including the specific limitation of "grounding" the P-Top layer [*id.* at 543:24-544:7, 551:22-552:12]; (3) after determining how Power Integrations' chips worked, Fairchild's engineers produced an internal memorandum setting forth three potential options for dealing with the '075 patent—(a) design around it by leaving the P-Top layer of their device floating as opposed to grounding it as disclosed in the patent; (b) abandon the effort to make a "one-chip" product entirely; or (c) seek a license agreement from Power Integrations—an implicit acknowledgment of the validity of the patent and potential for infringement [D.I. 417 at 567:20-568:23]; (4) after Fairchild's design around failed to produce a viable high-voltage device, Fairchild decided to just adopt the structure of Power Integrations' chips, which were covered by the '075 patent [*see* PX-275 at FCS0189651-53 (showing failure of floating P-Top layer and benefit of grounding)]; (5) at no time either before or after the decision to copy Power Integrations' invention did Fairchild meet with an attorney or seek an opinion of counsel [D.I.

11

417 at 573:6-11]; (6) Fairchild's engineers had no legal training, only briefly looked at the patent, allegedly believed that it related to DMOS,[8] and erroneously assumed it did not relate to their product [D.I. 417 at 566:8-567:1]; and (7) Fairchild produced no evidence that anyone at Fairchild considered prior art or validity issues at the time the '075 patent was reviewed. In fact, it is unclear what other evidence Fairchild could have adduced on the issue even if it had been aware of the *Seagate* standard.[9]

While the Federal Circuit did not set forth the elements a trial court should look to in determining whether an "objectively high likelihood" of infringement existed, this case amply demonstrates the high water mark for such conduct. Where a company has chosen to copy their competitor's patented design after knowingly failing to design around the patent (eliminating a non-infringement argument, since the decision has been made to copy all the literal limitations of the design), and does so without consulting an attorney, performing an in-depth analysis of the patent claims, or investigating prior art at all, there clearly exists an objectively high likelihood that it would be infringing a valid patent. No reasonable jury could conclude otherwise. If these circumstances do not demonstrate an objectively high risk of infringing a valid patent, it is hard to imagine circumstances that do.

---

[8]  Despite Mr. Jeon's deposition testimony that he believed the patent related to DMOS, and therefore Fairchild would not be infringing the '075 patent, Fairchild produced no evidence to corroborate that he held such a belief at the relevant time, despite being fully incentivized to do so even under the pre-*Seagate* willfulness standard. Fairchild failed to produce a privilege log which would support any meetings Mr. Jeon had with an attorney, nor any documents to corroborate a contention that the engineers determined the patent to be invalid or to document a belief that Fairchild's own work was non-infringing. Moreover, this Court expressly determined that the DMOS issue was completely unrelated to infringement. Thus, even if Fairchild could prove that it thought the patent related to DMOS at the time it chose to copy Power Integrations invention, such a fact would have little bearing on what a reasonable corporation would have done in light of the circumstances at the time.

[9]  Indeed Fairchild's opening brief on this motion does not even attempt to argue that it was prejudiced by not having been able to fully and successfully mount a defense. Fairchild only argues that it was allegedly prejudiced by not being able to present to the jury the "strengths" of its non-infringement and invalidity cases. However, under *Seagate*, such evidence would be irrelevant to the willfulness inquiry. *See supra* Part III(A).

  **b.** **Given Fairchild's Copying of Power Integrations' Chips and Failure to Involve Legal Personnel, Fairchild Should Have Known There Was a High Likelihood of Infringing the '075 Patent.**

The Federal Circuit has not established an exhaustive list of elements to be considered in this inquiry. *Seagate,* 497 F.3d at 1371. However, the court did provide some initial guidance by stating a trial court should at least consider the "standards of commerce." *Id.* at 1371 n.5, 1385 (Newman, J., concurring). Here, Fairchild's actions, as described in the evidence presented above, failed to comport with the "standards of commerce." Fairchild violated the standards of commerce by intentionally copying its competitor's patented invention and failing to perform even the most basic investigation as to whether the patent covering the copied design was invalid. The risk of infringing the '075 patent was "so obvious that it should have been known to [Fairchild]."

Moreover, Fairchild's intentional copying of Power Integrations' patented invention also violates Judge Newman's warning that "intentional disregard . . . of the property of another" should not be tolerated. *See id.* at 1385 (Newman, J., concurring). Fairchild had knowledge of the patent, had no reasonable belief that its actions were not infringing or that the patent was invalid—indeed, its one attempted work-around failed—and yet it did not seek a license from Power Integrations. In behaving this way, Fairchild intentionally disregarded Power Integrations' intellectual property, and Power Integrations has proved by clear and convincing evidence that Fairchild should have known of the objectively high risk of infringement. No reasonable jury could conclude that Fairchild did not willfully infringe the '075 patent under the *Seagate* standard.

  **2.** **The Evidence at Trial Shows Both an Objectively High Likelihood that Fairchild Would Infringe the Circuit Patents and That the Risk Was So Obvious that Fairchild Should Have Known It Infringed the Patent.**

The evidence of willfulness relating to the circuit patents is no less stark. Even under the *Seagate* standard, no reasonable jury could conclude anything but that Fairchild willfully infringed.

a.     **An Objectively High Likelihood of Infringement Existed with Respect to the Circuit Patents.**

Under the first prong of the *Seagate* test, no reasonable jury could conclude that there was not an objectively high likelihood that Fairchild's actions constituted infringement of a valid patent. *See* 497 F.3d at 1371. The facts presented to the jury established: (1) Fairchild's engineers knew of the circuit patents (and Mr. Jang, the lead designer, in particular, was aware of the '876) before even designing the infringing parts, and that this knowledge came as part of a systematic review of Power Integrations' technology and products [D.I. 417 (Trial Tr. 10/3/06) at 585:16-586:5, 590:24-591:15; D.I. 418 (Trial Tr. 10/4/06) 730:7-732:3]; (2) Fairchild reverse engineered Power Integrations' TNY264 chip, which incorporated the digital frequency jitter invention of the '876, and analyzed Power Integrations' TopSwitch parts, which included the alternative version of frequency jitter claimed in the '851 and the patented soft-start circuit described in the '851 and '366 patents [D.I. 417 at 586:6-589:22]; (3) Fairchild's engineers held a "seminar" about the Power Integrations chips that practiced the '876 patent [*id.* at 588:17-589:10]; (4) Mr. Jang never read the claims or specification of the '876 patent;[10] instead he looked only at the figures to allegedly determine that Fairchild's proposed design was different[11] [*id.* at 592:19-594:11]; (5) Fairchild never conducted any validity analysis of the patents (other than the gratuitous and conclusory claim made that Fairchild believed "soft start" features were "old"); (6) No one at Fairchild consulted with an attorney or sought an opinion of counsel [D.I. 417 at 594:12-595:5]; (7) Fairchild's marketing department determined that the frequency jitter

---

[10] Fairchild made no allegations, with regard to the '366 and '851 patents, of any analysis of non-infringement in the relevant time-frame and, indeed, raised no argument of non-infringement of the '851 patent at all even during trial.

[11] Mr. Jang decided, based on the diagrams, that the patent showed a current based approach and because Fairchild's chips were voltage based he concluded Fairchild would not infringe. D.I. 417 (Trial Tr. 10/3/06) at 591:22-592:8; 592:19-593:19. Despite his poor English skills and knowledge that he was about to adopt a design nearly identical to that of his competitor, Mr. Jang admitted he did not have the patent translated into Korean. *Id.* at 591:22-592:8; 593:11-19. Had he read the patent specifications or claims, however, it would have been obvious that the patent did in fact describe and claim voltage based devices. *See, e.g.,* PX-1 at PIF00327 ("Implementations of the invention include one or more of the following. Where the primary *voltage* is V . . . ." (emphasis added)), PIF00331 ("A method for generating a switching frequency in a power conversion system comprising generating a primary *voltage* . . . ." (emphasis added)).

feature was required by its customers, thus providing the incentive to copy it [*id.* at 583:2-19];
and (8) Fairchild produced no evidence that Mr. Jang, or anyone at Fairchild, relied upon any
prior art analysis, let alone was aware of the Martin patent, the sole reference presented by
Fairchild at trial.[12]

Again, no set of elements has yet been developed for determining whether an
"objectively high likelihood" of infringement exists. However, common sense suggests that the
list includes how the infringer became aware of the patent, the competitiveness of the industry,
whether an entity copied its competitor's design knowing it to be patented, the complexity of the
technology, and the quality of investigation performed by the accused infringer to determine
either invalidity of the patent or non-infringement of the proposed device. The inquiry does not
require that the accused infringer seek out opinion counsel, but given the totality of the
circumstances, the question is whether it would have been objectively prudent to do so. Here,
Fairchild chose to copy its competitor's patented design (eliminating any viable chance of a non-
infringement argument) without consulting an attorney or performing an analysis of the patent
claims or their validity. To suggest that a cursory review of the diagrams of a patent—without
any attempt to read the text or the claims—is an objectively sufficient basis to conclude there is
no infringement is simply absurd. To further suggest that objective recklessness can be avoided
by disregarding a patent on the sole basis of an engineer's undocumented and generalized belief
that the subject of a patent was "old" is likewise absurd in light of the presumption of validity
and, if accepted as the law, would render the doctrine of willful infringement a complete nullity
after *Seagate*.

Taken as a whole, in view of the facts and circumstances surrounding Fairchild's
knowledge of the Power Integrations' circuit patents and Fairchild's actions that led to

---

[12]  It is difficult to see how Fairchild's validity case on the '876 patent presented at trial, based
solely on the Martin patent, could have had any effect at all on the objective recklessness of
Fairchild and Mr. Jang when they decided to infringe, given that they knew nothing about
Martin at the time. Nor is there any evidence that Fairchild's engineers were aware of any of
the other prior art relied upon by Fairchild and Dr. Horowitz at trial when finalizing the
design for the infringing products. For this further reason there was no possible prejudice to
Fairchild from the bifurcation of validity from willfulness.

infringement, there was an objectively high likelihood at the time that Fairchild would be infringing a valid patent. No reasonable jury could conclude otherwise.

>    **b.    Given Fairchild's Copying of Power Integrations' Chips, Fairchild Should Have Known There Was a High Likelihood of Infringing the Circuit Patents.**

Additionally, Power Integrations has proven, through voluminous evidence, that Fairchild acted recklessly under *Seagate*'s second prong with respect to the circuit patents, and the risk of infringing the circuit patents was "so obvious that it should have been known." There can be no better evidence that infringement would be "so obvious" than being in possession of a competitor's patent and conducting seminars on the technology before even beginning to develop your own competing chip. All the more indicative of infringement is the intentional copying of a competitor's patented design as Fairchild did here –including adopting the particular linking of the two patented features using a single signal to drive both of them[13]—without any reason to believe at the time that the patent was invalid.

Moreover, the non-infringement "position" of Mr. Jang is precisely the type of argument Judge Newman indicated would be insufficient. *Seagate*, 497 F.3d at 1385 (Newman, J., concurring) (arguing that "standards of fair commerce, including reasonableness of the actions taken in the particular circumstances" should govern a willfulness inquiry). The standards of fair commerce would, at the very least, include a review of the patent's claims. Mere review of the "diagrams" is insufficient, especially given the particular circumstance where a competitor has reverse engineered a product and is fully aware that the features it intends to co-opt are covered by existing patents. Power Integrations has proved by clear and convincing evidence that Fairchild should have known of the objectively high risk of infringement—indeed, with regard to the '851 patent, Fairchild could not even muster a non-infringement contention at trial. [D.I. 419 (Trial Tr. 10/5/06) at 1102:4-1103:1.] As was the case for the '075 patent, the intentional copying of Power Integrations' patented circuit inventions by engineers who barely considered infringement and performed no validity analysis at all is the precise "intentional disregard . . . of

---

[13]    *See* D.I. 417 (Trial Tr. 10/3/06) at 480:17-481:7, 492:15-493:16.

the property of another" that Judge Newman warned would not be tolerated. *See Seagate*, 497 F.3d at 1385). No reasonable jury could conclude that Fairchild did not also willfully infringe the circuit patents.

### C. No Seventh Amendment Violation Occurs by Trying Willfulness Separately from Validity or by Separating Validity and Infringement, Because There Is No Overlap in the Issues Considered By the Jury.

Fairchild makes two independent new trial arguments based on the Seventh Amendment. The first is that if the Court orders a new trial for willfulness, it must also order a new trial for infringement and validity because there allegedly was an impermissible overlap in issues decided by the two different juries. [D.I. 615 at 11-12.] Fairchild also argues that the bifurcation of the trial into infringement and validity phases violated the Seventh Amendment because two different juries allegedly came to two different interpretations of the same claim terms. [*See id.* at 15 (arguing for retrial because "the juries had to determine and apply the scope of a key disputed means-plus-function element"), 21-22 (arguing that Power Integrations' experts testified to different meanings of claimed terms in the '876 patent).] Neither argument is availing.

### 1. Because Willfulness Under *Seagate* Depends on the Prelitigation Conduct of the Accused Infringer While Infringement/Validity Depend on the Accused Device, the Prior Art, and the Patent Claims, No Evidentiary Overlap Exists.

Fairchild's argument that the Seventh Amendment requires trying willfulness with infringement is premised on an erroneous reading of *Seagate*. No overlap exists in this case because the evidence required to show willfulness was different from the evidence required to show Fairchild's liability. The willfulness determination focused on prelitigation *actions* taken by the accused infringer and an objective analysis of the risk of infringement *at the time*, as well as an analysis of whether the accused infringer was aware of that objective risk. *Seagate*, 497 F.3d at 1374. The infringement/validity inquiry, on the other hand, focuses on a comparison of the *patent claims* with, respectively, the *prior art* and the *accused product*. 35 U.S.C. §§ 102, 103, 271. There is simply no overlap in the issues the jury must consider with respect to each.

Fairchild's argument that the objective standard in *Seagate* looks to the "strength of [its] non-infringement and invalidity cases on the merits" is incorrect. The objective standard, as the Federal Circuit explained in its opinion, focuses on the accused infringer's actions at the time it started infringing and *not* on the merits of later-developed trial strategies prepared by litigation counsel. *Seagate*, 497 F.3d at 1374. For this reason alone, Fairchild's Seventh Amendment challenge to the separation of willfulness and liability should be rejected. However, as explained more fully in Part III(A) *supra*, willfulness has historically been separable from validity and infringement, and *Seagate* did not alter that law.

2. **Bifurcating the Trial into Infringement and Validity Phases Did Not Violate the Seventh Amendment.**

Fairchild's argument with respect to the Seventh Amendment violation allegedly caused by the bifurcating of validity and infringement boils down to speculation that the two juries applied different claim constructions when reaching their decisions. [*See* D.I. 615 at 15 ("Infringement and validity must be retried . . . because in both trials, the juries had to determine and apply the scope of key disputed means-plus-function element.").] But juries do not determine the scope of claim terms; the Court does. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("We hold that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court."). The Court is responsible for providing the constructions to the jury in the form of jury instructions, which the Court did here. *See id.* Therefore, Fairchild's argument requires the Court to conclude that either: (a) the jury ignored the instructions or (b) the jury was misled by the experts. [*See* D.I. 615 at 18 ("[J]urors undoubtedly looked for guidance to the testimony of the respective experts and to attorney argument.").] Both of these arguments are incorrect both as a matter of law and in light of the facts in this case.

      a.      **A Jury Is Presumed to Follow the Instructions the Court Gives It, and Because Both Juries Were Given the Same Claim Constructions, No Seventh Amendment Violation Occurred.**

A jury is presumed to follow the instructions it is given. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). In both trials, the Court provided the juries with the same claim constructions. Moreover, the Court instructed the juries that the constructions were matters of law and that the Court was the sole arbiter of the terms which each jury was required to apply. [D.I. 420 (Trial Tr. 10/6/06) at 1652:17-1653:3; D.I. 559 (Trial Tr. 9/21/07) at 1567:19-1568:3.] The presumption is that both juries followed this Court's instructions and applied the same claim construction in each phase of the trial. *Z4 Techs. v. Microsoft Corp.*, 2007 WL 3407175, at *14 (Fed. Cir. Nov. 16, 2007) (quoting the Supreme Court in *Shannon v. United States*, 512 U.S. 573, 585 (1994), where the Court declined "to depart from the almost invariable assumption of the law that jurors follow their instructions").

Fairchild has presented no case nor any evidence to overcome this presumption. As such, Fairchild's argument that the Court should find that each jury applied a different claim construction lacks merit. Therefore, no Seventh Amendment violation exists here because both juries presumptively applied the same claim constructions as instructed by this Court.

      b.      **Fairchild's Argument that the Experts Influenced Each Jury's Application of the Claim Constructions Is Really an Untimely Attack on the Specificity of the Jury Instructions Which Should Be Rejected by This Court.**

Fairchild next argues that the juries were allegedly misled by the experts: "Trying to *construe* this highly technical language and drawings without any other illumination from the Court, jurors undoubtedly looked for guidance to the testimony of the respective experts and to attorney argument." [D.I. 615 at 18 (emphasis added).] Essentially, Fairchild suggests that this Court did not sufficiently guide the jury with respect to the construction of the terms and that the lack of guidance opened the door for each jury to become confused by the experts' testimony or to come up with its own, differing "constructions." This argument fails for multiple reasons.

First, a party's failure to object to a jury instruction generally waives any error later alleged in that instruction.[14] Fed. R. Civ. P. 51(d)(1); *Moore v. Vislosky*, 240 Fed. Appx. 457, 471 (3d Cir. 2007). Fairchild is barred from raising this issue because Fairchild did not object to the specificity or clarity of the instructions when given. As such, Fairchild cannot now claim this Court improperly instructed the jury. If Fairchild believed that the jury was not being given precise enough instructions with respect to the construed claims of the patents, it had a duty to raise that objection prior to the jury's deliberation. Fairchild did not do so, and its high-level disagreement over the applicability of 35 U.S.C. § 112(6) in general to certain claim elements cannot be shoehorned into such an "implicit" objection. Nor did Fairchild ever assert that the construction of "frequency jittering" was insufficiently detailed for a jury to understand and apply. Fairchild cannot now argue prejudice due to an alleged error that it could have corrected at the time. Therefore, Fairchild is barred from raising this argument at this late stage.

Second, even if Fairchild could bring a challenge based on the alleged confusion caused by the experts' testimony, Fairchild's argument is in error, because it assumes that the jury was responsible for construing the claim terms. [*See* D.I. 615 at 18.] However, as noted above, juries do not "construe . . . highly technical language," the Court does. *See Markman*, 517 U.S. at 372. The juries here performed no construction of the terms. This Court instructed both juries using the same claim constructions and informed them that the constructions given to them were the only permissible constructions they could apply. [D.I. 420 (Trial Tr. 10/6/06) at 1652:17-1653:3; D.I. 559 (Trial Tr. 9/21/07) at 1567:19-1568:3.]

Third, Fairchild's complaint that the jurors impermissibly looked to the experts for guidance as to the proper claim constructions lacks any evidentiary support. The Court

---

[14] A court may still review an unobjected to jury instruction for "plain error." Fed. R. Civ. P. 51(d)(2). However, Fairchild makes no such argument here nor would one be availing. This Court instructed each jury that the Court was the ultimate arbiter of the claimed terms to be applied and that an expert's testimony was of no binding effect. *See* D.I. 420 (Trial Tr. 10/6/06) at 1644:12-22, 1652:17-1653:3; D.I. 559 (Trial Tr. 9/21/07) at 1564:15-19, 1567:19-1568:3.] Nor can Fairchild argue there was plain error in the instructions as to soft start circuit because the instruction identified the same corresponding structure asserted by Fairchild during claim construction.

specifically instructed the juries that they were to only use the claim construction that this Court provided them. [D.I. 420 (Trial Tr. 10/6/06) at 1652:17-1653:3; D.I. 559 (Trial Tr. 9/21/07) at 1567:19-1568:3.] The Court also instructed the jury as to the permissible weight to give an expert's testimony. [D.I. 420 (Trial Tr. 10/6/06) at 1644:12-22; D.I. 559 (Trial Tr. 9/21/07) at 1564:15-19.] As such, the instructions as a whole, which the jury is presumed to have followed, told both juries to confine their factual analysis to the application of the constructions provided by this Court and to nothing else, and Fairchild has no basis to argue that different claim constructions were applied by different juries.

> **c.    Fairchild's Cited Authority Demonstrates Why No Seventh Amendment Violation Occurs When a Single Construction Covers Both Phases of the Trial as Occurred Here.**

Fairchild relies on *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999), yet *Blyden* is inapplicable to the facts here. [*See* D.I. 615 at 14.] In *Blyden*, the first jury determined that certain "acts" constituted reprisals but did not specify which acts it had so designated. *Blyden*, 186 F.3d at 268-69. The second jury had to assign damages for the reprisals without being told which "acts" were reprisals. *Id.* Thus, a critical link was missing (i.e. no link between "acts" in the first jury and "acts" in the second jury), and there was a significant chance that the first jury could have found a subset of "acts" as reprisals but the second jury could have assigned damages based on a different "subset" of acts. Here, the situation is quite different. In the instant case, the Court provided both juries with a consistent definition of the "claims," whereas in *Blyden* each jury had to determine for its own which "acts" were relevant.[15] Therefore, the situation presented in *Blyden* is not present here, and *Blyden* is inapposite.

Fairchild next relies on *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275 (Fed. Cir. 1988). [D.I. 615 at 14-15.] However, *W.L. Gore* demonstrates why Fairchild is not entitled to a new trial here. In *W.L. Gore*, the Federal Circuit chastised the district court because the

---

[15]    Jury one determined that certain patent claims were infringed; jury two determined that these same patent claims were valid. These are two distinct applications of the claims to different things (the accused devices on the one hand and the prior art on the other). In both trials, the Court provided the juries with the same definitions for the claims.

*district court itself* applied different constructions of the same terms when deciding validity and infringement. 842 F.2d at 1279. The Federal Circuit warned that "it is axiomatic that the claims must be *construed* in the same way for [validity and] infringement." *Id.* (emphasis added). In *W.L. Gore*, the district court essentially performed two *Markman* constructions for the different trial phases. This Court did no such thing. Instead, abiding by both *Markman* and *W.L. Gore*, this Court construed the terms of the patents only once and then provided the same construction in both phases of the trial by giving the same instructions on the claim terms to both juries. This Court did not alter its construction (as occurred in *W.L. Gore*) or leave the construction up to the jury. As such, *W.L.* Gore supports *denying* Fairchild's motion, not granting it.[16]

Thus, there is no legal basis for Fairchild to assert a Seventh Amendment violation. Each jury is presumed to have followed the instructions it was given. The first jury compared those claims as construed by this Court to Fairchild's devices and found them to infringe. The second jury compared the claims, as identically construed by this Court, to the prior art asserted by Fairchild and found the prior art lacking. As such, the second jury could not have reconsidered any issue presented to the first jury because this Court —not each independent jury—performed the claim construction and the issues the juries were asked to decide in light of this construction were different and not overlapping.

### 3.    There Is No Factual Basis for Finding a Seventh Amendment Violation.

After setting forth an erroneous legal standard, Fairchild spends considerable time rearguing the facts already considered by the jury. [*See* D.I. 615 at 15-23.] But Fairchild's slanted and excerpted view of the evidence is insufficient to support its assertions of prejudice. First, with respect to Fairchild's arguments on the '876 patent, Power Integrations incorporates the whole of its opposition to Fairchild's Motion for Judgment as a Matter of Law Concerning Non-Infringement and Invalidity of the '876 Patent, which explains that Power Integrations'

---

[16]    Fairchild also quotes *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001), for the proposition that claims must be given the same meaning for both validity and infringement. That is precisely what occurred here. As such, *Amazon* also supports *denying* Fairchild's motion, not granting it.

expert consistently applied the same claim construction in both trials. Nor did Power Integrations "admit" that the ROM of Martin is not "necessary to vary the frequency" or that such an admission would even be relevant. Fairchild's argument once again misses the point: the Martin patent, and indeed all the prior art, varied frequency in a fundamentally different way from that of the claimed invention, including that it did not vary "about a target frequency." [D.I. 558 (Trial Tr. 9/20/07) at 1061:15-1062:2, 1062:14-1066:11, 1070:2-18.] Fairchild's request for a new trial on the basis of the frequency jittering limitation is just another effort to re-argue the evidence while remaining blind to the implicit conclusion that each jury consistently applied the identical claim construction and simply disagreed with Fairchild's expert. The evidence fully supports that each jury was reasonable in finding that Fairchild's products included the claimed invention while the prior art neither disclosed it nor rendered it obvious.

With respect to Fairchild's allegation that Power Integrations argued different infringement and validity contentions related to the soft start circuit element in the '851 and '366 patents, Fairchild is not only wrong, but it is attempting to use its own flip-flop on the issues to try to get yet another bite at the apple.

While Fairchild spends three pages quoting testimony from the trials, at no point does Fairchild show any inconsistency on the part of Power Integrations or its expert. In fact, Power Integrations' expert dutifully focused on the exact same components of the soft start circuit in both phases of the trial. Focusing on the AND-gate Fairchild now seizes upon, in the first trial Power Integrations stated that the disclosed structure (including an AND-gate) or *a structural equivalent* was required, and that the "switch" in Fairchild's part was just such an equivalent structure.[17]  [D.I. 417 (Trial Tr. 10/3/06) at 496:20-497:9; D.I. 420 (Trial Tr. 10/6/06) at 1557:21-1559:16.] In the second trial, Power Integrations stated again that an AND-gate *or its*

---

[17]  Power Integrations provided further proof on this point in the cross-examination of Fairchild's expert, Dr. Horowitz and, indeed, showed that certain of the Fairchild products included the same AND-gate as shown in the patent. *See* D.I. 419 (Trial Tr. 10/5/06) at 1112:10-1116:7, 1131:17-1133:22. Fairchild overlooks these facts and testimony in its present motion.

*equivalent* was required and was **not** found in the prior art.[18]  [D.I. 558 (Trial Tr. 9/20/07) at 1051:4-1052:23 (Mr. Blauschild testifying that he compared the "structures [in the patent] to the prior art to see if they're *the same or equivalent*" (emphasis added)), 1054:12-1056:16 (testifying how the ramp structure in the SMP260 was not equivalent to the patented circuit structure), *see also* D.I. 559 (Trial Tr. 9/21/07) at 1527:20-24, 1529:3-14.]  At no point did Fairchild even try to cross examine Mr. Blauschild on the merits of these conclusions, choosing instead during the infringement trial to focus on the straw-man issue of the irrelevant "low frequency oscillator" not being present in Fairchild's devices—a flaw it repeats in its present motion.  In the validity trial, Fairchild did not ask one substantive question on the soft-start circuit, choosing instead to point out the undisputed fact that the SMP260 was not cited during prosecution. [D.I. 558 (Trial Tr. 9/20/07) at 1080:8-1082:9.]  Thus, in fact, Power Integrations' expert was perfectly consistent at all times in his treatment of the claimed soft start circuit, as construed by this Court, to the questions of infringement and validity.

Fairchild's expert, on the other hand, varied between the different trial phases in several important respects, including even the *number* of structural components he said were required of the soft start circuit.  [*Compare* D.I. 419 (Trial Tr. 10/5/06), at 1084:11-1088:2, 1091:21-1092:24; DD-222 (asserting a total of *five* components including two separate oscillators outside the "soft start" box in the patent figure) *with* D.I. 557 (Trial Tr. 9/19/07) at 776:16-777:5 (asserting that the corresponding structure includes just the *three* components inside the box labeled 410 in Figure 3).]  In fact, Power Integrations brought a motion *in limine* to try to prevent Dr. Horowitz from changing his analysis on the soft-start functionality from the first trial to the second. [D.I. 511 at 2-4.]

The evidence demonstrates that Power Integrations' presentations on the issues in the two trials were completely consistent, and there was no colorable chance of prejudicial jury confusion or inconsistent application of the Court's instructions.  If there was any confusion at

---

[18]  In contrast, Fairchild's expert did not even attempt to show in his direct testimony where the alleged equivalent structures to the latch and AND-gate were in the prior art.  *See* D.I. 557 (Trial Tr. 9/19/07) at 779:15-780:12 (referring only to a box on a block diagram).

all, and Power Integrations believes there was not and that the verdicts are completely consistent, such confusion would have been caused entirely by Fairchild itself, and it thus cannot possibly form the basis of a grant of a new trial.

## IV.    CONCLUSION

For all the above reasons, Power Integrations requests that this Court deny Fairchild's motion for new trial on all issues and enter judgment for Power Integrations.

Dated:  December 21, 2007                   FISH & RICHARDSON P.C.


By:   */s/ William J. Marsden, Jr.*
        William J. Marsden, Jr. (#2247)
        Kyle Wagner Compton (#4693)
        919 N. Market Street, Suite 1100
        P.O. Box 1114
        Wilmington, DE 19899-1114
        Telephone: (302) 652-5070
        Email: marsden@fr.com
        Email: kcompton@fr.com

        Frank E. Scherkenbach
        225 Franklin Street
        Boston, MA 02110-2804
        Telephone: (617) 542-5070

        Howard G. Pollack
        Michael Headley
        500 Arguello Street, Suite 500
        Redwood City, CA 94063
        Telephone: (650) 839-5070

        ATTORNEYS FOR PLAINTIFF
        **POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, I electronically filed with the Clerk of Court POWER INTEGRATION'S OPPOSITION TO FAIRCHILD'S POST-TRIAL MOTION FOR NEW TRIAL ON ALL ISSUES IN LIGHT OF IN RE SEAGATE using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.  In addition, the filing will also be sent via the method indicated below:

**VIA EMAIL AND FEDERAL EXPRESS**
G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA  94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

**VIA EMAIL AND HAND DELIVERY**
John G. Day, Esquire
Steven J. Balick, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION


*/s/ William J. Marsden, Jr.*
William J. Marsden, Jr.

80053249.doc