# Exhibit 1



### In re: Seagate: How Claims and Defenses For Willful Infringement Have Changed
**September 25, 2007**

*Intellectual Property Reporter*

**SERVICES**
Intellectual Property
IP Litigation

**PROFESSIONALS**
Katherine Pauley Barecchia

**The State of Affairs at the Federal Circuit**

Patent infringement is a strict-liability offense. Willful patent infringement, which requires proof by clear and convincing evidence that the infringer knew of the patent and did not have a good-faith basis for believing that there was no infringement, exposes an infringer to the possibility of paying treble damages and attorney fees to the patentee. Typically, because the willfulness inquiry focuses on the infringer's state of mind, accused infringers rely upon the advice of counsel defense to avoid a finding of willful infringement.

Recently, the rate of satellite litigation in patent-infringement cases related to the advice of counsel defense has skyrocketed.

Satellite litigation refers to lawsuits related to the main litigation that spin off and become bigger fights in and of themselves.

This surge in satellite litigation results in large part from the U.S. Court of Appeals for the Federal Circuit's recent non-precedential decision in *In re Echostar Communications LLC*, 448 F.3d 1294 (Fed. Cir. 2006).

In that case, the court established that reliance on an advice-of-counsel defense against a charge of willful infringement waives work product protection and the attorney-client privilege for all communications on the same subject matter, including documents. *See id.*

However, this waiver did not extend to work product that was not communicated to the accused infringer. Adding to the controversy caused by *Echostar*, an increasing number of Federal Circuit decisions have recently been reversed or modified by the U.S. Supreme Court. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 2007).

Individually, the uncertainty caused by *Echostar* and the Supreme Court's reversal rate might not have led to the sea change in the law of willful infringement. Together, however, they provided the impetus for a more proactive approach to aligning the rules of patent law with Supreme Court rulings in other areas of law. *In re Seagate Technology LLC*, 2007 WL 2358677 (Fed. Cir. Aug. 20, 2007), represents a prime example of the Federal Circuit's new approach.

**Background of *In re Seagate***

Convolve Inc. and the Massachusetts Institute of Technology (collectively referred to as "Convolve") sued Seagate July 13, 2000, alleging infringement of U.S. Patent Nos. 4,916,635 and 5,638,267. The companies later amended the complaint to also allege infringement of U.S. Patent No. 6,314,473, which was issued after the original complaint was filed.

Seagate retained attorney Gerald Sekimura to provide opinions of counsel for each of the patents in suit. Although Seagate retained opinion counsel before filing suit, the first of the noninfringement opinions was not issued until after Convolve filed its complaint. Nonetheless, there was no dispute between the parties that Seagate's opinion counsel operated independently of Seagate's trial counsel at all times.

During discovery, Convolve propounded discovery requests that sought:

> Internal communications on the same subjects as the formal [Sekimura] opinions, communications

between Seagate and any attorneys on the same subjects as the formal opinions, documents reflecting outside counsel's opinion as to the same subjects of the formal opinions, documents reviewed or considered, or forming the basis for outside counsel's opinion as to the subject matter of the formal opinions, and documents reflecting when oral communications concerning the subjects of the opinions occurred between Compaq and outside counsel.

The trial court concluded that Seagate waived the attorney-client privilege for all communications between it and any counsel, including trial counsel, that related to the subject matter of the Sekimura opinions (invalidity, infringement and enforceability). According to the trial court, this waiver extended from the point at which Seagate first became aware of the patents until the alleged infringement ended.

Because compliance with the trial court's order would expose Seagate's trial strategy to Convolve and violate the attorney-client privilege and the attorney work product protection, Seagate filed a writ of *mandamus* with the Federal Circuit. After reviewing Seagate's writ, the court decided to review the case *en banc* and posited three questions:

- Should a party's assertion of the advice-of-counsel defense to willful infringement extend waiver of the attorney-client privilege to communications with that party's trial counsel? *See In re Echostar Commc'n Corp.*, 448 F.3d 1294 (Fed. Cir. 2006).
- What is the effect of any such waiver on work product immunity?
- Given the impact of the statutory duty-of-duecare standard announced in *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380 (Fed. Cir. 1983), on the issue of waiver of attorney-client privilege, should this court reconsider the decision in *Underwater Devices* and the duty-of-due-care standard itself?

**The Federal Circuit Expressly Overruled**
***Underwater Devices***

*The New Willfulness Standard — No More Duty of Due Care*

Because patent infringement is a strict-liability offense, the infringer's conduct is only relevant in determining whether enhanced damages are warranted. As Congress has not provided any statutory guidance, the Supreme Court and the Federal Circuit established that a finding of willfulness is a necessary predicate to enhanced damages.

Before *In re Seagate*, a finding of willfulness was based on a totality of circumstances surrounding the accused infringer's compliance with the duty of due care to determine whether he was infringing. Under the Federal Circuit's new standard, which more closely comports with enhanced damages standards from other areas of the law, a finding of willfulness will require a showing of reckless disregard of potential infringement by the accused infringer.

In particular, the Federal Circuit said that to prove willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, 2007 WL 2358677, at *5.

Moreover, "The patentee must also demonstrate that this objectively defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* The Federal Circuit specifically noted that while the prior duty-of-due-care standard was irreconcilable with Supreme Court precedent, this new standard brings patent law in line with other areas of civil law.

*What Does This New Standard Mean for Patentees?*

It remains to be seen exactly what the parameters of the recklessness standard will be, since the Federal Circuit expressly declined to define a new standard in this opinion. Nonetheless, looking at *Safeco Insurance Company of America v. Burr,* 127 S. Ct. 2201 (2007) and other Supreme Court precedent, it is possible to identify some beneficial strategies.

It seems very likely that providing pre-suit notice of the patent to the accused infringer will become a more important aspect of any patent-infringement litigation. Because the patentee bears the burden of proving willfulness by clear and convincing evidence, prudent patentees should include a claim chart that outlines how at least one of the accused infringer's products or methods reads on at least one of the patent's claims.

The arguments in support of a more detailed form of notice are three-fold. First, under the old *Underwater Devices* standard, an accused infringer had a duty to investigate the scope of the patent once it was provided with a notification that the patent might be relevant to its products or methods.

If all that was required under the recklessness standard was to provide the same form of notice, then the recklessness standard would be no different from the now-defunct duty-of-due-care standard. Of course, as the Federal Circuit's jurisprudence in this area continues to develop, it is entirely possible that the standard will devolve back closer to the duty-of-care standard.

Second, under the recklessness standard, the patentee will be required to prove the accused infringer's recklessness disregard of the risk of infringement by clear and convincing evidence. Providing a claim chart for at least one claim and at least one product or method provides the patentee with a strong argument that it made the accused infringer aware of the details surrounding its infringement, and that the risk of infringement was obvious.

Finally, the Federal Circuit stated that "in ordinary circumstances, willfulness will depend on an infringer's pre-litigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good-faith basis for alleging willful infringement."

*In re Seagate*, 2007 WL 2358677, at *8. Thus, unless a patentee provides adequate notice to the accused infringer (or has other evidence of the accused infringer's pre-suit awareness of the patent), it will be difficult for the patentee to plead willful infringement in a complaint.

Balancing this need for increased notice, however, is a risk of declaratory judgment action in a less favorable jurisdiction. Given the recently evolving reduced standards for a sufficient case or controversy, this new detailed-notice requirement may lead to a higher rate of declaratory judgment actions in jurisdictions less preferred by the patentee. As a result, patentees will need to carefully craft their warning letters to minimize this risk.

In *Safeco*, the Supreme Court explained that, in a civil liability context, willfulness "cover[s] not only knowing violations of a standard, but reckless ones as well." *Safeco*, 127 S. Ct. at 2208 (citations omitted). The Supreme Court then defined recklessness as "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 2215 (citations omitted).

Thus, in order to prove a case of willful infringement, the patentee will have to rely on evidence that the accused infringer purposefully disregarded an obvious risk of infringement. This evidence will likely be in the form of e-mail, memorandums or other communications that show a clear disregard of a risk of infringement. In that sense, the "smoking gun" document will become even more important in a post-*In re Seagate* claim of willful infringement.

In its opinion, the Federal Circuit reasoned that the waiver of privilege should not extend to trial counsel because "in ordinary circumstances, willfulness will depend on an infringer's pre-litigation conduct." *In re Seagate*, 2007 WL 2358677, at *9. Because an analysis of pre-litigation conduct involves facts that do not necessarily relate to the underlying claim of infringement, it is likely that courts will increasingly order bifurcation to avoid jury confusion. However, as explained above, it will still be necessary for patentees to lay a solid foundation during trial that exposes the obvious risk of infringement with which the accused infringer was confronted.

### What Does This New Standard Mean for Accused Infringers?

In a post-*In re Seagate* environment, an opinion of counsel and the advice-of-counsel defense may be of increased importance. In particular, an advice-of-counsel defense will enable an accused infringer to show that, absent objectively unreasonable conclusions in the opinion, the accused infringer took reasonable actions to avoid infringing a valid patent.

Now, because there is no longer any risk of a waiver of the attorney-client privilege or attorney work product of trial counsel (absent the bad-faith-litigation exception discussed in more detail below), accused infringers no longer need worry that their entire case strategies will be laid bare for the patentees to see before trial. As a result, there is a greater incentive for accused infringers to obtain opinions of counsel and to rely upon those opinions at trial.

Although it remains to be seen what circumstances will give rise to a sufficiently "obvious" risk of infringement, an accused infringer does not have the luxury of burying his head in the sand. Rather, a prudent potential infringer will continue to perform product and/or process clearance searches and will continue to obtain opinions of counsel. These clearance searches will help to provide a solid foundation to any advice-of-counsel defense and would provide evidence of a lack of recklessness by the accused infringer.

While an absence of a practice of obtaining clearance searches will not lead to an automatic finding of willfulness by any means, a lack of adequate and established procedures for addressing potential infringement issues likely will. Therefore, all manufacturers or companies facing potential claims of infringement should establish formal procedures for addressing claims of infringement.

These procedures could include, for example, designating an in-house counsel to conduct all investigations of potential infringement issues (whether identified by clearance search, warning letter, or otherwise), to refer the matter to outside patent counsel for an independent investigation of the issues, and to prepare a written memo detailing the steps taken in response to the identification of the potential infringement issue.

Despite the Federal Circuit's new protections against the erosion of the attorney-client privilege and the attorney work product protection, accused infringers still risk the potential disclosure of their trial counsel's materials in limited circumstances. These limited circumstances, according to the Federal Circuit, will involve a

showing of chicanery by the accused infringer.

One example of litigation chicanery would be if the patentee discovers evidence that the accused infringer misled or withheld information from opinion counsel about material characteristics of the accused products or methods. In such case, a court would likely order disclosure of materials ordinarily protected by either the work product protection or the attorney-client privilege.

Another example of litigation chicanery that would likely result in a forced production of documents and communications is if an accused infringer's witness lies under oath in a deposition regarding the circumstances surrounding the acquisition of an opinion of counsel, the features of the accused products or methods or any material aspect of the litigation related to infringement.

While the Federal Circuit indicated that trial counsel's communications and work product will not be discoverable absent evidence of chicanery, the court affirmed that opinion counsel's communications and work product are discoverable. Accordingly, maintaining separate opinion counsel remains an important part of an advice-of-counsel defense for at least two reasons.

First, when opinion counsel serves as trial counsel, the opinion (whether invalidity, unenforceability or non-infringement) immediately loses credibility. Trial counsel's function is to advocate the best possible positions for the accused infringer, while opinion counsel's function is to provide an unbiased analysis of the patent and technology at issue. When these two functions become intertwined, the unbiased analysis automatically suffers in the eyes of a court.

Additionally, the Federal Circuit reaffirmed that opinion counsel's communications and work product are discoverable. When a single attorney is performing both opinion and trial counsel functions, it becomes very difficult to draw a line of discoverability. An attorney cannot simply "turn off" one function while performing the other. As a result, a much broader waiver of attorney-client privilege and attorney work product protection would be expected for trial counsel that is also opinion counsel.

**Conclusion**

The Federal Circuit's opinion in *In re Seagate* has a number of practical implications for both patent holders and accused patent infringers. Patent holders will be held to a higher burden of proof under the new recklessness standard, and the conduct relied upon to show willful infringement will in most cases be limited to pre-litigation conduct. Additionally, although the Federal Circuit abolished the duty of due care first established by *Underwater Devices*, accused infringers should still retain separate opinion counsel and should obtain a competent and thorough opinion of counsel in anticipation of a charge of willful infringement.