# Exhibit 2

# 2007 PATENTLY-O PATENT LAW JOURNAL

JOSEPH CASINO AND MICHAEL KASDAN

Preferred Citation: Joseph Casino and Michael Kasdan, *In re Seagate Technology: Willfulness and Waiver, a Summary and a Proposal*, 2007 Patently-O Patent L.J. 1, http://www.patentlyo.com/lawjournal/2007/05/in_re_seagate_t.html

## INTRODUCTION

Almost every patent infringement complaint includes a boiler-plate notice-pleading-style charge of "willful infringement."[1]  If proven, this charge can be the basis for an award of enhanced damages up to three times the actual damages, at the discretion of the trial court.[2]  However, in addition to the monetary risk that such a charge brings, the inclusion of a willful infringement charge raises a significant *practical* dilemma for accused infringers.

Under the current legal framework of the doctrine of willfulness, a charge of willful infringement puts the state of mind of the defendant at issue; and the question as to whether the accused infringer's infringement was "willful" often puts at issue that party's communications with its patent counsel.  A long-standing defense to a charge of willful infringement has been the "advice of counsel defense," i.e., that upon learning of the patent, the accused infringer consulted with patent counsel, and relied upon a competent opinion of counsel that the patent was invalid, not infringed, or not enforceable.  Effectively defending against willfulness by relying on a competent well-reasoned opinion of counsel requires some waiver of the attorney-client privilege to allow the patent-owner discovery as to how the opinion and related communications affected the state of mind of the accused infringer.  This necessarily injects complex waiver of attorney-client privilege and work-product immunity issues into the case.

---

[†] By Joseph Casino, Esq. and Michael J. Kasdan, Esq.  Joseph Casino is a Partner and Michael Kasdan is an Associate at Amster Rothstein & Ebenstein LLP.  The authors would like to acknowledge the contribution of Norajean McCaffrey, also an Associate at Amster Rothstein & Ebenstein LLP, who has provided invaluable assistance.  This article is not intended to express the views of the firm or its clients. © 2007

[1] *See* Kimberly A. Moore, *Empirical Statistics on Willful Patent Infringement*, 14 Fed. Cir. B.J. 227 (2004) (the statistics demonstrate that willful infringement is alleged in over 90% of patent cases).

[2] 35 U.S.C. § 284 (2000).   The provision for enhanced damages is meant to act as a deterrent against the deliberate infringement of patent rights.

Willfulness and Waiver, a Summary and a Proposal

The waiver of attorney-client privilege and attorney work-product that arises when an opinion of counsel is relied upon in order to defend against a charge of willfulness can wreak havoc with the accused infringer's practical ability to properly defend the lawsuit. The state of the law is such that accused infringers are put in a position where they must choose between either relying upon an opinion of counsel (often the best defense against a willfulness charge), a choice that introduces the presently uncertain consequence of waiving the attorney-client privilege and work-product immunity, or preventing these troubling waiver issues from arising by foregoing reliance on an opinion of counsel, a choice that may increase the likelihood that willfulness will be found.

Forcing accused infringers to make this choice in virtually every patent case is troubling to say the least. Indeed, the Federal Circuit has realized for some time that balancing the timing and scope of the waiver of privilege against potential prejudice to each party is a thorny issue.[3] The Federal Circuit's recent en banc decision in *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 846 (2006), and its pending en banc decision in *In re Seagate Technology L.L.C.*, Misc. Docket No. 830 (Fed. Cir. 2007), demonstrate that the Court is continuing to grapple with these very important issues.[4] A host of different proposed solutions and arguments have been presented to the Court concerning the willfulness standard itself, as well as both the timing and scope of the waiver that arises when relying upon an opinion of counsel.

In *Seagate Technology*, Seagate and several of the amicus briefs argue that the tension between willfulness and attorney-client privilege should be resolved by adopting a bright-line rule that waiver is cut-off as to trial counsel if separate counsel wrote the opinion that is relied upon. However, the adoption of such a rule would create a legal fiction that is not supported by the law or sound policy. Substantively, this proposed rule is divorced from the focus on the state of mind of the accused infringer. In addition, as a matter of policy, this rule could lead to negative consequences, such as interfering with choice of counsel and causing opinions to be converted into pro forma, insurance-type documents.

---

[3] *See, e.g., Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) (suggesting that in view of such issues, "[t]rial courts . . . should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court in camera, reveal that the defendant is indeed confronted with this dilemma.").

[4] Changes and clarifications of the doctrine of willfulness are not only being considered by the Federal Circuit. Legislative solutions are also presently under consideration by Congress. Specifically, the recently proposed Patent Reform Act of 2007 (S. 1145 and H.R. 1908) includes provisions that seek to make obtaining enhanced damages more difficult to obtain (by requiring clear and convincing evidence of specific conduct and providing that "good faith" is a defense) as well as provisions directed at bifurcating willfulness trials (by preventing a patent owner from even alleging willful infringement until a patent has been held to be infringed and not invalid).

Willfulness and Waiver, a Summary and a Proposal

This article first provides an overview of the doctrine of willfulness and the waiver issues that arise by defending against a willfulness claim. Next, we outline the issues confronting the Federal Circuit in addressing this body of law. Finally, we propose a solution that is both legally sound and meets important policy considerations.

The solution that is proposed in this article is outlined as follows:

- As to the waiver issues, we propose that asserting an advice of counsel defense as to a pre-suit opinion of counsel in order to defend against a willfulness charge should not trigger a waiver that extends in temporal scope past the initiation of the lawsuit. Under such circumstances, there is no need to extend the waiver past this point, because once an accused infringer answers the charge of infringement in Court by filing an Answer or Declaratory Judgment Complaint, the bona fides of the defenses of the accused infringer can be completely tested based upon the litigation record under the normal litigation good faith requirements, disclosures, and discovery. Further waiver in the context of the ongoing litigation is unnecessary to determine whether any continuing infringement is willful, because each filing is, in essence, an opinion of counsel that must pass muster under the good faith requirements put on all counsel. This approach would insulate the post-Answer communications and work of trial counsel from disclosure when relying upon a pre-suit opinion of counsel. Importantly, however, this solution is not based upon the legal fiction that the use of separate counsel automatically insulates the client state-of-mind issues that are at the center of the willfulness inquiry.

- As to the procedural mechanism of trying willfulness issues (including the timing of the waiver), we propose that the Federal Circuit revisit its dicta in the earlier *Quantum* case and mandate that the disclosure of any attorney-client privileged or work-product materials take place after the determination of liability. A trial court has discretion as to how to treat the equitable issue of willfulness and whether to encourage the late disclosure of any waived materials or indeed to bifurcate willfulness. The approach of bifurcating the trial of willfulness from liability would solve the dilemma of forcing accused infringers to choose between relying on an opinion or allowing plaintiffs access to their litigation strategies and communications.

**BACKGROUND**

WILLFUL INFRINGEMENT - THE DUTY OF CARE STANDARD

As articulated in *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390-91 (Fed. Cir. 1983), when one has notice of another's patent rights, he has a duty of due care to determine whether or not he is infringing. Demonstrating that this duty of care was met will defeat a charge of willful infringement. *Id.* The

3

Willfulness and Waiver, a Summary and a Proposal

continuing viability of the affirmative duty of care standard for willful
infringement was considered and re-affirmed by the en banc Federal Circuit as
recently as 2004 in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge G.m.b.H. v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004) (en banc).[5]  Thus, the best way to defend against a
charge of willful infringement continues to be by relying on "the advice of
counsel defense," i.e., that the defendant consulted with and relied upon a
competent opinion of counsel that there was no infringement of a valid claim of
the patent at issue.

The need for an accused infringer to rely upon such opinions of counsel has
given rise to a Hobson's choice for those defending patent infringement lawsuits.[6]
If an accused infringer chooses to rely upon this opinion of counsel, it exposes
itself to a waiver of attorney-client privilege and work-product immunity
concerning that subject matter.  There has been much disagreement as among
the district courts as to the proper scope of this waiver.  A broad waiver that extends
to trial counsel could force accused infringers to reveal communications and
work-product of their trial counsel to the opposing side in the ongoing action.  If
an accused infringer chooses not to rely upon its opinion of counsel for strategic
reasons, such as a concern about waiving its communications and work-product
to the other side, it risks being found liable for willful infringement, even though
it may have obtained and relied upon a competent opinion of counsel.[7]

---

[5] *See Knor-Bremse*, 383 F.3d at 1343-1344  (re-affirming affirmative duty of care, but holding
that there is no adverse inference of willfulness associated with not producing an exculpatory
opinion; rather, the determination as to willful infringement is made based on the totality of the
circumstances); *but see Knorr-Bremse*, 383 F.3d at 1349, 1352 (Dyk, J. dissenting) ("[A]
potential infringer's mere failure to engage in due care is not itself reprehensible conduct.  To
hold that it is effectively it shifts the burden of proof on the issue of willfulness from the patentee
to the infringer, which must show that its infringement is not willful by showing that it
exercised due care. . . . I would recognize that the due care requirement is a relic of the past
and eliminate it as a factor in the willfulness . . . analysis.")

[6] *See Quantum*, 940 F.2d at 643-44; *see also Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*,
34 F.3d 1048, 1056-57 (Fed. Cir. 1994).

[7] Although the *Knorr-Bremse* Court overruled prior precedent and ruled that there is no
"adverse inference" for failure to produce and rely upon an opinion of counsel, see *supra* note
4, there is still a split in the District Courts as to how to apply this ruling in practice.  *Compare
McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 811 (E.D. Cal. 2006)
(granting a motion in limine to preclude evidence and testimony of defendant's opinion of
counsel where defendant did not waive the attorney-client privilege on the grounds that such
evidence would be prejudicial and result in the impermissible "adverse inference" noted in
*Knorr-Bremse*) with *Third Wave Techs., Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991 (W.D.
Wis. 2005) (allowing evidence and testimony as part of the totality of the circumstances
concerning whether opinion was obtained and when it was obtained, stating that "[t]he
[Federal Circuit] court did not say that it was improper for a jury to infer from an infringer's
failure to consult counsel that the infringer had no prior knowledge of its opponent's patents or
that it had not acted properly in other respects.  The court's ruling was limited to its concern
for protecting the attorney-client privilege.  For that reason, it prohibited factfinders from
drawing any inferences about what the opinion might have said had it been issued; it went no
farther than that.").  In addition, and perhaps more importantly, despite the fact that there is no

Willfulness and Waiver, a Summary and a Proposal

Moreover, inconsistency in treatment of the scope of the waiver issue has created uncertainty for accused infringers.  Clearly, a practical and workable solution to this dilemma is required.

In light of these issues, the Federal Circuit has recently decided to clarify these scope-of-the-waiver issues.  Indeed, the Court has also indicated the it may be willing to reconsider the affirmative duty of care standard itself.

<u>IN RE ECHOSTAR - A CLARIFICATION?</u>

In its May 1, 2006 Order in *EchoStar*, the en banc Federal Circuit addressed the proper scope of the waiver of work-product that results when an accused infringer relies on an opinion of counsel to defend against a willfulness claim.

First, the Federal Circuit clarified that "once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived;" and that this waiver applies to "all other communications related to the same subject matter."  *In re EchoStar*, 448 F.3d at 1299.  In *EchoStar*, the Federal Circuit agreed with the District Court that even though EchoStar was only relying on the opinion of one set of counsel, its in-house counsel, "it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel. . . ."  *Id.*

Second, the Federal Circuit ruled that attorney work-product that is never communicated to a client does not fall within the scope of the waiver of work-product that arises when that client relies on the advice of counsel defense because such documents "play[] . . . no part in [a Defendant's] belief as to infringement of the . . . patent."[8]  *Id.* at 1305.

---

longer any "adverse inference," an opinion of counsel is often the best evidence that the defendant proceeded with due care.  A rule that provides such strong strategic incentives to not rely on that opinion (in order to preserve privileged communications and attorney work-product) improperly renders this best evidence unusable in many cases.  Accordingly, the "Hobson's choice" remains.

[8] This holding resolved a split in the District Courts as to whether the waiver of work-product protection covered documents that were not disclosed to the client.  Some District Courts had limited the scope of the work-product waiver to only those documents actually communicated to the client.  *See, e.g., Thorn EMI N. Am. v. Micron Tech.*, 837 F. Supp. 616 (D. Del. 1993).  Others, however, extended the waiver to all work-product, regardless of whether it was communicated to the client.  For example, in *Novartis Pharmaceuticals. Corp. v. Eon Labs Manufacturing, Inc.*, 206 F.R.D. 396 (D. Del. 2002), Judge Farnan of the Delaware District Court mandated production of all work-product materials regardless of whether they were communicated to the client, maintaining that the discovery of this information was necessary to uncover what the client was actually told by opinion counsel.  This broader view was expressly rejected by the Federal Circuit in *EchoStar*.

Willfulness and Waiver, a Summary and a Proposal

Third, Federal Circuit addressed EchoStar's contention that waiver of work-product should not extend to advice and work-product given after the initiation of litigation and flatly rejects this contention. Here, the Court reasoned that as long as a party's ongoing willful infringement may be at issue in the litigation, there is no temporal "cut-off" of the scope of waiver that would limit the waiver to only that attorney work-product and attorney-client communications communicated prior to the filing of the lawsuit. Rather, the waiver extends so long as the alleged willful infringement continues, including after the filing of the lawsuit. *Id.* at 13 n.4.

Unfortunately, since the *EchoStar* Court did not squarely address the specific issue of waiver as to trial counsel, it left many of the District Courts attempting to read the tea leaves. To date, there has been significant disagreement among the district courts that have addressed this issue. In trying to divine the meaning of *EchoStar* vis-à-vis this issue, the district courts have reached divergent decisions based on differences of opinion as to what policy should be given preeminence: the preservation of the time-honored principles of the attorney-client privilege and work-product immunity (including legally supportable mechanisms to limit the waiver), or a broader more unfettered inquiry into the state of mind of the accused infringer.

Thus, in the wake of *EchoStar*, District Courts have continued to struggle with the scope of the waiver issue, specifically focusing on whether the broad subject-matter waiver announced therein (in combination with its rejection of the notion that there be a temporal cut-off of the scope of the waiver at the initiation of the litigation) mandates that a party who relies upon an opinion of counsel to defend against a charge of willfulness waives the attorney-client privilege as to communications with trial-counsel on the subject of the waiver (i.e., non-infringement, validity, etc.). Courts have not arrived at consistent rulings, leaving the state of the law regarding this issue largely unsettled.

Some courts have concluded that a waiver should extend to trial counsel. *See, e.g., Affinion Net Patents, Inc. v. Maritz, Inc.*, 440 F. Supp. 2d 354, 356 (D. Del. 2006) (finding that defendant waived attorney-client privilege "as to communications with 'litigation counsel,' and any other counsel"); *Beck Sys. v. Managesoft Corp.*, No. 05 C 2036, 2006 U.S. Dist. LEXIS 53963 at *16 (N.D. Ill. July 14, 2006) (acknowledging that "the fact scenario presented to the EchoStar court did not involve production of materials by trial counsel," but concluding that the reasoning of EchoStar supports extending this waiver "to all attorneys other than those who provided the advice on which the defendant relies, irrespective of whether the other attorneys are trial counsel."); *Informatica Corp. v. Business Objects Data Integration*, 454 F.Supp.2d 957, 965 (N.D. Cal. 2006) (finding that "BODI waived privilege for both pre- and post-filing pertinent attorney-client communications and work product" as to "opinion counsel and trial counsel alike" and that "it is immaterial whether BODI's opinion counsel and trial counsel are from the same firm, different firm or are even the same person.").

6

Willfulness and Waiver, a Summary and a Proposal

By contrast, a number of other courts have concluded that a waiver does not extend in time past the beginning of a litigation to encompass communications made by trial counsel. *See, e.g., Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-LJM-WTL, 2006 U.S. Dist. LEXIS 34023, at *19 (S.D. Ind. May 26, 2006) (refusing to extend temporal scope of waiver after the beginning of the lawsuit and noting that "[t]here is no indication that the EchoStar court intended to extend this waiver to communication of trial counsel or to work product of trial counsel.  In fact, that issue was not before the Court."); *Ampex Corp. v. Eastman Kodak Co.*, No. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *10 (D. Del. July 17, 2006) (openly questioning reading EchoStar Court's opinion as extending the temporal scope to include communications with trial counsel and rejecting argument that waiver should extend to trial counsel as that would "demolish[] the practical significance of the attorney-client privilege, a result obviously at odds with other comments in EchoStar.").

Still other courts have adopted various types of middle-ground approaches, finding that a waiver applies to trial counsel, but limiting the scope of that waiver. *See, e.g., Intex Recreation Corp.  v. Team Worldwide Corp.*, 439 F. Supp. 2d. 46, 52 (D.D.C. 2006) (adopting a "middle ground" approach under which "waiver extends only to those trial counsel work product materials that have been communicated to the client and 'contained conclusions or advice that contradict or cast doubt on the earlier opinions.'"); *Genentech, Inc. v. Insmed Inc.*, 442 F. Supp. 2d 838, 847 (N.D. Cal. 2006) (finding that where circumstantial evidence indicated that the defendant relied on the advice of trial counsel in launching the allegedly infringing product, there was a basis for extending the waiver to encompass not only opinion counsel but trial counsel as well, but as to the scope of the waiver, adopting a "middle approach that seeks to preserve in some fashion trial strategy while requiring disclosure of communications that are central and material to Defendants' decision to engage in allegedly infringing activity" by limiting the waiver of trial counsel communication to "documents and communications that contain opinions . . . and advice central and highly material to the ultimate questions of infringement and invalidity (the subject matter of the advice given by . . . opinion counsel).").

## IN RE SEAGATE TECHNOLOGY, L.L.C. - IS A FIX POSSIBLE?  WHAT ARE THE PROPOSED SOLUTIONS?

### WHAT IS AT ISSUE?

Confronted with this muddled legal landscape, the Federal Circuit decided to again address issues concerning willful infringement and the scope of the waiver of privilege associated with reliance upon the advice of counsel defense in *In re Seagate Technology, L.L.C.*

The Federal Circuit ordered the briefing to address three questions to the en banc panel:

Willfulness and Waiver, a Summary and a Proposal

(1)  Should a party's assertion of the advice of counsel defense to willful infringement extend waiver of the attorney client privilege to communications with that parties trial counsel?  *See In re EchoStar Comm'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006).

(2)  What is the effect of any such waiver on work-product immunity?

(3)  Given the impact of the statutory duty of care standard announced in *Underwater Devices, Inc. v. Morrisen-Knudsen Co.*, 717 F.2d 1380 (Fed. Cir. 1983), on the issue of waiver of attorney-client privilege, should this court reconsider the decision in *Underwater Devices* and the duty of care standard itself?

The first two questions concern the appropriate scope of the waiver of attorney-client privilege and work-product immunity, and specifically raise the issue of whether such a waiver should extend to communications with and work-product of trial-counsel.  The last question addresses whether the "affirmative duty of care standard" itself should be reevaluated, particularly in light of the practical difficulties that arise when the subject matter waiver of attorney-client privilege and work-product immunity extend to trial counsel.  This question, raised sua sponte by the Court, may well signal some level of concern by the Court with the willfulness standard itself.

THE SOLUTIONS PROPOSED TO THE *IN RE SEAGATE* COURT:

(1) RECONSIDERING THE WILLFUL INFRINGEMENT STANDARD?

As to the question of whether the willful infringement standard itself should be reconsidered (Question Number 3), the Brief of Petitioner Seagate Technology L.L.C. (the party seeking review of the District Court's ruling that the waiver of privilege extended to trial counsel), urged the Court to reconsider the affirmative "duty of care" standard set forth in *Underwater Devices*, arguing that this standard for willfulness inappropriately shifts the burden of proving that its actions were reasonable to defendants rather than requiring plaintiffs to demonstrate that defendants actions were "reprehensible," as should be required for punitive damages.  (Brief of Petitioner at 27-29, *In re Seagate Technology, L.L.C.*, Misc. Docket 830 (Fed. Cir. Mar. 12, 2007)).

The filing of twenty-one Amicus Curiae briefs[9] by a host of bar associations, corporations, and various industry groups highlights the importance of these

---

[9] Amicus Briefs *In re Seagate Technology, L.L.C.*, Misc. Docket 830 (Fed. Cir. appeal docketed March 23, 2007) were filed by:  (1) The Washington State Patent Law Association; (2) The Ten Electronics Companies (including Apple, Dell, Intel, Microsoft, Yahoo!, and others); (3) The American Bar Association; (4) The American Intellectual Property Law Association; (5) Avery Dennison/Brain Lab; (6) The Bar Association of the District of Columbia - Patent Section; (7) Biotechnology Industry Organization; (8)  The Conejo Valley Bar Association; (9) EchoStar Communications/BEA Systems; (10) The Electronic Frontier

Willfulness and Waiver, a Summary and a Proposal

issues to patent litigants.  Among the Amicus Briefs that chose to address the third question, the majority urged the Court to reconsider the affirmative duty of care standard itself.  The policy arguments that were made in favor of such reconsideration include that:

> (i) The affirmative duty of care, which arises once a party has knowledge of a patent, discourages the public from finding and reading patents and therefore undermines the very purpose of the patent system to foster innovation;[10]

> (ii) The affirmative duty of care impermissibly shifts the burden to disprove willful infringement and the cost to avoid punitive damages onto Defendants; Accordingly this duty should be eliminated and Plaintiffs should be required to prove willfulness;[11]

> (iii) The affirmative duty of care associated with the law of willful infringement (which provides for a type of punitive damages) improperly punishes Defendants for conduct that is not reprehensible, egregious, nor in subjective bad faith.  Accordingly, the standard should be revised to only punish such culpable conduct;[12] and

> (iv) The affirmative duty of care has a chilling effect on the attorney-client privilege and injects insoluble waiver issues as to attorney-client privilege into patent cases.[13]

The three amicus briefs that favored of either reaffirming or not addressing the affirmative duty of care standard, argued, inter alia, that the standard properly

---

Foundation; (11) The Federal Circuit Bar Association; (12) Federation Internationale; (13) The Houston Intellectual Property Law Association; (14) The Intellectual Property Owners Association; (15) Media Tech Inc.; (16) The New York Bar Association; (17) Pharmaceutical Research and Manufacturers of America; (18) The Philadelphia Intellectual Property Law Association; (19) The San Diego Intellectual Property Law Association; (20) Securities Industry and Financial Markets Association; and (21) TiVo.

[10] *See* Brief of The Washington State Patent Law Association, *supra* note 9.

[11] *See* Brief of The Ten Electronics Companies, The American Bar Association, The American Intellectual Property Law Association, Federal Circuit Bar Association, Federation Internationale, Media Tech, Inc., New York Bar Association, Pharmaceutical Research and Manufacturers of America, *supra* note 9.

[12]*See* Briefs of The Ten Electronics Companies, The American Bar Association, The American Intellectual Property Law Association, Biotechnology Industry Organization, EchoStar Communications/BEA Systems, The Electronic Frontier Foundation, Intellectual Property Owners Association, Pharmaceutical Research and Manufacturers of America, *supra* note 9.

[13] *See* Briefs of Federation Internationale, Securities Industry and Financial Markets Association, Mediatek, Inc. , *supra* note 9.

Willfulness and Waiver, a Summary and a Proposal

demands respect for patent rights of others, and therefore strengthens the patent system and the economy.[14]

As to the issue of revisiting the duty of care standard itself, Respondent Convolve, Inc. argued that if the Federal Circuit should not address this issue because to do so would be an advisory opinion. However, to the extent Petitioner Seagate and a number of the amici urged the Court to revisit the duty of care standard itself, Convolve argued that the Court should not do so, because the duty "to act in accordance with the law" as required under the willful infringement standard is necessary to deter culpable infringement, is consistent with Supreme Court precedent, and was re-affirmed as recently as three years ago in *Knorr-Bremse.* (Brief of Respondent at 48-57., *In re Seagate Technology, L.L.C.*, Misc. Docket 830 (Fed. Cir. April 25, 2007)). Finally, Convolve disputed the contention of Seagate and several of the amici that the current law on willfulness shifts burden of proof to disprove willful behavior onto the accused infringer, pointing out that the burden of proof is and remains on the plaintiff. (*Id.* at 58-59).

(2) SCOPE OF WAIVER ISSUES

As to the questions concerning the scope of the waiver that arises by the assertion of the advice of counsel defense (Question Numbers 1 and 2), Petitioner Seagate argued that the waiver should not be a subject matter waiver: Rather, where trial counsel and opinion counsel are different, the waiver (as to both attorney-client privilege and attorney work-product) should extend only to opinion counsel and not to trial counsel. (Brief of Petitioner at 25-27, *In re Seagate Technology, L.L.C.*, Misc. Docket 830 (Fed. Cir. Mar. 12, 2007)).[15]

Convolve's Opposition Brief points out that "[t]he relevant scope of waiver inquiry is not the attorneys' affiliation or interaction; the focus is instead on the

---

[14] This specific argument was raised in the Brief of the Philadelphia Intellectual Property Law Association, *supra* note 9. The Brief of The Bar Association of the District of Columbia - Patent Section, *supra* note 9, agreed that the standard should be reaffirmed (and argued for a limited subject matter waiver). The Brief of The San Diego Intellectual Property Association, *supra* note 9, stated that there was no need to reconsider the standard, in light of its recommended solution to the waiver issue.

[15] Seagate's Brief is unclear as to whether separate counsel means separate law firms or separate attorneys (who could be from the same firm). If a rule is established under which a firm acting as opinion counsel is disqualified from later acting as litigation counsel, this would be a perverse result that would have a chilling effect on the ability of companies to find a competent lawyer that they would rely upon for sound pre-suit advice. This choice of counsel issue is an important policy consideration that should not be lightly dismissed, since, if the doctrine of willfulness is to be meaningful, the law should provide incentives to accused infringers to seek and obtain the best advice from trusted opinion counsel. Furthermore, this would also essentially mandate that all of the work and analyses that is done pre-suit by opinion counsel be tossed aside, since it encourages that new and different counsel must be brought in as trial counsel. This result would also be highly inefficient for accused infringers.

Willfulness and Waiver, a Summary and a Proposal

information Seagate obtained, from whatever source, which framed its state of mind with respect to its reasonable reliance on opinion counsel." Therefore, it argues that Seagate's proposed "selective-waiver" rule, is improper and amounts to "the substantial equivalent of an entirely new privilege" designed to create incentives for, and to insulate from effective challenge, the advice-of-counsel defense in willful infringement cases. (Brief of Respondent at 5, 33, *In re Seagate Technology, L.L.C.*, Misc. Docket 830 (Fed. Cir. April 25, 2007)).[16]

The Amicus briefs universally recognize the practical consequences that a broad waiver to trial counsel would cause and argue either to set a rule that precludes ever extending the waiver to trial counsel, to set a rule under which the waiver extends to trial counsel in only extreme circumstances, and/or to set guidelines ensuring that the scope of the waiver is kept narrow. These proposed solutions and their various supporting arguments can be summarized as follows:

> (i) Create a bright-line rule that the waiver of privilege does not extend to communications with separate trial counsel. This will remove the chilling effect on the candor, communication, and counseling between attorney and client that has been created by the current uncertainty regarding the scope of the subject matter waiver of the attorney-client privilege.[17]

> (ii) The scope of the waiver should not extend to trial counsel. Rather, the Court should limit the scope of waiver to encourage parties to obtain and use opinions of counsel. Current waiver law encourages the opposite. Further, waiver as to trial counsel is unnecessary, because the Plaintiff can elicit relevant information during examination of the opinion counsel and the Defendant in order to challenge the advice of counsel. Finally, the scope of waiver should be identical regardless of whether trial and opinion counsel are at the same law firm.[18]

---

[16] Significantly, Convolve's Brief also points out important timing issues regarding when the opinion of counsel was procured: here, Seagate had pre-suit notice of the patent, but did not obtain an opinion of counsel until years later after litigation had been initiated. (*Id.* at 13-16). Accordingly, Convolve somewhat re-framed the inquiry as to waiver here by asking a fourth question, namely: "When petitioner elected to defend pre- and post-litigation willful infringement claims using post-litigation legal opinions and thus put at issue its reasonable reliance on those opinions," was the district court correct in finding waiver as to communications with trial counsel? (*Id.* at 9).

[17] *See* Briefs of The American Bar Association, Biotechnology Industry Organization, EchoStar Communications /BEA Systems, Electronic Frontier Foundation, Intellectual Property Owners Association, Media Tech Inc., Pharmaceutical Research and Manufacturers of America, *supra* note 9. (advocating bright-line rule excluding waiver from extending to trial counsel, but also urging court to set a framework for a narrow scope of waiver as to other non-opinion counsel, e.g., in-house counsel, based upon reliance, scope of the subject matter of the opinion, and when the opinion was obtained relative to the filing of the complaint). This argument was also made by Petitioner Seagate Technology.

[18] *See* Brief of Avery Dennison/Brain Lab, *supra* note 9.

Willfulness and Waiver, a Summary and a Proposal

(iii) Waiver of privilege should not encompass communications with trial counsel or trial counsel work product. While it is theoretically possible that a party that relied reasonably on advice of counsel prior to the litigation could receive later advice that demonstrates that the earlier advice was wrong, this rarity does not justify a categorical expansion of the waiver to encompass communications with trial counsel. In addition, the Court should articulate guidelines that the waiver of privilege should extend no further than necessary to test the Defendant's state of mind and reasonableness in relying on the opinion of counsel.[19]

(iv) Any waiver of attorney-client privilege should apply up to the date of the opinion or the commencement of the litigation, whichever is later. Thus reliance upon advice of counsel obtained prior to or at the outset of litigation should not be automatically extended to trial counsel.[20]

(v) Absent a compelling reason otherwise, the scope of the waiver should be a limited subject matter waiver that is narrowly read to apply only to the actual contents of the disclosed opinion.[21] In addition, the scope of the waiver should depend on the timing of the attorney-client communications. The waiver should extend more broadly as to communications prior to the advice of counsel and be more limited as to the communications after the advice of counsel, because the probative value of communications after the accused infringer receives and relies on the advice is very minimal.[22]

(vi) Waiver of the attorney-client privilege to trial counsel is an extreme result that should occur only in rare cases. The waiver rules should be set up to encourage parties to seek advice from independent patent attorneys and to be able to rely on that advice without fear of waiver as to trial

---

[19] *See* Brief of The American Intellectual Property Law Association, *supra* note 9.

[20] *See* Briefs of The Federal Circuit Bar Association, Federation Internationale (advocating the exclusion of post-Complaint communications from the waiver in order to avoid unfairly burdening trial counsel), San Diego Intellectual Property Law Association (advocating that temporal scope of the waiver should extend only up to the time when the suit was filed), Philadelphia Intellectual Property Law Association (advocating that the waiver analysis should be temporally based, triggered when the accused infringer learned of the patent and made the decision to commence or continue the allegedly infringing activity), *supra* note 9.

[21] *See* Briefs of The Bar Association of the District of Columbia - Patent Section, The Conejo Valley Bar Association (also advocating a narrow waiver of only the formal opinion and any related communications to the rendering of the formal opinion, since focus of the inquiry is on the accused infringer's state of mind), New York Bar Association (arguing that trial counsel's communications and thoughts should be protected from disclosure unless they concern the formulation of the opinion of counsel solicited by the party), *supra* note 9.

[22] *See* Brief of The Bar Association of the District of Columbia - Patent Section, *supra* note 9.

Willfulness and Waiver, a Summary and a Proposal

counsel. Therefore any waiver of privilege or work-product as to trial
counsel is unjustified absent a showing of actual prejudice of other
extraordinary circumstances to justify such broad waiver.[23]

## OUR PROPOSAL

### THE DUTY OF DUE CARE - WOULD ELIMINATING IT CHANGE ANYTHING?

It is clear from the above review of the briefing in *In re Seagate Technology L.L.C.*
that many favor eliminating the affirmative duty of care standard from the
willfulness inquiry.

However, even if the "affirmative duty of care" were removed, it is unclear that
this would have the practical effect on patent litigation that many presume.

First, while language about an "affirmative" duty of care might well have muddied
the waters by appearing to equate willfulness with a mere negligence standard, the
law remains that in order to establish willfulness the plaintiff has the burden of
proving that the accused infringer acted without good faith[24] and in a way that
was not merely negligent.[25]

But even if there were no technical "affirmative duty of care," the fact still
remains that practically speaking, once a plaintiff tries to establish that the accused
infringer acted without good faith, in order defend against that charge an accused
infringer would want to tell a counter-story that shows that they did act in good
faith. Telling the complete counter-story to demonstrate good-faith would still
(in most cases) implicate the same advice-of-counsel and waiver issues.

---

[23] *See* Brief of Houston Intellectual Property Law Association, *supra* note 9.

[24] As stated in *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004), the
patentee bears the burden of persuasion and must prove willful infringement: "[t]he patentee
must present threshold evidence of culpable behavior" before the burden of production shifts
to the infringer to put on evidence that it acted with due care. "There is no evidentiary
presumption that every infringement is willful." *Id*.

[25] Indeed, in *Knorr-Bremse*, the Federal Circuit recognized that willfulness is "conduct that is
not merely negligent," and recognized that evidence as to substantial and good faith defenses
to the infringement assertion is one of the factors to be weighed in determining whether
infringement was willful. *Knorr-Bremse*, 383 F.3d at 1342, 1347 (quoting *McLaughlin v.
Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The *Knorr-Bremse* Court, however, found that
the existence of a substantial defense to infringement would not automatically bar a finding of
willful infringement. Rather, the Court held that willful infringement depends on the totality
of the circumstances and the court has the discretion to weigh various factors as it sees fit. *Id*.

Willfulness and Waiver, a Summary and a Proposal

A PROPOSAL REGARDING THE DUTY OF DUE CARE

That said, one proposal we would make in connection with the duty of care is that if the Federal Circuit leaves the duty of due care standard intact, it should clarify that this duty (and the willful infringement cause of action itself) arises only in cases where there is either an actual pre-suit accusation made against the accused infringer by the patentee or particularized evidence that the accused infringer actually knew that the patent might cover its products. This would preclude the willful infringement cause of action for from being brought in cases where there was no actual or constructive pre-suit notice of alleged infringement.

In other words, if there is a duty, it should not be triggered by a casual awareness of another's patent that may be obtained in patent prosecution or routine research by scientists or engineers. This proposed rule would prevent undue burden and foster innovation by encouraging review of patents.[26]

WAIVER LAW SHOULD NOT BE BASED ON FALSE DISTINCTIONS BETWEEN THE ROLE OF SEPARATE TRIAL AND OPINION COUNSEL

THE PROBLEMS WITH SUCH DISTINCTIONS

Based upon a review of the *In re Seagate Technology* briefing, many (including Petitioner Seagate Technology) favor establishing a bright-line rule that, so long as separate opinion and trial counsel are used, the waiver should not extend to trial counsel. This rule would encourage alleged infringers to always retain separate trial counsel from opinion counsel, because doing so would guarantee that attorney-client communications and work-product during the litigation would be insulated from any waiver. However, the legal foundation for such a rule is unsound. First, it relies upon the legal fiction that trial counsel does not continue to provide opinions that could be relevant to the state of mind of the accused infringer. Second, the rule for determining the scope of waiver based on separateness of counsel falls apart when you look at the client-side of the attorney-client communications. For example, in general, the in-house counsel of the accused infringer will consider any opinion of counsel procured from opinion counsel. This same in-house counsel (or someone from the same department) would also likely participate in ongoing trial strategy with trial counsel. Accordingly, even in cases where there is separate opinion and trial counsel, the client itself does not separate pre-suit opinions from opinions of trial counsel obtained once litigation has commenced. This is a significant issue, since it is the *client's* state of mind that is at issue in the willfulness inquiry.

Moreover, such a rule could have the unintended consequence of leading to opinions becoming pro forma documents that are not integrated into the thinking

---

[26] As noted *supra* note 10, this same policy argument was made by Brief of The Washington State Patent Law Association.

Willfulness and Waiver, a Summary and a Proposal

of the accused infringer, since there would be no incentive to invest time in the detailed study of issues of infringement and validity by or with opinion counsel. Indeed, any knowledge base that is built up by opinion counsel could not be later leveraged in litigation, since separate trial counsel would be hired. Also, by effectively forcing accused infringers to retain separate opinion and trial counsel, this not only impinges on the ability of accused infringers to choose counsel, but is also economically inefficient.

Policy interests also would not be served by the proposed bright-line rule. This rule would interfere with the ability of an accused infringer to choose counsel, both for the opinion and the litigation. This is a serious policy concern.[27] A rule that forces an accused infringer to retain separate litigation counsel would be especially burdensome for smaller companies and start-ups. With the costs of defending patent litigations in the millions of dollars, using the same counsel may be important, especially for accused infringers that are not corporate giants.

While some may argue that separate counsel is required due to the potential for disqualification of counsel on the theory that the opinion of counsel is a necessary witness in the lawsuit,[28] most attempts to disqualify opinion counsel from participating in further litigation have been soundly rejected by the courts.[29] Also,

---

[27] *See, e.g., Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441-2 (1985) (J. Brennan, concurring) ("A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings . . . I share the view of the Court and the Court of Appeals below that the tactical use of . . . disqualification motions is a deeply disturbing phenomenon in modern civil litigation."); *see also A.V. by Versace, Inc.  v. Gianni Versace, S.P.A.*, 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001) ("Disqualification . . . is a 'drastic measure' that is viewed with disfavor because it impinges on a party's right to employ the counsel of its choice.").

[28] *See Crossroads Sys. (Tex.) Inc. v. DOT Hill Sys. Corp.*, No. A-03-CA-754-SS, 2006 U.S. Dist. LEXIS 36181 (W.D. Tex. May 31, 2006); *Cf. Ampex Corp. v. Eastman Kodak Co.*, No. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *9, *11 (D. Del. July 17, 2006) (noting that the case under consideration did "not involve a party choosing to use an attorney as both opinion counsel and trial counsel"; adding that "[t]hat choice involves an unfortunate blending of roles that is, thankfully, rare.") .

[29] These courts have consistently found that opinion counsel's testimony is not required at trial because the relevant inquiry is not the attorney's state of mind, but rather the client's. Therefore an attorney who authors an opinion is not "likely to be a necessary witness" nor "ought to be" called as a witness, and therefore is not likely to be disqualified as trial counsel under the applicable ethical rules.  *See Bristol-Myers Squib Co. v. Rhone-Poulenc Rorer, Inc.*, 95 Civ. 8833 (RPP), 2000 U.S. Dist. LEXIS 16015, at *6-8, *10, *15-18 (S.D.N.Y. Oct. 31, 2000) (denying a motion to disqualify trial counsel who also prepared an exculpatory opinion upon which the accused infringer relied to rebut charge of willful infringement because there was no need for the accused infringer to call its attorney as a witness since the opinion could be admitted through the testimony of a recipient and since the opinion letter "stands on its own" with respect to review of its competency); *Automotive Prods., PLC  v. Tilton Eng'g*, CV 90-5500 KN (ex), 1993 U.S. Dist. LEXIS 3752, at *32 (C.D. Cal. Jan. 21, 1993) (The Court agreed that the patentee "should be prohibited from introducing expert testimony or the deposition testimony of [the alleged infringer's] patent counsel in an attempt to challenge the

the issue of disqualification can be delayed, or even eliminated, by bifurcating the issue of willfulness, as further proposed below.

<u>THE CASE FOR A MORE LIMITED TEMPORAL SCOPE WAIVER</u>

If applied to cases where an accused infringer obtained a pre-suit opinion of counsel, a broad waiver of privilege to the communications with trial counsel and the work-product of trial counsel would make it practically impossible to fairly defend a patent infringement action.  However, there is a legally sound framework to deal with the waiver issue that not only takes into account the practical problems associated with a broad waiver of the privilege, but also takes into account the issues raised above.

We propose that in cases where a pre-suit opinion has been obtained, and an accused infringer chooses to rely on that opinion in an advice of counsel defense, the waiver of privilege on the subject matter of the opinion should extend in time only up to the initiation of the litigation.  After that point, litigation mechanisms provide plaintiffs with the ability to test the state of mind of the accused infringer as to the reasonableness of their positions.

There are good reasons why there is no need for a waiver of privilege to extend past the filing of the litigation in cases where a pre-suit opinion has been obtained.  First, there are rules in place that require accused infringers to have good faith in setting forth non-frivolous defenses in an Answer to a Complaint.  Second, the positions of each party can be revealed through discovery, and these positions can be directly evaluated to determine if they are reasonable and if there are sufficient reasons for an accused infringer to refuse to license the patent at issue, without delving into attorney-client privileged communications and work-product.  Certain discovery responses, including interrogatories and requests for

---

validity of [the alleged infringer's] opinion letters" because "[t]he sole issue for which [the] opinion letters [were] being introduced [was] to determine whether [the alleged infringer] should be held liable for willful infringement" and therefore "the jury should only consider [the alleged infringer's] state of mind, not that of the patent counsel who authored the opinion letters."*); Liqui-Box Corp. v. Reid Valve Co.*, 16 U.S.P.Q.2d (BNA) 1074, 1075 (W.D. Pa. 1989) (sustaining an objection to the plaintiff's Opinion and trial counsel being called as a witness regarding intentional infringement since "[g]ood faith reliance by a party on counsel's opinion is a question of the party's state of mind, not the state of mind of counsel" and therefore the "defense does not require an inquiry into counsel's state of mind"); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 55 U.S.P.Q.2d (BNA) 1662, 1665-66 (S.D.N.Y. 2000) (noting that if Opinion counsel were to testify to the competence of and reasonable reliance on opinion of counsel, "those issues would be clouded by irrelevancies"); *Ristvedt-Johnson, Inc. v. Brandt, Inc.,* No. 88 C 3834, 1990 WL 114732, at *3 (N.D. Ill. July 25, 1990) (noting, in dicta, that the opining attorney would not likely be precluded from serving as trial counsel because the alleged infringer intended to rely on the testimony of individuals who solicited and received the opinions of counsel rather than the drafter and even if counsel were called to testify it did not appear that any prejudice would result) ; *see also Versace*, 160 F. Supp. 2d at 663 (explaining that if the lawyers testimony is not adverse to his client, this is a reason not to disqualify).

Willfulness and Waiver, a Summary and a Proposal

admissions must be verified by the client. In addition, a deposition under Fed. R. Civ. P. Rule 30(b)(6) can provide discovery as to the positions of the accused infringer at any time. That is, the positions set forth in the litigation as to issues of infringement and validity can be reviewed with the accused infringer to probe its state of mind. When answers as to current positions (and discovery into the state of mind of the accused infringer) can be obtained using the discovery rules, extending the waiver of privilege is unnecessary.[30]

If there is no good faith defense to an infringement claim, there is a body of law that would allow one to get behind the privilege and attack the bad faith of the accused infringer under Fed. R. Civ. P. Rule 11, 28 U.S.C. § 1927, and the exceptional case provision of the Patent Law, 35 U.S.C. § 285. If the lack of good faith is apparent from discovery responses, this can be used to pierce the privilege, as well.

It should be noted that our above proposal is distinct from the proposal that demonstrating substantial defenses to infringement should alone be necessarily sufficient to defend against a willfulness claim. That approach was rejected in *Knorr-Bremse*, which declined to adopt such a rule and instead held that demonstrating a substantial defense was but one of the factors in the totality of circumstances that is evaluated (other factors may include whether an opinion of counsel was obtained).[31] By contrast, our approach encourages accused infringers to obtain and use opinions of counsel when made aware of an infringement accusation against its products. It also allows those accused infringers to be able to freely rely on such opinions as part of their defense to a claim of willfulness claims, without having to worry about adversely impacting upon its ability to freely communicate and be advised by trial counsel.[32]

The following hypothetical scenarios illustrate how waiver would work in different circumstances under our proposal:

- First, assume that the patent infringement lawsuit was filed with no pre-suit notice to the accused infringer. In this case, there could be no assertion of willful infringement by the patentee unless the accused infringer's litigation positions were not reasonable (i.e., it is shown that the accused infringer had no reasonable basis to believe that the asserted patent was not infringed, invalid, or otherwise unenforceable). Therefore, there is no need to raise the

---

[30] This same point was made by the Briefs of Avery Dennison/Brain Lab as well as The American Intellectual Property Law Association, *supra* note 9.

[31] *See Knorr- Bremse*, 383 F.3d at 1347.

[32] Only in the factual circumstance where there is no pre-suit notice, does our approach dovetail with the "substantial defense" defense to willfulness. In such cases, since there was no notice, the defenses in litigation would be completely indicative of whether the infringement was willful.

Willfulness and Waiver, a Summary and a Proposal

advice of counsel defense.  As to continuing infringement, the litigation mechanisms set forth above provide the plaintiff with the ability to deal with accused infringers who proceed in bad faith.

- Second, assume that there was pre-suit notice to the accused infringer, that the accused infringer procured an opinion of counsel, and that the suit was subsequently filed.  In this case, the accused infringer may rely on the opinion of counsel in its advice of counsel defense.  In so doing, it waives all communications with counsel on the subject matter of the opinion until the time of the litigation.  Once the litigation begins, there is no need to extend the waiver any further in time in view of the litigation mechanisms set forth above.  For example, if answers to interrogatories revealed that certain non-infringement or invalidity positions taken in the litigation have changed from those in the pre-suit opinion, the reasons for these changes could be probed during a deposition with the accused infringer's Rule 30(b)(6) witness.

- Third, assume that there was pre-suit notice to the accused infringer, that the accused infringer did not procure an opinion of counsel, and the suit was then filed.  Since there is no pre-suit opinion to rely upon, in this case, the accused infringer would likely not choose to assert an advice of counsel defense and waive privilege and will instead be pressed to find another defense, if available, to the charge of willful infringement.

- Finally, assume that there was pre-suit notice to the accused infringer, but that the accused infringer did not procure an opinion of counsel until after the suit was filed.  Indeed, this was the precise factual scenario before the court in *Seagate Technology, L.L.C.*[33]  In this case, the accused infringer again can not rely on any opinion as to the pre-suit period, since it chose not to obtain one.  As to the post-suit period, it should be sufficient to rely upon the litigation record to demonstrate its good faith positions.  However, in this or the prior hypothetical, if an accused infringer did not want to rely upon the litigation record and instead chose to rely upon an opinion procured *after* the initiation of the litigation as an advice of counsel defense (and we don't see why they would do this), this choice would necessarily result in a subject matter waiver that extends even to communications with trial counsel.  In that unusual case, there would be no principled way to separate communications with trial counsel from communications with opinion counsel when evaluating the state of mind of the accused infringer.[34]

---

[33] *See supra* note 16.

[34] Indeed, this is Convolve's position in its Opposition Brief. (Brief of Respondent at 1, 37-42, *In re Seagate Technology, L.L.C.*, Misc. Docket 830 (Fed. Cir. April 25, 2007) ("Seagate elected to assert the advice-of-counsel defense to pre- and post-suit willful infringement based on three legal opinions, each obtained after this lawsuit was filed.  By asserting the advice-of-counsel defense, Seagate expressly waived attorney-client privilege and work-product protection.").

Willfulness and Waiver, a Summary and a Proposal

THE CASE FOR BIFURCATING TRIAL OF WILLFULNESS: OLD LAW IS GOOD LAW

In addition, the mechanism of bifurcation of the issue of willfulness should be seriously considered in order to promote fairness, especially if the Federal Circuit does extend the scope of the waiver of privilege to include the litigation period. Indeed this approach might be mandated if the same counsel rendered an opinion and is also serving as trial counsel, in order to avoid any strategically motivated disqualification motions.

The decision to bifurcate distinct issues is within the discretion of the Court. Pursuant to Fed. R. Civ. P. 42(b), bifurcation of issues may be appropriate when in furtherance of efficiency, economy, convenience, or to avoid prejudice.[35]  Even putting aside the waiver issues discussed above, as a general rule, patent cases often deserve consideration for separate trials as to liability and willfulness/damages under Rule 42(b).  The underlying reasoning is that the issues of both liability and damages may be complex, but not interwoven, and the trial of the damage issues, including enhanced damages for willful infringement under 35 U.S.C. § 284, themselves can be time consuming and expensive.[36]  Moreover, bifurcation of willfulness from the liability phase makes especially good sense, because there is little, if any, overlap between the evidence relevant to the issues of liability and willfulness.[37]  Finally, if a court or jury finds no liability, then the issue of willfulness will be moot, and the expense and effort associated with litigating willfulness will be avoided altogether, not to mention the potential burden placed on the court in having to resolve the complex issues typically associated with such an inquiry.

In considering the complicated waiver issues introduced by defending a willfulness charge, the Federal Circuit advocated the approach of bifurcating the trial of willfulness over twenty-five years ago in *Quantum*, where it stated that:

---

[35] *See* Fed. R. Civ. P. Rule 42(b) ("The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order separate trial of any claim . . . or of any separate issue."); *see also U.S. Gypsum Co. v. National Gypsum Co.*, No. 89 C 7533, 1994 WL 74989, at *1 (N.D. Ill. March 10, 1994); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987) ("Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management.").

[36] *See, e.g., U.S. Gypsum Co.,* 1994 WL 74989, at *1; *F & G Scrolling Mouse L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999).

[37] In determining whether the an accused infringer is liable in a case, the court need not, and should not, examine the intent or good faith of the accused infringer.  On the other hand, in determining willful infringement, on the other hand, the primary inquiry is focuses on the state of mind of the accused infringer.  *See, e.g., Princeton Biochems., Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258-60 (D.N.J. 1997) (because no significant overlap exists between evidence on issues of liability and willfulness, willful infringement reserved for adjudication after liability determined).

Willfulness and Waiver, a Summary and a Proposal

> An accused infringer . . . should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications . . . reveal that the defendant is . . . confronted with this dilemma.[38]

Although *Quantum* was decided at a time (before *Knorr-Bremse*) when the failure to waive privilege triggered an adverse inference that the advice of counsel was negative, its rationale still makes sense today. First, willfulness is an equitable issue that may be reserved for the court (as opposed to a jury). Second, bifurcating willfulness until after the liability phase of the trial will eliminate the danger that evidence of willfulness might prejudice the jury against defendants during the liability phase. Moreover, after the conclusion of the liability phase, there will be considerably less sensitivity and risk associated with revealing privileged communications concerning liability issues to an opponent.

## CONCLUSION

In *In re Seagate Technology, L.L.C.*, the en banc Federal Circuit has the opportunity (and, it seems, the desire) to squarely address the troubling issues that have arisen in connection with the doctrine of willfulness. The manner in which the Court resolves these issues could have far-reaching impact on accused infringers' practice of obtaining opinions of counsel and on their practical ability to rely on these opinions to defend against a charge of willful infringement without exposing their ongoing communications with and the work-product of their trial counsel.

The Federal Circuit should adopt a waiver doctrine that encourages the procurement and reliance upon opinions of counsel when one becomes aware of a pre-suit infringement assertion. In such cases, the solution of adopting a temporal cut-off to the waiver of attorney work-product and communications that occur after the litigation has been initiated strikes the proper balance for both patentees and accused infringers. However, it would be a mistake to seek a similar result by creating a bright-line rule that depends on the use of separate trial and opinion counsel to insulate post-litigation communications with counsel from discovery. Further, mandating bifurcation of willfulness issues until after a determination of liability would ease waiver concerns no matter what waiver framework is adopted by the Federal Circuit.

---

[38] 940 F.2d at 643-44.