632

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

        Defendants.

C.A. No. 04-1371 JJF



## POWER INTEGRATIONS' OPPOSITION TO FAIRCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW CONCERNING NONINFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 6,249,876

Dated: December 21, 2007

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com
Email: kcompton@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

## TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ..........................................................................................1

II. LEGAL STANDARDS ................................................................................2

    A.  Judgment as a Matter of Law....................................................................2

    B.  New Trial ....................................................................................................3

III. FAIRCHILD IS NOT ENTITLED TO JMOL ON INFRINGEMENT.................4

    A.  Fairchild's Expert Never Contested That the "Frequency Jittering" Limitation Was Met in the Accused Products. ..........................5

    B.  Power Integrations Presented Substantial Evidence that Supports the Jury's Verdict of Infringement. ...........................................7

IV. FAIRCHILD IS NOT ENTITLED TO JMOL ON INVALIDITY. ....................11

    A.  There Is Substantial Evidence to Support the Jury's Verdict That Claim 1 Is Not Obvious. .................................................................11

        1.  The jury implicitly decided, in Power Integrations' favor, the disputes of fact over the content of the prior art. ........................................................................................12

        2.  The Jury Judged the Credibility of the Experts and This Court Cannot Re-weigh that Evidence. .......................................14

        3.  The Substantial Evidence of Secondary Considerations Further Supports the Jury's Verdict of Non-obviousness............16

    B.  The Court's Jury Instructions Properly Took *KSR* into Account and Were Correct as a Matter of Law. .....................................................21

V.  CONCLUSION..............................................................................................24

# TABLE OF AUTHORITIES

**CASES**              **PAGE**

*Allied Chemical Corp. v. Daiflon, Inc.,*
449 U.S. 33 (1980)...................................................................................3

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................................2

*Baxter Healthcare Corp. v. Spectramed, Inc.,*
49 F.3d 1575 (Fed. Cir. 1995).................................................................3

*Corrigan v. Methodist Hosp.,*
107 Fed. Appx. 269, 2712-73 (3d Cir. 2004)........................................23

*Fineman v. Armstrong World Industries, Inc.,*
980 F.2d 171 (3d Cir. 1992)....................................................................11

*Graham v. John Deere, Co.,*
383 U.S. 1 (1966)............................................................................ passim

*Harris Corp. v. Ericsson, Inc.,*
417 F.3d 1241 (Fed. Cir. 2005)...............................................................2

*Johnson v. Campbell,*
332 F.3d 199 (3d Cir.2003).....................................................................2

*KSR Intern. Co. v. Teleflex Inc.,*
127 S. Ct. 1727 (2007).................................................................... passim

*Kahn v. General Motors Corp.,*
135 F.3d 1472 (Fed. Cir. 1998)..............................................................24

*Lafate v. Chase Manhattan Bank (USA),*
123 F. Supp. 2d 773 (D. Del. 2000)........................................................4

*Lind v. Schenley Industries, Inc.*
278 F.2d 79 (3d Cir. 1960) (in banc), *cert. denied*, 364 U.S. 835 (1960)..................11

*Orthopedic Equipment Co. v. United States,*
702 F.2d 1005 (Fed. Cir. 1983)..............................................................22

*Panduit Corp. v. Dennison Manufacturing Co.,*
810 F.2d 1561 (Fed. Cir. 1987)..............................................................20

*Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.,*
75 F.3d 1568 (Fed. Cir. 1996)...........................................................16, 20

*Reeves v. Sanderson Plumbing Products, Inc.,*
530 U.S. 133 (2000).................................................................................3

*Rosemount, Inc. v. Beckman Instruments, Inc.*,
   727 F.2d 1540 (Fed. Cir. 1984)...........................................................................16, 17

*Shannon v. United States*,
   512 U.S. 573 (1994)................................................................................................8

*Stratoflex, Inc. v. Aeroquip Corp.*,
   713 F.2d 1530 (Fed. Cir. 1983).............................................................................16

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*,
   313 F. Supp. 2d 405 (D. Del. 2004)........................................................................3

*Tristrata Tech., Inc. v. Mary Kay, Inc.*,
   423 F. Supp. 2d 456 (D. Del. 2006)........................................................................2

*United States v. Flores*,
   454 F.3d 149 (3d Cir. 2006).................................................................................23

*United States v. Suggs*,
   230 Fed. Appx. 175 (3d Cir. 2007).......................................................................23

*Watson v. S.E. Pa. Transport Authority*,
   207 F.3d 207 (3d Cir. 2000)...................................................................................3

*Williamson v. Consolidated Rail Corp.*,
   926 F.2d 1344 (3d Cir. 1991).................................................................................3

*Z4 Technologies, Inc. v. Microsoft Corp.*,
   2007 WL 3407175 (Fed. Cir. Nov. 16, 2007).....................................................8, 24

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 50(a)(1).............................................................................................2

Fed. R. Civ. P. 59(a) ................................................................................................3

## I.    INTRODUCTION

Fairchild's motion for judgment as a matter of law on infringement should be denied because it is based on the alleged absence of a claim limitation upon which Fairchild never raised a dispute, either before or during trial.  After Power Integrations provided expert testimony that *all the limitations* of claim 1 of the '876 patent were present in the accused products, Fairchild's expert chose not to contest that the "frequency jittering" element from the preamble was present, instead basing his entire opinion of non-infringement on the requirement that the counter be "coupled."  Because Fairchild never contested infringement on the basis of the "frequency jittering" limitation during trial, it has waived that issue and cannot seek now to overturn the jury verdict based on a post-hoc "gotcha."  Even if Fairchild did not waive the issue, this Court should still deny Fairchild's motion because Power Integrations presented substantial evidence, from its expert Mr. Blauschild and from Fairchild's own product documentation, establishing that Fairchild's parts meet the "frequency jittering" limitation and supporting the jury's reasonable conclusion of infringement.

Fairchild's other attack on the '876 patent, asserting obviousness in view of the Martin reference, is equally unavailing.  Rather than point to any clear error by the jury, Fairchild instead asks this Court to reweigh the evidence, reassess the credibility of the witnesses and rely on unsupported attorney argument, in order to substitute its own judgment on the implicit factual findings supporting the jury's verdict.  Even after *KSR*, a district court's review of these fact-findings is still limited, and this Court cannot ignore the jury verdict.  The evidence presented at trial, when properly viewed in the light most favorable to Power Integrations, establishes that the jury was reasonable in concluding that the prior art as a whole taught away from the claimed invention and that the objective indicia of obviousness also weighed heavily in favor of Power Integrations.  Based on these implicit findings, and all of the evidence in the record, the jury's conclusion that the claim is not obvious is correct as a matter of law and should not be disturbed.

Fairchild's request for "judgment as a matter of law" based on an assertion that the jury instructions were flawed should also be denied.  Contrary to Fairchild's arguments, *KSR* did not

require any sweeping changes in this Court's standard jury instructions on obviousness. Rather, *KSR* reaffirms and reiterates that the proper test for obviousness is that set out in *Graham v. John Deere*, the case upon which this Court's model instructions are based. The specific, and limited, change in the law concerned the rigid application of the Federal Circuit's "TSM" test. This Court properly and adequately addressed that change by modifying the model instructions in this case. Fairchild's final point, that the "presumption of validity" instruction was flawed and that this Court should have given an instruction that the presumption is "much diminished" is directly contrary to Federal Circuit precedent issued after *KSR*. Moreover, Fairchild's argument has already been thoroughly considered by this Court and properly rejected. Thus, Fairchild's motion, be it for JMOL, or for new trial, based on the jury instructions should also be denied.

## II.    LEGAL STANDARDS

### A.    Judgment as a Matter of Law

A court should only grant judgment as a matter of law when it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The court is not free, on a post trial motion for judgment as a matter of law, to weigh evidence, pass on credibility issues, or substitute its judgment for that of the jury: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, JMOL motions are granted "sparingly" and only in those circumstances in which "the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 462 (D. Del. 2006) (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir.2003)).[1]

To prevail on a motion for judgment as a matter of law following a jury trial, the moving party must show that the jury's express or implied findings were not supported by "substantial

---

[1]    Regional circuit law governs consideration of motions for judgment as a matter of law. *See Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005) ("The denial of JMOL is not a patent-law-specific issue, so regional circuit law applies.").

evidence." This test requires the Court to determine "whether reasonable jurors viewing the evidence as a whole could have found the facts needed to support the verdict in light of the applicable law." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995) (citations and quotations omitted). In assessing the sufficiency of the evidence, the Court must review all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Because of this, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151 (internal quotations and citations omitted).

**B.    New Trial**

Under the Federal Rules of Civil Procedure, a new trial may be granted following a jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial is committed to the sole discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). However, a court should only grant a motion for a new trial when allowing the jury's verdict to stand would result in a miscarriage of justice. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). "A court should not disturb a verdict unless the verdict, 'on the record, cries out to be overturned or shocks [the court's] conscience.'" *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 408 (D. Del. 2004) (quoting *Williamson*, 926 F.2d at 1353) (brackets in original).

Where the complained of error is an allegedly erroneous jury instruction, if the error is harmless—one that does not prejudice the complaining party—the verdict should be affirmed. *Watson v. S.E. Pa. Transp. Auth.*, 207 F.3d 207, 221-22 (3d Cir. 2000). In determining whether to grant a new trial based on an allegedly erroneous jury instruction, the court must first review

3

the instructions as a whole to determine whether there has been an error, and then "whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice." *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 785 (D. Del. 2000).

## III.   FAIRCHILD IS NOT ENTITLED TO JMOL ON INFRINGEMENT.

Fairchild seeks to escape liability for infringing the '876 patent based on a defense never raised, either before or during trial. The first time Fairchild has contested that its accused products include a "frequency jittering" circuit—as this Court has defined it—is in the present JMOL motion. Fairchild never provided any expert opinion in its expert's reports or at trial, or any other evidence, that its accused products do not include the claimed frequency jittering circuit. Indeed, Dr. Horowitz's deposition testimony clearly establishes that he could not contest the presence of this limitation. Dr. Horowitz's entire opinion of non-infringement, as stated during trial and in his expert report, was that the accused products allegedly did not meet the "coupled" aspect of the "counter" element. Accordingly, Fairchild cannot rely on a different defense now.

Even if the Court considers Fairchild's argument, however, substantial evidence in the record supports the jury's verdict. Power Integrations' expert, Bob Blauschild, explicitly recited the Court's construction of "frequency jittering," stated he applied it to his analysis, and repeatedly stated that Fairchild's products included the claimed "jitter" or "frequency jittering" circuit. In addition, Mr. Blauschild showed the jury diagrams that clearly illustrate how Fairchild's accused products vary their frequency about a target frequency, described that variation with reference to specific frequency values, and also referred the jury to Fairchild datasheets where the claimed jittering is conclusively shown both numerically and graphically. In this context, Mr. Blauschild's conclusion that all the claim limitations are present in the accused products is not "bare", and this conclusion, coupled with all the other evidence, is more than adequate to support the verdict, especially in view of the fact that Fairchild's expert never disputed the frequency jittering issue.

4

**A.    Fairchild's Expert Never Contested That the "Frequency Jittering" Limitation Was Met in the Accused Products.**

After Power Integrations' expert, Mr. Blauschild, testified and provided the evidence that Fairchild's accused products infringed claim 1 of the '876 patent, Fairchild called Dr. Paul Horowitz in response. Dr. Horowitz provided his own explanation of the claimed invention, referring to the patent as "the digital frequency jittering patent" and referring several times to "jittering the frequency." [D.I. 419 (Trial Tr. 10/5/06) at 1044:7-17, 1046:13-16, 1048:14-18.] Dr. Horowitz never asserted that he was using this terminology in anything other than the way in which it had been construed by the Court; nor did he state he was using it any differently than Mr. Blauschild. When asked by Fairchild's counsel "What is the difference between Fairchild's circuit and the patent's circuit?" Dr. Horowitz replied that the claim required a counter to be coupled to a DAC and that Fairchild's circuit allegedly had no such coupling. [*Id.* at 1050:7-1051:9.] Dr. Horowitz pointed to something he called a "code conversion block" and explained his opinion that this block prevented the counter in the Fairchild part from being coupled to the D to A. [*Id.* at 1056:17-1059:8.] Dr. Horowitz never provided any other basis for his opinion that Fairchild's parts did not infringe the claim.

When summarizing his opinion on non-infringement, Dr. Horowitz was asked if all the elements of claim 1 were present in the Fairchild products; he responded:

> The **last claim element** that requires a **counter coupled to the digital to analog converter** among other things is not met in the Fairchild products because as I said, there is a block of logic that performs a code conversion transformation like and EPROM that we've—that the Power Integrations' expert has opined would decouple it."

[*Id.* at 1063:23-1064:10 (emphasis added).] When asked shortly after this, "is there another reason why you think that what's done by the Fairchild products is not an equivalent to what was done by the Claim 1 of the '876 patent?" Dr. Horowitz said "I'm trying to think what else we need here. **We're not coupled.** Are [sic "our"] structure is different. And we don't do it in a way that's unsubstantially different. The way – what we do, the way we do it, and the result all differ." [*Id.* at 1065:15-23 (emphasis added).] Dr. Horowitz repeated again that "we don't have the coupling as is required by the PI patent" and then went on to assert that Fairchild's circuit

5

was allegedly like the prior art. [*Id.* at 1065:24-1067:9.] At no time during his direct testimony, despite his usage of the "frequency jittering" claim language, did Dr. Horowitz ever opine that this limitation was not present in the accused products.

On cross examination, Dr. Horowitz confirmed his opinion on non-infringement was limited to the coupling issue:

> Q. Now Dr. Horowitz, you don't dispute that the Fairchild accuse[d] *jitter circuits* have an oscillator and a counter and a DAC; correct?
>
> A. I don't dispute that.
>
> Q. So your basis for your opinion is that your belief that the counter is not coupled to the DAC; correct?
>
> A. According to the Court's Markman interpretation and according to Power Integrations' expert.

[*Id.* at 1134:2-12 (emphasis added).] Finally, on re-direct, Dr. Horowitz again stated his opinion that Fairchild did not infringe "for the same reasons that I enunciated during earlier testimony today, and also in the reports." [*Id.* at 1144:14-19.] There is no ambiguity or room for misinterpretation in this testimony; Fairchild's sole basis for non-infringement was the allegation that the last element of the claim, and specifically the "coupled" requirement in that element, was allegedly not present. Neither Fairchild nor Dr. Horowitz ever challenged the presence of the claimed "frequency jittering" element.

Dr. Horowitz's reference to his "reports" further confirms that he never disputed what Fairchild now argues entitles it to JMOL. In his rebuttal report regarding infringement, and despite referring to the preamble "frequency jittering circuit" language, Dr. Horowitz asserted only that the claimed coupling limitation was not present in Fairchild's devices under Power Integrations' construction—the construction eventually adopted by this Court. [Ex. A[2] (Horowitz Rebuttal Report) at ¶¶ 93-100.] Dr. Horowitz never supplemented this report or provided any additional basis for a claim of non-infringement. Indeed, Dr. Horowitz's deposition testimony

---

[2]    All exhibit citations refer to the accompanying Declaration of William J. Marsden, Jr. filed herewith, unless otherwise noted.

REDACTED

shows that he believed ⸱

In view of this testimony, it is not surprising that Dr. Horowitz never challenged the frequency jittering limitation, either in his expert report or at trial. [*See* D.I. 419 (Trial Tr. 10/5/06) at 1055:11-1056:16 (Dr. Horowitz showing an animation of the Fairchild part showing the frequency changing in a repeating pattern in response to a control input to an oscillator).] Dr. Horowitz clearly recognized that Fairchild's products varied their frequency about a target frequency and that fact simply could not be credibly disputed. Having failed to raise this issue at trial, Fairchild cannot do so now to avoid the jury's verdict of infringement.

**B.    Power Integrations Presented Substantial Evidence that Supports the Jury's Verdict of Infringement.**

Fairchild's failure to raise the "target frequency" issue at any time before or during trial made it unnecessary for Power Integrations to dwell on the application of this claim element in its proofs at trial. Nevertheless, Power Integrations made a more than sufficient record at trial to support the jury's determination, in reaching its verdict on infringement, that Fairchild's accused products met this claim limitation.

At the outset of his testimony related to the '876 patent, Mr. Blauschild explained the purpose of "jittering" the frequency of a power supply. [D.I. 417 (Trial Tr. 10/3/06) at 453:10-454:18.] When asked for the specific definition of "frequency jittering" he applied to his work in this case, Mr. Blauschild replied with this Court's construction verbatim: "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce

7

electromagnetic interference." [*Id.* at 454:19-455:1.] This Court instructed the jury using the exact same definition just prior to the jury's deliberations.[3] [D.I. 420 (Trial Tr. 10/6/06) at 1654:16-19.] Throughout the remainder of his testimony, Mr. Blauschild repeatedly referred to "jitter," "jittering," "jitter circuit," and "jittering circuit." The jury clearly was justified in understanding Mr. Blauschild to be using these terms exactly as he said from the outset that they should be applied. Thus, his testimony that Fairchild's products included the claimed jittering or jitter circuit is evidence that the limitation was present in the accused products. [*See* D.I. 417 (Trial Tr. 10/3/06) at 462:23-463:3 ("That's to provide the control inputs for the digital to analog converter that the digital to analog converter is going to change to a varying analog *to jitter in the oscillator frequency.*" (emphasis added)); 471:2-22 ("Q. Does the FSD210 circuit that we've seen perform substantially the same function as the digital *frequency jittering circuit* of Claim 1 of the patent? A. It does. It has the same three blocks that are coupled together to vary the switching frequency in a controlled and cyclic manner." (emphasis added)); 473:4-14 ("I looked at the datasheet, reviewed the deposition testimony of the designer who said the *jitter circuitry* was the same." (emphasis added)); 476:7-23 ("This is the output of the digital analog converter that's coupled to the oscillator control terminal *to jitter the frequency.*" (emphasis added)).] The fact that Mr. Blauschild did not refer back to the "about a target frequency" aspect of the "frequency jittering" definition when applying it does not mean there is no evidence that this aspect of the construction is present in the Fairchild products.

In addition to repeatedly referring to the frequency "jittering" exhibited by the Fairchild products, Mr. Blauschild provided the jury with both visual and textual evidence of this limitation from Fairchild's own documents. Initially, Mr. Blauschild showed the example of "jitter" illustrated in Figure 2 of the patent and he then explained how this showed the frequency repeatedly moving up and down. [*Id.* at 458:11-459:12; PD-425.] The patent figure also clearly

---

[3]   The jury is presumed to have followed this instruction faithfully in reaching its verdict. *Z4 Techs., Inc. v. Microsoft* Corp., 2007 WL 3407175, at *14 (Fed. Cir. Nov. 16, 2007) (quoting from *Shannon v. United States*, 512 U.S. 573, 585 (1994), where the Court declined "to depart from the almost invariable assumption of the law that jurors follow their instructions").

shows the target frequency as a line across the middle of the graph. [PX-1 at PIF 00322.] Mr.
Blauschild then referred to the Fairchild datasheet that describes in text the variation of the
frequency, with the example for the FSD210 specifying variation between 130 and 138 kHz.
[D.I. 417 (Trial Tr. 10/3/06) at 460:12-461:4; PD-427 (referring to PX-143).][4]  Finally, Mr.
Blauschild provided the jury a side-by-side comparison of Figure 2 of the patent with a figure
prepared by Fairchild's own designer, Mr. Jang, that showed how Fairchild's devices varied their
frequency above and below a target frequency, also shown as a horizontal line across Mr. Jang's
figure. [*Id.* at 469:15-470:7; PD-443 (referring to PX-254 at FCS0099601).]  Because these
figures alone provided substantial evidence establishing that the accused Fairchild products vary
their frequency about a target frequency just like the claim, they are reproduced below:



Ref. 1: Jang Ex. 24 (PX-254) at FCS00099601          '876 Patent (PX-1) at PIF00322 (fig. 2 of patent)

In addition to the above figures shown during trial, Mr. Blauschild also directed the jury
to figures in Fairchild's datasheets that provide a similar illustration of how the frequency of
Fairchild's devices varied about a target frequency. [*See* PD-427 (referring to Figure 14 of the
FSD210 datasheet (PX-143)) and PD-449a (referring to Figure 11 of the FSDx0365RN datasheet

---

4     *See also* D.I. 417 (Trial Tr. 10/3/06) at 471:2-22; PD-444 (referring to PX-237 and
      highlighting substantially the same language).

9

(PX-237)).][5]  These figures, excerpted below with highlighting added, are equally clear and

unambiguous and provide additional evidence in support of the infringement verdict:



Figure 14. Frequency Modulation Waveforms



Figure 11. Frequency Modulation Waveform

Based on all this evidence, which Mr. Blauschild put in front of and explained to the jury

with repeated reference to how it illustrated the claimed frequency jittering in Fairchild's

products, Mr. Blauschild also repeatedly stated his opinion that the accused products contain *all

the limitations* of claim 1 of the '876 patent. [*See* D.I. 417 (Trial Tr. 10/3/06) at 459:24-460:5,

464:21-465:1, 470:8-12.]  Contrary to Fairchild's belated post-trial argument, these opinions

were not "bare conclusions"—they were explained in detail and supported by the substantial

evidence summarized above.  Thus, especially given that Fairchild's expert Dr. Horowitz never

contested that the claimed frequency jittering circuit element—including the "about a target

frequency" aspect—was present in Fairchild's products, the verdict is supported by the evidence

and Fairchild's JMOL on infringement should be denied.

---

[5]    The datasheets also provide numerical data showing that the frequency varies "±" around a
central or "Typ." frequency.  *See* PX143 at FCS0559001; PX-237 at FCS0344994.

## IV.    FAIRCHILD IS NOT ENTITLED TO JMOL ON INVALIDITY.

Fairchild's JMOL motion on validity asks this Court to re-weigh the evidence—including the credibility of the expert witnesses—and to substitute its judgment for that of the jury. Both are improper. *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) ("This limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'") (quoting *Lind v. Schenley Indus. Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (in banc), *cert. denied*, 364 U.S. 835 (1960)). The jury's verdict must be upheld because there is more than sufficient evidence upon which the jury reasonably and properly found that claim 1 of the '876 patent was not obvious in view of its implicit factual findings on the *Graham* factors. Rather than directly address the evidence, especially the detrimental evidence of its own witnesses, Fairchild parrots language from the *KSR* decision and makes conclusory lawyer arguments based on the same impermissible hindsight reasoning it attempted at trial – the same reasoning the jury properly rejected.

Fairchild's alternative argument, that it is somehow entitled to judgment as a matter of law because of asserted errors in the jury instructions, is facially erroneous. Even if there were prejudicial errors, at best they would be grounds for a new trial and not JMOL. In any event, this Court's instructions were correct as a matter of law, properly accounted for the specific change in the law set forth in *KSR*, and were completely consistent with subsequent Federal Circuit authority.

### A.    There Is Substantial Evidence to Support the Jury's Verdict That Claim 1 Is Not Obvious.

There is more than sufficient evidence, especially when viewed as it must be in a light most favorable to Power Integrations, to support the jury's conclusion that the claimed invention was not obvious in view of the Martin reference. This evidence included the testimony of Power Integrations' technical expert, Mr. Blauschild, about the nature of the teaching of the Martin patent, and the logical ramifications of that teaching. It also included evidence that Martin and

all the other prior art Dr. Horowitz relied on taught away from the solution claimed in the patent. The evidence of objective indicia of nonobviousness, referred to by the Federal Circuit as often the most probative and cogent evidence in the obviousness inquiry, included evidence of long felt need, failure of others to make the invention, commercial success, and copying of the invention. This evidence came not only from Power Integrations, but from Fairchild's own witnesses, although Fairchild continues to ignore its own evidence and the inescapable inferences to be drawn from it. Rather, Fairchild relies almost entirely on the conclusory opinions of Dr. Horowitz. But the jury already weighed his opinions and his credibility when it applied "common sense" as instructed by this Court to reject Fairchild's hindsight arguments. Fairchild has provided no basis in its motion to disturb that judgment.

1.     **The jury implicitly decided, in Power Integrations' favor, the disputes of fact over the content of the prior art.**

Fairchild's argument on obviousness is flawed from the start because it is based on the proposition that the "content of the prior art" was allegedly "undisputed." But there was significant dispute over what the prior art would have taught one of ordinary skill and the direction in which it would have led. Fairchild's expert asserted that it would be "easy" and "simple" to modify the circuit shown in the Martin patent to remove one of its components, the memory device, or ROM. [D.I. 557 (Trial Tr. 9/19/07) at 718:13-719:4, 720:17-721:3.] He based this argument entirely on a made-up analogy of converting "military" technology to "civilian" use and boilerplate language found at the end of every patent that "different arrangements of the components" shown were possible. [*Id.* at 721:10-20.] Power Integrations' expert, on the other hand, explained how the specific teaching of Martin made it clear that a memory component was necessary and essential to solving all the purposes of Martin's invention and that the boilerplate language, when read in the context of the specific language related to the memory component, would make that clear to a person of skill in the art. [D.I. 558 (Trial Tr. 9/20/07) at 1069:5-1071:8.] Most telling, Dr. Horowitz ignored the critical evidence from the other prior art that showed that, even if the goal was just to reduce EMI, those of skill in the art

12

before the '876 invention believed a memory-based circuit was necessary to solve the problem. [*See, e.g., id.* at 1070:6-18.]

More specifically, with regard to Martin itself, both Mr. Blauschild and Dr. Horowitz testified that every embodiment disclosed in Martin incorporated a memory device. [D.I. 557 (Trial Tr. 9/19/07) at 829:6-21; D.I. 558 (Trial Tr. 9/20/07) at 1069:14-1070:1.] Dr. Horowitz also admitted that all of Martin's claims, the evidence of what Martin himself believed was his invention, included memory components. [D.I. 557 (Trial Tr. 9/19/07) at 829:22-830:4.] While Dr. Horowitz relied upon the statement in Martin that "signature" might not always be a concern, he could point to nothing in the Martin reference that suggested the EMI problem itself could be solved without a memory, or that even hinted at removing the memory. [*Id.* at 829:4-830:4, 833:14-24, 838:1-12.] Rather, Dr. Horowitz just made a hindsight argument that one of skill "would have" recognized, even though Martin apparently did not, that EMI could be reduced even if the ROM were removed. [*Id.* at 830:5-17.] Mr. Blauschild disagreed with that interpretation of Martin, and with Dr. Horowitz's made-up analogy. Instead, Mr. Blauschild testified that one of skill would have recognized that the memory of the Martin circuit was essential and could not be discarded. [D.I. 558 (Trial Tr. 9/20/07) at 1035:3-1036:13, 1062:5-1064:9, 1069:5-1070:1.] In other words, Martin's express disclosure taught away from, and indeed led to directly the opposite, of what Fairchild asserted was the "easy" and "common sense" modification needed to result in the claimed invention.

Even if this were the only evidence in the record, the jury would have been justified in crediting Mr. Blauschild's opinions on what Martin taught, and taught away from, over Dr. Horowitz's conclusory opinion.[6] But there was additional evidence of the "content of the prior art" that Fairchild and Dr. Horowitz ignored at trial and Fairchild continues to ignore here. Mr. Blauschild explained to the jury that there was more prior art uncovered by Dr. Horowitz that he had asserted was relevant to using digital frequency jitter to address EMI and other forms of

---

[6]    This is especially true in light of the credibility gap between the experts. *See infra* Part IV(A)(2).

noise. [*Id.* at 1070:2-18.] What Dr. Horowitz failed to tell the jury on direct examination, but later admitted during cross, was that *all of the prior art* he found during the course of this litigation included a memory device in its circuit – even references that said nothing about "signature." [D.I. 557 (Trial Tr. 9/19/07) at 840:1-19.] Based on this additional teaching from the prior art, Mr. Blauschild supported his opinion that the "conventional wisdom" before Power Integrations' invention taught away from the idea that a more simple solution to the EMI problem—i.e. a solution without a ROM—could be achieved. [D.I. 558 (Trial Tr. 9/20/07) at 1070:2-18.] Based on this evidence, which Fairchild chose not to address, the jury could reasonably have reached the same conclusion as Mr. Blauschild.

### 2. The Jury Judged the Credibility of the Experts and This Court Cannot Re-weigh that Evidence.

Fairchild attempts to ignore the trial altogether by framing the question in terms of what its lawyers believe Martin teaches and what its expert, in hindsight, believes would have been "easy." But the jury's assessment of the prior art's teachings did not occur in a vacuum—the jury made its determination based upon its judgment of the credibility of the expert witnesses, both of whom testified about radically differing views of what the words on the page would mean and suggest to a person of ordinary skill in the art at the time of the '876 invention. The relative weight they applied to these opinions was based, in part, on the credibility of these experts, which included not only their relative backgrounds and experience, but their testimony on other subjects as well.

Mr. Blauschild testified that he did not believe the claimed invention would have been obvious in view of the Martin patent. [*Id.* at 1062:3-10.] Mr. Blauschild further explained to the jury his experience with designing integrated circuit chips especially for power supplies, the subject matter of this case. [*Id.* at 1017:11-17, 1018:10-16.] He also testified to lecturing and teaching the specific subject of power supply design. [*Id.* at 1018:17-22.] Moreover, Mr. Blauschild testified that he had real-world experience in designing commercially sold integrated circuit products. [*Id.* at 1017:21-1018:9.] Finally, he testified that he believed a person of

ordinary skill in the art would have more of an appreciation about the difference between integrated and discrete circuits than credited by Dr. Horowitz. [*Id.* at 1021:4-13.] Against this background, Mr. Blauschild based his opinion that the claim was not obvious on the specific teachings of Martin and the other prior art to a person of ordinary skill, who would have understood that a memory device was necessary to solve the EMI problem. [*See id.* at 1062:14-1064:9, 1069:5-1070:1, 1070:2-18.] As discussed in detail below, he also based this opinion on evidence of secondary considerations, including his personal knowledge of the efforts of others in the field of power supply controller design. [*See id.* at 1042:7-1046:1, 1071:2-11, 1064:15-1065:16, 1082:22-1083:20.] In light of this experience and evidence, Mr. Blauschild made the observation that taking a complicated prior art solution and recognizing how to simplify it, could be considered the essence of invention. [*Id.* at 1070:19-1071:1.] The jury was more than justified in crediting this testimony and concluding that Power Integrations' '876 patent was exactly such a nonobvious invention.

Dr. Horowitz, on the other hand, testified that he had never designed an integrated circuit himself; nor had he ever designed an integrated circuit power supply controller like those that are the subject of Power Integrations' patents and this entire case. [D.I. 557 (Trial Tr. 9/19/07) at 804:4-24.] And while arguing that the patent office had not considered "his" prior art and therefore implying it was entitled to great weight, Dr. Horowitz simultaneously testified that he had not even reviewed all the prior art cited on the face of the patents and so he could not possibly know all of what the PTO examiner considered. [*Id.* at 800:4-802:21.] Dr. Horowitz also testified that, despite having known about the Martin patent from the beginning of this case, he did not assert that Martin rendered the '876 patent claims obvious in his initial expert report, and that he had also changed his mind on the issue of anticipation. [*Id.* at 836:19-837:6.] Nor did Dr. Horowitz have an explanation for why all the prior art he found included memory devices, and thus taught away for the '876 invention like Martin, and he did not even attempt to explain why he had not brought up that fact himself. [*Id.* at 840:1-19.] Further, in his direct testimony, Dr. Horowitz used a demonstrative that clearly suggested that the prior art Martin

15

patent generated a regular pattern of frequencies—i.e. like the patented invention—yet when the inaccuracy of that testimony was pointed out by Mr. Blauschild, Dr. Horowitz had no explanation for his effort to mislead the jury. [*See id.* at 702:20-704:16; D.I. 558 (Trial Tr. 9/20/07) at 1065:4-1067:1; DD-840.] Nor did Dr. Horowitz even attempt, in either his expert reports or at trial, to rebut any evidence of the objective indicia of non-obviousness.[7] The jury could reasonably have judged Dr. Horowitz's credibility to be lacking, especially relative to Mr. Blauschild's, and discounted his conclusory opinions that, in hindsight, removal of the ROM would allegedly have been obvious. This Court should not re-weigh those judgments here.

In view of the above, and despite Fairchild's repeated attempts to conclude in hindsight that the removal of the ROM from Martin would be "simple", "easy" and "common sense," the substantial evidence of the prior art itself and all reasonable inferences drawn from the related testimony show that the opposite was true. The jury could reasonably have concluded that Fairchild failed to present even a prima facie case that the claim was obvious in view of Martin.

### 3.    The Substantial Evidence of Secondary Considerations Further Supports the Jury's Verdict of Non-obviousness.

The Supreme Court first established the relevancy of so called "secondary considerations" in *Graham v. John Deere, Co.*, 383 U.S. 1, 18 (1966). Since that time the Federal Circuit has repeatedly stated that these considerations, also referred to as "objective indicia," in fact, "may often be the most probative and cogent evidence in the record" on the question of obviousness. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983); *see also Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573-74 (Fed. Cir. 1996) (reversing grant of summary judgment in case where the appeals court agreed a prima facie case of obviousness was present for a plastic trading card holder invention, but where the district court failed to properly take into account evidence of secondary considerations in reaching conclusion on obviousness); *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d

---

[7]    These examples are specifically directed to the arguments on the '876 patent. This Court will appreciate that the jury had additional opportunity to judge Dr. Horowitz's credibility in the context of his testimony regarding the other circuit patents, which the jury also rejected.

1540, 1544, 1546 (Fed. Cir. 1984) ("[P]atent cases should not be mere games played with pieces of paper called references and the patent in suit." "The objective evidence, again composed of real world facts, is worthy of great weight in this case."). This is because these factors bring in objective evidence of what happened in the real world, evidence that is often more telling of the actual obviousness of an invention and which is an important safeguard against a hindsight analysis. *See Graham*, 383 U.S. at 36; *Rosemount*, 727 F.2d at 1546.[8] Even if Fairchild had made out a prima facie case for obviousness, and Power Integrations does not believe Dr. Horowitz's testimony is sufficient on that score, the substantial evidence of secondary considerations before the jury was enough for them to reasonably conclude the claimed invention was not obvious.

First, Power Integrations presented substantial evidence of the commercial success of products incorporating the claimed invention, including Power Integrations' TinySwitch family of products and all the infringing Fairchild products. Mr. Balakrishnan, Power Integrations' president and CEO, testified that the TinySwitch and LinkSwitch products incorporated the '876 invention. [D.I. 557 (Trial Tr. 9/19/07) at 899:6-900:22; PX-28.] Mr. Blauschild provided further support for this, and that Fairchild's products incorporate the invention as well, in his discussion of frequency jittering. [D.I. 558 (Trial Tr. 9/20/07) at 1064:15-1065:16.] Mr. Balakrishnan and Mr. Renouard, Power Integrations' vice president of worldwide sales, both testified to the TinySwitch's volume of sales, evidencing its commercial success. [D.I. 557 (Trial Tr. 9/19/07) at 900:23-901:10, 956:23-957:7, 959:13-960:9; PX-387.] Fairchild's executive vice-president and general manager of its analog product group, Mr. Conrad, testified to the almost $100 million in total sales for the infringing parts.[9] [*Id.* at 633:18-634:6.]

---

[8]  Nothing in *KSR* affects or diminishes the importance of objective indicia of non-obviousness. Indeed there appears to have been no evidence of secondary considerations presented in that case and the Court concluded with a single line that "Teleflex has shown no secondary factors . . . ." *KSR v. Teleflex*, 127 S. Ct. 1727, 1745 (2007).

[9]  Fairchild did not dispute that its products incorporate the '876 invention, nor can it in view of the jury's verdict on infringement.

Not only are products based on the '876 patent commercially successful, but the testimony from both Power Integrations' witnesses and Fairchild's own witnesses revealed a clear nexus between the digital frequency jitter invention and the commercial demand for products incorporating that feature. Both Mr. Balakrishnan and Mr. Renouard testified to their personal knowledge of the importance of the jitter feature to demand. [*Id.* at 901:11-15; D.I. 558 (Trial Tr. 9/20/07) at 957:13-958:9, 960:10-13.] In particular, Mr. Renouard testified that the feature was essential to Power Integrations selling to certain customers because the feature was needed to meet customer requirements. [D.I. 558 (Trial Tr. 9/20/07) at 961:6-963:21.] Mr. Conrad, Fairchild's witness, "presumed" the feature was included in Fairchild's parts to meet customer demand as well. [D.I. 557 (Trial Tr. 9/19/07) at 631:13-632:11.] Furthermore, Fairchild's own engineers and marketing witnesses testified that the jitter feature was very important to customers. [D.I. 558 (Trial Tr. 9/20/07) at 975:13-24 ("We added the frequency scaling [jitter]. . . because it was required by the customers."), 976:3-977:5 (explaining that Fairchild added the feature in response to marketing determining customer needs), 1002:17-24 (testifying that many customers require frequency jittering), 1009:5-20, PX-301 at FCS0518032 (showing frequency jittering important for all new green FPS products).] In light of all of this evidence, much of which Fairchild ignores, the jury could reasonably conclude both that the products incorporating the '876 patent invention were commercially successful and that this success was driven by the patented frequency jitter feature.

Second, the testimony of Mr. Blauschild, Mr. Balakrishnan and Dr. Horowitz supported the conclusion that there was a long-felt but unmet need to solve the EMI problem in the context of power supply controllers. Mr. Balakrishnan testified that the problem of EMI had existed since as long as switching power supplies had been around, and Dr. Horowitz agreed. [D.I. 557 (Trial Tr. 9/19/07) at 698:8-700:7, 881:3-8; D.I. 558 (Trial Tr. 9/20/07) at 1042:20-1043:16.] Mr. Blauschild testified that numerous companies were in the field of creating power supply controller chips over the relevant time period. [*Id.* at 1043:18-1044:7.] There was no evidence that any of these companies had successfully implemented a frequency jittering circuit; Mr.

18

Blauschild in fact testified that he had no knowledge of such a circuit or of any actual implementations of what was shown in the Martin patent. [*Id.* 1037:4-9, 1043:18-1044:7.] Nor was there evidence that any of the other prior art Dr. Horowitz relied upon before trial—two academic papers—were ever implemented in a real product. While Dr. Horowitz discussed how the EMI problem had been "solved" prior to the invention, he provided no evidence of such alleged solutions, other than the Martin patent which was never established to even work, let alone have been implemented in a real-world product. The jury could have reasonably concluded that Power Integrations' patented frequency jitter inventions, both the '851 and the '876 versions, solved long-felt needs in the marketplace.

Third, and related, the evidence established that the prior art Martin patent had been available to persons of skill in the art for over ten years, with additional memory-based prior art in the intervening period, and no one had seen the "easy" solution that Fairchild advocated in hindsight. Martin issued in 1987, eleven years prior to the filing date of the '876 patent. [*Id.* 1083:8-15.] Dr. Horowitz discovered two other "solutions" from the intervening period, each of which also required a memory device like Martin's ROM. [D.I. 557 (Trial Tr. 9/19/07) at 840:1-19; D.I. 558 (Trial Tr. 9/20/07) at 1070:2-18.] Although many companies and individuals with more than ordinary skill were working in the field and had the motivation to improve on the prior art, including Martin, no one came up with the invention prior to Power Integrations. [D.I. 558 (Trial Tr. 9/20/07) at 1043:18-1044:7, 1071:2-8, 1082:22-1083:20.] While the lapse of time, the availability of Martin, and the lack of recognition of the Power Integrations solution by another is, in and of itself, not determinative of the obviousness question, this evidence, coupled with the evidence that all of Dr. Horowitz's prior art taught away from the invention in exactly the same way, could reasonably have led the jury to conclude that the claimed invention ran contrary to the "conventional wisdom" and was not obvious.

Fourth, despite Fairchild's attempt to continually bury its proverbial head in the sand, the evidence from its own witnesses leads to the reasonable, indeed inescapable, conclusion that Fairchild intentionally copied the claimed invention of the '876 patent. Fairchild first argues that

19

it did not intend to copy an embodiment of the patent. But the issue is copying of "the invention," not the preferred embodiment. *See Pro-Mold*, 75 F.3d at 1572 (focusing on the "copying of the *invention* by others" (emphasis added)); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566 (Fed. Cir. 1987) (referring to copying of the "claimed invention"). The evidence that Fairchild's products incorporate the claimed invention, a fact Fairchild could not dispute after the verdict of infringement, supports the inference of copying.

But there is much more. The evidence also established that Fairchild reversed-engineered the TinySwitch product incorporating the '876 invention and, indeed, conducted a "seminar" on the circuit for its design engineers. [D.I. 558 (Trial Tr. 9/20/07) at 985:22-987:3; PX-255.] Evidence from other Fairchild witnesses showed the essential nature of the frequency jitter feature to customers in the marketplace; this provides inferential evidence that Fairchild had a motivation to copy Power Integrations, the company Fairchild believed was a technology leader. [*Id.* 1003:15-1004:11, 1010:3-24; PX-304; PX-207; *supra* Part III(B).] That Fairchild also copied Power Integrations' marketing and sales collateral further demonstrates an intent to emulate Power Integrations and its products. [D.I. 558 (Trial Tr. 9/20/07) at 996:23-999:8; PX-145.] Further, Fairchild is mistaken that its designer, Mr. Jang, testified he "didn't copy" because he used a voltage-based digital circuit rather than the circuit shown in the figure of the patent. It is undisputed that the patent, in its text and claims, specifically discloses voltage-based embodiments, a fact that Mr. Jang recklessly disregarded because he didn't bother to read the patent or its claims. [*See, e.g., id.* at 987:18-989:1; PX-1 at 2:42-55, claims 17-20.][10] Rather than evidence that Fairchild "didn't copy" the *claimed invention*, this evidence collectively supports the reasonable inference that Fairchild did exactly that. Additionally, even though the evidence from Fairchild's own witnesses sufficiently supports the conclusion of copying, Mr. Blauschild observed that Fairchild's circuit included so many aspects of the patented inventions—all of

---

[10]    The evidence of Fairchild's brazen copying is detailed more fully in Power Integrations' Opposition to Fairchild's Motion for New Trial Regarding Seagate, filed contemporaneously herewith. For brevity's sake, Power Integrations does not reiterate all of the materials set forth in that brief but instead refers the Court to the discussion contained therein.

which Fairchild was aware of when designing its products—that it would defy any assertion of "coincidence." [D.I. 558 (Trial Tr. 9/20/07) at 1044:22-1046:1.] When combined with the other evidence, the only reasonable inference is that Fairchild intended to and did copy all of the patented inventions, including those claimed in the '876 patent.

Power Integrations provided all of this evidence on objective indicia of non-obviousness to the jury during the trial and Fairchild failed to provide any evidence to the contrary. Indeed, its expert failed to engage on the merits of any of these factors. Because all of the evidence in the record on secondary considerations weighs in favor of a conclusion that the claimed invention was not obvious, the jury's verdict was reasonable and should not be disturbed.

**B.    The Court's Jury Instructions Properly Took *KSR* into Account and Were Correct as a Matter of Law.**

Fairchild's final attack on the validity verdict is to simply reargue its preferred jury instruction on the basis of the same improper reading of *KSR* that this Court has already considered and properly rejected. Fairchild's only new tack is to rely on the examination guidelines from the PTO and instructions from other courts, none of which is binding here. And while Fairchild no longer ignores the Federal Circuit precedent that squarely contradicts its argument, its only recourse is to suggest it is "incorrect" and to urge this Court not to follow it. This final attack, which is really a request for a new trial, should also be rejected.

Fairchild asserts that the obviousness instructions given by this Court "misstate the law." [D.I. 614 at 26.] But this is simply incorrect. The instructions as given are based on the 1993 Delaware Model instructions which, in turn, are based on the language of *Graham v. John Deere*. [*Compare* D.I. 562 at 36-40 *with* Del. Model Patent Jury Instructions 4.8-4.8.4, *available at*, http://www.ded.uscourts.gov/jury/Patent%20Jury%20Instructions.pdf.] In *KSR*, the Supreme Court repeatedly stated that the test for obviousness remains the same as was set forth in that seminal case—a flexible and "functional approach" to the issue. *KSR*, 127 S. Ct. at 1734-35, 1739, 1742-43. The instructions provided in this case track the language of *Graham* in utilizing a four step approach that was repeated and reiterated in *KSR* [*Compare* D.I. 562 at 36

(instruction IV.9 given to the jury) *with Graham*, 383 U.S. at 17 *and KSR*, 127 S. Ct. 1734 ("While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls.").] This Court's hindsight instruction, while based directly on the Federal Circuit case of *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983), *see* Delaware Model Jury Instruction 4.8.5, has its roots in *Graham*, 383 U.S. at 36 (analysis of secondary considerations "may also serve to 'guard against slipping into the use of hindsight'") and the Supreme Court reaffirmed its continuing validity in *KSR.* 127 S. Ct. at 1742 (citing *Graham*, 383 U.S. at 36) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.") Thus, the instructions this Court gave to the jury are completely consistent with the long established case law set out in *Graham* and reaffirmed in *KSR*.

The one specific change that the *KSR* Court made to the line of Federal Circuit cases interpreting *Graham* and its progeny was the rejection of a "rigid" approach that demanded the presence of a "teaching, suggestion or motivation" in the prior art. *KSR*, 127 S. Ct. at 1742-43 ("Rigid preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it."). The Court specifically rejected this "TSM" requirement because the Court believed it presented too inflexible an analysis; eliminating the rigid "TSM" *requirement* was the specific focus of the Court's holding and the only element of the Federal Circuit cases which was rejected. On the other hand, the *KSR* Court acknowledged that the presence or absence of a reason to combine or modify the prior art to obtain the patented invention could still be a relevant consideration, as long as it is considered as part of the overall flexible approach set out in Graham. *Id.* at 1741. This change in the law was accurately and appropriately reflected in the modification of the general obviousness instruction as used in this case. [*See* D.I. 562 at 36 (changing the "TSM" consideration from a *requirement* to a factor the jury "may consider".]

Unable to identify any specific alleged errors in the instructions that were given, Fairchild instead relies on a litany of dicta from the *KSR* opinion that Fairchild believes should have been

22

incorporated into the instructions. [*See* D.I. 614 at 26-33.] But as this Court has already

recognized, there is nothing in *KSR* that compels, or even suggests, any particular language for

jury instructions. Nor is there any precedent from the Federal Circuit in the wake of *KSR*

compelling any particular instructions. Rather, as always, the instructions are left to the sound

discretion of the trial court. *See, United States v. Suggs*, 230 Fed. Appx. 175, 183-84 (3d Cir.

2007) ("It is well-settled that the trial judge retains discretion to determine the language of the

jury charge." (quoting *United States v. Flores*, 454 F.3d 149, 161 (3d Cir. 2006)); *see also*

*Corrigan v. Methodist Hosp.*, 107 Fed. Appx. 269, 2712-73 (3d Cir. 2004) (applying same

standard of review in civil case). Nor is Fairchild's resort to instructions from other district

courts availing. These instructions are not binding here, nor is it surprising that different courts,

indeed different judges, provide different instructions tailored to the arguments of the specific

parties and the particular evidence before the jury; so long as the instructions are consistent with

the law, variation is acceptable and expected. *Suggs*, 230 Fed. Appx. at 183-84 (finding

variation in jury instruction language acceptable "so long as the court conveys the required

meaning"). Fairchild's reliance on the PTO examination guidelines is even further afield; the

standards for assessing obviousness, and the relative burdens of proof and presumptions,

including the process of claim construction and the assessment of the content of the prior art, are

completely different as between the Patent Office and the courts. In addition, the examination

guidelines are written for skilled patent practitioners, the examining corps, and not lay jurors.[11]

Nor is there anything in the instructions given here that is inconsistent with the examination

guidelines. Finally, Fairchild's complaint that this Court should have instructed the jury to apply

"common sense" as discussed in *KSR*, ignores the fact that this Court instructed the jury to do

just that in its general instructions on how to view all the evidence; it was unnecessary to repeat

that admonition in the obviousness instructions. [*See* D.I. 562 at 7 ( "You should use your

common sense in weighing the evidence.").] Accordingly, Fairchild's contention that this Court

---

[11]  Power Integrations is aware of no court that has adopted language from PTO guidelines, or
other PTO procedures for examiners from, for example, the Manual of Patent Examination
and Procedure ("MPEP") in its jury instructions.

23

was obligated to inject entire passages from *KSR* and instruct the jury as to a "dramatic loosening" of the obviousness standard is incorrect and cannot support either JMOL or a new trial.

Fairchild's final attack is to reargue that this Court erred in failing to instruct the jury that the presumption of validity was "much diminished." Fairchild, however, itself cites several Federal Circuit cases that explain that, while it may be easier to overcome the presumption in a case where the art relied upon was not considered by the PTO, the presumption of validity in that case still *does not change*. [*See* D.I. 614 at 31 (relying on *Kahn v. Gen. Motors*, 135 F.2d 1472, 1480 (Fed. Cir. 1998)).] As this Court has already recognized, nothing in *KSR* changes this; indeed *KSR* expressly declined to reach the issue and limited its dicta comments to the specific facts before it. [D.I. 553 at 2.] Further, in *Z4 Techs., Inc. v. Microsoft Corp.*, the Federal Circuit expressly stated that it was not error to refuse to instruct the jury that the presumption was "easier to overcome." 2007 WL 3407175, at *11-12 (Fed. Cir. Nov. 16, 2007). In light of *Z4* it certainly cannot be error to refuse to instruct the jury on a legally incorrect proposition that the presumption of validity was "diminished."

Because this Court's instructions, based both on what they included and what they did not, did not misstate the law, and indeed are entirely consistent with the law of obviousness both before and after *KSR*, Fairchild's request for judgment as a matter of law on the basis of the jury instructions should be denied.

## V.    CONCLUSION

For all the above reasons, Power Integrations this Court should deny Fairchild's motion for judgment as a matter of law with respect to non-infringement and invalidity of the '876 patent and enter judgment for Power Integrations on its claims related to infringement of this patent.

24

Dated:  December 21, 2007          FISH & RICHARDSON P.C.


                                    By:  _/s/ William J. Marsden, Jr._
                                         William J. Marsden, Jr. (#2247)
                                         Kyle Wagner Compton (#4693)
                                         919 N. Market Street, Suite 1100
                                         P.O. Box 1114
                                         Wilmington, DE  19899-1114
                                         Telephone: (302) 652-5070
                                         Email:  marsden@fr.com
                                         Email:  kcompton@fr.com

                                         Frank E. Scherkenbach
                                         225 Franklin Street
                                         Boston, MA 02110-2804
                                         Telephone: (617) 542-5070

                                         Howard G. Pollack
                                         Michael Headley
                                         500 Arguello Street, Suite 500
                                         Redwood City, CA 94063
                                         Telephone: (650) 839-5070

                                    ATTORNEYS FOR PLAINTIFF
                                    **POWER INTEGRATIONS, INC.**

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 2, 2008, I served the **REDACTED VERSION OF POWER INTEGRATIONS INC.'S OPPOSITION TO FAIRCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW CONCERNING NONINFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 6,249,876** on the following as indicated:


**<u>BY HAND DELIVERY</u>**            Attorneys for Defendants
Steven J. Balick                FAIRCHILD SEMICONDUCTOR
John G. Day                     INTERNATIONAL, INC. and
Ashby & Geddes                  FAIRCHILD SEMICONDUCTOR
500 Delaware Avenue, 8th Floor  CORPORATION, and third party
P. O. Box 1150                  INTERSIL CORPORATION
Wilmington, DE 19899


**<u>BY E-MAIL AND FEDERAL EXPRESS</u>**  Attorneys for Defendants
G. Hopkins Guy, III             FAIRCHILD SEMICONDUCTOR
Bas de Blank                    INTERNATIONAL, INC. and
Orrick, Herrington & Sutcliffe, LLP  FAIRCHILD SEMICONDUCTOR
1000 Marsh Road                 CORPORATION
Menlo Park, CA  94025


                                */s/ William J. Marsden, Jr.*
                                William J. Marsden, Jr.