IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

        v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

        Defendants.

C.A. No. 04-1371 JJF



## POWER INTEGRATIONS' ANSWERING BRIEF IN OPPOSITION TO FAIRCHILD'S MOTION FOR REMITTITUR, JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, NEW TRIAL CONCERNING DAMAGES

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com
Email: kcompton@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR PLAINTIFF
POWER INTEGRATIONS, INC.**

Dated: December 21, 2007

## **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ..................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III. STATEMENT OF FACTS ........................................................................2

IV.  LEGAL STANDARDS .............................................................................6

    A.   Judgment as a Matter of Law .....................................................6

    B.   Motion for a New Trial ..............................................................7

    C.   Remittitur as an Alternative to a New Trial.................................8

V.   ARGUMENT.........................................................................................8

    A.   The Jury Properly Awarded Damages Adequate to Compensate
            Power Integrations for Fairchild's U.S. Infringement Pursuant
            to 35 U.S.C. § 284..................................................................8

    B.   The Supreme Court's Decision in *Microsoft v. AT&T* is
            Irrelevant to the Analysis of the Jury's Award of Damages.....................13

    C.   Damages Calculations Presented to the Jury Were Not the
            Result of Mere Speculation or Guess........................................17

    D.   Evidence Presented at Trial is Sufficient to Support a Jury
            Finding of Indirect Infringement. ............................................19

    E.   The Jury's Award of Damages for Lost Profits, Price Erosion,
            and Future Lost Profits from Price Erosion is Reasonably
            Supported by the Evidence. ......................................................21

VI.  CONCLUSION......................................................................................27

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Aero Products International, Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006).................................................................7

*Allied Chemical Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980)...........................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).........................................................................6

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964).........................................................................9

*Belardinelli v. Carroll*,
   773 F. Supp. 657 (D. Del. 1991)..........................................................7

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
   977 F.2d 1555 (Fed. Cir. 1992)...........................................................8

*Browne v. Duchesne*,
   60 U.S. 182 (1856).........................................................................15

*Corp. v. SeaChange International, Inc.*,
   313 F. Supp. 2d 361 (D. Del. 2004).....................................................6

*Deepsouth Packing Co. v. Laitram Corp.*,
   406 U.S. 518 (1972).......................................................................14

*Del Maritime Avionics, Inc. v. Quinton Instrument Co.*,
   836 F.2d 1320 (Fed. Cir. 1987)....................................................passim

*Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co.*,
   235 U.S. 641 (1915).......................................................................15

*Evans v. Port Authority of N.Y. & N.J.*,
   273 F.3d 346 (3rd Cir. 2001)..............................................................8

*Fiskars, Inc. v. Hunt Manufacturing Co.*,
   221 F.3d 1318 (Fed. Cir. 2000).......................................................8, 13

*Fiskars, Inc. v. Hunt Manufacturing Co.*,
   279 F.3d 1378 (Fed. Cir. 2002)..........................................................22

*General Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983).........................................................................9

*Harris Corp. v. Ericsson Inc.*,
   417 F.3d 1241 (Fed. Cir. 2005)...........................................................6

*Hebert v. Lisle Corp.,*
   99 F.3d 1109 (Fed. Cir. 1996)...................................................................................21

*IPPV Enterprises, LLC v. Echostar Communications Corp.,*
   191 F. Supp. 2d 530 (D. Del. 2002)............................................................................8

*Johnson v. Campbell,*
   332 F.3d 199 (3d Cir.2003)........................................................................................6

*Joy Techs., Inc. v. Flakt, Inc.,*
   820 F. Supp. 802 (D. Del. 1993)............................................................................7, 8

*King Instruments Corp. v. Perego,*
   65 F.3d 941 (Fed. Cir. 1995).....................................................................................10

*Lam, Inc. v. Johns-Manville Corp.,*
   718 F.2d 1056 (Fed. Cir. 1983).............................................................................21, 26

*Metabolite Laboratoriess, Inc. v. Laboratories Corp. of America Holdings,*
   370 F.3d 1354 (Fed. Cir. 2004)...........................................................................19, 20

*Micro Chemical, Inc. v. Lextron, Inc.,*
   318 F.3d 1119 (Fed. Cir. 2003).................................................................22, 23, 24, 25

*Microsoft Corp. v. AT&T Corp.,*
   127 S. Ct. 1746 (2007)..................................................................................... passim

*Minco, Inc. v. Combustion Engineering, Inc.,*
   95 F.3d 1109 (Fed. Cir. 1996)...................................................................................24

*nCube Corp. v. SeaChange Int'l, Inc.,*
   313 F.Supp.2d 361 (D. Del. 2004 ...............................................................................6

*Panduit Corp. v. Stahlin Brothers FibreWorks, Inc.,*
   575 F.2d 1152 (6th Cir. 1978) ((1) ...........................................................................22

*Pannu v. Iolab Corp.,*
   155 F.3d 1344 (Fed.Cir.1998)......................................................................................6

*Reeves v. Sanderson Plumbing Products, Inc.,*
   530 U.S. 133 (2000)...............................................................................................7, 19

*Rite-Hite Corp. v. Kelley Corp.,*
   56 F.3d 1538 (Fed. Cir. 1995)...............................................................................10, 15

*State Contracting & Engineering Corp. v. Condotte America, Inc.,*
   346 F.3d 1057 (Fed. Cir. 2003).............................................................................8, 13

*Story Parchment Co. v. Paterson Parchment Paper Co.,*
   282 U.S. 555 (1931).....................................................................................................17

*Stryker Corp. v. Intermedics Orthopedics, Inc.,*
   96 F.3d 1409 (Fed. Cir. 1996)....................................................................................24

*TWM Manufacturing Co., Inc. v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir. 1986)...............................................................21, 23

*Tormenia v. First Investors Realty Co., Inc.*,
    251 F.3d 128 (3rd Cir.2000) ..............................................................................8

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*,
    313 F. Supp. 2d 405 (D. Del. 2004)....................................................................7

*Tristrata Tech., Inc. v. Mary Kay, Inc.*,
    423 F. Supp. 2d 456 (D. Del. 2006)................................................................6, 7

*Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996)..........................................................................26

*Water Techs. Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988)..........................................................................25

*Williamson v. Consolidated Rail Corp.*,
    926 F.2d 1344 (3d Cir. 1991)........................................................................7, 8

## STATUTES AND OTHER AUTHORITIES

35 U.S.C. § 271 .................................................................................................14

35 U.S.C. § 271(f)........................................................................................13, 15

35 U.S.C. § 284........................................................................................8, 9, 15

Fed. R. Civ. P. 50(a)(1)........................................................................................6

Fed. R. Civ. P. 59(a) ...........................................................................................7

## I.    INTRODUCTION

Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corp. (collectively, "Fairchild") ask the Court to discard a jury award of damages to plaintiff Power Integrations, Inc. ("Power Integrations") for Fairchild's willful infringement, but the jury properly awarded $33,981,781 for damages that resulted from infringement – direct and indirect – that took place in the United States. Fairchild's argument that this award of "worldwide" damages is improper because it is allegedly based on activity occurring entirely outside the United States has been repeatedly rejected by the Court and is contrary to the evidence at trial.

The jury was presented with evidence of infringing activity in the United States. Fairchild made, sold, and imported accused devices in the United States. The record also establishes that Fairchild makes offers for sale in the United States that result in sales abroad and that Fairchild induces and contributes to the infringing importation into the U.S. by others, including Samsung, of products containing the Fairchild parts. All of this activity *in the United States* foreseeably resulted in damage to Power Integrations, and the jury simply awarded damages adequate to compensate for the losses directly attributable to Fairchild's infringement.

Fairchild also attacks Power Integrations' damages calculations as "speculative," but the evidence at trial shows that Power Integrations' damages calculations were in fact exceptionally conservative. In particular, Power Integrations' expert, Mr. Richard Troxel, testified at trial that he limited his lost profits calculations to a very narrow subset of Power Integrations' customers and based those calculations on a 4 year life span, even though Power Integrations' products often last twice that long. The Court should find no fault with this conservative approach, particularly where there is ample support in the record for a much larger award.

Fairchild's reliance on *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007) is similarly misplaced. The Supreme Court in *Microsoft* held that activity occurring *entirely* outside of the United States cannot constitute infringement of a U.S. patent, but the Court did not say that foreseeable damages resulting from infringing activity *in the United States* are not

recoverable. The *Microsoft* decision does not address the issue of damages in any way, and it provides no basis for changing the jury's damages award here.

In short, the jury's damages award is proper as a matter of law and supported by substantial evidence; indeed, it is based on actual historical data and conservative estimates of sales growth and years of use of the products in question. The jury's decision should not be disturbed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Power Integrations filed suit against Fairchild for infringement of four U.S. patents on October 20, 2004. [D.I. 1.] On October 10, 2006, following a first trial on the issues of infringement, willful infringement, and damages, a jury found that Fairchild willfully infringed all four of Power Integrations' asserted patents and awarded slightly less than $34 million in damages. [D.I. 415.] On September 21, 2007, following a second trial on the issue of patent validity, a jury found all four of Power Integrations' asserted patents valid. [D.I. 555.]

Fairchild has repeatedly argued in the course of this litigation that Power Integrations cannot, as a matter of law, be awarded damages for activities that "occurred outside" of the United States. [*See* D.I. 31, 219, 356.] The Court has in all cases properly rejected Fairchild's arguments because the evidence shows that the activities did not in fact "occur outside" the U.S., as Fairchild says. [*See* D.I. 54, 266, 384.] In support of its present Motion [D.I. 613], Fairchild once again argues that Power Integrations cannot be awarded damages for infringing acts that "occurred outside" of the United States. The Court should once again reject this argument and deny Fairchild's motion.

## III.    STATEMENT OF FACTS

On three separate occasions, this Court has rejected the argument made here again by Fairchild that Power Integrations cannot be awarded damages where any part of Fairchild's infringement occurred "outside the United States."

On June 8, 2005, Power Integrations moved to compel the production of documents regarding activities related to Fairchild's use or sale of accused products outside of the United

2

States, which Fairchild had refused to produce.  [D.I. 29.]  Fairchild opposed Power Integrations'

motion, arguing that

[D.I. 31 at 1.]  The Court rejected Fairchild's

argument, granting discovery regarding Fairchild's foreign use and sale as relevant to indirect

infringement by inducing or contributing to third-party importation into the United States and

also to infringing offers to sell made in and from the United States.  [D.I. 54 at 4.]

On March 17, 2006, Fairchild moved for partial summary judgment of non-infringement



[D.I.

219 at 1.]  The Court rejected Fairchild's argument, and denied its motion, noting that the factual

nature of the inquiry required a full trial on the merits.  [D.I. 266.]

In advance of the first trial, on September 1, 2006, Fairchild filed nineteen motions *in

limine*.  [D.I. 356.]  Among other things, Fairchild argued that

The Court denied both motions *in limine*, noting that they were

3

essentially the same as Fairchild's above-mentioned Motion for Partial Summary Judgment of Non-Infringement (Foreign Sales), which the Court had already previously denied. [D.I. 384 at 2-3.]  The Court also corrected Fairchild's characterization of the Court's order [D.I. 334], explaining that "the Court did not intend for its statements to be construed as a commentary on the evidence as a whole or on the broader issue of alleged foreign sales and third party importation presented here." [D.I. 384 at 3, n.1.]

The first jury found Fairchild to have willfully infringed Power Integrations' patents on October 10, 2006. [D.I. 415.]  At that trial, Power Integrations presented evidence that:

a)  Power Integrations developed and patented integrated power supply chip designs that provided significant advantages over previous technologies and contributed to the success of Power Integrations' products [D.I. 416 (Trial Tr. 10/2/06) at 273:19-274:6; D.I. 417 (Trial Tr. 10/3/06) at 312:3-6, 317:9-14; *see also* D.I. 558 (Trial Tr. 9/20/07) at 1152:18-1153:15, 1156:6-13; PX51];

b)  Fairchild copied Power Integrations' patents to develop infringing products;[1]

c)  prior to Fairchild's infringement, Power Integrations was the sole provider of integrated power supply chips having integrated frequency jitter [*see* D.I. 417 (Trial Tr. 10/3/06) at 320:5-322:9];

d)  prior to Fairchild's infringement, Power Integrations had 100% of the integrated power supply chip business of certain large clients, in particular the business of supplying chips for use in Samsung Wireless cell phone chargers  [D.I. 417 (Trial Tr. 10/3/06) at 608:19-611:8; D.I. 418 (Trial Tr. 10/4/06) at 658:1-13, 747:15-748:21];

e)  through its infringement, Fairchild was able to enter a market in which it did not previously compete [*id.*; D.I. 417 (Trial Tr. 10/3/06) at 609:21-610:15];

f)  Fairchild manufactured infringing chips *in the United States* to meet the needs of Samsung Wireless cell phone subcontractors [D.I. 419 (Trial Tr. 10/5/06) at 1023:4-16; D.I. 418 (Trial Tr. 10/4/06) at 772:23-773:15 (manufacturing was done in the United States to address capacity issues); 774:12-23];

g)  by offering infringing products to Samsung, with the involvement of its U.S. sales force, Fairchild forced Power Integrations to drastically reduce its prices [D.I. 418 (Trial Tr. 10/4/06) at 659:1-664:2, 770:13-19];

h)  by offering and selling infringing products to Samsung, Fairchild captured a large percentage of business previously held by Power Integrations [D.I. 417 (Trial Tr.

---

[1]  The extensive evidence of Fairchild's copying of the patents-in-suit is set forth in detail in Power Integrations opposition to Fairchild's motion for new trial based on the decision in *In re Seagate*, filed contemporaneously herewith.  Rather than repeat that evidence here, Power Integrations refers the Court to that briefing and incorporates its discussion by reference.

10/3/06) at 608:19-611:8; (re qualification); D.I. 418 (Trial Tr. 10/4/06) at 658:1-13, 747:15-748:21];

i)    customers like Samsung do not make country-specific versions of the products incorporating the infringing chips. Because the same chip goes into the same charger worldwide—if they can't sell products in the U.S., they won't sell them anywhere [D.I. 418 (Trial Tr. 10/4/06) at 751:7-753:20, 768:4-24, 809:22-810:14; *see also* D.I. 417 (Trial Tr. 10/3/06) at 319:11-320:4];

j)    but for Fairchild's U.S. infringement and Samsung's ability to ship the infringing parts into the U.S., without which Fairchild could not have secured the Samsung business, Power Integrations would not have been forced to reduce its prices and would not have lost market share for the Samsung Wireless business [D.I. 418 (Trial Tr. 10/4/06) at 659:1-664:2, 809:22-810:16, 751:7-753:20; D.I. 417 (Trial Tr. 10/3/06) at 609:24-614:8.].[2]

On the basis of the evidence presented, the jury awarded Power Integrations compensatory damages in excess of $33 million consisting of lost profits on certain identified sales and a reasonable royalty on the rest. [D.I. 415.] Following a second trial, on September 21, 2007, a second jury returned a verdict upholding the validity of all four of Power Integrations' asserted patents. [D.I. 555.]

Now, after having been adjudged a willful infringer, Fairchild seeks to avoid the consequences of the harm its has caused Power Integrations, moving the court to grant Remittitur, Judgment as a Matter of Law, or, in the Alternative, New Trial Concerning Damages. [D.I. 613.] In support of its Motion, Fairchild asserts yet again that "as a pure matter of law," Power Integrations cannot recover damages for infringement that Fairchild characterizes as occurring outside of the United States, notwithstanding the Court's repeated rejection of that argument and notwithstanding what the evidence actually shows.[3] Fairchild also argues that the

---

[2]    It should not be overlooked that Power Integrations did not claim lost profits damages for all the lost sales and price erosion it believes it suffered due to Fairchild's infringement. Instead, Power Integrations focused on the Samsung-related accounts because of the overwhelming evidence that this business could be, and was served in the relevant time, only by Fairchild or Power Integrations. Thus, even the damages awarded do not fully compensate Power Integrations for all the lost profits damages it believes it has suffered.

[3]    In its present Motion, Fairchild acknowledges the Court's previous rejection of its legal arguments by revisiting its motion *in limine* regarding evidence of damages based on third party U.S. importation of accused products. Fairchild argues that "[t]he Court should have granted Fairchild's Motion in Limine (D.I. 356) and precluded [Power Integrations' expert] from speculating about such importation," yet cites the same authority, and even reproduces

jury's award of damages cannot be supported by the evidence presented at trial. The Court should reject Fairchild's arguments and deny Fairchild's Motion.

## IV.    LEGAL STANDARDS

### A.    Judgment as a Matter of Law

The granting of judgment as a matter of law is an uncommon event requiring a finding of an extraordinary deficiency in evidence—a court may grant JMOL only on a finding that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Court is not free, on a post trial motion for judgment as a matter of law, to weigh evidence, pass on credibility issues, or substitute its judgment for that of the jury: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, JMOL motions are granted "sparingly" and only in those circumstances in which "the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F.Supp.2d 456, 462 (D. Del. 2006) (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir.2003)).[4]

To prevail on a motion for judgment as a matter of law following a jury trial, Fairchild "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *nCube Corp. v. SeaChange Int'l, Inc.*, 313 F.Supp.2d 361, 366 (D. Del. 2004) (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed.Cir.1998)). Moreover, the evidence must be viewed in favor of Power Integrations. In assessing the sufficiency of the evidence, a court must review all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and

---

verbatim a footnote previously offered in support of its motion *in limine*, which the Court denied. *See* D.I. 613 at 13 and n.4. Given that Fairchild cannot come up with anything new, precisely because its position is incorrect, the result should be the same as well.

[4]    Regional circuit law governs consideration of motions for judgment as a matter of law. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005) ("The denial of JMOL is not a patent-law-specific issue, so regional circuit law applies.").

reasonable inferences that could be drawn from it. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Because of this, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151 (internal quotations and citations omitted).

### B.    Motion for a New Trial

The granting of a motion for new trial requires some grievous error that results in a verdict that is a miscarriage of justice. Under the Federal Rules of Civil Procedure, a new trial may be granted following a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). While the decision whether to grant a new trial is committed to the discretion of the trial court, *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980), "[a] jury verdict is not to be set aside merely on the basis of the Court substituting its judgment for that of the jury. Rather, the verdict must be permitted to stand it if is supported by evidence so long as nothing suggests that the decision was guided by partiality, prejudice, mistake or corruption." *Joy Techs., Inc. v. Flakt, Inc.*, 820 F. Supp. 802, 805 (D. Del. 1993) (citing *Belardinelli v. Carroll*, 773 F. Supp 657, 659 (D. Del. 1991)). A court should proceed particularly cautiously in considering a motion for new trial on the ground that the jury's verdict was against the weight of the evidence, "because such a ruling would necessarily substitute the court's judgment for that of the jury." *Tristrata Tech. v. Mary Kay*, 423 F.Supp.2d at 468 (citing *Klein v. Hollings*, 922 F.2d 1285, 1290 (3d Cir. 1993)).[5]

A motion for a new trial is appropriately granted only when allowing the jury's verdict to stand would result in a miscarriage of justice. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). "A court should not disturb a verdict unless the verdict, 'on the record, cries out to be overturned or shocks [the court's] conscience.'" *Tristrata Tech., Inc. v. ICN*

---

[5]    Regional circuit law governs consideration of motions for a new trial. *See Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006) ("We review the denial of a motion for a new trial under the law of the regional circuit.").

*Pharms., Inc.*, 313 F. Supp. 2d 405, 408 (D. Del. 2004) (quoting *Williamson*, 926 F.2d at 1353). Accordingly, "[d]istrict courts will generally grant such a motion only if some grievous error occurred during trial which rendered the trial unfair." *Joy Techs.*, 820 F. Supp. at 814 (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1581 (Fed. Cir. 1986)).

### C.    Remittitur as an Alternative to a New Trial

A jury's decision with respect to an award of damages "must be upheld unless the amount is 'grossly excessive or monstrous,' clearly not supported by the evidence, or based only on speculation or guesswork." *State Contracting & Eng'g Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1072 (Fed. Cir. 2003) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580 (Fed. Cir. 1992)). Only if a court deems a jury damages award "so unreasonably high that it would be unconscionable to permit it to stand," may the Court, in its discretion, offer a reduced damages award as an alternative to a new trial. *IPPV Enterprises, LLC v. Echostar Communications Corp.*, 191 F.Supp.2d 530, 572-573 (D. Del. 2002).

Thus, the Court must uphold the damages award if a reasonable basis exists to support the award. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 351-352 (3rd Cir. 2001). Accordingly, remittitur is properly denied if, although conflicting positions were offered, there was "substantial evidence whereby a reasonable jury could have reached the damages verdicts [it] reached." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1325 (Fed. Cir. 2000). In evaluating the award, "[t]he dispositive legal question is whether, given the evidence presented, the jury's award was so irrational as to shock the judicial conscience." *Tormenia v. First Investors Realty Co., Inc.*, 251 F.3d 128, 138 (3rd Cir.2000). If remittitur is awarded it should "be set at the 'maximum recovery' that does not shock the judicial conscience." *Evans*, 273 F.3d at 351-352.

## V.    ARGUMENT

### A.    The Jury Properly Awarded Damages Adequate to Compensate Power Integrations for Fairchild's U.S. Infringement Pursuant to 35 U.S.C. § 284.

A patentee is entitled to a broad scope of compensatory damages under 35 U.S.C. 284. In addition to the minimum of a reasonable royalty, Power Integrations is entitled to recoup any

losses sustained as a result of the infringement, including lost profits and price erosion. All that is required is a showing of a reasonable probability that, but for the U.S. infringement—both direct and indirect—that has been established, Power Integrations would have made the sales made by Fairchild. Rather than focus on this question, Fairchild's entire argument is misdirection aimed at the irrelevant issue of where other activity by Fairchild occurred.

A patentee is entitled to compensatory damages for losses incurred due to infringement of its patent pursuant to 35 U.S.C. § 284, which states in relevant part:

> Upon a finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . .

By its terms, application of § 284 is invoked only after infringement has been established. Once infringement has been established, a separate, independent inquiry is necessary to determine the amount of "damages adequate to compensate for the infringement."

United States Supreme Court precedent holds that an award of "damages adequate to compensate for the infringement" under § 284 is broadly inclusive: "Congress sought to ensure that the patent owner would in fact receive full compensation for any damages [the complainant can prove] he suffered as a result of the infringement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-5 (1983) (emphasis added, internal quotations omitted).

Once infringement is established, "damages adequate to compensate" are measured by the patentee's pecuniary losses, and do not depend in any way upon the infringer's gain:

> "[D]amages" [that] may be recovered [under § 284] have been defined by this Court as "compensation for the pecuniary loss [the patentee] has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts." They have been said to constitute "the difference between [the patentee's] pecuniary condition after the infringement, and what [the patentee's] condition would have been if the infringement had not occurred." The question to be asked in determining damages is "how much the Patent Holder . . . suffered by the infringement. And that question [is] primarily: had the Infringer not infringed, what would the Patent Holder . . . have made?"

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (citations omitted). Accordingly, the scope of compensatory damages has been construed broadly to include, in addition to a baseline royalty, any other losses that the patentee sustained as a result of the

9

infringement. "[T]he language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit [of a reasonable royalty] and no other limitation." *Rite-Hite Corp. v. Kelley Corp.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). "Section 284 imposes no limitation on the types of harm resulting from infringement that the statute will redress. The section's broad language awards damages for any injury as long as it resulted from the infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995).

The "question to be asked in determining damages" posited in *Aro* has been interpreted as stating a "but for" test. A patentee seeking damages beyond the minimum reasonable royalty award bears the burden of showing that additional losses resulted from the infringement. "The general rule for determining the actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement. In order to recover lost profits a patentee must show a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987).

The Federal Circuit further refined the "but for" test in *Rite-Hite v. Kelley*. Adopting the "proximate cause" standard of liability applied in the common law of torts, the Court held that all losses reasonably foreseeable are compensable:

> We believe that under § 284 of the patent statute, the balance between full compensation, which is the meaning that the Supreme Court has attributed to the statute, and the reasonable limits of liability encompassed by general principles of law can best be viewed in terms of reasonable, objective foreseeability. If a particular injury was or should have been reasonably foreseeable by an infringing competitor in the relevant market, broadly defined, that injury is generally compensable absent a persuasive reason to the contrary. . . . Being responsible for lost sales of a competitive product is surely foreseeable; such losses constitute the full compensation set forth by Congress, as interpreted by the Supreme Court, while staying well within the traditional meaning of proximate cause.

56 F.3d at 1546-47.

At trial, Power Integrations presented evidence of several types of infringement in the United States by Fairchild, including direct sales or offers to sell the infringing parts in the



United States, manufacturing of infringing parts in the United States, offers for sale from the United States that result in actual sales abroad, and inducing and contributing to importation of infringing parts into the United States by, among other things, affirmatively indemnifying foreign customers like Samsung against U.S. infringement claims.[6] On the basis of all this evidence, the jury found Fairchild guilty of infringement.

In addition, Power Integrations presented substantial evidence of pecuniary loss, which was foreseeably caused by Fairchild's infringement. Power Integrations showed, for example, that prior to Fairchild's infringement, it had 100% of the business of supplying controller chips for use in a certain class of chargers sold with Samsung cell phones [D.I. 417 (Trial Tr. 10/3/06) at 608:19-611:8; D.I. 418 (Trial Tr. 10/4/06) at 658:1-13, 747:15-748:21]; that prior to the introduction of the infringing chips, Fairchild did not compete in this market because only chips with the patented features were acceptable to meet the customer's specifications [D.I. 417 (Trial Tr. 10/3/06) at 615:11-616:17]; that after introducing its infringing chips, Fairchild was the only supplier that competed directly with Power Integrations for this business [D.I. 418 (Trial Tr. 10/4/06) at 881:11-16]; that Fairchild's direct competition required Power Integrations to slash its prices [D.I. 418 (Trial Tr. 10/4/06) at 659:1-664:2, 813:24-818:10]; that after introducing its infringing chips, Fairchild captured a substantial percentage of business from the Samsung subcontractors for which Power Integrations was previously the sole supplier [D.I. 417 (Trial Tr. 10/3/06) at 608:19-611:8; D.I. 418 (Trial Tr. 10/4/06) at 658:1-13]; and that Fairchild made the infringing chips in the United States to meet the demand of this particular set of customers. [D.I. 419 (Trial Tr. 10/5/06) at 1023:4-16; D.I. 418 (Trial Tr. 10/4/06) at 772:23-773:15 (manufacturing was done in the United States to address capacity issues); 774:12-23.]

---

[6]  On December 20, 2007, the day before this opposition brief was due, Power Integrations received still more evidence of this type from Fairchild in the form of

*See, e.g.,* Ex. A (Fung letter producing new production), Exs. B, C, D                                                    Power Integrations has not yet had an opportunity to examine this new evidence in detail, but there is no question Fairchild should have produced them earlier. Exhibits are attached to the Declaration of William J. Marsden, Jr. filed concurrently herewith.

Power Integrations also provided evidence that Samsung imported into the U.S. cell phones with chargers including the infringing chips, that Samsung would not have purchased Fairchild's infringing chips at all if it could not ship chargers having those chips into the U.S., one of its primary markets, and that Fairchild knew or should have known of these facts when taking the Samsung business from Power Integrations. [D.I. 418 (Trial Tr. 10/4/06) at 751:23-753:20, 809:22-810:16; D.I. 419 (Trial Tr. 10/5/06 at 1015:2-20 ("What you're really saying it's not that we don't know these products are sold in the U.S., we just don't know exactly how many, right? A. That's right.").][7] Power Integrations also provided evidence of the harm to Power Integrations attributable to Fairchild's infringement with respect to the Samsung suppliers. [D.I. 418 (Trial Tr. 10/4/06) at 658:1-13, 754:17-755:17, 793:15-795:13, 802:6-809:18 ("Q. And almost nine million of that was the Samsung accounts you just went through? A. That's correct."), 813:24-820:23 (discussing calculation of price erosion damages attributable only to the subset of sales to Samsung wireless subcontractors).]

A patentee need only show a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer. *Del Mar Avionics*, 836 F.2d at 1326. The jury was so instructed. [D.I. 413 at 37.] A reasonable jury could rationally conclude from the evidence presented that the loss of sales to Samsung and other accounts to Fairchild and the erosion of prices on the sales Power Integrations did retain, was foreseeably caused by Fairchild's infringement. This was the conclusion reached by a disinterested, third-party analyst knowledgeable about the market in which both Power Integrations and Fairchild sell. [D.I. 418 (Trial Tr. 10/4/06) at 747:15-749:13, 754:17-755:17.] Indeed, the jury credited Power Integrations' evidence of its pecuniary losses, and adopted the damages figures proposed by Power Integrations' damages expert.

---

[7]    It was also established that Fairchild's parts could not be used without employment of the infringing integrated soft start and integrated frequency jitter features. *See* D.I. 417 (Trial Tr. 10/3/06) at 478:12-21, 498:3-16. Thus, the Fairchild chips have no substantial non-infringing uses, and Fairchild contributed to Samsung's directly infringing importation by supplying the chips.

Fairchild argues that the highest amount of damages a jury could properly have awarded Power Integrations is a percentage of $765,724 — the value to Fairchild of only its stipulated infringing activities. This argument ignores the requirement under *Aro* that damages compensate the patentee for pecuniary losses due to infringement, irrespective of gain or loss to the infringer. This argument also assumes, without justification, that only Fairchild's stipulated infringement could properly have been found compensable by a reasonable jury. As noted, substantial evidence was adduced at trial whereby a reasonable jury could have reached the damages verdict it reached. *Fiskars*, 221 F.3d at 1325. The award of just under $34 million is neither grossly excessive nor monstrous, *State Contracting*, 346 F.3d at 1072, considering that Power Integrations lost at least $100 million dollars as a result of Fairchild's infringement, and even that $100 million number only captured the harm through October, 2006. [D.I. 418 (Trial Tr. 10/4/06) at 675: 7-676:11, 754:17-755:4 (calculating losses of approximately $10 million per year with respect to a single account—Samsung.] Accordingly, the jury verdict should be upheld, and Fairchild's argument should be rejected.

### B.    The Supreme Court's Decision in *Microsoft v. AT&T* is Irrelevant to the Analysis of the Jury's Award of Damages.

The Court has repeatedly rejected Fairchild's assertions that Power Integrations' damages, as a matter of law, must be restricted to a reasonable royalty on direct U.S. sales only. Fairchild repeats the same argument here, trying now to use the Supreme Court's recent decision in *Microsoft v. AT&T*, 127 S. Ct. 1746 as a way to refresh its stale argument. The effort again fails. *Microsoft* deals with what constitutes infringement, not the scope of damages. In *Microsoft*, the Supreme Court addressed only whether acts solely occurring outside of the United States constitute infringement of a U.S. patent. The Court did not discuss the issue of obtaining damages reasonably foreseeable and tied to activity that took place in the United States.

The actual holdings of *Microsoft* are quite narrow. First, *Microsoft* held that a physical copy of a software application, such as one recorded on a CD-ROM, qualifies as a "component" under 35 U.S.C. § 271(f), while software in the abstract does not. 127 S.Ct. at 1756. Second,

*Microsoft* held that sending a master disc containing a software program from the United States to a foreign country, where it is copied to make other discs, and the copies are installed on computers that were not supplied from the United States and are not subsequently sold in the United States, does not constitute infringement of a U.S. patent under § 271(f). *Id.* at 1757. In this case, however, there has been a finding of infringement based on manufacturing, sales activity and importation taking place *in the United States*. Thus, the *Microsoft* decision is inapposite.

Fairchild attempts a sleight of hand to try to convert *Microsoft* into a damages case. First, Fairchild labels the jury's damages award as "worldwide" damages, then cites *Microsoft* for the unremarkable proposition that "it is the general rule under United Sates patent law that no infringement occurs when a patented product is made and sold in another country." 127 S.Ct. at 1750. Fairchild then asserts the non-sequitur that "[t]he Supreme Court has been abundantly clear — Power Integrations cannot recover 'worldwide' damages for alleged infringement of a United States patent." [D.I. 613 at 6 (citing *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972), for the proposition that "[o]ur patent system makes no claim to extraterritorial effect.").] Fairchild's distortion of the cases and avoidance of the facts of this case should be rejected.

Neither the case law that Fairchild cites nor its characterization of the evidence in this case provides a basis for altering the jury's damages award here. Both *Microsoft* and *Deepsouth* address the question of whether activity that occurs entirely outside of the United States can constitute infringement of a U.S. patent under 35 U.S.C. § 271.[8] Those cases make no holdings with respect to an award of damages under 35 U.S.C. § 284, and certainly create no bar to recovery of damages where infringement has already been established on the basis of acts that

---

[8]    Fairchild's reliance on *Deepsouth* is particularly inapt, given that Congress amended 35 U.S.C. § 271 in response to the Supreme Court's decision, expanding the extraterritorial reach of U.S. patent law by explicitly including the extraterritorial conduct that the Court found not to infringe a U.S. patent as a statutorily-defined act of infringement. *See Microsoft*, 127 S.Ct. at 1752, n.3.

14

occurred within the United States.[9] In short, *Microsoft* and *Deepsouth* cannot be read as setting forth any rule regarding the calculation of damages.

On the other hand, the Federal Circuit has discussed the relevant damages principles: the *Rite-Hite* decision supports awarding damages for losses suffered that are reasonably foreseeable and stem from infringing activities taking place in the United States. First, *Rite-Hite* noted that "[T]he language of the statute is <u>expansive</u> rather than limiting." 56 F.3d at 1544 (emphasis added). *Rite-Hite* further noted that the statutory language calls for "full compensation" under Supreme Court precedent, requiring the inquiry into compensation to be viewed "in terms of reasonable, objective foreseeability. If a particular injury was or should have been reasonably foreseeable by an infringing competitor in the relevant market, broadly defined, that injury is generally compensable absent a persuasive reason to the contrary." *Id.* at 1546-47.

No doubt realizing the import of *Rite-Hite*, Fairchild again distorts the *Microsoft* decision, implying that *Microsoft* somehow overruled the Federal Circuit's decision in *Rite-Hite* by arguing that "a decade old Federal Circuit case cannot overcome the weight of Supreme Court precedent holding that one cannot infringe a U.S. patent by making and selling a product abroad." [D.I. 613 at 6.] The *Microsoft* and *Rite-Hite* decisions, however, do not conflict in any way. *Microsoft* addresses only the issue of infringement under § 271(f) and does not address damages at all. *Rite-Hite* addresses damages that are compensable under § 284 once U.S. infringement has been established, but does not address the definition of infringing conduct at all. Further, *Rite-Hite* does not address extraterritorial application of U.S. patent law.[10]

---

[9]   Fairchild also cites *Browne v. Duchesne*, 60 U.S. 182 (1856), and *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641 (1915), in support of its general assertion regarding recovery of damages for acts that occur outside of the United States. Like *Microsoft* and *Deepsouth*, those cases address only the issue of infringement, and make no ruling regarding damages.

[10]  Telegraphing skepticism of its own argument that *Rite-Hite* is no longer good law, Fairchild inconsistently attempts to suggest that *Rite-Hite* does in fact contemplate Fairchild's proposed limitation of damages, citing language to the effect that "a background question whether the asserted injury is of the type for which the patentee may be compensated" could effect such a limitation. 56 F.3d at 1546. Fairchild editorializes that "foreign manufacture and sale does not satisfy this 'background question.'" D.I. 613 at 6. In fact, the cited language has nothing to do with manufacture or sale of patented items, but refers instead to "remote consequences, such as a heart attack of the inventor." 56 F.3d at 1546.

In short, Fairchild's effort to conflate the separate issues of the finding of infringement and the calculation of damages foreseeably resulting from infringement demonstrates the lack of merit to its motion. Infringement and damages are discrete issues, requiring separate analyses, and are controlled by separate provisions of the Patent Act. The Court should reject Fairchild's attempt to confuse the two and affirm the jury's well founded award.

Turning from Fairchild's treatment of the case law to its treatment of the evidence, the Court will see similar distortion. Characterizing the jury's award as being for "worldwide" damages based on "activity that occurs entirely outside of the United States" does not accurately describe either the activity found to infringe Power Integrations' patents in this case or the damages that resulted from that activity. Fairchild's activities did **not** occur entirely outside of the United States. Indeed, Fairchild conceded as much in stipulating that it made 2.73 million infringing products in the United States. [D.I. 418 (Trial Tr. 10/4/06) at 774:12-23; *see also* D.I. 419 (Trial Tr. 10/5/06) at 1023:4-16.] Moreover, at trial, Power Integrations presented evidence from which the jury could reasonably have found that Fairchild committed a multitude of infringing acts in the United States, including sales, offers to sell infringing products, manufacture of infringing parts, and inducing and contributing to infringing importation by others. [*See* section III, *supra*.]

While Fairchild continues to disagree with Power Integrations' evidence, the jury did not. The jury credited Power Integrations' evidence and found Fairchild to have willfully infringed Power Integrations' patents. The jury credited Power Integrations' evidence of lost sales and price erosion and awarded damages adequate to compensate Power Integrations for lost profits caused by Fairchild's U.S. infringement. Fairchild has failed to demonstrate that the jury's award of damages was incorrect as a matter of law. Because the jury's award is reasonably supported by the evidence, it should not be disturbed, and Fairchild's Motion should be denied.

**C.     Damages Calculations Presented to the Jury Were Not the Result of Mere Speculation or Guess.**

The damages that Power Integrations presented to the jury were supported by sufficient evidence; they were not the result of mere speculation or guess.  "The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) (quotations omitted).  A jury may approximate damages, and "it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Id.* (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).  When the amount of damages is not ascertainable with precision, reasonable doubt is resolved against the infringer.  *Id.*  Power Integrations provided more than enough evidence to meet this standard; indeed, its expert's calculations were premised on actual historical data and conservative estimates of sales growth and length of use of the patented and infringing products.

For example, despite Power Integrations' estimate that Fairchild's infringement had cost it $100,000,000 in harm [D.I. 418 (Trial Tr. 10/4/06) at 675:7-676:11], Power Integrations' damages expert testified that he limited his lost profits and price erosion calculations to a narrow subset of customers.  [*Id.* at 793:15-795:13; 808:18-809:6.]  Mr. Troxel also testified regarding independent, third party evidence suggesting that his damages calculations were conservative.  [*Id.* at 809:7-18.]  In taking this conservative approach, Mr. Troxel was able to testify that he believed his lost profits calculations were "bulletproof."  [*Id.* at 808:18-809:6.]

Mr. Troxel took a similarly conservative approach with respect to his price erosion calculations, limiting his calculations to the Samsung Wireless cell phone charger subcontractors.  [*Id.* at 813:24-814:22.]  Mr. Troxel similarly limited his price erosion calculations to four years, even though the Power Integrations products in question have a life span of twice that long in some instances.  [*Id.* at 818:11-819:10.]  In light of the conservative steps Mr. Troxel took to make sure his calculations were "bulletproof" and the substantial

17

evidence supporting the calculations as set forth above, it is clear that Fairchild's charge that Mr. Troxel's calculations were "speculative" is nothing more than an effort to re-argue the evidence.

Fairchild's heavy emphasis on Mr. Troxel's calculation that approximately 18% of Fairchild's infringing products are imported into the United States is similarly misguided, as it was part of an alternative damages calculation that the jury did not use. [*See* D.I. 415 (awarding lost profits of $14,981,828); compare D.I. 418 at 808:8-17 (calculating lost profits of $14,981,828) *with* 810:24-811:16 (providing alternative calculation of lost profits of $3,093,952).] For this reason alone, the Court should reject Fairchild's attack on that evidence.

Even if the 18% figure were relevant to the present inquiry—and Power Integrations submits that it is not in view of the evidence outlined above regarding Fairchild's direct infringement and the foreseeability of the resultant harm to Power Integrations—the figure itself is not merely speculative. Quick work can be made of Fairchild's first complaint: that the documents upon which the 18% figure was derived are hearsay. Experts are permitted to rely on hearsay if it is of a type of information reasonably relied upon by experts in the field. *See* F.R.E. 703. Fairchild complains that Mr. Troxel extrapolated the 18% figure from data concerning the number of cell phones imported into the United States as opposed to cell phone chargers [D.I. 613 at 12], but there is nothing in the record to suggest this approximation is unusual, and jurors could justly and reasonably infer that the percentage of cell phones imported approximates the percentage of chargers imported. *Del Mar Avionics*, 836 F.2d at 1327. This is particularly true in light of the other relevant evidence of record suggesting that as many as a third or more of Samsung's products are shipped into the United States. [D.I. 418 (Trial Tr. 10/4/06) at 753:21-754:13.] Thus, Mr. Troxel's 18% calculation is extremely conservative.

Despite its challenge to the 18% figure, Fairchild states no basis for believing that 0% — the figure that Fairchild tacitly proposes — is more accurate. The bases for Fairchild's argument on this point and the relief requested are essentially identical to those that Fairchild previously presented in its motion *in limine* to Exclude Plaintiff's Claim For and Evidence of Damages Based on Third Parties' Alleged U.S. Importation of Accused Products [D.I. 356 at 6-19], which

the Court denied. [D.I. 384 at 3.] Indeed, in its brief, Fairchild twice advises the Court that it should have granted Fairchild's motion *in limine* and excluded Mr. Troxel's testimony. [D.I. 613 at 12, 13.] For the same reasons the Court denied Fairchild's motion *in limine*, the Court should deny Fairchild's Motion here. Given that doubts are to be resolved against the infringer with respect to the calculation of damages and that the Court must draw all reasonable inferences in favor of non-movant Power Integrations at this stage, *Del Mar Avionics*, 836 F.2d at 1327; *Reeves*, 530 U.S. at 150-51, Fairchild's Motion on this basis should also be denied.

### D.    Evidence Presented at Trial is Sufficient to Support a Jury Finding of Indirect Infringement.

Fairchild next complains that Power Integrations introduced no evidence that Fairchild induced infringement, and that Fairchild is entitled to judgment as a matter of law of no liability for inducement. Specifically, Fairchild maintains that "there is absolutely no direct evidence that any of the devices made and sold abroad are later imported into the United States, let alone that Fairchild actively induces this importation." [D.I. 613 at 1.] Once again, Fairchild misses the mark. First, evidence of infringement may be direct or circumstantial. Second, there is adequate proof of importation of Fairchild's infringing products.

Patent infringement, including indirect infringement, may be proved by direct or circumstantial evidence. *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) ("Circumstantial evidence is not only sufficient [to prove direct infringement], but may also be more certain, satisfying and persuasive than direct evidence. . . . A patentee may prove [induced infringement] through circumstantial evidence, much like direct infringement.") (quotations omitted). The jury was so instructed. [D.I. 413 at 7, 28-30.]

The question of importation in this case was not one of "if," but rather of "how much." Fairchild's head of sales, Thomas Beaver, confirmed as much [D.I. 419 (Trial Tr. 10/5/06) at 1015:2-20], and the jury could properly conclude from circumstantial evidence that Fairchild's infringing products are imported into the United States on a massive scale. Evidence at trial suggested that as many as one third of Samsung's products are ultimately sold into the United

19

States [D.I. 418 (Trial Tr. 10/4/06) at 753:21-754:13], and Fairchild does not deny that it provides the chips that Samsung incorporates in its cell phone chargers. [*See* D.I. 613 at 12. *See also* D.I. 418 (Trial Tr. 10/4/06) at 735:5-20 (discussing sales of infringing chips to Dongyang for use in Samsung cell phone chargers).]

Further, the omnipresence in the United States of cell phones and other consumer electronics products manufactured by companies such as Samsung can hardly escape the common knowledge of any reasonable juror. Fairchild's contention that inadequate evidence of importation persists is belied by the evidence. [D.I. 419 (Trial Tr. 10/5/06) at 1015:2-20; D.I. 418 (Trial Tr. 10/4/06) at 751:23-753:18 (an industry analyst testified that: "Common sense says that Samsung, a multinational firm is not going to buy a part and put it into a certain device and then have to mark that device with a skew [SIC – SKU] that the device can only go outside the U.S. because it has an infringing part, and these electronics can go to the U.S. because they don't have any infringing parts. . . . You would just get rid of the infringing part."); *id.* at 768:4-24 (a former Fairchild employee testified that: "Again, our intention was always to have products for [the] global marketplace.").]

Fairchild asks the Court to ignore this evidence and find "the more logical conclusion is that Samsung chargers containing the accused Fairchild devices would be sold outside the United States while those with Power Integrations competing chips would be sold within the United States" [D.I. 613 at 12], but the Court should decline to re-weigh the evidence in Fairchild's favor, particularly given that Fairchild acknowledges elsewhere in its brief that "the Court must give the non-moving party, as the verdict winner, the benefit of all logical inferences." [D.I. 613 at 2 (internal citations and quotations omitted).]

Moreover, Fairchild does not dispute the sufficiency of the evidence to support a finding of **contributory** infringement, effectively conceding the propriety of such a finding. Indeed, Fairchild indemnified its biggest offshore customers for potential U.S. infringement in this case, and it also admitted at trial that it has a joint defense agreement with Samsung and one of Samsung's largest cell phone charger subcontractors, Dongyang, which further shielded the true

20

nature and extent of their infringing activities. [*See* PX178; D.I. 418 (Trial Tr. 10/4/06) at 923:22-926:6.] Despite Fairchild's efforts to shield the evidence of its knowledge of its customers' infringement, there is no dispute that the infringing parts were "especially made or adapted for a use that infringes the claimed invention"—Power Integrations' expert provided unrebutted testified that there was no way to use the infringing Fairchild chips in a manner that did not utilize the patents' frequency jitter circuit or internal soft start circuit. [*See* D.I. 417 (Trial Tr. 10/3/06) at 478:12-21, 498:3-16. *See also* D.I. 413 at 30.] Taken as a whole, this evidence demonstrates that Fairchild knew the chips were going to be imported into the US, intended for it to happen, and knew it was certain those chips would use the features found to infringe. As such, to the extent that the jury verdict was based on any theory of indirect infringement, that theory was reasonably supported by evidence adduced at trial.

> **E.    The Jury's Award of Damages for Lost Profits, Price Erosion, and Future Lost Profits from Price Erosion is Reasonably Supported by the Evidence.**

Fairchild attacks the award for lost profits, price erosion, or future lost profits for price erosion by arguing that Power Integrations failed to establish the absence of "non-infringing alternatives" to its patented products on the market. Fairchild asserts that there is thus no evidence that "but for" Fairchild's infringement, Power Integrations would have made additional sales. The relevant inquiry, however, is not the availability of "non-infringing alternatives" or "competing devices," but the availability of "acceptable substitutes." *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) ("Mere existence of a competing device does not make that device an acceptable substitute. . . . A product lacking the advantages of that patented can hardly be termed a substitute 'acceptable' to the customer who wants those advantages.") (quotations omitted). Power Integrations presented substantial evidence from which the jury correctly concluded that no acceptable non-infringing substitutes were available.

Lost profits and price erosion, *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996), as well as future lost profits, *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983), are compensable damages for patent infringement. To recover lost profits, a patentee

must show that "but for" infringement, it reasonably would have made sales that instead were made by the infringer. *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). A patentee need only show a reasonable probability that it would have made additional profits "but for" the infringement — absolute certainty is not required. *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1383 (Fed. Cir. 2002). The patentee is not restricted to the use of any particular method of showing "but for" causation — any method of showing, with reasonable probability, entitlement to lost profits "but for" the infringement is acceptable. *Micro Chemical*, 318 F.3d at 1122. Once the patentee establishes the reasonableness of its inference, the burden shifts to the infringer to show that the inference is unreasonable. *Id.*

One method commonly used to show "but for" causation is application of the four "*Panduit*" factors. *Panduit Corp. v. Stahlin Bros. FibreWorks, Inc.*, 575 F.2d 1152 (6th Cir. 1978) ((1) demand for the patented product, (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit the patentee would have made). Fairchild argues that Power Integrations failed to demonstrate the second factor — absence of acceptable non-infringing substitutes — but does not dispute that Power Integrations satisfied the other factors.

On the question of acceptable non-infringing substitutes, Fairchild is incorrect in suggesting that Mr. Troxel made up a self-serving market universe; Power Integrations presented substantial evidence at trial from which the jury could reasonably have concluded that no acceptable non-infringing substitutes were available. In particular, Power Integrations presented evidence that its patented products were the only acceptable products for use in certain power supplies [D.I. 418 (Trial Tr. 10/4/06) at 663:23-664:18, 800:17-801:9]; that certain of its customers' designs (including, most notably, Samsung's) could only be implemented using Power Integrations' patented features [*id.*]; that Power Integrations products could be used to achieve required designs with far fewer components than competitors' products [D.I. 417 (Trial Tr. 10/3/06) at 602:9-604:4; D.I. 418 (Trial Tr. 10/4/06) at 647:2-12]; that because of the need for fewer components, use of Power Integrations products permitted design of significantly

22

smaller power supplies [*id.*]; that because of the need for fewer components, designs using
Power Integrations' products could be implemented at substantial cost savings than with
competitors' products [*id.*]; and that Power Integrations products were more energy efficient than
competitors' products [*id.*; see also D.I. 416 (Trial Tr. 10/2/06) at 263:12-18.]. Evidence of these
factors would permit a jury to reasonably conclude that no acceptable non-infringing substitutes
were available.

　　　With regard to the specific basis of the lost profits claim, the Samsung business, Power
Integrations presented further evidence that, in fact, only two suppliers were qualified to supply
that business, Power Integrations with its patented chips, and Fairchild with its infringing ones.
[D.I. 417 (Trial Tr. 10/3/06) at 608:19-611:8; D.I. 418 (Trial Tr. 10/4/06) at 658:1-13, 747:15-
749:13.] This evidence that customers demanded the patented jitter and soft-start circuits in
particular shows that parts without those features (though they might be non-infringing), are
simply not acceptable. [D.I. 416 (Trial Tr. 10/2/06) at 281:10-15; D.I. 417 (Trial Tr. 10/3/06) at
312:3-6, 583:2-19, 615:11-616:17; D.I. 418 (Trial Tr. 10/4/06) at 647:2-21.]

　　　Power Integrations' evidentiary showing was sufficient to establish a reasonable
probability of "but for" causation, shifting the burden to Fairchild to prove that the inference was
unreasonable. *Micro Chemical*, 318 F.3d at 1122. Fairchild has failed to do so. In its brief,
Fairchild merely cites testimony suggesting that certain of Power Integrations' competitors'
products practice "frequency jittering," and that Power Integrations' products face competition
from other technologies. [D.I. 613 at 18-9.] Fairchild makes no showing that practice of
"frequency jitter," without more, is sufficient to constitute an acceptable substitute having all of
the desirable features discussed above. *TWM*, 789 F.2d at 901 ("A product lacking the
advantages of the patented can hardly be termed a substitute 'acceptable' to the customer who
wants those advantages."). Nor did or could Fairchild show that these alleged "frequency jitter"
parts do not also infringe Power Integrations' patents.

　　　Moreover, Fairchild's own infringing activities are strongly probative of the fact that no
acceptable non-infringing substitutes were available on the market. For example, Power

23

Integrations presented evidence that Fairchild developed its infringing products by directly copying Power Integrations' products and patents, both with respect to the'075 patent [*see* D.I. 417 (Trial Tr. 10/3/06) 543:24-544:7, 546:1-4, 550:20-551:9, 551:13-21, 551:22-552:12, 554:16-20, 566:8-567:1, 567:20-568:23, 573:6-11; PX-275 at FCS0189651-53 (showing failure of floating P-Top layer and benefit of grounding)] and the circuit patents.  [*See* D.I. 417 (Trial Tr. 10/3/06) at 585:16-589:22, 590:14-591:15, 592:19-594:11, 594:12-595:5, ; D.I. 418 (Trial Tr. 10/4/06) 730:7-732:3; PX-207; PX-304.]  *See also Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996) (discounting infringer's testimony concerning availability of acceptable non-infringing alternatives where "evidence showed [infringer] chose to copy the [patented product] rather than pursue one of the plentiful, hypothetical, post hoc, non-infringing alternatives.").

Similarly, the fact that Fairchild continued to offer its infringing products after initiation of this lawsuit and thereafter, ultimately being adjudged a willful infringer, and continues to use the infringing features to this day, strongly suggests an absence of non-infringing substitutes. *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 n.3 (Fed. Cir. 1996) ("The argument that there were acceptable non-infringing substitutes is undermined by the fact that appellants have been found to have willfully infringed the [asserted] patent. As the *Panduit* court noted, the 'acceptable substitute' element, though it is to be considered, must be viewed of limited influence where the infringer knowingly made and sold the patented product for years while ignoring the 'substitute.'")(quotations omitted).  These facts provide further evidence of an absence of acceptable non-infringing substitutes, and underscore Fairchild's failure to successfully rebut Power Integrations' inference of "but for" causation.

Power Integrations showed but for causation not only using the *Panduit* test, but also did so using the "two-supplier market" test. *Micro Chemical*, 318 F.3d at 1122. When the patent owner and the infringer are the only suppliers of the patented product, it is reasonable to infer that the patent owner would have made the infringer's sales. *Del Mar Avionics*, 836 F.2d at 1327. "Lost profits for all sales made by an infringer are easier to obtain where there are only

two suppliers in the market, the infringer and the patent owner." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 672 (Fed. Cir. 1988).  The two-supplier market test collapses the first two *Panduit* factors into a single factor, requiring a patentee to show:  1) the relevant market contains only two suppliers; 2) its own manufacturing and marketing capability to make the sales that were diverted to the infringer; and 3) the amount of profit it would have made from those diverted sales. *Micro Chemical*, 318 F.3d at 1124.  Providing that the patent owner has the manufacturing and marketing capabilities — a factor that Fairchild does not dispute with respect to Power Integrations — it is reasonable to assume that the patentee would have made the infringer's sales, and the modified *Panduit* test is usually straightforward and dispositive. *Micro Chemical*, 318 F.3d at 1124.

In this case, the jury was presented with evidence from which it could reasonably conclude that Fairchild and Power Integrations constituted a two-supplier market, at least for all those customers for whom Power Integrations sought and the jury awarded lost profits.  Power Integrations presented evidence that, in addition to itself, Fairchild was the only other company whose chips were qualified for use in chargers supplied with certain Samsung cell phones [D.I. 417 (Trial Tr. 10/3/06) at 608:19-611:8; D.I. 418 (Trial Tr. 10/4/06) at 658:1-13.]  Other evidence suggested that although Power Integrations had competition from alternative technologies, Fairchild was Power Integrations' only meaningful competitor in the integrated field.  [*See id.*; *see also* D.I. 418 (Trial Tr. 10/4/06) at 762:14-763:7.]  Finally, Power Integrations presented evidence that, prior to Fairchild's infringement, it had 100% of the Samsung business, and that Fairchild was able to displace Power Integrations as the exclusive provider only after Fairchild began infringing Power Integrations' patents.  [*Id.* at 749:6-750:21.]  This evidence is sufficient to satisfy the first factor of the two-supplier market test and establish a reasonable probability that "but for" Fairchild's infringement, Power Integrations would have captured the profits from all of Fairchild's sales to the suppliers for these Samsung programs.  Fairchild has made no showing capable of rebutting this inference, and as noted, satisfaction of this test is typically dispositive. *Micro Chemical*, 318 F.3d at 1124.

Finally, Fairchild argues that Power Integrations' is not entitled to damages for future lost profits from price erosion alleging, generically, that those damages are speculative. Fairchild's argument fails, both on the facts of this case and Federal Circuit precedent addressing the propriety of future damages calculations.

In *Lam, Inc. v. Johns-Manville, Corp.*, the Federal Circuit affirmed a district court's award of projected lost profits, holding:

> Where, as here, a two-supplier market existed, an award based on projected lost sales is neither remote nor speculative when there is evidence of actual pre-infringement and post-infringement growth rates. Such evidence illustrates the proven detriments suffered by the patent owner. These damages were not picked out by mere speculation or guess, but rather, found by the district court as the result of an extrapolation of actual data.

718 F.2d 1056, 1068 (Fed. Cir. 1983). The facts of this case are directly analogous to those in *Lam*. Power Integrations and Fairchild, through its infringement, occupy a two-supplier market previously occupied by Power Integrations alone. The future damages calculations presented by Power Integrations, and awarded by the jury, are based on actual pre-infringement and post-infringement financial data reflecting Power Integrations' financial condition. They reflect actual, proven detriments that Power Integrations has sustained as a consequence of Fairchild's infringement. As such, the projected damages are neither remote nor speculative.

Fairchild's reliance on *Oiness v. Walgreen Co.* is misplaced. Unlike *Oiness*, this is not a case where the patentee "neither established a reliable pre-infringement nor a reliable post-infringement growth rate," and where "projections of lost profits . . . rest on faulty assumptions and a lack of reliable economic testimony relevant to th[e] market." 88 F.3d 1025 (Fed. Cir. 1996). To the contrary, Power Integrations' projections were based on actual, accurate financial information representing Power Integrations' pre- and post-infringement condition, and, as noted above, Mr. Troxel's calculations were based on extremely conservative judgments about the markets, the life cycles of the products in question, and the specific customer accounts. [*See* D.I. 418 (Trial Tr. 10/4/06) at 793:15-795:13, 808:18-809:6, 808:18-809:6, 813:24-814:22, 818:11-819:10.]

26

Fairchild concludes that "as a matter of law, damages must be based upon evidence, not conjecture." [D.I. 613 at 20.] Power Integrations agrees, and indeed, the damages that the jury awarded Power Integrations *are* based upon conservative estimates founded on actual evidence of historical performance and are not conjecture. Accordingly, the Court should uphold the jury's award of future lost profits and deny Fairchild's Motion.

## VI.    CONCLUSION

For all of the foregoing reasons, Fairchild's Motion should be denied.

Dated:  December 21, 2007          FISH & RICHARDSON P.C.


By:  */s/ William J. Marsden, Jr.*
        William J. Marsden, Jr. (#2247)
        Kyle Wagner Compton (#4693)
        919 N. Market Street, Suite 1100
        P.O. Box 1114
        Wilmington, DE  19899-1114
        Telephone: (302) 652-5070
        Email: marsden@fr.com
        Email: kcompton@fr.com

        Frank E. Scherkenbach
        225 Franklin Street
        Boston, MA 02110-2804
        Telephone: (617) 542-5070

        Howard G. Pollack
        Michael Headley
        500 Arguello Street, Suite 500
        Redwood City, CA 94063
        Telephone: (650) 839-5070

        ATTORNEYS FOR PLAINTIFF
        POWER INTEGRATIONS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2008, I served the **REDACTED VERSION OF POWER INTEGRATIONS' ANSWERING BRIEF IN OPPOSITION TO FAIRCHILD 'S MOTION FOR REMITTITUR, JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, NEW TRIAL CONCERNING DAMAGES** on the following as indicated:

**<u>BY HAND DELIVERY</u>**
Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION, and third party
INTERSIL CORPORATION

**<u>BY E-MAIL AND FEDERAL EXPRESS</u>**
G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA  94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

*/s/ William J. Marsden, Jr.*
William J. Marsden, Jr.