IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REDACTED

POWER INTEGRATIONS, INC., a
Delaware corporation,

Plaintiff,

v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION, a
Delaware corporation,

Defendants.

C.A. No. 04-1371 JJF

## POWER INTEGRATIONS' OPPOSITION TO FAIRCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL REGARDING INVALIDITY OF U.S. PATENT NO. 4,811,075

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Kyle Wagner Compton (#4693)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com
Email: kcompton@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR PLAINTIFF**
**POWER INTEGRATIONS, INC.**

Dated: December 21, 2007

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION .................................................................................1

II.     NATURE & STAGE OF PROCEEDINGS...........................................1

III.    LEGAL STANDARDS .........................................................................2

     A.      Judgment as a Matter of Law.....................................................2

     B.      New Trial ...................................................................................3

IV.     ARGUMENT........................................................................................3

     A.      Fairchild is Incorrect that the Beasom '173 Patent Renders the
           '075 Patent Invalid Under section 102(e). ...................................3

     B.      Fairchild Is Not Entitled to Judgment As a Matter of Law With
           Respect to the '075 Patent Under Section 102(g). .....................7

          1.      The Court Should Reject Fairchild's Suggestion to Re-
                Weigh the Evidence Because There Is Substantial
                Evidence in the Record Demonstrating that Mr. Beasom
                Did Not Have the Complete Invention in April 1984.....................8

          2.      There Is No Basis for Granting A New Trial Based On
                Mr. Shields Testimony Regarding the Claimed Extended
                Drain Region. ........................................................................11

          3.      The Court Should Reject Fairchild's Effort to Re-Try
                the Issue of Whether Dr. Eklund Was First to Invent
                Under Section 102(g) Given the Substantial
                Corroboration of Dr. Eklund's Work...........................................14

          4.      The Court's Instructions Regarding Prior Invention,
                Diligence, and Corroboration Were Not Erroneous and
                Do Not Provide a Basis for Re-Trying the Issues
                Regarding Dr. Eklund's Work. ..................................................18

     C.      The Court Should reject Fairchild's Efforts to Rehash the
           Arguments That the '075 Patent Is Obvious, Which the Jury
           Properly Rejected At Trial. .....................................................21

V.      CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE**

*Allied Chemical Corp. v. Daiflon, Inc.,*
    449 U.S. 33 (1980)......................................................................................3

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)....................................................................................2

*Baxter Healthcare Corp. v. Spectramed, Inc.,*
    49 F.3d 1575 (Fed. Cir. 1995).....................................................................2

*Brown v. Barbacid,*
    436 F.3d 1376 (Fed. Cir. 2006)..................................................................19

*Harris Corp. v. Ericsson Inc.,*
    417 F.3d 1241 (Fed. Cir. 2005)....................................................................2

*Johnson v. Campbell,*
    332 F.3d 199 (3d Cir.2003)..........................................................................2

*Lafate v. Chase Manhattan Bank (USA),*
    123 F. Supp. 2d 773 (D. Del. 2000)........................................................3, 20

*Mahurkar v. C.R. Bard, Inc.,*
    79 F.3d 1572 (Fed. Cir. 1996)..................................................................6, 14

*OddzOn Products, Inc. v. Just Toys, Inc.,*
    122 F.3d 1396 (Fed. Cir. 1997)..................................................................21

*Pfaff v. Wells Electronics, Inc.,*
    525 U.S. 55 (1998)..................................................................................4, 7

*Price v. Symsek,*
    988 F.2d 1187 (Fed. Cir. 1993)....................................................................6

*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133 (2000)................................................................................2, 3

*Ruiz v. A.B. Chance Co.,*
    357 F.3d 1270 (Fed. Cir. 2004)..................................................................20

*Singh v. Brake,*
    222 F.3d 1362 (Fed. Cir. 2000)..................................................................15

*Sun Studs, Inc. v. ATA Equip. Leasing Co., Inc.*
    872 F.2d 978 (Fed. Cir. 1989)......................................................................5

*Tristrata Tech., Inc. v. ICN Pharms., Inc.,*
    313 F. Supp. 2d 405 (D. Del. 2004)..............................................................3

*Tristrata Tech., Inc. v. Mary Kay, Inc.,*
    423 F. Supp. 2d 456 (D. Del. 2006)...........................................................................2

*Watson v. S.E. Pa. Transport Authority,*
    207 F.3d 207 (3d Cir. 2000)...............................................................................3, 20

*Williamson v. Consolidated Rail Corp.,*
    926 F.2d 1344 (3d Cir. 1991).....................................................................................3

## STATUTES AND OTHER AUTHORITIES

35 U.S.C. § 102(e) ...........................................................................................3, 4

Fed. R. Civ. P. 50(a)(1).........................................................................................2

Fed. R. Civ. P. 59(a) ............................................................................................3

## I.    INTRODUCTION

Fairchild continues its campaign to delay being held accountable for its willful infringement of the '075 patent with its present motion for judgment as a matter of law [D.I. 616], alleging every conceivable error, no matter how tenuous. Fairchild's motion is essentially an effort to retry the case at the post-trial stage, which is impermissible and cannot overcome the substantial evidence supporting the validity of the '075 patent.

While Fairchild admits that all inferences and conflicts in evidence should be resolved in Power Integrations' favor at this post-trial stage [D.I. 616 at 3-4], Fairchild largely ignores the evidence and overlooks everything contrary to its contentions in re-arguing the patent's validity. In fact, a review of the trial record confirms there was more than sufficient evidence to support the jury's finding the '075 patent valid. In particular, the record contains many documents and copious testimony demonstrating Dr. Eklund's innovation and resulting success, from the date of invention through the founding of Power Integrations and up to the present, demonstrating that the asserted claims of the '075 patent were not anticipated or obvious in view of the prior art. In addition, Fairchild's own evidence, in particular Mr. Beasom's invention disclosure forms, demonstrated that Mr. Beasom did not conceive of the claimed invention until after Dr. Eklund. Fairchild's expert also admitted that all of the other prior art he relied on was missing one or more critical elements of the invention. Because Fairchild's motion simply seeks to have the Court re-weigh the evidence and substitute a different judgment than that of the jury, the Court should deny Fairchild's motion and confirm the jury's finding that the '075 patent is valid.

## II.    NATURE & STAGE OF PROCEEDINGS

Power Integrations filed suit against Fairchild for infringement of four U.S. patents on October 20, 2004. [D.I. 1.] On October 10, 2006, following a first trial on the issues of infringement, willful infringement, and damages, a jury found that Fairchild willfully infringed all four of Power Integrations' asserted patents and awarded damages slightly less than $34

million. [D.I. 415.] On September 21, 2007, following a second trial on the issue of patent validity, a jury found all four of Power Integrations' asserted patents valid. [D.I. 555.]

## III.    LEGAL STANDARDS

### A.    Judgment as a Matter of Law

A court should only grant judgment as a matter of law when it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The court is not free, on a post trial motion for judgment as a matter of law, to weigh evidence, pass on credibility issues, or substitute its judgment for that of the jury: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, JMOL motions are granted "sparingly" and only in those circumstances in which "the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 462 (D. Del. 2006) (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir.2003)).[1]

To prevail on a motion for judgment as a matter of law following a jury trial, the moving party must show that the jury's express or implied findings were not supported by "substantial evidence." This test requires the Court to determine "whether reasonable jurors viewing the evidence as a whole could have found the facts needed to support the verdict in light of the applicable law." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995) (citations and quotations omitted). In assessing the sufficiency of the evidence, the Court must review all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Because of this, the Court "must disregard all evidence favorable to the moving party

---

[1]    Regional circuit law governs consideration of motions for judgment as a matter of law. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005) ("The denial of JMOL is not a patent-law-specific issue, so regional circuit law applies.").

that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151 (internal quotations and citations omitted).

### B.    New Trial

Under the Federal Rules of Civil Procedure, a new trial may be granted following a jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial is committed to the sole discretion of the trial court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). However, a court should only grant a motion for a new trial when allowing the jury's verdict to stand would result in a miscarriage of justice. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). "A court should not disturb a verdict unless the verdict, 'on the record, cries out to be overturned or shocks [the court's] conscience.'" *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 408 (D. Del. 2004) (quoting *Williamson*, 926 F.2d at 1353) (brackets in original).

Where the complained of error is an allegedly erroneous jury instruction, if the error is harmless—one that does not prejudice the complaining party—the verdict should be affirmed. *Watson v. S.E. Pa. Transp. Auth.*, 207 F.3d 207, 221-22 (3d Cir. 2000). In determining whether to grant a new trial based on an allegedly erroneous jury instruction, the court must first review the instructions as a whole to determine whether there has been an error, and then "whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice." *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 785 (D. Del. 2000).

### IV.    ARGUMENT

#### A.    Fairchild is Incorrect that the Beasom '173 Patent Renders the '075 Patent Invalid Under section 102(e).

Fairchild first argues that the Court should set aside the jury's determination that the '075 patent is not invalid under 35 U.S.C. § 102(e) based on U.S. Patent No. 4,823,173 ("the'173

3

patent" or "the Beasom patent"), but Fairchild is incorrect, both as to the legal standard and the evidence in the record supporting the jury's conclusion.

First and foremost, the Court should reject Fairchild's 102(e) argument because it relies on an incorrect legal standard. Fairchild suggests without support that section 102(e) requires Power Integrations to show that Dr. Eklund reduced his invention to practice before the Beasom '173 patent was filed, but this is incorrect—the language of section 102(e) requires only prior *conception*. The Beasom '173 patent only operates as prior art under section 102(e) if the invention was "described in (1) an application for patent, published under section 122(b) by another filed in the United States *before the invention by the applicant* for patent or (2) a patent granted on an application for patent by another filed in the United States *before the invention by the applicant* for patent . . . ." 35 U.S.C. § 102(e) (emphasis added).[2] The language of section 102(e) is clear—a patent only qualifies as prior art under section 102(e) if filed before <u>the invention</u> by another, i.e. before Dr. Eklund's conception date, and section 102(e) does not take into account any subsequent reduction to practice or diligence.

The error in Fairchild's argument is confirmed by the Supreme Court's reading of the Patent Act, as the Court has explicitly noted that the term "invention" means "conception":

> The primary meaning of the word "invention" in the Patent Act unquestionably refers to the inventor's conception rather than to a physical embodiment of that idea. The statute does not contain any express requirement that an invention must be reduced to practice before it can be patented. Neither the statutory definition of the term in § 100 nor the basic conditions for obtaining a patent set forth in § 101 make any mention of "reduction to practice."

*Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 60-61 (1998). The Court in *Pfaff* continued, noting that the only portion of section 102 that discusses reduction to practice is section 102(g), *id.* at 61, a provision Fairchild addresses separately in its brief. Fairchild's attempt to conflate the two

---

[2]  Section 102(e) art is often referred to as "secret prior art" because the art is often not known (or knowable) until the reference issues as a patent or is published, at which point it becomes prior art as of the date of filing if the other criteria are met. As discussed in further detail below, Beasom is not such "secret prior art" in this case because Dr. Eklund had already invented the technology before Mr. Beasom filed for his patent.

sections of the statute and their standards is apparent. Fairchild switches back and forth between discussing the allegedly applicable legal standards and facts regarding Dr. Eklund's invention date and the evidence of his work to patent and commercialize the invention in its 14 pages of argument directed to section 102(e). These efforts are misguided. Federal Circuit case law also confirms that Dr. Eklund's prior *conception* defeats Fairchild's 102(e) challenge. *Sun Studs, Inc. v. ATA Equip. Leasing Co., Inc.*, 872 F.2d 978, 983-84 (Fed. Cir. 1989) (noting that evidence of conception prior to the filing of the alleged section 102(e) reference defeats the challenge).[3]

Under the proper legal standard, the only issue relevant to Fairchild's challenge under section 102(e) is the date of Dr. Eklund's conception, and the record contains more than sufficient evidence to support the jury's presumed finding that Dr. Eklund conceived of his invention before Mr. Beasom filed for his patent.[4] Mr. Beasom's '173 patent was filed in 1986 [*see* DX 541], but Dr. Eklund testified and provided documentary evidence showing his invention was complete no later than January 1985. [PX29; Ex. A[5] (PX30); D.I. 558 (Trial Tr. 9/20/07) at 1112:15-1114:16, 1116:8-1119:12; D.I. 559 (Trial Tr. 9/21/07) at 1376:23-1382:13 (Shields testimony that all elements of claim 1 are present by January 1985)]. These documents and the testimony were further supported by the testimony of Jan Brunnberg, who recounted seeing the invention in Dr. Eklund's papers and witnessing the invention with his signature in late 1984. [D.I. 558 (Trial Tr. 9/20/07) at 1247:5-1253:22]. Fairchild's foray into forensics further supports and corroborates Dr. Eklund's prior invention, as it confirmed that the ink on Dr. Eklund's early notes was consistent with his testimony regarding making those notes in late 1984 and early 1985. In particular, Power Integrations' forensic expert explained that the ink from Dr.

---

[3]  The Federal Circuit in *Sun Studs* also stated that corroborating evidence is not required to defeat a 102(e) challenge in this manner, *Sun Studs*, 872 F.2d at 984, but Power Integrations nevertheless presented more than sufficient corroborating evidence to support Dr. Eklund's conception date prior to the filing of the Beasom '173 patent.

[4]  The evidence also supports a finding that Dr. Eklund conceived of his invention before Mr. Beasom independently came up with his version of the invention in April of 1985, *compare* Ex. A (PX30) *with* Ex. D (DX 632), as discussed further below in the context of Fairchild's 102(g) challenge.

[5]  All Exhibit citations refer to the accompanying Declaration of William J. Marsden, Jr., unless noted otherwise.

Eklund's notes included manufacturer's "date tags" showing it was manufactured in 1983. [D.I. 558 (Trial Tr. 9/20/07) at 1220:12-1226:5.] Fairchild's forensics witness could not refute Power Integrations' expert's testimony on this point. [D.I. 559 (Trial Tr. 9/21/07) at 1427:6-23.]

Fairchild takes exception to the evidence Power Integrations provided at trial, suggesting that each separate document and piece of testimony must, by itself, independently corroborate Dr. Eklund's prior invention, but that is incorrect as a matter of law. All that is required is corroboration of the inventor's *testimony* under the "rule of reason" evaluation, as the purpose of corroboration is to prevent people from relying on bare testimony for a claim of prior conception. *Price v. Symsek*, 988 F.2d 1187, 1194-96 (Fed. Cir. 1993) ("Only the inventor's testimony requires corroboration before it can be considered.").[6] "[T]o determine whether the inventor's prior conception testimony has been corroborated" under the "rule of reason" analysis, the fact-finder must collectively evaluate *"all* pertinent evidence." *Price*, 988 F.2d at 1195 (emphasis in original). Here, the evidence supports a finding of prior conception by Dr. Eklund, and the Court should not upset the jury's implicit agreement on this point.

Fairchild also spends several pages suggesting that Power Integrations somehow mistakenly relied on "diligence" to support the jury's finding under section 102(e) [D.I. 616 at 14-17], but that argument is misdirection. As noted above, the issue under section 102(e) is Dr. Eklund's prior conception, not diligence, and Fairchild incorrectly ignores the fact that *neither diligence nor reduction to practice have any bearing on the inquiry under section 102(e)*. In an illogical twist, Fairchild relies upon the lack of any reference to diligence in the 102(e) jury instruction entitled "Prior U.S. Patent Application" [D.I. 616 at 15], but in the very next

---

[6]    Indeed, the Federal Circuit has noted that corroboration is not required "where a party seeks to prove conception through the use of physical exhibits" because "the trier of fact can conclude for itself what documents show, aided by testimony as to what the exhibit would mean to one skilled in the art." *Mahurkar*, 79 F.3d at 1577-78. Because Power Integrations is not relying solely on Dr. Eklund's testimony—Power Integrations' expert explained that Dr. Eklund's notes [PX29 and PX30] confirm Dr. Eklund's testimony of prior conception and contain the elements of the claimed invention—Power Integrations believes Fairchild's heavy emphasis on corroboration is misplaced. Nevertheless, Power Integrations responds to Fairchild's contentions as framed because the record contains substantial evidence corroborating Dr. Eklund's testimony regarding his work on the '075 patent.

paragraph—without legal support—Fairchild reiterates its argument that Power Integrations was allegedly required to show *actual reduction to practice* prior to the filing of the alleged 102(e) reference. [*Id.*] As set forth above, Fairchild's reading of section 102(e) is plainly incorrect, and the instruction in question was proper, as its language tracks the language of 102(e). In light of the Supreme Court's clear and unequivocal statement in *Pfaff* that the use of the word "invention" in this context means "conception" and not "conception plus reduction to practice," *Pfaff* at 60-61, the Court should reject Fairchild's attempt to conflate the legal standards under sections 102(e) and 102(g) and confirm that substantial evidence supports the finding the Dr. Eklund conceived of the invention of the '075 patent before the Beasom '173 patent was filed.[7]

### B.    Fairchild Is Not Entitled to Judgment As a Matter of Law With Respect to the '075 Patent Under Section 102(g).

Fairchild has not demonstrated that the Court should disturb the jury's verdict that the invention is not anticipated under section 102(g), as there is substantial evidence in the record to support that verdict. Fairchild's section 102(g) attack appears to rely on two different arguments, both incorrect. Fairchild's first argument is that Mr. Beasom conceived of the entire claimed invention in April 1984. Its second argument appears to be that even if Dr. Eklund was the first to conceive of the invention, he either abandoned the invention or was not diligent in working to reduce it to practice.[8] In light of the substantial evidentiary record of Dr. Eklund's invention, patenting, and commercialization of the technology of the '075 patent, the Court should reject Fairchild's arguments.

---

[7] To the extent diligence toward an ultimate reduction to practice is relevant to the section 102(e) inquiry—and Power Integrations believes the law clearly states that it is not—the issue of diligence is addressed below in response to Fairchild's 102(g) arguments, and Power Integrations would rely on those sections in the 102(e) context as well.

[8] Fairchild's never explicitly makes the argument that Dr. Eklund was not diligent in the context of its section 102(g) argument, *see* D.I. 616 at 17-22, but the thrust of Fairchild's meandering treatment of diligence and corroboration throughout its brief suggests this is one of its arguments for judgment as a matter of law.

1.     **The Court Should Reject Fairchild's Suggestion to Re-Weigh the Evidence Because There Is Substantial Evidence in the Record Demonstrating that Mr. Beasom Did Not Have the Complete Invention in April 1984.**

The jury properly rejected Fairchild's first argument under section 102(g), that James Beasom conceived of the complete claimed invention in April, 1984, and the Court should not tamper with that judgment. Fairchild admits that the proper standard of review requires the Court to resolve all conflicts in evidence in Power Integrations' favor and to view the record in the light most favorable to Power Integrations [D.I. 616 at 3-4], yet Fairchild asks the Court to re-weigh the evidence and supplant its judgment for the- jury's. The Court already refused to do so on summary judgment [D.I. 266] and should likewise refuse to do so at this stage.

As noted above, the record supports the jury's conclusion that Dr. Eklund was first to conceive of the claimed subject matter, at a point no later than January 1985. Fairchild now seeks to re-tread its argument that Mr. Beasom had the complete invention in April 1984, but the argument is still incorrect. Fairchild first suggests that the drain in Mr. Beasom's 1984 notes [Ex. B (DX 130) at 62, labeled with a "p-"] is the claimed "extended drain region of the second conductivity type extending laterally each way from the drain contact pocket to surface-adjoining positions," but Mr. Beasom admitted at trial this was not the case, both with reference to the figure from Mr. Beasom's notebook and the corresponding figure 1 from his '173 patent. When asked point blank about the difference between the drain and the drift region (i.e. extended drain region), Mr. Beasom admitted he never referred to the drain as the extended drain region [D.I. 556 (Trial Tr. 9/18/2007) at 262:2-5], that the drain and the extended drain region "are two different layers," [*id.* at 265:8-267:15], and that the structure Fairchild now points to isn't even Mr. Beasom's invention, but rather a "known method of fabrication of a high voltage MOS device." [*Id.* at 265:21-266:8.] The jury could credit this evidence and conclude that Mr. Beasom, by his own admission, did not have possession of the complete invention at the time.

Power Integrations' expert similarly testified that the drain and the extended drain are not the same thing to a person of skill in the art. [D.I. 559 (Trial Tr. 9/21/07) at 1383:20-1384:4.]

8

Both Mr. Beasom and Power Integrations' expert also agreed that Mr. Beasom's 1984 notebook entry does not show the drift region (i.e. extended drain region) extending **on both sides** of the drain. [D.I. 556 (Trial Tr. 9/18/07) at 269:22-270:6; D.I. 559 (Trial Tr. 9/21/07) at 1382:14-1383:19.] Mr. Beasom similarly confirmed that his initial invention disclosure form lacked the claimed extended drain region going both ways. [D.I. 556 (Trial Tr. 9/18/07) at 271:13-18; Ex. C (DX 558).] Mr. Beasom's testimony confirms that the claimed extended drain region going both ways was not present in his April 1984 notes and that this is not merely "a semantic argument" or a "superficial conclusion," as Fairchild now suggests. [D.I. 616 at 19.] Indeed, given the evidence from Mr. Beasom himself that he did not have the claimed extended drain region going both ways to surface adjoining positions (plural) in 1984, Fairchild is not entitled to judgment as a matter of law on this issue.

Fairchild also makes reference throughout its papers to Mr. Beasom's alleged reduction to practice [*see, e.g.,* D.I. 616 at 21-22], but Fairchild overreaches on this point as well. First, as noted above and in the court's jury instructions, Mr. Beasom's reduction to practice has no bearing in view of the substantial evidence of Dr. Eklund's work as the first inventor. Second, even if Mr. Beasom's alleged reduction to practice mattered, there is no evidence in the record that Mr. Beasom actually reduced the relevant claimed invention to practice before filing for his patent, as Fairchild repeatedly suggests. Despite Fairchild's argument that Mr. Beasom reduced the invention to practice in 1985, Mr. Beasom's testimony is to the contrary—he confirmed that any wafers and chips he built in 1985 did <u>not</u> include a device with an extended drain region on both sides of the drain going to surface adjoining positions in accordance with claimed invention. [D.I. 556 (Trial Tr. 9/18/07) at 284:16-285:6.] Therefore, the Court should afford no weight to Fairchild's arguments regarding any reduction to practice by Mr. Beasom.

Fairchild also misleadingly asserts error by suggesting that Power Integrations argued the need for two top layers at trial, but Fairchild is wrong. Despite Fairchild's efforts to obscure the claimed invention, there is no question that the claimed extended drain region extends both ways from the drain to surface adjoining positions, and the claimed top gate ("a surface adjoining layer

9

of material" aka "P-TOP") sits on top of the claimed extended drain region between the drain contact and those multiple surface adjoining positions. Fairchild's argument ignores the fact that the devices in question have a three dimensional aspect to them—the top gate that sits on top of the extended drain region exists on both sides of the drain because it wraps around the drain in the third dimension. Indeed, the language of the claim confirms that the single top gate is present on both sides of the drain, because the surface adjoining layer is described as being "between the drain contact pocket and the surface adjoining positions" (plural). The cross-sectional views utilized in the patent also show the top gate on top of the extended drain region extending to surface adjoining positions on both sides of the drain. [*See* PX4 at Fig. 1.] If the top gate were only on one side of the drain, it would have been described without reference to the plural surface adjoining positions of the previous limitation, and it is this extended drain region going both ways to surface adjoining positions that has always been the focus of the parties' disagreement.

The passage Fairchild cites from the trial testimony in the context of this argument also makes this fact of the invention explicit—Mr. Shields noted that the patented top gate is in multiple positions because the claim language requires surface adjoining positions (plural), even though there is only a single top gate recited. [*See* D.I. 616 at 20 (quoting Trial Tr. 9/21/07 at 1374:18-1375:14 ("It says surface-adjoining positions, that's plural.")).] Fairchild's opinion counsel agreed with this evaluation, and the opinion letters introduced at trial noted that the claim language placing the top layer between the drain contact pocket and surface adjoining positions "means existing in intermediate relation to the drain contact pocket and each one of a plurality (at least two) surface adjoining positions. As such, the 'surface adjoining layer of material of the first conductivity type' must exist at multiple locations."). [*See* DX 136 at FCS1413653 (citing the '075 patent specification and figures as support for the proposition, in addition to the claim language); *id.* at FCS1413655; DX 137 at WOO1517-18.] Because both Mr. Beasom and Power Integrations' expert agreed that Mr. Beasom's April 1984 notes are missing the claimed extended drain region going both ways to surface adjoining positions [D.I.

556 (Trial Tr. 9/18/07) at 269:22-270:6; D.I. 559 (Trial Tr. 9/21/07) at 1382:14-1383:19], there is no question that Mr. Beasom's April 1984 notes also lack the top gate limitation. As such, the jury did not err in finding that Mr. Beasom did not have the complete invention before Dr. Eklund, and the Court should not disturb that determination.

### 2.    There Is No Basis for Granting A New Trial Based On Mr. Shields Testimony Regarding the Claimed Extended Drain Region.

Fairchild also overreaches when it argues for a new trial by suggesting that Power Integrations' expert was setting forth new theories with his arguments regarding the extended drain region at trial [D.I. 616 at 20 n.7, 27-32], particularly given that it was Fairchild's expert, Dr. Peter Gwozdz, who presented new theories for the first time on the stand during the validity trial. First, Fairchild's expert admitted that he provided new testimony regarding the teachings of the Wakaumi reference. [D.I. 556 (Trial Tr. 9/18/07) at 543:17-544:22.] Perhaps more notably, Dr. Gwozdz introduced a new theory for the first time at trial that an extended drain region on one side of the drain as reflected in Mr. Beasom's 1984 notes actually showed "an infinite" number of surface adjoining positions. [D.I. 556 (Trial Tr. 9/18/07) at 489:7-492:19 ("Q. So how many total number of surface adjoining positions are disclosed in the April 1984 laboratory notebook of Mr. Jim Beasom? A. Well, a mathematician would say an infinite number because you have a line of them, there's any number there. But -- Q. How many have you indicated in the graphic? A. I indicated three right here that are relevant to that particular extended drain region portion."] This argument was not set forth in Dr. Gwozdz's expert report addressing Mr. Beasom's work [*see* Ex. H (Gwozdz Supplementary Report)], and when cross-examined on this point, Dr. Gwozdz was forced to admit that it would not be fair to read the claims in such a manner. [*Id.* at 519:20-520:5.] Mr. Beasom's testimony did not support these misleading efforts, and Dr. Gwozdz's far-fetched and shifting theories in this regard would have justified the jury's ignoring his testimony as lacking credibility.

With respect to Mr. Shields's testimony, Fairchild first criticizes Power Integrations' expert for not addressing Mr. Beasom's notebook in his first two expert reports, but this is a red

herring, as there is no way that the reports and testimony Mr. Shields provided in his first two reports and deposition have any bearing on this issue. When Mr. Shields served his first two expert reports on infringement and validity on October 18, 2005 and January 9, 2006, respectively, Fairchild *had not yet produced any materials related to Mr. Beasom's work.*[9] Even as of February 16, 2006, when Mr. Shields was first deposed, Fairchild's expert was not relying on Mr. Beasom's notebook for any invalidity theory, so Mr. Shields had no reason to respond at that time, validity being an issue for which Fairchild bears the burden of proof. It was only later, after Fairchild served a supplemental expert report addressing the Beasom notebook on February 23, 2006 and continued thereafter to produce documents and things related to Mr. Beasom's work [*see, e.g.,* Ex. F (VanderZanden letter producing invention disclosure forms)], that Power Integrations' expert could respond to the assertions regarding Mr. Beasom's notes. [*See* D.I. 616 at Tab 3 (Shields Supplemental Report).]

In his supplemental report, Mr. Shields explicitly addressed the fact that Mr. Beasom's notes were missing the claimed "extended drain region" going both ways to "surface-adjoining positions." [*Id.* at ¶¶ 4-6.] When Fairchild asked Mr. Shields about the top gate limitation and its reference to the extended drain region's surface adjoining positions (plural) during his second deposition, Mr. Shields was not swayed by Fairchild's effort to put words in his mouth by suggesting that a top gate on a one-sided extended drain region would satisfy the limitations of claim 1 of the '075 patent. [Ex. G (Shields Tr. 4/18/07) at 496:21-501:1

Fairchild misleadingly quotes Mr. Shields's deposition testimony to suggest he did agree that the top gate would only be present on one side of the drain [D.I. 616 at

---

[9]  The first evidence of Mr. Beasom's notebook (in the form of excerpts) was not provided until January 23, 2006, well past the close of fact discovery. Ex. E (Bragalone e-mail of 1/23/06). Mr. Beasom's notebook was first produced later that same week in connection with his deposition.

REDACTED

REDACTED

29], when in fact Mr. Shields explained yet another time (in the pages of his deposition testimony Fairchild omitted from its briefing) that although the top gate is a single piece of material, it wraps around the drain because of the claimed surface adjoining positions. [Ex. C (Shields 4/18/07 Tr.) at 498:6-17

 

 

At trial, Mr. Shields similarly addressed the two places the extended drain region's surface adjoining positions are referenced in claim 1 of the '075 patent—in the extended drain region limitation itself, and in the subsequent top gate limitation, with its reference back to the extended drain region's "surface adjoining positions." [D.I. 559 (Trial Tr. 9/21/07) at 1382:14-19.] His testimony at trial was consistent with his report and deposition in this case, and there is no real question that the "both ways" argument—that Mr. Beasom's April 1984 notes do not show the claimed extended drain region going both ways to surface adjoining positions (plural), which Mr. Beasom does not dispute—has always been front and center in this case since Fairchild dug up Mr. Beasom's notebook. Nevertheless, Fairchild feigns surprise, suggesting the position had no support. Given the clear record of Mr. Shields prior report and deposition testimony regarding the absence of an extended drain region extending both ways to surface adjoining positions in Mr. Beasom's notes, there is no basis for granting a new trial on the basis of Mr. Shields's trial testimony.

**3.    The Court Should Reject Fairchild's Effort to Re-Try the Issue of Whether Dr. Eklund Was First to Invent Under Section 102(g) Given the Substantial Corroboration of Dr. Eklund's Work.**

Fairchild also suggests that the Court should re-weigh the evidence of Dr. Eklund's prior invention under §102(g), but the Court should decline this invitation. The evidentiary record more than adequately supports the jury's conclusion that Mr. Beasom did not conceive of the complete invention before Dr. Eklund. The evidence also supports the jury's implicit determination that Dr. Eklund worked diligently to reduce his invention to practice thereafter, ultimately patenting the invention and founding Power Integrations to commercialize it.

As a predicate matter, the Court should reject Fairchild's efforts to confuse the burden of proof—notwithstanding Fairchild's efforts to skew the Court's view of the law with vague statements about the "characterization of the burden," Fairchild correctly admits that Power Integrations only bore a burden of production with respect to Dr. Eklund's prior invention. [D.I. 616 at 5.] The burden of proof by clear and convincing evidence always rested with Fairchild, as the Court correctly instructed the jury at trial. In *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996), the court faced a similar 102(g)/anticipation challenge and affirmed the grant of JMOL of non-anticipation because the patentee set forth evidence of his prior invention and the challenger could not thereafter meet its burden of proof. *Id.* at 1576-79. After reviewing the law in this area, the Federal Circuit in *Mahurhar* summarized the applicable standard in these circumstances, noting that the party in Fairchild's shoes "must persuade the jury by clear and convincing evidence that its version of the facts is true. . . . If [the defendant] fails to meet this burden, the [reference] is not prior art." *Id.* at 1578. In this case, the substantial evidence of Dr. Eklund's work more than supports the jury's conclusion that Dr. Eklund was the first inventor.

As noted above, Mr. Beasom concedes and the other evidence establishes that his April 1984 drawings do not show the required element of the extended drain region extending both ways to surface adjoining positions. [D.I. 556 (Trial Tr. 9/18/07) at 268:23-271:18 (confirming that neither the April 1984 notes nor Mr. Beasom's December 1984 invention disclosure form contains any reference to a drift region (i.e. extended drain region) extending on both sides of the

14

drain); D.I. 559 (Trial Tr. 9/21/07) at 1382:14-1383:19 (Mr. Shields testimony re same); DX 130 at 62-65; DX 558.] The first evidence of an invention including this feature is in Dr. Eklund's notes, which corroborate his testimony that he had the idea for the complete claimed invention no later than January 1985. [PX29; PX30; D.I. 558 (Trial Tr. 9/20/07) at 1096:17-1098:23, 1112:15-1120:24; D.I. 559 (Trial Tr. 9/21/07) at 1376:23-1382:13.] Dr. Eklund's testimony and notes were further corroborated by Jan Brunnberg, who contemporaneously witnessed another version of Dr. Eklund's original notes showing substantially the same subject-matter and testified at trial regarding doing so as of Christmas 1984.[10] [D.I. 558 (Trial Tr. 9/20/07) at 1247:5-1253:22; *id.* at 1091:13-1092:9, 1108:19-1109:13.] Fairchild takes exception to this testimony and argues that Dr. Eklund's notes dated September 1984 and January 1985 do not support his prior conception because they are not a single document. But the proper legal standard does not require that evidence corroborating an inventor's testimony take any particular form—Fairchild's own case law notes that "[t]here is no particular formula that an inventor must follow in providing corroboration of his testimony of conception." *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000). The Court should evaluate "all pertinent evidence" to determine the credibility of an inventor's story, as corroboration is only required for an inventor's testimony, and the totality of the evidence is to be evaluated under a "rule of reason" analysis. *Price*, 988 F.2d at 1194-95. As noted above, Power Integrations offered a range of documentary evidence and testimony beyond, and completely consistent with, the testimony of inventor Klas Eklund, demonstrating that Fairchild overreaches when it suggests there is no corroboration.

Fairchild also suggests some impropriety in Dr. Eklund's pointing to both his September 1984 and January 1985 notes to support his conception, but the testimony at trial certainly supports the jury's implicit finding that these notes refer to the same claimed invention of the '075 patent. In addition to Dr. Eklund's testimony that these are part of his record of the

---

[10] Fairchild cites to cases where corroboration was based solely on what the inventor told the alleged witness, but those citations are inapposite, as Mr. Brunnberg independently recognized the invention when Fairchild's attorneys showed him Dr. Eklund's early documentation of the invention. *See* D.I. 558 (Trial Tr. 9/20/07) at 1249:10-1251:24. *See also id.* at 1253:2-22.

invention [D.I. 558 (Trial Tr. 9/20/07) at 1112:15-1113:16], Mr. Shields confirmed that the notes are related and refer to the same invention, even though the second set of notes contains more implementation details than the first. [D.I. 559 (Trial Tr. 9/21/07) at 1380:4-10.] This reading was based on the language and drawings of the documents themselves, demonstrating that it would be clear to one of ordinary skill in the art that they are related, even though they do not expressly refer to one-another. [Id.]

Fairchild's efforts to discredit Dr. Eklund's notes with forensic evidence similarly backfired, as it led to the introduction of corroborating testimony from Dr. Lyter establishing that the ink samples taken from Dr. Eklund's notes, and the impressions seen in "ESDA lifts", were perfectly consistent with Dr. Eklund's testimony that the notes were contemporaneous and all related to the same inventive idea. [D.I. 558 (Trial Tr. 9/20/07) at 1216:1-1226:16.]  As such, Power Integrations is not relying on "mere inventor testimony" of prior conception—the documents, testimony of others, and forensic evidence all support Dr. Eklund's recitation of the events surrounding his conception of the claimed invention before Mr. Beasom.

The evidence at trial further demonstrated that Dr. Eklund worked diligently on his invention from the time of his conception up through the time he filed for a patent, and, as with conception, Power Integrations does not rely solely on Dr. Eklund's testimony to establish diligence.  There is substantial evidence of Dr. Eklund's work on the invention, including documents and testimony concerning his work on various implementations at AMD [PX29; PX30; D.I. 558 (9/20/07 Trial Tr.) at 1120:17-1134:24 (discussing Dr. Eklund's work at AMD and documents re same, including PX412, PX404, and documents from PX39, PX40, PX41, and PX47); id. at 1248:11-1253:22], then further work and the building of test devices and prototypes at Data General [D.I. 558 (9/20/07 Trial Tr.) at 1141:21-1151:4 (discussing Dr. Eklund's work and documents from PX44-PX48 reflecting same)], and ultimately leaving Data General to form a new company, Power Integrations, to patent and commercialize the invention. [See also D.I. 558 (9/20/07 Trial Tr.) at 1279:5-1280:23.] During this timeframe, Dr. Eklund documented his work in several binders, dozens of specific pages of which were discussed at trial showing the

16

various efforts Dr. Eklund made to realize his invention. Indeed, Fairchild's brief identifies no fewer than a dozen exhibits introduced at trial that evidence Dr. Eklund's work on the invention and notes that Dr. Eklund explained how these exhibits "have the invention" of the '075 patent. [D.I. 616 at 17.] Some of these documents were also prepared by others working under Dr. Eklund's direction to implement the claimed invention into various existing projects at AMD and Data General, providing further independent evidence of Dr. Eklund's diligence. [*See, e.g.,* PX47 at KE1083-85; PX406 at KE1524-26.]

Power Integrations also presented testimony from Vahe Sarkissian, Dr. Eklund's direct supervisor at Data General, regarding his work to commercialize the invention, in addition to evidence of Dr. Eklund's efforts to raise capital to bring his invention to market. [D.I. 558 (Trial Tr. 9/20/07) at 1267:13-1268:21, 1272:9-1273:13, 1275:16-24, 1279:5-1281:15, 1282:9-17.] The latter efforts, including a letter of recommendation from Dr. James Plummer, the current Dean of Stanford University School of Engineering, stating that Dr. Eklund's invention would provide a 2-3x improvement of existing technologies [PX51], is noteworthy, as Fairchild provided no evidence at trial that Mr. Beasom, in contrast, ever did anything with his version of the claimed invention. Ultimately, Dr. Eklund was able to prove out his invention for commercial application, and shortly thereafter, Dr. Eklund applied for a patent, Data General spun out his invention into a new company, and Power Integrations was born. [D.I. 558 (Trial Tr. 558 (Trial Tr. 9/20/07) at 1149:24-1151:4, 1152: 3-1153:15, 1156:6-13 ("[T]he key behind Power Integrations was the patented device concept."); *see also id.* at 1279:5-1280:23.]

The entire sequence of evidence above—including the voluminous documentary evidence and the testimony introduced at trial—demonstrates and corroborates Dr. Eklund's testimony that he was the first to conceive of the claimed invention and that it thereafter consumed the majority of his working efforts. Dr. Eklund worked diligently on his invention at all times, and the record certainly provides substantial, corroborated evidence of reasonable diligence. Fairchild argues that a different conclusion could be drawn from this evidence, but that is not the correct legal standard to apply in the context of a renewed motion for judgment as

a matter of law. Here, the Court must view all of the evidence in the light most favorable to non-movant Power Integrations and not reweigh the evidence or the credibility of the witnesses. *Reeves*, 530 U.S. at 150. Given the evidentiary support in the record for Dr. Eklund's prior invention and subsequent activities, which the jury accepted, the Court should once again reject Fairchild's suggestion to supplant the jury's judgment.

> **4.    The Court's Instructions Regarding Prior Invention, Diligence, and Corroboration Were Not Erroneous and Do Not Provide a Basis for Re-Trying the Issues Regarding Dr. Eklund's Work.**

Fairchild also argues in a single paragraph at the end of its brief that it is entitled to a new trial on the basis of the Court's instructions related to its 102(g) challenge [D.I. 616 at 32], but Fairchild overreaches again with this claim. First, the court's instructions were proper. The Court's "Prior Invention" instruction [D.I. 562 at 32] introduces the notion that the first to conceive of an invention is entitled to a patent if there is evidence of reasonable diligence toward reduction to practice in the record, even if the first to conceive is ultimately later in reducing the invention to practice. In that same paragraph, the instruction explains that a party must provide corroborating evidence if it seeks to rely on the oral testimony of the inventor. *[Id.]* Both Fairchild and Power Integrations proposed the same final sentence regarding corroboration in the paragraph in question, tracking the 2004 Delaware model jury instruction on prior invention word for word, and the Court adopted this language in its instruction. *[Compare id.* with D.I. 524 at 31 (Fairchild instruction), and D.I. 523 at 24 (Power Integrations' instruction).]

The Court then expanded on the initial instruction regarding prior invention with an additional instruction on diligence, noting that a party that is first to conceive but second to reduce to practice "will be the first inventor if it can show reasonable diligence during the critical period." [D.I. 562 at 33.] The Court further noted that "[t]he question of diligence must be considered in light of all of the circumstances." *[Id.]* These are correct statements of the law; as noted above, the trier of fact must evaluate all pertinent evidence in assessing an alleged inventor's testimony. This same notion is reflected in the Court's instruction on Credibility of

18

Witnesses, which asks jurors to determine "whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at trial." [D.I. 562 at 10.] Although some evidence of diligence beyond the inventor's mere testimony is required, the Federal Circuit has noted that "[u]nlike the legal rigor of conception and reduction to practice, diligence and its corroboration may be shown by a variety of activities. . . . The basic inquiry is whether, on all of the evidence, there was reasonably continuing activity to reduce the invention to practice. There is no rule requiring a specific kind of activity in determining whether the applicant was reasonably diligent in proceeding toward an actual or constructive reduction to practice." *Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006). The Court's instruction on diligence precisely tracks this language; in addition to the passage quoted above instructing the jury to consider "all the circumstances," the Court's instruction further noted that "[t]he question is whether the inventor was pursuing his or her goal in a reasonable fashion." [D.I. 562 at 33.]

The Court followed this instruction with another on the topic addressing Corroboration, which notes in relevant part that "there is no final single formula that must be followed in proving corroboration. Rather, the sufficiency of corroborative evidence is determined by 'the rule of reason.' Accordingly, you must make a reasonable analysis of all of the pertinent evidence to determine whether the inventor's testimony is credible. Conception by an inventor, for the purpose of establishing priority, cannot be proved solely by an inventor's unsupported testimony . . . ." [D.I. 562 at 34.] This instruction confirms that one cannot establish priority by relying solely on an inventor's testimony. Fairchild's charge of error picks and chooses a few sentences out of these three instructions without reference to the entire framework for evaluating a claim of prior invention, but the Court correctly instructed the jury that a party relying on an alleged prior conception to defeat an earlier-filed patent application must show diligence and must corroborate the inventor's testimony. Power Integrations did both.

Taken as a whole,[11] the instructions properly directed the jury to evaluate all of the evidence presented at trial to determine whether there was sufficient evidence in the record that Dr. Eklund was the first to conceive of the invention and thereafter was reasonably diligent in working to reduce the invention to practice. They also informed the jury that Power Integrations could not rely solely on Dr. Eklund's testimony to meet its burden of production on this issue. As noted above, the record was in fact replete with evidence, both documentary and in the form of independent testimony, demonstrating Dr. Eklund's prior invention and diligence. Fairchild's present challenge is nothing more than a third bite at the apple following the Court's repeated rejection of Fairchild's challenges to the sufficiency of the evidence of Dr. Eklund's work. [*See* D.I. 266 (denying Fairchild's sixth motion for summary judgment, which challenged the validity of the '075 patent); D.I. 384 at 14 (denying Fairchild's 18th motion *in limine*, which sought to prevent the introduction of any evidence of Dr. Eklund's work).]

Moreover, even if Fairchild were correct that an additional statement along the lines of "diligence must be corroborated" might have improved the jury instructions—and Power Integrations reiterates its view there was nothing wrong with the instructions as framed—Fairchild does not even attempt to show prejudice or to address the proper standard for evaluating an allegedly erroneous jury instruction.[12] The proper standard requires the Court to review the instructions as a whole to determine whether there was an error, and if so "whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice." *Lafate*, 123 F. Supp. 2d at 785 (citation omitted). If the error is harmless, the verdict should be affirmed. *Watson v. S.E. Pa. Transp. Auth.*, 207 F.3d 207, 221-22 (3d Cir. 2000).

---

[11]  Fairchild's brief is silent as to the proper standard for evaluating the instructions, but "the Court should examine the jury instructions as a whole, not just specific provisions in isolation." *Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 785 (D. Del. 2000) (citation omitted).

[12]  In its single paragraph arguing for a new trial on the basis of the Court's instructions, Fairchild cites one case, for the proposition that the alleged error in the jury instructions is reversible and subject to *de novo* review by the Federal Circuit, *see* D.I. 616 at 32 (citing *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270 (Fed. Cir. 2004)), but this is plainly incorrect. The case Fairchild cites has nothing to do with erroneous jury instructions and resulting reversal on appeal. *Ruiz* dealt with a bench trial on obviousness. *Id.* at 1274.

Here, in light of the overwhelming evidentiary record of Dr. Eklund's work on his invention set forth above, there is no way that Fairchild has shown a miscarriage of justice in the Court's instructions. Therefore, the Court should reject Fairchild's request for a new trial based on the Court's instructions.

### C.    The Court Should reject Fairchild's Efforts to Rehash the Arguments That the '075 Patent Is Obvious, Which the Jury Properly Rejected At Trial.

Fairchild's motion also reiterates three obviousness contentions, but the Court should reject Fairchild's suggestion to re-weigh the evidence following the jury's determination that asserted claims of the '075 patent were not obvious.

Fairchild's first two theories rely on the Beasom reference discussed above—that Beasom alone renders claim 1 of the '075 patent obvious or that Beasom and the Ludikhuize reference render claim 1 of the '075 patent obvious. [D.I. 616 at 22-25.] Both arguments must fail, though, because Beasom is not prior art—the jury's rejection of the Beasom '173 patent as prior art precludes any obviousness argument based on Beasom. Apparently conceding that its arguments on the Beasom patents will fail, Fairchild also makes the suggestion that one of ordinary skill in the art would have known to combine the teaching of the Beasom notebook and the Ludikhuize reference [*see id.*], but there is no legal support for this argument. Mr. Beasom's confidential notebook was not a public disclosure, nor was it available to persons of ordinary skill in the art, and such non-public documents have no role in an obviousness inquiry outside of the derivation provision of section 102(f), which has no relevance to the case at hand. *See OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).

Because the Beasom notebook does not meet the requirements in the relevant provisions of section 102 to apply to the obviousness inquiry under section 103, the only Beasom materials that could potentially have had any bearing on obviousness are Mr. Beasom's patents. However, the jury's conclusion that Dr. Eklund was the first to invent foreclosed that argument, as noted above. Indeed, although Fairchild's expert was evasive on the point at trial, he did not present any cogent obviousness arguments that did not depend in some way on the Beasom patent being

prior art. [*See* D.I. 556 (Trial Tr. 9/18/07) at 535.] Given the substantial evidence outlined above that Dr. Eklund was the first inventor, the Court should not re-weigh the evidence on this issue, and should instead confirm that Beasom provides no basis for finding the claimed invention obvious, either alone or in combination with Ludikhuize.[13]

Fairchild's final argument is that claim 5 of the '075 patent was obvious, but as with the other arguments, the Court should not disturb the jury's verdict in light of the substantial evidence in the record. Fairchild's expert admitted that Mr. Beasom never took the allegedly "obvious" step of combining the high voltage structure with low voltage on the same chip in any public document or in his patent,[14] and Power Integrations' expert, testified at trial that claim 5 was "unique," presented one of the "key features" of the patent, and permitted for the first time "a combination of very, very good high voltage with very, very good low voltage. Every other combination up to this point had had severe compromises or trade-offs." [D.I. 559 (Trial Tr. 9/21/07) at 1375:23-1376:21.]

Fairchild and its expert also ignore the substantial evidence in the record of secondary considerations of non-obviousness, including praise by others. In addition to customer praise,

---

[13]   Fairchild does not expressly argue that Ludikhuize by itself renders the claimed invention obvious, but the evidence presented at trial shows that Ludikhuize involved fundamentally different technology that would not have rendered claim 1 obvious by itself. *See* D.I. 557 (Trial Tr. 9/19/07) at 563:22-564:6 (Fairchild's expert conceding that Ludikhuize describes fundamentally different bipolar process technology than that of the '075 patent). As Power Integrations' expert noted, Ludikuhize "is not symmetrical. The extended drain does not have a surface in multiple positions. It doesn't have low voltage MOS devices at all. In fact, it says the low voltage transistors are bipolar transistors which are nothing like MOS transistors. It's a very expensive bipolar process. It's a very different process." D.I. 559 (Trial Tr. 9/21/07) at 1388:13-23. Mr. Beasom himself did not even think Ludikuize relevant enough to disclose during prosecution of his own patents with the claim copied from Dr. Eklund's '075 patent. D.I. 596 (Trial Tr. 9/18/07) at 298:8-306:16.

[14]   Fairchild's reliance on testimony regarding the Beasom "test chip", *see* D.I. 616 at 26, is also misplaced. The first cited testimony does not address the wafers related to the alleged reduction to practice, which Mr. Beasom admitted did not actually embody the complete claimed invention, as noted above. *See* D.I. 556 (Trial Tr. 9/18/07) at 284:16-285:6. Moreover, nothing in the second cited range of testimony has anything to do with the knowledge of a person of ordinary skill in the art, because it was confidential work of Beasom and Intersil (then Harris). Further, Fairchild offered no evidence at trial that the fact of unrelated devices being fabricated on a test wafer indicates anything at all about claim 5 of the '075 patent, which clearly addresses the combination of devices in a combined implementation, not in isolation on different parts of a test wafer.

the first product Power Integrations released that used the patented invention was voted product of the year by Electronic Design News magazine, and the same magazine gave Dr. Eklund an Innovator of the Year award for his work in implementing his high voltage technology on the same chip with low voltage CMOS processing. [D.I. 558 (Trial Tr. 9/20/07) at 1152:18-1153:15.] Fairchild's expert went so far as to suggest that the Electronic Design News award committee gave awards for what was well known in the art "all the time" in an effort to overcome this clear evidence of praise for Dr. Eklund's work [D.I. 556 (Trial Tr. 9/18/07) at 537:11-540:24], but that criticism is simply not credible.

Fairchild also ignores the significant evidence of Power Integrations' success, built on Dr. Eklund's invention and explicitly tied to the claimed invention. [D.I. 558 (Trial Tr. 9/20/07) at 1152:18-1153:15, 1156:6-13; *id.* at 959:13-960:5, 964:22-965:12; D.I. 557 (Trial Tr. 9/19/07) at 878:5-879:7.] Fairchild also ignores the early letter of recommendation from Dr. James Plummer stating that "Klaus' work over the past several years has resulted in some significant improvements" that would provide a 2-3x performance improvement over existing technologies. [PX51.] Fairchild's expert did not disagree with Dr. Plummer's conclusion that Dr. Eklund's work provided significant improvements over previous technologies. [D.I. 557 (Trial Tr. 9/19/07) at 569:8-23.] Fairchild also ignores the substantial evidence of Fairchild's copying of the claimed invention of the '075 patent to develop a highly-successful line of products that have sold more than $100,000,000 to date.[15] [D.I. 557 (Trial Tr. 9/19/07) at 633:18-634:6.] Specifically, the evidence at trial showed that Fairchild's engineers were in possession of the '075 patent as they were creating the accused devices [D.I. 417 (Trial Tr. 10/3/06) at 546:1-4, 550:20-551:9, 551:13-21, 554:16-20], and they reverse engineered the Power Integrations' chips built from the '075 patent to determine how they worked, including the specific limitation of "grounding" the P-top layer. [*Id.* at 543:24-544:7, 551:22-552:12.] After determining how the Power Integrations' chips worked, Fairchild's engineers produced an internal memorandum

---

[15]    All of this secondary considerations evidence applies with equal force to the analysis of claim 1 of the '075 patent, on which claim 5 depends.

setting forth three potential options for dealing with the '075 patent—(a) design around it by leaving the P-Top layer of their device floating as opposed to grounding it as disclosed in the patent; (b) abandon the effort to make a "one-chip" product entirely; or (c) seek a license agreement from Power Integrations—an implicit acknowledgment of the validity of the patent and the potential for infringement. [*Id.* at 567:20-568:23.] Rather than take a license, though, Fairchild just adopted the patented structure because Fairchild's attempted design-around failed to produce a viable high-voltage device. [*See* PX-275 at FCS0189651-53 (showing failure of floating P-Top layer and benefit of grounding).] The only way Fairchild can suggest claim 5 was obvious is to ignore this substantial evidence of objective, secondary considerations of non-obviousness.

Fairchild also erroneously dismisses the entire subject matter and inventive contribution of claim 1 on which claim 5 depends. Although the notion of combining certain kinds of high voltage and low voltage devices on the same chip may have been known in the art, there was no suggestion to do so in the manner claimed in the '075 patent, including the specific and unique high-voltage device of claim 1. [D.I. 559 (Trial Tr. 9/21/07) at 1375:23-1376:21 ("Q. Is there anything unique about combining these two different structures as recited in the claim? A. Yes, there is. In fact, this is one of the key features of this patent. . . . So for the first time, we have a combination of very, very good high voltage with very, very good low voltage. Every other combination up to this point had had severe compromises or trade-offs as we see later.").] The Court should not permit Fairchild to use the independent claim as a roadmap to argue that the dependent claims is obvious. In the end, Fairchild's argument that claim 5 is obvious boils down to a re-hash of its arguments regarding the alleged obviousness of claim 1, but because the jury's determination that claims 1 and 5 of the '075 patent were not obvious is supported by substantial evidence, the Court should not disturb the verdict.[16]

---

[16]  Fairchild quotes liberally from the recent decision in *KSR v. Teleflex* in arguing that the claimed inventions of the '075 patent are obvious, *see, e.g.,* D.I. 616 at 23, 27, but Fairchild does not explicitly challenge the jury instructions in making its obviousness arguments regarding the '075 patent. To the extent Fairchild's arguments are interpreted as a challenge to the instructions on obviousness, Power Integrations refers the Court to Power Integrations'

## V.    CONCLUSION

For all the above reasons, the Court should deny Fairchild's motion for judgment as a matter of law or a new trial with respect to the validity of the '075 patent and enter judgment in favor of Power Integrations on its claim of infringement of the '075.

Dated:  December 21, 2007          FISH & RICHARDSON P.C.

By:  */s/ William J. Marsden, Jr.*
      William J. Marsden, Jr. (#2247)
      Kyle Wagner Compton (#4693)
      919 N. Market Street, Suite 1100
      P.O. Box 1114
      Wilmington, DE  19899-1114
      Telephone: (302) 652-5070
      Email:  marsden@fr.com
      Email:  kcompton@fr.com

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA 02110-2804
      Telephone: (617) 542-5070

      Howard G. Pollack
      Michael Headley
      500 Arguello Street, Suite 500
      Redwood City, CA 94063
      Telephone: (650) 839-5070

      **ATTORNEYS FOR PLAINTIFF**
      **POWER INTEGRATIONS, INC.**

---

response to Fairchild's motion for judgment as a matter of law or new trial regarding the '876 patent, filed contemporaneously with this brief, which details Power Integrations' response to Fairchild's explicit argument that *KSR* required different instructions on obviousness at trial.

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2008, I served the **REDACTED VERSION OF POWER INTEGRATIONS INC.'S OPPOSITION TO FAIRCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL REGARDING INVALIDITY OF U.S. PATENT NO. 4,811,075** on the following as indicated:

**BY HAND DELIVERY**
Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION, and third party
INTERSIL CORPORATION

**BY E-MAIL AND FEDERAL EXPRESS**
G. Hopkins Guy, III
Bas de Blank
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA  94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

*/s/ William J. Marsden, Jr.*
William J. Marsden, Jr.