IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL,
INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S
ANSWERING BRIEF IN OPPOSITION TO POWER INTEGRATIONS,
INC.'S MOTION FOR ENTRY OF A PERMANENT INJUNCTION**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

December 21, 2007

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    FAIRCHILD'S NEW DESIGN-AROUND PRODUCTS SHOULD NOT BE
ENJOINED .......................................................................................... 2

    A.    This Permanent Injunction Proceeding Is Not The Appropriate Forum To
Determine Whether Fairchild's New E-Series Design-Around Products
Infringe Power Integrations' Patents ........................................................ 3

        1.    Power Integrations Has Not Shown That The New E-Series
Products Are No More Than Colorably Different Than The Green
FPS Products Found To Infringe ...................................................... 3

        2.    Fairchild Has Shown That The New E-Series Products Are
Significantly Different Than The Accused Green FPS Products .............. 5

            a.    The New E-Series Soft Start Circuit Is Significantly
Different ......................................................................... 6

## REDACTED

    B.    If Power Integrations Does Wish To Accuse Fairchild's New E-Series
Products, Then Fairchild Is Entitled To A Trial On Infringement ................. 9

    C.    Fairchild's New E-Series Products Do Not Infringe The Asserted Claims .......... 9

            a.    The New E-Series Products Do Not Infringe Claims 9 Or
14 Of The '366 Patent .................................................... 10

            b.    The New E-Series Products Do Not Infringe Claim 1 Of
The '876 Patent ............................................................. 10

            c.    The New E-Series Products Do Not Infringe Claims 1 or 4
of the '851 Patent or Claim 14 of the '366 Patent ...................... 11

III.    A PERMANENT INJUNCTION IS NOT WARRANTED ......................................... 11

    A.    Power Integrations Is Not Entitled To A Permanent Injunction Because It
Was Awarded Damages Based On Future Lost Profits ................................. 12

    B.    The Permanent Injunction Proposed By Power Integrations Is Unduly
Broad, And Must Be Rejected .............................................................. 14

        1.    Power Integrations Improperly Seeks To Enjoin Infringement
Beyond The Expiration Date of the Patent ........................................ 15

        2.    Power Integrations Improperly Seeks To Enjoin Infringement Of
Claims That Were Not Asserted At Trial And For Which There
Was No Finding Of Infringement .................................................... 15

# TABLE OF CONTENTS
## (continued)

**Page**

    3.    Power Integrations Improperly Seeks To Enjoin Conduct Not Prohibited by Section 271 ........................................................................ 16

    4.    Power Integrations Improperly Seeks To Enjoin Foreign Activity ......... 16

    5.    Power Integrations Seeks An Overly Broad Notice Provision ................ 17

IV.    ANY INJUNCTION THE COURT ISSUES SHOULD BE STAYED PENDING FAIRCHILD'S APPEAL AND THE OUTCOME OF THE PENDING REEXAMINATIONS ................................................................................. 17

    A.    There Is A Strong Likelihood That Fairchild Will Succeed On The Merits Of Its Appeals And That The Reexaminations Will Result In Rejection Or Modification Of The Asserted Claims .................................................. 19

        1.    Fairchild's Appeal Of The Court's Claim Construction Order Has A Strong Likelihood Of Success ............................................... 20

            a.    "Soft Start Circuit" ..................................................... 21

            b.    "Frequency Variation Signal" ....................................... 23

        2.    Fairchild's Appeal (If Necessary) Of The Invalidity And Noninfringement Of The '876 Patent Has A Strong Likelihood Of Success ......................................................................................... 25

        3.    There Is A Strong Likelihood That The Claims Of The Circuit Patents Will Be Rejected Or Modified During Reexam .......................... 26

    B.    Fairchild Will Be Significantly Harmed If Any Injunction Is Not Stayed ......... 28

V.    CONCLUSION ................................................................................. 31

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Abbott Labs.* v. *Torpharm, Inc.,*
    2007 U.S. App. LEXIS 23803 (Fed. Cir. 2007) ....................................3

*Additive Controls & Measurement Sys.* v. *Flowdata, Inc.,*
    154 F.3d 1345 (Fed. Cir. 1998) ....................................................3

*Amstar Corp.* v. *Envirotech Corp.,*
    823 F.2d 1538 (Fed. Cir. 1987) ..................................................12

*Apex Inc.* v. *Raritan Computer, Inc.,*
    325 F.3d 1364 (Fed. Cir. 2003) ..................................................23

*Arbek Mfg.* v. *Moazzam,*
    55 F.3d 1567 (Fed. Cir. 1995) .................................................4, 9

*Black & Decker* v. *Robert Bosch Tool Corp.,*
    2006 U.S. Dist. LEXIS 86990 (D. Ill. 2006) ...................................9

*Contrast Magnesystems* v. *Nikken, Inc.,*
    36 F.3d 1114 (Fed. Cir. 1994) ..................................................28

*Cybor Corp.* v. *Fas Techs.,*
    138 F.3d 1448 (Fed. Cir. 1998) .................................................20

*E. I. Du Pont de Nemours & Co.* v. *Phillips Petroleum Co.,*
    835 F.2d 277 (Fed. Cir. 1987) ..................................................28

*Ethicon, Inc.* v. *Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988) .................................................27

*Hilton* v. *Braunskill,*
    481 U.S. 770 (1987) ..............................................................18

*Honeywell Int'l, Inc.* v. *Universal Avionics Sys. Corp.,*
    397 F. Supp. 2d 537 (D. Del. 2005) .........................................18, 28

*In re Zletz,*
    893 F.2d 319, 322 (Fed. Cir. 1989) ............................................27

## TABLE OF AUTHORITIES

**Page**

*Int'l Rectifier Corp.* v. *Samsung Elecs. Co.*,
    361 F.3d 1355 (Fed. Cir. 2004).................................................................16

*King Instrument Corp.* v. *Otari Corp.*,
    814 F.2d 1560 (Fed. Cir. 1987)................................................................12

*Ksm Fastening Sys.* v. *H.A. Jones Co.*,
    776 F.2d 1522 (Fed. Cir. 1985).............................................................3, 9

*Laitram Corp.* v. *NEC Corp.*,
    163 F.3d 1342 (Fed. Cir. 1998)...........................................................19, 26

*Lighting World* v. *Birchwood Lighting*,
    382 F.3d 1354 (Fed. Cir. 2004)................................................................22

*Linear Tech. Corp.* v. *Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004)...........................................................22, 23

*MGM Well Services, Inc.* v. *Mega Lift Systems, LLC*,
    2007 WL. 1231682 (S.D. Tex. 2007) ........................................................2

*Nichols Inst. Diagnostics, Inc.* v. *Scantibodies Clinical Lab, Inc.*,
    166 Fed. Appx. 487, 488-489 (Fed. Cir. 2006).........................................21

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005).................................................................22

*Pioneer Hi-Bred Int'l, Inc.* v. *J.E.M. Ag Supply*,
    33 F. Supp. 2d 794 (D. Iowa 1999)............................................................20

*Resonate Inc.* v. *Alteon Websystems*,
    338 F.3d 1360 (Fed. Cir. 2003).................................................................24

*SciMed Life Sys.* v. *Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001).................................................................25

*Semitool, Inc.* v. *Novellus Sys.*,
    44 Fed. Appx. 949, 956 (Fed. Cir., 2002) .................................................22

*Standard Havens Prods.* v. *Gencor Indus.*,
    1993 U.S. App. LEXIS 11963, 1993 WL 172432 (Fed. Cir. 1993) ...........28

## TABLE OF AUTHORITIES

**Page**

*Standard Havens Products, Inc.* v. *Gencor Industries, Inc.*,
  897 F.2d 511 (Fed. Cir. 1990)......................................................................18, 27, 30

*Thomas* v. *Evanston*,
  636 F. Supp. 587 (D. Ill. 1986) ...............................................................................20

*United States Surgical Corp.* v. *Origin Medsystems*,
  1996 U.S. Dist. LEXIS 2793 (D. Cal. 1996) ..........................................................20

*Watts* v. *XL Sys.*,
  232 F.3d 877 (Fed. Cir. 2000)..................................................................................21

## FEDERAL STATUTES

35 U.S.C. §§ 252, 307(b) ....................................................................................19, 26

35 U.S.C. §271  .............................................................................................................16

35 U.S.C. §283  .............................................................................................................14

Fed. R. Civ. P. 62(c) ...............................................................................................17, 18

35 U.S.C. §154(a)(2).....................................................................................................15

## MISCELLANEOUS

*Patent Claim Construction in the Trial Courts: A Study Showing the Need for Clear
  Guidance From the Federal Bench,* 33 Seton Hall L. Rev. 711, 745-746 ...............21

## I.    <u>INTRODUCTION.</u>

In its Motion for Entry of a Permanent Injunction, Power Integrations, Inc. ("Power

Integrations") seeks to afford itself significant injunctive relief, which it is not entitled to.  It

seeks to obtain relief for specific infringing activity for which it was already awarded future

damages.  It further seeks to enjoin Fairchild for a period beyond the life of its patents, as well as

for non-U.S. related activity, which it is territorially prevented from doing.  Moreover, it seeks to

enjoin Fairchild from infringing all claims of the asserted patents, not just those found to infringe

at trial.

Most importantly, Power Integrations attempts to enjoin 26 never-before accused

Fairchild products.  The majority of these products are new, and were specifically designed by

Fairchild to clearly avoid the asserted patents.  They contain circuit structures that are

significantly different than those accused by Power Integrations at trial.  Nevertheless, Power

Integrations attempts to enjoin Fairchild from selling these new products without providing any

evidence as to why these products are no more than "colorably different" than the Fairchild

products found to infringe at trial.  Power Integrations makes no attempt whatsoever to explain

how these products infringe the claims of its patents, or even identify which products allegedly

infringe which claims (at trial, different products were accused of infringing different claims).  If

Power Integrations truly wishes to accuse Fairchild's new design-around products, Fairchild is

entitled to a trial on the issue of infringement.  Power Integrations' motion for an injunction,

therefore, must be rejected.

In the alternative, any injunction that may be issued should be stayed pending the

outcome of Fairchild's appeal.  Fairchild will have strong arguments for appeal if its Motions for

Judgment as a Matter of Law are denied, as well as on claim construction, which cannot be

raised at this time.  Moreover, all three of Power Integrations' circuit patents are currently being

reexamined by the Patent Office, with the Patent Office having declared that a substantial new

question of patentability exists as to each circuit patent.  Therefore, in addition to a stay pending

the outcome of an appeal, the Court should stay any injunction pending the outcome of the

reexaminations.

## II.    FAIRCHILD'S NEW DESIGN-AROUND PRODUCTS SHOULD NOT BE ENJOINED.

Power Integrations seeks to enjoin not only the Accused Green FPS products found to infringe at trial, but also 26 new Fairchild products that were never accused before. D.I. 565 at 21; Power Integrations' Proposed Order Granting Permanent Injunction, D.I. 564, attachment #1, ¶3. Many of these newly-accused products --     REDACTED
                    -- were specifically designed to avoid infringing the claims of the asserted Power Integrations' patents, and should not be subject to any injunction entered by the Court.[2] *See* generally the Declaration of Han-Seok Choi and the Declaration of Robert Conrad.[3] By Power Integrations' own admission, "[e]ven if Fairchild is enjoined from infringing Power Integrations' patents, it will remain free to offer non-infringing alternatives." D.I. 564 at 20 (citing *MGM Well Services, Inc. v. Mega Lift Systems, LLC*, 2007 WL 1231682, *15 (S.D. Tex. Apr. 25, 2007)). Fairchild's new e-Series Green FPS products     REDACTED     (hereinafter collectively referred to as "the new e-Series products") are non-infringing alternatives and should not be enjoined.

Power Integrations' attempt to enjoin additional products never accused at trial can only be addressed through a motion for contempt of an injunction. At a minimum, the standards that apply to a contempt proceeding thus apply equally to Power Integrations' attempt to add new products at this late time to its proposed injunction. In order to add new, previously unaccused products to an injunction, Power Integrations must prove not only (1) that those products are no more than "colorably different" than the products found to infringe at trial, but also (2) that any

---

REDACTED

[2] Power Integrations has refused to provide any discovery concerning its allegations that the newly-accused products are no more than colorably different from the Fairchild products found to infringe at trial. Fairchild therefore moved to strike the declarations accompanying Power Integrations' motion for a permanent injunction. D.I. 593. That motion is presently pending before the Court.
[3] The Declarations of Hang-Seok Choi and Robert Conrad are filed contemporaneously herewith.

REDACTED

2

such new products infringe the asserted claims *by clear and convincing evidence*. *Additive Controls & Measurement Sys. v. Flowdata, Inc.*, 154 F.3d 1345, 1349 (Fed. Cir. 1998). Power Integrations cannot make either showing for Fairchild's new e-Series design-around products.

**A.      This Permanent Injunction Proceeding Is Not The Appropriate Forum To Determine Whether Fairchild's New E-Series Design-Around Products Infringe Power Integrations' Patents.**

The Court must first determine whether this injunction proceeding is the appropriate forum to determine whether Fairchild's new e-Series products, which were specifically designed to avoid Power Integrations patents, infringe those patents, or whether this issue should be resolved in a separate infringement action. *See Additive Controls & Measurement Sys.*, 154 F.3d at 1349. This decision turns on a comparison between the original accused Green FPS products found to infringe at trial and the redesigned e-Series products, and requires the Court to assess whether there is more than a colorable difference between the two products. *Id.*; *Ksm Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522, 1530 (Fed. Cir. 1985) ("contempt should not go forward if there is more than a 'colorable difference' in the accused and adjudged devices.") "If the differences are such that 'substantial open issues' of infringement are raised by the new device, then contempt proceedings are inappropriate." *Additive Controls*, 154 F.3d at 1349; *see also, Abbott Labs. v. Torpharm, Inc.*, 2007 U.S. App. LEXIS 23803, 13-17 (Fed. Cir. October 11, 2007) ("If there is more than a colorable difference between the accused product and the adjudged infringing product such that 'substantial open issues with respect to infringement to be tried' exist, contempt proceedings are not appropriate." (internal citations omitted)). In this case, the evidence clearly shows that there are significant differences between Fairchild's new e-Series design-around products and the Green FPS products that were found to infringe at trial.

**1.      Power Integrations Has Not Shown That The New E-Series Products Are No More Than Colorably Different Than The Green FPS Products Found To Infringe.**

Power Integrations has failed to demonstrate that any of the newly-accused products are no more than colorably different than the accused Green FPS products that were found to

infringe at trial.[5]  *See Arbek Mfg. v. Moazzam*, 55 F.3d 1567, 1569 (Fed. Cir. 1995).  Despite

bearing the burden of proving this issue, Power Integrations relies solely upon a cursory, 2-page

declaration from its expert Robert Blauschild.  Mr. Blauschild bluntly states that based ***solely*** on

a review of the datasheets the "new products appear to incorporate substantially the same circuits

for performing soft start and frequency modulation as those already found to infringe."

Blauschild Declaration, D.I. 567.  The datasheets, however, actually show that the products

identified by Mr. Blauschild contain a variety of different features and circuits relevant to the

asserted patents.  For example,

**REDACTED**

(Ex. 1 PIF145147-PIF145163),                                          (Ex. 2, PIF145178-

PIF145198).

     (Ex. 3 PIF145233-PIF145256; Ex. 4 PIF145219-PIF145232).  Accordingly, Mr.

Blauschild's statement that a comparison of the datasheets purportedly shows that the products

contain "substantially the same circuits" is facially incorrect.

     Moreover, Mr. Blauschild's "comparison" of datasheets is grossly insufficient to accuse

new products because the datasheets do not contain sufficient detail about the accused circuits to

demonstrate whether or not the newly accused products are no more than colorably the same as

the prior accused Green FPS products found to infringe at trial.  The asserted claims are quite

specific and contain numerous details that simply are not shown on the datasheets.[6]  Indeed, the

infringement analysis at trial required detailed examination of the actual circuit schematics for

the accused Green FPS products.  It is impossible to tell whether the circuits of the newly

---------------------------------

**REDACTED**

---

[6] For example, the soft start circuit of the '366 and '851 patents is limited to specific structure disclosed in the patent, while the datasheet simply shows a box without disclosing any structure for the circuit.  Similarly, the frequency jitter circuit of the '876 patent requires a counter and a digital to analog converter, yet the datasheet provides only block diagrams and does not show the detailed components.

4

accused products are "no more than colorably different" than the circuits of the accused Green FPS products that were found to infringe at trial without at least comparing the schematics for the products. Mr. Blauschild never performed such an analysis and apparently made his declaration without the benefit of any reverse engineering of Fairchild's actual products or review of the relevant schematics. Such an examination would have shown that not only are the new e-Series products *colorably* different than the accused Green FPS products, but also that they are *significantly* different and do not infringe any of the asserted claims.

2.  **Fairchild Has Shown That The New E-Series Products Are Significantly Different Than The Accused Green FPS Products.**

After receiving this Court's March 31, 2006 Claim Construction Order defining the meaning of various claim elements,                        **REDACTED**

[Choi Decl., ¶¶ 3-6; Conrad Decl., ¶ 9]

**REDACTED**

[Choi Decl., ¶¶ 6-10; Declaration of Gu-Yeon Wei[7], ¶¶ 22-24, 30]  Also, in contrast to the Green FPS products found to infringe,                **REDACTED**

[Choi Decl., ¶¶ 6, 12, 19; Wei Decl. ¶ 32]

[Choi Decl., ¶ 12; Wei Decl. ¶ 2]

**REDACTED**                                    **REDACTED**

Power Integrations distinguished this same language from its claimed invention. [Choi Decl., ¶¶ 6, 12-18; Wei Decl. ¶¶ 18-21]

Each of the new e-Series circuits is thus significantly different than the accused Green

_____

[7] The Declaration of Gu-Yeon Wei is filed contemporaneously herewith.

**REDACTED**

FPS products that were found to infringe at trial.

[Conrad Decl. ¶ 9]

Fairchild also undertook significant efforts to convince its customers to switch from the accused

Green FPS products that were found to infringe Power Integrations patents to the new e-Series

circuits that were specifically designed to clearly avoid those patents. [Conrad Decl. ¶ 14]

<blockquote>a. <u>The New E-Series Soft Start Circuit Is Significantly Different.</u></blockquote>

In its March 31, 2006 Claim Construction Order, the Court construed the term "soft start

circuit" as a means plus function claim, which was accordingly limited to the corresponding

structure (and equivalents) disclosed in the specification. [D.I. 232 at p. 3] As Power

Integrations' expert testified at the October 2006 trial on infringement of the accused Green FPS

products, the disclosed soft start circuit structure is a latch, comparator, and AND gate.

[10/3/2006 Blauschild Tr. Transcript, 494:4-8]

**REDACTED**

[Wei Decl.,

¶ 9]

[*Id.*]

The accused Green FPS products included a latch. At the infringement trial, Power

Integrations' expert testified that this latch corresponded to the latch of the asserted claims.

[10/3/2006 Blauschild Tr. Transcript, 495:6-496:19]

**REDACTED**

[Choi

Decl., ¶¶ 6-10; Wei Decl., ¶¶ 22-24, 30]

**REDACTED**

[Choi Decl., ¶¶ 9, 12; Wei Decl., ¶¶ 11, 13]

6

REDACTED

From the standpoint of the asserted claims, the new softstart circuit represents a significant difference.                    REDACTED


The asserted Claim 1 of the '876 Patent expressly requires a counter and a digital to analog converter that are used to modulate the switching frequency of the power supply.  ['876 Patent, claim 1]  The accused Green FPS products included a counter that was connected to a digital to analog converter through a significant amount of intermediary circuitry, which was found to infringe Claim 1 by the jury.  [Choi Decl., ¶ 6; Wei Decl., ¶ 27]        REDACTED


[Choi Decl., ¶¶ 6, 12, 19; Wei Decl. ¶ 27]  Accordingly, each of the new e-Series products is significantly different than the accused Green FPS products with regards to the asserted claim of the '876 Patent.

The new e-Series products are likewise significantly different with respect to the frequency variation signal of the '851 and '366 Patents.  The Court defined the frequency variation signal as "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal with a predetermined frequency range."  [DI 232 at p. 3]
                    REDACTED


[Choi Decl., ¶ 12; Wei Decl. ¶ 2]
                    REDACTED

**REDACTED**

[Choi Decl., ¶ 20]

[Choi Decl., ¶ 6, 12-18; Wei Decl. 18-21]

**REDACTED**

Critically, the analysis provided by Dr. Wei and the declaration of Dr. Choi provide the actual detailed circuit schematics of the new e-Series products. This analysis relies upon the actual circuits contained in the new e-Series products and provides the necessary detail that the datasheets lack. In contrast, Power Integrations and Mr. Blauschild have never, to our knowledge, analyzed the new e-Series products at this level. While Fairchild has produced the full schematics for exemplars of the new e-Series products to Power Integrations, Power Integrations has refused all attempts to conduct mutual discovery on the issue. [D.I. 602] In particular, Power Integrations refused to permit either deposition or cross-examination of Mr. Blauschild regarding either his declaration or his opinion that the new e-Series products were substantially the same. Obviously, Mr. Blauschild's opinions were given without knowledge of the detailed circuits contained in the new e-Series products and should be struck as conclusory and unsupported.

**B.    If Power Integrations Does Wish To Accuse Fairchild's New E-Series Products, Then Fairchild Is Entitled To A Trial On Infringement.**

It is inappropriate to use the current proceeding to enjoin Fairchild's new e-Series products. Fairchild has made a good-faith effort to develop and design circuits for its new e-Series products that would clearly avoid the claims of Power Integrations' patents. *Arbek Mfg.*, 55 F.3d at 1570 ("Contempt, however, is not a sword for wounding a former infringer who has made a good-faith effort to modify a previously adjudged or admitted infringing device to remain in the marketplace.") "The modifying party generally deserves the opportunity to litigate the infringement question at a new trial, 'particularly if expert and other testimony subject to cross-examination would be helpful or necessary.'" *Id.* (quoting *Ksm*, 776 F.2d at 1531). In this case, expert testimony is not only helpful in understanding why the new e-Series products do not infringe the asserted claims of Power Integrations' patents, but required. In light of the fact that any question of infringement or colorable differences as to the new e-Series products has at least been reduced to a significant dispute between opposing experts, Fairchild is therefore entitled to a new trial on infringement of its new e-Series products. *Arbek Mfg.*, 55 F.3d at 1570; *Black & Decker v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 86990, 9 (D. Ill. 2006) ("the appropriate way of addressing whether the [design-around product] infringes the continuation of the patents-in-suit is to proceed by way of Black & Decker's new lawsuit.") This is especially true here, where both parties rely upon testimony from experts, and a significant dispute exists. D.I. 568 ¶4; *Arbek Mfg.*, 55 F.3d at 1570.

**C.    Fairchild's New E-Series Products Do Not Infringe The Asserted Claims.**

If the Court nonetheless determines that the e-Series products are no more than colorably different than the accused Green FPS products – which it should not, given the significant differences between the products discussed above – then the second question that must be resolved is whether the newly accused products infringe the claims of the patent. *Additive Controls*, 154 F.3d at 1349. To show infringement, Power Integrations "must prove by clear and convincing evidence that the modified device falls within the admitted or adjudicated scope of the claims." *Arbek Mfg. v. Moazzam*, 55 F.3d 1567, 1569 (Fed. Cir. 1995) (internal quotation

9

omitted). Power Integrations has not done so, or even attempted to do so. The evidence presented supports but one conclusion: the new e-Series products do not infringe any of the asserted claims.

Indeed, Power Integrations did not even attempt to satisfy the requirement of proving by clear and convincing evidence that the new e-Series products infringe the asserted claims. *See Arbek*, 55 F.3d at 1569. Despite bearing this heavy burden, Power Integrations relies solely upon a cursory, 2-page declaration from its expert Robert Blauschild that *fails even to identify which newly accused products allegedly infringe which of the three circuit patents* (the "Blauschild Declaration," D.I. 567). The declaration contains no claim chart or element-by-element analysis of any claim. Power Integrations' expert provides absolutely no explanation how the newly-accused products read on the asserted claims. There can be no question that this complete omission fails to meet Power Integrations' burden of proving infringement by clear and convincing evidence.

In stark contrast, the evidence presented by Fairchild demonstrates that the new e-Series products do not infringe any of the asserted claims.

### a.   The New E-Series Products Do Not Infringe Claims 9 Or 14 Of The '366 Patent.

Claims 9 and 14 of the '366 Patent and Claim 4 of the '851 Patent require the same soft
**REDACTED**
start circuit.

[Wei Decl., ¶¶ 23, 24, 30]

**REDACTED**

[*Id.*]

[D.I. 232; 10/3/2006 Blauschild Tr. Transcript 494:1 – 496:24]

### b.   The New E-Series Products Do Not Infringe Claim 1 Of The '876 Patent.

On its face, Claim 1 of the '876 patent requires use of a counter to drive a digital to

analog converter to vary the switching frequency of the power supply.    **REDACTED**

[Choi Decl., ¶¶ 6, 12, 19; Wei Decl. ¶ 32]

[Choi Decl., ¶ 12; Wei Decl., ¶ 2]

[Choi Decl., ¶¶ 6, 12-18; Wei Decl. ¶¶ 18-21]

> c.    **The New E-Series Products Do Not Infringe Claims 1 or 4 of the '851 Patent or Claim 14 of the '366 Patent.**

Claims 1 and 4 of the '851 Patent and Claim 14 of the '366 Patent require the same frequency variation signal. As discussed above, the Court construed this term to require "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal with a predetermined frequency range." [D.I. 232 at p. 3]

**REDACTED**

[Wei Decl. ¶¶ 25-29]

## III.    A PERMANENT INJUNCTION IS NOT WARRANTED.

Power Integrations is not entitled to a permanent injunction because it has already received damages for Fairchild's infringement in the form of future lost profits. Power Integrations argued for, and received, an adequate remedy. Moreover, Power Integrations' proposed order is entirely too broad, seeking to enjoin activity that is far beyond the rights afforded it by its patent grant. For both these reasons, Power Integrations' motion for a

permanent injunction must be denied.

**A.    Power Integrations Is Not Entitled To A Permanent Injunction Because It Was Awarded Damages Based On Future Lost Profits**

At trial, Power Integrations sought, and was awarded $13,018,379 of damages based on "future" lost profits due to price erosion through October 2010.[8]  [10/4/06 Troxel Trial Tr. 785:11-13, 867:20-23]; D.I. 415 (10/10/06 Jury Verdict).  While a significant amount of this award was based upon sales taking place outside the U.S., Power Integrations nevertheless argued for and received damages for future harm.  Enjoining the accused products would result in double recovery for the same harm.  Having elected the remedy of future lost profits, Power Integrations is not entitled to an injunction because it has already been monetarily compensated for the infringement.  *See Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1549 (Fed. Cir. 1987) ("Having been awarded full compensation for the making and using of existing infringing thickeners, therefore, [the patentee] is not entitled to enjoin their use."); *see also King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987) (overturning a grant of a permanent injunction relating to certain products for which the patentee had been monetarily compensated).  Power Integrations should not obtain a double recovery both in the form of future damages and a permanent injunction.

Power Integrations can be expected to object that it is entitled to double recovery because now that it has allegedly lowered its prices it will be unable to raise them even if an injunction is entered.  This should be rejected because Power Integrations took opposite positions at trial.  There, Power Integrations argued that there would only be a two supplier market – Fairchild and Power Integrations – for the products in the *future* that are the basis of its *future* lost profits claim.  Accordingly, if Fairchild is now removed from the market, Power Integrations will be able to raise its prices and customers will have no choice but to pay the price Power Integrations seeks.

---

[8] Power Integrations based its lost profits awards on Fairchild's infringement of the '876 and '851 patents.  [10/4/06 Troxel Trial Tr. 787:16-22]  Power Integrations now seeks to permanently enjoin all the Fairchild products that were found to infringe the '851 and '876 patents.  Only Fairchild's FSDM311 part was found to infringe the '366 patent but not either the '876 or the '851 patent.

In awarding Power Integrations damages based on future price erosion, the jury was instructed that it must find that Fairchild was a "but for" cause of the erosion:

> In this case, Power Integrations is requesting damages based on price erosion. Price erosion occurs when the patentee is forced to lower prices due to the presence in the market of the infringing product. Specifically, Power Integrations asserts that it lowered its prices for certain of its prices and will be unable to raise prices for some period of time in the future because of Fairchild's infringement.
>
> If you determine that the prices on Power Integrations' products were eroded, you must then consider whether any such price erosion resulted because Fairchild was in the market or because of some other reason.
>
> Ultimately to recover price erosion damages, Power Integrations must prove that but for Fairchild's competition, it would not have lowered its prices.

[10/6/2006 Tr. Transcript 1676:12-1677:6.]

In asserting that Fairchild was a "but for" cause of *future* price erosion, Power Integrations argued that the relevant market consisted of only two competitors: Fairchild and Power Integrations. [10/4/06 Troxel Trial Tr. 801:2-9] In fact, Power Integrations did not present any evidence of future lost profits contemplating a scenario other than a two-player market involving only Fairchild and Power Integrations. [10/4/06 Troxel Trial Tr. 861:21-862:8] In order to accept Power Integrations' future price erosion damages calculations, the jury must have necessarily accepted that Fairchild and Power Integrations were the only competitors in the relevant market.

In seeking a permanent injunction, Power Integrations now takes positions that are entirely inconsistent with those that it took in seeking damages relating to future lost profits. Specifically, if the relevant market was truly in a two-player market, as it argued and the jury must have accepted, Power Integrations would be able to raise prices once Fairchild leaves the market and it obtains a monopoly in the relevant market. There is no credible explanation as to why Power Integrations could not raise its prices in that event, and it presented none at trial. Rather, Power Integrations merely explained that it could not raise its prices because its customers would not like it to.[9]

---

[9] Of course, the only reasonable explanation as to why Power Integrations would not be able to raise prices is if the relevant market was never in a two-player market in the first place. In that case, Power Integrations is not entitled to

To the contrary, Power Integrations readily admitted that it could, and in fact did in the past, raise its prices even with Fairchild's competition. Power Integrations' expert Mr. Troxel admitted that in some instances, Power Integrations raised the price of its products. [10/4/06 Troxel Trial Tr. 851:18-852:8] "Well, you have those two instances, there's two instances in the last five years, which the price went up a penny in one month. And that's true. So I was wrong to that extent." [10/4/06 Troxel Trial Tr. 850:19-22]

Because it will be able to raise its prices should an injunction be entered, Power Integrations will obtain a double-recovery in the form of both future price erosion damages awarded and future price increases resulting from injunctive relief. Any permanent injunction should not be entered until at least October of 2010, the date through which Power Integrations has obtained future lost profits damages due to price erosion. Alternatively, if Power Integrations insists on pursuing injunction relief, it must forego the $13,018,379 in damages it obtained in future lost profits from price erosion. Power Integrations should not be allowed to obtain both remedies.

**B.     The Permanent Injunction Proposed By Power Integrations Is Unduly Broad, And Must Be Rejected**

Power Integrations' proposed Order Granting Permanent Injunction should be rejected because it is unduly broad. [D.I. 564, attachment #1]  It is unduly broad even above and beyond seeking to enjoin the newly-accused e-Series products for each of the additional reasons set forth below. The particular portions to which Fairchild objects are highlighted in the following passage from Power Integrations' proposed order, and the reasons for such objections are explained below:

> 2.     IT IS HEREBY ORDERED that pursuant to 35 U.S.C. §283, Fairchild and its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities, including specifically Fairchild Korea Semiconductor, Ltd. and Fairchild Korea Trading Company), during the period commencing on the date hereof and *through and including May 16, 2020*, and hereby ENJOINED and RESTRAINED from infringing and from inducing, contributing to, *or otherwise*

---

any damages for lost sales or price erosion.

*causing* the infringement of *any claim* of U.S. Patent Nos. 6,229,366 B1, 6,249,876 B1, and 6,107,851 by *making, using, selling, offering to sell in the United States*, or importing into the United States, or by inducing, contributing to, *or otherwise causing* the same by third-parties, of any of the integrated circuit products listed above, or any variations thereof not more than colorably different, or any power supply product or component incorporating any such integrated circuit products. IT IS HEREBY ORDERED

### 1.   Power Integrations Improperly Seeks To Enjoin Infringement Beyond The Expiration Date of the Patent.

First of all, Power Integrations' proposed order would enjoin Fairchild through May 16, 2020, almost two years after the patents expire.  [*Id.* ¶ 2]  Per 35 U.S.C. §154(a)(2), patents expire 20 years "from the date on which the earliest such application was filed."  The '876 patent was filed on November 16, 1998, and the '851 and '366 patents claim priority to an application filed May 18, 1998.  These patents, then, will expire on November 16, 2018 and May 18, 2018, respectively.  Not all of the Fairchild products were found to infringe the '876 patent.  Accordingly, the last possible date that all of the products listed in Power Integrations' proposed order could be enjoined is May 18, 2018.

### 2.   Power Integrations Improperly Seeks To Enjoin Infringement Of Claims That Were Not Asserted At Trial And For Which There Was No Finding Of Infringement.

Power Integrations' proposed injunction would enjoin Fairchild from "from infringing ... *any* claim of U.S. Patent Nos. 6229,366 B1, 6,249,876 B1, and 6,107,851."  [D.I. 564, attachment #1, ¶2 (emphasis added)]  Fairchild was only found to infringe claims 9 and 14 of the '366 Patent, claims 1 and 4 of the '851 Patent, and claim 1 of the '876 patent.  [D.I. 415 (10/10/06 Jury Verdict)]  Any injunction that may be issued must be specifically limited to those claims only, and not to every claim in the three patents.

15

**3.    Power Integrations Improperly Seeks To Enjoin Conduct Not Prohibited by Section 271.**

Power Integrations' proposed injunction would enjoin Fairchild from "inducing, contributing to, or otherwise causing" the infringement of Power Integrations' patents.  D.I. 564, attachment #1, ¶2. ll. 6, 9.  Not only is the "otherwise causing" language vague and confusing, it is beyond the scope of the Patent Act.  There is no prohibition in 35 U.S.C. §271 preventing "otherwise causing" infringement.  *See Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004) (holding that the language of a permanent injunction is properly commensurate with 35 U.S.C. §271).  Power Integrations' attempt to seek an injunction broader than the Patent Act allows should be rejected.

**4.    Power Integrations Improperly Seeks To Enjoin Foreign Activity.**

Power Integrations also seeks to enjoin "making, using, selling, offering to sell in the United States, or importing into the United States."  (D.I. 564, attachment #1, ¶2 l. 8)  Because of Power Integrations' inartful grammar, this language on its face appears to enjoin making, using and selling the accused products, regardless of whether such activity is inside or outside of the U.S., while offers for sale and importation are clearly limited to U.S. activity.  This could be corrected by inserting the word "or" between the words "selling" and "offering to sell," as similarly stated in the Patent Act in order to make clear that the injunction only applies to U.S. activity.  Otherwise, as drafted, it could be interpreted as enjoining Fairchild's making, using, and selling the accused products outside of the U.S.  This is beyond the scope of Power Integrations' patent rights.  *See Int'l Rectifier Corp.*, 361 F.3d at 1360 (holding permanent injunction not violated because accused infringer's acts did not take place within the United States).

At trial, Power Integrations sought damages pertaining to substantial non-U.S. activity. [10/4/06 Troxel Trial Tr. 838:1-840:20]  To ensure that Power Integrations does not attempt to similarly overstep its territorial rights with respect to any permanent injunction that may issue,

the following sentence should be inserted into any paragraph concerning the scope of injunction: "Nothing in this injunction retrains activities taking place entirely outside of the United States and its territories."

### 5.    Power Integrations Seeks An Overly Broad Notice Provision.

Finally, Power Integrations' proposed order requires Fairchild to provide notice of injunction to "all distributors, customers or other third-parties who have ordered, received or purchased any of the parts enumerated in paragraphs 1 or 3 above from Fairchild or any affiliated entity." D.I. 564, attachment #1, ¶4. This requirement is overbroad and unnecessarily burdensome, because it is unbounded in time and because Fairchild has no way of identifying all of the third parties who may have received these products in the past.

For all of these reasons, Power Integrations' proposed Order Granting Permanent Injunction must be rejected. Any injunction that may be issued:

1. should not extend beyond May 18, 2009;

2. should be limited to the claims Fairchild was found to infringe at trial: i.e., claims 9 and 14 of the '366 Patent, claims 1 and 4 of the '851 Patent, and claim 1 of the '876 patent;

3. should be limited to enjoining "infringing, inducing, or contributing to; infringement" and should not include "otherwise causing infringement;"

4. should be clearly limited to U.S. activity by stating that "nothing in this injunction retrains activities taking place entirely outside of the United States and its territories"; and

5. should not include an overly broad and burdensome notice provision.

### IV.    ANY INJUNCTION THE COURT ISSUES SHOULD BE STAYED PENDING FAIRCHILD'S APPEAL AND THE OUTCOME OF THE PENDING REEXAMINATIONS

Any injunction that may be issued should be stayed pending the outcome of Fairchild's appeals and the reexaminations of Power Integrations' circuit patents pending before the United States Patent and Trademark Office ("PTO"). Pursuant to Fed. R. Civ. P. 62(c), it is within the

discretion of the Court to stay an injunction pending the outcome of an appeal of the judgment. Federal Rule of Civil Procedure 62(c) provides, in relevant part:

> **Injunction Pending an Appeal.** While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

A determination to stay a permanent injunction is guided by four factors: (1) likelihood of success on the merits of the appeal; (2) irreparable injury absent a stay; (3) substantial injury to the other party if the stay is granted; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770 (1987); *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). The four factors often effectively merge as the likelihood of success is weighed with the equities affecting the parties and the public. *Standard Havens Products, Inc.*, 897 F.2d at 513. A flexible, sliding scale analysis thus is applied to determine whether a stay is appropriate. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 548 (D. Del. 2005). "Under weight-based assessments, when the movant is more likely to succeed, the harm required to be shown is less." *Id.*

Fairchild has strong arguments for appeal that each of the patents Power Integrations seeks to enjoin infringement of are invalid and/or not infringed. In particular, Fairchild has a strong argument that the jury's determinations of validity and infringement of the '876 Patent are not supported by substantial evidence and are the result of erroneous jury instructions. Fairchild will appeal any denial of its motion for judgment as a matter of law on these issues. Fairchild likewise has a strong argument that the jury's findings of validity of the asserted claims of the '366 and '851 Patents were based on clearly erroneous claim constructions.[10] Fairchild intends to appeal these erroneous claim constructions as well as the jury's determinations of validity. Fairchild also will appeal any other of its motions for judgment as a matter of law or a new trial that are not granted by the Court, as well as any adverse ruling with respect to its inequitable

---

[10] In the very least, a ruling overturning the claim constructions will require a new trial of invalidity and infringement.

conduct claims. The arguments set forth in Fairchild's briefs in support of its motions and claims demonstrate that Fairchild has a strong basis for each assertion, and thus will have an equally strong basis for appeal in the event those motions or claims are denied.[11]

   The requested injunction will cause substantial harm to Fairchild, particularly to the extent Power Integrations seeks to enjoin Fairchild's new design around products.

**REDACTED**

[Conrad Decl., ¶¶ 10-14]

[*Id.* at ¶¶13, 15, 16] In contrast, Power Integrations has not demonstrated that it would suffer substantial harm to its customer relationships if the status quo is maintained until the issues are finally resolved by the appellate court.

   For the same reasons, Fairchild is also entitled to a stay of any injunction while the reexamination of Power Integrations' patents is pending. The PTO is currently reexamining the three circuit patents and has determined that there are substantial new questions of patentability with respect to each of the patents. The reexaminations are thus likely to result in rejection or modification of the asserted claims of the patents for the same reasons Fairchild is likely to succeed on its appeal of the validity of the patents. Fairchild will be afforded intervening rights for any claims that are rejected or substantively changed during reexamination. 35 U.S.C. §§ 252, 307(b); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346-47 (Fed. Cir. 1998). Accordingly, the balance of equities pending outcome of the reexaminations is the same as the balance pending a result on the appeals and favors staying any injunction.

   **A.      There Is A Strong Likelihood That Fairchild Will Succeed On The Merits Of Its Appeals And That The Reexaminations Will Result In Rejection Or Modification Of The Asserted Claims.**

   A party seeking a stay "need not show that it is more than 50% likely to succeed on

---

[11] Fairchild hereby incorporates by reference the arguments made in each of its briefs in support of its Motions for Judgment as a Matter of Law, New Trial and Inequitable conduct.

19

appeal; otherwise, no district court would ever grant a stay. It is enough that the [applicant] have a substantial case on the merits." *Thomas v. Evanston*, 636 F. Supp. 587, 590 (D. Ill. 1986). *See also United States Surgical Corp. v. Origin Medsystems*, 1996 U.S. Dist. LEXIS 2793 (D. Cal. 1996) (recognizing that "a stay applicant is not required to convince the court that its own order was incorrect, otherwise no district court would ever grant a stay." (internal citations omitted)). "In evaluating the first factor--likelihood of the movant's success on appeal--the petitioner need not establish an absolute certainty of success. Instead, as the actual terms of the test indicate, the petitioner must show that it is likely to succeed on the merits  What is sufficient to satisfy this prong, therefore, is a strong argument favoring the petitioner's position on appeal." *Pioneer Hi-Bred Int'l, Inc. v. J.E.M. Ag Supply*, 33 F. Supp. 2d 794, 797 (D. Iowa 1999) (internal citations and quotations omitted).

There is a strong likelihood that Fairchild will win its appeal of the Court's claim construction of the '851 and '366 Patents, and its appeal of any denial of its JMOL of validity and non-infringement of the '876 Patent. There is an equally strong likelihood that the reexaminations will result in rejection or modification of the asserted claims. Accordingly, the Court should stay any injunction pending the outcome of both Fairchild's appeals and the pending reexaminations.

### 1. Fairchild's Appeal Of The Court's Claim Construction Order Has A Strong Likelihood Of Success.

The Federal Circuit reviews claim construction issues *de novo*. As a result, claim construction issues tend to have a likelihood of success on appeal. In fact, the Federal Circuit estimates that it has reversed in whole or in part approximately 40% of all claim construction orders that come to it on appeal. *Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1476 (Fed. Cir. 1998) (J. Rader dissenting) ("The Federal Circuit, according to its own official 1997 statistics, reversed in whole or in part 53% of the cases from district courts (27% fully reversed; 26% reversed-in-part). Granted this figure deals with all issues in cases with many issues. Nonetheless, one study shows that the plenary standard of review has produced reversal, in

whole or in part, of almost 40% of all claim constructions since Markman I."); *see also Patent Claim Construction in the Trial Courts: A Study Showing the Need for Clear Guidance From the Federal Bench*, 33 Seton Hall L. Rev. 711, 745-746 (reporting that the Federal Circuit reversed 41.5% of lower courts' claim constructions in 2001).

Fairchild plans on appealing at least two claim terms that were construed by the Court: soft start circuit and frequency variation signal. Each of these terms goes to the heart of the inventions of the '366 and '851 Patents.[12] In each case, the Court construed the term in a manner that is inconsistent with the mandates of Federal Circuit jurisprudence in order to sustain the validity of the asserted claims. Fairchild is thus likely to succeed on its appeal of these claim terms and the court should stay any grant of an injunction. *See Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab, Inc.*, 166 Fed. Appx. 487, 488-489 (Fed. Cir. 2006) (granting stay where defendant demonstrated likelihood of succeeding on appeal of district court's claim construction)(unpublished decision).[13]

### a.    "Soft Start Circuit"

The term "soft start circuit" appears in asserted Claims 9 and 14 of the '366 Patent, and in asserted Claim 4 of the '851 Patent. The Court construed the term "soft start circuit" as being a means-plus-function claim element. D.I. 232. This was a narrow construction, which allowed Power Integrations to avoid the prior art, which clearly showed the use of internal soft start circuits. There is a strong likelihood that the Federal Circuit will reverse the Court's construction because the evidence demonstrates that one of ordinary skill in the art would have understood the term soft start, which does not use traditional "means plus function" language, to denote many structures for performing the well known soft start function. *Watts v. XL Sys.*, 232

---

[12] Each of the four asserted claims of the '851 and '366 patents include one or more of these terms. If Fairchild is successful on appeal, the Federal Circuit should either invalidate the asserted claims based on the prior art that was before the jury, or the verdict will have to be thrown out, and the parties will have to relitigate infringement and invalidity for all four claims that were asserted at trial.

[13] Note, this case is unpublished, and is not cited as precedence pursuant to Federal Circuit Rule 32.1.

F.3d 877, 880 (Fed. Cir. 2000) (presumption that element which does not use "means for" language is not a means plus function limitation not rebutted where "the claim limitation recites or refers to terms that are reasonably well understood in the art as names for structure and which perform the recited function…."); *Lighting World v. Birchwood Lighting*, 382 F.3d 1354 (Fed. Cir. 2004) (same).

     None of the claims that use the term "soft start circuit" ever use the words "means for." This creates a strong presumption that the claims are not means-plus-function. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (footnote omitted) ("The claim term in question does not expressly use the word 'means,' thereby invoking the presumption that § 112, P 6 [means-plus-function] does not apply."). Therefore, in order for the claim to be construed as means-plus-function, there has to be proof "that the claim fails to 'recite sufficiently definite structure' or recites 'a function without reciting sufficient structure for performing that function.'" *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004). "In deciding whether [the] presumption has been rebutted, the focus remains on whether the claim as properly construed recites sufficiently definite structure to avoid the ambit of § 112, P 6." *Semitool, Inc. v. Novellus Sys.*, 44 Fed. Appx. 949, 956 (Fed. Cir., 2002).

     In two prior decisions, the Federal Circuit held that the term "circuit" cannot be construed as means-plus-function. The Federal Circuit in fact considered precisely this issue – whether a claim for a "circuit" in a PWM device was means-plus-function – and held that it was not. *See Linear Tech.*, 379 F.3d at 1316. In *Linear Tech.*, as here, plaintiff Linear Technology asserted a patent claiming a PWM device. *Id.* As in the claims here, the claims of Linear's patent required a "circuit" for performing a specific task. In that case, the district court accepted Linear's argument that the "circuit" elements were means-plus-function limitations. The Federal Circuit reversed the district court's construction:

          "To help determine whether a claim term recites sufficient structure, we examine
          whether it has an understood meaning in the art." Technical dictionaries, which
          are evidence of the understandings of persons of skill in the technical arts, plainly
          indicate that the term "circuit" connotes structure. For example, The Dictionary

of Computing 75 (4th ed. 1996) defines "circuit" as "the combination of a number of electrical devices and conductors that, when interconnected to form a conducting path, fulfill some desired function." *See* Rudolf F. Graf, Modern Dictionary of Electronics 116 (7th ed. 1999) (defining "circuit" as "the interconnection of a number of devices in one or more closed paths to perform a desired electrical or electronic function"). ***Thus, when the structure-connoting term "circuit" is coupled with a description of the circuit's operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art, and ⧠112 ¶ 6 presumptively will not apply.***

*Linear*, 379 F.3d at 1320 (citations omitted) (emphasis added). "The term 'circuit' with an appropriate identifier such as 'interface,' 'programming' and 'logic,' certainly identifies some structural meaning to one of ordinary skill in the art." *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed. Cir. 2003).

Here, Claim 9 of the '366 Patent states "a soft start circuit that provides a signal instructing said drive circuit to disable said drive signal during at least a portion of said maximum time period." Claim 4 of the '851 Patent states "a soft start circuit that provides a signal instructing said drive circuit to discontinue said drive signal when said magnitude of said oscillation signal is greater than a magnitude of said frequency variation signal." The term "circuit" is "coupled with a description of the circuit's operation" in both instances. *Linear*, 379 F.3d at 1320.

REDACTED

D.I. 155 (Declaration re Claim Construction Opening Brief of Robert Blauschild), ¶6; D.I. 168 (Declaration re Claim Construction Answering Brief of Paul Horowitz) ¶2. There is a strong likelihood, therefore, that the Federal Circuit will hold that the term "soft start circuit" should not be construed as a means-plus-function element.

### b.    "Frequency Variation Signal"

Asserted Claims 1 and 4 of the '851 Patent and Claim 14 of the '366 Patent include the term "frequency variation signal." The Court construed "frequency variation signal" as "an internal signal that cyclically varies in magnitude during a fixed period of time and is used to modulate the frequency of the oscillation signal within a predetermined frequency range." D.I. 232. Again, this was a construction that was proposed by Power Integrations to avoid the prior

23

art. This construction improperly imports into the claims three different limitations from the specification's preferred embodiment when the claims are clearly broader than the preferred embodiment. There is no justification for including any of these additional limitations:

> Though understanding the claim language may be aided by the explanations contained in the written description, *it is particularly important not to import into a claim limitations that are not part of the claim. For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment.*

*Resonate Inc. v. Alteon Websystems*, 338 F.3d 1360, 1364-1365 (Fed. Cir. 2003) (emph. added).

The first limitation erroneously imported is a requirement that the frequency variation signal be "an internal signal". Not only is there no support for this limitation, it is flatly contradicted by the intrinsic evidence. The claim language simply does not require that the frequency variation signal be internal. Instead, Power Integrations broadly claimed a frequency variation signal that could be either internal (for instance, signal **(400)** shown in Figures 3, 6, and 9) or external (for instance, signal **(135)** shown in Figure 1). This was not inadvertent. In their specification, the Applicants describe both internal and external frequency variation signals:

> Alternatively, or in addition to soft start functionality, pulse width modulated switch **262** may also have frequency jitter functionality. That is, the switching frequency of the pulse width modulated switch **262** varies according to an internal frequency variation signal. This has an advantage over the frequency jitter operation of FIG. 1 in that the frequency range of the presently preferred pulse width modulated switch **262** is known and fixed, and is not subject to the line voltage or load magnitude variations.

'366 Patent, 6:18-26.

The second limitation improperly imported is that the "frequency variation signal" "cyclically varies in magnitude during a fixed period of time." D.I. 232. This is expressly contrary to the specification of the '851 Patent, which indicates that the frequency variation signal can be any signal (including non-cyclic signals) that "vary in magnitude during a fixed period of time." '851 Patent, 6:37-38.

The limitation that the frequency variation signal cyclically vary is found only in the preferred embodiment – not in the claims. In the preferred embodiment, the frequency variation circuit is a low frequency oscillator **(405)** that generates a frequency variation signal **(400)**. This

24

low frequency oscillation signal would – by definition – cyclically vary in magnitude during a fixed period of time. It is, however, "one of the cardinal sins of patent law [to read] a limitation from the written description into the claims." *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001).

The final limitation imported into the claims is that the "frequency variation signal" be "used to modulate the frequency of the oscillation signal within a predetermined frequency range." [D.I. 232] There is no basis – and no support in the intrinsic evidence – for this construction. The claims of the '366 and '851 Patents include an oscillator that provides an oscillation signal. [*See* '366 Patent, Claims 1 and 9; '851 Patent, Claims 1 and 11] For the "frequency variation circuit" claims, the frequency of the oscillation signal will vary within a frequency range. [*See* '366 Patent, Claims 5 and 14; '851 Patent, Claims 1 and 11] There is no requirement, however, that the frequency range of the oscillation signal be "predetermined".

To the contrary, the specifications of the '851 and '366 Patents make clear that the frequency variation signal can vary the frequency of the oscillation signal in any fashion – including varying in a range that is not "predetermined". "The jitter current 135 is used to vary the frequency of the saw-toothed waveform generated by the oscillator contained in the pulse width modulated switch 90." ['366 Patent, 3:23-26]

Because the construction improperly imported three separate limitations from the specification, there is a strong likelihood that the Federal Circuit will reverse the construction of the term "frequency variation signal."

## 2. Fairchild's Appeal (If Necessary) Of The Invalidity And Noninfringement Of The '876 Patent Has A Strong Likelihood Of Success

The issues raised in Fairchild's Motion for Judgment as a Matter of Law Concerning Noninfringement and Invalidity of U.S. Patent No. 6,249,876 (D.I. 614, "'876 Patent JMOL") have a strong likelihood of being successful on appeal, should an appeal be necessary. Fairchild's '876 Patent JMOL explains that the jury erred in failing to find the '876 patent invalid as obvious in light of U.S. Patent No. 4,638,417 (the "Martin Patent"). The jury's factual

findings underlying its determination were not supported by substantial evidence, and as a matter

of law those findings do not support a legal determination of non-obviousness. Additionally, the

'876 Patent JMOL explains that because Power Integrations did not present any evidence that the

accused Fairchild products vary the switching frequency "about a target frequency" – a

necessary element of Claim 1 of the '876 Patent, there can be no infringement as a matter of law.

Should these issues not be resolved favorably by the Court, there is a strong likelihood that

Fairchild will be successful on appeal. Fairchild herein incorporates by reference the '876 Patent

JMOL, as well the reply brief that will be filed on January 16, 2008.

### 3.    There Is A Strong Likelihood That The Claims Of The Circuit Patents Will Be Rejected Or Modified During Reexam.

Between December 19, 2006, and January 22, 2007, the PTO granted reexamination of

each of Power Integrations circuit patents, finding that there were substantial new questions of

patentability with respect to all three patents. [DX 601; DX 602; DX 603] The PTO granted

reexamination for all five claims that were at issue at trial. The PTO based its determinations not

only on prior art that was presented by Fairchild at trial, but also on prior art that was never

considered by the jury. [*Id.*]

It is likely that one or more of the claims of the circuit patents will be rejected or

amended during the reexaminations.[14] According to statistics released by the PTO, 74% of all

claims undergoing reexamination are either rejected or changed. [Ex. 5 (PTO's *Ex Parte*

*Reexamination Filing Data from July 1, 1981 through September 30, 2007*)] For each claim

asserted at trial that is rejected or substantively changed during reexamination, Fairchild is

entitled to intervening rights and, therefore, a new trial on the issues of infringement and validity.

35 U.S.C. §§ 252, 307(b); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346-47 (Fed. Cir.

1998).

One reason the reexaminations are likely to succeed even if an appeal does not is that the

claims are not entitled to a presumption of validity during reexamination, and invalidity only

---

[14] Amendments to the asserted claim would, of course, require retrying the issues of invalidity and infringement.

needs to be proven by only a preponderance of evidence. "In a reexamination proceeding …

there is no presumption of validity and the 'focus' of the reexamination returns essentially to that

present in an initial examination, at which a preponderance of the evidence must show

nonpatentability before the PTO may reject the claims of a patent application." *Ethicon, Inc. v.*

*Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (internal quotations and citations omitted). "The

intent underlying reexamination is to 'start over' in the PTO with respect to the limited

examination areas involved, and to re examine the claims, and to examine new or amended

claims, as they would have been considered if they had been originally examined in light of all of

the prior art of record in the reexamination proceeding." *Id.*

Also, the PTO is not required to adopt this Court's construction of the "soft start circuit"

and "frequency variation signal" claim elements, which enabled Power Integrations to avoid the

prior art at trial. During reexamination, claims are to be given their "broadest reasonable

interpretation." MPEP §2111 (citing *In re Hyatt*, 211 F.3d 1367, 1372 (Fed. Cir. 2000)).

Because there are different standards employed by the district courts and the Patent Office in

construing claims, a district court's claim construction order is in no way binding on the PTO.

*See* MPEP §2286 and *In re Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989) (manner of claim

interpretation that is used by courts in litigation is not the manner of claim interpretation that is

applicable during prosecution of a pending application before the PTO). There is a strong

likelihood that the "broadest reasonable interpretation" of the "soft start circuit" and "frequency

variation signal," terms will read directly on the prior art, and invalidate Power Integrations'

patents.

The Federal Circuit has held that the PTO's decision to grant reexamination also supports

the inference that there exists a strong likelihood of success on appeal. The grant of the

reexaminations thus likewise supports staying any injunction during the pendency of the appeal.

In *Standard Havens Products, Inc., v. Gencor Industries, Inc.*, 897 F.2d 511 (Fed. Cir. 1990), the

Federal Circuit considered the issue of whether an alleged infringer was entitled to stay, pending

appeal, of the district court's imposition of a permanent injunction. The court determined, based

at least in part on the order granting reexamination of the patent at issue, that the alleged infringer had raised a substantial legal question regarding the validity of the patent. *See id.* at 514 ("The interpretation in the Commissioner's letter ordering reexamination. . . at the very least raises a substantial question [of validity].") The Federal Circuit subsequently held (in a nonprecedential opinion) that a decision of the district court denying a motion to stay the permanent injunction pending a final decision on reexamination was legal error. *See Standard Havens Prods. v. Gencor Indus.*, 1993 U.S. App. LEXIS 11963, 1993 WL 172432 (Fed. Cir. 1993) at 1. The Federal Circuit noted that if the decision of the PTO on reexamination that the patent was invalid was upheld on appeal and became final, the injunction would immediately become inoperative. *Id.*

In *E. I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, defendant Phillips was granted a stay of injunction pending appeal. 835 F.2d 277 (Fed. Cir. 1987). The patent that Phillips was found to infringe was rejected by the PTO in a reissue proceeding. *Id.* at 278. The Federal Circuit found that a stay pending appeal was warranted. *Id.* With respect to defendant Phillips' chances of success on appeal, "the court notes that there is a conflict between the PTO examiner's rejection of DuPont's claims as invalid in view of prior art and the district court's ruling of validity. The very existence of the conflict supports Phillips' argument that substantial legal questions concerning claim interpretation exist." *Id.*[15] For the same reasons, this Court should stay any injunction in the present action.

**B.    Fairchild Will Be Significantly Harmed If Any Injunction Is Not Stayed**

Because Fairchild has shown a strong likelihood of success on appeal, it need only show a lesser degree of harm. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 548 (D. Del. 2005) ("Under weight-based assessments, when the movant is more likely to succeed, the harm required to be shown is less.") Fairchild more than meets this burden as it will be harmed if it is not granted a stay pending appeal.

---

[15] *Contrast Magnesystems v. Nikken, Inc.*, 36 F.3d 1114 (Fed. Cir. 1994), finding no "substantial new question of patentability" because the PTO had not granted the request for reexamination.

Indeed, if the Court grants Power Integrations' request to enjoin Fairchild's design around e-Series products, the harm will be substantial and irreparable. Fairchild undertook significant effort and resources to develop and design its e-Series products.

**REDACTED**

[Declaration of Robert Conrad at ¶ 9]

[*Id.*]

[*Id.* at ¶ 10]

**REDACTED**

[*Id.*]

[*Id.*]

[*Id.*]

[*Id.* at ¶ 11]

**REDACTED**

[*Id.*]

[*Id.*]

[*Id.* at ¶ 14]

[*Id.*]

29

**REDACTED**

In contrast, Power Integrations will not suffer irreparable harm if any injunction is stayed pending the resolution of an appeal. This litigation has been ongoing since October 20, 2004. Any stay pending the resolution of an appeal or the outcome of the reexaminations will be short by comparison. Patent reexaminations take on average 23.7 months to complete. [Ex. 5] Assuming this average holds true, the reexaminations of Power Integrations' patents should be complete by November of 2008. There is no harm to Power Integrations in denying it injunctive relief for a few more months. "When there is substantial equity, and need for judicial protection whether or not movant has shown a mathematical probability of success then an order maintaining the status quo is appropriate." *Standard Havens*, 897 F.2d at 512-513 (*quoting Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C.Cir. 1977)).

Moreover, Power Integrations has already received future lost profits through October of 2010. To that extent, it has already been compensated for future losses.

In order to avoid creating undue harm to Fairchild, the Court should stay any injunction pending appeal.

**V.    CONCLUSION.**

Because the injunctive relief Power Integrations seeks provides double recovery, is entirely overbroad, and seeks to enjoin Fairchild's new design-around products without providing any evidence as to why these products infringe the clams of its patents, Fairchild respectively requests that the Court deny Power Integrations' motion for a permanent injunction.

Should the Court, however, enter an injunction, it should be stayed pending the outcome of Fairchild's appeal and the Patent Office's reexamination of the three Power Integrations patents. Further, any injunction should be narrowly tailored and must:

(1) be restricted to the claims that Fairchild was found to infringe at trial;

(2) be limited to the products found to infringe at trial, and products that are no more than colorably different;

(3) specifically exclude Fairchild's e-Series products;

(4) be limited to activity within the United States; and

(5) extend no longer than 2018.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
*Attorneys for Defendants*

31

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: December 21, 2007

186867.1