IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,  )
                            )
          Plaintiff,        )
                            )        C.A. No. 04-1371-JJF
     v.                     )
                            )
FAIRCHILD SEMICONDUCTOR     )
INTERNATIONAL, INC., and FAIRCHILD )
SEMICONDUCTOR CORPORATION,  )
                            )
          Defendants.       )

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC.
AND FAIRCHILD SEMICONDUCTOR CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW CONCERNING NONINFRINGEMENT AND INVALIDITY OF
U.S. PATENT NO. 6,249,876**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: January 16, 2008

## TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................. 1

II.     POWER INTEGRATIONS FAILED TO SHOW THAT IT PRESENTED ANY
        EVIDENCE AT TRIAL THAT THE "ABOUT A TARGET FREQUENCY"
        LIMITATION OF CLAIM 1 OF THE '876 PATENT WAS MET ................................. 2

        A.      Dr. Horowitz Did Not Have To Dispute That The "About A Target
                Frequency" Limitation Was Met Because Power Integrations Never
                Provided Testimony That It Was ........................................................ 3

                1.      Power Integrations Bears The Burden Of Proving Infringement ............. 4

                2.      Fairchild Properly Preserved Its Non-Infringement Arguments................ 5

                3.      Dr. Horowitz Never Testified At His Deposition That The
                        Fairchild Products Met The "About A Target Frequency"
                        Limitation................................................................................. 5

        B.      The Evidence Presented By Power Integrations Does Not Reasonably
                Support The Jury's Verdict Of Infringement......................................... 7

III.    POWER INTEGRATIONS FAILED TO SHOW THAT IT PRESENTED
        EVIDENCE AT TRIAL SUFFICIENT TO OVERCOME FAIRCHILD'S PRIMA
        FACIE EVIDENCE THAT THE '876 PATENT IS OBVIOUS..................................... 9

        A.      The Content Of The Prior Art Is Not In Dispute ................................. 11

        B.      Power Integrations Did Not Dispute Fairchild's Showing Of Obviousness
                Under The *KSR* Factors ............................................................... 12

        C.      Power Integrations Has Not Pointed To Any Evidence That The Prior Art
                "Taught Away" From Removing The Memory Component If Signature
                Was Not A Concern ...................................................................... 14

        D.      Power Integrations' Lack Of Evidence Is Underscored By Its
                Misstatements And Misleading Cites To Irrelevant Evidence ............................ 14

        E.      Power Integrations' Secondary Considerations Of Non-Obviousness Are
                Insufficient To Rebut Fairchild's Prima Facie Showing Of Obviousness ........... 15

        F.      The Jury Instructions Did Not Provide A Sufficient Framework For
                Analyzing The Issue Of Obviousness.................................................. 18

IV.     CONCLUSION................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Dystar Textilfarben GMBH & Co. Deutschland KG* v. *C.H. Patrick Co.*,
  464 F.3d 1356 (Fed. Cir. 2006)...........................................................13, 14, 15, 16

*Graham* v. *John Deere Co.*,
  383 U.S. 1 (1966)..................................................................................10, 11

*KSR* v. *Teleflex*,
  127 S. Ct. 1727 (2007).........................................................10, 11, 12, 13, 18

*Lantech, Inc.* v. *Keip Mach. Co.*,
  32 F.3d 542 (Fed. Cir. 1994)..................................................................4

*Leapfrog Enterprises, Inc.* v. *Fisher-Price, Inc.*,
  485 F.3d 1157 (Fed. Cir. 2007)..............................................................13

*Richardson-Vicks, Inc.* v. *Upjohn Co.*,
  122 F.3d 1476 (Fed. Cir. 1997)..............................................................10

*Rohm & Haas Co. v. Brotech Corp.*
  48 F.3d 1172 (Fed. Cir. 1997).................................................................7

*Rohm & Haas Co. v. Brotech Corp.*
  No. 90-109-JJF, slip op. (D. Del. June 30, 1995) (J. Farnan), *aff'd*, 48 F.3d 1172 (1997) .........4, 6

*Ultra-Tex Surfaces, Inc.* v. *Hill Brothers Chemical Co.*,
  204 F.3d 1360 (Fed. Cir. 2000)...............................................................3, 4

*Wolverine World Wide* v. *Nike, Inc.*,
  38 F.3d 1192 (Fed. Cir. 1994).................................................................4

## OTHER

Fed. R. Civ. P. 50....................................................................................2, 5

## I.    INTRODUCTION

Power Integrations bears the burden of proving infringement, and must show that each and every element of Claim 1 of U.S. Patent No. 6,249,876 ("the '876 Patent") is present in the accused products.  Power Integrations, however, failed to meet its burden of proving that the accused Fairchild products varied the switching frequency of the power supply "about a target frequency," as required.  Fairchild has no affirmative duty to specifically point out this lack of evidence, because Fairchild is not required to rebut evidence that does not exist.  Any failure by Fairchild to argue that Power Integrations did not meet its burden at trial, therefore, cannot eliminate Power Integrations' fundamental burden of proving that all claim elements are met.  Moreover, because Fairchild specifically preserved its post trial motions, it cannot be deemed to have waived the right to now argue such failure of proof.  General or vague testimony presented by Power Integrations' expert cannot satisfy its burden of proving infringement as to specific claim elements.  Moreover, Power Integrations cannot point to demonstratives and figures presented at trial and argue now, for the first time, that these figures show the "about a target frequency" limitation, when such arguments were never made to the jury.

As for Fairchild's invalidity argument, the only dispute is whether it would have been obvious to one of ordinary skill to remove the memory component from the prior art Martin circuit.  As set forth in detail in Fairchild's Motion, the undisputed facts in this case support but one legal conclusion: that it would have been obvious to one of ordinary skill in the art to remove the memory component from Martin's circuit to achieve a simpler, smaller and more cost effective circuit for reducing EMI in a commercial power supply.  Rather than address the evidence cited in Fairchild's Motion, Power Integrations instead relies on its expert's vague and conclusory assertions of non-obviousness and its purported secondary indicia of non-obviousness.  Even taken in a light most favorable to Power Integrations, these conclusory assertions and marginal secondary considerations are insufficient to rebut Fairchild's prima facie evidence that Claim 1 of the '876 Patent is obvious.

Because Power Integrations failed to present any evidence that the "about a target frequency" limitation was met, and because it similarly fails to respond to Fairchild's evidence of invalidity, the Court must grant both Fairchild's Motion for Judgment of a Matter of Law of Non-Infringement and Motion for Judgment of a Matter of Law of Invalidity.

## II.    POWER INTEGRATIONS FAILED TO SHOW THAT IT PRESENTED ANY EVIDENCE AT TRIAL THAT THE "ABOUT A TARGET FREQUENCY" LIMITATION OF CLAIM 1 OF THE '876 PATENT WAS MET.

Power Integrations does not dispute the following facts set forth in Fairchild's Motion:

(1) Power Integrations bears the burden of proving infringement;

(2) The Court construed the preamble of Claim 1 of the '876 Patent as a claim limitation;

(3) The Court construed the term "frequency jittering" from the preamble to mean "varying the switching frequency of a switch mode power supply about a target frequency in order to reduce electromagnetic interference;"

(4) Power Integrations' expert on the '876 Patent, Robert Blauschild, failed to present testimony that the accused Fairchild products varied the switching frequency of the power supply "about a target frequency" [*See*, D.I. 632, Power Integrations' Opposition Brief, at 8];

(5) Mr. Blauschild instead offered general testimony that the accused Fairchild products contained "jitter," "jittering," a "jitter circuit," or a "jittering circuit" [D.I. 632, at 7-8]; and

(5) Power Integrations presented demonstratives and exhibits of Fairchild data sheets at trial, but never suggested that these figures met the "about a target frequency" limitation. [D.I. 632, at 8-10]

Failing to establish that the accused Fairchild products met the essential "about a target frequency" limitation, Power Integrations resorts to arguing that Fairchild somehow waived its right to argue that this limitation was not met. Fairchild, however, expressly preserved its right to seek judgment of non-infringement pursuant to Rule 50 and to appeal on all issues of

infringement.  Power Integrations did not object at that time to Fairchild's preservation of its rights, but rather similarly preserved all of its own rights.

By Mr. Blauschild's own admission, to meet the "about a target frequency" limitation, there needs to be intent to vary the frequency about a *specific* frequency.  Power Integrations never presented any such evidence.  General testimony concerning "jittering" or "jitter circuits" cannot prove that this claim limitation is met.  Moreover, Power Integrations cannot now satisfy its burden of proving infringement by pointing to demonstratives and exhibits used at trial and arguing that the figures show a target frequency.  It is unclear that these figures describe a target frequency, and no witness testified at trial that they do.  Demonstratives are not evidence and are not admitted as such.  Power Integrations never argued this point to the jury in its opening or closing, but rather raises this argument for the first time in its Opposition brief.  Because the evidentiary record plainly shows that Power Integrations failed to meet the "about a target frequency" limitation, Power Integrations' arguments must be rejected.

### A.    Dr. Horowitz Did Not Have To Dispute That The "About A Target Frequency" Limitation Was Met Because Power Integrations Never Provided Testimony That It Was.

Power Integrations concedes that neither its expert, Mr. Blauschild, nor Fairchild's expert, Dr. Horowitz, presented any testimony at trial as to whether the accused Fairchild products varied a switching frequency "about a target frequency."  Rather, Power Integrations argues that by not affirmatively disputing that this limitation was met at trial, Fairchild waived its right to raise it now.  This argument ignores the fact that Power Integrations bears the burden of proving infringement.  *Ultra-Tex Surfaces, Inc. v. Hill Brothers Chemical Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000).  Fairchild has no affirmative duty to prove non-infringement of any claim limitation.  Moreover, Fairchild preserved its right to raise this issue by properly moving at the end of trial for a judgment of non-infringement as a matter of law.  Additionally, the deposition testimony cited by Power Integrations is not relevant because it was not presented at trial, and it

does not, as Power Integrations argues, suggest that Dr. Horowitz "believed" that the accused Fairchild products met the "about a target frequency" limitation.

### 1.    Power Integrations Bears The Burden Of Proving Infringement.

As the plaintiff, Power Integrations bears the burden of proving that the accused Fairchild products infringe Claim 1 of the '876 Patent. *Ultra-Tex Surfaces*, 204 F.3d at 1364. It is hornbook law that to prove literal infringement, each limitation of the claim must be met by the accused device. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994). If an express claim limitation is absent from an accused product, there can be no literal infringement as a matter of law. *Wolverine World Wide v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

Having failed to present any testimony that the "about a target frequency" limitation was met, Power Integrations cannot now claim that Dr. Horowitz's failure to provide rebuttal testimony somehow constitutes a waiver. Fairchild has no duty to present testimony of non-infringement for any claim limitation that Power Integrations *did not demonstrate was present*. Power Integrations cites no authority for its assertion that such a burden exists. In fact, this Court has expressly found that a plaintiff *cannot* meet its burden of proving infringement by shifting the burden to the defendant to disprove elements that the defendant believes are not met:

> Finally, Rohm and Haas' argument that Golden and Brodie did not enumerate this element as one that was inconsistent with the accused products, and thereby admitted that the accused products satisfy this element is nothing more than an attempt by Rohm and Haas to convolute its burden of proof. Rohm and Haas had the burden of proving infringement by a preponderance of the evidence. It cannot meet this burden by asking [defendant] Brotech to disprove those elements Brotech believes are not met.

*Rohm & Haas Co. v. Brotech Corp.*, No. 90-109-JJF, slip op. (D. Del. June 30, 1995) (J. Farnan), *aff'd*, 48 F.3d 1172 (1997), D.I. 614, Attachment Tab #1. This is exactly the relief Power Integrations seeks in this case, and for precisely these same reasons, Power Integrations' argument that Fairchild was required to disprove that its products met the "about a target frequency" limitation should be rejected.

Power Integrations failed to meet its burden of proof. Dr. Horowitz never specifically testified that the accused Fairchild products failed to meet the "about a target frequency" limitation because Dr. Horowitz responded to, and presented testimony rebutting, the evidence presented by Power Integrations. Dr. Horowitz's decision to not provide rebuttal testimony where there was nothing to rebut cannot cure Power Integrations' failure to prove infringement.

### 2. Fairchild Properly Preserved Its Non-Infringement Arguments.

Power Integrations' argument that Fairchild waived its non-infringement position makes even less sense considering that Fairchild specifically moved for a judgment of non-infringement as a matter of law. Fairchild reserved all appeals and moved under Rule 50 for judgment of non-infringement and damages at the end of Power Integrations' case-in-chief and at the end of trial. [10/4/2006 Tr. Transcript 936:13-17; 10/6/2006 Tr. Transcript 1479:6-24]

By properly raising these issues when it did, Fairchild preserved its ability to seek judgment of noninfringement as a matter of law based on any claim limitation that Power Integrations failed to prove was present in the accused products. This necessarily includes the "about a target frequency" limitation.

### 3. Dr. Horowitz Never Testified At His Deposition That The Fairchild Products Met The "About A Target Frequency" Limitation.

Having failed to meet its burden of proving that the accused Fairchild products meet the "about a target frequency" limitation, Power Integrations now attempts to argue that Dr. Horowitz must have "believed" that this limitation was met. [D.I. 632 at 7] While completely irrelevant, Power Integrations cites Dr. Horowitz's January 30, 2007 deposition testimony. Dr. Horowitz's deposition testimony, of course, is completely immaterial, as the issue here is whether Power Integrations *presented sufficient evidence to the jury at trial.* Nevertheless, Dr. Horowitz's deposition testimony shows that he never presented any testimony suggesting that the accused Fairchild products meet the "about a target frequency" limitation.

In particular, Power Integrations cites Dr. Horowitz's January 30, 2007 deposition transcript at 66:9-68:23. [D.I. 623 at 7] At that deposition, Dr. Horowitz discussed his prior art

report, and stated that whether the prior art contained the "about a target frequency" limitation

"depends a little bit on context, and I would like to see the context in this case." [Ex. 1,

Horowitz Tr. 1/30/07 66:21-23] In the specific portions relied upon by Power Integrations, Dr.

Horowitz was discussing the prior art Wang reference and the '876 Patent itself.

> Power Integrations' attorney: Where in the Wang reference, if at
> all, do you believe it describes varying frequency of its converter
> around a target frequency?

[*Id.* at 63:4-68:23]

> Dr. Horowitz: Well, we're talking about the '876 patent, and we're
> talking about the Markman interpretation?

> Power Integrations' attorney: "Correct."

[*Id.* at 66:25-67:3] Nowhere in the portions cited by Power Integrations does Dr. Horowitz **even**

**suggest** that the accused Fairchild products meet the "about a target frequency" limitation.

Rather, these facts show that Power Integrations was well aware of this claim limitation but

failed to present evidence proving it was met.

The facts here are similar to those in *Rohm & Haas Co. v. Brotech Corp.*, in which this

Court rejected the plaintiff's argument that purported "admissions" by the other side's expert

witness during a deposition somehow met the plaintiff's burden of proving infringement. No.

90-109-JJF, slip op. (D. Del. June 30, 1995) (J. Farnan), *aff'd*, 48 F.3d 1172 (1997), D.I. 614,

Attachment Tab #1 (finding that plaintiff had failed to present evidence of a claim limitation). In

*Rohm & Haas*, the plaintiff patent holder pointed to purported admissions by the other side's

expert witness during a deposition in which he failed to identify the preamble limitations as

placing the alleged infringer's technology outside the patent claims. *Id.* at 23. This Court found

against the patent holder, holding that it was "unwilling to accord [defendant's expert] Don

Brodie's purported admission the weight sufficient to sustain [the patent holder] Rohm and

Haas' burden." *Id.* The Court found the cited deposition testimony to be "muddled and subject

to misinterpretation," and held that it was "unwilling to support an infringement finding on a

vague and contrived admission." *Id.* As in *Rohm & Haas*, the deposition testimony cited by Power Integrations is insufficient to satisfy Power Integrations' burden of proving infringement.

### B.    The Evidence Presented By Power Integrations Does Not Reasonably Support The Jury's Verdict Of Infringement.

Power Integrations incorrectly argues that even though it failed to present testimony that the "about a target frequency" limitation was met, it met its burden of proving infringement when Mr. Blauschild testified that, generally, the accused Fairchild products contained "jitter," "jittering," a "jitter circuit," or a "jittering circuit." [D.I. 632, at 7-8] The Federal Circuit has held that such "general testimony that an accused product or process infringe" does not satisfy a patentee's burden of proof for infringement. *Rohm & Haas Co. v. Brotech Corp.*, 48 F.3d 1172, 1189 (Fed. Cir. 1997). Mr. Blauschild's blanket statements that Fairchild's accused products had the "jitter circuit" do not provide a legally sufficient evidentiary basis for finding infringement. The term "jitter" is a general term that is inherently broader than the frequency jittering "about a target frequency" required by Claim 1. Not all forms of "jittering" infringe Claim 1, only a narrower form of jittering "about a target frequency." Thus, simply stating that Fairchild's products have a "jitter circuit" is not sufficient to form the basis for an infringement verdict where the claim contains additional limitations. What is clear is that Mr. Blauschild should have been able to identify the specific target frequency if one existed. He did not.

Power Integrations' position that such testimony is not necessary is contradicted by Mr. Blauschild's deposition testimony, where he steadfastly asserted that Claim 1 of the '876 Patent requires proof of variation around a target frequency:

> Q:  Okay. But it's your opinion that a target - that a target
> frequency is required to practice Claim 1 of the '876 patent?
>
> A:  Uh-huh. I believe you have to vary around - in a range around
> the target frequency, yes.

[Ex. 2, 3/9/07 Blauschild Tr. 119:16-20] In fact, Mr. Blauschild testified in his deposition that there must be an ***intent that it vary around a specific target frequency***:

> Q: I understand. So you're saying that target - the inclusion of the word target frequency requires an intent by someone that it vary around a specific frequency?
>
> A: Yeah. That's – that's my understanding of the process.

[Ex. 3, 3/9/07 Blauschild Tr. 165:24-166:4]

> Q: What is a target frequency as that term is used in the - in terms of frequency jittering?
>
> A: What my understanding of that is is you pick a frequency, and this is based on what people do, you pick a frequency, and then you wiggle around that frequency, and it's the frequency you would have without the wiggle.

[Ex. 4, 3/9/07 Blauschild Tr. 159:10-16]  In other words, the accused product must be designed to vary the switching frequency around a particular target frequency.

Power Integrations presented no evidence whatsoever that the accused Fairchild products are intended to vary the switching frequency about a specific target frequency. Indeed, Power Integrations presented no evidence identifying target frequencies in any Fairchild products. Mr. Blauschild's general references to "jittering" and "jitter circuit" only underscore the fact that Power Integrations has no evidence that the accused Fairchild devices meet the "about a target frequency" limitation.

Power Integrations' argument that it presented "visual and textual evidence" of the frequency jittering element [D.I. 632 at 8] is unsupported by the record. For example, Power Integrations cites a horizontal line in exhibit PX-254 as being the target frequency about which the frequency is varied. [D.I. 632 at 9] There is no evidence in the record, however, as to what this horizontal line is, why it was put there, whether there was any intent that the frequency vary about it this line, how it was chosen, or whether it simply shows the midpoint or average of the variation. Power Integrations argues for the first time in its Opposition that this line is the required "target frequency." Because there is no testimony or other evidence to support this

argument, it must be rejected. The same is true of the other two figures cited in Power Integrations' Opposition, Figure 14 of PX-143, and Figure 11 of PX-237.[1]  [D.I. 632 at 10]

Power Integrations failed to present any evidence that the "about a target frequency" limitation was met. Based on this failure, no reasonable jury could have returned a finding of infringement. Fairchild, therefore, is entitled to a judgment as a matter of law of non-infringement of Claim 1 of the '876 Patent.

## III.  POWER INTEGRATIONS FAILED TO SHOW THAT IT PRESENTED EVIDENCE AT TRIAL SUFFICIENT TO OVERCOME FAIRCHILD'S PRIMA FACIE EVIDENCE THAT THE '876 PATENT IS OBVIOUS.

Power Integrations does not dispute the following facts set forth in Fairchild's Motion:

> (1) The Martin Patent is prior art to Power Integrations' '876 Patent;

> (2) The patent examiner who examined and issued the '876 Patent did not have before him the Martin Patent or any similar prior art;[2]

> (3) The Martin Patent discloses a circuit that reduces both EMI and signature in a switch mode power supply;

> (4) The only difference between the circuit shown in Martin and the circuit claimed in the '876 Patent is the memory component between the counter and the digital to analog converter in the Martin circuit;

> (5) If the memory component were removed from the Martin circuit it would be identical to the circuit claimed in the '876 Patent;

> (6) The Martin circuit, with the memory component removed, reduces EMI in the same manner as the circuit claimed in the '876 Patent;

---

[1] At most, the evidence presented by Power Integrations suggests that the accused Fairchild products jitter the switching frequency within a range of frequencies  As admitted by Mr. Blauschild in his deposition, varying within a range is not the same as varying about a target frequency, nor is simply taking the average of the range sufficient to define a target frequency.  [Ex. 5, 3/9/2007 Blauschild Depo Tr. 119:16-120:16; 173:17-175:7]

[2] Power Integrations does not point to any prior art before the Examiner that disclosed a digital circuit for varying the frequency of an oscillator, let alone one that includes each of the specific components claimed in the '876 Patent, as the Martin Patent does.  Instead, Power Integrations attempted at trial to counter Dr. Horowitz's testimony that the Examiner had neither Martin nor any similar art by cross examining Dr. Horowitz based on his deposition testimony that he had not, ***at the time of his deposition***, reviewed each of the 30 or 40 patents cited on the face ***of the '366 Patent***.  [9/19/07 Horowitz Trial Tr. 800:4-802:21]  **The fact is that Dr. Horowitz testified that he reviewed each of the four patents cited on the face of the '876 patent.**  [9/19/2007 Horowitz Trial Tr. 688:11-21; 723:5-18]  Power Integrations' gamesmanship on this point is telling.

(7) Those of skill in the art of the '876 Patent would have a bachelor's degree or higher in electrical engineering and 3-7 years of experience designing switch mode power supplies;

(8) Those of skill in the art were familiar with counters, digital to analog converters, oscillators and the other basic components of the switch mode power supply circuits shown in Martin and the '876 Patent;

(9) Those of ordinary skill would know how to build a circuit comprising a counter, digital to analog converter and oscillator, that would vary the frequency of the oscillator; and

(10) Those of ordinary skill would know that a peak signal could be reduced by varying the frequency of the signal in order to spread out the energy.

The only dispute is whether, in light of these facts, it would have been obvious to one of ordinary skill to remove the memory component from Martin's circuit for use in reducing EMI in a commercial switch mode power supply, where reduction of signature is not an issue. Because the underlying facts are undisputed, this ultimate determination of obviousness is a legal matter for the Court to decide. *KSR v. Teleflex*, 127 S. Ct. 1727, 1745-46 (2007) ("The ultimate judgment of obviousness is a legal determination. . . . Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."), *citing Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997) (this Court is the ultimate arbiter of obviousness as the determination is legal, not factual, and thus cannot be delegated to the jury).

Power Integrations ignores this mandate from the Supreme Court and urges the Court to improperly defer to the jury's determination of the legal issue of whether Claim 1 of the '876 Patent is obvious. The Court should not do so. As set forth in detail in Fairchild's Motion, the undisputed facts in this case support but one legal conclusion: that it would have been obvious to one of ordinary skill in the art to remove the memory component from Martin's circuit to achieve a simpler, smaller and more cost effective circuit for reducing EMI in a commercial power supply. [D.I. 614] Power Integrations does not dispute the facts above – or even address or

acknowledge many of them. Instead, Power Integrations relies on its expert's vague and conclusory assertions of non-obviousness and its purported secondary indicia of non-obviousness. Even taken in a light most favorable to Power Integrations, these conclusory assertions and marginal secondary considerations are insufficient to rebut Fairchild's prima facie evidence that Claim 1 of the '876 Patent is obvious.

### A.     The Content Of The Prior Art Is Not In Dispute.

Despite Power Integrations' assertions to the contrary, there is no dispute regarding the content of the prior art. No one disputes that the Martin Patent discloses a circuit for reducing both EMI and signature in a switch mode power supply. No one disputes that the only difference between the circuit shown in the figure of the Martin Patent and the circuit claimed in the '876 Patent is the addition of a memory component between the counter and the digital to analog converter in the Martin circuit. No one disputes that other prior art references (not relied upon by Fairchild at trial simply because it did not have time to walk the jury through cumulative pieces of prior art) likewise disclosed a circuit including a memory component.

The only dispute raised by Power Integrations is not over the **content** of the art, but rather is whether one of ordinary skill would have found the circuit of Claim 1 of the '876 Patent obvious in light of that art. In other words, the dispute boils down to whether it would have been obvious to remove the memory component from the prior art circuit to achieve the circuit claimed in the '876 Patent. As discussed above, the Court must make this ultimate legal determination and should not defer to any "findings" of obviousness by the jury.

Power Integrations, however, completely ignores the Court's duty to determine obviousness as a matter of law and argues that the Court "cannot re-weigh the evidence" of obviousness. This is a gross misstatement of the law, which mandates that the jury determines the underlying facts and the Court determines the ultimate legal issue of obviousness based on those facts. *KSR v. Teleflex*, 127 S. Ct. at 1745-46; *Graham v. John Deere Co.*, 383 U.S. at 17.

**B.    Power Integrations Did Not Dispute Fairchild's Showing Of Obviousness Under The *KSR* Factors.**

In its Motion, Fairchild applied the undisputed facts to the various factors that the Supreme Court has instructed courts to use in determining obviousness, including: (1) whether removal of the memory component would have been within the technical grasp of those of skill in the art; (2) whether removing the memory component was a predictable variation of Martin; and (3) whether there were design incentives or other market forces that would have motivated removal of the ROM. *See KSR*, 127 S. Ct. at 1739. The answer to each of these inquiries was an unequivocal "yes": Power Integrations has failed to dispute any of these showings.

Power Integrations did not point to any facts demonstrating that those of ordinary skill would have been incapable of removing the memory component from Martin's circuit. Power Integrations' expert, Mr. Blauschild, never claimed that those of skill would have had difficulty removing that component from the circuit or designing a circuit that did not include a memory component. There is simply no evidence whatsoever in the record contradicting Dr. Horowitz's testimony that it would have been easy and simple to remove the memory component.

Nor did Power Integrations' expert testify that removing the memory component from the Martin circuit would have had any unpredictable or surprising results. Mr. Blauschild never claimed that those of skill in the art would not know what to expect if the memory component were removed from the Martin circuit. Rather, he simply claimed that one of ordinary skill would not have done so because in his view "the ROM is the essential part of Martin." [9/20/07 Blauschild Trial Tr. 1069:12-1070:1] Mr. Blauschild completely ignored the two purposes set forth in Martin (reduction of EMI and reduction of signature). He did not contradict Dr. Horowitz's testimony that those of ordinary skill would have understood that the memory component was only necessary for the later – i.e., the reduction of signature. He likewise never countered Dr. Horowitz's testimony that those of ordinary skill would have understood that the memory component was not necessary if the circuit was required to reduce only EMI.

Rather, Mr. Blauschild was purposefully vague and simply claimed that those of skill wanting to do "what he (i.e., Martin) wants to do," would understand that a memory component

was necessary. [9/20/07 Blauschild Trial Tr. 1069:12-1070:1] In other words, if those of skill wanted to reduce EMI **and** reduce signature (i.e., what Martin "wanted to do"), they would have understood a memory component was required. ***Mr. Blauschild never addressed what those of ordinary skill would have understood had they been only interested in reducing EMI, as in the '876 Patent.***[3] This vague testimony leads to but one conclusion – that Mr. Blauschild could not truthfully testify that those of ordinary skill would not have understood that Martin's circuit, with the memory component removed, would still have varied the frequency of the oscillator and thus reduced the peak level of electromagnetic interference as required by the '876 Patent.

Finally, Power Integrations does not deny that those of skill in the art would have been motivated by market forces to remove the memory component from Martin's circuit if reducing the signature was not needed for military or other covert purposes. Power Integrations simply ignores this factor and makes no attempt to rebut Fairchild's showing, despite the fact that the Supreme Court repeatedly noted the importance of design incentives and other market forces in determining obviousness. *KSR*, 127 S. Ct. at 1740-42. The Federal Circuit has likewise repeatedly held that motivation for a change is ***implicit*** in situations where, as in the instant case, the variation reduces the size, cost and complexity of a product. *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).

---

[3] Although Power Integrations asserts that "Dr. Horowitz ignored the critical evidence from the other prior art that showed that, even if the goal was just to reduce EMI, those of skill in the art before the '876 invention believed a memory-based circuit was necessary to solve the problem" **it cites to no such "critical evidence."** [D.I. 632, Opposition Brief at p. 12-13] Rather, Power Integrations cites only to the fact that other prior art references also included a memory component. No such references were entered into the record, so there is no evidence from which to determine whether or not these references likewise addressed the issue of signature or some other feature necessitating a memory component, contrary to Power Integrations' suggestion otherwise. [D.I. 632, Opposition Brief at p. 14] Neither Mr. Blauschild nor Dr. Horowitz testified regarding any details of these other prior art references. Although Mr. Blauschild indicated "that's how everybody did it. So if you were going to follow down the path of the prior art, that's what you would have done, you would have had this ROM in the circuit. You would think that's what was necessary to solve the problem," he does not define what the problem is. Indeed, this testimony follows directly on the heels of Mr. Blauschild's discussion of Martin, which we know from the record requires **both** reduction of EMI and reduction of signature. The mere fact that these prior art references included a memory component – which is all that is in the record -- does not support a determination that those of skill in the art believed a memory component was ***necessary*** to reduce EMI.

**C.**     **Power Integrations Has Not Pointed To Any Evidence That The Prior Art "Taught Away" From Removing The Memory Component If Signature Was Not A Concern.**

The thrust of Power Integrations' argument is that Martin and the other prior art "taught away" from removing the memory component simply because such a circuit was never expressly shown. [D.I. 632, Opposition Brief at pp. 1,12, 13, 14] This argument defies the Federal Circuit's mandate that the Court should not infer a teaching away. Rather, the Federal Circuit requires an express teaching away, which Power Integrations has not shown. *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1364 (Fed. Cir. 2006).

Power Integrations did not point to any language in Martin or any other prior art that teaches against removing the memory component. Power Integrations apparently believes that in order to prove that it would be obvious to remove the memory component, Fairchild must show that someone had already done so. This is wrong for the plain and simple reason that it would transform the standard for obviousness into the standard for anticipation. If the prior art disclosed the exact circuit of Claim 1, the art would anticipate the claim and the Court would not need to determine whether it was obvious.

**D.**     **Power Integrations' Lack Of Evidence Is Underscored By Its Misstatements And Misleading Cites To Irrelevant Evidence.**

Power Integrations brief is replete with incorrect and misleading statements. For example, Power Integrations states that Mr. Blauschild testified that a person of ordinary skill "would have understood that a memory device was necessary to solve the EMI problem" despite the fact that, as explained above, he said no such thing. [D.I. 632, Opposition Brief at p. 15] Power Integrations also erroneously claims that Dr. Horowitz attempted to mislead the jury as to the operation of Martin. [*Id.* at p. 15-16] The demonstrative to which Power Integrations refers was used by Dr. Horowitz to describe that generally frequency variation is used to reduce EMI. [9/19/07 Horowitz Trial Tr. 702:15-703:18] Dr. Horowitz then went on to testify -- in response to a subsequent question -- that the Martin Patent was an example of the early use of frequency variation to reduce EMI in a power supply. [9/19/07 Horowitz Trial Tr. 803:19-704:10] Dr.

Horowitz never implied that the demonstrative illustrated the operation of Martin, or that Martin varied the frequency in precisely the fashion shown in the demonstrative. Rather, Dr. Horowitz explained that the memory component of the Martin Circuit resulted in making the variation irregular and less predictable. [9/19/07 Horowitz Trial Tr. 715:20-716:17] Power Integrations' tactic should be seen for what it is: a blatant twisting of the facts in order to unfairly impugn the testimony of Dr. Horowitz.

Power Integrations further attempts to mislead the Court by citing to evidence that is irrelevant to the '876 Patent at issue. For example, Power Integrations states that its expert, Mr. Blauschild "testified that he believed a person of ordinary skill in the art would have more of an appreciation about the difference between integrated and discrete circuits than credited by Dr. Horowitz." [Opposition Brief, p. 15] The '876 patent, however, ***does not differentiate between discrete and integrated circuits*** and such testimony is irrelevant to the claims of the '876 Patent. Similarly, Power Integrations' complaint that Dr. Horowitz never himself designed an integrated circuit is irrelevant to the '876 patent (which does not require integration) and purposefully misleading. Power Integrations fails to acknowledge that Dr. Horowitz "design[ed] circuits all the time" and that he oversaw the design of integrated circuits by his students. [9/19/07 Horowitz Trial Tr. 804:9-24]

> **E.  Power Integrations' Secondary Considerations Of Non-Obviousness Are Insufficient To Rebut Fairchild's Prima Facie Showing Of Obviousness.**

Power Integrations has not demonstrated any secondary considerations sufficient to rebut Fairchild's prima facie case that Claim 1 of the '876 Patent is obvious.

As to commercial success, Power Integrations must demonstrate that such success is attributable to the claimed invention. *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1367 (Fed. Cir. 2006). As set forth in detail in Fairchild's Motion, the evidence demonstrates that Power Integrations' sales force believed that to the extent the commercial success of Power Integrations' products was linked to the frequency jitter feature, it was because of the "*integration*" of that feature into the power supply. [D.I. 614 at 24.] Such

integration, however, is not relevant to the '876 Patent, which does not claim integration. Any alleged link between the commercial success of the products and integration of the frequency jitter feature is thus irrelevant to whether Claim 1 of the '876 Patent was obvious.

Regarding Fairchild's products, Mr. Conrad testified that Fairchild's Green FPS products were successful because they consumed less power, particularly during sleep mode. [9/19/07 Conrad Trial Tr. 618:11-619:9] Power Integrations' '876 patent has nothing to do with reducing power consumption or sleep mode. [*Id.* at 6:19-621:1] Mr. Conrad testified that the other factors contributing to the success of Fairchild's products are (1) the cost competitive of those products due to the fact that Fairchild owns its own fabrication facilities, (2) Fairchild's large, established sales force, particularly in Asia, and (3) the broad array of products offered by Fairchild related to the power conversion business. [*Id.* at 621:2-622:6] At most, the evidence cited by Power Integrations suggests that customers presumably desired frequency jitter, or it would not have been included in Fairchild's products. [*Id* at 631:13-632:11] This is a far cry from suggesting that the products were successful due to the frequency jitter feature. More importantly, it does not demonstrate that customers considered the ***digital*** implementation of the '876 Patent to be a selling point. Such marginal evidence that the particular invention of Claim 1 contributed to the success of Power Integrations' or Fairchild's products is insufficient to overcome Fairchild's prima facie evidence of obviousness.

Any evidence of a long felt need is insufficient as well. Merely because there is no evidence that the Martin Patent and other prior art frequency jitter circuits had been implemented in commercial products does not by itself demonstrate a long felt need. Although Power Integrations makes a big deal about the ten years that lapsed between the Martin Patent and the '876 Patent, in the *Dystar* case the Federal Circuit held that even an 80 year lapse between the prior art and the invention was insufficient to overcome prima facie evidence of obviousness. 464 F.3d at 1371. In the instant case, the evidence of obviousness is strong, and Power Integrations should not be permitted to rely on a mere lapse of time to overcome that evidence.

Finally, any evidence of copying is likewise minimal and insufficient to overcome Fairchild's prima facie evidence that Claim 1 of the '876 Patent is obvious. Mr. Kyung Oun Jang, a Principal Engineer who has been with Fairchild and its predecessor for over 14 years, described how he designed Fairchild's frequency variation circuit (which he refers to as a frequency scaling circuit). [9/20/07 Jang Trial Tr. 971:2-975:4] Mr. Jang testified that he developed his own circuit topology for performing frequency scaling, that he did not use the same topology used by Power Integrations, and that, in fact, Fairchild applied for a patent on the proprietary circuit that he invented. [*Id* at 988:11-990:18] Mr. Conrad likewise testified that Fairchild's products are not copies of Power Integrations' products and cannot be used as drop-in replacements. [9/19/07 Conrad Trial Tr. 613:21-616:6] Mr. Conrad further testified that he compared Fairchild's datasheets with Power Integrations' datasheets and that he found more differences than similarities between the two. [*Id*. at 616:7-617:18] At most, the evidence suggests that Power Integrations and Fairchild were competitors, and that Fairchild sought to keep itself apprised of its competitor's products in order to better compete with those products.

Indeed, it is telling that Power Integrations deems it necessary to bolster its obviousness claim for the '876 Patent by citing to Mr. Blauschild's irrelevant and speculative testimony regarding the '366 and '851 Patents. Mr. Blauschild claimed that using the same frequency variation signal to drive the soft start and frequency variation functions is "just too big a coincidence:"

> These patents, the '851 and '366 patents, in particular, are about these two features, integrated frequency jitter and integrated Soft Start done in a particular way where they're linked. We have the same frequency variation signal driving both functions. I looked at the Fairchild parts, saw that, gee, that's what they did. That's just too big a coincidence to say that they came up with that all of a sudden by themselves.

[9/20/07 Blauschild Trial Tr. 1045:16-21] This testimony is not only pure speculation, it is irrelevant to the '876 Patent, which claims only a digital frequency jitter circuit. Claim 1 does

not require an integrated circuit, and does not link frequency jitter and soft start.[4]  That Power Integrations nonetheless relies on such speculative and irrelevant testimony demonstrates that not even Power Integrations believes that the facts support its copying allegations.

**F.     The Jury Instructions Did Not Provide A Sufficient Framework For Analyzing The Issue Of Obviousness.**

As shown above, the undisputed facts, properly analyzed under the *KSR* factors, require a determination that Claim 1 of the '876 Patent is obvious.  The likely reason that the jury nonetheless found that the claim was not obvious is because they were not sufficiently apprised of these factors.  They jury was not instructed that predictable variations to prior art that are within the technical grasp of those of ordinary skill in the art are not patentable.  Nor were they instructed that predictable variations motivated by design incentives or other market forces are not patentable.

Power Integrations' assertion that such flaws in the jury's instructions requires a new trial is meritless.  As described in detail above, the Court must make the ultimate determination of obviousness and ***should not defer to any findings by the jury***.  The flaws in the jury instructions do no more than underscore this point.  In the instant case, the undisputed evidence shows that removal of the memory component from Martin was a predictable variation that was within the technical grasp of those of ordinary skill and that was motivated by the desire for a smaller, cheaper, less complex circuit for a commercial power supply.  Had the jury been instructed regarding these factors, it should have found that Claim 1 of the '876 Patent was an obvious variation of the circuit disclosed in the Martin Patent.  The jury further would have been less likely to make its erroneous finding that Claim 1 was valid had it been properly instructed that

---

[4] Moreover, there is no evidence that Fairchild copied the inventions of the '366 and '851 Patents.  As Mr. Blauschild is undoubtedly aware, Mr. Jang testified that he did not have either of those patents in his possession when he was designing Fairchild's FSD200 product, the first product to include both frequency scaling and soft start.  Moreover, the reverse engineering relied upon by Power Integrations and its expert to support its claim of copying did not include an internal soft start circuit and thus did ***not link the soft start and frequency variation products***.  Mr. Blauschild's speculations lack any evidentiary support whatsoever.  [Ex. 6 (TNY264 datasheet)]  The fact that an expert would even make such unsupported specious claims calls into question his credibility.

the presumption of validity was much diminished because the Martin Patent was not before the Examiner during prosecution of that claim.

## IV.    CONCLUSION.

For the foregoing reasons, and the reasons set forth in Fairchild's opening brief, Fairchild respectfully requests that the Court order, as a matter of law, that Claim 1 of the '876 Patent is not infringed by any Fairchild product and is invalid as obvious in light of the Martin Patent.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  January 16, 2008

187354.v1