IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., )
)
Plaintiff, )
)
v. )    C.A. No. 04-1371-JJF
)
FAIRCHILD SEMICONDUCTOR )
INTERNATIONAL, INC., and FAIRCHILD )
SEMICONDUCTOR CORPORATION, )
)
Defendants. )

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL,
INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION FOR NEW TRIAL ON ALL ISSUES IN
LIGHT OF *IN RE SEAGATE* AND INSEPARABILITY OF
WILLFULNESS, INFRINGEMENT AND VALIDITY**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: January 16, 2008
187357.1

# TABLE OF CONTENTS

Page

I. INTRODUCTION. ........................................................................................... 1

II. UNDISPUTED ISSUES. .................................................................................. 3

III. LEGAL STANDARDS. ................................................................................... 4

    A. Power Integrations Misstates the Standard for a New Trial on the Basis of Legal Error in the Jury Instructions. ..................................................... 4

IV. ARGUMENT ................................................................................................. 6

    A. An Instruction Stating the Wrong Intent Requirement and Omitting the Threshold Issue Requires a New Trial. .............................................. 6

    B. Power Integrations Fails to Address the Relevant Legal Principles and Instead Seeks Summary Judgment or JMOL of Willful Infringement Based on A Misreading of Seagate. .......................................................... 8

        1. Power Integrations' Contention that the Merits of Fairchild's Non-Infringement and Invalidity Positions Are Irrelevant to Willfulness Is Wrong, and the Evidence It Cites Does Not Entitle It to Summary Judgment In Its Favor. ............................................... 9

    C. Power Integrations' Arguments that a Retrial of Willfulness Does Not Require a Retrial of Infringement and Validity Are Incorrect. ........................... 13

        1. The Issue of Whether Fairchild's Defenses to Infringement Were Legitimate and Its Invalidity Arguments Were Credible Overlaps With the Determination of Whether Fairchild Infringed and Whether the Patents Were Invalid. ....................................... 13

        2. Power Integrations' Contention that Seagate Reaffirms the Propriety of Bifurcating Willful Infringement from Liability for Trial Is Incorrect and Irrelevant. .................................... 14

        3. Power Integrations Presents No Authority In Support of Its Position and Fails to Address the Controlling Third Circuit Case Law ....................................................................... 15

    D. Power Integrations Is Incorrect that the Infringement and Invalidity Trials Did Not Require Two Juries to Consider the Same Issues ................... 16

        1. Successive Juries Considered the Same Issues With Respect to the Circuit Patents ..................................................................... 17

            a. Fairchild Has Not Waived Its Objection, Which Is Not to the Specificity of the Jury Instructions but to Bifurcation. .......... 18

        2. Successive Juries Considered the Same Issues With Respect to the '876 Patent. ..................................................................... 19

V. CONCLUSION. ............................................................................................. 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allied Chem. Corp.* v. *Daiflon, Inc.*,
    449 U.S. 33 (1980) ................................................................................5

*Black & Decker, Inc.* v. *Robert Bosch Tool Corp.*,
    2008 WL. 60501 (Fed. Cir., Jan. 7, 2008) ................................................. *passim*

*Blyden* v. *Mancusi*,
    186 F.3d 252 (2d Cir. 1999).........................................................17, 18

*Bruno* v. *W.B. Saunders Co.*,
    882 F.2d 760 (3d Cir. 1989).........................................................5

*Computer Associates Intern., Inc.* v. *Simple.com, Inc.*,
    __ F. Supp. 2d __, 2007 WL. 2815812 (E.D.N.Y. 2007) .................................15, 16

*Connecticut Mutual Life Ins. Co.* v. *Wyman*,
    718 F.2d 63 (3d Cir. 1983).........................................................5, 6, 7

*Dressler* v. *Busch Entertainment Corp.*,
    143 F.3d 778 (3d Cir. 1998).........................................................7

*Hook* v. *Ernst & Young*,
    28 F.3d 366 (3d Cir. 1994).........................................................1, 5, 7

*Hurley* v. *Atlantic City Police Dept.*,
    174 F.3d 95 (3d Cir. 1999).........................................................6

*In re Innotron Diagnostics*,
    800 F.2d 1077 (Fed. Cir. 1986).........................................................16

*Johns Hopkins University* v. *Cellpro*,
    160 F.R.D. 30 (D. Del. 1995) .........................................................15

*Lafate* v. *Chase Manhattan Bank (USA)*,
    123 F. Supp. 2d 773 (D. Del. 2000).........................................................6

*In re Lower Lake Erie Iron Ore Antitrust Litigation*,
    998 F.2d 1144 (3d Cir. 1993).........................................................13, 15, 16

*Markman* v. *Westview Instruments*,
    517 U.S. 3 (1996).........................................................3, 17

*McQueeney* v. *Wilmington Trust Co.*,
    779 F.2d 916 ............................................................................................................6

*Quantum Corp.* v. *Tandon Corp.*,
    940 F.2d 642 (Fed. Cir. 1991)........................................................................14, 15

*Safeco Ins. Co. of America* v. *Burr*,
    127 S. Ct. 2201 (2007) .......................................................................... *passim*

*Savarese* v. *Agriss*
    883 F.2d at 1202-05, cited in Motion at 6-7 ...........................................5, 6, 7, 8

*In re Seagate*,
    497 F.3d 1360 (Fed. Cir. 2007)............................................................... *passim*

*Spence* v. *Board of Educ. of Christina School Dist.*,
    806 F.2d 1198 (3d Cir. 1986)..................................................................................16

*State Contracting & Engineering Corp.* v. *Condotte America, Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)..............................................................................12

*Thorne* v. *Welk Investment, Inc.*,
    197 F.3d 1205 (8th Cir. 1999) ..............................................................................16

*Tristrata Technol., Inc.* v. *ICN Pharmaceuticals, Inc.*,
    313 F. Supp. 2d 405 (D. Del. 2004) .......................................................................5

*Waldorf* v. *Shuta*,
    896 F.2d 723, 731 (3d Cir. 1990 ...........................................................................8

*Watson* v. *Southeastern Pa. Transp. Auth.*,
    207 F.3d 207 (3d Cir. 2000)....................................................................................5

*Williamson* v. *Consol. Rail Corp.*,
    926 F.3d 1334 (3d Cir. 1991)..................................................................................5

## STATE CASES

*2660 Woodley Road Joint Venture* v. *ITT Sheraton Corp.*,
    2002 WL 53913 (D. Del. 2002) ..............................................................................5

## FEDERAL STATUTES

Fed. R. Civ. P. 61 .........................................................................................................6

Federal Rule of Appellate Procedure 32.1(a) ..............................................................2

## I.    **INTRODUCTION.**

Power Integrations' Opposition ("Opp.") is telling for what it does ***not*** dispute.  Power Integrations does not dispute that the new willfulness regime established by the Federal Circuit in *In re Seagate*[1] applies retroactively to this case.  Nor does it dispute that, as a result of *Seagate*, the jury instructions on willfulness were legally erroneous in all the respects asserted in Fairchild's Motion.  Nor does it dispute that the willfulness instructions did not "fairly and adequately submit[] the issues ... to the jury" and were "capable of confusing and thereby misleading the jury."  Fairchild's Motion for New Trial on All Issues in Light of *In re Seagate*... ("Motion," D.I. 615) at 4, *citing Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994) (setting forth Third Circuit standard for new trial).  In other words, Power Integrations contests none of the elements required to establish Fairchild's right to a new trial.

Instead, Power Integrations rests its entire opposition to Fairchild's request for a new trial on the argument that none of this matters because even under the new *Seagate* standard, no reasonable jury could have found non-willfulness.  Power Integrations' arguments to this effect amount to little more than speculation regarding what the jury might have done with a different, higher standard and different evidence.  In addition, Power Integrations ignores the clear mandate of *Seagate* and persists with a subjective, *Underwater Devices*-era legal standard.  Power Integrations contends – in direct defiance of *Seagate* – that whether or not the defendant's actions posed an "objectively high risk" of infringement (i.e., were objectively reckless) does not depend on the objective likelihood that those actions constituted infringement, but rather on the presence and timing of surrounding indicia of the defendant's intent and knowledge, such as copying, awareness of the patents, advice of counsel, the presence or absence of efforts to design around, and so on.

To the contrary, *Seagate* expressly declared that "[t]he state of mind of the accused infringer is not relevant to [the] objective inquiry" into the risk of infringement.  497 F.3d 1360,

---

[1] 497 F.3d 1360 (Fed. Cir. 2007).

1371 (Fed. Cir. 2007). Rather, the measure of the risk is whether there was "an objectively high likelihood that [the defendant's] actions constituted infringement of a valid patent." *Id.* This requires assessing how likely it was that those actions that could "constitute[] infringement" would actually be found to infringe. Consequently, a non-frivolous defense to infringement is enough to show that the infringing acts were not objectively reckless. The Supreme Court made this clear in *Safeco*,[2] on which *Seagate* relied. *Id.* The Federal Circuit reiterated the *Seagate* objective standard just a week ago, stating that "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 2008 WL 60501, at *7 (Fed. Cir., Jan. 7, 2008), attached as Attachment Tab A.[3] Power Integrations' characterization of *Seagate*, and insistence throughout its briefing that the strength of Fairchild's defenses and invalidity arguments is irrelevant to objective recklessness, and therefore to willfulness, is plainly wrong.

Ignoring the holding of *Seagate*, Power Integrations asks for, in effect, summary judgment of willfulness based on a subjective standard. It is procedurally improper for Power Integrations to seek such relief in an opposition brief when it never sought summary judgment of willfulness (under a less stringent standard) nor timely requested Judgment as a Matter of Law ("JMOL") on this issue. Power Integrations never addresses what it would have to show to warrant summary judgment – that Fairchild lacked "legitimate defenses to infringement claims and credible invalidity arguments," rendering its infringing acts objectively reckless. Having failed even to identify the threshold requirement correctly, much less argue that it is met, Power Integrations' request for summary judgment of willfulness must be rejected. Because that request is the only basis Power Integrations advances for denying Fairchild's new trial motion –

---

[2] *Safeco Ins. Co. of America v. Burr*, __ U.S. __, 127 S. Ct. 2201, 2215 (2007).
[3] This opinion is citable, despite the fact that it is unpublished. Federal Rule of Appellate Procedure 32.1(a) provides that "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and (ii) issued on or after January 1, 2007."

and it disputes none of the assertions supporting Fairchild's request for a new trial – a new trial of willful infringement must be granted.

In response to Fairchild's request for a new trial on liability, Power Integrations repeats the legal error it made with respect to willfulness. Again flouting *Seagate*, Power Integrations' Opposition states that there is no overlap between the issues that must be determined at the infringement and invalidity trials and those determined at the willfulness trial. As stated above, the willfulness proceeding must consider whether Fairchild has "legitimate defenses to infringement claims and credible invalidity arguments," *Black & Decker*, 2008 WL 60501, at *7, and so must the liability proceedings. The Seventh Amendment prohibits the trying of overlapping issues to multiple juries. Therefore, because willfulness must be retried, the infringement and invalidity cases must also be retried, together with willfulness.

Finally, Power Integrations also fails to raise a meritorious objection to a second basis Fairchild advances for a new trial of infringement and invalidity, namely, that there was an overlap of issues between the respective trials. Admitting that juries "do not 'construe highly technical language,' the Court does," Opp. (D.I. 644) at 20, *quoting Markman*, Power Integrations nevertheless maintains that arcane chunks of technical language that were not defined by the court – and that it presented inconsistently – should be assumed to have been understood and applied identically by different juries. This is not credible. Nor is Power Integrations' assertion that it did not advocate inconsistent positions availing – the mere fact that two different juries had to decide identical or nearly identical issues such that an inconsistency was possible suffices to make out a Seventh Amendment violation. Nor has Fairchild waived this issue – in fact, it objected to bifurcation on this very basis. For this additional reason, Fairchild is entitled to a new trial on all issues.

## II.    **UNDISPUTED ISSUES.**

Power Integrations did not dispute the following facts and issues:

(1) the *Seagate* case applies retroactively;

    (2) the *Seagate* case overrules the *Underwater Devices* case, which set
        forth a negligence standard for willfulness;

    (3) *Seagate* sets forth a higher legal standard of objective recklessness
        for willfulness than *Underwater Devices*;

    (4) the standard for willfulness set forth in *Seagate* is consistent with the
        heightened requirements for punitive damages set forth in the *Safeco*
        case;

    (5) the jury was instructed under the lower negligence standard of
        *Underwater Devices* and not the higher recklessness standard of
        *Seagate*;

    (6) the jury charge contained no instruction at all at on the threshold
        requirement of objective recklessness,

    (7) the instructions on willfulness were legally erroneous in all the
        respects raised by Fairchild in its motion,

    (8) the willful infringement jury heard no evidence on the strength of
        Fairchild's invalidity case, and

    (9) in the words of the new trial standard when legal error is asserted, the
        jury charge, "taken as a whole" did not "fairly and adequately
        submits the issues in the case to the jury" and "the instruction was
        capable of confusing and thereby misleading the jury."

## III.    LEGAL STANDARDS.

### A.    Power Integrations Misstates the Standard for a New Trial on the Basis of Legal Error in the Jury Instructions.

Misstatements of the law pervade Power Integrations' brief, beginning with the recitation

of the applicable standard of review. Power Integrations asserts that "[t]he decision whether to

grant a new trial is committed to the sound discretion of the trial court," and that the court should

allow the verdict to stand unless doing so would result in a "miscarriage of justice," meaning that

the verdict "cries out to be overturned or shocks [the court's] conscience." Opp. at 2-3 (internal

quotations omitted). While applicable to new trial motions brought on certain other grounds, this

is *not* the correct standard when the basis for the motion is that the jury charge constitutes legal

error. As pointed out in Fairchild's opening brief, review of the trial court's grant or denial of the

request for new trial is "*plenary*" if the asserted basis is legal error. It is *not* "abuse of

discretion." Motion at 4, *citing Hook*, 28 F.3d at 370, *citing Griffiths v. CIGNA Corp.*, 988 F.2d 457, 462 (3d Cir. 1993), *citing Savarese v. Agriss*, 883 F.2d 1194, 1202-05 (3d Cir. 1989); *see also Connecticut Mutual Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir. 1983)("When the correctness or adequacy of a jury instruction is at issue, an appellate court may not review the evidence in the light most favorable to the verdict winner. There can be no deference to a factual finding tainted by legal error").

Power Integrations does not even mention, much less address, the Third Circuit authority cited in Fairchild's brief as the basis for the correct standard. Motion, at 4, *citing Hook* and *Savarese*. None of the cases on which Power Integrations relies for a different standard involved an assertion that the jury instructions were erroneous – those new trial motions all rested on very different grounds. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) (erroneous evidentiary rulings and jury award unsupported by the evidence); *Williamson v. Consol. Rail Corp.*, 926 F.3d 1334, 1352 (3d Cir. 1991)(verdict against the weight of the evidence); *Tristrata Technol., Inc. v. ICN Pharmaceuticals, Inc.*, 313 F. Supp. 2d 405 (D. Del. 2004)(various grounds, none of which were legal error in jury instructions); *all cited in* Opp. at 2.

As stated in Fairchild's opening papers, where legal error in the jury instructions is asserted, the court must determine whether "the charge [taken] as a whole fairly and adequately submits the issues in the case to the jury" and grant a new trial "if the instruction was capable of confusing and thereby misleading the jury." Motion, at 4, *citing Hook*, 28 F.3d at 370 (brackets in original), *quoting Bennis v. Gable*, 823 F.3d 723, 727 (3d Cir. 1987); *2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 2002 WL 53913, at *4 (D. Del. 2002), *rev'd in part on other grounds*, 369 F.3d 732 (3d Cir. 2002). Power Integrations fails to mention or apply this standard, even though it appears in the case law Power Integrations cites. *Watson v. Southeastern Pa. Transp. Auth.*, 207 F.3d 207, 221-222 (3d Cir. 2000) (issue was whether "the instructions ... could ... have confused and misled the jury such that the defendants would be prejudiced"), *quoting Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 768 (3d Cir. 1989).

In addition, any error must, to warrant a new trial, not be harmless. Fed. R. Civ. P. 61. Power Integrations states nothing more than this familiar principle when it asserts that the error must be "so prejudicial that denial of a new trial would be inconsistent with substantial justice." Opp. at 3, *citing Lafate v. Chase Manhattan Bank (USA)*, 123 F. Supp. 2d 773, 785 (D. Del. 2000). "Inconsistent with substantial justice" is synonymous with "affecting substantial rights," *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 927 n.17 and text (3d Cir. 1985), which is the phrase used in Rule 61 to refer to non-harmless error. *Id.*; Fed. R. Civ. P. 61. A court may find an error harmless only if "it is highly probable that it did not affect the outcome of the case." *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 112 (3d Cir. 1999) (internal quotations omitted).

As a matter of common sense, it seems inconceivable that the court could find it "highly probable" that a jury instruction rendered retroactively wrong in almost every respect – and requiring mere negligence instead of recklessness – "did not affect the outcome of the case" with regard to the issue covered by the instruction. *See Connecticut Mutual Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983) ("There can be no deference to a factual finding tainted by legal error. If the jury was misled as to the law on a material point, we cannot presume that the jury applied the appropriate standard in deciding an issue.") (internal quotations omitted). However, to determine what constitutes harmful error in this factual setting, the best guide is what the courts of this circuit have done under similar circumstances. As discussed in Fairchild's opening brief, and left wholly unanswered by Power Integrations, the Third Circuit has found that an instruction stating the wrong intent requirement suffices, without examination of the evidence, to warrant a new trial. *Savarese*, 883 F.2d at 1202-05, cited in Motion at 6-7.

## IV.    ARGUMENT

### A.    An Instruction Stating the Wrong Intent Requirement and Omitting the Threshold Issue Requires a New Trial.

Where the jury instruction states the wrong intent requirement and is wrong in virtually all other respects, reversal and a new trial are required. Power Integrations does not dispute this

principle, cites no contrary authority, and indeed does not even mention, much less discuss, the extensive supporting authority Fairchild has presented.

The Third Circuit case of *Savarese v. Agriss* is directly on point, though the legal error in that case was much **less** serious than the one in the case at bar. There, as here, the court was instructing the jury on the standard for punitive damages, and there, as here, the instruction stated the wrong standard of intentionality, presenting reckless and intentional conduct "disjunctively in some instances, conjunctively in others." 883 F.2d at 1204. Reviewing the "entire jury charge," the Third Circuit concluded that "the jury was given an ambiguous statement of punitive damages liability," because "they may have been led erroneously to believe from the numerous references in the instructions that in order to award punitive damages it was required to find that the defendants' conduct was 'intentional,' 'vicious,' 'deliberate,' and 'evil,' a standard which exceeds that of 'recklessness.'" *Id.* at 1205. (Here, the jury was instructed that it need find only negligence and not recklessness. Motion, at 5-7; *Seagate*, 497 F.3d at 1371.) Without any examination of how the jury might have applied the charge to the evidence, the Third Circuit vacated the punitive damages judgment and remanded for a new trial. *Id.*

The reason is obvious – in such a circumstance, the error distorts the prism through which the jury assesses **all** of the evidence. Such a global error obviously does not "fairly and adequately submit[] the issues ... to the jury" and is more than "capable of confusing and thereby misleading the jury." *Hook*, 28 F.3d at 370. Indeed, it was certain to do so in this case, where **only** the now-erroneous negligence standard was charged, meaning that the jury would have been disobeying the court's instructions had it applied the correct standard (an impossibility in any event, since the jury was never informed of the correct standard). *Dressler v. Busch Entertainment Corp.*, 143 F.3d 778, 783 (3d Cir. 1998) ("If the jury was misled as to the law on a material point, we cannot presume that the jury applied the appropriate standard in deciding an issue"), *quoting Connecticut Mutual Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983). This is akin to instructing the jury with the wrong burden of proof, which is considered "fundamental

and highly prejudicial and requires a new trial." *Waldorf v. Shuta*, 896 F.2d 723, 731 (3d Cir. 1990) (quotations omitted).

In addition, going far beyond even the error in *Savarese*, the change in the law effected by *Seagate* was so profound that the jury was not instructed to consider a critical issue in determining whether Fairchild met the threshold objective recklessness requirement – namely, whether Fairchild raised a legitimate defense to infringement and a credible challenge to validity. There can be no doubt that reversal and new trial on willfulness are required. (The full catalog of defects in the jury instruction – all unaddressed by Power Integrations – is discussed in Fairchild's Motion, at 5-10).

**B.    Power Integrations Fails to Address the Relevant Legal Principles and Instead Seeks Summary Judgment or JMOL of Willful Infringement Based on A Misreading of *Seagate*.**

Essentially conceding that a new trial is warranted, Power Integrations stakes its entire opposition on the notion that no reasonable jury could fail to find willful infringement on the evidence in this case, Opp. at 9-14, and thus there is no triable issue of willfulness warranting any trial, much less a new one. In effect, Power Integrations is arguing that no trial was needed in the first place, because it is entitled to summary judgment of willful infringement. This is, to put it charitably, a very odd position, given that Power Integrations did not move for summary judgment or a directed verdict under the old *Underwater Devices* standard, which was much more favorable to any claim of willful infringement than the now-applicable *Seagate* regime. It is also procedurally impermissible, given that Power Integrations filed neither a timely motion for summary judgment, nor for directed verdict, nor for JMOL on this issue.

Most importantly, Power Integrations' argument rests on a massive legal error – a total misconstruction of *Seagate* that (i) is refuted by the plain language and logic of that decision and of the Supreme Court's *Safeco* decision (on which *Seagate* relies), and (ii) was explicitly rejected by the Federal Circuit in a decision handed down just two weeks after Power Integrations filed its opposition.

1.    **Power Integrations' Contention that the Merits of Fairchild's Non-Infringement and Invalidity Positions Are Irrelevant to Willfulness Is Wrong, and the Evidence It Cites Does Not Entitle It to Summary Judgment In Its Favor.**

As explained in Fairchild's Motion, the *Safeco* case, from which *Seagate* derived the new willful infringement regime that now controls in this action, held that where a defendant's reading of the applicable statute, "albeit erroneous, was not objectively unreasonable," the defendant fell "well short" of objective recklessness. 127 S. Ct. at 2215, 2216, *cited in* Motion at 8, 11-12. Nevertheless, Power Integrations devotes the lion's share of its opposition papers to denying the clear import of *Safeco* (and of *Seagate*), which is that a non-infringement or invalidity position taken at trial that is incorrect, but not objectively unreasonable, suffices to defeat a claim of willful infringement. Again, Power Integrations takes the route of simply ignoring the authority that does not favor its position – it neither mentions nor discusses *Safeco* in its papers. Instead, Power Integrations argues that *Seagate*'s reaffirmation of the principle that willfulness is evaluated based primarily on prelitigation conduct somehow renders positions advanced by the defendant in litigation irrelevant to willfulness.

Power Integrations' reading of *Seagate* is wrong because it confuses prelitigation *knowledge* of one's non-infringement position (the issue of subjective recklessness) with the objective likelihood that one's prelitigation *acts* – regardless of what one knows or intends – are infringing (the issue of objective recklessness). Opp. at 3-6, 9, 11-12. For example, Power Integrations argues that:

> The 'strengths' of the contentions eventually mustered by the accused infringer after being sued and spending considerable time and resources evaluating the prior art are ***irrelevant*** to an objective determination of its prelitigation conduct.

Opp. at 5-6 (emphasis added). That, according to Power Integrations, is because objective recklessness is evaluated at the time the infringer begins to infringe, while the arguments advanced at trial are developed years later and thus cannot bear on an evaluation of how reckless the infringer was at the time infringement began. Opp. at 6.

This is wrong, and Power Integrations' own formulation shows why it must be wrong. It follows directly from Power Integrations' argument that if Fairchild had spent "time and

resources evaluating the prior art" and had "mustered" its infringement positions before it started infringing, then the strength of its legal position *would* be relevant to whether it was objectively reckless. In other words, if Fairchild had taken precisely the same infringing acts – which would of course carry the exact same "objective[] ... likelihood" of "infringement of a valid patent," 497 F.3d at 1371 – but had *known* the strength of its infringement position beforehand, then that infringement position would, according to Power Integrations' reading of *Seagate*, be relevant to determining "objective recklessness." That cannot be right because "the state of mind of the accused infringer is not relevant to this objective inquiry." *Seagate*, 497 F.3d at 1371. Whether the risk of infringement "was either known or so obvious that it should have been known" is part of the second, *subjective* recklessness part of the test. *Id.*

This same error pervades Power Integrations' entire brief, which over and over again tacks misplaced elements of knowledge, intent, understanding, state of mind, and the like onto objective recklessness. *See* Opp. at 12 ("Where a company has *chosen* to copy their competitor's patented design after *knowingly* failing to design around the patent…, and does so *without consulting* an attorney, performing an in-depth *analysis* of the patent claims, or *investigating* prior art at all, there clearly exists an objectively high likelihood that it would be infringing a valid patent."); Opp. at 6 (Fairchild's argument is absurd because it suggests that an infringer can engage in "*intentionally* copying the patented invention without any *reasoned basis* or *legal advice* of invalidity *at the time of copying*" and yet avoid a willfulness determination if it advances a non-frivolous defense during litigation); Opp. at 9 ("The die is cast at the time the accused infringer learns of the existence of the patent and begins infringing *despite this knowledge*.") (boldface emphases added); Opp. at 13-14 (arguing that objective recklessness is shown by factors such as "Fairchild's engineers *knew* of the circuit patents," "*analyzed* Power Integrations' … parts," held a "*seminar*" about them, chose not to "*read*" or "conduct[] any validity *analysis*" of the patents, or "*consult*" an attorney, and was not "*aware* of … the sole [prior art] reference presented by Fairchild at trial.") But *Seagate* expressly excludes the considerations Power Integrations relies upon from the objective recklessness inquiry.

*Seagate* makes clear that objective recklessness assesses the objective risk of infringement posed by the acts from which the infringement suit arises, and those acts alone. "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions ***constituted infringement*** of a valid patent." *Id.* at 1371 (emphasis added). The acts whose risk of infringing is evaluated must be acts that can *constitute* infringement, such as making, selling, or importing an article that meets all the limitations of a valid patent. The surrounding acts and surrounding knowledge, intent, etc., that Power Integrations invokes cannot "constitute infringement" and so are not part of the test. And the risk of infringement must be measured by reference to the only binding determination of infringement – the judgment in the infringement suit. *Id.* at 1371 (the "objectively-defined risk" is "determined by the record developed in the infringement proceeding"). (Power Integrations argues that "the record developed in the infringement proceeding" refers to evidence of surrounding circumstances, i.e. its litany of indicia of intent, but this is clearly wrong because that evidence is not relevant to the issue of infringement and indeed when infringement is bifurcated from willfulness, that evidence is not even heard by the infringement jury). In other words, the "risk of infringing" refers to the risk of being adjudicated an infringer by the court. That is why the likelihood that the defendant would prevail in court, measured by the strength of its non-infringement and invalidity positions, determines whether its infringing acts were "objectively reckless." Not that there should have been any doubt of this proposition in light of *Seagate* and *Safeco*, but the Federal Circuit confirmed it in a case decided on January 7, 2008.

In *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, the Federal Circuit unambiguously stated that "legitimate defenses" and "credible invalidity arguments" suffice by themselves to defeat the threshold "objective recklessness" requirement for showing willful infringement. 2008 WL 60501, at *6-*7 (Fed. Cir., Jan. 7, 2008). After deciding to reverse an infringement verdict based on a faulty claim construction, the Federal Circuit provided the following guidance to the district court regarding the possible retrial of willfulness after remand:

11

> The district court, in deciding the enhanced damages issue, recognized that "Bosch had legitimate defenses to Black & Decker's infringement claims." Further, the jury found two claims invalid as obvious, showing that the appellant also made a credible invalidity argument.
>
> As we stated in *Seagate*, the patentee must prove the "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. ***Under this objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent.***

2008 WL 60501, at *6-*7 (Fed. Cir., Jan. 7, 2008) (emphasis added). The first quoted paragraph leaves no doubt that the "legitimate defenses to infringement claims and credible invalidity arguments" language refers to defenses and arguments developed at trial and is not limited to positions of which the defendant was aware prior to engaging in infringing conduct. Willfulness cannot be determined in this case without a trial of whether Fairchild's defenses and invalidity arguments were "legitimate" and "credible" even though they did not prevail.[4]

Finally, Power Integrations can derive no support for its position from *Seagate*'s discussion of opinions of counsel and other subjective factors, nor from Judge Newman's concurrence, which it heavily cites. Opp. at 4, 13, 16. *Seagate*'s discussion of the evidentiary importance of opinions of counsel under the new regime obviously pertains to second prong of willfulness, the "knew or should have known" subjective recklessness requirement, and ***not*** to the threshold objective recklessness requirement, for the reasons just stated. Regarding Judge Newman's opinion, apart from the fact that concurring opinions are not binding authority, Power Integrations has – yet again – omitted other authority that refutes its argument. In addition to her separate concurrence in *Seagate*, Judge Newman also joined in Judge Gajarsa's concurrence, which reasons as follows:

> Under my reading of *Safeco*, which I believe is consistent with that of this court, Convolve must show, by clear and convincing evidence, (1) that Seagate's theory

---

[4] It is worth noting that even under the old *Underwater Devices* regime, a credible non-infringement or invalidity case sufficed to establish that willful infringement damages were inappropriate. "An increase in damages for willfulness ... is generally inappropriate when the infringer mounts a good faith and substantial challenge to the existence of infringement"), *State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057 (Fed. Cir. 2003), *quoting Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 20 (Fed.Cir. 1984).) This is yet another illustration of the preposterousness of Power Integrations' argument – it would mean that *Seagate* has made it easier than ever to recover enhanced damages.

> of noninfringement/invalidity, was not only incorrect, but was objectively
> unreasonable, and (2) that Seagate ran a risk of infringing Convolve's patents
> substantially greater than the risk associated with a theory of noninfringement/
> invalidity that was merely careless. … If Convolve is unable to show the former,
> Seagate cannot be found to have willfully infringed, regardless of any evidence of
> its subjective beliefs.

497 F.3d at 1384 (Gajarsa, J., concurring). This accords with *Black & Decker* and *Safeco*, and

forecloses Power Integrations' reading of Judge Newman's broadly worded, policy-oriented

separate concurrence as advocating a negation or modification of the threshold requirement of

objective recklessness. In sum, Power Integrations' only purported basis for opposing a new trial

of willfulness – its meritless request for summary judgment – fails, and a new trial is required.

**C.**  **Power Integrations' Arguments that a Retrial of Willfulness Does Not
Require a Retrial of Infringement and Validity Are Incorrect.**

**1.**  **The Issue of Whether Fairchild's Defenses to Infringement Were
Legitimate and Its Invalidity Arguments Were Credible Overlaps
With the Determination of Whether Fairchild Infringed and Whether
the Patents Were Invalid.**

As shown in Fairchild's opening brief, the necessity of considering the merits of

Fairchild's defenses and invalidity arguments in order to decide both liability and willful

infringement means that it would violate the Seventh Amendment to try these separately.

Motion, at 11-13. One jury cannot decide whether infringement is shown by a preponderance of

the evidence (i.e., is the likelihood that defendant's acts constituted infringement 51% or

greater), while a second jury decides whether the same infringing acts posed an objectively high

risk of infringement (i.e., what, between 51% and 100%, was the likelihood that defendant's acts

constituted infringement). This presents precisely the same constitutional problem as the cases

in which one jury determines whether a defendant was negligent and a second jury determines

the defendant's comparative negligence based on the same acts. Motion, at 12-13, *citing, inter

alia, In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1181-85 (3d Cir. 1993).

Power Integrations does not dispute the extensive authority Fairchild has provided for this

proposition, nor Fairchild's analysis of it.

Instead, Power Integrations argues that "no overlap exists in this case because the

evidence required to show willfulness was different from the evidence required to show

13

Fairchild's liability." Opp. at 17.  In support of this assertion, Power Integrations makes the same argument shown above to be wrong: "The objective standard, as the Federal Circuit explained in its opinion, focuses on the accused infringer's actions at the time it started infringing and *not* on the merits of later-developed trial strategies prepared by litigation counsel." Opp. at 18.  Again, Power Integrations misunderstands that the infringing acts themselves (not the surrounding indicia of knowledge and intent) are the pre-litigation conduct whose objective risk of infringing is assessed for purposes of the objective recklessness prong of willful infringement, and it is the litigation process that determines what that risk was.  *Seagate*, 497 F.3d at 1370-71; *Black & Decker*, 2008 WL 60501 at *6-*7.  Thus, the evidence relevant to infringement/validity and objective recklessness is the same, and the issues overlap just as in the comparative negligence example.  A new trial of willfulness inescapably requires a new trial of infringement and validity.

> **2.   Power Integrations' Contention that *Seagate* Reaffirms the Propriety of Bifurcating Willful Infringement from Liability for Trial Is Incorrect and Irrelevant.**

Power Integrations also incorrectly contends that *Seagate* reaffirmed the Federal Circuit's approval of the practice of bifurcating infringement from liability and that Fairchild has argued for improper limits on district courts' discretion to manage cases.  Opp. at 7-9.  First, it is untrue that *Seagate* "reiterate[ed] the usefulness" of bifurcating liability and willfulness in its brief discussion of *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991).  Opp. at 7.  In fact, *Seagate* did exactly the opposite.  *Seagate* mentions *Quantum* in the course of explaining the difficult dilemma defendants had faced between "waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found."  497 F.3d at 1369, *quoting Quantum Corp.*, 940 F.2d at 643-44.  *Seagate* notes that *Quantum* offered solutions to this problem in the form of in camera review and bifurcating trials, but adds that "such procedures are often considered too onerous to be regularly employed."  497 F.3d at 1369.  The *Seagate* Court goes on to discuss subsequent

efforts to alleviate the dilemma before finally deciding to eliminate it permanently, by holding that waiver resulting from the advice-of-counsel defense does not extend to trial counsel. *Id.* at 1370, 1373. In other words, the role of *Quantum* in the analysis is as an example of an earlier, "onerous" solution to a problem that *Seagate* itself is now eliminating for good – thus implicitly rendering the "onerous" bifurcation solution unnecessary. *See Computer Associates Intern., Inc. v. Simple.com, Inc.*, __ F. Supp. 2d __, 2007 WL 2815812, at *4 (E.D.N.Y. 2007) (denying bifurcation of infringement and willfulness – "Given the Federal Circuit's ruling in Seagate, it is unlikely CA will suffer prejudice in the absence of bifurcation"). This is the opposite of a reaffirmation of the procedure's usefulness, especially given that the *Seagate* opinion does not otherwise address the issue of bifurcation.

In any event, the entire issue is a red herring – *Seagate* does not rule out bifurcating liability from willfulness beyond the limits already inherent in the Seventh Amendment. *See* Motion, at 11-13. Bifurcation, as always, is permissible as long as successive litigation of the same issues is avoided. If willfulness and infringement did not present overlapping issues (e.g., if objective recklessness were undisputed) there could be bifurcation just as before. And of course, bifurcation in the form of sequencing remains possible, avoiding the Seventh Amendment problem by trying infringement and willfulness to the same jury, one after the other. *See, e.g., Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 36 (D. Del. 1995) (separately trying liability and willfulness in sequence before the same jury).

### 3. Power Integrations Presents No Authority In Support of Its Position and Fails to Address the Controlling Third Circuit Case Law

Even if *Seagate* had had the effect of forbidding separate trials of liability and willful infringement there is no principle of law, and Power Integrations cites none, requiring that that particular type of bifurcation remain available to courts. The Seventh Amendment is a constitutional limitation on a court's ability to order bifurcation of whatever kind – district courts have broad discretion to order separate trials, ***except*** where it would result in two juries deciding the same issues. *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1181-85

15

(3d Cir. 1993); *In re Innotron Diagnostics*, 800 F.2d 1077, 1086 (Fed. Cir. 1986). As discussed above and in Fairchild's opening papers, one circumstance where a court may not order separate trials is where one jury would decide the fact of liability and the second jury would decide the degree of liability. *Lower Lake Erie.* Another is where, as here, adjudicating punitive damages would require trying (or retrying) the same facts pertinent to liability. *Spence v. Board of Educ. of Christina School Dist.*, 806 F.2d 1198 (3d Cir. 1986), *cited in Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (also citing another Third Circuit case to the same effect). Fairchild pointed this out, Motion at 13, but as with other issues, Power Integrations simply ignored the controlling Third Circuit case law. In response, Power Integrations cited only a single case from the Eighth Circuit for the proposition that "no error in bifurcation of punitive damages from liability phase of trial." Opp. at 7, *citing Thorne v. Welk Investment, Inc.*, 197 F.3d 1205, 1213-14 (8th Cir. 1999). Power Integrations has again misstated the holding of a case it invokes. *Thorne* did not affirm the district court's decision to bifurcate, but rather its *refusal* to bifurcate punitive damages from liability. *Id.*

Here, objective recklessness has not been tried at all, *Seagate* requires it as a prerequisite for willful infringement, and it cannot constitutionally be tried separately from infringement and validity in this case. *See Computer Associates*, 2007 WL 2815812, at *3 (denying bifurcation and finding that willfulness and infringement are "interdependen[t]… given that the 'objectively defined risk' is 'determined by the record developed in the infringement proceeding'" ), *quoting Seagate; Lower Lake Erie; Spence.* Fairchild is thus entitled to a new trial of infringement, validity and willfulness.

### D.    Power Integrations Is Incorrect that the Infringement and Invalidity Trials Did Not Require Two Juries to Consider the Same Issues

In response to Fairchild's independent basis for a new trial of infringement and invalidity – namely that, willfulness aside, the two liability trials also successively considered the same issues – Power Integrations makes only one responsive argument, and it is wrong. Power Integrations' error appears right at the inception of its argument, when it tries to raise the bar for

what must be shown, by mischaracterizing Fairchild's position. Power Integrations describes the defect raised by Fairchild as "two different juries allegedly came to two different interpretations of the same claim terms." Opp. at 17. In fact, Fairchild does not need to make such a showing and that is not the basis for its motion. As Fairchild stated in its opening papers, the defect requiring a new trial is that "the jury in the validity trial considered issues that were either the same as issues considered by the infringement jury, or so interwoven that is was unjust to try them separately." Motion, at 14. The duplicative or overlapping *consideration* of issues suffices by itself to make out a Seventh Amendment violation – an inconsistent result need not be shown, just the possibility of one. This was illustrated by the cases above, and is also the principle of *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999). Motion at 14. Power Integrations admits that this is the rule, but tries to distinguish *Blyden* by arguing that here, the two juries were so constrained by the jury instructions that there was, in effect, no overlapping issue to decide. There was merely the application, by two different juries, of an identical instruction (and claim construction). Opp. at 21.

### 1.    Successive Juries Considered the Same Issues With Respect to the Circuit Patents

With respect to the soft-start circuit element of the U.S. Patents Nos. 6,229,366 and 6,107,851, Power Integrations' argument is not credible. The instruction at issue was the extremely long, dense excerpts from the circuit patents' specification reproduced in Fairchild's Motion at 16-18, which was the structure corresponding to the asserted means-plus-function claims. Power Integrations asserts, absurdly, that two different lay juries could not possibly reach inconsistent readings of this abstruse welter of technological description. It invokes the principle that all juries are presumed to follow the instructions they are given. Opp. at 19. Yet Power Integrations also admits that "juries do not 'construe…highly technical language,' the court does." Opp. at 20, *quoting Markman v. Westview Instruments*, 517 U.S. 3, 372 (1996). Here each jury undeniably construed highly technical language and diagrams, which were themselves full of unconstrued technical terms. (This was quite different from typical claim

constructions, which are brief and translate technological language into lay terms.) Two juries would not have to disobey the instructions in order to give this long and difficult text different meanings, especially where, as here, Power Integrations paved the path to inconsistent construction and application in the way it made its case.

And that is the nub. Power Integrations spends several pages of its opposition papers closely arguing that, in light of other testimony its witnesses gave, its two presentations really were not inconsistent with respect to the scope of soft-start. Opp. at 22-25. But Fairchild need not show that they were inconsistent in every place that the issue arose – only that the way the issue was framed by the instructions, combined with Power Integrations' presentation of the evidence, created a meaningful ***possibility*** that the two juries decided the same or closely overlapping issues inconsistently. *Blyden*, 186 F.3d 252. As discussed in Fairchild's opening brief, the many utterances of Power Integrations' witnesses and attorneys that were either inconsistent or danced on the edge of inconsistency suffice to establish the required possibility (indeed, a likelihood). Motion at 18-21. Power Integrations ignores these parts of the trial record – because it has no justification for its conduct – and instead cites other parts of the trial record where it claims it ***was*** consistent. Even if Power Integrations' witnesses gave (other) testimony that was consistent, it is simple common sense that the inconsistencies Fairchild identified made inconsistent jury determinations more likely (and inarguably possible).

### a. Fairchild Has Not Waived Its Objection, Which Is Not to the Specificity of the Jury Instructions but to Bifurcation.

Finally, Power Integrations contends that this basis for a new trial is in effect an objection to the specificity of the jury instructions, which Fairchild has waived by failing to raise it earlier. Opp. at 19-20. On the contrary, it is an objection to bifurcation, which Fairchild did raise earlier on this very basis. [DI 274, DI 514] Had the instructions in this case been given to a single jury hearing both infringement and validity, that jury would necessarily have applied a single construction of the means-plus-function claim to both the accused products and the prior art, and

Power Integrations would not have been able to get away with talking out of both sides of its mouth. On this independent basis, a new trial of infringement and validity is required.

> **2.     Successive Juries Considered the Same Issues With Respect to the '876 Patent.**

With respect to the two juries' respective determinations relating to the "frequency jitter" element, Fairchild incorporates the argument in its Reply in Support of its Motion for Judgment as a Matter of Law Concerning Non-Infringement and Invalidity of the '876 Patent (D.I. 670), which shows both the successive consideration of the same issue by both juries, and the possibility (in fact, certainty) of an inconsistency. As described further in that brief, Power Integrations admits that its expert did not testify at the infringement trial that Fairchild's products varied the switching frequency of the power supply about a target frequency. Nor does Power Integrations dispute that the alleged lack of this element in the prior art was central to its assertions in the invalidity trial. [Opposition at p. 23] The fact that Power Integrations argued that this element was essential to the invalidity jury, yet did not even present testimony that this element was present in the accused products to the infringement jury created a very real risk of inconsistent jury determinations. In particular, the infringement jury found that the accused products infringed Claim 1 of the '876 Patent despite the lack of any evidence that those products varied the switching frequency about a target frequency. In contrast, the invalidity jury found that the prior art did not render Claim 1 invalid, presumably at least in part based on the testimony of Power Integrations' expert that the prior art lacked the required target frequency. [9/20/07 Blauschild Trial Tr. 1062:14-1063:14]

## V.     CONCLUSION.

For the foregoing reasons and the reasons stated in its opening brief, Fairchild respectfully requests that the Court grant its motion for a new trial on all issues.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue
Wilmington, Delaware 19801
Telephone:  302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated: January 16, 2008
187357.1