IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1371-JJF |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., and FAIRCHILD | ) | |
| SEMICONDUCTOR CORPORATION, | ) | |
| Defendants. | ) | |

**DEFENDANTS FAIRCHILD SEMICONDUCTOR INTERNATIONAL,
INC. AND FAIRCHILD SEMICONDUCTOR CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION FOR REMITTER, JUDGMENT AS A
MATTER OF LAW, OR, IN THE ALTERNATIVE, NEW TRIAL
<u>CONCERNING DAMAGES</u>**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  January 16, 2008

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. ........................................................................................ 1

II.     REPLY. ...................................................................................................... 2

     A.     Power Integrations Concedes That Fairchild Is Not Liable For Activities
        Outside the United States. ................................................................... 2

     B.     Power Integrations Concedes That Its Damages Were Based On Activity
        Entirely Outside Of The United States. ................................................. 4

          1.     The jury's damages are improperly based on activity that Power
               Integrations' damages expert admitted occurred entirely outside of
               the United States. ...................................................................... 4

          2.     Fairchild's limited activities within the United States cannot
               support the jury's award of damages. ......................................... 6

          3.     Power Integrations admits that at least 82% of Fairchild's devices
               are never imported into the United States. ................................... 8

     C.     The Court Should Reduce The Damages To Reflect The Stipulated
        Amount of Fairchild's Activities Within The United States. ................... 8

          1.     There is no evidence that Power Integrations' alleged lost profits
               were due to Fairchild's limited activities within the United States. .......... 9

          2.     Power Integrations is not entitled to speculative damages. ..................... 10

          3.     The jury determined that the reasonable royalty should be 15%. ............. 11

     D.     Fairchild Has Consistently Explained That Its Has Minimal U.S. Activity
        With Respect To The Accused Devices. ................................................ 11

     E.     Power Integrations' New Allegations Of Indirect Infringement Are
        Contrary To The Law And The Facts. ................................................... 13

          a.     Power Integrations admitted that $30 million of its damages
               were unrelated to products imported into the United States. ....... 13

          b.     There is no evidence that Fairchild actively induced another
               to import the accused devices. ................................................. 14

          c.     As a matter of law, Fairchild did not "contribute" to the
               infringement of others. ............................................................ 15

III.    CONCLUSION. ........................................................................................ 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Brown* v. *Duchesne*,
    60 U.S. 183 (1856)......................................................................................................3

*Deepsouth Packing Co.* v. *Laitram Corp.*,
    406 U.S. 518 (1972)..................................................................................................3, 6

*Dowagiac Mfg. Co.* v. *Minnesota Moline Plow Co.*,
    235 U.S. 641 (1915)......................................................................................................3

*Dynacore Holdings Corp.* v. *U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)...........................................................................14, 15

*Grain Proc. Corp.* v. *American Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)...................................................................................10

*IPPV Enter. LLC* v. *Echostar Comms. Corp.*,
    191 F. Supp. 2d 530 (D. Del. 2002)....................................................................2, 9, 11

*Microsoft Corp.* v. *AT&T Corp.*,
    127 S. Ct. 1746 (2007).......................................................................................2, 3, 6, 9

*Oiness* v. *Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996).................................................................................8, 11

*Paper Converting Machine Co.* v. *Magna-Graphics Corp.*,
    745 F.2d 11, 17 (Fed. Cir. 1984) .................................................................................7

*Rite-Hite Corp. v. Kelley Corp,*
    56 F.3d at 1542 .............................................................................................................7

### FEDERAL STATUTES

35 U.S.C. § 154...................................................................................................................6

35 U.S.C. § 271...........................................................................................................*passim*

35 U.S.C. § 284.........................................................................................................2, 6, 11

I.    **INTRODUCTION.**

Power Integrations now concedes that "activity occurring *entirely* outside of the United

States cannot constitute infringement of a U.S. patent." [D.I. 646, p. 1]. Thus, as a matter of

law, such non-infringing, foreign activity cannot result in damages. During trial, however,

Power Integrations' damages expert conceded that over $30 million of the damages sought by

Power Integrations were "worldwide" damages and not related to the manufacture, use, sale,

offer for sale, or importation of the accused products in the United States. These admissions are

irreconcilable and dispositive. Fairchild requests that Court set aside the jury's improper award

of damages based on foreign sales and either remit damage to reflect activity within the United

States or retry damages allegedly caused by Fairchild's U.S. activities.

During trial, Power Integrations stipulated that Fairchild's U.S. activity – the amount of

products manufactured in or imported into the United States – amounted to no more than

$765,724. Applying the 15% royalty determined by the jury, the Court should reduce Power

Integrations' damages to $114,858.60. This amount of damages is unsurprising – as Fairchild

has explained throughout this case, it has little activity within the United States related to the

accused products. Recognizing this, Power Integrations' damages expert expressly stated that he

was **_not_** offering an opinion on the amount of damages due to Fairchild's U.S. activity.

Power Integrations argues that it is entitled to "worldwide" damages because it speculates

that but for the fact that Fairchild's products could be used within the United States, Fairchild

could not sell any products anywhere in the world. This is simply contrary to the law. As set

forth in the Patent Act and, indeed, the cases relied upon by Power Integrations, Power

Integrations is only entitled to damages "adequate to compensate **_for the infringement_**" of its

patents. Since the manufacture and sale of products outside the United States does not infringe

the Power Integrations patents, these foreign activities cannot result in damages.

Power Integrations' overreaching is further evidenced by its other speculative damages.

For instance, Power Integrations claimed lost profits and price erosion despite the fact that it

admitted the existence of non-infringing alternatives to the accused products. Similarly, Power

Integrations' damages expert conceded when cross-examined that Power Integrations' claim of "future" lost profits was merely a "forecast" based on an "assumption" and an "estimate". As a matter of law, Power Integrations cannot recover such speculative damages.

## II.     **REPLY.**

At trial, Power Integrations' evidence and witnesses were very clear – Power Integrations' damages were not limited to Fairchild's U.S. activities but, instead, based almost entirely on devices that were made and sold outside the United States and never imported into the United States by Fairchild or anyone else. Since Power Integrations concedes that such "activity occurring entirely outside of the United States cannot constitute infringement of a U.S. patent" ([D.I. 646, p. 1]), the Court should "remit the damage award to the highest amount the jury could 'properly have awarded based on the relevant evidence.'" *IPPV Enter. LLC v. Echostar Comms. Corp.*, 191 F. Supp.2d 530, 573 (D. Del. 2002).

### A.     **Power Integrations Concedes That Fairchild Is Not Liable For Activities Outside the United States.**

Power Integrations' Opposition properly frames the issue – what amount of damages is "adequate to compensate *for the infringement*" of its patents. 35 U.S.C. § 284 (emphasis added). Power Integrations is entitled to that amount of damages and nothing more. Power Integrations cannot recover damages that were not caused by Fairchild's alleged infringement.

Thus, the question becomes, what does (and, does not) constitute infringement of a United States patent? As Power Integrations admits in its Opposition, the Supreme Court answered this question in its recent decision – *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007). [D.I. 646, p. 13 ( "*Microsoft* deals with what constitutes infringement….")].

Power Integrations concedes that "the Supreme Court in *Microsoft* held that activity occurring *entirely* outside of the United States cannot constitute infringement of a U.S. patent…." [D.I. 646, p. 1]. Therefore, as a matter of law, Power Integrations can only recover damages due to infringing activity "within the United States" and cannot recover damages

caused by activity outside of the United States.[1]  This is consistent with the definition of

infringement set forth in the Patent Act:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, ***within the United States***, or imports ***into the United States*** any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a) (emphasis added).

The *Microsoft* decision is merely the latest case in over 150 years of precedent in which

the Supreme Court has held that the patent laws "do not, and were not intended to, operate

beyond the limits of the United States." *Brown v. Duchesne*, 60 U.S. 183, 195 (1856).

- **In 1856** – "The patent laws are authorized by that article in the Constitution which provides that Congress shall have power to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries. ***The power thus granted is domestic in its character, and necessarily confined within the limits of the United States.***  It confers no power on Congress to regulate commerce... which belong to a foreign nation...." *Brown*, 60 U.S. at 195 (emph. added).

- **In 1915** – "the right conferred by a patent under our law is confined to the United States and its Territories and ***infringement of this right cannot be predicated of acts wholly done in a foreign country***." *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 650 (1915) (emph. added).

- **In 1972** – "our patent system makes ___no claim to extraterritorial effect___." *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) (emph. added).

- **In 2007** – "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.  The traditional understanding that our ***patent law 'operates only domestically and does not extend to foreign activities***,' is embedded in the Patent Act itself, which provides that a patent confers exclusive rights in an invention within the United States." *Microsoft*, 127 S. Ct. at 1758 (emph. added).

Power Integrations seeks to dismiss this century and a half of precedent claiming "these cases

address only the issue of infringement, and make no ruling regarding damages". [D.I., p. 15, n.

9].  Power Integrations misstates the law.  In *Brown v. Duchesne* the Supreme Court clearly held

that a patentee is not entitled to damages for non-U.S. activities. *Brown*, 60 U.S. at 195-196

("The use of [a patented article] outside of the jurisdiction of the United States is not an

infringement of his rights, ***and he has no claim to any compensation for the profit or advantage***

***the party may derive from it***.") (emphasis added).

---

[1]     This is literally black-letter law.  *See* Exh. A, *Black-Letter Law and Commentary*, Robert L. Harmon, § 4.3.

Thus, as a matter of law and as admitted by Power Integrations, Fairchild is not liable for alleged damages caused by the manufacture, sale, or offer for sale of Fairchild devices outside of the United States. Such extraterritorial activities cannot infringe a U.S. patent and, thus, cannot result in damages.

    **B.**    **Power Integrations Concedes That Its Damages Were Based On Activity Entirely Outside Of The United States.**

        **1.**    **The jury's damages are improperly based on activity that Power Integrations' admitted occurred entirely outside of the United States.**

Remittance of damages is necessary since Power Integrations' damages expert, Richard Troxel, conceded that Power Integrations' damages claims were based on "worldwide" activity:

> Q.    Okay. I know we've down a lot of math, Mr. Troxel, so I just want to summarize and ask you what you have believe the probable scenario of damages to be in this case.
>
> A.    Well, ***I'm convinced that the worldwide sales is the only way to properly compensate Power Integrations*** for the loss of business.

[10/4/06 Troxel Trial Tr. 835:15-21]. Mr. Troxel further admitted that he had not offered any opinion on the amount of damages due to Fairchild's activities within the United States:

> Q.    You've offered no opinion in this case on the amount of damages if one were to consider only the Fairchild devices sold or manufactured by Fairchild in the United States; is that correct?
>
> A.    That's correct.

[10/4/06 Troxel Tr. Test. 856:20-857:1].

That Power Integrations' damages were based on foreign activities occurring entirely outside of the United States could not be more clear. Power Integrations' damages expert specifically and unambiguously admitted that at least $30 million of Power Integrations' damages were not due to any activities within the United States. Unable to dispute this simple truth Power Integrations' Opposition ignores the unequivocal testimony of its own witness:[2]

---

[2]    Power Integrations' Opposition also ignores the fact that Power Integrations and its attorneys expressly argued that such "worldwide" damages are inappropriate. [10/4/06 Troxel Trial Tr. 843:3-845:7]. While this case was pending, Power Integrations accused Systems General of infringing other patents in an investigation brought before the United States International Trade Commission. Systems General argued what is now Power Integrations' position – that customers whose products are sold worldwide would not buy power supply components if they could not be used in the United States. [*Id.* 843:8-17; Exh. A to Fairchild's Motion]. Power Integrations dismissed this argument as "pure speculation" and claimed that it was unaware of any evidence to support this theory. [*Id.* 843:18-

| Alleged Act | Power Integrations Concedes Not in United States |
|---|---|
| Devices not "**made**" in the United States | Q.    This $30 million of alleged damages are ***not related to parts that were manufactured in the United States***; is that correct?<br>A.    That is -- yeah.  Well, that's mathematically the way it would work out.  That's correct.<br><br>[10/4/06 Troxel Trial Tr. 839:4-10] |
| Devices not "***used***" in the United States | Q.    And this $30 million difference of alleged damages are ***not related to parts that were used in the United States***; is that correct?<br>A.    That's right.  These would be worldwide.  These would be sales outside the U.S.<br><br>[10/4/06 Troxel Trial Tr. 839:12-17] |
| Devices not "***sold***" in the United States | Q.    And now this $30 million of alleged damages are ***not related to parts that were sold in the United States***; is that correct?<br>A.    Not directly.  That's correct.  The total computation would not include – would exclude the dollars of sales that remain in the U.S.<br><br>[10/4/06 Troxel Trial Tr. 839:19-840:1] |
| Devices not "***offered for sale***" in the United States | Q.    You ***never specifically quantified any damages caused by any offer for sale made by Fairchild in the United States*** in your expert report?<br>A.    That sounds like a legal interpretation.  I mean, my expert report says what it says, and that, to me – I'm assuming – I'm assuming infringement in the U.S., and that assuming infringement in the U.S., then I'm saying these are the – this is how they're hurt worldwide.  I didn't try to determine the reasons to how the infringement was found.<br>Q.    I'm sorry if my question wasn't clear.  All I'm saying is:  ***There's no specific number in your expert report where you say this is the amount of damages caused by Fairchild based on any offer for sale made in the United States***.  There's no specific dollar number.  That's all I'm asking.<br>A.    Well, how could I split it out?  I mean, there's many things that are not in my report.<br>Q.    And that's –<br>A.    That's among them.  But it has nothing to do, of course, with the numbers that I did have in my report.<br><br>[10/4/06 Troxel Trial Tr. 838:1-839:1] |
| Devices not "***imported***" into the United States | Q.    This $30 million of alleged damages are also ***not related to parts that were imported into the United States by Fairchild***; is that correct?<br>A.    That's correct.<br>* * *<br>Q.    And it's also true, isn't it, that this $30 million of alleged damages are ***not related to parts that were imported into the United States by anybody***?<br>A.    What was the previous question?  Oh, you said imported by Fairchild?<br>Q.    By Fairchild previously.<br>A.    No.  That's correct.<br><br>[10/4/06 Troxel Trial Tr. 840:4-20] |

845:3; Exh. B to Fairchild's Motion].  Power Integrations' Opposition fails to address this inconsistency.

2. **Fairchild's limited activities within the United States cannot support the jury's award of damages.**

Since it is cannot recover damages caused by the manufacture or sale of products outside the United States, Power Integrations' Opposition suggests (for the first time) that all $34 million in damages were tied to Fairchild's U.S. activities. This is directly contrary, however, to the evidence offered at trial in which Power Integrations admitted that at least $30 million of its alleged damages were caused by activities that occurred entirely outside of the United States.

Specifically, Power Integrations argues that these damages are appropriate since it has allegedly lost customers and profits to Fairchild. [*See* D.I. 646, p. 11]. Power Integrations did not, however, link any such lost customers or profits to any Fairchild activity within the United States. Rather, as set forth above, Power Integrations conceded at trial that at least $30 million of its damages were unrelated to any U.S. activity. [10/4/06 Troxel Trial Tr. 838-840]. Thus, to the extent that these damages exist at all, they must result from Fairchild's manufacture and sale of devices entirely outside of the United States. As a matter of law, such "damages" cannot be recovered because they do not relate to infringement of a U.S. patent. 35 U.S.C. § 284.

Recognizing the *de minimis* nature of Fairchild's alleged U.S. infringement, Power Integrations seeks to use its U.S. patents to prevent ***foreign*** competition from another U.S. company. The United States Supreme Court has expressly rejected this theory:

> We note that what is at stake here is the right of American companies to compete with an American patent holder in foreign markets. ***Our patent system makes no claim to extraterritorial effect…. To the degree that the inventor needs protection in markets other than those of this country, the wording of 35 U.S.C. §§ 154 and 271 reveals a congressional intent to have him seek it abroad through patents secured in countries where his goods are being used.*** Respondent holds foreign patents; it does not adequately explain why it does not avail itself of them.

*Deepsouth*, 406 U.S. at 531. The Supreme Court has repeatedly instructed patentees to file suit abroad if they believe that they have been injured by non-U.S. activities. *See e.g. Microsoft*, 127 S. Ct. at 1759 (if Power Integrations desires to prevent "infringement" in foreign countries, "its remedy today lies in obtaining and enforcing foreign patents."); *Deepsouth*, 406 U.S. at 531 ("To the degree that the inventor needs protection in markets other than those of this country, the wording of 35 U.S.C. §§ 154 and 271 reveals a congressional intent to have him seek it abroad

through patents secured in countries where his goods are being used.").

The case replied upon by Power Integrations – *Rite-Hite Corp. v. Kelley Corp.* – does not, indeed, cannot, contradict this Supreme Court precedent. Power Integrations admits that "*Rite-Hite* does not address extraterritorial application of U.S. patent law." [D.I. 646, p. 15].

In fact, *Rite-Hite* is completely inapplicable to this case. *Rite-Hite* addressed the entirely unrelated issue of whether a patentee could recover lost profits for lost sales of the ***patentee's*** devices that were not covered by the asserted patents. *Rite-Hite*, 56 F.3d at 1542. Fairchild has never disputed that Power Integrations' devices may practice Power Integrations' claims.

Rather than suggest that a patentee can recover damages caused by devices made and sold entirely outside the United States, *Rite-Hite* supports the fundamental idea that damages must be caused by infringement. "In accordance with the Court's guidance, we have held that the general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee ***because of the infringement***." *Rite-Hite*, 56 F.3d at 1545. Since Fairchild's activities outside the United States cannot infringe (35 U.S.C. § 271), Power Integrations cannot recover damages based on these activities.

Power Integrations seeks to expand the territorial reach of its U.S. patents by seeking damages for products that are made and sold outside the United States. By definition, such devices are not within the scope of Power Integrations' patents. 35 U.S.C. § 271. This was rejected by *Rite-Hite* when the Federal Circuit expressly cautioned against permitting a patent holder from "expanding the limits of the patent grant in violation of the antitrust laws... [such as by] attempting to exclude its competitors from making, using, or selling a product not within the scope of its patent." *Rite-Hite*, 56 F.3d at 1547.

The Federal Circuit has cautioned courts against the "horror of giving extraterritorial effect to United States patent protection." *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 17 (Fed. Cir. 1984). Unfortunately, that is precisely what the jury did when it awarded over $30 million in damages based on activities that Power Integrations admitted occurred entirely outside the United States.

3.     **Power Integrations admits that 82% of Fairchild's devices are never imported into the United States by anyone.**

Unable to prove infringement by Fairchild, Power Integrations speculates that 18% of the Fairchild devices that Power Integrations admits are manufactured and sold abroad are later imported into the United States by some unnamed third party. As explained in Fairchild's Opening Brief, there is absolutely no admissible evidence supporting this conclusion. [*See* D.I. 613, pp. 11-14]. Such speculative damages should be rejected. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996).

Were the Court, however, to credit Power Integrations' argument that 18% of the devices manufactured and sold outside the United States are later imported into the United States and were Fairchild somehow liable for this third party importation, ***Power Integrations' own argument and "evidence" serves as an absolute cap on the amount of its damages.*** By arguing that 18% are these foreign devices are imported, Power Integrations concedes that 82% of Fairchild's devices are ***never*** imported into the United States. At a minimum, Power Integrations' "worldwide" damages must be reduced by 82% to reflect this admission.

C.     **The Court Should Reduce The Damages To Reflect The Stipulated Amount of Fairchild's Activities Within The United States.**

Fairchild has never disputed that it has manufactured and imported a small quantity of accused devices within the United States. In fact, the parties stipulated on the record that Fairchild had manufactured $547,724 worth of accused products in the United States ([10/4/06 Trial Tr. 774:12-23]) and Fairchild admitted that it sold an additional $218,000 worth of accused products that were actually imported into the United States. [10/5/06 Keeley Trial Tr. 1269:10-1270:23]. ***This $765,724 worth of activity is the only infringement "within the United States"***. Power Integrations is not entitled to damages beyond this U.S activity.

One thing is clear – it is impossible for the $34 million awarded by the jury to be due to this $765,724 of U.S. infringement. Indeed, Power Integrations conceded that at least $30 million of this award was not due to products made in or imported into the United States. [10/4/06 Troxel Trial Tr. 838-840]. This portion of the jury's award is, thus, based on activity

that occurred entirely outside the United States and violates the fundamental principle of the territorial limit of a U.S. Patent. *Microsoft*, 127 S. Ct. at 1758. Since the Court must "remit the damage award to the highest amount the jury could 'properly have awarded based on the relevant evidence,'" the sole question is the amount of remitter in this case. *IPPV*, 191 F. Supp.2d at 573.

1.    **There is no evidence that Power Integrations' alleged lost profits were due to Fairchild's limited activities within the United States.**

At trial, Power Integrations argued that it was entitled to damages for lost profits due to lost sales and price erosion caused by Fairchild's "worldwide" sales. [10/4/06 Troxel Trial Tr. 835:15-21]. Even assuming that Power Integrations lost sales and lowered its prices in response to Fairchild's accused devices, there is absolutely no evidence that any of these lost profits resulted from Fairchild's minimal activities within the United States. Instead, any lost profits were due to Fairchild's manufacture and sale of products entirely outside the United States. Power Integrations concedes that activities entirely outside the United States do not infringe Power Integrations' patents and cannot result in damages. [D.I. 646, p. 1]

Specifically, Power Integrations limited its claims of lost profits for lost sales and price erosion to the "Samsung-related accounts" of a small number of Asian subcontractors. [D.I. 646, p. 5, n. 5]. Since there is no evidence that any of the relatively few devices manufactured in or imported into the United States were sold to these "Samsung-related accounts", Power Integrations cannot recover lost profits due to Fairchild's limited U.S. activities.[3]

2.    **Power Integrations is not entitled to speculative damages.**

Even had there been evidence indicating that Power Integrations lost sales or lowered its prices in response to products made, used, sold, offered for sale, or imported into the United States (there is not), Power Integrations is still not entitled to lost profit damages because Power Integrations conceded that there were available non-infringing alternatives. These non-

---

[3]        In its Opposition, Power Integrations states that "Fairchild manufactured the infringing chips *in the United States* to meet the needs of Samsung Wireless cell phone subcontractors." [D.I. 646, p. 4]. The record cited by Power Integrations to support this point, however, does not state – or even suggest – that these devices were manufactured for Samsung or Samsung subcontactors. [*See* 10/5/06 Beaver Trial Tr. 1023:4-16; 10/4/06 Choi Trial Tr. 772:23-773:15; and 10/4/06 Trial Tr. 774:12-23].

infringing alternatives included the products of Power Integrations' licensee (which, by definition, cannot infringe) as well as non-accused Fairchild devices, products from other competitors and entirely different technologies.

In its Opposition, Power Integrations concedes that the proper inquiry is whether its has proven that "'but for' infringement, it reasonably would have made sales that instead were made by the infringer." [D.I. 646, pp. 21-22]. Power Integrations cannot meet this burden because, during trial, its witnesses admitted that Power Integrations had lost sales to competitors other than Fairchild. [10/4/06 Renouard Trial Tr. 694:3-695:20; 696:9-16; 679:11-15; 689:13-690:8; 698:17-21; 699:1-3]. By definition, devices for which Power Integrations lost sales must have been acceptable alternatives in the eyes of the purchasers. Moreover, Power Integrations has never suggested that any of these devices infringe the asserted patents.

Power Integrations has conceded that there were "alternative solutions" for each of the Power Integrations devices that practiced the asserted patents. [10/4/06 Troxel Trial Tr. 864:4-866:15; DX1000]. While Power Integrations' opposition ignores this evidence, it should not be ignored by the Court. Because customers would continue to purchase these non-infringing alternatives in lieu of Power Integrations' higher priced devices, Power Integrations cannot recover damages for lost profits or lost sales:

> By the same token, a fair and accurate reconstruction of the "but for" market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed. Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether. The competitor in the "but for" marketplace is hardly likely to surrender its complete market share when faced with a patent, if it can compete in some other lawful manner.

*Grain Proc. Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).

As shown in Fairchild's Opening Brief, Power Integrations' claims of "future" lost profits are even more speculative. [*See* D.I. 613, p.20]. In its Opposition, Power Integrations failed even to address Fairchild's evidence. Instead, Power Integrations argued that entirely different aspects of its future lost profits were "conservative". [D.I. 646, pp. 17-19]. It is

irrelevant whether or not Power Integrations identified an appropriate amount of time or number of customers for which it sought future damages. Even if true, this does not excuse the undeniable fact that Power Integrations' entire theory of future lost profits is, in the words of Power Integrations' damages expert, a "forecast" based on an "assumption" and an "estimate". [10/4/06 Troxel Trial Tr. 869:15-871:3]. As a matter of law, damages must be based upon evidence, not conjecture. *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996). Consequently, Fairchild requests that the Court reject Power Integrations' "future" damages.

3.     <u>The jury determined that the reasonable royalty should be 15%.</u>

Since it is not entitled to lost profits for lost sales or price erosion, the highest amount the jury could properly award Power Integrations for infringement due to Fairchild's activities within the United States is a reasonable royalty. 35 U.S.C. § 284. The jury determined that the appropriate royalty rate was 15%. DI 415. Applying this royalty rate to the admitted royalty base of $765,724, the Court must reduce Power Integrations damages to $114,858.60 – the highest amount of damages properly supported by the evidence. *IPPV*, 191 F. Supp.2d at 573.

D.     <u>Fairchild Has Consistently Explained That Its Has Minimal U.S. Activity With Respect To The Accused Devices.</u>

There is an almost knee jerk reaction that $114,858.60 is "too little" for this case – that the parties would never have litigated had this been the limit of Fairchild's damages. Indeed, Power Integrations argued during its closing that such damages were "a joke" and the fact that Fairchild paid to defend itself proves that Fairchild's damages must be significant. [10/6/06 Trial Tr. 1528:24-1529:2]. This argument makes no sense. The fact that the parties have spent considerable resources and used weeks of the Court's time is due entirely to Power Integrations' stubborn refusal to accept that Fairchild is not be liable for damages caused by foreign activities.

From the start of this case, Fairchild has explained that its U.S. activities were "*de minimis*". [D.I. 8 (Fairchild's 12/9/04 Answer to Power Integrations' Complaint), ¶ 7]. Fairchild provided Power Integrations with discovery concerning these limited U.S. activities but Power Integrations demanded more. Power Integrations moved to compel discovery related to devices

11

manufactured and sold outside the United States arguing that "without the requested information, Power Integrations cannot fully investigate whether Fairchild customers imported the infringing Fairchild parts into the United States...." [D.I. 29, p. 4]. Citing the "policy in favor of liberal discovery", the Court granted Power Integrations' motion. [D.I. 54]. Rather than suggest that "worldwide" damages may be appropriate, however, the Court noted that "this information may ultimately be inadmissible...." [*Id.*, p. 4].

Tellingly, despite receiving this discovery, Power Integrations never proved that Fairchild's customers actually imported the accused products into the United States. Consequently, Fairchild moved for summary judgment that Power Integrations could not recover for damages for activities outside of the United States. [D.I. 218]. In response, Power Integrations claimed that there were "factual disputes" precluding summary judgment. [D.I. 233]. Accepting Power Integrations as its word, the Court denied Fairchild's motion. [D.I. 266, pp. 3-4]. Again, the Court never agreed that "worldwide" damages were appropriate.

As trial approached, it became increasingly clear that, contrary to its representations, Power Integrations had no evidence that Fairchild should be liable for devices manufactured and sold outside the United States. Therefore, Fairchild moved in limine to preclude Power Integrations from confusing the jury by seeking damages for activities occurring "entirely outside the U.S." [D.I. 356]. In response, Power Integrations claimed that this was not the proper subject for motion in limine. [D.I. 363, p. 2]. The Court agreed and denied Fairchild's motion for this procedural reason. [D.I. 384, p. 2]. The single sentence denying Fairchild's motion did not address its substantive merits. [*Id.*]

Therefore, the Court did not (as Power Integrations claims) "repeatedly" hold that Power Integrations can recover damages for non-U.S. activities. [*See* D.I. 646, p. 5, n. 3]. To the contrary, the Court accepted Power Integrations' representations that Power Integrations would produce evidence proving that it was entitled to damages for such extraterritorial actions and gave Power Integrations all the discovery and time Power Integrations claimed to need. At the end of the day, however, with trial completed and all of the evidence in, it is clear that Power

Integrations has no such evidence. Instead, as Fairchild feared from the start, Power Integrations confused the jury into awarding damages for "worldwide" infringement unrelated to any manufacture, use, sale, offer for sale, or importation of the accused devices in the United States.

### E.    Power Integrations' New Allegations Of Indirect Infringement Are Contrary To The Law And The Facts.

During trial, Power Integrations' entire theory of damages was premised on the notion that "worldwide sales is the only way to properly compensate Power Integrations." [10/4/06 Troxel Trial Tr. 835:15-21]. In its Opposition, however, Power Integrations concedes that it is not, in fact, entitled to damages for activities outside the United States. [D.I. 646, p. 1]. Unable to reconcile these contradictory statements, Power Integrations' Opposition advances an entirely new damages theories in an effort to salvage its improper award – that Fairchild induced or contributed to the infringement of others. [See D.I., pp. 19-21]. Since Power Integrations' new theory is contradicted by the evidence and contrary to the law, Power Integrations' damages must be rejected.

Power Integrations summarizes its "proof" of indirect infringement as follows:

> Taken as a whole, this evidence demonstrates that Fairchild knew the chips were going to be imported into the US, intended for it to happen, and knew it was certain those chips would use the features found to infringe.

[D.I. 646, p. 21]. Even were this true, it does not constitute inducement to infringe since there is no alleged action by Fairchild to encourage any importation (Power Integrations argues that Fairchild "knew" the importation would occur, not that Fairchild encouraged it). 35 U.S.C. § 271(b). Similarly, this "evidence" does not constitute contributory infringement since there is no suggestion that Fairchild sold within or imported into the United States a component of a patented machine (instead, Power Integrations argues that these devices were imported by others). 35 U.S.C. § 271(c). As a matter of law, Fairchild is not liable for indirect infringement.

### a.    Power Integrations admitted that $30 million of its damages were unrelated to products imported into the United States.

Power Integrations cannot justify its almost $34 million of purported damages based upon a theory that Fairchild induced or contributed to third party importation of the accused

devices since, according to Power Integrations, over $30 million of these damages were due to

devices that were ***never imported into the United States***:

> Q.  This $30 million of alleged damages are also ***not related to parts that were imported into the United States by Fairchild***; is that correct?
>
> A.  That's correct.
>
> * * *
>
> Q.  And it's also true, isn't it, that this $30 million of alleged damages are ***not related to parts that were imported into the United States by anybody***?
>
> A.  What was the previous question?  Oh, you said imported by Fairchild?
>
> Q.  By Fairchild previously.
>
> A.  No.  That's correct.

[10/4/06 Troxel Trial Tr. 840:4-20].  Since, as Power Integrations admits, these devices have

never been imported into the United States by anyone, Fairchild cannot have induced or

contributed to their importation.  Because there is no underlying act of direct infringement (no

importation into the United States by any party), Fairchild's "indirect infringement" cannot have

resulted in at least these $30 million in damages.

b.  **There is no evidence that Fairchild actively induced another to import the accused devices.**

Moreover, as a matter of law, "a defendant's liability for indirect infringement must

relate to the ***identified*** instances of direct infringement." *Dynacore Holdings Corp. v. U.S.

Philips Corp.*, 363 F.3d 1263, 1274-76 (Fed. Cir. 2004) (emphasis added).  This conduct must

also be "active", as required by 35 U.S.C. § 271(b) and the jury instructions.  Thus, for Fairchild

to be liable for indirect infringement, Power Integrations must prove both (i) an underlying act of

direct infringement (importation by a third party) ***and*** (ii) that Fairchild actively induced that act

of direct infringement.  35 U.S.C. § 271(b).  Power Integrations cannot prove either.

Power Integrations' entire theory of induced infringement is that Fairchild encourages

others to import the accused devices by "affirmatively indemnifying foreign customers like

Samsung against U.S. infringement claims."  [D.I. 646, p. 11].  As a matter of law, this does not

constitute inducement to infringe since there is absolutely no evidence linking the alleged

inducement (the indemnification) to any underlying act of direct infringement (the alleged

14

importation into the United States).  *Dynacore*, 363 F.3d at 1274-76.

**REDACTED**

It is true that, as is common in the industry, Fairchild provides a "standard indemnification agreement" to all of its customers.  [10/5/06 Beaver Trial Tr. 991:1-11].  ***There is no evidence, however, that any customers that received such an indemnification ever imported the accused devices into the United States***.  Without such an act of direct infringement, Fairchild cannot be liable for active inducement.  35 U.S.C. § 271(b).

Power Integrations breezily dismisses the requirement that it show actual importation by a third party by arguing that it is "well known" that Samsung cell phone chargers are imported into the United States.  Setting aside the obvious issue that there is no proof that the imported chargers include any Fairchild product, there is no evidence that the party that actually imports these cell phone chargers was ever indemnified by Fairchild.

This is not a trivial quibble.  While Fairchild offers industry-standard indemnification to its customers, it does not indemnify its customers' customers – the entities that may (or may not) ultimately import the accused devices into the United States.  For instance,

**REDACTED**

If that particular store is located in the United States, either the distributor or the store may import the charger into the United States.  That act of importation, however, was performed by a third party entirely unrelated to Fairchild and which has not been indemnified by Fairchild.

Thus, even were the Court to accept Power Integrations' argument that indemnification constitutes active inducement to importation, there is no evidence that (i) any party indemnified by Fairchild actually imported the accused products into the United States or (ii) that any party that imported the accused products into the United States was indemnified by Fairchild.  Without such proof, Fairchild is not liable for actively inducing infringement as a matter of law.

c.    <u>**As a matter of law, Fairchild did not "contribute" to the infringement of others.**</u>

Power Integrations' argument that Fairchild is guilty of "contributing to importation of

15

infringing parts into the United States" is absurd. [D.I. 646, p. 11]. There is no such thing as "contributing to importation."

One can only contributorily infringe if he or she (i) "offers to sell or sells within the United States" or (ii) "imports into the United States" a component of a patented system:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Power Integrations claims that Fairchild "contributed to the importation" of others. Thus, Power Integrations cannot be arguing that Fairchild has (i) offered for sale or sold these devices "*in the United States*" (since, if that were the case, there would be no need for subsequent importation) or (ii) that Fairchild (and not the unnamed "other") imports the devices into the United States. Thus, as a matter of law, it is impossible to contributorily infringe by contributing to the importation by others. *Id.*

Not only is Power Integrations' theory of contributory infringement legally impossible, it is contrary to all of Power Integrations' own evidence. Contributory infringement requires that "a *component* of a patented machine" be sold or imported. All of the evidence Power Integrations presented at trial was that the accused Fairchild devices *alone* met every element of each asserted claim. If so, the chips are, themselves, the patented device and not merely a component of it. If Power Integrations' argument were accepted, then Fairchild could not be liable for direct infringement since its devices must be mere components and do not practice each element of any claim.

III.    **CONCLUSION.**

The jury awarded Power Integrations the damages it sought. During trial, Power Integrations' witnesses admitted that these damages were not limited to devices made, used, sold, or offered for sale in the United States or imported into the United States. Instead, Power Integrations sought – and received – "worldwide" damages allegedly caused by the devices that

were manufactured and sold outside the United States and never imported into the United States by Fairchild or anyone else. In its Opposition, Power Integrations admits that it cannot recover damages for such activities that occurred entirely outside of the United States. Thus, the Court must reduce the damages award to the highest amount properly supported by the evidence.

The uncontested evidence shows that Fairchild has only manufactured, sold or imported $765,724 of accused products within the United States. Thus, Fairchild respectfully requests that the Court apply the 15% royalty determined by the jury and reduce Power Integrations' damages to $114,858.60 or, in the alternative, conduct a new trial on the issue of damages.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: January 16, 2008

187355.v1

17

# EXHIBIT A

# HARMON

## ON

# PATENTS

## BLACK-LETTER LAW
## AND COMMENTARY

Robert L. Harmon

§3.35  Infringement of MPF Claims; Relation to
       Traditional Doctrine of Equivalents (DOE) . . .  120
§3.36  MPF Limitations: Construction in General . . .  121
§3.37  Identification of MPF Limitations . . . . . . . . .  122
§3.38  Identification of Specified Function . . . . . . . . .  124
§3.39  Identification of Corresponding Structure . . . .  124
§3.40  Method Claims: Step-Plus-Function
       Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  126
  I.  Adequacy of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . .  128

4. Direct Infringement: Literal Infringement . . . . . . . . . . . . .  129

  A. Fundamental Concepts . . . . . . . . . . . . . . . . . . . . . . . . . . .  130
      §4.1   Direct Infringement: Statutory Definition . . . .  130
      §4.2   Direct Infringement as a Tort; Intent;
             Copying . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  131
      §4.3   Direct Infringement: Territorial Scope . . . . . . .  132
      §4.4   Direct Infringement: Chronological Scope . . . .  134
  B. Acts That Constitute Direct Infringement . . . . . . . . . .  136
      §4.5   Single Activity and Act Sufficient . . . . . . . . . . .  136
      §4.6   Making as Direct Infringement . . . . . . . . . . . . .  136
      §4.7   Using as Direct Infringement . . . . . . . . . . . . . .  136
      §4.8   Sale as Direct Infringement . . . . . . . . . . . . . . .  136
      §4.9   Offer to Sell as Direct Infringement;
             Threatened Infringement . . . . . . . . . . . . . . . . . .  137
      §4.10  Importation as Direct Infringement . . . . . . . . .  138
      §4.11  Process Patents; Products of Patented
             Processes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  138
      §4.12  Product-By-Process Claims . . . . . . . . . . . . . . . .  139
  C. Literal Infringement; Identity . . . . . . . . . . . . . . . . . . . .  140
      §4.13  Claim vs. Accused Infringement . . . . . . . . . . . .  140
      §4.14  The All-Limitations (or All-Elements) Rule . . .  140
      §4.15  Additions and Improvements; Separate
             Patentability . . . . . . . . . . . . . . . . . . . . . . . . . . .  141
      §4.16  Imperfect Practice . . . . . . . . . . . . . . . . . . . . . . .  142
      §4.17  Capability of Infringement . . . . . . . . . . . . . . . .  142
      §4.18  Infringement of MPF Claims; 35 U.S.C.
             §112 ¶6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  143
  D. Miscellaneous Rules of Decision . . . . . . . . . . . . . . . . . .  144
      §4.19  Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . .  144
      §4.20  Infringement of One Claim Sufficient . . . . . . .  144
      §4.21  Dependent vs. Independent Claims . . . . . . . . .  144
  E. Repair vs. Reconstruction . . . . . . . . . . . . . . . . . . . . . . .  145
      §4.22  Repair Not an Act of Infringement . . . . . . . . . .  145
      §4.23  Replication or Reconstruction Forbidden . . . . .  146
      §4.24  Critical Commentary: Reconstruction:
             Impossible to Define and Almost Never
             Found . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  147

He was willing to inject intent into the direct infringement inquiry in certain circumstances. Thus, with respect to the intended use:

> To make a patented article is not *ipso facto* an infringement. The intent of the maker here determines the legal complexion of his act, the purpose of the manufacture being an essential element of the transaction.[6]

But in the end:

> Neither the motive prompting the infringing act, nor the knowledge of his own wrong-doing on the part of the offender, are elements to be considered. Where a specific intent is necessary to constitute the infringing act, it must of course be present, but otherwise the exterior action is alone regarded. The injury to the patentee and not the moral guilt of the infringer is the basis and the measure of responsibility, and though the infringer were a lunatic the rights and remedies of the patentee would be the same.[7]

### §4.3    *Direct Infringement: Territorial Scope*

**A U.S. patent has, as a general rule, no extraterritorial effect. For infringement purposes, the "United States" includes its territories and possessions. 35 U.S.C. §100(c).[8]**

In general, the patent laws "do not, and were not intended to, operate beyond the limits of the United States."[9] In recent years, however, Congress has extended the territorial scope of U.S. patents in several important respects. In 1988, it enacted 35 U.S.C. §271(g), which makes it an act of infringement to import, sell or offer to sell, or use, in the United States, the product of a process covered by a U.S. patent, even though the process is practiced, and the product made, abroad. See §4.11. In 1984, dissatisfied with the Supreme Court's strict application[10] of the rule that there can be no liability for inducement of infringement or contributory infringement in the absence of an act of direct infringement in the United States, it enacted 35 U.S.C. §271(f). See §6.2.

Analysis of the territorial scope of a patent for infringement purposes requires focus on the separate acts of infringement specified by §271(a). Thus, one who acquires infringing products in the United

---

[6] 3 ROBINSON ON PATENTS §903.

[7] 3 ROBINSON ON PATENTS §921.

[8] "The right conferred by a patent under our law is confined to the United States and its Territories...and infringement of this right cannot be predicated on acts wholly done in a foreign country." *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.,* 235 U.S. 641, 650 (1915).

[9] *Brown v. Duchesne,* 60 U.S. 183, 195 (1856). The patent system "makes no claim to extraterritorial effect." *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 531, 173 USPQ 769 (1972).

[10] See *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 173 USPQ 769 (1972).

States and then resells them in a foreign country does not infringe.[11] Neither export from the United States nor use in a foreign country of a product covered by a U.S. patent constitutes infringement.[12] On the other hand, one who purchases a product abroad infringes a U.S. patent on that product if he or she uses or sells it in the United States.[13] And where the claimed invention is made in this country, it is irrelevant where it is sold.[14] Ordinarily, §271(a) can be applied without difficulty. In cases where the accused infringer's conduct does not precisely map to the structure of §271(a), a patentee may resort to other parts of §271 to make its case. The various subsections of §271, (a) through (g), address different infringement scenarios. For example, subsection (f) speaks to the manufacture of substantial portions of a patented invention within the United States for export, assembly, and use abroad. Subsection (g), on the other hand, addresses the foreign use of a patented process to manufacture a product that is subsequently imported into the United States. These actions equally constitute direct infringement of a patent under the statute.[15]

The use of a patented invention in a foreign vessel, aircraft, or vehicle that is temporarily or accidentally in the United States does not, under certain circumstances, constitute infringement.[16]

---

[11]*Dowagiac Mfg. Co. v. Minnesota Moline Plow,* 235 U.S. 641 (1915). The territorial reach of a patent right is limited, so that §271(a) is only actionable against patent infringement that occurs within the United States. *NTP Inc. v. Research in Motion Ltd.,* 392 F.3d 1336, 73 USPQ2d 1231, 1253 (Fed. Cir. 2004).

[12]*Johns Hopkins Univ. v. Cellpro Inc.,* 152 F.3d 1342, 47 USPQ2d 1705, 1723 (Fed. Cir. 1998).

[13]*Boesch v. Graff,* 133 U.S. 697 (1890).

[14]See *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 220 USPQ 929, 941 (Fed. Cir. 1984).

[15]*NTP Inc. v. Research in Motion Ltd.,* 392 F.3d 1336, 73 USPQ2d 1231, 1253 (Fed. Cir. 2004). In this case, the court addressed the question of whether the location abroad of a component of an accused system, where that component facilitates operation of the accused system in the United States, prevents the application of §271(a) to that system. On the particular facts of the case, it concluded that when two domestic users communicate by email via their Black-Berry devices, their use of the BlackBerry system occurs "within the United States," regardless of whether the messages exchanged between them may be transmitted outside of the United States at some point along their wireless journey.

[16]*Brown v. Duchesne,* 60 U.S. (19 How.) 183 (1856). The *Brown* holding was codified in 35 U.S.C. §272. See P.J. Federico, "Commentary on the New Patent Act," *reprinted at* 75 J. PAT. & TRADEMARK OFF. SOC'Y 162, 214 (1993). "Foreign vessels, though within our territory, are not within the jurisdiction of the United States, and the use thereon of articles procured abroad is not an infringement." 3 ROBINSON ON PATENTS §909. Prior to 2004, there were only two cases in which federal courts applied §272. In *Cali v. Japan Airlines Inc.,* 380 F.Supp. 1120, 184 USPQ 293 (E.D.N.Y. 1974), *aff'd,* 535 F.2d 1240 (2d Cir. 1975), it was held that the use of a patented invention in the jet engines of planes belonging to international air carriers during their flights to and from the United States and their overflights of the United States in the course of the regular prosecution of their scheduled air services was within the scope of the noninfringing uses specified in §272. In *Hughes Aircraft Co. v. United States,* 29 Fed. Cl. 197, 29 USPQ2d 1974 (1993), the Court of Federal Claims held that spacecraft brought into the United States for launch into outer space prior to 1981 were outside the scope of §272, reasoning that when a spacecraft is delivered to the United States for the purpose of allowing the United States to launch it, the spacecraft is the cargo that is brought here for an essential use, not a "vessel" or "vehicle" which enters the United States as a means of conveyance. (In 1981, Congress enacted 42 U.S.C. §2457(k), which provides that "[a]ny object intended for launch, launched, or assembled in outer space shall be considered a vehicle for the purpose of section 272.") In 2004, the Federal Circuit held that railway cars that embodied the claimed invention and that were used to transport lumber from Canada to the United States and usually returned to Canada