IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,     )
      )     **REDACTED**
     Plaintiff,     )     **PUBLIC VERSION**
      )
v.     )     C.A. No. 04-1371-JJF
      )
FAIRCHILD SEMICONDUCTOR     )
INTERNATIONAL, INC., and FAIRCHILD     )
SEMICONDUCTOR CORPORATION,     )
      )
     Defendants.     )

## FAIRCHILD'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL REGARDING INVALIDITY OF U.S. PATENT NO. 4,811,075

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Dated:  January 16, 2008

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................... 1

    A.   First, Power Integrations admitted at trial and has never disputed that all elements of Claim 1 of the '075 Patent can be found in the prior art Beasom '173 Patent, filed 15 months earlier. ............................................. 1

    B.   Second, Power Integrations admitted at trial and has never disputed that Klas Eklund, the named inventor of the '075 Patent, did not reduce his invention to practice prior to the filing of the Beasom '173 Patent. ....................... 1

    C.   Third, Power Integrations admits in its brief that any "diligence" by Dr. Eklund toward a later reduction to practice is irrelevant to whether the '075 Patent is invalidated by the Beasom '173 Patent. ............................................ 1

II.  ARGUMENT ........................................................................................................... 2

    A.   '075 Patent Claim 1 Is Invalid Under 35 U.S.C. §102(e) As A Matter Of Law ................................................................................................................ 2

        1.   Power Integrations Does Not Dispute That The Beasom '173 Patent Contains All Elements Of Claim 1 Of The '075 Patent. ................. 2

        2.   Power Integrations Has Not Shown That Dr. Eklund "Invented" All Elements Of Claim 1 Prior To The Filing Of The Beasom '173 Patent. ................................................................................................ 2

            a.   Power Integrations Was Required To Show That Dr. Eklund Actually Reduced To Practice Prior To The Filing Of The Beasom '173 Patent, But Admits That Eklund Did Not Do So. ................................................................................. 2

            b.   Pfaff v. Wells Electronics Is Inapplicable And Does Not Support Power Integrations' Argument That "Conception Alone" Purportedly Constitutes "Invention." ................................ 4

            c.   Even If Pfaff v. Wells Electronics Applied, Power Integrations Could Not Meet The Standard It Establishes. ............ 6

        3.   Power Integrations Failed To Establish Eklund's "Conception" Of All Elements Of Claim 1 Prior To The Filing Of The Beasom '173 Patent. ................................................................................................ 7

    B.   Claim 1 Is Invalid Under 35 U.S.C. §102(g) As A Matter Of Law. .................... 10

        1.   Based On The Undisputed Facts, Mr. Beasom Both Conceived And Reduced The Invention Of Claim 1 To Practice Prior To Dr. Eklund. ........................................................................................... 10

        2.   Even If Dr. Eklund Conceived Of The Invention Of Claim 1 In January 1985, Mr. Beasom Is Still The First Inventor Pursuant To 35 U.S.C. §102(g). ................................................................................ 11

## TABLE OF CONTENTS
### (continued)

**Page**

      a.   Mr. Beasom Conceived Of The Invention Of Claim 1 In April 1984, Many Months Prior To The Earliest Alleged Date Of Conception By Dr. Eklund ............................................. 11

      b.   Mr. Beasom Actually Reduced The Invention Of Claim 1 To Practice In September 1985. ................................................... 14

      c.   Power Integrations Has Not Demonstrated Or Corroborated That Dr. Eklund Was "Diligent" In Reducing His Invention To Practice. .................................................................................. 14

C.   The '075 Patent Is Invalid Under 35 U.S.C. §103 As A Matter Of Law ............. 15

   1.   Claim 1 Of The '075 Patent Is Obvious In Light Of Beasom Alone Or In Combination With Ludikhuize And Other Prior Art ..................... 15

   2.   Claim 5 Of The '075 Patent Is Obvious In Light Of Prior Art Combining High And Low Voltage Devices On The Same Chip .......... 17

D.   Fairchild Is Entitled To A New Trial Because Power Integrations Surprised Fairchild At Trial With Previously Undisclosed Expert Theories Regarding Validity Of The '075 Patent ............................................................... 19

III.   CONCLUSION ............................................................................................................. 20

**TABLE OF AUTHORITIES**

**Page**

### FEDERAL CASES

*Aktiebolaget Karlstads Mekaniska Werkstad* v. *U.S. Int'l Trade Comm.*,
705 F.2d 1565 (Fed. Cir. 1983)............................................................................3

*Am. Standard Inc.* v. *Pfizer Inc.*,
722 F. Supp. 86 (D. Del. 1989)...........................................................................16

*Baychar, Inc., LLC* v. *Burton Corp.*,
2006 U.S. Dist. LEXIS 52918 (D. Me. 2006)...................................................4, 8

*Bosies* v. *Benedict*,
27 F.3d 539 (Fed. Cir. 1994)............................................................................8, 14

*Burroughs Wellcome Co.* v. *Barr Lab.*,
40 F.3d 1223 (Fed. Cir. 1994)..............................................................................9

*Clark Thread Co.* v. *Willimantic Linen Co.*,
140 U.S. 481 (1896).............................................................................................5

*Coffin* v. *Ogden*,
85 U.S. 120 (1873)...............................................................................................5

*Drelles* v. *Metro. Life Ins. Co.*,
357 F.3d 344 (3d Cir. 2003).................................................................................3

*Ecolochem, Inc.* v. *Southern Cal. Edison Co.*,
227 F.3d 1361 (Fed. Cir. 2000)..........................................................................19

*E. I. Du Pont de Nemours & Co.* v. *Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988)..........................................................................16

*Finnigan Corp.* v. *Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999)............................................................................8

*Invitrogen Corp.* v. *Clontech Labs., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005)..........................................................................12

*KSR* v. *Teleflex*,
127 S. Ct. 1727 (2007)........................................................................................16

*Kardulas* v. *Florida Machine Products Co.*,
438 F.2d 1118 (5th Cir. 1971)..............................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Leapfrog Enters. v. Fisher-Price, Inc.*,
485 F.3d 1157 (Fed. Cir. 2007)................................................................17, 19

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
2006 U.S. Dist. LEXIS 9353 (N.D. Cal. 2006) .........................................................4

*Mikus v. Wachtel*,
542 F.2d 1157 (CCPA 1976) ............................................................................9

*New Idea Farm Equip. Corp. v. Sperry Corp.*,
916 F.2d 1561 (Fed. Cir. 1990).........................................................10, 14

*Newell Cos. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988)..........................................................17, 19

*OddzOn Products, Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997)................................................................16

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006).............................................................19

*Ortho-Mcneil Pharm., Inc. v. Kali Labs., Inc.*,
482 F. Supp. 2d 478 (D.N.J. 2007) .......................................................12

*Pfaff v. Wells Electronics, Inc.*,
525 U.S. 55 (1998).................................................................4, 5, 6

*Richardson-Vicks, Inc. v. Upjohn Co.*,
122 F.3d 1476 (Fed. Cir. 1997).........................................................16, 19

*Seymour v. Osborne*,
11 Wall. 516, 552 (1870) ......................................................................5

*Singh v. Brake*,
222 F.3d 1362 (Fed. Cir. 2000)................................................................8

*Singh v. Brake*,
317 F.3d 1334 (Fed. Cir. 2002).............................................................14

*Space Systems/Loral v. Lockheed Martin Corp.*,
271 F.3d 1076 (Fed. Cir. 2001).........................................................5, 6, 7

*Stern v. Trs. of Columbia Univ.*,
434 F.3d 1375 (Fed. Cir. 2006)................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Sun Studs, Inc.* v. *ATA Equip. Leasing, Inc.*,
   872 F.2d 978 (Fed. Cir. 1989).................................................................................3, 8

*Tyler Refrigeration Corp.* v. *Kysor Industrial Corp.*,
   601 F. Supp. 590 (D. Del. 1985)...................................................................................4

*Bennett v. Sonnenfeld*,
   28 C.C.P.A. 951, 958 (CCPA 1941) ..........................................................................15

## FEDERAL STATUTES

35 U.S.C. §102 ...............................................................................................................8

35 U.S.C. §102(b)..................................................................................................1, 4, 5, 6

35 U.S.C. §102(e) ............................................................................................1, 2, 3, 4, 5, 8

35 U.S.C. §102(f).........................................................................................................16

35 U.S.C. §102(g)....................................................................................................*passim*

35 U.S.C. §103......................................................................................................15, 17

Fed. R. Evid. 702 .......................................................................................................12

Fed. R. Evid. 703 .......................................................................................................12

I.    **INTRODUCTION**

At trial and in its opposition to Fairchild's motion for judgment as a matter of law, Power Integrations has made a number of extremely significant admissions, conceding away that U.S. Patent No. 4,811,075 (the "'075 Patent") is invalid pursuant to 35 U.S.C. §§102(e), 102(g) and 103, as a matter of law. Nowhere is this more straightforward and clear than in the context of Fairchild's Section 102(e) invalidity argument:

A.    First, Power Integrations admitted at trial and has never disputed that all elements of Claim 1 of the '075 Patent can be found in the prior art Beasom '173 Patent, filed 15 months earlier.

B.    Second, Power Integrations admitted at trial and has never disputed that Klas Eklund, the named inventor of the '075 Patent, did not reduce his invention to practice prior to the filing of the Beasom '173 Patent.

C.    Third, Power Integrations admits in its brief that any "diligence" by Dr. Eklund toward a later reduction to practice is irrelevant to whether the '075 Patent is invalidated by the Beasom '173 Patent.

These admissions alone establish the invalidity of the '075 Patent. Under settled law, in order to demonstrate that Dr. Eklund "invented" before the Beasom '173 Patent, Power Integrations was required to show that he actually reduced the invention to practice. Because Power Integrations admits that he did not do so, the '075 Patent is invalid.

Faced with a finding of invalidity, Power Integrations attempts to develop an entirely new and radical theory of law, arguing incorrectly that Dr. Eklund's "conception alone" constitutes "invention." The dispute comes down to this single legal issue. Power Integrations is wrong. First, it purports to base its theory on a case solely involving 35 U.S.C. §102(*b*) and which is thus inapposite concerning §102(*e*). Second, the case does not even support Power Integrations' argument as it held that *in addition to conception* an inventor must show either reduction to practice OR that the invention is so far along that it is "ready for patenting." Finally, having relied on this case, Power Integrations does not even *attempt* to show that Eklund's invention was "ready for patenting" prior to the Beasom '173 Patent—neither at trial, nor in its brief. This is because it cannot make such a showing. The '075 Patent is invalid as a matter of law.

## II.   ARGUMENT

### A.   '075 Patent Claim 1 Is Invalid Under 35 U.S.C. §102(e) As A Matter Of Law

#### 1.   Power Integrations Does Not Dispute That The Beasom '173 Patent Contains All Elements Of Claim 1 Of The '075 Patent

In its opposition, Power Integrations does not dispute that every element of Claim 1 of the '075 Patent is found in the Beasom '173 Patent, which was filed 15 months earlier. [Opp. at pp. 3-7] Thus, facially, Claim 1 is anticipated by the Beasom '173 Patent. The only way that Power Integrations' could overcome this prima facie showing was to prove that Dr. Eklund's alleged "invention" occurred prior to the filing of the '173 Patent. However, as discussed below and in Fairchild's opening brief, Power Integrations has failed, as a matter of law, to make a legally sufficient showing of Dr. Eklund's "invention" prior to the filing of the '173 Patent. Thus, the '173 Patent invalidates Claim 1 of the '075 Patent pursuant to 35 U.S.C. §102(e).

#### 2.   Power Integrations Has Not Shown That Dr. Eklund "Invented" All Elements Of Claim 1 Prior To The Filing Of The Beasom '173 Patent

In its opposition, Power Integrations does not dispute that Dr. Eklund failed to reduce the invention of Claim 1 to practice prior to the filing of the Beasom '173 Patent. [Opp. at pp. 3-7] Further, Power Integrations admits that any alleged "diligence" by Dr. Eklund toward an eventual reduction to practice does not have "any bearing on the inquiry under section 102(e)." [Opp. at p. 6] Instead, Power Integrations argues that it purportedly must *only* show that Dr. Eklund "conceived" prior to the filing of the '173 Patent. This is incorrect as a matter of law. In order to prove prior "invention," Power Integrations must show that Dr. Eklund *both* conceived and actually reduced his invention to practice prior to the filing of the Beasom '173 Patent. Because Power Integrations admits that Dr. Eklund did not reduce to practice before the filing of the Beasom '173 Patent, Claim 1 of the '075 Patent is invalid as a matter of law.

##### a.   Power Integrations Was Required To Show That Dr. Eklund Actually Reduced To Practice Prior To The Filing Of The Beasom '173 Patent, But Admits That Eklund Did Not Do So.

In order for Power Integrations to overcome the '173 Patent's effect as invalidating prior

2

art under 35 U.S.C. §102(e), it must show that Dr. Eklund actually reduced the invention to practice prior to the filing date of the Beasom '173 Patent. The Federal Circuit has made this requirement clear by holding that an earlier patent had prior art effect under Section 102(e) where its filing date was before the actual reduction to practice of the invention in the challenged patent—without even considering the date of conception:

> The [challenged patent] matured from an application which was a continuation-in-part of an application filed December 3, 1971. The presiding officer found that the invention described and claimed in the [challenged patent] was actually reduced to practice as early as June 7, 1970. The [prior art patent], just discussed, is a reissue of patent No. 3,607,625 dated September 21, 1971, and applied for January 17, 1968. The [prior art patent] is therefore prior art with respect to the [challenged patent] by virtue of 35 U.S.C. 102(e).

*Aktiebolaget Karlstads Mekaniska Werkstad v. U.S. Int'l Trade Comm.*, 705 F.2d 1565, 1576 (Fed. Cir. 1983) (Rich, J.).[1] In other words, regardless of whether the challenged patent was conceived first, it was invalid because it was not reduced to practice (either actual or constructive) before the prior art patent.

Recently, in a case involving a prior art patent (the "'610 Patent") asserted against the patent-in-suit (the "'302 Patent"), the rule was succinctly stated:

> "First, in order to ascertain whether the '610 Patent anticipates the '302 Patent under 35 U.S.C. §102(e), the Court must make two determinations: (1) *whether the '302 Patent was actually reduced to practice prior to the filing date for the '610 Patent*; and (2) whether the '610 Patent discloses the same invention."

---

[1] Power Integrations' reliance on dicta from *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978 (Fed. Cir. 1989) is misplaced. In that case, (1) the plaintiff argued that the asserted patent and the prior art patent "are not the same," (2) the jury upheld validity of the asserted patent at trial and (3) thereafter, the District Court held that the prior art patent "does not describe or claim the identical invention" as the asserted patent. *Id.* at 983. The Federal Circuit upheld that finding, observing that the prior art patent "did not teach the positioning, scanning, and plotting steps" of the asserted patent "and that this gap was not plugged by other prior art references." *Id.* at 984. Separately, in commenting on arguments that there were errors at trial—*and without citing any authority at all*—the Court made several ambiguous remarks regarding evidence relevant to pre-date a Section 102(e) reference. However, immediately after those remarks, the Court held that "despite" the alleged errors, "the jury held that the patents had not been proved invalid." *Id.* at 984. In other words, the basis of the decision was that the §102(e) prior art patent did not invalidate the asserted patent in the first place (i.e. they were "not the same"). The Court's extraneous comments regarding evidence relevant to pre-date a Section 102(e) reference were thus irrelevant to the holding and constitute non-binding dicta. *See e.g. Drelles v. Metro. Life Ins. Co.*, 357 F.3d 344, 348 (3d Cir. 2003) (dictum is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.")

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 2006 U.S. Dist. LEXIS 9353, *100 (N.D. Cal. 2006) (emphasis added); *see also Tyler Refrigeration Corp. v. Kysor Industrial Corp.*, 601 F. Supp. 590, 600 (D. Del. 1985) (whether asserted patent was anticipated by prior art patent under 35 U.S.C. §102(e) turned on whether the invention of the asserted patent "was reduced to actual practice before the [prior art patent] filing date"); *Baychar, Inc., LLC v. Burton Corp.*, 2006 U.S. Dist. LEXIS 52918, *20-21 (D. Me. 2006) (same).[2]  Power Integrations was required to show an actual reduction to practice prior to the filing of the '173 Patent, admits that it did not, and thus Claim 1 of the '075 Patent is invalidated by the '173 Patent.

### b.    *Pfaff v. Wells Electronics* Is Inapplicable And Does Not Support Power Integrations' Argument That "Conception Alone" Purportedly Constitutes "Invention."

Faced with the indisputable invalidity of Claim 1, as discussed above, Power Integrations argues for an entirely new theory of law in the Section 102(e) context, purporting to rely on the Supreme Court's opinion in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998).  That case does not support Power Integrations' argument that one can prove invention prior to a 35 U.S.C. §102(e) reference merely by proving conception.  In *Pfaff*, the Court considered 35 U.S.C. §102*(b)*—*not* §102*(e)*.  Section 102(b) provides that no person is entitled to a patent if the invention was "on sale" more than one year prior to filing of their application.  The issue was whether an invention could be "on sale" before it was reduced to practice.

Given the particular policies of the Section 102(b) bar, the Court held that the invention could be "on sale," for purposes of Section 102(b), as long as it was (1) conceived and (2) either reduced to practice or "ready for patenting." *Id.* at 67-68.  In *Pfaff* the Court was addressing the policies of Section 102(b) that an inventor should not be allowed to commercialize his own

---

[2] The rule for pre-dating  §102(e) references has long been in existence, even prior to the establishment of the Federal Circuit. *See e.g. Kardulas v. Florida Machine Products Co.*, 438 F.2d 1118, 1121 (5th Cir. 1971) (finding that to antedate a §102(e) reference, "[t]he date of invention cannot be carried back to that of the earliest mental conception. There must be a disclosure sufficient to enable one with ordinary skill in the art to *reduce the invention to practice*"; requiring corroboration of earlier invention).

4

invention prior to one year before filing his application.[3] *Id.* at 64. Entirely different policies are at stake in the Section 102(e) context, where priority of invention as between two inventors (both of whom obtained patents) is at issue. Because Section 102(b) and the "on sale" bar are not at issue in this case, *Pfaff* is entirely inapposite.

Further, *Pfaff* does not stand for the proposition advanced by Power Integrations that "the term 'invention' means 'conception.'" [Opp. at p. 4] Power Integrations' assertion is false. While Power Integrations quotes, out of context, portions of the decision stating merely that conception is "primary" to invention, *nowhere* did the Court hold that conception alone constitutes invention, in *any* context. To the contrary, the Court held that much _more_ than mere conception is required, finding that "[t]he word 'invention' must refer to a concept that is complete, rather than merely one that is 'substantially complete.'"[4] In the Section 102(b) context, this meant both conception and either reduction to practice or an invention that, beyond conception, was "ready for patenting." In fact, the Federal Circuit has explicitly *rejected* the argument that under *Pfaff* "conception alone" constitutes invention. *See Space Systems/Loral v. Lockheed Martin Corp.*, 271 F.3d 1076, 1080 (Fed. Cir. 2001) (finding that "[T]the Court in defining 'invention' was not saying that conception alone equals 'ready for patenting.'").

In any event, despite its misguided attempt to apply the rationale of *Pfaff* out of context, Power Integrations has never even *attempted*—not at trial and not in its brief—to make any showing that Dr. Eklund actually reduced the invention to practice or otherwise brought it to such a condition that it was "ready for patenting" prior to the filing of the Beasom '173 Patent.

---

[3] Indeed, the Court was explicit that it granted certiorari *solely* to address the Section 102(b) issue. *Id.* at 60.

[4] This is consistent with long-established Supreme Court precedent that inventions that are merely conceived or are still in an experimental phase, are not complete. *See e.g. Clark Thread Co. v. Willimantic Linen Co.*, 140 U.S. 481, 489 (1896) ("A conception of the mind is not an invention until represented in some physical form, and unsuccessful experiments or projects, abandoned by the inventor, are equally destitute of that character. These propositions have been so often reiterated as to be elementary."); *Seymour v. Osborne*, 11 Wall. 516, 552 (1870) ("Crude and imperfect experiments are not sufficient to confer a right to a patent; but in order to constitute an invention, the party must have proceeded so far as to have reduced his idea to practice, and embodied it in some distinct form."); *Coffin v. Ogden*, 85 U.S. 120, 124 (1873) ("[I]f [invention] rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed. . . .")

For this reason alone, Power Integrations' argument fails as a matter of law.

        c.    **Even If *Pfaff v. Wells Electronics* Applied, Power Integrations Could Not Meet The Standard It Establishes**

      Even if the Section 102(b) standard of *Pfaff* applied in the instant case, Power Integrations has not and cannot prove "invention" prior to the Beasom '173 Patent. At a minimum, Power Integrations would have to show both "conception" and that Eklund's invention was "ready for patenting" prior to filing of the '173 Patent. "Ready for patenting" means that there is a disclosure so detailed and specific that one of skill in the art is capable of actually practicing the invention—i.e. *building* the claimed device. 525 U.S. at 67. Power Integrations has not provided any expert testimony that the invention was "ready for patenting" prior to the filing of the '173 Patent or otherwise even attempted to make such a showing.

      First, Dr. Eklund did not file a patent application until nearly 2½ years after the alleged January 1985 notes that Power Integrations relies upon for conception, and Power Integrations admits that up to the point at which he filed for his patent, he was still "work[ing] on his invention." [Opp. at p. 16][5] Dr. Eklund testified that he didn't file his patent application earlier because he "wanted to make sure that everything was working." [9/20/07 Eklund Trial Tr. at 1150:22-1151:4] The Federal Circuit has held that an invention is not "ready for patenting" where there is such inventor uncertainty and continued development. *See Space Systems/Loral v. Lockheed Martin Corp.*, 271 F.3d 1076, 1080 (Fed. Cir. 2001) ("For a complex concept such as the prebias technique, wherein the inventor himself was uncertain whether it could be made to work, a bare conception that has not been enabled is not a completed invention ready for patenting. Although conception can occur before the inventor has verified that his idea will work . . . when development and verification are needed in order to prepare a patent application that complies with § 112, the invention is not yet ready for patenting.") (citation omitted).

---

[5] In fact, the evidence indicated that Eklund did not even contact a patent attorney until January 31, 1986—*after* the Beasom '173 Patent was filed on January 7, 1986, and that it was still over a year until Eklund filed his own application. [9/20/07 Eklund Trial Tr. at 1196:19-1198:12]

Second, as discussed in detail below and in Fairchild's opening brief, Power Integrations failed to demonstrate conception by Dr. Eklund of all elements of the claimed invention prior to the filing of the Beasom '173 Patent. [*See* D.I. 616 at pp. 6-13] Clearly, where the invention is not even fully conceived, it cannot be "ready for patenting." Power Integrations' expert concedes that Eklund's notes, PX29 and PX30, each lacked elements of Claim 1. In fact he testified regarding PX29: "Q. Your testimony was it is not enabling of the Eklund Claim 1 invention; isn't that correct? A. Yes, I agree with that." [9/21/07 Shields Trial Tr. at 1397:11-17; *see also* 9/20/07 Eklund Trial Tr. at 1097:3-8 (Eklund testified that it was "[a] first proposal, sketchy.")] Moreover, PX30 is not enabling because it still required "hundreds" of simulations before Eklund's was able to actually build a device in November 1986, at the earliest. [*Id.* at 1142:23-1144:5] These facts defeat any claim that the invention was "ready for patenting." *See Space Systems/Loral*, 271 F.3d at 1080 (not ready for patenting where conception "has not been enabled")

Third, Dr. Eklund admitted at trial that the descriptions in PX29 and PX30 contained a "secondary" drain, had two gates and two sources on either side of the drain, and that such devices appear *nowhere* in the '075 Patent. [9/20/07 Eklund Trial Tr. at 1173:4-14, 1176:4-1177:2] He admitted that he did not even simulate a device without the secondary drain until April 1986. [*Id.* at 1200:15-1201:20; PX48 at KE1362-1364] Again, Dr. Eklund was still working on his embodiments, which were not "ready for patenting." *See* 271 F.3d at 1079 (not "ready for patenting" if an aspect of the invention is later developed). None of the foregoing facts are disputed. Based on those facts, at no point prior to the filing of the Beasom '173 Patent had Dr. Eklund brought his work to a stage at which the invention was "ready for patenting," as a matter of law and Power Integrations does not contend otherwise.

### 3.    Power Integrations Failed To Establish Eklund's "Conception" Of *All Elements* Of Claim 1 Prior To The Filing Of The Beasom '173 Patent

In addition to Power Integrations' failure to prove Dr. Eklund's reduction to practice, Power Integrations also failed to even establish "conception" of the Claim 1 invention prior to

the '173 Patent, as a matter of law. At trial Power Integrations failed to show *any* evidence
establishing or corroborating Dr. Eklund's bare testimony that he had conceived of a device with
***all elements*** of Claim 1 of the '075 Patent.[6] Power Integrations does not dispute the following:

1. No corroborating witness testified that Eklund had conceived of a device with *all
elements* of Claim 1 by January 1985. [Opp. at pp. 6, 14-18]

2. No document establishes or corroborates Dr. Eklund's conception of *all elements* of
Claim 1 in the same device by January 1985. Rather, Power Integrations must
combine PX29 and PX30—separate sets of Eklund's notes, created months apart and
with no explicit reference from one to the other. [Opp. at pp. 6, 14-18]

3. PX29—Eklund's unwitnessed September 26, 1984 notes—lacks an extended drain
going to "surface adjoining positions," as is required by Claim 1. [Opp. at pp. 6, 14-
18] PX30—Eklund's unwitnessed purported "January" 1985 notes—lacks the top
layer and substrate being connected or subject to application of a reverse-bias voltage,
as is required by Claim 1. [Opp. at pp. 6, 14-18]

4. Power Integrations does not dispute Dr. Gwozdz's testimony that PX30 discloses a
thick oxide preventing connection to the substrate and calls the device a "pinch
resistor," which actually *teaches away* from the reverse bias element that is missing
from PX30. [Opp. at pp. 6, 14-18]

5. No corroborating witness testified that the pages of PX29 and PX30 were meant to be
combined together as a single device. [Opp. at pp. 6, 14-18]

The core issue here is that Power Integrations was required to demonstrate and
corroborate that Dr. Eklund had conceived of a device containing *all elements* of his claimed
invention. *See Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000) ("A conception must
encompass all limitations of the claimed invention ... ."); *Bosies v. Benedict*, 27 F.3d 539, 543
(Fed. Cir. 1994) (same); *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006)
(conception requires "a definite and permanent idea of the complete and operative invention, as

---

[6] Independent corroboration of conception is required to pre-date a §102(e) or §102(g) reference. Recently, the
Federal Circuit has explicitly observed that the corroboration rules apply in the Section 102(g) context, and that
"[n]o principled reason appears for applying a different rule when other subsections of § 102 are implicated. . . ."
*Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999); *see also Baychar, Inc. v. Baychar
Holdings, LLC*, 2006 U.S. Dist. LEXIS 52918 at *20-29 (requiring corroboration in §102(e) context). Power
Integrations cites to non-binding dicta in *Sun Studs*, already discussed, to incorrectly argue that corroboration is
purportedly not required. However, as established by the more recent *Finnigan Corp.* opinion, the corroboration
rules apply to inquiries under all provisions of 35 U.S.C. §102.

it is hereafter to be applied in practice."); *Mikus v. Wachtel*, 542 F.2d 1157, 1159 (CCPA 1976) ("each and every element of the count must be corroborated"). To be sure, the corroboration inquiry is guided by a rule of reason and a variety of evidence may be adduced—but that does not change the fundamental requirement that Power Integrations establish conception of a device containing *all elements* of Claim 1.

At the end of the day, all that Power Integrations can show is PX29 and PX30, each of which lacks all elements of Claim 1. PX29 lacks an extended drain going to "surface adjoining positions," as required by Claim 1. PX30, created at least four months later, lacks the top layer and substrate being connected or subject to a reverse-bias voltage, as required by Claim 1, and actually *teaches away* from that structure. Power Integrations does not dispute that it cannot offer any contemporaneous document or witnesses to establish that Dr. Eklund had, in fact, combined all of the elements in a single device by January 1985. Thus, while Dr. Eklund certainly had some parts of his idea in place, there is no evidence that he ever put all of the parts together in a "complete and operative invention" at any point prior to the filing of the Beasom '173 Patent in January 1986.

Power Integrations now looks back in hindsight and attempts to convert Dr. Eklund's incomplete experiments into a purported conception of the complete invention. In this attempt, Power Integrations relies on the testimony of its expert, Mr. Shields. To begin with, Mr. Shields' testimony is legally insufficient as he was not present and cannot provide any contemporaneous corroboration of what was in Dr. Eklund's mind at the time. *See Burroughs Wellcome Co. v. Barr Lab.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) ("Because it is a mental act, courts require corroborating evidence of a *contemporaneous* disclosure . . .") (emphasis added). Further, Power Integrations *greatly* overstates Mr. Shields testimony. At trial, Mr. Shields merely testified:

> Q.  Do you understand these September '84 notes to be related to the same ideas discussed in the January '85?
> A.  Yes, very much so. It even uses the same language MOS cascaded with a JFET or pinch resistor. In both case, cascading just means connected in series.

9

[9/21/07 Shields Trial Tr. at 1380:4-10]  This testimony does not establish that Dr. Eklund had fully conceived of all elements of the invention, or that he understood that the inventions in PX29 and PX30 were to be combined into a single device.  To the contrary, Mr. Shields simply testified that the notes were "related to the same ideas."  This only establishes that by January 1985, Dr. Eklund was still working on the same ideas, but had not yet combined all of the claimed elements in a single device, as was ultimately described and claimed in the '075 Patent. Power Integrations has failed to establish that Dr. Eklund conceived of the complete and operative invention of Claim 1 at any point prior to the filing of the Beasom '173 Patent.

**B.      Claim 1 Is Invalid Under 35 U.S.C. §102(g) As A Matter Of Law**

**1.      Based On The Undisputed Facts, Mr. Beasom Both Conceived And Reduced The Invention Of Claim 1 To Practice Prior To Dr. Eklund.**

With respect to invalidity of the '075 Patent, pursuant to 35 U.S.C. §102(g), in its opposition brief, Power Integrations does not dispute the following facts:

1.   Power Integrations does not dispute that Mr. Beasom conceived of the entire invention by at least the date of April 24, 1985 in an invention disclosure to his attorney.  [Opp. at pp. 6, 14-18]

2.   Power Integrations does not dispute that Mr. Beasom constructively reduced the invention to practice at least as early as the January 7, 1986 filing date of his '173 Patent.  [Opp. at pp. 6, 14-18]

3.   Power Integrations does not dispute that Dr. Eklund failed to establish or corroborate any reduction to practice of his invention prior to the April 1987 filing date of the '075 Patent.  [Opp. at pp. 6, 14-18]

Further, as discussed, Power Integrations is unable to demonstrate or corroborate that Dr. Eklund conceived the entire invention of Claim 1 prior to the April 1987 filing date of the '075 Patent.  Based on these undisputed facts, Mr. Beasom was the first to conceive the invention and was the first to reduce the invention to practice.  Therefore, Mr. Beasom was the first inventor and his work invalidates the '075 Patent, under 35 U.S.C. §102(g).  *See New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 1566-67 (Fed. Cir. 1990) ("It is well established that, in a priority contest, the party first to conceive and first to reduce to practice prevails.")

2.    **Even If Dr. Eklund Conceived Of The Invention Of Claim 1 In January 1985, Mr. Beasom Is Still The First Inventor Pursuant To 35 U.S.C. §102(g)**

Further, even if Power Integrations were able to demonstrate a January 1985 conception date for Dr. Eklund, it still cannot prevail under Section 102(g) because (1) Beasom conceived of the invention before that date, in April of 1984, (2) Beasom actually reduced it to practice in September 1985, prior to Dr. Eklund and (3) Power Integrations has failed to demonstrate or corroborate that Dr. Eklund was continuously diligent in reducing the invention to practice.

a.    **Mr. Beasom Conceived Of The Invention Of Claim 1 In April 1984, Many Months Prior To The Earliest Alleged Date Of Conception By Dr. Eklund**

Even assuming that Dr. Eklund conceived of the invention in January 1985, there can be no dispute that Mr. Beasom conceived of the invention of Claim 1 many months earlier, in his April 1984 laboratory notebook entry. The following figure is from Mr. Beasom's notebook:



[DX130 pp. 62, 64 (emphasis added)]  In its brief, Power Integrations incorrectly asserts that the notebook entry is missing an extended drain extending "each way" from the drain contact pocket to surface adjoining positions. Referring to the figure, Power Integrations argues that the *only* structure constituting the extended drain is the area labeled "P type drift region." [Opp. at p. 8] Power Integrations then argues that the similarly lightly doped "P-" region labeled "drain" cannot be part of the extended drain. [*Id.*] However, the testimony cited by Power Integrations

11

does not support this contention, as a matter of law.

First, Power Integrations refers to testimony of Mr. Beasom which merely states that he himself did not use the *term* "extended drain" and that the drift region and P- drain were separate layers. [Opp. at p. 8] These points are irrelevant and fail to establish the absence of the claimed "extended drain." The fact is that the lightly doped P type drift region and P- drain region have both been referred to as extended drains and act as an extended drain, as Mr. Beasom made clear:

> Q. And this region here that you've labeled P type drift region, and I believe it's also this layer P layer on the Page 64 drawing?
> A. That's correct.
> Q. Can that be referred to as an extended drain region?
> A. Yes, it can.
> Q. And can this P minus region right here, can that be referred to as an extended drain region?
> A. Yes, it's been called that.

[9/18/07 Beasom Trial Tr. at 227:8-18][7]

The only other testimony that Power Integrations attempts to rely on is that of its expert Mr. Shields, which Fairchild addressed in its opening brief. [D.I. 616 at pp. 18-21] As discussed, Mr. Shields simply states, with no support, that the "P-" area around the drain contact pocket cannot be part of an extended drain. The conclusory nature of the assertion, which is not based on any reliable principles or methods, renders it legally insufficient. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (rejecting expert testimony regarding conception where expert did not "properly explain[] the technical notebook entries"); *Ortho-Mcneil Pharm., Inc. v. Kali Labs.*, Inc., 482 F. Supp. 2d 478, 527-528 (D.N.J. 2007) (rejecting expert opinion regarding prior art where there was "no explanation"); Fed. R. Evid. 702, 703. By contrast, Fairchild's expert, Dr. Gwozdz, explained the purpose of an extended drain, which is a "lightly doped region" around the drain contact pocket. [9/18/07 Gwozdz Trial Tr. 463:1-454:13, 486:20-487:23] Both the P-type drift region and the P- drain are such lightly

---

[7] Power Integrations correctly points out that Mr. Beasom testified that an extended drain extending each way from the drain contact pocket was "a known method of fabrication of a high voltage MOS device." [Opp. at p. 8] The structure was not novel, and was used by Beasom, Eklund and many others. [*See e.g.* D.I. 616 at p. 24]

doped regions, and therefore constitute an extended drain region.

Power Integrations also continues to press the surprise argument that it made at trial, that there must purportedly be two P-TOP layers, on each side of the drain contact pocket. This is contrary to the plain meaning of the claim, which requires only "a" surface adjoining layer of material. [PX4 at 5:65] Given that Power Integrations argued during claim construction that the plain meaning of the term was clear and no further construction was necessary, it may not now import additional limitations into this claim language. [*See* DI 231 at pp. 11-12]

The only limitation is that the top layer must be between some number of the multiple "surface adjoining positions" and the "drain contact pocket." There is no additional limitation dictating "where" the surface adjoining positions must be. The Beasom 1984 notebook discloses such a top layer between multiple surface adjoining positions and the drain contact pocket, as is clear from a "three-dimensional" representation of the 1984 Beasom device, which Power Integrations accuses Fairchild of "ignoring" in its brief:



[DD1098] As Dr. Gwozdz testified and as seen in the demonstrative exhibit that he prepared, the 1984 Beasom device had a surface-adjoining layer between the drain contact pocket and *at least* three surface adjoining positions. [9/18/07 Gwozdz Trial Tr. at 491:10-492:19][8]

---

[8] Contrary to Power Integrations' assertion,

REDACTED

**b.**     **Mr. Beasom Actually Reduced The Invention Of Claim 1 To Practice In September 1985.**

There is no dispute that Dr. Eklund presented no evidence corroborating any reduction to practice prior to the April 1987 filing of his '075 Patent. By contrast, as addressed in Fairchild's opening brief and as Power Integrations correctly points out in its own brief, in September 1985 Mr. Beasom actually reduced to practice the device described in his 1984 notebook. [D.I. 616 at pp. 21-22; Opp. at p. 9] As discussed, that device meets all elements of Claim 1 of the '075 Patent. Accordingly, Mr. Beasom had both conceived and actually reduced the invention of Claim 1 to practice by September 1985, long before Eklund. Because Mr. Beasom both conceived and reduced to practice first, his work anticipates Claim 1 pursuant to Section 102(g), as a matter of law. *See New Idea Farm Equipment Corp.*, 916 F.2d at 1566-1567.

**c.**     **Power Integrations Has Not Demonstrated Or Corroborated That Dr. Eklund Was "Diligent" In Reducing His Invention To Practice.**

Finally, while under Section 102(g) analysis the first to conceive but last to reduce to practice may be deemed the first inventor if they were "diligent" toward reduction to practice, Power Integrations may not avail itself of the exception. First, under any scenario, Mr. Beasom was the first to conceive—thus, Dr. Eklund's diligence is irrelevant. *See Bosies*, 27 F.3d at 544.

Second, just as it has failed to corroborate that Dr. Eklund conceived all elements of Claim 1, Power Integrations has failed to explain whether any of the documents relied upon for alleged diligence relate to *any* elements of Claim 1 of the '075 Patent, much less all elements. Power Integrations does not dispute this critical point in its brief. Because Power Integrations has not established that its evidence of alleged "diligence" relates in any way to the *claimed* invention, it has insufficiently corroborated diligence, as a matter of law. *See Singh v. Brake*,

---

**REDACTED**

Thus, he clearly disclosed that there were multiple surface adjoining positions at all surface-adjoining points of the P type drift region and P-drain.

14

317 F.3d 1334, 1343 (Fed. Cir. 2002) (documents that are unexplained as to relationship to claimed invention were insufficient to prove diligence); *Bennett v. Sonnenfeld*, 28 C.C.P.A. 951, 958 (CCPA 1941) (same). For this reason as well, Dr. Eklund may not avail himself of the "diligence" exception, and Mr. Beasom's work anticipates the '075 Patent as a matter of law.

### C.     The '075 Patent Is Invalid Under 35 U.S.C. §103 As A Matter Of Law

#### 1.     Claim 1 Of The '075 Patent Is Obvious In Light Of Beasom Alone Or In Combination With Ludikhuize And Other Prior Art

As was discussed in detail in Fairchild's opening brief, the combination of the Ludikhuize reference with the work of Mr. Beasom, and in light of the state of the art, renders Claim 1 obvious. [D.I. 616 at pp. 22-25] While Power Integrations attempts to cast the obviousness inquiry as factually disputed, it does not *actually* dispute any of the following facts:

1. The only elements of Claim 1 that Power Integrations alleges to be missing from the Beasom 1984 notebook are an extended drain extending "each way" and a "p-top" and surface adjoining position on each side of the drain contact pocket.

2. During prosecution, Dr. Eklund withheld at least five prior art references showing an extended drain extending "each way" from a drain contact pocket to surface adjoining positions.

3. The withheld article by Ludikhuize, *High Voltage DMOS and PMOS in Analog IC's*, IEEE (1982), contained both the extended drain and P-TOP features of the '075 invention, and the Ludikhuize P-TOP is used in the same context as the '075 patent.

4. The Ludikhuize article contains the elements that Power Integrations argued were missing from the Beasom notebook—an extended drain extending "each way" from the drain contact pocket and a P-TOP on each side of the drain contact.

5. One of ordinary skill in the art at the time would have known to combine the teachings of the Beasom notebook, the Ludikhuize article, based on the state of the art at the time. Both the Ludikhuize device and the Beasom device were types of MOS devices and their teachings could be combined.

6. Dr. Eklund admitted that the *only* purportedly inventive aspects were an n-well extending both to the right and to the left of the drain contact pocket, and on top of the n-well, a P-TOP diffusion, both on the right and left side.

15

The determination of obviousness is a legal matter for the Court to decide based on these key undisputed facts. *KSR v. Teleflex*, 127 S. Ct. 1727, 1745-46 (2007) ("The ultimate judgment of obviousness is a legal determination. . . ."); *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997) (Court is the ultimate arbiter of obviousness as the determination is legal, not factual, and thus cannot be delegated to the jury).

Based on these undisputed facts, Claim 1 of the '075 Patent is obvious, as a matter of law. The combination of an extended drain extending to multiple surface adjoining positions, as found in the Beasom device and many other prior art references, and a P-TOP over the extended drain on each side of the drain contact pocket, as found in the Ludikhuize article, is simply the "predictable use of prior-art elements according to their established functions." *KSR Int'l Co.*, 127 S. Ct. at 1733. The Beasom and Ludikhuize inventions together contain the fundamental "inventive" features, and it would have been well within the skill of those in the art to combine the references' teachings. Claim 1 of the '075 Patent is obvious as a matter of law.

Rather than dispute that all elements of Claim 1 were in the prior art or that one of skill in the art was readily capable of combining those elements, Power Integrations argues that Mr. Beasom's notebook and reduction to practice materials were purportedly "secret" and purportedly cannot be considered in the obviousness inquiry. [Opp. at p. 21 & n. 14] Power Integrations is once again wrong on the law, and bases its theory on a case that does not even deal with Section 102(g).[9] The Federal Circuit has explicitly observed that Section 102(g) does not "contain a 'known to the art' requirement apart from the requirement of no abandonment, suppression or concealment." *See E. I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1437 (Fed. Cir. 1988). As long as prior work satisfies Section 102(g) and has not been "abandoned, suppressed or concealed," it can be used for § 103 purposes. *Id.*[10]

---

[9] Power Integrations cites *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997), which dealt with 35 U.S.C. §102(f)—not §102(g). However, the opinion actually does mention that Section 102(g) art is appropriate in an obviousness inquiry as long as it has not been "abandoned, suppressed or concealed." *Id.* at 1402.

[10] *See also Am. Standard Inc. v. Pfizer Inc.*, 722 F. Supp. 86, 113 (D. Del. 1989) (observing "[s]everal recent opinions by the Federal Circuit hold that 35 U.S.C. §102(g) does not require public disclosure of the work or that the work be 'known to the art' in order to qualify as prior art . . .")

Mr. Beasom's notebook and his reduction to practice materials constitute Section 102(g) prior art, and were not abandoned, suppressed or concealed. The fact that Mr. Beasom filed for a patent claiming the invention in his Section 102(g) materials indicates that his invention was not abandoned, suppressed or concealed. *See id.* at 1437 n.5. Moreover, Power Integrations explicitly *withdrew* any contention that Beasom had abandoned, suppressed or concealed his invention. [Ex. 1 (9/13/07 email between counsel)] Thus, all of the prior art asserted by Fairchild is appropriately considered.

Instead of addressing the undisputed presence of all elements in the prior art and that one of skill in the art would understand to combine them, Power Integrations emphasizes *unclaimed* features. [Opp. at p. 22 n. 13] This is irrelevant, as obviousness relates to "the differences between the subject matter *sought to be patented* and the prior art." 35 U.S.C. §103 (emphasis added). Power Integrations' attempt to create distraction based on unclaimed features is insufficient to overcome the undisputed presence and combination in the prior art of the "extended drain" and "p-top"—the only alleged inventive features recognized by Dr. Eklund.

Finally, rather than dispute the strong primary evidence of obviousness, Power Integrations resorts to purported "secondary considerations." However, the Federal Circuit has recently recognized that where there is a strong prima facie case of obviousness, evidence of secondary considerations is inadequate to overcome a finding of obviousness. *See Leapfrog Enters. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988) (secondary considerations "do not control the obviousness conclusion"). This principle applies with force in the instant case. Power Integrations never even disputes that all of the inventive elements were present in similar prior art devices or that one of skill in the art would understand how to combine those elements in a single device. In light of this undisputed prima facie showing of obviousness, Power Integrations' resort to "secondary consideration" is insufficient as a matter of law.

**2.    Claim 5 Of The '075 Patent Is Obvious In Light Of Prior Art Combining High And Low Voltage Devices On The Same Chip**

As was discussed in detail in Fairchild's opening brief, in light of the obviousness of the invention of Claim 1, it would have further been obvious to simply combine that device on the same chip as a low voltage transistor, as required by Claim 5. [D.I. 616 at pp. 25-27] Again, Power Integrations does not dispute any of the following key facts:

1. The only additional element in Claim 5 is simply the combination of the high voltage device of Claim 1 on the same chip with a low voltage CMOS device.

2. Mr. Beasom combined the high-voltage MOS device described in his April 1984 notes on the same chip as a low voltage device and had done so in his prior work.

3. When asked whether it was inventive to combine a high voltage MOS transistor with a low voltage CMOS control circuit in the mid-1980s, Power Integrations' own Vice President of Engineering testified "I don't think there was anything particularly innovative about putting the two devices on – on – onto one chip" and confirmed that products combining such devices were available in 1985.

4. Dr. Eklund recognized (a) that combining high and low voltage devices was well-known in the art, (b) that "the main advantage" of the prior art "is that low voltage control logic easily can be combined on the same chip," and (c) that at the time combining high voltage MOS and low voltage CMOS was "a general trend."

5. The prior art Wakaumi and Wacyk articles explicitly show the combination of high voltage transistors on the same chip with low voltage CMOS devices

6. Power Integrations' technical expert never contested that one of ordinary skill in the art would know to combine such devices on the same chip in the 1980s.

Based on these undisputed facts and given the obviousness of the high-voltage device of Claim 1, it would have been obvious to one of skill in the art to combine such a device on the same chip as a low voltage CMOS device. Indeed, Mr. Beasom himself had *actually done so* on his test wafers reducing the invention of Claim 1 to practice. There can be no more decisive evidence of obviousness than this. Further, the "general trend" in the industry toward combining such devices provides a strong motivation to combine. Moreover, at the time, Dr. Jim Plummer opined that in Eklund's technology the "major change from current processes is the addition of a shallow counterdoped surface region in the high voltage portion of the device"—i.e. the "P-TOP." [PX51] In other words, the inventive feature enabling combination of high and low voltage devices was the P-TOP *alone*, which Ludikhuize already clearly disclosed (explaining

18

why Eklund withheld it from the Patent Office). Again, no amount of resort to "secondary considerations" can overcome this undisputed, prima facie case of obviousness. *See Leapfrog Enters.*, 485 F.3d at 1162; *Newell Cos.*, 864 F.2d at 768; *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1484 (Fed. Cir. 1997) (secondary considerations insufficient to overcome strong motivation to combine provided by prior art).[11] Claim 5 is obvious as a matter of law.

### D.    Fairchild Is Entitled To A New Trial Because Power Integrations Surprised Fairchild At Trial With Previously Undisclosed Expert Theories Regarding Validity Of The '075 Patent

As discussed, Power Integrations' expert Mr. Shields introduced two entirely new "validity" theories at trial, prejudicially surprising Fairchild, and warranting a new trial. Power Integrations argues disingenuously that in his deposition Mr. Shields purportedly disclosed the surprise argument presented at trial that two "P-TOP" layers had to be present—one on each side of the drain contact pocket. Power Integrations conceals that the deposition testimony it relies upon is discussing one of the Patent's *figures*, not the claims. [Ex. 2 (4/18/07 Shields Tr. at 497:21-501:12)] Fairchild's counsel then clarified that he was asking about the *claim*, in response to which Shields testified that the claim language "did not say" that a P-TOP on each side of the drain contact was required, and simply that such a structure would be "consistent" with the claim language. He never testified until trial that such a structure was *required*:

> Q    I'm not referring to the part; I'm referring to what the claim requires.
> A    Yeah. And that describes perfectly Figure 1.
> Q    *Does it require a PTOP – strike that. There is nothing in the claim that requires a PTOP on opposite sides of the drain contact, is there*?
> (objection omitted)

---

[11] Power Integrations also overreaches regarding purported "secondary considerations." Power Integrations refers *generally* to an award Dr. Eklund received, and the purported success of Power Integrations without establishing any nexus to the *inventions* of Claims 1 or 5, as opposed to other factors. [Opp. at pp. 23-24] This is insufficient as a matter of law. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."). Likewise, Power Integrations cites the letter from Dr. Jim Plummer, failing to mention that Dr. Plummer opined that (1) Eklund's technology "is basically similar to that used by Siliconix and others in some current products", (2) Eklund greatly overstated the advantage of his technology, (3) the technical advantage would not "revolutionize the market." [PX51] This indicates that the invention was obvious. Finally, the allegations of purported "copying" have routinely been rejected as "equivocal" where the case for obviousness was otherwise strong. *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000).

THE WITNESS: *The language does not say that*, but it defines it in the diagram and it says, "Intermediate top layer of the material." That's what's drawn. That's consistent. I don't see a problem with that.

[*Id.* at 501:13-502:1 (emphasis added)]

Likewise, it is simply not true that Mr. Shields ever asserted prior to trial that the extended drain in Mr. Beasom's notebook was missing multiple "surface adjoining positions." Power Integrations really does not dispute this point in its brief. Nor can it.

**REDACTED**

[*Id.* at 416:16-24] Having, misled Fairchild in this way, it was extremely prejudicial for Mr. Shields to suddenly testify at trial that the surface adjoining positions were missing from the extended drain. Therefore, a new trial is warranted.

## III.    CONCLUSION

For the foregoing reasons and the reasons stated in the opening brief, Fairchild respectfully requests that the Court grant its motion for judgment as a matter of law or in the alternative for a new trial.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

G. Hopkins Guy, III
Vickie L. Feeman
Bas de Blank
Gabriel M. Ramsey
Brian H. VanderZanden
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Dated: January 16, 2008

187356.v1

21

# EXHIBIT 1

**Fung, Ken**

| | |
|---|---|
| **From:** | Jonathan Lamberson [Lamberson@fr.com] |
| **Sent:** | Thursday, September 13, 2007 1:18 PM |
| **To:** | VanderZanden, Brian; Michael Headley |
| **Subject:** | RE: PI/Fairchild: Jury Instructions |
| **Attachments:** | 2007-09-13 JOINT Proposed Jury Instructions - Validity.doc |

Brian,

Attached is a set of jury instructions that reflects our meet and confer of earlier today, as well as your comments below. Please let me know if you have any further edits, or if you agree that these can be filed with the Court pursuant to Local Rule 51.1.

Thank you,

Jonathan Lamberson
Fish & Richardson P.C.
500 Arguello St., Ste 500
Redwood City, CA 94063
650-839-5076
lamberson@fr.com

---

**From:** VanderZanden, Brian [mailto:bvanderzanden@orrick.com]
**Sent:** Thursday, September 13, 2007 8:35 AM
**To:** Jonathan Lamberson; Michael Headley
**Subject:** RE: PI/Fairchild: Jury Instructions

Jon,

I wanted to follow up on some issues that came up during our meet and confer this morning.

First, thank you for confirming that Power Integrations will not argue that Mr. Beasom abandoned, suppressed, or concealed his invention.

Second, Fairchild confirms that it will not pursue an indefiniteness theory. Therefore, we do not believe that an indefiniteness instruction needs to be read to the jury.

Please feel free to contact me should you have any questions concerning these or any other issues involving the jury instructions.

Regards,
Brian

---

**From:** Jonathan Lamberson [mailto:Lamberson@fr.com]
**Sent:** Wednesday, September 12, 2007 2:55 PM
**To:** VanderZanden, Brian; Michael Headley
**Subject:** RE: PI/Fairchild: Jury Instructions

Brian,

My number here is 302-295-4971. I will look forward to your call.

1/16/2008

Thank you,

Jonathan Lamberson
Fish & Richardson P.C.
500 Arguello St., Ste 500
Redwood City, CA 94063
650-839-5076
lamberson@fr.com

---

**From:** VanderZanden, Brian [mailto:bvanderzanden@orrick.com]
**Sent:** Wednesday, September 12, 2007 11:34 AM
**To:** Jonathan Lamberson; Michael Headley
**Subject:** RE: PI/Fairchild: Jury Instructions

Jonathan,

I can be available for a call tomorrow at 10:00 a.m. to discuss jury instructions, as you propose. Please let me know what number I can reach you at.

Regards,

Brian

---

**From:** Jonathan Lamberson [mailto:Lamberson@fr.com]
**Sent:** Wednesday, September 12, 2007 10:32 AM
**To:** VanderZanden, Brian; Michael Headley
**Subject:** RE: PI/Fairchild: Jury Instructions

Brian,

The Local Rule we're looking at is Rule 51.1; I believe it requires us to submit one set of instructions and, where we cannot agree on a particular instruction, to lay out our two competing instructions. To help facilitate this, let's plan a meet and confer tomorrow morning at 10 a.m. Let me know if you are available at that time.

Thank you,

Jonathan Lamberson
Fish & Richardson P.C.
500 Arguello St., Ste 500
Redwood City, CA 94063
650-839-5076
lamberson@fr.com

---

**From:** VanderZanden, Brian [mailto:bvanderzanden@orrick.com]
**Sent:** Tuesday, September 11, 2007 5:26 PM
**To:** Michael Headley; Jonathan Lamberson
**Subject:** FW: PI/Fairchild: Jury Instructions

Michael and Jon,

Per Michael's e-mail below, it is our understanding that the parties are required to file an integrated set of jury instructions with the Court. Michael had suggested that we do so by the end of the day tomorrow. If that is still

your intention, please let me know whether you are available tomorrow to meet and confer in an attempt to resolve any disputed instructions, so as not to unnecessarily burden the Court.

I am not aware of any rule, however, which requires that we file an integrated set of instructions tomorrow. So, if you are unable to meet and confer tomorrow, perhaps it makes more sense to postpone any filing until the parties have had sufficient time to resolve any disputes.

I look forward to your response,

Brian

---

**From:** Michael Headley [mailto:Headley@fr.com]
**Sent:** Friday, September 07, 2007 1:39 PM
**To:** VanderZanden, Brian; de Blank, Bas; Ramsey, Gabriel
**Cc:** Jonathan Lamberson; William Marsden; Feeman, Vickie
**Subject:** RE: PI/Fairchild: Jury Instructions

Brian, Gabe, and Bas,

I just received a voicemail from Bas confirming that the parties will go ahead and file their respective proposed jury instructions today. If that is not correct, call me as soon as possible.

We will need to file an integrated set of instructions pursuant to the local rules as soon as possible, but given our respective travel schedules we will aim to do so by the end of the day Wednesday.

Thanks.

Michael

---

**From:** VanderZanden, Brian [mailto:bvanderzanden@orrick.com]
**Sent:** Friday, September 07, 2007 11:47 AM
**To:** Michael Headley
**Cc:** Howard Pollack; William Marsden; Feeman, Vickie; de Blank, Bas; Ramsey, Gabriel
**Subject:** PI/Fairchild: Jury Instructions

Michael,

As you know, the parties had discussed filing proposed jury instructions today. In order to best conserve the Court's time, however, it would be beneficial if we could exchange drafts ahead of the filing, and work to meet and confer to resolve any disputes. Therefore, Fairchild proposes that the parties agree to extend the deadline for filing until next Friday, September 14, and work to resolve any disputes next week.

Please let us know if Power Integrations can agree.

Best regards,

Brian

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

─────────────────────────────────────────────────────────────────────

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.
For more information about Orrick, please visit http://www.orrick.com/

*************************************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*************************************************************************************

# EXHIBIT 2

# REDACTED