IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, <br><br>         Plaintiff, <br><br>     v. <br><br> FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, <br><br>         Defendants. | C.A. No. 04-1371 JJF <br><br><br><br> **REDACTED** |

**PLAINTIFF POWER INTEGRATION, INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR ENTRY OF A PERMANENT INJUNCTION**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247) ()
Kyle Wagner Compton (#4693) ()
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com
Email: kcompton@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Howard G. Pollack
Michael Headley
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

Dated: January 16, 2008

Redacted: January 30, 2008

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ..................................................................................1

II.   ENTRY OF A PERMANENT INJUNCTION IS PROPER. .................................3

      A.    Fairchild Is Wrong on the Law of Future Lost Profits and
           Injunctions...............................................................................4

      B.    The Future Damages from Price Erosion the Jury Awarded Did
           Not Fully Compensate Power Integrations. ...................................5

III.  THIS COURT SHOULD NOT STAY THE PERMANENT
     INJUNCTION. ......................................................................................7

      A.    The Likelihood of Success Weighs Against Issuing a Stay......................7

      B.    The Lack of Injury to Fairchild and the Potential Irreparable
           Harm to Power Integrations Weighs Against Issuing a Stay. ..................10

IV.  THE LANGUAGE OF THE INJUNCTION ORDER .........................................12

      A.    Power Integrations Has Updated the Language of the Injunction
           to Eliminate Most Disagreements Between the Parties. ..........................13

           1.    The Phrase "Otherwise Causing".................................13

           2.    Foreign Activity Under the Injunction.........................13

           3.    Part List......................................................13

            4.    The Expiration Date of the Injunction Has Been
                Updated to Properly Reflect the Expiration of the
                Patents at Issue. ................................................13

      B.    POWER INTEGRATIONS IS ENTITLED TO AN
           INJUNCTION ON "THE PATENT." ......................................14

      C.    THE NOTICE PROVISION IS NARROWLY TAILORED
           AND APPROPRIATE FOR THE CIRCUMSTANCES OF
           THIS CASE. ................................................................15

V.    CONCLUSION.......................................................................................16

i

## TABLE OF AUTHORITIES

PAGE

*Amstar Corp. v. Envirotech Corp.*
923 F.2d 1538 (Fed. Cir. 1987)................................................................4, 6

*ArthroCare Corp. v. Smith & Nephew, Inc.,*
315 F. Supp. 2d 615 (D. Del. 2004), *rev'd on other grounds,*
406 F.3d 1365 (Fed. Cir. 2005)..............................................................8, 9

*Commonwealth Scientific and Industrial Research Organisation v. Buffalo
Technology Inc.,*
492 F. Supp. 2d 600 (E.D. Tex. 2007).......................................................11

*Hilton v. Braunskill,*
481 U.S. 770 (1987)....................................................................................7

*King Instrument Corp v. Otari Corp.,*
814 F.2d 1560 (Fed. Cir. 1987)..............................................................4, 5

*MGM Well Services v. Mega Lift System LLC,*
505 F. Supp. 2d 359 (S.D. Tex. 2007)......................................................11

*Magnesystems Inc. v. Nikken, Inc.,*
36 F.3d 1114, 1994 WL 492511 (Fed. Cir. Aug. 30, 1994) ........................9

*Standard Havens Products, Inc. v. Gencor Industrial, Inc.,*
897 F.2d 511 (Fed. Cir. 1993)...............................................................7, 8

*Standard Havens Products, Inc. v. Gencor Industrial,*
1993 WL 172432 (Fed. Cir. May 21, 1993) .........................................10, 11

*Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.,*
2004 WL 856595 (D. Del. Apr. 12, 2004)..................................................14

*Windsurfing International, Inc. v. AMF, Inc.,*
782 F.2d 995 (Fed. Cir. 1986)..................................................................11

**MISCELLANEOUS**

Roberta Garner, *The Joy of Stats: A Short Guide to Introductory Statistics in the
Social Sciences* 100 (2005) ........................................................................8

# REDACTED

## I.    INTRODUCTION

Fairchild does not dispute in its Opposition that, should an injunction issue, it should include within its scope the specific products the jury adjudged to infringe as well as any additional Fairchild products that are "no more than colorably different."

Accordingly, for all of these products and products "not more than colorably different", there is no longer any dispute over injunction scope and Power Integrations has provided an amended proposed injunction order reflecting these concessions.

Rather than focusing on the propriety of an injunction in this case, Fairchild spends the majority of its Opposition disputing application of that injunction to the so-called "e-Series" products.[2]  As explained in its opening brief, Power Integrations believed from the publicly available documentation that some of these parts—as well as other parts Fairchild now concedes are not colorably different from infringing parts—also infringed one or more of the asserted claims of the circuit patents.  Although Power Integrations long ago asked Fairchild for additional information on these products, Fairchild refused to provide schematics for them until the day before it filed its Opposition, when it produced schematics for two part families.  [*See* Exs. 1-2 (Fung 12/20/07 letter to Headley; Pollack 12/21/07 letter to Guy re schematics).]  After further requests, Fairchild finally provided an apparently complete set of schematics for the "e-Series" products on January 8, 2008.  [Exs. 3-5 (Feeman 1/4/08 letter to Pollack; Headley 1/7/08 e-mail to Feeman; Fung 1/8/08 letter to Pollack).]  Given the short time in which Power

_____

[1]

[2]    As explained below, Fairchild also raises some minor disputes over the language in Power Integrations' proposed injunction order, but Power Integrations has made modifications to its proposal that it believes renders these disputes moot.

1

Integrations has had to analyze these documents, and in view of the declarations submitted with Fairchild's Opposition, Power Integrations agrees that the dispute over the e-Series parts would more appropriately be dealt with at a later time. In an effort to expedite resolution of the injunction issue and reach closure on the products now agreed to be properly within its scope, Power Integrations is no longer requesting inclusion of the e-Series parts in the current injunction, and reserves its rights to address the e-Series products it still believes to infringe in a future proceeding before this Court. Accordingly, the only remaining substantive issues are whether the injunction is proper *per se*, and if so, whether it should be stayed.

In its entire Opposition, Fairchild makes only one argument with respect to the propriety of an injunction as applied to the products found to infringe: that Power Integrations will allegedly "double recover" if the injunction issues. Fairchild's argument, though, is both legally and factually flawed. Because Fairchild misapplies the law and fails to understand the factual underpinnings of the jury's award of "future price erosion," Fairchild's argument is wholly without merit. Power Integrations recovered for future *price erosion* and not future *lost profits from future lost sales*. The former applies only to past agreements that Power Integrations entered into with its own customers, while the latter applies to the rest of the market. Because Power Integrations never sought, and was never awarded, damages for lost profits that might be caused by *sales made by Fairchild* in the future, no double recovery will occur when the injunction issues preventing such sales.[3]

Fairchild's effort to convince this Court to stay the injunction is equally baseless. Initially, the majority of Fairchild's arguments to stay the injunction relate to the e-Series parts no longer relevant to the present motion. Fairchild's only remaining arguments are that it is allegedly likely to succeed on appeal, that reexamination should result in a stay of the injunction, and that it will be harmed if this Court does not stay the injunction. With respect to success on appeal, Fairchild simply reargues its JMOL motions and previews its appellate brief. Based on

---

[3]   Of course, the issue of *past* damages for Fairchild's continued infringing sales after the damages verdict but prior to the Court's entry of an injunction is the subject of another dispute addressed in the context of Power Integrations' co-pending motion for an accounting.

2

Fairchild's logic, *every* infringer who plans to appeal even *a single claim construction issue* is entitled to a stay. This is not and cannot be the law. Because this Court's claim construction rulings are legally correct, and for the reasons set forth in Power Integrations' oppositions to Fairchild's JMOL motions, Fairchild cannot show a reasonable likelihood that it will succeed on the merits of its appeal.[4]

Fairchild's next argument, that reexamination proceedings require the Court to stay the injunction, is directly contrary to decisions of this Court which have held that, once a jury has confirmed a patent's validity and that it is infringed, if the court further affirms that verdict following carefully-considered post trial briefings, it should not stay a permanent injunction merely because a reexamination is pending. Fairchild's final argument, regarding hardship, is equally unavailing because all of the complained of hardship is due to Fairchild's own actions and failure to provide its customers with new alternatives more quickly. Moreover, these claims of harm by a willful infringer are identical to those consistently rejected by both the Federal Circuit and district courts.

## II.     ENTRY OF A PERMANENT INJUNCTION IS PROPER.

Fairchild devotes less than three pages of its opposition brief to the propriety of entering an injunction. In fact, Fairchild does not even attempt to address any of the *eBay* factors. [*See* D.I. 640.] Instead, Fairchild's sole argument against entry of an injunction is that Power Integrations already received "future lost profits" damages and any injunction would allegedly allow for double recovery. Fairchild's argument is based on an erroneous belief that any time a patentee receives *any* amount of damages which are calculated in part with respect to future lost profits, no injunction can be entered. [*See* D.I. 640 at 12 ("Having elected the remedy of future lost profits, Power Integrations is not entitled to an injunction because it has already been monetarily compensated for the infringement.").] Fairchild is wrong on the law and wrong on the facts.

---

[4] It is worth noting that, other than its assertion of claim construction errors, Fairchild did not even file a substantive JMOL on the merits of the juries' findings that the '851 and '366 patents were valid and infringed.

A.    **Fairchild Is Wrong on the Law of Future Lost Profits and Injunctions.**

Fairchild's argument that an award of future price erosion damages precludes an injunction is not supported by the case law. Damages and injunctions often go hand in hand, and the cases Fairchild cites amply demonstrate the fallacy of its argument. First, in *Amstar Corp. v. Envirotech Corp.*, the Federal Circuit specifically noted that the patentee *conceded* that the award of lost profits would "*fully compensate*" it for its loss. 923 F.2d 1538, 1549 (Fed. Cir. 1987) (emphasis added). The *Amstar* court recognized that an injunction would be improper only if the damages award would fully compensate the patentee for the infringing activity. Implicit in the *Amstar* decision is that damages may be combined with an injunction if the jury's damages award does not fully compensate the patentee.

Here, as discussed more fully below, Power Integrations has not received "full compensation" for Fairchild's infringement. *See infra* Part II.B. The jury based its "future" price erosion damages award on only a small fraction of the market and limited the recovery to the existing sales arrangements, at already eroded prices, that Power Integrations had entered into with its own customers. *See id.* Power Integrations has not received "full compensation" for Fairchild's willful infringement in the remainder of the market place; only an injunction will secure Power Integrations' full equitable relief.

Fairchild's reliance on *King Instrument Corp v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987) is equally misplaced. In *King Instrument*, the district court entered judgment on a verdict that awarded lost profits for both sales of infringing machines and for lost sales of spare parts for those machines. *Id.* at 1561. The district court then entered an injunction on the sale of the infringing machines and on the sale of spare parts. *Id.* at 1563-64. The infringer appealed the award of damages for the sale of spare parts, and the Federal Circuit remanded because the district court had only given conclusory reasons for the amount. *Id.* at 1561. During the pendency of that remand, the district court left its injunction order in place, and the infringer appealed a second time. *Id.* at 1561-62. The Federal Circuit vacated the injunction only as to the

spare parts and only until the district court could more thoroughly develop the record with respect to the award of damages for them. *Id.* at 1564.

Given the special circumstances in *King Instrument*, that case is irrelevant for several reasons. First, *King Instrument* presented a unique procedural posture that does not exist in the current case. Second, the case never mentions future price erosion, which the jury found to be proper in this case. And third, the Federal Circuit did not even *decide* the propriety of granting an injunction along with damages. Instead, it remanded the case to the district court to make a further determination on that precise issue, indicating that the two could go hand in hand. Thus, even if *King Instrument* applies, it stands for the proposition that damages and injunctions *can* co-exist, because the Federal Circuit left the injunction in place on the machine itself – the same product for which the infringer had already paid damages.

**B.     The Future Damages from Price Erosion the Jury Awarded Did Not Fully Compensate Power Integrations.**

Fairchild also misinterprets the testimony at trial. The future lost profits Power Integrations presented to the jury related to a narrow subset of the price erosion damages caused by Fairchild's past infringing activity. [D.I. 418 (Trial Tr. 10/4/06) at 814:9-11 ("I limited the price erosion [calculation] to just the Samsung Wireless providers.").] Power Integrations only asked the jury to decide the amount of future price erosion to a specific and small set of Power Integrations' *own customers,* for whom Power Integrations had been forced to reduce prices due to competition with the infringing Fairchild chips. [*Id.* at 813:16-23 ("The *lost profits* for the lost sales are just that . . . *sales* that Power Integrations *did not make . . . price erosion* would be the cost to Power Integrations of reducing its price. *They made the sale* and kept business, but they had to reduce their price to do so.") (emphasis added).] Essentially, Mr. Troxel's testimony about future price erosion was based on Power Integrations' losses from entering into sales arrangements with its *own customers* at lower prices than it would have done but for Fairchild's infringement. [*See id.* at 812:24-813:9, 813:19-814:22, 819:14-820:23.] And the jury awarded Power Integrations the *price erosion* on a subset of Power Integrations' sales to its own

customers made at reduced prices, which would have been made at higher prices but for Fairchild's infringement. What Power Integrations now seeks is "full compensation" on Fairchild's infringing sales to the rest of the market place. *See Amstar*, 923 F.2d at 1549. Because, by definition, there is no overlap between those specific customers that Power Integrations is still selling to, and those Fairchild continues to sell to, Power Integrations will not receive double recovery when this Court issues the injunction.

Fairchild's argument that Power Integrations "now takes positions that are entirely inconsistent with those that it took in seeking damages relating to future lost profits" demonstrates a fundamental lack of understanding about Power Integrations' actual damages claim, the marketplace, and the reality of sales commitments. [*See* D.I. 640 at 13.] Power Integrations did indeed argue at trial that the relevant market for assessing lost profits was a two player market. [D.I. 418 (Trial Tr. 10/4/06) at 801:2-9.] And its argument has not changed now at all. When Fairchild is removed from the market by entry of the injunction, Power Integrations could theoretically raise its prices to some degree and in some circumstances because the two player market would be reduced to a single participant. However, as Power Integrations demonstrated at trial, Power Integrations *cannot* raise the prices on its existing sales programs for its current customers, because doing so would breach existing sales contracts and would be commercially unreasonable. This is precisely the type of future price erosion that Mr. Troxel testified to. [*See id.* at 812:24-813:9, 813:19-814:22, 819:14-820:23.] And Power Integrations' inability to raise prices *to its existing customers* was confirmed by an objective, third-party industry analyst and implicitly accepted by the jury. [*Id.* at 760:10-762:6.] So even if Power Integrations could raise the sale prices on its chips to the levels at which they would have been but for Fairchild's infringement, such a raise in price would only effect *new customers*, not the small set of existing customers that formed the basis for the erosion claim proved at trial. As such, Power Integrations is not seeking and would not receive double recovery.

6

Thus, there is no need to delay an injunction until October of 2010, because Power Integrations did not receive full compensation for future infringement by Fairchild.[5] Instead, Power Integrations received only damages for past price reductions given to a limited set of its own customers. There is similarly no need to "trade" the injunction for the price erosion damages awarded by the jury, since the injunction and the price erosion award address completely different harms.

## III.    THIS COURT SHOULD NOT STAY THE PERMANENT INJUNCTION.

Fairchild's arguments for a stay are circular and unavailing, and they ignore the fact that Fairchild's willful infringement has gone unabated for more than three years, including expanded infringing activity, since this case was filed. Enough is enough.

The determination of whether a stay should issue is informed by four factors: (1) likelihood of success on appeal; (2) irreparable injury to the infringer absent a stay; (3) substantial injury to the patent holder if the stay is granted; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770 (1987). The key inquiry is the likelihood of success, as that is weighted against the parties' interests. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1993). Here, each of the four elements for determining whether a stay should be granted weighs heavily against a stay.[6]

### A.    The Likelihood of Success Weighs Against Issuing a Stay.

Fairchild spends nine pages of its opposition brief rehashing its JMOL arguments and previewing its appeal. [*See* D.I. 640 at 19-28.] However, its entire argument is predicated on the

---

[5]    Fairchild uses the terms "future price erosion" and "future lost profits" as if they were interchangeable in an effort to make this Court believe that the jury awarded Power Integrations "future lost profits" related to future sales by Fairchild. *See* D.I. 640 at 12-14, 31. However, as Mr. Troxel explained to the jury, there were four types of damages: (1) past "lost profits from lost sales," (2) "past price erosion," (3) "future price erosion," and (4) "reasonable royalty on all sales by Fairchild not included in the lost profits." *See* D.I. 418 (Trial Tr. 10/4/06) at 785:4-17. At no point did Power Integrations present evidence of damages related to anticipated ongoing infringing sales by Fairchild.

[6]    Fairchild does not argue in its brief that public policy weighs in its favor. In fact, as Power Integrations argued in its opening brief on this matter, there is a strong public interest in preserving the patent system and enforcing patent rights. D.I. 565 at 19-20. Power Integrations incorporates its arguments with respect to public policy favoring the grant of an injunction as also weighing against a stay. *See id.*

potential for success with respect to claim construction. Fairchild argues that because of the "high" reversal rate at the Federal Circuit with respect to claim construction, this Court should essentially second guess itself and presume that it incorrectly construed the terms.[7] [*See id.* at 19-21.] However, by that logic, no patentee would ever be entitled to an injunction in a patent case because of the mere chance of reversal. The Supreme Court's decision in *eBay* did not create such a regime. *See* 126 S. Ct. 1837. Instead, *eBay* affirmed that district courts should use the same basic test and long-established principles for evaluating injunctions after a finding of infringement. *Id.* at 1841. In view of those principles and because, as explained in detail in Power Integrations' oppositions to Fairchild's post-trial motions, Fairchild's arguments on the liability issues lack any merit, Fairchild simply cannot establish that it has a likelihood of succeeding on the merits of any appeal.

Fairchild next seeks to rely on the pending reexaminations to justify a stay. Fairchild's reliance on general *statistics* to argue that, in the specific case of Power Integrations' patents, the reexamination will result in an "amended or rejected" claim should be dismissed outright, because it shows a complete lack of understanding of the nature of statistics.[8] Fairchild next argues that the different standards between the PTO and a trial court for determining validity should mean that *any time* a reexamination is pending, a court should stay the injunction. However, this Court has held precisely the opposite. In fact, this Court has stated that it was *because* of the different standards used in the PTO and in a jury trial that it was "not persuaded that the ongoing reexamination proceeding triggers a stay of the injunction." *ArthroCare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 620 (D. Del. 2004), *rev'd on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005). In *ArthroCare,* this Court denied the stay because the jury had

---

[7]    And as noted above, Fairchild's only basis for its "likelihood of success" arguments with respect to the '366 and '851 patents is claim construction. Fairchild filed no substantive JMOL motions on infringement or validity of these patents.

[8]    While statistics help to understand the probable outcomes for a large set of circumstances, they cannot be used to predict the outcome of any specific circumstance. For example, if a fair coin has landed on heads ten times in a row, that does not mean there is a greater than a 50% chance the next toss will be heads. Roberta Garner, *The Joy of Stats: A Short Guide to Introductory Statistics in the Social Sciences* 100 (2005) ("If it is a fair coin, the probability on the next toss remains exactly 50/50.").

carefully deliberated on validity, the court reviewed the verdict in post trial motions and found it to be supported by the evidence, and concluded that there was little chance that the infringer would be successful on appeal. *Id.* Similarly, Power Integrations' patents have been tested by a jury, and found to be valid and willfully infringed. When this Court considers this motion, it will have already properly rejected each of Fairchild's post trial motions on liability as well[9]. Just as in *ArthroCare*, this Court should reject Fairchild's attempt to stay an injunction merely because a reexamination is pending. *See id.* In addition to *ArthroCare*, the Federal Circuit, albeit in an unpublished opinion, has rejected Fairchild's logic that reexamination requires a stay. *Magnesystems Inc. v. Nikken, Inc.*, 36 F.3d 1114, 1994 WL 492511 (Fed. Cir. Aug. 30, 1994) (rejecting infringer's request to stay a permanent injunction pending reexamination).

Fairchild makes an additional argument that a stay should issue because it believes the reexamination will be completed by November of this year, given the average reexamination takes 23.7 months to complete. [*See* D.I. 640 at 30.] Fairchild's timeline is wildly optimistic. More recent studies have shown that patents emerging from reexamination in 2006 and 2007 took on average just under five years. [Ex. 6 (printed from article posted 1/4/08 on the "Patently-O" patent law blog).] That means that, in general, patents entering the reexamination process in 2001 and 2002 are just now emerging. Because the number of reexaminations has continued to climb every year since 2002, it is *more* likely that, unless the trend unexpectedly reverses itself, reexaminations will take in excess of five years for patents that have more recently entered the process. [*See id.*] Thus, for patents that entered the process in 2006 (like Power Integrations' patents), the process can be expected to take more than five years to complete. Power Integrations' patents thus will likely not emerge from reexamination until 2011. In fact, the only chance that the reexamination will be completed by November of this year is if the Patent Office terminates the proceedings in favor of Power Integrations—to date, Power Integrations has not even received an office action. Therefore, at this point, there is

---

[9] Of course, if the Court grants Fairchild's JMOL motions on the merits, this request for injunction is moot.

# REDACTED

simply no way to determine when the reexamination proceedings will in fact conclude, and no reason to believe they will do so on the schedule Fairchild predicts.

Moreover, the timing of the reexamination does not provide any basis for delaying the entry of an injunction. In fact, Fairchild's cited case, *Standard Havens*, explains that if and when the patents are found invalid in the reexamination process, the injunction would immediately become inoperative. *Standard Havens Prods., Inc. v. Gencor Indus.*, 1993 WL 172432, *1 (Fed. Cir. May 21, 1993). Until that time, there is no reason to allow Fairchild to continue its willful infringement based on the highly unlikely scenario that *all* of the relevant patents will be invalidated at some indeterminate point in the future.

**B.    The Lack of Injury to Fairchild and the Potential Irreparable Harm to Power Integrations Weighs Against Issuing a Stay.**

Fairchild spends three pages of its hardship analysis arguing that it would be unfair and

Fairchild's argument is akin to a criminal saying that going to prison would be bad for his reputation. While it may be true that an injunction could impact Fairchild's reputation, this Court's injunction would not be to blame. Instead, the blame rests squarely on Fairchild, whose underlying activities are the basis for the injunction. Years ago Fairchild set in motion a sequence of events when it deliberately chose to infringe and copy Power Integrations' patented technology. Fairchild cannot now complain of "harm" created by its own improper actions.[10]

---

[10]    It is also hypocritical for Fairchild to argue against entry of an injunction based on harm to its business given that Fairchild sought to enjoin virtually all of Power Integrations' products in the Fairchild brought asserting the Beasom '719 patent. *See* Ex. 7 (5/19/06 Amended Complaint) at 3; Ex. 8 (April 11, 2006 press release). In that case, Fairchild sought to enjoin the vast majority of Power Integrations' business, yet Fairchild's witnesses acknowledged in this case that the products in question account for only a small fraction of Fairchild's 20,000+ different products. *See* D.I. 419 (Trial Tr. 10/5/06) at 972:4-5.

# REDACTED

Fairchild next argues that its customers will be harmed b

However, Fairchild has had ample time to switch its customers to non-infringing alternatives. This case, as Fairchild points out in its brief, began in October of 2004. Over three years have passed, and Fairchild has had more than sufficient time to provide non-infringing alternatives and to switch its customer base. As the Federal Circuit noted, an infringer should not be heard to complain that an injunction will damage the business it has built around its own infringing products. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

Fairchild's argument, at its most basic level, is that it should be allowed to continue infringing long enough for it to now finally transition customers from the infringing products, because it acted stubbornly in refusing to provide non-infringing alternatives at an earlier stage. Any complained of hardship is entirely because of Fairchild's own failure—and indeed obstinance—in refusing to provide non-infringing alternatives to its customers sooner in the face of Fairchild's clear willful infringement. Granting a stay would send the message to every accused infringer that it is better to continue infringement and not seek out non-infringing alternatives because doing so can be used later to delay the entry of an injunction. This would be unfair to Power Integrations and run counter to the legal principle that any "hardship" caused by cutting off the flow of infringing products is imposed by law and is not one that should be considered unreasonable. *MGM Well Servs. v. Mega Lift Sys. LLC*, 505 F. Supp. 2d 359, 379-80 (S.D. Tex. 2007). Moreover, any hardship Fairchild suffers is no more than would normally be expected when such an injunction is imposed and it is afforded no weight in the "balance of hardships" analysis. *Commonwealth Scientific and Industrial Research Organisation v. Buffalo Technology Inc.*, 492 F. Supp. 2d 600, 606 (E.D. Tex. 2007).

Fairchild also argues that because Power Integrations has been compensated for "future lost profits through October of 2010" there is no harm in issuing a stay. [D.I. 640 at 31.] However, as demonstrated above, this argument is wrong. *See supra* Part II.B.

Thus, none of the arguments Fairchild makes in its brief actually demonstrates that it will be unreasonably harmed. On the other hand, the harm to Power Integrations due to a stay remains just as significant as it is in the context of whether or not to impose the injunction. If this Court has already determined that an injunction is proper and is now attempting to determine if a stay should issue, then this Court is well aware of the harm Power Integrations will suffer. As such, Power Integrations incorporates all of its reasons for undue hardship and irreparable injury provided under the permanent injunction analysis here. [*See* D.I. 565 at 17-19.]

Fairchild, which began its willful infringement of Power Integrations' patents perhaps as early as 1997, now seeks more time from this Court to continue to allow it to erode Power Integrations' market share and reduce the length of time that Power Integrations may claim the protections of its valid and enforceable patents. Tellingly, Fairchild makes no offer of a bond and no mention of any form of compensation for this additional delay. Fairchild, a multi-billion dollar multi-national, does not seek equity, but instead seeks to continue its flagrant infringement and the accompanying harm against the much smaller Power Integrations without ever being held responsible for its own actions. This Court should not grant Fairchild that opportunity. Fairchild has neither demonstrated a likelihood of success on the merits nor any undue hardship. Therefore, this Court should not issue a stay of the permanent injunction.

## IV.    THE LANGUAGE OF THE INJUNCTION ORDER

Fairchild raises some additional issues with respect to the wording of the proposed injunction order. In response, Power Integrations has modified its proposed order granting an injunction and believes these changes render most of Fairchild's complaints moot.[11] Power Integrations, however, continues to believe that its original proposed language in the injunction order regarding infringement of the "claims" of the patents-in-suit and the scope of its requested notice provision are proper.

---

[11]    A copy of Power Integrations' amended proposed order has been filed contemporaneously.

A.    **Power Integrations Has Updated the Language of the Injunction to Eliminate Most Disagreements Between the Parties.**

1.    **The Phrase "Otherwise Causing"**

Power Integrations agrees to remove the phrase "otherwise causing" from paragraph two. As such, this objection to the form of the injunction is moot.  [*See* D.I. 640 at 16.]

2.    **Foreign Activity Under the Injunction**

In order to address Fairchild's concern about "inartful grammar," Power Integrations agrees to add the word "or" between the words "selling" and "offering to sell" in paragraph two of the injunction.  As such, this objection to the form of the injunction is moot.  [*See id.*] Fairchild's additional requested language is unnecessary and potentially confusing to the public and should not be included.

3.    **Part List**

Because Power Integrations will pursue its rights with respect to Fairchild's e-Series parts separately, the injunction has been updated to reflect two sets of parts: (1) those the jury determined infringed Power Integrations' patents and (2) those that Fairchild admits "would not be colorably different."  [*Id.* at 4 n.5.]  As such, this objection to the form of the injunction is moot.  [*See id.* at 2-11.]

4.    **The Expiration Date of the Injunction Has Been Updated to Properly Reflect the Expiration of the Patents at Issue.**

Fairchild also objects to the expiration date of the injunction.  Power Integrations never intended the injunction to have effect beyond the proper expiration dates of the patents-in-suit. In view of the error in calculation of the expiration date of the '366 patent pointed out by Fairchild, Power Integrations has amended the language of the injunction to make clear that the injunction for each patent terminates separately on the proper expiration date of each patent.  As such, Fairchild's objection to the injunction based on the date of expiration is now moot.  [*See* D.I. 640 at 15.]

13

**B.    Power Integrations Is Entitled to an Injunction on "the Patent."**

Fairchild argues, without any legal support or case law, that the injunction should be explicitly limited to only those claims specifically adjudicated by the jury. This approach is incorrect, as this Court has declined to enjoin infringing activity so narrowly in the past. For example, in *Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.*, 2004 WL 856595 (D. Del. Apr. 12, 2004), the patentee suggested an injunction prohibiting the defendant "from making, using, selling, or offering to sell the products adjudged to have infringed the TTI Patents, including, *but not limited to*, Viquin, Glyquin, and Glyquin XM." 2004 WL 856595, *3 n.1 (D. Del. Apr. 12, 2004) (emphasis added). Although the Court struck the words "but not limited to" from the proposed order, the injunction was not limited to specific claims. *Id.* at *4. The entire injunction entered in that case was as follows:

> NOW THEREFORE, IT IS HEREBY ORDERED that ICN, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, shall be permanently enjoined from infringing, either directly, by contribution, or by inducement, **the '157 and '776 patents**, and from making, using, selling, or offering to sell the products adjudged to have infringed **the '157 and '776 patents**, including Viquin, Glyquin, and Glyquin XM.

*Id.* (emphasis added).

Moreover, from the beginning of the lawsuit, Fairchild was on notice—in both the Initial Complaint and the First Amended Complaint—that Power Integrations would seek an injunction on "any device that infringes *any claim* of the '851, '876, '366, or '075 patents." [D.I. 35 at 6 (emphasis added); *see also* D.I. 1 at 6.] At no time during the course of the litigation did Fairchild move to strike the pleading, seek to modify the pleading, or attempt to argue to this Court that such relief would be unwarranted. As such, Fairchild would not be prejudiced by entry of an injunction against infringing the patent, which Power Integrations has requested from the start. Moreover, limiting the injunction to only the claims litigated fails to account for the fact that Power Integrations was prepared to litigate eighteen claims of the various patents. [*See* D.I. 282 at 26:17-27:25.] Yet Fairchild insisted that the Court limit the number of claims that

14

# REDACTED

Power Integrations could actually bring before the jury. [D.I. 330 (requiring Power Integrations to reduce the number of asserted claims).]

Limiting the injunction to the specific claims adjudicated at trial would be tantamount to requiring Power Integrations to file a new lawsuit to enjoin infringement of the additional claims of the patents even though Power Integrations sought to do just that in the present lawsuit. The injunction should simply issue against infringement of the asserted patents, as this Court has done before and which Power Integrations requested in its Prayer for Relief. [*See* D.I. 35 at 6.] However, should this Court determine that the language of the injunction should reference specific claims, then the injunction at the very least should include all of the claims Power Integrations specifically asserted during the case to be infringed, even though its specific proofs at trial were limited to a sub-set of these claims.[12]

### C.    The Notice Provision Is Narrowly Tailored and Appropriate for the Circumstances of this Case.

Fairchild's final argument is that the notice provision contained in paragraph four of the proposed injunction is overly broad and burdensome because "it is unbounded in time and because Fairchild has no way of identifying all of the third parties." [D.I. 640 at 17.] However, Fairchild's argument is disingenuous at best. Fairchild knows who all of its own customers and distributors are, as Fairchild has sent them letters in the past. [D.I. 640 at 29

It is not burdensome for Fairchild to make reasonable efforts to contact its own customers and to ask its distributors for their list of purchasers, within the lifetime of the infringing product lines.

Moreover, Fairchild has disingenuously represented the status of the litigation with respect to its products on several occasions. For example, Fairchild recently moved to strike a declaration from Power Integrations' circuit expert regarding additional parts that include the

---

[12]    Power Integrations asserted claims 1, 2, 4, 10, 11, 13, and 16 of the '851 patent, claims 1, 2, 9, 10, 14, and 16 of the '366 patent, and claims 1, 17, and 19 of the '876 patent. *See* D.I. 258 at 5.

# REDACTED

infringing circuitry, arguing Power Integrations had no way to determine whether the products infringed [D.I. 593], but

Fairchild has clearly attempted to use the differences in part numbers, and assertions that these parts were not "accused" by Power Integrations, to continue to sell products it knew were no different than the parts found by the jury to infringe.

Fairchild's newly-revealed extensive prior contacts with customers regarding this suit demonstrate that contacting these customers is not unnecessarily burdensome, and Fairchild's previous inability to convey the whole truth regarding its infringing parts demonstrates that the current notice provision is neither overbroad nor unwarranted. The proposed notice provision is specifically tailored to the parts to which the injunction applies. Fairchild knows its customers and distributors and can easily obtain the list of third-parties to whom its own products have been sold by those distributors. Thus, this Court should retain the notice provision in paragraph four of the proposed injunction.

## V.    CONCLUSION

Power Integrations has addressed the majority of Fairchild's concerns with respect to the scope and form of the permanent injunction. As such, no true dispute remains over the propriety of issuing an injunction and this Court should grant Power Integrations' Motion for Entry of Permanent Injunction as represented in the modified proposed order. Furthermore, because Fairchild has not demonstrated, nor could it demonstrate, either a likelihood of success on the merits or that it will be substantially harmed by the entry of the injunction, this Court should deny Fairchild's request for a stay.

Dated:  January 16, 2008                  FISH & RICHARDSON P.C.

                                          By:  */s/ Kyle Wagner Compton*
                                              William J. Marsden, Jr. (#2247)
                                              Kyle Wagner Compton (#4693)
                                              919 N. Market Street, Suite 1100
                                              P.O. Box 1114
                                              Wilmington, DE  19899-1114
                                              Telephone: (302) 652-5070
                                              Email:  marsden@fr.com
                                              Email:  kcompton@fr.com

                                              Frank E. Scherkenbach
                                              225 Franklin Street
                                              Boston, MA 02110-2804
                                              Telephone: (617) 542-5070

                                              Howard G. Pollack
                                              Michael Headley
                                              500 Arguello Street, Suite 500
                                              Redwood City, CA 94063
                                              Telephone: (650) 839-5070

                                          ATTORNEYS FOR PLAINTIFF
                                          **POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2008, a true and correct copy of PLAINTIFF

POWER INTEGRATION, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR ENTRY

OF A PERMANENT INJUNCTION was caused to be served on the attorneys of record at the

following addresses as indicated:

**BY HAND AND ELECTRONIC MAIL**
John G. Day, Esq.
Steven J. Balick, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

**BY HAND AND ELECTRONIC MAIL**
G. Hopkins Guy, III, Esq.
Bas de Blank, Esq.
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA  94025

Attorneys for Defendants
FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC. and
FAIRCHILD SEMICONDUCTOR
CORPORATION

*/s/ Kyle Wagner Compton*
Kyle Wagner Compton

80054450.doc

1