IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a    :
Delaware corporation,    :
   :
         Plaintiff,    :
   :
      v.    :  C.A. No. 04-1371-JJF
   :
FAIRCHILD SEMICONDUCTOR    :
INTERNATIONAL, INC., a Delaware:
corporation, and FAIRCHILD    :
SEMICONDUCTOR CORPORATION, a    :
Delaware corporation,    :
   :
         Defendants.    :

---

Frank E. Scherkenbach, Esquire of FISH & RICHARDSON P.C., Boston, Massachusetts.
Howard G. Pollack, Esquire and Michael R. Headley, Esquire of FISH & RICHARDSON P.C., Redwood City, California.
William J. Marsden, Jr., Esquire and Kyle Wagner Compton, Esquire of FISH & RICHARDSON P.C., Wilmington, Delaware.

Attorneys for Plaintiff.

G. Hopkins Guy, III, Esquire; Vickie L. Feeman, Esquire; Bas de Blank, Esquire; Gabriel M. Ramsey, Esquire and Brian H. VanderZanden, Esquire of ORRICK, HERRINGTON & SUTCLIFFE LLP, Menlo Park, California.
Steven J. Balick, Esquire; John G. Day, Esquire and Lauren E. Maguire, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Defendants.

---

**MEMORANDUM OPINION**

December 12, 2008
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is a Motion For Remitter [sic], Judgment As A Matter Of Law, Or, In The Alternative, New Trial Concerning Damages (D.I. 613) filed by Defendants, Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively, "Fairchild"). For the reasons set forth below the Court will grant the Motion to the extent that it requests a remittitur and reduce the amount of damages awarded to Power Integrations to $6,116,720.58, an amount representing 82% of the jury's damages verdict.

## BACKGROUND

The background relevant to this action has been set forth by the Court in previous decisions rendered in this case. (D.I. 231, 683). By way of summary, a jury returned a verdict in favor of Power Integrations, Inc. ("Power Integrations") on the issues of infringement and willful infringement. The jury awarded Power Integrations damages in the total amount of $33,981,781, representing: (1) $14,981,828 in lost profits from lost sales related to the '876 and '851 patent only, (2) $1,952,893 in past lost profits from price erosion, (3) $13,018,379 in future lost profits from price erosion, and (4) $4,028,681 in reasonable royalties.

A second, different jury also returned a verdict in favor of Power Integrations on the validity of the patents-in-suit.

2

Inequitable conduct was tried before the Court, and the Court
concluded that Fairchild failed to establish that the patents
were unenforceable due to inequitable conduct.  (D.I. 683, 684).

**STANDARD OF REVIEW**

**I.   Judgment As A Matter Of Law**

To prevail on a renewed motion for judgment as a matter of
law following a jury trial, the moving party "'must show that the
jury's findings, presumed or express are not supported by
substantial evidence or, if they were, that the legal conclusions
implied [by] the jury's verdict cannot in law be supported by
those findings.'"  Pannu v. Iolab Corp., 155 F.3d 1344, 1348
(Fed. Cir. 1998) (citations omitted).  In assessing the
sufficiency of the evidence, the court must give the non-moving
party, "as [the] verdict winner, the benefit of all logical
inferences that could be drawn from the evidence presented,
resolve all conflicts in the evidence in his favor, and in
general, view the record in the light most favorable to him."
Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1348 (3d
Cir.), reh'g en banc denied, 1991 U.S. App. LEXIS 16758 (3d Cir.
1991); Perkin-Elmer Corp, 732 F.2d at 893.

The court may not evaluate the credibility of the witnesses,
may not weigh the evidence, and may not substitute its view of
the evidence for the jury's view.  Price, 40 F. Supp. 2d at 550.
Rather, the court must determine whether the evidence reasonably

3

supports the jury's verdict. <u>Dawn Equip. Co. v. Kentucky Farms,</u>
<u>Inc.</u>, 140 F.3d 1009, 1014 (Fed. Cir. 1998). Motions for judgment
as a matter of law are granted "sparingly" and only in those
circumstances in which "the record is critically deficient of the
minimum quantum of evidence in support of the verdict." <u>Johnson</u>
<u>v. Campbell</u>, 332 F.3d 199, 204 (3d Cir. 2003).

## II.  New Trial

Pursuant to Federal Rule of Civil Procedure 59(a), a new
trial may be granted on all or part of the issues "for any of the
reasons for which new trials have heretofore been granted in
actions at law in the courts of the United States." Unlike a
motion for judgment as a matter of law, the trial court is not
required to construe the evidence in the light most favorable to
the verdict winner when considering whether a new trial is
warranted.

The decision to grant a new trial lies within the discretion
of the trial court. In exercising this discretion, the trial
court should consider the nature and character of the trial,
including its complexity. <u>Lind v. Schenley Industries, Inc.</u>, 278
F.2d 79, 89 (3d Cir.), <u>cert. denied</u>, 364 U.S. 835 (1960).
Although the jury's verdict should be scrutinized by the trial
court more carefully in long, complex cases dealing with material
outside the normal experience of most jurors, <u>id.</u>, the court
should not substitute its view of the evidence for that of the

4

jury's assessment. A new trial should only be granted when allowing a verdict to stand would result in a miscarriage of justice. Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352 (3d Cir.1991). In other words, a court should not disturb a verdict unless the verdict, "on the record, cries out to be overturned or shocks [the court's] conscience." Id. at 1353 (citing EEOC v. Delaware Dep't of Health & Social Serv., 865 F.2d 1408, 1413 (3d Cir.1989)).

## III. Remittitur

When a jury's verdict is so grossly excessive as to shock the conscience, a trial court may, in the alternative to a new trial, order a remittitur. Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1038 (3d Cir.1987). A verdict shocks the conscience when it bears no rational relationship to the evidence presented at trial. Gumbs v. Pueblo Int'l, Inc., 823 F.2d 768, 773 (3d Cir. 1987). Although the decision to grant a remittitur lies within the discretion of the district court, a trial court may not reduce the damages award merely because it would have granted a lesser amount than that which the jury granted. If remittitur is appropriate, the trial court should reduce the damage award to the highest amount the jury could have properly awarded based on the relevant evidence. IPPV Enter. LLC v. Echostar Comms. Corp., 191 F. Supp. 2d 530, 572 (D. Del. 2002).

## DISCUSSION

By its Motion, Fairchild contends that the damages awarded by the jury are legally incorrect and without evidentiary support. Specifically, Fairchild contends that Power Integrations cannot recover damages for infringement of a patent that occurred entirely outside of the United States, yet the jury improperly awarded Power Integrations "worldwide" damages, which were not caused by any conduct by any party within the United States. In support of its argument, Fairchild directs the Court to the text of 35 U.S.C. § 271(a), and the Supreme Court's recent decision in Microsoft Corp. v. AT&T Corp., 127 S. Ct. 1746, 1750 (2007), as well as nearly 150 years of Supreme Court precedent.

In this case, the jury clearly adopted the measure of damages posed by Power Integrations' expert, Dr. Troxel. Dr. Troxel testified at trial, that his calculations were based on a worldwide sales measure of damages. However, Power Integrations contends that this worldwide sales measure of damages does not equate to infringement activities that occurred outside the United States. Rather, Power Integrations contends that it presented evidence of Fairchild's infringement within the United States, "including direct sales or offers to sell infringing parts in the United States, the manufacturing of infringing parts in the United States and offers for sale from the Untied States that result in actual sales abroad, and inducing and contributing

6

to importation of infringing parts into the United States by, among other things, affirmatively indemnifying foreign customers like Samsung against U.S. infringement claims." (D.I. 646 at 10-11). Relying on the Federal Circuit's decision in <u>Rite-Hite v. Kelley</u>, 56 F.3d 1538 (Fed. Cir. 1995), Power Integrations contends that this evidence supports the jury's verdict, because compensatory damages under 35 U.S.C. § 284 are broadly construed to include reasonably foreseeable damages resulting from lost sales of a competitive product.

As a threshold matter, the Court notes that its previous decisions pertaining to this issue have not directly addressed the substance of the questions presented here. The Court's first ruling was made in the context of discovery and the liberal discovery policies under the Federal Rules of Civil Procedure. (D.I. 54). The Court's later rulings merely expressed the Court's view that questions of fact remained on the issues, such that the Court preferred a full trial on the merits of the issue before making a ruling. (D.I. 266, 384). Having had a full exposition of the evidence through trial, the Court is, at this juncture, able to evaluate whether Power Integrations has established its entitlement to the jury's award of damages which is based on a worldwide sales figure.

In pertinent part, Section 271(a) provides:

whoever without authority makes, uses, offers to sell, or sells any patented invention, <u>within the United</u>

        States, or <u>imports into the United States</u> any patented
        invention during the term of the patent therefor,
        infringes the patent.

35 U.S.C. § 271(a) (emphasis added).  Section 284 also provides,

in relevant part:

        Upon a finding for the claimant the court shall award
        the claimant damages to compensate for the
        infringement, but in no event less than a reasonable
        royalty for the use made of the invention by the
        infringer . . . .

35 U.S.C. § 284.  It is well-established that our patent laws

only operate domestically, such that the use of a patented

article outside the United States does not constitute an act of

infringement, and a patentee has no right to compensation for the

profit or advantage derived from such foreign use.  <u>Microsoft</u>,

127 S. Ct. at 1758; <u>Brown v. Duchesne</u>, 60 U.S. 183, 195-196

(1856).

        That having been said, the Supreme Court has also recognized

that an award of "damages adequate to compensate for

infringement" under Section 284 is to be broadly construed to

allow for "full compensation for any damages [the complainant can

prove] he suffered as a result of the infringement."  <u>General</u>

<u>Motors Corp. v. Devex Corp.</u>, 461 U.S. 648, 654-655 (1983).  The

Supreme Court has further explained that Section 284 damages are

measured by the patentee's loss due to the infringement, and not

upon the infringer's gain:

        "[D]amages" [that] may be recovered [under § 284] have
        been defined by this Court as "compensation for the

                                                                8

> pecuniary loss he (the patentee) has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts." They have been said to constitute "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." The question to be asked in determining damages is "how much had the Patent Holder . . . suffered by the infringement. And that question (is) primarily: had the Infringer not infringed, what would [the] Patent Holder . . . have made?"

Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476,

507 (1964) (citations omitted). Recognizing the Supreme Court's

broad approach to damages and balancing that approach with "the

reasonable limits of liability encompassed by general principles

of law," the Federal Circuit concluded that a "reasonable,

objective foreseeability" test should be applied to patent

damages. As the Federal Circuit explained:

> If a particular injury was or should have been reasonably forseeable by an infringing competitor in the relevant market, broadly defined, that injury is generally compensable absent a persuasive reason to the contrary. . . . Being responsible for lost sales of a competitive product is surely forseeable; such losses constitute the full compensation set forth by Congress, as interpreted by the Supreme Court, while staying well within the traditional meaning of proximate cause.

Rite-Hite, 56 F.3d at 1546-47.

Although Fairchild attempts to pit the Supreme Court's

decision in Microsoft and the years of Supreme Court precedent

preceding it against the Rite Hite decision, the Court does not

believe the cases are at odds with one another. In addition, the

9

Court does not read the parties' briefs as waging a genuine dispute concerning these basic legal principles.  Rather, the Court views the heart of the parties' disagreement to be the characterization of the evidence adduced at trial.

Power Integrations focuses the Court on the evidence concerning Fairchild's infringing activity in the United States and contends that from this evidence, it was appropriate for the jury to award damages based on a worldwide loss of sales and profits from price erosion.  Stated another way, Power Integrations contends that based on Fairchild's infringement in the United States, it was foreseeable that Power Integrations would lose sales worldwide.

The weakness of Power Integrations' argument is that the worldwide sales measure of damages encompasses Fairchild's activities outside the United States which cannot be considered infringing under Microsoft.  In other words, the amount of damages testified to by Dr. Troxel and adopted by the jury is not actually rooted in Fairchild's infringing activity in the United States as Dr. Troxel made clear on cross-examination.  Dr. Troxel's estimate of $30 million in damages was not related to parts that were manufactured, used, or sold in the United States by Fairchild, and was not based on parts that were imported into the United States by Fairchild or anyone else.  In addition, Dr. Troxel testified on cross-examination that he did not quantify an

amount of damages caused by Fairchild based on any offer for sale by Fairchild in the United States. Thus, while the testimony may have been sufficient to establish infringing activity by Fairchild in the United States, the Court concludes that the damages estimates offered by Dr. Troxel exceeded that scope. (Tr. 10/4/06 at 838:1-840:20).

Having concluded that no legal basis supports the jury award for damages in the amount of $33 million, the Court must consider the alternatives presented at trial. Fairchild concedes that it made, sold or imported $765,724 worth of accused devices in the United States, and Fairchild contends that the Court should apply the jury determined royalty rate of 15% to this amount for a total award of $114,858.60. Fairchild argues alternatively, that the Court should reduce the $33 million in damages by 82%. Fairchild's argument in this regard is based on Power Integrations' argument at trial that 18% of the devices sold outside the United States are later imported into the United States by unnamed third parties. Accepting Power Integrations' argument, Fairchild contends that this necessarily means that 82% of Fairchild's devices are never imported into the United States, and therefore, Power Integrations' $30 million in damages should be reduced by 82%.

Power Integrations contends that its use of an 18% figure is reasonable and properly based on an extrapolation of data

11

concerning the number of cell phones imported into the United States. Power Integrations contends that reasonable jurors could justly infer that the percentage of cell phones imported into the United States approximates the percentage of chargers imported.

Power Integrations' importation argument rests largely on the theory of inducement of infringement under 35 U.S.C. 271(b).[1] To establish liability for inducing infringement, a plaintiff must establish that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringement. These requirements may be shown by direct or circumstantial evidence. See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1365 (Fed. Cir. 2004).

In this case Power Integrations introduced evidence that Fairchild indemnified its largest off-shore customers for potential infringement into the United States, including entering into a joint defense agreement with Samsung and one of its largest cell phone charger subcontractors, Dongyang. (PX 178;

---

[1] Power Integrations also raises an argument based on contributory infringement; however, the Court need not address that argument in light of the Court's conclusion regarding inducement of infringement.

12

Tr. 10/4/06 at 923:22-926:6). Power Integrations also introduced sufficient evidence to demonstrate that companies like Samsung import Fairchild's accused devices into the United States, and that Fairchild was aware of this importation. (Tr. 10/5/06 at 1015:2-20; 10/4/06 at 751:21-754:13, 735:5-20, 768:4-24; D.I. 613 at 12). Construing this evidence in the light most favorable to Power Integrations and drawing all reasonable inferences from that evidence in support of Power Integrations, the Court concludes that the jury's verdict, to the extent it was based on inducement of infringement, was supported by the evidence. The Court further concludes, based on the record evidence, that there is a sufficient evidentiary basis to support Power Integrations' argument that 18% of Fairchild's infringing products are imported into the United States. However, the Court also agrees with Fairchild that acceptance of this figure necessarily means that 82% are not imported into the United States. Accordingly, the Court will reduce the jury's damages award by 82%, representing that portion of the infringing products not imported into the United States.

## CONCLUSION

For the reasons discussed, the Court will grant Fairchild's Motion For Remitter [sic], Judgment As A Matter Of Law, Or, In The Alternative, New Trial Concerning Damages (D.I. 613) to the extent that it requests remittitur and reduce the jury's verdict

to $6,116,720.58, an amount representing an 82% reduction from the amount awarded by the jury.

An appropriate Order will be entered.