IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a :
Delaware corporation, :
 :
   Plaintiff, :
 :
   v. : C.A. No. 04-1371-JJF
 :
FAIRCHILD SEMICONDUCTOR :
INTERNATIONAL, INC., a Delaware:
corporation, and FAIRCHILD :
SEMICONDUCTOR CORPORATION, a :
Delaware corporation, :
 :
   Defendants. :

---

Frank E. Scherkenbach, Esquire of FISH & RICHARDSON P.C., Boston,
Massachusetts.
Howard G. Pollack, Esquire and Michael R. Headley, Esquire of
FISH & RICHARDSON P.C., Redwood City, California.
William J. Marsden, Jr., Esquire and Kyle Wagner Compton, Esquire
of FISH & RICHARDSON P.C., Wilmington, Delaware.

Attorneys for Plaintiff.

G. Hopkins Guy, III, Esquire; Vickie L. Feeman, Esquire; Bas de
Blank, Esquire; Gabriel M. Ramsey, Esquire and Brian H.
VanderZanden, Esquire of ORRICK, HERRINGTON & SUTCLIFFE LLP,
Menlo Park, California.
Steven J. Balick, Esquire; John G. Day, Esquire and Lauren E.
Maguire, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Defendants.

---

**MEMORANDUM OPINION**

July 22, 2010
Wilmington, Delaware

Farnan, District Judge.

This patent infringement action was filed by Plaintiff, Power Integrations, Inc. ("Power Integrations") against Defendants, Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively, "Fairchild"). The Court held two jury trials, one trial on the issue of infringement and one trial, before a separate jury, on the issue of invalidity.  In each trial, the jury returned a verdict in favor of Power Integrations.[1]

After the infringement trial concluded, but before the validity trial, the Federal Circuit issued its en banc decision in In Re Seagate, 497 F.3d 1360.  Fairchild moved for a new trial on willful infringement in light of Seagate, and the Court granted Fairchild's motion.  A new trial was held before the Court on the issue of willfulness.  This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law regarding the issue of willful infringement.

I.   **DISCUSSION**

A.   Applicable Legal Principles

To establish willful infringement,

a patentee must show by clear and convincing evidence
that the infringer acted despite an objectively high

---

[1]     The background relevant to this action has been set forth fully by the Court in previous decisions entered in this case.  (D.I. 231, 683).  This case enjoys a detailed and lengthy history as documented on Westlaw.

1

> likelihood that its actions constituted infringement of
> a valid patent.  The state of mind of the accused
> infringer is not relevant to this objective inquiry.
> If this threshold objective standard is satisfied, the
> patentee must also demonstrate that this objectively-
> defined risk (determined by the record developed in the
> infringement proceeding) was either known or so obvious
> that it should have been known to the accused
> infringer.

In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)

(citation omitted).  An objectively high likelihood that the

infringer's actions constituted infringement of a valid patent

equates with a showing of objective recklessness.  Id.; see also

Minks v. Polaris Indus., 546 F.3d 1364, 1380 (Fed. Cir. 2008).

In making these determinations, the Court must examine the

totality of the circumstances.  Broadcom Corp. v. Qualcomm Inc.,

543 F.3d 683, 700 (Fed. Cir. 2008).

In ordering the retrial on willful infringement, the Court

observed a tension in the case law concerning whether the Court

should look to prelitigation conduct only and/or post-litigation

conduct in determining whether infringement was willful.  The

Court summarized this tension as follows:

> In Seagate, the Federal Circuit explained, in the
> context of discussing the idea of shielding trial
> counsel from the waiver that stems from the advice of
> counsel defense, that "willfulness will depend on an
> infringer's prelitigation conduct." 497 F.3d at 1374.
> However, following Seagate, the Federal Circuit
> explained in dicta in Black & Decker, Inc. v. Robert
> Bosch Tool Corp., 260 Fed. Appx. 284 (Fed. Cir. 2008),
> that "both legitimate defenses to infringement claims
> and credible invalidity arguments demonstrate the lack
> of an objectively high likelihood that a party took
> actions constituting infringement of a valid patent."

2

Id. at 291 (providing guidance to the district court on the application of Seagate to willful infringement claims, even though such claims were rendered moot on appeal by Federal Circuit's decision to vacate infringement finding).

Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc., 585 F. Supp. 2d 583, 588 (D. Del. 2008). The Court reconciled the comments in Black & Decker with the prelitigation emphasis in Seagate by concluding that the Court would "focus on the prelitigation conduct of the accused infringer in the first instance but must also taken into account whether the accused infringer maintained plausible or credible defenses to []infringement and invalidity." Id.

Examining the totality of the circumstances in this case, as set forth in the record of these proceedings, the Court concludes that Power Integrations has established by clear and convincing evidence that Fairchild willfully infringed Power Integrations' patents. In reaching this conclusion, the Court finds that the evidence establishes that Fairchild acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and that Fairchild knew or should have known of this objective risk. As a general matter, patents are presumed valid. Power Integrations has established, and Fairchild has not disputed that, prior to and through the filing of this action, Fairchild was aware of the patents-in-suit. D.I. 612, Exh. A (Fairchild's June 30, 2005 Supplemental Response to Power

3

Integrations' Interrogatory No. 13); Tr. (Jang) 591:11-15; Tr.
9/8/05 at 66:4-18; Tr. (Lim) 9/13/2005) at 53:9-24; Tr. (Choi)
87:8-25; PX-306; PX-257. The evidence further demonstrates no
objective reason, prelitigation, on the part of Fairchild to
believe the asserted patents were invalid. In fact, the evidence
shows that Fairchild recognized the importance of Power
Integrations' patents to the industry, describing them as "key
patents" with "epoch making" technology, PX-304 at FCS1010471,
and further, that Fairchild knew or should have known that its
products would infringe. Specifically, the evidence demonstrates
that Fairchild either (1) engaged in a meticulous study of
products made with the patented features through detailed reverse
engineering efforts and then blatantly copied the products
without any regard to the high likelihood of infringement that
would arise from such blatant copying, or (2) in the case of
other patents, completely disregarded the substance of at least
some of the patents-in-suit, making little or no effort to ensure
that their products did not infringe. Given these circumstances,
the Court concludes that both of these types of actions
demonstrate an objectively high risk of infringement.

With respect to the '075 patent, the evidence shows that
Fairchild knew, through its reverse engineering efforts, that
Power Integrations competing products practiced the grounded PTOP
invention claimed in the '075 patent. Tr. (Jeon) 545:21-546:4,

4

551:3-9, 552:13-554:20, 563:13-23, 557:13-16; Tr. (Jang) 574:1-4; PX-289, PX-291, 292, 293.   Fairchild's Process Development Group drafted a technical report dated March 3, 1999 proposing three options for Fairchild to take with respect to this patent:  (1) continue to develop two-chip package products, (2) seek a license to the '075 patent, or (3) change the design of the Fairchild products to a floating PTOP layer as the only way to avoid the proposed LDMOS structure which was known to be identical to what was claimed in the '075 patent.  PX-296, Tr. (Jeon) 568:2-23. Although Fairchild attempted a floating PTOP, it determined that it did not function as well as the grounded PTOP.  PX-275 at FCS189652.  Faced with this failed attempt and despite its knowledge of the '075 patent and its importance to the industry, Fairchild chose the option that presented the most objectively high risk of infringement, namely to continue the development of its product by copying, through reverse engineering, the methods and features claimed in the patent.  PX-296 at FCS1330833; Tr. (Shields) 386:9-401:6; Tr. (Jeon) 548:22-549:3.

Fairchild suggests that it concluded that the '075 patent did not cover DMOS structures, and thus, Fairchild had a valid and objective basis for believing its products would not infringe since they were made by a DMOS process.  Tr. (Jeon) 566:11-21. In support of this position, Fairchild offers the testimony of Mr. Jeon, the most knowledgeable person at Fairchild concerning

the development of the SDG3 process and Fairchild's review of the
'075 patent.  However, the evidence does not support Mr. Jeon's
testimony.  Mr. Jeon could not remember if he or his colleagues
memorialized their alleged DMOS conclusions in any form, and
could not remember if he informed anyone in Fairchild's
management concerning the alleged belief of Fairchild engineers
that the patent was not being infringed.  Tr. (Jeon) 565:2-567:1,
PX-296.  Indeed, contrary to Mr. Jeon's testimony, the
contemporaneous documentary evidence shows that Fairchild knew
its proposed LDMOS structure was "identical to what is claimed"
in the '075 patent and that the "LDMOS of PI presents a patent
issue."  PX-232 at FCS354643.  Notably, Fairchild referred to
PI's patented PTOP structure as "LDMOS" which was the same term
Fairchild engineers used in describing their own products.  PX-
293 at FCS 1685529-31; FCS1685533-34; FCS-168550; PX-274 at
FCS19435.  Further, no documentary evidence exists suggesting
that Fairchild believed its proposed LDMOS would not infringe the
'075 patent.[2]  Fairchild sought no opinions of counsel on
infringement or validity of the '075 patent prelitigation and
memorialized no technical memoranda suggesting non-infringement
prior to this litigation.  Tr. (Jeon) 565:2-567:1, 562:24-563:12,

---

[2]     In fact, the contrary is true because Fairchild's
internal memoranda suggest that the only way to avoid
infringement was by floating the PTOP, and Fairchild repeatedly
referred to the patented PTOP structure as "LDMOS", the same term
Fairchild engineers applied to their own products.

6

573:6-11. While <u>Seagate</u> does not impose an affirmative duty to obtain the opinion of counsel, the Court considers the absence of such objective opinions in this case to weigh heavily in favor of demonstrating an objectively high likelihood of infringement, particularly where, as here, Fairchild was engaged in the whole-sale copying of Power Integrations' patented technology.

As for the post-litigation opinions obtained by Fairchild with regard to the '075 patent, the Court concludes that these opinions are insufficient to overcome the overwhelming evidence of willful infringement presented by Power Integrations.  While the Court considers these opinions in making its willfulness determination, the Court finds them to be of marginal value both because of their post-litigation timing, <u>Seagate</u>, 497 F.3d at 1374, and because the content of each opinion is deficient to render it objective and competent advice of counsel. <u>Jurgens v. CBK, Ltd.</u>, 80 F.3d 1566, 1572 (Fed. Cir. 1996). At least one of the three opinions offered by Fairchild is unreliable, because it was plainly contrary to the facts regarding the structure of Fairchild's devices. DX-136; DX-137 at WOO 1517-1518; <u>Liquid Dynamics Corp. v. Vaughn Co., Inc.</u>, 449 F.3d 1209, 1226 (Fed. Cir. 2006) (affirming finding of willfulness where patentee "presented flaws in [an] opinion's factual basis"). The second opinion, rests on a claim construction contrary to the Court's claim construction. DX-136; DX, 137; DX-480 at FCS1693019-

7

1693020; see Krippelz v. Ford Motor Co., 2009 WL 799493, *5 (N.D.
Ill. Mar. 25, 2009) ("reasonable defenses are limited to those
consistent with [the court's Markman] rulings").  As for the
third opinion of counsel, the Court notes that it was presented
four months before trial and was contrary to the disclosure of
the '075 patent and Fairchild's belief regarding its infringement
as evidenced by the internal Fairchild memoranda discussed
infra.[3]  DX-480.

Similarly, with respect to the '876, '851 and '366 patents,
the evidence demonstrates that Fairchild was aware of the claimed
frequency jittering function, as well as the soft start features.
PX-257; PX-306; Tr. 9/13/05 (Lim) at 53:9-24, Tr. (Choi) 87:8-25.
The importance of the frequency jitter feature was known in the
industry and to Fairchild.  PX-163 at FCS698340-41; Tr.
(Balakrishnan) at 281:10-15, 317:1-14; Tr. (Renouard) 647:2-21.
Customers in the industry sought the Power Integrations'
technology in the products that they purchased.  As a December
2003 e-mail exchange within Fairchild noted, GE used Power
Integrations' chips which practiced the claimed frequency jitter,
and GE inquired as to whether Fairchild was going to be
"developing similar devices."  PX-163 at FCS698340-41.  Fairchild
noted that other suppliers could not win GE's business because

---

[3]     To the extent that these opinions raise what Fairchild
argues are credible and legitimate defenses to infringement, the
Court will address Fairchild's arguments more fully supra.

their products lacked this feature.  Id.

Without any prelitigation, internal documented reason to doubt the validity of much of this patented technology and without seeking the prelitigation opinion of counsel for any of the asserted patents, except the '876 patent, Tr. (Choi) at 88:11-23, 89:8-10, Fairchild proceeded again with its "industrial stalking" measures -- reviewing Power Integrations data sheets, reverse engineering its products, and emulating its marketing collateral, not to avoid infringement and design around the patented features which would have been legitimate competitive behavior, but rather to copy them in violation of Power Integrations' patent rights.  Fairchild incorporated Power Integrations' technology into its products, even going so far as to use the same frequency variation signal to drive the integrated frequency jitter and the integrated soft start features set forth in claim 4 of the '851 patent.  As Power Integrations' expert, Mr. Blauschild, noted at trial, this was "too big a coincidence to say that they come up with that all of a sudden by themselves."  D.I. 558 (Blauschild) at 1044:22-1046:1.

If Fairchild was not busy studying and copying Power Integrations' technology as discussed above, it was essentially ignoring it, which in the Court's view, also rises to the level of objectively reckless behavior.  For example, the evidence

demonstrates that Fairchild's Mr. Jang paid little attention to Power Integrations' '876 patent reviewing only the figures and abstract of the patent and not the full text, which would have revealed that he was implementing a jitter consistent with the voltage-based jitter claimed in the patent.  Tr. (Jang) 592:7-8, 19-593:19, 594:12-20, 591:16-592:8; '876 patent at col. 2:42-55 and claims 17-19.

Fairchild contends that it obtained a prelitigation opinion concerning the validity and potential infringement of the '876 patent and that this demonstrates that Fairchild was not objectively reckless with regard to its infringement of the '876 patent.  However, the evidence presented by Fairchild regarding its reliance on this opinion is lukewarm at best.  Fairchild's Mr. Conrad testified regarding conversations he had with Mr. Schott, Fairchild's director of Intellectual Property, that Fairchild was not infringing; however, Mr. Conrad also testified that Fairchild did not rely on the March 2004 pre-litigation opinion letter in deciding to manufacture and sell the accused products.  Tr. (Conrad) at 1450:10-1451:18; Tr. (Woo) at 1431:14-1432:10.  While the Court does not discount this evidence as going to an objective basis by Fairchild for concluding it was not infringing the '876 patent, in light of the strong evidence of copying in this case, the Court cannot conclude that this evidence negates the evidence of willful infringement adduced by

Power Integrations, which the Court finds to be clear and
convincing.

Similarly, the Court is not persuaded that the post-
litigation opinion letters obtained by Fairchild eviscerate the
evidence on willful infringement presented by Power Integrations.
While the Court considers those opinions as evidence against a
finding of willful infringement, the Court affords them little
weight, again because of their timing, <u>Seagate</u>, 497 F.3d at 1374,
and their content.  As Power Integrations points out, the
opinions regarding the '876 and '851 patents do not address
infringement of claim 1 of the '876 patent and claim 1 of the
'851 patent.  Tr. (Conrad) 912:4-13, 913:3-915:15; Tr. (Morrill)
at 1417:4-17; DX-159; DX-537; DX-482; DX-160; DX-481; DX-536.  To
the extent these opinions raise an anticipation argument, the
Court notes that Fairchild ultimately did not pursue an
anticipation defense at trial.  DX-482 at FCS1693038; D.I. 557,
Tr. (Horowitz) at 828:22-836:8; D.I. 555 (Verdict Form); D.I.
612, Exh. G (VanderZanden e-mail dated 9/17/07).  Though not
dispositive, the Court finds Fairchild's decision to forgo an
anticipation defense and rest its case on obviousness, to be a
factor that undermines the legitimacy of this opinion of counsel
as evidence negating an objectively high risk of infringement,
particularly in light of Fairchild's egregious prelitigation
conduct.  Similarly, the opinion letters regarding the '366

11

patent either fail to address asserted claims of the '366 patent, such as claims 9 and 14 of the '366 patent, and/or fail to construe key phrases in the claim terms such as "soft start circuit."  DX-535; DX-538; DX-483; Tr. (Conrad) 916:11-918:2

Much of the evidence and argument raised by Fairchild to rebut Power Integrations' claim for willful infringement rests on Fairchild's post-litigation conduct, including the opinion letter evidence discussed above and the assertion that Fairchild maintained credible arguments of non-infringement, including plausible and reasonable claim construction disputes, and credible arguments concerning the validity of the patents-in-suit.  Fairchild contends that these valid defenses demonstrate that Fairchild was objectively reasonable and could not have willfully infringed the patents-in-suit.  Fairchild cites, for example, to the Federal Circuit's decision in Cohesive Technologies, Inc. v. Waters Corp., 543 F.3d 1351, 1374 n.4 (Fed. Cir. 2008), for the proposition that a sufficiently close question regarding claim construction forecloses a finding of willfulness.  The Federal Circuit has taken a similar approach in DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314 (Fed. Cir. 2009) ("[T]he record developed in the infringement proceeding in this case, viewed objectively, indisputably shows that the question of equivalence was a close one, particularly insofar as equivalence 'requires an intensely factual

inquiry.'"). However, the Court understands the post-suit,
reasonableness of a parties' defenses to be only one factor among
the totality of the circumstances to be considered in determining
willful infringement.  In the Court's view, a contrary approach
to willful infringement, would negate the ability of a patentee
to prove willful infringement in any hard fought and hotly
contested patent litigation.  In this case, the evidence
establishes that Fairchild engaged in the blatant copying of
Power Integration's patented features, knowing of the features,
and their importance to the industry without adequate
investigation into non-infringement and validity of the patents
prior to the initiation of this action.  The Court concludes that
this evidence weighs more heavily than the post-suit strategy
developed by counsel to avoid a claim of willful infringement,
after such infringement has already occurred.  The Court also
notes the statement in DePuy to the effect that arguments
concerning "copying" and "designing around" are only relevant to
the infringer's mental state under Seagate's second prong.  In
the Court's view, however, the evidence of copying is so strong
in this case and the evidence related to counsel's opinion
letters and measures taken by Fairchild to avoid infringement so
weak, that it is hard to understand how one could objectively
believe such actions would not constitute a high likelihood of
infringement.  In reaching this conclusion, the Court understands

13

that some may consider this analysis to be an overlap between the
objective and subjective components of the <u>Seagate</u> test, but in
this case, the Court does not believe a clear separation is
possible and views the evidence as going to the establishment of
both prongs.

In sum, the Court is persuaded that Power Integrations has
demonstrated by clear and convincing evidence that Fairchild
acted despite an objectively high likelihood that its actions
constituted infringement of a valid patent.  Power Integrations
has further shown that Fairchild knew or should have known of
this objectively defined risk.  Accordingly, the Court concludes
that Power Integrations has established that Fairchild willfully
infringed the patents-in-suit.

## II.   CONCLUSION

For the reasons discussed, the Court concludes that
Fairchild willfully infringed Power Integrations' patents.

An appropriate Order will be entered.