IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 04-1371-LPS |
| | : | |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., and FAIRCHILD SEMICONDUCTOR CORPORATION, | : | |
| | : | |
| Defendants. | : | |

William J. Marsden Jr. and Joseph B. Warden, FISH & RICHARDSON P.C., Wilmington, DE.

Frank E. Scherkenbach, FISH & RICHARDSON P.C., Boston, MA.

Howard G. Pollack and Michael Headley, FISH & RICHARDSON P.C., Redwood City, CA.

    Attorneys for Plaintiffs.

John G. Day, Lauren E. Maguire, and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE.

Blair M. Jacobs and Christina A. Ondrick, PAUL HASTINGS LLP, Washington, DC.

D. Stuart Bartow, PAUL HASTINGS LLP, Palo Alto, CA.

    Attorneys for Defendants.

## MEMORANDUM OPINION

March 24, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

On October 20, 2004, Plaintiff Power Integrations, Inc. ("Power Integrations" or "Plaintiff") filed this patent infringement action against Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively, "Fairchild" or "Defendants") asserting, *inter alia*, U.S. Patent No. 6,229,366 ("the '366 patent"), which originally issued on May 8, 2001. (D.I. 1 at ¶ 19) The Court construed the disputed terms of the original '366 patent on March 31, 2006, finding that the "soft start circuit" was to be construed as a means-plus-function element, subject to 35 U.S.C. § 112, ¶ 6, with the associated structures being those shown in Figures 3, 6, and 9 of the '366 patent. (D.I. 231 at 28-33; D.I. 232 at ¶ 14) After bifurcated jury trials in October 2006 and September 2007 found that Fairchild infringed the '366 patent (D.I. 415 at 4) and that the '366 patent was not invalid (D.I. 555 at 3-4), Fairchild took an appeal to the Federal Circuit. Among the issues Fairchild appealed was this Court's construction of the "soft start circuit." On March 26, 2013, the Federal Circuit issued an opinion reversing this Court's construction of "soft start circuit" as a means-plus-function limitation, and remanding for this Court to "construe those claims according to our instructions and assess what effects, if any, the new constructions have on the validity of those claims" – and, in doing so, to "consider the effects of any amendments made in reexamination." *Power Integrations v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1366 (Fed. Cir. 2013) (D.I. 810 at 27-28). Meanwhile, on November 3, 2011, the '366 patent had emerged from reexamination with independent claims 1-9 amended to recite a "soft start circuit means" instead of a "soft start circuit," an amendment Power Integrations made after a prior art rejection. (*See* D.I. 857 Ex. B at 5-6, 8; D.I. 857 Ex. C at 17-18, 21-22; D.I. 857 Ex. D at 2-3)

1

The parties now ask the Court to construe "soft start circuit" in independent claim 9 and dependent claim 14 of the original '366 patent and to do so in light of the Federal Circuit's remand as well as the new prosecution history, which culminated in the issuance of amended claims containing a "soft start circuit means" limitation. The parties further ask the Court to address whether the new construction of "soft start circuit" is substantially identical to the Court's previous construction of this term – which the Federal Circuit vacated – as resolution of this issue will likely impact the Court's subject matter jurisdiction.

The parties completed briefing on these issues on January 28, 2015. (D.I. 900; D.I. 902; D.I. 904; D.I. 905) The Court heard argument on January 26, 2016. (D.I. 217) ("Tr.")

## I. LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a

2

claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v.*

*Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the

4

pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## II. CONSTRUCTION OF "SOFT START CIRCUIT"

**Power Integrations**
Subject to 35 U.S.C. § 112, ¶ 6.

Functions: construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions

Structures: those shown in Figures 3, 6, and 9 of the '366 patent and described in the specification of the '366 patent at col. 6, ll. 7-17; col. 6, l. 35 - col. 7, l. 18; col. 11, ll. 40-50, and col. 12, ll. 5-10

Alternatively: "an internal soft start circuit that operates independently of the control loop"

| | |
|---|---|
| **Fairchild** "a circuit that minimizes inrush currents at start up" | |
| **Court** "an internal soft start circuit" | |

Section 112, ¶ 6 provides that a patentee may express an element of a claimed invention "as a means or step for performing a specified function without . . . recitin[g] the structure, material, or acts" for performing that function. 35 U.S.C. § 112, ¶ 6. "In exchange for the ability to use a generic means expression for a claim limitation, the [patentee] must indicate in the specification what structure constitutes the means." *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012) (internal quotation marks and citation omitted). Where, as here, a claim term does not use the word "means," the presumption is that means-plus-function claiming has not been used. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*). This presumption may be overcome, and a claim term lacking the word "means" may be construed nonetheless as a means-plus-function term, "if the challenger [i.e., the party seeking means-plus-function construction] demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation marks and citation omitted).

Power Integrations contends that "soft start circuit" should be construed as a means-plus-function term. Fairchild disagrees. The Court agrees with Fairchild that the "soft start circuit" term in the original '366 patent is ***not*** a means-plus-function claim limitation.

Because "soft start circuit" does not include the word "means," it is presumptively ***not*** construed as a means-plus-function term. As the party seeking to overcome this presumption, Power Integrations must demonstrate that the claim term fails to recite sufficiently definite

6

structure or else recites function without reciting sufficient structure for performing that function. *See Williamson*, 792 F.3d at 1349. Given the Federal Circuit's decision in the earlier appeal in this case, Power Integrations cannot meet this burden.

This Court had previously construed "soft start circuit" as a means-plus-function term. (*See* D.I. 231 at 28-33; D.I. 232 at ¶ 14) Fairchild appealed this construction, contending (as it does here) that the term is not properly construed as a means-plus-function term. *See Power Integrations*, 711 F.3d at 1363. In resolving that aspect of the appeal, the Federal Circuit stated that while the functional description relating to this claim term was "less illuminating" than that recited in another Power Integrations patent involved in the same appeal,

> . . . we find that it suggests sufficient structure to an ordinarily skilled artisan. Power Integrations conceded that a skilled artisan would understand the claim limitation as referring to "various soft start circuit structures [which] accomplish the functions recited in the patent claims . . . ." As such, an ordinarily skilled artisan reading the claim limitation in the context of the claimed invention, and in light of the specification, would understand that the limitation connotes sufficiently definite structure for performing the identified functions.

*Power Integrations*, 711 F.3d at 1366 (internal quotation marks and citations omitted). Since the Federal Circuit has already held that the '366 patent recites sufficiently definite structure, Power Integrations cannot show that it lacks such structure. Accordingly, the presumption against means-plus-function claiming cannot be overcome and the term must be construed as ***not*** a means-plus-function term.[1]

---

[1] Power Integrations suggests that because *Williamson*, 792 F.3d at 1339, changed the law with respect to assessing whether means-plus-function claiming has been used, and *Teva v. Sandoz, Inc.*, 135 S. Ct. 831 (2015), changed the law with respect to appellate review of district court subsidiary factual findings made in the context of claim construction, the Federal Circuit's claim construction ruling in *Power Integrations*, 711 F.3d at 1366, is not controlling here. (*See*

7

In arguing for a means-plus-function construction, Power Integrations points to statements the patentee made during the reexamination. In these statements the patentee advocated the view that a means-plus-function construction was "implicit or inherent in the scope of the original claims." (D.I. 903 Ex. B at 17; *see also* D.I. 903 Ex. C at 7) Power Integrations refers to such statements as important, intrinsic evidence. (*See* D.I. 902 at 4-6)

While the Court agrees that these patentee statements are intrinsic evidence, and therefore must be considered as part of the claim construction process, *see 01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1298 (Fed. Cir. 2012); *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1267 (Fed. Cir. 2012),[2] the Court does not find them to merit any significant weight under the circumstances. During the reexamination, the patentee amended the "soft start circuit" term to be a "soft start circuit means" and did so in order to preserve the patent's validity in light of the Examiner's view that the original "soft start circuit" would not be understood by a person of ordinary skill in the art to be a means-plus-function element. *See generally Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) ("[C]laims are interpreted by reference to those that have been cancelled or rejected.") (internal quotation marks and citation omitted); *see also generally Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1382 (Fed.

---

Tr. at 5-9) The Court disagrees and considers itself bound by the precedential opinion of the Federal Circuit **in this very case**, pursuant to which this remand is proceeding.

[2]Initially, Fairchild took the view that the Court should not even consider the patentee's statements during the reexamination. (*See* D.I. 905 at 1-3) At the hearing, Fairchild modified its opposition to the Court's consideration of this evidence. (*See* Tr. at 18) Given the Federal Circuit's express directive that on remand "[t]he court should consider the effects of any amendments made in reexamination," *Power Integrations*, 711 F.3d at 1355, the Court will (as it has) consider the patentee's statements during the reexamination as part of the intrinsic evidence pertinent to the claim construction dispute.

8

Cir. 2005) ("[A] narrowing amendment creates a presumption that the patentee surrendered the territory between the original claims and the amended claims."). During the reexamination, the '366 patent claims were allowed *only* after the "soft start circuit" was amended to be a "soft start circuit means." From this history, the Court concludes that the Examiner (like the Federal Circuit) did not agree with the patentee's view that a means-plus-function construction was implicit or inherent in the pre-amendment claim. Moreover, the patentee's self-serving statements during the reexamination were made during a proceeding that was taking place in parallel with this ongoing, long-running litigation, and would be accorded less weight even if the Court agreed with Power Integrations as to the import of these statements. *See generally Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270 (Fed. Cir. 1986) ("[A] Citation filed during litigation might very well contain merely self-serving statements which likely would be accorded no more weight than testimony of an interested witness or argument of counsel."), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.2d 665 (Fed. Cir. 2008) (en banc).

Having concluded that the original "soft start circuit" term should not be construed as a means-plus-function claim term, the Court must determine the appropriate construction. Power Integrations offers as an alternative, non-means-plus function construction: "an internal soft start circuit that operates independently of the control loop." Fairchild proposes: "a circuit that minimizes inrush currents at start up." The Court agrees with the first part of Power Integrations' proposal. Accordingly, the Court will construe "soft start circuit" as "an internal soft start circuit."

The specification supports limiting the soft start circuit to internal soft start circuits as the

specification discusses problems with prior art soft start circuits requiring an external capacitor. (*See* '366 patent at col. 3 ll. 5-16) The Court reached this conclusion when it construed the original "soft start circuit" (D.I. 231 at 17-18), and this part of the Court's earlier opinion remains undisturbed by the Federal Circuit's remand, which reversed only the Court's application of a means-plus-function construction, *see Power Integrations*, 711 F.3d at 1366.

The Court does not agree with Power Integrations' proposal to also limit the soft start circuit to those that operate independently from the control loop. Power Integrations' reliance on prosecution history from the reexamination – in which it finds a clear and unmistakable disclaimer of "soft start circuits" that are not completely independent of the control loop (*see* D.I. 903 Ex. E at 2) – is unavailing. This purported disclaimer was made in the context of obtaining the amended, post-reexamination claims ("soft start circuit means") while this litigation was ongoing, and – in the absence of any other intrinsic evidence demonstrating such a disclaimer in the broader, non-means-plus-function, pre-amendment "soft start circuit" claims – does not apply to the pre-amendment claims.

For its part, Fairchild finds support for its proposed construction in a general statement by the Federal Circuit in *Power Integrations*, 711 F.3d at 1358, that "'[s]oft-start' circuitry attempts to reduce inrush current that stresses internal components of a PWM [pulse width modulated] power supply." Fairchild also points to portions of the specification discussing this aspect of soft-start circuitry. (*See, e.g.,* '366 patent at col. 2 ll. 66-67, col. 6 l. 66 - col. 7 l. 3) However, the Court does not read these statements as being definitional or otherwise providing a basis for the construction Fairchild proposes.

### III. IS THE COURT'S PRESENT CONSTRUCTION OF "SOFT START CIRCUIT" SUBSTANTIALLY IDENTICAL TO ITS PREVIOUS CONSTRUCTION?

The Court's previous construction of the "soft start circuit" in the pre-amendment claims was that this term is a means-plus-function element, with the functions construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions, and the corresponding structures being those shown in Figures 3, 6, and 9 of the '366 patent and described in the specification at col. 6, ll. 7-17; col. 6, l. 35 - col. 7, l. 18; col. 11, ll. 40-50; and col. 12, ll. 5-10. (D.I. 231 at 28-33; D.I. 232 at ¶ 14) The Court's present construction, following the remand and reexamination, is "an internal soft start circuit." The present construction, being non-means-plus-function, is broader than the previous means-plus-function construction. Thus, the Court agrees with Fairchild that the "soft start circuit" as originally construed does ***not*** have a substantially identical scope as the "soft start circuit" as presently construed.

Another way to reach this same conclusion – that the present construction of "soft start circuit" is broader than the Court's previous construction of "soft start circuit" – is to note that the previous construction of "soft start circuit" is the same as the Court's construction in *Power Integrations V* of the amended term "soft start circuit means." (*See* D.I. 901 Ex. C at 15) The Court construed "soft start circuit means" as a means-plus-function term that is narrower than the present "soft start circuit." (*See id.*) ("By amending the claim to include the word 'means,' and distinguishing the amended claim from the prior art on this basis, Defendant disclaimed the broader (non-means-plus-function) interpretation.") Further, as explained above, both the Federal Circuit – in the appeal from *Power Integrations II* – and the U.S. Patent and Trademark

11

Office – in the reexamination of the '366 patent – have expressly or implicitly found that the "soft start circuit means" of the amended claims has a different (and, in light of the prosecution history, necessarily narrower) scope than the soft start circuit of the pre-amended claims. *See generally Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment.").

The Court will order the parties to provide their positions as to what impact the Court's present construction, and its finding that present construction of "soft start circuit" is not substantially identical with the previous construction of this same term, has for any further proceedings in this matter.

## IV. CONCLUSION

The Court will construe the "soft start circuit" of the original '366 patent consistent with this Memorandum Opinion, and finds that this construction is not "substantially identical" to the Court's previous, vacated construction of this term. An appropriate Order follows.