# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>FAIRCHILD SEMICONDUCTOR<br>INTERNATIONAL, INC. and FAIRCHILD<br>SEMICONDUCTOR CORPORATION,<br><br>    Defendants. | Civil Action No. 04-1371-LPS |

Joseph B. Warden, FISH & RICHARDSON P.C., Wilmington, DE.

Frank E. Scherkenbach, FISH & RICHARDSON P.C., Boston, MA.

Howard G. Pollack and Michael Headley, FISH & RICHARDSON P.C., Redwood City, CA.

     Attorneys for Plaintiffs.


John G. Day and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE.

Blair M. Jacobs, Christina A. Ondrick, and Patrick J. Stafford, PAUL HASTINGS LLP, Washington, DC.

     Attorneys for Defendants.

## MEMORANDUM OPINION

December 8, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are disputes regarding (i) the scheduling of a damages retrial; (ii) whether the Court's finding of willful infringement by Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation ("Fairchild"), which was vacated on appeal by the Court of Appeals for the Federal Circuit, should be reinstated (*see* D.I. 751); and (iii) whether the Court should revisit its previous finding that this is not an "exceptional case" (*see* D.I. 796) and award attorneys' fees to Plaintiff Power Integrations, Inc. ("Power").[1] For the reasons that follow, the Court reinstates its finding of willful infringement, declines to reconsider its denial of attorneys' fees, and requires further input from the parties regarding the scheduling of a damages trial.

## BACKGROUND

### Case History and Changes in Relevant Law

This case is part of a series of longstanding and contentious patent infringement disputes

---

[1]The parties previously filed briefs addressing both the willfulness (*see* D.I. 850, 868, 869, 883) and damages issues (*see* D.I. 858, 880, 891). Power later made an unopposed request for leave to file supplemental briefs regarding willfulness and exceptional case in light of the Supreme Court's rulings in those areas. (*See* D.I. 926 at 2, 4) The Court granted Power's request, but instructed the parties to fully integrate their willfulness arguments into a new set of briefs. (*See* D.I. 927) ("[T]he parties SHALL NOT rely on any prior briefing but shall include within the to-be-filed briefs anything they wish the Court to consider in making its decisions.") The Court also directed the parties to file a joint status report "notifying Court of resolution of [the] damages issue or proposed dates for a new damages trial." (*Id.*) The parties have accordingly re-briefed the willfulness issue (*see* D.I. 932, 933, 941, 942) and filed a joint submission containing their competing proposals with respect to scheduling of a damages trial (*see* D.I. 946). The Court heard argument on these and other motions on December 2, 2016. (*See* D.I. 953 ("Tr."))

between the parties.[2] More than a dozen years ago, Power sued Fairchild for infringing U.S.

Patent Nos. 6,249,876 (the "'876 patent"), 6,229,366 (the "'366 patent"), 6,107,851 (the "'851

patent"), and 4,811,075 (the "'075 patent"). (*See* D.I. 1) After a five-day trial in October 2006

on the issues of infringement and damages, the jury found that Fairchild willfully infringed all of

the asserted claims and awarded Power in excess of $33.9 million, of which almost $15 million

was due to lost profits. (*See* D.I. 415)[3] The parties had stipulated at trial that "$765,724 worth of

accused devices were made or imported into the United States by Fairchild." (D.I. 619 at 2)[4]

Separate trials on validity and inequitable conduct were held in September 2007. The jury found

Power's asserted patents to be valid (*see* D.I. 555) and the Court later found that Fairchild had

failed to prove its inequitable conduct defense (*see* D.I. 683, 684).

Fairchild, seeking a reduction of the jury's damages award, filed a motion for judgment as

a matter of law on December 3, 2007. (*See* D.I. 613) The Court agreed with Fairchild that while

---

[2]This case was originally assigned to the Honorable Joseph J. Farnan, Jr. (D.I. 6)
Following Judge Farnan's retirement, on August 17, 2010 the case was reassigned to the
Honorable Leonard P. Stark.

[3]The jury was instructed on both direct and indirect infringement (*see* D.I. 413 at 25, 28-
29; *see also* D.I. 420 at 1659-1668), but the verdict sheet did not clearly delineate between the
two (*see generally* D.I. 415) (asking jury to determine whether Fairchild has "literally infringed"
patent claims and, if not, whether "Fairchild nevertheless infringes the claim(s) under the
doctrine of equivalents").

[4]*See also* D.I. 675 at 8 ("[T]he parties stipulated on the record that Fairchild had
manufactured $547,724 worth of accused products in the United States and Fairchild admitted
that it sold an additional $218,000 worth of accused products that were actually imported into the
United States. This $765,724 worth of activity is the only infringement 'within the United
States.'") (internal citations and emphasis omitted). As Fairchild notes, this figure "represents an
unapportioned royalty base." (D.I. 932 at 11 of 25 n.1) This figure has not been updated since
trial, and the parties dispute the current damages base, including whether "transshipments"
should be included. (*See generally* D.I. 942 at 5 n.1)

there was "testimony . . . sufficient to establish infringing activity by Fairchild in the United States," there was no legal basis for the jury's damages award because "the worldwide sales measure of damages . . . testified to by [Power's expert] and adopted by the jury" included "Fairchild's activities outside the United States which cannot be considered infringing." (D.I. 694 at 10-11) Still, the Court found that the "jury's verdict, to the extent it was based on inducement of infringement, was supported by the evidence." (*Id.* at 13)[5] Crediting Power's "argument at trial that 18% of [Fairchild's accused] devices sold outside the United States are later imported in the United States," the Court reduced the jury's damages award by 82%, to roughly $6.1 million. (*Id.* at 13-14)

In the meantime, on August 20, 2007, the Federal Circuit issued its *en banc* decision in *In re Seagate Technologies, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), which overruled *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380 (Fed. Cir. 1983), and established a new standard for willful infringement. In contrast to the negligence-like *Underwater Devices* standard, on which the Court's instruction to the jury in this case was based (*see* D.I. 420 at 1668-70), under *Seagate* patentees were required to "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and also to "demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer," *id.* at 1371. Fairchild accordingly moved for a new trial (*see* D.I. 615), which the Court granted to the extent

---

[5]The basis for this conclusion was the Court's finding that Power offered sufficient evidence to support its "importation argument," including evidence showing that Fairchild agreed to indemnify its "largest off-shore customers" for potential infringement, that Fairchild customers import accused products into the United States, and that Fairchild was aware of this activity. (*Id.* at 12-13; *see generally* § 271(b))

3

Fairchild sought a new trial on willfulness rather than on all issues (*see* D.I. 692). The Court

adopted the evidentiary record from the jury trial on infringement and damages. (*See* D.I. 714)

The parties waived their jury rights[6] and the Court held a short bench trial on June 22,

2009. (*See* D.I. 714, D.I. 740) On July 23, 2010, the Court issued an opinion and order applying

the *Seagate* standard and concluding that Power had proven, by clear and convincing evidence,

willful infringement of the asserted claims. (*See* D.I. 750, D.I. 751) Later, the Court reaffirmed

this finding (*see* D.I. 795 at 6-10) and, applying the factors set out in *Read v. Portec*, 970 F.2d

816, 827 (Fed. Cir. 1992), granted Power's motion for enhanced damages pursuant to 35 U.S.C.

§ 284 (*see id.* at 10-22; *see also* D.I. 796).[7] The Court doubled the reduced damages award (*see*

D.I. 795 at 10-22) and entered judgment in Power's favor in the amount of $12,866,647,

including interest (D.I. 800).

On appeal, the Federal Circuit agreed with the Court's conclusion that the jury's original

damages award was contrary to law and rejected what it called Power's "'foreseeability' theory

of worldwide damages." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711

F.3d 1348, 1371 (Fed. Cir. 2013) ("Remand Opinion"). But the Federal Circuit also held that the

Court "erred in relying on [Power's expert's] inherently speculative 18% figure" and, therefore,

---

[6]*See* D.I. 707-2 ("Fairchild is willing to waive its right to a jury trial and try the issue to the Court."); D.I. 707 at 1 ("Power Integrations accepts Fairchild's proposal to waive its jury trial right to expedite these proceedings. The Court can apply the new law to the present factual record and render its judgment on willfulness without the need for any evidentiary hearing."); D.I. 710 at 8 (Fairchild reiterating its willingness "to waive its right to a jury trial and try the issue of willfulness to the Court" if summary judgment of no willful infringement is not granted in its favor); D.I. 714 (Court observing that "the parties have waived trial by jury on the pending issue of willful infringement").

[7]At the same time, the Court denied Power's request for a finding that this is an "exceptional case" within the meaning of 35 U.S.C. § 285.

4

"the amount of [the Court's] remittitur [was] not supported by substantial evidence." *Id.* at 1376.

Instead, "there was no basis upon which a reasonable jury could find Fairchild liable for induced infringement." *Id.* The Federal Circuit vacated the damages award and also vacated the Court's finding of willfulness. *Id.* at 1381. Additionally, the Federal Circuit reversed this Court's construction of certain claim terms in the '851 and '366 patents, but affirmed the Court's denial of Fairchild's motion for judgment as a matter of law seeking to invalidate the '876 patent as obvious. *See id.*[8] The case was remanded with instructions to "reassess willfulness in view of [the Federal Circuit's] other holdings," *id.* at 1381, and for a new damages trial "to determine the proper amount of damages for Fairchild's direct infringement that is supported by substantial evidence in the existing record," which the Federal Circuit "anticipate[d] . . . will be commensurate in scope with the accused domestic activity to which Fairchild stipulated," *id.* at 1377.

In 2014, the Supreme Court issued its decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). Before *Octane Fitness*, in order for a case to be deemed exceptional under § 285, the Federal Circuit required a showing by clear and convincing evidence that the litigation was brought in subjective bad faith and further that it was objectively baseless. *See, e.g., Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (2005). The Supreme Court found this standard to be "overly rigid" and rejected it as "superimpos[ing] an inflexible framework onto statutory text that is inherently flexible." *Octane Fitness*, 134 S. Ct. at 1756. A case is now "exceptional" when it "stands out from others," either with regard to

---

[8]Fairchild did not challenge on appeal any of the Court's rulings with respect to the '075 patent. *See* 711 F.3d at 1360.

the "substantive strength of a party's litigating position" or the "unreasonable manner in which the case was litigated." *Id.* Hence, § 285 allows district courts to exercise their discretion in determining, on a case-by-case basis and "considering the totality of the circumstances," whether a case qualifies as "exceptional." *Id.* The Supreme Court also rejected application of the clear and convincing standard, requiring a patentee to make its showing only by a preponderance of the evidence. *See id.* at 1758.

In 2016, the Supreme Court turned to the law on willful infringement, and ruled that the *Seagate* test (including the Federal Circuit's "tripartite framework for appellate review") was also "unduly rigid" and, therefore, inconsistent with § 284's grant of discretion to district courts to enhance damages. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-34 (2016) (internal quotation marks omitted). The Supreme Court took issue with *Seagate*'s objective prong, under which "someone who plunders a patent . . . can nevertheless escape any comeuppance under § 284 solely on the strength of his attorney's ingenuity." *Id.* at 1933. Post-*Halo*, willfulness may be found when a party shows, by a preponderance of the evidence, that an infringer has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Id.* at 1932. "[S]ubjective willfulness alone – *i.e.*, proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer' – can support an award of enhanced damages." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 136 S. Ct. at 1930; internal citation omitted). After the factfinder determines that an infringer has engaged in willful or egregious conduct, district courts are tasked with making a discretionary call as to whether to award enhanced

damages and, if so, in what amount. *See Halo*, 136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case.").[9]

As a result of *Halo* and *Octane Fitness*, the issues of willfulness and exceptional case in the instant lawsuit have not been considered under current law. Accordingly, the parties filed briefs and presented arguments addressing how these changes impact this case in connection with the Federal Circuit's remand. Power asks the Court to reinstate its prior willfulness finding, enhance damages, reconsider its finding that the case is not exceptional, and award attorney fees. Fairchild opposes.

**Power's Asserted Patents**

As noted above, in this lawsuit Power has asserted claims of four patents against Fairchild products. The Court briefly summarizes some aspects of the status of each of these patents-in-suit.

**'876 Patent**

Power's '876 patent is entitled, "Frequency Jittering Control for Varying the Switching

---

[9]*See generally WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("We do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury."); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 667 F. App'x 992, 994 (Fed. Cir. 2016) ("[W]illful misconduct . . . is a sufficient predicate, under *Halo*, to allow the district court to exercise its discretion to decide whether punishment is warranted in the form of enhanced damages.") (internal quotation marks omitted). Courts may decline to enhance damages even after a finding of willfulness – but they may not enhance damages absent such a factual finding. In the case (as explained further below), it is for the Court (as factfinder) to make the determination of willfulness and also for the Court (as an exercise of its discretion) to determine enhancement.

Frequency of a Power Supply." (D.I. 1 at 28 of 67) After reexamination, the Patent Trial and

Appeal Board (PTAB) upheld the examiner's rejection of asserted claim 1 of the '876 patent.

(*See* D.I. 950-1) Because the PTAB's decision is currently on appeal at the Federal Circuit (*see*

Fed. Cir. Docket No. 17-1304), the rejection is not final and does not impact the patent's status

here. Hence, the Court will assess willfulness as to claim 1 of the '876 patent. *See generally* 35

U.S.C. § 307 (providing that reexamination certificate issues "when the time for appeal has

expired or any appeal proceeding has terminated").

### '366 Patent

The '366 patent is entitled, "Off-line Converter with Integrated Softstart and Frequency

Jitter." (D.I. 1 at 43 of 67) Fairchild pursued *ex parte* reexamination of the '366 patent, and

during that process Power amended the asserted claims. (*See, e.g.*, D.I. 857-3, 857-4) By

separate order entered today, the Court has dismissed the '366 patent from this case, and it has no

continued relevance to the issues the Court confronts in this Opinion. (*See also* Tr. at 27) (Power

explaining it is not seeking reinstatement of willfulness finding on '366 patent)

### '851 Patent

The '851 patent is entitled, "Offline Converter with Integrated Softstart and Frequency

Jitter." (D.I. 1 at 9 of 67) Power asserted claims 1 and 4 of the '851 patent. (*See* D.I. 376 at 2)

Claim 1 was cancelled after reexamination. (*See* D.I. 870-1 at 68 of 82) The Federal Circuit

reversed this Court's means-plus-function construction of claim 4's "soft start circuit" term and

remanded with instructions to "assess what effects, if any, the new constructions have" on the

claim's validity. *Power Integrations*, 711 F.3d at 1366. To this point, neither party has

requested that the Court evaluate the validity of the '851 patent; Fairchild has not even sought to

remove the '851 patent from the Court's permanent injunction against it. (*See generally* D.I. 851)[10] Given that the Federal Circuit's reversal requires a ***broader*** construction of claim 4's scope, the previous finding of infringement of this claim still stands. Thus, the Court will assess willfulness as to Fairchild's infringement of claim 4.

## '075 Patent

The '075 patent, which is entitled "High Voltage MOS Transistors," expired on April 24, 2007. (*See* D.I. 1 at 62 of 67 ('075 patent (filed April 24, 1987)); *see also* 35 U.S.C. § 154(c)(1)) It nonetheless remains relevant to the issues to be decided here, as much of the relevant conduct (including at least the stipulated direct infringement) occurred prior to expiration of the '075 patent.

# DISCUSSION

## Damages Retrial and Case Scheduling

The parties dispute whether the Court can or should consider issues on the present record, even before damages are retried. (*See, e.g.*, D.I. 951) Fairchild contends it is "premature" to assess willfulness, as "[t]he amount of damages must be determined before reaching the distinct enhancement and exceptional case inquiries." (D.I. 932 at 15) Fairchild also points to factual disputes "regarding the damages base, royalty rate and a proper apportionment," as well as

---

[10]The Court's decision today is without prejudice to Fairchild having an opportunity to request that the Court reconsider validity (*see* Tr. at 49-50) (counsel for Fairchild asserting that '851 patent "is invalid and if we need to prove that it is invalid it is fairly easily provable"), and without prejudice to Power having an opportunity to contend that the time to make such a challenge has passed (*see id.* at 33) (counsel for Power: "Everything they challenged since we have been back here has related to either the '366 patent or damages. So to the extent they're making arguments right now on the '851 patent or the '876 patent, those arguments were waived . . . .").

9

questions over "whether the '851 [and the '876] patent[s] can serve as a basis for any willfulness determination." (D.I. 932 at 12)

Power sees no reason to wait. Power urges the Court to resolve the willfulness and exceptional case issues now; it believes this course of action might allow the parties to resolve the damages issues on their own without needing yet another trial. (*See* D.I. 951 at 1) Power observes that willfulness is often resolved before or simultaneously with damages. (*See* D.I. 941 at 3)

The Court has determined that neither further record development nor a final damages award is necessary in order for it to resolve the parties' disputes regarding willfulness and exceptional case issues. After issuance of the instant Opinion, the Court will solicit the parties' updated views as to how – and on what schedule – the Court should proceed with respect to damages.

**Willfulness**

### Prior Findings

The parties vigorously dispute whether the Court's willfulness determination can be reinstated in light of the Federal Circuit's ruling on inducement and other factual and legal developments.

Following a bench trial, the Court, on July 22, 2010, issued a detailed opinion on willfulness. (D.I. 750) ("Willfulness Opinion") At that time, the Court's willfulness findings included the following:

- Fairchild was aware of the patents-in-suit. (Willfulness Opinion at 3)

10

- There was "no objective reason, prelitigation, on the part of Fairchild to believe the asserted patents were invalid." (*Id.* at 4)

- Fairchild recognized the importance of the patents-in-suit. (*Id.*)

- Fairchild either "engaged in a meticulous study of products made with the patented features through detailed reverse engineering efforts and then blatantly copied the products without any regard to the high likelihood of infringement that would arise from such blatant copying," or "completely disregarded the substance of at least some of the patents-in-suit, making little or no effort to ensure that their products did not infringe." Accordingly, there was an objectively high risk of infringement, and Fairchild knew or should have known that its accused products would infringe. (*Id.*)

- The "post-suit strategy developed by counsel to avoid a claim of willful infringement," including reasonable claim construction disputes and "credible" invalidity arguments, did not outweigh the evidence of "blatant copying." (*Id.* at 12-13)

The Court's Willfulness Opinion included a detailed analysis addressing willfulness as to all four of the patents-in-suit. (*See id.* at 4-12) Except to the extent otherwise stated in this Opinion, the Court now readopts its prior willfulness findings, as set out in the Willfulness Opinion, as each remains well-supported in the record.[11]

Fairchild questions whether these findings can still sustain a willfulness determination, even though the vast majority of the infringing conduct that was in the Court's contemplation at

---

[11]At oral argument, counsel for Fairchild asserted that the parties' jury waiver (*see supra* n.6) was nullified by the Federal Circuit's inducement ruling in this case, and by the Supreme Court's modification of the applicable legal standard in *Halo*. (*See* Tr. at 40-41) ("[W]hen the Federal Circuit's opinion came out, that changed the facts and circumstances relating to the assessment of culpability here, and that waiver no longer existed.") Power disagreed. (*See id.* at 85) The Court need not resolve this dispute because the Court has determined – as the Court believes is consistent with the remand from the Federal Circuit – that the extensive record developed in this case allows it to find, as a matter of fact, that Fairchild willfully infringed, based on application of the *Halo* standard. *See* 711 F.3d at 1281 ("Finally, we vacate the district court's finding of willful infringement, and we remand with instructions to reassess willfulness in view of our other holdings in this case.").

the time of its Willfulness Opinion is no longer in the case, due to the Federal Circuit's subsequent ruling on inducement. The Court now turns to this issue.

**Effect of the Remand Opinion**

Power characterizes the Federal Circuit's Remand Opinion as a "damages ruling," contending that "nothing in the Federal Circuit's decision" impacts this Court's finding of willfulness. (D.I. 933 at 6) Power argues that "[w]hile this Court found Fairchild's infringement willful even under the old [*Seagate*] test, the new [*Halo*] test lowers the bar." (*Id.* at 7) Further, in Power's view, its willfulness case is strengthened by the new standard's focus on pre-litigation conduct. (*Id.*)[12]

To Fairchild, "[s]ignificant case-changing factual and legal developments have occurred since this Court last considered [Power's] willful infringement allegations." (D.I. 932 at 5) Fairchild argues that "the prior willfulness findings focused on the wrong time period for evaluating Fairchild's purportedly culpable conduct" (D.I. 932 at 15), and notes that there is no evidence in the record of "pre-Complaint direct infringement" or of "egregious conduct" particular to the stipulated direct infringement (D.I. 932 at 16). In Fairchild's view, "the relevant question is whether Fairchild's *de minimis* acts of post-Complaint direct infringement constitute 'egregious infringement behavior,'" and "the answer to this question can only be a resounding NO." (D.I. 932 at 6) Fairchild's position rests on its contention that its pre-Complaint, extraterritorial conduct is irrelevant because it is insufficiently connected to its post-Complaint direct infringement. (*See, e.g.*, D.I. 942 at 6-7)

---

[12]Power pushes mainly for the ***Court's*** 2010 willfulness finding to be reinstated but also presented at oral argument its view that the pre-*Seagate* 2006 ***jury*** finding of willfulness could serve as an alternative basis for reinstatement. (*See* Tr. at 34)

12

The Court does not agree with Power that the Federal Circuit's decision was merely a "damages ruling." Instead, the Federal Circuit's holding drastically reduced the scope of conduct found to be infringing in this case. As Fairchild correctly observes, the Court's earlier willfulness finding "assumed inducement" and was made with infringing conduct in mind that was far closer in time and geographical location to Fairchild's willful acts. (D.I. 932 at 14)

At the same time, the Court does not share Fairchild's view that "[t]he *facts* have changed dramatically in this situation based upon the Federal Circuit's finding." (Tr. at 39) (emphasis added) And the Court also disagrees with Fairchild's ultimate position: that any pre-Complaint, extraterritorial conduct is not at all relevant (or at best is minimally relevant) to its direct infringement. In the Court's view, Fairchild does not persuasively explain why Power should be required to show independent egregious misconduct focused specifically and/or solely on Fairchild's direct infringement, or that such a finding must be based only on what occurred during a period for which Power is permitted to collect damages.[13]

Fairchild points to the Supreme Court's instruction that "'culpability is generally measured against the knowledge of the actor *at the time of the challenged conduct*.'" (D.I. 932 at 14 (quoting *Halo*, 136 S. Ct. at 1933)) The Supreme Court made this observation immediately following its criticism of the *Seagate* objective prong, faulting that portion of the *Seagate* standard for potentially "insulat[ing] the infringer from enhanced damages, even if he did not act on the basis of the [litigation] defense or was even aware of it." *Halo*, 136 S. Ct. at 1933. In the context of the instant case, however, the general focus on an accused infringer's knowledge at the

---

[13]As Power observes in arguing against Fairchild's interpretation, "[i]f [for example] copying is irrelevant based on when damages start accruing, then all the cases that say copying is evidence of willful infringement just don't make any sense." (Tr. at 61)

13

time of infringement does not limit the relevant inquiry just to the direct infringement for which Fairchild remains liable (*i.e.*, the overflow manufacturing in Maine). The post-Complaint timing of the direct infringement renders Fairchild's litigation defenses and other post-Complaint conduct relevant to the willfulness determination,[14] and it does not erase from the record all of Fairchild's pre-Complaint activity (*e.g.*, its research and development work).

Similarly, Fairchild claims that "only domestic activity may be evaluated in assessing the willfulness of infringing activity" (D.I. 932 at 12), so "this Court must look to the direct infringement in the U.S., *not* the extraterritorial acts the Federal Circuit found non-infringing" (*id.* at 8). (*See also id.* at 17) ("[Power] cannot use Fairchild's non-infringing extraterritorial conduct to support a finding of willful infringement.") For this argument, Fairchild leans on the "'general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country.'" (D.I. 932 at 8) (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007); internal emphasis omitted)

Again, however, the Court disagrees. In this case, in which Fairchild committed some amount of actionable infringement in the U.S., while Fairchild's extraterritorial conduct "cannot constitute *infringement*" for which Fairchild must pay damages (D.I. 942 at 4) (emphasis added), that extraterritorial conduct did occur, it is relevant to assessing Fairchild's intent, and, hence, it may be considered as part of a record supporting a finding of willfulness. *See generally Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir.) ("What

---

[14]Contrary to Fairchild's suggestion that "[Power] . . . argues that . . . *no* post-complaint evidence can be considered in determining willfulness" (D.I. 942 at 6) (emphasis added), Power does not make this argument (*see* D.I. 933 at 7) (arguing that *Halo* "greatly *reduces* the importance of Fairchild's . . . litigation defenses and post-trial reexamination proceedings") (emphasis added).

constitutes a territorial connection that brings an action within the reach of a United States statute

must ultimately be determined by examining the focus of congressional concern in the particular

statute."), *reh'g en banc denied in part*, 805 F.3d 1382 (Fed. Cir. 2015) (internal quotation marks

omitted); *see also* D.I. 942 at 4 (Fairchild acknowledging that "certain activities abroad could

conceivably form a basis for a finding of willful infringement if the activities were properly

connected to U.S. wrongdoing").

     Hence, the Court disagrees with Fairchild that "challenged conduct" here solely consists

of Fairchild's direct infringement. (D.I. 932 at 6)

     The question then becomes whether Fairchild's willful pre-Complaint conduct, as found

by the Court in its Willfulness Opinion and readopted here, is sufficiently related to the direct

infringement remaining in the case. At trial, Fairchild expressly admitted that it "manufactured

2.73 million FSD210HD devices [at] the fabrication facility in Portland, Maine using the SDG4

process." (*See* D.I. 418 at 774) Fairchild has also admitted to selling "an additional $218,000 of

accused products that were actually imported into the United States." (D.I. 675 at 8; *see also* D.I.

419 at 1269-70 ("Fairchild's sales in the United States of the accused products . . . total . . .

[$]218,000 . . . quarter four 2004 through quarter four 2005.")) The FSD210HD chip was

accused of infringing, and found by the jury to infringe, every claim that was asserted in this

case. (*Compare* D.I. 376 *with* D.I. 415) That included claims 1 and 5 of the '075 patent (since

expired), as well as '851 patent claim 4 and '876 patent claim 1 (both of which remain asserted

in this case, despite potential unresolved questions as to their validity).

     The Court previously found that, after a failed attempt to design around the '075 patent,

Fairchild "continue[d] the development of its product by copying, through reverse engineering,

the methods and features claimed in the patent." (Willfulness Opinion at 5) The Court found that Fairchild engaged in "whole-sale copying of [Power's] patented technology." (*Id.* at 7)

Similarly, regarding the '876 patent's frequency modulation technology, the Court found that Fairchild was "aware of the claimed frequency jittering function," Fairchild knew of the feature's importance, Fairchild's customers sought this technology, and Fairchild engaged in "industrial stalking" measures including reverse engineering and emulation of "marketing collateral." (*Id.* at 8-9) The Court found that the pre-litigation opinion Fairchild obtained regarding the '876 patent could not overcome Power's clear and convincing evidence of copying. (*Id.* at 10-11)

The Court reached similar findings regarding the "integrated frequency jitter and the integrated soft start features set forth in claim 4 of the '851 patent." (*Id.* at 9)

In sum, rather than endeavoring to "avoid infringement and design around the patented features," Fairchild instead "cop[ied] them in violation of Power Integrations' patent rights." (*Id.*) Importantly, these *facts* – and the record evidence supporting them – have not changed, notwithstanding the recent changes in the *law*.

Fairchild contends that all of this evidence "fails under *Halo* as a basis for willful infringement" because the evidence is not "properly tied" to Fairchild's post-Complaint direct infringement. (D.I. 942 at 6; *see also id.* at 4 (Fairchild arguing that "proper connect[ion]" between activities abroad and domestic infringement is needed)) But Fairchild does not identify what a "proper connection" would be, nor does it persuasively explain why such a connection is lacking here. The jury found that the FSD210HD product met every limitation of every presently-asserted claim. The Court's willfulness determination touched on the various

16

technologies covered by the claims and incorporated in the infringing FSD210HD product. In the Court's view, all of the egregious conduct identified by the Court in the Willfulness Opinion is part of – and a highly pertinent part of – the lineage of the FSD210HD.

Fairchild's extraterritorial conduct is relevant to willfulness because it enabled Fairchild to manufacture a product that subjected it to liability under U.S. patent law. *See generally Power Integrations*, 711 F.3d at 1371 ("[I]ndirect infringement, *which can encompass conduct occurring elsewhere*, requires underlying direct infringement in the United States.") (internal citation omitted and emphasis added); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302 (Fed. Cir. 2012) ("Although we recognize the fundamental territoriality of U.S. patent law, Cipla's alleged foreign conduct is not necessarily outside the scope of § 271 . . . . In particular, § 271(b), which defines infringement by inducement, contains no such territorial proscription.") (internal citation omitted).

**Application**

The Court now assesses whether the record as a whole still supports a finding that Fairchild willfully infringed the asserted claims. It is helpful to think of the sequence of relevant events as occurring in three phases: (i) pre-Complaint; (ii) post-Complaint but before the Court issued its Willfulness Opinion, announcing its finding of willful infringement; and (iii) post-Willfulness Opinion, including all proceedings undertaken pursuant to the Federal Circuit's Remand Opinion.

As explained above, Fairchild's pre-Complaint conduct – "phase i" – as found by the Court in the Willfulness Opinion remains relevant to determining whether Fairchild's direct infringement was wanton, flagrant, egregious, or any other of the descriptions used in *Halo*.

17

However, even post-*Halo*, the Court agrees with Fairchild that, given the timing of the direct infringement that remains part of this case, "Fairchild's post-Complaint defenses and Patent Office and other developments" (D.I. 932 at 6) – "phases ii and iii" – are also relevant. Still, the Court finds that the post-Complaint record – much of which the Court already considered in reaching its earlier willfulness determination – does not overcome the phase i pre-Complaint conduct outlined above. Even on balance, Fairchild's overall infringing conduct was egregious.

As noted, a substantial portion of the post-Complaint record is unchanged from what the Court considered in reaching its prior finding of willfulness. In fact, all of what the Court has described here as phase ii is unchanged. Particularly, with respect to the '075 patent, Fairchild provides no persuasive basis to alter the Court's earlier findings that Fairchild's "post-litigation opinions . . . are insufficient to overcome the overwhelming evidence of willful infringement." (Willfulness Opinion at 7) On that point, the Court found that one of Fairchild's opinions was unreliable as "plainly contrary to the facts regarding the structure of Fairchild's devices;" another opinion was inconsistent with the Court's claim construction opinions; while a third opinion was "contrary to the disclosure of the '075 patent and Fairchild's belief regarding its infringement." (*Id.* at 7-8) The Court was similarly unpersuaded by Fairchild as to the weight to be given to Fairchild's post-Complaint opinion letters concerning the '876 and '851 patents, which did not address certain claims, and raised an anticipation argument that was not pursued at trial. (*See id.* at 11)

More generally, the Court, recognizing that "[m]uch of the evidence and argument raised by Fairchild to rebut [Power's] claim for willful infringement rests on Fairchild's post-litigation conduct" (*id.* at 12), found unpersuasive Fairchild's assertions of "credible arguments of

18

non-infringement, including plausible and reasonable claim construction disputes, and credible arguments concerning the validity of the patents-in-suit." (*Id.*) In other words, the Court previously considered – and rejected – a number of the arguments Fairchild reiterates now. Even in applying the *Seagate* standard, the Court "underst[ood] the post-suit, reasonableness of a [party's] defenses to be only one factor among the totality of the circumstances," and foreshadowed *Halo*'s concern that "a contrary approach to willful infringement, would negate the ability of a patentee to prove willful infringement in any hard fought and hotly contested patent litigation." (*Id.* at 13) In these respects, *Halo* cannot be said to help Fairchild's cause.

Fairchild's opposition to reinstatement of the Court's willfulness determination relies heavily on developments occurring after that finding was made, in what the Court is calling phase iii. While Fairchild is correct that the record has shifted in its favor – because it is no longer liable for much of the infringement for which it was previously found liable – these developments do not overcome Fairchild's pre-litigation conduct. The '876 patent's lone asserted claim stands rejected after reexamination, but the PTAB's ruling is on appeal. With respect to the '851 patent, the cancellation of claim 1 removes it from the case, but claim 4 remains asserted. Fairchild's claim construction victories on appeal are relevant here only with respect to claim 4, and it is not clear why the failure of either party to seek clarification as to that claim's status should be construed in Fairchild's favor.[15] As noted earlier, the Federal Circuit's rejection of the Court's means-plus-function construction, while potentially relevant to Fairchild's invalidity contentions, does not help Fairchild's non-infringement position. The

---

[15]Fairchild faults Power for "not tak[ing] action heeding the Federal Circuit's remand instructions" (D.I. 932 at 20), but it is unclear why it believes it was or is Power's role to take such action.

removal of inducement from the record has already been accounted for above; it remains the case that the directly-infringing product originates from Fairchild's pre-litigation conduct and was found to practice the limitations of all of the remaining claims in suit. Finally, even crediting Fairchild's representation – which Power vigorously contests – that its direct infringement did not "result[] in a single lost sale to [Power] or cause[] harm to [Power]" (D.I. 932 at 6), Fairchild fails to explain how that reality (if it is correct) undermines a finding that Fairchild's conduct (and particularly copying) was, nonetheless, egregious.

Accordingly, for substantially the reasons contained in the Court's earlier Willfulness Opinion, as further explicated as well as modified here, the Court finds that Fairchild's direct infringement of the '075, '876, and '851 patents was willful. As the Court found was clearly and convincingly the case in 2010, the evidence that "Fairchild engaged in the blatant copying of [Power's] patented features, knowing of the features, and their importance to the industry without adequate investigation into non-infringement and validity" persuades the Court, by at least a preponderance of the evidence, that Fairchild's infringement was willful, even after also considering the post-Complaint record, including the developments subsequent to issuance of the Willfulness Opinion. Accordingly, the Court's prior finding of willful infringement is reinstated.

In addition to reinstating its finding of willfulness, Power urges the Court to again enhance damages under § 284. (*See, e.g.*, D.I. 941 at 9-10) Fairchild declined to "provide a full enhancement analysis" and took the position that separate briefing on the application of the *Read* factors would be necessary even if the Court reinstated its willfulness finding, as the Court has now done. (D.I. 932 at 12 n.2) The Court agrees with Fairchild and declines to address enhancement until after damages are determined – whether by trial or otherwise – and after

20

receiving further input from the parties.

**Exceptional Case**

Power asks the Court to reconsider its decision (*see* D.I. 796) denying it attorneys' fees under § 285. Power contends that the Court's decision was made "largely on the basis of how Fairchild conducted the litigation, rather than on its pre-litigation culpability," and that "Fairchild's subjective bad faith in willfully infringing [Power's] patents itself justifies fees" under the new *Octane Fitness* standard. (D.I. 933 at 12) The Court does not agree that, in this case, *Octane Fitness* provides a meritorious basis for the Court to revisit its prior exceptional case analysis. Even if the Court were to reconsider, it would again conclude that this case is not "exceptional" within the meaning of § 285. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.") (internal quotation marks omitted).

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotation marks omitted). Reconsideration is not to be granted where it would not alter the Court's prior determination. *See Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

A review of the rationale given for the Court's exercise of its discretion to deny Power recovery for attorneys' fees (*see* D.I. 795 at 23-24) shows that the Court's decision was not a product of the "overly rigid" framework that the Supreme Court has now rejected. *Octane*

21

*Fitness*, 134 S. Ct. at 1756. To the contrary, the Court explained: "[T]he Court may still consider all of the *Read* factors, including copying or closeness of the case, but the focus is more appropriately on the litigation conduct between the parties. . . . The Court is not persuaded that Fairchild's tactics amount to bad faith conduct or frivolous pursuit of claims. Aggressive litigation is not necessarily vexatious litigation." (D.I. 795 at 23-24)

Even if the Court were to consider Power's § 285 motion anew, the Court would deny the request to find the case exceptional, for the reasons given in its earlier opinion as well as those stated during the December 2016 oral argument in connection with denying Fairchild's similar § 285 motion in Civil Action No. 12-540. (*See, e.g.*, Tr. at 90) ("Both sides have raised a number of interesting and generally extremely challenging issues for the court. Competent clever counsel are on both sides, and many of the things I have decided could have gone the other way.")

## III. CONCLUSION

For the reasons given above, the Court reinstates its finding of willful infringement, declines to reconsider its denial of attorneys' fees, and will require further input from the parties regarding damages and enhancement. An appropriate Order follows.